## NEW YORK PREMIUM DISCOUNT TABLE

### Premium Discount Percentages Applicable to New York Standard Premium

| Total Standard Premium (See Note) (1) | General Liability (2) | Automobile Liability-Garages (3) | Taxis, Livery, Buses and Long Haul Truckmen (4) | All Other Auto Liability (5) | Total Standard Premium (See Note) (1) | General Liability (2) | Automobile Liability-Garages (3) | Taxis, Livery, Buses and Long Haul Truckmen (4) | All Other Auto Liability (5) |
|---|---|---|---|---|---|---|---|---|---|
| $1,000 or less | 0.0% | 0.0% | 0.0% | 0.0% | $8,000 | 11.2% | 6.1% | 3.4% | 5.7% |
| 1,050 | 0.7 | 0.3 | 0.1 | 0.3 | 8,200 | 11.3 | 6.2 | 3.5 | 5.7 |
| 1,100 | 1.2 | 0.6 | 0.1 | 0.5 | 8,400 | 11.4 | 6.3 | 3.6 | 5.8 |
| 1,150 | 1.6 | 0.7 | 0.1 | 0.7 | 8,600 | 11.5 | 6.3 | 3.6 | 5.9 |
| 1,200 | 1.9 | 0.9 | 0.2 | 0.8 | 8,800 | 11.6 | 6.4 | 3.7 | 6.0 |
| 1,250 | 2.3 | 1.1 | 0.2 | 1.0 | 9,000 | 11.7 | 6.5 | 3.8 | 6.0 |
| 1,300 | 2.6 | 1.2 | 0.2 | 1.1 | 9,200 | 11.8 | 6.5 | 3.9 | 6.1 |
| 1,350 | 2.9 | 1.4 | 0.3 | 1.2 | 9,400 | 11.9 | 6.6 | 4.0 | 6.2 |
| 1,400 | 3.1 | 1.5 | 0.3 | 1.3 | 9,600 | 12.0 | 6.7 | 4.0 | 6.2 |
| 1,450 | 3.4 | 1.6 | 0.3 | 1.4 | 9,800 | 12.1 | 6.7 | 4.1 | 6.3 |
| 1,500 | 3.6 | 1.7 | 0.3 | 1.5 | 10,000 | 12.2 | 6.8 | 4.2 | 6.4 |
| 1,550 | 3.8 | 1.8 | 0.4 | 1.6 | 10,500 | 12.4 | 6.9 | 4.4 | 6.5 |
| 1,600 | 4.0 | 1.9 | 0.4 | 1.7 | 11,000 | 12.5 | 7.1 | 4.5 | 6.6 |
| 1,650 | 4.2 | 2.0 | 0.4 | 1.8 | 11,500 | 12.7 | 7.2 | 4.6 | 6.7 |
| 1,700 | 4.4 | 2.1 | 0.4 | 1.9 | 12,000 | 12.8 | 7.3 | 4.8 | 6.8 |
| 1,750 | 4.6 | 2.2 | 0.4 | 2.0 | 12,500 | 12.9 | 7.3 | 4.9 | 6.9 |
| 1,800 | 4.7 | 2.3 | 0.5 | 2.0 | 13,000 | 13.0 | 7.4 | 5.0 | 7.0 |
| 1,850 | 4.9 | 2.3 | 0.5 | 2.1 | 13,500 | 13.1 | 7.5 | 5.1 | 7.0 |
| 1,900 | 5.0 | 2.4 | 0.5 | 2.2 | 14,000 | 13.2 | 7.6 | 5.1 | 7.1 |
| 1,950 | 5.2 | 2.5 | 0.5 | 2.2 | 14,500 | 13.3 | 7.6 | 5.2 | 7.2 |
| 2,000 | 5.4 | 2.6 | 0.5 | 2.3 | 15,000 | 13.4 | 7.7 | 5.3 | 7.3 |
| 2,100 | 5.6 | 2.7 | 0.5 | 2.4 | 16,000 | 13.6 | 7.8 | 5.5 | 7.4 |
| 2,200 | 5.8 | 2.8 | 0.6 | 2.5 | 17,000 | 13.7 | 7.9 | 5.6 | 7.5 |
| 2,300 | 6.0 | 2.9 | 0.6 | 2.6 | 18,000 | 13.8 | 8.0 | 5.7 | 7.5 |
| 2,400 | 6.2 | 3.0 | 0.6 | 2.7 | 19,000 | 13.9 | 8.1 | 5.8 | 7.6 |
| 2,500 | 6.4 | 3.0 | 0.6 | 2.7 | 20,000 | 14.0 | 8.2 | 5.9 | 7.7 |
| 2,600 | 6.5 | 3.1 | 0.6 | 2.8 | 21,000 | 14.1 | 8.2 | 5.9 | 7.7 |
| 2,700 | 6.7 | 3.2 | 0.6 | 2.9 | 22,000 | 14.2 | 8.3 | 6.0 | 7.8 |
| 2,800 | 6.8 | 3.2 | 0.6 | 2.9 | 23,000 | 14.2 | 8.3 | 6.1 | 7.9 |
| 2,900 | 6.9 | 3.3 | 0.7 | 3.0 | 24,000 | 14.3 | 8.4 | 6.1 | 7.9 |
| 3,000 | 7.1 | 3.4 | 0.7 | 3.0 | 25,000 | 14.4 | 8.4 | 6.2 | 8.0 |
| 3,100 | 7.2 | 3.4 | 0.7 | 3.1 | 27,500 | 14.5 | 8.5 | 6.3 | 8.1 |
| 3,200 | 7.3 | 3.5 | 0.7 | 3.1 | 30,000 | 14.8 | 8.8 | 6.5 | 8.3 |
| 3,300 | 7.4 | 3.5 | 0.7 | 3.2 | 32,500 | 15.3 | 9.2 | 6.8 | 8.6 |
| 3,400 | 7.5 | 3.6 | 0.7 | 3.2 | 35,000 | 15.7 | 9.5 | 7.1 | 8.9 |
| 3,500 | 7.5 | 3.6 | 0.7 | 3.2 | 37,500 | 16.1 | 9.8 | 7.3 | 9.2 |
| 3,600 | 7.6 | 3.6 | 0.7 | 3.3 | 40,000 | 16.4 | 10.1 | 7.5 | 9.4 |
| 3,700 | 7.7 | 3.7 | 0.7 | 3.3 | 42,500 | 16.7 | 10.3 | 7.7 | 9.6 |
| 3,800 | 7.8 | 3.7 | 0.7 | 3.3 | 45,000 | 16.9 | 10.5 | 7.8 | 9.8 |
| 3,900 | 7.8 | 3.7 | 0.7 | 3.4 | 47,500 | 17.1 | 10.7 | 8.0 | 10.0 |
| 4,000 | 7.9 | 3.8 | 0.8 | 3.4 | 50,000 | 17.3 | 10.8 | 8.1 | 10.1 |
| 4,200 | 8.1 | 3.8 | 0.8 | 3.5 | 52,500 | 17.5 | 11.0 | 8.2 | 10.3 |
| 4,400 | 8.2 | 3.9 | 0.8 | 3.5 | 55,000 | 17.7 | 11.1 | 8.3 | 10.4 |
| 4,600 | 8.3 | 3.9 | 0.8 | 3.5 | 57,500 | 17.8 | 11.2 | 8.4 | 10.5 |
| 4,800 | 8.4 | 4.0 | 0.8 | 3.6 | 60,000 | 18.0 | 11.3 | 8.5 | 10.6 |
| 5,000 | 8.5 | 4.1 | 0.9 | 3.7 | 62,500 | 18.1 | 11.5 | 8.6 | 10.7 |
| 5,200 | 8.8 | 4.3 | 1.2 | 3.9 | 65,000 | 18.2 | 11.5 | 8.6 | 10.8 |
| 5,400 | 9.1 | 4.5 | 1.4 | 4.1 | 67,500 | 18.3 | 11.6 | 8.7 | 10.9 |
| 5,600 | 9.3 | 4.7 | 1.6 | 4.3 | 70,000 | 18.4 | 11.7 | 8.8 | 10.9 |
| 5,800 | 9.5 | 4.8 | 1.8 | 4.4 | 72,500 | 18.5 | 11.8 | 8.8 | 11.0 |
| 6,000 | 9.7 | 5.0 | 2.0 | 4.6 | 75,000 | 18.6 | 11.9 | 8.9 | 11.1 |
| 6,200 | 9.9 | 5.1 | 2.2 | 4.7 | 80,000 | 18.8 | 12.0 | 9.0 | 11.2 |
| 6,400 | 10.1 | 5.3 | 2.3 | 4.8 | 85,000 | 18.9 | 12.1 | 9.1 | 11.3 |
| 6,600 | 10.3 | 5.4 | 2.5 | 5.0 | 90,000 | 19.0 | 12.2 | 9.2 | 11.4 |
| 6,800 | 10.4 | 5.5 | 2.6 | 5.1 | 95,000 | 19.2 | 12.3 | 9.2 | 11.5 |
| 7,000 | 10.6 | 5.6 | 2.8 | 5.2 | 100,000 | 19.3 | 12.4 | 9.3 | 11.5 |
| 7,200 | 10.7 | 5.7 | 2.9 | 5.3 | over 100,000 | * | * | * | * |
| 7,400 | 10.9 | 5.8 | 3.0 | 5.4 | | | | | |
| 7,600 | 11.0 | 5.9 | 3.1 | 5.5 | | | | | |
| 7,800 | 11.1 | 6.0 | 3.1 | 5.6 | | | | | |

If the Total Standard Premium is between two of the amounts shown in Column (1) the premium discount percentage applicable is that shown for the lower of such amounts.

*If the Total Standard Premium is over $100,000, the discount percentage applicable for each kind of insurance shall be determined as the weighted average of the percentage shown for the first $100,000 of Total Standard Premium and the appropriate percentage for the portion of the Total Standard Premium over $100,000 as follows:

| Kind of Insurance | Portion Over $100,000 |
|---|---|
| General Liability | 26.7% |
| Automobile Liability--Garages | 17.5 |
| Taxis, Livery, Buses and Long Haul Truckmen | 14.0 |
| All Other Automobile Liability | 16.5 |

CL 21132H

20-01226-scc   Doc 6-6   Filed 10/01/20   Entered 10/01/20 08:44:55   Exhibit B
Part 5 - Royal Program Policy Compendium 1971-1975   Pg 2 of 81

Page 1
(first of four pages)

## RETROSPECTIVE PREMIUM ENDORSEMENT — ONE YEAR — PLAN D

It is agreed that this endorsement applies to the policies designated in Table I below, subject to the following provisions:

1. **FINAL PREMIUM.** The final premium for such policies is the sum of:

   (a) the premium for the insurance not subject to Plan D, as specified in Table I, computed in accordance with the provisions of such policies, other than this endorsement, and

   (b) the premium for the insurance subject to Plan D, as specified in Table I, hereinafter referred to as the retrospective premium.

2. **RETROSPECTIVE PREMIUM.** The retrospective premium for all policies as specified in Table I, Item 1 combined shall be the sum of:

   (a) the basic premiums for each state,

   (b) the excess loss premiums for each state, and

   (c) the converted losses for each state,

   each multiplied by the applicable state tax multiplier. Such retrospective premium shall be subject to the minimum retrospective premium and to the maximum retrospective premium.

3. **DEFINITION OF TERMS USED IN THE COMPUTATION OF THE RETROSPECTIVE PREMIUM.**

   (a) "Standard premium" means the premium for the insurance subject to Plan D computed in accordance with the provisions of the policies, other than this endorsement and exclusive of the application of any premium discount endorsement.

   (b) "Basic premiums" means the amounts obtained by applying to each portion of the standard premium the basic premium percentage stated in Table II as applicable thereto.

   (c) "Excess loss premiums" means the sum of:

   (1) the amounts obtained by applying to that portion of the standard premium under workmen's compensation and employers' liability policies for each state for which a factor is entered in the Excess Loss Premium Factors (Workmen's Compensation) column of Table I, the applicable factor times the applicable loss conversion factor,

   (2) the amounts obtained by applying to that portion of the standard premium for automobile physical damage insurance, the factor stated in the Excess Loss Premium Factors (Physical Damage) column of Table I, times the applicable loss conversion factor, and

   (3) the amounts obtained by applying to that portion of the standard premium for insurance stated in Table I as subject to a combination loss limitation, the factor stated in the Excess Loss Premium Factors (Combination) column in Table I times the applicable loss conversion factor.[1]

   (d) "Incurred losses" means the sum of:

   (1) all losses, including medical, actually paid,

   (2) reserves for unpaid losses as estimated by the company,

   (3) premiums on bonds paid for by the company in accordance with the provisions of the policies,

   (4) interest accruing after entry of a judgment against the insured,

   (5) allocated loss adjustment expenses, and

   (6) expenses incurred in seeking recovery against a third party

   under the insurance subject to Plan D, provided:

   (i) as respects the insurance afforded under any workmen's compensation and employers' liability policy:

   (a) item (3) above shall not apply,

   (b) item (5) above shall apply as respects employers' liability coverage only,

   (c) item (6) above shall apply only if recovery is obtained against the third party, and

   (ii) items (3), (4), and (5) above shall not apply as respects automobile physical damage insurance.

   (e) "Compensation loss limitation," if stated in Table I, means the limit of incurred losses to be included in computing the retrospective premium under the workmen's compensation and employers' liability policies designated in Table I as subject to Plan D, applicable to any state for which a factor is shown in the Excess Loss Premium Factors (Workmen's Compensation) column of Table I, arising out of bodily injury by accident or disease, including death at any time resulting therefrom, sustained by one or more employees in a single accident. For the purpose of this definition, incurred losses arising out of bodily injury by disease, including death at any time resulting therefrom, sustained by any one employee shall be deemed to arise out of a single accident.

   If, during the policy period,

   (i) the insured engages in operations in any state for which this policy affords insurance but for which no factor is shown in the Excess Loss Premium Factors (Workmen's Compensation) column of Table I, and

   (ii) on the date this endorsement becomes applicable with respect to any such additional state, there is a loss limitation with respect to all states specifically insured under the policy and subject to Plan D, and

   (iii) the insured is eligible to elect such loss limitation in such additional state,

   such loss limitation shall also apply to incurred losses pertaining to such additional state. The excess loss premium factor applicable to such additional state, determined in accordance with the manuals in use by the company, shall be deemed to be entered in Table I.

   (f) "Automobile physical damage loss limitation", if stated in Table I, means the limit of incurred losses to be included in computing the retrospective premium for the automobile physical damage insurance afforded under any policy designated in Table I as subject to Plan D, arising out of any one occurrence.

   (g) "Combination loss limitation", if stated in Table I, means the overall limit of incurred losses, arising out of one accident or occurrence, to be included in computing the retrospective premium for the combination of insurance designated in the Combination Loss Limitation paragraph in Table I and afforded under any policy designated in Table I as subject to Plan D.

   (h) "Loss conversion factor" means the factor stated in Table I.

   (i) "Converted losses" means the incurred losses multiplied by the applicable loss conversion factor.

   (j) "State tax multiplier" means the applicable factor stated in the State Tax Multiplier Table in Table I.

   (k) "Minimum retrospective premium" is the amount obtained by the application of the minimum premium percentage stated in Table II to the standard premium.

   (l) "Maximum retrospective premium" is the amount obtained by the application of the maximum premium percentage stated in Table II to the standard premium.

CL21131K   Ed. 1-1-73

## RETROSPECTIVE PREMIUM ENDORSEMENT — ONE YEAR — PLAN D
### (Continued)

#### 4. PAYMENTS AND COMPUTATIONS OF PREMIUM FOR INSURANCE SUBJECT TO PLAN D.

(a) **Standard Premium.** The named insured shall pay the standard premium to the company in accordance with the provisions of the policies other than this endorsement, specifying the manner of premium payment.

(b) **Retrospective Premium.** A computation of the retrospective premium, based upon incurred losses valued as of a date six months after termination of the policies, shall be made by the company as soon as practicable after such valuation date. The premium so computed shall be the final retrospective premium if (1) all claims have been closed or it is apparent that the retrospective premium will exceed the maximum retrospective premium; and (2) within ninety days from approval of such computation by the organization having jurisdiction, the company, with the agreement of the named insured, requests of such organization that the computation be final.

If such computation is not final, a further computation of the retrospective premium, based upon incurred losses valued as of a date eighteen months after termination of the policies, shall be made by the company as soon as practicable after such valuation date. Such further computation shall be final unless, within ninety days from approval of such computation by the organization having jurisdiction, the company or the named insured requests of such organization that a further computation be authorized. Any subsequent computations, to be made only at intervals of twelve months, shall each be subject to a similar procedure.

If the named insured disposes of his entire interest in the operations covered by the policies, or makes an assignment for the benefit of creditors, or is in a legal proceeding reorganized or declared bankrupt or insolvent, and if the retrospective premium as of the date of such change of status is greater than the standard premium for insurance to such date, the company may compute the retrospective premium as of such date, as soon as practicable thereafter.

After each computation, if the premium thus computed exceeds the premium paid for insurance subject to Plan D, the named insured shall pay the difference to the company; if less, the company shall return the difference to the named insured.

#### 5. CANCELATION

In the event of cancelation by the named insured of the policies designated in Table I, the premium for insurance subject to Plan D shall be determined in accordance with the provisions of this endorsement, provided:

(a) In computing the basic premiums and excess loss premiums for each state, the standard premium shall be computed at short rates in accordance with the customary short rate table and procedure; the minimum retrospective premium shall be the standard premium so computed.

(b) In computing the maximum retrospective premium, the standard premium shall be computed pro rata for the period the policies were in force and then extended pro rata to the normal expiration date of the policies.

In the event of cancelation by the company of such policies the premium for insurance subject to Plan D shall be determined in accordance with the provisions of this endorsement, provided if such cancelation is because of non-payment of premium by the named insured, in computing the maximum retrospective premium the standard premium shall be computed pro rata for the period the policies were in force and then extended pro rata to the normal expiration date of the policies.

In the event of cancelation of insurance on a part of the named insured's operations the retrospective premium shall be computed in accordance with the rules of Retrospective Rating Plan D which were in effect upon the effective date of the policies.

### TABLE I
#### Premium Subject to Plan D, Limitations, Loss Conversion Factor, State Tax Multipliers
#### Excess Loss Premium Factors

1. The premium for the following policies combined is to be computed in accordance with the provisions of Retrospective Rating Plan D in all states where such plan is or becomes applicable on an interstate basis, subject to the limitations specified herein:

List of Policies

PTC 604803
PTG 604823

2. Plan D does not apply to the premium for Family Protection Coverage or Protection Against Uninsured Motorist Coverage if afforded under the policies designated in paragraph 1.

in the states of

CL21131K

20-01226-scc   Doc 6-6   Filed 10/01/20   Entered 10/01/20 08:44:55   Exhibit B
Part 5 - Royal Program Policy Compendium 1971-1975   Pg 4 of 81

Page 3
(third of four pages)

## RETROSPECTIVE PREMIUM ENDORSEMENT — ONE YEAR — PLAN D
### (Continued)

TABLE I—(Continued)

3. The premium for the general liability and automobile liability insurance afforded under policies designated in paragraph 1 above for insurance in excess of the limits of liability stated below shall not be subject to plan D:

| | | |
|---|---|---|
| Automobile Liability—Bodily Injury | NOT IN PLAN | each person |
| | NOT IN PLAN | each occurrence |
| Automobile Liability—Property Damage | NOT IN PLAN | each occurrence |
| General Liability—Bodily Injury (including incidental contracts) | $ 25,000 | each person |
| | $ 25,000 | each occurrence |
| | $ 100,000 | aggregate |
| General Liability—Property Damage (including incidental contracts) | 25,000 | |
| | $ | each occurrence |
| | $ 100,000 | aggregate |
| Contractual Liability—Bodily Injury (other than incidental contracts) | $ 25,000 | each person |
| | $ 25,000 | each occurrence |
| Contractual Liability—Property Damage (other than incidental contracts) | 25,000 | |
| | $ | each occurrence |
| | $ 100,000 | aggregate |

The incurred losses to be included in computing the premium for the insurance subject to Plan D shall not include that portion of the losses actually paid and the reserves for unpaid losses which is in excess of the limits of liability stated above, but that part of the incurred losses consisting of premiums on bonds, interest accruing after entry of judgment, allocated loss adjustment expenses and expenses incurred in seeking recovery against a third party shall not be subject to such limits.

4. Combination Loss Limitation is $ _____ applicable to the following combination of insurance:

5. Compensation Loss Limitation is $ 25,000

6. Automobile Physical Damage Loss Limitation is $ _____

7. Loss Conversion Factor is 1.135

8.

| | STATE TAX MULTIPLIERS | | | | EXCESS LOSS PREMIUM FACTORS | | |
|---|---|---|---|---|---|---|---|
| Name Of State | Workmen's Compensation And Employers' Liability | Automobile Liability | General Liability | Automobile Physical Damage | Workmen's Compensation And Employers' Liability | Combination | Automobile Physical Damage |
| NEW YORK | 1.034 | NOT IN PLAN | 1.034 | NOT IN PLAN | 5.5 | NONE | NOT IN PLAN |

CL21131K

## RETROSPECTIVE PREMIUM ENDORSEMENT — ONE YEAR — PLAN D
### (Continued)

#### TABLE II—PERCENTAGES TO DETERMINE BASIC, MINIMUM, AND MAXIMUM PREMIUMS.

The basic premium, the minimum premium, and the maximum premium for insurance subject to Plan D are percentages of the standard premium for such insurance. Such percentages are computed initially upon an estimate of the standard premium and finally upon the earned standard premium for such insurance. If the standard premium lies between any two of the figures on the "Standard Premium" line, the percentages applicable shall be obtained by linear interpolation to the nearest one-tenth of 1%.

#### PERCENTAGES OF STANDARD PREMIUM

|  | 50% | 100% | 150% |
|---|---|---|---|
| Standard Premium | $ 495.994 or less | $ 991,988 | $ 1,487,982 or more |
| Minimum Premium | 40.0 | 40.0 | 40.0 |
| Maximum Premium | 125.0 | 125.0 | 125.0 |
| Basic Premium |  |  |  |
| COMPENSATION | .226 | .210 | .204 |
| GEN. LIAB. | .220 | .197 | .189 |



This endorsement is issued for attachment to and is hereby made a part of the policy designated below and is effective as of the date indicated, at 12:01 A.M., standard time at the address of the insured as stated in the policy.

| POLICY NUMBER | NAME OF COMPANY | ENDORSEMENT EFFECTIVE DATE (MONTH, DAY, YEAR) |
|---|---|---|
| PTG 604823 | ROYAL GLOBE INSURANCE COMPANY | OCT. 1, 1973 |

INSURED
ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, N.Y. ETAL

| PRODUCER | PRODUCER CODE NUMBER |
|---|---|
| CORROON & BLACK COMPANY | C-0117-420 |

_Signature of Authorized Representative_

CL21131K
STANDARD

**Roman Catholic Diocese of Rockville Centre**

**<u>Royal Policy Cover Sheet</u>**

|  |  |
|---|---|
| Insurer: | Royal Globe |
| Policy number: | PLA 102553 |
| Inception date: | 10/1/1973 |
| Term at issuance: | 1 year |
| Page count: | 15 |
| Contents: | Schedule of Underlying- 1pg |
|  | Policy jacket- 7 pgs |
|  | Coverage part- 2 pgs |
|  | Endorsement- 5 pgs |

ROYAL PROGRAM PART OF POLICIES LR01602593
(CONTINUED)

## SCHEDULE OF UNDERLYING INSURANCE

| TYPE OF POLICY | POLICY NUMBER | INSURER | APPLICABLE LIMITS |
|---|---|---|---|
| | | | VARIOUS LIMITS OF LIABILITY BUT NOT LESS THAN: |
| C) AUTOMOBILE LIABILITY | PTA 604813 12/12/73/74 | ROYAL GLOBE INS. CO. | AUTOMOBILE LIABILITY BODILY INJURY LIAB. $1,000,000 EA. PER. $5,000,000 EA. OCC. PROPERTY DAMAGE LIAB. $1,000,000 EA. OCC. |
| D) AUTOMOBILE LIABILITY | PTB 604843 12/12/73/74 | ROYAL GLOBE INS. CO. | VARIOUS NOT LESS THAN BODILY INJURY LIAB. $250,000 EA. PERSON $1,000,000 EA. OCC. PROPERTY DAMAGE LIAB. $25,000 EA. OCC. |

IT IS STIPULATED THAT FOR THE PURPOSES OF APPLICATION OF UNDERLYING
INSURANCE, THAT VARIOUS MISCELLANEOUS AUTOMOBILE LIABILITY POLICIES &
CERTIFICATES ARE IN EXISTENCE AS ISSUED BY THE ROYAL GLOBE INSURANCE
COMPANY IN ADDITION TO THE POLICIES LISTED IN THIS SCHEDULE. SUCH
AUTOMOBILE LIABILITY POLICIES ARE HEREBY DECLARED AS UNDERLYING
INSURANCE. THE "APPLICABLE LIMITS" OF SUCH POLICIES SHALL BE NO LESS
THAN 250/1000.B.I.
    25,000  P.D.

# Royal-Globe Insurance

## COMPANIES

EXECUTIVE OFFICE:
150 WILLIAM STREET
NEW YORK, NEW YORK 10038

## SELECT-COVER POLICY (General Provisions)

These GENERAL PROVISIONS, the DECLARATIONS and the coverage PART(S) and endorsements referred to in the DECLARATIONS complete the contract of insurance.

The company designated in the DECLARATIONS made a part hereof, (a stock insurance company, herein called the company), in consideration of the payment of the premium, in reliance upon the statements in the DECLARATIONS, and subject to all the terms of this policy and its designated coverage PART(S), agrees with the named insured as follows and as contained in the PART(S) designated in the declarations.

## SUPPLEMENTARY PAYMENTS

The company will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the company, all costs taxed against the insured in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost

of bail bonds required of the insured because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the company shall have no obligation to apply for or furnish any such bonds;

(c) expenses incurred by the insured for first aid to others at the time of an accident, for bodily injury to which this policy applies;

(d) reasonable expenses incurred by the insured at the company's request in assisting the company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $25 per day.

## SPECIAL ADDITIONAL EXCLUSION

The following exclusion modifies the provisions of the policy relating to ALL LIABILITY AND MEDICAL PAYMENTS INSURANCE OTHER THAN COMPREHENSIVE PERSONAL AND FARMER'S COMPREHENSIVE PERSONAL INSURANCE.

## NUCLEAR ENERGY LIABILITY EXCLUSION

### (Broad Form)

It is agreed that:

I.  The policy does not apply:

    A.  Under any Liability Coverage, to bodily injury or property damage

        (1)  with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2)  resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the haz-

CL 67901C

20-01226-scc Doc 6-6 Filed 10/01/20 Entered 10/01/20 08:44:55 Exhibit

C. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

   (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

   (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   (3) the bodily injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

II. As used in this endorsement:

"hazardous properties" includes radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

   (a) any nuclear reactor,

   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

NEW YORK EXCEPTION: This exclusion does not apply to Automobile Liability Insurance in New York State.

# DEFINITIONS

When used in this policy (including endorsements forming a part hereof):

"automobile" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment;

"bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

"completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The completed operations hazard does not include bodily injury or property damage arising out of

(a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations";

CL 67901C

"elevator" means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an automobile servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet.

"incidental contract" means any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) elevator maintenance agreement;

"insured" means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability;

"mobile equipment" means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the named insured, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;

"named insured" means the person or organization named in Item 1. of the declarations of this policy;

"named insured's products" means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but "named insured's products" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;

"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

"policy territory" means:

(1) the United States of America, its territories or possessions, or Canada, or

(2) international waters or air space, provided the bodily injury or property damage does not occur in the course of travel or transportation to or from any other country, state or nation, or

(3) anywhere in the world with respect to damages because of bodily injury or property damage arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above, provided the original suit for such damages is brought within such territory;

"products hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others;

"property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

## CONDITIONS

1. Premium All premiums for this policy shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

Premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the named insured, shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the company shall return to the named insured the unearned portion paid by the named insured.

The named insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct.

2. Inspection and Audit The company shall be permitted but not obligated to inspect the named insured's property and operations at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the named insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The company may examine and audit the named insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

3. Financial Responsibility Laws When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The insured agrees to reimburse the company for any pay-

ment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

4. Insured's Duties in the Event of Occurrence, Claim or Suit

(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c) The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

5. Action Against Company No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against

CL 67901C

the **insured** to determine the **insured's** liability, nor shall the company be impleaded by the **insured** or his legal representative. Bankruptcy or insolvency of the **insured** or of the **insured's** estate shall not relieve the company of any of its obligations hereunder.

**6. Other Insurance** The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the **insured** has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares.** If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

**7. Subrogation** In the event of any payment under this policy, the company shall be subrogated to all the **insured's** rights of recovery therefor against any person or organization and the **insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **insured** shall do nothing after loss to prejudice such rights.

**8. Changes** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

**9. Assignment** Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the **named insured** shall die, such insurance as is afforded by this policy shall apply (1) to the **named insured's** legal representative, as the **named insured**, but only while acting within the scope of his duties as such, and (2) with respect to the property of the **named insured**, to the person having proper temporary custody thereof, as **insured**, but only until the appointment and qualification of the legal representative.

**10. Three Year Policy** If this policy is issued for a period of three years any limit of the company's liability stated in this policy as "aggregate" shall apply separately to each consecutive annual period thereof.

**11. Cancellation** This policy may be cancelled by the **named insured** by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the **named insured** at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the **named insured** or by the company shall be equivalent to mailing.

If the **named insured** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**12. Declarations** By acceptance of this policy, the **named insured** agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

**In Witness Whereof,** the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the declarations page by a duly authorized representative of the company.

*Joseph A. Banbury*

*Corporate Secretary*

*J. Ray Nissoros*

*President*

## CANCELLATION CONDITION—AMENDMENT OF FIRST PARAGRAPH

### Applicable to policies issued or delivered in Michigan

It is agreed that with respect to the "Cancellation" provisions of the policy:

1. The words "at the address shown in this policy", appearing in the first paragraph of the "Cancellation" Condition, are amended to read "at his address last known to the company or its authorized agent".

2. The provisions (if forming a part of the policy) of the endorsement entitled "Amendment of Termination Provisions (Michigan)" apply as stated therein.

3. The provisions, if any, forming a part of the policy which (by endorsement or otherwise) amend the "Cancellation" provisions of the policy other than as stated or designated in this endorsement are deleted.

A 0002
G 503

CL 67901C

THE COMPANY NAMED IN THE DECLARATIONS FORMING SECTION I HEREOF, (a stock insurance company, herein called the Company), AGREES WITH THE **NAMED INSURED**, named in the Declarations, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to all of the terms of this policy:

## Section II—INSURING AGREEMENTS

### 1. Coverage

To indemnify the **Insured** for all sums which the **Insured** shall become legally obligated to pay as damages because of:

(a) **Personal Injury**

(b) **Property Damage**

(c) **Advertising Liability**

caused by an **occurrence** which takes place during the policy period anywhere in the world.

### 2. Defense, Supplementary Payments

With respect to any **occurrence** not covered by underlying insurance specified in the Declarations or any other underlying insurance collectible by the **Insured**, but covered by the terms and conditions of this policy, without regard to the retained limit contained herein, the Company shall

(a) have the right and duty to defend any suit against the **Insured** seeking damages on account thereof, even if such suit is groundless, false or fraudulent, but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

(b) pay premiums on appeal bonds required in any such suit, and premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, but the Company shall have no obligation to apply for or furnish any such bonds;

(c) pay all expenses incurred by the Company, all costs taxed against the **Insured** in any such suit and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon;

(d) reimburse the **Insured** for all reasonable expenses, other than loss of earnings incurred at the Company's request;

and the amounts so incurred, except settlements of claims and suits are payable by the Company in addition to the applicable limit of liability of this policy.

In jurisdictions where the Company may be prevented by law or otherwise from carrying out this agreement the Company shall pay any expense incurred with its written consent in accordance with this agreement. The **Insured** shall promptly reimburse the Company for all sums paid on behalf of the **Insured** within the retained limit specified in the Declarations.

### 3. Limit of Liability

With respect to coverages 1(a), 1(b) or 1(c), or any combination thereof, the Company's liability shall be only for the **ultimate net loss**, resulting from any one **occurrence** in excess of either;

(a) the amount recoverable under underlying insurance as stated in the Declarations and the amount recoverable under any other underlying insurance collectible by the **Insured**, or

(b) the retained limit as stated in the Declarations.

All **personal injury, property damage** and **advertising liability** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **occurrence**.

In the event of reduction or exhaustion of the aggregate limits of liability under the underlying insurance by reason of losses paid thereunder, this policy shall:

(1) in the event of reduction, pay the excess of the reduced underlying insurance, and

(2) in the event of exhaustion, continue in force as underlying insurance as stated in the Declarations.

In no event shall the Company be liable for an amount in excess of that set forth in the Declarations on account of each **occurrence** happening during the period commencing with the effective or anniversary date of this policy—subject to a limit as stated in the Declarations in the aggregate for all claims arising under the insurance afforded during each consecutive twelve (12) months of the policy period.

## Section III—EXCLUSIONS

This policy does not apply:

1. to any obligation for which the **Insured** or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

2. To **advertising liability** resulting from:

   (a) failure of performance of contract other than unauthorized appropriation of ideas based upon alleged breach of implied contract;

   (b) infringement of registered trade mark, service mark or trade name, other than titles or slogans, by use thereof as the registered trade mark, service mark or trade name of goods or services sold, offered for sale or advertised;

   (c) incorrect description of any article or commodity;

   (d) mistake in advertised price;

3. to **property damage** to property owned by the **Insured;**

4. to **property damage** to the Named **Insured's** products arising out of such products or any part of such products;

5. to **property damage** to work performed by or on behalf of the **Named Insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

6. to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the **Named Insured's** products or work completed by or for the **Named Insured** or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

7. to **personal injury or property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of

(a) watercraft over 50 feet in length, if the **occurrence** takes place away from premises, owned, rented or controlled by the **Named Insured**, or

(b) aircraft,

if such watercraft or aircraft is owned by, loaned or rented to or hired without crew by or on behalf of the **Named Insured**; but this exclusion shall not apply to (1) operations performed by independent contractors, or (2) **personal injury** to any employee of the **Insured** arising out of and in the course of his employment by the **Insured**;

8. to loss of use of tangible property which has not been physically injured or destroyed resulting from

   (a) a delay in or lack of performance by or on behalf of the **Named Insured** of any contract or agreement, or

   (b) the failure of the **Named Insured's** products or work performed by or on behalf of the **Named Insured** to meet the level of performance, quality fitness or durability warranted or represented by the **Named Insured:**

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the **Named Insured's** products or work performed by or on behalf of the **Named Insured** after such products or work have been put to use by any person or organization other than an **Insured;**

9. to **personal injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

CL66274B—Text

10. to **personal injury** or **property damage** due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to liability assumed by the **Insured** under contract or agreement;

11. to **personal injury** or **property damage**

(a) with respect to which an **Insured** under the policy is also an **Insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the **Insured** is, or had this policy not been issued would be entitled to indemnity from the United States of America, or any agency thereof, with any person or organization;

(c) resulting from the **hazardous properties** of **nuclear material**, if

(1) the **nuclear material** (a) is at any **nuclear facility** owned by, or operated by or on behalf of, an **Insured** or (b) has been discharged or dispersed therefrom;

(2) the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

(3) the **personal injury** or **property damage** arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c)(3) applies only to **property damage** to such **nuclear facility** and any property thereat;

provided that the words **property damage** include all forms of radio-active contamination of property.

As used in this exclusion (11)

**hazardous properties** include radioactive, toxic or explosive properties;

**nuclear material** means source material, special nuclear material or by-product material;

**source material, special nuclear material** and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

**waste** means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

**nuclear facility** means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

## Section IV—DEFINITIONS

1. **"Named Insured"** and **"Insured"**

The words **Named Insured** includes any subsidiary company of the **Named Insured** and any other company coming under the **Named Insured's** control of which it assumes active management.

Each of the following is an **Insured** under this policy to the extent set forth below:

(a) any executive officer, director or stockholder of the **Named Insured** while acting in his capacity as such, and any organization or proprietor with respect to real estate management for the **Named Insured**,

(b) any employee of the **Named Insured**, while acting in his capacity as such when the **Named Insured** so directs the Company in writing upon a claim being made against such employee,

(c) if the **Named Insured** is designated as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor,

(d) if the **Named Insured** is designated as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such,

(e) any additional interest, other than the **Named Insured** or the **Insured** as specified in item 3 of the Declarations.

2. **"Personal Injury"** means the following, including death resulting therefrom: Bodily Injury, Mental Injury, Mental Anguish, Shock, Sickness, Disease, Disability, False Arrest, False Imprisonment, Wrongful Eviction, Wrongful Entry, Wrongful Detention, Malicious Prosecution, Discrimination (unless prohibited by law), Humiliation; also Invasion of Rights of Privacy, Libel, Slander or Defamation of Character, except that which arises out of any **Advertising** activities.

3. **"Property Damage"** means (a) physical injury to or destruction of tangible property including the loss of use thereof at any time resulting therefrom, or (b) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence**.

4. **"Advertising Liability"** means: Invasion of Rights of Privacy, Libel, Slander or Defamation of Character, any infringement of copyright, title or slogan, and piracy, unfair competition, idea misappropriation under an implied contract—committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the **Named Insured's** advertising activities.

5. **"Occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in **personal injury, property damage** or **advertising liability** neither expected nor intended from the standpoint of the **Insured**;

6. **"Ultimate Net Loss"** means: the sum actually paid or payable in cash in the settlement or satisfaction of losses for which the **Insured** is liable either through adjudication or by compromise with the written consent of the Company, after making proper deduction for all recoveries and salvages collectible, but excludes all loss expenses and legal expenses (including attorney's fees, court costs and interest on any judgment or award) and all salaries of employees and office expenses of the **Insured**, the Company or any underlying insurer so incurred.

## Section V—CONDITIONS

1. **Premium Computation**  The premium stated in the Declarations is an advance premium unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the **Named Insured** shall pay the excess to the Company; if less, the Company shall return to the **Named Insured** the unearned portion paid by such **Insured**. The **Named Insured** shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period or at such times during the policy period as the Company may direct.

2. **Additional "Named Insured"**  In the event of an additional **Named Insured** being added to the coverage under the underlying insurance during the policy period, prompt notice shall be given the Company and if an additional premium has been charged for such addition on the underlying insurance, the Company shall be entitled to charge an appropriate additional premium hereon.

3. **Prior Insurance and Non-Cumulation of Liability**

(a) It is agreed that if any loss is also covered in whole or in part under any other excess policy issued to the **Insured** prior to the inception date hereof, the Company's limit of liability as stated in the Declarations shall be reduced by any amounts due to the **Insured** on account of such loss under such prior insurance.

CL66274B—Text

(b) Subject to paragraph (a) above and to all other terms and conditions of this policy, if a claim arising out of an **occurrence** insured hereunder, is continuing at the time of termination of this policy, the Company will continue to insure the liability of the **Insured** with respect to such claim without payment of additional premium.

**4. Cross Liability**   In the event of claims being made by reason of **personal injury** and/or **property damage** suffered by one **Insured** herein for which another **Insured** herein is or may be liable, this policy shall cover such **Insured** against whom a claim is made or may be made in the same manner as if separate policies had been issued to each **Insured** herein. Nothing contained herein shall operate to increase the Company's limit of liability as set forth in Insuring Agreement 3.

**5. Notice of "Occurrence"**   Whenever it appears that an **occurrence** covered hereunder is likely to involve the Company, written notice shall be sent to the Company as soon as practicable. Such notice shall contain particulars sufficient to identify the **Insured** and also reasonably obtainable information respecting the time, place and circumstances of the **occurrence**.

**6. Inspection and Audit**   The Company shall be permitted but not obligated to inspect the **Insured's** property and operations but neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the **Insured** or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the **Insured's** books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**7. Maintenance of Underlying Insurance**   Each policy referred to in the attached schedule of underlying insurance including renewal or replacement thereof, not more restrictive, shall be maintained in full effect during this policy period, except for any reduction of the aggregate limits contained therein solely by payment of losses during this policy period. Failure of the **Named Insured** to comply with the foregoing shall not invalidate this policy but in the event of such failure the Company shall be liable only to the extent that it would have been liable had the **Named Insured** complied therewith.

**Assistance and Cooperation**   Except as provided in Insuring Agreement 2, the Company shall not be called upon to assume charge of the settlement or defense of any claim made, suit brought or proceeding instituted against the **Insured**; but the Company shall have the right and shall be given the opportunity to associate with the **Insured** in the denfense and control of any claim, suit or proceeding reasonably likely to involve the Company. In such event the **Insured** and the Company shall cooperate fully.

**9. Appeals**   In the event the **Insured** or the **Insured's** underlying insurer/s elect not to appeal a judgment in excess of the underlying limits, the Company may elect to make such appeal at its cost and expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of the Company for **ultimate net loss** exceed the amount set forth in the Declarations for any one **occurrence** and in addition the cost and expense of such appeal.

**10. Action Against Company**   No action shall lie against the Company with respect to any one **occurrence** unless as a condition precedent thereto; the **Insured** shall have fully complied with all the terms of this policy, nor until the amount of the **Insured's** obligation to pay an amount of **ultimate net loss** in excess of the underlying or retained limit shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the Company. The **Insured shall** make a definite claim for any loss for which the Company may be liable within twelve (12) months after such final determination. Claim for any subsequent payments made by the **Insured** on account of the same **occurrence** shall be similarly made. All losses covered by this policy shall be due and payable within thirty (30) days after they are respectively claimed and proven in conformity with this policy.

**11. Other Insurance**   If other valid and collectible insurance with any other insurer is available to the **Insured** covering a loss also covered by this policy, other than insurance that is specifically process of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

**12. Subrogation**   Inasmuch as this policy is excess coverage, the **Insured's** right of recovery against any person, firm or corporation cannot be exclusively subrogated to the Company; therefore, in case of any payment hereunder, the Company will act in concert with all other interests, including the **Insured**, concerned in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests, including the **Insured**, that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder, lastly, the interests, including the **Insured**, of which this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests, including the **Insured**, concerned, in the ratio of their respective recoveries as finally settled.

**13. Changes**   Notice to or knowledge possessed by any person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed except by endorsement issued to form a part of this policy.

**14. Assignment**   Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon. If, however, the **Named Insured** shall die or be adjudged bankrupt or insolvent, this policy, unless cancelled, shall cover the **Insured's** legal representative for the unexpired portion of such period.

**15. Cancellation**   This policy may be canceled by the **Named Insured** by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the Company by mailing to the **Named Insured** at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such notice either by the **Named Insured** or by the Company shall be equivalent to mailing.

If the **Named Insured** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable thereafter, but payment or tender of unearned premium is not a condition of cancellation.

**16. Bankruptcy or Insolvency**   Bankruptcy or insolvency of the **Insured** shall not relieve the Company of any of its obligations hereunder.

**17. Arbitration**   Except with respect to liability assumed by the **Insured** under a lease of premises, easement agreement, agreement required by municipal ordinance, sidetrack agreement or elevator or escalator maintenance agreement, the company shall not be liable under this policy for damages awarded in arbitration other than an arbitration proceeding wherein an indemnitee under a written contract or agreement seeks damages against the **Insured** on account thereof and wherein the Company is entitled to exercise the **Insured's** rights in the choice of arbitrators and in the conduct of such arbitration proceedings.

**In Witness Whereof,** the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the declarations page by a duly authorized representative of the Company.

*Joseph A. Banbury*
Corporate Secretary

*H. Clay Johnson*
*President/U.S. Manager*

CL66274B—Text



ROYAL-GLOBE INSURANCE COMPANIE

COMPREHENSIVE GENERAL LIABILITY INSURANCE

**Part I**

This coverage PART, the DECLARATIONS and other coverage PART(S), or endorsements referred to herein, and the GENERAL PROVISIONS complete thi contract of insurance.

## I. COVERAGE A — BODILY INJURY LIABILITY
## COVERAGE B — PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of

Coverage A. **bodily injury** or
Coverage B. **property damage**

to which this insurance applies, caused by an **occurence**, and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

### Exclusions

This insurance does not apply:

(a) to liability assumed by the **insured** under any contract or agreement except an **incidental contract**; but this exclusion does not apply to a warranty of fitness or quality of the **named insured's products** or a warranty that work performed by or on behalf of the **named insured** will be done in a workmanlike manner;

(b) to **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of

(1) any **automobile** or aircraft owned or operated by or rented or loaned to any **insured**, or

(2) any other **automobile** or aircraft operated by any person in the course of his employment by any **insured**;

but this exclusion does not apply to the parking of an **automobile** on premises owned by, rented to or controlled by the **named insured** or the ways immediately adjoining, if such **automobile** is not owned by or rented or loaned to any **insured**;

(c) to **bodily injury** or **property damage** arising out of (1) the ownership, maintenance, operation, use, loading or unloading of any **mobile equipment** while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (2) the operation or use of any snowmobile or trailer designed for use therewith;

(d) to **bodily injury** or **property damage** arising out of and in the course of the transportation of **mobile equipment** by an **automobile** owned or operated by or rented or loaned to any **insured**;

(e) to **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of

(1) any watercraft owned or operated by or rented or loaned to any **insured**, or

(2) any other watercraft operated by any person in the course of his employment by any **insured**;

but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the **named insured**;

(f) to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

(g) to **bodily injury** or **property damage** due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to

(1) liability assumed by the **insured** under an **incidental contract**, or

(2) expenses for first aid under the Supplementary Payments provision;

(h) to **bodily injury** or **property damage** for which the **insured** or his indemnitee may be held liable

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes,

if such liability is imposed

(i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the **insured** or his indemnitee as an owner or lessor described in (2) above;

(i) to any obligation for which the **insured** or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(j) to **bodily injury** to any employee of the **insured** arising out of and in the course of his employment by the **insured** or to any obligation of the **insured** to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the **insured** under an **incidental contract**;

(k) to **property damage** to

(1) property owned or occupied by or rented to the **insured**,

(2) property used by the **insured**, or

(3) property in the care, custody or control of the **insured** or as to which the **insured** is for any purpose exercising physical control;

but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to **property damage** (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the **named insured**;

(l) to **property damage** to premises alienated by the **named insured** arising out of such premises or any part thereof;

(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the **named insured** of any contract or agreement, or

Continued From Reverse Side

(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured;

(n) to property damage to the named insured's products arising out of such products or any part of such products;

(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

## II. PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below:

(a) if the named insured is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the named insured with respect to the conduct of such a business;

(b) if the named insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the named insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(d) any person (other than an employee of the named insured) or organization while acting as real estate manager for the named insured; and

(e) with respect to the operation, for the purpose of locomotion upon a public highway, of mobile equipment registered under any motor vehicle registration law,

(i) an employee of the named insured while operating any such equipment in the course of his employment, and

(ii) any other person while operating with the permission of the named insured any such equipment registered in the name of the named insured and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

provided that no person or organization shall be an insured under this paragraph (e) with respect to:

(1) bodily injury to any fellow employee of such person injured in the course of his employment, or

(2) property damage to property owned by, rented to, in charge of or occupied by the named insured or the employer of any person described in subparagraph (ii).

This insurance does not apply to bodily injury or property damage arising out of the conduct of any partnership or joint venture of which the insured is a partner or member and which is not designated in this policy as a named insured.

## III. LIMITS OF LIABILITY

Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the company's liability is limited as follows:

Coverage A—The total liability of the company for all damages, including damages for care and loss of services, because of bodily injury sustained by one or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the declarations as applicable to "each occurrence".

Subject to the above provision respecting "each occurrence", the total liability of the company for all damages because of (1) all bodily injury included within the completed operations hazard and (2) all bodily injury included within the products hazard shall not exceed the limit of bodily injury liability stated in the declarations as "aggregate".

Coverage B—The total liability of the company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the declarations as applicable to "each occurence".

Subject to the above provision respecting "each occurrence", the total liability of the company for all damages because of all property damage to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of property damage liability stated in the declarations as "aggregate":

(1) all property damage arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including property damage for which liability is assumed under any incidental contract relating to such premises or operations, but excluding property damage included in subparagraph (2) below;

(2) all property damage arising out of and occurring in the course of operations performed for the named insured by independent contractors and general supervision thereof by the named insured, including any such property damage for which liability is assumed under any incidental contract relating to such operations, but this subparagraph (2) does not include property damage arising out of maintenance or repairs at premises owned by or rented to the named insured or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) all property damage included within the products hazard and all property damage included within the completed operations hazard.

Such aggregate limit shall apply separately to the property damage described in subparagraphs (1), (2) and (3) above, and under subparagraphs (1) and (2), separately with respect to each project away from premises owned by or rented to the named insured.

Coverages A and B—For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

## IV. POLICY TERRITORY

This insurance applies only to bodily injury or property damage which occurs within the policy territory.

CL 67905A

**ENDORSEMENT**

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

| COMPANY | PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---|---|---|---|
| | ☐ Add'l.  ☐ Return $ | | PLA 102553 |

Named Insured (and address, zip code, when necessary for mailing)

Producer (and address, zip code, for mailing)

---

### ENDORSEMENT # 1

#### NAMED INSURED

IN CONSIDERATION OF THE PREMIUM AT WHICH THIS POLICY IS WRITTEN, IT IS AGREED THAT DECLARATIONS- ITEM 1- "NAMED INSURED" IS HEREBY COMPLETED TO READ AS FOLLOWS:

ITEM 1- NAME INSURED

THE NAMED INSURED INCLUDES ALL INSUREDS NAMED IN THE COVERAGE CERTIFICATES ATTACHED TO AND MADE A PART OF UNDERLYING ROYAL GLOBE INSURANCE COMPANY POLICIES.



**ENDORSEMENT**

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

| COMPANY | PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---|---|---|---|
| ROYAL GLOBE INSURANCE COMPANY | ☐ Add'l. ☐ Return $ | | PLA 102553 |

Named Insured (and address, zip code, when necessary for mailing)

ROMAN CATHOLIC DIOCESE
OF ROCKVILLE CENTRE

Producer (and address, zip code, for mailing)

---

## REVISED ENDORSEMENT #2

### RETAINED LIMIT

IN CONSIDERATION OF THE PREMIUM AT WHICH THIS POLICY
IS WRITTEN, IT IS AGREED THAT THE RETAINED LIMITS
UNDER ITEM #4 OF THE DECLARATIONS PAGE IS TO READ AS
FOLLOWS:

ITEM #4 - RETAINED LIMITS

25,000

**ENDORSEMENT**

Type policy number only, in this *section* above the heavy line, IF issued with policy and attachment in policy declarations.

Unless otherwise stated, this endorsement forms a **part** of the policy to which attached as of issue, provided such attachment **is stated in** the policy declarations. Otherwise, this endorsement is issued for attachment **to** and forms a part of the policy numbered below, effective only on the date **indicated** on this endorsement but at the same time or hour of the day as the **policy became** effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

| COMPANY ROYAL GLOBE INSURANCE COMPANY | PREMIUM ☐ Add'l. ☐ Return $ | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & Nt PLA 10255 |
|---|---|---|---|

Named Insured (and address, zip code, when necessary for mailing)

Producer (and address, zip code, for mailing)

ROMAN CATHOLIC DIOCESE
OF ROCKVILLE CENTRE

ENDORSEMENT #2A

REPLACES ENDORSEMENT #1

NAMED INSURED

IN CONSIDERATION OF THE PREMIUM AT WHICH THIS POLICY
IS WRITTEN, IT IS AGREED THAT DECLARATIONS - ITEM I -
"NAMED INSURED" IS HEREBY COMPLETED TO READ AS FOLLOWS:

ITEM I - "NAMED INSURED":

THE NAMED INSURED INCLUDES ALL INSUREDS
AND ADDITIONAL INTERESTS NAMED IN THE
COVERAGE CERTIFICATES ATTACHED TO AND
MADE A PART OF UNDERLYING ROYAL GLOBE
INSURANCE COMPANY POLICIES.

CL 20030R—Sets

**ENDORSEMENT**

Type policy number only, *in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.*

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

| COMPANY | PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---|---|---|---|
| | ☐ Add'l.  ☐ Return $ | | PLA 102553 |

Named Insured (and address, zip code, when necessary for mailing)

Producer (and address, zip code, for mailing)

## ENDORSEMENT # 3

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS AGREED THAT ITEM 15 OF CONDITIONS SECTION V- "CANCELLATION", IS AMENDED AS FOLLOWS:

15. <u>CANCELLATION</u> - THIS POLICY MAY BE CANCELLED BY THE NAMED INSURED BY SURRENDER THEREOF TO THE COMPANY OR ANY OF ITS AUTHORIZED AGENTS, OR BY MAILING TO THE COMPANY WRITTEN NOTICE STATING WHEN THEREAFTER THE CANCELLATION SHALL BE EFFECTIVE. THIS POLICY MAY BE CANCELLED BY THE COMPANY BY MAILING TO THE NAMED INSURED, AT THE ADDRESS SHOWN IN THIS POLICY, WRITTEN NOTICE STATING WHEN NOT LESS THAN NINETY (90) DAYS THEREAFTER, SUCH CANCELLATION SHALL BE EFFECTIVE. THE MAILING OF NOTICE AS AFORESAID SHALL BE SUFFICIENT PROOF OF NOTICE, THE TIME OF SURREN- DER OR THE EFFECTIVE DATE AND HOUR OF CANCELLATION STATED IN THE NOTICE, SHALL BECOME THE END OF THE POLICY PERIOD. DELIVERY OF SUCH NOTICE, EITHER BY THE NAMED INSURED OR BY THE COMPANY, SHALL BE EQUIVALENT TO MAILING.

IF THE NAMED INSURED CANCELS, EARNED PREMIUM SHALL BE COM- PUTED IN ACCORDANCE WITH THE CUSTOMARY SHORT RATE TABLE AND PROCEDURE. IF THE COMPANY CANCELS, EARNED PREMIUM SHALL BE COMPUTED PRO RATA. PREMIUM ADJUSTMENT MAY BE MADE EITHER AT THE TIME CANCELLATION IS EFFECTED OR AS SOON AS PRACTICABLE THEREAFTER, BUT PAYMENT OR TENDER OF UNEARNED PREMIUM IS NOT A CONDITION OF CANCELLATION.

CL 20030R—Sets

## ENDORSEMENT

ROYAL-GLOBE
INSURANCE ®

*Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.*

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

| COMPANY | PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---|---|---|---|
| | ☐ Add'l.   ☐ Return $ | | PLA 102553 |

Named Insured (and address, zip code, when necessary for mailing)

Producer (and address, zip code, for mailing)

### ENDORSEMENT # 4

IT IS AGREED THAT THE INSURANCE PROVIDED BY THIS POLICY DOES NOT APPLY TO PERSONAL INJURY OR PROPERTY DAMAGE ARISING OUT OF RIOT, CIVIL COMMOTION OR MOB ACTION OR OUT OF ANY ACT OR OMISSION IN CONNECTION WITH THE PREVENTION OR SUPPRESSION OF ANY OF THE FOREGOING.

CL 20029Q—Sets

**Roman Catholic Diocese of Rockville Centre**

**<u>Royal Policy Cover Sheet</u>**

|  |  |
|---|---|
| Insurer: | Royal Globe |
| Policy number: | PTG 604824 |
| Inception date: | 10/1/1974 |
| Term at issuance: | 1 year |
| Page count: | 18 |
| Contents: | Declaration- 1 pg |
|  | Policy jacket- 2 pgs |
|  | Coverage part- 3 pgs |
|  | Endorsement- 12 pgs |

**SELECT-COVER POLICY (Declarations)**                    **ROYAL-GLOBE INSURANCE COMPANIES**

These DECLARATIONS when combined with the GENERAL PROVISIONS and the coverage PART(S) and endorsements designated herein, complete the contract of insurance numbered below. Coverage is provided by the Company designated by entry of "X" before the company name.

Company Symbol     PTG 604824

### SELECT COVER POLICY

| | | |
|---|---|---|
| ☐ Royal Indemnity Company | ☐ Globe Indemnity Company | ☐ The London & Lancashire Insurance Company, Limited |
| ☒ Royal Globe Insurance Company | ☐ Safeguard Insurance Company | ☐ The Liverpool & London & Globe Insurance Company Limited |
| ☐ Royal Insurance Company, Limited | ☐ Newark Insurance Company | ☐ American and Foreign Insurance Company |

**Item 1. Named Insured & Address**
ROMAN CATHOLIC DIOCESE OF
ROCKVILLE CENTRE, N.Y. AND AS
PER CERTIFICATES ATTACHED
253 SUNRISE HIGHWAY
ROCKVILLE CENTRE, N.Y.

CORROON & BLACK COMPANY
150 WILLIAM STREET
NEW YORK, N.Y.    10038

**Item 2. POLICY PERIOD**
From OCT. 1, 1974    To OCT. 1, 1975    12:01 A.M. Standard Time at the address of the Named Insured as stated in Item 1

BUSINESS OF THE NAMED INSURED
RELIGIOUS ORGANIZATION

THE NAMED INSURED IS
☐ Individual    ☐ Partnership    ☐ Corporation    ☐ Joint Venture    ☒ Other

LOCATION OF ALL PREMISES OWNED, RENTED OR CONTROLLED BY THE NAMED INSURED (ENTER "SAME" IF SAME LOCATION AS ABOVE ADDRESS)

PART OCCUPIED BY NAMED INSURER

INSURED'S INTEREST (OWNER TENANT (GEN) LESSEE OTHER SPECIFY)

### AS PER CERTIFICATES ATTACHED

**Item 3a.** The insurance afforded is only with respect to such of the following coverage Part(s) as are indicated by entry of an "X" below

| | | |
|---|---|---|
| ☒ Part 1 – Comprehensive General Liability Insurance | ☐ Part 6 – Comprehensive Personal Insurance | ☐ Part 11 – Automobile Medical Payments Insurance |
| ☐ Part 2 – Manufacturers' and Contractors' Liability Insurance | ☐ Part 7 – Owners' and Contractors' Protective Liability Insurance | ☐ Part 12 – Protection Against Uninsured Motorists Insurance |
| ☐ Part 3 – Owners' Landlords' and Tenants' Liability Insurance | ☐ Part 8 – Contractual Liability Insurance | ☐ Part 13 – Automobile Physical Insurance (Fire Theft etc.) |
| ☐ Part 4 – Completed Operations and Products Liability Insurance | ☐ Part 9 – Comprehensive Automobile Liability Insurance | ☐ Part 14 – Automobile Physical Damage Insurance (Non Fleet) |
| ☐ Part 5 – Premises Medical Payments Insurance | ☐ Part 10 – Garage Insurance | ☐ Part 15 – Automobile Physical Damage Insurance (Dealers) |

OTHER (SPECIFY PART NO. & TITLE)
☒ PART 16 – PERSONAL INJURY LIABILITY INSURANCE

**Item 3b.** The insurance afforded is only with respect to such of the following coverage(s) contained in the coverage Part(s) designated above, as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of the policy having reference thereto.

| APPLICABLE TO PARTS | COVERAGES | LIMITS OF LIABILITY | | | ADVANCE PREMIUM |
|---|---|---|---|---|---|
| | | EACH PERSON | EACH OCCURRENCE | AGGREGATE | |
| 1 through 5 Other than Automobile | Bodily Injury Liability | X X X X X | AS PER CERTIFICATES ATTACHED | | |
| | Property Damage Liability | X X X X X | AS PER CERTIFICATES ATTACHED | | |
| | Premises Medical Payments | | | X X X X X X | $ |
| 9 (Automobile) | Bodily Injury Liability | | | X X X X X X | $ |
| | Property Damage Liability | X X X X X | | X X X X X X | $ |
| Other | | | See Applicable Coverage Part | | $ |

ENDORSEMENTS ATTACHED AT TIME OF ISSUE
G 106

$

| If policy period is more than one year, premium is payable | EFFECTIVE DATE $ | 1ST ANNIVERSARY $ | 2nd ANNIVERSARY $ | Total Advance Premium | $1,114,166.00 |
|---|---|---|---|---|---|

* EACH ACCIDENT AS RESPECTS PREMISES MEDICAL PAYMENTS

Countersigned by _____
Authorized Representative

CL 679020

ROY 05571



# Royal-Globe Insurance
## COMPANIES

EXECUTIVE OFFICE:
150 WILLIAM STREET
NEW YORK, NEW YORK 10038

**SELECT-COVER POLICY (General Provisions)**

This is your new Select-Cover Policy. Please read it carefully as it varies substantially from your former policy.

CL-68016A

ROMAN CATHOLIC DIOCESE OF
ROCKVILLE CENTRE, N.Y. AND AS
PER CERTIFICATES ATTACHED
'53 SUNRISE HIGHWAY

These GENERAL PROVISIONS, the DECLARATIONS and the coverage PART(S) and endorsements referred to in the DECLARATIONS complete the contract of insurance.

The company designated in the DECLARATIONS made a part hereof, (a stock insurance company, herein called the company), in consideration of the payment of the premium, in reliance upon the statements in the DECLARATIONS, and subject to all the terms of this policy and its designated coverage PART(S), agrees with the named insured as follows and as contained in the PART(S) designated in the declarations.

## SUPPLEMENTARY PAYMENTS

The company will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the company, all costs taxed against the insured in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost

of bail bonds required of the insured because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the company shall have no obligation to apply for or furnish any such bonds;

(c) expenses incurred by the insured for first aid to others at the time of an accident, for bodily injury to which this policy applies;

(d) reasonable expenses incurred by the insured at the company's request in assisting the company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $25 per day.

## SPECIAL ADDITIONAL EXCLUSION

The following exclusion modifies the provisions of the policy relating to ALL LIABILITY AND MEDICAL PAYMENTS INSURANCE OTHER THAN COMPREHENSIVE PERSONAL AND FARMER'S COMPREHENSIVE PERSONAL INSURANCE.

### NUCLEAR ENERGY LIABILITY EXCLUSION

#### (Broad Form)

It is agreed that:

I. The policy does not apply:

A. Under any Liability Coverage, to bodily injury or property damage

(1) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the haz-

CL 67901C

Page 1

ROY 05569

"elevator" means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an automobile servicing hoist, or a hoist without a platform outside a building if without mechanical power or not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property and having a compartment height not exceeding ... feet.

"incidental contract" means any written (1) lease of premises, easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) elevator maintenance agreement;

"insured" means any person or organization qualifying as an insured in the 'Persons Insured' provision of the applicable insurance coverage. The insurance afforded applies separately to each insured against which claim is made or suit is brought, except with respect to the limits of the company's liability;

"mobile equipment" means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration or (2) maintained for use exclusively on premises owned by or rented to the named insured, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;

"named insured" means the person or organization named in Item 1 of the declarations of this policy;

"named insured's products" means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but "named insured's products" shall not include a vending machine or any property other than such container, rented to or located for use of others that not sold;

"occurrence" means an accident, including continuous or repeated ... conditions which results in bodily injury or property damage neither ... ted nor intended from the standpoint of the insured

"policy territory" means

(1) the United States of America, its territories or possessions or Canada; or

(2) international waters or air space, provided the bodily injury or property damage does not occur in the course of travel or transportation to or from any other country, state or nation, or

(3) anywhere in the world with respect to damages because of bodily injury to property damage arising out of a product which was sold from any location within the territory described in paragraph (1) above, provided the original suit for such damages is brought within such territory;

"products hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation of or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented by the named insured and after physical possession of such products has been relinquished to others.

"property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed, provided such loss of use is caused by an occurrence during the policy period

## CONDITIONS

**1. Premium** All premiums for this policy shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

Premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the named insured, shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the company shall return to the named insured the unearned portion paid by the named insured.

The named insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct.

**2. Inspection and Audit** The company shall be permitted but not obligated to inspect the named insured's property and operations at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the named insured or others to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The company may examine and audit the named insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**3. Financial Responsibility Laws** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

**4. Insured's Duties in the Event of Occurrence, Claim or Suit**

(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand notice summons or other process received by him or his representative

(c) The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident

**5. Action Against Company** No action shall lie against the company unless, as a condition precedent thereto there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against

CL 67901C

ROY 05590



**Part 1**

# COMPREHENSIVE GENERAL LIABILITY INSURANCE

**ROYAL-GLOBE INSURANCE COMPANIES**

This coverage PART, the DECLARATIONS and other coverage PART: or endorsements referred to herein, and the GENERAL PROVISIONS complete the contract of insurance.

## I COVERAGE A – BODILY INJURY LIABILITY
## COVERAGE B – PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

**Coverage A. bodily injury or
Coverage B. property damage**

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

### Exclusions

This insurance does not apply:

(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;

(b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of

(1) any automobile or aircraft owned or operated by or rented or loaned to any insured, or

(2) any other automobile or aircraft operated by any person in the course of his employment by any insured;

but this exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the named insured or the ways immediately adjoining, if such automobile is not owned by or rented or loaned to any insured;

(c) to bodily injury or property damage arising out of (1) the ownership, maintenance, operation, use, loading or unloading of any mobile equipment while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (2) the operation or use of any snowmobile or trailer designed for use therewith;

(d) to bodily injury or property damage arising out of and in the course of the transportation of mobile equipment by an automobile owned or operated by or rented or loaned to any insured;

(e) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of

(1) any watercraft owned or operated by or rented or loaned to any insured, or

(2) any other watercraft operated by any person in the course of his employment by any insured;

but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the named insured;

(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

(g) to bodily injury or property damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing, with respect to

(1) liability assumed by the insured under an incidental contract, or

(2) expenses for first aid under the Supplementary Payments provision;

(h) to bodily injury or property damage for which the insured or his indemnitee may be held liable

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes,

if such liability is imposed

(i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person,

but part (ii) of this exclusion does not apply with respect to liability of the insured or his indemnitee as an owner or lessor described in (2) above;

(i) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(j) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the insured under an incidental contract;

(k) to property damage to

(1) property owned or occupied by or rented to the insured,

(2) property used by the insured, or

(3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control;

but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the named insured;

(l) to property damage to premises alienated by the named insured arising out of such premises or any part thereof;

(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or

**Part 16**
## PERSONAL INJURY LIABILITY INSURANCE

**ROYAL-GLOBE INSURANCE COMPANIES**

This coverage PART, the DECLARATIONS and other coverage PART(S), or endorsements referred to herein, and the GENERAL PROVISIONS complete the contract of insurance.

Type Policy number and premium only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

Unless otherwise stated, this coverage part forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise this coverage part is issued for attachment to and forms a part of the below numbered policy, effective on the date indicated, at 12:01 A.M. Standard Time as stated in the policy.

SIGNED BY

Authorized Representative

COMPANY

Named Insured (and address when necessary for mailing)

| END. EFF. DATE MONTH / DAY / YEAR | ADDITIONAL PREM. | POLICY NUMBER |
| --- | --- | --- |
| | $ | PTG 604824 |

Producer (and address for mailing)

### Schedule

| COVERAGE | INSURED'S PARTICIPATION | LIMITS OF LIABILITY |
| --- | --- | --- |
| | | AGGREGATE |
| P. Personal Injury Liability | NIL | $ 300,000 |

The insurance afforded is only with respect to **personal injury** arising out of an offense included within such of the following groups of offenses as are indicated by entry of an "X" below.

#### GROUPS OF OFFENSES

- [ ] A. False Arrest, Detention or Imprisonment, or Malicious Prosecution
- [ ] B. Libel, Slander, Defamation or Violation of Right of Privacy
- [ ] C. Wrongful Entry or Eviction or Other Invasion of Right of Private Occupancy

### I. COVERAGE P—PERSONAL INJURY LIABILITY

The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of injury (herein called "**personal injury**") sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the **named insured's** business:

**Group A**—false arrest, detention or imprisonment, or malicious prosecution;

**Group B**—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the **named insured**;

**Group C**—wrongful entry or eviction, or other invasion of the right of private occupancy;

if such offense is committed during the policy period within the United States of America, its territories or possessions, or Canada, and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **personal injury** even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

#### Exclusions

This insurance does not apply:

(a) to liability assumed by the **insured** under any contract or agreement;

(b) to personal injury arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured;

(c) to personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the named insured;

(d) to personal injury arising out of any publication or utterance described in Group B, if the first injurious publication or utterance of the same or similar material by or on behalf of the **named insured** was made prior to the effective date of this insurance;

(e) to personal injury arising out of a publication or utterance described in Group B concerning any organization or business enterprise, or its products or services, made by or at the direction of any insured with knowledge of the falsity thereof.

### II. PERSONS INSURED

Each of the following is an **insured** under this insurance to the extent set forth below:

(a) if the named insured is designated in the declarations as an individual, the person so designated and his spouse;

(b) if the named insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the named insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.

This insurance does not apply to personal injury arising out of the conduct of any partnership or joint venture of which the insured is a partner or member and which is not designated in this policy as a named insured.

PL ED 1-1-73
(CO. NO. CL 67918B)

Over

## CONTRACTUAL LIABILITY INSURANCE (Blanket Coverage)

Type policy number only, in this section above the heavy line, IF issued with policy and attachments stated in policy declarations.

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, providing such attachment is stated in the policy declarations. Otherwise this endorsement is issued for attachment to and forms a part of the below numbered policy, effective on the date indicated, at 12:01 A.M. Standard Time as stated in the policy.

SIGNED BY:

AUTHORIZED REPRESENTATIVE

| CO. ANY | ADDITIONAL PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY NUMBER |
|---|---|---|---|
| | $ | | P | 324 |

Named insured (and address when necessary for mailing)  |  Producer (and address)

### Schedule

The insurance afforded for contractual liability is only with respect to such of the following Coverages as are indicated by entry of limits of liability. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COVERAGES | LIMITS OF LIABILITY | |
|---|---|---|
| | EACH OCCURRENCE | |
| Contractual Bodily Injury Liability | 300,000 | |
| | EACH OCCURRENCE | AGGREGATE |
| Contractual Property Damage Liability | 100,000 | 100,000 |

The following exclusions do not apply with respect to any "construction agreement":

| DESIGNATION OF CONTRACTS COVERED | CODE | PREMIUM BASES | RATES | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|
| | | | BI | PD | BI | PD |
| All written agreements except labor union agreements, Incidental contracts, agreements with railroads | | (R) COST-PER $100. (S) SALES-PER $1000. | AS PER CERTIFICATES ATTACHED | | | |
| | | | | | Total | |

The company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the named insured as follows:

**I COVERAGES- CONTRACTUAL BODILY INJURY LIABILITY
CONTRACTUAL PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the insured all sums which the insured, by reason of contractual liability assumed by him under any written contract of the type designated in the schedule for this insurance, shall become legally obligated to pay as damages because of

bodily injury or

property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend

(1) any arbitration proceeding wherein the company is not entitled to exercise the insured's rights or to defend any suit against the insured in the choice of arbitrators and in the conduct of such proceedings, or

any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

(a) to liability of the indemnitee resulting from his sole negligence;

(b) (1) if the insured is an architect, engineer or surveyor, to bodily injury or property damage arising out of professional services performed by such insured, including

(i) the preparation or approval of maps, contracts, drawings, plans, specifications, reports, tests, surveys, change orders, designs or specifications, and

(ii) supervisory, inspection or engineering services;

(2) if the indemnitee of the insured is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of

(i) the preparation or approval of contracts, maps, drawings, opinions, reports, tests, surveys, change orders, designs or specifications, or

(ii) the giving of or the failure to give directions or instructions by the indemnitee, his agents or employees, when such giving or failure to give is the primary cause of the bodily injury or property damage;

(c) to bodily injury or property damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing;

(d) to bodily injury or property damage for which the insured may be held liable

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes,

if such liability is imposed

KB Ed. 1-1-73
(Co. No. CL68314D)  (Over)

ROY 05588

**ENDORSEMENT**

Type policy number only in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of date of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated at the same hour and minute, same time or hour of the day as the policy became effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

END EFF DATE
MO DAY YR.

P 14824

Insured name and address when necessary for mailing

Producer and address, zip code, for mailing

## PERSONAL INJURY LIABILITY

IT IS AGREED THAT (EXCLUSION C) UNDER PART 16 - PERSONAL INJURY

LIABILITY INSURANCE IS DELETED.

CI 20029Q - Sets

ROY 05577

## ENDORSEMENT

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

Unless otherwise stated, this endorsement forms a part of Policy to be attached of issue, provided attachment is stated in the policy declarations. Only this endorsement is issued for attachment to and forms a part of the policy numbered below, effective on the date indicated as the same hour as the policy as shown.

AUTHORIZED REPRESENTATIVE

COMPANY

## CANCELLATION

IT IS AGREED THAT THE 10 DAYS CANCELLATION PROVISION AS SHOWN

UNDER CONDITION 11 OF THE POLICY IS AMENDED TO READ 90 DAYS.

ROY 05578

**ENDORSEMENT**

*Type policy number only in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.*

Unless otherwise stated, this endorsement forms a part of the policy attached as of issue, provided such attachment is stated in the policy and attached. Otherwise, this endorsement is issued for attachment to and forms a part of the policy, numbered below, effective on the date indicated above the same time or hour of the day as the policy became effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

- 324

Retain and file and issue copy when necessary for mailing

IT IS AGREED THAT THE POLICY IS EXTENDED TO COVER THE ADDITIONAL INTEREST OF:

    NASSAU-SUFFOLK CATHOLIC HIGH SCHOOL ASSOCIATION
    IN CONNECTION WITH THE ACTIVITIES SPONSORED BY
    THE INSURED.

ROY 05579



## ENDORSEMENT

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

Unless otherwise stated, this endorsement forms a part of the policy to which attachment is of issue, provided its attachment is stated in the policy declarations or otherwise. This endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated, same hour and date of issue.

SIGNED BY

AUTHORIZED REPRE...

,4824

---

## LIQUOR LAW LIABILITY

IT IS AGREED THAT (EXCLUSION H) UNDER PART I - COMPREHENSIVE

GENERAL LIABILITY INSURANCE IS ...LETED.

ROY 05580

**EXCLUSION (Malpractice and Professional Services) (Class C)**

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

Unless otherwise stated, this endorsement forms a part of the policy to which attached is of issue, providing such attachment is stated in the policy declarations. Otherwise this endorsement is issued for attachment to and forms a part of the below numbered policy, effective on the date indicated, at 12:01A.M., Standard Time as stated in the policy.

SIGNED BY:

AUTHORIZED REPRESENTATIVE

COMPANY

| END. EFF. DATE (MO., DAY, YR.) | POLICY NUMBER |
| | PTG 60-624 |

Named Insured (and address when necessary for mailing)

Producer (and address for mailing)

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE

Description of Operations:

CEMETERIES

It is agreed that with respect to any operation described above, the insurance does not apply to bodily injury or property damage due to the rendering of or failure to render any professional service.

G316    Ed. 10-1-66
.Co. No. CL681011

ROY 05581

## ADDITIONAL INSURED (Employees)

**No typing necessary, IF issued with policy and attachment stated in policy declarations**

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below effective on the date indicated at the same hour and day as the policy became effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

Insured (name and address, zip code when necessary for mailing)

Producer (name and address, zip code when necessary for mailing)

---

*This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:*

**COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
OWNERS' AND CONTRACTORS' PROTECTIVE LIABILITY INSURANCE
STOREKEEPERS' INSURANCE**

It is agreed that the "Persons Insured" provision is amended to include any employee of the named insured while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply:

1. to bodily injury to (a) another employee of the named insured arising out of or in the course of his employment or (b) the named insured, if the named insured is a partnership or joint venture, any partner or member thereof;

2. to property damage to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (a) another employee of the named insured or (b) the named insured, or, if the named insured is a partnership or joint venture, any partner or member thereof.

---

G106   Ed. 10-1-66

ROY 05582

**ENDORSEMENT**

Type policy number only, in this section above the heavy line. IF issued with policy and attachment stated in policy declarations.

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations, otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

ROYAL-GLOBE INSURANCE COMPANY

Named Insured (and address, zip code, when necessary for mailing)

Producer (and address, zip code, etc.)

## ADDITIONAL INSURED

IT IS AGREED THAT THE "PERSONS INSURED" PROVISION IS AMENDED
TO INCLUDE THE FOLLOWING:

A) ALL VOLUNTEER WORKERS OF THE DIOCESE WHILE ACTING
   WITHIN THE SCOPE OF THEIR DUTIES AS SUCH.
   (ADDITIONAL PREMIUM OF $100. SUBJECT TO AUDIT.)

B) ALL SOCIETIES AND ORGANIZATIONS UNDER THE SPONSORSHIP
   OF ANY DIOCESAN ENTITY AND THE OFFICERS, EMPLOYEES,
   MEMBERS AND PARISHIONERS INDIVIDUALLY, WHILE ENGAGED
   IN ANY CAPACITY ON BEHALF OF ANY PARISH, SCHOOL OR
   OTHER ENTITY OF THE DIOCESE.

C) MEMBERS OF CLUBS OR UNINCORPORATED ASSOCIATIONS,
   BUT ONLY AS RESPECTS THEIR LIABILITY FOR ACTIVI-
   TIES OF THE CLUB OR ASSOCIATION AS SUCH, OR FOR
   ACTIVITIES WHICH ARE PERFORMED ON BEHALF OF THE
   CLUB OR ASSOCIATION, OTHER THAN PRACTICE OR PAR-
   TICIPATION IN ANY GAME OR SPORT.

D) TRUSTEES, MEMBERS OF THE BOARDS OF GOVERNORS OR
   CLERGYMEN OR RELIGIOUS, CHARITABLE OR EDUCATIONAL
   INSTITUTIONS WHILE ACTING WITHIN THE SCOPE OF THEIR
DUTIES.

## ENDORSEMENT

*Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.*

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour in the day as the policy became effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

COMPANY

PREMIUM | Add'l. | | Return $

END. EFF. DATE (MO., DAY YR)

POLICY SYMBOL & NUMBER  P i 604824

Named Insured (and address, zip code, when necessary for mailing.

Producer (and address, zip code, for mailing)

IT IS AGREED THAT IF OTHER COLLECTIBLE INSURANCE WITH ANY OTHER INSURER IS AVAILABLE TO THE INSURED COVERING A LOSS ALSO COVERED HEREUNDER, THE INSURANCE AFFORDED BY THIS POLICY SHALL BE IN EXCESS OF, AND NOT CONTRIBUTE WITH, SUCH OTHER INSURANCE.

ROY 05584

### ENDORSEMENT

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

PREMIUM

[ ] Add'l.   [ ] Return $

END. EFF. DATE (MO., DAY, YR.)

POLICY SYMBOL & NUMBER
PTG 604824

Named Insured (and address, zip code, when necessary for mailing)

Producer (and address, zip code, for mailing)

### KNOWLEDGE OF OCCURRENCE

IT IS AGREED THAT KNOWLEDGE OF AN OCCURRENCE BY THE AGENT, SERVANT OR EMPLOYEE OF THE INSURED, SHALL NOT IN ITSELF CONSTITUTE KNOWLEDGE BY THE INSURED, UNLESS AN ADMINISTRATIVE OFFICIAL OF THE DIOCESE SHALL HAVE RECEIVED SUCH NOTICE FROM ITS AGENT, SERVANT OR EMPLOYEE.

### ERRORS AND OMISSIONS

IT IS AGREED THAT THE COVERAGE AFFORDED BY THIS POLICY SHALL NOT BE INVALIDATED OR AFFECTED BY ANY ERRORS, OMISSIONS, OR IMPROPER DESCRIPTION OF PREMISES, ELEVATORS OR OTHERWISE MENTIONED IN THIS POLICY.

### NOTICE OF OCCURRENCE

IT IS AGREED THAT WHERE THE INSURED REPORTS AN OCCURRENCE TO THE COMPENSATION CARRIER INSURING THEIR COMPENSATION INSURANCE WHICH LATER DEVELOPS INTO A LIABILITY CLAIM, COVERAGE FOR WHICH IS PRO-VIDED BY THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED, FAILURE TO REPORT SUCH OCCURRENCE TO THE COMPANY AT THE TIME OF THE OCCUR-RENCE SHALL NOT BE DEEMED IN VIOLATION OF GENERAL CONDITIONS EN-TITLED "INSURED'S" DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT" UPON THE DISTINCT UNDERSTANDING AND AGREEMENT, HOWEVER, THAT THE INSURED MUST, AS SOON AS THEY ARE DEFINITELY MADE AWARE OF THE FACT THAT THE PARTICULAR OCCURRENCE IS A LIABILITY CASE RATHER THAN A COMPENSATION CASE, GIVE NOTIFICATION OF THE AFORESAID OCCURRENCE TO THIS COMPANY.

ROY 05585

## ENDORSEMENT

Type policy number only, in this section above the heavy line, IF issued with policy and all attachment stated in policy declarations.

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated in this endorsement but at the same time or hour of the day as the policy becomes effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

COMPANY

(Named Insured (and address, zip code, when necessary for mailing)

Producer (and address, zip code)

LIMIT OF LIABILITY DATE   SERIAL & NUMBER
(MO. DAY YR.)   614 804824

## WORLDWIDE COVERAGE

THIS POLICY IS EXTENDED TO COVER OCCURRENCES WHICH TAKE PLACE DURING THE POLICY PERIOD ANYWHERE IN THE WORLD, EXCLUDING ALBANIA, BULGARIA, CHINA, CUBA, CZECHOSLOVAKIA, EAST GERMANY, HUNGARY, NORTH KOREA, LAOS, OUTER MONGOLIA, POLAND, RUMANIA, SOVIET UNION, TIBET NORTH VIETNAM AND YUGOSLAVIA.

WITH RESPECT TO THIS EXTENSION OF COVERAGE, IF CLAIM IS MADE OR SUIT IS BROUGHT WITHIN THE UNITED STATES OF AMERICA, ITS TERRITORIES OR POSSESSIONS, OR CANADA, THIS COMPANY WILL DEFEND ANY SUIT AGAINST THE ASSURED ALLEGING SUCH INJURY, SICKNESS, DISEASE OR DESTRUCTION AND SEEKING DAMAGES ON ACCOUNT THEREOF, EVEN IF SUCH SUIT IS GROUNDLESS, FALSE OR FRAUDULENT, BUT THE COMPANY MAY MAKE SUCH INVESTIGATION, NEGOTIATION AND SETTLEMENT OF ANY CLAIM OR SUIT AS IT DEEMS EXPEDIENT.

IF A CLAIM IS MADE OR SUIT IS BROUGHT ELSEWHERE THAN WITHIN THE UNITED STATES OF AMERICA, ITS TERRITORIES OR POSSESSIONS OR CANADA, THE COMPANY SHALL HAVE THE RIGHT BUT NOT THE DUTY TO INVESTIGATE AND SETTLE SUCH CLAIMS AND DEFEND SUCH SUITS, IN ANY CASE IN WHICH THE COMPANY ELECTS NOT TO INVESTIGATE, SETTLE OR DEFEND, THE INSURED, UNDER THE SUPERVISION OF THE COMPANY, SHALL MAKE OR CAUSE TO BE MADE SUCH INVESTIGATION AND DEFENSE AS ARE REASONABLE NECESSARY, AND SUBJECT TO THE PRIOR AUTHORIZATION BY THE COMPANY, WILL EFFECT TO THE EXTENT POSSIBLE SUCH SETTLEMENT OR SETTLEMENTS AS THE COMPANY AND THE INSURED DEEM PRUDENT, THE COMPANY SHALL REIMBURSE THE INSURED FOR THE REASONABLE COST OF SUCH INVESTIGATION, SETTLEMENT OR DEFENSE.

## ADDITIONAL INSURED (State or Political Subdivisions—Permits Relating to Premises)

*Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.*

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

COMPANY

POLICY SYMBOL & NUMBER
**PTG** 604324

Named Insured (and address, zip code when necessary for mailing)

Producer (and address, zip code for mailing)

*This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:*

### COMPREHENSIVE GENERAL LIABILITY INSURANCE
### MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
### OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
### STOREKEEPER'S INSURANCE

### SCHEDULE

Designation of State or Political Subdivision.

## IF ANY

| Limits of Property Damage Liability | Each Occurrence | Aggregate |
|---|---|---|
| | $ AS PER CERTIFICATES ATTACHED | |

It is agreed that the "Persons Insured" provision includes as an **Insured** any state or political subdivision designated in the schedule above, subject to the following additional provisions:

1. The insurance for any such **Insured** applies only with respect to such of the following hazards for which the state or political subdivision has issued a permit in connection with premises owned by, rented to or controlled by the **named Insured** and to which the Bodily Injury Liability Coverage applies:

   (a) the existence, maintenance, repair, construction, erection or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoistway openings, sidewalk vaults, street banners or decorations and similar exposures;

   (b) the construction, erection or removal of **elevators**;

   (c) the ownership, maintenance or use of any **elevators** covered by the policy.

2. If Property Damage Liability Coverage is not otherwise afforded, such insurance shall nevertheless apply with respect to operations performed by or on behalf of the **named Insured** in connection with the hazard for which the permit has been issued subject to the limits of liability stated herein.

G111   Ed. 10-1-66
(Co. No. CL680818)

ROY 05587

**COLLEGES OR SCHOOLS**

Type policy number only, in this section above the heavy line, iF issued with policy and attachment stated in policy declarations.

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, providing such attachment is stated in the policy declarations. Otherwise this endorsement is issued for attachment to and forms a part of the below numbered policy, effective on the date indicated, at 12:01A M. Standard Time as stated in the policy.

ROYAL-GLOBE INSURANCE

SIGNED BY

AUTHORIZED REPRESENTATIVE

END. EFF. DATE (MO., DAY, YR.)   POLICY NUMBER

PTG ts 1.824

Named Insured (and address when necessary for mailing)

Producer (and address for mailing)

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following.

COMPREHENSIVE GENERAL LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE

**SCHEDULE**

| Additional Insureds | | First Aid Coverage: | |
|---|---|---|---|
| Including Teachers and Staff | X | 1. Excluding All Students [X]   2. Including All Students [ ] | |

It is agreed that with respect to the operation of any college or school by or on behalf of the named insured:

1. Additional Insureds: The "Persons Insured" provision is amended to include as an insured any of the following while acting within the scope of his duties as such:

   (a) If the named insured is a private charitable or educational institution, any trustee or member of the Board of Governors thereof;

   (b) If the named insured is a public board or commission, any executive officer or member thereof;

   (c) If an "x" is entered in the schedule in the block opposite "Including Teachers and Staff" any member of the teaching or administrative staff or other employee of the named insured.

2. First Aid: The insurance under the "Supplementary Payments" provision for first aid is subject to the following special provisions:

   (a) If an "x" is entered in the schedule in the block opposite "Excluding All Students", the insurance does not apply to first aid to any student or pupil;

   (b) Subject to paragraph 2 (a), unless an "x" is entered in the block opposite "Including All Students" the insurance does not apply to first aid to any student or pupil injured while engaged in any athletic activities (including calisthenic drills and gymnasium classes) directed or controlled by any insured or by any person acting on behalf of the named insured.

   (c) The insurance does not apply to expenses for services provided by the named insured or his employees or by any person or organization under contract with the named insured to provide such services.

3. Infirmaries, Clinics, Hospitals: If the college or school has an infirmary with facilities for lodging and treatment or a public clinic or hospital, the insurance does not apply to (1) the rendering of or failure to render (a) medical, surgical, dental, X-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith, (b) any service or treatment conducive to health or of a professional nature, or (c) any cosmetic or tonsorial service or treatment; (2) the furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances, or (3) the handling or the performing of autopsies on dead bodies.

4. Transportation of Pupils: With respect to the transportation of students or pupils, exclusions (b) and (e) of the policy are replaced by the following:

   The insurance does not apply to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any aircraft, automobile or watercraft owned, operated or hired by or for the insured or any officer, employee or member of the teaching, supervisory or administrative staff thereof. For the purpose of this exclusion the word "hired" shall be deemed to include any contract to furnish transportation of pupils to and from schools.

G404 Ed. 1-1-73
(Co. No. CL68109B)

ROY 05589

**Roman Catholic Diocese of Rockville Centre**

**Royal Policy Cover Sheet**

|  |  |
|---|---|
| Insurer: | Royal Globe |
| Policy number: | PTQ 302591 |
| Inception date: | 10/1/1974 |
| Term at issuance: | 1 year |
| Page count: | 8 |
| Contents: | Declaration- 2 pgs |
|  | Policy jacket- 3 pgs |
|  | Endorsement- 3 pgs |

(BIG SHIELD)

Policy No. **PTQ 302591**

| | |
|---|---|
| ☐ Royal Indemnity Company | ☐ Globe Indemnity Company |
| ☒ Royal Globe Insurance Company | ☐ Safeguard Insurance Company |
| ☐ Royal Insurance Company, Limited | ☐ Newark Insurance Company |
| ☐ Standard Marine Insurance Company | ☐ The Marine Insurance Company |

☐ The London & Lancashire Insurance Company, Limited
☐ The Liverpool & London & Globe Insurance Company Limited
☐ British & Foreign Marine Insurance Company
☐ Thames & Mersey Marine Insurance Company

## SECTION I—DECLARATIONS

| ITEM 1 | NAME OF INSURED AND ADDRESS | ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK AND AS PER ENDT. #1 253 SUNRISE HIGHWAY ROCKVILLE CENTRE, N.Y. | CORROON & BLACK COMPANY 150 WILLIAM STREET NEW YORK, N.Y.   10038 |
|---|---|---|---|

| ITEM 2 | POLICY PERIOD | FROM OCT. 1, 1974   TO   OCT. 1, 1975 | 12:01 A.M. Standard Time at the address of the Named Insured |
|---|---|---|---|

| ITEM 3 | ADDITIONAL INTERESTS REFERENCE: DEFINITIONS ITEM 1C) | |
|---|---|---|

| ITEM 4 | LIMITS AND PREMIUM | LIMIT OF LIABILITY | | RETAINED LIMIT | |
|---|---|---|---|---|---|
| | | EACH OCCURRENCE $7,000,000 | AGGREGATE $7,000,000 | EACH OCCURRENCE $25,000 | |
| | | PREMIUM $59,680.00 - FLAT CHARGE | | | |

| ITEM 5 | SCHEDULE OF UNDERLYING INSURANCE | TYPE OF POLICY | POLICY NUMBER | INSURER | APPLICABLE LIMITS |
|---|---|---|---|---|---|
| | | (A) STANDARD WORKMEN'S COMPENSATION AND EMPLOYERS' LIAB. | PTC 604804 10-1-74 - 75 | ROYAL GLOBE INS. COMPANY | COVERAGE B EMPLOYERS' LIAB. STATUTORY ONE ACC. |
| | | B) COMPREHENSIVE GENERAL LIAB. AND | PTG 604824 10-1-74 - 75 | ROYAL GLOBE INS. COMPANY | BODILY INJURY LIAB $300,000 EACH OCC. $300,000 AGGREGATE |
| | | 1. HOSPITAL MAL-PRACTICE LIAB. 2. PERSONAL INJURY LIABILITY | | | PROPERTY DAMAGE LI $100,000 EACH OCC. $100,000 AGGREGATE |
| | | | | | HOSPITAL MALPRACTI LIABILITY $500,000 EACH PERS $500,000 AGGREGATE |
| | | | | | PERSONAL INJURY LIABILITY $300,000 AGGREGATE |

Renews or Replaces Policy No. **PLA 102553**

Countersigned by _____
AUTHORIZED REPRESENTATIVE

CL66274B—SECTION I

ISSUED TO FORM A PART OF POLICY NO. PTQ 302591
(CONTINUED)

## SCHEDULE OF UNDERLYING INSURANCE

| TYPE OF POLICY | POLICY NUMBER | INSURER | APPLICABLE LIMITS |
|---|---|---|---|
| | | | VARIOUS LIMITS OF LIABILITY BUT NOT LESS THAN: |
| (C) AUTOMOBILE LIABILITY | PTA 604814 12-12-74 - 75 | ROYAL GLOBE INS. CO. | AUTOMOBILE LIABILITY BODILY INJURY LIAB. $1,000,000 EACH PERS. $5,000,000 EACH OCC. |
| | | | PROPERTY DAMAGE LIAB. $1,000,000 EACH OCC. |
| (D) AUTOMOBILE LIABILITY | PTA 604844 12=12-74 - 75 | ROYAL GLOBE INS. CO. | VARIOUS NOT LESS THAN BODILY INJURY LIAB. $ 250,000 EACH PERSO $1,000,000 EACH OCC. |
| | | | PROPERTY DAMAGE LIAB. $25,000. EACH OCC. |

IT IS STIPULATED THAT FOR THE PURPOSES OF APPLICATION OF UNDERLYING
INSURANCE, THAT VARIOUS MISCELLANEOUS AUTOMOBILE LIABILITY POLICIES
& CERTIFICATES ARE IN EXISTENCE AS ISSUED BY THE ROYAL GLOBE INSUR-
ANCE COMPANY IN ADDITION TO THE POLICIES LISTED IN THIS SCHEDULE.
SUCH AUTOMOBILE LIABILITY POLICIES ARE HEREBY DECLARED AS UNDERLYING
INSURANCE. THE "APPLICABLE LIMITS" OF SUCH POLICIES SHALL BE NO LESS
THAN   250/1000. B.I.
         25,000. P.D.

THE COMPANY NAMED IN THE DECLARATIONS FORMING SECTION I HEREOF, (a stock insurance company, herein called the Company), AGREES WITH THE NAMED INSURED, named in the Declarations, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to all of the terms of this policy:

## Section II—INSURING AGREEMENTS

### 1. Coverage

To indemnify the Insured for all sums which the Insured shall become legally obligated to pay as damages because of:

(a) **Personal Injury**

(b) **Property Damage**

(c) **Advertising Liability**

caused by an **occurrence** which takes place during the policy period anywhere in the world.

### 2. Defense, Supplementary Payments

With respect to any **occurrence** not covered by underlying insurance specified in the Declarations or any other underlying insurance collectible by the Insured, but covered by the terms and conditions of this policy, without regard to the retained limit contained herein, the Company shall

(a) have the right and duty to defend any suit against the Insured seeking damages on account thereof, even if such suit is groundless, false or fraudulent, but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

(b) pay premiums on appeal bonds required in any such suit, and premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, but the Company shall have no obligation to apply for or furnish any such bonds;

(c) pay all expenses incurred by the Company, all costs taxed against the Insured in any such suit and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon;

(d) reimburse the Insured for all reasonable expenses, other than loss of earnings incurred at the Company's request;

and the amounts so incurred, except settlements of claims and suits are payable by the Company in addition to the applicable limit of liability of this policy.

In jurisdictions where the Company may be prevented by law or otherwise from carrying out this agreement the Company shall pay any expense incurred with its written consent in accordance with this agreement. The Insured shall promptly reimburse the Company for all sums paid on behalf of the Insured within the retained limit specified in the Declarations.

### 3. Limit of Liability

With respect to coverages 1(a), 1(b) or 1(c), or any combination thereof the Company's liability shall be only for the **ultimate net loss**, resulting from any one **occurrence** in excess of either;

(a) the amount recoverable under underlying insurance as stated in the Declarations and the amount recoverable under any other underlying insurance collectible by the Insured, or

(b) the retained limit as stated in the Declarations.

All personal injury, property damage and advertising liability arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

In the event of reduction or exhaustion of the aggregate limits of liability under the underlying insurance by reason of losses paid thereunder, this policy shall:

(1) in the event of reduction, pay the excess of the reduced underlying insurance, and

(2) in the event of exhaustion, continue in force as underlying insurance as stated in the Declarations.

In no event shall the Company be liable for an amount in excess of that set forth in the Declarations on account of each occurrence happening during the period commencing with the effective or anniversary date of this policy—subject to a limit as stated in the Declarations in the aggregate for all claims arising under the insurance afforded during each consecutive twelve (12) months of the policy period.

## Section III—EXCLUSIONS

This policy does not apply:

1. to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

2. To advertising liability resulting from:

   (a) failure of performance of contract other than unauthorized appropriation of ideas based upon alleged breach of implied contract;

   (b) infringement of registered trade mark, service mark or trade name, other than titles or slogans, by use thereof as the registered trade mark, service mark or trade name of goods or services sold, offered for sale or advertised;

   (c) incorrect description of any article or commodity;

   (d) mistake in advertised price;

3. to property damage to property owned by the Insured;

4. to property damage to the Named Insured's products arising out of such products or any part of such products;

5. to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

6. to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

7. to personal injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of

(a) watercraft over 50 feet in length, if the occurrence takes place away from premises, owned, rented or controlled by the Named Insured, or

(b) aircraft,

if such watercraft or aircraft is owned by, loaned or rented to or hired without crew by or on behalf of the Named Insured; but this exclusion shall not apply to (1) operations performed by independent contractors or (2) personal injury to any employee of the Insured arising out of and in the course of his employment by the Insured;

8. to loss of use of tangible property which has not been physically injured or destroyed resulting from

   (a) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or

   (b) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance quality fitness or durability warranted or represented by the Named Insured;

   but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;

9. to personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

CL66274B—Text

10. to personal injury or property damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing; with respect to liability assumed by the Insured under contract or agreement;

11. to personal injury or property damage

(a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be entitled to indemnity from the United States of America, or any agency thereof, with any person or organization;

(c) resulting from the hazardous properties of nuclear material, if

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

(3) the personal injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c)(3) applies only to property damage to such nuclear facility and any property thereat;

provided that the words property damage include all forms of radioactive contamination of property.

As used in this exclusion (11)

hazardous properties include radioactive, toxic or explosive properties;

nuclear material means source material, special nuclear material or by-product material;

source material, special nuclear material and by-product material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

spent fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

waste means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

nuclear facility means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

## Section IV—DEFINITIONS

1. "Named Insured" and "Insured"

The words Named Insured includes any subsidiary company of the Named Insured and any other company coming under the Named Insured's control of which it assumes active management.

Each of the following is an Insured under this policy to the extent set forth below:

(a) any executive officer, director or stockholder of the Named Insured while acting in his capacity as such, and any organization or proprietor with respect to real estate management for the Named Insured,

(b) any employee of the Named Insured, while acting in his capacity as such when the Named Insured so directs the Company in writing upon a claim being made against such employee,

(c) if the Named Insured is designated as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor,

(d) if the Named Insured is designated as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such,

(e) any additional interest, other than the Named Insured or the Insured as specified in item 3 of the Declarations.

2. "Personal Injury" means the following, including death resulting therefrom: Bodily Injury, Mental Injury, Mental Anguish, Shock, Sickness, Disease, Disability, False Arrest, False Imprisonment, Wrongful Eviction, Wrongful Entry, Wrongful Detention, Malicious Prosecution, Discrimination (unless

prohibited by law), Humiliation; also Invasion of Rights of Privacy, Libel, Slander or Defamation of Character, except that which arises out of any Advertising activities.

3. "Property Damage" means (a) physical injury to or destruction of tangible property including the loss of use thereof at any time resulting therefrom, or (b) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence.

4. "Advertising Liability" means: Invasion of Rights of Privacy, Libel, Slander or Defamation of Character, any infringement of copyright, title or slogan, and piracy, unfair competition, idea misappropriation under an implied contract—committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the Named Insured's advertising activities.

5. "Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the Insured;

6. "Ultimate Net Loss" means: the sum actually paid or payable in cash in the settlement or satisfaction of losses for which the Insured is liable either through adjudication or by compromise with the written consent of the Company, after making proper deduction for all recoveries and salvages collectible, but excludes all loss expenses and legal expenses (including attorney's fees, court costs and interest on any judgment or award) and all salaries of employees and office expenses of the Insured, the Company or any underlying insurer so incurred.

## Section V—CONDITIONS

1. Premium Computation   The premium stated in the Declarations is an advance premium unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period or at such times during the policy period as the Company may direct.

2. Additional "Named Insured"   In the event of an additional Named Insured being added to the coverage under the underlying insurance during the policy period, prompt notice shall be given the Company and if an additional premium has been charged for such addition on the underlying insurance, the Company shall be entitled to charge an appropriate additional premium hereon.

3. Prior Insurance and Non-Cumulation of Liability

(a) It is agreed that if any loss is also covered in whole or in part under any other excess policy issued to the Insured prior to the inception date hereof, the Company's limit of liability as stated in the Declarations shall be reduced by any amounts due to the Insured on account of such loss under such prior insurance.

CL66274B—Text

(b) Subject to paragraph (a) above and to all other terms and conditions of this policy, if a claim arising out of an **occurrence** insured hereunder, is continuing at the time of termination of this policy, the Company will continue to insure the liability of the **Insured** with respect to such claim without payment of additional premium.

**4. Cross Liability**   In the event of claims being made by reason of **personal injury** and/or **property damage** suffered by one **Insured** herein for which another **Insured** herein is or may be liable, this policy shall cover such **Insured** against whom a claim is made or may be made in the same manner as if separate policies had been issued to each **Insured** herein. Nothing contained herein shall operate to increase the Company's limit of liability as set forth in Insuring Agreement 3.

**5. Notice of "Occurrence"**   Whenever it appears that an **occurrence** covered hereunder is likely to involve the Company, written notice shall be sent to the Company as soon as practicable. Such notice shall contain particulars sufficient to identify the **Insured** and also reasonably obtainable information respecting the time, place and circumstances of the **occurrence.**

**6. Inspection and Audit**   The Company shall be permitted but not obligated to inspect the **Insured's** property and operations but neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the **Insured** or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the **Insured's** books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**7. Maintenance of Underlying Insurance**   Each policy referred to in the attached schedule of underlying insurance including renewal or replacement thereof, not more restrictive, shall be maintained in full effect during this policy period, except for any reduction of the aggregate limits contained therein solely by payment of losses during this policy period. Failure of the **Named Insured** to comply with the foregoing shall not invalidate this policy but in the event of such failure the Company shall be liable only to the extent that it would have been liable had the **Named Insured** complied therewith.

**8. Assistance and Cooperation**   Except as provided in Insuring Agreement 2, the Company shall not be called upon to assume charge of the settlement or defense of any claim made, suit brought or proceeding instituted against the **Insured**; but the Company shall have the right and shall be given the opportunity to associate with the **Insured** in the defense and control of any claim, suit or proceeding reasonably likely to involve the Company. In such event the **Insured** and the Company shall cooperate fully.

**9. Appeals**   In the event the **Insured** or the **Insured's** underlying insurer's elect not to appeal a judgment in excess of the underlying limits, the Company may elect to make such appeal at its cost and expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in the Declarations for any one **occurrence** and in addition the cost and expense of such appeal.

**10. Action Against Company**   No action shall lie against the Company with respect to any one **occurrence** unless as a condition precedent thereto; the **Insured** shall have fully complied with all the terms of this policy, nor until the amount of the **Insured's** obligation to pay an amount of **ultimate net loss** in excess of the underlying or retained limit shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the Company. The **Insured** shall make a definite claim for any loss for which the Company may be liable within twelve (12) months after such final determination. Claim for any subsequent payments made by the **Insured** on account of the same **occurrence** shall be similarly made. All losses covered by this policy shall be due and payable within thirty (30) days after they are respectively claimed and proven in conformity with this policy.

**11. Other Insurance**   If other valid and collectible insurance with any other insurer is available to the **Insured** covering a loss also covered by this policy, other than insurance that is specifically excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

**12. Subrogation**   Inasmuch as this policy is excess coverage, the Insured's right of recovery against any person, firm or corporation cannot be exclusively subrogated to the Company; therefore, in case of any payment hereunder, the Company will act in concert with all other interests, including the **Insured**, concerned in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests, including the **Insured**, that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder, lastly, the interests, including the **Insured**, of which this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests, including the **Insured**, concerned, in the ratio of their respective recoveries as finally settled.

**13. Changes**   Notice to or knowledge possessed by any person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed except by endorsement issued to form a part of this policy.

**14. Assignment**   Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon. If, however, the **Named Insured** shall die or be adjudged bankrupt or insolvent, this policy, unless cancelled, shall cover the **Insured's** legal representative for the unexpired portion of such period.

**15. Cancellation**   This policy may be canceled by the **Named Insured** by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the Company by mailing to the **Named Insured** at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such notice either by the **Named Insured** or by the Company shall be equivalent to mailing.

If the **Named Insured** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable thereafter, but payment or tender of unearned premium is not a condition of cancellation.

**16. Bankruptcy or Insolvency**   Bankruptcy or insolvency of the **Insured** shall not relieve the Company of any of its obligations hereunder.

**17. Arbitration**   Except with respect to liability assumed by the **Insured** under a lease of premises, easement agreement, agreement required by municipal ordinance, sidetrack agreement or elevator or escalator maintenance agreement, the company shall be not liable under this policy for damages awarded in arbitration other than an arbitration proceeding where in an indemnitee under a written contract or agreement seeks damages against the **Insured** on account thereof and wherein the Company is entitled to exercise the **Insured's** rights in the choice of arbitrators and in the conduct of such arbitration proceedings.

**In Witness Whereof,** the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the declarations page by a duly authorized representative of the Company.

*Joseph A. Banbury*
Corporate Secretary

*H. Clay Johnson*
President; U.S. Manager

CL66274B—Text

**ENDORSEMENT**

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

| | SIGNED BY |
|---|---|
| Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective. | _AUTHORIZED REPRESENTATIVE_ |

| COMPANY | PREMIUM | ENO. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---|---|---|---|
| | ☐ Add'l.  ☐ Return $ | | PTQ 302591 |

Named Insured (and address, zip code, when necessary for mailing)   Producer (and address, zip code, for mailing)

## ENDORSEMENT # 1

### NAMED INSURED

IN CONSIDERATION OF THE PREMIUM AT WHICH THIS POLICY
IS WRITTEN, IT IS AGREED THAT DECLARATIONS - ITEM I -
"NAMED INSURED" IS HEREBY COMPLETED TO READ AS FOLLOWS:

ITEM I - "NAME INSURED":

THE NAMED INSURED INCLUDES ALL INSUREDS AND

ADDITIONAL INTERESTS NAMED IN THE COVERAGE

CERTIFICATES ATTACHED TO AND MADE A PART OF

UNDERLYING ROYAL GLOBE INSURANCE COMPANY

POLICIES.

CL 30030R-1—Singles

**ENDORSEMENT**

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

| COMPANY | PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---|---|---|---|
| | ☐ Add'l.   ☐ Return $ | | PTQ 302591 |

Named Insured (and address, zip code, when necessary for mailing)

Producer (and address, zip code, for mailing)

## ENDORSEMENT #2

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS AGREED THAT ITEM 15 OF CONDITIONS SECTION V- "CANCELLATION", IS AMENDED AS FOLLOWS:

15. CANCELLATION - THIS POLICY MAY BE CANCELLED BY THE NAMED INSURED BY SURRENDER THEREOF TO THE COMPANY OR ANY OF ITS AUTHORIZED AGENTS, OR BY MAILING TO THE COMPANY WRITTEN NOTICE STATING WHEN THEREAFTER THE CANCELLATION SHALL BE EFFECTIVE. THIS POLICY MAY BE CANCELLED BY THE COMPANY BY MAILING TO THE NAMED INSURED, AT THE ADDRESS SHOWN IN THIS POLICY, WRITTEN NOTICE STATING WHEN NOT LESS THAN NINETY (90) DAYS THEREAFTER, SUCH CANCELLATION SHALL BE EFFECTIVE. THE MAILING OF NOTICE AS AFORESAID SHALL BE SUFFICIENT PROOF OF NOTICE, THE TIME OF SURRENDER OR THE EFFECTIVE DATE AND HOUR OF CANCELLATION STATED IN THE NOTICE, SHALL BECOME THE END OF THE POLICY PERIOD. DELIVERY OF SUCH NOTICE, EITHER BY THE NAMED INSURED OR BY THE COMPANY, SHALL BE EQUIVALENT TO MAILING.

IF THE NAMED INSURED CANCELS, EARNED PREMIUM SHALL BE COM- PUTED IN ACCORDANCE WITH THE CUSTOMARY SHORT RATE TABLE AND PROCEDURE. IF THE COMPANY CANCELS, EARNED PREMIUM SHALL BE COMPUTED PRO RATA. PREMIUM ADJUSTMENT MAY BE MADE EITHER AT THE TIME CANCELLATION IS EFFECTED OR AS SOON AS PRACTICABLE THEREAFTER, BUT PAYMENT OR TENDER OF UNEARNED PREMIUM IS NOT A CONDITION OF CANCELLATION.

**ENDORSEMENT**

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

| COMPANY | PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---|---|---|---|
| ROYAL GLOBE INSURANCE COMPANY | ☒ Add'l.  ☐ Return $ 4102.00 | 3-1-75 | PTQ 302591 |

Named Insured (and address, zip code, when necessary for mailing)

ROMAN CATHOLIC DIOCESE OF
ROCKVILLE CENTRE

Producer (and address, zip code, for mailing)

## ENDORSEMENT #3

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $4102.00 IT IS

HEREBY UNDERSTOOD AND AGREED THAT ITEM 4- LIMITS OF LIABILITY-

IS AMENDED TO READ AS FOLLOWS:

| Limit of Liability | Aggregate | Retained Limit |
|---|---|---|
| $12,000,000 | $12,000,000 | $25,000 |

CL 20030R—Sets

**Roman Catholic Diocese of Rockville Centre**

**<u>Royal Policy Cover Sheet</u>**

|                    |                        |
|-------------------:|------------------------|
| Insurer:           | Royal Globe            |
| Policy number:     | PTG 604825             |
| Inception date:    | 10/1/1975              |
| Term at issuance:  | 1 year                 |
| Page count:        | 21                     |
| Contents:          | Declaration- 1 pg      |
|                    | Coverage part- 4 pgs   |
|                    | Endorsement- 16 pgs    |

PRODUCER OR SUBPRODUCER NAME

PTG 604825

**PTG 604825**

**SELECT COVER POLICY**

- [ ] Royal Indemnity Company
- [X] Royal Globe Insurance Company
- [ ] Royal Insurance Company, Limited
- [ ] Globe Indemnity Company
- [ ] Safeguard Insurance Company
- [ ] Newark Insurance Company
- [ ] The London & Lancashire Insurance Company, Limited
- [ ] The Liverpool & London & Globe Insurance Company Limited
- [ ] American and Foreign Insurance Company

**Item 1. Named Insured & Address**

ROMAN CATHOLIC DIOCESE OF
ROCKVILLE CENTRE, N.Y. AND AS
PER CERTIFICATES ATTACHED
253 SUNRISE HIGHWAY
ROCKVILLE CENTRE, N.Y.

CORROON AND BLACK COMPANY
150 WILLIAM STREET
NEW YORK, N.Y 10038

**Item 2. POLICY PERIOD**

From **OCT. 1, 1975** To **OCT 1, 1976**

12:01 A.M. Standard time at the address of the Named Insured as stated in Item 1.

BUSINESS OF THE NAMED INSURED

**RELIGIOUS ORGANIZATION**

THE NAMED INSURED IS:

- [ ] Individual
- [ ] Partnership
- [ ] Corporation
- [ ] Joint Venture
- [X] Other

LOCATION OF ALL PREMISES OWNED, RENTED OR CONTROLLED BY THE NAMED INSURED (ENTER "SAME" IF SAME LOCATION AS ABOVE ADDRESS)

PART OCCUPIED BY NAMED INSURED

INSURED'S INTEREST OWNER, TENANT, GEN'L LESSEE, OTHER SPECIFY

**AS PER CERTIFICATES ATTACHED.**

**Item 3a.** The insurance afforded is only with respect to such of the following coverage Part(s) as are indicated by entry of an "X" below.

- [X] Part 1 – Comprehensive General Liability Insurance
- [ ] Part 2 – Manufacturers' and Contractors' Liability Insurance
- [ ] Part 3 – Owners', Landlords' and Tenants' Liability Insurance
- [ ] Part 4 – Completed Operations and Products Liability Insurance
- [ ] Part 5 – Premises Medical Payments Insurance
- [ ] Part 6 – Comprehensive Personal Insurance
- [ ] Part 7 – Owners' and Contractors' Protective Liability Insurance
- [ ] Part 8 – Contractual Liability Insurance
- [ ] Part 9 – Comprehensive Automobile Liability Insurance
- [ ] Part 10 – Garage Insurance
- [ ] Part 11 – Automobile Medical Payments Insurance
- [ ] Part 12 – Protection Against Uninsured Motorists Insurance
- [ ] Part 13 – Automobile Physical Damage Insurance
- [ ] Part 14 – Basic Auto. Liability Insurance
- [ ] Part 15 – Automobile Physical Damage Insurance (Dealers)

OTHER (SPECIFY PART NO. & TITLE)
- [X] **PART 16 – PERSONAL INJURY LIABILITY INSURANCE**

**Item 3b.** The insurance afforded is only with respect to such of the following coverage(s), contained in the coverage Part(s) designated above, as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of the policy having reference thereto.

| APPLICABLE TO PARTS | COVERAGES | LIMITS OF LIABILITY | | | ADVANCE PREMIUM |
|---|---|---|---|---|---|
| | | EACH PERSON | EACH OCCURRENCE* | AGGREGATE | |
| 1 through 5 Other than Automobile | Bodily Injury Liability | X X X X X | AS PER CERTIFICATES ATTACHED | | |
| | Property Damage Liability | X X X X X | AS PER CERTIFICATES ATTACHED | | |
| | Premises Medical Payments | | | X X X X X X | $ |
| 9 (Automobile) | Bodily Injury Liability | | | X X X X X X | $ |
| | Property Damage Liability | X X X X X | | X X X X X X | $ |
| Other | | | See Applicable Coverage Part | | $ |

ENDORSEMENTS ATTACHED AT TIME OF ISSUE

Retro 442,533. + Exc. 110,270. = 552,803.

$

If policy period is more than one year, premium is payable

| EFFECTIVE DATE | 1st ANNIVERSARY | 2nd ANNIVERSARY | Total Advance Premium |
|---|---|---|---|
| $ | $ | $ | $ 552,803.00 |

EACH ACCIDENT AS RESPECTS "PREMISES MEDICAL PAYMENTS"

**C.S.** FEB 17 1976

1248.

Countersigned by _____

Authorized Representative

L67902D

G. H. FEB 1 7 1976

| UNDERWRITING DEPARTMENT | | INSPECTION | AUDIT |
| CURRENT POLICY | RENEWAL | | |
| APPROVAL | RENEW | DECLINE | |

**COMPANY COPY**

**Part 16**

ROYAL-GLOBE INSURANCE

**PERSONAL INJURY LIABILITY INSURANCE — INCLUDING EXCLUSIONS**   ROYAL-GLOBE INSURANCE COMPANIES

This coverage PART, the DECLARATIONS and other coverage PART(S), or endorsements referred to herein, and the GENERAL PROVISIONS complete the contract of insurance.

Type Policy number and premium only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

| | SIGNED BY |
|---|---|
| Unless otherwise stated, this coverage part forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise this coverage part is issued for attachment to and forms a part of the below numbered policy, effective on the date indicated, at 12:01 A.M., Standard Time as stated in the policy. | Authorized Representative |

| COMPANY | END. EFF. DATE MONTH / DAY / YEAR | ADDITIONAL PREM. $ | POLICY NUMBER PTG 604825 |
|---|---|---|---|

| Named Insured (and address when necessary for mailing) | Producer (and address for mailing) |
|---|---|

**Schedule**

| COVERAGE | INSURED'S PARTICIPATION | LIMIT OF LIABILITY | |
|---|---|---|---|
| P. Personal Injury Liability | NIL % | AGGREGATE $ 300,000 | ☐ Enter an "x" if exclusion (c) does not apply. |

The insurance afforded is only with respect to personal injury arising out of an offense included within such of the following groups of offenses as are indicated by entry of an "X" below.

**GROUPS OF OFFENSES**

☐ A. False Arrest, Detention or Imprisonment, or Malicious Prosecution

☐ B. Libel, Slander, Defamation or Violation of Right of Privacy

☐ C. Wrongful Entry or Eviction or Other Invasion of Right of Private Occupancy

1271

PL ED 1-1-73

## CONTRACTUAL LIABILITY INSURANCE (Blanket Coverage)

Type policy number only in this section above the heavy line, the remainder of the policy and attachment stated in policy declaration.

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, providing such attachment is stated in the policy declarations. Otherwise this endorsement is issued for attachment to and forms a part of the below numbered policy, effective on the date indicated, at 12:01A.M. Standard Time as stated in the policy.

SIGNED BY:

AUTHORIZED REPRESENTATIVE

| COMPANY | ADDITIONAL PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY NUMBER |
|---|---|---|---|
| | $ | | PTG 604825 |

Named Insured (and address when necessary for mailing)

Producer (and address for mailing)

### Schedule

The insurance afforded for contractual liability is only with respect to such of the following Coverages as are indicated by entry of limits of liability below. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COVERAGES | LIMITS OF LIABILITY | |
|---|---|---|
| | EACH OCCURRENCE | |
| Contractual Bodily Injury Liability | 300,000 | |
| | EACH OCCURRENCE | AGGREGATE |
| Contractual Property Damage Liability | 100,000 | 100,000 |

The following exclusions do not apply with respect to any "construction agreement":

| DESIGNATION OF CONTRACTS COVERED | CODE | PREMIUM BASES | RATES | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|
| | | | BI | PD | BI | PD |
| All written agreements except labor union agreements, Incidental contracts, agreements with railroads | | (R) COST-PER $100. (S) SALES-PER $1000. | | | | |
| | | | AS PER CERTIFICATES ATTACHED | | | |
| | | Total | | | | |

The company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the named insured as follows:

### I. COVERAGES—CONTRACTUAL BODILY INJURY LIABILITY CONTRACTUAL PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured, by reason of contractual liability assumed by him under any written contract of the type designated in the schedule for this insurance, shall become legally obligated to pay as damages because of

**bodily injury** or

**property damage**

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend

(1) any arbitration proceeding wherein the company is not entitled to exercise the insured's rights in the choice of arbitrators and in the conduct of such proceedings, or

(2) any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

(a) to liability of the indemnitee resulting from his sole negligence;

(b) (1) if the insured is an architect, engineer or surveyor, to bodily injury or property damage arising out of professional services performed by such insured, including

(i) the preparation or approval of maps, contracts, drawings, plans, opinions reports, tests, surveys, change orders, designs or specifications, and

(ii) supervisory, inspection or engineering services;

(2) if the indemnitee of the insured is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of

(i) the preparation or approval of contracts, maps, plans, drawings, opinions reports, tests, surveys, change orders, designs or specifications, or

(ii) the giving of or the failure to give directions or instructions by the indemnitee, his agents or employees, provided such giving or failure to give is the primary cause of the bodily injury or property damage;

(c) to bodily injury or property damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any action or condition incident to any of the foregoing;

(d) to bodily injury or property damage for which the indemnitee may be held liable

(1) as a person or organization engaged in the business of manufacturing distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes if such liability is imposed

B Ed. 1-1-73
Co. No. CL68314D)

(Over)

1252

1972

HOSPITAL PROFESSIONAL LIABILITY INSURANCE — INCLUDED IN — THE ROYAL-GLOBE INSURANCE COMPANIES
Part 5 - Royal Program Policy Compendium 1971-1975    Pg 54 of 81

20-01226-sss Doc 6 Filed 10/01/20 Entered 10/01/20 09:43:09 Exhibit 3

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, providing such attachment is stated in the policy declarations. Otherwise this endorsement is issued for attachment to and forms a part of the below numbered policy, effective on the date indicated, at 12:01 A.M. Standard Time as stated in the policy.

SIGNED BY:

AUTHORIZED REPRESENTATIVE

COMPANY

END. EFF. DATE (MO., DAY, YR.)

POLICY NUMBER
**PTG 604825**

Named Insured (and address when necessary for mailing)

Producer (and address for mailing)

The company, in consideration of the payment of the premium and subject to all the provisions of the policy not expressly modified herein, agrees with the named insured as follows:

Schedule

| COVERAGE | LIMITS OF LIABILITY | | | |
|---|---|---|---|---|
| O. Hospital Professional Liability | $ **300,000.** | each claim | $ **300,000.** | aggregate |

DESCRIPTION OF HAZARDS — STATE NAME; WHETHER OPERATED NOT-FOR-PROFIT; KIND OF CASES CARED FOR; SCHOOL OF MEDICINE IN CHARGE

## COVERAGE O – HOSPITAL PROFESSIONAL LIABILITY

Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to any person arising out of the rendering of or failure to render, during the policy period, the following professional services:

a) medical, surgical, dental or nursing treatment to such person or the person inflicting the injury including the furnishing of food or beverages in connection therewith,

b) furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances if the injury occurs after the named insured has relinquished possession thereof to others,

c) handling of or performing post-mortem examinations on human bodies, or

d) service by any person as a member of a formal accreditation or similar professional board or committee of the named insured, or as a person charged with the duty of executing directives of any such board or committee,

and the company shall have the right and duty to defend any suit against the insured seeking such damages, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and, with the written consent of the insured, such settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

## Exclusions

This insurance does not apply

i) to bodily injury to any employee of the insured arising out of and in course of his employment by the insured;

j) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(c) to liability of an insured, if an individual, for his personal acts or omissions of a professional nature;

(d) to the ownership, maintenance, operation, use, loading or unloading of any motor vehicle, trailer, watercraft or aircraft.

## II. PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured;

(b) if the named insured is designated in the declarations as a partnership, any partner or member thereof, but only with respect to his liability as such;

(c) if the named insured is designated in the declarations as other than an individual or partnership, any executive officer, stockholder or member of the board of trustees, directors or governors of the named insured while acting within the scope of his duties as such.

## III. LIMITS OF LIABILITY

Regardless of the number of insureds under this insurance the company's liability is limited as follows:

The limit of liability stated in the schedule as applicable to "each claim" is the limit of the company's liability for all damages because of each claim or suit covered hereby. The limit of liability stated in the schedule as "aggregate" is, subject to the above provision respecting "each claim", the total limit of the company's liability hereunder for all damages.

IPL    Ed. 10-1-66
Co. No. CL 68050)

over

1265

**IV. AMENDED DEFINITIONS**

When used in reference to this insurance "**damages**" means all damages, including damages for death, which are payable because of injury to which this insurance applies.

**V. ADDITIONAL CONDITIONS**

A. **Insured's Duties in the Event of Injury, Claim or Suit.** When an injury occurs written notice shall be given by or on behalf of the Insured, in accordance with the "Insured's Duties in the Event of Occurrence, Claim or Suit" Condition.

This insurance shall not apply to expenses incurred by the Insured for first aid at the time of an accident and the "Supplementary Payments" provision and the "Insured's Duties in the Event of Occurrence, Claim or Suit" Condition are amended accordingly.

C. **Limitation of Coverage Under Any Other Liability Insurance.** Except as stated in this endorsement, the policy does not apply to injury arising out of the rendering of or failure to render the professional services described in paragraph I above.

N 15- **CATHOLIC CHARITIES- DIOCESE OF ROCKVILLE CENTRE (CLINIC,LYNBROOK)**

17- " " " " " (CLINIC, ROSLYN)

20- **ST. CHRISTOPHER'S HOME**

77- **R.C. DIOCESE OF ROCKVILLE CENTRE- DIAGNOSTIC & LEARNING CENTER, MALVERN**

92- **CATHOLIC CHARITIES- DIOCESE OF ROCKVILLE CENTRE**

93- " " " " "

S 8A- **CATHOLIC CHARITIES- DIOCESE OF ROCKVILLE CENTRE (SUFFOLK COMMUNITY PSYCHIATRY)**

9A " " **MENTAL HEALTH CENTER, BAYSHORE**

12- **CAMP MARYDALE**

92- **MADONNA HEIGHTS SCHOOL FOR GIRLS**

104- **DOMINICAN SISTERS OF THE SICK POOR**

118- **REGINA RESIDENCE**

141- **CATHOLIC CHARITIES MENTAL HEALTH CENTER**

1266

**ENDORSEMENT**

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

| | SIGNED BY |
|---|---|
| Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective. | AUTHORIZED REPRESENTATIVE |

**COMPANY**

| | PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---|---|---|---|
| | ☐ Add'l. ☐ Return $ | | **PTG 604825** |

Named Insured (and address, zip code, when necessary for mailing) | Producer (and address, zip code, for mailing)

## KNOWLEDGE OF OCCURRENCE

IT IS AGREED THAT KNOWLEDGE OF AN OCCURRENCE BY THE AGENT, SERVANT OR EMPLOYEE OF THE INSURED, SHALL NOT IN ITSELF CONSTITUTE KNOWLEDGE BY THE INSURED, UNLESS AN ADMINISTRATIVE OFFICIAL OF THE DIOCESE SHALL HAVE RECEIVED SUCH NOTICE FROM ITS AGENT, SERVANT OR EMPLOYEE.

## ERRORS AND OMISSIONS

IT IS AGREED THAT THE COVERAGE AFFORDED BY THIS POLICY SHALL NOT BE INVALIDATED OR AFFECTED BY ANY ERRORS, OMISSIONS, OR IMPROPER DESCRIPTION OF PREMISES, ELEVATORS OR OTHERWISE MENTIONED IN THIS POLICY.

## NOTICE OF OCCURRENCE

IT IS AGREED THAT WHERE THE INSURED REPORTS AN OCCURRENCE TO THE COMPENSATION CARRIER INSURING THEIR COMPENSATION INSURANCE WHICH LATER DEVELOPS INTO A LIABILITY CLAIM, COVERAGE FOR WHICH IS PRO- VIDED BY THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED, FAILURE TO REPORT SUCH OCCURRENCE TO THE COMPANY AT THE TIME OF THE OCCURR- ENCE SHALL NOT BE DEEMED IN VIOLATION OF GENERAL CONDITIONS EN- TITLED "INSURED'S" DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT" UPON THE DISTINCT UNDERSTANDING AND AGREEMENT, HOWEVER, THAT THE INSURED MUST, AS SOON AS THEY ARE DEFINITELY MADE AWARE OF THE FACT THAT THE PARTICULAR OCCURRENCE IS A LIABILITY CASE RATHER THAN A COMPENSATION CASE, GIVE NOTIFICATION OF THE AFORESAID OCCURRENCE TO THIS COMPANY.

1254

INCLUDED IN ORIGINAL ENTRY

ENDORSEMENT

ROYAL-GLOBE
INSURANCE

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

| COMPANY | PREMIUM | | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---|---|---|---|---|
| | ☐ Add'l.   ☐ Return $ | | | PTG 604825 |

Named Insured (and address, zip code, when necessary for mailing)

Producer (and address, zip code, for mailing)

## WORLDWIDE COVERAGE

THIS POLICY IS EXTENDED TO COVER OCCURRENCES WHICH TAKE PLACE DURING THE POLICY PERIOD ANYWHERE IN THE WORLD, EXCLUDING ALBANIA, BULGARIA, CHINA, CUBA, CZECHOSLOVAKIA, EAST GERMANY, HUNGARY, NORTH KOREA, LAOS, OUTER MONGOLIA, POLAND, RUMANIA, SOVIET UNION, TIBET NORTH VIETNAM AND YUGOSLAVIA.

WITH RESPECT TO THIS EXTENSION OF COVERAGE, IF CLAIM IS MADE OR SUIT IS BROUGHT WITHIN THE UNITED STATES OF AMERICA, ITS TERRITORIES OR POSSESSIONS, OR CANADA, THIS COMPANY WILL DEFEND ANY SUIT AGAINST THE ASSURED ALLEGING SUCH UINJURY, SICKNESS, DISEASE IOR DESTRUCTION AND SEEKING DAMAGES ON ACCOUNT THEREOF, EVEN IF SUCH SUIT IS GROUND-LESS, FALSE OR FRAUDULENT, BUT THE COMPANY MAY MAKE SUCH INVESTIGA-TION, NEGOTIATION AND SETTLEMENT OF ANY CLAIM OR SUIT AS IT DEEMS EXPEDIENT.

IF A CLAIM IS MADE OR SUIT IS BROUGHT ELSEWHERE THAN WITHIN THE UNITED STATES OF AMERICA, ITS TERRITORIES OR POSSESSIONS OR CANADA, THE COMPANY SHALL HAVE THE RIGHT BUT NOT THE DUTY TO INVESTIGATE AND SETTLE SUCH CLAIMS AND DEFEND SUCH SUITS. IN ANY CASE IN WHICH THE COMPANY ELECTS NOT TO INVESTIGATE, SETTLE OR DEFEND, THE INSURED, UNDER THE SUPERVISION OF THE COMPANY, SHALL MAKE OR CAUSE TO BE MADE SUCH INVESTIGATION AND DEFENSE AS ARE REASONABLE NECESSARY, AND SUB-JECT TO THE PRIOR AUTHORIZATION BY THE COMPANY, WILL EFFECT TO THE EXTENT POSSIBLE SUCH SETTLEMENT OR SETTLEMENTS AS THE COMPANY AND THE INSURED DEEM PRUDENT. THE COMPANY SHALL REIMBURSE THE INSURED FOR THE REASONABLE COST OF SUCH INVESTIGATION, SETTLEMENT OR DEFENSE.

1255



INCLUDED IN ORIGINAL ENTRY

G111
(Ed. 7-66)

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                     Policy No.   **PTG 604825**              Endorsement No.

Named Insured

Additional Premium $ _____                     Countersigned by _____
                                                                    (Authorized Representative)

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

## COMPREHENSIVE GENERAL LIABILITY INSURANCE
## MANUFACTURERS AND CONTRACTORS LIABILITY INSURANCE
## OWNERS, LANDLORDS AND TENANTS LIABILITY INSURANCE
## SMP LIABILITY INSURANCE
## STOREKEEPERS INSURANCE

---

### ADDITIONAL INSURED
(State or Political Subdivisions—Permits Relating to Premises)

It is agreed that the "Persons Insured" provision includes as an insured any state or political subdivision designated in the schedule below, subject to the following additional provisions:

1.  The insurance for any such insured applies only with respect to such of the following hazards for which the state or political subdivision has issued a permit in connection with premises owned by, rented to or controlled by the named insured and to which the Bodily Injury Liability Coverage applies:

    (a)  the existence, maintenance, repair, construction, erection or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoistaway openings, sidewalk vaults, street banners or decorations and similar exposures;

    (b)  the construction, erection or removal of elevators;

    (c)  the ownership, maintenance or use of any elevators covered by the policy.

2.  If Property Damage Liability Coverage is not otherwise afforded, such insurance shall nevertheless apply with respect to operations performed by or on behalf of the named insured in connection with the hazard for which the permit has been issued subject to the limits of liability stated herein.

### SCHEDULE

Designation of State or Political Subdivision:

**IF ANY**          Limits of Property Damage Liability

                    $ **AS PER**        each occurrence      **CERTIFICATES ATTACHED**
                    $                    aggregate

                    Annual Premium       $

---

G111 (Ed. 7-66)

1256



INCLUDED IN ORIGINAL ENTRY

**G404**
(Ed. 1-74)

This endorsement forms a part of the policy to which attached, **effective on the inception date of the policy unless otherwise stated herein.**

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                    Policy No.   **PTG 604825**                    Endorsement No.

Named Insured

Additional Premium $ _____                    Countersigned by _____
                                                              (Authorized Representative)

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

## COMPREHENSIVE GENERAL LIABILITY INSURANCE
## OWNERS, LANDLORDS AND TENANTS LIABILITY INSURANCE

---

### COLLEGES OR SCHOOLS

#### Schedule

Additional Insureds:

Including Teachers and Staff               ☒

First Aid Coverage:

1. Excluding All Students                  ☒
2. Including All Students                   ☐

It is agreed that with respect to the operation of any college or school by or on behalf of the named insured:

**1. Additional Insured:** The "Persons Insured" provision is amended to include as an insured any of the following while acting within the scope of his duties as such:

(a) If the named insured is a private charitable or educational institution, any trustee or member of the Board of Governors thereof,

(b) If the named insured is a public board or commission, any executive officer or member thereof,

(c) If an "x" is entered in the schedule in the block opposite "Including Teachers and Staff", any member of the teaching or administrative staff or other employee of the named insured.

**2. First Aid:** The insurance under the "Supplementary Payments" provision for first aid is subject to the following special provisions:

(a) If an "x" is entered in the schedule in the block opposite "Excluding All Students", the insurance does not apply to first aid to any student or pupil.

(b) Subject to paragraph 2 (a), unless an "x" is entered in the block opposite "Including All Students" the insurance does not apply to first aid to any student or pupil injured while engaged in any athletic activities (including calisthenic drills and gymnasium classes) directed or organized by any insured or by any person acting on behalf of the named insured.

(c) The insurance does not apply to expenses for services provided by the named insured or his employees or by any person or organization under contract with the named insured to provide such services.

**3. Infirmaries, Clinics, Hospitals:** If the college or school has an infirmary with facilities for lodging and treatment or a public clinic or hospital, the insurance does not apply to (1) the rendering of or failure to render (a) medical, surgical, dental, X-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith, (b) any service or treatment conducive to health or of a professional nature, or (c) any cosmetic or tonsorial service or treatment; (2) the furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances; or (3) the handling of or performing of autopsies on dead bodies.

**4. Transportation of Pupils:** With respect to the transportation of students or pupils, exclusions (b) and (e) of the policy are replaced by the following:

The insurance does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any **aircraft, automobile** or **watercraft** owned, operated or hired by or for the **insured** or any officer, employee or member of the teaching, supervisory or administrative staff thereof. For the purpose of this exclusion the word "hired" shall be deemed to include any contract to furnish transportation of pupils to and from schools.

**G404** (Ed. 1-74)

1257



INCLUDED IN ORIGINAL ENTRY

**G106**
(Ed. 7-66)

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

**(The following information is required only when this endorsement is issued subsequent to preparation of policy.)**

Endorsement effective   **10-1-75**          Policy No.   **PTG 604825**          Endorsement No.

Named Insured   **ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, N Y. ETAL**

Additional Premium $ _____                    Countersigned by _____
                                                                    (Authorized Representative)

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS AND CONTRACTORS LIABILITY INSURANCE
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY INSURANCE
OWNERS, LANDLORDS AND TENANTS LIABILITY INSURANCE
SMP LIABILITY INSURANCE
STOREKEEPERS INSURANCE**

---

**ADDITIONAL INSURED**
(Employees)

It is agreed that the "Persons Insured" provision is amended to include any employee of the named insured while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply:

1. to **bodily injury** to (a) another employee of the **named insured** arising out of or in the course of his employment or (b) the named insured or, if the **named insured** is a partnership or joint venture, any partner or member thereof;

2. to **property damage** to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (a) another employee of the named insured or (b) the named insured, or, if the named insured is a partnership or joint venture, any partner or member thereof.

**G106** (Ed. 7-66)



1258

**ENDORSEMENT**

INCLUDED IN ORIGINAL ENTRY

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

| | SIGNED BY |
|---|---|
| Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective. | AUTHORIZED REPRESENTATIVE |

| COMPANY | PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---|---|---|---|
| | ☐ Add'l. ☐ Return $ | | **PTG 604825** |

Named Insured (and address, zip code, when necessary for mailing)

Producer (and address, zip code, for mailing)

IT IS AGREED THAT THE POLICY IS EXTENDED TO COVER THE ADDITIONAL INTEREST OF:

NASSAU-SUFFOLK CATHOLIC HIGH SCHOOL ASSOCIATION
IN CONNECTION WITH THE ACTIVITIES SPONSORED BY
THE INSURED.

.20 —Sets



1259



## ENDORSEMENT

INCLUDED ORIGINAL ENTRY 

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

| | SIGNED BY |
|---|---|
| Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective. | |
| | AUTHORIZED REPRESENTATIVE |

COMPANY

| PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---|---|---|
| ☐ Add'l. ☐ Return $ | | PTG 604825 |

Named Insured (and address, zip code, when necessary for mailing)          Producer (and address, zip code, for mailing)

## SCOPE OF COVERAGE

**B.  SPECIAL EXCLUSIONS**

POLICIES COVERING LOCAL GOVERNMENTS AS ADDITIONAL INSUREDS OF THE STATE OF NEW YORK FOR LOCAL OR UNIFIED SERVICES SHALL EXCLUDE COVERAGE FOR ANY LIABILITY IMPOSED UPON THE INSUREDS BY ARTICLE 11-SECTION 11.29 OF THE MENTAL HYGIENE LAW OF THE STATE OF NEW YORK, AND BY ANY ACT AMENDATORY THEREOF OR SUPPLEMENTARY THERETO.

200...—Sets



1260

## ENDORSEMENT

**INCLUDE IN ORIGINAL ENTRY**

Type policy number only, in this section *above the heavy line, IF issued with policy and attachment stated in policy declarations.*

| | SIGNED BY |
|---|---|
| Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective. | AUTHORIZED REPRESENTATIVE |

| COMPANY | PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---|---|---|---|
| | ☐ Add'l. ☐ Return $ | | **PTG 604825** |

Named Insured (and address, zip code, when necessary for mailing)      Producer (and address, zip code, for mailing)

## CANCELLATION

**IT IS AGREED THAT THE 10 DAYS CANCELLATION PROVISION AS SHOWN UNDER CONDITION 11 OF THE POLICY IS AMENDED TO READ 45 DAYS.**

20.   —Sets



1261

## INCLUDED IN ORIGINAL ENTRY

(The Attaching Clause need be complete only when this endorsement is issued subsequent to preparation of the policy.)

GU 7775
(Ed. 12-68)

### RETROSPECTIVE PREMIUM ENDORSEMENT
(Short Form)

This endorsement, effective **OCT 1, 1975**
(12:01 A.M., standard time) , forms a part of policy No. **PTG  604825**

issued to **R.C. DIOCESE OF ROCKVILLE CENTRE, N.Y.**

by **ROYAL GLOBE INSURANCE COMPANY**

...................................................................................................
Authorized Representative

It is agreed that the premium for the policy shall be computed in accordance with the provisions of the Retrospective Premium Endorsement forming a part of policy (  **PTG  604805**                    ).





1262

**ENDORSEMENT**

ROYAL-GLOBE INSURANCE

*Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.*

| Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective. | SIGNED BY |
| --- | --- |
| | AUTHORIZED REPRESENTATIVE |

| COMPANY | PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
| --- | --- | --- | --- |
| | ☐ Add'l.   ☐ Return $ | | PTG 604825 |

Named Insured (and address, zip code, when necessary for mailing)          Producer (and address, zip code, for mailing)

IT IS AGREED THAT IF OTHER COLLECTIBLE INSURANCE WITH
ANY OTHER INSURER IS AVAILABLE TO THE INSURED COVERING
A LOSS ALSO COVERED HEREUNDER, THE INSURANCE AFFORDED
BY THIS POLICY SHALL BE IN EXCESS OF, AND NOT CONTRIBUTE
WITH, SUCH OTHER INSURANCE.

1263

**ENDORSEMENT**

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

| | SIGNED BY |
|---|---|
| Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective. | |
| | AUTHORIZED REPRESENTATIVE |

ROYAL-GLOBE INSURANCE

| COMPANY | PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---|---|---|---|
| | ☐ Add'l. ☐ Return $ | | **PTG 604825** |

Named Insured (and address, zip code, when necessary for mailing)

Producer (and address, zip code, for mailing)

## ADDITIONAL INSURED

IT IS AGREED THAT THE "PERSONS INSURED" PROVISION IS AMENDED TO INCLUDE THE FOLLOWING:

A) ALL VOLUNTEER WORKERS OF THE DIOCESE WHILE ACTING WITHIN THE SCOPE OF THEIR DUTIES AS SUCH. (ADDITIONAL PREMIUM OF $100. SUBJECT TO AUDIT.)

B) ALL SOCIETIES AND ORGANIZATIONS UNDER THE SPONSORSHIP OF ANY DIOCESAN ENTITY AND THE OFFICERS, EMPLOYEES, MEMBERS AND PARISHIONERS INDIVIDUALLY, WHILE ENGAGED IN ANY INCIDENTAL ACTIVITY ON BEHALF OF ANY PARISH, SCHOOL OR OTHER ENTITY OF THE DIOCESE.

C) MEMBERS OF CLUBS OR UNINCORPORATED ASSOCIATIONS, OF THE DIOCESE BUT ONLY AS RESPECTS THEIR LIABILITY FOR ACTIVITIES OF THE CLUB OR ASSOCIATION AS SUCH, OR FOR ACTIVITIES WHICH ARE PERFORMED ON BEHALF OF THE CLUB OR ASSOCIATION, OTHER THAN PRACTICE OR PARTICIPATION IN ANY GAME OR SPORT.

D) TRUSTEES, MEMBERS OF THE BOARDS OF GOVERNORS OR CLERGYMEN OR RELIGIOUS, CHARITABLE OR EDUCATIONAL INSTITUTIONS OF THE DIOCESE WHILE ACTING WITHIN THE SCOPE OF THEIR DUTIES.

E) ANY PARISH COUNCIL, SCHOOL BOARD, P.T.A. OR SIMILAR PARISH ORGANIZATION AND THE INDIVIDUAL MEMBERS OF SUCH ORGANIZATION WHILE ACTING WITHIN THE SCOPE OF THEIR DUTIES.

1264

**ENDORSEMENT**    **INCLUDED IN ORIGINAL ENTRY**

*Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.*

| | SIGNED BY |
|---|---|
| Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective. | AUTHORIZED REPRESENTATIVE |

ROYAL-GLOBE INSURANCE

| COMPANY | PREMIUM ☐ Add'l. ☐ Return $ | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER PTG 604825 |
|---|---|---|---|

Named Insured (and address, zip code, when necessary for mailing)    Producer (and address, zip code, for mailing)

## LIQUOR LAW LIABILITY

IT IS AGREED THAT EXCLUSION H UNDER PART 1 - COMPREHENSIVE

GENERAL LIABILITY INSURANCE IS DELETED.

IT IS FURTHER AGREED THAT EXCLUSION D UNDER BLANKET CONTRACTUAL

LIABILITY INSURANCE IS DELETED.

200-Sets



1267

**ENDORSEMENT**                          INCLUDED IN ORIGINAL ENTRY

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

| | SIGNED BY |
|---|---|
| Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective. | AUTHORIZED REPRESENTATIVE |

| COMPANY | PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---|---|---|---|
| | ☐ Add'l.  ☐ Return $ | | **PTG 604825** |

Named Insured (and address, zip code, when necessary for mailing)          Producer (and address, zip code, for mailing)

IT IS UNDERSTOOD AND AGREED THAT THIS POLICY EXCLUDES ANY CHARTERED
AIRCRAFT OR CHARTERED FLIGHT.

2002Q—Sets



1268

**ENDORSEMENT**

**ROYAL-GLOBE**

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

| | SIGNED BY |
|---|---|
| Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective. | |
| | AUTHORIZED REPRESENTATIVE |

COMPANY

| PREMIUM | | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---|---|---|---|
| ☐ Add'l. ☐ Return $ | | | **PTG 604825** |

Named Insured (and address, zip code, when necessary for mailing)      Producer (and address, zip code, for mailing)

## PERSONAL INJURY LIABILITY

IT IS AGREED THAT EXCLUSION C UNDER PART 16 – PERSONAL INJURY
LIABILITY INSURANCE IS DELETED.

200290—Sets



1269

**ENDORSEMENT**

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

| | | SIGNED BY |
|---|---|---|
| Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective. | | |
| | | AUTHORIZED REPRESENTATIVE |

| COMPANY | PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---|---|---|---|
| | ☐ Add'l.  ☐ Return $ | | PTG 604825 |

Named Insured (and address, zip code, when necessary for mailing) | Producer (and address, zip code, for mailing)

## CEMETERIES - CODE 65501

IT IS AGREED THAT COVERAGE APPLIES TO BODILY INJURY OR
PROPERTY DAMAGE DUE TO RENDERING OF, OR FAILURE TO RENDER,
ANY PROFESSIONAL SERVICE INCLUDING MENTAL ANGUISH
RESULTING FROM NEGLIGENCE OF THE NAMED INSURED.

IT IS FURTHER AGREED THAT AS RESPECTS THE ABOVE COVERAGE,
THE LIMITS OF BODILY INJURY LIABILITY IS AS FOLLOWS:

$ 500,000 EA. OCCURRENCE
$ 500,000 AGGREGATE

N    32- HOLY ROOD CEMETERY              S42-R.C.C. OF ST LAWRENCE
     62- R.C.C. OF ST. PATRICK          66- R.C.C. OF ST. PATRICK
                                        68- R.C.C. OF ST. PATRICK
S    1- R.C.C. OF ST. AGNES
     24 - R.C.C. OF ST. FRANCIS DE SALES 69-ST. PATRICK'S CEMETERY
     27- HOLY SEPULCHRE CEMETERY        73- R.C.C. OF ST PHILIP NERI
     30- R.C.C. OF ST. JAMES            108-R.C.C. OF MOST HOLY TRINITY
     34- R.C.C. OF ST. JOHN THE EVANGELIST 110-RC.C. OF SACRED HEARTS OF
     35- R.C.C. OF ST. JOHN OF GOD         JESUS & MARY
     37- R.C.C. OF ST. JOSEPH

# COVER NOTE

**FTC 604825**

P.E ADDRESS (NO. ST. TOWN COUNTY & STATE)

Roman Catholic Diocese of
Rockville Centre, N. Y.
253 Charles Highway
Rockville Centre, N. Y.   11570

Edward G. Black Co.
120 William Street
New York, N. Y.   10038

| | INSURANCE COMPANY | TENTATIVE ADVANCE PREMIUM | EFFECTIVE DATE |
|---|---|---|---|
| | Royal Globe Insurance Company | $363,970.00 | 10/1/75 |

The above named company, hereinafter referred to as the Company, agrees with the named insured, hereinafter referred to as the insured, in consideration of payment of the above tentative advance premium and subject to all the terms of this Cover Note as follows:

ITEM 1 — The Company acknowledges itself bound by the terms, conditions and limitations of the policy of insurance in current use by the Company for of insurance specified in the Schedule of Insurance forming a part hereof from effective date shown herein and until one year thereafter or an earlier date as the actual policy may be issued.

ITEM 2 — SCHEDULE OF INSURANCE

Renewal of FTC 604824

Excluding hospitals now covered
by Medical Malpractice Insurance Association.

Commission = 04.5%

BODILY INJURY       $855,600.00
PROPERTY DAMAGE     $10,370.00

ITEM 3 — CANCELLATION

Cancellation of the insurance described in Item 2 shall be in accordance with the applicable policy(ies) of insurance.

This Cover Note shall be terminated as of its inception by the issuance of the policy by the Company and the tentative advance premium shall be credited

IN WITNESS WHEREOF, the Company has caused this Cover Note to be signed by its President and a Secretary at New York, N. Y. and countersigned by authorized representative of the Company.

G. H. BELL.  )p OCT 23 1975

COMPANY COPY  October 22, 1975

1249

**Roman Catholic Diocese of Rockville Centre**

**<u>Royal Policy Cover Sheet</u>**

|                     |                       |
|--------------------:|:----------------------|
| Insurer:            | Royal Globe           |
| Policy number:      | PTQ 306461            |
| Inception date:     | 10/1/1975             |
| Term at issuance:   | 1 year                |
| Page count:         | 9                     |
| Contents:           | Declaration- 2 pgs    |
|                     | Policy jacket- 3 pgs  |
|                     | Endorsement- 4 pgs    |

## Policy No. PTQ 306461

| | |
|---|---|
| ☐ Royal Indemnity Company | ☐ Globe Indemnity Company |
| ☒ Royal Globe Insurance Company | ☐ Safeguard Insurance Company |
| ☐ Royal Insurance Company, Limited | ☐ Newark Insurance Company |

☐ The London & Lancashire Insurance Company, Limited
☐ The Liverpool & London & Globe Insurance Company Limited
☐ American and Foreign Insurance Company

### SECTION I—DECLARATIONS

**ITEM 1** — NAME OF INSURED AND ADDRESS

ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK AND AS PER ENDORSEMENT #1
253 SUNRISE HIGHWAY
ROCKVILLE CENTRE, N.Y. 11570

CORROON & BLACK CO.
150 WILLIAM ST.,
NEW YORK, N.Y.   10038

**ITEM 2** — POLICY PERIOD

FROM **OCT. 1, 1975** TO **OCT. 1, 1976**    12:01 A.M. Standard Time at the address of the Named Insured

**ITEM 3** — ADDITIONAL INTERESTS REFERENCE: DEFINITIONS ITEM 1C)

**ITEM 4** — LIMITS AND PREMIUM

| LIMIT OF LIABILITY | | RETAINED LIMIT |
|---|---|---|
| EACH OCCURRENCE $12,000,000 | AGGREGATE $12,000,000 | EACH OCCURRENCE $25,000 |

PREMIUM $ 132,505.00 FLAT CHARGE

**SCHEDULE OF UNDERLYING INSURANCE**

| TYPE OF POLICY | POLICY NUMBER | INSURER | APPLICABLE LIMITS |
|---|---|---|---|
| A) STANDARD WORKMEN'S COMPENSATION & EMPLOYERS' LIAB. | PTC 604805 10-1-75-76 | ROYAL GLOBE INSURANCE CO. | COVERAGE B EMPLOYERS' LIAB. $STATUTORY ONE AC |
| B) COMPREHENSIVE GENERAL LIAB. AND INCLUDING 1. PROFESSIONAL MALPRACTICE | PTG 604825 10-1-75-76 | ROYAL GLOBE INSURANCE CO. | BODILY INJURY LIAI $300,000 EACH OCC. $300,000 AGG. |
| 2. PERSONAL INJURY LIAB. | | | PROPERTY DAMAGE LIAB. $100,000 EACH OCC $100,000 AGG. |

Renews or Replaces Policy No. **PTQ 302591**

Countersigned by _____
AUTHORIZED REPRESENTATIVE

CL66274C—SECTION I

ISSUED TO FORM A PART OF POLICY NO. PTQ 306461

(CONTINUED)

## SCHEDULE OF UNDERLYING INSURANCE

| TYPE OF POLICY | POLICY NUMBER | INSURER | APPLICABLE LIMITS |
|---|---|---|---|
| | | | VARIOUS LIMITS OF LIABILITY BUT NOT LESS THAN: |
| C) AUTOMOBILE LIAB. | PTA 604815 12-12-75-76 | ROYAL GLOBE INSURANCE CO. | AUTOMOBILE LIAB. BODILY INJURY LIAB. $1,000,000 EA. PER. $5,000,000 EA. OCC. |
| | | | PROPERTY DAMAGE LIAB. $1,000,000 EACH OCC. |
| D) AUTOMOBILE LIAB. | PTA 604845 12-12-75-76 | ROYAL GLOBE INSURANCE CO. | VARIOUS NOT LESS THAN BODILY INJURY LIAB. $ 250,000 EA. PER. $1,000,000 EA. OCC. |
| | | | PROPERTY DAMAGE LIAB. $100,000 EA. OCC. |

IT IS STIPULATED THAT FOR THE PURPOSES OF APPLICATION OF UNDERLYING
INSURANCE, THAT VARIOUS MISCELLANEOUS AUTOMOBILE LIABILITY POLICIES
& CERTIFICATES ARE IN EXISTENCE AS ISSUED BY THE ROYAL GLOBE INSUR-
ANCE COMPANY IN ADDITION TO THE POLICIES LISTED IN THIS SCHEDULE.
SUCH AUTOMOBILE LIABILITY POLICIES ARE HEREBY DECLARED AS UNDERLYING
INSURANCE. THE "APPLICABLE LIMITS" OF SUCH POLICIES SHALL BE NO LESS
THAN   250/1000. B.I.
       100,000   P.D.

THE COMPANY NAMED IN THE DECLARATIONS FORMING SECTION I HEREOF, (a stock insurance company, herein called the Company), AGREES WITH THE NAMED INSURED, named in the Declarations, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to all of the terms of this policy:

## Section II—INSURING AGREEMENTS

### 1. Coverage

To indemnify the Insured for all sums which the Insured shall become legally obligated to pay as damages because of:

(a) Personal Injury

(b) Property Damage

(c) Advertising Liability

caused by an occurrence which takes place during the policy period anywhere in the world.

### 2. Defense, Supplementary Payments

With respect to any occurrence not covered by underlying insurance specified in the Declarations or any other underlying insurance collectible by the Insured, but covered by the terms and conditions of this policy, without regard to the retained limit contained herein, the Company shall

(a) have the right and duty to defend any suit against the Insured seeking damages on account thereof, even if such suit is groundless, false or fraudulent, but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

(b) pay premiums on appeal bonds required in any such suit, and premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, but the Company shall have no obligation to apply for or furnish any such bonds;

(c) pay all expenses incurred by the Company, all costs taxed against the Insured in any such suit and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon;

(d) reimburse the Insured for all reasonable expenses, other than loss of earnings incurred at the Company's request;

and the amounts so incurred, except settlements of claims and suits are payable by the Company in addition to the applicable limit of liability of this policy.

In jurisdictions where the Company may be prevented by law or otherwise from carrying out this agreement the Company shall pay any expense incurred with its written consent in accordance with this agreement. The Insured shall promptly reimburse the Company for all sums paid on behalf of the Insured within the retained limit specified in the Declarations.

### 3. Limit of Liability

With respect to coverages 1(a), 1(b) or 1(c), or any combination thereof, the Company's liability shall be only for the ultimate net loss, resulting from any one occurrence in excess of either;

(a) the amount recoverable under underlying insurance as stated in the Declarations and the amount recoverable under any other underlying insurance collectible by the Insured, or

(b) the retained limit as stated in the Declarations.

All personal injury, property damage and advertising liability arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

In the event of reduction or exhaustion of the aggregate limits of liability under the underlying insurance by reason of losses paid thereunder, this policy shall:

(1) in the event of reduction, pay the excess of the reduced underlying insurance, and

(2) in the event of exhaustion, continue in force as underlying insurance as stated in the Declarations.

In no event shall the Company be liable for an amount in excess of that set forth in the Declarations on account of each occurrence happening during the period commencing with the effective or anniversary date of this policy—subject to a limit as stated in the Declarations in the aggregate for all claims arising under the insurance afforded during each consecutive twelve (12) months of the policy period.

## Section III—EXCLUSIONS

This policy does not apply:

1. to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

2. To advertising liability resulting from:

(a) failure of performance of contract other than unauthorized appropriation of ideas based upon alleged breach of implied contract;

(b) infringement of registered trade mark, service mark or trade name, other than titles or slogans, by use thereof as the registered trade mark, service mark or trade name of goods or services sold, offered for sale or advertised;

(c) incorrect description of any article or commodity;

(d) mistake in advertised price;

3. to property damage to property owned by the Insured;

4. to property damage to the Named Insured's products arising out of such products or any part of such products;

5. to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

6. to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

7. to personal injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of

(a) watercraft over 50 feet in length, if the occurrence takes place away from premises, owned, rented or controlled by the Named Insured, or

(b) aircraft,

if such watercraft or aircraft is owned by, loaned or rented to or hired without crew by or on behalf of the Named Insured; but this exclusion shall not apply to (1) operations performed by independent contractors, or (2) personal injury to any employee of the Insured arising out of and in the course of his employment by the Insured;

8. to loss of use of tangible property which has not been physically injured or destroyed resulting from

(a) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or

(b) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality fitness or durability warranted or represented by the Named Insured;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;

9. to personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

CL66274B—Text

10. to personal injury or property damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to liability assumed by the Insured under contract or agreement;

11. to personal injury or property damage

(a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be entitled to indemnity from the United States of America, or any agency thereof, with any person or organization;

(c) resulting from the hazardous properties of nuclear material, if

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

(3) the personal injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c)(3) applies only to property damage to such nuclear facility and any property thereat;

provided that the words property damage include all forms of radioactive contamination of property.

As used in this exclusion (11)

hazardous properties include radioactive, toxic or explosive properties;

nuclear material means source material, special nuclear material or by-product material;

source material, special nuclear material and by-product material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

spent fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

waste means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

nuclear facility means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

## Section IV—DEFINITIONS

1. "Named Insured" and "Insured"

The words Named Insured includes any subsidiary company of the Named Insured and any other company coming under the Named Insured's control of which it assumes active management.

Each of the following is an Insured under this policy to the extent set forth below:

(a) any executive officer, director or stockholder of the Named Insured while acting in his capacity as such, and any organization or proprietor with respect to real estate management for the Named Insured,

(b) any employee of the Named Insured, while acting in his capacity as such when the Named Insured so directs the Company in writing upon a claim being made against such employee,

(c) if the Named Insured is designated as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor,

(d) if the Named Insured is designated as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such,

(e) any additional interest, other than the Named Insured or the Insured as specified in item 3 of the Declarations.

2. "Personal Injury" means the following, including death resulting therefrom: Bodily Injury, Mental Injury, Mental Anguish, Shock, Sickness, Disease, Disability, False Arrest, False Imprisonment, Wrongful Eviction, Wrongful Entry, Wrongful Detention, Malicious Prosecution, Discrimination (unless

prohibited by law), Humiliation; also Invasion of Rights of Privacy, Libel, Slander or Defamation of Character, except that which arises out of any Advertising activities.

3. "Property Damage" means (a) physical injury to or destruction of tangible property including the loss of use thereof at any time resulting therefrom, or (b) loss of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence.

4. "Advertising Liability" means: Invasion of Rights of Privacy, Libel, Slander or Defamation of Character, any infringement of copyright, title or slogan, and piracy, unfair competition, idea misappropriation under an implied contract—committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the Named Insured's advertising activities.

5. "Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the Insured;

6. "Ultimate Net Loss" means: the sum actually paid or payable in cash in settlement or satisfaction of losses for which the Insured is liable either through adjudication or by compromise with the written consent of the Company, after making proper deduction for all recoveries and salvages collectible, but excludes all loss expenses and legal expenses (including attorney's fees, court costs and interest on any judgment or award) and all salaries of employees and office expenses of the Insured, the Company or any underlying insurer so incurred.

## Section V—CONDITIONS

1. Premium Computation   The premium stated in the Declarations is an advance premium unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period or at such times during the policy period as the Company may direct.

2. Additional "Named Insured"   In the event of an additional Named Insured being added to the coverage under the underlying insurance during the policy period, prompt notice shall be given the Company and if an additional premium has been charged for such addition on the underlying insurance, the Company shall be entitled to charge an appropriate additional premium hereon.

3. Prior Insurance and Non-Cumulation of Liability

(a) It is agreed that if any loss is also covered in whole or in part under any other excess policy issued to the Insured prior to the inception date hereof, the Company's limit of liability as stated in the Declarations shall be reduced by any amounts due to the Insured on account of such loss under such prior insurance.

CL66274B—Text

(b)  Subject to paragraph (a) above and to all other terms and conditions of this policy, if a claim arising out of an **occurrence** insured hereunder, is continuing at the time of termination of this policy, the Company will continue to insure the liability of the Insured with respect to such claim without payment of additional premium.

**4. Cross Liability**   In the event of claims being made by reason of **personal injury** and/or **property** damage suffered by one **Insured** herein for which another **Insured** herein is or may be liable, this policy shall cover such **Insured** against whom a claim is made or may be made in the same manner as if separate policies had been issued to each **Insured** herein. Nothing contained herein shall operate to increase the Company's limit of liability as set forth in Insuring Agreement 3.

**5. Notice of "Occurrence"**   Whenever it appears that an occurrence covered hereunder is likely to involve the Company, written notice shall be sent to the Company as soon as practicable. Such notice shall contain particulars sufficient to identify the **Insured** and also reasonably obtainable information respecting the time, place and circumstances of the **occurrence**.

**6. Inspection and Audit**   The Company shall be permitted but not obligated to inspect the Insured's property and operations but neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the **Insured** or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the **Insured's** books and records at any time during the policy period and extensions thereof and within three years after the final termination of this insurance, as far as they relate to the subject matter of this insurance.

**7. Maintenance of Underlying Insurance**   Each policy referred to in the attached schedule of underlying insurance including renewal or replacement thereof, not more restrictive, shall be maintained in full effect during this policy period, except for any reduction of the aggregate limits contained therein solely by payment of losses during this policy period. Failure of the Named Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure the Company shall be liable only to the extent that it would have been liable had the Named Insured complied therewith.

**8. Assistance and Cooperation**   Except as provided in Insuring Agreement 2, the Company shall not be called upon to assume charge of the settlement or defense of any claim made, suit brought or proceeding instituted against the **Insured**; but the Company shall have the right and shall be given the opportunity to associate with the **Insured** in the defense and control of any claim, suit or proceeding reasonably likely to involve the Company. In such event the **Insured** and the Company shall cooperate fully.

**9. Appeals**   In the event the **Insured** or the **Insured's** underlying insurer/s elect not to appeal a judgment in excess of the underlying limits, the Company may elect to make such appeal at its cost and expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of the Company for **ultimate net loss** exceed the amount set forth in the Declarations plus the cost and expense of such appeal.

**10. Action Against Company**   No action shall lie against the Company with respect to any one **occurrence** unless as a condition precedent thereto, the **Insured** shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay an amount of **ultimate net loss** in excess of the underlying or retained limit shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the Company. The **Insured** shall make a definite claim for any loss for which the Company may be liable within twelve (12) months after such final determination. Claim for any subsequent payments made by the **Insured** on account of the same **occurrence** shall be similarly made. All losses covered by this policy shall be due and payable within thirty (30) days after they are respectively claimed and proven in conformity with this policy.

**11. Other Insurance**   If other valid and collectible insurance with any other insurer is available to the **Insured** covering a loss also covered by this policy, other than insurance that is specifically excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

**12. Subrogation**   Inasmuch as this policy is excess coverage, the Insured's right of recovery against any person, firm or corporation cannot be exclusively subrogated to the Company; therefore, in case of any payment hereunder, the Company will act in concert with all other interests, including the **Insured**, concerned in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests, including the **Insured**, that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder, lastly, the interests, including the **Insured**, of which this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests, including the **Insured**, concerned, in the ratio of their respective recoveries as finally settled.

**13. Changes**   Notice to or knowledge possessed by any person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed except by endorsement issued to form a part of this policy.

**14. Assignment**   Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon. If, however, the Named Insured shall die or be adjudged bankrupt or insolvent, this policy, unless cancelled, shall cover the **Insured's** legal representative for the unexpired portion of such period.

**15. Cancellation**   This policy may be canceled by the Named Insured by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the Company by mailing to the Named Insured at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such notice either by the Named Insured or by the Company shall be equivalent to mailing.

If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable thereafter, but payment or tender of unearned premium is not a condition of cancellation.

**16. Bankruptcy or Insolvency**   Bankruptcy or insolvency of the Insured shall not relieve the Company of any of its obligations hereunder.

**17. Arbitration**   Except with respect to liability assumed by the Insured under a lease of premises, easement agreement, agreement required by municipal ordinance, sidetrack agreement or elevator or escalator maintenance agreement, the company shall not be liable under this policy for damages awarded in arbitration other than an arbitration proceeding wherein an indemnitee under a written contract or agreement seeks damages against the Insured on account thereof and wherein the Company is entitled to exercise the Insured's rights in the choice of arbitrators and in the conduct of such arbitration proceedings.

**In Witness Whereof**, the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the declarations page by a duly authorized representative of the Company.

_Corporate Secretary_

_President/U.S. Manager_

CL66274B—Text



Type policy number only, in this section above the heavy line, if issued with policy and attachment stated in policy declarations.

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

| COMPANY | PREMIUM | ENO. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---|---|---|---|
| | ☐ Add'l.  ☐ Return $ | | PTQ 306461 |

Named Insured (and address, zip code, when necessary for mailing)

Producer (and address, zip code, for mailing)

## ENDORSEMENT # I

## NAMED INSURED

IN CONSIDERATION OF THE PREMIUM AT WHICH THIS POLICY IS WRITTEN, IT IS AGREED THAT DECLARATIONS – ITEM I – "NAMED INSURED" IS HEREBY COMPLETED TO READ AS FOLLOWS:

ITEM I – "NAME INSURED":

THE NAMED INSURED INCLUDES ALL INSUREDS AND ADDITIONAL INTERESTS NAMED IN THE COVERAGE CERTIFICATES ATTACHED TO AND MADE A PART OF UNDERLYING ROYAL GLOBE INSURANCE COMPANY POLICIES.

CL 20030R-1—Singles

ENDORSEMENT

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

Type policy number only in this section above the arrow to be imprinted through and attachment stated in policy declarations.

| COMPANY | PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
| | ☐ Add'l.   ☐ Return $ | | PTQ 306461 |

Named Insured (and address, zip code, when necessary for mailing)

Producer (and address, zip code, for mailing)

---

## ENDORSEMENT #2

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS AGREED THAT ITEM 15 OF CONDITIONS SECTION V - "CANCELLATION", IS AMENDED AS FOLLOWS:

15. CANCELLATION - THIS POLICY MAY BE CANCELLED BY THE NAMED INSURED BY SURRENDER THEREOF TO THE COMPANY OR ANY OF ITS AUTHORIZED AGENTS, OR BY MAILING TO THE COMPANY WRITTEN NOTICE STATING WHEN THEREAFTER THE CANCELLATION SHALL BE EFFECTIVE. THIS POLICY MAY BE CANCELLED BY THE COMPANY BY MAILING TO THE NAMED INSURED, AT THE ADDRESS SHOWN IN THIS POLICY, WRITTEN NOTICE STATING WHEN NOT LESS THAN FORTY-FIVE (45) DAYS THEREAFTER, SUCH CANCELLATION SHALL BE EFFECTIVE. THE MAILING OF NOTICE AS AFORESAID SHALL BE SUFFICIENT PROOF OF NOTICE, THE TIME OF SURRENDER OR THE EFFECTIVE DATE AND HOUR OF CANCELLATION STATED IN THE NOTICE, SHALL BECOME THE END OF THE POLICY PERIOD. DELIVERY OF SUCH NOTICE, EITHER BY THE NAMED INSURED OR BY THE COMPANY, SHALL BE EQUIVALENT TO MAILING.

IF THE NAMED INSURED CANCELS, EARNED PREMIUM SHALL BE COMPUTED IN ACCORDANCE WITH THE CUSTOMARY SHORT RATE TABLE AND PROCEDURE. IF THE COMPANY CANCELS, EARNED PREMIUM SHALL BE COMPUTED PRO RATA. PREMIUM ADJUSTMENT MAY BE MADE EITHER AT THE TIME CANCELLATION IS EFFECTED OR AS SOON AS PRACTICABLE THEREAFTER, BUT PAYMENT OR TENDER OF UNEARNED PREMIUM IS NOT A CONDITION OF CANCELLATION.

CL 20030R—Sets

## ENDORSEMENT

*Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.*

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations; otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

| PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---------|-------------------------------|------------------------|
| ☐ Add'l.  ☐ Return $ **NIL.** | | **PTQ 306461** |

Named Insured (and address, zip code, when necessary for mailing)          Producer (and address, zip code, for mailing)

## ENDORSEMENT #3

### FEDERAL PENSION REFORM ACT OF 1974

IN CONSIDERATION OF THE PREMIUM CHARGED FOR COVERAGE UNDER THIS POLICY, IT IS UNDERSTOOD AND AGREED THAT SUCH COVERAGE DOES NOT EXTEND TO ANY LIABILITY IMPOSED UPON ANY INSURED AS A FIDUCIARY, ADMINISTRATOR OR OTHER PARTY IN INTEREST, AS DEFINED IN THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS RESPECTS ANY "EMPLOYEE BENEFIT PLAN".

20029Q-1—Singles

ROYAL GLOBE
INSURANCE

**ENDORSEMENT**

Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.

Unless otherwise stated, this endorsement forms a part of the policy to which attached as of issue, provided such attachment is stated in the policy declarations. Otherwise, this endorsement is issued for attachment to and forms a part of the policy numbered below, effective only on the date indicated on this endorsement but at the same time or hour of the day as the policy became effective.

SIGNED BY

AUTHORIZED REPRESENTATIVE

| COMPANY | PREMIUM | END. EFF. DATE (MO., DAY, YR.) | POLICY SYMBOL & NUMBER |
|---|---|---|---|
| | ☐ Add'l.  ☐ Return $ | | PTQ 306461 |

Named Insured (and address, zip code, when necessary for mailing)

Producer (and address, zip code, for mailing)

## ENDORSEMENT #4

### EXCLUSIONS

THE FOLLOWING LOCATIONS ARE EXCLUDED EXCEPT FOR EMPLOYERS' LIABILITY AND AUTOMOBILE LIABILITY.

#### HOSPITALS

1. ST. FRANCIS HOSPITAL AND THEIR ALLIED CLINICS
   PORT WASHINGTON BLVD.,
   ROSLYN, N.Y.   11576

2. ST. CHARLES HOSPITAL AND THEIR ALLIED CLINICS
   BELLE TERRE BLVD.,
   PORT JEFFERSON, N.Y.   11777

3. MERCY HOSPITAL AND THEIR ALLIED CLINICS
   1000 NORTH VILLAGE AVE.,
   ROCKVILLE CENTRE, N.Y.   11570

4. GOOD SAMARITAN HOSPITAL AND THEIR ALLIED CLINICS
   1000 MONTAUK HIGHWAY
   WEST ISLIP, N.Y.   11795

IT IS UNDERSTOOD THAT ALL LIABILITY ARISING FROM ACTS OR OMISSIONS COMMITTED AT OR BY THE ABOVE HOSPITALS AND CLINICS, OR BY AGENTS OR REPRESENTATIVES OF SUCH HOSPITALS OR CLINICS OTHER THAN EMPLOYERS' LIABILITY AND AUTOMOBILE LIABILITY OTHERWISE COVERED, IS EXCLUDED FROM COVERAGE UNDER THIS POLICY.

CL 20030R—Sets