**EXHIBIT C**

**(COMPENDIUM OF LONDON POLICIES)**

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

|                    |                                        |
|-------------------:|:---------------------------------------|
| Insurer(s):        | Underwriters at Lloyd's                |
| Policy number(s):  | MW 23017                               |
| Inception date:    | 9/30/1976                              |
| Term at issuance:  | 1 year + 1 day                         |
| Page count:        | 5                                      |
| Contents:          | Slip- 1 pg                             |
|                    | Excess Umbrella Liability form- 3 pgs  |
|                    | Endorsement- 1 pg                      |

PART TWO: THIS DECLARATIONS PAGE WITH CERTIFICATE PROVISIONS FORM NO. MW-1B IS MADE AS PART HEREOF:

| DATE ISSUED | CONTRACT NO. | PREVIOUS NO. |
|---|---|---|
| December 22, 1976 | NMC 1014 | NEW |

**CERTIFICATE NUMBER** MW 23017

| ITEM | |
|---|---|
| 1 | ## Name and Address of Assured<br><br>ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, AND ALL LEGAL ENTITIES THEREIN, OVER WHICH THE SAME CENTRAL AUTHORITY APPOINTS OR CONTROLS THE APPOINTMENT OF THE BOARD OF TRUSTEES OR SIMILAR BODY AND EXERCISES DIRECT, COMPLETE AND ACTIVE CONTROL OVER THE FINANCES, PROPERTIES, OPERATIONS AND ACTIVITIES.<br>50 NORTH PARK AVENUE<br>ROCKVILLE CENTRE, NEW YORK |
| 2 | EFFECTIVE ☒ 12:01 A.M.    BOTH DAYS AT<br>FROM ☐ 12:00 NOON    STANDARD TIME    SEPTEMBER 30, 1976    TO    OCTOBER 1, 1977 |
| 3 | Acting upon your instructions, we have effected the insurance with Underwriters at Lloyd's, London. |

| | AMOUNT | RATE | PREMIUM |
|---|---|---|---|
| 4 | SEE FORM ATTACHED | FLAT | $15,000.00 |

| | COVERAGE |
|---|---|
| 5 | EXCESS UMBRELLA LIABILITY INSURANCE<br><br>As Per Attached Form |

| | SPECIAL CONDITIONS |
|---|---|
| 6 | |

This insurance is made and accepted subject to all the provisions set forth herein or endorsed hereon or appearing on the Jacket hereof, all of which are incorporated herein, and any provisions appearing in forms attached hereto and made a part hereof which alter the provisions herein shall supersede such provisions as they are inconsistent therewith.

*Stewart Smith Mid America, Inc.*

BY *Alexander McKeye*

VICE PRESIDENT

MW-1A

## EXCESS UMBRELLA LIABILITY

<u>NAMED ASSURED</u>:  As stated in Item 1 of the Declarations forming a part
hereof

and/or subsidiary, associated, affiliated companies or owned and controlled
companies as now or hereafter constituted and of which prompt notice has
been given to Underwriters (hereinafter called the "Named Assured").

### INSURING AGREEMENTS

1. <u>COVERAGE</u>

   Underwriters hereby agree, subject to the limitations, terms and conditions
   hereinafter mentioned, to indemnify the Assured for all sums which the
   Assured shall be obligated to pay by reason of the liability

   (a)  imposed upon the Assured by law, or

   (b)  assumed under contract or agreement by the Named Assured and/or
        any officer, director, stockholder, partner or employee of the
        Named Assured, while acting in his capacity as such,

   for damages on account of:-

      (i)    Personal Injuries

      (ii)   Property Damage

      (iii)  Advertising Liability

   caused by or arising out of each occurrence happening anywhere in the
   world, and arising out of the hazards covered by and as defined in the
   underlying Umbrella policies and issued by the Insurers stated in Item 2
   of the Declarations (hereinafter called the "Underlying Umbrella
   Insurers").

2. <u>LIMIT OF LIABILITY - UNDERLYING LIMITS</u>

   It is expressly agreed that liability shall attach to the Underwriters only
   after the Underlying Umbrella Insurers have paid or have been held liable
   to pay the full amount of their respective ultimate net loss liability as
   follows:-

   $ (as stated in Item 3 of the Declarations)  ultimate net loss in all in respect of each occurrence, but

   $ (as stated in Item 4 of the Declarations)  in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employee of the Assured

   and the Underwriters shall then be liable to pay only the excess thereof
   up to a further -

   $ (as stated in Item 5 of the Declarations)  ultimate net loss in all in respect of each occurrence - subject to a limit of

   $ (as stated in Item 6 of the Declarations)  in the aggregate for each annual period during the currency of this policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.

-1-

## CONDITIONS

1. PRIOR INSURANCE AND NON CUMULATION OF LIABILITY

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess Policy issued to the Assured prior to the inception date hereof the Limit of Liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

Subject to the foregoing paragraph and to all the other terms and conditions of this Policy in the event that personal injury or property damage arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy Underwriters will continue to protect the Assured for liability in respect of such personal injury or property damage without payment of additional premium.

2. MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and Limits of Liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Declarations prior to the happening of an occurrence for which claim is made hereunder.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained in full effect during the currency hereof except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy or by the operation of Condition C of the Underlying Umbrella Policies.

3. CANCELLATION

This Policy may be cancelled by the Named Assured or by the Underwriters or their representatives by mailing written notice to the other party stating when, not less than thirty (30) days thereafter, cancellation shall be effective. The mailing of notice as aforesaid by Underwriters or their representatives to the Named Assured at the address shown in this Policy shall be sufficient proof of notice, and the Insurance under this Policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the Named Assured or by the Underwriters or their representatives shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Assured the Underwriters shall retain the customary short rate proportion of the premium for the period this Policy has been in force.

If this Policy shall be cancelled by the Underwriters the Underwriters shall retain the pro rata proportion of the premium for the period this Policy has been in force. Notice of cancellation by the Underwriters shall be effective even though Underwriters make no payment or tender of return premium.

4. NOTICE OF OCCURRENCE

Whenever the Assured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damage which, in the event that the Assured shall be held liable, is likely to involve this Policy, notice shall be sent as stated in Item 7 of the Declarations as soon as practicable, provided however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

5. OTHER INSURANCE

If other valid and collectible insurance with any other Insurer is available to the Assured covering a loss also covered by this Policy, other than insurance that is specifically stated to be in excess of this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance.

AIF 210

## DECLARATIONS

ITEM 1.    NAMED ASSURED:

ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, AND ALL LEGAL ENTITIES
THEREIN, OVER WHICH THE SAME CENTRAL AUTHORITY APPOINTS OR CONTROLS
THE APPOINTMENT OF THE BOARD OF TRUSTEES OR SIMILAR BODY AND EXERCISES
DIRECT, COMPLETE AND ACTIVE CONTROL OVER THE FINANCES, PROPERTIES,

ITEM 2.    UNDERLYING UMBRELLA INSURERS AND POLICIES:       OPERATIONS AND ACTIVITIES

MIDLAND INSURANCE COMPANY
POLICY # UL 388732

ITEM 3.    UNDERLYING UMBRELLA LIMITS
(Insuring Agreement 2):

$5,000,000.00

ITEM 4.    UNDERLYING UMBRELLA AGGREGATE LIMITS
(Insuring Agreement 2):

$5,000,000.00

ITEM 5.    LIMIT OF LIABILITY
(Insuring Agreement 2):

$5,000,000.00

ITEM 6.    AGGREGATE LIMIT OF LIABILITY
(Insuring Agreement 2):

$5,000,000.00

ITEM 7.    NOTICE OF OCCURRENCE
(Condition 4) to:

STEWART, SMITH MID AMERICA, INC.
141 WEST JACKSON BOULEVARD
CHICAGO, ILLINOIS   60604

ATTACHING TO AND FORMING PART OF COVER NOTE NO.   MW 23017

DATED:   December 22, 1976

STEWART, SMITH MID AMERICA, INC.

By _Alexander J. Wayne_

VICE PRESIDENT

- 3 -

# ENDORSEMENT

ADDITIONAL PREMIUM $   – – – –

RETURN PREMIUM $   – – – –

Attached to and forming part of Policy/Certificate No.    MW 23017

in the name of      ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, ET AL

Effective date of this endorsement is     SEPTEMBER 30, 1976     Endorsement No.   1

IT IS AGREED that the following are added as additional Named Assureds: –

     Bishop John R. Mc Cann
     Auxiliary Bishop Vincent J. Baldwin
     Auxiliary Bishop Gerald J. Ryan
     Auxiliary Bishop James J. Daly
     Bishop Emeritus Walter P. Kellenberg

NMC 1014

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

DATED:     June 29, 1977       ck

BK-17

*Stewart Smith Mid America, Inc.*

By _Alexander Wayne_

VICE PRESIDENT

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

|  |  |
|---|---|
| Insurer(s): | Centennial Ins Co |
| Policy number(s): | 291-68-71-16 |
| Inception date: | 10/1/1976 |
| Term at issuance: | 3 years |
| Page count: | 16 |
| Contents: | Declarations- 2 pgs |
|  | Premium- 1 pg |
|  | Endorsement- 13 pgs |

# CENTENNIAL
## INSURANCE COMPANY

**POLICY NUMBER**

## 291-68-71-16

No. 291-68-71-16

**INSURED**

ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE
50 NORTH PARK AVENUE
ROCKVILLE CENTRE,
NEW YORK  11570

from noon standard time: **OCTOBER 1, 1976**

until noon standard time: **OCTOBER 1, 1979**

**PRODUCER**

ARTHUR J. GALLAGHER & CO.
THE TOWER, GOLF ROAD
ROLLING MEADOWS, ILLINOIS  60008

| | |
|---|---|
| Premium is payable: at inception | $ 19,300 |
| 1st Anniversary | $ 19,300 |
| 2nd anniversary | $ 19,300 |

These declarations are completed by the following:

AS PER ATTACHED FORMS

| CHECK DIGIT 1 | OFFICE 2 | PRO-DUCER 4 | P/C 1 | TERM 1 | CO. 1 | POLICY TYPE ① | TRAN-SAC-TION 2 | INSTALL-MENT ① | FINANCE 2 | SPECIAL AGENT ② | REINS. CO. 3 | SUB PROD. ® | M. FOREIGN CURRENCY ① | LINE ⑪ | TRAN-SAC-TION ① | STATE ⑪ | TERR. ⑪ | TAX TOWN 4 | TAX COUNTY 2 | 36① | PROCESS CODE ⑪ | COMM. RATE ⑪ | STATISTICAL CODE | | | PREMIUM ⑦ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6 | 13 | 3300 | C | | C | 5 | | | | | | | | 151 | | 31 | — | | | — | | 55 | 090 | 460102 | | 19,300. |

RENEWAL OR REWRITE OF POLICY NO.

NEW

| | | | | | |
|---|---|---|---|---|---|
| 71 XP | 73 BK DE | 75 CD RR | 77 | 79 | |

---

## BASIS OF PREMIUM ADJUSTMENT

| SECTION I | | | SECTION II | | |
|---|---|---|---|---|---|
| ☐ ANNUALLY ☐ MONTHLY ☐ | | | ☐ EXPIRATION ☐ ANNUALLY ☐ | ☐ COMPOSITE RATE | ☐ PREMIUM SCHEDULE |

POLICY INSURES: ELEVATORS ☐ YES ☒ NO          AUTOMOBILES ☒ YES ☐ NO

INSURED'S PRINCIPAL BUSINESS: OPERATES PARISHES, SCHOOLS, CEMETERIES AND OTHER CATHOLIC AGENCIES

COLLATERAL LINES: NONE

COPIES TO: ☐ AUDIT   ☐ ENGINEERING   ☒ HOME OFFICE

3/25/77

2MF129b-1-(8/72)-Printed in U.S.A.

**PRODUCER'S COPY**

THIS DECLARATIONS PAGE IS ISSUED WITH AND IS A PART OF POLICY NO. 290-68-70-16

| Item | | | LIABILITY DECLARATIONS |
|---|---|---|---|
| 1. | The insurance afforded is only with respect to such of the following Parts designated by an "X" in ☒ and Coverages therein as are indicated by specific limits of liability. The limit of the company's liability against each such Coverage shall be as stated herein subject to all the terms of this policy having reference thereto. | | |

| COVERAGE PARTS | | LIMITS OF LIABILITY | |
|---|---|---|---|
| | | Each Occurrence | Aggregate |
| **COVERAGE PROVIDED AS PER THE ATTACHED FORMS** ☐ ☐ | | | |
| | Bodily Injury Liability | $ | $ |
| | Property Damage Liability | $ | $ |
| | | Each Person | Each Accident |
| Premises Medical Payments Insurance    **AS PER ATTACHED FORMS** | | $ | $ |
| | | Aggregate | |
| Personal Injury Liability Insurance ☒ | | $ | XXXXXX |
| Comprehensive Automobile Liability Insurance ☒ | | Each Person | Each Occurrence |
| | Bodily Injury Liability | $ | $ |
| | Property Damage Liability | XXXXXX | $ |
| | | Each Person | Each Accident |
| Automobile Medical Payments Insurance ☒ | | $ | XXXXXX |
| Protection Against Uninsured Motorists Insurance ☐ | | $ | $ |
| ~~XXXXXXXXXX~~   **LIQUOR LIABILITY** ☒ | | See Coverage Conditions for Limits of Liability | |
| Automobile Physical Damage Insurance ☐ | | See Coverage Conditions for Limits of Liability | |
| Commercial Umbrella Liability Insurance ☐ | | See Coverage Conditions for Limits of Liability | |
| **WORKMENS COMPENSATION** ☒ | | **AS PER THE ATTACHED FORMS** | |

| 2. | Location of all premises owned, rented or controlled by **named insured** (enter "same" if as shown in Section I Declarations) | Interest of **named insured** in premises | Part occupied by **named insured** |
|---|---|---|---|
| | a) | | |
| | b) | | |
| | c) | | |
| | d) | | |

| 3. | Business of the **named insured** is |
|---|---|

| 4. | The **named insured** is ☐ Individual; ☐ Partnership; ☐ Corporation; ☐ |
|---|---|

| 5. | During the past three years no insurer has cancelled insurance, issued to the **named insured**, similar to that afforded hereunder, unless otherwise stated herein:* *ABSENCE OF AN ENTRY MEANS "NO EXCEPTION" |
|---|---|

| 6. | This section is completed by the following: **ATTACHED FORMS** |
|---|---|

MF 101E (11-74) Printed in U.S.A.

SECTION II                                    LIABILITY DECLARATIONS

# ALLOCATION OF PREMIUM

**THIS DECLARATIONS PAGE IS ISSUED WITH AND IS A PART OF POLICY NO.    291-68-71-16**

| PREMIUM is payable: | at inception | 1st anniversary | 2nd anniversary |
|---|---|---|---|
| **Item A—Non-Adjustable**<br><br>ALL COVERAGES AFFORDED BY THE POLICY EXCEPT AS INDICATED BELOW<br><br>**Item B—Adjustable**<br><br>SUBJECT TO ANNUAL ADJUSTMENT PER SECTION IV ITEM #1 OF THE ATTACHED FORMS.<br>SECTION 1 AND SECTION II ADJUSTABLE AND NON-ADJUSTABLE POLICY PREMIUM. | 19,300. | 19,300 | 19,300. |
| TOTAL  ADVANCE  PREMIUM | 19,300. | 19,300. | 19,300. |

The premiums shown under Item A are the final premiums charged for the coverage and amounts of insurance contained in this policy which are not subject to audit or adjustment.

The premiums shown under Item B are subject to adjustment in accordance with the reporting or auditing provisions of the policy or endorsements attached hereto. If the actual earned premium for Item B coverages exceeds the premium indicated, such excess shall be due and payable to the Company; or if such actual premium is less than the indicated premium, this Company shall refund to the Insured any excess paid.

MF 51-(3/65)

Printed in U.S.A.

*issued to* DIOCESE OF ROCKVILLE CENTRE
*by* CENTENNIAL            Insurance Company.

ENDORSEMENT **#1**

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*

IT IS AGREED THAT THE FIRST ANNUAL INSTALLMENT PREMIUM IS 19,300 (10% of 193,000)
BASED ON TOTAL VALUES OF 415,164,310. AND THAT FUTURE ANNUAL INSTALLMENTS  WILL
BE BASED ON THE ANNIVERSARY DATE VALUES CACULATED AS FOLLOWS:

GOING IN VALUES
PLUS (A) ADDITIONS
LESS (B) DELETIONS
PLUS (C) THE RECONSTRUCTION COST VARIATION AS PROVIDED
BY GALLAGHER-BASSETT INSURANCE SERVICE.

DL  3/28/77       *Harold A. Eckmann*
                        **President**                    ---------------------------------------------
                                                              *Authorised Representative*

F 75b— (12-72) Printed in U.S.A.
**PRODUCER'S COPY**

                                                    **DECLARATIONS ENDORSEMENT**

Effective OCTOBER 1, 197 , this endorsement forms a part of Polic No. 291-68-71-16
(At the time stated in the 6-7.)

issued to

by CENTENNIAL                    Insurance Company.

ENDORSEMENT #2

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*

IT IS AGREED THAT THE NAME OF INSURED IS TO READ:

NAME OF ASSURED:

ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, AND ALL LEGAL ENTITIES THEREIN OVER
WHICH THE SAME CENTRAL AUTHORITY APPOINTS OR CONTROLS THE APPOINTMENT OF THE
BOARD OF TRUSTEES OR SIMILAR BODY AND EXERCISED DIRECT, COMPLETE AND
ACTIVE CONTROL OVER THE FINANCES, PROPERTIES, OPERATIONS AND ACTIVITIES
50 NORTH PARK AVENUE
ROCKVILLE CENTRE, NEW YORK   11570

*Harold A. Eckmann*
President

....................................................
*Authorised Representative*

MF 750 (12-72) Printed in U.S.A.

**PRODUCER'S COPY**

**DECLARATIONS ENDORSEMENT**

issued to    **Diocese of Rockville Centre**
by    **Centennial**    Insurance Company.

                                                    **ENDORSEMENT**

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*

**In consideration of the premium charged**

**Auxiliary Bishop Gerald V. Ryan and**

**Auxiliary Bishop James J. Daly are added**

**as additional named insureds.**

5/9/77

*John J. Machroabe*
                President                        ..............................................................
                                                    *Authorized Representative*

: 75b— (12-72) Printed in U.S.A.
**EXTRA COPY**                                    **DECLARATIONS ENDORSEMENT**

*Effective* ~~20, 1977~~ *(At the time stated in the policy)*, *this endorsement forms a part of Policy No.* **291-68-71-16**

*issued to* **Roman Catholic Diocese of Rockville Centre**
*by* **Centennial** Insurance Company.

ENDORSEMENT

*(The information provided for above is required to be completed only when this endorsement is issued for attachment to the policy subsequent to its effective date.)*

It is hereby understood and agreed that the second
annual installment for the period October 1, 1977 to
October 1, 1978 is 20,907.70 (10% of 209,077) based
on actual cash value of 449,747,496.

10/21/77      *John J. Machradci*

President

-----------------------------------------------------
                                    *Authorized Representative*

MF 75b— (12-72) Printed in U.S.A.

XTRA COPY

DECLARATIONS ENDORSEMENT

*Effective*   **1-1-78**   *this endorsement forms a part of Policy No.*   **291-68-71-16**
*(At the time stated in the*

*issued to*   **Diocese of Rockville Centre**
*by*   **Centennial**        Insurance Company.

                                                    **ENDORSEMENT**

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*

**In consideration of the additional premium of $1,500. (10% of 15,000), Noted
and agreed that effective January 1, 1978 the loss limitation hereon in
respect of Worker's Compensation Act/Employers Liability/Occupational Disease
is increased to $150,000.00 any one occurrence and payable as follows:**

                        **Centennial   10%**

*see revised*

RECEIVED
MAR 30 1978
Arthur J. Collector

*John J. Machraske*
                 President

-------------------------------------------
                        *Authorized Representative*

75b— (12-72) Printed in U.S.A.
**PRODUCER'S COPY**

                                        **DECLARATIONS ENDORSEMENT**

issued to    **Diocese of Rockville Centre**                                    Revised-
by                        Insurance Company.

**Centennial**                                                    ENDORSEMENT **#5**

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*

In cosideration of an additional premium of $1,496.00
(10% of 14,960.) it is understood and agreed that effective
January 1,1978 the loss limitation shown in Section IV (e)
agreement F Workmens Compensation and/or Employers Liability
and/or Occupational Disease is hereby increased from $100,000
to $150,000. payable as follows:

Centennial - 10%

RECEIVED
AUG 16 1978
Arthur J. Gallagher

_BILLED ON_
_4-19-78_

io 8/11/78            _John J. Machinski_
                              President

MF 75c (10/77)                              ---------------------
                                            *Authorised Representative*

**PRODUCER'S COPY**                          **DECLARATIONS ENDORSEMENT**

issued to   **Roman Catholic Diocese of Rockville Centre**
by          **Centennial**        Insurance Company.

ENDORSEMENT **#6**

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*

**In consideration of the additional premium of $2,000. (10% of 20,000.),
it is hereby noted and agreed that effective October 1, 1977, the
Loss Limitation in respect of Public Liability/Property Damage is
increased to $300,000 any one occurrence combined single limit
Public Liability/Property Damage.**

RECEIVED
MAY 26 1978
Arthur J. Gallagher
and Company

*John J. Machinski*
President

.......................................................
*Authorized Representative*

MF 75c (10/77)

**PRODUCER'S COPY**

**DECLARATIONS ENDORSEMENT**

*Effective*  **4/7/78**                    , *this endorsement forms a part of Polic... No.*  **291-68-71-16**
(At the time stated in the policy)

*issued to*  **Roman Catholic Diocese of Rockville Centre**
*by*  **Centennial**          Insurance Company.

ENDORSEMENT  **#7**

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*

**In consideration of the premium charged, St. Agnes Academic High
School is added as an additional insured.**



*John J. Mackenzie*
President

........................................................
*Authorized Representative*

MF 75c (10/77)

**PRODUCER'S COPY**

**DECLARATIONS ENDORSEMENT**

*Effective*  **10-1-78**    *this endorsement forms a part of Policy No.*    **291-68-71-16**
*(At the time stated in the policy)*

*issued to*    **Roman Catholic Diocese of Rockville Centre**
*by*    **Centennial**    Insurance Company.

ENDORSEMENT  **#3**

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*


It is hereby understood and agreed that the third annual installment
for the period of October 1, 1978 to October 1, 1979 is $24,740.30
(10% of $247,403.00) based on actual cash value of $485,746,205.00.


*John J. Machronse*
President

*R.H. Holton*
Authorized Representative

*BILLED*
*10-30-78*

RECEIVED
OCT 27 1978
Arthur J. Gallagher
and Company

**@s**
MF 75c (10/77)

**DECLARATIONS ENDORSEMENT**

| | DISCOUNT | BRANCH | REINSURANCE POLICY NO. |

*Effective*   4-4-78   , *this endorsement forms a part of Policy No.*   291 68 71 16
*(At the time stated in the policy)*

*issued to*   Roman Catholic Diocese of Rockville Centre
*by*   Centennial   Insurance Company.

**ENDORSEMENT**
#9

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*

It is hereby understood and agreed that effective
April 4, 1979 the Limit in respect of Employee
Fidelity is increased to $100,000. any one loss
for Maryhaven location only.

Res/a 5-21-79

*John J. Machinski*

President

*R.W. Holden*

Authorized Representative

RECEIVED
MAY 24 1979
Arthur J. Gallagher
and Company

1F 75c (10/77)
**EXTRA COPY**

**DECLARATIONS ENDORSEMENT**

issued to
by

**Roman Catholic Diocese of Rockville Centre**

**Centennial**    Insurance Company.

ENDORSEMENT
#10

*(The information provided for above is required to be completed only when this endorsement is issued for attachment to the policy subsequent to its effective date.)*

It is hereby understood and agreed that effective
October 1, 1978 the Loss Limitation in respect
of Public Liability/Property Damages is reduced to
$200,000. any one occurrence Combined Single
Limit Public Liability-Property Damage.

mas/u 5-21-79

RECEIVED
MAY 24 1979
Arthur J. Gallagher
and Company

*John J. Machuska*

President

*R.M. H...*

Authorized Representative

MF126A (10-75) Printed in U.S.A.
EXTRA COPY

CONDITIONS ENDORSEMENT

issued to **Roman Catholic Diocese of Rockville Centre**
by **Centennial** Insurance Company.

ENDORSEMENT **#11**

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*

It is hereby understood and agreed that effective April 4, 1979
the limit in respect of Employee Fidelity is hereby increased
to $100,000 any one with respect to St. Charles Hospital and
Maryhaven location only.

RECEIVED
JUL 26 1979
Arthur J. Gallagher
and Company

*John J. Machinski*

........................ *President*

................................................................
*Authorized Representative*

MF 75c (10/77)

**PRODUCER'S COPY**

**DECLARATIONS ENDORSEMENT**

*Effective*    **7-30-79**    *this endorsement forms a part of Policy No.*    **291 68 71 16**
(At the time stated in the policy)

*issued to*    **Roman Catholic Diocese of Rockville Centre**
*by*    **Centennial**    Insurance Company.

ENDORSEMENT #12

*(The information provided for above is required to be completed only when this endorsement is issued for attachment to the policy subsequent to its effective date.)*

It is hereby understood and agreed that effective July 30, 1979, the limit in respect of Employee Fidelity is increased to $100,000. any one loss for the St. Francis Hospital, Roslyn, New York Location only.

mta/u
9-14-79

*President*

RECEIVED
SEP 20 1979
Arthur J. Gallagher
and Co.

MF 75c (10/77)

**PRODUCER'S COPY**

*Authorised Representative*

**DECLARATIONS ENDORSEMENT**

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

| | |
|---|---|
| Insurer(s): | Underwriters at Lloyd's<br>London Market Companies |
| Policy number(s): | SL 3152<br>SLC 5163 |
| Inception date: | 10/1/1976 |
| Term at issuance: | 3 years |
| Page count: | 112 |
| Contents: | Lloyd's jacket- 1 pg<br>Slip- 3 pgs<br>Endorsement- 65 pgs<br>Combined Property, Casualty and Crime- PAC-1 to PAC-19<br>Cover note- 24 pgs |

*Rockville*

12-29-97

SL 3152-

SLC 5163.

# Lloyd's Policy

**Whereas** the Assured named in the Schedule herein has paid the premium specified in the Schedule to the Underwriting Members of Lloyd's who have hereunto subscribed their Names (hereinafter called 'the Underwriters'),

**Now We the Underwriters** hereby agree to insure against loss, damage or liability to the extent and in the manner hereinafter provided.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**Now know Ye** that We the Underwriters, Members of the Syndicates whose definitive numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators and in respect of his due proportion only, to pay or make good to the Assured or to the Assured's Executors or Administrators or to indemnify him or them against all such loss, damage or liability as herein provided, after such loss, damage or liability is proved and the due proportion for which each of Us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the total sum ins ured hereunder which is in the Table set opposite the definitive number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Shares therein, is deemed to be incorporated in and to form part of this Policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE,
*General Manager*



FOR EMBOSSMENT BY LLOYD'S POLICY SIGNING OFFICE

# Lloyd's Policy

The Assured is requested to read this Policy and, if it is incorrect, return it immediately for alteration.

In all communications the Policy Number appearing in line one of the Schedule should be quoted.

In the event of any occurrence likely to result in a claim under this Policy, immediate notice should be given to:

**HINTON HILL & COLES LTD.**

**DOWGATE HILL HOUSE,**

**DOWGATE HILL, EC4R 2SB**

**AND AT LLOYDS**

## SERVICE OF SUIT CLAUSE (U.S.A.)
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the assured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon

**Lord Bissell & Brook, 135 South La Salle Street, Chicago, Illinois, 60603, or Mendes & Mount, 3 Park Avenue, New York, New York, 10016** and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Courts in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

22/5/52
N.M.A. 772

ENDORSEMENT

. Attached to and forming part of Policy/Certificate No.   SL 3152
in the name of   Roman Catholic Diocese of Rockville Centre
Effective date of this endorsement is   July 30, 1979       Endorsement No.   27


It is hereby noted and agreed effective 30th July, 1979 the limit in

respect of Employee Fidelity is increased to $100,000 any one loss for

St. Francis Hospital, Roslyn, New York location only.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:   August 9, 1979                    ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By: Louis E Metzger Jr

ENDORSEMENT

Attached to and forming part of Policy / Certificate No.   SL315:
in the name of   Roman Catholic Diocese of Rockville Centre, etal.
Effective date of this endorsement is April 4, 1979      Endorsement No. 26

It is hereby understood and agreed Endorsement No. 25  is amended to read:

It is hereby understood and agreed effective April 4, 1979 the limit in respect
of Employee Fidelity is increased to $100,000 any one loss for St. Charles
Hospital and Maryhaven location only.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:      June 28, 1979                        ARTHUR J

                                                 By:

ENDORSEMENT

Attached to and forming part of Policy/Certificate No.  SL3152

In the name of     Roman Catholic Diocese of Rockville Centre, Etal.

Effective date of this endorsement is    April 4, 1979        Endorsement No.  25

It is hereby understood and agreed effective April 4, 1979 the Limit in respect
of Employee Fidelity is increased to $100,000. any one loss for Maryhaven
location only.

St. Charles Hospital affiliated with above location.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: April 11, 1979

ARTHUR J. GALLAGHER & CO.(ILLINOIS)

By: _Louis E. Metzger_

ENDORSEMENT

Attached to and forming part of Policy/Certificate No. SL3152

In the name of   Roman Catholic Diocese of Rockville Centre, Etal.

Effective date of this endorsement is October 1, 1978        Endorsement No. 24

It is hereby understood and agreed that effective October 1, 1978 the Loss
Limitation in respect of Public Liability/Property Damage is reduced to
$200,000 any one occurrence C.S.L.P.L./P.D.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: April 4, 1979

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By: Louis B. Mitzger. Jr.

ENDORSEMENT

ADDITIONAL PREMIUM $

RETURN PREMIUM    $ 3,784.05 (Hereon)

Attached to and forming part of Policy/Certificate No. SL3152

In the name of   Roman Catholic Diocese of Rockville Centre, etal.

Effective date of this endorsement is October 1, 1978    Endorsement No. 23


It is hereby noted and agreed that effective 1st October, 1978 the loss
limitations in respect of the Self Insured Fund and within the limits of
this insurance are amended as follows:


        Auto Liability:          $100,000 any one occurrence C.S.L.

        W.C.A./E.L./O.D.:        $100,000 any one occurrence

        R.P.   $5,000 annual


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:   April 3, 1979

                    — ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                    By: Louis E. Metzger Jr.

ENDORSEMENT

ADDITIONAL PREMIUM $

RETURN PREMIUM    $

Attached to and forming part of Policy/Certificate No. SL3152

In the name of Roman Catholic Diocese of Rockville Centre, etal.

Effective date of this endorsement is  December 23, 1978    Endorsement No.    22

It is hereby understood and agreed to increase sub limit in
respect money and securities to $50,000, for the period December
23, 1978 to January 2, 1979 for:

R.C.C. of St. Barnabas
Bellmore, New York

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  January 2, 1979

ARTHUR J. GALLAGHER & CO.(ILLINOIS)

By: _____

ENDORSEMENT                         ADDITIONAL PREMIUM $ 187.237.06 (Hereon)

                                    RETURN PREMIUM $ _ _ _ _ _ _ _

Attached to and forming part of Policy   /   Certificate No. SL3152

in the name of  **Roman Catholic Diocese of Rockville Centre, Etal.**

Effective date of this endorsement is  October 1, 1978          Endorsement No. 21

IT IS AGREED THAT:

1. The annual premium for the period  October 1, 1978 to October 1, 1979
   is  $247,403.00                      based on values
   of  $485,746,205.00

2. Part 1 (Aggregate Agreement) shown on Page 1 of the wording attached to the above
   numbered Cover Note is amended to read:

   PART I (AGGREGATE AGREEMENT)

   LIMITS OF LIABILITY: The Underwriters' Limits of Liability under this Agreement
   shall be only for the Excess of Loss over

   (A)  Annual aggregate Loss Fund of $1,950,000.   ultimate net loss (hereinafter
        referred to as "Assured's Loss Fund"). As respects any one loss the Assured's
        Loss Fund shall not be charged with

        1) An amount in excess of the amount stated in (B) below or

        2) any loss arising under Section I (except Automobile Comprehensive Perils)
           and Section III which is less than $100.00

                                    OR

   (B)  $ 100,000     Ultimate Net Loss as respects any one loss under Sections I,
        II, or III or any combination thereof

   and then in excess of the above amounts up to $ 500,000     ultimate net loss
   in the aggregate in any one period of insurance in respect of the Assured's Loss Fund.

3. It is further agreed that the participation insured by this policy is
   Increased from 74.92% to 75.681% and the Underwriters subscribing to this
   Policy are:  Underwriters at Lloyds, London 75.681% $187,237.06
   ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  10/30/78                         ARTHUR J. GALLAGHER & CO.

                                         By _Louis E. Metzger, Jr._

ENDORSEMENT

ADDITIONAL PREMIUM $

RETURN PREMIUM      $

Attached to and forming part of Policy/Certificate No. SL 3152

In the name of   Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is April 7, 1978        Endorsement No.   20

It is hereby agreed and understood the following is added as an additional insured
under this policy:

> The City of New York Department of Sanitation in respect of:
>
> St. Agnes Academic High School
> 13-20 124th Street
> College Point, Queens, New York

In accordance with the hold harmless agreement entered into between the Assured
and the City.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  4-19-78                    ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By: Louis E. Metzger, Jr.

ENDORSEMENT                                    ADDITIONAL PREMIUM  $

                                               RETURN PREMIUM       $

Attached to and forming part of Policy/Certificate No. SL 3152

In the name of    The Roman Catholic Diocese of Rockville Centre

Effective date of this endorsement is  April 11, 1977      Endorsement No. 19


          It is hereby agreed Agreement G, Money and Securities (within

          premises) and Agreement H Money and Securities (outside premises)

          is increased as follows for Easter period at the following lications:

          1) R.C.C. of St. Patrick, Hintington, New York to $50,000.

          2) R.C.C. of St. Joseph, Garden City, New York to $35,000.

          3) R.C.C. of St. Anne, Garden City, New York to $35,000.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:        April 28, 1978          ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                      By: Louis E. Metzger Jr

ENDORSEMENT                                    ADDITIONAL PREMIUM $

                                               RETURN PREMIUM       $

Attached to and forming part of Policy/Certificate No. SL 3152

In the name of  Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is  October 1, 1976        Endorsement No. 18

> Notwithstanding anything contained herein to the contrary it
> is hereby understood and agreed that this policy is extended
> to include the liability other than Professional of any
> individual who is not an employee of the hospital, while serving
> on a Committee appointed by the hospital officials, these
> Committees would include but not be limited to: -

> Tissue Committee;
>
> Medical Records Committee;
>
> Utilization Committee;
>
> Accreditation Committee;
>
> Infection Committee;
>
> Disaster Committee;
>
> Pharmacy and Therapeutics Committee;
>
> Executive Committee;
>
> Credential Committee;
>
> Intern and Resident Committee.

> Subject otherwise to all terms, clauses and conditions as
> heretofore.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:     March 22, 1978            ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                     By: Louis E. Metzger, Jr

ENDORSEMENT

ADDITIONAL PREMIUM $   11,208.03 (Hereon)

RETURN PREMIUM      $

Attached to and forming part of Policy/Certificate No. SL 3152

In the name of   Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is January 1, 1978     Endorsement No. 17 Revised

In consideration of an additional premium of $14,960.00, it it hereby
noted and agreed that effective January 1, 1978 the loss limitation
hereon in respect of Worker's Compensation Act/Employers Liability/
Occupational Disease is increased to $150,000.00 any one occurrence
and payable as follows:

Underwriters at Lloyd's, London          74.92%          $11,208.03

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:   4-26-78

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By: Louis E. Metzger, Jr.

ENDORSEMENT

ADDITIONAL PREMIUM $ 11,238.00 (Hereon)

RETURN PREMIUM        $

Attached to and forming part of Policy/Certificate No.    SL 3152

In the name of    Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is    January 1, 1978    Endorsement No. 17

In consideration of an additional premium of $15,000.00, it is hereby
noted and agreed that effective January 1, 1978 the loss limitation
hereon in respect of Worker's Compensation Act/Employers Liability/
Occupational Disease is increased to $150,000.00 any one occurrence
and payable as follows:

      Underwriters at Lloyd's, London        74.92%      $11,238.00



ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:   March 9, 1978                    ARTHUR J. GALLAGHER & CO. (ILLINOIS)

                                      By: Louis E Metzger Jr

**ENDORSEMENT**

ADDITIONAL PREMIUM $ 14,984.00 (Hereon)

RETURN PREMIUM        $

Attached to and forming part of Policy/Certificate No.   SL 3152

In the name of    Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is   October 1, 1977        Endorsement No. 16


It is hereby understood and agreed that in consideration of an annual
additional premium of $20,000.00 the Loss Limitation in respect of Public
Liability/Property Damage is increased to $300,000 any one occurrence
combined single limit Public Liability/Property Damage


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:      February 9, 1978                ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By: Louis E Metzger, Jr

ENDORSEMENT

ADDITIONAL PREMIUM $

RETURN PREMIUM    $

Attached to and forming part of Policy/Certificate No.   SL 3152

In the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is   October 1, 1977    Endorsement No. 15

It is hereby noted and agreed the annual premium due for the period

October 1, 1977  to  October 1, 1978  is $209,077.00 and the security

is amended and payable hereon as follows:

Hereon: 74.92% Part of 100% of:

     Underwriters at Lloyd's, London    74.92%    $156,640.49

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:    February 8, 1978    ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                 By: *Louis E Metzger, Jr*

ENDORSEMENT                    ADDITIONAL PREMIUM $_ 156,640.42 (Hereon)

RETURN PREMIUM $_

Attached to and forming part of Policy  /  Certificate No.  SL 3152

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is  October 1, 1977        Endorsement No.  14

IT IS AGREED THAT:

1. The annual premium for the period    October 1, 1977  to  October 1, 1978
   is   $209,077.00                      based on values
   of    $448,506,327.

2. Part I (Aggregate Agreement) shown on Page 1 of the wording attached to the above
   numbered Cover Note is amended to read:

   PART I (AGGREGATE AGREEMENT)

   LIMITS OF LIABILITY: The Underwriters' Limits of Liability under this Agreement
   shall be only for the Excess of Loss over

   (A)  Annual aggregate Loss Fund of $ 1,400,000. ultimate net loss (hereinafter
        referred to as "Assured's Loss Fund"). As respects any one loss the Assured's
        Loss Fund shall not be charged with

        1) An amount in excess of the amount stated in (B) below or

        2) any loss arising under Section I (except Automobile Comprehensive Perils)
           and Section III which is less than $100

                              OR

   (B)  $ 100,000.     Ultimate Net Loss as respects any one loss under Sections I,
        II, or III or any combination thereof

   and then in excess of the above amounts up to $ 500,000.     ultimate net loss
   in the aggregate in any one period of insurance in respect of the Assured's Loss Fund.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:    February 8, 1978          ARTHUR J. GALLAGHER & CO. (ILLINOIS)

                                    By _Louis E. Metzger Jr_

ENDORSEMENT

ADDITIONAL PREMIUM $

RETURN PREMIUM    $

Attached to and forming part of Policy/Certificate No. SL 3152

In the name of    Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1977    Endorsement No.    13

It is hereby agreed that the following are added as additional insureds
under this policy:

      Bishop John R. McGann

      Auxiliary Bishop Vincent J. Baldwin

      Bishop Emeritus Walter P. Kellenberg

      Auxiliary Bishop Gerald J. Ryan

      Auxiliary Bishop James J. Daly

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:    February 8, 1978

                    ARTHUR J. GALLAGHER & CO. (ILLINOIS)

                    By: Louis E. Metzger, Jr

ENDORSEMENT

ADDITIONAL PREMIUM $

RETURN PREMIUM    $

Attached to and forming part of Policy/Certificate No.  SL 3152

In the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is December 24, 1977    Endorsement No. 12

In consideration of the premium charged it is agreed that the Money & Securities limit on the following location is increased for the periods:

    December 24, 1977  through  December 27, 1977

    December 24, 1978  through  December 27, 1978

| Location | Limit |
|---|---|
| R C C of OUr Lady of Mercy<br>500 South Syster Bay Road<br>Hicksville, New York 11801 | $30,000. |

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:    February 8, 1978            ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                        By: Louis E. Metzger, Jr

ENDORSEMENT

ADDITIONAL PREMIUM $ _ _ _ _

RETURN PREMIUM $ _ _ _ _

Attached to and forming part of Policy    /    Certificate No.    SL 1152

in the name of  Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is  October 1, 1976      Endorsement No. 11

> It is hereby agreed that with respect to endorsement #1,
> this policy will not apply to claims based on or attributable
> to any failure or omission on the part of the Insureds to
> effect and maintain insurance.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:      August 22, 1977

ARTHUR J. GALLAGHER & CO.(ILLINOIS)

By _Louis E. Metzger Jr_

ENDORSEMENT                    ADDITIONAL PREMIUM $ _ _ _ _

                              RETURN PREMIUM $ _ _ _ _

Attached to and forming part of Policy   /   Certificate No. SL 1152

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is   October 1, 1976   Endorsement No.  10


It is agreed the coverage and limit shown on endorsement #  for

Mercy Hospital, Rockville Centre, New York is amended to read as

follows:

   $9,200,000.00   Business Interruption

   80% Co-insurance

   $500,000.00   Extra Expense


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:   June 29, 1977

                              ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                              By  Louis E. Metzger, Jr

ENDORSEMENT                          ADDITIONAL PREMIUM $ _ _ _ _

                                     RETURN PREMIUM $ _ _ _ _


Attached to and forming part of Policy    /    Certificate No. SL 318:

In the name of  Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is    October 1, 1976    Endorsement No.   9


It is hereby agreed that the following are added as additional named

insured's under this policy:

        Auxiliary Bishop Gerald J. Ryan

        Auxiliary Bishop James J. Daly


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:    May 24, 1977              ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                    By _Louis E. Metzger_

ENDORSEMENT

ADDITIONAL PREMIUMS _ _ _ _

RETURN PREMIUMS _ _ _ _

Attached to and forming part of Policy    /    Certificate No. SL tts2

in the name of    Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is  October 1, 1976       Endorsement No. 8

It is agreed that the "Named Insured" includes all insurers and
Additional Interests Named in Certificate of Insurance applying
to Automobile Liability for the Personal Automobiles of Priests
and Nuns.  These Certificates shall be on file with Gallagher Bassett
of New York, Inc.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:       March 17, 1977

ARTHUR J. GALLAGHER & CO.

By Louis E. Milgrin, Jr

ENDORSEMENT

ADDITIONAL PREMIUM $ _ _ _ _

RETURN PREMIUM $ _ _ _ _

Attached to and forming part of Policy   /   Certificate No.   SL 3152

In the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is  October 1, 1976      Endorsement No.   7

It is further agreed that with respect to the operations of hospitals
this policy does not apply to Liability arising out of professional
medical services rendered or failure to be rendered.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:        March 17, 1977            ARTHUR J. GALLAGHER & CO.

By Louis E. Milger, Jr

ENDORSEMENT                              ADDITIONAL PREMIUM $ _ _ _ _

                                         RETURN PREMIUM $ _ _ _ _


Attached to and forming part of Policy    /    Certificate No.    XL 3152

in the name of    Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is    October 1, 1976    Endorsement No.    6


In consideration of the premium charged, it is agreed the following
coverages are added to the policy:

Location                                Coverage and Limit

1) Mercy Hospital                       $19,200,000. Business Interruption
   Rockville Centre, New York           80% Coinsurance
                                        $500,000. Extra Expense

2) St. Francis Hospital                 $4,700,000. Business Interruption
   Roslyn, New York                     80% Coinsurance
                                        $500,000. Extra Expense

3) St. Mary of the Angels Home          $40,000. Rental Income
   Convent Road                         100% Coinsurance
   Syosset, Nassau County, New York

4) Catholic Press Association           $60,000. Extra Expense
   53 North Park Avenue                 80% Coinsurance
   Rockville Centre, New York


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:    March 17, 1977                ARTHUR J. GALLAGHER & CO.

                                        By Lewis E. Melgerjr.

ENDORSEMENT                          ADDITIONAL PREMIUM $ _ _ _ _

                                     RETURN PREMIUM $ _ _ _ _


Attached to and forming part of Policy   /   Certificate No.   SL 3152

In the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is   October 1, 1976      Endorsement No.  5


In consideration of the premium charged, it is agreed the policy is
extended to include the following coverage:

### Automobile Non Ownership

Notwithstanding anything contained herein to the contrary, this policy

is extended to include Non Ownership Liability but only to provide

coverage for owners of automobiles while being used in connection with

activities being sponsored by the Named Insured.


It is further agreed this extension shall be excess of any other valid

and collectible insurance.


The Loss Limitation hereon is respect of  Automobile Bodily Injury/

Property Damage remains at $200,000. Combined Single Limit from ground.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:      March 17, 1977              ARTHUR J. GALLAGHER & CO.

                                        By Louis E. Milgaer Jr.

ENDORSEMENT                          ADDITIONAL PREMIUM $ _ _ _ _

                                     RETURN PREMIUM $ _ _ _ _

Attached to and forming part of Policy   /   Certificate No.   SL 3152

In the name of   Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is  December 24, 1976      Endorsement No.   4

   In consideration of the premium charged, it is agreed the Money and
   Securities limit on the following four (4) locations is increased for the
   periods:

      December 24, 1976 through December 27, 1976
      December 24, 1977 through December 27, 1977 and
      December 24, 1978 through December 27, 1978

| Location | Limit |
|---|---|
| R.C.C. of St. Joseph<br>130 Fifth Street<br>Garden City, New York | $50,000. |
| R.C.C. of St. Anne<br>70 Adams Street<br>Garden City, New York | $45,000. |
| R.C.C. Christ the King<br>Indian Head Road<br>Commack, New York | $30,000. |
| R.C.C. of St. Patrick<br>400 Main Street<br>Huntington, New York | $50,000. |

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:      March 17, 1977              ARTHUR J. GALLAGHER & CO.

                                        By _Lewis E. Milgram, Jr_

ENDORSEMENT

ADDITIONAL PREMIUM $ _ _ _ _

RETURN PREMIUM $ _ _ _ _

Attached to and forming part of Policy   /   Certificate No.     St. 3152

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is   October 1, 1976     Endorsement No.   3

It is hereby agreed that the following are named as Additional Named Insureds under this policy:

Bishop John R. McGann

Auxiliary Bishop Vincent J. Baldwin

Bishop Emeritus Walter P. Kellenberg

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:        March 17, 1977

ARTHUR J. GALLAGHER & CO.

By _Louis E. Metzger, Jr_

## ENDORSEMENT

Attached to and forming part of **Policy** / **Certificate No.**    SL 31 52

in the name of    **Roman Catholic Diocese of Rockville Centre, etal**

Effective date of this endorsement is    **October 1, 1976**        Endorsement No. **2**

IT IS AGREED that the first annual installment premium is  $193,000.00        based
on total values of    $415,164,310.00        and future annual installments will be
based on anniversary date values calculated as follows:

Going In Values

plus (a) Additions
less  (b) Deletions
plus (c) the reconstruction cost variation as
        provided by Gallagher Bassett
        Insurance Service

Hereon:        90%        part of 100%

Licensed Lloyd's    76.50%        $147,645.00

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:        March 17, 1977        ARTHUR J. GALLAGHER & CO.

                        By Louis E. Metzger, Jr

## ENDORSEMENT

Attached to and forming part of Policy    /    Certificate No.    SL 3182

In the name of    Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1976  Endorsement No. 1

### ERRORS AND OMISSIONS

IT IS AGREED that Section II Agreement C is amended to include the following:

The underwriters agree, subject to the terms and conditions hereof, to indemnify
the Assured (as hereinafter defined) against any claim or claims made against
them individually or collectively during the period of this Insurance, by reason
of a wrongful act, error or omission, whenever or wherever committed or alleged
to have been committed while acting in their capacity as trustee, director or
council member in a diocesan connected entity.

IT IS FURTHER agreed:

(1)    There shall be no liability hereunder for any claim made against the
       Assured for wrongful act, error or omission committed or alleged to
       have been committed prior to October 1, 1976  (hereinafter referred
       to as the "Retroactive Date").

(2)    In the event of non-renewal or termination of this Insurance, then the
       Insurance shall extend to apply to claims made against the Assured during
       the twelve (12) calendar months following immediately upon such expiration
       or termination, but only for wrongful act, error or omission, committed or
       alleged to have been committed between the Retroactive Date and such expi-
       ration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who
were, now are or shall be appointed or elected trustee, director or council member
in any parishes, schools, cemeteries, and other agencies or directly connected
organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any
claim made against Assured if a judgment or final adjudication in any action brought
against the Assured shall be based on a determination that acts of fraud or dishonesty
were committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:    March 17, 1977    ARTHUR J. GALLAGHER & CO.

By *Louis E. Metzger, Jr*

| DATE ISSUED | | PREVIOUS NO. |
|---|---|---|
| March 17, 1977 | GNV 051176 | New |

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

NUMBER **S L 3152**

| ITEM | |
|---|---|
| 1 | **Name of Assured**<br>Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein Over which the same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Excercises Direct, Complete and Active Control over the Finances, Properties, Operations and Activities<br>50 North Park Avenue<br>Rockville Centre, New York 11570 |
| 2 | EFFECTIVE ☒ 12:01 A.M. BOTH DAYS AT<br>FROM ☐ 12:00 NOON STANDARD TIME **October 1, 1976** TO **October 1, 1979** |

ITEM 3

Acting upon your instruction, we have effected the insurance with:

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| UNDERWRITERS AT LLOYD'S, LONDON | 76.50% |

ITEM 4

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon: 76.50% Part of 100% of: | | | $147,645.00 |
| $ 400,000. Each & Every Loss and/or Occurrence | Excess All Risks of Physical Loss or Damage as per forms attached. | | Per End. #2 |
| $ 500,000. In the Aggregate Annually In Respect of Assureds Retention | | | |
| But only to pay excess of: | | | |
| $ 100,000. Each & Every Loss and/or Occurrence | | | |
| $1,200,000. In the Aggregate Annually | | | |

AUDIT | | | TOTAL CHARGED

ITEM 5

SPECIAL CONDITIONS
As per attached forms and endorsements.
Nuclear Incident Exclusion Clause-Liability-Direct (Broad).
Radioactive Contamination Exclusion Clause-Physical Damage (Direct).

ITEM 6

Service of Suit Clause -
Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, Illinois 60603
or Mendes & Mount, 27 William Street, New York, New York 10005

In witness whereof this covernote has been signed at...Rolling Meadows, Illinois...this......17.......day of...March......

NOTICE TO POLICYHOLDER: "This contract is issued ~~in Section 445 of the Illinois Insurance Code, by an insurer not~~ ~~authorized and licensed to transact business in Illinois and as such is not covered~~ ~~Insurance Guaranty Fund."~~

**THIS CLAUSE VOID**

ARTHUR J. GALLAGHER & CO.

By _____

Eason Printing Co. Chicago

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SL/COS/CN)

NUMBER **SL C    5163**

**1**

*Name of Assured*
Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein
Over which the same Central Authority Appoints or Controls the Appointment
of the Board of Trustees or Similar Body and Excercises Direct, Complete
and Active Control over the Finances, Properties, Operations and Activities
50 North Park Avenue
Rockville Centre, New York 11570

**2**

EFFECTIVE ☒ 12:01 A.M.   BOTH DAYS AT
FROM ☐ 12:00 NOON   STANDARD TIME

**October 1, 1976**      TO    **October 1, 1979**

**3**

Acting upon your instruction, we have
effected the insurance with:

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| Excess Ins Co Ltd | 6.00% |
| Bellefonte Ins Co | 4.50% |
| Terra Nova Ins Co Ltd | 3.00% |
| | 13.50% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon: 13.50% Part of 100% of: | | | $26,055.00 |
| | | | Per End. #A |
| Subject to the same forms, terms, | | | |
| conditions and endorsements as more | | | |
| particularly set forth in Cover | | | |
| Note No. SL 3152. | | | |

AUDIT                                     TOTAL CHARGED

**5**

SPECIAL CONDITIONS

**6**

NOTICE TO POLICYHOLDER "This contract is issued, pursuant to Section 445 of the
Illinois Insurance Code, by an insurer not authorized and licensed to transact business in
Illinois and as such is not covered by the Illinois Insurance Guaranty Fund."

THIS CLAUSE VOID

ARTHUR J. GALLAGHER & CO.

By

Eason Printing Co. Chicago

DATE ISSUED March 17, 1977     NEW 651876     PREVIOUS NO.

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

| ITEM | | |
|---|---|---|
| | NUMBER **S L 3152** | |

| ITEM | | |
|---|---|---|
| 1 | **Name of Assured**<br>Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein Over which the same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Excercises Direct, Complete and Active Control over the Finances, Properties, Operations and Activities<br>50 North Park Avenue<br>Rockville Centre, New York 11570 | |

| ITEM | | | |
|---|---|---|---|
| 2 | EFFECTIVE ☒ 12:01 A.M. BOTH DAYS AT<br>FROM ☐ 12:00 NOON STANDARD TIME | October 1, 1976 | TO October 1, 1979 |

| ITEM | | NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|---|---|
| 3 | Acting upon your instruction we have effected the insurance with ➡ | UNDERWRITERS AT LLOYD'S, LONDON<br><br>RENEWED | 76.50%<br>4492<br>175.65 |

| ITEM | AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|---|
| 4 | Hereon: 76.50% Part of 100% of:<br>$ 400,000. Each & Every Loss and/or Occurrence<br>$ 500,000. In the Aggregate Annually In Respect of Assured's Retention<br>But only to pay excess of:<br>$ 100,000. Each & Every Loss and/or Occurrence<br>$1,200,000. In the Aggregate Annually | Excess All Risks of Physical Loss or Damage as per forms attached. | | $147,645.00 Per End. #2 |
| | AUDIT | | TOTAL CHARGED | |

| ITEM | |
|---|---|
| 5 | SPECIAL CONDITIONS<br>As per attached forms and endorsements.<br>Nuclear Incident Exclusion Clause-Liability-Direct (Broad).<br>Radioactive Contamination Exclusion Clause-Physical Damage (Direct). |

| ITEM | |
|---|---|
| 6 | Service of Suit Clause -<br>Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, Illinois 60603<br>or Mendes & Mount, 27 William Street, New York, New York 10005 |

In witness whereof this covernote has been signed at Rolling Meadows, Illinois this 17 day of March

NOTICE TO POLICYHOLDER: "This contract is issued, pursuant to Section 445 of the Illinois Insurance Code, by an insurer not authorized to transact business in Illinois and as such is not covered by the Illinois Insurance Guaranty Fund."

THIS CLAUSE VOID

ARTHUR J. GALLAGHER & CO.

By _____

Eason Printing Co. Chicago

ENDORSEMENT

Attached to and forming part of Policy/Certificate No.    SLC 5163
in the name of    Roman Catholic Diocese of Rockville Centre
Effective date of this endorsement is    July 30,1979    Endorsement No. 6

It is hereby noted and agreed effective 30th July, 1979 the limit in
respect of Employee Fidelity is increased to $100,000 any one loss for
St. Francis Hospital, Roslyn, New York location only.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:    August 9, 1979              ARTHUR J. GALLAGHER & CO. (ILLINOIS)

                                      By: Louis E Metzger, Jr

**ENDORSEMENT**

ADDITIONAL PREMIUM $

RETURN PREMIUM    $    715.95 (Hereon)

**Attached to and forming part of Policy/Certificate No.**    SLC5163

**In the name of**    Roman Catholic Diocese of Rockville Centre, etal.

**Effective date of this endorsement is**    October 1, 1978    **Endorsement No.**    F

It is hereby noted and agreed that effective 1st October, 1978 the loss
limitations in respect of the Self Insured Fund and within the limits of
this insurance are amended as follows:

Auto Liability:           $100,000 any one occurrence C.S.L.

W.C.A./E.L./O.D.:     $100,000 any one occurrence

R.P.  $5,000 annual

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**DATED:**    April 3, 1979                    — ARTHUR J. GALLAGHER & CO.(ILLINOIS)

By: Louis E. Metzger, Jr.

**ENDORSEMENT**                                   ADDITIONAL PREMIUM $35,425.64 (Hereon)

                                                  RETURN PREMIUM        $


Attached to and forming part of Policy/Certificate No. SLC5163

in the name of  Roman Catholic Diocese of Rockville Centre, Etal

Effective date of this endorsement is  October 1, 1978     Endorsement No. E


It is hereby understood and agreed that the annual premium for the period
October 1, 1978 to October 1, 1979, is $247,403.00 based on values of
$485,746,205.00.

It is further agreed that the participation insured by this policy is reduced
from 15.080% to 14.319% and the Underwriters subscribing to this policy are:

| | | |
|---|---|---|
| Bellefonte Ins Co | 5.328% | $13,181.63 |
| Pine Top Ins Co Ltd | 1.332% | 3,295.41 |
| Terra Nova Ins Co Ltd | 3.330% | 8,238.52 |
| Excess Ins Co Ltd | 3.330% | 8,238.52 |
| Yasuda Fire & Marine Ins Co (UK) Ltd | .999% | 2,471.56 |
| | 14.319% | $35,425.64 |


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  October 30, 1978           ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                   By: _____

ENDORSEMENT                                       Additional Premium   $2,255.97   (Hereon)

RETURN PREMIUM     $

Attached to and forming part of Policy/Certificate No.   SLC 5163

in the name of   Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is   January 1, 1978      Endorsement No. D Revised


In consideration of an additional premium of $14,960.00 it is hereby
noted and agreed that effective January 1, 1978 the loss limitation
hereon in respect of Worker's Compensation Act/Employers Liability/
Occupational Disease is increased to $150,000.00 any one occurrence
and payable as follows:

| | | |
|---|---|---|
| Excess Ins. Co. Ltd. | 6.032% | $902.39 |
| Bellefonte Ins. Co. | 4.824% | 721.67 |
| Pine Top Ins. Co. Ltd. | 1.208% | 180.72 |
| Terra Nova Ins. Co. Ltd. | 3.016% | 451.19 |
| | 15.080% | $2,255.97 |


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:   4-26-78                          ARTHUR J. GALLAGHER & CO.(ILLINOIS)

By: Louis E. Metzger, Jr.

ENDORSEMENT                                     ADDITIONAL PREMIUM $ 2,262.00 (Hereon)

                                                RETURN PREMIUM      $

Attached to and forming part of Policy/Certificate No.    SLC 5163

in the name of    Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is  January 1, 1978      Endorsement No.  D

In consideration of an additional premium of $15,000.00 it is hereby
noted and agreed that effective January 1, 1978 the loss limitation
hereon in respect of Worker's Compensation Act/Employers Liability/
Occupational Disease is increased to $150,000.00 any one occurrence
and payable as follows:

| | | |
|---|---|---|
| Excess Ins Co Ltd | 6.032% | $  904.80 |
| Bellefonte Ins Co | 4.824% | 723.60 |
| Pine Top Ins Co Ltd | 1.208% | 181.20 |
| Terra Nova Ins Co Ltd | 3.016% | 452.40 |
| | 15.080% | $2,262.00 |

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:    March 9, 1978            ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                   By: Louis E. Metzger Jr

**ENDORSEMENT**

ADDITIONAL PRE.   M  $ 3,096.00  (Hereon)

RETURN PREMIUM        $

Attached to and forming part of Policy/Certificate No.  SLC 5163

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is     October 1, 1977   Endorsement No.    C

It is hereby understood and agreed that in consideration of an annual

additional premium of $20,000.00 the Loss Limitation in respect of

Public Liability/Property Damage is increased to $300,000 any one occurrence

combined single limit public liability/property damage.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

DATED:      February 9, 1978              ARTHUR J. GALLAGHER & CO.(ILLINOIS)

By: *Louis E. Metzger, Jr*

**ENDORSEMENT**                                      ADDITIONAL PREI. UM $ 31,528.81

RETURN PREMIUM      $

Attached to and forming part of Policy/Certificate No.   SLC 5163

in the name of      Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is  October 1, 1977      Endorsement No.  B


It is hereby noted and agreed the annual premium due for the period

October 1, 1977 to October 1, 1978 is $209,077. and the security is

amended and payable as follows:

Hereon: 15.08% Part of 100% of:

| | | |
|---|---|---|
| Excess Ins Co Ltd | 6.032 | $12,611.53 |
| Bellefonte Ins Co | 4.824 | 10,085.87 |
| Pine Top Ins Co Ltd | 1.208 | 2,525.65 |
| Terra Nova Ins Co Ltd | 3.016 | 6,305.76 |
| | 15.08% | $31,528.81 |


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:   February 9, 1978          ARTHUR J. GALLAGHER & CO.(ILLINOIS)

By: Louis E Metzger Jr

## ENDORSEMENT

Attached to and forming part of Policy    /    Certificate No.    SLC 5163

in the name of    Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is    October 1, 1976        Endorsement No. A


IT IS AGREED that the first annual installment premium is  $193,000.00        based
on total values of    $415,164,310.00        and future annual installments will be
based on anniversary date values calculated as follows:

> Going In Values
>
> plus  (a)  Additions
> less  (b)  Deletions
> plus  (c)  the reconstruction cost variation as
>             provided by Gallagher Bassett
>             Insurance Service


Hereon:            90%    part of 100%

| | | |
|---|---|---|
| Excess Ins Co Ltd | 6.00% | $11,580.00 |
| Bellefonte Ins Co | 4.50% | 8,685.00 |
| Terra Nova Ins Co Ltd | 3.00% | 5,790.00 |
| | 13.50% | $26,055.00 |


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:        March 17, 1977        ARTHUR J. GALLAGHER & CO.

                                    By _Lewis E. Metzger, Jr_

U.S.A.

### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—
### PHYSICAL DAMAGE—DIRECT

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

This policy does not cover any loss or damage arising directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination however such nuclear reaction, nuclear radiation or radioactive contamination may have been caused *NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that Fire.

*NOTE.—If Fire is not an insured peril under this policy the words from "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

7/5/59
N.M.A. 1191                                                                EASON PRINTING COMPANY

**U.S.A.**

### NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

*For attachment to insurances of the following classifications in the U. S. A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

> *Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),*

*not being insurances of the classifications to which the Nuclear Incident Exclusion Clause —Liability—Direct (Limited) applies.*

This policy*

does not apply:—

I.  Under any liability Coverage, to injury, sickness, disease, death or destruction

   (a)  with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material by any person or organization.

III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

   (a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

   (b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   (c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.  As used in this endorsement:

   "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material;"source material", special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material, (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

   (a)  any nuclear reactor,

   (b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

   (c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

   (d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing, to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*Note:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17-8-60
N.M.A. 1256                                                    Essex Printing Company

## COMBINED PROPERTY, CASUALTY AND CRIME INSURANCE

This Insurance provides the following –

| | | |
|---|---|---|
| SECTION I | - | PROPERTY INSURANCE |
| Agreement A | - | Building and Contents |
| Agreement B | - | Automobile |
| | | |
| SECTION II | - | CASUALTY INSURANCE |
| Agreement C | - | General Liability |
| Agreement D | - | Liquor Liability |
| Agreement E | - | Automobile Liability |
| Agreement F | - | Workmen's Compensation and/or Employers Liability and/or Occupational Disease |
| | | |
| SECTION III | - | CRIME INSURANCE |
| Agreement G | - | Money and Securities (within premises) |
| Agreement H | - | Money and Securities (outside premises) |
| Agreement I | - | Commercial Blanket Bond |

### DECLARATIONS

ASSURED:   Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein, Over Which the same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Excercises Direct, Complete and Active Control over the Finances, Properties, Operations and Activities

ADDRESS:

50 North Park Avenue
Rockville Centre, New York 11570

LIMITS OF
LIABILITY:   See Part I for Aggregate Agreement;
Part II for Specific Excess Agreement.

PREMIUM:   Annual Premium   SEE ENDORSEMENT #2 ATTACHED

TERM OF
INSURANCE:   Effective from   October 1, 1976  to  October 1, 1979
BOTH DAYS at 12:01 A.M. Standard Time
at Assured's Address shown above.

PAC-1

PART I                    (AGGREGATE AGREEMENT)

LIMITS OF LIABILITY:    The Underwriters' Limits of Liability under this
Agreement shall be only for the Excess of Loss over

A)    An annual aggregate Loss Fund of $1,200,000. ultimate net loss
      (hereinafter referred to as "Assured's Loss Fund"). As respects
      any one loss the Assured's Loss Fund shall not be charged with

      1)    an amount in excess of the amount stated in B) below or

      2)    any loss arising under Section I (except Automobile Compre-
            hensive Perils) and Section III which is less than $100.00.

                              OR

B)    $100,000.00 Ultimate Net Loss as respects any one loss under
      Sections I, II, or III or any combination thereof

and then in excess of the above amounts up to $500,000. ultimate net loss in
the aggregate in any one period of insurance in respect of the Assured's Loss Fund.

LOSS FUND ADJUSTMENT:    The amount of the Assured's Loss Fund applies to the
first annual period of this policy and is subject to review and change annually
thereafter.

PART II                              (AGREEMENT)

LIMITS OF LIABILITY:    The Underwriters' Limits of Liability under this Agreement
shall be only for the excess of loss over $100,000. ultimate net loss each and every
loss and/or occurrence up to a further $400,000. ultimate net loss each and every
loss and/or occurrence, under Section I, II or III or any combination thereof.

GENERAL INSURANCE AGREEMENTS

I.    PERIOD OF INSURANCE

      The words "period of insurance" shall be understood to mean any one of the
      following periods: -

                  Period I      October 1, 1976  to  October 1, 1977
                  Period II     October 1, 1977  to  October 1, 1978
                  Period III    October 1, 1978  to  October 1, 1979

II.   NAME OF INSURED
      It is agreed that Roman Catholic Diocese of Rockville Centre, etal
      owns and/or operates Parishes, Schools, Cemeteries and Other Agencies
      under specific Names, and it is the intention of this Insurance to cover such
      Parishes, Schools, Cemeteries and Other Agencies or directly connected
      organizations as Named Assureds.

It is also agreed that the unqualified word Assured wherever used in this Insurance includes not only the Named Assured but also –

1.   any official, trustee or employee of the Named Assured while acting within the scope of his duties as such, and any person, organization, trustee or estate to whom the Named Assured is obligated by virtue of written contract or agreement to provide insurance such as is offered by this Insurance, but only in respect to operations by or on behalf of the Named Assured.

2.   under Section II Agreement E any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the Named Assured or with his permission, and any official of the Named Assured with respect to the use of non-owned automobile in the business of the Named Assured. This Insurance with respect to any person or organization other than the Named Assured does not apply,

   (a)   to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any accident arising out of the operation thereof;

   (b)   to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer;

   (c)   with respect to any hired automobile, to the owner or a lessee thereof, other than the Named Assured, nor to any agent or employee of such owner or lessee;

   (d)   with respect to any non-owned automobile, to any official or employee if such automobile is owned by him or a member of the same household.

The inclusion hereunder of more than one Assured shall not operate to increase Underwriters' Limits of Liability.

III.   <u>TERRITORY</u>

This Insurance applies World Wide.

IV.   In calculating the amount of Ultimate Net Loss under Part I (Aggregate Agreement) and Part II (Specific Excess Agreement) this Insurance is deemed to have the following maximum limits which will apply for all purposes to the Assured's Loss Fund and to the Specific Excess Agreement:-

(a)   $250,000.00     in the aggregate annually as respects any Flood loss under Section I.

(b)   $200,000.00     any one occurrence Combined Single Limit Public Liability/Property Damage under Section II Agreements C, D and E, but in the aggregate annually as respects Errors and Omissions provided by Endorsement #1 attached.

(c)   $ 25,000.00     each and every loss under Section III Agreements G and H.

(d)   $ 25,000.00     each and every loss under Section III Agreement I.

(e)   $100,000.00     any one occurrence under Section II Agreement F Workmen's Compensation and/or Employers' Liability and/or Occupational Disease.

(f)   $ 5,000.00     any one person as respects Automobile Medical Payments under Section I Agreement B.

(g)   $ 5,000.00     any one person as respects other than Automobile Medical Payments under Section II Agreement C. (Coverage excludes payments to or for students).

V.   <u>SERVICE ORGANIZATION</u>

Insurance afforded under this Insurance is issued to the Assured on the express condition that the Assured undertakes to utilize at all times the services of Gallagher Bassett Insurance Service, The Tower, Golf Road, Rolling Meadows, Illinois 60008.  This Service Organization shall perform the following duties:

(a)   Strictly discharge the Assured's obligation to the employees or members of the public.

**V.**   SERVICE ORGANIZATION (Cont'd)

(b)   Maintenance of accurate records of all details incident to payments.

(c)   Furnish inspection and safety engineering service.

(d)   Furnish monthly claims records on an approved form.

The acceptance of these services shall be a condition precedent to any liability which may attach to the Underwriters in accordance with the terms and conditions of this Insurance.

## SECTION I   PROPERTY INSURANCE

### INSURING AGREEMENTS

AGREEMENT A - BUILDING AND CONTENTS:  Underwriters agree, subject to the limitations, terms and conditions of this Insurance, to indemnify the Assured for all risks of physical loss or damage to All Real or Personal Property of every kind and description wherever located occurring during the period of this Insurance.

AGREEMENT B - AUTOMOBILE:  Underwriters agree, subject to the limitations, terms, and conditions of this Insurance, to indemnify the Assured for loss or damage to Automobiles owned by the Assured or on which the Assured has an obligation to provide adequate insurance, wherever located, against All Risks of Direct Physical Loss, including Collision of the Automobile with another object.

## SECTION I   DEFINITIONS

1.   PROPERTY OF THE ASSURED:   The term "Assured's Property" shall mean All Real and Personal Property, including leasehold improvements or betterments which the Assured owns, property which the Assured holds on consigments, or agrees to insure by any contractual agreement normal to its operations.

2.   AUTOMOBILE:   The term "Automobile" shall mean any motor vehicle, trailer or semi-trailer, including its equipment and any other equipment permanently attached thereto.  The word "Trailer" shall include semi-trailer.

3.   ULTIMATE NET LOSS:   The words "Ultimate Net Loss" in respect of this Section shall be understood to mean the loss sustained by the Assured after making deductions for all recoveries and salvages.

## SECTION I   EXCLUSIONS

WITH REGARD TO ALL PROPERTY, THIS INSURANCE DOES NOT INSURE AGAINST:

1. Loss by moth, vermin, termites or other insects; wear, tear or gradual deterioration; rust, wet or dry rot or mould.

2. Loss or damage caused by

   (a) Radioactive or fissionable material
   (b) Contamination, other than by (a) above, unless directly resulting from Fire or Extended Coverage perils.

3. Loss resulting from loss of use (except such loss of use coverage as is afforded under a Standard Automobile Policy in respect of Agreement B above), delay or loss of markets.

4. Breakdown of machinery and/or boiler explosion, but not excluding loss resulting therefrom.

5. Loss resulting from dampness of atmosphere or variation in temperature unless caused by the perils of Fire and Extended Coverage.

6. Loss of electrical appliances or devices of any kind, including wiring, arising from electrical injury or disturbance to the said electrical appliances or devices or wiring from artifical causes unless fire or explosion ensues, and then only for direct loss or damage caused by such ensuing fire or explosion.

WITH REGARD TO ALL REAL PROPERTY, THIS INSURANCE DOES NOT INSURE AGAINST:

Loss by normal settling, normal shrinkage or normal expansion in foundations, walls, floors or ceilings.

WITH REGARD TO PERSONAL PROPERTY, THIS INSURANCE DOES NOT INSURE AGAINST:

1. Loss by mechanical derangement, inherent vice or latent defect.

2. Loss resulting from processing or faulty workmanship, unless fire and/or explosion ensues, and then only for direct loss or damage caused by such ensuing fire or explosion.

3. Loss resulting from shrinkage, evaporation, loss of weight or leakage, unless such loss is caused directly by fire or the combating thereof, lightning, windstorm, hail, explosion, strike, riot or civil commotion, aircraft, vehicles, breakage of pipes or apparatus, sprinkler leakage, vandalism and malicious mischief, theft or attempted theft.

4.    Inventory shortage, mysterious disappearance, or loss resulting
from any kind of infidelity or dishonesty on the part of the Assured
or any of his employees, except from the perils covered in Section III
(Money and Securities - Broad Form) of this Insurance.

PROPERTY EXCLUDED FROM COVERAGE HEREUNDER:

Animals, aircraft, standing timber and growing crops.

<u>SECTION I    CONDITIONS</u>

1.    <u>VALUATION:</u>    The Underwriters shall not be liable for loss or damage
in excess of:

A.    (Real and Personal Property - other than automobile) - the cost
to repair, rebuild or replace the destroyed or damaged property
in a condition equal to but not superior to or more extensive than
its condition when new. If Assured decides to replace destroyed
or damaged property on another site, cost of such site is not in-
cluded hereunder.

It is not a requirement hereunder that the Assured repair, re-
build or replace the destroyed or damage property in order to
collect for loss or damage covered by this Insurance.

B.    (Automobile) - the actual cash value of the automobile at the
time of loss.

2.    <u>DEBRIS REMOVAL:</u>    This Insurance covers the expense of removal
from the premises containing the property insured hereunder of
debris remaining after any loss hereby insured against, except that
there shall be no liability assumed for the expense of removal of any
foundations.

3.    <u>REMOVAL CLAUSE:</u>    This Insurance covers the expense and damage
occasioned by removal from the premises endangered by the perils
insured against wherever such property is located or removed for
preservation.

4.    <u>APPRAISAL:</u>    In the event the Assured and Underwriters are unable
to agree as to the amount necessary to rebuild, repair or replace the
damaged or destroyed property or the actual amount of reimbursement
to be paid, each party shall name a competent and disinterested appraiser
and the two so chosen shall, before proceeding further, appoint a com-
petent and disinterested umpire. The appraisers together shall obtain
reconstruction estimates, and calculate the amounts of reimbursement
due, and failing to agree, shall submit their differences to the umpire.

The award, in writing, duly verified by any two shall determine the points in question. Both parties shall pay the cost of their own appraisers and equally pro rate the cost of the umpire.

5.   CIVIL AUTHORITY CLAUSE:   Notwithstanding anything contained in this Insurance, property which is insured under this Insurance is also covered against the risk of damage or destruction by civil authority during a conflagration and for the purpose of retarding the same; provided that neither such conflagration nor such damage or destruction is caused or contributed to by war, invasion, revolution, rebellion, insurrection or other hostilities or warlike operations.

6.   ORDINANCE DEFICIENCY CLAUSE:   Notwithstanding anything contained herein to the contrary, the Underwriters shall be liable also for the loss occasioned by the enforcement of any state or municipal law, ordinance or code, which necessitates, in repairing or rebuilding, replacement of material to meet such requirements. If demolition is required to comply with such enforcement Underwriters shall also be liable for such additional costs.

7.   EXPENSE TO REDUCE OR PREVENT LOSS:   This Insurance also covers such expenses as are necessarily incurred for the purpose of reducing or preventing any loss under this Insurance not exceeding, however, the amount by which the loss under this Insurance is thereby reduced.

### SECTION II   CASUALTY INSURANCE

### INSURING AGREEMENTS

AGREEMENT C - GENERAL LIABILITY:   Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the Named Assured under contract or agreement, for damages direct or consequential, and expenses, all as more fully defined by the term "ultimate net loss", on account of personal injuries, including death at any time resulting therefrom, suffered or alleged to have been suffered by any person or persons (excepting employees of the Assured injured in the course of their employment); and/or damage to or destruction of property or the loss of use thereof; arising out of any occurrence happening during the period of Insurance.   •

AGREEMENT D - LIQUOR LIABILITY:   In accordance with the provisions of the above Agreement C, the Underwriters agree that indemnity for the Assured extends to liability for the sale or distribution of alcoholic beverages by reason of any local, state or Federal Liquor control laws now in force and all laws amendatory thereto; and that such extension includes indemnity for loss of means of support.

AGREEMENT F - WORKMEN'S COMPENSATION:  The Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the Named Assured under contract or agreement, for damages direct or consequential, and expenses, all as more fully defined by the term "ultimate net loss", on account of personal injury including death at any time resulting therefrom, suffered or alleged to have been suffered by any person or persons (excepting employees of the Assured injured in the course of their employment); and/or damage to or destruction of property or the loss of use thereof, arising out of the ownership, maintenance or use of any automobile and occurring during the period of this Insurance.

AGREEMENT F - WORKMEN'S COMPENSATION:  The Underwriters hereby agree to indemnify the Assured for financial loss caused by personal injuries to his employees (including occupational disease) when the Assured is legally liable therefor to said employees (including death resulting therefrom) arising out of and in the course of employment by the Assured, provided such injuries are sustained during the continuance of this Insurance.

## SECTION II   DEFINITIONS

1.   PERSONAL INJURIES - The term "personal injuries" wherever used herein, shall mean:

(a)   Bodily Injury, Mental Injury, Mental Anguish, Shock, Sickness, Disease, Disability, False Arrest, False Imprisonment, False Eviction, Detention, Malicious Prosecution, Discrimination, Humiliation, Invasion of Right of Privacy, Libel, Slander or Defamation of Character; also Piracy and any Infringement of Copyright or of property.

(b)   Professional medical services rendered or which should have been rendered to any person or persons (other than employees of the Assured injured during the course of their employment) by any duly qualified medical practitioner, or nurse, or technician employed by or acting on behalf of the Assured, provided such liability is based solely upon error, negligence or mistake committed during the period of this Insurance.

2.   PROPERTY DAMAGE - The term "property damage" wherever used herein shall mean damage to or destruction or loss of property, excluding, however, damage to property owned by the Named Assured, but including damage to property of other in the care, custody or control of the Named Assured or property which is purchased by the Named Assured under a contract which provides that the title remain with the sellers until payments have been completed, the liability of Underwriters being limited to the amount of payments outstanding.

3.    OCCURRENCE - The term "occurrence" wherever used herein
      shall mean an accident or a happening or event or a continuous or
      repeated exposure to conditions which unexpectedly and uninten-
      tionally results in personal injury, or damage to property during
      the policy period. All such exposure to substantially the same
      general conditions existing at or emanating from one location shall
      be deemed one occurrence.

4.    ULTIMATE NET LOSS - The term "ultimate net loss" shall mean the
      total sum which the Assured becomes obligated to pay by reason of
      personal injury or property damage claims, either through adjudication
      or compromise, after making proper deductions for all recoveries and
      salvages, and shall also include hospital, medical and funeral charges
      and all sums paid as salaries, wages, compensation, fees, charges and
      law costs, premiums on attachment or appeal bonds, interest, expenses
      for doctors, lawyers, nurses and investigators and other persons, and
      for litigation, settlement, adjustment and investigation of claims and
      suits which are paid as a consequence of any occurrence covered here-
      under, excluding only the salaries of the Named Assured's permanent
      employees. Fees, charges and expenses for Gallagher-Bassett Insurance
      Service are specifically excluded, and are to be paid by the Assured.

SECTION II   EXCLUSIONS

THIS INSURANCE DOES NOT APPLY -

(a)   to liability of any Assured for assault and battery committed by or
      at the direction of such Assured except liability for Personal Injury or
      Death resulting from any act alleged to be assault and battery for
      purpose of preventing injury to persons or damage to property;

(b)   except with respect to operations performed by independent con-
      tractors, to the ownership, maintenance or use, including loading
      or unloading of aircraft, and watercraft over 25 feet in length;

(c)   to damage or des                 perty owned by the Assured.

SECTION II   CONDITIONS

1.    CROSS LIABILITY: In the event of claims being made by reason of
      personal injuries and/or property damage suffered by any employee
      of one Assured herein for which another Assured herein is or may be
      liable, then this Insurance shall cover such Assured against whom a
      claim is made or may be made in the same manner as if separate policies
      had been issued to each Assured herein. Nothing contained herein shall
      operate to increase the Underwriters' Limit of Liability as set forth herein.
      The Underwriters agree to waive all rights of subrogation against all or
      any of the corporations or individuals comprising the Assured.

2. <u>NOTICE OF OCCURRENCE:</u>   Whenever the Assured has information from which the Assured may reasonably conclude that an occurrence covered under Section II of this Insurance involves injuries or damages, notice shall be given to Gallagher Bassett Insurance Service, The Tower, Golf Road, Rolling Meadows, Illinois 60008 as soon as practicable. Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above firm of any such occurrence.

3. <u>COMMUTATION:</u>   Claims hereunder, not finally settled, for weekly or periodical payment for compensation to employees (or their dependents) as a result of death or injury shall be notified with full particulars by the Assured to the Underwriters within two years from the expiration date of this Insurance and the Underwriters may, if they so elect, then or at any time thereafter submit one or more of such claims to an Actuary or Appraiser, to be mutually appointed by the Assured and the Underwriters, and the Underwriters shall at their option pay a lump sum to be fixed by the Actuary or Appraiser, which payment shall constitute a full and final release of the Underwriters' liability for such claim or claims, provided however that such lump sum payment shall not constitute a full and final release of Underwriters' liability if subsequent to such lump sum payment any supplemental award is made increasing the amount of compensation benefits payable to the employee or his/her dependents and that any additional claim may then be recommuted at Underwriters' option and Underwriters may discharge any additional liability by another lump sum payment.

4. <u>SELF-INSURERS STATUS:</u>   The Assured agrees to duly qualify as a self-insurer by compliance with the provisions of the Workmen's Compensation and/or Occupational Disease Law respecting Self-Insurance in the State of   New York   and shall continue to maintain said status throughout the period of this Insurance, provided, however, Underwriters shall not be relieved of their obligations hereunder because of a breach of this condition until (1) the Assured becomes insured with respect to his Workmen's Compensation and/or Occupational Disease liability or (2) the expiration of a period of thirty days after date of the notice served upon the Assured by the Industrial Commission terminating his status as a self-insurer, whichever occurs first.

5. If any employee is injured while engaged in the business operations described in the Declarations, outside the State of   New York   this Insurance shall apply to the liability of the Assured on account of such injuries irrespective of whether such liability is greater than it would have been had the injuries been sustained within the State of   New York   .

## SECTION III    CRIME INSURANCE

## INSURING AGREEMENTS

### AGREEMENT G - MONEY AND SECURITIES (COVERAGE WITHIN PREMISES):

Underwriters agree, subject to the limitations, terms and conditions of this Insurance, to indemnify the Assured for all loss caused by reason of theft, burglary, robbery, kidnapping, disappearance or destruction of any money or securities which may at any time be or believed by the Assured to be in or upon any premises, occupied or used by the Assured or by any bank, trust company or safe deposit company. Such Insurance as is afforded by this Insurance also applies to deposits within a night depository safe provided by a bank or trust company on its premises for the use of its customers.

### AGREEMENT H - MONEY AND SECURITIES (COVERAGE OUTSIDE PREMISES):

Underwriters agree, subject to the limitations, terms and conditions of this Insurance, to indemnify the Assured for all loss caused by reason of the theft, robbery, kidnapping, disappearance or destruction of any money or securities (other than by fraud or connivance of the Assured's officers or employees) while in transit in the custody of the Assured's officers or employees anywhere, the liability of the Underwriters to commence at the moment when the person into whose hands the property may be delivered on behalf of the Assured receives the same and to continue the delivery thereof at final destination.

### AGREEMENT I - COMMERCIAL BLANKET BOND:   Underwriters (hereinafter

called ("the Surety") agree, subject to the terms and conditions set forth herein, to indemnify the Employer against any loss of Money or other property real or personal (including that part of any inventory shortage which the Employer shall conclusively prove is caused by the dishonesty of any Employee or Employees) belonging to the Employer or in which the Employer has a pecuniary interest or for which the employer is legally liable or held by the employer in any capacity, whether the Employer is legally liable therefor or not, which the Employer shall during the term of this Insurance sustain or discover that they have sustained through larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wilful misapplication or other fraudulent or dishonest act or acts committed by any one or more of the Employees as defined, acting directly or in collusion with others.


## SECTION III    DEFINITIONS

### INSURING AGREEMENTS G AND H

1.    MONEY:   The term "Money" as used in this Insurance shall be deemed to mean currency, coin, bank notes, uncancelled and precancelled postage and unused postage in postage meters.

2.   SECURITIES:        The term "Securities" shall be deemed to mean Federal
Food Stamps, express, postal and bank money orders, postal notes, debentures,
scrip, checks, warrants, transfers, coupons, demand and time drafts, bills
of exchange, acceptances, promissory notes, certificates of deposits,
certificates of stock, bonds, car trust certificates, interim receipts and
certificates, warehouse receipts, bills of lading and all other instruments
of a similar nature including mortgages upon real estate or upon chattels and
upon interests therein, and instruments in the nature of mortgages upon real
estate or upon chattels and upon interests therein, and assignments of such
mortgages and instruments.

3.   It is understood and agreed that this Insurance covers money and securities
of the Assured or as respects which the Assured is legally liable or held
by it in any capacity, whether or not the Assured is liable for the loss
thereof. If legal proceedings are taken against the Assured to enforce a
claim for money and securities so held, the Assured shall immediately notify
the Underwriters in writing.

4.   EMPLOYEES:   The term "Employees" shall mean not only persons com-
pensated by the Assured but also those directed by the Assured, and in-
cluding those independent contractors and/or services which may be con-
sidered as usually performed by employees of the Assured.

5.   THEFT:        The term "Theft" shall include "trick and device".

6.   ULTIMATE NET LOSS:   The words "ultimate net loss" in respect of this
Section shall be understood to mean the actual loss sustained by the Assured
after making deductions for all recoveries and salvages.

INSURING AGREEMENT I

1.   EMPLOYER:   The term "Employer" as used in this Bond shall mean the
Assured Named in the Declarations and as further defined in General
Insurance Agreement II.

2.   EMPLOYEE OR EMPLOYEES:   The terms "Employee" or "Employees" as
used in this Bond shall be deemed to mean respectively one or more of the
natural persons who on the effective date of this Bond or at any other time
during the term of this Bond are in the regular service of the Employer in
the ordinary course of the Employer's business and who are compensated by
salary, wages and/or commission, and whom the Employer has the right to
govern and direct at all times in the performance of such service, but not to
mean brokers, factors, commission merchants, consignees, contractors or
other agents or representatives of the same general character.

## THIS INSURANCE DOES NOT APPLY UNDER INSURING AGREEMENTS G AND H

(a)   to any fraudulent, dishonest or criminal act other than robbery or safe burglary or attempt thereat, committed by the Assured or by any officer, employee (except Brinks or Armored Car Employees): trustee or authorized representative of the Assured, whether acting alone or in collusion with others.

(b)   to forgery by whomsoever committed.

### SECTION III   CONDITIONS

1.   under INSURING AGREEMENTS G, H AND I

Warranted free of all claims for losses not discovered within the term of this Insurance and for losses sustained and/or acts committed prior to October 1, 1976   hereinafter called the Retroactive Date) but with the understanding that in the event of (a) the expiration of this Insurance by reason of non-renewal, or (b) the termination of this Insurance as an entirety, as provided in General Condition 5, the Assured shall have twelve calendar months following the date of such expiration or termination in which to discover losses sustained between the Retroactive Date and the date of such expiration or termination.

Notwithstanding anything to the contrary contained herein it is understood and agreed that in the event of this Insurance being immediately succeeded by a similar Insurance with Underwriters at Lloyd's on which the Retroactive Date is   October 1, 1976   the said succeeding insurance shall be deemed to be a renewal hereof and in consequence the discovery period provided herein shall not be operative.

2.   under INSURING AGREEMENT I

(a)   Upon the discovery of any loss hereunder this Bond shall be treated as reinstated so as at all times to continue in force for the sum set forth herein notwithstanding any previous loss for which the Surety may have paid or be liable to pay hereunder provided however that in no event shall the Surety be liable under this Bond for an amount greater than the limits of liability stated on account of any one loss or series of losses caused by the fraudulent or dishonest acts of any Employee or in which such Employee is concerned or implicated.

(b)   In case any reimbursement be obtained or recovery be made by the Employer or by the Surety on account of any loss covered under this Bond, the net amount of such reimbursement or recovery,

after deducting the actual cost of obtaining or making the same,
shall be applied to reimburse the Employer in full for that part
if any, of such loss in excess of this Bond, and the balance, if
any, or the entire net reimbursement or recovery if there be no
such excess loss, shall be applied to that part of such loss covered
by this Bond or, if payment shall have been made by the Surety, to
its reimbursement therefor. The Employer shall execute all nec-
essary papers and render all assistance not precuniary to secure
unto the Surety the rights provided for in this paragraph. The follow-
ing shall not be reimbursement or recovery within the meaning of this
paragraph: suretyship, insurance or reinsurance; also security or
indemnity taken from any source by or for the benefit of the Surety.

(c)     This Bond shall be deemed cancelled as to any Employee immediately
upon discovery by the Employer, of any fraudulent or dishonest act
on the part of such Employee; or at 12:01 A.M. Standard Time as
aforesaid upon the effective date specified in a written notice served
upon the Employer or sent by registered mail. Such date if the notice
be served shall be not less than fifteen days after such service, or if
sent by registered mail, not less than twenty days after the date borne
by the sender's registered mail, not less than twenty days after the
date borne by the sender's registry receipt.

## SECTION IV   GENERAL CONDITIONS

1.  PREMIUM PROVISION:

See Endorsement #2 Attached

2.  SALVAGE AND RECOVERY CLAUSE:

All salvages, recoveries and payments recovered or received subsequent
to a loss settlement under this Insurance shall be applied as if recovered
or received prior to the said settlement and all necessary adjustments
shall be made by the parties hereto.

3.  INSPECTIONS, AUDIT AND VERIFICATION OF VALUES

The Underwriters or their duly authorized representatives shall be permitted
to all reasonable times during continuance of this Insurance to inspect the
premises used by the Assured and to examine the Assured's books or records
so far as they relate to coverage afforded by this Insurance.

4.  RECORDS:

It is hereby understood and agreed that the records and books as kept by
the Assured shall be acceptable to Underwriters in determining the amount
of loss or damage covered hereunder.

5.   <u>CANCELLATION</u>:

This Insurance may be cancelled as of any anniversary date by either of the parties upon written notice to the other party stating when, not less than thirty (30) days thereafter cancellation shall be effected.

If this Insurance shall be cancelled by the Assured the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the customary short rate proportion of any minimum premium stipulated herein whichever is the greater.

If this Insurance shall be cancelled by or on behalf of the Underwriters the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the pro rata proportion of any minimum premium stipulated herein whichever is the greater.

Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

6.   <u>CURRENCY</u>:

The premium and losses under this Insurance are payable in United States Currency. Payment of premium shall be made to Arthur J. Gallagher & Co., The Tower, Golf Road, Rolling Meadows, Illinois 60008.

7.   <u>BANKRUPTCY AND INSOLVENCY</u>:

In the event of the bankruptcy or insolvency of the Assured or any entity comprising the Assured, the Underwriters shall not be relieved of the payment of any claims hereunder because of such bankruptcy or insolvency.

8.   <u>OTHER INSURANCE</u>:

If the Assured has other Insurance against loss covered by this Insurance the Underwriters shall be liable, under the terms of this Insurance, only as excess of coverage provided by such other Insurance, and no monies payable or collectible from such other Insurance shall accrue in the aggregate loss fund of this Insurance.

9.   MORTGAGE CLAUSE:

The interest of any mortgagor on property covered hereunder is included as if a separate endorsement were attached hereto to the extent of the amount of mortgage as of the date of loss subject to the limits of liability set forth in this Insurance.

10.   CLAIMS:

The Assured shall immediately notify Underwriters through Arthur J. Gallagher & Co., The Tower, Golf Road, Rolling Meadows, Illinois 60008 by registered mail, of any occurrence, the cost of which is likely to result in payment by Underwriters under this Insurance. Underwriters shall have the opportunity to be associated with the Assured in defense of any claims, suits, or proceedings relative to an occurrence wherein the opinion of the Underwriters, their liability under this Insurance is likely to be involved, in which case the Assured and Underwriters shall cooperate to the mutual advantage of both.

11.   LOSS PAYMENTS:

When it has been determined that Underwriters are liable under this Insurance, Underwriters shall thereafter promptly reimburse the Assured for all payments made in excess of the amounts stated in Subparagraphs A and B of the Limits Agreement. All adjusted claims shall be paid or made good to the Assured within thirty days after their presentation to Arthur J. Gallagher & Co., and acceptance by Underwriters of satisfactory proof of interest and loss.

12.   APPEAL:

In the event the Assured and Underwriters are unable to agree to the advisability of appealing a judgment, a disinterested attorney, mutually agreeable to Underwriters and the Assured, shall be retained and directed to render a written opinion as to his recommendation concerning such appeal. Such written recommendation shall be binding on both the Assured and Underwriters. Fees of such retained attorney shall be borne equally by both parties for the services of rendering his recommendation only. The Assured's portion of such fee shall not accrue in the aggregate loss fund.

13.   LITIGATION PROCEEDINGS:

No suit to recover on account of loss under this Insurance shall be brought until ninety days after the proof of loss shall have been furnished, nor at all unless commenced within twenty seven months from the date upon which loss occurred, if such loss, is within the knowledge of the Assured; if not, the twenty seven months shall begin upon notice to the Assured of such loss or claim.

14.    SUBROGATION:

The Underwriters shall be subrogated to all rights which the Assured may
have against any person or other entity in respect to any claim or payment
made under this Insurance, and the Assured shall execute all papers re-
quired by the Underwriters and shall cooperate with the Underwriters to
secure Underwriter's rights.  In case any reimbursement obtained or
recovery made by the Assured or the Underwriters on account of any
loss covered by this Insurance, the net amount of such reimbursement
or recovery, after deducting the actual cost of obtaining or making the
same, shall be first applied in the following order:

(a)    Amount of loss which exceeds the applicable limit of liability.

(b)    To reduce the Underwriters' loss until the Underwriters are
fully reimbursed.

(c)    To reduce the Assured's loss because of the application of the
aggregate loss fund.

15.    WAIVER OF SUBROGATION:

This Insurance shall not be invalidated if the Assured by written agree-
ment has waived or shall waive its right of recovery from any party for
loss or damage covered hereunder; provided, that any such waiver is
made prior to the occurrence of said loss or damage.  The Underwriters,
in any event, expressly waive subrogation against any Parish, School,
Cemetery or other agency.

16.    CONFLICTING STATUTES:

In the event that any provision of this Insurance is unenforceable by the
Assured under the laws of any State or other jurisdiction wherein it is
claimed that the Assured is liable for any injury covered hereby because
of non-compliance with any statute thereof, then this policy shall be en-
forceable for the Assured with the same effect as if it complied with such
statutes.

17.    ASSIGNMENT:

Assignment of interest, under this Insurance shall not bind the Under-
writers until the Underwriters' consent is endorsed hereon.

18.   CHANGES:

By acceptance of this Insurance the Assured agrees that it embodies all
agreements existing between the Assured and Underwriters or any of
its agents relating to this Insurance.  None of the provisions, conditions
or other terms of this Insurance shall be waived or altered except by
endorsement; nor shall notice to any agent or knowledge possessed by any
agent or by any other person be held to effect a waiver or change in any
part of this Insurance.

19.   WAR CLAUSE:

Coverage does not apply under this Insurance for loss or damage directly
or indirectly occasioned by, happening through or in consequence of war,
invasion, acts of foreign enemies, any weapon of war employing atomic
fission or radioactive force whether in time of peace or war, hostilities
(whether war be declared or not), civil war, rebellion, revolution, in-
surrection, military or usurped power, confiscation or nationalization or
requisition or destruction of or damage to property by or under the order
of any government or public or local authority unless such acts of destruc-
tion by order of civil authority is at the time of and for the purpose of pre-
venting spread of fire; or claims or liability arising directly or indirectly
from nuclear fission, nuclear fusion or radioactive contamination.

20.   FRAUDULENT CLAIMS:

If the Assured shall make any claim knowing the same to be false or fraudulent,
as regards amount or otherwise, this Insurance shall become void and all
claim hereunder shall be forfeited.

HEREON:   90%   OF 100% OF LIMITS AND PREMIUM

ATTACHING TO AND FORMING PART OF COVER NOTE NO.   SL 3152

DATED:   March 17, 1977

ARTHUR J. GALLAGHER & CO.

By *Louis E. Metzger Jr*

ENDORSEMENT

Attached to and forming part of Policy/Certificate No.   SL 3152
in the name of   Roman Catholic Diocese of Rockville Centre
Effective date of this endorsement is   July 30,1979      Endorsement No.  27

It is hereby noted and agreed effective 30th July, 1979 the limit in

respect of Employee Fidelity is increased to $100,000 any one loss for

St. Francis Hospital, Roslyn, New York location only.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:    August 9, 1979                ARTHUR J. GALLAGHER & CO. (ILLINOIS)

                                        By: *Louis E Metzger Jr*

Attached to and forming part of Policy / Certificate No.   SL3152

in the name of   Roman Catholic Diocese of Rockville Centre, etal.

Effective date of this endorsement is April 4, 1979      Endorsement No. 26

It is hereby understood and agreed Endorsement No. 25  is amended to read:

It is hereby understood and agreed effective April 4, 1979 the Limit in respect of Employee Fidelity is Increased to $100,000 any one loss for St. Charles Hospital and Maryhaven location only.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:      June 28, 1979                    ARTHUR J. GALLAGHER & CC.

                                            By: Louis E. Metzger, Jr.

**ENDORSEMENT**

**Attached to and forming part of Policy/Certificate No.**   SL3152

**In the name of**    Roman Catholic Diocese of Rockville Centre, Etal.

**Effective date of this endorsement is**   April 4, 1979    **Endorsement No.** 25

It is hereby understood and agreed effective April 4, 1979 the Limit in respect
of Employee Fidelity is increased to $100,000. any one loss for Maryhaven
location only.

St. Charles Hospital affiliated with above location.

*see revised
Endst # 26*

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**DATED:** April 11, 1979      **ARTHUR J. GALLAGHER & CO.(ILLINOIS)**

                                  **By:** *Louis E. Metzger*

**ENDORSEMENT**

**Attached to and forming part of Policy/Certificate No.** SL3152

**In the name of** Roman Catholic Diocese of Rockville Centre, Etal.

**Effective date of this endorsement is** October 1, 1978    Endorsement No. 24

It is hereby understood and agreed that effective October 1, 1978 the Loss
Limitation in respect of Public Liability/Property Damage is reduced to
$200,000 any one occurrence C.S.L.P.L./P.D.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**DATED:** April 4, 1979                ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                        **By:** Louis E. Metzger, Jr.

RETURN PREMIUM    $3,784.05 (Hereon)

Attached to and forming part of Policy/Certificate No. SL3152

In the name of    Roman Catholic Diocese of Rockville Centre, etal.

Effective date of this endorsement is October 1, 1978    Endorsement No. 23

It is hereby noted and agreed that effective 1st October, 1978 the loss
limitations in respect of the Self Insured Fund and within the limits of
this insurance are amended as follows:

      Auto Liability:        $100,000 any one occurrence C.S.L.

      W.C.A./E.L./O.D.:    $100,000 any one occurrence

      R.P.  $5,000 annual

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  April 3, 1979

— ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By: *Louis E. Metzger, Jr.*

ENDORSEMENT

ADDITIONAL .REMIUM $

RETURN PREMIUM     $

Attached to and forming part of Policy/Certificate No. SL3152

in the name of Roman Catholic Diocese of Rockville Centre, etal.

Effective date of this endorsement is  December 23, 1978    Endorsement No.    22

      It is hereby understood and agreed to increase sub limit in
respect money and securities to $50,000, for the period December
23, 1978 to January 2, 1979 for:

      R.C.C. of St. Barnabas
      Bellmore, New York

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  January 2, 1979

ARTHUR J. GALLAGHER & CO.(ILLINOIS)

By: _Arnis E. Metzger, Jr._

ENDORSEMENT                               ADDITIONAL PREMIUM $ 187,237.06 (Hereon)

                                          RETURN PREMIUM $_____


Attached to and forming part of Policy    /    Certificate No.  SL3152

in the name of  Roman Catholic Diocese of Rockville Centre, Etal.

Effective date of this endorsement is  October 1, 1978          Endorsement No.21

IT IS AGREED THAT:

1. The annual premium for the period  October 1, 1978 to October 1, 1979
   is $247,403.00                          based on values
   of  $485,746,205.00

2. Part I (Aggregate Agreement) shown on Page 1 of the wording attached to the above
   numbered Cover Note is amended to read:

   PART I (AGGREGATE AGREEMENT)

   LIMITS OF LIABILITY: The Underwriters' Limits of Liability under this Agreement
   shall be only for the Excess of Loss over

   (A)  Annual aggregate Loss Fund of $ 1,950,000.  ultimate net loss (hereinafter
        referred to as "Assured's Loss Fund"). As respects any one loss the Assured's
        Loss Fund shall not be charged with

        1)  An amount in excess of the amount stated in (B) below or

        2)  any loss arising under Section I (except Automobile Comprehensive Perils)
            and Section III which is less than  $100.00

                              OR

   (B)  $ 100,000     Ultimate Net Loss as respects any one loss under  Sections I,
        II, or III or any combination thereof

        and then in excess of the above amounts up to $ 500,000        ultimate net loss
        in the aggregate in any one period of insurance in respect of the Assured's Loss Fund.

3. It is further agreed that the participation insured by this policy is
   increased from 74.92% to 75.681% and the Underwriters subscribing to this
   Policy are:  Underwriters at Lloyds, London 75.681% $187,237.06
   ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  10/30/78                          ARTHUR J. GALLAGHER & CO.

                                          By _Louis E. Metzger Jr_

ENDORSEMENT                                ADDITIONAL PREMIUM $

                                        RETURN PREMIUM      $


Attached to and forming part of Policy/Certificate No. SL 3152

in the name of  Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is April 7, 1978        Endorsement No.   20


It is hereby agreed and understood the following is added as an additional insured
under this policy:


            The City of New York Department of Sanitation in respect of:

                St. Agnes Academic High School
                13-20 124th Street
                College Point, Queens, New York


In accordance with the hold harmless agreement entered into between the Assured
and the City.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  4-19-78                         ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                        By: Louis E. Metzger, Jr.

ENDORSEMENT                                    ADDITIONAL PREMIUM $

                                               RETURN PREMIUM      $


Attached to and forming part of Policy/Certificate No. SL 3152

in the name of    The Roman Catholic Diocese of Rockville Centre

Effective date of this endorsement is   April 11, 1977      Endorsement No. 19



        It is hereby agreed Agreement G, Money and Securities (within

        premises) and Agreement H Money and Securities (outside premises)

        is increased as follows for Easter period at the following lications:

        1) R.C.C. of St. Patrick, Hintington, New York to $50,000.

        2) R.C.C. of St. Joseph, Garden City, New York to $35,000.

        3) R.C.C. of St. Anne, Garden City, New York to $35,000.



ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:      April 28, 1978           ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                     By: Louis E. Metzger Jr

ENDORSEMENT                    ADDITIONAL PREMIUM $   11,208.03  (Hereon)

                              RETURN PREMIUM      $

Attached to and forming part of Policy/Certificate No. SL 3152

in the name of   Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is January 1, 1978      Endorsement No. 17 Revised


          In consideration of an additional premium of $14,960.00, it it hereby
          noted and agreed that effective January 1, 1978 the loss limitation
          hereon in respect of Worker's Compensation Act/Employers Liability/
          Occupational Disease is increased to $150,000.00 any one occurrence
          and payable as follows:



    Underwriters at Lloyd's, London          74.92%            $11,208.03


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:    4-26-78                        ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                         By: Louis E. Metzger, Jr.

ENDORSEMENT                          ADDITIONAL PREMIUM $ 11,238.00 (Hereon)

RETURN PREMIUM      $

Attached to and forming part of Policy/Certificate No.   SL 3152

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is   January 1, 1978    Endorsement No. 17

In consideration of an additional premium of $15,000.00, it is hereby

noted and agreed that effective January 1, 1978 the loss limitation

hereon in respect of Worker's Compensation Act/Employers Liability/

Occupational Disease is increased to $150,000.00 any one occurrence

and payable as follows:

        Underwriters at Lloyd's, London      74.92%      $11,238.00

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:   March 9, 1978              ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                    By: Louis E Metzger Jr

**ENDORSEMENT**                                          ADDITIONAL PREMIUM $ 14,984.00 (Hereon)

RETURN PREMIUM     $

Attached to and forming part of Policy/Certificate No.   SL 3152

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is  October 1, 1977     Endorsement No. 16


It is hereby understood and agreed that in consideration of an annual

additional premium of $20,000.00 the Loss Limitation in respect of Public

Liability/Property Damage is increased to $300,000 any one occurrence

combined single limit Public Liability/Property Damage


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:      February 9, 1978              ARTHUR J. GALLAGHER & CO.(ILLINOIS)

By: Louis E Metzger, Jr

ENDORSEMENT

ADDITIONAL PREMIUM $

RETURN PREMIUM    $

Attached to and forming part of Policy/Certificate No.  SL 3152

in the name of  Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is  October 1, 1977    Endorsement No. 15

It is hereby noted and agreed the annual premium due for the period

October 1, 1977  to  October 1, 1978 is $209,077.00 and the security

is amended and payable hereon as follows:

Hereon: 74.92% Part of 100% of:

    Underwriters at Lloyd's, London    74.92%    $156,640.49

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:    February 8, 1978

ARTHUR J. GALLAGHER & CO.(ILLINOIS)

By: *Louis E Metzger, Jr*

ENDORSEMENT                    ADDITIONAL PREMIUM $ 156,640.49 (Hereon)

                               RETURN PREMIUM $_____

Attached to and forming part of Policy    /    Certificate No.    SL 3152

in the name of    Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is  October 1, 1977          Endorsement No.  14

IT IS AGREED THAT:

1. The annual premium for the period    October 1, 1977    to    October 1, 1978
   is  $209,077.00                         based on values
   of    $448,506,327.

2. Part I (Aggregate Agreement) shown on Page 1 of the wording attached to the above
   numbered Cover Note is amended to read:

   PART I (AGGREGATE AGREEMENT)

   LIMITS OF LIABILITY: The Underwriters' Limits of Liability under this Agreement
   shall be only for the Excess of Loss over

   (A)    Annual aggregate Loss Fund of $ 1,400,000. ultimate net loss (hereinafter
          referred to as "Assured's Loss Fund"). As respects any one loss the Assured's
          Loss Fund shall not be charged with

          1) An amount in excess of the amount stated in (B) below or

          2) any loss arising under Section I (except Automobile Comprehensive Perils)
             and Section III which is less than $100

                              OR

   (B)    $ 100,000.    Ultimate Net Loss as respects any one loss under  Sections I,
          II, or III or any combination thereof

   and then in excess of the above amounts up to $ 500,000.    ultimate net loss
   in the aggregate in any one period of insurance in respect of the Assured's Loss Fund.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:    February 8, 1978          ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                    By Louis E. Metzger Jr

ENDORSEMENT                                    ADDITIONAL PREMIUM $

                                               RETURN PREMIUM      $

Attached to and forming part of Policy/Certificate No.  SL 3152

In the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1977      Endorsement No.    13


It is hereby agreed that the following are added as additional insureds
under this policy:

                    Bishop John R. McGann

                    Auxiliary Bishop Vincent J. Baldwin

                    Bishop Emeritus Walter P. Kellenberg

                    Auxiliary Bishop Gerald J. Ryan

                    Auxiliary Bishop James J. Daly


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  February 8, 1978            ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                    By: Louis E. Metzger, Jr

ENDORSEMENT                                      ADDITIONAL PREMIUM $

                                                RETURN PREMIUM        $


Attached to and forming part of Policy/Certificate No.   SL 3152

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is December 24, 1977    Endorsement No. 12


In consideration of the premium charged it is agreed that the Money
& Securities limit on the following location is increased for the
periods:

    December 24, 1977  through  December 27, 1977

    December 24, 1978  through  December 27, 1978


Location                                        Limit

R C C of OUr Lady of Mercy                       $30,000.
500 South Syster Bay Road
Hicksville, New York 11801


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:      February 8, 1978              ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                          By: Louis E. Metzger, Jr

ENDORSEMENT                              ADDITIONAL PREMIUM $ _ _ _ _

                                         RETURN PREMIUM $ _ _ _ _


Attached to and forming part of Policy   /   Certificate No.  SL 3152

in the name of  Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is   October 1, 1976     Endorsement No.  10



It is agreed the coverage and limit shown on endorsement #6 for

Mercy Hospital, Rockville Centre, New York is amended to read as

follows:

     $9,200,000.00   Business Interruption

     80% Co-insurance

     $500,000.00   Extra Expense



ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:   June 29, 1977              ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                    By *Louis E. Metzger, Jr*

ENDORSEMENT                          ADDITIONAL PREMIUM $ _ _ _ _

                                     RETURN PREMIUM $ _ _ _ _

Attached to and forming part of Policy    /    Certificate No.  SL 3152

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is      October 1, 1976    Endorsement No.   9


It is hereby agreed that the following are added as additional named
insured's under this policy:

        Auxiliary Bishop Gerald J. Ryan

        Auxiliary Bishop James J. Daly


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:    May 24, 1977              ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                    By *Louis E. Metzger Jr.*

ENDORSEMENT                    ADDITIONAL PREMIUM $ _ _ _ _

                               RETURN PREMIUM $ _ _ _ _


Attached to and forming part of Policy   /   Certificate No.  SL 3152

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is  October 1, 1976      Endorsement No. 8


It is agreed that the "Named Insured" includes all insureds and
Additional Interests Named in Certificate of Insurance applying
to Automobile Liability for the Personal Automobiles of Priests
and Nuns.  These Certificates shall be on file with Gallagher Bassett
of New York, Inc.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:     March 17, 1977          ARTHUR J. GALLAGHER & CO.

                                   By _Louis E. Metzger, Jr_

ENDORSEMENT                                ADDITIONAL PREMIUM $ _ _ _ _

                                           RETURN PREMIUM $ _ _ _ _

Attached to and forming part of Policy    /    Certificate No.    SL 3152

in the name of    Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is  October 1, 1976      Endorsement No.    7

It is further agreed that with respect to the operations of hospitals
this policy does not apply to Liability arising out of professional
medical services rendered or failure to be rendered.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:        March 17, 1977          ARTHUR J. GALLAGHER & CO.

                                      By _Louis E. Melyar, Jr_

ENDORSEMENT                                          ADDITIONAL PREMIUM $ _ _ _ _

                                                       RETURN PREMIUM $ _ _ _ _


Attached to and forming part of Policy    /    Certificate No.    SL 3152

in the name of    Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is    October 1, 1976    Endorsement No.    6


In consideration of the premium charged, it is agreed the following
coverages are added to the policy:

| Location | Coverage and Limit |
|---|---|
| 1) Mercy Hospital<br>Rockville Centre, New York | $19,200,000. Business Interruption<br>80% Coinsurance<br>$500,000. Extra Expense |
| 2) St. Francis Hospital<br>Roslyn, New York | $4,700,000. Business Interruption<br>80% Coinsurance<br>$500,000. Extra Expense |
| 3) St. Mary of the Angels Home<br>Convent Road<br>Syosset, Nassau County, New York | $40,000. Rental Income<br>100% Coinsurance |
| 4) Catholic Press Association<br>53 North Park Avenue<br>Rockville Centre, New York | $60,000. Extra Expense<br>80% Coinsurance · |


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:   March 17, 1977                    ARTHUR J. GALLAGHER & CO.

                                           By _Lewis E. Metzger Jr_

ENDORSEMENT                          ADDITIONAL PREMIUM $ _ _ _ _

                                     RETURN PREMIUM $ _ _ _ _


Attached to and forming part of Policy   /   Certificate No.   SL 3152

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is   October 1, 1976      Endorsement No. 5


In consideration of the premium charged, it is agreed the policy is extended to include the following coverage:

### Automobile Non Ownership

Notwithstanding anything contained herein to the contrary, this policy is extended to include Non Ownership Liability but only to provide coverage for owners of automobiles while being used in connection with activities being sponsored by the Named Insured.

It is further agreed this extension shall be excess of any other valid and collectible insurance.

The Loss Limitation hereon is respect of Automobile Bodily Injury/ Property Damage remains at $200,000. Combined Single Limit from ground.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:       March 17, 1977          ARTHUR J. GALLAGHER & CO.

                                     By _Lewis E. Metzger, Jr._

ENDORSEMENT                                    ADDITIONAL PREMIUM $ _ _ _ _

                                               RETURN PREMIUM $ _ _ _ _


Attached to and forming part of Policy    /    Certificate No.    SL 3152

in the name of    Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is    December 24, 1976    Endorsement No.    4


In consideration of the premium charged, it is agreed the Money and
Securities limit on the following four (4) locations is increased for the
periods:

        December 24, 1976 through December 27, 1976
        December 24, 1977 through December 27, 1977 and
        December 24, 1978 through December 27, 1978

| Location | Limit |
|---|---|
| R.C.C. of St. Joseph<br>130 Fifth Street<br>Garden City, New York | $50,000. |
| R.C.C. of St. Anne<br>70 Adams Street<br>Garden City, New York | $45,000. |
| R.C.C. Christ the King<br>Indian Head Road<br>Commack, New York | $30,000. |
| R.C.C. of St. Patrick<br>400 Main Street<br>Huntington, New York | $50,000. |


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:    March 17, 1977          ARTHUR J. GALLAGHER & CO.

                                  By _Louis E. Metzger, Jr._

ENDORSEMENT                          ADDITIONAL PREMIUM $ _ _ _ _

                                     RETURN PREMIUM $ _ _ _ _


Attached to and forming part of Policy   /   Certificate No.   SL 3152

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is   October 1, 1976   Endorsement No.   3


It is hereby agreed that the following are named as Additional Named
Insureds under this policy:

   Bishop John R. McGann

   Auxiliary Bishop Vincent J. Baldwin

   Bishop Emeritus Walter P. Kellenberg


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:   March 17, 1977          ARTHUR J. GALLAGHER & CO.

                                 By *Louis E. Metzger, Jr.*

## ENDORSEMENT

Attached to and forming part of Policy  /  Certificate No.   SL 3152

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is   October 1, 1976          Endorsement No. 2


IT IS AGREED that the first annual installment premium is  $193,000.00        based
on total values of   $415,164,310.00        and future annual installments will be
based on anniversary date values calculated as follows:

       Going In Values

       plus (a)  Additions
       less  (b)  Deletions
       plus (c)  the reconstruction cost variation as
                provided by Gallagher Bassett
                Insurance Service


Hereon:        90%     part of 100%

          Licensed Lloyd's    76.50%     $147,645.00


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:        March 17, 1977          ARTHUR J. GALLAGHER & CO.

                                  By Louis E. Metzger, Jr

Attached to and forming part of Policy / Certificate No.   SL 3152

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1976 Endorsement No. 1

## ERRORS AND OMISSIONS

IT IS AGREED that Section II Agreement C is amended to include the following:

The underwriters agree, subject to the terms and conditions hereof, to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER agreed:

(1)   There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to October 1, 1976 (hereinafter referred to as the "Retroactive Date").

(2)   In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemeteries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:     March 17, 1977          ARTHUR J. GALLAGHER & CO.

By _Louis E. Metzger, Jr_

# GALLAGHER, BRUNTON & VEREKER LIMITED

INTERNATIONAL INSURANCE BROKERS

D W. L. M. VEREKER, *(Managing Director)*
D. J M. ARNOLD
R. E GALLAGHER, *(U.S.A.)*
J. P. GALLAGHER, *(U.S.A.)*
J. J. SHAW

**DOWGATE HILL HOUSE**
**DOWGATE HILL**
**LONDON, EC4R 2SB**

Telephone: 01-248 9901
Cables and Telegrams:
HILCOLLOW, LONDON
Telex: 883422
Registered No. 1193013 England

Arthur J. Gallagher & Co.,
The Tower,
Golf Road,
Rolling Meadows,
Illinois 60008,
U.S.A.

Date 24 November 1976

Your Ref.

Our Ref. GHV051176

*SL 3,152 / SLC S163*

## COVER NOTE No.  GHV051176

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:  EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE, AUTO PHYSICAL
DAMAGE, MONEY & SECURITIES, COMPREHENSIVE GENERAL LIABILITY
INCLUDING HOSTS LIABILITY, LIQUOR LIABILITY AND WORKMENS
COMPENSATION AND/OR EMPLOYERS LIABILITY AND/OR OCCUPATIONAL
DISEASE AND MEDICAL PAYMENTS, EMPLOYEE FIDELITY, ERRORS AND
OMISSIONS AND SCHOOL BOARD LIABILITY.

FORM:  Usual "Archbishop" wording to be agreed.

ASSURED:  The Diocese of Rockville Centre, New York.

PERIOD:  36 months at 1st October 1976

INTEREST:  Covering all real and personal property and other perils as
set out above in respect of all operations of the various
Assureds and for their Agencies.

SUM INSURED:  $400,000 each and every loss and/or occurrence
$500,000 in the aggregate annually in respect
of the Assured's retention.

But only to pay the excess of:

$  100,000 each and every loss and/or occurrence
$1,200,000 in the aggregate annually.

The loss limits in respect of the self insured fund and
within the limits of this insurance shall not exceed:-

| | |
|---|---|
| Money & Securities: | $ 25,000 each and every occurrence |
| Flood: | $250,000 in the aggregate annually |
| P.L./P.D: | $200,000 any one occurrence CSL PL/PI |
| W.C.A./E.L./O.D: | $100,000 any one occurrence |
| Medical Payments: | $  5,000 any one person |
| Employee Fidelity: | $ 25,000 any one loss |
| Errors & Omissions and | $200,000 any one occurrence |
| School Board Liability: | and in the aggregate annually. |

SITUATION:   U.S.A.

CONDITIONS:  Physical Damage cover on replacement cost basis with
             $100 deductible to apply to all losses from Physical
             Damage perils except Auto Comprehensive.

             Servicing by Gallagher Bassett at Assured's expense.

             30 Days Cancellation Clause at anniversary date only.

             Loss figures to underwriters quarterly and risk to be
             reviewed by underwriters 60 days before anniversary date.

PREMIUM:     $579,000 payable one third annually.
             Adjustable on usual basis.


HEREON 90%
EFFECTED
WITH:

| | |
|---|---:|
| Lloyd's Underwriters | 76.50% |
| Excess Insurance Company Limited | 6.00% |
| Bellefonte Insurance Company | 4.50% |
| Terra Nova Insurance Company Limited | 3.00% |
| | 90.00% |

In the name of: **Diocese of Rockville** ...

XXXSXEREBXXXXXXXRDXXXXXXXXXXXXXXXXXXXXXX

In consideration of the payment of the sum of $ 187,237.07.
due hereon at 1st October, 1978 it is hereby understood and
agreed that in respect of losses and/or occurrences occurring on
or after 1st October, 1978 the participation insured by
this policy is increased from 74.92% to 75.68% and the underwriters
subscribing to this policy are as signed hereon.

The following underwriters
totalling 84.09% of 90.00%
of whole accept liability
in respect of business
classified by the Committee
of Lloyds as short tail business.

Definitive Numbers of Syndicate and Amount Percentage or
Proportion of the Total Amount shared between the
Members of these Syndicates.

| AMOUNT PERCENTAGE OR PROPORTION PER CENT | BROKER 650 | LPSO NO & DATE 63701 25 1 79 | PAGE 1 |
|---|---|---|---|
| | SYNDCAT | UNDERWRITERS REF | |
| 12.9500000 | 210 | A0080248 | |
| 1.8500000 | 212 | A0080248 | |
| 7.4000000 | 122 | 740C | |
| 5.9200000 | 119 | 740C | |
| 1.4800000 | 546 | 740C | |
| 4.4400000 | 404 | 317NS71334C | |
| 3.3300000 | 854 | 50413081 | |
| 1.1100000 | 910 | 50413081 | |
| 4.0700000 | 56 | R0008355X | |
| 2.9600000 | 47 | 049828PXX | |
| 4.8100000 | 231 | 531X0845K | |
| 1.8500000 | 105 | 17L2152 | |
| 1.4800000 | 782 | 5N24255 | |
| 2.9600000 | 584 | A4350 | |
| .7400000 | 205 | 4280 | |
| 1.8500000 | 665 | 52119 | |
| 1.1100000 | 471 | FLX062 | |
| 2.9600000 | 510 | X090 | |
| 1.8500000 | 15 | 02806498 | |
| 2.2200000 | 640 | M8B3C101 | |
| 1.4800000 | 977 | 63AX916 | |
| 1.1100000 | 33 | 10386784 | |
| 1.1100000 | 464 | 01220057 | |
| .9300000 | 235 | 904 | |
| .9300000 | 484 | 0SA20509 | |

| NO OF SYND | TOTAL LINE |
|---|---|
| 35 | 84.0500000 |

The following underwriters
totalling 84.09% of 90% of
whole in respect of business
other than short tail business.

Definitive Numbers of Syndicate and Amount Percentage or
Proportion of the Total Amount shared between the
Members of these Syndicates

| AMOUNT PERCENTAGE OR PROPORTION PER CENT | BROKER 650 | LPSO NO & DATE 63700 25 1 79 | PAGE 1 |
|---|---|---|---|
| | SYNDCAT | UNDERWRITERS REF | |
| 12.9500000 | 210 | A0080248 | |
| 1.8500000 | 212 | A0080248 | |
| 7.4000000 | 122 | 740C | |
| 5.9200000 | 119 | 740C | |
| 1.4800000 | 546 | 740C | |
| 4.4400000 | 404 | 475N5711C6C | |
| 3.3300000 | 854 | 50413081 | |
| 1.1100000 | 910 | 50413081 | |
| 4.0700000 | 56 | R0008355X | |
| 2.9600000 | 47 | 049828PXX | |
| 4.8100000 | 231 | 531X0845K | |
| 1.8500000 | 105 | 17L2152 | |
| 1.4800000 | 782 | 5N24255 | |
| 2.9600000 | 584 | A4550 | |
| .7400000 | 205 | 4280 | |
| 1.8500000 | 665 | 52119 | |
| 1.1100000 | 471 | ALX486 | |
| 2.9600000 | 510 | X090 | |
| 1.8500000 | 15 | 02806498 | |
| 2.2200000 | 640 | M8B3C101 | |
| 1.4800000 | 148 | 730X2282 | |
| 1.1100000 | 33 | 10386784 | |
| 1.1100000 | 464 | C1220057 | |
| .9300000 | 235 | 904 | |
| .9300000 | 484 | CC220509 | |

| NO OF SYND | TOTAL LINE |
|---|---|
| 35 | 84.0500000 |

All other terms and conditions remain unaltered.

DATED: 1 JAN 1979

OR ENDORSEMENT LLOYD'S POLICY

**Now Know Ye that** We the several Underwriting Members of Lloyd's and [...] Heirs, Executors and Administrators, and [...] members in the after-mentioned List of Executors or Administrators or to indemnif[...] [...] own part and not one for another, our made after such loss, damage or liability [...] [...] [...] good to the Assured or to the Assured's which is in the Table set opposite the definit[...] number of the Syndicate [...] [...] [...] [...] each of us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the total sum insured hereunder the List of Underwriting Members of Lloyd's referred to above shown their respective Underwriter is a Member AND FURTHER THAT incorporated in and to form part of this policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has subscribed his name on behalf of each of us.

(NM)

LLOYD'S POLICY SIGNING OFFICE.

*General Manager.*

ENDORSEMENT forming part of ~~HV~~ 051176

In the name of: Roman Catholic ~~...~~ ville Centre etal

~~XXIX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~

In consideration of the payment of the sum of $ 171,624.49
due hereon at 1st October 1977 it is hereby understood and
agreed that in respect of losses and/or occurrences occurring on
or after 1st October 1977 the participation insured by this
policy is reduced from 76.50% to 74.92% and the underwriters
subscribing to this policy are as signed hereon.

The Underwriters set out below
accept percentages totalling
81.15% of 80.00% of whole in
respect of claims relating to
section T 1004 x 21.4.77.

The Underwriters set out below
accept percentages totalling
81.15% of 80.00% of whole in
respect of claims relating to
section T 1003 x 21.4.77.

65750 * 29 DEC 1977

65751 * 29 DEC 1977

The Underwriters set out below
accept percentages totalling
100.00% of 10.00% of whole.

63615 * 29 DEC 1977
63616 * 29 DEC 1977

| AMOUNT PERCENTAGE OR PROPORTION PER CENT | BROKER | LPSO NO & DATE | PAGE |
|---|---|---|---|
| | 650 | 63615 | 29 | 12 | 77 | 1 |
| 100 | SYNDICATE 649 | 60CR2920 UNDERWRITER'S REF. | |
| THE LIST OF UNDERWRITING MEMBERS OF LLOYDS IS NUMBERED 1977/12 | | TOTAL LINE | |
| | 1 | 100 | |

All other terms and conditions remain unaltered.

DATED: 4th January 1978

HINTON HILL & COLES, LIMITED.

**Now Know Ye that** We the Underwriting Members in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators, and in respect of his due proportion only, to pay or make good to the Assured or to the Assured's Executors or Administrators or to indemnify him or them against all such loss, damage or liability as herein provided, each according to his share of the said Loss in the said List, of the Amount, Percentage or Proportion of the each of us, the Underwriters, is liable shall be ascertained by reference to his share, and shown in the said List of the Syndicate of which such Underwriter is a Member AND FURTHER total sum insured hereunder which is in the Table set opposite the definitive number of the Syndicate and Shares therein, is deemed to be incorporated in and is THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicate and Shares therein, is deemed to be incorporated in and is form part of this policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office will be furnished to the their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has subscribed his name on behalf of each of us

LLOYD'S POLICY SIGNING OFFICE.

(NM)

*[signature]*

General Manager.

| Definitive Numbers | | AMOUNT, PERCENTAGE OR PROPORTION | BROKER | L.P.S.O. NO. & DATE | |
|---|---|---|---|---|---|
| | | PER CENT | 650 | 65750 | 29 12 77 |
| | | | SYN-DICATE | UNDERWRITER'S REF | |
| | | 13.20 | 210 | 0030248R | |
| | | 1.88 | 212 | 0030248R | |
| | | 7.54 | 122 | 740C | |
| | | 7.54 | 119 | 740C | |
| | | 7.54 | 404 | 375NR71106C | |
| | | 3.01 | 854 | 504130B1 | |
| | | 1.51 | 910 | 504130B1 | |
| | | 3.77 | 918 | LSL0109F7420 | |
| | | 4.15 | 56 | R0008355X | |
| | | 4.90 | 231 | 531X0845J | |
| | | 1.51 | 782 | 5N24255 | |
| | | 3.01 | 584 | N4550 | |
| | | 3.01 | 47 | 049828PXX | |
| | | 2.26 | 640 | M883C041 | |
| | | 1.88 | 665 | 52088 | |
| | | 1.13 | 471 | FLD062 | |
| | | 1.51 | 510 | X090 | |
| | | 1.13 | 33 | 103B6784 | |
| | | .38 | 205 | 4280 | |
| | | 1.88 | 570 | 368XHLN | |
| | | 1.13 | 977 | 630X916 | |
| | | 1.88 | 109 | 17B212R1XS | |
| | | 1.13 | 464 | 01220057 | |
| | | .94 | 235 | 956 | |

| AMOUNT, PERCENTAGE OR PROPORTION | BROKER | L.P.S.O. NO. & DATE | |
|---|---|---|---|
| | 650 | 65750 | 29 12 77 |
| | SYN-DICATE | UNDERWRITER'S REF | |
| .60 | 484 | 05A2050A | |
| 2.26 | 947 | 164E4663888N | |
| .47 | 374 | 996910079S | |

THE LIST OF UNDERWRITING MEMBERS OF LLOYDS IS NUMBERED 1977/12

| NO SYND | TOTAL LINE |
|---|---|
| 27 | 81.15 |

| AMOUNT PERCENTAGE OR PROPORTION | BROKER | L.P.S.O. NO. & DATE | |
|---|---|---|---|
| PER CENT | 650 | 65751 | 29 12 77 |
| | SYN-DICATE | UNDERWRITER'S REF | |
| 13.20 | 210 | 2010248R | |
| 1.88 | 212 | 2010248R | |
| 7.54 | 122 | 740C | |
| 7.54 | 119 | 740C | |
| 7.54 | 404 | 475NR71106C | |
| 3.01 | 854 | 50413081 | |
| 1.51 | 910 | 50413081 | |
| 3.77 | 918 | LSL0109F7420 | |
| 4.15 | 56 | R0008355X | |
| 4.90 | 231 | 531X0845J | |
| 1.51 | 782 | 9N24255 | |
| 3.01 | 584 | N4550 | |
| 3.01 | 47 | 049828PXX | |
| 2.26 | 640 | N883C041 | |
| 1.88 | 665 | 52088 | |
| 1.13 | 471 | ALD486 | |
| 1.51 | 510 | X090 | |
| 1.13 | 33 | 103B6784 | |
| .38 | 205 | 4280 | |
| 1.88 | 570 | 368XH1N | |
| 1.13 | 977 | 630X916 | |
| 1.88 | 109 | 17B212R1XS | |
| 1.13 | 464 | 01220057 | |
| .94 | 235 | 956 | |

| AMOUNT PERCENTAGE OR PROPORTION | BROKER | L.P.S.O. NO. & DATE | |
|---|---|---|---|
| | 650 | 65751 | 29 12 77 |
| | SYN-DICATE | UNDERWRITER'S REF | |
| .60 | 484 | 0C220509 | |
| 2.26 | 947 | 164E4663888N | |
| .47 | 374 | 99S91007SS | |

THE LIST OF UNDERWRITING MEMBERS OF LLOYDS IS NUMBERED 1977/12

| NO SYND | TOTAL LINE |
|---|---|
| 27 | 81.15 |

# Schedule

Policy or Certificate No. 650 / GHV 051176 Contract No. (if any)

The name and address of the Assured

Roman Catholic Diocese of Rockville Centre, and all Legal Entities
Therein Over which the same Central Authority Appoints or Controls
the Appointment of the Board of Trustees or Similar Body and Excercises
Direct, Complete and Active Control over the Finances, Properties,
Operations and Activities
50 North Park Avenue
Rockville Centre, New York 11570

The risk and sum insured hereunder

Excess All Risks of Physical Loss or Damage.

Hereon 76.50% part of 100.00% as more particularly described in
the attached wording, which is hereby declared to be
incorporated in and to form part of this policy.

This insurance being for 76.50% part of 100.00% covers it
pro rata proportion of the risks and liability more
particularly described herein.

The Premium
U.S.$147,645.00 part of U.S.$193,000.00 (First annual instalment).

The period of Insurance from **1st October 1976** to **1st October 1979**  12.01 am
                                                                            LST

both days inclusive, and for such further period or periods as may be mutually agreed upon

Dated in   LONDON.                            the   19th October 1977

# GALLAGHER, HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D W. L. M. VEREKER, (*Managing Director*)
D. J. M. ARNOLD
R. L. GALLAGHER, (U.S.A.)
J. P. GALLAGHER, (U.S.A.)
J J. SHAW

**DOWGATE HILL HOUSE**
**DOWGATE HILL**
LONDON, EC4R 2SB

*Telephone:* 01-248 9901
*Cables and Telegrams:*
HILCOLLOW, LONDON
*Telex:* 883422
*Registered No.* 1143013 *England*

Arthur J. Gallagher & Co.,
The Tower,
Golf Road,
Rolling Meadows,
Illinois 60008,
U.S.A.

Date 30 November1976

Your Ref.

Our Ref. GHV051176

## ADDENDUM No. 1 to
## COVER NOTE No. GHV051176

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:   EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE, AUTO PHYSICAL
DAMAGE, MONEY & SECURITIES, COMPREHENSIVE GENERAL LIABILITY
INCLUDING HOSTS LIABILITY, LIQUOR LIABILITY AND WORKMENS
COMPENSATION AND/OR EMPLOYERS LIABILITY AND/OR OCCUPATIONAL
DISEASE AND MEDICAL PAYMENTS, EMPLOYEE FIDELITY, ERRORS
AND OMISSIONS AND SCHOOL BOARD LIABILITY.

ASSURED:   The Diocese of Rockville Centre, New York

PERIOD:   36 months at 1st October 1976.

It is agreed effective 1st October 1976 to add Business Interruption and
Extra Expense in respect of the following hospitals:-

|  | Business Interruption | Extra Expense |
|---|---|---|
| Mercy Hospital Rockville Centre | 80% coinsurance $9,200,000 | $500,000 |
| St. Francis Hospital Roslyn | 80% coinsurance $4,700,000 | $500,000 |

All other terms and conditions remain unaltered.

Information

Total values now $415,164,310.

# GALLAGHER HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M ARNOLD
R. E. GALLAGHER, *(U.S.A.)*
J. P. GALLAGHER, *(U.S.A.)*
J. J. SHAW

**DOWGATE HILL HOUSE**
**DOWGATE HILL**
**LONDON, EC4R 2SB**

Telephone: 01-248 9901
Cables and Telegrams:
HILCOLLOW, LONDON
Telex 883422
Registered No. 1173013 England

Arthur J. Gallahger & Co.,
The Tower,
Golf Road,
Rolling Meadows,
Illinois 60008,
U.S.A.

Date 30 November 1976

Your Ref.

Our Ref. GHV051176

## ADDENDUM No. 2 to
## COVER NOTE No. GHV051176

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:   EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE, AUTO PHYSICAL DAMAGE, MONEY & SECURITIES, COMPREHENSIVE GENERAL LIABILIYT INCLUDING HOSTS LIABILITY, LIQUOR LIABILITY AND WORKMENS COMPENSATION AND/OR EMPLOYERS LIABILITY AND/OR OCCUPATIONAL DISEASE AND MEDICAL PAYMENTS, EMPLOYEE FIDELITY, ERRORS AND OMISSIONS AND SCHOOL BOARD LIABILITY.

ASSURED:   The Diocese of Rockville Centre, New York

PERIOD:   36 months at 1st October 1976

It is agreed effective 1st October 1976 to add rental income on St. Mary of the Angels Home, Syosset, New York.

Loss limit $40,000

All other terms and conditions remain unaltered.

Information

100% coinsurance.

Page No. 2 to Covernote No. GHV 051176 Addendum No. 5 dated 5th October 1977

| | | | |
|---|---|---|---|
| Excess Ins. Co. Ltd. | 7.54% | of 80% | - 6.032. |
| Bellefonte Ins. Co. | 6.03% | of 80% | 4.824 |
| Pine Top Ins. Co. Ltd. | 1.51% | of 80% | 1.208 |
| Terra Nova Ins. Co. Ltd. | 3.77% | of 80% | 3.016 |
| | | | 15.08 |

All other terms and conditions remain unaltered.

# GALLAGHER HINTON & VEREKER LIMITED

INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
R. E. GALLAGHER, *(U.S.A.)*
J. P. GALLAGHER, *(U.S.A.)*
J. J. SHAW

**FOUNTAIN HOUSE**
**125-135 FENCHURCH ST.**
**LONDON, EC3M 5DJ**

Tel 01-629 5861
Telex 8951506
Cables Suee GALVER G
Registered No. 1143013 Engla

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date    5th October 1

Your Ref.

Our Ref.  GHV 051176

## ADDENDUM NO. 5 to
## COVER NOTE No. GHV 051176

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:         EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE.

ASSURED:      The Diocese of Rockville Centre, New York.

PERIOD:       36 months at 1st October 1976.

It is hereby understood and agreed that effective 1st October 1977 the
Sum Insured is amended to read:

SUM INSURED:   $400,000   each and every loss and/or occurrence
               $500,000   in the aggregate annually in respect of
                          the Assured's retention.

               But only to pay the excess of:

               $ 100,000   each and every loss and/or occurrence
               $1,400,000  in the aggregate annually.

It is further understood and agreed that the premium due 1st October 1977
is $209,077.00.

It is further understood and agreed that effective 1st October 1977
the Security is amended to read:

.../...

Page No. 2 to Covernote No. GNV 051176 Addendum No. **5 dated** 5th October 1977

| | | |
|---|---|---|
| Lloyds Underwriters | 81.15% | of 80% |
| Lloyds Underwriters | 100.00% | of 10% |

All other terms and conditions remain unaltered.

# GALLAGHER & ER LIMITED

INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER, (Managing Director)
D. J. M. ARNOLD
R. E. GALLAGHER, (U.S.A.)
J. P. GALLAGHER, (U.S.A.)
J. J. SHAW

**FOUNTAIN HOUSE
125-135 FENCHURCH ST.
LONDON, EC3M 5DJ**

Tel: 01-623 5861
Telex: 3957506
Answer Back GALIVER G
Registered No. 1743013 England

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date    5th October 197

Your Ref.

Our Ref.  GHV C51176

**ADDENDUM NO. 5 to
COVER NOTE No. GHV 051176**

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:       EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE.

ASSURED:    The Diocese of Rockville Centre, New York.

PERIOD:     36 months at 1st October 1976.

It is hereby understood and agreed that effective 1st October 1977 the
Sum Insured is amended to read:

SUM INSURED:  $400,000   each and every loss and/or occurrence
              $500,000   in the aggregate annually in respect of
                         the Assured's retention.

              But only to pay the excess of:

              $ 100,000   each and every loss and/or occurrence
              $1,400,000  in the aggregate annually.

It is further understood and agreed that the premium due 1st October 1977
is $209,077.00.

It is further understood and agreed that effective 1st October 1977
the Security is amended to read:



.../...

# GALLAGHER LONDON LIMITED

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
R. B. GALLAGHER, *(U.S.A.)*
J. P. GALLAGHER, *(U.S.A.)*
J. J. SHAW

INTERNATIONAL INSURANCE BROKERS

**FOUNTAIN HOUSE**
125-135 FENCHURCH ST,
LONDON, EC3M 5DJ

Tel 01-626 5861
Telex 8951566
Cable Bar GALVER G
Registered No. 1193013 England

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date    5th October 1977

Your Ref.

Our Ref. GHV 051176

## ADDENDUM NO. 6 to
## COVER NOTE No. GHV 051176

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:    EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE.

ASSURED:    The Diocese of Rockville Centre, New York.

PERIOD:    36 months at 1st October, 1976.

It is hereby understood and agreed that effective 1st October, 1977 the Loss limitation in respect of Public Liability/Property Damage is increased to $300,000 any one occurrence C.S.L. P.L./P.D.

Additional Premium $20,000 annual.

All other terms and conditions remain unaltered.



RECEIVED
OCT 11 1977
Arthur J. Gallagher
and Company

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

INTERNATIONAL INSURANCE BROKERS

D. W. L. M VEREKER. *(Managing Director)*
D. J. M ARNOLD
R. E. GALLAGHER, *(USA)*
J. P. GALLAGHER, *(USA)*
R. B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE**
125/135 FENCHURCH STREET
LONDON, EC3M 5DJ

Telephone. 01-628 5861
Cables & Telegrams
CALVER C. LONDON
Telex 8951508
Registered No. 1193013 England

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date       10th January, 197

Your Ref.

Our Ref.   GHV 051176

### ADDENDUM NO. 7 to
### COVER NOTE No.    GHV 051176

We confirm that we have effected the following insurance in accordance with your instructions:

Type:          EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE.

Assured:       The Diocese of Rockville Centre, New York.

Period:        36 months at 1st October, 1976.

It is hereby noted and agreed that effective 1st January, 1978 the loss
limitation hereon in respect of Workmens Compensation Act/Employers
Liability/Occupational Disease is increased to $150,000 any one occurrence.

Additional Premium: $20,000 annual. *45,000 = 9 mos.*

*LL 74.937%*     *Excess    6,032*      *= 90%*
                 *Billed    4,824*      *13,500*
                 *Pints T   1,208*
                 *Tran m/a  3,016*
                           *15,03*

All other terms and conditions remain unaltered.

*JAN. 1, 1978    20,000.*
*TL             x .748*
*OCT. 1, 1978   14,960.*

*LL     74.937%   $ 11,208.63*
*Excess  6,037%    9,065.39*
*Billed  4,824%      721.67    $2255.97*
*Fin TP. 1,208%      180.72*
*Terrin  3,016%      451.19*

*11,208.03*
*2,255.97*
*13,464.00  = 90%*
*Cantin 10%  1,496.00*

Subject to full terms and conditions of policy or treaty wording to be issued subsequently. *14,960.00*

# GALLAGHER HINTON & VERETER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER, (Managing Director)
D. J. M. ARNOLD
R. E. GALLAGHER, (USA)
J. P. GALLAGHER, (USA)
R. B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE
125/135 FENCHURCH STREET
LONDON, EC3M 5DJ**

Telephone 01-624 3861
Cables & Telegrams
CALVER C. LONDON
Telex 8951328
Registered No 1193513 England

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date   11th April, 1978.

Your Ref.

Our Ref. GHV 051/176

## ADDENDUM NO. 8 to
## COVER NOTE No. GHV 051/176

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:        EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE.

ASSURED:     The Diocese of Rockville Centre, New York.

PERIOD:      36 months at 1st October, 1976.

It is hereby noted and agreed that effective 7th April, 1978 the following
is added as an additional assured:

The City of New York Department of Sanitation
in respect of: St. Agnes Academic High School,
13-20 124th Street,
College Point,
Queens, N.Y.

In accordance with the Hold Harmless Agreement entered into between the
Assured and the City.

All other terms and conditions remain unaltered.



# GALLAGHER HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D W L M VEREKER. *(Managing Director)*
D J M ARNOLD
R E GALLAGHER.*(USA)*
J P GALLAGHER, *USA*
R B OWLES
J. J SHAW

**FOUNTAIN HOUSE**
**125/135 FENCHURCH STREET**
**LONDON, EC3M 5DJ**

*Telephone* 01-676 5861
*Cables & Telegrams*
CALVER C. LONDON
*Telex* 8954506
*Registered No* 1193243 England

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date 28th September, 197

Your Ref.

Our Ref. GHV 051176

## ADDENDUM NO. 9 to
## COVER NOTE No. GHV 051176

We confirm that we have effected the **following** insurance in accordance with your instructions

ASSURED:      The Diocese of Rockville Centre, New York.

PERIOD:       36 months at 1st October, 1976.

It is hereby understood and agreed that effective 1st October, 1978 the Sum Insured is amended to read:

SUM INSURED:   $400,000   each and every loss and/or occurrence
               $500,000   in the aggregate annually in respect of
                          the Assured's retention.

               But only to pay the excess of:

               $ 100,000   each and every loss and/or occurrence
               $1,950,000  in the aggregate annually.

It is further understood and agreed that the premium due 1st October, 1978 is $247,403.00.

It is further understood and agreed that effective 1st October, 1978 the Security is amended to read:

| | | |
|---|---|---|
| 13,161.03 = 5.3,287% | 5.92% of 90% | Bellefonte Ins. Co. |
| 3,295.41 = 1.332 | 1.48% of 90% | Pine Top Ins. Co. Ltd. |
| 8,238,50 = 3.330 | 3.70% of 90% | Terra Nova Ins. Co. Ltd. |
| 8,238.52 = 3.330 | 3.70% of 90% | Excess Ins. Co. Ltd. |
| 2,471.56 = .999 | 1.11% of 90% | Yasuda Fire & Marine Ins. Co. (UK) Ltd. |
| 5,425.04 = 14.3197% | | |

All other terms and **conditions remain unaltered.**

# GALLAGHER HINTON & VEREKER LIMITED

## INTERNATIONAL INSURANCE BROKERS

D W L M VEREKER.,(Managing Director)
D J M ARNOLD
R E GALLAGHER.,(USA)
J. P GALLAGHER.,(USA)
R B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE
125/135 FENCHURCH STREET
LONDON, EC3M 5DI**

Telephone 01 629 5861

Cables & Telegrams
CALVER G. LONDON

Telex 8951568

Registered No 1193013  England

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date 28th September, 1978

Your Ref.

Our Ref. GHV 051176

## ADDENDUM NO. 9 to
## COVER NOTE No. GHV 051176

We confirm that we have effected the **following insurance in accordance** with your instructions

ASSURED:    The Diocese of Rockville Centre, New York.

PERIOD:     36 months at 1st October, 1976.

It is hereby understood and agreed that effective 1st October, 1978 the
Sum Insured is amended to read:

SUM INSURED:   $400,000  each and every loss and/or occurrence
               $500,000  in the aggregate annually in respect of
                         the Assured's retention.

But only to pay the excess of:

$  100,000  each and every loss and/or occurrence
$1,950,000  in the aggregate annually.

It is further understood and agreed that the premium due 1st October, 1978
is $247,403.00.

It is further understood and agreed that effective 1st October, 1978 the
Security is amended to read:   = 15.68 1% = $187,237.06

84.09%  of 90%  Lloyds Underwriters.

| 12.95% | 210 | 1.85% | 212 | 7.40% | 122 |
|--------|-----|-------|-----|-------|-----|
| 5.92%  | 119 | 1.48% | 546 | 4.44% | 404 |
| 3.33%  | 854 | 1.11% | 910 | 4.07% | 56  |
| 2.96%  | 47  | 4.81% | 231 | 1.85% | 109 |
| 1.48%  | 782 | 2.96% | 584 | 0.74% | 205 |
| 1.85%  | 665 | 1.11% | 471 | 2.96% | 510 |
| 1.85%  | 15  | 2.22% | 640 | 1.48% | 977 |
| 1.11%  | 33  | 1.11% | 464 | 0.93% | 235 |
| 0.93%  | 484 | 2.22% | 947 | 0.74% | 342 |
| 1.11%  | 570 | 0.46% | 374 | 0.59% | 598 |
| 0.15%  | 453 | 1.48% | 582 | 0.37% | 518 |
| 0.37%  | 661 | 3.70% | 918 |       |     |

RECEIVED OCT 3 1978 Arthur J. Gallagher

All other terms and conditions remain unaltered

# GALLAGHER HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D W. L. M. VEREKER. (Managing Director)
D. J. M. ARNOLD
R. E. GALLAGHER, (USA)
J. P. GALLAGHER, (USA)
R. B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE**
**125/135 FENCHURCH STREET**
**LONDON, EC3M 5DJ**

Telephone 01-8245 5861
Cables & Telegrams
CALVER C. LONDON
Telex 8951806
Registered No 1193015 England

Date 20th December, 197

Your Ref.

Our Ref. GHV 051/176

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois 60008,
U.S.A.

## ADDENDUM No. 10 to
## COVER NOTE No. GHV 051/176

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:           The Diocese of Rockville Centre, New York.

PERIOD:            36 months at 1st October, 1976.

It is hereby noted and agreed to increase sub limit in respect
Money and Securities to $50,000 for the period 23rd December, 1978
to 2nd January, 1979 for

                       R.C.C. of St. Barnabas
                       Bellmore,
                       New York.

All other terms and conditions remain unaltered.



# GALLAGHER HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER. *(Managing Director)*
D. J. M. ARNOLD
R. E. GALLAGHER, *(USA)*
J. P. GALLAGHER, *USA)*
R. B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE
125/135 FENCHURCH STREET
LONDON, EC3M 5DJ**

*Telephone* 01- 626 5861
*Cables & Telegrams*
CALVER C. LONDON
*Telex* 8951508
*Registered No* 1193013 *England*

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road, Rolling Meadows,
Illinois, 60008, U.S.A.

*Date* 6th March, 1979.
*Your Ref.*
*Our Ref.*  GHV 051/176

### ADDENDUM No. 11 to
### COVER NOTE No. GHV 051/176

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:          The Diocese of Rockville Centre, New York.

PERIOD:           36 months at 1st October, 1976.

It is hereby noted and agreed that effective 1st October, 1978 the loss
limitations in respect of the Self Insured Fund and within the limits of
this insurance are amended as follows:

|  |  |
|---|---|
| Auto Liability: | $100,000 any one occurrence C.S.L. |
| W.C.A./E.L./O.D.: | $100,000 any one occurrence |

R.P.  $5,000  annual

All other terms and conditions remain unaltered.

# GALLAGHER HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER. *(Managing Director)*
D. J. M. ARNOLD
R. E. GALLAGHER.*(USA)*
J. P. GALLAGHER.*(USA)*
R. B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE**
**125/135 FENCHURCH STREET**
**LONDON, EC3M 5DI**

Telephone  01 - 626 5861

Cables & Telegrams
GALVER G. LONDON

Telex  8851536

Registered No. 1193013 England

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008, U.S.A.

Date  29th March, 1979.

Your Ref.

Our Ref.    GHV 051/176

### ADDENDUM No. 12 to
### COVER NOTE No. GHV 051/176

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:        The Diocese of Rockville Centre, New York.

PERIOD:         36 months at 1st October, 1976.

It is hereby understood and agreed that effective 1st October, 1978 the Loss
Limitation in respect of Public Liability/Property Damage is reduced to
$200,000 any one occurrence C.S.L. P.L./P.D.

All other terms and conditions remain unaltered.



# GALLAGHER HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER. *(Managing Director)*
D. J. M. ARNOLD
R. E. GALLAGHER, *U.S.A.*
J. P. GALLAGHER, *U.S.A.*
R. B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE**
**125/135 FENCHURCH STREET**
**LONDON, EC3M 5DJ**

Telephone 01-626 5881
Cable & Telegrams:
CALVER C. LONDON
Telex 885/1508
Registered No. 1183-013 England

Date  5th April, 1979.

Your Ref.

Our Ref.  GHV 051/176

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road, Rolling Meadows,
Illinois, 60008, U.S.A.

### ADDENDUM No. 13 to
### COVER NOTE No. GHV 051/176

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:        The Diocese of Rockville Centre, New York.

PERIOD:         36 months at 1st October, 1976.

It is hereby noted and agreed effective 4th April, 1979 the limit in respect of Employee Fidelity is increased to $100,000 any one loss for Maryhaven location only.

Information:  St. Charles Hospital affiliated with above location.

All other terms and conditions remain unaltered.



# GALLAGHER HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D W L.M VEREKER. *(Managing Director)*
D. J. M ARNOLD
R L. GALLAGHER *(USA)*
J. P GALLAGHER *(USA)*
R. B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE**
**125/135 FENCHURCH STREET**
**LONDON, EC3M 5DJ**

Telephone  01 626 5861
Cables & Telegrams
CALVER C. LONDON
Telex  8831556
Registered No. 1183513 England

Date    20th June 1979

Your Ref.

Our Ref.  GHV C51/176

Arthur J. Gallagher & Company,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois 60008,
U.S.A.

### ADDENDUM NO. 14 to
### COVER NOTE No. GHV 051/176

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:    The Diocese of Rockville Centre, New York.

PERIOD:    36 months at 1st October, 1976.

Notwithstanding Addendum No. 13 dated 5th April, 1979 contained herein to
the contrary;

It is hereby noted and agreed effective 4th April, 1979 the limit in respect
of Employee Fidelity is increased to $100,000 any one loss for
St. Charles Hospital and Maryhaven location only.



GRANTED

INTERNATIONAL INSURANCE BROKERS

D W L M VEREKER. *(Managing Director)*
D. J. M ARNOLD
R E GALLAGHER.*(USA)*
J. P. GALLAGHER. *USA)*
R.B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE**
**125/135 FENCHURCH STREET**
**LONDON, EC3M 5DJ**

Telephone 01-626 5861

Cables & Telegrams:
GALVER G. LONDON

Telex 8851508
Registered No. 1193013 *England*

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date   20th July, 1979.

Your Ref.

Our Ref.   GHV 051/176

ADDENDUM No. 14
COVER NOTE No.  GHV 051/176

We confirm that we have effected the following insurance in accordance with your instructions

ASSURED:            The Diocese of Rockville Centre, New York.

PERIOD:             36 months at 1st October, 1976.

It is hereby noted and agreed effective 30th July, 1979 the limit in respect
of Employee Fidelity is increased to $100,000 any one loss for St. Francis
Hospital, Roslyn, New York location only.

All other terms and conditions remain unaltered.



Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

**Roman Catholic Diocese of Rockville Centre**

**Insurance Policy Cover Sheet**

|  |  |
|---|---|
| Insurer(s): | Underwriters at Lloyd's |
|  | London Market Companies |
| Policy number(s): | SL 3161 |
|  | SLC 5172 |
| Inception date: | 10/1/1976 |
| Term at issuance: | 1 year |
| Page count: | 9 |
| Contents: | Slip- 2 pgs |
|  | Excess Umbrella Liability form- 4 pgs |
|  | Endorsement- 3 pgs |

March 15

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-3)

| ITEM | NUMBER | SL 3161 |
|---|---|---|

**1**

*Name of Assured*
Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein
Over which the same Central Authority Appoints or Controls the Appointment
of the Board of Trustees or Similar Body and Exercises Direct, Complete
and Active Control over the Finances, Properties, Operations and Activities
50 North Park Avenue
Rockville Centre, New York 11570

**2**
EFFECTIVE ☒ 12:01 A.M. BOTH DAYS AT
FROM ☐ 12:00 NOON STANDARD TIME
October 1, 1976 TO October 1, 1977

**3**

Acting upon your instruction, we have
effected the insurance with ➡ UNDERWRITERS AT LLOYD'S, LONDON 48.00%

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon: 48.00% Part of 100% of: | | Flat | $15,000.00 |
| | | Hereon: | $ 7,200.00 |
| $ 5,000,000. Any one Accident or Occurrence | Excess Umbrella Liability Excluding E.R.I.S.A. Liability | | |
| But Only to Pay Excess of: | | | |
| $10,000,000. Any one Accident or Occurrence | | | |
| Which in turn in excess of Primary Limits as schedule or $50,000. on uninsured perils. | | | |

AUDIT TOTAL CHARGED

**5**
SPECIAL CONDITIONS

As per forms attached.

Nuclear Incident Exclusion Clause-Liability-Direct (Broad).

**6**
Service of Suit Clause –
Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, Illinois 60603
or Mendes & Mount, 27 William Street, New York, New York 10005

In witness whereof this covernote has been signed at Rolling Meadows, Illinois this 15 day of March

THIS CLAUSE VOID

SLC 5172

X Umbrella 5 x of 10

Eason Printing Co. Chicago

ENDORSEMENT

ADDITIONAL PREMIUM $ _____

RETURN PREMIUM $ _____

Attached to and forming part of Policy / Certificate No. SL 3161

In the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1976    Endorsement No. 3

It is hereby agreed that the following are added as additional named

Insured's under this policy:

Auxiliary Bishop Gerald J. Ryan

Auxiliary Bishop James J. Daly

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:        May 24, 1977                    ARTHUR J. GALLAGHER & CO.(ILLINOIS)

By _Louis E. Metzger Jr._

ENDORSEMENT

ADDITIONAL PREMIUM $ _ _ _ _

RETURN PREMIUM $ _ _ _ _

Attached to and forming part of Policy  /  Certificate No. SL 3161

In the name of  Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1976      Endorsement No.  2

 

It is hereby agreed that the following are named as Additional
Named Insureds under this policy:

    Bishop John R. McGann

    Auxiliary Bishop Vincent J. Baldwin

    Bishop Emeritus Walter P. Kellenberg

 

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  March 15, 1977

ARTHUR J. GALLAGHER & CO.

By _Louis E. Metzger, Jr_

## ENDORSEMENT

Attached to and forming part of Policy   /   Certificate No.   SL 3161

In the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1976   Endorsement No. 1

### ERRORS AND OMISSIONS

IT IS AGREED that Section II Agreement C is amended to include the following:

The underwriters agree, subject to the terms and conditions hereof, to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER agreed:

(1)   There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to October 1, 1976 (hereinafter referred to as the "Retroactive Date").

(2)   In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemeteries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:   March 15, 1977        ARTHUR J. GALLAGHER & CO.

By _Louis E. Metzger, Jr_

March 15, 1977

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SL/COS/CP)

NUMBER **SL C    5172**

### 1

**Name of Assured**
Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein
Over which the same Central Authority Appoints or Controls the Appointment
of the Board of Trustees or Similar Body and Exercises Direct, Complete
and Active Control over the Finances, Properties, Operations and Activities
50 North Park Avenue
Rockville Centre, New York 11570

### 2

EFFECTIVE ☒ 12.01 A.M.    BOTH DAYS AT
FROM ☐ 12.00 NOON    STANDARD TIME

October 1, 1976    TO    October 1, 1977

### 3

Acting upon your instruction, we have effected the insurance with.

| NAME OF INSURERS | | AMOUNT OR PERCENT |
|---|---|---|
| Turegum Ins Co | | 15.00% |
| Unionamerica Ins Co Ltd | 50%) | 30.00% |
| Unionamerica Ins Co Ltd "B" A/C | 50%) | |
| North Atlantic Ins Co Ltd | | 6.00% |
| Yasuda F&M Ins Co (UK) Ltd | | 6.00% |
| Stronghold Ins Co Ltd | | 30.00% |
| Excess Ins Co Ltd | | 3.00% |
| Mentor Ins Co (UK) Ltd | | 2.00% |
| | | 52.00% |

### 4

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon: 52.00% Part of 100% of: | | Flat | $15,000.00 |
| | | Hereon: | $ 7,800.00 |

Subject to the same forms, terms,
conditions and endorsements as more
particularly set forth in Cover Note
No. SL 3161

AUDIT                                                          TOTAL CHARGED

SPECIAL CONDITIONS

### 5

### 6

THIS CLAUSE VOID

ARTHUR J. GALLAGHER & CO.

By _____

Eason Printing Co. Chicago

## EXCESS UMBRELLA LIABILITY

NAMED ASSURED: As stated in Item 1 of the Declarations forming a part
hereof

Roman Catholic Diocese of Rockville Centre, etal

and/or subsidiary, associated, affiliated companies or owned and controlled
companies as now or hereafter constituted and of which prompt notice has
been given to underwriters (hereinafter called the "Named Assured").

### INSURING AGREEMENTS

1. COVERAGE

   Underwriters hereby agree, subject to the limitations, terms and
   conditions hereinafter mentioned, to indemnify the Assured for all sums
   which the Assured shall be obligated to pay by reason of the liability

   (a)   imposed upon the Assured by law, or

   (b)   assumed under contract or agreement by the Named Assured
         and/or any officer, director, stockholder, partner or employee
         of the Named Assured, while acting in his capacity as such.

   for damages on account of: -

        (i)    Personal Injuries

        (ii)   Property Damage

        (iii)  Advertising Liability

   caused by or arising out of each occurrence happening anywhere in the
   world, and arising out of the hazards covered by and as defined in the
   underlying Umbrella policies and issued by the Insurers stated in Item 2
   of the Declarations (hereinafter called the "Underlying Umbrella Insurers").

2. LIMIT OF LIABILITY - UNDERLYING LIMITS

   It is expressly agreed that liability shall attach to the Underwriters only
   after the Underlying Umbrella Insurers have paid or have been held liable
   to pay the full amount of their respective ultimate net loss liability as
   follows: -

        $ (as stated in item          ultimate net loss in all in respect of
          #3 of the                   each occurrence, but
          declarations)

$ (as stated in Item
#4 in the
declarations)

in the aggregate for each annual period
during the currency of this Policy,
separately in respect of Products Liability
and in respect of Personal Injury (fatal or
non-fatal) by Occupational Disease
sustained by any employee of the Assured

and the Underwriters shall then be liable to pay only the excess thereof
up to a further -

$ (as stated In Item
#5 of the
declarations)

ultimate net loss in all respect of each
occurrence - subject to a limit of

$ (as stated in Item
#6 of the
declarations)

in the aggregate for each annual period
during the currency of this policy,
separately in respect of Products Liability
and in respect of Personal Injury (fatal
or non-fatal) by Occupational Disease
sustained by any employees of the Assured.

## CONDITIONS

1.   PRIOR INSURANCE AND NON CUMULATION OF LIABILITY

It is agreed that if any loss covered hereunder is also covered in whole or
in part under any other excess Policy issued to the Assured prior to the
inception date hereof the Limit of Liability hereon as stated in Items 5 and
6 of the Declarations shall be reduced by any amounts due to the Assured
on account of such loss under such prior insurance.

Subject to the foregoing paragraph and to all the other terms and conditions
of this Policy in the event that personal injury or property damage arising
out of an occurrence covered hereunder is continuing at the time of termination
of this Policy Underwriters will continue to protect the Assured for liability
in respect of such personal injury or property damage without payment of
additional premium.

2.   MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE

This Policy is subject to the same terms, definitions, exclusions and conditions
(except as regards the premium, the amount and Limits of Liability and except
as otherwise provided herein) as are contained in or as may be added to the
Underlying Umbrella Policies stated in Item 2 of the Declarations prior to the
happening of an occurrence for which claim is made hereunder.

It is a condition of this Policy that the Underlying Umbrella Policies
shall be maintained in full effect during the currency hereof except for
any reduction of the aggregate limits contained herein solely by payment
of claims in respect of accidents and/or occurrences occurring during the
period of this Policy or by the operation of Condition C of the Underlying
Umbrella Policies.

3.   CANCELLATION

This Policy may be cancelled by the Named Assured or by the Underwriters
or their representatives by mailing written notice to the other party stating
when, not less than sixty (60) days thereafter, cancellation shall be ef-
fective. The mailing of notice as aforesaid by Underwriters or their rep-
resentatives to the Named Assured at the address shown in this Policy
shall be sufficient proof of notice, and the Insurance under this Policy
shall end on the effective date and hour of cancellation stated in the notice.
Delivery of such written notice either by the Named Assured or by the
Underwriters or their representatives shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Assured the Underwriters
shall retain the customary short rate proportion of the premium for the
period this Policy has been in force.

If this Policy shall be cancelled by the Underwriters the Underwriters
shall retain the pro rata proportion of the premium for the period this
Policy has been in force. Notice of cancellation by the Underwriters
shall be effective even though Underwriters make no payment or tender
of return premium.

4.   NOTICE OF OCCURRENCE

Whenever the Assured has information from which they may reasonable
conclude that an occurrence covered hereunder involves injuries or
damage which, in the event that the Assured shall be held liable, is
likely to involve this Policy, notice shall be sent as stated in Item 7 of
the Declarations as soon as practicable, provided however, that failure
to give notice of any occurrence which at the time of its happening did
not appear to involve this Policy, but which, at a later date, would
appear to give rise to claims hereunder, shall not prejudice such
claims.

5.   OTHER INSURANCE

If other valid and collectible insurance with any other Insurer is
available to the Assured covering a loss also covered by this Policy,
other than insurance that is specifically stated to be in excess of this
Policy, the insurance afforded by this Policy shall be in excess of and
shall not contribute with such other insurance.

## DECLARATIONS

ITEM 1    NAMED ASSURED:
Roman Catholic Diocese of Rockville Centre, and all
Legal Entities Therein Over which the same Central
Authority Appoints or Controls the Appointment of the
Board of Trustees or Similar Boay and Excercies Direct,
Complete and Active Control over the Finances, Properties,
Operations and Activities

ITEM 2    UNDERLYING UMBRELLA INSURERS AND POLICIES:
A) Midland Insurance Company UL 388732
B) Underwriters at Lloyd's London MW 23017

ITEM 3    UNDERLYING UMBRELLA LIMITS
(Insuring Agreement 2):

A) $5,000,000.
B) $5,000,000.

ITEM 4    UNDERLYING UMBRELLA AGGREGATE LIMITS
(Insuring Agreement 2):

A) $5,000,000.
B) $5,000,000.

ITEM 5    LIMIT OF LIABILITY
(Insuring Agreement 2):

$5,000,000.

ITEM 6    AGGREGATE LIMIT OF LIABILITY
(Insuring Agreement 2):

$5,000,000.

ITEM 7    NOTICE OF OCCURRENCE
(Condition 4) to:

Arthur J. Gallagher & Co.
Gould Center, Golf Road
Rolling Meadows, Illinois 60008

ATTACHING TO AND FORMING PART OF COVER NOTE NO. SL 3161

DATED:    March 15, 1977

ARTHUR J. GALLAGHER & CO.

By Louis E. Metzger, Jr.

## Roman Catholic Diocese of Rockville Centre

## Insurance Policy Cover Sheet

|                    |                                                        |
| ------------------ | ------------------------------------------------------ |
| Insurer(s):        | Underwriters at Lloyd's<br>London Market Companies     |
| Policy number(s):  | SL 3162<br>SLC 5173                                    |
| Inception date:    | 10/1/1976                                              |
| Term at issuance:  | 1 year                                                 |
| Page count:        | 27                                                     |
| Contents:          | Slips- 2 pgs<br>Cover Note- 25 pgs                     |

DATE ISSUED

March 15, 1977

PREVIOUS NO.

CN 757/776

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

| ITEM | NUMBER **S L** 3162 | |
|---|---|---|
| 1 | **Name of Assured**<br>Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein Over which the same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Excercises Direct, Complete and Active Control over the Finances, Properties, Operations and Activities<br>50 North Park Avenue<br>Rockville Centre, New York 11570 | |

| 2 | EFFECTIVE ☒ 12:01 A.M.  BOTH DAYS AT<br>FROM ☐ 12:00 NOON  STANDARD TIME  October 1, 1976 | **TO** October 1, 1977 |
|---|---|---|

| 3 | Acting upon your instruction, we have effected the insurance with: ➡ | **NAME OF INSURERS**<br><br>UNDERWRITERS AT LLOYD'S, LONDON | **AMOUNT OR PERCENT**<br><br>51.24% |
|---|---|---|---|

| 4 | **AMOUNT**<br>Hereon: 51.24% Part of 100% of:<br><br>$ 5,000,000. Any One Accident or Occurrence<br>But Only to pay Excess of:<br>$15,000,000. Any One Accident or Occurrence<br>Which in turn in Excess of Primary Limits as schedule or $50,000. on uninsured perils<br><br>**AUDIT** | **COVERAGE**<br><br><br><br><br>Excess Umbrella Liability | **RATE**<br>Flat<br>Hereon: | **PREMIUM**<br>$10,000.00<br>$ 5,124.00<br><br><br><br><br><br><br>**TOTAL CHARGED** |
|---|---|---|---|---|

| 5 | **SPECIAL CONDITIONS**<br>As per forms attached.<br><br>Nuclear Incident Exclusion Clause-Liability-Direct (Broad). |
|---|---|

| 6 | Service of Suit Clause -<br>Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, Illinois 60603 or Mendes & Mount, 27 William Street, New York, New York 10005 |
|---|---|

In witness whereof this covernote has been signed at Rolling Meadows, Illinois  this 15 day of March

**NOTICE TO POLICYHOLDER: "This contract is issued, pursuant to Section 445 of the Illinois Insurance Code, by an insurer not authorized and licensed to transact business in Illinois and as such is not covered by the Illinois Insurance Guaranty Fund."**

ARTHUR J. GALLAGHER & CO.

By Louis E. Metzger Jr

Eason Printing Co. Chicago

DATE ISSUED      CONTRACT NO.      PREVIOUS NO.

20-01226-scc   Doc 6-7   Filed 10/01/20   Entered 10/01/20 08:44:55   Exhibit C
March 15, 1977 Part 1 - London Program Policy Compendium   Pg 150 of 226 New

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SL/COS/CN)

| ITEM | | |
|---|---|---|
| | NUMBER **SL C 5173** | |
| 1 | **Name of Assured**<br>Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein Over which the same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Excercises Direct, Complete and Active Control over the Finances, Properties, Operations and Activities<br>50 North Park Avenue<br>Rockville Centre, New York 11570 | |

| 2 | EFFECTIVE ☒ 12:01 A.M.   BOTH DAYS AT<br>FROM ☐ 12:00 NOON   STANDARD TIME | October 1, 1976     **TO**   October 1, 1977 |
|---|---|---|

| 3 | Acting upon your instruction, we have effected the insurance with: ➡ | NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|---|---|
| | | Dominion Ins Co | 14.93% |
| | | Turegum Insurance Co | 9.96% |
| | | Terra Nova Ins Co | 4.98% |
| | | London & Edinburgh General Ins Co Ltd | 3.96% |
| | | Lexington Ins Co | 14.93% |
| | | | 48.76% |

| 4 | AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|---|
| | Hereon: 48.76% Part of 100% of:<br><br>Subject to the same forms, terms, conditions and endorsements as more particularly set forth in Cover Note No SL 3162 | | Flat<br>Hereon: | $10,000.00<br>$ 4,876.00 |
| | AUDIT | | TOTAL CHARGED | |

| 5 | SPECIAL CONDITIONS | |
|---|---|---|

| 6 | | |
|---|---|---|

**NOTICE TO POLICYHOLDER:** "This contract is issued, pursuant to Section **445** of the Illinois Insurance Code, by an insurer not authorized and licensed to transact business in Illinois and as such is not covered by the Illinois Insurance Guaranty Fund."

ARTHUR J. GALLAGHER & CO.

By *Louis E. Metzger, Jr*

Eason Printing Co. Chicago

# GALLAGHER, HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
R. E. GALLAGHER, *(U.S.A.)*
J. P. GALLAGHER, *(U.S.A.)*
J. J. SHAW

**DOWGATE HILL HOUSE**
**DOWGATE HILL**
**LONDON, EC4R 2SB**

*Telephone:* 01-248 9901
*Cables and Telegrams:*
HILCOLLOW, LONDON
*Telex:* 883422
*Registered No.* 1193013 England

Arthur J. Gallagher & Co.,
The Tower,
Golf Road,
Rolling Meadows,
Illinois 60008,
U.S.A.

Date 24 November 1976

Your Ref.

Our Ref. GHV051176

## COVER NOTE No.   GHV051176

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:   EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE, AUTO PHYSICAL DAMAGE, MONEY & SECURITIES, COMPREHENSIVE GENERAL LIABILITY INCLUDING HOSTS LIABILITY, LIQUOR LIABILITY AND WORKMENS COMPENSATION AND/OR EMPLOYERS LIABILITY AND/OR OCCUPATIONAL DISEASE AND MEDICAL PAYMENTS, EMPLOYEE FIDELITY, ERRORS AND OMISSIONS AND SCHOOL BOARD LIABILITY.

FORM:   Usual "Archbishop" wording to be agreed.

ASSURED:   The Diocese of Rockville Centre, New York.

PERIOD:   36 months at 1st October 1976

INTEREST:   Covering all real and personal property and other perils as set out above in respect of all operations of the various Assureds and for their Agencies.

SUM INSURED:   $400,000 each and every loss and/or occurrence
$500,000 in the aggregate annually in respect of the Assured's retention.

But only to pay the excess of:

$  100,000 each and every loss and/or occurrence
$1,200,000 in the aggregate annually.

The loss limits in respect of the self insured fund and within the limits of this insurance shall not exceed:-

| | |
|---|---|
| Money & Securities: | $ 25,000 each and every occurrence |
| Flood: | $250,000 in the aggregate annually |
| P.L./P.D: | $200,000 any one occurrence CSL PL/PI |
| W.C.A./E.L./O.D: | $100,000 any one occurrence |
| Medical Payments: | $  5,000 any one person |
| Employee Fidelity: | $ 25,000 any one loss |
| Errors & Omissions and | $200,000 any one occurrence |
| School Board Liability: | and in the aggregate annually. |

SITUATION:     U.S.A.

CONDITIONS:    Physical Damage cover on replacement cost basis with
               $100 deductible to apply to all losses from Physical
               Damage perils except Auto Comprehensive.

               Servicing by Gallagher Bassett at Assured's expense.

               30 Days Cancellation Clause at anniversary date only.

               Loss figures to underwriters quarterly and risk to be
               reviewed by underwriters 60 days before anniversary date.

PREMIUM:       $579,000 payable one third annually.
               Adjustable on usual basis.


HEREON 90%
EFFECTED
WITH:

| | |
|---|---:|
| Lloyd's Underwriters | 76.50% |
| Excess Insurance Company Limited | 6.00% |
| Bellefonte Insurance Company | 4.50% |
| Terra Nova Insurance Company Limited | 3.00% |
| | 90.00% |

In the name of: Diocese of Rockville Centre

XXXXXXXREXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

In consideration of the payment of the sum of $ 187,237.07.
due hereon at 1st October, 1978 \ it is hereby understood and
agreed that in respect of losses and/or occurrences occurring on
or after 1st October, 1978 the participation insured by
this policy is increased from 74.92% to 75.68% and the underwriters
subscribing to this policy are as signed hereon.

The following underwriters
totalling 84.09% of 90.00%
of whole accept liability
in respect of business
classified by the Committee
of Lloyds as short tail business.

Definitive Numbers of Syndicates and Amount Percentage or
Proportion of the total Amount shared between the
Members of these Syndicates.

| AMOUNT PERCENTAGE OR PROPORTION PER CENT | BROKER 650 | LPSO NO & DATE 63701 25 1 79 | PAGE 1 |
|---|---|---|---|
| | SYNDICATE | UNDERWRITERS REF | |
| 12.950000C | 210 | A0080248 | |
| 1.8500000 | 212 | A0080248 | |
| 7.4000000 | 122 | 740C | |
| 5.9200000 | 119 | 740C | |
| 1.4800000 | 546 | 740C | |
| 4.440000C | 404 | 317NS71334C | |
| 3.3300000 | 854 | 50413081 | |
| 1.110000C | 910 | 50413081 | |
| 4.0700000 | 56 | R0008355X | |
| 2.9600000 | 47 | 049828PXX | |
| 4.8100000 | 231 | 531X0845K | |
| 1.850000C | 105 | 17L2152 | |
| 1.4800000 | 782 | 5N24255 | |
| 2.9600000 | 584 | N4350 | |
| .7400000C | 205 | 4280 | |
| 1.8500000 | 665 | 52119 | |
| 1.1100000 | 471 | FLX062 | |
| 2.960000C | 510 | X090 | |
| 1.850000C | 15 | 02806458 | |
| 2.2200000 | 640 | M883C101 | |
| 1.4800000 | 977 | 63AX916 | |
| 1.110000C | 33 | 10386784 | |
| 1.110C0C0C | 464 | 01220057 | |
| .9300000 | 235 | 504 | |
| .9300000 | 484 | 0SA20509 | |

| NO OF SYND | TOTAL LINE |
|---|---|
| 35 | 84.0500000 |

The following underwriters
totalling 84.09% of 90% of
whole in respect of business
other than short tail business.

Definitive Numbers of Syndicates and Amount Percentage or
Proportion of the total Amount shared between the
Members of these Syndicates.

| AMOUNT PERCENTAGE OR PROPORTION PER CENT | BROKER 650 | LPSO NO & DATE 63700 25 1 79 | PAGE 1 |
|---|---|---|---|
| | SYNDICATE | UNDERWRITERS REF | |
| 12.950000C | 210 | A0080248 | |
| 1.8500000 | 212 | A0080248 | |
| 7.4000000 | 122 | 740C | |
| 5.9200000 | 119 | 740C | |
| 1.4800000 | 546 | 740C | |
| 4.440000C | 404 | 475N5711C6C | |
| 3.3300000 | 854 | 50413081 | |
| 1.1100000 | 910 | 50413081 | |
| 4.0700000 | 56 | R0008355X | |
| 2.9600000 | 47 | 049828PXX | |
| 4.8100000 | 231 | 531X0845K | |
| 1.8500000 | 105 | 17L2152 | |
| 1.4800000 | 782 | 5N24255 | |
| 2.9600000 | 584 | N4550 | |
| .7400000C | 205 | 4280 | |
| 1.8500000 | 665 | 52119 | |
| 1.1100000 | 471 | ALX486 | |
| 2.9600000 | 510 | X090 | |
| 1.850000C | 15 | 02806458 | |
| 2.2200000 | 640 | M883C101 | |
| 1.480CC0C | 148 | 730X22E2 | |
| 1.1100000 | 33 | 10386784 | |
| 1.110C000 | 464 | C1220057 | |
| .9300000 | 235 | 504 | |
| .9300C0C | 484 | CC220505 | |

| NO OF SYND | TOTAL LINE |
|---|---|
| 35 | 84.0500000 |

All other terms and conditions remain unaltered.

DATED: 1 JAN 1979

**Now Know Ye that We** the ... Underwriting Members of Lloyd's ... ... members, in the after-mentioned List of ... own part and not one for another, our Heirs, Executors and Administrators, and ... ... make good to the Assured or to the Assured's Executors or Administrators or to indemni... ... ability as herein provided, such payment to be made after such loss, damage or liability ... ... for ... each of us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the total sum insured hereunder which is in the Table set opposite the definitive number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shown their respective Syndicates and Shares therein, is deemed to be incorporated in and to form part of this policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has subscribed his name on behalf of each of us.

(NM)

LLOYD'S POLICY SIGNING OFFICE.

*General Manager.*

ENDORSEMENT forming part of ........................................ IV 051176

In the name of: Roman Catholic ........................ ville Centre etal

XXIXHXHXBXXXXXODXXXXANXXXAXBXXXXXHXXXXXXXXK

In consideration of the payment of the sum of $ 171,624.49
due hereon at 1st October 1977 it is hereby understood and
agreed that in respect of losses and/or occurrences occurring on
or after 1st October 1977 the participation insured by this
policy is reduced from 76.50% to 74.92% and the underwriters
subscribing to this policy are as signed hereon.

The Underwriters set out below
accept percentages totalling
81.15% of 80.00% of whole in
respect of claims relating to
section T 1004 x 21.4.77.

The Underwriters set out below
accept percentages totalling
81.15% of 80.00% of whole in
respect of claims relating to
section T 1003 x 21.4.77.

65750 * 29 DEC 1977

65751 * 29 DEC 1977

The Underwriters set out below
accept percentages totalling
100.00% of 10.00% of whole.

63615 * 29 DEC 1977

63616 * 29 DEC 1977

| AMOUNT PERCENTAGE OR PROPORTION PER CENT | BROKER | LPSO NO & DATE | | PAGE |
|---|---|---|---|---|
| | 650 | 63615 | 29 12 77 | 1 |
| 100 | SYNDICATE 649 | 60CR2920 UNDERWRITER'S REF. | | |
| THE LIST OF UNDERWRITING MEMBERS OF LLOYDS IS NUMBERED 1977/12 | | | | |
| | NO OF SYNS 1 | 100 TOTAL LINE | | |

All other terms and conditions remain unaltered.

DATED: 4th January 1978

HINTON HILL & COLES, LIMITED.

Now Know Ye that We the Underwriting Members in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators, and in proportion of his due proportion only, to pay or make good to the Assured or to the Assured's Executors or Administrators or to indemnify him or them against all such loss damage or liability as herein provided, each Underwriter to be made after such loss damage or liability is proved and the due proportion for which each of us, the Underwriters, is liable shall be ascertained by reference to his share, the share of the Syndicate of which such Underwriter is a Member AND FURTHER total sum insured hereunder which is in the Table set opposite the definitive number of the Syndicate is deemed to be incorporated in and is THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicate and Shares therein, as deemed to be incorporated in and is form part of this policy, bears the number appearing in the attached Table and is available for inspection at Lloyd's Policy Signing Office will be furnished to the their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

In Witness whereof the General Manager of Lloyd's Policy Signing Office has subscribed his name on behalf of each of us

LLOYD'S POLICY SIGNING OFFICE.

(NM)

*General Manager.*

| Definitive Numbers · Syndicates and Percentage or Proportion of the Total Amount etc. shown the Members of these Syndicates | | |
|---|---|---|
| AMOUNT, PERCENTAGE OR PROPORTION | BROKER | L.P.S.O. NO.& DATE |
| PER CENT | 650 | 65750 | 29 | 12 | 77 |
| | SYN-DICATE | UNDERWRITER'S REF |
| 13.20 | 210 | 0030248R |
| 1.88 | 212 | 0030248R |
| 7.54 | 122 | 740C |
| 7.54 | 119 | 740C |
| 7.54 | 404 | 375NR71106C |
| 3.01 | 854 | 504130B1 |
| 1.51 | 910 | 504130B1 |
| 3.77 | 918 | LSL0109F7420 |
| 4.15 | 56 | R0008355X |
| 4.90 | 231 | 531X0845J |
| 1.51 | 782 | 5N24255 |
| 3.01 | 584 | N4550 |
| 3.01 | 47 | 049828PXX |
| 2.26 | 640 | M883C041 |
| 1.88 | 665 | 52088 |
| 1.13 | 471 | FLD062 |
| 1.51 | 510 | X090 |
| 1.13 | 33 | 10386784 |
| .38 | 205 | 4280 |
| 1.88 | 570 | 368XHLN |
| 1.13 | 977 | 630X916 |
| 1.88 | 109 | 17B212R1XS |
| 1.13 | 464 | 01220057 |
| .94 | 235 | 956 |

| AMOUNT, PERCENTAGE OR PROPORTION | BROKER | L.P.S.O. NO.& DATE |
|---|---|---|
| PER CENT | 650 | 65751 | 29 | 12 | 77 |
| | SYN-DICATE | UNDERWRITER'S REF. |
| 13.20 | 210 | 2010248R |
| 1.88 | 212 | 2010248R |
| 7.54 | 122 | 740C |
| 7.54 | 119 | 740C |
| 7.54 | 404 | 475NR71106C |
| 3.01 | 854 | 50413081 |
| 1.51 | 910 | 50413081 |
| 3.77 | 918 | LSL0109F7420 |
| 4.15 | 56 | R0008355X |
| 4.90 | 231 | 531X0845J |
| 1.51 | 782 | 9N24255 |
| 3.01 | 584 | N4550 |
| 3.01 | 47 | 049828PXX |
| 2.26 | 640 | N883C041 |
| 1.88 | 665 | 52088 |
| 1.13 | 471 | ALD486 |
| 1.51 | 510 | X090 |
| 1.13 | 33 | 10386784 |
| .38 | 205 | 4280 |
| 1.88 | 570 | 368XH1N |
| 1.13 | 977 | 630X916 |
| 1.88 | 109 | 17B212R1XS |
| 1.13 | 464 | 01220057 |
| .94 | 235 | 956 |

| AMOUNT, PERCENTAGE OR PROPORTION | BROKER | L.P.S.O. NO.& DATE |
|---|---|---|
| | 650 | 65750 | 29 | 12 | 77 |
| | SYN-DICATE | UNDERWRITER'S REF. |
| .60 | 484 | 05A2050A |
| 2.26 | 947 | 164E4663888N |
| .47 | 374 | 996910079S |

THE LIST OF UNDERWRITING MEMBERS OF LLOYDS IS NUMBERED 1977/12

| NO SYND | TOTAL LINE |
|---|---|
| 27 | 81.15 |

| AMOUNT, PERCENTAGE OR PROPORTION | BROKER | L.P.S.O. NO.& DATE |
|---|---|---|
| | 650 | 65751 | 29 | 12 | 77 |
| | SYN-DICATE | UNDERWRITER'S REF. |
| .60 | 484 | 0C220509 |
| 2.26 | 947 | 164E4663888N |
| .47 | 374 | 99S91007SS |

THE LIST OF UNDERWRITING MEMBERS OF LLOYDS IS NUMBERED 1977/12

| NO SYND | TOTAL LINE |
|---|---|
| 27 | 81.15 |

# Schedule

Policy or Certificate No.   650 / GHV 051176  Contract No. (if any)

The name and address of the Assured

Roman Catholic Diocese of Rockville Centre, and all Legal Entities
Therein Over which the same Central Authority Appoints or Controls
the Appointment of the Board of Trustees or Similar Body and Excercises
Direct, Complete and Active Control over the Finances, Properties,
Operations and Activities
50 North Park Avenue
Rockville Centre, New York 11570

The risk and sum insured hereunder

Excess All Risks of Physical Loss or Damage.

Hereon 76.50% part of 100.00% as more particularly described in
the attached wording, which is hereby declared to be
incorporated in and to form part of this policy.

This insurance being for 76.50% part of 100.00% covers it
pro rata proportion of the risks and liability more
particularly described herein.

The Premium

U.S.$147,645.00 part of U.S.$193,000.00 (First annual instalment).

The period of Insurance from   1st October 1976   to   1st October 1979   12.01 am
LST

both days inclusive, and for such further period or periods as may be mutually agreed upon

Dated in   LONDON.                              the   19th October 1977

# GALLAGHER, HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
R. L. GALLAGHER, *(U.S.A.)*
J. P. GALLAGHER, *(U.S.A.)*
J. J. SHAW

**DOWGATE HILL HOUSE**
**DOWGATE HILL**
LONDON, EC4R 2SB

Telephone: 01-248 9901
Cables and Telegrams:
HILCOLLOW, LONDON
Telex: 883422
Registered No. 1143013 England

Arthur J. Gallagher & Co.,
The Tower,
Golf Road,
Rolling Meadows,
Illinois 60008,
U.S.A.

Date 30 November 1976

Your Ref.

Our Ref.  GHV051176

## ADDENDUM No. 1 to
## COVER NOTE No. GHV051176

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:  EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE, AUTO PHYSICAL
DAMAGE, MONEY & SECURITIES, COMPREHENSIVE GENERAL LIABILITY
INCLUDING HOSTS LIABILITY, LIQUOR LIABILITY AND WORKMENS
COMPENSATION AND/OR EMPLOYERS LIABILITY AND/OR OCCUPATIONAL
DISEASE AND MEDICAL PAYMENTS, EMPLOYEE FIDELITY, ERRORS
AND OMISSIONS AND SCHOOL BOARD LIABILITY.

ASSURED:  The Diocese of Rockville Centre, New York

PERIOD:  36 months at 1st October 1976.

It is agreed effective 1st October 1976 to add Business Interruption and
Extra Expense in respect of the following hospitals:-

|  | Business Interruption | Extra Expense |
|---|---|---|
| Mercy Hospital Rockville Centre | 80% coinsurance $9,200,000 | $500,000 |
| St. Francis Hospital Roslyn | 80% coinsurance $4,700,000 | $500,000 |

All other terms and conditions remain unaltered.

Information

Total values now $415,164,310.

# GALLAGHER, HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M ARNOLD
R. E. GALLAGHER, *(U.S.A.)*
J. P. GALLAGHER, *(U.S.A.)*
J. J. SHAW

**DOWGATE HILL HOUSE**
**DOWGATE HILL**
**LONDON, EC4R 2SB**

Telephone: 01-248 9901
Cables and Telegrams:
HILCOLLOW, LONDON
Telex 883422
Registered No. 1143013 England

Arthur J. Gallahger & Co.,
The Tower,
Golf Road,
Rolling Meadows,
Illinois 60008,
U.S.A.

Date  30 November 1976

Your Ref.

Our Ref.  GHV051176

## ADDENDUM No. 2 to
## COVER NOTE No. GHV051176

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:  EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE, AUTO PHYSICAL
DAMAGE, MONEY & SECURITIES, COMPREHENSIVE GENERAL LIABILIYT
INCLUDING HOSTS LIABILITY, LIQUOR LIABILITY AND WORKMENS
COMPENSATION AND/OR EMPLOYERS LIABILITY AND/OR OCCUPATIONAL
DISEASE AND MEDICAL PAYMENTS, EMPLOYEE FIDELITY, ERRORS
AND OMISSIONS AND SCHOOL BOARD LIABILITY.

ASSURED:  The Diocese of Rockville Centre, New York

PERIOD:  36 months at 1st October 1976

It is  agreed effective 1st October 1976 to add rental income on St. Mary
of the Angels Home, Syosset, New York.

Loss limit $40,000

All other terms and conditions remain unaltered.

Information

100% coinsurance.

Page No. 2 to Covernote No. GHV 051176 Addendum No. 5 dated 5th October 1977

| | | |
|---|---|---|
| Excess Ins. Co. Ltd. | 7.54% of 80% | - 6.032. |
| Bellefonte Ins. Co. | 6.03% of 80% | 4.824 |
| Pine Top Ins. Co. Ltd. | 1.51% of 80% | 1.208 |
| Terra Nova Ins. Co. Ltd. | 3.77% of 80% | 3.016 |
| | | 16.08 |

All other terms and conditions remain unaltered.

# GALLAGHER HINTON & VEREKER LIMITED

INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
R. E. GALLAGHER, *(U.S.A.)*
J. P. GALLAGHER, *(U.S.A.)*
J. J. SHAW

**FOUNTAIN HOUSE**
**125-135 FENCHURCH ST.**
**LONDON, EC3M 5DJ**

Tel. 01-626 5861
Telex 8951506
Cables GALVER G
Registered No. 1143013 England

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date       5th October 1
Your Ref.
Our Ref.  GHV 051176

### ADDENDUM NO. 5 to
### COVER NOTE No. GHV 051176

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:       EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE.

ASSURED:    The Diocese of Rockville Centre, New York.

PERIOD:     36 months at 1st October 1976.

It is hereby understood and agreed that effective 1st October 1977 the
Sum Insured is amended to read:

SUM INSURED:   $400,000   each and every loss and/or occurrence
               $500,000   in the aggregate annually in respect of
                          the Assured's retention.

               But only to pay the excess of:

               $ 100,000   each and every loss and/or occurrence
               $1,400,000  in the aggregate annually.

It is further understood and agreed that the premium due 1st October 1977
is $209,077.00.

It is further understood and agreed that effective 1st October 1977
the Security is amended to read:

.../...

Page No. 2 to Covernote No. GHV 051176 Addendum No. **5** dated 5th October 1977

Lloyds Underwriters    81.15% of 80%

Lloyds Underwriters    100.00% of 10%

74.92%

All other terms and conditions remain unaltered.

# GALLAGHER & GALLAGHER LIMITED

INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
R. E. GALLAGHER, *(U.S.A.)*
J. P. GALLAGHER, *(U.S.A.)*
J. J. SHAW

**FOUNTAIN HOUSE
125-135 FENCHURCH ST.
LONDON, EC3M 5DJ**

Tel: 01-629 5861
Telex: 8953506
Answer Back GALLER G
Registered No. 1763013 England

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date      5th October 197

Your Ref.

Our Ref.  GHV 051176

### ADDENDUM NO. 5 to
### COVER NOTE No. GHV 051176

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:        EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE.

ASSURED:     The Diocese of Rockville Centre, New York.

PERIOD:      36 months at 1st October 1976.

It is hereby understood and agreed that effective 1st October 1977 the
Sum Insured is amended to read:

SUM INSURED:  $400,000  each and every loss and/or occurrence
              $500,000  in the aggregate annually in respect of
                        the Assured's retention.

              But only to pay the excess of:

              $ 100,000  each and every loss and/or occurrence
              $1,400,000  in the aggregate annually.

It is further understood and agreed that the premium due 1st October 1977
is $209,077.00.

It is further understood and agreed that effective 1st October 1977
the Security is amended to read:



.../...

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

**GALLAGHER GALVER LIMITED**

INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
R. H. GALLAGHER, *(U.S.A.)*
J. P. GALLAGHER, *(U.S.A.)*
J. J. SHAW

**FOUNTAIN HOUSE**
125-135 FENCHURCH ST,
LONDON, EC3M 5DJ

Tel  01-626 5861
Telex  8951366
Cables  BAR  GALVER G
Registered No. 1193013 England

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date   5th October 1977

Your Ref.

Our Ref. GHV 051176

## ADDENDUM NO. 6 to
## COVER NOTE No. GHV 051176

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:   EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE.

ASSURED:   The Diocese of Rockville Centre, New York.

PERIOD:   36 months at 1st October, 1976.

It is hereby understood and agreed that effective 1st October, 1977 the
Loss limitation in respect of Public Liability/Property Damage is
increased to $300,000 any one occurrence C.S.L. P.L./P.D.

Additional Premium $20,000 annual.

All other terms and conditions remain unaltered.



INTERNATIONAL INSURANCE BROKERS

D W. L M VEREKER. *(Managing Director)*
D. J. M ARNOLD
R. E. GALLAGHER.USA)
J. P. GALLAGHER.USA)
R. B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE**
125/135 FENCHURCH STREET
LONDON, EC3M 5DJ

Telephone. 01-626 5861
Cables & Telegrams
CALVER C. LONDON
Telex 8951508
Registered No. 1193013 England

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date       10th January, 197

Your Ref.

Our Ref.   GHV 051176

## ADDENDUM NO. 7 to
## COVER NOTE No.   GHV 051176

We confirm that we have effected the following insurance in accordance with your instructions

Type:          EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE.

Assured:       The Diocese of Rockville Centre, New York.

Period:        36 months at 1st October, 1976.

It is hereby noted and agreed that effective 1st January, 1978 the loss
limitation hereon in respect of Workmens Compensation Act/Employers
Liability/Occupational Disease is increased to $150,000 any one occurrence.

Additional Premium: $20,000 annual. $15,000 = 9 mos.

LL  74.92%

EXCESS     6.032
BILLED     4.824
FINTP      1.208
TERRA M/A  3.016
           15.05

All other terms and conditions remain unaltered.

JAN. 1, 1978   21,000.
TE             x .748
OCT. 1, 1978   14,960.

LL.  74.92%    $11,208.63

EXCESS   6.03%    900% 39
BILLED   4.824%   721.67
FINTP    1.208%   180.72
TERRAIN  3.016%   451.19

11,208.03
2,255.97
13,464.00 = 90%
CONTEM 10%  1,496.00
          14,960.00

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

# GALLAGHER HINTON & VERECKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D W. L. M. VERECKER, (Managing Director)
D J. M. ARNOLD
R E. GALLAGHER,(USA)
J. P. GALLAGHER,(USA)
R.B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE
125/135 FENCHURCH STREET
LONDON, EC3M 5DJ**

Telephone 01-624 5861
Cables & Telegrams
CALVER C. LONDON
Telex 8951328
Registered No 1193013 England

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date    11th April, 1978.
Your Ref.
Our Ref. GHV 051/176

### ADDENDUM NO. 8 to
### COVER NOTE No. GHV 051/176

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:    EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE.

ASSURED:    The Diocese of Rockville Centre, New York.

PERIOD:    36 months at 1st October, 1976.

It is hereby noted and agreed that effective 7th April, 1978 the following is added as an additional assured:

            The City of New York Department of Sanitation
            in respect of:  St. Agnes Academic High School,
                            13-20 124th Street,
                            College Point,
                            Queens, N.Y.

In accordance with the Hold Harmless Agreement entered into between the Assured and the City.

All other terms and conditions remain unaltered.



# GALLAGHER HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D W L M VEREKER, (*Managing Director*)
D J M ARNOLD
R E GALLAGHER,(USA)
J P GALLAGHER, USA)
R B OWLES
J. J SHAW

**FOUNTAIN HOUSE**
**125/135 FENCHURCH STREET**
**LONDON, EC3M 5DI**

*Telephone* 01-476 5861
*Cables & Telegrams*
CALVER C. LONDON
*Telex* 895!506
*Registered No* 1193243 *England*

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date 28th September, 197

Your Ref.

Our Ref. GHV 051176

### ADDENDUM NO. 9 to
### COVER NOTE No. GHV 051176

We confirm that we have effected the **following** insurance in accordance with your instructions

> ASSURED:      The Diocese of Rockville Centre, New York.
>
> PERIOD:       36 months at 1st October, 1976.

It is hereby understood and agreed that effective 1st October, 1978 the
Sum Insured is amended to read:

> SUM INSURED:   $400,000   each and every loss and/or occurrence
>                $500,000   in the aggregate annually in respect of
>                           the Assured's retention.
>
>                But only to pay the excess of:
>
>                $  100,000   each and every loss and/or occurrence
>                $1,950,000   in the aggregate annually.

It is further understood and agreed that the premium due 1st October, 1978
is $247,403.00.

It is further understood and agreed that effective 1st October, 1978 the
Security is amended to read:

| | | |
|---|---|---|
| 5.92% of 90% | Bellefonte Ins. Co. |
| 1.48% of 90% | Pine Top Ins. Co. Ltd. |
| 3.70% of 90% | Terra Nova Ins. Co. Ltd. |
| 3.70% of 90% | Excess Ins. Co. Ltd. |
| 1.11% of 90% | Yasuda Fire & Marine Ins. Co. (UK) Ltd. |

All other terms and **conditions remain unaltered.**

# GALLAGHER HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D W L M VEREKER, (Managing Director)
D J M ARNOLD
R E CALLAGHER.,U'SA!
J. P GALLAGHER,.U'SA'
R B. OW'LES
J. J. SHAW'

**FOUNTAIN HOUSE
125/135 FENCHURCH STREET
LONDON, EC3M 5DI**

Telephone  01  629, 5861

Cables & Telegrams
CALVER G. LONDON

Telex  8951308

Registered No  1193013  England

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date  28th September, 1978

Your Ref.

Our Ref. GHV 051176

## ADDENDUM NO. 9 to
## COVER NOTE No. GHV 051176

We confirm that we have effected the **following insurance in accordance** with your instructions

ASSURED:    The Diocese of Rockville Centre, New York.

PERIOD:    36 months at 1st October, 1976.

It is hereby understood and agreed that effective 1st October, 1978 the
Sum Insured is amended to read:

SUM INSURED:    $400,000  each and every loss and/or occurrence
$500,000  in the aggregate annually in respect of
the Assured's retention.

But only to pay the excess of:

$  100,000  each and every loss and/or occurrence
$1,950,000  in the aggregate annually.

It is further understood and agreed that the premium due 1st October, 1978
is $247,403.00.

It is further understood and agreed that effective 1st October, 1978 the
Security is amended to read:  = 15.681% = $187,237.06

84.09% of 90% Lloyds Underwriters.

| % | No. | % | No. | % | No. |
|---|---|---|---|---|---|
| 12.95% | 210 | 1.85% | 212 | 7.40% | 122 |
| 5.92% | 119 | 1.48% | 546 | 4.44% | 404 |
| 3.33% | 854 | 1.11% | 910 | 4.07% | 56 |
| 2.96% | 47 | 4.81% | 231 | 1.85% | 109 |
| 1.48% | 782 | 2.96% | 584 | 0.74% | 205 |
| 1.85% | 665 | 1.11% | 471 | 2.96% | 510 |
| 1.85% | 15 | 2.22% | 640 | 1.48% | 977 |
| 1.11% | 33 | 1.11% | 464 | 0.93% | 235 |
| 0.93% | 484 | 2.22% | 947 | 0.74% | 342 |
| 1.11% | 570 | 0.46% | 374 | 0.59% | 598 |
| 0.15% | 453 | 1.48% | 582 | 0.37% | 518 |
| 0.37% | 661 | 3.70% | 918 | | |

All other terms and conditions remain unaltered

# GALLAGHER HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D W. L. M. VEREKER. (Managing Director)
D. J. M. ARNOLD
R. E. GALLAGHER, (USA)
J. P. GALLAGHER, USA)
R. B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE**
**125/135 FENCHURCH STREET**
**LONDON, EC3M 5DJ**

Telephone 01-8246 5861
Cables & Telegrams
GALVER C. LONDON
Telex 8951806
Registered No. 1193005 England

Date 20th December, 197

Your Ref.

Our Ref. GHV 051/176

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois 60008,
U.S.A.

**ADDENDUM No. 10 to**

**COVER NOTE No. GHV 051/176**

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:     The Diocese of Rockville Centre, New York,

PERIOD:     36 months at 1st October, 1976,

It is hereby noted and agreed to increase sub limit in respect
Money and Securities to $50,000 for the period 23rd December, 1978
to 2nd January, 1979 for

                    R.C.C. of St. Barnabas
                    Bellmore,
                    New York.

All other terms and conditions remain unaltered.



# GALLAGHER HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER. *(Managing Director)*
D. J. M. ARNOLD
R. E. GALLAGHER.*(USA)*
J. P. GALLAGHER.*USA)*
R. B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE**
**125/135 FENCHURCH STREET**
**LONDON, EC3M 5DJ**

Telephone 01- 626 5861

Cables & Telegrams
CALVER C. LONDON

Telex 8951508
Registered No 1193013 England

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road, Rolling Meadows,
Illinois, 60008, U.S.A.

Date 6th March, 1979.

Your Ref.

Our Ref. GHV 051/176

### ADDENDUM No. 11 to
### COVER NOTE No. GHV 051/176

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:       The Diocese of Rockville Centre, New York.

PERIOD:        36 months at 1st October, 1976.

It is hereby noted and agreed that effective 1st October, 1978 the loss limitations in respect of the Self Insured Fund and within the limits of this insurance are amended as follows:

    Auto Liability:           $100,000 any one occurrence C.S.L.
    W.C.A./E.L./O.D.:         $100,000 any one occurrence

    R.P. $5,000 annual

All other terms and conditions remain unaltered.

# GALLAGHER HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER. *(Managing Director)*
D. J. M. ARNOLD
R. E. GALLAGHER *(USA)*
J. P. GALLAGHER *(USA)*
R. B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE**
125/135 FENCHURCH STREET
LONDON, EC3M 5DI

Telephone  01-626 5861

Cables & Telegrams
GALVER U. LONDON

Telex  8951558
Registered No. 1193013 England

Date  29th March, 1979.

Your Ref.

Our Ref.    GHV 051/176

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008, U.S.A.

### ADDENDUM No. 12 to
### COVER NOTE No. GHV 051/176

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:    The Diocese of Rockville Centre, New York.

PERIOD:    36 months at 1st October, 1976.

It is hereby understood and agreed that effective 1st October, 1978 the Loss Limitation in respect of Public Liability/Property Damage is reduced to $200,000 any one occurrence C.S.L. P.L./P.D.

All other terms and conditions remain unaltered.



# GALLAGHER HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D. W. L. M VEREKER. (Managing Director)
D. J. M. ARNOLD
R. E. GALLAGHER, U.S.A.
J. P. GALLAGHER, U.S.A.
R. B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE**
**125/135 FENCHURCH STREET**
**LONDON, EC3M 5DJ**

Telephone 01- 626 5881
Cables & Telegrams:
CALVER C. LONDON
Telex 895/1506
Registered No. 119.3-013 England

Date 5th April, 1979.

Your Ref.

Our Ref. GHV 051/176

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road, Rolling Meadows,
Illinois, 60008, U.S.A.

## ADDENDUM No. 13 to
## COVER NOTE No. GHV 051/176

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:        The Diocese of Rockville Centre, New York.

PERIOD:         36 months at 1st October, 1976.

It is hereby noted and agreed effective 4th April, 1979 the limit in respect of Employee Fidelity is increased to $100,000 any one loss for Maryhaven location only.

Information:   St. Charles Hospital affiliated with above location.

All other terms and conditions remain unaltered.



# GALLAGHER HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS

D W L.M VEREKER (*Managing Director*)
D. J. M ARNOLD
R E. GALLAGHER (*USA*)
J. P GALLAGHER (*USA*)
R. B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE
125/135 FENCHURCH STREET
LONDON, EC3M 5DJ**

Telephone 01 626 5861

Cables & Telegrams
CALVER C. LONDON

Telex 883856
Registered No. 1183613 England

Arthur J. Gallagher & Company,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois 60008,
U.S.A.

Date   20th June 1979

Your Ref.

Our Ref.   GHV 051/176

### ADDENDUM NO. 14 to
### COVER NOTE No. GHV 051/176

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:   The Diocese of Rockville Centre, New York.

PERIOD:   36 months at 1st October, 1976.

Notwithstanding Addendum No. 13 dated 5th April, 1979 contained herein to the contrary;

It is hereby noted and agreed effective 4th April, 1979 the limit in respect of Employee Fidelity is increased to $100,000 any one loss for St. Charles Hospital and Maryhaven location only.



GALLAGHER LONDON

INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER. *(Managing Director)*
D. J. M. ARNOLD
R. E. GALLAGHER.*(USA)*
J. P. GALLAGHER.*(USA)*
R. B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE
125/135 FENCHURCH STREET
LONDON, EC3M 5DJ**

Telephone: 01-626 5861
Cables & Telegrams:
GALVER G. LONDON
Telex: 8851508
Registered No. 1193013 England

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date   20th July, 1979.
Your Ref.
Our Ref.   GHV 051/176

**ADDENDUM No. 14
COVER NOTE No. GHV 051/176**

We confirm that we have effected the following insurance in accordance with your instructions

ASSURED:            The Diocese of Rockville Centre, New York.

PERIOD:             36 months at 1st October, 1976.

It is hereby noted and agreed effective 30th July, 1979 the limit in respect
of Employee Fidelity is increased to $100,000 any one loss for St. Francis
Hospital, Roslyn, New York location only.

All other terms and conditions remain unaltered.



Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

|  |  |
|---|---|
| Insurer(s): | Underwriters at Lloyd's<br>London Market Companies |
| Policy number(s): | SL 3311<br>SLC 5334 |
| Inception date: | 1/18/1978 |
| Term at issuance: | 9 months + 13 days |
| Page count: | 11 |
| Contents: | Slip- 2 pgs<br>Untitled insuring form- 5 pgs<br>Endorsment- 4 pgs |

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

ITEM    NUMBER    **S L    3311**

**1**

*Name of Assured*
**Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein
Over which the same Central Authority Appoints or Controls the Appointment
of the Board of Trustees or Similar Body and Excercises Direct, Complete
and Active Control over the Finances, Properties, Operations and Activities**

**50 North Park Avenue
Rockville Centre, New York 11570**

**2**    EFFECTIVE ☒ 12:01 A.M.    BOTH DAYS AT
FROM ☐ 12:00 NOON    STANDARD TIME    **January 18, 1978**    TO    **October 1, 1979**

**3**    Acting upon your instruction, we have
effected the insurance with:    NAME OF INSURERS    AMOUNT OR PERCENT

➡    UNDERWRITERS AT LLOYD'S, LONDON    83.20%

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|

**Hereon: 83.20% Part of 100% of:**

**$600,000.  in the aggregate annually,
EXCESS OF:
$1,900,000.  In the aggregate annually
in respect of losses occurring
between October 1, 1977 and
October 1, 1978**

RATE
**Annual:    $12,000.00
Hereon:    $ 9,984.00**

**Excess Aggregate
All Risks, as per
forms attached.**

AUDIT    TOTAL CHARGED

**5**    SPECIAL CONDITIONS

**As per attached forms and endorsements.
NMA 1191
NMA 1685
NMA 1256**

**6**    **Service of Suit Clause -
Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, Illinois 60603
or Mendes & Mount, 27 William Street, New York, New York 10005**

In witness whereof this covernote has been signed at....**Rolling Meadows, Illinois**........this.....**9**........day of....**March**...........

NOTICE TO POLICYHOLDER: "This contract is issued, pursuant to Section 445 of the
Illinois Insurance Code, by an insurer not authorized and licensed to transact business in
Illinois and as such is not covered by the Illinois Insurance Guaranty Fund."

THIS DECL

**ARTHUR J. GALLAGHER & CO.**

**(Illinois)**

By

...son Printing Co. Chicago

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SL/COS/CN)

NUMBER **SL C 5334**

| | |
|---|---|
| 1 | **Name of Assured**<br>Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein<br>Over which the same Central Authority Appoints or Controls the Appointment<br>of the Board of Trustees or Similar Body and Exercises Direct, Complete<br>and Active Control over the Finances, Properties, Operations and Activities<br>50 North Park Avenue<br>Rockville Centre, New York 11570 |

| | | |
|---|---|---|
| 2 | EFFECTIVE ☒ 12:01 A.M.   BOTH DAYS AT<br>FROM ☐ 12:00 NOON   STANDARD TIME **January 18, 1978** | TO **October 1, 1979** |

| | NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|---|
| 3 | Acting upon your instruction, we have effected the insurance with: ➡ **Excess Ins Co Ltd** | **8.40%** |
| | **Bellefonte Ins Co** | **8.40%** |
| | | **16.80%** |

| | | |
|---|---|---|
| AMOUNT | COVERAGE | RATE | PREMIUM |

| | | | |
|---|---|---|---|
| 4 | <u>Hereon: 16.80% Part of 100% of:</u><br><br>**Subject to the same forms, terms,**<br>**conditions & endorsements as more**<br>**particularly set forth in Cover**<br>**Note No. SL 3311** | **Annual:**<br>**Hereon:**<br>Excess Ins Co Ltd<br>Bellefonte Ins Co | $12,000.00<br><br>$ 1,008.00<br>1,008.00<br>$ 2,016.00 |

AUDIT                                                    TOTAL CHARGED_____

| | |
|---|---|
| 5 | SPECIAL CONDITIONS |

| | |
|---|---|
| 6 | |

NOTICE TO POLICYHOLDER: "This contract is issued ~~VOID~~ on Section 445 of the Illinois Insurance Code, by an insurer not ~~VOID~~ licensed to transact business in Illinois and as such is not covered by the Illinois Insurance Guaranty Fund."

ARTHUR J. GALLAGHER & CO.

(Illinois)

By _____

Eason Printing Co Chicago

**ENDORSEMENT**

RETURN PREMIUM      $

**ADDITIONAL PREMIUM** $

**Attached to and forming part of Policy/Certificate No.** SL3311

**In the name of** Roman Catholic Diocese of Rockville Centre, etal.

**Effective date of this endorsement is** October 1, 1978      Endorsement No. 1

It is hereby noted and agreed that effective 1st October, 1978 the Sum

Insured is amended to read:

    $600,000  in the aggregate annually

    EXCESS OF:

    $2,450,000 in the aggregate annually

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**DATED:**  2/23/79

ARTHUR J. GALLAGHER & CO.(ILLINOIS)

By: *Louis E. Metzger, Jr.*

**U.S.A.**

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—
### PHYSICAL DAMAGE—DIRECT

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

This policy does not cover any loss or damage arising directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination however such nuclear reaction, nuclear radiation or radioactive contamination may have been caused *NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that Fire.

*NOTE.—If Fire is not an insured peril under this policy the words from "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

7/5/59
N.M.A. 1191                                                          EASON PRINTING COMPANY

**INDUSTRIES, SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE No. 3**

*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Insurance does not cover any liability for:

(1) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this Paragraph (1) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed, where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.

(2) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.

(3) Fines, penalties, punitive or exemplary damages.

This Clause shall not extend this Insurance to cover any liability which would not have been covered under this Insurance had this Clause not been attached.

22/1/70.

N.M.A. 1685.                                              EASON PRINTING COMPANY

**U.S.A.**

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)
*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

*For attachment to insurances of the following classifications in the U. S. A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

*Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),*

*not being insurances of the classifications to which the Nuclear Incident Exclusion Clause —Liability—Direct (Limited) applies.*

**This policy\***

does not apply:—

I.  Under any liability Coverage, to injury, sickness, disease, death or destruction
   (a)  with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
   (a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
   (b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
   (c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.  As used in this endorsement:
   "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material, (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means
   (a)  any nuclear reactor,
   (b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
   (c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
   (d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

\*Note:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17-3-60
N.M.A. 1256                                                        Boen Printing Company

1.    INSURING CLAUSE:

Subject to the limitations, terms and conditions contained in this
Insurance or added hereto, the Underwriters agree to indemnify

Roman Catholic Diocese of Rockville Centre, etal

(hereinafter called "the Assured") in respect of

Loss or Damage to all Real and Personal Property
wherever located

against excess aggregate all risks of physical loss or damage, auto
physical damage, money and securities, comprehsnsive general
liability including hosts liability, auto liability, liquor
liability and worker's compensation and/or employers liability
and/or O. D., medical payments, employee fidelity, E & O and
school board liability

as covered by and as defined in the underlying Cover Note (s) No. SL 3152
or renewal or replacement thereof issued by Underwriters at Lloyd's,
London (hereinafter called "the Primary Insurers").


2.    LIMIT:

Provided always that liability attaches to the Underwriters only after
the Primary Insurers have paid or have admitted liability for the full
amount of their respective ultimate net loss liability as follows:

$500,000.              ultimate net loss in the aggregate in
                       any one period of insurance

which in turn pays the excess of

$1,400,000.            ultimate net loss in the aggregate in
                       one period of insurance (hereinafter
                       referred to as "Assured's Loss Fund").

As respects any one loss, the Assured's Loss Fund shall not
be charged with

1)    an amount in excess of $100,000. ultimate net loss
      as respects any one loss with aggregate as applicable

2)    any Physical Damage loss which is less than $100.00.

and then in excess of the above amounts up to:

$600,000.                ultimate net loss in the aggregate in
                         any one period of insurance.

3.   DEFINITIONS:

    (a)   NAME OF ASSURED

          It is agreed that

          owns and operates Parishes, Schools, Cemeteries and Other
          Agencies under specific names, and it is the intention of this
          Insurance to cover such Parishes, Schools, Cemeteries and
          Other Agencies or directly connected organizations as Named
          Assureds.

    (b)   LOSS:

          The word "loss" shall mean a loss or series of losses arising
          out of one event or occurrence.

    (c)   ULTIMATE NET LOSS:

          The words "ultimate net loss" shall mean the loss sustained by
          the Assured as a result of the happening of the risks covered
          by this Insurance after making deductions for all recoveries
          and other valid and collectible insurances, excepting however
          the Policy/ies of the Primary Insurers.

    (d)   PERIOD OF INSURANCE:

          The words "period of Insurance" shall be understood to mean
          any one of the following periods:

                Period I       January 18, 1978   to October 1, 1978
                Period II      October 1, 1978    to October 1, 1979
                Period III

4.   APPLICATION OF RECOVERIES:

    All recoveries or payments recovered or received subsequent to a
    loss settlement under this Insurance shall be applied as if recovered
    or received prior to such settlement and all necessary adjustments
    shall then be made between the Assured and the Underwriters, provided

always that losses under this Insurance are not recoverable until the Assured's
ultimate net loss has been finally ascertained.

5.   MAINTENANCE OF PRIMARY INSURANCE:

In respect of the perils hereby insured against this Insurance is subject
to the same warranties, terms and conditions (except as regards the
premium, the amount and limits of liability and the renewal agreement,
if any, and except as otherwise provided herein) as are contained in
or as may be added to the Policy/ies of the Primary Insurers prior to
the happening of a loss for which claim is made hereunder, and should
any alteration be made in the premium for the Policy/ies of the Primary
Insurers, then the premium hereon shall be adjusted accordingly.

It is a condition of this Insurance that the Policy/ies of the Primary
Insurers shall be maintained in full effect during the currency of this
Insurance and Underwriters hereon are to be advised in the event of
any changes in the underlying policy.

6.   TERM OF INSURANCE:

This Insurance is to indemnify the Assured in respect of losses occurring
during the period commencing January 18, 1978 to October 1, 1979   , both
days at 12:01 A.M. Standard Time at the address of the Assured stated herein.

7.   PREMIUM:

The premium for this Insurance is $24,000.00 payable as follows:

January 18, 1978   $12,000.00
October 1, 1978   $12,000.00

8.   CANCELLATION:

This Insurance may be cancelled as of any anniversary date by either
of the parties upon written notice to the other party stating when, not
less than thirty (30) days thereafter cancellation shall be effected.

If this Insurance shall be cancelled by the Assured the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the customary short rate proportion of any minimum premium stipulated herein whichever is the greater.

If this Insurance shall be cancelled by or on behalf of the Underwriters the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the pro rata proportion of any Minimum premium stipulated herein whichever is the greater.

Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

9.    <u>SERVICE ORGANIZATION</u>:

Insurance afforded by this Insurance is issued to the Assured on the express condition that the Assured undertakes to utilize at all times the services of Gallagher Bassett Insurance Service, The Tower, Golf Road, Rolling Meadows, Illinois 60008.

10.    <u>NOTIFICATION OF CLAIMS</u>:

The Assured upon knowledge of any occurrences likely to give rise to a claim hereunder shall give immediate written advice thereof to Underwriters through Arthur J. Gallagher & Co., The Tower, Golf Road, Rolling Meadows, Illinois 60008.

11.   FRAUDULENT CLAIMS:

If the Assured shall make any claim knowing the same to be false or
fraudulent as regards amount or otherwise, this Insurance shall become
void and all claim hereunder shall be forfeited.

HEREON:   100%

ATTACHING TO AND FORMING PART OF COVER NOTE NO.   SL 3311

DATED:   March 9, 1978

ARTHUR J. GALLAGHER & CO.(ILLINOIS)

By   _Louis E Metzger Jr_

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

| | |
|---|---|
| Insurer(s): | Midland Ins Co |
| Policy number(s): | UL 388732 |
| Inception date: | 10/1/1976 |
| Term at issuance: | 1 year |
| Page count: | 10 |
| Contents: | Declarations- 2 pgs |
| | Policy jacket- 4 pgs |
| | Endorsement- 4 pgs |

Policy Number   Part 2
Renewal of   New                                UMBRELLA POLICY

388732

 **MIDLAND INSURANCE COMPANY**

(a stock company, herein called the Company)
One State Street Plaza, New York, New York 10004

## DECLARATIONS

1. **Named Insured:**

    ROMAN CATHOLIC DIOCESE OF ROCKVILLE
    CENTRE, AND ALL LEGAL ENTITIES THEREIN,
    OVER WHICH THE SAME CENTRAL AUTHORITY
    APPOINTS OR CONTROLS THE APPOINTMENT OF
    THE BOARD OF TRUSTEES OR SIMILAR BODY
    AND EXERCISES DIRECT, COMPLETE AND ACTIVE
    CONTROL OVER THR FINANCES, PROPERTIES,
    OPERATIONS AND ACTIVITIES.

   **Producer:**

    STEWART SMITH MID AMERICA, INC.
    125 South Wacker Drive
    Chicago, Illinois  60606

2. Address

    253 Sunrise Highway
    Rockville Centre, N.Y.

3. Policy Period:    From 12:01 A.M.,  October 1, 1976
                     to    12:01 A.M.,  October 1, 1977
                     standard time at the address of the Insured as stated herein

4. Schedule of Underlying Insurance:   See Endorsement No. 1

5. Retained Limit:              $    10,000

6. Limit of Liability:
                          (a) $ 5,000,000    each occurrence
                          (b) $ 5,000,000    aggregate

7. Premium:
              (a) Flat Charge        $
              (b) Deposit Premium:   $ $17,000.00

              (c) Minimum Premium:   $ $17,000.00
              (d) Rate:
              (e) Audit Reporting Period:
                  Annual unless otherwise stated.

MIDLAND INSURANCE COMPANY

Chicago, Ill./October 28, 1976
_____
Countersignature                Date

UND 200 A REV. 1/74

ORIGINAL

4. Schedule of Underlying Insurance:

| Carrier | Coverage | Limits | |
|---|---|---|---|
| Underwriters at Lloyd's, London and Certain British Ins. Co's. | Workmen's Comp. Incl.<br>A. Employers' Liability and Occupational Disease | $ 100,000 | one accident |
| | B. Comprehensive Auto Liability | Bodily Injury Liability | |
| | | $   NIL | each person |
| | | $ | each occurrence |
| | | Property Damage Liability | |
| | | $ | each occurrence |
| Underwriters at Lloyd's, London and Certain British Ins. Co's. | C. Comprehensive General Liability | Bodily Injury and Property Damage Liability Combined | |
| | | $ 200,000 | each occurrence |
| | | $ 200,000 | aggregate |
| | | Bodily Injury Liability | |
| | | $ | each person |
| | | $ | each occurrence |
| | | $ | aggregate |
| | | Bodily Injury Liability | |
| | | $ | each occurrence |
| | | $ | aggregate |
| | | Property Damage Liability | |
| | | $ | each occurrence |
| | | $ | aggregate |
| | | Personal Injury Liability | |
| | | $ 200,000 | each person aggregate |
| | | $ 200,000 | general aggregate |
| | | Hospital Professional Liability | |
| | | $ | each claim |
| | | $ | aggregate |

The General Liability coverage includes the following, as indicated:

☒ Products and Completed Operations Liability Coverage     ☒ X.C.U. Liability Coverage

☐ Designated Contractual Liability Coverage     ☒ Blanket Contractual Liability Coverage

☒ Broad Form Property Damage Liability Coverage     ☒ Errors & Omissions

☒ Comprehensive Auto Liability     ☒ Care, Custody or Control

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

*(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)*

Endorsement Effective October 1, 1976    Policy No. UL 388732    Endorsement No. One.

Named Insured    DIOCESE OF ROCKVILLE CENTER

Countersigned Chicago,Ill./October 28, 1976     MIDLAND INSURANCE COMPANY

--------------------------------------
Authorized Representative

UND 200 A (4/76) 1M     **ORIGINAL**

President

# UMBRELLA POLICY

STOCK COMPANY



# MIDLAND INSURANCE COMPANY

One State Street Plaza, New York, New York 10004

(a stock company, herein called the Company)

DIOCESE OF ROCKVILLE CENTER
Policy #UL 388732

Agrees with the Insured named in the Declarations made a part hereof, in consideration of the payment of the premium and subject to all of the terms of this policy, as follows:

## INSURING AGREEMENTS

**I. Coverage:** The Company hereby agrees to indemnify the Insured against such ultimate net loss in excess of the Insured's primary limit as the Insured sustains by reason of liability, imposed upon the Insured by law or assumed by the Insured under contract, for damages because of personal injury or property damage to which this policy applies, caused by an occurrence anywhere in the world.

**II. Defense:** If no other insurer has the right and duty to do so, the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, but the Company shall not be obligated to defend any suit after the Company's liability has been exhausted; Provided that:

(a) In connection with the aforesaid right and duty to defend, the Company may make such investigation and settlement of any claim or suit as it deems expedient, including payment on behalf of the Insured of part or all of the Insured's primary limit. In the event of such payment of part or all of the Insured's primary limit, the Insured shall promptly reimburse the Company therefor upon notice of the action taken.

(b) If the Company is prevented by law or otherwise from defending the Insured as aforesaid, the Company will reimburse the Insured for defense costs and expenses incurred with the written consent of the Company.

(c) Amounts incurred by the Company in connection with defense of the Insured as aforesaid except settlements of claims and suits, are payable by the Company in addition to the Company's limit of liability.

When another insurer has the duty to defend the Insured against any such suit, the Company shall have the right at its own expense to associate with the Insured in the defense thereof, and the Insured shall cooperate fully with such insurer and the Company in all things in connection therewith.

**III. Persons Insured:** The unqualified word "Insured" includes not only- the Named Insured but also:

(a) any officer, director or stockholder of the Named Insured while acting within the scope of his duties as such, and, if the Named Insured is or includes a partnership or joint venture, any partner or member thereof but only with respect to his liability as such;

(b) except with respect to the ownership, maintenance, use, loading or unloading of any automobile, aircraft or watercraft, (1) any employee of the Named Insured while acting within the scope of his duties as such, and (2) any person or organization while acting as agent with respect to real estate management for the Named Insured;

(c) any person, organization, trustee or estate to whom the Named Insured is obligated by virtue of a written contract or agreement to provide coverage such as is afforded by this policy, but only with respect to operations by or on behalf of the Named Insured or to facilities owned or used by the Named Insured;

(d) with respect to any automobile, aircraft or watercraft owned by or hired for use in behalf of the Named Insured, any person while using such automobile, aircraft or watercraft or any person or organization legally responsible for the use thereof, provided the actual use of such automobile, aircraft or watercraft is with the permission of the Named Insured, but none of the following, other than the Named Insured, shall be an Insured under this subdivision (d):

(1) any person or organization, or any agent or employee thereof, operating a marina, automobile repair shop, public garage, sales agency, service station, or public parking place, with respect to any occurrence arising out of the operation thereof;

(2) any manufacturer of aircraft, aircraft engines, or aviation accessories, or any aviation sales or service or repair organization or airport or hangar operator or their respective employees or agents, with respect to any occurrence arising out of the operation thereof;

(3) with respect to any hired automobile, aircraft or watercraft, the owner or lessee (of whom the Named Insured is a sub-lessee) thereof or any agent or employee of such owner or lessee;

(4) with respect to any occurrence arising out of the loading or unloading of any such automobile, any person or organization other than a lessee or borrower of the automobile or any employee of the Named Insured or of such lessee or borrower;

(e) any other person or organization:

(1) named in the underlying insurance listed in Item 4 of the Declarations as of the effective date of this policy;

(2) added to the underlying insurance during the currency of this policy if the Named Insured notifies the Company within thirty days following the effective date of such addition to such underlying insurance:

but not for broader coverage than is available to such person or organization under such underlying insurance. The Named Insured shall pay any additional premium required because of the application of this indemnity to such additional insured;

**Provided that:** (1) No person shall be an Insured under this policy with respect to personal injury to any fellow employee of such person injured in the course of his employment except with respect to personal injury for which liability insurance is afforded to such person by a policy of underlying insurance listed in Item 4 of the Declarations; and (2) This indemnity does not apply to personal injury or property damage arising out of (i) the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not named in Item 1 of the Declarations, or (ii) if the Named Insured is or includes a partnership, an automobile owned by or registered in the name of a partner thereof, except insofar as coverage is available to such Named Insured under the underlying insurance listed in Item 4 of the Declarations.

**IV. Insured's Primary Limit:** The Insured's primary limit with respect to each occurrence shall be an amount of ultimate net loss equal to:

(a) in respect of damages covered by the underlying insurance listed in Item 4 of the Declarations, the sum of (1) the amount of the applicable limits of such insurance, and (2) the amount recoverable by the Insured under any other insurance available to the Insured; and

(b) in respect of damages not covered by the underlying insurance listed in Item 4 of the Declarations, the greater of (1) the amount recoverable by the Insured under any other insurance available to the Insured, or (2) the amount stated in Item 5 of the Declarations.

In the event of a reduction or exhaustion of the aggregate limit of liability under Item 4 of the Declarations, this policy shall:

(a) in the event of a reduction, pay the excess of the reduced underlying limit;

(b) in the event of exhaustion, continue in force as underlying insurance.

The underlying insurance listed in Item 4 of the Declarations shall be deemed to be effective to the full extent of the limits stated therein irrespective of whether such underlying insurance is in force when the occurrence takes place, irrespective of any defense which the underlying insurer may assert because of failure to comply with any condition of its policy and irrespective of the inability of the underlying insurer to pay by reason of bankruptcy or insolvency.

**V. Company's Limit of Liability:** Regardless of the number of (a) Insured's under this policy, (b) persons or organizations who sustain injury or damage, (c) claims made or suits brought on account of personal injury or property damage, the limit of liability in Item 6 (a) of the Declarations is the limit of the Company's liability for all ultimate net loss as the result of any one occurrence.

There is no limit to the number of occurrences for which claims may be made, except that the limit of liability stated in Item 6 (b) of the Declarations is the total limit of the Company's liability for all ultimate net loss in respect of all personal injury and property damage which occurs during the policy period and arising out of the products hazard or the completed operations hazard or both combined. If this policy is issued for more than one year, this aggregate limit of liability applies separately to each consecutive annual period of this policy, or if the last consecutive period is less than 12 months, to such period of less than 12 months.

**VI. Products and Completed Operations Hazards:** The "products hazard" includes personal injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others.

The "completed operations hazard" includes personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times: (a) when all operations to be performed by or on behalf of the Named Insured under the contract have been completed, (b) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed, or (c) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise completed shall be deemed completed. The completed operations hazard does not include personal injury or property damage arising out of (a) operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof, or (b) the existence of tools, uninstalled equipment or abandoned or unused materials.

**VII. Definitions:** When used in this policy (including endorsements forming a part hereof):

(a) "Insured" means any person or organization qualifying as an Insured under the provisions of Section III hereof. The indemnity afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of the Company's liability;

(b) "Named Insured's products" means goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, including any container thereof (other than a vehicle), but "Named Insured's products" shall not include a vending machine or any property other than such container, rented or located for use of others but not sold;

(c) "occurrence" means an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the Insured. All personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence;

(d) "personal injury" means bodily injury, including death at any time resulting therefrom, mental injury, mental anguish, shock, sickness, disease, or disability; injury arising out of false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution, humiliation, libel, slander, defamation of character, or invasion of rights of privacy, which occurs during the policy period. The term "personal injury" shall also include, when committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast during the policy period, and arising out of the Named Insured's advertising activities, injury arising out of: (1) infringement of copyright or of title or of slogan, and (2) piracy or unfair competition or idea misappropriation under an implied contract;

(e) "property damage" means (1) physical injury to or destruction of tangible property, which occurs during the policy period, including loss of use thereof at any time resulting therefrom; or (2) loss of use of tangible property, which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;

(f) "ultimate net loss" means the total sum which the Insured, or any company as his insurer, or both, become obligated to pay as damages, including damages for care and loss of services, because of personal injury or property damage, either through adjudication or compromise with the written consent of the Company.

## EXCLUSIONS

**VIII. This policy shall not apply:**

(a) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(b) to the ownership, maintenance, use, loading or unloading of any aircraft or watercraft owned by the Named Insured, but this exclusion does not apply insofar as coverage is available to the Insured under the underlying insurance listed in Item 4 of the Declarations;

(c) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(d) to loss of use of tangible property which has not been physically injured or destroyed, resulting from:

  (1) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or

  (2) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;

(e) to personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

(f) to property damage to (1) property owned by the Named Insured, (2) the Named Insured's products or work on such products or any part of such products, or (3) work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(g) with respect to liability assumed by the Insured under contract, to (1) property damage to property rented to, occupied or used by or in the care, custody or control of the Insured, if such liability is greater or broader than the Insured's common law or statutory liability therefor;

(h) with respect to advertising activities, to damages claimed for (1) breach of contract other than an implied contract to pay for the misappropriation of an idea, (2) infringement or misappropriation of a trademark, service mark or trade name, (3) incorrect description of any article or commodity, or (4) mistake in advertised price;

(i) to punitive or exemplary damages awarded against the insured.

# NUCLEAR INCIDENT EXCLUSION CLAUSE

**IX. It is agreed this policy shall not apply to personal injury or property damage:**

(a) with respect to which an Insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous property of nuclear material and with respect to which;

    (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

    (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

(c) resulting from the hazardous properties of nuclear material, if

    (1) the nuclear material (i) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (ii) has been discharged or dispersed therefrom; or

    (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

    (3) the personal injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph (3) applies only to property damage to property at such nuclear facility.

As used herein: "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under sub-paragraph (a) or (b) thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material; "property damage" includes all forms of radioactive contamination of property.

# CONDITIONS

**X. This policy is subject to the following conditions:**

(a) Premium. If the Premium is stated in the Declarations as a flat premium charge the premium is not subject to adjustment except as hereinafter provided.

If the premium is stated in the Declarations as other than a flat premium charge, the deposit premium is an advance premium which shall be credited to the amount of the earned premium due at the end of the policy period.

At the close of each period (or part thereof terminating with the end of the policy period) designated in the Declarations as the audit reporting period the earned premium for such period shall be computed in accordance with the rates and minium premium stated in the Declarations, and upon notice thereof to the Named Insured shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the Company shall return to the Named Insured the unearned portion paid by the Named Insured.

Appropriate additional premium shall be payable with respect to any additional Named Insured and any person who or organization which becomes an Insured under the provisions of Section III (e).

The Named Insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

(b) Maintenance of Underlying Insurance. The underlying insurance listed in Item 4 of the Declarations shall be maintained in full effect during the currency of this policy except for any reduction of the aggregate limit or limits applicable thereto solely by payment of claims in respect of personal injury or property damage which occurs during the period of this policy.

Failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Company shall only be liable to the same extent as it would have been had the Insured complied with this condition.

Upon notice that any aggregate limit of liability under any policy of underlying insurance has been exhausted, the Named Insured shall immediately make all reasonable efforts to reinstate such limits. The Named Insured shall give the Company written notice as soon as practicable of any change in the scope of coverage or in the amount or limits of insurance under any policy of underlying insurance, and of the termination of any coverage or exhaustion of aggregate limits of any underlying insurer's liability.

(c) Inspection and Audit. The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation. The Company may examine and audit the Insured's books and records at any time during the policy period and within three years after the final termination of this policy or within one year after final settlement of all claims arising out of personal injury or property damage which occurs during the period of this policy, as far as they relate to the subject matter of this indemnity.

(d) Insured's Duties in the Event of Occurrence, Claim or Suit. In the event of an occurrence, which in the judgment of the Insured is likely to involve the liability of the Company hereunder, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company as soon as practicable.

If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representatives.

The Insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of personal injury or property damage with respect to which indemnity is afforded under this policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

(e) Appeals. In the event the Insured or the Insured's underlying insurers elect not to appeal a judgment in excess of the Insured's primary limit, the Company may elect to make such appeal at its cost and expense, and shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in Item 6 (a) of the Declarations for any one occurrence.

(f) Loss Payable. Liability under this policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer, shall have paid the amount of the Insured's primary limit on account of such

occurrence. The Insured shall make a definite claim for any loss for which the Company may be liable under this policy within 12 months after the Insured shall have been paid an amount of ultimate net loss in excess of the Insured's primary limit or after the Insured's liability shall have been fixed and rendered certain either by final judgment against the Insured after actual trial or by written agreement of the Insured, the claimant, and the Company. If any subsequent payments shall be made by the Insured on account of the same occurrence, additional claims shall be made similarly from time to time. Such losses shall be due and payable within 30 days after they are respectively claimed and proven in conformity with this policy.

(g) Bankruptcy and Insolvency. In the event of the bankruptcy or insolvency of the Insured or any entity comprising the Insured, the Company shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolvency.

(h) Other Insurance. The indemnity afforded by this policy shall apply in excess of all other insurance or indemnity available to the Insured except insurance or indemnity purchased by the Named Insured specifically to apply in excess of the Company's limit of liability hereunder.

(i) Subrogation. In case of any payment hereunder, the Company will act in concert with all other interests (including the Insured) concerned, in the exercise of the Insured's rights of recovery therefor against any person or organization. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Insured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Insured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Insured) concerned, in the ratio of their respective recoveries as finally settled.

(j) Changes. Notice to or knowledge possessed by any person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by the Company.

(k) Assignment. Assignment of interest under this policy shall not bind the Company unless and until its consent is endorsed hereon.

(l) Cancellation. This policy may be cancelled by the Named Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Named Insured at the address shown in this policy written notice stating when not less than 30 days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or the Company shall be the equivalent to mailing.

If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

The Insured first named in Item I of the Declarations shall be deemed to be the agent of all other Insureds with respect to the giving and receiving of notice of cancellation and to receiving any return premium that may become payable under this policy.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary and countersigned on the Declarations page by an authorized representative of the Company.

MIDLAND INSURANCE COMPANY

Karl E. Djerf, Secretary

James P. Craig, President

## ENDORSEMENT

Effective Date _____ October 1, 1976 _____

IT IS NOTED AND AGREED THAT THE FOLLOWING EXTENSION OF LIABILITY IS INCLUDED IN THE UMBRELLA WORDING, AS AGREED BY THE UNDERLYING CARRIER:

THE COMPANY AGREES, SUBJECT TO THE TERMS AND CONDITIONS HEREOF, TO INDEMNIFY THE ASSURED (AS HEREINAFTER DEFINED) AGAINST ANY CLAIM OR CLAIMS MADE AGAINST THEM INDIVIDUALLY OR COLLECTIVELY DURING THE PERIOD OF THIS INSURANCE, BY REASON OF A WRONGFUL ACT, ERROR OR OMISSION, WHENEVER OR WHEREVER COMMITTED OR ALLEGED TO HAVE BEEN COMMITTED WHILE ACTING IN THEIR CAPACITY AS TRUSTEE, DIRECTOR OR COUNCIL MEMBER IN A DIOCESAN CONNECTED ENTITY.

IT IS FURTHER AGREED:

(1) THERE SHALL BE NO LIABILITY HEREUNDER FOR ANY CLAIM MADE AGAINST THE ASSURED FOR WRONGFUL ACT, ERROR OR OMISSION COMMITTED OR ALLEGED TO HAVE BEEN COMMITTED PRIOR TO JUNE 1, 1976 (HEREINAFTER REFERRED TO AS THE "RETROACTIVE DATE").

(2) IN THE EVENT OF NON-RENEWAL OR TERMINATION OF THIS INSURANCE, THEN THE INSURANCE SHALL EXTEND TO APPLY TO CLAIMS MADE AGAINST THE ASSURED DURING THE TWELVE (12) CALENDAR MONTHS FOLLOWING IMMEDIATELY UPON SUCH EXPIRATION OR TERMINATION, BUT ONLY FOR WRONGFUL ACT, ERROR OR OMISSION, COMMITTED OR ALLEGED TO HAVE BEEN COMMITTED BETWEEN THE RETROACTIVE DATE AND SUCH EXPIRATION OR TERMINATION.

THE TERM ASSURED AS USED HEREIN SHALL MEAN THE NAMED ASSURED AND ALL PERSONS WHO WERE, NOW ARE OR SHALL BE APPOINTED OR ELECTED TRUSTEE, DIRECTOR OR COUNCIL MEMBER IN ANY PARISHES, SCHOOLS, CEMETERIES, AND OTHER AGENCIES OR DIRECTLY CONNECTED ORGANIZATIONS OF THE DIOCESE.

THE COMPANY SHALL NOT BE LIABLE TO MAKE PAYMENT FOR LOSS IN CONNECTION WITH ANY CLAIM MADE AGAINST THE ASSURED IF A JUDGMENT OR FINAL ADJUDICATION IN ANY ACTION BROUGHT AGAINST THE ASSURED SHALL BE BASED ON A DETERMINATION THAT ACTS OF FRAUD OR DISHONESTY WERE COMMITTED BY THE ASSURED.

IT IS AGREED EXCLUSION (A) IS HEREBY DELETED AND THE FOLLOWING EXCLUSION SUBSTITUTED IN LIEU THEREOF:

EXCEPT INSOFAR AS COVERAGE IS AVAILABLE TO THE ASSURED IN THE UNDERLYING INSURANCE AS SET FORTH IN THE ATTACHED SCHEDULE, THIS POLICY SHALL NOT APPLY –

TO ANY OBLIGATION FOR WHICH THE ASSURED OR ANY COMPANY AS ITS INSURER MAY BE HELD LIABLE UNDER ANY WORKMEN'S COMPENSATION, UNEMPLOYMENT COMPENSATION OR DISABILITY BENEFITS LAW PROVIDED, HOWEVER, THAT THIS EXCLUSION DOES NOT APPLY TO LIABILITY OF OTHERS ASSUMED BY THE NAMED ASSURED UNDER CONTRACT OR AGREEMENT.

Effective _____ October 1, 1976 _____ 12:01 AM Standard Time, this Endorsement No. _____ 2 _____
attached to and made a part of Policy No. ___ UL 388732 ___ of ___ **MIDLAND INSURANCE COMPANY** ___
issued to _____ DIOCESE OF ROCKVILLE CENTER _____

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

10/28/76
1rb

........................................
Karl E. Djerf, Secretary

........................................
James P. Craig, President

By _____
Authorized Representative

FORM UND. NO. 262 (4/76) 10M
REPLACES UND. NO. 45

ORIGINAL

**ENDORSEMENT**

Effective Date ___OCTOBER 1, 1976___

IT IS AGREED THAT THE "NAMED INSURED" INCLUDES ALL
INSUREDS AND ADDITIONAL INTERESTS NAMED IN CERTIFICATE
OF INSURANCE APPLYING TO AUTO LIABILITY FOR THE PERSONAL
AUTOS OF PRIESTS AND NUNS.  THESE CERTIFICATES SHALL BE
ON FILE WITH GALLAGHER-BASSET OF N.Y., INC.

Effective ___OCTOBER 1, 1976___ 12:01 AM Standard Time, this Endorsement No. ___3___
attached to and made a part of Policy No. ___UL 388732___ of ___**MIDLAND INSURANCE COMPANY**___
issued to ___DIOCESE OF ROCKVILLE CENTER___

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations
of this policy other than as above stated.

1/27/77:jms

........................................
Karl E. Djerf, Secretary

........................................
James P. Craig, President

By _____
Authorized Representative

FORM UND. NO. 262 (4/76) 10M
REPLACES UND. NO. 45

ORIGINAL

**ENDORSEMENT**

Effective Date _____October 1, 1976_____

In consideration of the premium charged, it is hereby understood and agreed that the following are added as Additional Named Insureds:

BISHIP JOHN R. MC GANN
AUXILLARY BISHOP VICENT J. BALDWIN
AUXILLARY BISHOP GERALD J. RYAN
AUXILLARY BISHOP JAMES J. DALY
BISHOP EMERITUS WALTER P. KELLENBERG

Effective _October 1, 1976_____ 12:01 AM Standard Time, this Endorsement No. __4____

attached to and made a part of Policy No. _UL 388732_____ of ____**MIDLAND INSURANCE COMPANY**___

issued to _DIOCESE OF ROCKVILLE CENTER_____

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

6/23/77
to

........................................................
Karl E. Djerf, Secretary

By_____
Authorized Representative

........................................................
James P. Craig, President

FORM UND. NO. 262 (4/76) 10M
REPLACES UND. NO. 45

**ORIGINAL**

IT IS AGREED THAT THE FOLLOWING PROVISIONS ARE AMENDED AS FOLLOWS:


VII -- DEFINITIONS   (d)  "personal injury" means bodily injury,
including death at any time resulting therefrom,
mental injury, mental anguish, shock, sickness,
disease, or disability; injury arising out of
false arrest, false imprisonment, wrongful eviction,
detention, discrimination, malicious prosecution,
humiliation, libel, slander, defamation of character,
or invasion of rights of privacy, which occurs during
the policy period.  The term "personal injury" shall
also include, when committed or alleged to have been
committed in any advertisement, publicity article,
broadcast or telecast during the policy period, and
arising out of the Named Insured's advertising
activities, injury arising out of:  (1) infringement
of copyright or of title or of slogan, and (2) piracy
or unfair competition or idea misappropriation under
an implied contract.

Effective _____ OCTOBER 1, 1976 _____ 12:01 AM Standard Time, this Endorsement No. ___5___

attached to and made a part of Policy No. ____ UL 388732 _____ of _____ MIDLAND INSURANCE COMPANY _____

issued to ____ DIOCESE OF ROCKVILLE CENTER _____

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

---------------------------------------
C.J. Duffy, Secretary

---------------------------------------
M.S. Chenault, President

By _____
Authorized Representative

**ORIGINAL**

FORM UND 262 (6/77) 10M

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

|  |  |
|---|---|
| Insurer(s): | Interstate Fire & Casualty Co |
| Policy number(s): | 183-152625 |
| Inception date: | 10/1/1978 |
| Term at issuance: | 1 year |
| Page count: | 7 |
| Contents: | Declaration- 1 pg<br>Form 183 (Rev. 12/77)- 3 pgs<br>Endorsement- 3 pgs |

| Item | DECLARATIONS | POLICY NUMBER 183-152625 |
|---|---|---|
| 1. | *Name of Insured*<br><br>ADDRESS: | Diocese of Rockville Centre,<br>New York, Etal.,(See Endt. #1)<br>50 North Park Avenue<br>Rockville Centre, New York 11570 |
| 2. | Policy Period: 12:01 A.M., Standard Time at the Address of the Named Insured as Stated Herein.    From: | October 1, 1978  To: October 1, 1979 |
|  | REPRESENTATIVE:    Agent or Broker<br>Office Address<br>Town and State | Bowes & Company, Inc.<br>135 S. LaSalle St.<br>Chicago, Illinois  60603 |
|  | The operation of the insured is | Catholic Diocese |

POLICY NUMBER 183-152625

# INTERSTATE FIRE & CASUALTY COMPANY

### CHICAGO, ILLINOIS

| 3. | Schedule of Underlying Insurance: Insurer and Policy Number | Underwriters at Lloyds, London & Various other Insurers (Policy # to be advised) |
|---|---|---|

4. Limits of Liability: The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

| | | COLUMN I | IN EXCESS OF | COLUMN II | COLUMN III |
|---|---|---|---|---|---|
| | Coverage | Company Limits | | Underlying Limits | Total Limits |
| A | Bodily Injury | $ | Each Person | $ | $ |
| | Automobile | $ | Each Occurrence | $ | $ |
| B | Bodily Injury | $ | Each Occurrence | $ | $ |
| | Except Automobile | $ | Aggregate | $ | $ |
| C | Property Damage Automobile | $ | Each Occurrence | $ | $ |
| D | Property Damage | $ | Each Occurrence | $ | $ |
| | Except Automobile | $ | Aggregate | $ | $ |
| E | Combined Single Limit Bodily Injury and Property Damage Automobile | $ | Each Occurrence | | $ |
| F | Combined Single Limit Bodily Injury and Property Damage— Except Automobile | $<br>$    See Endt. #2 | Each Occurrence<br>Aggregate | $<br>$ | $<br>$ |

Endorsements and Additional Coverage Parts    (IDENTIFY BY FORM NUMBERS)

Endt. #1 & #2

$

The insurance afforded is only with respect to such of the above coverages as are indicated but such coverages shall not apply with respect to any automobile owned by the named insured unless such automobile is described herein or is a replacement of a described automobile.

DESCRIPTION OF AUTOMOBILE (Year, Make, Serial No.)

| 1. | | 2. | |
|---|---|---|---|

5. Premium Computation

| Premium Basis | Estimated Exposure | Rate | Advance Premium |
|---|---|---|---|
| | | | $223,000.00<br>      8,028.00 3.6%Ta.<br>$231,028.00 Total<br>Flat Charge |

Minimum Premium $

Countersigned by _____    Billed 11-77-78    $223,000.

Authorized Representative

# INTERSTATE FIRE & CASUALTY COMPANY

### EXECUTIVE OFFICES
### CHICAGO, ILLINOIS

(A stock insurance company, herein called the company)

Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

## PART I — INSURING AGREEMENTS

**1. Excess Liability Indemnity**

To indemnify the insured for the amount of loss which is in excess of the applicable limits of liability of the underlying insurance inserted in column II of item 4 in the declarations; provided that this policy shall apply only to those coverages for which a limit of liability is inserted in column I; provided further that the limit of the company's liability under this policy shall not exceed the applicable amount inserted in column I.

The provisions of the immediate underlying policy are incorporated as a part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to the same, the amount of the limits of liability, any "other insurance" provision and any other provisions therein which are inconsistent with the provisions of this policy.

If the applicable coverage in the immediate underlying policy insures accidents rather than occurrences, then "accident" is substituted for "occur-

rence" in the applicable coverage of this policy.

**2. Policy Period: Termination of Underlying Insurance**

This policy applies to injury or destruction taking place during this policy period, provided that when the immediate underlying policy insures occurrences taking place during its policy period, instead of injury or destruction taking place during its policy period, then this policy likewise applies to occurrences taking place during this policy period and "occurrences" is substituted for "injury or destruction" in Part III of this policy.

If the immediate underlying policy is canceled, this policy likewise is canceled effective on the same date at the same time and without notice to the insureds. If the immediate underlying policy otherwise ceases to apply (for reasons other than the exhaustion of an aggregate limit of liability), this policy likewise ceases to apply to the same extent on the same date at the same time and without notice to the insureds.

## PART II — DEFINITIONS

**1. Immediate Underlying Policy**

"Immediate underlying policy" means the policy of the underlying insurance which provides the layer of coverage, whether primary or excess, immediately preceding the layer of coverage provided by this policy.

**2. Loss**

"Loss" means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable, after making deductions for all recoveries, salvages and other insurances (whether

recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy. "Loss" does not include investigation, adjustment, defense or appeal costs and expenses nor costs and expenses incident to any of the same, notwithstanding that the underlying insurance may provide insurance for such costs and expenses.

**3. Underlying Insurance**

"Underlying insurance" means the insurance policies listed in item 3 in the declarations and includes any renewal or replacement of such policies.

## PART III

## PROVISIONS GOVERNING THE APPLICATION OF THE AGGREGATE LIMITS OF LIABILITY

**1. Reduction of the Aggregate**

This provision applies only if this policy contains an aggregate limit of liability which applies to the occurrence.

If the "each occurrence" limit of liability of the underlying insurance is less than as stated in column II in item 4 in the declarations because the aggregate limits of liability of the underlying insurance have been reduced, this policy becomes excess of such reduced limit of liability if such reduction is solely the result of injury or destruction occurring after the inception date of this policy and not before. Nothing contained herein shall operate to increase the limit of the company's liability.

**2. Application of the Aggregate to Separate Projects**

To the extent that the aggregate limits of liability of the immediate underlying policy apply separately to various operations, projects, locations, hazards or types of injury, the aggregate limits of liability of this policy likewise apply separately to such operations, projects, locations, hazards or types of injury.

**3. Application of the Aggregate to Periods of Time**

The aggregate limits of liability of this policy apply separately to each aggregate period. The first aggregate period of this policy begins on the effective date of this policy and ends on the next termination date of the aggregate period of the immediate underlying policy. Any succeeding aggregate period of this policy is concurrent with the aggregate period of the immediate underlying policy unless it is the final aggregate period. The final aggregate period of this policy begins on the termination date of the aggregate period of the immediate underlying policy immediately preceding the expiration date of this policy and ends on the expiration date of this policy.

This paragraph does not apply if the expiration date of this policy and the expiration date or anniversary date of the immediate underlying policy are identical. If this policy is a renewal of a similar policy underwritten by this company, the applicable aggregate limit of liability of this policy for the first period shall be reduced by any amounts paid or payable on account of injury or destruction taking place during the final aggregate period of the policy renewed. The final aggregate period of the policy renewed shall be determined in the same manner as the final aggregate period for this policy.

EXCESS
LIABILITY
POLICY
PROVISIONS
PART ONE

## PART IV — NUCLEAR ENERGY LIABILITY EXCLUSION

The following exclusion applies in addition to those stated as applicable in the Primary Insurance.

This policy does not apply:

1. Under any Liability Coverage, to injury, sickness, disease, death or destruction
   (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Medical Expense Coverage, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

3. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion

(c) applies only to injury to or destruction of property at such nuclear facility.

As used in this exclusion:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

**1. Underlying Insurance — Changes During this Policy Period**

Any change in coverage in the underlying insurance shall be promptly reported to the company and the insured shall, upon request, furnish the company with copies of such changes.

Any change in the premium for the underlying insurance shall be promptly reported to the company and the premium for this policy, subject to the minimum premium, may be adjusted in accordance with the manuals of the company then in effect.

**2. Notice of Loss; Participation in Defense by the Company**

Notice of an occurrence which appears likely to involve this policy shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. The company at its own option may, but is not required to, participate in the investigation, settlement or defense of any claim or suit against the insured.

**3. Action Against Company**

No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy.

Any person or organization or the legal representative thereof who has secured a judgment against the insured shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability. Any payments by the company under this condition 3 shall discharge the company's obligation to the insured to the extent of such payments.

Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.

**4. Subrogation and Other Recoveries**

In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after the occurrence to prejudice such rights.

Because this policy affords excess coverage, the insured's right of recovery cannot always be exclusively subrogated to the company. It is, therefore, agreed that the company shall act in concert with all other interests concerned, including the insured, in the enforcement of any subrogation rights or in the recovery of amounts by any other means. The apportioning of any amounts so recovered shall follow in the principle that any interest, including the insured, that shall have paid an amount over and above any payment under this policy shall first be reimbursed up to the amount paid by such interest; the company shall then be reimbursed out of any balance then remaining up to the amounts paid as the result of loss covered under this

policy and lastly the interests, including the insured, of whom this coverage is in excess are entitled to claim any residue remaining. Expenses and costs necessary to the recovery of any such amounts shall be apportioned between the interests concerned, including the insured, in the ratio of their respective recoveries or, in the event of a totally unsuccessful attempt to recover, in the ratio of the respective amounts sought to be recovered.

**5. Other Insurance**

This condition does not apply with respect to the underlying insurance or excess insurance purchased specifically to be in excess of this policy.

If, with respect to a loss covered hereunder, the insured has other insurance, whether on a primary, excess or contingent basis, there shall be no insurance afforded hereunder as respects such loss; provided, that if the applicable limit of liability of this policy is greater than the applicable limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to give the insured, as respects the layer of coverage afforded by this policy, a total limit of liability equal to the applicable limit of liability afforded by this policy.

**6. Cancellation**

This policy may be canceled by the named insured by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in the declarations written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

If the named insured cancels, earned premium or minimum premium, whichever is greater, shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium or minimum premium, whichever is greater, shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**7. First Named Insured**

The insured first named in item 1 in the declarations is authorized to act on behalf of all named insureds and other insureds with respect to the giving and receiving of notice of cancellation and to receiving any return premium that may become payable under this policy. The insured first named in item 1 in the declarations is responsible for the payment of all premiums but the other named insureds jointly and severally agree to make such premium payments in full if the insured first named in item 1 fails to pay the amount due within thirty days after the company gives a written demand for payment to the insured first named in item 1.

IN WITNESS WHEREOF, the company has caused this policy to be signed by its president and secretary, but this policy shall not be valid unless completed by the attachment hereto of a declarations page designated as Part Two and countersigned on the aforesaid declarations page by a duly authorized agent of the company.

*Eldred M. Koenig* Secretary.

*Robert W Bud* President

E N D O R S E M E N T   N O.   1

It is hereby understood and agreed that the Name of the Insured is to read as follows:

> Roman Catholic Diocese of Rockville Centre and all Legal Entities therein and including all Affiliated Parishes, Schools Institutions and Agencies.

All other terms and conditions remain unchanged.

Attached to and forming part of No. 183-152625

Issued to Diocese of Rockville Centre, New York, etal.

Effective 10-1-78

[x] INTERSTATE FIRE & CASUALTY COMPANY

[ ] CHICAGO INSURANCE COMPANY

By

IFC-CIC-3 (10-71)

# ENDORSEMENT NO.   2

## Company Limits

Difference between underlying including self insured retention (combined total of which $200,000.00 General Liability and Auto Liability any one occurrence except workers compensation $150,000.00 any one occurrence) and $5,000,000.00 General Liability and Auto Liability and worker's Compensation combined.

All other terms and conditions remain unchanged.

Attached to and forming part of No. _____ 183-152625 _____

Issued to _Diocese of Rockville Centre,New York,etal._

Effective _____ 10-1-78 _____

IFC-CIC-3 (10-71)

[x] INTERSTATE FIRE & CASUALTY COMPANY

[ ] CHICAGO INSURANCE COMPANY

By_____

It is hereby understood and agreed that the definition of loss is amended to read as follows:

"Loss" means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable, after making deductions for all recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy. "Loss" includes investigation, adjustment, defense or appeal costs, and expenses, costs and expenses incident to any of the same, notwithstanding that the underlying insurance may provide insurance for such costs and expenses.

It is further understood and agreed that the cancellation provision is amended to read as follows:

This policy may be canceled by the company by mailing to the named insured at the address shown in the declarations written notice stating when not less than 60 days thereafter such cancellation shall be effective.

It is further understood and agreed that item No. 4 (Description of Automobile), section 1 is hereby completed to read as follows:

"All Owned Autos"

It is further understood and agreed that the company limits are corrected to read as follows:

Company Limits:

Difference between underlying including self insured retention (combined total of which $200,000.00 General Liability and Auto Liability any one occurrence except Worker's Compensation $150,000.00 any one occurrence) and $5,000,000.00 General Liability and Auto Liability and Worker's Compensation Combined any occurrence.

All other terms and conditions remain unchanged.

Attached to and forming part of No. ___183-152625___      ☒  INTERSTATE FIRE & CASUALTY COMPANY

Issued to ___Diocese of Rockville Centre,___
___New York, etal.___                              ☐  CHICAGO INSURANCE COMPANY

Effective ___10-1-78___                            By _____

IFC-CIC-83-37 (2/79)

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

|  |  |
|---|---|
| Insurer(s): | Underwriters at Lloyd's |
|  | London Market Companies |
| Policy number(s): | SL 3445 |
|  | SLC 5462 |
| Inception date: | 10/1/1978 |
| Term at issuance: | 1 year |
| Page count: | 11 |
| Contents: | Slip- 2 pgs |
|  | Excess Broadform Liability form- 5 pgs |
|  | Endorsement- 4 pgs |

DATE ISSUED                    PREVIOUS NO.

20-01226-scc Doc 6-7 Filed 10/01/20 Entered 10/01/20 08:44:55 Exhibit C

11/1/78  Part 1 - London Program Policy Compendium Pg 207 of 226 New

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

| ITEM | NUMBER | **S L 3445** |
|---|---|---|

**1**

*Name of Assured*
The Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein
Over which the same Central Authority Appoints or Controls the Appointment
of the Board of Trustees or Similar Body and Excercises Direct, Complete and
Active Control over the Finances, Properties, Operations and Activities

50 North Park Avenue
Rockville Centre, New York 11570

**2**
EFFECTIVE [X] 12:01 A.M. BOTH DAYS AT
FROM [ ] 12:00 NOON STANDARD TIME **October 1, 1978** TO **October 1, 1981**

1979

**3**
Acting upon your instruction, we have
effected the insurance with:

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| UNDERWRITERS AT LLOYD'S, LONDON | 81.14% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon: 81.14% Part of 100% of: | | Annual: $23,333.33 | |
| | | Hereon: $18,932.66 | |
| $5,000,000. any one occurrence | | | |
| EXCESS OF: | Excess Broadform | | |
| | Liability | | |
| $5,000,000. any one occurrence | | | |
| AUDIT | | TOTAL CHARGED | |

**5**
SPECIAL CONDITIONS

As per attached forms and endorsements.

**6**
Service of Suit Clause-
Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, Illinois 60603
or Mendes & Mount, 3 Park Avenue, New York, New York 10016

In witness whereof this covernote has been signed at......Rolling Meadows..........................this.....1..........day of November........

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By *Luis E. Ortega*

Eason Printing Co. Chicago

| DATE ISSUED | CONTRACT NO. | PREVIOUS NO. |

20-01226-scc    Doc 6-7    Filed 10/01/20    Entered 10/01/20 08:44:55    Exhibit C
11/1/78    Part 1 - London Program Policy Compendium    Pg 208 of 226    New

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SL/COS/CN)

NUMBER **S L C    5462**

### 1. Name of Assured

The Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein
Over which the same Central Authority Appoints or Controls the Appointment of the
Board of Trustees or Similar Body and Excercises Direct, Complete and Active
Control over the Finances, Properties, Operations and Activities
50 North Park Avenue
Rockville Centre, New York 11570

### 2.

EFFECTIVE ☑ 12:01 A.M.    BOTH DAYS AT
FROM ☐ 12:00 NOON    STANDARD TIME    **October 1, 1978**    TO    **October 1, 1981**

### 3.

Acting upon your instruction, we have effected the insurance with: ➡

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| Dominion Ins. Co. Ltd. | 7.86% |
| CNA Reinsurance of London Ltd. | 7.86% |
| Stronghold Ins. Co. Ltd. | 3.14% |
|  | 18.86% |

### 4.

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|

Hereon:  18.86% Part of 100% of:

Subject to the same forms, terms, conditions and endorsements as more particularly set forth in Cover Note No. SL3445.

Annual:  $23,333.33
Hereon:

| | PREMIUM |
|---|---|
| Dominion Ins Co Ltd | $1,834.00 |
| CNA Reinsurance of London Ltd. | 1,834.00 |
| Stronghold Ins Co Ltd. | 732.67 |
| | $4,400.67 |

AUDIT    TOTAL CHARGED _____

### 5. SPECIAL CONDITIONS

### 6.

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

BY *Louis B. Metzger*

Eason Printing Co. Chicago

## EXCESS BROADFORM LIABILITY

## INSURING AGREEMENTS

1.   **COVERAGE**

In consideration of the payment of the premium stated herein and subject to the limitations, definitions, terms and conditions hereinafter mentioned, Underwriters hereby agree with the Assured named in the Declarations made a part hereof to indemnify the Assured for all sums which the Assured shall be legally obligated to pay by reason of the liability caused by or arising out of only such hazards covered by and as more fully defined in the policy/ies of the "Primary and Underlying Excess Insurers" and issued by the Primary and Underlying Excess Insurers stated in Item 4 of the Declarations occurring during the period of this policy.

2.   **LIMITS OF LIABILITY**

Provided always that:

(a)   Liability attaches to the Underwriters only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as set forth in Item 5 of the Declarations and designated "Primary and Underlying Excess Limit(s)" and then the limits of the Underwriters' liability shall be those set forth in Item 6 of the Declarations under the designation "Excess Limit(s)" and the Underwriters shall be liable to pay the ultimate net loss the Excess of the Limit(s) under the policy/ies of the Primary and Underlying Excess Insurers as set forth in Item 5 of the Declarations up to the full amount of such Excess Limits(s).

(b)   Liability for any one or any combination of the hazards insured hereunder as provided for in the Primary and Underlying Excess Insurers policy/ies is subject separately to the limit "each occurrence" as stated in the Declarations, but this limit shall not be exceeded in any one policy year with regard to any hazard(s) insured with an aggregate limit under the policy/ies of the Primary and Underlying Excess Insurers.

(c)   For the purpose of determining the limit of the Underwriters' liability, all Personal Injury and Property Damage arising out of either

(i) an accident or series of accidents arising out of one event, or

(ii) a continuous or repeated exposure to substantially the same general conditions,

shall be considered as arising out of one occurrence.

(d)  The inclusion of more than one entity as the named Assured, or the inclusion of any additional Assureds under this Policy, shall not in any way operate to increase the Underwriters' limits of liability beyond those provided in Item 6 of the Declarations.

## DEFINITIONS

3. (a)  <u>Occurrence</u>

The word "occurrence" means an accident, including injurious exposure to conditions, which results during the Policy year in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Assured.

(b)  <u>Ultimate Net Loss</u>

The words "ultimate net loss" shall be understood to mean the amount payable in settlement of the liability of the Assured after making deductions for all recoveries and for other valid and collectible insurances, excepting however the policy/ies of the Primary and Underlying Excess Insurers, and shall include all expenses and costs.

(c)  <u>Policy Year</u>

The words "policy year" shall be understood to mean a period of one calendar year commencing each year on the day and hour first named in the Declarations.

## CONDITIONS

4. (a)  <u>Application of Recoveries</u>

All recoveries, salvages or payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters, provided always that nothing in this Insurance shall be construed to mean that losses under this Insurance are not payable until the Assured's ultimate net loss has been finally ascertained.

(b)  <u>Attachment of Liability</u>

Liability to pay under this Policy shall not attach unless and until the Primary and Underlying Excess Insurers shall have admitted liability for the Primary and Underlying Excess Limit(s) or unless and until the Assured has by final judgment been adjudged to pay an amount which exceeds such Primary and Underlying Excess Limits(s) and then only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of the Primary and Underlying Excess Limit(s).

**Page 2 of 5**

(c)  **Maintenance of Primary Insurance**

It is a condition of this Policy that the policy/ies of the Primary and Underlying Excess Insurers shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of occurrences during the policy year.

In respect of the hazards covered by the Primary and Underlying Excess Insurers this Policy is subject to the same warranties, terms, definitions, conditions and exclusions (except as regards the premium, the obligation to investigate and defend, the renewal agreement (if any), the amount and limits of liability other than the deductible or self-insurance provision where applicable, (AND EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy/ies of the Primary Insurers prior to the happening of an occurrence for which claim is made hereunder and should any alteration be made in the premium for the policy/ies of the Primary Insurers during the currency of this Policy, then the premium hereon shall be adjusted accordingly.

(d)  **Subrogation**

Inasmuch as this Policy is "excess coverage" the Assured's right of recovery against any person or other entity cannot be exclusively subrogated to the Underwriters. It is, therefore, understood and agreed that in case of any payment hereunder, the Underwriters will act in concert with all other interests (including the Assured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Assured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Underwriters are then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Assured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Assured) concerned, in the ratio of their respective recoveries as finally settled.

(e)  **Commutation Clause** - (to apply to Workmen's Compensation and/or Employers Liability or Occupational Disease and then only when these perils are covered by the Primary Insurers)

**Page 3 of 5**

Not later than twenty-four months from the expiry date of this policy, the Assured shall advise the Underwriters of all claims not finally settled which are likely to result in claims under this Policy. The Underwriters may then or at any time thereafter intimate to the Assured their desire to be released from liability in respect of any one or more of such claims. In such event, the Assured and the Underwriters shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalise such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims shall constitute a complete and final release of Underwriters, provided however that such payment shall not constitute a full and final release of Underwriters' liability if subsequent to such payment any supplemental award is made increasing the claim(s); said additional claim(s) may then be recommuted at Underwriter's option and Underwriters may discharge any additional liability by another payment.

(f)   Cancellation

This Policy may be cancelled at any time at the written request of the Assured or may be cancelled by or on behalf of the Underwriters provided (30) thirty days notice in writing be given.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the earned premium hereon for the period that this Policy has been in force or the short rate proportion of the Minimum Premium, calculated in accordance with the customary scale, whichever is the greater.

If this Policy shall be cancelled by the Underwriters they shall retain the earned premium hereon for the period that this Policy has been in force or pro-rata of the Minimum Premium, whichever is the greater.   Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium.

If the period of limitation relating to the giving of such notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(g)   Notification of Claims

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Declarations.   Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above person(s) or firm of any such occurrence.

(h)   Fraudulent Claims

If the Assured shall make any claim knowing the same to be fake or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**Page 4 of 5**

## DECLARATIONS

### Item

1.  **NAMED ASSURED:**  The Roman Catholic Diocese of Rockville Centre as more fully set forth in the schedule attached

2.  **ADDRESS OF ASSURED:**  50 North Park Avenue
    Rockville Centre, New York 11570

3.  **PERIOD:**  October 1, 1978 to October 1, 1979 (both days at 12:01 a.m. local standard time)

4.  a)  **PRIMARY INSURERS:** Interstate Fire & Casualty Company

    b)  **UNDERLYING EXCESS INSURERS:**  N/A

5.  **PRIMARY AND UNDERLYING EXCESS LIMIT(S):**  U.S. $5,000,000

6.  **EXCESS LIMIT(S):**  U.S. $ 5,000,000

7.  **NOTIFICATION OF CLAIMS TO:**  Gallagher Bassett of New York, Inc.
    100 Ring Road, W
    Garden City, New York 11530

8.  **IDENTIFICATION DETAILS AND LIMITS CARRIED UNDER ITEM 4 ABOVE:**

| POLICY NO(S) | LIMIT(S) |
| --- | --- |
| 183-152625 | U.S. $5,000,000 any one occurrence combined single limit. |

**ATTACHING TO AND FORMING PART OF COVER NOTE NO.** SL3445

**DATED:** March 12, 1979

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By: _Louis E. Metzger, Jr._

**Page 5 of 5**

**ENDORSEMENT**    ADDITIONAL PREMIUM $

RETURN PREMIUM        $

**Attached to and forming part of Policy/Certificate No.**    SLC5462

**In the name of**  The Roman Catholic Diocese of Rockville Centre, Etal.

**Effective date of this endorsement is**  October 1, 1978    **Endorsement No.** A

It is hereby understood and agreed that effective October 1, 1978 the
policy period is amended to read:

October 1, 1978 to October 1, 1979

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**DATED:**    2/22/79                    ARTHUR J. GALLAGHER & CO.(ILLINOIS)

By:  *Louis C. Metzger, Jr.*

ENDORSEMENT

ADDITIONAL

RETURN PREMIUM      $

Attached to and forming part of Policy/Certificate No.  SL3445

in the name of    The Roman Catholic Diocese of Rockville Centre, etal.

Effective date of this endorsement is October 1, 1978      Endorsement No. 1

It is hereby understood and agreed the Named Insured is completed to read:

Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein
Over which the same Central Authority Appoints or Control the Appointment
of the Board of Trustees or Similar Body and Excercises Direct, Complete
and Active Control over the Finances, Properties, Operations and Activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  November 1, 1978                    ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                            By: _Louis E. Metzger_

**ENDORSEMENT**                                    **ADDITIONAL PREMIUM $**

                                                   **RETURN PREMIUM      $**


**Attached to and forming part of Policy/Certificate No.** SL3445

**In the name of** The Roman Catholic Diocese of Rockville Centre, Etal.

**Effective date of this endorsement is**  October 1, 1978      **Endorsement No.** 2


It is hereby understood and agreed that effective October 1, 1978 the policy period is amended to read:

October 1, 1978 to October 1, 1979


**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**DATED:** 2/22/79                          — ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                            By: *Louis B. Metzger, Jr.*

**Attached to and forming part of Policy/Certificate No.** SL3445

**In the name of** The Roman Catholic Diocese of Rockville Centre, Etal.

**Effective date of this endorsement is** October 1, 1978   **Endorsement No.** 3

## ERRORS AND OMISSIONS

It is hereby understood and agreed that insofar as Errors and Omissions coverage is afforded to the Assured in the Primary and Underlying Excess Insurers policy/ies this Policy is extended to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

**IT IS FURTHER AGREED:**

(1)     There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to   October 1, 1978 (hereinafter referred to as the "Retroactive Date").

(2)     In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemetaries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**DATED:** March 12, 1979

— ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By: *Louis E. Metzger, Jr.*

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

|  |  |
|---|---|
| Insurer(s): | Underwriters at Lloyd's <br> London Market Companies |
| Policy number(s): | SL 3452 <br> SLC 5469 |
| Inception date: | 10/1/1978 |
| Term at issuance: | 1 year |
| Page count: | 9 |
| Contents: | Slip- 2 pgs <br> Excess Broadform Liability form- 5 pgs <br> Endorsement- 2 pgs |

DATE ISSUED                                                                PREVIOUS NO.

GNV 031 F378   NEW

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

NUMBER  **S L  3452**

| | |
|---|---|
| 1 | *Name of Assured*<br>**The Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein Over which the same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Excercises Direct, Complete and Active Control over the Finances, Properties, Operations and Activities<br>50 North Park Avenue<br>Rockville Centre, New York 11570** |

| | |
|---|---|
| 2 | EFFECTIVE ☒ 12:01 A.M.   BOTH DAYS AT<br>FROM ☐ 12:00 NOON   STANDARD TIME   **October 1, 1978**   TO **October 1, 1979** |

| | | |
|---|---|---|
| 3 | Acting upon your instruction, we have effected the insurance with: ➡ | NAME OF INSURERS                  AMOUNT OR PERCENT<br>UNDERWRITERS AT LLOYD'S, LONDON          72.56% |

| | |
|---|---|
| 4 | AMOUNT        COVERAGE          RATE            PREMIUM<br>**Hereon:  72.56% Part of 100% of:**        Annual: $20,000.00<br>                                            Hereon: $14,512.00<br>**$10,000,000. Any one occurrence**<br>                          **Excess Broadform**<br>**EXCESS OF:**             **Liability**<br>**$10,000,000. Any one occurrence**<br><br>AUDIT                                    TOTAL CHARGED_____ |

| | |
|---|---|
| 5 | SPECIAL CONDITIONS<br>**As per attached forms and endorsements.** |

| | |
|---|---|
| 6 | **Service of Suit Clause-**<br>**Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, Illinois 60603**<br>**or Mendes & Mount, 3 Park Avenue, New York, New York 10016** |

In witness whereof this covernote has been signed at......Rolling Meadows, Illinois......this.........1........day of...November.....

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By

Eason Printing Co. Chicago

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SL/COS/CN)

NUMBER **S L C  5469**

**1**

### Name of Assured

The Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein Over which the same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Excercises Direct, Complete and Active Control over the Finances, Properties, Operations and Activities
50 North Park Avenue
Rockville Centre, New York 11570

**2**

EFFECTIVE ☒ 12:01 A.M.   BOTH DAYS AT
FROM ☐ 12:00 NOON   STANDARD TIME   10/1/78   TO   10/1/79

**3**

Acting upon your instruction, we have effected the insurance with: ➡

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| CNA Reinsurance of London Ltd. | 7.48% |
| Dominion Ins Co Ltd | 9.98% |
| Stronghold Ins Co Ltd | 3.99% |
| North Atlantic Ins Co Ltd. | 2.99% |
| Yasuda Fire & Marine Ins Co (UK) Ltd | 1.50% |
| Mentor Ins Co (UK) Ltd. | 1.50% |
| | 27.44% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|

Hereon: 27.44% Part of 100% of:

Annual:  $20,000.00
Hereon:

Subject to the same forms, terms, conditions and endorsements as more particularly set forth in Cover Note No. SL3452.

| | |
|---|---|
| CNA Reinsurance of London Ltd. | $1,496.00 |
| Dominion Ins Co Ltd | 1,996.00 |
| Stronghold Ins Co Ltd | 798.00 |
| North Atlantic Ins Co Ltd | 598.00 |
| Yasuda Fire & Marine Ins Co (UK) Ltd | 300.00 |
| Mentor Ins Co (UK) Ltd. | 300.00 |

AUDIT

TOTAL CHARGED  $5,488.00

**5**

SPECIAL CONDITIONS

**6**

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By _Louis B. Metzger_

Eason Printing Co. Chicago

## EXCESS BROADFORM LIABILITY

### INSURING AGREEMENTS

1.    **COVERAGE**

In consideration of the payment of the premium stated herein and subject to the limitations, definitions, terms and conditions hereinafter mentioned, Underwriters hereby agree with the Assured named in the Declarations made a part hereof to indemnify the Assured for all sums which the Assured shall be legally obligated to pay by reason of the liability caused by or arising out of only such hazards covered by and as more fully defined in the policy/ies of the "Primary and Underlying Excess Insurers" and issued by the Primary and Underlying Excess Insurers stated in Item 4 of the Declarations occurring during the period of this policy.

2.    **LIMITS OF LIABILITY**

Provided always that:

(a)    Liability attaches to the Underwriters only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as set forth in Item 5 of the Declarations and designated "Primary and Underlying Excess Limit(s)" and then the limits of the Underwriters' liability shall be those set forth in Item 6 of the Declarations under the designation "Excess Limit(s)" and the Underwriters shall be liable to pay the ultimate net loss the Excess of the Limit(s) under the policy/ies of the Primary and Underlying Excess Insurers as set forth in Item 5 of the Declarations up to the full amount of such Excess Limits(s).

(b)    Liability for any one or any combination of the hazards insured hereunder as provided for in the Primary and Underlying Excess Insurers policy/ies is subject separately to the limit "each occurrence" as stated in the Declarations, but this limit shall not be exceeded in any one policy year with regard to any hazard(s) insured with an aggregate limit under the policy/ies of the Primary and Underlying Excess Insurers.

(c)    For the purpose of determining the limit of the Underwriters' liability, all Personal Injury and Property Damage arising out of either

(i)    an accident or series of accidents arising out of one event, or

(ii)   a continuous or repeated exposure to substantially the same general conditions,

shall be considered as arising out of one occurrence.

(d)   The inclusion of more than one entity as the named Assured, or the inclusion of any additional Assureds under this Policy, shall not in any way operate to increase the Underwriters' limits of liability beyond those provided in Item 6 of the Declarations.

## DEFINITIONS

3. (a)   Occurrence

The word "occurrence" means an accident, including injurious exposure to conditions, which results during the Policy year in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Assured.

(b)   Ultimate Net Loss

The words "ultimate net loss" shall be understood to mean the amount payable in settlement of the liability of the Assured after making deductions for all recoveries and for other valid and collectible insurances, excepting however the policy/ies of the Primary and Underlying Excess Insurers, and shall include all expenses and costs.

(c)   Policy Year

The words "policy year" shall be understood to mean a period of one calendar year commencing each year on the day and hour first named in the Declarations.

## CONDITIONS

4. (a)   Application of Recoveries

All recoveries, salvages or payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters, provided always that nothing in this Insurance shall be construed to mean that losses under this Insurance are not payable until the Assured's ultimate net loss has been finally ascertained.

(b)   Attachment of Liability

Liability to pay under this Policy shall not attach unless and until the Primary and Underlying Excess Insurers shall have admitted liability for the Primary and Underlying Excess Limit(s) or unless and until the Assured has by final judgment been adjudged to pay an amount which exceeds such Primary and Underlying Excess Limits(s) and then only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of the Primary and Underlying Excess Limit(s).

**Page 2 of 5**

**(c)**   <u>Maintenance of Primary Insurance</u>

It is a condition of this Policy that the policy/ies of the Primary
and Underlying Excess Insurers shall be maintained in full effect
during the currency of this Policy except for any reduction of the
aggregate limits contained therein solely by payment of claims in
respect of occurrences during the policy year.

In respect of the hazards covered by the Primary and Underlying
Excess Insurers this Policy is subject to the same warranties, terms,
definitions, conditions and exclusions (except as regards the premium,
the obligation to investigate and defend, the renewal agreement (if
any), the amount and limits of liability other than the deductible or
self-insurance provision where applicable,(AND EXCEPT AS OTHERWISE
PROVIDED HEREIN) as are contained in or as may be added to the
policy/ies of the Primary Insurers prior to the happening of an
occurrence for which claim is made hereunder and should any alteration
be made in the premium for the policy/ies of the Primary Insurers
during the currency of this Policy, then the premium hereon shall
be adjusted accordingly.

**(d)**   <u>Subrogation</u>

Inasmuch as this Policy is "excess coverage" the Assured's right of
recovery against any person or other entity cannot be exclusively
subrogated to the Underwriters. It is, therefore, understood and
agreed that in case of any payment hereunder, the Underwriters will
act in concert with all other interests (including the Assured)
concerned, in the exercise of such rights of recovery.  The
apportioning of any amounts which may be so recovered shall follow
the principle that any interests (including the Assured) that shall
have paid an amount over and above any payment hereunder, shall
first be reimbursed up to the amount paid by them; the Underwriters
are then to be reimbursed out of any balance then remaining up to
the amount paid hereunder; lastly, the interests (including the
Assured) of whom this coverage is in excess are entitled to claim
the residue, if any. Expenses necessary to the recovery of any such
amounts shall be apportioned between the interests (including the
Assured) concerned, in the ratio of their respective recoveries as
finally settled.

**(e)**   <u>Commutation Clause</u> - (to apply to Workmen's Compensation and/or
                              Employers Liability or Occupational Disease
                              and then only when these perils are covered
                              by the Primary Insurers)

**Page 3 of 5**

Not later than twenty-four months from the expiry date of this policy, the Assured shall advise the Underwriters of all claims not finally settled which are likely to result in claims under this Policy. The Underwriters may then or at any time thereafter intimate to the Assured their desire to be released from liability in respect of any one or more of such claims. In such event, the Assured and the Underwriters shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalise such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims shall constitute a complete and final release of Underwriters, provided however that such payment shall not constitute a full and final release of Underwriters' liability if subsequent to such payment any supplemental award is made increasing the claim(s); said additional claim(s) may then be recommuted at Underwriter's option and Underwriters may discharge any additional liability by another payment.

(f)   Cancellation

This Policy may be cancelled at any time at the written request of the Assured or may be cancelled by or on behalf of the Underwriters provided (30) thirty days notice in writing be given.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the earned premium hereon for the period that this Policy has been in force or the short rate proportion of the Minimum Premium, calculated in accordance with the customary scale, whichever is the greater.

If this Policy shall be cancelled by the Underwriters they shall retain the earned premium hereon for the period that this Policy has been in force or pro-rata of the Minimum Premium, whichever is the greater. Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium.

If the period of limitation relating to the giving of such notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(g)   Notification of Claims

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Declarations. Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above person(s) or firm of any such occurrence.

(h)   Fraudulent Claims

If the Assured shall make any claim knowing the same to be fake or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

Page 4 of 5

## DECLARATIONS

**Item**

**1.**      <u>NAMED ASSURED:</u>     The Roman Catholic Diocese of Rockville Centre
as more fully set forth in the schedule attached.

**2.**      <u>ADDRESS OF ASSURED:</u>     50 North Park Avenue
Rockville Centre, New York 11570

**3.**      <u>PERIOD:</u>     October 1, 1978 to October 1, 1979 (both days at 12:01 a.m.
local standard time.)

**4.**      a)    <u>PRIMARY INSURERS:</u>
Interstate Fire and Casualty Company

       b)    <u>UNDERLYING EXCESS INSURERS:</u>    Lloyds of London and Other British Companies

**5.**      <u>PRIMARY AND UNDERLYING EXCESS LIMIT(S):</u>    U.S. $10,000,000

**6.**      <u>EXCESS LIMIT(S):</u>    U.S. $10,000,000

**7.**      <u>NOTIFICATION OF CLAIMS TO:</u>    Gallagher Bassett of New York, Inc.
100 Ring Road W
Garden City, New York 11530

**8.**      <u>IDENTIFICATION DETAILS AND LIMITS</u>
CARRIED UNDER ITEM 4 ABOVE:

| POLICY NO(S) | LIMIT(S) |
|---|---|
| 183-152625 | U.S. $5,000,000 any one occurrence combined single limit. |
| SL3445 SLC5462 | U.S. $5,000,000 any one occurrence combined single limit. |

**ATTACHING TO AND FORMING PART OF COVER NOTE NO.** SL3452.

**DATED:**
March 12, 1979

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By: *Louis E. Mitzger, Jr.*

**Page 5 of 5**

ENDORSEMENT                                    ADDITIONAL PREMIUM  $

                                               RETURN PREMIUM.    $

Attached to and forming part of Policy/Certificate No.  SL3452

in the name of   Roman Catholic Diocese of Rockville Centre, Etal.

Effective date of this endorsement is   October 1, 1978      Endorsement No.  1


It is hereby understood and agreed the Named Insured is completed to read:


Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein
Over which the same Central Authority Appoints or Controls the Appointment
of the Board of Trustees or Similar Body and Excercises Direct, Complete
and Active Control over the Finances, Properties, Operations and Activities.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  11/1/78                         ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                        By: Louis E. Metzger Jr.