**Attached to and forming part of Policy/Certificate No.**     SL3452

**In the name of**     The Roman Catholic Diocese of Rockville Centre, Etal.

**Effective date of this endorsement is** October 1, 1978      **Endorsement No.**   2

## ERRORS AND OMISSIONS

It is hereby understood and agreed that insofar as Errors and Omissions coverage is afforded to the Assured in the Primary and Underlying Excess Insurers policy/ies this Policy is extended to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER AGREED:

(1)     There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to October 1, 1978 (hereinafter referred to as the "Retroactive Date").

(2)     In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemetaries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**DATED:** March 12, 1979

— ARTHUR J. GALLAGHER & CO.(ILLINOIS)

By: *Louis E. Metzger Jr.*

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

|                    |                                        |
|--------------------|----------------------------------------|
| Insurer(s):        | Underwriters at Lloyd's                |
|                    | London Market Companies                |
| Policy number(s):  | SL 3463                                |
|                    | SLC 5480                               |
| Inception date:    | 10/1/1978                              |
| Term at issuance:  | 1 year                                 |
| Page count:        | 10                                     |
| Contents:          | Slip- 2 pgs                            |
|                    | Excess Broadform Liability form- 5 pgs |
|                    | Endorsement- 3 pgs                     |

DATE ISSUED
11/1/78

PREVIOUS NO.
New

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

NUMBER    **S L    3463**

| ITEM | | |
|---|---|---|
| 1 | **Name of Assured**<br>Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein<br>Over which the same Central Authority Appoints or Controls the Appointment of<br>the Board of Trustees or Similar Body and Excercises Direct, Complete and<br>Active Control over the Finances, Properties, Operations and Activities<br>50 North Park Avenue<br>Rockville Centre, New York 11570 | |

| 2 | EFFECTIVE ☒ 12:01 A.M.   BOTH DAYS AT<br>FROM ☐ 12:00 NOON   STANDARD TIME | October 1, 1978   TO   October 1, 1979 |

| 3 | Acting upon your instruction, we have effected the insurance with: ➡ | NAME OF INSURERS<br>UNDERWRITERS AT LLOYD'S, LONDON | AMOUNT OR PERCENT<br>66.58% |

| 4 | AMOUNT<br>Hereon: 66.58% Part of 100% Of:<br><br>$10,000,000.   Anyone occurrence<br><br>EXCESS OF:<br><br>$20,000,000 Any one occurrence | COVERAGE<br><br><br>Excess Broadform<br>Liability | RATE   PREMIUM<br>Annual:  $10,000.00<br>Hereon: $ 6,658.00 |
| | AUDIT | | TOTAL CHARGED |

| 5 | SPECIAL CONDITIONS<br><br>As per attached forms and endorsements | |

| 6 | Service of Suit Clause-<br>Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, Illinois 60603<br>or Mendes & Mount,  3 Park Avenue, New York, New York 10016 | |

In witness whereof this covernote has been signed at........Rolling Meadows...........................this..1...............day of...November.....

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By _Lewis B. Metzger_

Eason Printing Co. Chicago

DATE ISSUED 11/1/78

CONTRACT NO. GRP 05/1/78

PREVIOUS NO.

20-01226-scc    Doc 0-8    Filed 10/01/20    Entered 10/01/20 08:44:55    Exhibit C
Part 2 - London Program Policy Compendium    Pg 4 of 225    New

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SL/COS/CN)

| ITEM | | NUMBER **SLC 5480** |
|---|---|---|

**1**

*Name of Assured*

Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein
Over which the same Central Authority Appoints or Controls the Appointment of
the Board of Trustees or Similar Body and Excercises Direct, Complete and
Active Control over the Finances, Properties, Operations and Activities
50 North Park Avenue
Rockville Centre, New York 11570

**2** EFFECTIVE ☒ 12:01 A.M.    BOTH DAYS AT
FROM ☐ 12:00 NOON    STANDARD TIME    **10/1/78**    TO    **10/1/79**

**3**

NAME OF INSURERS                                AMOUNT OR PERCENT

Acting upon your instruction. we have
effected the insurance with:    →    See Endorsement #A

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|

Hereon: <u>33.42% Part of 100% of:</u>

Subject to the same forms, terms,
conditions and endorsements as more
particularly set forth in Cover Note
No. SL.3463.

Annual: $10,000.00
Hereon: $ 3,342.00

per end. #A

AUDIT                                TOTAL CHARGED_____

**5** SPECIAL CONDITIONS

**6**

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By _____

<u>EXCESS BROADFORM LIABILITY</u>

<u>INSURING AGREEMENTS</u>

1.    <u>COVERAGE</u>

In consideration of the payment of the premium stated herein and subject to the limitations, definitions, terms and conditions hereinafter mentioned, Underwriters hereby agree with the Assured named in the Declarations made a part hereof to indemnify the Assured for all sums which the Assured shall be legally obligated to pay by reason of the liability caused by or arising out of only such hazards covered by and as more fully defined in the policy/ies of the "Primary and Underlying Excess Insurers" and issued by the Primary and Underlying Excess Insurers stated in Item 4 of the Declarations occurring during the period of this policy.

2.    <u>LIMITS OF LIABILITY</u>

Provided always that:

(a)   Liability attaches to the Underwriters only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as set forth in Item 5 of the Declarations and designated "Primary and Underlying Excess Limit(s)" and then the limits of the Underwriters' liability shall be those set forth in Item 6 of the Declarations under the designation "Excess Limit(s)" and the Underwriters shall be liable to pay the ultimate net loss the Excess of the Limit(s) under the policy/ies of the Primary and Underlying Excess Insurers as set forth in Item 5 of the Declarations up to the full amount of such Excess Limits(s).

(b)   Liability for any one or any combination of the hazards insured hereunder as provided for in the Primary and Underlying Excess Insurers policy/ies is subject separately to the limit "each occurrence" as stated in the Declarations, but this limit shall not be exceeded in any one policy year with regard to any hazard(s) insured with an aggregate limit under the policy/ies of the Primary and Underlying Excess Insurers.

(c)   For the purpose of determining the limit of the Underwriters' liability, all Personal Injury and Property Damage arising out of either

(i)   an accident or series of accidents arising out of one event, or

(ii)   a continuous or repeated exposure to substantially the same general conditions,

shall be considered as arising out of one occurrence.

(d)   The inclusion of more than one entity as the named Assured, or the inclusion of any additional Assureds under this Policy, shall not in any way operate to increase the Underwriters' limits of liability beyond those provided in Item 6 of the Declarations.

## DEFINITIONS

3. (a)   Occurrence

The word "occurrence" means an accident, including injurious exposure to conditions, which results during the Policy year in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Assured.

(b)   Ultimate Net Loss

The words "ultimate net loss" shall be understood to mean the amount payable in settlement of the liability of the Assured after making deductions for all recoveries and for other valid and collectible insurances, excepting however the policy/ies of the Primary and Underlying Excess Insurers, and shall include all expenses and costs.

(c)   Policy Year

The words "policy year" shall be understood to mean a period of one calendar year commencing each year on the day and hour first named in the Declarations.

## CONDITIONS

4. (a)   Application of Recoveries

All recoveries, salvages or payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters, provided always that nothing in this Insurance shall be construed to mean that losses under this Insurance are not payable until the Assured's ultimate net loss has been finally ascertained.

(b)   Attachment of Liability

Liability to pay under this Policy shall not attach unless and until the Primary and Underlying Excess Insurers shall have admitted liability for the Primary and Underlying Excess Limit(s) or unless and until the Assured has by final judgment been adjudged to pay an amount which exceeds such Primary and Underlying Excess Limits(s) and then only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of the Primary and Underlying Excess Limit(s).

**Page 2 of 5**

**(c)** <u>Maintenance of Primary Insurance</u>

It is a condition of this Policy that the policy/ies of the Primary
and Underlying Excess Insurers shall be maintained in full effect
during the currency of this Policy except for any reduction of the
aggregate limits contained therein solely by payment of claims in
respect of occurrences during the policy year.

In respect of the hazards covered by the Primary and Underlying
Excess Insurers this Policy is subject to the same warranties, terms,
definitions, conditions and exclusions (except as regards the premium,
the obligation to investigate and defend, the renewal agreement (if
any), the amount and limits of liability other than the deductible or
self-insurance provision where applicable,(AND EXCEPT AS OTHERWISE
PROVIDED HEREIN) as are contained in or as may be added to the
policy/ies of the Primary Insurers prior to the happening of an
occurrence for which claim is made hereunder and should any alteration
be made in the premium for the policy/ies of the Primary Insurers
during the currency of this Policy, then the premium hereon shall
be adjusted accordingly.

**(d)** <u>Subrogation</u>

Inasmuch as this Policy is "excess coverage" the Assured's right of
recovery against any person or other entity cannot be exclusively
subrogated to the Underwriters. It is, therefore, understood and
agreed that in case of any payment hereunder, the Underwriters will
act in concert with all other interests (including the Assured)
concerned, in the exercise of such rights of recovery. The
apportioning of any amounts which may be so recovered shall follow
the principle that any interests (including the Assured) that shall
have paid an amount over and above any payment hereunder, shall
first be reimbursed up to the amount paid by them; the Underwriters
are then to be reimbursed out of any balance then remaining up to
the amount paid hereunder; lastly, the interests (including the
Assured) of whom this coverage is in excess are entitled to claim
the residue, if any. Expenses necessary to the recovery of any such
amounts shall be apportioned between the interests (including the
Assured) concerned, in the ratio of their respective recoveries as
finally settled.

**(e)** <u>Commutation Clause</u> - (to apply to Workmen's Compensation and/or
Employers Liability or Occupational Disease
and then only when these perils are covered
by the Primary Insurers)

Not later than twenty-four months from the expiry date of this policy, the Assured shall advise the Underwriters of all claims not finally settled which are likely to result in claims under this Policy. The Underwriters may then or at any time thereafter intimate to the Assured their desire to be released from liability in respect of any one or more of such claims. In such event, the Assured and the Underwriters shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalise such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims shall constitute a complete and final release of Under-writers, provided however that such payment shall not constitute a full and final release of Underwriters' liability if subsequent to such payment any supplemental award is made increasing the claim(s); said additional claim(s) may then be recommuted at Underwriter's option and Underwriters may discharge any additional liability by another payment.

(f)   Cancellation

This Policy may be cancelled at any time at the written request of the Assured or may be cancelled by or on behalf of the Underwriters provided (30) thirty days notice in writing be given.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the earned premium hereon for the period that this Policy has been in force or the short rate proportion of the Minimum Premium, calculated in accordance with the customary scale, whichever is the greater.

If this Policy shall be cancelled by the Underwriters they shall retain the earned premium hereon for the period that this Policy has been in force or pro-rata of the Minimum Premium, whichever is the greater. Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium.

If the period of limitation relating to the giving of such notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(g)   Notification of Claims

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Declarations. Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above person(s) or firm of any such occurrence.

(h)   Fraudulent Claims

If the Assured shall make any claim knowing the same to be fake or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

## DECLARATIONS

**Item**

1.  **NAMED ASSURED:**   The Roman Catholic Diocese of Rockville Centre
    As more fully set forth in the schedule attached.

2.  **ADDRESS OF ASSURED:**   50 North Park Avenue
    Rockville Centre, New York 11570

3.  **PERIOD:**   October 1, 1978 to October 1, 1979 (both days at 12:01 a.m. local standard time.)

4.  a) **PRIMARY INSURERS:**   Interstate Fire & Casualty Company

    b) **UNDERLYING EXCESS INSURERS:**   Lloyds of London and Other British Companies
    Lloyds of London and Other British Companies

5.  **PRIMARY AND UNDERLYING EXCESS LIMIT(S):**   U.S. $ 20,000,000

6.  **EXCESS LIMIT(S):**   U.S. $10,000,000

7.  **NOTIFICATION OF CLAIMS TO:**   Gallagher Bassett of New York, Inc.
    100 Ring Road, W.
    Garden City, New York 11530

8.  **IDENTIFICATION DETAILS AND LIMITS CARRIED UNDER ITEM 4 ABOVE:**

| POLICY NO(S) | LIMIT(S) |
|---|---|
| 183-152625 | U.S. $5,000,000 any one occurrence combined single limit. |
| SL3445-SLC5462 | U.S.$5,000,000 any one occurrence combined single limit. |
| SL3452-SLC5469 | U.S. $10,000,000 any one occurrence combined single limit. |

**ATTACHING TO AND FORMING PART OF COVER NOTE NO.** SL3463

**DATED:**
March 12, 1979

**ARTHUR J. GALLAGHER & CO. (ILLINOIS)**

**By:** _Loris E. Metzger, Jr._

**Page 5 of 5**

ENDORSEMENT                    ADDITIONAL    $

                              RETURN PREMIUM      $

Attached to and forming part of Policy/Certificate No. SLC5480

in the name of   Roman Catholic Diocese of Rockville Centre, Etal.

Effective date of this endorsement is October 1, 1978      Endorsement No.   A


It is hereby understood and agreed the premium is payable as follows:

| | | | |
|---|---|---|---|
| Turegum |  | 4.91% | $ 491.00 |
| Sovereign | 12.50%) | 19.66% | 245.75 |
| Tokio (UK) | 37.50%) | | 737.25 |
| Taisho (UK) | 25.00%) | | 491.50 |
| Allianz International | 15.00%) | | 294.90 |
| Store Brand (UK) | 10.00%) | | 196.60 |
| Stronghold | | 3.94% | 394.00 |
| Dominion Ins Co Ltd. | | 4.91% | 491.00 |
| | | 33.42% | $3,342.00 |


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:      11/1/78               ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                 By: _Louis E. Metzger_ 10

ENDORSEMENT

RETURN PREMIUM      $

Attached to and forming part of Policy/Certificate No. SL3463

in the name of   Roman Catholic Diocese of Rockville Centre, etal.

Effective date of this endorsement is October 1, 1978      Endorsement No.   1

It is hereby understood and agreed the Named Insured is completed to read:

Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein
Over which the same Central Authority Appoints or Controls the Appointment
of the Board of Trustees or Similar Body and exercises Direct, Complete and
Active Control over the Finances, Properties, Operations and Activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:      11/1/78                    ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                       By: _Louis B. Metzger Jr._

**Attached to and forming part of Policy/Certificate No.**  SL3463

**In the name of**   The Roman Catholic Diocese of Rockville Centre, Etal.

**Effective date of this endorsement is** October 1, 1978      **Endorsement No.**  2

<u>ERRORS AND OMISSIONS</u>

It is hereby understood and agreed that insofar as Errors and Omissions coverage is afforded to the Assured in the Primary and Underlying Excess Insurers policy/ies this Policy is extended to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER AGREED:

(1)      There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to   October 1, 1978 (hereinafter referred to as the "Retroactive Date").

(2)      In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemetaries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:    March 12, 1979                  — ARTHUR J. GALLAGHER & CO.(ILLINOIS)

By: *Louis E. Metzger, Jr.*

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

|  |  |
|---:|:---|
| Insurer(s): | Centennial Ins Co |
| Policy number(s): | 291-69-65-01 |
| Inception date: | 10/1/1979 |
| Term at issuance: | 1 year |
| Page count: | 29 |
| Contents: | Declarations- 2 pgs |
|  | Premium- 1 pg |
|  | Cover Note- 3 pgs |
|  | Endorsement- 23 pgs |

| 25 26-27 28 | 31 32 | 53-54 | 55 | 57-58 | 60 | 61 | 62 | 63- | 65 | 66- | 68 | 69-70 | | 20-22 | 23-24 | 25-26 | 27-28 | 29 | 32 | 33-34 | 42 | 43-44 | 52-54 | | No. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CHECK DIGIT | PRO-DUCER | OFFICE | C | CONDITION OF TYPE-CLASS | PRO TYPE-SS | FINANCE | TERMS ASSESS RETRO | SPECIAL CHG | PACKAGE FORM CURR CHG | | | | | STATE | TOWN | AGED REPORT | PROCESS CODE | COMM. RATE | | | | | |
| 6 | 13 | 3300 | C | C | 3 | 01 | — | — | | | | | | 02 | 151 | 01 | 31 | | | | — | 01 | 150 |

| 71 NP | 73 BK | 75 DB CD | 77 RR | 79 |
|---|---|---|---|---|
| | — | — | — | — |

CLASS OR COVERAGE IDENTIFICATION

| 55 | 56 | 57 | 58 | 59 | 60 | 61 | 62 | 63 | 64 | 65 |
|---|---|---|---|---|---|---|---|---|---|---|
| ① | ① | ① | ① | ① | ① | ① | ① | ① | ① | ① |

EXPOSURES

No. **291 69 65 01**

# COVER NOTE

# CENTENNIAL INSURANCE CO.

**INSURED**
⌐The Roman Catholic Diocese of
Rockville Center
50 North Park Ave.
Rockville Center, New York
⌊10-1-79      10-1-80          1⌋

**PRODUCER**
⌐Arthur J. Gallagher & Co.
The Tower, Golf Road
Rolling Meadows, Illinois⌐
⌊                              ⌋

The above named company, hereinafter referred to as the Company, agrees with the named insured, hereinafter referred to as the insured, in consideration of the payment of the above tentative advance premium and subject to all the terms of this Cover Note as follows:

—The Company acknowledges itself bound by the terms, conditions and limitations of the policy of insurance in current use by the Company for the kind of insurance specified in the Schedule of Insurance forming a part hereof from the effective date shown herein and until one year thereafter or until such earlier date as the actual policy may be issued.

**ITEM 2—SCHEDULE OF INSURANCE**   as per form on file with agency

Coverages per expiring 291 68 71 16   Premium $32,833.00

**ITEM 3—CANCELLATION**
Cancellation of the insurance described in Item 2 shall be in accordance with the applicable policy(ies) of insurance.

This Cover Note shall be terminated as of its inception by the issuance of the policy by the Company and the tentative advance premium shall be credited thereto.

**IN WITNESS WHEREOF,** the Company has caused this Cover Note to be signed by its President and Secretary at New York, N. Y. and countersigned by a duly authorized representative of the Company.

mas/u 10-24-79

2G 1608

**PRODUCER COPY**   Billed 10-19-79.

POLICY NUMBER

## CENTENNIAL
## INSURANCE COMPANY

291- 69- 65- 01

**I N S U R E D**

**Roman Catholic Diocese of Rockville Centre, and All Legal Entities Therein Over Which the same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Exercises Direct, Complete and Active Control over the Finances, Properties, Operations and Activities 50 North Park Avenue, Rockville Centre, NY 11570**

from noon standard time:   **October 1, 1979**

until noon standard time:   **October 1, 1982**

No. 291- 69- 65- 01

**P R O D U C E R**

**Arthur J. Gallagher & Company**
**Gould Center - Golf Road**
**Rolling Meadows, Illinois   60008**

| Premium is payable: at inception | $ | 32,833.33 |
|---|---|---|
| 1st anniversary | $ | 32,833.33 |
| 2nd anniversary | $ | 32,833.33 |

These declarations are completed by the following:

**AS PER FORMS ATTACHED**

| 25 | | 32 | 53-54 | 55 | 56 | 57-58 | 59 | 60 | 61 | 62 | 63-65 | 66-68 | 69-70 | 20-22 | 23-24 | 25-26 | 27-28 | 29-32 | 33-34 | 35 | 42 | 43-44 | 52-54 | 55-6 | 57-9 | 60 - 65 | 45 - 51 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CHECK DIGIT 1 | OFFICE 2 | PRO-DUCER 4 | P/C 2 | TERM 1 | CO. 1 | POLICY TRAN-SACTION 1 | INSTALL-MENT 1 | FINANCE 1 | REINS ASSUMED 1 | SPECIAL AGT. 1 | REINS. CO. 3 | SUB-PROD. 8 | FOREIGN CURRENCY 1 | LINE 1 | TRAN-SACTION 2 | STATE 2 | TERR. 1 | TAX TOWN 4 | TAX COUNTY 2 | 36 | PROCESS CODE 2 | COMM. RATE 8 | STATISTICAL CODE 8 8 6 | | | PREMIUM 7 |
| 6 | 13 | 3300 | C 3 | C | 5 | | | | | | | | | 151 | 31 | — | | | | | — | | 150 | 55 | 090 | 460102 | 32,833.33 |

71 NP | BK | 73 DB | CD | 75 RR | 77 | 79

RENEWAL OR REWRITE OF POLICY NO.

291 68 71 16

| BASIS OF PREMIUM ADJUSTMENT | | |
|---|---|---|
| SECTION I | SECTION II | |
| ☐ ANNUALLY ☐ MONTHLY ☐ | ☐ EXPIRATION ☐ ANNUALLY ☐ | ☐ COMPOSITE RATE ☐ PREMIUM SCHEDULE |

POLICY INSURES: ELEVATORS ☐ YES ☐ NO        AUTOMOBILES ☐ YES ☐ NO

INSURED'S PRINCIPAL BUSINESS: **Operates Parishes, Schools, Cemeteries, & other Catholic Agencies**

COLLATERAL LINES: _____

COPIES TO:   ☐ AUDIT   ☐ ENGINEERING   xx   Home Office

RECEIVED
DEC 14 1979
Arthur J. Gallagher
and Company

To ACCTS:
10-15-79

2MF129b-1-(8/72)-Printed in U.S.A.        **PRODUCER'S COPY**

THIS DECLARATIONS PAGE IS ISSUED WITH AND IS PART OF Condominium Program Policy 201-69-qSe00ium

| Item | LIABILITY DECLARATIONS |
|---|---|
| 1. | The insurance afforded is only with respect to such of the following Parts designated by an ''X'' in ⊠ and Coverages therein as are indicated by specific limits of liability. The limit of the company's liability against each such Coverage shall be as stated herein subject to all the terms of this policy having reference thereto. |

| COVERAGE PARTS | | LIMITS OF LIABILITY | |
|---|---|---|---|
| | ⊠ | Each Occurrence | Aggregate |
| | ☐ | | |
| Bodily Injury Liability | | $ | $ |
| Property Damage Liability | | $ | $ |
| | | Each Person | Each Accident |
| Premises Medical Payments Insurance | | $ | $ |
| | | Aggregate | |
| Personal Injury Liability Insurance | ⊠ | $ | XXXXXX |
| Comprehensive Automobile Liability Insurance | ⊠ | Each Person | Each Occurrence |
| Bodily Injury Liability | | $ | $ |
| Property Damage Liability | | XXXXXX | $ |
| | | Each Person | Each Accident |
| Automobile Medical Payments Insurance | ☐ | $ | XXXXXX |
| Protection Against Uninsured Motorists Insurance | ☐ | $ | $ |
| XXXXXXXXXXX  Liquor Liability | ⊠ | See Coverage Conditions for Limits of Liability | |
| Automobile Physical Damage Insurance | ☐ | See Coverage Conditions for Limits of Liability | |
| Commercial Umbrella Liability Insurance | ☐ | See Coverage Conditions for Limits of Liability | |
| Workmen's Compensation | ⊠ | | |

| 2. | Location of all premises owned, rented or controlled by **named insured** (enter ''same'' if as shown in Section I Declarations) | Interest of **named insured** in premises | Part occupied by **named insured** |
|---|---|---|---|
| | a) | | |
| | b) | | |
| | c) | | |
| | d) | | |

| 3. | Business of the named insured is **Operates Parishes, Schools, Cemeteries & other Catholic Agencies** |
|---|---|
| 4. | The **named insured** is ☐ Individual; ☐ Partnership; ☐ Corporation; ☐ |
| 5. | During the past three years no insurer has cancelled insurance, issued to the **named insured**, similar to that afforded hereunder, unless otherwise stated herein:* <br> *ABSENCE OF AN ENTRY MEANS "NO EXCEPTION" |
| 6. | This section is completed by the following: <br>          AS PER FORMS ATTACHED |

MF 101E (11-74) Printed in U.S.A.

**SECTION II**                                                     **LIABILITY DECLARATIONS**

No. 291 69 65 01

STOCK COMPANY

# COVER NOTE

# CENTENNIAL

## INSURANCE COMPANY

HOME OFFICE, 45 WALL STREET, NEW YORK, N.Y. 10005

**Insured's Name and Mailing Address**

The Roman Catholic Diocese of
Rockville Center
50 North Park Ave.
Rockville Center, New York

**PRODUCER**

Arthur J. Gallagher & Co.
The Tower, Golf Road
Rolling Meadows, Illinois

| 10-1-79 | 10-1-80 | 1 |
|---|---|---|
| Inception (Mo. Day Yr.) | Expiration (Mo. Day Yr.) | Years |

The above named company, hereinafter referred to as the Company, agrees with the named insured, hereinafter referred to as the insured, in consideration of the payment of the above tentative advance premium and subject to all the terms of this Cover Note as follows:

**ITEM 1**—The Company acknowledges itself bound by the terms, conditions and limitations of the policy of insurance in current use by the Company for the kind of insurance specified in the Schedule of Insurance forming a part hereof from the effective date shown herein and until one year thereafter or until such earlier date as the actual policy may be issued.

**ITEM 2**—SCHEDULE OF INSURANCE   as per form on file with agency

Coverages per expiring 291 68 71 16   Premium $32,833.00

**ITEM 3**—CANCELLATION

Cancellation of the insurance described in Item 2 shall be in accordance with the applicable policy(ies) of insurance.

This Cover Note shall be terminated as of its inception by the issuance of the policy by the Company and the tentative advance premium shall be credited thereto.

**IN WITNESS WHEREOF,** the Company has caused this Cover Note to be signed by its President and Secretary at New York, N. Y. and countersigned by a duly authorized representative of the Company.

*Joseph P. Decaminada*
Secretary   mas/u 10-24-79

*Harold A. Eckmann*   President

............................................................
*Authorized Representative*

2G 1608

...less physically deleted by the Company, Clauses A and B below shall be paramount and shall supersede and nullify any contrary provision of this policy.

## A. WAR RISK EXCLUSION

This policy does not insure against loss or damage caused by or resulting from:

(1) hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack, (a) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or (b) by military, naval or air forces; or (c) by an agent of any such government, power, authority or forces;

(2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war;

(3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

## B. NUCLEAR EXCLUSION CLAUSES

If this policy does not include coverage against the peril of fire it is agreed that the following exclusion applies: The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy.

If this policy includes coverage against the peril of fire it is agreed that the following exclusion applies: The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; however, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this policy.

Cancellation: This policy may be cancelled by the Insured by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Insured at the address shown in this policy or last known address written notice stating when not less than five (5) days thereafter such cancellation shall be effective. The mailing of notice aforesaid shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing.

If the Insured cancels, earned premiums shall be computed in accordance with the customary short rate table or procedure. If the Company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund or premium due to the Insured.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are herewith made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.



CENTENNIAL INSURANCE COMPANY

In Witness Whereof, this company has executed and attested these presents, but this policy shall not be valid unless countersigned above by a duly authorized representative of this company.

_____ Secretary                    _____ President

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
#### (BROAD FORM)

This endorsement modifies the provisions of this policy relating to ALL AUTOMOBILE LIABILITY, GENERAL LIABILITY AND MEDICAL PAYMENTS INSURANCE OTHER THAN FAMILY AUTOMOBILE, SPECIAL PACKAGE AUTOMOBILE, COMPREHENSIVE PERSONAL AND FARMER'S COMPREHENSIVE PERSONAL INSURANCE.

agreed that:

I. This policy does not apply:

A. Under any Liability Coverage, to **bodily injury** or **property damage**

(1) with respect to which an **insured** under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the **hazardous properties** of **nuclear material** and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

C. Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material**, if

(1) the **nuclear material** (a) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** or (b) has been discharged or dispersed therefrom;

(2) the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured**; or

(3) the **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to **property damage** to such **nuclear facility** and any property thereat.

II. As used in this endorsement:

"**hazardous properties**" include radioactive, toxic or explosive properties;

"**nuclear material**" means **source material**, **special nuclear material** or **byproduct material**;

"**source material**", "**special nuclear material**", and "**byproduct material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

"**waste**" means any waste material (1) containing **byproduct material** and (2) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph (a) or (b) thereof;

"**nuclear facility**" means

(a) any **nuclear reactor**,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing **spent fuel**, or (3) handling, processing or packaging **waste**,

(c) any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"**property damage**" includes all forms of radioactive contamination of property.

**NEW YORK EXCEPTION:** The "Nuclear Energy Liability Exclusion Endorsement (Broad Form)" does not apply to Automobile Liability Insurance in New York.

FORM 2Q4285-D (Rev. 1-1-73) Printed in U.S.A. (3/78)
(AG-00-01)



issued to
by                                    Insurance Company.

ENDORSEMENT #1

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*

It is agreed that the first annual installment premium is $32,833.33 based on
total values of $513,844,026 and future annual installments will be based on
anniversary date values calculated as follows:

    Going In Values

    Plus (a)  Additions
    Less (b)  Deletions
    Plus (c)  The reconstruction cost variation as provided by
              Gallagher Bassett Insurance Service

*John J. Machmashi*

President

---------------------------------------
Authorized Representative

MF 75c (10/77)

**PRODUCER'S COPY**                              **DECLARATIONS ENDORSEMENT**

*Effective* 20-01226-scc   Doc 6-8   Filed 10/01/20   Entered 10/01/20 08:44:55   Exhibit C
(At the time stated in the policy) Part 2 - London Program Policy Compendium   Pg 21 of 225
*this endorsement forms a part of Policy No.*

issued to

by                            Insurance Company.

                                                        ENDORSEMENT

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*

### ERRORS AND OMISSIONS

**It is agreed that Section II Agreement C is amended to include the following:**

**The underwriters agree, subject to the terms and conditions hereof, to indemnify
the Assured (as hereinafter defined) against any claim or claims made against
them individually or collectively during the period of this Insurance, by reason
of a wrongful act, error or omission, whenever or wherever committed or alleged
to have been committed while acting in their capacity as trustee, director, or
council member in a diocesan connected entity.**

**It is further agreed:**

1.   **There shall be no liability hereunder for any claim made against the
     Assured for wrongful act, error or omission committed or alleged to
     have been committed prior to October 1, 1979 (hereinafter referred to
     as the "Retroactive Date").**

2.   **In the event of non-renewal or termination of this Insurance, then the
     Insurance shall extend to apply to claims made against the Assured during
     the twelve (12) calendar months following immediately upon such expiration
     or termination, but only for wrongful act, error or omission, committed or
     alleged to have been committed between the Retroactive Date and such expi-
     ration or termination.**

**The term Assured as used herein mean the Named Assured and all persons who
were, now are or shall be appointed or elected trustee, director or council member
in any parishes, schools, cemeteries, and other agencies or directly connected
organizations of the Diocese.**

**Underwriters shall not be liable to make payment for loss in connection with any
claim made against Assured if a judgment or final adjudication in ay action brought
against the Assured shall be based on a determination that acts of fraud or dishonesty
were committed by the Assured.**

      **All Other Terms And Conditions Remain Unchanged**

*John J. Mackworth*                              *R.H. Holton*
_____                    _____
*President*                                    *Authorized Representative*

MF126A (10-75) Printed in U.S.A.
**PRODUCER'S COPY**

                                                  **CONDITIONS ENDORSEMENT**

*Effective*
*(At the time stated in the ...*

issued to

by                                      Insurance Company.

                                                        ENDORSEMENT  **#3**

*(The information provided for above is required to be completed only when this*
*endorsement is issued for attachment to the policy subsequent to its effective date.)*

It is hereby understood and agreed that the following are named as additional
named insureds under this policy:

        Bishop John R. McGann

        Bishop Emeritus Walter P. Kellenberg

        Auxiliary Bishop Gerald J. Ryan

        Auxiliary Bishop James J. Daly

                *President*                                *Authorized Representative*

MF 75c (10/77)

**PRODUCER'S COPY**                                        **DECLARATIONS ENDORSEMENT**

*Effective* _____
*(At the time stated in the p__)*

*this endorsement forms a part of Policy No.* ___

*issued to*
*by* _____ Insurance Company.

ENDORSEMENT **#4**

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*

In consideration of the premium charged, it is agreed the policy is extended
to include the following coverage:

### Automobile Non Ownership

Notwithstanding anything contained herein to the contrary, this policy is
extended to include Non Ownership Liability but only to provide coverage
for owners of automobiles while being used in connection with activities
being sponsored by the Named Insured.

It is further agreed this extension shall be excess of any other valid and
collectible insurance.

The Loss Limitation hereon in respect of Automobile Bodily Injury/Property
Damage remains at $200,000. Combined Single Limit from ground.

All Other Terms And Conditions Remain Unchanged

*John J. Mackenzie*
*President*

*R.W. Holton*
*Authorized Representative*

MF 75c (10/77)

**PRODUCER'S COPY**

**DECLARATIONS ENDORSEMENT**

*Effective*

*(At the time stated in the policy)*

this endorsement forms a part of Policy No.

*issued to*

*by*                            Insurance Company.

ENDORSEMENT **#5**

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*

**In consideration of the premium charged, it is agreed the following coverages
are added to the policy:**

1.  Mercy Hospital                      $9,200,000. Business Interruption
    Rockville Centre, New York          80% Coinsurance
                                        $ 500,000. Extra Expense

2.  St. Francis Hospital                $4,700,000. Business Interruption
    Roslyn, New York                    80% Coinsurance
                                        $ 500,000. Extra Expense

3.  St. Mary of the Angels Home         $   40,000. Rental Income
    Convent Road                        100% Coinsurance
    Syosset, Nassau County, New York

4.  Catholic Press Association          $   60,000. Extra Expense
    53 North Park Avenue                80% Coinsurance
    Rockville Centre, New York


**All Other Terms And Conditions Remain Unchanged**


*President*

*Authorized Representative*

MF126A (10-75) Printed in U.S.A.

**PRODUCER'S COPY**

**CONDITIONS ENDORSEMENT**

*Effective*
(At the time stated in the p    )

*issued to*
  *by*                               Insurance Company.

                                                        ENDORSEMENT  #6

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*

It is further agreed that with respect to the operations of hospitals this
policy does not apply to Liability arising out of professional medical services
rendered or failure to be rendered.

All Other Terms And Conditions Remain Unchanged

                                    *President*                              *Authorized Representative*

MF 75c (10/77)

**PRODUCER'S COPY**                                      **DECLARATIONS ENDORSEMENT**

issued to

by ............................ Insurance Company.

ENDORSEMENT #7

*(The information provided for above is required to be completed only when this endorsement is issued for attachment to the policy subsequent to its effective date.)*

It is agreed that the "Named Insured" includes all insureds and additional interests named in certificates of insurance applying to automobile liability for the personal automobiles of priests and nuns. These certificates shall be on file with Gallagher Bassett of New York, Inc.

All Other Terms And Conditions Remain Unchanged

*President*

*Authorized Representative*

MF 75c (10/77)

**PRODUCER'S COPY**

**DECLARATIONS ENDORSEMENT**

*Effective* , this endorsement forms a part of Policy No. 9

*(At the time stated in the     y)*

issued to
    *by*                                   Insurance Company.

                                                             ENDORSEMENT #8

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*

It is hereby understood and agreed the follwoing is added as an additional
insured under this policy:

The City of New York Department of Sanitation in respect of:

St. Agnes Academic High School
13-20  124th Street
College Point, Queens, New York

In accordance with the Hold Harmless Agreement entered into between the
Assured and the City.

All Other Terms And Conditions Remain Unchanged

                    *President*                              *Authorized Representative*

MF 75c (10/77)

**PRODUCER'S COPY**                          **DECLARATIONS ENDORSEMENT**

*Effective* 10-1-79

(At the time stated in the policy)    *this endorsement forms a part of Policy No.* 251-69535-01

*issued to*    **Diocese of Rockville Center, Etal**

*by*    **Centennial**    Insurance Company.

ENDORSEMENT #10

*(The information provided for above is required to be completed only when this endorsement is issued for attachment to the policy subsequent to its effective date.)*

It is hereby understood and agreed that effective October 1st 1979 the errors and omissions coverage is amended to include all priests, religious personnel and employees.

*John J. Machrucki*

*President*

MF 75c (10/77)

**PRODUCER'S COPY**

----------------------------------------------------------------

*Authorized Representative*

**DECLARATIONS ENDORSEMENT**

*Effective* **10-1-80** *Direct or named Policy No* **C 20-69-26-01**
*(At the time stated in the policy)*

*issued to* **Roman Catholic Diocese of Rockville Center**
*by* **Centennial**          Insurance Company.

ENDORSEMENT #11

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*

It is understood that the 2nd annual installment for the period of
10-1-80 to 10-1-81 is 10% of $512,200.00 based on total values of
$791,914,918.00.

RECEIVED
SEP 30 1980
Arthur J. Gallagher
and Company

kb 9-29-80

*John J. Machronski*
                *President*

*R.H. Holton*
------------------------------------
        *Authorized Representative*

MF 75c (10/77)

**PRODUCER'S COPY**

**DECLARATIONS ENDORSEMENT**

ENDORSEMENT
Attached to and forming part of Compendium 65
in the name of Roman Catholic Diocese of Rockville Centre, etal
Effective date of this endorsement is October 1, 1981         Endorsement No. 12a

## EXTRA EXPENSE

It is agreed that if the property described in Insuring Agreement A of
Section I is damaged or destroyed by perils insured against in said Insuring
Agreement A during the period of this Insurance so as to necessitate the
incurrence of Extra Expense (as defined below) the Underwriters shall
be liabile for the Extra Expense so incurred, not exceeding the actual loss
sustained, for not exceeding such length of time, hereinafter referred
to as the "period of restoration", commencing with the date of damage
or destruction and not limited by the date of expiration of this Insurance,
as shall be required with the excercise of due diligence and dispatch to
repair, rebuild, or replace such part of said property as may be destroyed
or damaged.

It is further agreed that this extension in coverage shall not operate to
increase the Underwriters limits of liability hereunder.

DEFINITIONS

(a)  Extra Expense: The term "Extra Expense" wherever employed
     herein is defined as the excess (if any) of the total cost during
     the period of restoration of the operation of the business over and
     above the total cost of such operation that would normally have
     been incurred during the same period had no loss occurred; the
     cost in each case to include expense of using other property or
     facilities of other concerns or other necessary emergency expenses.
     In no event, however, shall the Underwriters be liable for loss of
     profits or earnings resulting from diminution of business, nor for
     any direct or indirect property damage loss insurable under Property
     Damage policies, or for expenditure incurred in the purchase, construction
     repair or replacement of any physical property unless incurred
     for the purpose of reducing any loss hereunder not exceeding, however,
     the amount in which the loss is so reduced.  Any salvage value
     of property so acquired which may be sold or utilized by the Assured
     upon resumption of normal operations shall be taken into consideration
     in the adjustment of any loss hereunder.

(b)  Normal: The term "Normal" wherever used herein shall mean;
     the condition that would have existed had no loss occurred.

CONDITIONS

(a)  Resumption of Operations: As soon as practicable after any loss,
     the Assured shall resume complete or partial business operations
     at the property herein described and, insofar as practicable, reduce
     or dispense with such additional charges and expenses as are being
     incurred.

(b)  Interruption by Civil Authority: Liability hereunder is extended
     to include actual loss as covered hereunder, sustained during the
     period of time, not exceeding two weeks, when as a direct result
     of a peril insured against, access to the premises in which the property
     described is located is prohibited by order of civil authority.

issued to      Roman Catholic Diocese of Rockville Center, etal
by             Centennial              Insurance Company.

ENDORSEMENT   #12

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*

It is understood and agreed that Extra Expense Coverage
is added per attached Endorsement #12a.

vp 2/18/82                    *John J. Machinski*
                                         President

MF 75c (10/77)

**PRODUCER'S COPY**

_____
Authorized Representative

**DECLARATIONS ENDORSEMENT**

*Effective* **October 1, 1981**
*(At the time stated in the policy)*

*issued to* **Roman Catholic Diocese of Rockville Center, Etal**
*by* **Centennial** Insurance Company.

ENDORSEMENT # 14

*(The information provided for above is required to be completed only when this endorsement is issued for attachment to the policy subsequent to its effective date.)*

**In consideration of the premium paid, it is understood and agreed that this company's participation is amended to read 20 %.**

fb/10/16/81

*President*

RICHARD HOLTAN

*Authorized Representative*

MF 75c (10/77)

**PRODUCER'S COPY**

**DECLARATIONS ENDORSEMENT**

Effective 20-October, 1981 ~~See 6-8~~, this endorsement forms a part of Policy No. 291-60-65-01 Exhibit C
Filed 10/01/26 Entered 10/01/26 08:44:55
(At the time issued in the policy)
Part 2 - Pollution Program Policy Compendium    Pg 33 of 225

**Roman Catholic Diocese of Rockville Center, Etal**

issued to

by **Centennial**                Insurance Company.

                                    ENDORSEMENT **# 15**

*(The information provided for above is required to be completed only when this endorsement is issued for attachment to the policy subsequent to its effective date.)*

It is understood and agreed that the third annual Installment

for the period October 1, 1981 to October 1, 1982 is $ 99,000–

(20 % of $ 495,000–) based on total values of $ 875,079,358.00.

*fb/10/16/81*        President

-------------------------------------------------------------

                                    *Authorized Representative*

MF 75c (10/77)

**PRODUCER'S COPY**                **DECLARATIONS ENDORSEMENT**

*Effective*   October 1, 1981 , this endorsement forms a part of Policy No.   291-69-65-01

*(At the time stated in the policy)*

*issued to*   Roman Catholic Diocese of Rockville Center, Etal

*by*   Centennial                Insurance Company.

ENDORSEMENT   #16

*(The information provided for above is required to be completed only when this
endorsement is issued for attachment to the policy subsequent to its effective date.)*

In consideration of an additional premium of $1,500 (20% of
$7,500) it is understood and agreed that the following changes
are made part of this policy:

1. Aggregate Agreement on Part I is amended per Endorsement #17
   attached.

2. Money & Securities Coverage is reduced from $50,000 to
   $25,000 and Priests Personal Effects is aded per attached
   Endorsement #18.

3. Tuition Fees and Extra Expense Coverage is added - see
   Endorsement #19.

4. Non-Owned Aircraft Liability is added per Endt. #20.

vo 2/18/82

*John J. Machinski*

*President*

............................................

*Authorized Representative*

MF 75c (10/77)

**PRODUCER'S COPY**

**DECLARATIONS ENDORSEMENT**

Attached to and forming part of Policy    /    291-69-65-01

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is  October 1, 1981                Endorsement No.   17

## IT IS AGREED THAT:

1. The annual premium for the period  October 1, 1981 to October 1, 1982
   is  $502,500.00                          based on values
   of  $875,079,358.00.

2. Part I (Aggregate Agreement) shown on Page 1 of the wording attached to the above
   numbered Cover Note is amended to read:

### PART I (AGGREGATE AGREEMENT)

LIMITS OF LIABILITY: The Underwriters' Limits of Liability under this Agreement
shall be only for the Excess of Loss over

(A)   Annual aggregate Loss Fund of $ 2,400,000   ultimate net loss (hereinafter
      referred to as "Assured's Loss Fund").  As respects any one loss the Assured's
      Loss Fund shall not be charged with

   1)  An amount in excess of the amount stated in (B) below or

   2)  any loss arising under Section I (except Automobile Comprehensive Perils)
       and Section III which is less than  $100.

OR

(B)   $ 100,000       Ultimate Net Loss as respects any one loss under  Sections I,
      II, or III or any combination thereof

and then in excess of the above amounts up to $  500,000        ultimate net loss
in the aggregate in any one period of insurance in respect of the Assured's Loss Fund.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

ARTHUR J. GALLAGHER & CO.

By *Donald J. Kruth*

ENDORSEMENT

Attached to and forming part of Policy /— 291-69-65-01

in the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1981          Endorsement No. 18

It is hereby understood and agreed that effective October 1, 1981 the Perils
Insured are amended to:

      EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE, AUTO PHYSICAL
      DAMAGE, EXTRA EXPENSE/TUITION FEES, PRIESTS PERSONAL EFFECTS,
      MONEY AND SECURITIES, COMPREHENSIVE GENERAL LIABILITY, NONOWNED
      AIRCRAFT LIABILITY, WORKERS COMPENSATION AND/OR EMPLOYERS
      LIABILITY AND/OR OCCUPATION DISEASE AND MEDICAL PAYMENT,
      EMPLOYEE FIDELITY, ERRORS AND OMISSIONS AND SCHOOL BOARD
      LIABILITY, PRIESTS PERSONAL LIABILITY.

It is further understood and agreed that effective October 1, 1981 the loss
limits in respect of the Self Insured Fund and within the limits of this
insurance shall not exceed:-

| | |
|---|---|
| Money & Securities: | $ 25,000 each and every occurrence |
| Flood: | $500,000 in the aggregate annually |
| All Third Party: | $200,000 any one occurrence C.S.L. PL/PD |
| W.C.A./E.L./O.D.: | $150,000 any one occurrence |
| Medical Payments: | $ 5,000 any one person |
| Employee Fidelity: | $ 25,000 any one loss |
| Errors & Omissions & School Board Liability: | $200,000 any one occurrence and in the aggregate annually. |
| Priests Personal Effects: | $ 10,000 any one person |
| Extra Expense/Tuition Fees: | $100,000 any one occurrence |

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

ARTHUR J. GALLAGHER & CO.(ILLINOIS)

BY: _Donald J. Krutek_

ENDORSEMENT

Attached to and forming part of Policy /   -291-69-65-01-   ⟨⟩

in the name of    Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1981    Endorsement No.   19

## TUITION FEES

Insurance attaches to this item(s) only when "Tuition Fees", a specific amount
and a contribution percentage are specified therefor in this policy, and, unless
otherwise provided, all provisions and stipulations of this form and policy shall
apply separately to each item.

1.    This policy covers against loss of tuition fees resulting directly from
      damage to or destruction of real or personal property by the peril(s)
      insured against, during the term of this policy, on premises occupied by
      the Assured and situated as herein described.

2.    In the event of such damage or destruction the Underwriters shall be liable
      for the ACTUAL LOSS OF TUITION FEES SUSTAINED by the Assured less charges
      and expenses which do not necessarily continue during the period of time,
      not limited by the date of expiration of this policy, commencing with the
      date of such damage or destruction and ending (except as provided in
      Paragraph 3) on the day preceding the beginning of the first school year
      following the date that the damaged or destroyed property could, with the
      exercise of due diligence and dispatch, be rebuilt, repaired or replaced.

3.    If the period of time (as provided under Paragraph 2) for rebuilding,
      repairing or replacing the damaged or destroyed property shall end on a
      date within 30 days immediately preceding the beginning of the first school
      year specified above, the period of liability for loss under this policy is
      hereby extended to end on the day preceding the beginning of the second
      school year.

4.    The words "beginning of school year", however modified, wherever used in
      this policy, shall mean the opening date of school in the Fall as pres-
      cribed, or as would be prescribed, in the school catalogue.

5.    Resumption of Operations:  It is a condition of this insurance that if the
      Assured could reduce the loss resulting from the interruption of business,

      (a)    by complete or partial resumption of operation of the property herein
             described, whether damaged or not, or

      (b)    by making use of other property, equipment or supplies at the location(s)
             described herein or elsewhere, such reduction shall be taken into account
             in arriving at the amount of loss hereunder.

6.    Expenses to Reduce Loss:  This policy also covers such expenses as are neces-
      sarily incurred for the purpose of reducing loss under this policy (except expens
      incurred to extinguish a fire), but in no event shall the aggregate of such
      expenses exceed the amount by which the loss under this policy is thereby
      reduced.  Such expenses shall not be subject to the application of the
      Contribution Clause.

7. Definition of Tuition Fees: For the purposes of this insurance, "Tuition Fees" are defined as the sum of tuition, fees and other income from students, less the cost of merchandise sold and materials and supplies consumed in services sold to such students. In determining Tuition Fees due consideration shall be given to the experience of the Assured before the date of damage or destruction and the probable experience thereafter had no loss occurred.

8. Contribution Clause: In consideration of the rate and form under which this policy is written, the Underwriters shall be liable in the event of loss, for no greater proportion thereof than the amount hereby covered bears to the Contribution (Coinsurance) percentage specified in the first page of this policy (or endorsed hereon) of the Tuition Fees that would have been earned (had no loss occurred) during the 12 months immediately following the date of damage to or destruction of the described property.

9. Interruption by Civil Authority: This policy is extended to include the actual loss of Tuition Fees sustained by the Assured as covered hereunder, during the length of time, not exceeding 2 consecuitve weeks, when, as a direct result of damage to or destruction of property adjacent to the property herein described by the peril(s) insured against, access to such described property is specifically prohibited by order of civil authority.

10. Limitation - Media For Electronic Data Processing: With respect to loss resulting from damage to or destruction of media for, or programming records pertaining to, electronic data processing or electronically controlled equipment, including data thereon, by the peril(s) insured against, the length of time for which the Underwriters shall be liable hereunder shall not exceed -

   (a) 30 consecutive calendar days;  or
   (b) the length of time that would be required to rebuild, repair or replace such other property herein described as has been damaged or destroyed;
   whichever is the greater length of time.

11. Special Exclusions: The Underwriters shall not be liable for any increase of loss resulting from:

   (a) enforcement of any local or state ordinance or law regulating the construction, repair or demolition of buildings or structures;or
   (b) interference at the described premises, by strikers or other persons, with rebuilding, repairing or replacing the property or with the resumption or continuation of business; or
   (c) the suspension, lapse or cancellation of any lease or license, contract or order;
   nor shall the Underwriters be liable for any other consequential or remote loss.

12. Pro Rata Clause: The liability under this policy shall not exceed that proportion of any loss which the amount of insurance hereunder bears to all insurance, whether collectible or not, covering in any manner the loss insured against by this policy.

13. Loss Clause: Any loss hereunder shall not reduce the amount of this policy.

14. Work and Materials Clause: Permission grated for such use of the premises as is usual or incidental to the occupancy as described herein.

15.   Electrical Apparatus Clause:  The Underwriters shall not be liable for any
loss of tuition fees resulting from any electrical applicances, devices,
fixtures or wiring caused by electrical currents artifically generated
unless fire ensues and, if fire does ensue, the Underwriters shall be
liable only for its proportion of loss of tuition fees caused by such
ensuing fire.

16.   Alterations and New Buildings Clause:  Permission grated to make alterations
in, or to construct additions to, any building described herein. This policy
is extended to cover, subject to all its provisions and stipulations, loss
resulting from damage to or destruction of such alterations or additions
to any building described herein while in course of construction and when
completed or occupied, provided that, in the event of damage to or des-
truction of such property (including building materials, supplies, machinery
or equipment incident to such construction or occupancy while on the des-
cribed premises or within one hundred (100) feet thereof) so as to delay
commencement of business operations of the Assured, the length of time for
which the Underwriters shall be liable shall be determined as otherwise
provided herein but such determined length of time shall be applied and
the loss hereunder calculated from the date that business operations would
have begun had no loss occurred.

If any building herein described is protected by automatic sprinklers,this
clause shall not be held to include the reconstruction or the enlargement
of any building so protected, without the consent of the Underwriters in
writing.  This clause does not waive or modify any of the terms or condi-
tions of the Automatic Sprinkler Clause (if any) attached to this policy.

17.   Requirements in Case Loss Occurs:  The Assured shall give immediate written
notice to the Underwriters of any Tuition Fees loss and protect the pro-
perty from further damage; and within 60 days following the date of damage
to or destruction of the real or personal property described, unless such
time is extended in writing by the Underwriters, the Assured shall render
to the Underwriters a proof of loss, signed and sworn to by the Assured,
stating the knowledge and belief of the Assured as to the following:

   (a)   the time and origin of the property damage or destruction causing the
         Tuition Fees loss,
   (b)   the interest of the Assured and of all others in the business,
   (c)   all other contracts of insurance, whether valid or not, covering in
         any manner the loss insured against by this policy,
   (d)   any changes in the title, nature, location, encumbrance or possession
         of said property since the issuing of this policy, and
   (e)   by whom and for what purpose any building herein described and the
         several parts thereof were occupied at the time of damage or destruction,
and shall furnish a copy of all the descriptions and schedules in all policies,
and the actual amount of Tuition Fees and loss claimed, accompanied by detailed
exhibits of all values, costs and estimates upon which such amounts are based.

The Assured, as often as may be reasonable required, shall exhibit to any person
designated by the Underwriters all that remains of any property herein described,
and submit to examination under oath by any person named by the Underwriters, and
subscribe the same, and, as often as may reasonably required, shall produce for
examination all books of account, bills, invoices and other vouchers, or certified
copies thereof if originals be lost, at such reasonable time and place as may be

designated by the Underwriters or its representative, and shall permit extracts and copies thereof to be made.

18.   Subrogation Clause:  It is hereby stipulated that this insurance shall not be invalidated should the Assured waive in writing prior to a loss any or all right of recovery against any party for loss occurring to the property described herein.

19.   Liberalization Clause:  If during the period that insurance is in force under this policy, or within 45 days prior to the inception date thereof, on behalf of the Underwriters there be adopted, or filed with and approved or accepted by the insurance supervisory authorities, all in conformity with law, any changes in the form attached to this policy by which this form of insurance could be extended or broadened without increased premium charge by endorsement or substitution of form, then such extended or broadened insurance shall inure to the benefit of the Assured hereunder as though such endorsement or substitution of form had been made.

20.   Nuclear Clause:  The word "fire" in this policy or endorsements attached hereto is not intended to and does not embrace nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and loss by nuclear reaction or nuclear radiation or ratioactive contamination is not intended to be and is not insured against by this policy or said endorsements, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggevated by "fire" or any other perils insured against by this policy or said endorsements; however, subject to the foregoing and all provisions of this policy, loss by "fire" resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

ARTHUR J. GALLAGHER & CO.(ILLINOIS)

BY: *Donald J. Krutik*

ENDORSEMENT

Attached to and forming part of Policy /   291-59-65-01

in the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1981        Endorsement No. 20

In consideration of the premium charged it is hereby understood and agreed
that this Policy is extended to afford coverage in respect of Nonowned
Aircraft Liability.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

ARTHUR J. GALLAGHER & CO.(ILLINOIS)

BY: Donald J. Krutek

*Effective* October 1, 1981 , this endorsement forms a part of Policy No.   291 69 65 01

*(At the time stated in the policy)*

*issued to* Roman Catholic Diocese of Rockville Centre, et al
*by* Centennial                    Insurance Company.

ENDORSEMENT
#21

*(The information provided for above is required to be completed only when this endorsement is issued for attachment to the policy subsequent to its effective date.)*

It is understood and agreed that effective October 1, 1981 the following sub limit is included:

Towing expense: $25.00 each and every loss.

kb 3-30-82

*John J. Machinski*
President

Authorized Representative

MF 75c (10/77)

**PRODUCER'S COPY**

**DECLARATIONS ENDORSEMENT**

## Roman Catholic Diocese of Rockville Centre

### Insurance Policy Cover Sheet

|  |  |
|---|---|
| Insurer(s): | Underwriters at Lloyd's<br>London Market Companies |
| Policy number(s): | SL 3574<br>SLC 5630 |
| Inception date: | 10/1/1979 |
| Term at issuance: | 3 years |
| Page count: | 21 |
| Contents: | Slip- 1 pg<br>Endorsement- 1 pg<br>Combined Property, Casualty and Crime- PAC-1 to PAC-19- 20pgs |

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SL/005/CN)

| ITEM | | NUMBER **S L C   5630** |
|---|---|---|
| 1 | *Name of Assured* | Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein Over which the same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Excercises Direct, Complete and Active Control over the Finances, Properties, Operations and Activities 50 North Park Avenue Rockville Centre, New York 11570 |

**ITEM 2**

EFFECTIVE ☒ 12:01 A.M.   BOTH DAYS AT
FROM ☐ 12:00 NOON   STANDARD TIME   October 1, 1979   TO   October 1, 1982

**ITEM 3**

Acting upon your instruction, we have effected the insurance with:

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| Bellefonte Ins. Co. | 5.346% |
| Pine Top Ins. Co. Ltd. | 1.332% |
| Excess Ins. Co. Ltd. | 3.348% |
| Terra Nova Ins. Co. Ltd. | 3.348% |
| Yasuda Fire & Marine Ins. Co. (UK) Ltd. | .999% |
| | 14.373% |

**ITEM 4**

AMOUNT   COVERAGE   RATE   PREMIUM

Hereon:  14.373% Part of 100% of:

Subject to the same forms, terms, conditions and endorsements as more particularly set forth in Cover NOTE NO. SL3574.

Annual: $328,333.33
Hereon: $ 47,191.35

| Bellefonte Ins. Co. | $17,552.70 |
| Pine Top Ins. Co. Ltd. | 4,373.40 |
| Excess Ins. Co. Ltd. | 10,992.60 |
| Terra Nova Ins. Co. Ltd. | 10,992.60 |
| Yasuda Fire & Marine Ins. Co. (UK) Ltd. | 3,280.05 |

AUDIT

TOTAL CHARGED 47,191.35

**ITEM 5**

SPECIAL CONDITIONS

**ITEM 6**

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By _____

## ENDORSEMENT

Attached to and forming part of Policy  /  Certificate No.   SLC5630

in the name of    Roman Catholic Diocese of Rockville Centre, etal.

Effective date of this endorsement is  October 1, 1979          Endorsement No. A


IT IS AGREED that the first annual installment premium is  $328,333.33       based
on total values of  $513,844,026          and future annual installments will be
based on anniversary date values calculated as follows:

        Going In Values

        plus (a) Additions
        less. (b) Deletions
        plus (c) the reconstruction cost variation as
                provided by Gallagher Bassett
                Insurance Service


Hereon:   14.373%          part of 100%

| | | |
|---|---|---|
| Bellefonte Ins. Co. | 5.346% | $17,552.70 |
| Pine Top Ins. Co. Ltd. | 1.332% | $ 4,373.40 |
| Excess Ins. Co. Ltd. | 3.348% | $10,992.60 |
| Terra Nova Ins. Co. Ltd. | 3.348% | $10,992.60 |
| Yasuda Fire & Marine Ins. Co. (UK) Ltd. | .999% | $ 3,280.05 |
| | 14.373% | $47,191.35 |


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:    October 10, 1979        ARTHUR J. GALLAGHER & CO. (ILLINOIS)

                                 By *Louis E. Metzger Jr.*

## COMBINED PROPERTY, CASUALTY AND CRIME INSURANCE

This Insurance provides the following –

| | | |
|---|---|---|
| SECTION I | - | PROPERTY INSURANCE |
| Agreement A | - | Building and Contents |
| Agreement B | - | Automobile |

| | | |
|---|---|---|
| SECTION II | - | CASUALTY INSURANCE |
| Agreement C | - | General Liability |
| Agreement D | - | Liquor Liability |
| Agreement E | - | Automobile Liability |
| Agreement F | - | Worker's Compensation and/or Employers Liability and/or Occupation Disease |

| | | |
|---|---|---|
| SECTION III | - | CRIME INSURANCE |
| Agreement G | - | Money and Securities (within premises) |
| Agreement H | - | Money and Securities (outside premises) |
| Agreement I | - | Commercial Blanket Bond |

## DECLARATIONS

ASSURED: Roman Catholic Diocese of Rockville Centre, and all Legal
Entities therein over which the same central authority appoints
or controls the appointment of the board of trustees or similar
body and exercises direct, complete and active control over
the finances, properties, operations and activities.

ADDRESS:

50 North Park Avenue
Rockville Centre, New York 11570

LIMITS OF
LIABILITY:       See Part I for Aggregate Agreement;
Part II for Specific Excess Agreement.

PREMIUM:        Annual Premium SEE ENDORSEMENT #2 ATTACHED

TERM OF
INSURANCE:      Effective from  October 1, 1979 to October 1, 1982
BOTH DAYS at 12:01 a.m. Standard Time
at Assured's Address shown above.

6120

**PART I    (AGGREGATE AGREEMENT)**

LIMITS OF LIABILITY:  The Underwriters' Limits of Liability under this
Agreement shall be only for the Excess of Loss over

A)    An annual aggregate Loss Fund of  $2,400,000.    ultimate net loss
(hereinafer referred to as "Assured's Loss Fund).  As respects
any one loss the Assured's Loss Fund shall not be charged with

   ·1)    an amount in excess of the amount stated in B) below or

   2)    any loss arising under Section I (except Automobile Comprehensive
Perils) and Section III which is less than  $100.00

OR

B)  $100,000.    Ultimated Net Loss as respects any one loss under
Sections I, II, or III or any combination thereof

and then in excess of the above amounts up to  $500,000    ultimate
net loss in the aggregate in any one period of insurance in respect of
the Assured's Loss Fund.

LOSS FUND ADJUSTMENT:  The amount of the Assured's Loss Fund
applies to the first annual period of this policy and is subject to review
and change annually thereafter.

**PART II    (SPECIFIC EXCESS AGREEMENT)**

LIMIT OF LIABILITY:  The Underwriters' Limits of Liability under this
Agreement shall be only for the excess of loss over $100,000.  ultimate
net loss each and every loss and/or occurrence up to a further $400,000.
ultimate net loss each and every loss and/or occurrence, under Section
I, II or III or any combination thereof.

**GENERAL INSURANCE AGREEMENTS**

I.    **PERIOD OF INSURANCE**

The words "period of insurance" shall be understood to mean any
one of the following periods:-

| | |
|---|---|
| Period I | October 1, 1979 to October 1, 1980 |
| Period II | October 1, 1980 to October 1, 1981 |
| Period III | October 1, 1981 to October 1, 1982 |

II.    **NAME OF INSURED**

It is agreed that    Roman Catholic Diocese of Rockville Centre, etal.
owns and/or operates Parishes, Schools, Cemeteries and Other
Agencies under specific Names, and it is the intention of this
Insurance to cover such Parishes, Schools, Cemeteries and Other
Agencies or directly connected organizations as Named Assureds.

6121

PAC-2

It is also agreed that the unqualified word Assured wherever used in this Insurance includes not only the Named Assured but also –

1.    any official, trustee or employee of the Named Assured while acting within the scope of his duties as such, and any person, organization, trustee or estate to whom the Named Assured is obligated by virtue of written contract or agreement to provide insurance such as is offered by the Insurance, but only in respect to operations by or on behalf of the Named Assured.

2.    under Section II Agreement E any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the Named Assured or with his permission, and any official of the Named Assured with respect to the use of non-owned automobile in the business of the Named Assured.  This Insurance with respect to any person or organization other than the Named Assured does not apply:

(a)    to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any accident arising out of the operation thereof;

(b)    to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer;

(c)    with respect to any hired automobile, to the owner or a lessee thereof, other than the Named Assured, nor to any agent or employee of such owner or lessee;

(d)    with respect to any non-owned automobile, to any official or employee if such automobile is owned by him or a member of the same household.

The inclusion hereunder of more than one Assured shall not operate to increase Underwriters' Limits of Liability.

7937

PAC-3

III.   TERRITORY

This Insurance applies World Wide.

IV.   In calculating the amount of Ultimate Net Loss under Part I (Aggregate
Agreement) and Part II (Specific Excess Agreement) this Insurance
is deemed to have the following maximum limits which will apply
for all purposes to the Assured's Loss Fund and to the Specific Excess

(a)   $500,000.00   in the aggregate annually as respects
Flood loss under Section I.

(b)   $200,000.00   any one occurrence Combined Single
Limit Public Liability/Property Damage
under Section II Agreements C, D and
E, but in the aggregate annually as respects
School Board Liability, and Errors and
Omissions Provided by Endorsement #1
Attached.

(c)   $ 50,000.00   each and every loss under Section III
Agreements G and H.

(d)   $100,000.00   each and every loss under Section III
Agreement I.

(e)   $150,000.00   any one occurrence under Section II
Agreement F Worker's Compensation
and/or Employers' Liability and/or Occupation
Disease.

(f)   $ 5,000.00   any one person as respects Automobile
Medical Payments under Section I Agreement B.

(g)   $ 5,000.00   any one person as respects other than
Automobile Medical Payments under
Section II Agreement C. (Coverage
excludes payments to or for students).

V.   SERVICE ORGANIZATION

Insurance afforded under this Insurance is issued to the Assured
on the express condition that the Assured undertakes to utilize at
all times the services of Gallagher Bassett Insurance Service, Gould
Center, Golf Road, Rolling Meadows, Illinois 60008. This Service
Organization shall perform the following dutires:

(a)   Strictly discharge the Assured's obligation to the employees
or members of the public.

7938

PAC-4

**V.**   SERVICE ORGANIZATION (Cont'd)

(b)   Maintenance of accurate records of all details incident to payments.

(c)   Furnish inspection and safety engineering service.

(d)   Furnish monthly claims records on an approved form.

The acceptance of these services shall be a condition precedent to any liability which may attach to the Underwriters in accordance with the terms and conditions of this Insurance.

## SECTION I - PROPERTY INSURANCE

### INSURING AGREEMENTS

AGREEMENT A - BUILDING AND CONTENTS: Underwriters agree, subject to the limitations, terms and conditions of this Insurance, to indemnify the Assured for all risks of physical loss or damage to All Real or Personal Property of every kind and description wherever located occurring during the period of this Insurance.

AGREEMENT B - AUTOMOBILE: Underwriters agree, subject to the limitations, terms, and conditions of this Insurance, to indemnify the Assured for loss or damage to Automobiles owned by the Assured or on which the Assured has an obligation to provide adequate insurance, wherever located, against All Risks of Direct Physical Loss, including Collision of the Automobile with another object.

## SECTION I - DEFINITIONS

1.   PROPERTY OF THE ASSURED: The term "Assured's Property" shall mean All Real and Personal Property, including leasehold improvements or betterments which the Assured owns, property which the Assured holds on consignments, or agrees to insure by any contractual agreement normal to its operations.

2.   AUTOMOBILE: The term "Automobile" shall mean any motor vehicle, trailer or semi-trailer, including its equipment and any other equipment permanently attached thereto. The word "Trailer" shall include semi-trailer.

3.   ULTIMATE NET LOSS" The words "Ultimate Net Loss" in respect of this Section shall be understood to mean the loss sustained by the Assured after making deductions for all recoveries and salvages.

3314

PAC-5

## SECTION I - EXCLUSIONS

**WITH REGARD TO ALL PROPERTY, THIS INSURANCE DOES NOT INSURE AGAINST:**

1. Loss by moth, vermin, termites or other insects: wear, tear or gradual deterioration; rust, wet or dry rot or mould.

2. Loss or damage caused by

   (a) Radioactive or fissionable material
   (b) Contamination, other than by (a) above, unless directly resulting from Fire or Extended Coverage perils.

3. Loss resulting from loss of use (except such loss of use coverage as is afforded under a Standard Automobile Policy in respect of Agreement B above), delay or loss of markets.

4. Breakdown of machinery and/or boiler explosion, but not excluding loss resulting therefrom.

5. Loss resulting from dampness of atmosphere or variation in temperature unless caused by the perils of Fire and Extended Coverage.

6. Loss of electrical appliances or devices of any kind, including wiring, arising from electrical injury or disturbance to the said electrical appliances or devices or wiring from artifical causes unless fire or explosion ensues, and then only for direct loss or damage caused by such ensuing fire or explosion.

**WITH REGARD TO ALL REAL PROPERTY, THIS INSURANCE DOES NOT INSURE AGAINST:**

Loss by normal settling, normal shrinkage or normal expansion in foundations, walls, floors or ceilings.

**WITH REGARD TO PERSONAL PROPERTY, THIS INSURANCE DOES NOT INSURE AGAINST:**

1. Loss by mechanical derangement, inherent vice or latent defect.

2. Loss resulting from processing or faulty workmanship, unless fire and/or explosion ensues, and then only for direct loss or damage caused by such ensuing fire or explosion.

3. Loss resulting from shrinkage, evaporation, loss of weight or leakage, unless such loss is caused directly by fire or the combating thereof, lightning, windstorm, hail, explosion, strike, riot or civil commotion, aircraft, vehicles, breakage of pipes or apparatus, sprinkler leakage, vandalism and malicious mischief, theft or attempted theft.

3313

4.    Inventory shortage, mysterious disappearances, or loss resulting
from 6-8 kindest including Endorsement No. 14 the
Assured or any Policy respenden fr Employees covered
in Section III (Money and Securities - Broad Form) of this
Insurance.

PROPERTY EXCLUDED FROM COVERAGE HEREUNDER:

Animals, aircraft, standing timber and growing crops.

## SECION I - CONDITIONS

1.    VALUATION: The Underwriters shall not be liable for loss
or damage in excess of:

A.    (Real and Personal Property - other than automobile) -
the cost to repair, rebuild or replace the destroyed
or damaged property in a condition equal to but not
superior to or more extensive than its condition when
new. If Assured decides to replace destroyed or damaged
property on another site, cost of such site is not included
hereunder.

It is not a requirement hereunder that the Assured
repair, rebuild or replace the destroyed or damage
property in order to collect for loss or damage coverage
by this Insurance.

B.    (Automobile) - the actual cash value of the automobile
at the time of loss.

2.    DEBRIS REMOVAL: This Insurance covers the expense of
removal from the premises containing the property insured
hereunder of debris remaining after any loss hereby insured
against, except that there shall be no liability assumed for
the expense of removal of any foundations.

3.    REMOVAL CLAUSE: This Insurance covers the expense and
damage occasioned by removal from the premises endangered
by the perils insured against wherever such property is located
or removed for preservation.

4.    APPRAISAL: In the event the Assured and Underwriters
are unable to agree as to the amount necessary to rebuild,
repair or replace the damaged or destroyed property or the
actual amount of reimbursement to be paid, each party shall
name a competent and disinterested appraiser and the two
so chosen shall, before proceeding further, appoint a competent
and disinterested umpire. The appraisers together shall obtain
reconstruction estimates, and calculate the amounts of reimbursement
due, and failing to agree, shall submit their differences to
the umpire.

The award, in writing, duly verified by any two shall determine the points in question. Both parties shall pay the cost of their own appraisers and equally pro rate the cost of the umpire.

5.    CIVIL AUTHORITY CLAUSE:  Notwithstanding anything contained in this Insurance, property which is insured under this Insurance is also covered against the risk of damage or destruction by civil authority during a conflagration and for the purpose of retarding the same; provided that neither such conflagration nor such damage or destrucion is caused or contributed to by war, invasion, revolution, rebellion, insurrection or other hostilities or warlike operations.

5.    ORDINANCE DEFICIENCY CLAUSE:  Notwithstanding anything contained herein to the contrary, the Underwriters shall be liable also for the loss occasioned by the enforcement of any state or municipal law, ordinance or code, which necessitates, in repairing or rebuilding, replacement of material to meet such requirements. If demolition is required to comply with such enforcement Underwriters shall also be liable for such additional costs.

7.    EXPENSE TO REDUCE OR PREVENT LOSS:  This Insurance also covers such expenses as are necessarily incurred for the purpose of reducing or preventing any loss under this Insurance not exceeding, however, the amount by which the loss under this Insurance is thereby reduced.

## SECTION II - CASUALTY INSURANCE

## INSURING AGREEMENTS

AGREEMENT C - GENERAL LIABILITY:  Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the Named Assured under contract or agreement, for damages direct or consequential, and expenses, all as more fully defined by the term "ultimate net loss", on account of personal injuries, including death at any time resulting therefrom, suffered or alleged to have been suffered by any person or persons (excepting employees of the Assured injured in the course of their employment); and/or damage to or destruction or property or the loss of use thereof; arising out of any occurrence happening during the period of Insurance.

AGREEMENT D - LIQUOR LIABILITY:  In accordance with the provisions of the above Agreement C, the Underwriters agree that indemnity for the Assured extends to liability for the sale or distribution of alcoholic beverages by reason of any local, state or Federal Liquor control laws now in force and all laws amendatory thereto; and that such extension includes indemnity for loss of means of support.

9272

PAC-8

AGREEMENT E  AUTOMOBILE LIABILITY: Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnity the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the Named Assured under contract or agreement, for damages direct or consequential, and expenses, all as more fully defined by the term "ultimate net loss", on account of personal injury including death at any time resulting therefrom, suffered or alleged to have been suffered by any person or persons (excepting employees of the Assured injured in the course of their employment); and/or damage to or destruction of property or the loss of use thereof, arising out of the ownership, maintenance or use of any automobile and occurring during the period of this Insurance.

AGREEMENT F  WORKER'S COMPENSATION: The Underwriters hereby agree to indemnify the Assured for financial loss caused by personal injuries to his employees (including occupational disease) when the Assured is legally liable therefor to said employees (including death resulting therefrom) arising out of and in the course of employment by the Assured, provided such injuries are sustained during the continuance of this Insurance.


## SECTION II - DEFINITIONS


1.   PERSONAL INJURIES - The term "personal injuries" wherever used herein, shall mean:

(a)   Bodily Injury, Mental Injury, Mental Anguish, Shock, Sickness, Disease, Disability, False Arrest, False Imprisonment, False Eviction, Detention, Malicious Prosecution, Discrimination, Humiliation, Invasion of Right of Privacy, Libel, Slander or Defamation of Character; also Piracy and any Infringement of Copyright or of property.

(b)   Professional medical services rendered or which should have been rendered to any person or persons (other than employees of the Assured injured during the course of their employment) by any duly qualified medical practitioner, or nurse, or technician employed by or acting on behalf of the Assured, provided such liability is based solely upon error, negligence or mistake committed during the period of this Insurance.

2.   PROPERTY DAMAGE - The term "property damage" wherever used herein shall mean damage to or destruction or loss of property, excluding, however, damage to property owned by the Named Assured, but including damage to property of others in the care, custody or control of the Named Assured or property which is purchased by the Named Assured under a contract which provides that the title remain with the sellers until payments have been completed, the liability of Underwriters being limited to the amount of payments outstanding.

OCCURRENCE - The term "occurrence" wherever used herein
shall mean an accident or a happening or event or a continuous
or repeated exposure to conditions which unexpectedly and
unintentionally results in personal injury, or damage to property
during the policy period.  All such exposure to substantially
the same general conditions existing at or emanating from
one location shall be deemed one occurrence.

4.      ULTIMATE NET LOSS - The term "ultimate net loss" shall
        mean the total sum which the Assured becomes obligated
        to pay by reason of personal injury or property damage claims,
        either through adjudication or compromise, after making
        proper deductions for all recoveries and salvages, and shall
        also include hospital, medical and funeral charges and all
        sums paid as salaries, wages, compensation, fees, charges
        and law costs, premiums on attachment or appeal bonds,
        interest, expenses for doctors, lawyers, nurses and investigators
        and other persons, and for litigation, settlement, adjustment
        and investigation of claims and suits which are paid as a consequence
        of any occurrence covered hereunder, excluding only the
        salaries of the Named Assured's permanent employees.  Fees,
        charges and expenses for Gallagher Bassett Insurance Service
        are specifically excluded, and are to be paid by the Assured.


                SECTION II  -  EXCLUSIONS


THIS INSURANCE DOES NOT APPLY -

        (a)     to liability of any Assured for assault and battery committed
                by or at the direction of such Assured except liability for
                Personal Injury or Death resulting from any act alleged to
                be assault and battery for purpose of preventing injury to
                persons or damage to property;

        (b)     except with respect to operations performed by independent
                contractors, to the ownership, maintenance or use, including
                loading or unloading of aircraft, and watercraft over 25 feet
                in length;

        (c)     to damage or destruction of property owned by the Assured.


                SECTION II  -  CONDITIONS


1.      CROSS LIABILITY:  In the event of claims being made by
        reason of personal injuries and/or property damage suffered
        by any employee of one Assured herein for which another
        Assured herein is or may be liable, then this Insurance shall
        cover such Assured against whom a claim is made or may
        be made in the same manner as if separate policies had been
        issued to each Assured herein.  Nothing contained herein
        shall operate to increase the Underwriters' Limit of Liability
        as set forth herein.  The Underwriters agree to waive all
        rights of subrogation against all or any of the corporations
        or individuals comprising the Assured.

9271

2.    NOTICE OF OCCURRENCE: Whenever the Assured has
information from which the Assured may reasonably conclude
that an occurrence covered under Section II of this Insurance
involves injuries or damages, notice shall be given to Gallagher
Bassett Insurance Service, Gould Center, Golf Road, Rolling
Meadows, Illinois 60008 as soon as practicable. Claims shall
not be prejudiced if the Assured, through clerical oversight
or error, fails to notify the above firm of any such occurrence.

3.    COMMUTATION: Claims hereunder, not finally settled,
for weekly or periodical payment for compensation to employees
(or their dependents) as a result of death or injury shall be
notified with full particulars by the Assured to the Underwriters
within two years from the expiration date of this Insurance
and the Underwriters may, if they so elect, then or at any
time thereafter submit one or more of such claims to an
Actuary or Appraiser, to be mutually appointed by the Assured
and the Underwriters, and the Underwriters shall at their
option pay a lump sum to be fixed by the Actuary or Appraiser,
which payment shall constitute a full and final release of
the Underwriters' liability for such claim or claims, provided
however that such lump sum payment shall not constitute a
full and final release of Underwriters' liability if subsequent
to such lump sum payment any supplemental award is made
increasing the amount of compensation benefits payable to
the employee or his/her dependents and that any additional
claim may then be recommuted at Underwriters' option and
Underwriters may discharge any additional liability by another
lump sum payment.

4.    SELF-INSURERS STATUS: The Assured agrees to duly qualify
as a self-insurer by compliance with the provisions of the
Worker's Compensation and/or Occupational Disease Law
respecting Self-Insurance in the State of      New YORK
and shall continue to maintain said status throughout the
period of this Insurance, provided, however, Underwriters
shall not be relieved of their obligations hereunder because
of a breach of this condition until (1) the Assured becomes
insured with respect to his Worker's Compensation and/or
Occupational Disease liability or (2) the expiration of a period
of thirty days after date of the notice served upon the Assured
by the Industrial Commission terminating his status as a self-
insurer, whichever occurs first.

5.    If any employee is injured while engaged in the business operations
described in the Declarations, outside the State of      New York
this Insurance shall apply to the liability of the Assured on
account of such injuries irrespective of whether such liability
is greater than it would have been had the injuries been sustained
within the State of      New York     •

9274

## SECTION III - CRIME INSURANCE

## INSURING AGREEMENTS

**AGREEMENT G - MONEY AND SECURITIES (COVERAGE WITHIN PREMISES):**
Underwriters agree, subject to the limitations, terms and conditions of
this Insurance, to indemnify the Assured for all loss caused by reason of
theft, burglary, robbery, kidnapping, disappearance or destruction of any
money or securities which may at any time be or believed by the Assured
to be in or upon any premises, occupied or used by the Assured or by any
bank, trust company or safe deposit company. Such Insurance as is
afforded by this Insurance also applies to deposits within a night depository
safe provided by a bank or trust company on its premises for the use of
its customers.

**AGREEMENT H - MONEY AND SECURITIES (COVERAGE OUTSIDE PREMISES):**
Underwriters agree, subject to the limitations, terms and condition as of
this Insurance, to indemnify the Assured for all loss caused by reason of
the theft, robbery, kidnapping, disappearance or destruction of any money
or securities (other than by fraud or connivance of the Assured's officers
or employees) while in transit in the custody of the Assured's officers or
employees anywhere, the liability of the Underwriters to commence at
the moment when the person into whose hands the property may be delivered
on behalf of the Assured receives the same and to continue the delivery
thereof at final destination.

**AGREEMENT I - COMMERCIAL BLANKET BOND:** Underwriters (hereinafter
called ("the Surety") agree, subject to the terms and conditions set forth
herein, to indemnify the Employer against any loss of Money or other property
real or personal (including that part of any inventory shortage which the
Employer shall conclusively prove is caused by the dishonesty of any Employee
or Employees) belonging to the Employer or in which the Employer has
a pecuniary interest or for which the employer is legally liable or held
by the employer in any capacity, whether the Employer is legally liable
therefor or not, which the Employer shall during the term of this Insurance
sustain or discover that they have sustained through larceny, theft, embezzlement,
forgery, misappropriation, wrongful abstraction, wilful misapplication or
other fraudulent or dishonest act or acts committed by any one or more
of the Employees as defined, acting directly or in collusion with others.

## SECTION III - DEFINITIONS

### INSURING AGREEMENTS G AND H

1.  **MONEY:** The term "Money" as used in this Insurance shall be deemed
    to mean currency, coin, bank notes, uncancelled and precancelled
    postage and unused postage in postage meters.

9266

2.   SECURITIE.   The term "Securities" shall be deel  d to mean Federal
Food Stamps, express, postal and bank money orders, postal notes,
debentures, scrip, checks, warrants, transfers, coupons, demand
and time drafts, bills of exchange, acceptances, promissory notes,
certificates of deposits, certificates of stock, bonds, car trust certificates,
interim receipts and certificates, warehouse receipts, bills of lading
and all other instruments of a similar nature including mortgages
upon real estate or upon chattels and upon interests herein, and
instruments in the nature of mortgages upon real estate or upon
chattels and upon interests therein, and assignments of such mortgages
and instruments.

3.   It is understood and agreed that this Insurance covers money and
securities of the Assured or as respects which the Assured is legally
liable or held by it in any capacity, whether or not the Assured is
liable for the loss thereof. If legal proceedings are taken against
the Assured to enforce a claim for money and securities so held,
the Assured shall immediately notify the Underwriters in writing.

4.   <u>EMPLOYEES</u>  The term "Employees" shall mean not only persons
compensated by the Assured but also those directed by the Assured,
and including those independent contractors and/or services which
may be considered as usually performed by employees of the Assured.

5.   <u>THEFT:</u>  The term "Theft" shall include "trick and device".

6.   <u>ULTIMATE NET LOSS:</u>  The words "ultimate net loss" in respect
of this Section shall be understood to mean the actual loss sustained
by the Assured after making deductions for all recoveries and salvages.


<u>INSURING AGREEMENT I</u>

1.   <u>EMPLOYER:</u>  The term "Employer" as used in this Bond shall mean
the Assured Named in the Declarations and as further defined in
General Insurance Agreement II.

2.   <u>EMPLOYEE OR EMPLOYEES:</u>  The terms "Employee" or Employees
as used in this Bond shall be deemed to mean respectively one or
more of the natural persons who on the effective date of this Bond
or at any other time during the term of this Bond are in the regular
service of the Employer in the ordinary course of the Employer's
business and who are compensated by salary, wages and/or commission,
and whom the Employer has the right to govern and direct at all
times in the performance of such service, but not to mean brokers,
factors, commission merchants, consignees, contractors or other
agents or representatives of the same general character.


9265

## SECTION III - EXCLUSIONS

### THIS INSURANCE DOES NOT APPLY UNDER INSURING AGREEMENTS G AND H

(a)     to any fraudulent, dishonest or criminal act other than robbery or safe burglary or attempt thereat, committed by the Assured or by any officer, employee (except Brinks or Armored Car Employees): trustee or authorized representative of the Assured, whether acting alone or in collusion with others.

(b)     to forgery by whomsoever committed.

## SECTION III - CONDITIONS

1.     **under INSURING AGREEMENTS G, H AND I**

Warranted free of all claims for losses not discovered within the term of this Insurance and for losses sustained and/or acts committed prior to   October 1, 1979 hereinafter called the Retroactive Date) but with the understanding that in the event of (a) the expiration of this Insurance by reason of non-renewal, or (b) the termination of this Insurance as an entirety, as provided in General Condition 5, the Assured shall have twelve calendar months following the date of such expiration or termination in which to discover losses sustained between the Retroactive Date and the date of such expiration or termination.

Notwithstanding anything to the contrary contained herein it is understood and agreed that in the event of this Insurance being immediately succeeded by a similar Insurance with Underwriters at Lloyd's on which the Retroactive Date is October 1, 1979 the said succeeding insurance shall be deemed to be a renewal hereof and in consequence the discovery period provided herein shall not be operative.

2.     **under INSURING AGREEMENT I**

(a)     Upon the discovery of any loss hereunder this Bond shall be treated as reinstated so as at all times to continue in force for the sum set forth herein notwithstanding any previous loss for which the Surety may have paid or be liable to pay hereunder provided however that in no event shall the Surety be liable under this Bond for an amount greater than the limits of liability stated on account of any one loss or series of losses caused by the fraudulent or dishonest acts of any Employee or in which such Employee is concerned or implicated.

(b)     In case any reimbursement to obtained or recovery be made by the Employer or by the Surety on account of any loss covered under this Bond, the net amount of such reimbursement or recovery, after deducting the actual cost of obtaining or making the same, shall be applied to reimburse the Employer

9833

in full for that part if any, of such loss in excess of this Bond,
and the balance, if any, or the entire net reimbursement
or recovery if there be no such excess loss, shall be applied
to that part of such loss covered by this Bond or, if payment
shall have been made by the Surety, to its reimbursement
therefor. The Employer shall execute all necessary papers
and render all assistance not precuniary to secure unto the
Surety the rights provided for this paragraph. The following
shall not be reimbursement or recovery within the meaning
of this paragraph: suretyship, insurance or reinsurance; also
security or indemnity taken from any source by or for the
benefit of the Surety.

(c)    This Bond shall be deemed cancelled as to any Employee
immediately upon discovery by the Employer, of any fraudulent
or dishonest act on the part of such Employee; or at 12:01 A.M.
Standard Time as aforesaid upon the effective date specified
in a written notice served upon the Employer or sent by registered
mail. Such date if the notice be served shall be not less than
fifteen days after such service, or if sent by registered mail,
not less than twenty days after the date borne by the sender's
registered mail, not less than twenty days after the date
borne by the sender's registry receipt.

## SECTION IV - GENERAL CONDITIONS

1.    PREMIUM PROVISION:

See Endorsement #2 Attached

2.    SALVAGE AND RECOVERY CLAUSE:

All salvages, recoveries and payments recovered or received subsequent
to a loss settlement under this insurance shall be applied as if recovered
or received prior to the said settlement and all necessary adjustments
shall be made by the parties hereto.

3.    INSPECTIONS, AUDIT AND VERIFICATION OF VALUES

The Underwriters or their duly authorized representatives shall
be permitted at all reasonable times during continuance of this Insurance
to inspect the premises used by the Assured and to examine the
Assured's books or records so far as they relate to coverage afforded
by this Insurance.

4.    RECORDS:

It is hereby understood and agreed that the records and books as
kept by the Assured shall be acceptable to Underwriters in determining
the amount of loss or damage covered hereunder.

0043

5.   <u>CANCELLATION</u>:

This insurance may be cancelled as of any anniversary date by either
of the parties upon written notice to the other party stating when
such cancellation shall be effected.  This written notice must be
issued not less than thirty (30) days prior to the said anniversary.

If the period of limitation relating to the giving of notice is prohibited
or made void by any law controlling the construction thereof, such
period shall be deemed to be amended so as to be equal to the minimum
period of limitation by such law.

6.   <u>CURRENCY</u>:

The premium and losses under this Insurance are payable in United
States Currency.  Payment of premium shall be made to Arthur
J. Gallagher & Co., Gould Center, Golf Road, Rolling Meadows,
Illinois, 60008.

7.   <u>BANKRUPTCY AND INSOLVENCY</u>:

In the event of the bankruptcy or insolvency of the Assured or any
entity comprising the assured, the Underwriters shall not be relieved
of the payment of any claims hereunder because of such bankruptcy
or insolvency.

8.   <u>OTHER INSURANCE</u>:

If the Assured has other Insurance against loss covered by this Insurance
the Underwriters shall be liable, under the terms of this Insurance,
only as excess of coverage provided by such other Insurance, and
no monies payable or collectible from such other Insurance shall
accrue in the aggregate loss fund of this Insurance.

PAC-16

9.   MORTGAGE CLAUSE:

The interest of any mortgagor on property covered hereunder is
included as if a separate endorsement were attached hereto to the
extent of the amount of mortgage as of the date of loss subject
to the limits of liability set forth in this Insurance.

10.   CLAIMS:

The Assured shall immediately notify Underwriters through Arthur J.
Gallagher & Co., Gould Center, Golf Road, Rolling Meadows, Illinois
60008 by registered mail, of any occurrence, the cost of which is
likely to result in payment by Underwriters under this Insurance.
Underwriters shall have the opportunity to be associated with the
Assured in defense of any claims, suits, or proceedings relative to
an occurrence wherein the opinion of the Underwriters, their liability
under this Insurance is likely to be involved, in which case the Assured
and Underwriters shall cooperate to the mutual advantage of both.

11.   LOSS PAYMENTS:

When it has been determined that Underwriters are liable under
this Insurance, Underwriters shall thereafter promptly reimburse
the Assured for all payments made in excess of the amounts stated
in Subparagraphs A and B of the Limits Agreement. All adjusted
claims shall be paid or made good to the Assured within thirty days
after their presentation to Arthur J. Gallagher & Co., and acceptance
by Underwriters of satisfactory proof of interest and loss.

12.   APPEAL:

In the event the Assured and Underwriters are unable to agree to
the advisability of appealing a judgment, a disinterested attorney,
mutually agreeable to Underwriters and the Assured, shall be retained
and directed to render a written opinion as to his recommendation
concerning such appear. Such written recommendation shall be binding
on both the Assured and Underwriters. Fees of such retained attorney
shall be borne equally by both parties for the services of rendering
his recommendation only. The Assured's portion of such fee shall
not accrue in the aggregate loss fund.

13.   LITIGATION PROCEEDINGS:

No suite to recover on account of loss under this Insurance shall
be brought until ninety days after the proof of loss shall have been
furnished, nor at all unless commenced within twenty seven months
from the date upon which loss occurred, if such loss, is within the
knowledge of the Assured; if not, the twenty seven months shall
begin upon notice to the Assured of such loss or claim.

0045

14.   SUBROGATION:

The Underwriters shall be subrogated to all rights which the Assured
may have against any person or other entity in respect to any claim
or payment made under this Insurance, and the Assured shall execute
all papers required by the Underwriters and shall cooperate with
the Underwriters to secure Underwriter's rights. In case any reimbursement
obtained or recovery made by the Assured or the Underwriters on
account of any loss covered by this Insurance, the net amount of
such reimbursement or recovery, after deducting the actual cost
of obtaining or making the same, shall be first applied in the following
order:

(a)   Amount of loss which exceeds the applicable limit of liability.

(b)   To reduce the Underwriters' loss until the Underwriters are
fully reimbursed.

(c)   To reduce the Assured's loss because of the application of
the aggregate loss fund.

15.   WAIVER OF SUBROGATION

This Insurance shall not be invalidated if the Assured by written
agreement has waived or shall waive its right of recovery from any
party for loss or damage covered hereunder; provided, that any such
waiver is made prior to the occurrence of said loss or damage. The
Underwriters, in any event, expressly waive subrogation against
any Parish, School, Cemetery or other agency.

16.   CONFLICTING STATUTES:

In the event that any provision of this Insurance is unenforceable
by the Assured under the laws of any State or other jurisdiction
wherein it is claimed that the Assured is liable for any injury covered
hereby because of non-compliance with any statute thereof, then
this policy shall be enforceable for the Assured with the same effect
as if it complied with such statutes.

17.   ASSIGNMENT:

Assignment of interest, under this Insurance shall not bind the Underwriters
until the Underwriters' consent is endorsed hereon.

18.   CHANGES:

By acceptance of this Insurance the Assured agrees that it embodies
all agreements existing between the Assured and Underwriters or
any of its agents relating to this Insurance. None of the provisions,
conditions or other tems of this Insurance shall be waived or altered
except by endorsement; nor shall notice to any agent or knowledge
possessed by any agent or by any other person be held to effect
a waiver or change in any part of this Insurance.

0046

PAC-18

19.   **WAR CLAUSE:**

Coverage does not apply under this Insurance for loss or damage
directly or indirectly occasioned by, happening through or in consequence
of war, invasion, acts of foreign enemies, any weapon of war employing
atomic fission or radioactive force whether in time of peace or
war, hostilities (whether was be declared or not), civil war, rebellion,
revolution, insurrection, military or usurped power, confiscation
or nationalization or requisition or destruction of or damage to property
by or under the order of any government or public or local authority
unless such acts of destruction by order of civil authority is at the
time of and for the purpose of preventing spread of fire; or claims
or liability arising directly or indirectly from nuclear fission, nuclear
fusion or radioactive contamination.

20.   **FRAUDULENT CLAIMS:**

If the Assured shall make any claim knowing the same to be false
or fraudulent, as regards amount or otherwise, this Insurance shall
become void and all claim hereunder shall be forfeited.

HEREON:   90%    OF 100% OF LIMITS AND PREMIUM

ATTACHING TO AND FIORMING PART OF COVER NOTE NO.   SL3574 SLC5630

DATED:    October 10, 1979

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By _Louis E. Metzger_

6086

PAC-19

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

|  |  |
|---|---|
| Insurer(s): | Underwriters at Lloyd's<br>London Market Companies |
| Policy number(s): | SL 3606<br>SLC 5656 |
| Inception date: | 10/1/1979 |
| Term at issuance: | 3 years |
| Page count: | 18 |
| Contents: | Slip- 2 pgs<br>Untitled insuring form- 5 pgs<br>Endorsement- 5 pgs<br>Cover Note- 6 pgs |

October 26, 1979

20-01226-scc   Doc 6-8   Filed 10/01/20   Entered 10/01/20 08:44:55   Exhibit C
Part 2 - London Program Policy Compendium   Pg 66 of 225

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

NUMBER **S L 3606**

**1**

*Name of Assured*

Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein
Over which the Same Central Authority Appoints or Controls the Appointment
of the Board of Trustees or Similar Body and Excercises Direct, Complete
and Active Control over the Finances, Properties, Operations and Activities
50 North Park Avenue
Rockville Centre, New York 11570

**2**

EFFECTIVE ☒ 12:01 A.M.   BOTH DAYS AT
FROM ☐ 12:00 NOON   STANDARD TIME   **October 1, 1979**   TO   **October 1, 1982**

**3**

Acting upon your instruction, we have
effected the insurance with:

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| UNDERWRITERS AT LLOYD'S, LONDON | 82.38% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon:  82.38% Part of 100% of: | | Annual: | $15,000.00 |
| $600,000 in the aggregate annually | | Hereon: | $12,357.00 |
| Excess of: | Excess Aggregate All Risks, as per forms attached | | |
| $2,900,000 in the aggregate annually | | | |
| AUDIT | | TOTAL CHARGED | |

**5**

SPECIAL CONDITIONS

As per attached forms and endorsements.
NMA 1191
NMA 1685
NMA 1256
NMA 772

**6**

Service of Suit Clause-
Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, Illinois 60603 or Mendes &
Mount, 3 Park Avenue, NEW YOrk, New York 10016

In witness whereof this covernote has been signed at Rolling Meadows, Illinois this 26 day of October

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By _____

son Printing Co. Chicago

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SL/COS/CN)

| | NUMBER **S L C    5656** |
|---|---|

**1**

**Name of Assured**

Roman Catholic Diocese of Rockville Centre, and All Legal Entities Therein
Over which The Same Central Authority Appoints or Controls the Appointment
of the Board of Trustees or Similar Body and Exercises Direct, Complete
and Active Control Over the Finances, Properties, Operations and Activities
50 North Park Avenue
Rockville Centre, New York 11570

**2**

EFFECTIVE ☒ 12:01 A.M.    BOTH DAYS AT
FROM ☐ 12:00 NOON    STANDARD TIME    **October 1, 1979**    TO    **October 1, 1982**

**3**

Acting upon your instruction, we have effected the insurance with:

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| Excess Ins. Co. Ltd. | 8.81% |
| Bellefonte Ins. Co. | 8.81% |
| | 17.62% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon:  17.62% Part of 100% of: | | Annual: | $15,000.00 |
| | | Hereon: | $ 2,643.00 |
| Subject to the same forms, terms, conditions and endorsements as more particularly set forth in Cover Note No. SL3606. | | | |
| | | Excess Ins.Co. LTD. | $1,321.50 |
| | | Bellefonte Ins. Co. | $1,321.50 |
| | | | $2,643.00 |

AUDIT    TOTAL CHARGED _____

**5**

SPECIAL CONDITIONS

**6**

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By _____

1.   **INSURING CLAUSE:**

Subject to the limitations, terms and conditions contained in this
Insurance or added hereto, the Underwriters agree to indemnify

Roman Catholic Diocese of Rockville Centre, etal.

(hereinafter called "the Assured") in respect of

   • Loss or Damage to all Real and Personal Property
   wherever located

against   Excess Aggregate All Risks of Physical Loss or Damage, Auto
Physical Damage, Money and Securities, Comprehensive General
Liability Including Hosts Liability, Auto Liability, Liquor
Liability and Workmens Compensation and/or Employers Liability
and/or Occupational Disease, Medical Payments, Employee
Fidelity Errors and Omissions and School Board Liability.

as covered by and as defined in the underlying Cover Note (s) No. SL3574
or renewal or replacement thereof issued by Underwriters at Lloyd's,
London (hereinafter called "the Primary Insurers").

2.   **LIMIT:**

Provided always that liability attaches to the Underwriters only after
the Primary Insurers have paid or have admitted liability for the full
amount of their respective ultimate net loss liability as follows:

   $500,000.            ultimate net loss in the aggregate in
                        any one period of insurance

which in turn pays the excess of

   $2,900,000.          ultimate net loss in the aggregate in
                        one period of insurance (hereinafter
                        referred to as "Assured's Loss Fund").

As respects any one loss, the Assured's Loss Fund shall not
be charged with

   1)   an amount in excess of $100,000. ultimate net loss
        as respects any one loss with aggregate as applicable

   2)   any Physical Damage loss which is less than   $100

and then in excess of the above amounts up to:

$600,000.          ultimate net loss in the aggregate in
                   any one period of insurance.

3.    DEFINITIONS:

(a)    NAME OF ASSURED

It is agreed that Roman Catholic Diocese of Rockville Centre, Etal.

owns and operates Parishes, Schools, Cemeteries and Other
Agencies under specific names, and it is the intention of this
Insurance to cover such Parishes, Schools, Cemeteries and
Other Agencies or directly connected organizations as Named
Assureds.

(b)    LOSS:

The word "loss" shall mean a loss or series of losses arising
out of one event or occurrence.

(c)    ULTIMATE NET LOSS:

The words "ultimate net loss" shall mean the loss sustained by
the Assured as a result of the happening of the risks covered
by this Insurance after making deductions for all recoveries
and other valid and collectible insurances, excepting however
the Policy/ies of the Primary Insurers.

(d)    PERIOD OF INSURANCE:

The words "period of Insurance" shall be understood to mean
any one of the following periods:

Period I      October 1, 1979 to October 1, 1980
Period II     October 1, 1980 to October 1, 1981
Period III    October 1, 1981 to October 1, 1982

4.    APPLICATION OF RECOVERIES:

All recoveries or payments recovered or received subsequent to a
loss settlement under this Insurance shall be applied as if recovered
or received prior to such settlement and all necessary adjustments
shall then be made between the Assured and the Underwriters, provided

always that nothing in this Insurance shall be construed to mean
that losses under this Insurance are not recoverable until the Assured's
ultimate net loss has been finally ascertained.

5.  MAINTENANCE OF PRIMARY INSURANCE:

In respect of the perils hereby insured against this Insurance is subject
to the same warranties, terms and conditions (except as regards the
premium, the amount and limits of liability and the renewal agreement,
if any, and except as otherwise provided herein) as are contained in
or as may be added to the Policy/ies of the Primary Insurers prior to
the happening of a loss for which claim is made hereunder, and should
any alteration be made in the premium for the Policy/ies of the Primary
Insurers, then the premium hereon shall be adjusted accordingly.

It is a condition of this Insurance that the Policy/ies of the Primary
Insurers shall be maintained in full effect during the currency of this
Insurance and Underwriters hereon are to be advised in the event of
any changes in the underlying policy.

6.  TERM OF INSURANCE:

This Insurance is to indemnify the Assured in respect of losses occurring
during the period commencing  OCTOBER 1, 1979 to OCTOBER 1, 1982 , both
days at 12:01 A.M. Standard Time at the address of the Assured stated herein.

7.  PREMIUM:

The premium for this Insurance is $45,000.00  payable as follows:

October 1, 1979        $15,000.00
October 1, 1980        $15,000.00
October 1, 1981        $15,000.00

8.  CANCELLATION:

This Insurance may be cancelled as of any anniversary date by either
of the parties upon written notice to the other party stating when, not
less than thirty (30) days thereafter cancellation shall be effected.

If this Insurance shall be cancelled by the Assured the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the customary short rate proportion of any minimum premium stipulated herein whichever is the greater.

If this Insurance shall be cancelled by or on behalf of the Underwriters the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the pro rata proportion of any Minimum premium stipulated herein whichever is the greater.

Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

9. <u>SERVICE ORGANIZATION</u>:

Insurance afforded by this Insurance is issued to the Assured on the express condition that the Assured undertakes to utilize at all times the services of Gallagher Bassett Insurance Service, The Tower, Golf Road, Rolling Meadows, Illinois 60008.

10. <u>NOTIFICATION OF CLAIMS</u>:

The Assured upon knowledge of any occurrences likely to give rise to a claim hereunder shall give immediate written advice thereof to Underwriters through Arthur J. Gallagher & Co., The Tower, Golf Road, Rolling Meadows, Illinois 60008.

11.   **FRAUDULENT CLAIMS:**

If the Assured shall make any claim knowing the same to be false or fraudulent as regards amount or otherwise, this Insurance shall become void and all claim hereunder shall be forfeited.

HEREON:   100%

ATTACHING TO AND FORMING PART OF COVER NOTE NO. ___SL3606___

DATED:   October 26, 1979

ARTHUR J. GALLAGHER & CO.(ILLINOIS)

By *Louis E. Metzger Jr.*

U.S.A.

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—
### PHYSICAL DAMAGE—DIRECT

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

This policy does not cover any loss or damage arising directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination however such nuclear reaction, nuclear radiation or radioactive contamination may have been caused *NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that Fire.

*NOTE.—If Fire is not an insured peril under this policy the words from "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

7/5/59
N.M.A. 1191

EASON PRINTING COMPANY

**U.S.A.**

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE— PHYSICAL DAMAGE—DIRECT

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

This policy does not cover any loss or damage arising directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination however such nuclear reaction, nuclear radiation or radioactive contamination may have been caused *NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that Fire.

*NOTE.—If Fire is not an insured peril under this policy the words from "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

7/5/59
N.M.A. 1191                                                                                           EASON PRINTING COMPANY

**U.S.A.**

### NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)
*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

*For attachment to insurances of the following classifications in the U. S. A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

*Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachussetts Motor Vehicle or Garage Liability),*

*not being insurances of the classifications to which the Nuclear Incident Exclusion Clause —Liability—Direct (Limited) applies.*

**This policy\***

does not apply:—

I.  Under any liability Coverage, to injury, sickness, disease, death or destruction

    (a)  with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

    (a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

    (b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    (c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.  As used in this endorsement:
"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material, (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

    (a)  any nuclear reactor,

    (b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    (d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

\*Note:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17-8-60
N.M.A. 1256

Essex Printing Company

**INDUSTRIES, SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE No. 3**

*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Insurance does not cover any liability for:

(1) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this Paragraph (1) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed, where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.

(2) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.

(3) Fines, penalties, punitive or exemplary damages.

This Clause shall not extend this Insurance to cover any liability which would not have been covered under this Insurance had this Clause not been attached.

22/1/70.

N.M.A. 1685.                                                    EASON PRINTING COMPANY

## SERVICE OF SUIT CLAUSE (U.S.A.)

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association.)*

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon

Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, Illinois 60603 or Mendes & Mount, 3 Park Avenue, New York, New York 10016

,and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or reinsured) to give a written undertaking to the insured (or reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

N.M.A. 772

EASON PRINTING COMPANY

INTERNATIONAL INSURANCE BROKERS

HOGG ROBINSON & GARDNER MOUNTAIN

D. W. L. M. VEREKER, (Managing Director)
D. J. M. ARNOLD
R. E. GALLAGHER, (U.S.A)
J. P. GALLAGHER, (U.S.A)
R. B. OWLES
J. J. SHAW

125/135 FENCHURCH STREET
LONDON, EC3M 5DJ

Telephone: 01- 626 5861

*Cables & Telegrams:*
CALVER G, LONDON

*Telex:* 8951506
*Registered No.* 1193013 *England*

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois 60008,
U.S.A.

Date   17th October, 1980
Your Ref.
Our Ref.      PJH/AT

X-S
A66P86472

ADDENDUM NO. 1 to
**COVER NOTE No.** GHV 051/1179

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:      The Diocese of Rockville Centre, New York.

PERIOD:      36 months at 1st October, 1979.

It is hereby noted and agreed that effective 1st October, 1980, the following
company is cancelled

8.81% part of 100%  Bellefonte Ins. Co.

and is replaced by the following

8.81% part of 100%  British National Life Ins. Society Ltd.

All other terms and conditions remain unaltered.



Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

E.&O.E.

RJH

GALLAGHER HINTON & VEREKER LIMITED
INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
R. E. GALLAGHER, *(U.S.A.)*
J. P. GALLAGHER, *(U.S.A.)*
R. B. OWLES
J. J. SHAW

FOUNTAIN HOUSE
125/135 FENCHURCH STREET
LONDON, EC3M 5DJ

*Telephone:* 01- 626 5861

*Cables & Telegrams:*
GALVER G, LONDON

*Telex:* 8951506
*Registered No.* 1193013  *England*

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date 9th October, 1979.

Your Ref.

Our Ref. GHV 051/1179

## COVER NOTE No. GHV 051/1179

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:   EXCESS AGGREGATE ALL RISKS OF PHYSICAL LOSS OR DAMAGE, AUTO
PHYSICAL DAMAGE, MONEY AND SECURITIES, COMPREHENSIVE GENERAL
LIABILITY INCLUDING HOSTS LIABILITY, AUTO LIABILITY, LIQUOR
LIABILITY AND WORKMENS COMPENSATION AND/OR EMPLOYERS LIABILITY
AND/OR OCCUPATIONAL DISEASE, MEDICAL PAYMENTS, EMPLOYEE FIDELITY
ERRORS AND OMISSIONS AND SCHOOL BOARD LIABILITY.

FORM:   As expiring.

ASSURED:   The Diocese of Rockville Centre, New York.

PERIOD:   36 months at 1st October, 1979.

INTEREST:   Covering All Real and Personal Property and other perils as
set out above in respect of all operations of the various
Assureds and for their Agencies.

SUM INSURED:   This Policy For:

$ 600,000  in the aggregate annually

Excess of:

$2,900,000  in the aggregate annually

SITUATION:   Worldwide

CONDITIONS:   √Loss Limits for all purposes shall be $100,000 each and every
loss with aggregate as applicable.

Servicing by Gallagher Bassett Inc. at Insured's expense.

√$100 deductible for all Physical Damage losses.

30 Days Cancellation Clause at anniversary date only.

PREMIUM:   $45,000   payable one third annually. $15,000 ANNUAL

BROKERAGE:   15%

RECEIVED
OCT 19
Arthur ...

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

E.&Q.E.

Page No. 2 to Covernote No. GHV 051/1179 dated 9th October, 1979.

$12,357.00

SECURITY:        82.38%  part of 100%  Lloyds Underwriters.

| | | | | | |
|---|---|---|---|---|---|
| 8.81% | 210 | 8.81% | 404 | 8.81% | 584 |
| 6.61% | 90 | 8.81% | 799 | 4.41% | 918 |
| 4.41% | 604 | 5.29% | 47 | 3.52% | 471 |
| 4.41% | 484 | 4.41% | 33 | 2.64% | 452 |
| 2.64% | 947 | 1.76% | 15 | 1.76% | 56 |
| 2.20% | 109 | 1.65% | 55 | 0.55% | 612 |
| 0.88% | 235 | | | | |


RECEIVED
OCT 19

PJH

Page No. 2 to Covernote Number GHV 051/1179 dated 9th October, 1979.

SECURITY:  8.81%  part of 100%  Excess Ins. Co. Ltd.

$ 1,321.50

$ 1,321.50  8.81%  part of 100%  Bellefonte Ins. Co.

$ 2,643.00 = 17.62%



PJH

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
R. E. GALLAGHER, *(U.S.A.)*
J. P. GALLAGHER, *(U.S.A.)*
R. B. OWLES
J. J. SHAW

FOUNTAIN HOUSE
125/135 FENCHURCH STREET
LONDON, EC3M 5DJ

*Telephone:* 01- 626 5861

*Cables & Telegrams:*
CALVER C, LONDON

*Telex:* 8951506

*Registered No.* 1193013 *England*

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date 9th October, 1979.

Your Ref.

Our Ref. GHV 051/1179

### COVER NOTE No. GHV 051/1179

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:
EXCESS AGGREGATE ALL RISKS OF PHYSICAL LOSS OR DAMAGE, AUTO PHYSICAL DAMAGE, MONEY AND SECURITIES, COMPREHENSIVE GENERAL LIABILITY INCLUDING HOSTS LIABILITY, AUTO LIABILITY, LIQUOR LIABILITY AND WORKMENS COMPENSATION AND/OR EMPLOYERS LIABILITY AND/OR OCCUPATIONAL DISEASE, MEDICAL PAYMENTS, EMPLOYEE FIDELITY ERRORS AND OMISSIONS AND SCHOOL BOARD LIABILITY.

FORM:
As expiring.

ASSURED:
The Diocese of Rockville Centre, New York.

PERIOD:
36 months at 1st October, 1979.

INTEREST:
Covering All Real and Personal Property and other perils as set out above in respect of all operations of the various Assureds and for their Agencies.

SUM INSURED:
This Policy For:

$ 600,000  in the aggregate annually

Excess of:

$2,900,000  in the aggregate annually

SITUATION:
Worldwide

CONDITIONS:
Loss Limits for all purposes shall be $100,000 each and every loss with aggregate as applicable.

Servicing by Gallagher Bassett Inc. at Insured's expense.

$100 deductible for all Physical Damage losses.

30 Days Cancellation Clause at anniversary date only.

PREMIUM:
$45,000   payable one third annually.

BROKERAGE:
15%  and tax as applicable

RECEIVED
OCT 9 1979
Arthur J. Gallagher
and Company

...../..

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

E.&O.E.

ENDORSEMENT

Attached to and forming part of Policy / Certificate No. SLC 5656

in the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1980     Endorsement No. A

It is hereby noted and agreed that effective October 1, 1980, the

following company is cancelled:

        8.81% part of 100%  Bellefonte Ins. Co.

and is replaced by the following:

        8.81% part of 100%  British National Life Insurance
                        Society Ltd.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  October 24, 1980                    ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                             BY _Donald J. Krutik_

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

|  |  |
|---|---|
| Insurer(s): | Underwriters at Lloyd's<br>London Market Companies |
| Policy number(s): | SL 3607<br>SLC 5657 |
| Inception date: | 10/1/1979 |
| Term at issuance: | 1 year |
| Page count: | 9 |
| Contents: | Slip- 2 pgs<br>Excess Broadform Liability form- 5 pgs<br>Endorsement- 2 pgs |

| October 12, 1979 | GN 051/1279 | SL3445/SLC5462 |

**THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)**

| ITEM | | NUMBER **S L   3607** |
|---|---|---|

**1** — *Name of Assured* Roman Catholic Diocese of Rockville Centre, and All Legal Entities Therein Over Which the Same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Exercises Direct, Complete and Active Control over the Finances, Properties, Operations and Activities 50 North Park Avenue Rockville Centre, New York 11570

**2** — EFFECTIVE ☐ 12:01 A.M.   BOTH DAYS AT FROM ☐ 12:00 NOON   STANDARD TIME   **October 1, 1979**   TO   **October 1, 1980**

**3**

Acting upon your instruction, we have effected the insurance with: ➡

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| UNDERWRITERS AT LLOYD'S, LONDON | 81.14% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon:  81.14% Part of 100% of: | | Annual: | $25,916.66 |
| $5,000,000 Any one occurrence | | Hereon: | $21,028.78 |
| EXCESS OF: | Excess Broadform Liability | | |
| $5,000,000 AnyOne Occurrence | | | |

AUDIT                                                         TOTAL CHARGED _____

**5**

SPECIAL CONDITIONS

As per attached forms and endorsements.

**6**

Service of Suit Clause—
Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, Illinois 60603 or Mendes & Mount, 3 Park Avenue, New York, New York 10016

In witness whereof this covernote has been signed at......**Rolling Meadows, Illinois**......this......**12**......day of......**October**....

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By *[signature]*

Eason Printing Co. Chicago

**ENDORSEMENT**

**Attached to and forming part of Policy/Certificate No.** SL3607
**in the name of** Roman Catholic Diocese of Rockville Centre, etal.
**Effective date of this endorsement is** October 1, 1979     **Endorsement No.** 2

It is hereby understood and agreed that the following are named as
additional named insureds under this policy:

Bishop John R. McGann

Bishop Emeritus Walter P. Kellenberg

Auxiliary Bishop Gerald J. Ryan

Auxiliary Bishop James J. Daly

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**DATED:** October 12, 1979                **ARTHUR J. GALLAGHER & CO. (ILLINOIS)**

By *Louis B. Metzger, Jr.*

**ENDORSEMENT**

**Attached to and forming part of Policy/Certificate No.**   SL3607

**In the name of**   Roman Catholic Diocese of Rockville Centre, etal.

**Effective date of this endorsement is** October 1, 1979   **Endorsement No.**  1

## ERRORS AND OMISSIONS

It is hereby understood and agreed that insofar as Errors and Omissions coverage is afforded to the Assured in the Primary and Underlying Excess Insurers policy/ies this Policy is extended to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER AGREED:

(1)     There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to  October 1, 1979 (hereinafter referred to as the "Retroactive Date").

(2)     In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemetaries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**DATED:**   October 12, 1979                    — ARTHUR J. GALLAGHER & CO.(ILLINOIS)

By: _Louis E. Metzger Jr._

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SLCOS/CN)

| EM | | NUMBER **S L C    5657** |
|---|---|---|

**1** | *Name of Assured* | **Roman Catholic Diocese of Rockville Centre, and All Legal Entities Therein Over Which the Same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Exercises Direct, Complete and Active Control over the Finances, Properties, Operations and Activities 50 North Park Avenue Rockville Centre, New York 11570**

**2** | EFFECTIVE ☑ 12:01 A.M.    BOTH DAYS AT    FROM ☐ 12:00 NOON    STANDARD TIME    **October 1, 1979**    TO    **October 1, 1980**

**3**

Acting upon your instruction, we have effected the insurance with: ➡

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| Dominion Ins. 8. Ltd. | 7.86% |
| CNA Reinsurance of London Ltd. | 7.86% |
| Stronghold Ins. Co. Ltd. | 3.14% |
| | 18.86% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon:  18.86% Part of 100% of: | | Annual: | $25,916.66 |
| | | Hereon: | $ 4,887.88 |
| Subject to the same forms, terms, conditions and endorsements as more particularly set forth in Cover Note No. SL3607. | | Dominion Ins. Co. Ltd. | $2,037.05 |
| | | CNA Reinsurance of London Ltd. | $2,037.05 |
| | | Stronghold Ins. Co. Ltd. | $ 813.78 |
| | | | $4,887.88 |

AUDIT                                                                          TOTAL CHARGED_____

**5** | SPECIAL CONDITIONS

**6**

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By _____

Eason Printing Co. Chicago

## EXCESS BROADFORM LIABILITY

### INSURING AGREEMENTS

1.   **COVERAGE**

In consideration of the payment of the premium stated herein and subject to the limitations, definitions, terms and conditions hereinafter mentioned, Underwriters hereby agree with the Assured named in the Declarations made a part hereof to indemnify the Assured for all sums which the Assured shall be legally obligated to pay by reason of the liability caused by or arising out of only such hazards covered by and as more fully defined in the policy/ies of the "Primary and Underlying Excess Insurers" and issued by the Primary and Underlying Excess Insurers stated in Item 4 of the Declarations occurring during the period of this policy.

2.   **LIMITS OF LIABILITY**

Provided always that:

(a)   Liability attaches to the Underwriters only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as set forth in Item 5 of the Declarations and designated "Primary and Underlying Excess Limit(s)" and then the limits of the Underwriters' liability shall be those set forth in Item 6 of the Declarations under the designation "Excess Limit(s)" and the Underwriters shall be liable to pay the ultimate net loss the Excess of the Limit(s) under the policy/ies of the Primary and Underlying Excess Insurers as set forth in Item 5 of the Declarations up to the full amount of such Excess Limits(s).

(b)   Liability for any one or any combination of the hazards insured hereunder as provided for in the Primary and Underlying Excess Insurers policy/ies is subject separately to the limit "each occurrence" as stated in the Declarations, but this limit shall not be exceeded in any one policy year with regard to any hazard(s) insured with an aggregate limit under the policy/ies of the Primary and Underlying Excess Insurers.

(c)   For the purpose of determining the limit of the Underwriters' liability, all Personal Injury and Property Damage arising out of either

(i)   an accident or series of accidents arising out of one event, or

(ii)   a continuous or repeated exposure to substantially the same general conditions,

shall be considered as arising out of one occurrence.

**Page 1 of 5**

(d)   The inclusion of more than one entity as the named Assured, or the inclusion of any additional Assureds under this Policy, shall not in any way operate to increase the Underwriters' limits of liability beyond those provided in Item 6 of the Declarations.

## DEFINITIONS

3. (a)   Occurrence

The word "occurrence" means an accident, including injurious exposure to conditions, which results during the Policy year in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Assured.

(b)   Ultimate Net Loss

The words "ultimate net loss" shall be understood to mean the amount payable in settlement of the liability of the Assured after making deductions for all recoveries and for other valid and collectible insurances, excepting however the policy/ies of the Primary and Underlying Excess Insurers, and shall include all expenses and costs.

(c)   Policy Year

The words "policy year" shall be understood to mean a period of one calendar year commencing each year on the day and hour first named in the Declarations.

## CONDITIONS

4. (a)   Application of Recoveries

All recoveries, salvages or payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters, provided always that nothing in this Insurance shall be construed to mean that losses under this Insurance are not payable until the Assured's ultimate net loss has been finally ascertained.

(b)   Attachment of Liability

Liability to pay under this Policy shall not attach unless and until the Primary and Underlying Excess Insurers shall have admitted liability for the Primary and Underlying Excess Limit(s) or unless and until the Assured has by final judgment been adjudged to pay an amount which exceeds such Primary and Underlying Excess Limits(s) and then only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of the Primary and Underlying Excess Limit(s).

**Page 2 of 5**

(c)   **Maintenance of Primary Insurance**

It is a condition of this Policy that the policy/ies of the Primary
and Underlying Excess Insurers shall be maintained in full effect
during the currency of this Policy except for any reduction of the
aggregate limits contained therein solely by payment of claims in
respect of occurrences during the policy year.

In respect of the hazards covered by the Primary and Underlying
Excess Insurers this Policy is subject to the same warranties, terms,
definitions, conditions and exclusions (except as regards the premium,
the obligation to investigate and defend, the renewal agreement (if
any), the amount and limits of liability other than the deductible or
self-insurance provision where applicable,(AND EXCEPT AS OTHERWISE
PROVIDED HEREIN) as are contained in or as may be added to the
policy/ies of the Primary Insurers prior to the happening of an
occurrence for which claim is made hereunder and should any alteration
be made in the premium for the policy/ies of the Primary Insurers
during the currency of this Policy, then the premium hereon shall
be adjusted accordingly.

(d)   **Subrogation**

Inasmuch as this Policy is "excess coverage" the Assured's right of
recovery against any person or other entity cannot be exclusively
subrogated to the Underwriters. It is, therefore, understood and
agreed that in case of any payment hereunder, the Underwriters will
act in concert with all other interests (including the Assured)
concerned, in the exercise of such rights of recovery. The
apportioning of any amounts which may be so recovered shall follow
the principle that any interests (including the Assured) that shall
have paid an amount over and above any payment hereunder, shall
first be reimbursed up to the amount paid by them; the Underwriters
are then to be reimbursed out of any balance then remaining up to
the amount paid hereunder; lastly, the interests (including the
Assured) of whom this coverage is in excess are entitled to claim
the residue, if any. Expenses necessary to the recovery of any such
amounts shall be apportioned between the interests (including the
Assured) concerned, in the ratio of their respective recoveries as
finally settled.

(e)   **Commutation Clause** - (to apply to Workmen's Compensation and/or
                                Employers Liability or Occupational Disease
                                and then only when these perils are covered
                                by the Primary Insurers)

**Page 3 of 5**

Not later than twenty-four months from the expiry date of this policy, the Assured shall advise the Underwriters of all claims not finally settled which are likely to result in claims under this Policy.  The Underwriters may then or at any time thereafter intimate to the Assured their desire to be released from liability in respect of any one or more of such claims.  In such event, the Assured and the Underwriters shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalise such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims shall constitute a complete and final release of Underwriters, provided however that such payment shall not constitute a full and final release of Underwriters' liability if subsequent to such payment any supplemental award is made increasing the claim(s); said additional claim(s) may then be recommuted at Underwriter's option and Underwriters may discharge any additional liability by another payment.

(f)   Cancellation

This Policy may be cancelled at any time at the written request of the Assured or may be cancelled by or on behalf of the Underwriters provided thirty (30) days notice in writing be given.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the earned premium hereon for the period that this Policy has been in force or the short rate proportion of the Minimum Premium, calculated in accordance with the customary scale, whichever is the greater.

If this Policy shall be cancelled by the Underwriters they shall retain the earned premium hereon for the period that this Policy has been in force or pro-rata of the Minimum Premium, whichever is the greater.  Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium.

If the period of limitation relating to the giving of such notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(g)   Notification of Claims

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Declarations.  Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above person(s) or firm of any such occurrence.

(h)   Fraudulent Claims

If the Assured shall make any claim knowing the same to be fake or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**Page 4 of 5**

## DECLARATIONS

**Item**

1.     <u>NAMED ASSURED:</u>    Roman Catholic Diocese of Rockville Centre as more fully set forth in the schedule attached.

2.     <u>ADDRESS OF ASSURED:</u>    50 North Park Avenue
   Rockville Centre, New York 11570

3.     <u>PERIOD:</u> October 1, 1979 to October 1, 1980 (both days at 12:01 a.m. L.S.T.)

4.     a)  <u>PRIMARY INSURERS:</u>    Interstate Fire & Casualty Company

       b)  <u>UNDERLYING EXCESS INSURERS:</u>  Not Applicable

5.     <u>PRIMARY AND UNDERLYING EXCESS LIMIT(S):</u>  U.S. $5,000,000.

6.     <u>EXCESS LIMIT(S):</u>    U.S. $5,000,000.

7.     <u>NOTIFICATION OF CLAIMS TO:</u>  Gallagher Bassett of New York, Inc.
   100 Ring Road West
   Garden City, New York 11530

8.     <u>IDENTIFICATION DETAILS AND LIMITS</u>
   CARRIED UNDER ITEM 4 ABOVE:

| POLICY NO(S) | LIMIT(S) |
|---|---|
| 183-152625 | U.S. $5,000,000 any one occurrence Combined Single Limit |

ATTACHING TO AND FORMING PART OF COVER NOTE NO. SL3607/ SLC5657

DATED:
    October 12, 1979

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By: *Louis E. Metzger Jr.*

**Page 5 of 5**

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

|  |  |
|---|---|
| Insurer(s): | Underwriters at Lloyd's<br>London Market Companies |
| Policy number(s): | SL 3608<br>SLC 5658 |
| Inception date: | 10/1/1979 |
| Term at issuance: | 1 year |
| Page count: | 10 |
| Contents: | Slip- 2 pgs<br>Excess Broadform Liability form- 5 pgs<br>Endorsement- 3 pgs |

| DATE ISSUED | | PREVIOUS NO. |
|---|---|---|
| October 15, 1979 | GHV 051/1679 | SL3452  SLC5469<br>SL3463  SLC5480 |

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

**NUMBER  S L  3608**

| ITEM | | |
|---|---|---|
| **1** | *Name of Assured* | Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein Over which the Same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Exercises Direct, Complete and Active Control Over the Finances, Properties, Operations and Activities<br>50 North Park Avenue<br>Rockville Centre, New York 11570 |

**2**  EFFECTIVE ☒ 12:01 A.M.  BOTH DAYS AT
FROM ☐ 12:00 NOON  STANDARD TIME   **October 1, 1979**   TO  **October 1, 1980**

**3**

| | NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|---|
| Acting upon your instruction, we have effected the insurance with: ➤ | UNDERWRITERS AT LLOYD'S, LONDON | 59.84% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon:  59.84% Part of 100% of: | | Annual: | $30,000.00 |
| | | Hereon: | $17,952.00 |
| $20,000,000  Any One Occurrence | Excess Broadform Liability Including Workers Compensation Act. | | |
| Excess Of: | | | |
| $10,000,000  Any One Occurrence | | | |
| AUDIT | | TOTAL CHARGED | |

**5**  SPECIAL CONDITIONS

As per attached forms and endorsements.

**6**  Service of Suit Clause-
Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, Illinois 60603
or Mendes & Mount, 3 Park Avenue, New York, New York 10016

In witness whereof this covernote has been signed at......**Rolling Meadows, Illinois**......this............**15**.day of........**October.**

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By _____

Eason Printing Co, Chicago

**Attached to and forming part of Policy/Certificate No.**        SL3608

**In the name of**        Roman Catholic Diocese of Rockville Centre, etal.

**Effective date of this endorsement is**    October 1, 1979    **Endorsement No.**        1

## ERRORS AND OMISSIONS

It is hereby understood and agreed that insofar as Errors and Omissions coverage is afforded to the Assured in the Primary and Underlying Excess Insurers policy/ies this Policy is extended to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER AGREED:

(1)     There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to    October 1, 1979 (hereinafter referred to as the "Retroactive Date").

(2)     In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemetaries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**DATED:**    October 15, 1979        —  **ARTHUR J. GALLAGHER & CO.(ILLINOIS)**

By: *Louis E. Metzger, Jr.*

**ENDORSEMENT**

**Attached to and forming part of Policy/Certificate No.**    SL3608
**in the name of**      Roman Catholic Diocese of Rockville Centre, etal.
**Effective date of this endorsement is** October 1, 1979     **Endorsement No.**    2

It is hereby understood and agreed that the following are named as
additional named insureds under this policy:

      Bishop John R. McGann
      Bishop Emeritus Walter P. Kellenberg
      Auxiliary Bishop Gerald J. Ryan
      Auxiliary Bishop James J. Daly

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**DATED:**    October 15, 1979         **ARTHUR J. GALLAGHER & CO. (ILLINOIS)**

                                          **By:** _Louis B. Metzger Jr._

## EXCESS BROADFORM LIABILITY

### INSURING AGREEMENTS

**1.**     **COVERAGE**

In consideration of the payment of the premium stated herein and subject to the limitations, definitions, terms and conditions hereinafter mentioned, Underwriters hereby agree with the Assured named in the Declarations made a part hereof to indemnify the Assured for all sums which the Assured shall be legally obligated to pay by reason of the liability caused by or arising out of only such hazards covered by and as more fully defined in the policy/ies of the "Primary and Underlying Excess Insurers" and issued by the Primary and Underlying Excess Insurers stated in Item 4 of the Declarations occurring during the period of this policy.

**2.**     **LIMITS OF LIABILITY**

Provided always that:

(a)     Liability attaches to the Underwriters only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as set forth in Item 5 of the Declarations and designated "Primary and Underlying Excess Limit(s)" and then the limits of the Underwriters' liability shall be those set forth in Item 6 of the Declarations under the designation "Excess Limit(s)" and the Underwriters shall be liable to pay the ultimate net loss the Excess of the Limit(s) under the policy/ies of the Primary and Underlying Excess Insurers as set forth in Item 5 of the Declarations up to the full amount of such Excess Limits(s).

(b)     Liability for any one or any combination of the hazards insured hereunder as provided for in the Primary and Underlying Excess Insurers policy/ies is subject separately to the limit "each occurrence" as stated in the Declarations, but this limit shall not be exceeded in any one policy year with regard to any hazard(s) insured with an aggregate limit under the policy/ies of the Primary and Underlying Excess Insurers.

(c)     For the purpose of determining the limit of the Underwriters' liability, all Personal Injury and Property Damage arising out of either

(i)  an accident or series of accidents arising out of one event, or

(ii) a continuous or repeated exposure to substantially the same general conditions,

shall be considered as arising out of one occurrence.

**Page 1 of 5**

(d) The inclusion of more than one entity as the named Assured, or the inclusion of any additional Assureds under this Policy, shall not in any way operate to increase the Underwriters' limits of liability beyond those provided in Item 6 of the Declarations.

## DEFINITIONS

3. (a) Occurrence

The word "occurrence" means an accident, including injurious exposure to conditions, which results during the Policy year in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Assured.

(b) Ultimate Net Loss

The words "ultimate net loss" shall be understood to mean the amount payable in settlement of the liability of the Assured after making deductions for all recoveries and for other valid and collectible insurances, excepting however the policy/ies of the Primary and Underlying Excess Insurers, and shall include all expenses and costs.

(c) Policy Year

The words "policy year" shall be understood to mean a period of one calendar year commencing each year on the day and hour first named in the Declarations.

## CONDITIONS

4. (a) Application of Recoveries

All recoveries, salvages or payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters, provided always that nothing in this Insurance shall be construed to mean that losses under this Insurance are not payable until the Assured's ultimate net loss has been finally ascertained.

(b) Attachment of Liability

Liability to pay under this Policy shall not attach unless and until the Primary and Underlying Excess Insurers shall have admitted liability for the Primary and Underlying Excess Limit(s) or unless and until the Assured has by final judgment been adjudged to pay an amount which exceeds such Primary and Underlying Excess Limits(s) and then only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of the Primary and Underlying Excess Limit(s).

**Page 2 of 5**

(c)    <u>Maintenance of Primary Insurance</u>

It is a condition of this Policy that the policy/ies of the Primary
and Underlying Excess Insurers shall be maintained in full effect
during the currency of this Policy except for any reduction of the
aggregate limits contained therein solely by payment of claims in
respect of occurrences during the policy year.

In respect of the hazards covered by the Primary and Underlying
Excess Insurers this Policy is subject to the same warranties, terms,
definitions, conditions and exclusions (except as regards the premium,
the obligation to investigate and defend, the renewal agreement (if
any), the amount and limits of liability other than the deductible or
self-insurance provision where applicable,(AND EXCEPT AS OTHERWISE
PROVIDED HEREIN) as are contained in or as may be added to the
policy/ies of the Primary Insurers prior to the happening of an
occurrence for which claim is made hereunder and should any alteration
be made in the premium for the policy/ies of the Primary Insurers
during the currency of this Policy, then the premium hereon shall
be adjusted accordingly.

(d)    <u>Subrogation</u>

Inasmuch as this Policy is "excess coverage" the Assured's right of
recovery against any person or other entity cannot be exclusively
subrogated to the Underwriters.  It is, therefore, understood and
agreed that in case of any payment hereunder, the Underwriters will
act in concert with all other interests (including the Assured)
concerned, in the exercise of such rights of recovery.  The
apportioning of any amounts which may be so recovered shall follow
the principle that any interests (including the Assured) that shall
have paid an amount over and above any payment hereunder, shall
first be reimbursed up to the amount paid by them; the Underwriters
are then to be reimbursed out of any balance then remaining up to
the amount paid hereunder; lastly, the interests (including the
Assured) of whom this coverage is in excess are entitled to claim
the residue, if any.  Expenses necessary to the recovery of any such
amounts shall be apportioned between the interests (including the
Assured) concerned, in the ratio of their respective recoveries as
finally settled.

(e)    <u>Commutation Clause</u> - (to apply to Workmen's Compensation and/or
                        Employers Liability or Occupational Disease
                        and then only when these perils are covered
                        by the Primary Insurers)

Not later than twenty-four months from the expiry date of this policy, the Assured shall advise the Underwriters of all claims not finally settled which are likely to result in claims under this Policy. The Underwriters may then or at any time thereafter intimate to the Assured their desire to be released from liability in respect of any one or more of such claims. In such event, the Assured and the Underwriters shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalise such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims shall constitute a complete and final release of Under-writers, provided however that such payment shall not constitute a full and final release of Underwriters' liability if subsequent to such payment any supplemental award is made increasing the claim(s); said additional claim(s) may then be recommuted at Underwriter's option and Underwriters may discharge any additional liability by another payment.

(f)   Cancellation

This Policy may be cancelled at any time at the written request of the Assured or may be cancelled by or on behalf of the Underwriters provided (30) thirty days notice in writing be given.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the earned premium hereon for the period that this Policy has been in force or the short rate proportion of the Minimum Premium, calculated in accordance with the customary scale, whichever is the greater.

If this Policy shall be cancelled by the Underwriters they shall retain the earned premium hereon for the period that this Policy has been in force or pro-rata of the Minimum Premium, whichever is the greater. Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium.

If the period of limitation relating to the giving of such notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(g)   Notification of Claims

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Declarations. Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above person(s) or firm of any such occurrence.

(h)   Fraudulent Claims

If the Assured shall make any claim knowing the same to be fake or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**Page 4 of 5**

<u>DECLARATIONS</u>

<u>Item</u>

1.    <u>NAMED ASSURED:</u>    Roman Catholic Diocese of Rockville Centre as more fully set forth in the schedule attached.

2.    <u>ADDRESS OF ASSURED:</u>    50 North PARK AVenue
Rockville Centre, New York 11570

3.    <u>PERIOD:</u>    October 1, 1979 to October 1, 1980 (both days at 12:01 A.M. Local Standard Time)

4.    a)    <u>PRIMARY INSURERS:</u>    Interstate Fire & Casualty Company

      b)    <u>UNDERLYING EXCESS INSURERS:</u>    Lloyds of London and Other British Companies

5.    <u>PRIMARY AND UNDERLYING EXCESS LIMIT(S):</u>    U.S. $10,000,000

6.    <u>EXCESS LIMIT(S):</u>    U.S. $20,000,000

7.    <u>NOTIFICATION OF CLAIMS TO:</u>    Gallagher Bassett of New York, Inc.
100 Ring Road West
Garden City, New York 11530

8.    <u>IDENTIFICATION DETAILS AND LIMITS</u>
<u>CARRIED UNDER ITEM 4 ABOVE:</u>

| <u>POLICY NO(S)</u> | <u>LIMIT(S)</u> |
|---|---|
| 183-152625 | U.S $5,000,000. any one occurrence combined single limit |
| SL3607 SLC5657 | U.S. $5,000,000 Any One Occurrence Combined Single Limit |

ATTACHING TO AND FORMING PART OF COVER NOTE NO. SL3608   SLC5658

DATED: October 15, 1979                ARTHUR J. GALLAGHER & CO. (ILLINOIS)

                                       By: *Louis E. Metzger, Jr.*

Page 5 of 5

October 15, 1979          GNV 059/1875          SLC3452 - SLC5469
                                                SLC3463 - SLC5480

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SLCOS/CN)

| ITEM | | |
|---|---|---|
| | NUMBER | **S L C   5658** |

| 1 | *Name of Assured* | Roman Catholic Diocese of Rockville Centre, and All Legal Entities Therein Over Which the Same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Exercises Direct, Complete and Active Control Over The Finances, Properties, Operations and Activities<br>50 North PARK Avenue<br>Rockville Centre, New York 11570 |
|---|---|---|

| 2 | EFFECTIVE ☒ 12:01 A.M.  BOTH DAYS AT<br>FROM ☐ 12:00 NOON  STANDARD TIME | October 1, 1979 | TO | October 1, 1980 |
|---|---|---|---|---|

| 3 | Acting upon your instruction, we have effected the insurance with: ➡ | NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|---|---|
| | | See Endorsement No. A | |

| 4 | AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|---|
| | Hereon:  40.16% Part of 100% of: | | Annual:  $30,000.00<br>Hereon:  $12,048.00 | |
| | | | See Endorsement No. A | |
| | Subject to the same forms, terms, conditions and endorsements as more particularly set forth in Cover Note No. SL3608. | | | |
| | AUDIT | | TOTAL CHARGED | |

| 5 | SPECIAL CONDITIONS |
|---|---|
| | |

| 6 | |
|---|---|

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By _____

Eason Printing Co. Chicago

ENDORSEMENT

Attached to and forming part of Policy/Certificate No.   SLC5658

in the name of   Roman Catholic Diocese of Rockville Centre, etal,

Effective date of this endorsement is October 1, 1979   Endorsement No. A

It is hereby understood and agreed the premium and securities are as follows:

| | | | |
|---|---|---|---|
| Sovereign | 12½% | | $   336.75 |
| Tokio (UK) | 37½% | | $1,010.25 |
| Taisho (UK) | 25% | 8.98% | $   673.50 |
| Allianz International | 15% | | $   404.10 |
| Storebrand (UK) | 10% | | $   269.40 |
| Per W.F. (U/Wtg. MAN.) Ltd. | | | |
| | | | |
| CNA Reinsurance of London | | 6.73% | $2,019.00 |
| Stronghold Ins. Co. Ltd. | | 6.73% | $2,019.00 |
| Dominion Ins. Co. Ltd. | | 6.73% | $2,019.00 |
| North Atlantic Ins. Co. Ltd. | | 2.69% | $  807.00 |
| Turegum Ins. Co. | | 3.14% | $  942.00 |
| Yasuda Fire & Marine Ins. Co. (UK) Ltd. | | 0.90% | $  270.00 |
| Terra Nova Ins. Co. Ltd. | | 2.24% | $  672.00 |
| Mentor Ins. Co. (UK) Ltd. | | 1.12% | $  336.00 |
| Bellefonte Ins. Co. | | 0.90% | $  270.00 |
| | | 40.16% | $12,048.00 |

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: October 15, 1979

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By: *Louis E. Metzger, Jr.*

## Roman Catholic Diocese of Rockville Centre

### Insurance Policy Cover Sheet

|  |  |
|---|---|
| Insurer(s): | Underwriters at Lloyd's<br>London Market Companies |
| Policy number(s): | SL 3726<br>SLC 5747 |
| Inception date: | 10/1/1980 |
| Term at issuance: | 1 year |
| Page count: | 17 |
| Contents: | Slip- 2 pgs<br>Excess Broadform Liability- 6 pgs<br>Endorsement- 5 pgs<br>Cover Note- 4 pgs |

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

NUMBER **S L    3726**

| | |
|---|---|
| 1 | *Name of Assured*  **Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein Over which the Same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Exercises Direct, Complete and Active Control Over the Finances, Properties, Operations and Activities 50 North Park Avenue Rockville Centre, New York 11570** |

**2**  EFFECTIVE [x] 12:01 A.M.  BOTH DAYS AT
FROM [ ] 12:00 NOON  STANDARD TIME  **October 1, 1980**  TO  **October 1, 1981**

**3**

| Acting upon your instruction, we have effected the insurance with: | NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|---|
| ➡ | UNDERWRITERS AT LLOYD'S, LONDON | 59.77% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon:  59.77% Part of 100% of: | | Annual: | $30,000.00 |
| | | Hereon: | $17,931.00 |
| $20,000,000  Any one occurrence EXCESS OF: $10,000,000  Any One Occurrence | Excess Broadform Liability Including Workers Compensation Act. | | |

AUDIT                                          TOTAL CHARGED_____

**5**  SPECIAL CONDITIONS

**6**  Service of Suit Clause –
Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, Illinois 60603
or Mendes & Mount, 3 Park Avenue, New York, New York 10016

In witness whereof this covernote has been signed at....**Rolling Meadows, Illinois**........this......**28th**....day of..**October**......

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By *Donald J Krutek*

Eason Printing Co. Chicago

ENDORSEMENT

Attached to and forming part of Policy / Certificate No. SL 3726

in the name of Roman Catholic Diocese of Rockville Centre

Effective date of this endorsement is October 1, 1980     Endorsement No. 3

It is hereby understood and agreed effective inception that the name and
address of the assured is as follows:-

  Roman Catholic Diocese of Rockville Centre, and all legal
  entities therein over which the same central authority appoints
  or controls the appointment of the board of trustees or similar
  body and exercises direct, complete and active control over the
  finances, properties, operations and activities

  50 North Park Avenue,
  Rockville Centre,
  New York 11570.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  April 9, 1981    ARTHUR J. GALLAGHER & CO.(ILLINOIS)

        BY:

ENDORSEMENT

Attached to and forming part of Policy / Certificate No. SL 3726

in the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1980   Endorsement No. 2

It is hereby understood and agreed that the following are named as
additional named insureds under this policy:

        Bishop John R. McGann

        Bishop Emeritus Walter P. Kellenberg

        Auxiliary Bishop Gerald J. Ryan

        Auxiliary Bishop James J. Daly

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  October 28, 1980

ARTHUR J. GALLAGHER & CO.(ILLINOIS)

BY _Donald J. Krutik_

ENDORSEMENT

Attached to and forming part of Policy    /    Certificate No.  SL 3726

in the name of    Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is Oct. 1, 1980        Endorsement No. 1

ERRORS AND OMISSIONS

IT IS AGREED that Section II Agreement C is amended to include the following:

The underwriters agree, subject to the terms and conditions hereof, to indemnify
the Assured (as hereinafter defined) against any claim or claims made against
them individually or collectively during the period of this Insurance, by reason
of a wrongful act, error or omission, whenever or wherever committed or alleged
to have been committed while acting in their capacity as trustee, director or
council member in a diocesan connected entity.

IT IS FURTHER agreed:

(1)    There shall be no liability hereunder for any claim made against the
       Assured for wrongful act, error or omission committed or alleged to
       have been committed prior to October 1, 1976  (hereinafter referred
       to as the "Retroactive Date").

(2)    In the event of non-renewal or termination of this Insurance, then the
       Insurance shall extend to apply to claims made against the Assured during
       the twelve (12) calendar months following immediately upon such expiration
       or termination, but only for wrongful act, error or omission, committed or
       alleged to have been committed between the Retroactive Date and such expi-
       ration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who
were, now are or shall be appointed or elected trustee, director or council member
in any parishes, schools, cemeteries, and other agencies or directly connected
organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any
claim made against Assured if a judgment or final adjudication in any action brought
against the Assured shall be based on a determination that acts of fraud or dishonesty
were committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  October 28, 1980          ARTHUR J. GALLAGHER & CO.

                                  By  _Donald J Krutek_

DATE ISSUED                     CONTRACT NO.                    PREVIOUS NO.
October 28, 1980                SLC 5747/1980                   SLC 5658

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SLCOS/CN)

NUMBER **S L C    5747**

| | |
|---|---|
| **1** | *Name of Assured*   Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein Over which the Same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Exercises Direct, Complete and Active Control Over the Finances, Properties, Operations and Activities 50 North Park Avenue Rockville Centre, New York 11570 |

**2**
EFFECTIVE ☒ 12:01 A.M.   BOTH DAYS AT
FROM ☐ 12:00 NOON   STANDARD TIME **October 1, 1980**   TO   **October 1, 1981**

**3**

| | NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|---|
| Acting upon your instruction, we have effected the insurance with: ➡ | See Endorsement No. A | |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon:  40.23% Part of 100% of: | | Annual: | $30,000.00 |
| | | Hereon: | $12,069.00 |
| Subject to the same forms, terms, conditions and endorsements as more particularly set forth in Cover Note No. SL 3726 | | | As per End.#A |

AUDIT                                                        TOTAL CHARGED_____

**5**   SPECIAL CONDITIONS

**6**

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By  *Donald J. Knutek*

ENDORSEMENT

Attached to and forming part of Policy / Certificate No. SLC 5747

in the name of Roman Catholic Diocese of Rockville Centre

Effective date of this endorsement is October 1, 1980          Endorsement No. B

It is hereby understood and agreed effective inception that the name and
address of the assured is as follows:-

     Roman Catholic Diocese of Rockville Centre, and all legal
     entities therein over which the same central authority appoints
     or controls the appointment of the board of trustees or similar
     body and exercises direct, complete and active control over the
     finances, properties, operations and activities

     50 North Park Avenue,
     Rockville Centre,
     New York  11570.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  April 9, 1981                    ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                               BY:  *Donald J. Krutek*

ENDORSEMENT

Attached to and forming part of Policy / Certificate No. SLC 5747

in the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1980   Endorsement No. A


It is hereby understood and agreed the premium and securities are as follows:

```
Sovereign                   12½% )                    $   264.75
Tokio (UK)                  37½% )                        794.25
Taisho (UK)                 25 % ) Part of    7.06%       529.50
Allianz International       15 % )                        317.70
Storebrand (UK)            10 % )                        211.80
Per W.F.(U/Wtg. MAN.) Ltd.

Sovereign Marine & General Ins. Co. Ltd.     2.35%    $   705.00
HDN a/c
Per W.F. (U/Wtg. Man.) Ltd.

CNA Reinsurance of London Ltd.               7.06%    $ 2,118.00
Stronghold Ins. Co. Ltd.                     7.06%      2,118.00
Dominion Ins. Co. Ltd.                       7.06%      2,118.00
North Atlantic Ins. Co. Ltd.                 2.82%        846.00
Turegum Ins. Co.                             3.29%        987.00
Yasuda Fire & Marine Ins. Co. (UK) Ltd.       .94%        282.00
Terra Nova Ins. Co. Ltd.                     1.41%        423.00
Mentor Ins. Co. (UK) Ltd.                    1.18%        354.00
                                            40.23%    $12,069.00
```

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  October 28, 1980              ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                      BY  *Donald J. Krutek*

## EXCESS BROADFORM LIABILITY

### INSURING AGREEMENTS

1. ### COVERAGE

   In consideration of the payment of the premium stated herein and subject to the limitations, definitions, terms and conditions hereinafter mentioned, Underwriters hereby agree with the Assured named in the Declarations made a part hereof to indemnify the Assured for all sums which the Assured shall be legally obligated to pay by reason of the liability caused by or arising out of only such hazards covered by and as more fully defined in the policy/ies of the "Primary and Underlying Excess Insurers" and issued by the Primary and Underlying Excess Insurers stated in Item 4 of the Declarations occurring during the period of this policy.

2. ### LIMITS OF LIABILITY

   Provided always that:

   (a)   Liability attaches to the Underwriters only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as set forth in Item 5 of the Declarations and designated "Primary and Underlying Excess Limit(s)" and then the limits of the Underwriters' liability shall be those set forth in Item 6 of the Declarations under the designation "Excess Limit(s)" and the Underwriters shall be liable to pay the ultimate net loss the Excess of the Limit(s) under the policy/ies of the Primary and Underlying Excess Insurers as set forth in Item 5 of the Declarations up to the full amount of such Excess Limits(s).

   (b)   Liability for any one or any combination of the hazards insured hereunder as provided for in the Primary and Underlying Excess Insurers policy/ies is subject separately to the limit "each occurrence" as stated in the Declarations, but this limit shall not be exceeded in any one policy year with regard to any hazard(s) insured with an aggregate limit under the policy/ies of the Primary and Underlying Excess Insurers.

   (c)   For the purpose of determining the limit of the Underwriters' liability, all Personal Injury and Property Damage arising out of either

   (i)   an accident or series of accidents arising out of one event, or

   (ii)  a continuous or repeated exposure to substantially the same general conditions,

   shall be considered as arising out of one occurrence.

(d)   The inclusion of more than one entity as the named Assured, or the inclusion of any additional Assureds under this Policy, shall not in any way operate to increase the Underwriters' limits of liability beyond those provided in Item 6 of the Declarations.

## DEFINITIONS

3. (a)   Occurrence

The word "occurrence" means an accident, including injurious exposure to conditions, which results during the Policy year in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Assured.

(b)   Ultimate Net Loss

The words "ultimate net loss" shall be understood to mean the amount payable in settlement of the liability of the Assured after making deductions for all recoveries and for other valid and collectible insurances, excepting however the policy/ies of the Primary and Underlying Excess Insurers, and shall include all expenses and costs.

(c)   Policy Year

The words "policy year" shall be understood to mean a period of one calendar year commencing each year on the day and hour first named in the Declarations.

## CONDITIONS

4. (a)   Application of Recoveries

All recoveries, salvages or payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters, provided always that nothing in this Insurance shall be construed to mean that losses under this Insurance are not payable until the Assured's ultimate net loss has been finally ascertained.

(b)   Attachment of Liability

Liability to pay under this Policy shall not attach unless and until the Primary and Underlying Excess Insurers shall have admitted liability for the Primary and Underlying Excess Limit(s) or unless and until the Assured has by final judgment been adjudged to pay an amount which exceeds such Primary and Underlying Excess Limits(s) and then only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of the Primary and Underlying Excess Limit(s).

(c)   Maintenance of Primary Insurance

It is a condition of this Policy that the policy/ies of the Primary and Underlying Excess Insurers shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of occurrences during the policy year.

In respect of the hazards covered by the Primary and Underlying Excess Insurers this Policy is subject to the same warranties, terms, definitions, conditions and exclusions (except as regards the premium, the obligation to investigate and defend, the renewal agreement (if any), the amount and limits of liability other than the deductible or self-insurance provision where applicable,(AND EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy/ies of the Primary Insurers prior to the happening of an occurrence for which claim is made hereunder and should any alteration be made in the premium for the policy/ies of the Primary Insurers during the currency of this Policy, then the premium hereon shall be adjusted accordingly.

(d)   Subrogation

Inasmuch as this Policy is "excess coverage" the Assured's right of recovery against any person or other entity cannot be exclusively subrogated to the Underwriters. It is, therefore, understood and agreed that in case of any payment hereunder, the Underwriters will act in concert with all other interests (including the Assured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Assured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Underwriters are then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Assured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Assured) concerned, in the ratio of their respective recoveries as finally settled.

(e)   Commutation Clause - (to apply to Workmen's Compensation and/or Employers Liability or Occupational Disease and then only when these perils are covered by the Primary Insurers)

**Page 3 of 5**

Not later than twenty-four months from the expiry date of this policy, the Assured shall advise the Underwriters of all claims not finally settled which are likely to result in claims under this Policy. The Underwriters may then or at any time thereafter intimate to the Assured their desire to be released from liability in respect of any one or more of such claims. In such event, the Assured and the Underwriters shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalise such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims shall constitute a complete and final release of Underwriters, provided however that such payment shall not constitute a full and final release of Underwriters' liability if subsequent to such payment any supplemental award is made increasing the claim(s); said additional claim(s) may then be recommuted at Underwriter's option and Underwriters may discharge any additional liability by another payment.

(f)   Cancellation

This Policy may be cancelled at any time at the written request of the Assured or may be cancelled by or on behalf of the Underwriters provided (30)thirty days notice in writing be given.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the earned premium hereon for the period that this Policy has been in force or the short rate proportion of the Minimum Premium, calculated in accordance with the customary scale, whichever is the greater.

If this Policy shall be cancelled by the Underwriters they shall retain the earned premium hereon for the period that this Policy has been in force or pro-rata of the Minimum Premium, whichever is the greater. Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium.

If the period of limitation relating to the giving of such notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(g)   Notification of Claims

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Declarations. Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above person(s) or firm of any such occurrence.

(h)   Fraudulent Claims

If the Assured shall make any claim knowing the same to be fake or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

## DECLARATIONS

Item

1.    NAMED ASSURED:  The Diocese of Rockville Centre, as more fully set forth
                 in Endorsement No. 3 attached.

2.    ADDRESS OF ASSURED:  50 North Park Avenue,
                   Rockville Centre,
                   New York 11570

3.    PERIOD:  October 1, 1980 to October 1, 1981 (both days at 12:01 a.m.
              Local Standard Time)

4.    a)  PRIMARY INSURERS:  (i)  Certain Underwriters at Lloyds, London and
                      various Insurance Companies

                  (ii)  Firemans Fund Insurance Company

      b)  UNDERLYING EXCESS INSURERS:  (i)  Interstate Fire and Casualty Company
                              (ii)  Certain Underwriters at Lloyd's, London
                                    and Various Insurance companies.

5.    PRIMARY AND UNDERLYING EXCESS LIMIT(S):     $ 20,000,000

6.    EXCESS LIMIT(S):                            $ 10,000,000

7.    NOTIFICATION OF CLAIMS TO:   Gallagher Bassett of New York, Inc.,
                           100 Ring Road West, Garden City,
                           New York 11530

8.    IDENTIFICATION DETAILS AND LIMITS
      CARRIED UNDER ITEM 4 ABOVE:

| POLICY NO(S) | LIMIT(S) |
|---|---|
| 4(a)(i) GHV 051/179 | $100,000 any one occurrence Combined Single Limit Excess of $100,000 Combined Single Limit Self Insured Retention. |
| (ii) XLX-1437075 | $50,000 any one occurrence Workers Compensation Act Liability Excess od $100,000 any one occurrence Self-Insured Retention. |
| (b)(i) 183-152-625 | Difference between (a)(i) & (ii) above and $5,000,000 any one occurrence Combined Single Limit |
| (ii) GHV 051/1280 | $5,000,000 any one occurrence Combined Single Limit Excess of 4(a)* and 4(b)(i) above. |

                                  *(i) and (ii)

Page 5 of 5

## DECLARATIONS

*see*
*REVISED*

**Item**

1.   **NAMED ASSURED:**  Roman Catholic Diocese of Rockville Centre as more
     fully set forth in the scheduled attached.

2.   **ADDRESS OF ASSURED:**  50 North Park Avenue
     Rockville Centre, New York  11570

3.   **PERIOD:**  October 1, 1980 to October 1, 1981 (both days at 12:01 a.m.
     Local Standard Time)

4.   **a)  PRIMARY INSURERS:**
             Interstate Fire & Casualty Company

     **b)  UNDERLYING EXCESS INSURERS:**
             Lloyd's of London and other British Companies

5.   **PRIMARY AND UNDERLYING EXCESS LIMIT(S):**
                                 U.S. $10,000,000

6.   **EXCESS LIMIT(S):**
             U.S. $20,000,000

7.   **NOTIFICATION OF CLAIMS TO:**  Gallagher Bassett of New York, Inc.
                                     100 Ring Road West
                                     Garden City, New York 11530

8.   **IDENTIFICATION DETAILS AND LIMITS**
     **CARRIED UNDER ITEM 4 ABOVE:**

| POLICY NO(S) | LIMIT(S) |
|---|---|
| 183-152625 | U.S. $5,000,000 Any One Occurrence Combined Single Limit |
| SL 3725/SLC5746 | U.S. $5,000,000 Any One Occurrence Combined Single Limit |

**ATTACHING TO AND FORMING PART OF COVER NOTE NO.** SL 3726/SLC 5747

**DATED:**   October 29, 1980

**ARTHUR J. GALLAGHER & CO. (ILLINOIS)**

**By:** Donald J. Krutek

**Page 5 of 5**

GALLAGHER HINTON & VEREKER LIMITED
INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
R. E. GALLAGHER, *(U.S.A)*
J. P. GALLAGHER, *(U.S.A)*
R. B. OWLES
J. J. SHAW

FOUNTAIN HOUSE
125/135 FENCHURCH STREET
LONDON, EC3M 5DJ

Telephone: 01- 626 5861

*Cables & Telegrams:*
GALVER G, LONDON

Telex: 8951506
Registered No. 1193013 *England*

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date  2nd October, 1980.

Your Ref.

Our Ref.  PJH/cao

## COVER NOTE No. GHV 051/1680

We confirm that we have effected the following insurance in accordance with your instructions:

| | |
|---|---|
| TYPE: | EXCESS BROADFORM LIABILITY INCLUDING WORKERS COMPENSATION ACT. |
| FORM: | Excess 'Bishops' wording as expiring. |
| ASSURED: | Diocese of Rockville Centre, New York. |
| PERIOD: | 12 months effective 1st October, 1980. |
| INTEREST: | Legal Liability in respect of the Assured's operations as more fully defined in primary. |
| SUM INSURED: | $20,000,000  any one occurrence |
| | Excess of: |
| | $10,000,000  any one occurrence |
| SITUATION: | Worldwide |
| CONDITIONS: | 30 Days Cancellation Clause. |
| | Retroactive date in respect of Errors and Omissions ; 1st October , 1976. |
| PREMIUM: | $30,000 per annum |
| BROKERAGE: | 15% |
| INFORMATION: | Underlying 5 mm excess 5 mm at premium $25,916.66 annual Underlying excludes Hospital Malpractice. |

.../...

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

E.&O.E.

Page No. 2 to Covernote Number GHV 051/7680 dated 2nd October, 1980.

SECURITY:      59.77%  part of 100%  Lloyds Underwriters.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7.36% | 618 | 1.35% | 278 | 2.11% | 948 | 9.41% | 989 |
| 0.94% | 279 | 4.70% | 126 | 1.41% | 701 | 3.76% | 210 |
| 2.35% | 553 | 1.41% | 205 | 0.70% | 694 | 0.70% | 694 |
| 1.88% | 921 | 1.88% | 175 | 0.94% | 346 | 1.41% | 570 |
| 0.28% | 269 | 0.94% | 661 | 0.24% | 518 | 0.71% | 90 |
| 0.71% | 56 | 0.71% | 35 | 4.70% | 918 | 0.71% | 452 |
| 0.80% | 408 | 0.14% | 99 | 0.94% | 990 | 0.56% | 620 |
| 0.38% | 235 | 0.56% | 235 | 1.41% | 604 | 0.94% | 183 |
| 0.35% | 204 | 0.12% | 204 | 0.71% | 365 | 0.47% | 506 |
| 0.94% | 263 | 0.14% | 276 | | | | |

P JH

# GALLAGHER HINTON & VEREKER LIMITED

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
R. E. GALLAGHER, *(U.S.A.)*
J. P. GALLAGHER, *(U.S.A.)*
R. B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE**
**125/135 FENCHURCH STREET**
**LONDON, EC3M 5DJ**

*Telephone:* 01- 626 5861

*Cables & Telegrams:*
CALVER G, LONDON

*Telex:* 8951506

*Registered No.* 1193013 *England*

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date **2nd October, 1980.**

Your Ref.

Our Ref. **PJH/cao**

## COVER NOTE No. GHV 051/1680

We confirm that we have effected the following insurance in accordance with your instructions:

**TYPE:**  EXCESS BROADFORM LIABILITY INCLUDING WORKERS COMPENSATION ACT.

**FORM:**  Excess 'Bishops' wording as expiring.

**ASSURED:**  Diocese of Rockville Centre, New York.

**PERIOD:**  12 months effective 1st October, 1980.

**INTEREST:**  Legal Liability in respect of the Assured's operations as more fully defined in primary.

**SUM INSURED:**  $20,000,000  any one occurrence

Excess of:

$10,000,000  any one occurrence

**SITUATION:**  Worldwide

**CONDITIONS:**  30 Days Cancellation Clause.

Retroactive date in respect of Errors and Omissions ; 1st October , 1976.

**PREMIUM:**  $30,000 per annum

**BROKERAGE:**  15% and tax as applicable.

**INFORMATION:**  Underlying 5 mm excess 5 mm at premium $25,916.66 annual Underlying excludes Hospital Malpracttce.

.../...

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

E.&O.E.

SECURITY:

| | | |
|---|---|---|
| 7.06% | part of 100% | (12½% Sovereign<br>(37½% Tokio (UK)<br>(25% Taisho (UK)<br>(15% Allianz International<br>(10% Storebrand (UK)<br>Per W.F. (U/Wtg. Man.) Ltd. |
| 2.35% | part of 100% | Sovereign Marine & General Ins. Co. Ltd.<br>HDN a/c.<br>Per W.F. (U/Wtg. Man.) Ltd. |
| 7.06% | part of 100% | CNA Reinsurance of London Ltd. |
| 7.06% | part of 100% | Stronghold Ins. Co. Ltd. |
| 7.06% | part of 100% | Dominion Ins. Co. Ltd. |
| 2.82% | part of 100% | North Atlantic Ins. Co. Ltd. |
| 3.29% | part of 100% | Turegum Ins. Co. |
| 0.94% | part of 100% | Yasuda Fire & Marine Ins. Co. (UK) Ltd. |
| 1.18% | part of 100% | Mentor Ins. Co. (UK) Ltd. |
| 1.41% | part of 100% | Terra Nova Ins. Co. Ltd. |



**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**


Insurer(s):    Underwriters at Lloyd's
London Market Companies

Policy number(s):    SL 3725
SLC 5746

Inception date:    10/1/1980

Term at issuance:    1 year

Page count:    16

Contents:    Slip- 2 pgs
Excess Broadform Liability- 6 pgs
Endorsement- 4 pgs
Cover Note- 4 pgs

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

NUMBER **S L    3725**

| | | |
|---|---|---|
| **1** | *Name of Assured* | **Roman Catholic Diocese of Rockville Centre, and All Legal Entities Therein Over Which the Same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Exercises Direct, Complete and Active Control over the Finances, Properties, Operations and Activities**<br>**50 North Park Avenue**<br>**Rockville Centre, New York 11570** |

**2**   EFFECTIVE ☒ 12:01 A.M.   BOTH DAYS AT
FROM ☐ 12:00 NOON   STANDARD TIME   **October 1, 1980**   TO   **October 1, 1981**

**3**

Acting upon your instruction, we have
effected the insurance with:   ➡

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| UNDERWRITERS AT LLOYD'S, LONDON | 81.14% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon:  81.14% Part of 100% of: | | Annual: | $25,916.66 |
| | | Hereon: | $21,028.78 |
| $5,000,000  Any one occurrence | | | |
| EXCESS OF: | Excess Broadform Liability Including Workers Compensation Act. | | |
| $5,000,000  Any one occurrence | | | |

AUDIT                                                    TOTAL CHARGED _____

**5**   SPECIAL CONDITIONS

**6**   **Service of Suit Clause –**
**Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, Illinois 60603**
**or Mendes & Mount, 3 Park Avenue, New York, New York 10016**

In witness whereof this covernote has been signed at......**Rolling Meadows, Illinois**.......this...**28th**.....day of...**October**.......

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By *Donald J Knuth*

Eason Printing Co. Chicago

ENDORSEMENT


Attached to and forming part of Policy / Certificate No. SL 3725

in the name of Roman Catholic Diocese of Rockville Centre

Effective date of this endorsement is October 1, 1980        Endorsement No. 3



It is hereby understood and agreed effective inception that the name and
address of the assured is as follows:-


          Roman Catholic Diocese of Rockville Centre, and all legal
          entities therein over which the same central authority appoints
          or controls the appointment of the board of trustees or similar
          body and exercises direct, complete and active control over the
          finances, properties, operations and activities

          50 North Park Avenue,
          Rockville Centre,
          New York 11570.



ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  April 9, 1981              ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                        BY:

ENDORSEMENT

Attached to and forming part of Policy / Certificate No. SL 3725

in the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1980    Endorsement No. 2

It is hereby understood and agreed that the following are named as
additional named insureds under this policy:

        Bishop John R. McGann

        Bishop Emeritus Walter P. Kellenberg

        Auxiliary Bishop Gerald J. Ryan

        Auxiliary Bishop James J. Daly

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  October 28, 1980                ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                       BY  _Donald J. Krutek_

ENDORSEMENT

Attached to and forming part of Policy   /   Certificate No. SL 3725

in the name of  Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is Oct. 1, 1980   Endorsement No.  1

## ERRORS AND OMISSIONS

IT IS AGREED that Section II Agreement C is amended to include the following:

The underwriters agree, subject to the terms and conditions hereof, to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER agreed:

(1)    There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to October 1, 1976   (hereinafter referred to as the "Retroactive Date").

(2)    In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemeteries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  October 28, 1980          ARTHUR J. GALLAGHER & CO.

By  _Donald J. Krutek_

DATE ISSUED   CONTRACT NO.   PREVIOUS NO.

October 28, 1980   SNVPGIX/1200   SLC 5657

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SL/COS/CN)

NUMBER **S L C   5746**

**1**

*Name of Assured*   Roman Catholic Diocese of Rockville Centre, and All Legal
Entities Therein Over Which the Same Central Authority
Appoints or Controls the Appointment of the Board of Trustees
or Similar Body and Exercises Direct, Complete and Active
Control over the Finances, Properties, Operations and Activities
50 North Park Avenue
Rockville Centre, New York 11570

**2**

EFFECTIVE ☒ 12:01 A.M.   BOTH DAYS AT
FROM ☐ 12:00 NOON   STANDARD TIME   October 1, 1980   TO   October 1, 1981

**3**

Acting upon your instruction, we have
effected the insurance with: ➡

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| Dominion Ins. Co. Ltd. | 7.86% |
| CNA Reinsurance of London Ltd. | 7.86% |
| Stronghold Ins. Co. Ltd. | 3.14% |
| | 18.86% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon:  18.86% Part of 100% of: | | Annual: | $25,916.66 |
| | | Hereon: | $ 4,887.88 |
| Subject to the same forms, terms, conditions and endorsements as more particularly set forth in Cover Note No. SL 3725 | Dominion Ins. Co. Ltd. | | $ 2,037.05 |
| | CNA Reinsurance of London Ltd. | | $ 2,037.05 |
| | Stronghold Ins. Co. Ltd. | | $  813.78 |
| | | | $ 4,887.88 |

AUDIT                                    TOTAL CHARGED_____

SPECIAL CONDITIONS

**5**

**6**

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By *Donald J. Krick*

Eason Printing Co  Chicago

ENDORSEMENT


Attached to and forming part of Policy / Certificate No. SLC 5746

in the name of Roman Catholic Diocese of Rockville Centre

Effective date of this endorsement is October 1, 1980          Endorsement No. A

       .


It is hereby understood and agreed effective inception that the name and
address of the assured is as follows:-

          Roman Catholic Diocese of Rockville Centre, and all legal
          entities therein over which the same central authority appoints
          or controls the appointment of the board of trustees or similar
          body and exercises direct, complete and active control over the
          finances, properties, operations and activities

          50 North Park Avenue,
          Rockville Centre,
          New York 11570.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  April 9. 1981                    ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                              BY:  *Donald J. Krutek*

## EXCESS BROADFORM LIABILITY

### INSURING AGREEMENTS

1. **COVERAGE**

   In consideration of the payment of the premium stated herein and subject to the limitations, definitions, terms and conditions hereinafter mentioned, Underwriters hereby agree with the Assured named in the Declarations made a part hereof to indemnify the Assured for all sums which the Assured shall be legally obligated to pay by reason of the liability caused by or arising out of only such hazards covered by and as more fully defined in the policy/ies of the "Primary and Underlying Excess Insurers" and issued by the Primary and Underlying Excess Insurers stated in Item 4 of the Declarations occurring during the period of this policy.

2. **LIMITS OF LIABILITY**

   Provided always that:

   (a)   Liability attaches to the Underwriters only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as set forth in Item 5 of the Declarations and designated "Primary and Underlying Excess Limit(s)" and then the limits of the Underwriters' liability shall be those set forth in Item 6 of the Declarations under the designation "Excess Limit(s)" and the Underwriters shall be liable to pay the ultimate net loss the Excess of the Limit(s) under the policy/ies of the Primary and Underlying Excess Insurers as set forth in Item 5 of the Declarations up to the full amount of such Excess Limits(s).

   (b)   Liability for any one or any combination of the hazards insured hereunder as provided for in the Primary and Underlying Excess Insurers policy/ies is subject separately to the limit "each occurrence" as stated in the Declarations, but this limit shall not be exceeded in any one policy year with regard to any hazard(s) insured with an aggregate limit under the policy/ies of the Primary and Underlying Excess Insurers.

   (c)   For the purpose of determining the limit of the Underwriters' liability, all Personal Injury and Property Damage arising out of either

      (i)   an accident or series of accidents arising out of one event, or

      (ii)  a continuous or repeated exposure to substantially the same general conditions,

   shall be considered as arising out of one occurrence.

**Page 1 of 5**

(d)   The inclusion of more than one entity as the named Assured, or the inclusion of any additional Assureds under this Policy, shall not in any way operate to increase the Underwriters' limits of liability beyond those provided in Item 6 of the Declarations.

## DEFINITIONS

3. (a)   Occurrence

The word "occurrence" means an accident, including injurious exposure to conditions, which results during the Policy year in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Assured.

(b)   Ultimate Net Loss

The words "ultimate net loss" shall be understood to mean the amount payable in settlement of the liability of the Assured after making deductions for all recoveries and for other valid and collectible insurances, excepting however the policy/ies of the Primary and Underlying Excess Insurers, and shall include all expenses and costs.

(c)   Policy Year

The words "policy year" shall be understood to mean a period of one calendar year commencing each year on the day and hour first named in the Declarations.

## CONDITIONS

4. (a)   Application of Recoveries

All recoveries, salvages or payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters, provided always that nothing in this Insurance shall be construed to mean that losses under this Insurance are not payable until the Assured's ultimate net loss has been finally ascertained.

(b)   Attachment of Liability

Liability to pay under this Policy shall not attach unless and until the Primary and Underlying Excess Insurers shall have admitted liability for the Primary and Underlying Excess Limit(s) or unless and until the Assured has by final judgment been adjudged to pay an amount which exceeds such Primary and Underlying Excess Limits(s) and then only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of the Primary and Underlying Excess Limit(s).

**Page 2 of 5**

(c)   <u>Maintenance of Primary Insurance</u>

It is a condition of this Policy that the policy/ies of the Primary
and Underlying Excess Insurers shall be maintained in full effect
during the currency of this Policy except for any reduction of the
aggregate limits contained therein solely by payment of claims in
respect of occurrences during the policy year.

In respect of the hazards covered by the Primary and Underlying
Excess Insurers this Policy is subject to the same warranties, terms,
definitions, conditions and exclusions (except as regards the premium,
the obligation to investigate and defend, the renewal agreement (if
any), the amount and limits of liability other than the deductible or
self-insurance provision where applicable,(AND EXCEPT AS OTHERWISE
PROVIDED HEREIN) as are contained in or as may be added to the
policy/ies of the Primary Insurers prior to the happening of an
occurrence for which claim is made hereunder and should any alteration
be made in the premium for the policy/ies of the Primary Insurers
during the currency of this Policy, then the premium hereon shall
be adjusted accordingly.

(d)   <u>Subrogation</u>

Inasmuch as this Policy is "excess coverage" the Assured's right of
recovery against any person or other entity cannot be exclusively
subrogated to the Underwriters.  It is, therefore, understood and
agreed that in case of any payment hereunder, the Underwriters will
act in concert with all other interests (including the Assured)
concerned, in the exercise of such rights of recovery.  The
apportioning of any amounts which may be so recovered shall follow
the principle that any interests (including the Assured) that shall
have paid an amount over and above any payment hereunder, shall
first be reimbursed up to the amount paid by them; the Underwriters
are then to be reimbursed out of any balance then remaining up to
the amount paid hereunder; lastly, the interests (including the
Assured) of whom this coverage is in excess are entitled to claim
the residue, if any.  Expenses necessary to the recovery of any such
amounts shall be apportioned between the interests (including the
Assured) concerned, in the ratio of their respective recoveries as
finally settled.

(e)   <u>Commutation Clause</u> - (to apply to Workmen's Compensation and/or
                               Employers Liability or Occupational Disease
                               and then only when these perils are covered
                               by the Primary Insurers)

**Page 3 of 5**

Not later than twenty-four months from the expiry date of this policy, the Assured shall advise the Underwriters of all claims not finally settled which are likely to result in claims under this Policy. The Underwriters may then or at any time thereafter intimate to the Assured their desire to be released from liability in respect of any one or more of such claims. In such event, the Assured and the Underwriters shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalise such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims shall constitute a complete and final release of Underwriters, provided however that such payment shall not constitute a full and final release of Underwriters' liability if subsequent to such payment any supplemental award is made increasing the claim(s); said additional claim(s) may then be recommuted at Underwriter's option and Underwriters may discharge any additional liability by another payment.

(f)    Cancellation

This Policy may be cancelled at any time at the written request of the Assured or may be cancelled by or on behalf of the Underwriters provided (30) thirty days notice in writing be given.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the earned premium hereon for the period that this Policy has been in force or the short rate proportion of the Minimum Premium, calculated in accordance with the customary scale, whichever is the greater.

If this Policy shall be cancelled by the Underwriters they shall retain the earned premium hereon for the period that this Policy has been in force or pro-rata of the Minimum Premium, whichever is the greater. Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium.

If the period of limitation relating to the giving of such notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(g)    Notification of Claims

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Declarations. Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above person(s) or firm of any such occurrence.

(h)    Fraudulent Claims

If the Assured shall make any claim knowing the same to be fake or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

DECLARATIONS

Item

1.  **NAMED ASSURED:**  The Diocese of Rockville Centre as more fully set forth
    in endorsement No. 3 attached.

2.  **ADDRESS OF ASSURED:**  50 North Park Avenue,
                              Rockville Centre,
                              New York 11570

3.  **PERIOD:**  October 1, 1980 to October 1, 1981 (both days at 12:01 a.m.
                 Local Standard Time)

4.  a)  **PRIMARY INSURERS:**  (i)  Certain Underwriters at Lloyds, London and
                                    various Insurance Companies
                              (ii)  Firemans Fund Insurance Company

    b)  **UNDERLYING EXCESS INSURERS:**  (i)  Interstate Fire and Casualty Company

5.  **PRIMARY AND UNDERLYING EXCESS LIMIT(S):**   $5,000,000

6.  **EXCESS LIMIT(S):**  $5,000,000

7.  **NOTIFICATION OF CLAIMS TO:**  Gallagher Bassett of New York, Inc.,
                                     100 Ring Road West, Garden City,
                                     New York, 11530

8.  **IDENTIFICATION DETAILS AND LIMITS**
    **CARRIED UNDER ITEM 4 ABOVE:**

| | POLICY NO(S) | LIMIT(S) |
|---|---|---|
| 4(a)(i) | GHV 051/179 | $100,000 any one occurrence Combined Single Limit Excess of $100,000 Combined Single Limit Self-Insured Retention. |
| (ii) | XLX-1437075 | $50,000 any one occurrence Workers' Compensation Act Liability Excess of $100,000 any one occurrence Self-Insured Retention |
| (b)(i) | 183-152-625 | Difference between (a)(i) and (ii) above and $5,000,000 any one occurrence. |

Page 5 of 5

## DECLARATIONS

*See revised!*

**Item**

1.   **NAMED ASSURED:**   Roman Catholic Diocese of Rockville Centre as
more fully set forth in the scheduled attached.

2.   **ADDRESS OF ASSURED:**   50 North Park Avenue
Rockville Centre, New York 11570

3.   **PERIOD:**   October 1, 1980 to October 1, 1981 (both days at 12:01 A.M.
Local Standard Time

4.   a)   **PRIMARY INSURERS:**
Interstate Fire & Casualty Company

b)   **UNDERLYING EXCESS INSURERS:**   Not Applicable

5.   **PRIMARY AND UNDERLYING EXCESS LIMIT(S):**   U.S. $5,000,000.

6.   **EXCESS LIMIT(S):**   U.S. $5,000,000

7.   **NOTIFICATION OF CLAIMS TO:**   Gallagher Bassett of New York, Inc.
100 Ring Road West
Garden City, New York 11530

8.   **IDENTIFICATION DETAILS AND LIMITS**
**CARRIED UNDER ITEM 4 ABOVE:**

| POLICY NO(S) | LIMIT(S) |
|---|---|
| 183-152625 | U.S. $5,000,000 any one occurrence Combined Single Limit. |

**ATTACHING TO AND FORMING PART OF COVER NOTE NO.** SL 3725/SLC 5746

**DATED:**   October 28, 1980

**ARTHUR J. GALLAGHER & CO. (ILLINOIS)**

By: *Donald J. Krutek*

**Page 5 of 5**

D.W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
R. E. GALLAGHER, *(U.S.A.)*
J. P. GALLAGHER, *(U.S.A.)*
R.B. OWLES
J. J. SHAW

FOUNTAIN HOUSE
125/135 FENCHURCH STREET
LONDON, EC3M 5DJ

*Telephone:* 01- 626 5861

*Cables & Telegrams:*
CALVER C, LONDON

*Telex:* 8951506
*Registered No.* 1193013  *England*

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date  2nd October, 1980.

Your Ref.

Our Ref.  PJH/cao

## COVER NOTE No. GHV 051/1280

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:            EXCESS BROADFORM LIABILITY INCLUDING WORKERS
                 COMPENSATION ACT.

FORM:            Excess 'Bishop' Wording as expiring.

ASSURED:         Diocese of Rockville Centre, New York.

PERIOD:          12 months effective 1st October, 1980.

INTEREST:        Legal Liability in respect of the Assured's operations
                 as more fully defined in primary.

SUM INSURED:     $5,000,000  any one occurrence

                 EXCESS OF:

                 $5,000,000  any one occurrence

SITUATION:       Worldwide

CONDITIONS:      30 Days Cancellation Clause
                 Retro date in respect of Errors and Omissions -
                 1st October, 1976.

PREMIUM:         $25,916.66

BROKERAGE:       15%

INFORMATION:     Excludes Hospital Malpractice.

.../...

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

E.&O.E.

Page No. 2 to Covernote Number GHV 051/1280 dated 2nd October, 1980

SECURITY:     81.14%  part of 100%  Lloyds Underwriters.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7.85% | 219 | 7.27% | 989 | 0.59% | 279 | 7.86% | 799 |
| 1.18% | 263 | 1.57% | 92 | 0.98% | 661 | 0.20% | 518 |
| 1.57% | 921 | 1.18% | 694 | 0.79% | 35 | 3.14% | 604 |
| 0.98% | 346 | 5.89% | 918 | 6.15% | 618 | 1.13% | 278 |
| 1.76% | 948 | 4.72% | 126 | 1.18% | 701 | 3.93% | 210 |
| 3.93% | 553 | 3.93% | 205 | 3.14% | 175 | 2.36% | 56 |
| 1.57% | 665 | 1.18% | 506 | 1.26% | 408 | 0.31% | 99 |
| 0.79% | 365 | 0.39% | 620 | 0.94% | 235 | 1.18% | 235 |
| 0.24% | 383 | | | | | | |



GALLAGHER HINTON & VEREKER LIMITED

INTERNATIONAL INSURANCE BROKERS

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
R. E. GALLAGHER, *(U.S.A)*
J. P. GALLAGHER, *(U.S.A)*
R. B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE**
**125/135 FENCHURCH STREET**
**LONDON, EC3M 5DJ**

*Telephone:* 01- 626 5861

*Cables & Telegrams:*
CALVER G, LONDON

*Telex:* 8951506

*Registered No.* 1193013 *England*

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date 2nd October, 1980.

Your Ref.

Our Ref. PJH/cao

## COVER NOTE No. GHV 051/1280

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:            EXCESS BROADFORM LIABILITY INCLUDING WORKERS
                 COMPENSATION ACT.

FORM:            Excess 'Bishop' Wording as expiring.

ASSURED:         Diocese of Rockville Centre, New York.

PERIOD:          12 months effective 1st October, 1980.

INTEREST:        Legal Liability in respect of the Assured's operations
                 as more fully defined in primary.

SUM INSURED:     $5,000,000  any one occurrence

                 EXCESS OF:

                 $5,000,000  any one occurrence

SITUATION:       Worldwide

CONDITIONS:      30 Days Cancellation Clause

                 Retro date in respect of Errors and Omissions -
                 1st October, 1976.

PREMIUM:         $25,916.66

BROKERAGE:       15% and tax as applicable

INFORMATION:     Excludes Hospital Malpractice.

.../...

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.
E.&O.E.

PJH

**Page No. 2 to Covernote Number GHV 051/1280 dated 2nd October, 1980**

<u>SECURITY</u>:

.

7.86%  part of 100%  Dominion Ins. Co. Ltd.

7.86%  part of 100%  CNA Reinsurance of London Ltd.

3.14%  part of 100%  Stronghold Ins. Co. Ltd.



**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

|  |  |
|---|---|
| Insurer(s): | Underwriters at Lloyd's<br>London Market Companies |
| Policy number(s): | SL 3731<br>SLC 5754 |
| Inception date: | 10/1/1980 |
| Term at issuance: | 1 year |
| Page count: | 17 |
| Contents: | Slip- 2 pgs<br>Excess Broadform Liability- 6 pgs<br>Endorsement- 5 pgs<br>Cover Note- 4 pgs |

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

NUMBER  **S L    3731**

|   | |
|---|---|
| 1 | *Name of Assured*  **Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein Over which the Same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Exercises Direct, Complete and Active Control Over the Finances, Properties, Operations and Activities 50 North Park Avenue Rockville Centre, New York 11570** |

2  EFFECTIVE ☒ 12:01 A.M.  ☐ 12:00 NOON  BOTH DAYS AT  STANDARD TIME  FROM  **October 1, 1980**  TO  **October 1, 1981**

3

Acting upon your instruction, we have effected the insurance with:  ➡

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| UNDERWRITERS AT LLOYD'S, LONDON | 76.95% |

4

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon: 76.95% Part of 100% of: | | Annual: | $20,000.00 |
| | | Hereon: | $15,390.00 |
| $20,000,000  Any One Occurrence EXCESS OF: | | | |
| $30,000,000  Any One Occurrence | Excess Broadform Liability Including Workers Compensation Act. | | |

AUDIT                          TOTAL CHARGED

5  SPECIAL CONDITIONS

6  **Service of Suit Clause –**
**Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, Illinois 60603 or Mendes & Mount, 3 Park Avenue, New York, New York 10016**

In witness whereof this covernote has been signed at.....Rolling Meadows, Illinois.......this...28th.....day of...October.......

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By *Donald J Krutek*

Eason Printing Co. Chicago

ENDORSEMENT

Attached to and forming part of Policy / Certificate No. SL 3731

in the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1980          Endorsement No. 3

It is hereby understood and agreed effective inception that the name and
address of the Assured is as follows:-

    Roman Catholic Diocese of Rockville Centre, and all legal
    entities therein over which the same central authority appoints
    or controls the appointment of the board of trustees or similar
    body and exercises direct, complete and active control over the
    finances, properties, operations and activities

    50 North Park Avenue,
    Rockville Centre,
    New York 11570.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  April 8, 1981                    ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                 BY: _Donald J. Krutek_

ENDORSEMENT

Attached to and forming part of Policy/Certificate No. SL 3731

in the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1980    Endorsement No. 2

It is hereby understood and agreed that the following are named as
additional named insureds under this policy:

      Bishop John R. McGann

      Bishop Emeritus Walter P. Kellenberg

      Auxiliary Bishop Gerald J. Ryan

      Auxiliary Bishop James J. Daly

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  October 29, 1980                ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                      BY  _Donald J. Krutek_

ENDORSEMENT

Attached to and forming part of Policy   /   Certificate No.   SL 3731

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is Oct. 1, 1980      Endorsement No.   1

ERRORS AND OMISSIONS

IT IS AGREED that Section II Agreement C is amended to include the following:

The underwriters agree, subject to the terms and conditions hereof, to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER agreed:

(1)   There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to October 1, 1980   (hereinafter referred to as the "Retroactive Date").

(2)   In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemeteries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:   October 29, 1980            ARTHUR J. GALLAGHER & CO.

By _Ronald J. Krutek_

| DATE ISSUED | CONTRACT NO. | PREVIOUS NO. |
|---|---|---|
| October 28, 1980 | SL / 0567/1980 | New |

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SL/COS/CN)

NUMBER **S L C   5751**

**1**

*Name of Assured*   Roman Catholic Diocese of Rockville Centre, and all Legal
Entities Therein Over which the Same Central Authority Appoints
or Controls the Appointment of the Board of Trustees or
Similar Body and Exercises Direct, Complete and Active Control
Over the Finances, Properties, Operations and Activities
50 North Park Avenue
Rockville Centre, New York 11570

**2**
EFFECTIVE ☒ 12:01 A.M.   BOTH DAYS AT
FROM ☐ 12:00 NOON   STANDARD TIME  October 1, 1980   TO   October 1, 1981

**3**
Acting upon your instruction, we have
effected the insurance with:

NAME OF INSURERS                          AMOUNT OR PERCENT

➤   As per endorsement No. A

**4**

| AMOUNT | COVERAGE | | RATE | PREMIUM |
|---|---|---|---|---|

Hereon:  23.05% Part of 100% of:

Subject to the same forms, terms,
conditions and endorsements as more
particularly set forth in Cover
Note No. SL 3731

Annual:       $20,000.00
Hereon:       $ 4,610.00
              As per end.#A

AUDIT                                    TOTAL CHARGED_____

**5**
SPECIAL CONDITIONS

**6**

ARTHUR J. GALLAGHER & CO. (LONDON)

By _____

Eason Printing Co. Chicago

ENDORSEMENT

Attached to and forming part of Policy / Certificate No. SLC 5754

in the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1980        Endorsement No. B


It is hereby understood and agreed effective inception that the name and
address of the Assured is as follows:-

> Roman Catholic Diocese of Rockville Centre, and all legal
> entities therein over which the same central authority appoints
> or controls the appointment of the board of trustees or similar
> body and exercises direct, complete and active control over the
> finances, properties, operations and activities

> 50 North Park Avenue,
> Rockville Centre,
> New York  11570.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  April 8, 1981              ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                   BY:  Donald J. Krutek

ENDORSEMENT

Attached to and forming part of Policy / Certificate No. SLC 5754

in the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1980     Endorsement No. A

It is hereby understood and agreed the premium and securities are as follows:

| | | | | |
|---|---|---|---|---|
| Stronghold Ins. Co. Ltd. | | | 2.45% | $  490.00 |
| Sovereign | 12½% ) | | | 122.75 |
| Tokio (UK) | 37½% ) | Part of | 4.91% | 368.25 |
| Taisho (UK) | 25 % ) | | | 245.50 |
| Allianz International | 15 % ) | | | 147.30 |
| Storebrand (UK) | 10 % ) | | | 98.20 |
| Per W.F. (U/Wtg. Man.) Ltd. | | | | |

Sovereign Marine and General Ins. Co. Ltd.
HDN a/c                                           2.45%     $  490.00
Per W.F. (U/Wtg. Man)Ltd.

| | | |
|---|---|---|
| North Atlantic Ins. Co. Ltd. | 2.45% | $  490.00 |
| Turegum Ins. Co. | 3.93% | 786.00 |
| Terra Nova Ins. Co. Ltd. | .98% | 196.00 |
| Mentor Ins. Co. (UK) Ltd. | .98% | 196.00 |
| Folksam International Ins. Co. (UK) Ltd. | 2.94% | 588.00 |
| Compagnie d'Assurances Maritimes et Terrestres. | 1.96% | 392.00 |
| | 23.05% | $4,610.00 |

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHAGNED.

DATED:  October 29, 1980                 ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                          BY  *Donald J. Kruth*

## EXCESS BROADFORM LIABILITY

### INSURING AGREEMENTS

1. ### COVERAGE

   In consideration of the payment of the premium stated herein and
   subject to the limitations, definitions, terms and conditions
   hereinafter mentioned, Underwriters hereby agree with the Assured
   named in the Declarations made a part hereof to indemnify the Assured
   for all sums which the Assured shall be legally obligated to pay by
   reason of the liability caused by or arising out of only such hazards
   covered by and as more fully defined in the policy/ies of the "Primary
   and Underlying Excess Insurers" and issued by the Primary and Under-
   lying Excess Insurers stated in Item 4 of the Declarations occurring
   during the period of this policy.

2. ### LIMITS OF LIABILITY

   Provided always that:

   (a)   Liability attaches to the Underwriters only after the Primary
         and Underlying Excess Insurers have paid or have been held
         liable to pay the full amount of their respective ultimate net
         loss liability as set forth in Item 5 of the Declarations and
         designated "Primary and Underlying Excess Limit(s)" and then
         the limits of the Underwriters' liability shall be those set
         forth in Item 6 of the Declarations under the designation
         "Excess Limit(s)" and the Underwriters shall be liable to pay
         the ultimate net loss the Excess of the Limit(s) under the
         policy/ies of the Primary and Underlying Excess Insurers as
         set forth in Item 5 of the Declarations up to the full amount
         of such Excess Limits(s).

   (b)   Liability for any one or any combination of the hazards insured
         hereunder as provided for in the Primary and Underlying Excess
         Insurers policy/ies is subject separately to the limit "each
         occurrence" as stated in the Declarations, but this limit shall
         not be exceeded in any one policy year with regard to any hazard(s)
         insured with an aggregate limit under the policy/ies of the
         Primary and Underlying Excess Insurers.

   (c)   For the purpose of determining the limit of the Underwriters'
         liability, all Personal Injury and Property Damage arising out
         of either

         (i)  an accident or series of accidents arising out of one event, or

         (ii) a continuous or repeated exposure to substantially the same
              general conditions,

         shall be considered as arising out of one occurrence.

(d)    The inclusion of more than one entity as the named Assured, or the inclusion of any additional Assureds under this Policy, shall not in any way operate to increase the Underwriters' limits of liability beyond those provided in Item 6 of the Declarations.

## DEFINITIONS

3. (a)    Occurrence

The word "occurrence" means an accident, including injurious exposure to conditions, which results during the Policy year in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Assured.

(b)    Ultimate Net Loss

The words "ultimate net loss" shall be understood to mean the amount payable in settlement of the liability of the Assured after making deductions for all recoveries and for other valid and collectible insurances, excepting however the policy/ies of the Primary and Underlying Excess Insurers, and shall include all expenses and costs.

(c)    Policy Year

The words "policy year" shall be understood to mean a period of one calendar year commencing each year on the day and hour first named in the Declarations.

## CONDITIONS

4. (a)    Application of Recoveries

All recoveries, salvages or payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters, provided always that nothing in this Insurance shall be construed to mean that losses under this Insurance are not payable until the Assured's ultimate net loss has been finally ascertained.

(b)    Attachment of Liability

Liability to pay under this Policy shall not attach unless and until the Primary and Underlying Excess Insurers shall have admitted liability for the Primary and Underlying Excess Limit(s) or unless and until the Assured has by final judgment been adjudged to pay an amount which exceeds such Primary and Underlying Excess Limits(s) and then only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of the Primary and Underlying Excess Limit(s).

**Page 2 of 5**

(c)   Maintenance of Primary Insurance

It is a condition of this Policy that the policy/ies of the Primary and Underlying Excess Insurers shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of occurrences during the policy year.

In respect of the hazards covered by the Primary and Underlying Excess Insurers this Policy is subject to the same warranties, terms, definitions, conditions and exclusions (except as regards the premium, the obligation to investigate and defend, the renewal agreement (if any), the amount and limits of liability other than the deductible or self-insurance provision where applicable, (AND EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy/ies of the Primary Insurers prior to the happening of an occurrence for which claim is made hereunder and should any alteration be made in the premium for the policy/ies of the Primary Insurers during the currency of this Policy, then the premium hereon shall be adjusted accordingly.

(d)   Subrogation

Inasmuch as this Policy is "excess coverage" the Assured's right of recovery against any person or other entity cannot be exclusively subrogated to the Underwriters. It is, therefore, understood and agreed that in case of any payment hereunder, the Underwriters will act in concert with all other interests (including the Assured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Assured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Underwriters are then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Assured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Assured) concerned, in the ratio of their respective recoveries as finally settled.

(e)   Commutation Clause - (to apply to Workmen's Compensation and/or Employers Liability or Occupational Disease and then only when these perils are covered by the Primary Insurers)

**Page 3 of 5**

Not later than twenty-four months from the expiry date of this policy, the Assured shall advise the Underwriters of all claims not finally settled which are likely to result in claims under this Policy. The Underwriters may then or at any time thereafter intimate to the Assured their desire to be released from liability in respect of any one or more of such claims. In such event, the Assured and the Underwriters shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalise such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims shall constitute a complete and final release of Underwriters, provided however that such payment shall not constitute a full and final release of Underwriters' liability if subsequent to such payment any supplemental award is made increasing the claim(s); said additional claim(s) may then be recommuted at Underwriter's option and Underwriters may discharge any additional liability by another payment.

(f)   Cancellation

This Policy may be cancelled at any time at the written request of the Assured or may be cancelled by or on behalf of the Underwriters provided (30) thirty days notice in writing be given.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the earned premium hereon for the period that this Policy has been in force or the short rate proportion of the Minimum Premium, calculated in accordance with the customary scale, whichever is the greater.

If this Policy shall be cancelled by the Underwriters they shall retain the earned premium hereon for the period that this Policy has been in force or pro-rata of the Minimum Premium, whichever is the greater. Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium.

If the period of limitation relating to the giving of such notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(g)   Notification of Claims

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Declarations. Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above person(s) or firm of any such occurrence.

(h)   Fraudulent Claims

If the Assured shall make any claim knowing the same to be fake or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

## DECLARATIONS

Item

1.      NAMED ASSURED:          The Diocese of Rockville Centre, as more fully
                                set forth in Endorsement No. 3 attached.

2.      ADDRESS OF ASSURED:     50 North Park Avenue, Rockville Centre,
                                New York  11570.

3.      PERIOD:                 October 1, 1980 to October 1, 1981 both days
                                at 12:01 a.m. Local Standard Time.

4.  (a) PRIMARY INSURERS:       (i)    Certain Underwriters at Lloyd's London and various
                                       Insurance Companies.

                                (ii)   Firemans Fund Insurance Company

    (b) UNDERLYING EXCESS
        INSURERS:               (i)    Interstate Fire & Casualty Company.

                                (ii)   Certain Underwriters at Lloyd's London and
                                       various Insurance companies.

                                (iii)  Certain Underwriters at Lloyd's London and
                                       various Insurance companies

5.      PRIMARY AND UNDERLYING
        EXCESS LIMIT(S)      :  $ 30,000,000

6.      EXCESS LIMIT(S):        $ 20,000,000

7.      NOTIFICATION OF CLAIMS TO:    Gallagher Bassett of New York, Inc.
                                      100 Ring Road West, Garden City
                                      New York 11530

8.      IDENTIFICATION DETAILS AND LIMITS
        CARRIED UNDER ITEM 4 ABOVE:

| | POLICY NO(S) | LIMIT(S) |
|---|---|---|
| 4(a) (i) | GHV 051/179 | $100,000 any one occurrence Combined Single Limit EXCESS OF $ 100,000 Combined Single Limit Self-Insured Retention |
| (ii) | XLX-143075 | $ 50,000 any one occurrence Workers' Compensation Act Liability EXCESS OF $100,000 any one occurrence Self-Insured Retention |
| 4(b) (i) | 183-152-625 | Difference between (a) (i) & (ii) above and $5,000,000 any one occurrence Combined Single Limit. |
| (ii) | GHV 051/1280 | $5,000,000 any one occurrence Combined Single Limit EXCESS of 4(a) and 4(b) (i) above. |
| (iii) | GHV 051/1680 | $20,000,000 any one occurrence Combined Single Limit EXCESS of 4(a)* and 4(b) (i) & (ii) above. |

*(i) & (ii)

## DECLARATIONS

*see revised*

### Item

1. **NAMED ASSURED:**   Roman Catholic Diocese of Rockville Centre as more
   fully set forth in the schedule attached

2. **ADDRESS OF ASSURED:**   50 North Park Avenue
   Rockville Centre, New York 11570

3. **PERIOD:**   October 1, 1980 to October 1, 1981 (both days at 12:01 a.m.
   Local Standard Time)

4. **a)   PRIMARY INSURERS:**

   Interstate Fire & Casualty Company

   **b)   UNDERLYING EXCESS INSURERS:**

   Lloyd's of London and other British Companies

5. **PRIMARY AND UNDERLYING EXCESS LIMIT(S):**

   U.S. $30,000,000

6. **EXCESS LIMIT(S):**   U.S. $20,000,000

7. **NOTIFICATION OF CLAIMS TO:**   Gallagher Bassett of New York, Inc.
   100 Ring Road West
   Garden City, New York 11530

8. **IDENTIFICATION DETAILS AND LIMITS**

   **CARRIED UNDER ITEM 4 ABOVE:**

| POLICY NO(S) | LIMIT(S) |
|---|---|
| 183-152625 | U.S. $5,000,000 Any One Occurrence Combined Single Limit |
| SL3725/SLC5746 | U.S. $5,000,000 Any One Occurrence Combined Single Limit |
| SL3726/SLC5747 | U.S. $20,000,000 Any One Occurrence Combined Single Limit |

**ATTACHING TO AND FORMING PART OF COVER NOTE NO.** SL3731/SLC5754

**DATED:** October 29, 1980

**ARTHUR J. GALLAGHER & CO. (ILLINOIS)**

By: *Donald J. Krutek*

**Page 5 of 5**

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
R. E. GALLAGHER, *(U.S.A.)*
J. P. GALLAGHER, *(U.S.A.)*
R. B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE**
125/135 FENCHURCH STREET
LONDON, EC3M 5DJ

*Telephone:* 01- 626 5861

*Cables & Telegrams:*
CALVER G, LONDON

*Telex:* 8951506
*Registered No.* 1193013 *England*

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date  2nd October, 1980.

Your Ref.

Our Ref.   PJH/cao

### COVER NOTE No. GHV 051/1780

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:          EXCESS BROADFORM LIABILITY INCLUDING WORKERS
               COMPENSATION ACT.

FORM:          Excess 'Bishop' Wording as expiring.

ASSURED:       Diocese of Rockville Centre,
               New York.

PERIOD:        12 months effective 1st October, 1980.

INTEREST:      Legal Liability in respect of the Assured's operations
               as more fully defined in primary.

SUM INSURED:   $20,000,000  any one occurrence

               Excess of:

               $30,000,000  any one occurrence

SITUATION:     Worldwide

CONDITIONS:    30 Days Cancellation Clause

               Retroactive Date in respect of Errors & Omissions -
               1st October, 1980.

PREMIUM:       $20,000 per annum.

BROKERAGE:     15%

INFORMATION:   Underlying 5 mm xs 5 mm at premium $25,916.66 annual
               Underlying excludes Hospital Malpractice.

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

E.&O.E.

Page No. 2 to Covernote Number GHV 051/1780 dated 2nd October, 1980.

SECURITY:          76.95%   part of 100%   Lloyds Underwriters.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 9.82% | 989 | 0.98% | 279 | 7.69% | 618 | 1.41% | 278 |
| 2.20% | 948 | 2.45% | 494 | 9.82% | 799 | 4.91% | 210 |
| 7.36% | 126 | 2.45% | 701 | 2.94% | 219 | 0.98% | 342 |
| 0.98% | 303 | 1.23% | 243 | 0.98% | 452 | 0.83% | 408 |
| 0.15% | 99 | 0.98% | 346 | 0.15% | 204 | 0.05% | 204 |
| 1.47% | 584 | 2.94% | 570 | 0.49% | 269 | 2.45% | 553 |
| 0.25% | 694 | 0.74% | 694 | 0.98% | 175 | 0.98% | 990 |
| 1.47% | 727 | 0.49% | 365 | 0.49% | 506 | 2.45% | 471 |
| 0.49% | 722 | 0.33% | 56 | 0.35% | 35 | 0.49% | 205 |
| 0.98% | 263 | 0.25% | 235 | 0.35% | 235 | 0.15% | 276 |

PJH

D.W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
R. E. GALLAGHER,*(U.S.A.)*
I. P. GALLAGHER,*(U.S.A.)*
R. B. OWLES
J. J. SHAW

**FOUNTAIN HOUSE**
125/135 FENCHURCH STREET
LONDON, EC3M 5DJ

*Telephone:* 01- 626 5861

*Cables & Telegrams:*
CALVER C, LONDON

*Telex:* 8951506

*Registered No.* 1193013 *England*

Arthur J. Gallagher & Co.,
The Gould Centre,
Golf Road,
Rolling Meadows,
Illinois, 60008,
U.S.A.

Date   2nd October, 1980.

Your Ref.

Our Ref.   PJH/cao

## COVER NOTE No. GHV 051/1780

We confirm that we have effected the following insurance in accordance with your instructions:

| | |
|---|---|
| TYPE: | EXCESS BROADFORM LIABILITY INCLUDING WORKERS COMPENSATION ACT. |
| FORM: | Excess 'Bishop' Wording as expiring. |
| ASSURED: | Diocese of Rockville Centre, New York. |
| PERIOD: | 12 months effective 1st October, 1980. |
| INTEREST: | Legal Liability in respect of the Assured's operations as more fully defined in primary. |
| SUM INSURED: | $20,000,000  any one occurrence |
| | Excess of: |
| | $30,000,000  any one occurrence |
| SITUATION: | Worldwide |
| CONDITIONS: | 30 Days Cancellation Clause |
| | Retroactive Date in respect of Errors & Omissions – 1st October, 1980. |
| PREMIUM: | $20,000 per annum. |
| BROKERAGE: | 15%  and tax as applicable. |
| INFORMATION: | Underlying 5 mm xs 5 mm at premium $25,916.66 annual Underlying excludes Hospital Malpractice. |

.../...

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

E.&O.E.

<u>SECURITY:</u>

.

| | | |
|---|---|---|
| 2.45% | part of 100% | Stronghold Ins. Co. Ltd. |
| 4.91% | part of 100% | (12½% Sovereign<br>(37½% Tokio (UK)<br>(25% Taisho (UK)<br>(15% Allianz International<br>(10% Storebrand (UK)<br>Per W.F. (U/Wtg. Man.) Ltd. |
| 2.45% | part of 100% | Sovereign Marine and General Ins. Co. Ltd.<br>HDN a/c<br>Per W.F. (U/Wtg. Man.) Ltd. |
| 2.45% | part of 100% | North Atlantic Ins. Co. Ltd. |
| 3.93% | part of 100% | Turegum Ins. Co. |
| 0.98% | part of 100% | Terra Nova Ins. Co. Ltd. |
| 0.98% | part of 100% | Mentor Ins. Co. (UK) Ltd. |
| 2.94% | part of 100% | Folksam International Ins. Co. (UK) Ltd. |
| 1.96% | part of 100% | Compagnie d'Assurances Maritimes et<br>Terrestres. |



**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

|  |  |
|---:|:---|
| Insurer(s): | Interstate Fire & Casualty Co |
| Policy number(s): | 183-152625/2 |
| Inception date: | 10/1/1981 |
| Term at issuance: | 1 year |
| Page count: | 3 |
| Contents: | Renewal Certificate- 1 pg |
|  | Endorsement- 2 pgs |

| BRANCH | B/A | PRODUCER NUMBER | | POLICY NUMBER |
|--------|-----|-----------------|--|---------------|
| | | 0024949  * | | 183-152625/2 |

## [x] INTERSTATE FIRE & CASUALTY COMPANY    [ ] CHICAGO INSURANCE COMPANY
### CHICAGO, ILLINOIS 60603

In consideration of the premium shown below, it is agreed this policy is extended as shown in Item 2 below.

| Item | DECLARATIONS | RENEWAL CERTIFICATE NUMBER | 3 |
|------|--------------|----------------------------|---|
| 1. | *Name of Insured*  ADDRESS: (Number & Street, Town, County & State) | Diocese of Rockville Centre,N.Y. Etal  (See Policy Form)  50 North Park Avenue  Rockville Centre, New York 11570 | |

| 2. | Policy Period: 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN. | From: 10/1/81   To: 10/1/82 |
|----|--------------|--------------|
| | Agent or Broker  Office Address  Town and State | International Special Risk Service,Inc.  10 Gould Center Golf Rd.  Rolling Meadows,Illinois  60008 |

3. Only the coverages below for which a specific Premium Charge has been made will be effective with this certificate:

| COVERAGE | BODILY INJURY LIABILITY | PROPERTY DAMAGE LIABILITY | MALPRACTICE LIABILITY | Worker's Compensation | Errors & Omissions | Total Advance Premium |
|----------|-------------------------|---------------------------|-----------------------|----------------------|--------------------|-----------------------|
| | Gen'l Liab. & | Auto Liab. | | | | |
| PREMIUM | Incl. | Incl. | | Incl. | Incl. | $137,500.00 |

| If Policy Period more than one year and the premium is to be paid in installments, premium is payable: On effective date of policy $ | 3.6% State Tax and on the first and second anniversaries thereof. | 4,950.00 |
|---|---|---|
| | | $142,450.00  Total |

Audit Period: Annual, unless otherwise stated  [ ] Semiannually  [ ] Quarterly  [ ] Monthly  [x] None

If prior to the effective date stated in this certificate, the Company has adopted revised provisions for the form of policy renewed by this certificate in order to afford without additional premium, a broader insurance to all risks such as that insured by the policy, the insurance afforded for the policy period stated in this certificate shall be construed in accordance with the provisions of such revision.

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this RENEWAL CERTIFICATE shall not be valid until counter-signed by the duly authorized representative of the Company.

*Seared M. Kenig*  Secretary          *Robert W Bird*  President

**"THE INSURANCE HEREBY EVIDENCED IS WRITTEN BY AN INSURER (INSURERS) NOT LICENSED BY THE STATE OF NEW YORK AND NOT SUBJECT TO ITS SUPERVISION."**

By _*Robert W. Bird*_
AUTHORIZED REPRESENTATIVE

IFC-CIC-8-40(REV.9/69)PRINTED 3/75

### ORIGINAL — ATTACH TO POLICY

### SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Interstate Fire & Casualty Company (herein called the Company) to pay any amount claimed to be due hereunder, the Company, at the request of the Insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon  Miles,Cochrane,Grosse, Rosetti & Chelus- 1560 Statler Hilton Hotel, Buffalo, New York 14202 or their nominee. and that in any suit instituted against any one of them upon this contract, the Company will abide by the final decision of such Court or of any appellate Court in the event of an appeal.

The above-name are authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), any hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

Attached to and forming part of No. _____   INTERSTATE FIRE & CASUALTY COMPANY

Issued to _____ ATTACHED TO POLICY _____
WHEN ISSUED.

Effective _____   By _Robert W. Bird_

IFC-10 (Rev. 2/70)

### DIOCESE AMENDATORY ENDORSEMENT

It is hereby understood and agreed that the definition of loss is amended to read as follow:

> "Loss" means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable, after making deductions for all recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy. "Loss" includes investigation, adjustment, defense or appeal costs, and expenses, costs and expenses incident to any of the same, notwithstanding that the underlying insurance may provide insurance for such costs and expenses.

It is further understood and agreed that the cancellation provision is amended to read as follows:

> This policy may be canceled by the company by mailing to the named insured at the address shown in the declarations written notice stating when not less than 60 days thereafter such cancellation shall be effective.

It is further understood and agreed that item No. 4 (Description of Automobile), section 1 is hereby completed to read as follows:

> "All Owned Autos"

It is further understood and agreed that the company limits are corrected to read as follows:

> Company Limits:
>
> Difference between underlying including self insured retention (combined total of which $200,000.00 General Liability, Error's and Omissions liability and Auto Liability any one occurrence except Worker's Compensation $150,000.00 any one occurrence) and $5,000,000.00 General Liability, Errors and Omissions liability and Auto Liability and Worker's Compensation Combined any occurrence.

_Leard M. Koenig_
**Secretary**

_Robert W Bird_
**President**

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**


Policy number(s):    SL 3887
                     SLC 5894

Inception date:    10/1/1981

Term at issuance:    1 year

Page count:    25

Contents:    Slip- 2 pgs
             Excess Broadform Liability form- 5 pgs
             Endorsement- 4 pgs
             Cover Note- Lloyd's- 10 pgs
                            Company(s)- 4 pgs

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

| ITEM | | |
|---|---|---|
| | NUMBER **S L    3887** | |

**1**

*Name of Assured*

Roman Catholic Diocese of Rockville Centre, etal
(see Endorsement #2)
50 North Park Avenue
Rockville Centre, New York  11570

**2**

| EFFECTIVE FROM | ☒ 12:01 A.M. ☐ 12:00 NOON | BOTH DAYS AT STANDARD TIME | October 1, 1981 | TO | October 1, 1984 |
|---|---|---|---|---|---|

**3**

Acting upon your instruction, we have effected the insurance with: ➤

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| UNDERWRITERS AT LLOYD'S, LONDON | 81.11% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon: 81.11% Part of 100% of: | | Annual: | $20,000.00 |
| | | Hereon: | $16,222.00 |
| $5,000,000  any one occurrence | | | |
| EXCESS: | EXCESS BROADFORM LIABILITY INCLUDING WORKERS COMPENSATION ACT. | | |
| $5,000,000  any one occurrence | | | |
| AUDIT | | TOTAL CHARGED_____ | |

**5**

SPECIAL CONDITIONS
As per attached forms and endorsements.

**6**

Service of Suit Clause -
Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, Illinois 60603
or Mendes & Mount, 3 Park Avenue, New York, New York 10016

In witness whereof this covernote has been signed at .....Rolling Meadows, Illinois.......... this ..10th.... day of ..November....

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By *Donald J. Krutik*

Eason Printing Co. Chicago

DATE ISSUED
November 10, 1982

CONTRACT NO.
SL C 63/129

PREVIOUS NO.
SLC 5746

**THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SL/COS/CN)**

| ITEM | NUMBER **S L C** **5894** |
|---|---|

**1**

**Name of Assured**

Roman Catholic Diocese of Rockville Centre, etal
(see endorsement #A)
50 North Park Avenue
Rockville Centre, New York 11570

**2**

EFFECTIVE FROM ☒ 12:01 A.M. ☐ 12:00 NOON   BOTH DAYS AT STANDARD TIME   October 1, 1981   TO   October 1, 1984

**3**

Acting upon your instruction, we have effected the insurance with: →

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| Dominion Insurance Co. Ltd | 7.87% |
| CNA Reinsurance of London Ltd. | 7.87% |
| Stronghold Insurance Co. Ltd. | 3.15% |
| | 18.89% |

**4**

AMOUNT

Hereon: 18.89% Part of 100% of:

Subject to the same forms, terms, conditions and endorsements as more particularly set forth in Cover Note No. SL 3887

| COVERAGE | RATE | PREMIUM |
|---|---|---|
| | Annual: | $20,000.00 |
| | Hereon: | $ 3,778.00 |
| Dominion Insurance Co. Ltd. | | $ 1,574.00 |
| CNA Reinsurance of London Ltd. | | 1,574.00 |
| Stronghold Insurance of Ltd. | | 630.00 |
| | | $ 3,778.00 |

AUDIT                                           TOTAL CHARGED_____

**5**

SPECIAL CONDITIONS

**6**

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By _Donald J. Krutek_

Eason Printing Co. Chicago

ENDORSEMENT

Attached to and forming part of Policy / Certificate No.   SL 3887

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1981   Endorsement No.   3


It is hereby understood and agreed that 45 days
prior to each anniversary this risk is subject to
the Assured advising Underwriters of any change in
the information given to Underwriters at inception
at which time the coverage afforded and the premium
charged shall be subject to review by Underwriters.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:   November 10, 1981                    ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                              BY _Donald J. Kruttk_

ENDORSEMENT

Attached to and forming part of Policy / Certificate No.   SL 3887

in the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is   October 1, 1981        Endorsement No.   2

It is hereby understood and agreed effective inception that the Named Insured
is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop
Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of ROMAN CATHOLIC
DIOCESE OF ROCKVILLE CENTRE, and all legal entities therein over which the same
central authority appoints or controls the appointment of the board of trustees
or similar body and exercises direct, complete and active control over the
finances, properties, operations and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: November 10, 1981                ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                        BY: Donald J. Krutek

ENDORSEMENT

Attached to and forming part of Policy / Certificate No. SL 3887

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is Oct.,1,1981   Endorsement No.   1

### ERRORS AND OMISSIONS

It is hereby understood and agreed that insofar as Errors and Omissions coverage is afforded to the Assured in the Primary and Underlying Excess Insurers policy/ies this Policy is extended to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER AGREED:

(1)     There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to  October 1, 1976 (hereinafter referred to as the "Retroactive Date").

(2)     In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemetaries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:   November 10, 1981          ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                    BY  _Ronald J. Krutek_

ENDORSEMENT

Attached to and forming part of Policy / Certificate No.   SLC 5894

in the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is  October 1, 1981        Endorsement No.  A

It is hereby understood and agreed effective inception that the Named Insured
is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop
Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of ROMAN CATHOLIC
DIOCESE OF ROCKVILLE CENTRE, and all legal entities therein over which the same
central authority appoints or controls the appointment of the board of trustees
or similar body and exercises direct, complete and active control over the
finances, properties, operations and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  November 10, 1981                 ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                          BY: *Donald J. Kretek*

## EXCESS BROADFORM LIABILITY

### INSURING AGREEMENTS

1.  **COVERAGE**

    In consideration of the payment of the premium stated herein and
    subject to the limitations, definitions, terms and conditions
    hereinafter mentioned, Underwriters hereby agree with the Assured
    named in the Declarations made a part hereof to indemnify the Assured
    for all sums which the Assured shall be legally obligated to pay by
    reason of the liability caused by or arising out of only such hazards
    covered by and as more fully defined in the policy/ies of the "Primary
    and Underlying Excess Insurers" and issued by the Primary and Under-
    lying Excess Insurers stated in Item 4 of the Declarations occurring
    during the period of this policy.

2.  **LIMITS OF LIABILITY**

    Provided always that:

    (a)  Liability attaches to the Underwriters only after the Primary
         and Underlying Excess Insurers have paid or have been held
         liable to pay the full amount of their respective ultimate net
         loss liability as set forth in Item 5 of the Declarations and
         designated "Primary and Underlying Excess Limit(s)" and then
         the limits of the Underwriters' liability shall be those set
         forth in Item 6 of the Declarations under the designation
         "Excess Limit(s)" and the Underwriters shall be liable to pay
         the ultimate net loss the Excess of the Limit(s) under the
         policy/ies of the Primary and Underlying Excess Insurers as
         set forth in Item 5 of the Declarations up to the full amount
         of such Excess Limits(s).

    (b)  Liability for any one or any combination of the hazards insured
         hereunder as provided for in the Primary and Underlying Excess
         Insurers policy/ies is subject separately to the limit "each
         occurrence" as stated in the Declarations, but this limit shall
         not be exceeded in any one policy year with regard to any hazard(s)
         insured with an aggregate limit under the policy/ies of the
         Primary and Underlying Excess Insurers.

    (c)  For the purpose of determining the limit of the Underwriters'
         liability, all Personal Injury and Property Damage arising out
         of either

         (i) an accident or series of accidents arising out of one event, or

         (ii) a continuous or repeated exposure to substantially the same
              general conditions,

         shall be considered as arising out of one occurrence.

**Page 1 of 5**

(d)    The inclusion of more than one entity as the named Assured, or the
       inclusion of any additional Assureds under this Policy, shall not
       in any way operate to increase the Underwriters' limits of liability
       beyond those provided in Item 6 of the Declarations.

## DEFINITIONS

**3. (a)    Occurrence**

The word "occurrence" means an accident, including injurious
exposure to conditions, which results during the Policy year in
Personal Injury or Property Damage neither expected nor intended
from the standpoint of the Assured.

(b)    **Ultimate Net Loss**

The words "ultimate net loss" shall be understood to mean the amount
payable in settlement of the liability of the Assured after making
deductions for all recoveries and for other valid and collectible
insurances, excepting however the policy/ies of the Primary and
Underlying Excess Insurers, and shall include all expenses and costs.

(c)    **Policy Year**

The words "policy year" shall be understood to mean a period of one
calendar year commencing each year on the day and hour first named in
the Declarations.

## CONDITIONS

**4. (a)    Application of Recoveries**

All recoveries, salvages or payments recovered or received subsequent
to a loss settlement under this Insurance shall be applied as if
recovered or received prior to such settlement and all necessary
adjustments shall then be made between the Assured and the Underwriters,
provided always that nothing in this Insurance shall be construed to
mean that losses under this Insurance are not payable until the
Assured's ultimate net loss has been finally ascertained.

(b)    **Attachment of Liability**

Liability to pay under this Policy shall not attach unless and until
the Primary and Underlying Excess Insurers shall have admitted liability
for the Primary and Underlying Excess Limit(s) or unless and until the
Assured has by final judgment been adjudged to pay an amount which
exceeds such Primary and Underlying Excess Limits(s) and then only
after the Primary and Underlying Excess Insurers have paid or have
been held liable to pay the full amount of the Primary and Underlying
Excess Limit(s).

**Page 2 of 5**

**(c)**   <u>Maintenance of Primary Insurance</u>

It is a condition of this Policy that the policy/ies of the Primary and Underlying Excess Insurers shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of occurrences during the policy year.

In respect of the hazards covered by the Primary and Underlying Excess Insurers this Policy is subject to the same warranties, terms, definitions, conditions and exclusions (except as regards the premium, the obligation to investigate and defend, the renewal agreement (if any), the amount and limits of liability other than the deductible or self-insurance provision where applicable, (AND EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy/ies of the Primary Insurers prior to the happening of an occurrence for which claim is made hereunder and should any alteration be made in the premium for the policy/ies of the Primary Insurers during the currency of this Policy, then the premium hereon shall be adjusted accordingly.

**(d)**   <u>Subrogation</u>

Inasmuch as this Policy is "excess coverage" the Assured's right of recovery against any person or other entity cannot be exclusively subrogated to the Underwriters. It is, therefore, understood and agreed that in case of any payment hereunder, the Underwriters will act in concert with all other interests (including the Assured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Assured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Underwriters are then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Assured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Assured) concerned, in the ratio of their respective recoveries as finally settled.

**(e)**   <u>Commutation Clause</u> – (to apply to Workmen's Compensation and/or Employers Liability or Occupational Disease and then only when these perils are covered by the Primary Insurers)

**Page 3 of 5**

Not later than twenty-four months from the expiry date of this policy, the Assured shall advise the Underwriters of all claims not finally settled which are likely to result in claims under this Policy.  The Underwriters may then or at any time thereafter intimate to the Assured their desire to be released from liability in respect of any one or more of such claims.  In such event, the Assured and the Underwriters shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalise such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims shall constitute a complete and final release of Underwriters, provided however that such payment shall not constitute a full and final release of Underwriters' liability if subsequent to such payment any supplemental award is made increasing the claim(s); said additional claim(s) may then be recommuted at Underwriter's option and Underwriters may discharge any additional liability by another payment.

(f)   <u>Cancellation</u>

This Policy may be cancelled at any time at the written request of the Assured or may be cancelled by or on behalf of the Underwriters provided thirty (30)  days notice in writing be given.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the earned premium hereon for the period that this Policy has been in force or the short rate proportion of the Minimum Premium, calculated in accordance with the customary scale, whichever is the greater.

If this Policy shall be cancelled by the Underwriters they shall retain the earned premium hereon for the period that this Policy has been in force or pro-rata of the Minimum Premium, whichever is the greater.  Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium.

If the period of limitation relating to the giving of such notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(g)   <u>Notification of Claims</u>

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Declarations.  Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above person(s) or firm of any such occurrence.

(h)   <u>Fraudulent Claims</u>

If the Assured shall make any claim knowing the same to be fake or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

## DECLARATIONS

1.  **NAMED ASSURED:**  The Diocese of Rockville Centre as more fully set forth
    in endorsement No. 2 attached.

2.  **ADDRESS OF ASSURED:**  50 North Park Avenue,
    Rockville Centre,
    New York 11570

3.  **PERIOD:**  October 1, 1981 to October 1, 1984 (both days at 12:01 a.m.
    Local Standard Time)

4.  a)  **PRIMARY INSURERS:**   (i)  Certain Underwriters at Lloyds, London and
    various Insurance Companies
    (ii)  Firemans Fund Insurance Company

    b)  **UNDERLYING EXCESS INSURERS:**   (i) Interstate Fire and Casualty Company

5.  **PRIMARY AND UNDERLYING EXCESS LIMIT(S):**   $5,000,000

6.  **EXCESS LIMIT(S):**   $5,000,000

7.  **NOTIFICATION OF CLAIMS TO:**  Gallagher Bassett of New York, Inc.
    100 Ring Road West, Garden City,
    New York, 11530

8.  **IDENTIFICATION DETAILS AND LIMIT(S)**
    **CARRIED UNDER ITEM 4 ABOVE:**

| | POLICY NO(S) | LIMIT(S) |
|---|---|---|
| 4(a)(i) | SL 3574 / SLC 5630 | $100,000 any one occurrence Combined Single Limit Excess of $100,000 Combined Single Limit Self-Insured Retention. |
| (ii) | XLX-1437075 | $50,000 any one occurrence Workers' Compensation Act Liability Excess of $100,000 any one occurrence Self-Insured Retention. |
| (b)(i) | 183-152-625 | Difference between (a)(i) and (ii) above and $5,000,000 any one occurrence. |

Page 5 of 5

# LLOYD'S COVER NOTE

*Name of Assured*

```
Roman Catholic Diocese of Rockville Centre, etal
(see Endorsement #2)
50 North Park Avenue
Rockville Centre, New York  11570
```

In the event of claim under this Cover Note, please notify:



# ARTHUR J. GALLAGHER & CO. (ILLINOIS)

10 Gould Center, Rolling Meadows, Illinois 60008 • 312/640-8500

Broker

### This insurance effected with certain
# UNDERWRITERS AT LLOYD'S, LONDON
### (not incorporated)

**IMPORTANT**   THIS COVER NOTE CANNOT BE CANCELLED FLAT. EARNED PREMIUM MUST BE PAID FOR THE TIME INSURANCE HAS BEEN IN FORCE. THE ASSURED IS REQUESTED TO READ THIS COVER NOTE, AND IF INCORRECT, RETURN IT IMMEDIATELY FOR ALTERATION.

Eason Printing Co., Chicago
Form CN-1

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

| ITEM | | |
|---|---|---|
| | DATE ISSUED | PREVIOUS NO. |

NUMBER **S L    3887**

| ITEM | | |
|---|---|---|
| **1** | *Name of Assured*<br><br>Roman Catholic Diocese of Rockville Centre, etal<br>(see Endorsement #2)<br>50 North Park Avenue<br>Rockville Centre, New York  11570 | • • • • • • • • |
| **2** | EFFECTIVE FROM  ☒ 12:01 A.M.   ☐ 12:00 NOON   BOTH DAYS AT STANDARD TIME   October 1, 1981   TO   October 1, 1984 | |

| **3** | Acting upon your instruction, we have effected the insurance with: ➤ | NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|---|---|
| | | UNDERWRITERS AT LLOYD'S, LONDON | 81.11% |

| **4** | AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|---|
| | Hereon: 81.11% Part of 100% of:<br><br>$5,000,000  any one occurrence<br><br>EXCESS:<br><br>$5,000,000  any one occurrence | <br><br><br><br>EXCESS BROADFORM<br>LIABILITY INCLUDING<br>WORKERS COMPENSATION<br>ACT. | Annual:<br>Hereon: | $20,000.00<br>$16,222.00 |
| | AUDIT | | TOTAL CHARGED | |

| **5** | SPECIAL CONDITIONS<br>As per attached forms and endorsements. |
|---|---|

| **6** | Service of Suit Clause -<br>Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, Illinois 60603<br>or Mendes & Mount, 3 Park Avenue, New York, New York 10016 |
|---|---|

In witness whereof this covernote has been signed at ...Rolling Meadows, Illinois......... this ..10th.... day of ..November....

**ARTHUR J. GALLAGHER & CO. (ILLINOIS)**

By *Donald J. Krutik*

Eason Printing Co. Chicago

ENDORSEMENT

Attached to and forming part of Policy / Certificate No.   SL 3887

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1981   Endorsement No.   3

It is hereby understood and agreed that 45 days
prior to each anniversary this risk is subject to
the Assured advising Underwriters of any change in
the information given to Underwriters at inception
at which time the coverage afforded and the premium
charged shall be subject to review by Underwriters.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:   November 10, 1981                    ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                             BY

ENDORSEMENT

Attached to and forming part of Policy / Certificate No.   SL 3887

in the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is   October 1, 1981        Endorsement No.   2

It is hereby understood and agreed effective inception that the Named Insured
is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop
Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of ROMAN CATHOLIC
DIOCESE OF ROCKVILLE CENTRE, and all legal entities therein over which the same
central authority appoints or controls the appointment of the board of trustees
or similar body and exercises direct, complete and active control over the
finances, properties, operations and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: November 10, 1981                    ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                            BY: _Donald J. Krutik_

ENDORSEMENT

Attached to and forming part of Policy / Certificate No. SL 3887

in the name of   Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is Oct.,1,1981   Endorsement No.   1

<u>ERRORS AND OMISSIONS</u>

It is hereby understood and agreed that insofar as Errors and Omissions coverage is afforded to the Assured in the Primary and Underlying Excess Insurers policy/ies this Policy is extended to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER AGREED:

(1)     There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to  October 1, 1976 (hereinafter referred to as the "Retroactive Date").

(2)     In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemetaries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:   November 10, 1981            ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                      BY

## EXCESS BROADFORM LIABILITY

### INSURING AGREEMENTS

**1.    COVERAGE**

In consideration of the payment of the premium stated herein and
subject to the limitations, definitions, terms and conditions
hereinafter mentioned, Underwriters hereby agree with the Assured
named in the Declarations made a part hereof to indemnify the Assured
for all sums which the Assured shall be legally obligated to pay by
reason of the liability caused by or arising out of only such hazards
covered by and as more fully defined in the policy/ies of the "Primary
and Underlying Excess Insurers" and issued by the Primary and Under-
lying Excess Insurers stated in Item 4 of the Declarations occurring
during the period of this policy.

**2.    LIMITS OF LIABILITY**

Provided always that:

(a)    Liability attaches to the Underwriters only after the Primary
       and Underlying Excess Insurers have paid or have been held
       liable to pay the full amount of their respective ultimate net
       loss liability as set forth in Item 5 of the Declarations and
       designated "Primary and Underlying Excess Limit(s)" and then
       the limits of the Underwriters' liability shall be those set
       forth in Item 6 of the Declarations under the designation
       "Excess Limit(s)" and the Underwriters shall be liable to pay
       the ultimate net loss the Excess of the Limit(s) under the
       policy/ies of the Primary and Underlying Excess Insurers as
       set forth in Item 5 of the Declarations up to the full amount
       of such Excess Limits(s).

(b)    Liability for any one or any combination of the hazards insured
       hereunder as provided for in the Primary and Underlying Excess
       Insurers policy/ies is subject separately to the limit "each
       occurrence" as stated in the Declarations, but this limit shall
       not be exceeded in any one policy year with regard to any hazard(s)
       insured with an aggregate limit under the policy/ies of the
       Primary and Underlying Excess Insurers.

(c)    For the purpose of determining the limit of the Underwriters'
       liability, all Personal Injury and Property Damage arising out
       of either

       (i) an accident or series of accidents arising out of one event, or

       (ii) a continuous or repeated exposure to substantially the same
            general conditions,

       shall be considered as arising out of one occurrence.

**Page 1 of 5**

(d)   The Inclusion of more than one entity as the named Assured, or the
      inclusion of any additional Assureds under this Policy, shall not
      in any way operate to increase the Underwriters' limits of liability
      beyond those provided in Item 6 of the Declarations.

## DEFINITIONS

3. (a)   Occurrence

The word "occurrence" means an accident, including injurious
exposure to conditions, which results during the Policy year in
Personal Injury or Property Damage neither expected nor intended
from the standpoint of the Assured.

(b)   Ultimate Net Loss

The words "ultimate net loss" shall be understood to mean the amount
payable in settlement of the liability of the Assured after making
deductions for all recoveries and for other valid and collectible
insurances, excepting however the policy/ies of the Primary and
Underlying Excess Insurers, and shall include all expenses and costs.

(c)   Policy Year

The words "policy year" shall be understood to mean a period of one
calendar year commencing each year on the day and hour first named in
the Declarations.

## CONDITIONS

4. (a)   Application of Recoveries

All recoveries, salvages or payments recovered or received subsequent
to a loss settlement under this insurance shall be applied as if
recovered or received prior to such settlement and all necessary
adjustments shall then be made between the Assured and the Underwriters,
provided always that nothing in this insurance shall be construed to
mean that losses under this insurance are not payable until the
Assured's ultimate net loss has been finally ascertained.

(b)   Attachment of Liability

Liability to pay under this Policy shall not attach unless and until
the Primary and Underlying Excess Insurers shall have admitted liability
for the Primary and Underlying Excess Limit(s) or unless and until the
Assured has by final judgment been adjudged to pay an amount which
exceeds such Primary and Underlying Excess Limits(s) and then only
after the Primary and Underlying Excess Insurers have paid or have
been held liable to pay the full amount of the Primary and Underlying
Excess Limit(s).

**Page 2 of 5**

**(c)**   <u>Maintenance of Primary Insurance</u>

It is a condition of this Policy that the policy/ies of the Primary and Underlying Excess Insurers shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of occurrences during the policy year.

In respect of the hazards covered by the Primary and Underlying Excess Insurers this Policy is subject to the same warranties, terms, definitions, conditions and exclusions (except as regards the premium, the obligation to investigate and defend, the renewal agreement (if any), the amount and limits of liability other than the deductible or self-insurance provision where applicable,(AND EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy/ies of the Primary Insurers prior to the happening of an occurrence for which claim is made hereunder and should any alteration be made in the premium for the policy/ies of the Primary Insurers during the currency of this Policy, then the premium hereon shall be adjusted accordingly.

**(d)**   <u>Subrogation</u>

Inasmuch as this Policy is "excess coverage" the Assured's right of recovery against any person or other entity cannot be exclusively subrogated to the Underwriters. It is, therefore, understood and agreed that in case of any payment hereunder, the Underwriters will act in concert with all other interests (including the Assured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Assured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Underwriters are then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Assured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Assured) concerned, in the ratio of their respective recoveries as finally settled.

**(e)**   <u>Commutation Clause</u> – (to apply to Workmen's Compensation and/or
                                    Employers Liability or Occupational Disease
                                    and then only when these perils are covered
                                    by the Primary Insurers)

**Page 3 of 5**

Not later than twenty-four months from the expiry date of this policy, the Assured shall advise the Underwriters of all claims not finally settled which are likely to result in claims under this Policy. The Underwriters may then or at any time thereafter intimate to the Assured their desire to be released from liability in respect of any one or more of such claims. In such event, the Assured and the Underwriters shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalise such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims shall constitute a complete and final release of Underwriters, provided however that such payment shall not constitute a full and final release of Underwriters' liability if subsequent to such payment any supplemental award is made increasing the claim(s); said additional claim(s) may then be recommuted at Underwriter's option and Underwriters may discharge any additional liability by another payment.

**(f)   Cancellation**

This Policy may be cancelled at any time at the written request of the Assured or may be cancelled by or on behalf of the Underwriters provided thirty (30) days notice in writing be given.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the earned premium hereon for the period that this Policy has been in force or the short rate proportion of the Minimum Premium, calculated in accordance with the customary scale, whichever is the greater.

If this Policy shall be cancelled by the Underwriters they shall retain the earned premium hereon for the period that this Policy has been in force or pro-rata of the Minimum Premium, whichever is the greater. Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium.

If the period of limitation relating to the giving of such notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

**(g)   Notification of Claims**

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Declarations. Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above person(s) or firm of any such occurrence.

**(h)   Fraudulent Claims**

If the Assured shall make any claim knowing the same to be fake or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**Page 4 of 5**

## DECLARATIONS

1. <u>NAMED ASSURED:</u>   The Diocese of Rockville Centre as more fully set forth
in endorsement No. 2 attached.

2. <u>ADDRESS OF ASSURED:</u>   50 North Park Avenue,
Rockville Centre,
New York 11570

3. <u>PERIOD:</u>   October 1, 1981 to October 1, 1984 (both days at 12:01 a.m.
Local Standard Time)

4. a)   <u>PRIMARY INSURERS:</u>   (i)   Certain Underwriters at Lloyds, London and
various Insurance Companies
(ii)   Firemans Fund Insurance Company

    b)   <u>UNDERLYING EXCESS INSURERS:</u>   (i) Interstate Fire and Casualty Company

5. <u>PRIMARY AND UNDERLYING EXCESS LIMIT(S):</u>   $5,000,000

6. <u>EXCESS LIMIT(S):</u>   $5,000,000

7. <u>NOTIFICATION OF CLAIMS TO:</u>   Gallagher Bassett of New York, Inc.
100 Ring Road West, Garden City,
New York, 11530

8. <u>IDENTIFICATION DETAILS AND LIMIT(S)</u>

    <u>CARRIED UNDER ITEM 4 ABOVE:</u>

| | POLICY NO(S) | LIMIT(S) |
|---|---|---|
| 4(a)(i) | SL 3574 / SLC 5630 | $100,000 any one occurrence Combined Single Limit Excess of $100,000 Combined Single Limit Self-Insured Retention. |
| (ii) | XLX-1437075 | $50,000 any one occurrence Workers' Compensation Act Liability Excess of $100,000 any one occurrence Self-Insured Retention. |
| (b)(i) | 183-152-625 | Difference between (a)(i) and (ii) above and $5,000,000 any one occurrence. |

Page 5 of 5

## COMPANY(S) COVER NOTE

*Name of Assured*

Roman Catholic Diocese of Rockville Centre, etal
(see endorsement #A)
50 North Park Avenue
Rockville Centre, New York 11570

In the event of claim under this Cover Note, please notify:



# ARTHUR J. GALLAGHER & CO. (ILLINOIS)

10 Gould Center, Rolling Meadows, Illinois 60008 • 312/640-8500

Insurer's Representative

This insurance effected with
Insurance Company(s) as noted herein.

**IMPORTANT** THIS COVER NOTE CANNOT BE CANCELLED FLAT. EARNED PREMIUM MUST BE PAID FOR THE TIME INSURANCE HAS BEEN IN FORCE. THE ASSURED IS REQUESTED TO READ THIS COVER NOTE, AND IF INCORRECT, RETURN IT IMMEDIATELY FOR ALTERATION.

Eason Printing Co., Chicago
Form SL/COS/CN

If an original policy is issued replacing this cover note, this insurance is subject to all the terms and conditions of that policy. This cover note shall be automatically terminated and voided by delivery of the original policy to the Assured.

## COVER NOTE PROVISIONS

1. If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this cover note shall become void, and all claims thereunder shall be forfeited.

2. This cover note may be cancelled on the customary short rate basis by the Assured at any time by written notice or by the surrender of this cover note to the said Insurer's Representative. This cover note may also be cancelled, with or without the return or tender of the unearned premium, by the Insurer's Representative, in their behalf, by delivering to the Assured, or by sending to the Assured by mail, registered or unregistered, at the Assured's address as shown herein, not less than five days' written notice, stating when the cancellation shall be effective, and in such case the Insurers shall refund the paid premium less the earned portion thereof on demand, subject always to the retention by the Insurers hereon of any minimum premium stipulated herein (or proportion thereof previously agreed upon) in the event of cancellation either by the Insurers or the Assured.

3. **Service of Suit Clause**—It is agreed that in the event of the failure of the Insurers to pay any amount claimed to be due hereunder, the Insurers, at the request of the insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

    It is further agreed that service of process in such suit may be made upon

        Lord, Bissell & Brook, 115 South La Salle Street, Chicago, Illinois 60603, or Mendes & Mount, 3 Park Avenue, New York, New York 10016, or their nominee, and

    that in any suit instituted against any of them upon this contract, the Insurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

    The above-named are authorized and directed to accept service of process on behalf of the Insurers in any such suit and/or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that they will enter a general appearance upon the Insurer's behalf in the event such a suit shall be instituted.

    Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Insurers hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

4. It is expressly understood and agreed by the Assured by accepting this instrument that the said Insurer's Representative, is not an Assurer hereunder and that the said Insurer's Representative, neither is nor shall be in any way or to any extent liable for any loss or claim whatever, but that the Insurers hereunder are those as shown elsewhere in this cover note.

5. The Assured shall immediately report to the said Insurer's Representative, an occurrence likely to result in a claim under this cover note, and shall also file with the said Insurer's Representative, detailed sworn proof of interest and loss within sixty days from the date of loss. Failure by the Assured either to report the said loss or damage or to file such written proof of loss as above provided, shall invalidate any claim under this cover note.

6. All adjusted claims shall be paid or made good to the Assured within thirty days after presentation and acceptance of satisfactory proofs of interest and loss at the office of the said Insurer's Representative.

7. Loss, if any, to be payable in Chicago, Illinois, in United States Currency.

8. This cover note does not cover loss or damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

9. **TAX CLAUSE**—Notice is hereby given that the Insurers have agreed to allow for the purpose of paying the Federal Excise Tax 4% (1% personal accident or reinsurance) of the premium payable hereon to the extent such premium is subject to Federal Excise Tax. It is understood and agreed that in the event of any return of premium becoming due hereunder the Insurers will deduct 4% (1% personal accident or reinsurance) from the amount of the return and the Assured or his agent should take steps to recover the Tax from the U.S. Government.

10. This insurance is made and accepted subject to all the provisions, conditions and warranties set forth herein or endorsed hereon or appearing on the reverse side hereof, all of which are to be considered as incorporated herein.

11. Any provision or conditions appearing in any forms attached hereto and made a part hereof, which conflict with or alter the cover note provisions stated above, shall supersede the provisions appearing in this cover note, insofar as the latter are inconsistent with the provisions appearing in such attached forms.

12. This cover note shall not be assigned either in whole or in part, without the written consent of the said Insurer's Representative, endorsed hereon.

13. This cover note shall not be valid unless signed by the said Insurer's Representative.

DATE ISSUED
November 10, 1981
CONTRACT NO.
SLV 03/128

PREVIOUS NO.
SLC 5746

**THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SL/COS/CN)**

| ITEM | | |
|---|---|---|

NUMBER **S L C     5894**

**1**

*Name of Assured*

Roman Catholic Diocese of Rockville Centre, etal
(see endorsement #A)
50 North Park Avenue
Rockville Centre, New York 11570

**2**

EFFECTIVE FROM  ☒ 12:01 A.M.  ☐ 12:00 NOON  BOTH DAYS AT STANDARD TIME

October 1, 1981   TO   October 1, 1984

**3**

Acting upon your instruction, we have effected the insurance with: →

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| Dominion Insurance Co. Ltd | 7.87% |
| CNA Reinsurance of London Ltd. | 7.87% |
| Stronghold Insurance Co. Ltd. | 3.15% |
| | 18.89% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon: 18.89% Part of 100% of: | | Annual: | $20,000.00 |
| | | Hereon: | $ 3,778.00 |

Subject to the same forms, terms, conditions and endorsements as more particularly set forth in Cover Note No. SL 3887

| | |
|---|---|
| Dominion Insurance Co. Ltd. | $ 1,574.00 |
| CNA Reinsurance of London Ltd. | 1,574.00 |
| Stronghold Insurance of Ltd. | 630.00 |
| | $ 3,778.00 |

AUDIT                                        TOTAL CHARGED_____

**5**

SPECIAL CONDITIONS

**6**

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By *Donald J. Krutek*

Eason Printing Co. Chicago

ENDORSEMENT

Attached to and forming part of Policy / Certificate No.   SLC 5894

in the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is  October 1, 1981        Endorsement No.  A

It is hereby understood and agreed effective inception that the Named Insured
is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop
Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of ROMAN CATHOLIC
DIOCESE OF ROCKVILLE CENTRE, and all legal entities therein over which the same
central authority appoints or controls the appointment of the board of trustees
or similar body and exercises direct, complete and active control over the
finances, properties, operations and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  November 10, 1981                ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                         BY: Donald J. Kreutek

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

Policy number(s):    SL 3888
SLC 5895

Inception date:    10/1/1981

Term at issuance:    1 year

Page count:    13

Contents:    Slip- 2 pgs
Excess Broadform Liability form- 5 pgs
Endorsement- 6 pgs

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

| ITEM | | NUMBER **S L   3888** |
|---|---|---|

**1**

*Name of Assured*

Roman Catholic Diocese of Rockville Centre, etal
(see endorsement #2)
50 North Park Avenue
Rockville Centre, New York 11570

**2**

EFFECTIVE FROM ☒ 12:01 A.M. ☐ 12:00 NOON   BOTH DAYS AT STANDARD TIME   October 1, 1981   TO   October 1, 1982

**3**

Acting upon your instruction, we have effected the insurance with:

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| UNDERWRITERS AT LLOYD'S, LONDON | 56.79% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon: 56.79% Part of 100% of: | | Annual: | $40,000.00 |
| $40,000,000  any one occurrence | | Hereon: | $22,716.00 |
| EXCESS OF: | EXCESS BROADFORM LIABILITY INCLUDING WORKERS COMPENSATION ACT | | |
| $10,000,000  any one occurrence | | | |

AUDIT                                                                 TOTAL CHARGED _____

**5**

SPECIAL CONDITIONS

As per attached forms and endorsements.
NMA 772
NMA 1477
NMA 1256

**6**

Service of Suit Clause -
Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, Illinois 60603
or Mendes & Mount, 3 Park Avenue, New York, New York 10016

In witness whereof this covernote has been signed at ..... Rolling Meadows, Illinois ........ this ..11th... day of ... November ...

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By *Donald J. Krutik*

Eason Printing Co. Chicago

**THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SL/COS/CN)**

| ITEM | | NUMBER **S L C   5895** |
|---|---|---|

**1**

*Name of Assured*

Roman Catholic Diocese of Rockville Centre, etal
(see endorsement #A)
50 North Park Avenue
Rockville Centre, New York 11570

**2**

EFFECTIVE FROM  ☒ 12:01 A.M.  ☐ 12:00 NOON   BOTH DAYS AT STANDARD TIME   October 1, 1981   TO   October 1, 1982

**3**

Acting upon your instruction, we have effected the insurance with:

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| See endorsement #B | 43.21% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon: 43.21% Part of 100% of: | | Annual: | $40,000.00 |
| | | Hereon: | $17,284.00 |

Subject to the same forms, terms, conditions and endorsements as more particularly set forth in Cover Note No. SL 3888

(see endorsement #B)

AUDIT                                                                    TOTAL CHARGED_____

**5**

SPECIAL CONDITIONS

**6**

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By *Donald J. Krutek*

Eason Printing Co. Chicago

## EXCESS BROADFORM LIABILITY

### INSURING AGREEMENTS

1. **COVERAGE**

   In consideration of the payment of the premium stated herein and subject to the limitations, definitions, terms and conditions hereinafter mentioned, Underwriters hereby agree with the Assured named in the Declarations made a part hereof to indemnify the Assured for all sums which the Assured shall be legally obligated to pay by reason of the liability caused by or arising out of only such hazards covered by and as more fully defined in the policy/ies of the "Primary and Underlying Excess Insurers" and issued by the Primary and Underlying Excess Insurers stated in Item 4 of the Declarations occurring during the period of this policy.

2. **LIMITS OF LIABILITY**

   Provided always that:

   (a)  Liability attaches to the Underwriters only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as set forth in Item 5 of the Declarations and designated "Primary and Underlying Excess Limit(s)" and then the limits of the Underwriters' liability shall be those set forth in Item 6 of the Declarations under the designation "Excess Limit(s)" and the Underwriters shall be liable to pay the ultimate net loss the Excess of the Limit(s) under the policy/ies of the Primary and Underlying Excess Insurers as set forth in Item 5 of the Declarations up to the full amount of such Excess Limits(s).

   (b)  Liability for any one or any combination of the hazards insured hereunder as provided for in the Primary and Underlying Excess Insurers policy/ies is subject separately to the limit "each occurrence" as stated in the Declarations, but this limit shall not be exceeded in any one policy year with regard to any hazard(s) insured with an aggregate limit under the policy/ies of the Primary and Underlying Excess Insurers.

   (c)  For the purpose of determining the limit of the Underwriters' liability, all Personal Injury and Property Damage arising out of either

   (i)  an accident or series of accidents arising out of one event, or

   (ii)  a continuous or repeated exposure to substantially the same general conditions,

   shall be considered as arising out of one occurrence.

**Page 1 of 5**

(d)   The inclusion of more than one entity as the named Assured, or the
inclusion of any additional Assureds under this Policy, shall not
in any way operate to increase the Underwriters' limits of liability
beyond those provided in Item 6 of the Declarations.

## DEFINITIONS

**3. (a)   Occurrence**

The word "occurrence" means an accident, including injurious
exposure to conditions, which results during the Policy year in
Personal Injury or Property Damage neither expected nor intended
from the standpoint of the Assured.

**(b)   Ultimate Net Loss**

The words "ultimate net loss" shall be understood to mean the amount
payable in settlement of the liability of the Assured after making
deductions for all recoveries and for other valid and collectible
insurances, excepting however the policy/ies of the Primary and
Underlying Excess Insurers, and shall include all expenses and costs.

**(c)   Policy Year**

The words "policy year" shall be understood to mean a period of one
calendar year commencing each year on the day and hour first named in
the Declarations.

## CONDITIONS

**4. (a)   Application of Recoveries**

All recoveries, salvages or payments recovered or received subsequent
to a loss settlement under this Insurance shall be applied as if
recovered or received prior to such settlement and all necessary
adjustments shall then be made between the Assured and the Underwriters,
provided always that nothing in this Insurance shall be construed to
mean that losses under this Insurance are not payable until the
Assured's ultimate net loss has been finally ascertained.

**(b)   Attachment of Liability**

Liability to pay under this Policy shall not attach unless and until
the Primary and Underlying Excess Insurers shall have admitted liability
for the Primary and Underlying Excess Limit(s) or unless and until the
Assured has by final judgment been adjudged to pay an amount which
exceeds such Primary and Underlying Excess Limits(s) and then only
after the Primary and Underlying Excess Insurers have paid or have
been held liable to pay the full amount of the Primary and Underlying
Excess Limit(s).

**Page 2 of 5**

**(c)**   <u>Maintenance of Primary Insurance</u>

It is a condition of this Policy that the policy/ies of the Primary and Underlying Excess Insurers shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of occurrences during the policy year.

In respect of the hazards covered by the Primary and Underlying Excess Insurers this Policy is subject to the same warranties, terms, definitions, conditions and exclusions (except as regards the premium, the obligation to investigate and defend, the renewal agreement (if any), the amount and limits of liability other than the deductible or self-insurance provision where applicable,(AND EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy/ies of the Primary Insurers prior to the happening of an occurrence for which claim is made hereunder and should any alteration be made in the premium for the policy/ies of the Primary Insurers during the currency of this Policy, then the premium hereon shall be adjusted accordingly.

**(d)**   <u>Subrogation</u>

Inasmuch as this Policy is "excess coverage" the Assured's right of recovery against any person or other entity cannot be exclusively subrogated to the Underwriters. It is, therefore, understood and agreed that in case of any payment hereunder, the Underwriters will act in concert with all other Interests (including the Assured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any Interests (including the Assured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Underwriters are then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the Interests (including the Assured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the Interests (including the Assured) concerned, in the ratio of their respective recoveries as finally settled.

**(e)**   <u>Commutation Clause</u> – (to apply to Workmen's Compensation and/or Employers Liability or Occupational Disease and then only when these perils are covered by the Primary Insurers)

Not later than twenty-four months from the expiry date of this policy, the Assured shall advise the Underwriters of all claims not finally settled which are likely to result in claims under this Policy. The Underwriters may then or at any time thereafter intimate to the Assured their desire to be released from liability in respect of any one or more of such claims. In such event, the Assured and the Underwriters shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalise such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims shall constitute a complete and final release of Under-writers, provided however that such payment shall not constitute a full and final release of Underwriters' liability if subsequent to such payment any supplemental award is made increasing the claim(s); said additional claim(s) may then be recommuted at Underwriter's option and Underwriters may discharge any additional liability by another payment.

(f)    Cancellation

This Policy may be cancelled at any time at the written request of the Assured or may be cancelled by or on behalf of the Underwriters provided thirty (30)    days notice in writing be given.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the earned premium hereon for the period that this Policy has been in force or the short rate proportion of the Minimum Premium, calculated in accordance with the customary scale, whichever is the greater.

If this Policy shall be cancelled by the Underwriters they shall retain the earned premium hereon for the period that this Policy has been in force or pro-rata of the Minimum Premium, whichever is the greater. Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium.

If the period of limitation relating to the giving of such notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(g)    Notification of Claims

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Declarations. Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above person(s) or firm of any such occurrence.

(h)    Fraudulent Claims

If the Assured shall make any claim knowing the same to be fake or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

## DECLARATIONS

1.  __NAMED ASSURED:__   The Diocese of Rockville Centre, as more fully set forth in Endorsement No. 2 attached.

2.  __ADDRESS OF ASSURED:__ 50 North Park Avenue, Rockville Centre, New York 11570.

3.  __PERIOD:__   October 1, 1981 to October 1, 1982 both days at 12:01 a.m. Local Standard Time.

4. (a)__PRIMARY INSURERS:__   (i)   Certain Underwriters at Lloyd s London and various Insurance Companies.

    (ii)   Firemans Fund Insurance Company

   (b)__UNDERLYING EXCESS INSURERS:__   (i)   Interstate Fire & Casualty Company.

    (ii)   Certain Underwriters at Lloyd's London and various Insurance companies.

5.  __PRIMARY AND UNDERLYING EXCESS LIMIT(S)__   :   $10,000,000

6.  __EXCESS LIMIT(S):__   $40,000,000

7.  __NOTIFICATION OF CLAIMS TO:__   Gallagher Bassett of New York, Inc. 100 Ring Road West, Garden City New York 11530

8.  __IDENTIFICATION DETAILS AND LIMITS CARRIED UNDER ITEM 4 ABOVE:__

| POLICY NO(S) | LIMIT(S) |
|---|---|
| 4(a) (i) SL 3574 / SLC 5630 | $100,000 any one occurrence Combined Single Limit EXCESS OF $ 100,000 Combined Single Limit Self-Insured Retention. |
| (ii) XLX-1437075 | $ 50,000 any one occurrence Workers' Compensation Act Liability EXCESS OF $100,000 any one occurrence Self-Insured Retention. |
| 4(b) (i) 183-152-625 | Difference between (a) (i) & (ii) above and $5,000,000 any one occurrence Combined Single Limit. |
| (ii) SL 3887 / SLC 5894 | $5,000,000 any one occurrence Combined Single Limit EXCESS OF 4(a)* and 4(b) (i) above. |

*(i) & (ii)

Page 5 of 5

ENDORSEMENT

Attached to and forming part of Policy / Certificate No. SLC 5895

in the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is  October 1, 1981          Endorsement No.  A

It is hereby understood and agreed effective inception that the Named Insured
is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop
Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of ROMAN CATHOLIC
DIOCESE OF ROCKVILLE CENTRE, and all legal entities therein over which the same
central authority appoints or controls the appointment of the board of trustees
or similar body and exercises direct, complete and active control over the
finances, properties, operations and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  November 10, 1981                ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                         BY:  Donald J. Krutek

ENDORSEMENT

Attached to and forming part of Policy / Certificate No. SLC 5895

in the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is October 1, 1981         Endorsement No. B


It is hereby understood and agreed the underwriters subscribing to this policy are:

| | | | |
|---|---|---|---|
| Sovereign | 12½%) | | $   284.25 |
| Tokio (U.K.) | 37½%) | | 852.75 |
| Taisho (U.K.) | 25 %) Part of 50%) 11.37% part of 100% | | 568.50 |
| Allianz International | 15 %) | | 341.10 |
| Storebrand (U.K.) | 10 %) | | 227.40 |
| Sovereign "C" A/C | 50 %) | | |
| Per Willis Faber (Underwriting Management) Ltd. | | | |
| | | | $ 2,274.00 |
| Sovereign Marine & General Ins. Co. Ltd. | 2.28% part of 100% | | 912.00 |
| Per Willis Faber (Underwriting Management)Ltd. | | | |
| St. Katherine Ins. Co. Ltd. | 6.82% part of 100% | | 2,728.00 |
| Stronghold Ins. Co. Ltd. | 4.55% part of 100% | | 1,820.00 |
| CNA Reinsurance of London Ltd. | 4.55% part of 100% | | 1,820.00 |
| Ancon Ins. Co. (U.K.) Ltd. | 2.27% part of 100% | | 908.00 |
| British National Life Ins. Society Ltd. | 2.73% part of 100% | | 1,092.00 |
| Turegum Ins. Co. | 2.73% part of 100% | | 1,092.00 |
| Dominion Ins. Co. Ltd. | 2.73% part of 100% | | 1,092.00 |
| Yasuda Fire & Marine Ins. Co. (U.K.) Ltd. | 0.91% part of 100% | | 364.00 |
| Compagnie d'Assurances Maritimes et Terrestres | 0.91% part of 100% | | 364.00 |
| Folksam International Ins. Co. (U.K.) Ltd. | 1.36% part of 100% | | 544.00 |
| | 43.21% | | $17,284.00 |


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  November 11, 1981          ARTHUR J. GALLAGHER & CO.(ILLINOIS)

BY: *Donald J. Krutek*

ENDORSEMENT

Attached to and forming part of Policy / Certificate No.   SL 3888

in the name of  Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is Oct.,1,1981   Endorsement No.   1

### ERRORS AND OMISSIONS

It is hereby understood and agreed that insofar as Errors and Omissions coverage is afforded to the Assured in the Primary and Underlying Excess Insurers policy/ies this Policy is extended to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER AGREED:

(1)     There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to October 1, 1976 (hereinafter referred to as the "Retroactive Date").

(2)     In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemetaries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: November 10, 1981              ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                      BY

ENDORSEMENT

Attached to and forming part of Policy / Certificate No.   SL 3888

in the name of Roman Catholic Diocese of Rockville Centre, etal

Effective date of this endorsement is   October 1, 1981        Endorsement No.  2

It is hereby understood and agreed effective inception that the Named Insured
is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop
Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of ROMAN CATHOLIC
DIOCESE OF ROCKVILLE CENTRE, and all legal entities therein over which the same
central authority appoints or controls the appointment of the board of trustees
or similar body and exercises direct, complete and active control over the
finances, properties, operations and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:   November 10, 1981              ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                        BY: Donald J. Krutek

## SERVICE OF SUIT CLAUSE (U.S.A.)

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association.)*

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon

Lord, Bissell & Brook, 115 South LaSalle St., Chicago, IL 60603 or Mendes & Mount, 3 Park Avenue, New York New York 10016

, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

N.M.A. 772

EASON PRINTING COMPANY

**U.S.A.**

### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association).*

*For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause—Liability—Direct) to liability insurances affording worldwide coverage.*

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
N.M.A. 1477

Eason Printing Company

### NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

*For attachment to insurances of the following classifications in the U. S. A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

> *Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),*

*not being insurances of the classifications to which the Nuclear Incident Exclusion Clause —Liability—Direct (Limited) applies.*

**This policy\***

does not apply:—

I.  Under any liability Coverage, to injury, sickness, disease, death or destruction

(a)  with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.  As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material, (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a)  any nuclear reactor,

(b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

\*Note:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17-8-60
N.M.A. 1256

Essex Printing Company

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

Policy number(s):    SL 4063
                             SLC 6043

Inception date:    10/1/1982

Term at issuance:    3 years

Page count:    142

Contents:    Slip- 2 pgs
                         Combined Property, Casualty and Crime- 18 pgs
                         Endorsement- 55 pgs
                         Cover Note- 17 pgs
                         Lloyd's Policy- 50 pgs

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

| | |
|---|---|
| Policy number(s): | SL 4063<br>SLC 5895 |
| Inception date: | 10/1/1982 |
| Term at issuance: | 3 years |
| Page count: | 142 |
| Contents: | Slip- 2 pgs<br>Combined Property, Casualty and Crime- 18 pgs<br>Endorsement- 55 pgs<br>Cover Note- 17 pgs<br>Lloyd's Policy- 50 pgs |

| December 8, | | GHV 051/132 | | SL 3979 |
|---|---|---|---|---|

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

NUMBER **S L 4663**

| | | |
|---|---|---|
| 1 | *Name of Assured*<br><br>Property<br>Policy | Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein Over Which the Same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Exercises Direct, Complete and Active Control Over, The Finances, Properties, Operations and Activities<br>50 North Park Avenue<br>Rockville Centre, New York 11570 |

| 2 | EFFECTIVE ☒ 12:01 A.M. BOTH DAYS AT<br>FROM ☐ 12:00 NOON STANDARD TIME | **October 1, 1982** | TO | Sept<br>~~October 1, 1985~~ |

| 3 | Acting upon your instruction, we have effected the insurance with: | NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|---|---|
| | | UNDERWRITERS AT LLOYD'S, LONDON | 73.616% |

AMOUNT 73.616% Part of 100% of:

| | | COVERAGE | RATE | PREMIUM |
|---|---|---|---|---|
| 4 | $ 400,000 each and every loss and/or occurrence<br>1,000,000 in the aggregate annually in respect of the Assured's retention | Excess All Risks of Physical Loss or Damage, as per forms attached. | | Annual: $595,000.00<br>Hereon: $438,015.20<br>Per End. 07 |

BUT ONLY TO PAY EXCESS OF:
$ 100,000 each and every loss and/or occurrence
$ 2,500,000 in the aggregate annually

AUDIT                                                                                      TOTAL CHARGED

| 5 | SPECIAL CONDITIONS<br><br>As per attached forms and endorsements<br>NMA 1191<br>NMA 1256<br>NMA 772 |

| 6 | Service of Suit Clause<br>Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, IL 60603<br>or Mendes & Mount, 3 Park Avenue, New York, NY 10016 |

In witness whereof this covernote has been signed at...... Rolling Meadows, IL ......this......17......day of......December......

SLC 6043

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By......

Eason Printing Co Chicago

ENDORSEMENT attaching to and forming part of Policy/Certificate No. SL 4063

in the name of    Diocese of Rockville Centre, New York

Effective date of this endorsement is September 1, 1984          Endorsement No. 29

It is hereby agreed that effective September 1, 1984 the Sum Insured is amended to read:

SUM INSURED: $   400,000   each and every loss and/or occurrence
$ 1,000,000   in the aggregate annually in respect of the
Assured's retention

BUT ONLY TO PAY EXCESS OF:

$   100,000   each and every loss and/or occurrence
$ 3,200,000   in the aggregate annually in respect of the
Assured's retention

It is further agreed that this Policy is cancelled effective September 1, 1985.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: March 31, 1986          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Peter J Durbalski_

ENDORSEMENT attaching to and forming part of Policy/Certificate No. SL 4063

in the name of    Diocese of Rockville Centre, New York

Effective date of this endorsement is September 1, 1984                    Endorsement No. 28

It is hereby agreed that effective September 1, 1984 the Sum Insured is amended to read:

SUM INSURED: $    400,000   each and every loss and/or occurrence
$ 1,000,000   in the aggregate annually in respect of the
Assured's retention

BUT ONLY TO PAY EXCESS OF:

$    100,000   each and every loss and/or occurrence
$ 3,200,000   in the aggregate annually in respect of the
Assured's retention

It is further agreed that this Policy is cancelled effective September 1, 1985.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: March 31, 1986        INTERNATIONAL SPECIAL RISK SERVICES, INC.

By  _Peter J Deerberg Lbi_

ENDORSEMENT attaching to and forming part of Policy/Certificate No. SL 4063

In the name of    Roman Catholic Diocese of Rockville Center

Effective date of this endorsement is January 1, 1985          Endorsement No. 27

It is understood and agreed effective January 1, 1985, that coverage is extended to include Volunteer Workers but only in respect of their operations whilst working on behalf of the Assured.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985          INTERNATIONAL SPECIAL RISK SERVICES, INC.

ARTHUR J GALLAGHER & CO (ILLINOIS)

By  _Charles C D. Bruler_

ENDORSEMENT attaching to and forming part of Policy/Certificate No. SL 4063

in the name of    Diocese of Rockville Center

Effective date of this endorsement is October 2, 1984            Endorsement No. 26

It is hereby understood and agreed effective October 2, 1984 that a 1955 "CHRIS CRAFT" 40 ft. Fishing Vessell is added hereon.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:  April 30, 1985            INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                  AS SUCCESSORS TO
                                  ARTHUR J GALLAGHER & CO (ILLINOIS)

                                  By _Charles C De Bourlier_

ENDORSEMENT attaching to and forming part of Policy No. SL 4063

In the name of Diocese of Rockville Center

Effective date of this endorsement is September 1, 1984          Endorsement No. 25

## DATA PROCESSING SYSTEM EQUIPMENT EXTENSION

1.  **PROPERTY COVERED:**  Data processing system including equipment and compo-
    nent parts thereof owned by the Assured or leased, rented or under the control of
    the Assured.

2.  **PROPERTY EXCLUDED:**

    A.   Active data processing media which is hereby defined as meaning all
         forms of converted data and/or program and/or instruction vehicles
         employed in the Assureds data processing operation;

    B.   Accounts, bills, evidences of debt, valuable papers, records, abstracts,
         deeds, manuscripts, or other documents;

    C.   Property rented or leased to others while away from the premises of the
         Assured.

3.  **PERILS INSURED:**  Insures against all risks of direct physical loss or damage to the
    property covered, except as hereinafter provided.

4.  **PERILS EXCLUDED:**   This Extension does not insure against loss, damage, or
    expense caused directly or indirectly by:

    A.   Inherent vice, wear, tear, gradual deterioration, depreciation or vermin;

    B.   Any dishonest, fraudulent or criminal act by an Assured, a partner
         therein or an officer, director or trustee thereof, whether acting alone
         or in collusion with others;

    C.   Dryness or dampness of atmosphere, extremes of temperature, corrosion,
         rust unless directly resulting from physical damage to the data proces-
         sing system's air conditioning facilities caused by a peril not excluded by
         the provisions of this Extension;

    D.   Any interruption in electric power supply by power surge or brown out
         originating more than one hundred (100) feet away from the building
         containing the property covered;

    E.   Delay or loss of market;

B-5001/Sept 83                    **Page 1 of 2**

F.    War risk or nuclear risks as excluded in the Policy to which this Extension is attached.

5.    **VALUATION:**   Replacement Cost – The Underwriters shall not be liable beyond the actual retail replacement cost of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated on the basis of the actual cash retail replacement cost of property similar in kind to that insured at the place of and immediately preceding the time of such loss or damage, but in no event to exceed the limit of liability stipulated in the "Declarations."

6.    **DIFFERENCE IN CONDITIONS:**  It is a condition of this Insurance that the Assured shall file with Arthur J. Gallagher & Co. a copy of any lease or rental agreement pertaining to the property insured hereunder insofar as concerns the lessors' liability for loss or damage to said property, and coverage afforded hereunder shall be only for the difference in conditions between those contained in said lease or rental agreement and the terms of this Extension.   The Assured agrees to give the Underwriters thirty days notice of any alteration, cancellation or termination of the above mentioned lease or rental agreement pertaining to the lessors' liability.

Subject otherwise to all terms, clauses and conditions as heretofore.

Dated:  April 30, 1985                INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                      AS SUCCESSORS TO
                              By    *Charles C. De Cruiler*
                                      ARTHUR J GALLAGHER & CO (ILLINOIS)

B-5001/Sept 83                    **Page 2 of 2**

ENDORSEMENT attaching to and forming part of Policy No. SL 4063

in the name of Diocese of Rockville Center

Effective date of this endorsement is September 1, 1984          Endorsement No. 24

### DATA PROCESSING MEDIA EXTENSION

1.    **PROPERTY INSURED:**  Active data processing media, being property of the Assured or property of others for which the Assured may be liable.

2.    **PROPERTY EXCLUDED:**  This Policy does not insure accounts, bills, evidences of debt, valuable papers, records, abstracts, deeds, manuscripts or other documents except as they may be converted to data processing media form, and then only in that form, or any data processing media which cannot be replaced with other of like kind and quality.

3.    **PERILS INSURED:**  This Extension insures against all risks of direct physical loss or damage to the property covered, except as hereinafter provided.

4.    **PERILS EXCLUDED:**   This Extension does not insure against loss, damage, or expense resulting from or caused directly or indirectly by:

   A.    Any interruption in electric power supply by power surge or brown out originating more than one hundred (100) feet away from the building containing the property insured.

   B.    Dryness or dampness of atmosphere, extremes of temperature, corrosion, rust unless directly resulting from physical damage to the data processing system's air conditioning facilities caused by a peril not excluded by the provisions of this Extension;

   C.    Delay or loss of market;

   D.    Inherent vice, wear, tear, gradual deterioration, depreciation or vermin;

   E.    Any dishonest, fraudulent or criminal act by an Assured, a partner therein or an officer, director or trustee thereof, whether acting alone or in collusion with others;

   F.    War risk or nuclear risks as excluded in the Policy to which this Extension is attached.

5.    **VALUATION:**  The Underwriters shall not be liable beyond the actual reproduction cost of the property; if not replaced or reproduced, blank value of media; all subject to the applicable limit of liability stated in the "Declarations."

6.    **DEFINITIONS:**  The term "active data processing media" wherever used in this policy shall mean all forms of converted data and/or program and/or instruction vehicles employed in the Assured's data processing operation, except all such UNUSED property.

Subject otherwise to all terms, clauses and conditions as heretofore.

Dated:  April 30, 1985

INTERNATIONAL SPECIAL RISK SERVICES, INC.
ARTHUR J GALLAGHER & CO (ILLINOIS)

By  _Charles C. L. Driller_

ENDORSEMENT attaching to and forming part of Policy No. SL 4063

in the name of Diocese of Rockville Center

Effective date of this endorsement is September 1, 1984          Endorsement No. 23

## DATA PROCESSING EXTRA EXPENSE EXTENSION

1. **SUBJECT OF INSURANCE AND PERILS INSURED:** This Extension insures against the necessary Extra Expense, as hereinafter defined, incurred by the Assured in order to continue as nearly as practicable the normal operation of its business, immediately following damage to or destruction of the data processing system including equipment and component parts thereof and data processing media therefor, owned, leased, rented or under the control of the Assured, as a direct result of all risks of physical loss or damage, but in no event to exceed the amount indicated in the "Declarations."

   This Extension includes the actual loss as covered hereunder, sustained during the period of time, hereinafter defined, (1) when as a direct result of a peril insured against the premises in which the property is located is so damaged as to prevent access to such property or (2) when as a direct result of a peril insured against, the air conditioning system or electrical system necessary for the operation of the data processing equipment is so damaged as to reduce or suspend the Assured's ability to actually perform the operations normally performed by the data processing system.

2. **MEASURE OF RECOVERY:** If the above described property is destroyed or so damaged by the perils insured against occurring during the term of this Extension so as to necessitate the incurrence of Extra Expense (as defined in this Extension), Underwriters shall be liable for the Extra Expense so incurred, not exceeding the actual loss sustained, for not exceeding such length of time, hereinafter referred to as the "period of restoration," commencing with the date of damage or destruction and not limited by the date of expiration of this Extension, as shall be required with the exercise of due diligence and dispatch to repair, rebuild, or replace such part of said property as may be destroyed or damaged.

   It is further agreed that this extension in coverage shall not operate to increase the Underwriters limits of liability hereunder.

3. **EXTRA EXPENSE DEFINITION:** The term "Extra Expense" wherever employed in this Extension is defined as the excess (if any) of the total cost during the period of restoration of the operation of the business over and above the total cost of such operation that would normally have been incurred during the same period had no loss occurred; the cost in each case to include expense of using other property or facilities of other concerns or other necessary emergency expenses. In no event, however, shall Underwriters be liable for loss of profits or earnings resulting from diminution of business, nor for any direct or indirect property damage loss insurable under Property Damage policies, or for expenditures incurred in the purchase,

B-5003/June 83                    **Page 1 of 3**

construction, repair or replacement of any physical property unless incurred for the purpose of reducing any loss under this Extension not exceeding, however, the amount in which the loss is so reduced. Any salvage value of property so acquired which may be sold or utilized by the Assured upon resumption of normal operations, shall be taken into consideration in the adjustment of any loss hereunder.

4.   **EXCLUSIONS:**  It is a condition of the insurance that Underwriters shall not be liable for Extra Expense incurred as a result of:

A.   Any local or State ordinance or law regulating construction or repair of buildings,

B.   The suspension, lapse or cancellation of any lease, license, contract or order;

C.   Interference at premises by strikers or other persons with repairing or replacing the property damaged or destroyed or with the resumption or continuation of the Assured's occupancy;

D.   Loss or destruction of accounts, bills, evidence of debt, valuable papers, records, abstracts, deeds, manuscripts or other documents except as they may be converted to data processing media form and then only in that form;

E.   Loss of or damage to property rented or leased to others while away from the premises of the Assured;

F.   Error in machine programming or instructions to machine;

G.   Inherent vice, wear, tear, gradual deterioration or depreciation;

H.   Any dishonest, fraudulent or criminal act by the Assured, a partner therein or an officer, director or trustee thereof, whether acting alone or in collusion with others;

I.   Damage due to mechanical failure, faulty construction, error in design unless fire or explosion ensues, and then only for loss, damage, or expense caused by such ensuing fire or explosion;

J.   Short circuit, blow-out, or other electrical disturbance, other than lightning, within electrical apparatus, unless fire or explosion ensues and then only for loss, damage or expense caused by such ensuing fire or explosion;

K.   Delay or loss of market;

L.   War risks or nuclear risks as excluded in the Policy to which this Extension is attached.

5.    **RESUMPTION OF OPERATIONS:** As soon as practicable after any loss the Assured shall resume complete or partial business operations of the insured property and, in so far as practicable, reduce or dispense with such additional charges and expenses as are being incurred.

6.    **INTERRUPTION BY CIVIL AUTHORITY:**    This Policy is extended to include necessary Extra Expense incurred by the Assured as covered hereunder, during the length of time, not exceeding two consecutive weeks, when as a direct result of damage to or destruction of property adjacent to the premises herein described by the peril(s) insured against, access to such described premises is specifically prohibited by order of civil authority.

7.    **DEFINITIONS:** The term "Normal" wherever used in this Extension shall mean: The condition that would have existed had no loss occurred.

8.    **DEDUCTIBLE:** Each and every loss occurring hereunder shall be adjusted separately and from the amount of each such loss when so adjusted the amount indicated in PART I (AGGREGATE AGREEMENT) 2) shall be deducted.

All other terms and conditions of this Policy not in conflict herewith remain unchanged.


Dated: April 30, 1985              INTERNATIONAL SPECIAL RISK SERVICES, INC.

                                   By  _Charles C De Breul_
                                       AS SUCCESSORS TO
                                       ARTHUR J GALLAGHER & CO (ILLINOIS)

ENDORSEMENT attaching to and forming part of Policy/Certificate No. SL #063

in the name of     Diocese of Rockville Center

Effective date of this endorsement is September 1, 1984          Endorsement No. 22

It is hereby understooid and agreed effective September 1, 1984 that the sublimit in respect of Errors and Omissions is deleted and therefore is included within all Third Party sublimit of $200,000 any one occurrence C.S.L.

It is further understood and agreed effective September 1, 1984 that "Type" is amended to include Electronic Data Processing/Media.Equipment/Extra Expense.

It is also understood and agreed that the Electronic Data Processing Exclusion contained within Transit Endorsement is deleted.

It is further understood and agreed effective September 1, 1984 that the sublimit in respect of Priests Personal Effects is amended to read as follows:-

Priests Personal Effects:              $20,000 any one person, each and
                                        every loss.

It is further understood and agreed effective 1st September, 1984 the following condition is included "Errors and Omissions shall be on an occurrence basis including prior acts.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985          INTERNATIONAL SPECIAL RISK SERVICES, INC.
                               AS SUCCESSORS TO
                               ARTHUR J GALLAGHER & CO (ILLINOIS)

                               By   _Charles C De Bruler_

ADDITIONAL PREMIUM:    $626,414.40 (Hereon)

RETURN PREMIUM:    (Hereon)

ENDORSEMENT attaching to and forming part of Policy No. SL 4063

in the name of Diocese of Rockville Center

Effective date of this endorsement is September 1, 1984    Endorsement No. 21

It is hereby understood and agreed that effective September 1, 1984 the Sum Insured is ameended to reach-

SUM INSURED:    $    400,000    each and every loss and/or occurrence
$ 1,000,000    in the aggregate annually in respect of the Assured's retention.

BUT ONLY TO PAY EXCESS OF:

$    100,000    each and every loss and/or occurrence
$ 2,900,000    in the aggregate annually in respect of the Assured's retention.

It is further noted and agreed that the premium instalment due September 1, 1984 is $656,000.00 part of $820,000.00.

It is further understood and agreed that effective September 1, 1984 the Security is amended to read:-

SECURITY:    95.49% of 100% of 80% Lloyd's Underwriters

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985    INTERNATIONAL SPECIAL RISK SERVICES, INC.
AS SUCCESSORS TO
ARTHUR J GALLAGHER & CO (ILLINOIS)

By    _Charles C De Bruin_

ADDITIONAL PREMIUM  $474,823.30 (Hereon)

RETURN PREMIUM

ENDORSEMENT attaching to and forming part of Policy No. SL 4063

in the name of Diocese of Rockville Centre, et al

Effective date of this endorsement is September 1, 1983              Endorsement No. 20

It is hereby noted and agreed that effective 1st September 1983, the SUM INSURED is amended to read:

SUM INSURED:  $   400,000   each and every loss and/or occurrence
              $1,000,000   in the aggregate annually in respect of the Assured's retention

BUT ONLY TO PAY EXCESS OF:

              $   100,000   each and every loss and/or occurrence
              $2,600,000   in the aggregate annually in respect of the Assured's retention

The Loss Limits in respect of the Self-Insured Fund and within the limits of this insurance shall not exceed

| | | |
|---|---|---|
| Towing Expenses: | $     25 | each and every loss |
| Priests Personal Effects: | $10,000 | any one person, each and every loss |
| Medical Payments: | $  5,000 | any one person, $100,000 any one loss |
| Money & Securities: | $25,000 | each and every loss |
| Employee Fidelity: | $25,000 | each and every loss |
| Extra Expense: | $100,000 | each and every loss |
| Tuition Fees: | $100,000 | each and every loss |
| W.C.A./E.L./O.D.: | $150,000 | any one occurrence |
| All Third Party: | $200,000 | any one occurrence C.S.L. |
| Errors & Omissions and School Board Liability: | $200,000 | any one claim and in the aggregate annually |
| Flood: | $500,000 | in the aggregate annually |

It is further noted and agreed that the premium instalment due 1st September 1983, is $650,000.00.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985              INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                   AS SUCCESSORS TO
                                   ARTHUR J GALLAGHER & CO (ILLINOIS)

                                   By _Charles C DeBruler_

ADDITIONAL PREMIUM

RETURN PREMIUM        $35,313.60 (Hereon)

ENDORSEMENT attaching to and forming part of Policy No. SL 4063

in the name of Diocese of Rockville Centre, et al

Effective date of this endorsement is September 1, 1983        Endorsement No. 19

It is hereby noted and agreed that the Policy Period is amended to read:

1st October 1982, to 1st September 1986

with "Periods of Insurance" as follows:

1st September 1983, to 1st September 1984
1st September 1984, to 1st September 1985
1st September 1985, to 1st September 1986

It is further noted and agreed that effective 1st October 1982, the SUM INSURED is amended to read:

SUM INSURED:   $  400,000   each and every loss and/or occurrence
               $1,000,000   in the aggregate for the period 1st October 1982, to 1st September 1983, in respect of the Assured's retention

BUT ONLY TO PAY EXCESS OF:

$  100,000   each and every loss and/or occurrence
$2,500,000   in the aggregate for the period 1st October 1982, to 1st September 1983, in respect of the Assured's retention

The Loss Limits in respect of the Self-Insured Fund and within the limits of this insurance shall not exceed:

Towing Expenses:          $    25   each and every loss
Priests Personal Effects: $10,000   any one person, each and every loss
Medical Payments:         $ 5,000   any one person
Money & Securities:       $25,000   each and every loss
Employee Fidelity:        $25,000   each and every loss
Extra Expense:            $100,000  each and every loss
Tuition Fees:             $100,000  each and every loss
W.C.A./E.L./O.D.:         $150,000  any one occurrence
All Third Party:          $200,000  any one occurrence C.S.L.
Errors & Omissions and
School Board Liability:   $200,000  any one claim and in the aggregate for the period 1st October 1982, to 1st September 1983

Flood:                        $500,000  In the aggregate for the
                                        period 1st October 1982,
                                        to 1st September 1983

In consideration of the above, there is due a return premium at 1st
September 1983, of pro rata $585,000 for the period 1st September 1983, to
1st October 1983.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985          INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                 AS SUCCESSORS TO
                               ARTHUR J GALLAGHER & CO (ILLINOIS)

                               By _Charles C De Bricler_

ENDORSEMENT attaching to and forming part of Policy No. SL 4063

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982          Endorsement No. 18

It is noted and agreed effective inception the following are included in the Policy:-

| | LOCATION | COVERAGES AND LIMIT | |
|---|---|---|---|
| i) | Mercy Hospital, Rockville Centre, New York | $9,200,000 | B.L |
| | | $ 500,000 | E.E. |
| ii) | St. Francis Hospital, Roslyn New York | $4,700,000 | B.L |
| | | $ 500,000 | E.E. |
| iii) | St. Mary of the Angels Home, Convent Road, Syosset, Nassau County, New York | $ 40,000 | Rental Income |
| iv) | Catholic Press Association, 53 North Park Avenue, Rockville Centre, New York | $ 60,000 | Extra Expense |

It is further noted and agreed effective inception 'Type' hereon is amended to include Business Interruption.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:  April 30, 1985          INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                 AS SUCCESSORS TO
                                 ARTHUR J GALLAGHER & CO (ILLINOIS)'

By   Charlie C De Bruler

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. SL 4063

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982                    Endorsement No. 17

It is understood and agreed effective October 1, 1982 the Assured is building an addition to Good Samaritan Hospital:

| | |
|---|---|
| Total Value of Addition | $12,102,800 |
| Business Interruption: | 5,520,000 |
| Extra Expense: | 500,000 |

It is also understood and agreed that the New York State Department of Health is added as an Additional Insured in respect of the above addition.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985          INTERNATIONAL SPECIAL RISK SERVICES, INC.
                               AS SUCCESSORS TO
                               ARTHUR J GALLAGHER & CO (ILLINOIS)

By _____Charles C De Bruler_____

## ENDORSEMENT

Attached to and forming part of No. SL 4063

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982          Endorsement No. 16

### TUITION FEES ENDORSEMENT

1.  Subject to all the provisions applicable to Section 1 of this policy, this Policy is
    extended to insure against loss of tuition fees resulting directly from damage to or
    destruction by the perils insured against of real or personal property, during the
    term of this policy, on the Assured's premises, subject to the limit of liability for
    the premises at which the damage or destruction occurs. For the purposes of this
    insurance, 'perils insured against' shall mean the perils, as defined and limited in this
    Policy and any endorsements attached hereto for each premise and also subject to
    the provisions of this Endorsement.

2.  Underwriters shall be liable for:
    a.  the actual loss of tuition fees sustained by the Assured less charges and
        expenses which do not necessarily continue during the period of time, not
        limited by the date of expiration of this Policy commencing with the date of
        such damage or destruction and ending on the day preceding the beginning of
        the first school year following the date that the damaged or destroyed real or
        personal property could, with the exercise of due diligence and dispatch, be
        rebuilt, repaired or replaced.

        If the period of time as provided above shall end on a date within 30 days
        immediately preceding the beginning of the first school year specified above,
        the period of liability for loss is hereby extended to end on the day preceding
        the beginning of the second school year; and

    b.  the actual loss sustained by the Assured, resulting directly from an
        interruption of business as covered hereunder during the length of time, not
        exceeding two consecutive weeks, when, as a direct result of damage to or
        destruction of property adjacent to the premises insured by the perils(s)
        insured against, access to such insured premises is specifically prohibited by
        order of civil authoirty; and

    c.  loss resulting from damage to or destruction of media for, or programming
        records pertaining to electronic data processing or electronically controlled
        equipment, including data thereon, by the perils insured against. The length of
        time for which the Underwriters shall be liable hereunder shall not exceed –

        (1)  30 consecutive calendar days; or
        (2)  the length of time that would be required to rebuild, repair or replace
             such other property insured as has been damaged or destroyed; whichever
             is the greater length of time;

    d.  such expenses as are necessarily incurred for the purposes of reducing loss
        under this Endorsement (except expense incurred to extinguish a fire), but in
        no event shall the aggregate of such expenses exceed the amount by which the
        loss under this Endorsement is thereby reduced.

3.  **Resumption of Operations:** It is a condition of this insurance that if the Assured could reduce the loss resulting from the interruption of business.

    a.  by complete or partial resumption of operation of the property insured, whether damgaed or not, or

    b.  by making use of other property, equipment or supplies at the locations insured or elsewhere, such reduction shall be taken into account in arriving at the amount of loss hereunder.

4.  **Definitions:**

    a.  For the purposes of this insurance, 'tuition fees' are defined as the sum of tuition, fees and other income from students, less the cost of merchandise sold and materials and supplies consumed in services sold to such students. In determining tuition fees, due consideration shall be given to the experience of the Assured before the date of damage or destruction and the probable experience thereafter had no loss occurred.

    b.  The words 'beginning of school year' however modified, wherever used in this Endorsement shall mean the opening date of school in the Fall as prescribed, or as would be prescribed, in the school catalogue.

    c.  The term 'directly,' as applied to loss under this Endorsement, means loss, as limited and conditioned in this policy, resulting from direct loss to the property insured from the perils insured against.

5.  **Alterations and New Buildings:** Permission granted to amke alterations in or to construct additions to any building insured and to construct new buildings on the insured premises. This Endorsement is extended to cover, subject to all its provisions, loss resulting from damage to or destruction of such alterations, additions, or new buildings while in course of construction and when completed or occupied, provided that, in the event of damage to or destruction of such property (including building amterials, supplies, machinery or equipment incident to such construction or occupancy while on the insured premises or within 100 feet thereof) so as to delay commencement of business operations of the Assured, the length of time for which the Underwriters shall be liable shall be determined as otherwise provided herein but such determined length of time shall be applied and the loss hereunder calculated from the date that business operations would have begun had no damage or destruction occurred.

6.  Additional Exclusions and Limitations;

    a.  Underwriters shall not be liable for any increase of loss which may be occasioned by:

        (1) enforcement of any local or state ordinance or law regulating construction, repair or demolition of buildings or structures,

        (2) interference at the insured premises by strikers or other persons with rebuilding, repairing or replacing the property or with the resumption or continuation of business,

        (3) the suspension, lapse or cancellation of any lease or license, contract or order unless such suspension, laspse or cancellation results directly from the interruption of business, and then the Underwriters shall be liable for any such loss as affects the Assured's earnings during, and limited to, the period of indemnity covered under this policy.

b.　Underwriters shall not be liable for:

(1)　more than the amount set forth in the limits of liability for each premises insured.

(2)　loss resulting from theft of any property which at the time of loss is not an integral part of a building or structure (except direct loss by pillage and looting occurring during and at the immediate place of a riot or civil commotion), unless loss by a peril not excluded in this policy ensues from theft to attempted theft, and then the Underwriters shall be liable for only such ensuing loss,

(3)　any other consequential or remote loss.

7.　Requirements in Case Loss Occurs:　The Assured shall give immediate written notice to the Underwriters of any tuition fees loss as covered by this policy and protect the property from further damage that might result in extension of the peirod of interruption; and within 60 days following the date of damage to or destruction of the real or personal property insured, unless such time is extended in writing by the Underwriters, the Assured shall render to the Underwriters a proof of loss, signed and sworn to by the Assured, stating the knowledge and belief of the Assured as to the following:

a.　the time and origin of the property damage or destruction causing the interruption of business,

b.　the interest of the Assured and of all others in the business,

c.　all other contracts of insurance, whether valid or not, covering in any manner the loss insured against by this policy, and

d.　any changes in the title, nature, location, encumbrance or possession of said business since the issuing of this policy, and

e.　by whom and for what purpose any building insured and the several parts thereof were occupied at the tie of damage or destruction, and shall furnish a copy of all the descriptions and schedules in all policies and the actual amount of tuition fees value and loss claimed, accompanied by detailed exhibits of all values, costs and estimates upon which such amounts are based.

The Assured, as often as may be reasonably required, shall exhibit to any person designated by the Underwriters all that remains of any property insured and submit to examinations under oath by any person named by the Underwriters, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and palce as may be designated by the Underwriters or their representatives, and shall permit extracts and copies thereof to be made.

Subject otherwise to all terms, clauses and conditions, not in conflict with the foregoing, remaining unaltered.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985　　　　INTERNATIONAL SPECIAL RISK SERVICES, INC.
　　　　　　　　　　　　　　　AS SUCCESSORS TO
　　　　　　　　　　　　　　ARTHUR J GALLAGHER & CO (ILLINOIS)

　　　　　　　　　　　　By　*Charles C DeBowler*