ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. SL 4063

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982          Endorsement No. 15

It is hereby noted and agreed that the following is made part of the policy conditions:

## ARCHITECTS' FEES

This Insurance covers the additional assessment involving architects' fees for consultations arising from losses resulting from an insured peril. Fees are limited to seven (7%) percent of replacement cost.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985          INTERNATIONAL SPECIAL RISK SERVICES, INC.
                               AS SUCCESSORS TO
                               ARTHUR J GALLAGHER & CO (ILLINOIS)

                               By _Charles C DeBruler_

ENDORSEMENT

Attached to and forming part of Policy/Certificate No. SL 4063

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982          Endorsement No. 14

## EXTRA EXPENSE

### 40/80/100% of Limit

It is agreed that if the property described in Insuring Agreement A of Section I is damaged or destroyed by perils insured against in said Insuring Agreement A during the period of this Insurance so as to necessitate the incurrence of Extra Expense (as defined below) the Underwriters shall be liable for the Extra Expense so incurred, not exceeding the actual loss sustained, for not exceeding such length of time, hereinafter referred to as the "period of restoration".

It is further agreed that this extension in coverage shall not operate to increase the Underwriters limits of liability hereunder.

Underwriters shall be liable for no greater percentage of the amount of this Policy than is stated below for the determined period of restoration.

    40% if period of restoration is not in excess of one month;

    80% if period of restoration exceeds one month but does not exceed two months;

    100% if period of restoration exceeds two months.

DEFINITIONS

a) Extra Expense: The term 'Extra Expense' means the excess (if any) of the total cost incurred during the period of restoration chargeable to the operation of the Assured's business, over and above the total cost that would normally have been incurred to conduct the business during the same period had no damage or destruction occurred.

Any salvage value of property obtained for temporary use during the period of restoration which remains after the resumption of normal operations, shall be taken into consideration in the adjustment of any loss hereunder.

b) Normal: The term 'Normal' wherever used herein shall mean; the condition that would have existed had no loss occurred.

c) Month: The word 'month' wherever used herein means 30 consecutive days.

d) Period of Restoration: The term 'period of restoration' means such length of time commencing with the date of damage and not limited by the date of expiration of this policy, as would be required with the exercise of due diligence and dispatch to repair, rebuild or replace such part of the Assured's property as has been damaged or destroyed.

CONDITIONS

a) Resumption of Operations: It is a condition of this Insurance that as soon as practicable the Assured shall resume normal operations of the business and shall dispense with such extra expense.

b) Interruption by Civil Authority: Liability hereunder is extended to include actual loss as covered hereunder, sustained during the period of time, not exceeding two weeks, when as a direct result of a peril insured against, access to the premises in which the Assured's property is located is prohibited by order of civil authority.

EXCLUSIONS

In addition to the General Exclusions of this Insruance Underwriters shall not be liable for Extra Expense resulting from:

a) The suspension, lapse or cancellation of any lease, license, contract or order beyond the period of restoration.

b) Interference at premises by strikers or other persons with rebuilding, repairing or replacing the property damaged or destroyed or with the resumption or continuation of business.

c) Enforcement of any local or state ordinance or law regulating construction, repair or demolition of buildings or structures.

Further, Underwriters shall not be liable for

1) more than the amount of Underwriters limits of liability as respects each premises;

2) loss of income;

3) the cost of repairing or replacing any of the real or personal property of the Assured, or the cost of research or other expense necessary to replace or restore damaged or destroyed books of account, abstracts, drawings, card index systems or other records (including film, tape, disc, drum, cell or other magnetic recording or storage media for electronic data processing), that have been damaged or destroyed by the perils insured against, except cost in excess of the normal cost of repair, replacement or restoration necessarily incurred for the purpose of reducing loss under this policy. In no event shall such excess cost exceed the amount by which the total extra expense loss otherwise payable under this policy is thereby reduced;

4) loss resulting from theft of any property which at the time of loss is not an integral part of a building or structure (except direct loss by pillage and looting occurring during and at the immediate place of a riot or civil

commotion), unless loss by a peril not excluded in this policy ensues from theft or attempted theft, and then the Underwriters shall be liable for only such ensuing loss;

5) any other consequential or remote loss.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985                    INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                            AS SUCCESSORS TO
                                         ARTHUR J GALLAGHER & CO (ILLINOIS)

                                    By _Charles C De Bruler_

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. SL 4063

In the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982          Endorsement No. 13

## TRANSIT EXTENSION

### INSURING CLAUSE

In consideration of the premium paid and subject to the terms, loss limits and conditions of the policy to which this Extension is attached and to the following conditions and exclusions, this insurance is hereby extended to cover:

> Personal property of the Assured or property held by the Assured in trust or on commission or on consignment for which the Assured may be held legally liable while in due course of transit within the limits of the Continental United States of America (excluding Hawaii) and Canada, against All Risks of Direct Physical Loss or Damage to the property insured occurring during the period of this policy (including general average and salvage charges on shipments covered while waterborne).

### PERILS EXCLUDED

This Extension does not insure against:

1.  Loss or damage to personal property resulting from:

    shrinkage, evaporation, loss of weight, leakage, breakage of glass or other fragile articles, marring, scratching, exposure to light, or change in colour, texture or flavour, unless such loss is caused directly by fire or the combating thereof, lightning, windstorm, hail, explosion, strike, riot or civil commotion, aircraft, vehicles, breakage of pipes or apparatus, sprinkler leakage, vandalism and malicious mischief, theft or attempted theft.

2.  Loss of use, delay or loss of markets,

3.  Loss or damage caused by or resulting from moth, vermin, termites, or other insects, inherent vice, latent defect, wear, tear or gradual deterioration; contamination; rust; wet or dry rot, mould, dampness of atmosphere, smog or extremes of temperature,

4.  Loss or damage caused by or resulting from misappropriation, conversion, infidelity or any dishonest act on the part of the Assured or other party of interest, his or their employees or agents or others to whom the property may be delivered or entrusted (carriers for hire excepted).

5.  Loss or damage to the property insured occasioned by war, invasion hostilities, acts of foreign enemies, civil war, rebellion, insurrection military or usurped power or martial law or confiscation by order of any Government or public authority.

6.  Loss or damage arising directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination however such nuclear reaction, nuclear radiation or radioactive containmination may have been caused. Nevertheless if a fire arises directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination any loss or damage arising directly from the fire shall (subject to the provisions of this Policy) be covered excluding however all loss or damage caused by nuclear reaction, nuclear radiation or radioactive contamination arising directly or indirectly from that fire.

7.  Loss or damage caused by breakdown or derangement of refrigerating units.

## DEDUCTIBLE(S)

Each loss or series of losses arising out of one event shall be adjusted separately and from the amount of each such adjusted loss the sum(s) stated in PART I (AGGREGATE AGREEMENT) A) 2) shall be deducted.

## PROPERTY EXCLUDED

This Extension does not cover:

1.  a.  Aircraft, watercraft, vehicles designed for highway use, animals, jewelery, precious stones and furs or garments trimmed with fur,

    b.  Accounts, bills, currency, money, notes, securities, deeds, evidences of debt and valuable papers,

    c.  Data processing equipment and media including, but not limited to, film, tape, disc, drum, cell and other recording or storage media for data processing,

2.  Property in due course of ocean marine transit,

3.  Shipments by mail after delivery into the custody of the Post Office Department,

4.  Samples whilst in the care, custody or control of salesmen.

## CONDITIONS

1.  The Assured may accept without prejudice to this insurance the ordinary bills of lading or receipts issued by carriers including those containing released and/or partially released value provisions, but the Assured shall not enter into any special agreement with carriers releasing them from their common law or statutory liability.

2.  Property insured hereunder shall be valued as follows:

    A.  Sold property at the actual net invoice price of the Assured.

    B.  Unsold property – at the actual cash value of the property at the time any loss or damage occurs with proper deduction for depreciation and in no event to exceed what it would cost to repair or replace the property with material of like kind and quality.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985                INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                     AS SUCCESSORS TO
                                     ARTHUR J GALLAGHER & CO (ILLINOIS)

                             By _Charlie C D. Breuler_

ENDORSEMENT attaching to and forming part of No. SL 4063

in the name of the Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982                    Endorsement No. 12

## GROSS EARNINGS BUSINESS INTERRUPTION

### INSURING CLAUSE

In consideration of the premium paid and subject to the terms, conditions and exclusions of the policy to which this extension is attached and to the following terms and conditions, this Insurance is extended to cover:-

Against loss resulting directly from necessary INTERRUPTION OF BUSINESS caused by Direct Physical Loss or Damage, as covered by the policy to which this Extension is attached, and/or personal property, occurring during the terms of this Policy on premises occupied by the Assured.

In the event of such loss or damage Underwriters shall be liable for the Actual Loss Sustained by the Assured resulting from such interruption of business, but not exceeding the reduction in Gross Earnings less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property as has been lost or damaged, commencing with the date of such loss or damage and not limited by the date of expiration of this Policy. Due consideration shall be given to the continuation of normal charges and expenses including payroll expenses, to the extent necessary to resume operations of the Assured with the same quality of service which existed immediately preceding the loss.

### SUM INSURED

The Underwriters hereon shall not be liable for more than the Sum Insured stated in the Declarations in respect of each and every loss, irrespective of the number of locations suffering an interruption of business.

### DEFINITIONS

1.  Gross Earnings

    In respect of Non-Manufacturing or Mercantile risks "Gross Earnings" are defined as the sum of:

    (a)    Total net sales, and

    (b)    Other earnings derived from the operations of the business less the cost of

    (c)    Merchandise sold including packaging materials therefor

(d)     Materials and supplies consumed directly in supplying the service(s) sold by the Assured, and

(e)     Service(s) purchased from outsiders (not employees of the Assured) for resale which do not continue under contract.

In respect of Manufacturing Risks "Gross Earnings" are defined as the sum of:-

(a)     The total net sales value of production

(b)     Total net sales of merchandise, and

(c)     Other earnings derived from operations of the business less the cost of

(d)     Raw stock from which such production is derived

(e)     Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock, or in supplying the services sold by the Assured

(f)     Merchandise sold, including packaging materials therefor, and

(g)     Service(s) purchased from outsiders (not employees of the Assured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

In determining Gross Earnings due consideration shall be given to the experience of the business before the date of loss or damage and the probable experience thereafter had no loss occurred.

2.    Raw Stock is material in the state in which the Assured received it for conversion into finished stock.

3.    Stock in Process is raw stock which has undergone any ageing, seasoning, mechanical or other process of manufacture at the Assured's premises but which has not become finished stock.

4.    Finished Stock is stock manufactured by the Assured which in the ordinary course of the Assured's business is ready for packing, shipment or sale.

5.    Merchandise is goods kept for sale by the Assured which are not the product of manufacturing operations conducted by the Assured.

6.    Normal is the condition that would have existed had no loss occurred.


## CONDITIONS

1.    Direct Damage

No claims shall be sustained against this Extension resulting from the necessary interruption of business unless and until a loss has been paid, or liability admitted, in respect of direct physical damage to property insured under the policy to which this Extension is attached, giving rise to business interruption.

This Condition shall not apply if no such payment shall have been made nor liability admitted solely owing to the operation of a deductible in such policy excluding liability for losses below a specified amount.

2.  Resumption of Operations

If the Assured could reduce the loss resulting from the interruption of business:

a.  by complete or partial resumption of operation of the property whether or not such property be lost or damaged, or

b.  by making use of merchandise or other property at the Assured's locations or elsewhere, and

c.  in respect of Manufacturing risks, by making use of stock (raw, in process or finished) at the Assured's locations or elsewhere,

such reduction shall be taken into account in arriving at the amount of loss hereunder.

3.  Expenses to Reduce Loss

This Extension also covers such expenses as are necessarily incurred for the purpose of reducing loss under this Extension (except expenses incurred to extinguish a fire) and in respect of Manufacturing Risks, such expense, in excess of normal, as would necessarily be incurred in replacing any finished stock used by the Assured to reduce loss under this Extension; but in no event to exceed the amount by which loss under this Extension is thereby reduced.

4.  Finished Stock

In respect of Manufacturing Risks Underwriters shall not be liable for any loss resulting from loss of or damage to finished stock nor for the time required to reproduce such finished stock.

5.  Special Exclusions

Underwriters shall not be liable for any increase of loss which may be occasioned by any local or state ordinance or law regulating construction or repair of buildings or structures, nor by the suspension, lapse or cancellation of any lease or license, contract or order, nor for any increase of loss due to interference at the Assured's premises by strikers or other persons with rebuilding or replacing the property or with the resumption or continuance of the business; nor shall Underwriters be liable for any other consequential or remote loss.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:    April 30, 1985           INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                   AS SUCCESSORS TO
                                   ARTHUR J GALLAGHER & CO (ILLINOIS)
                                              By: Charles C DeBruler

ENDORSEMENT                    ADDITIONAL PREMIUM

                              RETURN PREMIUM        $3,680.80  (Hereon)


Attaching to and forming part of Policy/Certificate No. SL 4063

In the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982          Endorsement No. 11


It is hereby understood and agreed that effective October 1, 1982 the loss
limitations in respect of the Self Insured Fund and within the limits of this
insurance are amended as follows: -


       Auto Liability      $100,000    any one occurrence C.S.L.
       W.C.A./E.L./O.D.:  $100,000    any one occurrence
       Return Premium:    $   5,000


Hereon:

       Underwriters at Lloyd's, London      73.616%      $3,680.80 R.P.


Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:  April 30, 1985           INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                     AS SUCCESSORS TO
                                 ARTHUR J GALLAGHER & CO (ILLINOIS)

                              By _Charles C DeBrue__

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. SL 4063

In the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982          Endorsement No. 10

It is hereby understood and agreed with effect from October 1, 1982, the
Errors and Omissions coverage is amended to include all priests, religious
personnel and employees.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985          INTERNATIONAL SPECIAL RISK SERVICES, INC.
                               ARTHUR J GALLAGHER & CO (ILLINOIS)

                               By _Charlie C De Bruler_

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. SL 4063

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982                Endorsement No. 9

It is agreed and understood the following is added as an additional insured under this policy:

The City of New York Department of Sanitation in respect of:

St. Agnes Academic High School
13-20 124th Street
College Point, Queens, New York

In accordance with the Hold Harmless Agreement entered into between the Assured and the City.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985                INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                      AS SUCCESSORS TO
                                      ARTHUR J GALLAGHER & CO (ILLINOIS)

                                      By _Charles C DeBreuler_

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. SL 4063

In the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982                    Endorsement No. 8

It is agreed that the "Named Insured" includes all insureds and additional
interests named in certificate of insurance applying to automobile liability for
the personal automobiles of priests and nuns. These certificates shall be on file
with Gallagher Bassett of New York, Inc.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985                    INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                         AS SUCCESSORS TO
                                         ARTHUR J GALLAGHER & CO (ILLINOIS)

                                         By   Charles C De Breiter

**ENDORSEMENT**

Attaching to and forming part of Policy/Certificate No. SL 4063

In the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982                    Endorsement No. 7

It is further agreed that with respect to the operations of hospitals this policy does not apply to Liability arising out of professional medical services rendered or failure to be rendered.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985                    INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                         AS SUCCESSORS TO
                                         ARTHUR J GALLAGHER & CO (ILLINOIS)

                                         By  _Charles C DeBruler_____

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. SL 4063

In the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is January 1, 1982          Endorsement No. 6

Notwithstanding SECTION IV - GENERAL CONDITION 5 - CANCELLATION contained herein to the contrary it is hereby understood and agreed that the same shall be deemed to be deleted and the following substituted in lieu thereof:-

## 5. CANCELLATION

This insurance may be cancelled as of any anniversary date by either of the parties upon written notice to the other party, provided said notice is issued at least 30 days prior to the said anniversary.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985          INTERNATIONAL SPECIAL RISK SERVICES, INC.
AS SUCCESSORS TO
ARTHUR J GALLAGHER & CO (ILLINOIS)

By  _Charles C DeBruler_

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. SL 4063

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982          Endorsement No. 5

Notwithstanding GENERAL INSURANCE AGREEMENT IV (f) and (g) contained herein to the contrary, it is hereby understood and agreed that the same shall be deemed to be deleted and the following substituted in lieu thereof:

(f)     $5,000                         any one person as respects other than Automobile Medical Payments under Section II Agreement C. (Coverages exclude payments to or for Students).

(g)     $5,000                         any one person as respects Automobile Medical Payments under Section II Agreement E.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985          INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                         AS SUCCESSORS TO
                                         ARTHUR J GALLAGHER & CO (ILLINOIS)

                                         By _____Charles C DeBrulier_____

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. SL 4063

In the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982         Endorsement No. 4

In consideration of the premium charged, it is agreed the policy is extended to include the following coverage:

### AUTOMOBILE NON OWNERSHIP

Notwithstanding anything contained herein to the contrary, this policy is extended to include Non Ownership Liability but only to provide coverage for owners of automobiles while being used in connection with activities being sponsored by the Named Insured.

It is further agreed this extension shall be excess of any other valid and collectible insurance.

The Loss Limitation hereon in respect of Automobile Bodily Injury/Property Damage remains at $200,000 Combined Single Limit from ground.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985            INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                 AS SUCCESSORS TO
                                 ARTHUR J GALLAGHER & CO (ILLINOIS)

                          By  _Charles C DeBruler_

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. SL 4063

In the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982                    Endorsement No. 3

It is hereby understood and agreed that the following are named as Additional Named Insureds under this policy:

      Bishop John R. McGann

      Bishop Emeritus Walter P. Kellenberg

      Auxiliary Bishop Gerald J. Ryan

      Auxiliary Bishop James J. Daly

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985            INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                AS SUCCESSORS TO
                                ARTHUR J GALLAGHER & CO (ILLINOIS)

              By _Charles C DeBoulit_

## ENDORSEMENT

Attached to and forming part of Policy SL 4063

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982    Endorsement No. 2

IT IS AGREED that the first annual installment premium is $595,000 based on total values of $1,050,451,297 and future annual installments will be based on anniversary date values calculated as follows:

Going In Values

plus  (a)  Additions
less  (b)  Deletions
plus  (c)  the reconstruction cost variation
           as provided by Gallagher Bassett
           Insurance Service

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:  April 30, 1985         INTERNATIONAL SPECIAL RISK SERVICES, INC.
                               AS SUCCESSORS TO
                               ARTHUR J GALLAGHER & CO (ILLINOIS)

                               By  _Charles C De Bruler_

## THIS IS A CLAIMS MADE ENDORSEMENT

Attached to and forming part of Policy No. SL 4063

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982          Endorsement No. 1

### ERRORS AND OMISSIONS

IT IS AGREED that Section II Agreement C is amended to include the following:

The Underwriters agree, subject to the terms and conditions hereof, to idemnify the Assured (as hereinafter defined) against any claims or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER agreed:

(1) There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to October 1, 1976, (hereinafter referred to as the "Retroactive Date").

(2) In the event of non-renewal or termination of this Insurance, then this Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemeteries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: April 30, 1985          INTERNATIONAL SPECIAL RISK SERVICES, INC.
                               AS SUCCESSORS TO
                               ARTHUR J GALLAGHER & CO (ILLINOIS)

          By _Charles C DeBowler_

| DATE ISSUED | CONTRACT NO | PREVIOUS NO |
|---|---|---|
| December 9, 1982 | GHV 051/182 | SLC 5630 |

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONAL NUMB SLC0510/82

NUMBER **SLC   6043**

| ITEM | | |
|---|---|---|
| 1 | *Name of Assured* | Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein Over Which the Same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Exercises Direct, Complete and Active Control Over, The Finances, Properties, Operations and Activities<br>50 North Park Avenue<br>Rockville Centre, New York  11570 |

| 2 | EFFECTIVE FROM ☒ 10:01 A.M  BOTH DAYS AT  ☐ 12:00 NOON  STANDARD TIME | October 1, 1982 (1982) | TO | October 1, 1983 (1985) |

| 3 | Acting upon your instruction, we have effected the insurance with: | NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|---|---|
| | | Excess Ins. Co. Ltd. | 2.776% |
| | | Yasuda Fire & Marine Ins. Co. (U.K.) Ltd. | .832% |
| | | Terra Nova Ins. Co. Ltd. | 2.776% |
| | | | 6.384% |

| 4 | AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|---|
| | Hereon:  6.384% Part of 100% of: | 80 | Annual  $593,000.00<br>Hereon: $ 37,984.80<br>Per End. # A | |
| | Subject to the same forms, terms, conditions and endorsements as more particularly set forth in Cover Note No. SL 6063. | Excess Ins. Co. Ltd.<br>Yasuda Fire & Marine Ins. Co. (U.K.) Ltd.<br>Terra Nova Ins. Co. Ltd. | $16,517.20<br>4,950.40<br>16,517.20<br>$37,984.80 | |
| | AUDIT | | TOTAL CHARGED | |

| 5 | SPECIAL CONDITIONS | |
|---|---|---|

| 6 | | |

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By *Donald J Kretch*

Eason Printing Co. Chicago

ENDORSEMENT attaching to and forming part of Policy/Certificate No. SLC 6043

in the name of    Diocese of Rockville Centre, New York

Effective date of this endorsement is September 1, 1984                   Endorsement No. I

It is hereby agreed that effective September 1, 1984 the Sum Insured is amended to read:

SUM INSURED: $     400,000    each and every loss and/or occurrence
$ 1,000,000    in the aggregate annually in respect of the
Assured's retention

BUT ONLY TO PAY EXCESS OF:

$     100,000    each and every loss and/or occurrence
$ 3,200,000    in the aggregate annually in respect of the
Assured's retention

It is further agreed that this Policy is cancelled effective September 1, 1985.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:  March 31, 1986              INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Peter J Durbaloki_

ENDORSEMENT attaching to and forming part of Policy/Certificate No. SLC 6043

in the name of Roman Catholic Diocese of Rockville Centre

Effective Date of this endorsement is    January 1, 1985       Endorsement No. 8

It is understood and agreed effective January 1, 1985, that
coverage is extended to include Volunteer Workers but only
in respect of their operations whilst working on behalf of the
Assured.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:      February 20, 1985           INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                        AS SUCCESSORS TO
                                        BY:

ENDORSEMENT attaching to and forming part of Policy/Certificate No. SLC 6043

In the name of     Diocese of Rockville Center

Effective date of this endorsement is September 1, 1984          Endorsement No. G

It is hereby understood and agreed effective September 1, 1984 that the sublimit in respect of Errors and Omissions is deleted and therefore is included within all Third Party sublimit of $200,000 any one occurrence C.S.L.

It is further understood and agreed effective September 1, 1984 that "Type" is amended to include Electronic Data Processing/Media/Equipment/Extra Expense.

It is also understood and agreed that the Electronic Data Processing Exclusion contained within Transit Endorsement is deleted.

It is further understood and agreed effective September 1, 1984 that the sublimit in respect of Priests' Personal Effects is amended to read as follows:-

Priests' Personal Effects:          $20,000  any one person, each
                                                    and every loss

It is further understood and agreed effective September 1, 1984 the following condition is included "Errors and Omissions shall be on an occurrence basis including prior acts.

Subject otherwise to all terms, clauses and conditions as heretofore.5 DATED:    February 4, 1984

INTERNATIONAL SPECIAL RISK SERVICES, INC.

ARTHUR J GALLAGHER & CO (ILLINOIS)

By  _Charles C De Bruler_

ADDITIONAL PREMIUM:    $29,535.60    (Hereon)

RETURN PREMIUM:                      (Hereon)

ENDORSEMENT attaching to and forming part of Policy No. SLC 6043

In the name of Diocese of Rockville Center

Effective date of this endorsement is September 1, 1984          Endorsement No. F

It is hereby understood and agreed that effective September 1, 1984
the Sum Insured is amended to read:-

SUM INSURED:    $   400,000   each and every loss and/or occurrence
                $ 1,000,000   in the aggregate annually in respect of the Assured's retention.

BUT ONLY TO PAY EXCESS OF:

                $   100,000   each and every loss and/or occurrence
                $ 2,900,000   in the aggregate annually in respect of the Assured's retention.

It is further noted and agreed that the premium instalment due
September 1, 1984 is $656,000.00 part of $820,000.00.

It is further understood and agreed that effective September 1, 1984
the Security is amended to read:-

SECURITY:       3.47% of 100% of 80% Excess Ins. Co. Ltd.
                1.04% of 100% of 80% Yasuda Fire & Marine Ins. Co. (U.K.) Ltd.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: February 4, 1985.          INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                  AS SUCCESSORS TO
                                  ARTHUR J GALLAGHER & CO (ILLINOIS)

                                  By _Charles C De Bowler_

ADDITIONAL PREMIUM $41,176.80 (Hereon)

RETURN PREMIUM

ENDORSEMENT attaching to and forming part of Policy No. SL 6043

in the name of Diocese of Rockville Centre, et al

Effective date of this endorsement is September 1, 1983            Endorsement No. E

It is hereby noted and agreed that effective 1st September 1983, the SUM INSURED is amended to read:

SUM INSURED: $   400,000   each and every loss and/or occurrence
$1,000,000   in the aggregate for the period 1st October 1982, to 1st September 1983, in respect of the Assured's retention

BUT ONLY TO PAY EXCESS OF:

$   100,000   each and every loss and/or occurrence
$2,600,000   in the aggregate annually in respect of the Assured's retention

The Loss Limits in respect of the Self-Insured Fund and within the limits of this insurance shall not exceed:

| | | |
|---|---|---|
| Towing Expenses: | $   25 | each and every loss |
| Priests Personal Effects: | $10,000 | any one person, each and every loss |
| Medical Payments: | $ 5,000 | any one person, $100,000 any one loss |
| Money & Securities: | $25,000 | each and every loss |
| Employee Fidelity: | $25,000 | each and every loss |
| Extra Expense: | $100,000 | each and every loss |
| Tuition Fees: | $100,000 | each and every loss |
| W.C.A./E.L./O.D.: | $150,000 | any one occurrence |
| All Third Party: | $200,000 | any one occurrence C.S.L. |
| Errors & Omissions and School Board Liability: | $200,000 | any one claim and in the aggregate annually |
| Flood: | $500,000 | in the aggregate annually |

It is further noted and agreed that the premium instalment due 1st September 1983, is $650,000.00.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: October 14, 1983          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By *Charles C DeBruler*

ADDITIONAL PREMIUM

RETURN PREMIUM        $3,062.40  (Hereon)


ENDORSEMENT attaching to and forming part of Policy No. SLC 6043

in the name of Diocese of Rockville Centre, et al

Effective date of this endorsement is September 1, 1983          Endorsement No. D

It is hereby noted and agreed that the Policy Period is amended to read:

1st October 1982, to 1st September 1986

with "Periods of Insurance" as follows:

1st September 1983, to 1st September 1984
1st September 1984, to 1st September 1985
1st September 1985, to 1st September 1986

It is further noted and agreed that effective 1st October 1982, the SUM INSURED is amended to read:

SUM INSURED: $   400,000   each and every loss and/or occurrence
$1,000,000   in the aggregate for the period 1st October 1982, to 1st September 1983, in respect of the Assured's retention

BUT ONLY TO PAY EXCESS OF:

$   100,000   each and every loss and/or occurrence
$2,500,000   in the aggregate for the period 1st October 1982, to 1st September 1983, in respect of the Assured's retention

The Loss Limits in respect of the Self-Insured Fund and within the limits of this insurance shall not exceed:

Towing Expenses:            $     25   each and every loss
Priests Personal Effects:   $10,000   any one person, each and every loss
Medical Payments:           $ 5,000   any one person
Money & Securities:         $25,000   each and every loss
Employee Fidelity:          $25,000   each and every loss
Extra Expense:              $100,000  each and every loss
Tuition Fees:               $100,000  each and every loss
W.C.A./E.L./O.D.:           $150,000  any one occurrence
All Third Party:            $200,000  any one occurrence C.S.L.
Errors & Omissions and
School Board Liability:     $200,000  any one claim and in the aggregate for the period 1st October 1982, to 1st September 1983

Flood:                          $500,000 in the aggregate for the
                                period 1st October 1982,
                                to 1st September 1983

In consideration of the above, there is due a return premium at 1st September 1983, of pro rata $585,000 for the period 1st September 1983, to 1st October 1983.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: October 14, 1983          INTERNATIONAL SPECIAL RISK SERVICES, INC.


By _Charles C DeBreeler_

ENDORSEMENT attaching to and forming part of No. SLC 6043

In the name of    Roman Catholic Diocese of Rockville, Centre, etal

Effective date of this endorsement is    October 1, 1982    Endorsement No.    C

It is noted and agreed effective inception the following are included in the Policy :-

| | LOCATION | COVERAGES AND LIMIT |
|---|---|---|
| i) | Mercy Hospital, Rockville Centre, New York | $9,200,000 B.I.<br>$ 500,000 E.E. |
| ii) | St. Francis Hospital, Roslyn New York | $4,700,000 B.I.<br>$ 500,000 E.E. |
| iii) | St. Mary of the Angels Home, Convent Road, Syosset, Nassau County, New York | $ 40,000 Rental Income |
| iv) | Catholic Press Association, 53 North Park Avenue, Rockville Centre, New York | $ 60,000 Extra Expense |

It is further noted and agreed effective inception 'Type' hereon is amended to include Business Interruption.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:    May 20, 1983                    ARTHUR J. GALLAGHER & CO.(ILLINOIS)

                                          BY: Donald J Krutch

ENDORSEMENT                    ADDITIONAL PREMIUM

                               RETURN PREMIUM        $319.20  (Hereon)


Attaching to and forming part of Policy/Certificate No. SL 6043

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982          Endorsement No. B


It is hereby understood and agreed that effective October 1, 1982 the loss
limitations in respect of the Self Insured Fund and within the limits of this
insurance are amended as follows: -

        Auto Liability      $100,000   any one occurrence C.S.L.
        W.C.A./E.L./O.D.:   $100,000   any one occurrence
        Return Premium:     $  5,000

Hereon:

    Excess Ins. Co. Ltd.            2.776%     $138.80  R.P.

    Yasuda Fire & Marine Ins. Co.
      (U.K.) Ltd.                    .832%       41.60  R.P.

    Terra Nova Ins. Co. Ltd.        2.776%      138.80  R.P.
                                    6.384%     $319.20  R.P.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  December 9, 1982          ARTHUR J.  GALLAGHER & CO.  (ILLINOIS)

                            By  _Donald J Kreitels_____

# E N D O R S E M E N T

Attached to and forming part of Policy SLC 6043

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982    Endorsement No. A

IT IS AGREED that the first annual installment premium is $595,000 based
on total values of $1,050,451,297 and future annual installments will be
based on anniversary date values calculated as follows:

                Going In Values

                plus  (a)  Additions
                less   (b)  Deletions
                plus  (c)  the reconstruction cost variation
                             as provided by Gallagher Bassett
                             Insurance Service

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

U.S.A.

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—
### PHYSICAL DAMAGE—DIRECT

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association.)*

This policy does not cover any loss or damage arising directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination however such nuclear reaction, nuclear radiation or radioactive contamination may have been caused *NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall subject to the provisions of this policy be covered EXCLUDING however all loss or damage caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that Fire.

*NOTE.—If Fire is not an insured peril under this policy the words from "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

7/5/59

N.M.A. 1191                                                                BAROR PRINTING COMPANY

### SERVICE OF SUIT CLAUSE (U.S.A.)

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Associations.)*

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon

Lord, Bissell & Brook, 115 S LaSalle St Chicago, IL 60603
or Mendes & Mount, 3 Park Avenue, New York, NY 10016

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

N.M.A. 772                                                    EASON PRINTING COMPANY

U.S.A.

NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)
(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)

For attachment to insurances of the following classifications in the U. S. A., its Territories and Possessions, Puerto Rico and the Canal Zone:—

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause—Liability—Direct (Limited) applies.

This policy* does not apply:—

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction
   (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:
   "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means
   (a) any nuclear reactor,
   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*Note:—As respects policies which afford liability coverage and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17-3-60
N.M.A. 1256

Dean Printing Company

## COMBINED PROPERTY, CASUALTY AND CRIME INSURANCE

This Insurance provides the following –

| | | |
|---|---|---|
| **SECTION I** | - | **PROPERTY INSURANCE** |
| Agreement A | - | Building and Contents |
| Agreement B | - | Automobile |

| | | |
|---|---|---|
| **SECTION II** | - | **CASUALTY INSURANCE** |
| Agreement C | - | General Liability |
| Agreement D | - | Liquor Liability |
| Agreement E | - | Automobile Liability |
| Agreement F | - | Workers' Compensation and/or Employers' Liability and/or Occupational Disease |

| | | |
|---|---|---|
| **SECTION III** | - | **CRIME INSURANCE** |
| Agreement G | - | Money and Securities (within premises) |
| Agreement H | - | Money and Securities (outside premises) |
| Agreement I | - | Commercial Blanket Bond |

DECLARATIONS

ASSURED:

Roman Catholic Diocese of Rockville Centre, and All Legal Entities Therein Over Which the Same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Exercises Direct, Complete and Active Control over the Finances, Properties, Operations and Activities.

ADDRESS:

50 North Park Avenue
Rockville Centre, New York 11570

LIMITS OF LIABILITY:

See Part I for Aggregate Agreement;
Part II for Specific Excess Agreement.

PREMIUM: Annual Premium SEE ENDORSEMENT #2 ATTACHED

TERM OF INSURANCE:

Effective from October 1, 1982 to October 1, 1985
BOTH DAYS at 12:01 A.M. Standard Time
at Assured's Address shown above.

## BPWC (BISHOPS PACKAGE INC. W.C.A.)

PART I                    (AGGREGATE AGREEMENT)

**LIMITS OF LIABILITY:** The Underwriters' Limits of Liability under this Agreement shall be only for the Excess of Loss over

A)    An annual aggregate Loss Fund of $2,500,000 ultimate net loss (hereinafter referred to as "Assured's Loss Fund"). As respects any one loss the Assured's Loss Fund shall not be charged with

    1)    an amount in excess of the amount stated in B) below or

    2)    any loss arising under Section I (except Automobile Comprehensive Perils) and Section III which is less than $100)

                      OR

B)    $100,000 Ultimate Net Loss as respects any one loss under Section I, II or III or any combination thereof

and then in excess of the above amounts up to $1,000,000 ultimate net loss in the aggregate in any one period of insurance in respect of the Assured's Loss Fund.

**LOSS FUND ADJUSTMENT:** The amount of the Assured's Loss Fund applies to the first annual period of this policy and is subject to review and change annually thereafter.

PART II                (SPECIFIC EXCESS AGREEMENT)

**LIMITS OF LIABILITY:** The Underwriters' Limits of Liability under this Agreement shall be only for the excess of loss over $100,000 ultimate net loss each and every loss and/or occurrence up to a further $400,000 ultimate net loss each and every loss and/or occurrence, under Section I, II or III or any combination thereof.

## GENERAL INSURANCE AGREEMENTS

I.    PERIOD OF INSURANCE

The words "period of insurance" shall be understood to mean any one of the following periods:

| | | |
|---|---|---|
| Period I | - | October 1, 1982 to October 1, 1983 |
| Period II | - | October 1, 1983 to October 1, 1984 |
| Period III | - | October 1, 1984 to October 1, 1985 |

II.    **NAME OF ASSURED**

It is agreed that Roman Catholic Diocese of Rockville Centre, et al owns and/or operates Parishes, Schools, Cemeteries and Other Agencies under specific Names, and it is the intention of this Insurance to cover such Parishes, Schools, Cemeteries and Other Agencies or directly connected organizations as Named Assureds.

It is also agreed that the unqualified word Assured wherever used in this Insurance includes not only the Named Assured but also -

1.    any official, trustee or employee of the Named Assured while acting within the scope of his duties as such, and any person, organization, trustee or estate to whom the Named Assured is obligated by virtue of written contract or agreement to provide insurance such as is offered by this Insurance, but only in respect to operations by or on behalf of the Named Assured;

2.    under Section II Agreement E any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the Named Assured or with his permission, and any official of the Named Assured with respect to the use of non-owned automobile in the business of the Named Assured. This Insurance with respect to any person or organization other than the Named Assured does not apply;

    (a)    to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any accident arising out of the operation thereof;

    (b)    to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer;

    (c)    with respect to any hired automobile, to the owner or a lessee thereof, other than the Named Assured, nor to any agent or employee of such owner or lessee;

    (d)    with respect to any non-owned automobile, to any official or employee if such automobile is owned by him or a member of the same household.

    The inclusion hereunder of more than one Assured shall not operate to increase Underwriters' Limits of Liability.

III.    **TERRITORY**

This Insurance applies World Wide.

IV.    In calculating the amount of Ultimate Net Loss under Part I
(Aggregate Agreement) and Part II (Specific Excess Agreement)
this Insurance is deemed to have the following maximum limits
which will apply for all purposes to the Assured's Loss Fund and
to the Specific Excess Agreement:

(a)  $500,000    in the aggregate annually as re-
spects any Flood loss under Sec-
tion I.

(b)  $200,000    any one occurrence Combined
Single Limit Public Liability
/Property Damage under Section
II Agreements C, D and E, but in
the aggregate annually as re-
spects School Board Liability and
Errors and Omissions provided by
Endorsement No. I attached.

(c)  $25,000    each and every loss under Section
III Agreements G and H.

(d)  $25,000    each and every loss under Section
III Agreement I.

(e)  $150,000    any one occurrence under Section
II Agreement F Workers' Compen-
sation
and/or
Employers' Liability and/or Occu-
pational Disease.

(f)  $5,000    any one person as respects Auto-
mobile Medical Payments under
Section I Agreement B.

(g)  $5,000    any one person as respects other
than Automobile Medical    Pay-
ments under Section II Agreement
C. (Coverage excludes payments
to or for students).

(h)  $200,000    any one claim and in the aggre-
gate annually as respects Errors
and    Omissions    provided    by
Endorsement No. 1 attached and
School Board Liability.

(i)  $10,000    any one person, each and every
loss as respects Priests Personal
Effects.

(j)  $100,000    each and every loss as respects
Extra Expense/Tuition Fees.

(k)  $25 ●                       each and every loss as respects
                                 towing expenses.

## V.  SERVICE ORGANIZATION

Insurance afforded under this Insurance is issued to the Assured
on the express condition that the Assured undertakes to utilize
at all times the services of Gallagher Bassett Insurance Service,
60 Gould Center, Golf Road, Rolling Meadows, Illinois 60008.
This Service Organization shall perform the following duties:

(a)  Strictly discharge the Assured's obligation to the
     employees or members of the public.

(b)  Maintenance of accurate records of all details inci-
     dent to payments.

(c)  Furnish inspection and safety engineering service.

(d)  Furnish monthly claims records on an approved form.

The acceptance of these services shall be a condition precedent
to any liability which may attach to the Underwriters in accord-
ance with the terms and conditions of this Insurance.

### SECTION I - PROPERTY INSURANCE

### INSURING AGREEMENTS

**AGREEMENT A - BUILDING AND CONTENTS:** Underwriters agree, subject
to the limitations, terms and conditions of this Insurance, to indemnify the
Assured for all risks of physical loss or damage to All Real or Personal
Property of every kind and description wherever located occurring during
the period of this Insurance.

**AGREEMENT B - AUTOMOBILE:** Underwriters agree, subject to the limita-
tions, terms and conditions of this Insurance, to indemnify the Assured for
loss or damage to Automobiles owned by the Assured or on which the
Assured has an obligation to provide adequate Insurance, wherever located,
against All Risks of Direct Physical Loss, including Collision of the
Automobile with another object.

### SECTION I - DEFINITIONS

1.  **PROPERTY OF THE ASSURED:**   The term "Assured's
    Property" shall mean All Real and Personal Property,
    including leasehold improvements or betterments which the
    Assured owns, property which the Assured holds on con-
    signments, or agrees to insure by any contractual agree-
    ment normal to its operations.

2.  **AUTOMOBILE:**   The term "Automobile" shall mean any
    motor vehicle, trailer or semi-trailer, including its equip-
    ment and any other equipment permanently attached
    thereto. The word "Trailer" shall include semi-trailer.

LW(18)/RC                       -5-                       12/08/82

3.   ULTIMATE NET LOSS:   The words "Ultimate Net Loss" in respect of this Section shall be understood to mean the loss sustained by the Assured after making deductions for all recoveries and salvages.

## SECTION I - EXCLUSIONS

### WITH REGARD TO ALL PROPERTY, THIS INSURANCE DOES NOT INSURE AGAINST:

1.   Loss by moth, vermin, termites or other insects; wear, tear or gradual deterioration; rust, wet or dry rot or mould.

2.   Loss or damage caused by

(a)   Radioactive or fissionable material.
(b)   Contamination, other than by (a) above, unless directly resulting from Fire or Extended Coverage perils.

3.   Loss resulting from loss of use (except such loss of use coverage as is afforded under a Standard Automobile Policy in respect of Agreement B above), delay or loss of markets.

4.   Breakdown of machinery and/or boiler explosion, but not excluding loss resulting therefrom.

5.   Loss resulting from dampness of atmosphere or variation in temperature unless caused by the perils of Fire and Extended Coverage.

6.   Loss of electrical appliances or devices of any kind, including wiring, arising from electrical injury or disturbance to the said electrical appliances or devices or wiring from artificial causes unless fire or explosion ensues, and then only for direct loss or damage caused by such ensuing fire or explosion.

### WITH REGARD TO ALL REAL PROPERTY, THIS INSURANCE DOES NOT INSURE AGAINST:

Loss by normal settling, normal shrinkage or normal expansion in foundations, walls, floors or ceilings.

### WITH REGARD TO PERSONAL PROPERTY, THIS INSURANCE DOES NOT INSURE AGAINST:

1.   Loss by mechanical derangement, inherent vice or latent defect.

2.   Loss resulting from processing or faulty workmanship, unless fire and/or explosion ensues, and then only for direct loss or damage caused by such ensuing fire or explosion.

3.   Loss resulting from shrinkage, evaporation, loss of weight or leakage, unless such loss is caused directly by fire or the

combating thereof, lightning, windstorm, hail, explosion,
strike, riot or civil commotion, aircraft, vehicles, breakage
of pipes or apparatus, sprinkler leakage, vandalism and
malicious mischief, theft or attempted theft.

4.   Inventory shortage, mysterious disappearances, or loss re-
sulting from any kind of infidelity or dishonesty on the part
of the Assured or any of his employees, except from the
perils covered in Section III (Money and Securities - Broad
Form) of this Insurance.

## PROPERTY EXCLUDED FROM COVERAGE HEREUNDER:

Animals, aircraft, standing timber and growing crops.

## SECTION I - CONDITIONS

1.   VALUATION:  The Underwriters shall not be liable for loss
or damage in excess of:

A.   (Real and Personal Property - other than auto-
mobile) - the cost to repair, rebuild or replace
the destroyed or damaged property in a condi-
tion equal to but not superior to or more
extensive than its condition when new.  If the
Assured decides to replace destroyed or dam-
aged property on another site, cost of such site
is not included hereunder.

It is not a requirement hereunder that the
Assured repair, rebuild or replace the destroyed
or damaged property in order to collect for loss
or damage covered by this Insurance.

B.   (Automobile) - the actual cash value of the
automobile at the time of loss.

2.   DEBRIS REMOVAL:  This Insurance covers the expense of
removal from the premises containing the property insured
hereunder of debris remaining after any loss hereby insured
against, except that there shall be no liability assumed for
the expense of removal of any foundations.

3.   REMOVAL CLAUSE:  This Insurance covers the expense
and damage occasioned by removal from the premises
endangered by the perils insured against wherever such
property is located or removed for preservation.

4.   APPRAISAL:  In the event the Assured and Underwriters
are unable to agree as to the amount necessary to rebuild,
repair or replace the damaged or destroyed property or the
actual amount of reimbursement to be paid, each party
shall name a competent and disinterested appraiser and the
two so chosen shall, before proceeding further, appoint a
competent and disinterested umpire.  The appraisers to-
gether shall obtain reconstruction estimates, and calculate

the amounts of reimbursement due, and failing to agree, shall submit their differences to the umpire. The award in writing, duly verified by any two shall determine the points in question. Both parties shall pay the cost of their own appraisers and equally pro rate the cost of the umpire.

5.  CIVIL AUTHORITY CLAUSE: Notwithstanding anything contained in this Insurance to the contrary, property which is insured under this Insurance is also covered against the risk of damage or destruction by civil authority during a conflagration and for the purpose of retarding the same; provided that neither such conflagration nor such damage or destruction is caused or contributed to by war, invasion, revolution, rebellion, insurrection or other hostilities or warlike operations.

6.  ORDINANCE DEFICIENCY CLAUSE: Notwithstanding anything contained herein to the contrary, the Underwriters shall be liable also for the loss occasioned by the enforcement of any state or municipal law, ordinance or code, which necessitates, in repairing or rebuilding, replacement of material to meet such requirements. If demolition is required to comply with such enforcement Underwriters shall also be liable for such additional costs.

7.  EXPENSE TO REDUCE OR PREVENT LOSS: This Insurance also covers such expenses as are necessarily incurred for the purpose of reducing or preventing any loss under this Insurance not exceeding, however, the amount by which the loss under this Insurance is thereby reduced.

## SECTION II - CASUALTY INSURANCE

### INSURING AGREEMENTS

AGREEMENT C - GENERAL LIABILITY: Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the Named Assured under contract or agreement, for damages direct or consequential, and expenses, all as more fully defined by the term "ultimate net loss", on account of personal injuries, including death at any time resulting therefrom, suffered or alleged to have been suffered by any person or persons (excepting employees of the Assured injured in the course of their employment); and/or damage to or destruction of property or the loss of use thereof; arising out of any occurrence happening during the period of this Insurance.

AGREEMENT D - LIQUOR LIABILITY: In accordance with the provisions of the above Agreement C, the Underwriters agree that indemnity for the Assured extends to liability for the sale or distribution of alcoholic beverages by reason of any local, state or Federal Liquor control laws now in force and all laws amendatory thereto; and that such extension includes indemnity for loss of means of support.

AGREEMENT E - AUTOMOBILE LIABILITY: Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the Named Assured under contract or agreement, for damages direct or consequential, and expenses, all as more fully defined by the term "ultimate net loss", on account of personal injuries including death at any time resulting therefrom, suffered or alleged to have been suffered by any person or persons (excepting employees of the Assured injured in the course of their employment); and/or damage to or destruction of property or the loss of use thereof, arising out of any occurrence happening during the period of this Insurance as a result of the ownership, maintenance or use of any automobile.

AGREEMENT F - WORKERS' COMPENSATION: The Underwriters hereby agree to indemnify the Assured for financial loss caused by personal injuries to his employees (including occupational disease) when the Assured is legally liable therefor to said employees (including death resulting therefrom) arising out of and in the course of employment by the Assured, provided such injuries are sustained during the period of this Insurance.

## SECTION II - DEFINITIONS

1.  PERSONAL INJURIES - The term "personal injuries" wherever used herein, shall mean:

    (a)  Bodily Injury, Mental Injury, Mental Anguish, Shock, Sickness, Disease, Disability, False Arrest, False Imprisonment, Wrongful Eviction, Detention, Malicious Prosecution, Discrimination, Humiliation, Invasion of Right of Privacy, Libel, Slander or Defamation of Character; also Piracy and any Infringement of Copyright or of property.

    (b)  Professional medical services rendered or which should have been rendered to any person or persons (other than employees of the Assured injured during the course of their employment) by any duly qualified medical practitioner, or nurse, or technician employed by or acting on behalf of the Assured, provided such liability is based solely upon error, negligence or mistake committed during the period of this Insurance.

2.  PROPERTY DAMAGE - The term "property damage" wherever used herein shall mean damage to or destruction or loss of property including damage to property of others in the care, custody or control of the Named Assured or property which is purchased by the Named Assured under a contract which provides that the title remain with the sellers until payments have been completed, the liability of Underwriters being limited to the amount of payments outstanding.

3.  OCCURRENCE - The term "occurrence" wherever used herein shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and

unintentionally results in personal injury, or damage to property
during the policy period. All such exposure to substantially the
same general conditions exist ng at or emanating from one
location shall be deemed one occurrence.

4.   ULTIMATE NET LOSS - The term "ultimate net loss" shall mean
the total sum which the Assured becomes obligated to pay by
reason of personal injury or property damage claims, either
through adjudication or compromise, after making proper de-
ductions for all recoveries and salvages, and shall also include
hospital, medical and funeral charges and all sums paid as
salaries, wages, compensation, fees, charges and law costs,
premiums on attachment or appeal bonds, interest, expenses for
doctors, lawyers, nurses and investigators and other persons and
for litigation, settlement, adjustment and investigation of claims
and suits which are paid as a consequence of any occurrence
covered hereunder, excluding only the salaries of the Named
Assured's permanent employees. Fees, charges and expenses for
Gallagher Bassett Insurance Service are specifically excluded,
and are to be paid by the Assured.

## SECTION II - EXCLUSIONS

THIS INSURANCE DOES NOT APPLY -

(a)   to liability of any Assured for assault and battery
committed by or at the direction of such Assured
except liability for Personal Injury or Death resulting
from any act alleged to be assault and battery for the
purpose of preventing injury to persons or damage to
property;

(b)   except with respect to operations performed by inde-
pendent contractors, to the ownership, maintenance
or use, including loading or unloading of aircraft, and
watercraft over 25 feet in length;

(c)   to damage or destruction of property owned by the
Assured.

## SECTION II - CONDITIONS

1.   CROSS LIABILITY: In the event of claims being made by reason
of personal injuries and/or property damage suffered by any
employee of one Assured herein for which another Assured
herein is or may be liable, then this Insurance shall cover such
Assured against whom a claim is made or may be made in the
same manner as if separate policies had been issued to each
Assured herein.   Nothing contained herein shall operate to
*increase the Underwriters' Limit of Liability as set forth herein.*
The Underwriters agree to waive all rights of subrogation against
all or any of the corporations or individuals comprising the
Assured.

2.   NOTICE OF OCCURRENCE: Whenever the Assured has infor-
mation from which the Assured may reasonably conclude that an

occurrence covered under **Section II of this Insurance** involves injuries or damages, notice shall be given to Gallagher Bassett Insurance Service, 60 Gould Center, Golf Road, Rolling Meadows, Illinois 60008 as soon as practicable. Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above firm of any such occurrence.

3. **COMMUTATION - (APPLICABLE TO AGREEMENT F):** Claims hereunder, not finally settled, for weekly or periodical payment for compensation to employees (or their dependents) as a result of death or injury shall be notified with full particulars by the Assured to the Underwriters within two years from the expiration date of this Insurance and the Underwriters may, if they so elect, then or at any time thereafter submit one or more of such claims to an Actuary or Appraiser, to be mutually appointed by the Assured and the Underwriters, and the Underwriters shall at their option pay a lump sum to be fixed by the Actuary or Appraiser, which payment shall constitute a full and final release of the Underwriters' liability for such claim or claims, provided however that such lump sum payment shall not constitute a full and final release of Underwriters' liability if subsequent to such lump sum payment any supplemental award is made increasing the amount of compensation benefits payable to the employee or his/her dependents and that any additional claim may then be recommuted at Underwriters' option and Underwriters may discharge any additional liability by another lump sum payment.

4. **SELF-INSURERS STATUS:** The Assured agrees to duly qualify as a self-insurer by compliance with the provisions of the Workers' Compensation and/or Occupational Disease Law respecting Self-Insurance in the State of New York and shall continue to maintain said status throughout the period of this Insurance, provided, however, Underwriters shall not be relieved of their obligations hereunder because of a breach of this condition until (1) the Assured becomes insured with respect to his Workers' Compensation and/or Occupational Disease liability or (2) the expiration of a period of thirty days after date of the notice served upon the Assured by the Industrial Commission terminating his status as a self-insurer, whichever occurs first.

5. If any employee is injured while engaged in the business operations described in the Declarations, outside the State of New York this Insurance shall apply to the liability of the Assured on account of such injuries irrespective of whether such liability is greater than it would have been had the injuries been sustained within the State of New York.

## SECTION III - CRIME INSURANCE

### INSURING AGREEMENTS

### AGREEMENT G - MONEY AND SECURITIES (COVERAGE WITHIN PREMISES):

Underwriters agree, subject to the limitations, terms and conditions of this Insurance, to indemnify the Assured for all loss caused by reason of theft, burglary, robbery, kidnapping, disappearance or destruction of any money or securities which may at any time be or believed by the Assured to be in or

upon any premises occupied or used by the Assured or by any bank, trust company or safe deposit company. Such Insurance as is afforded by this Insurance also applies to deposits within a night depository safe provided by a bank or trust company on its premises for the use of its customers.

## AGREEMENT H – MONEY AND SECURITIES (COVERAGE OUTSIDE PREMISES):

Underwriters agree, subject to the limitations, terms and conditions of this Insurance, to indemnify the Assured for all loss caused by reason of the theft, robbery, kidnapping, disappearance or destruction of any money or securities (other than by fraud or connivance of the Assured's officers or employees) while in transit in the custody of the Assured's officers or employees anywhere, the liability of the Underwriters to commence at the moment when the person into whose hands the property may be delivered on behalf of the Assured receives the same and to continue until delivery thereof at the final destination.

## AGREEMENT I – COMMERCIAL BLANKET BOND:

Underwriters (hereinafter called "the Surety") agree, subject to the terms and conditions set forth herein, to indemnify the Assured (hereinafter called "the Employer") against any loss of Money or other property real or personal (including that part of any inventory shortage which the Employer shall conclusively prove is caused by the dishonesty of any Employee or Employees) belonging to the Employer or in which the Employer has a pecuniary interest or for which the Employer is legally liable or held by the Employer in any capacity, whether the Employer is legally liable therefor or not, which the Employer shall during the term of this Insurance sustain or discover that they have sustained through larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wilful misapplication or other fraudulent or dishonest act or acts committed by any one or more of the Employees as defined, acting directly or in collusion with others.

## SECTION III – DEFINITIONS

### INSURING AGREEMENTS G AND H

1.  MONEY: The term "money" as used in this Insurance shall be deemed to mean currency, coin, bank notes, uncancelled and precancelled postage and unused postage in postage meters.

2.  SECURITIES: The term "securities" shall be deemed to mean Federal Food Stamps, express, postal and bank money orders, postal notes, debentures, scrip, checks, warrants, transfers, coupons, demand and time drafts, bills of exchange, acceptances, promissory notes, certificates of deposits, certificates of stock, bonds, car trust certificates, interim receipts and certificates, warehouse receipts, bills of lading and all other instruments of a similar nature including mortgages upon real estate or upon chattels and upon interests therein, and instruments in the nature of mortgages upon real estate or upon chattels and upon interests therein, and assignments of such mortgages and instruments.

3. It is understood and agreed that this insurance covers money and securities of the Assured or as respects which the Assured is legally liable or held by it in any capacity, whether or not the Assured is liable for the loss thereof. If legal proceedings are taken against the Assured to enforce a claim for money and securities so held, the Assured shall immediately notify the Underwriters in writing.

4. EMPLOYEES: The term "employees" shall mean not only persons compensated by the Assured but also those directed by the Assured, and including those independent contractors and/or services which may be considered as usually performed by employees of the Assured.

5. THEFT: The term "theft" shall include "trick and device".

6. ULTIMATE NET LOSS: The words "ultimate net loss" in respect of this Section shall be understood to mean the actual loss sustained by the Assured after making deductions for all recoveries and salvages.

## INSURING AGREEMENT I

1. EMPLOYER: The term "Employer" as used in this bond shall mean the Assured named in the Declarations and as further defined in General Insurance Agreement II.

2. EMPLOYEE OR EMPLOYEES: The terms "Employee" or "Employees" as used in this bond shall be deemed to mean respectively one or more of the natural persons who on the effective date of this Bond or at any other time during the term of this Bond are in the regular service of the Employer in the ordinary course of the Employer's business and who are compensated by salary, wages and/or commission, and whom the Employer has the right to govern and direct at all times in the performance of such service, but not to mean brokers, factors, commission merchants, consignees, contractors or other agents or representatives of the same general character.

## SECTION III - EXCLUSIONS

## THIS INSURANCE DOES NOT APPLY UNDER INSURING AGREEMENTS G AND H

(a) to any fraudulent, dishonest or criminal act other than robbery or safe burglary or attempt thereat, committed by the Assured or by any officer, employee (except Brinks or Armored Car Employees); trustee or authorized representative of the Assured, whether acting alone or in collusion with others.

(b) to forgery by whomsoever committed.




## SECTION III - CONDITIONS

1.  **under INSURING AGREEMENTS G, H AND I**

    Warranted free of all claims for losses not discovered within the term of this Insurance and for losses sustained and/or acts committed prior to October 1, 1976 (hereinafter called the "Retroactive Date") but with the understanding that in the event of (a) the expiration of this Insurance by reason of non-renewal, or (b) the termination of this Insurance as an entirety, as provided in General Condition 5, the Assured shall have twelve calendar months following the date of such expiration or termination in which to discover losses sustained between the Retroactive Date and the date of such expiration or termination.

    Notwithstanding anything to the contrary contained herein it is understood and agreed that in the event of this Insurance being immediately succeeded by a similar Insurance with Underwriters at Lloyd's on which the Retroactive Date is October 1, 1976 the said succeeding Insurance shall be deemed to be a renewal hereof and in consequence the discovery period provided herein shall not be operative.

2.  **under INSURING AGREEMENT I**

    (a) Upon the discovery of any loss hereunder this Bond shall be treated as reinstated so as at all times to continue in force for the sum set forth herein notwithstanding any previous loss for which the Surety may have paid or be liable to pay hereunder provided however that in no event shall the Surety be liable under this Bond for an amount greater than the limits of liability stated on account of any one loss or series of losses caused by the fraudulent or dishonest acts of any Employee or in which such Employee is concerned or implicated.

    (b) In case any reimbursement be obtained or recovery be made by the Employer or by the Surety on account of any loss covered under this Bond, the net amount of such reimbursement or recovery, after deducting the actual cost of obtaining or making the same, shall be applied to reimburse the Employer in full for that part if any, of such loss in excess of this Bond, and the balance, if any, or the entire net reimbursement or recovery if there be no such excess loss, shall be applied to that part of such loss covered by this Bond or, if payment shall have been made by the Surety, to its reimbursement therefor. The Employer shall execute all necessary papers and render all assistance not pecuniary to secure unto the Surety the rights provided for in this paragraph. The following shall not be reimbursement or recovery within the meaning of this paragraph: suretyship, insurance or reinsurance; also security or indemnity taken from any source by or for the benefit of the Surety.

(c)   This Bond shall be deemed cancelled as to any Employee immediately upon discovery by the Employer, of any fraudulent or dishonest act on the part of such Employee; or at 12:01 A.M. Standard Time as aforesaid upon the effective date specified in a written notice served upon the Employer or sent by registered mail. Such date if the notice be served shall be not less than fifteen days after such service, or if sent by registered mail, not less than twenty days after the date borne by the sender's registry receipt.

## SECTION IV - GENERAL CONDITIONS

1.   **PREMIUM PROVISION:**

   See Endorsement #2 Attached.

2.   **SALVAGE AND RECOVERY CLAUSE:**

   All salvages, recoveries and payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto.

3.   **INSPECTIONS, AUDIT AND VERIFICATION OF VALUES:**

   The Underwriters or their duly authorized representatives shall be permitted at all reasonable times during continuance of this Insurance to inspect the premises used by the Assured and to examine the Assured's books or records so far as they relate to coverage afforded by this Insurance.

4.   **RECORDS:**

   It is hereby understood and agreed that the records and books as kept by the Assured shall be acceptable to Underwriters in determining the amount of loss or damage covered hereunder.

5.   **CANCELLATION:**

   This Insurance may be cancelled as of any anniversary date by either of the parties upon written notice to the other party, provided said notice is issued at least thirty (30) days prior to the said anniversary.

   If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

6. **CURRENCY:**

The premium and losses under this Insurance are payable in United States Currency. Payment of premium shall be made to Arthur J. Gallagher & Co., 10 Gould Center, Golf Road, Rolling Meadows, Illinois 60003.

7. **BANKRUPTCY AND INSOLVENCY:**

In the event of the bankruptcy or insolvency of the Assured or any entity comprising the Assured, the Underwriters shall not be relieved of the payment of any claims hereunder because of such bankruptcy or insolvency.

8. **OTHER INSURANCE:**

If the Assured has other Insurance against loss covered by this Insurance the Underwriters shall be liable, under the terms of this Insurance, only as excess of coverage provided by such other Insurance, and no monies payable or collectible from such other Insurance shall accrue in the aggregate loss fund of this Insurance.

9. **MORTGAGE CLAUSE:**

The interest of any mortgagor on property covered hereunder is included as if a separate endorsement were attached hereto to the extent of the amount of mortgage as of the date of loss subject to the limits of liability set forth in this Insurance.

10. **CLAIMS:**

The Assured shall immediately notify Underwriters through Arthur J. Gallagher & Co., 10 Gould Center, Golf Road, Rolling Meadows, Illinois 60003 by registered mail, of any occurrence, the cost of which is likely to result in payment by Underwriters under this Insurance. Underwriters shall have the opportunity to be associated with the Assured in defense of any claims, suits, or proceedings relative to an occurrence wherein the opinion of the Underwriters, their liability under this Insurance is likely to be involved, in which case the Assured and Underwriters shall cooperate to the mutual advantage of both.

11. **LOSS PAYMENTS:**

When it has been determined that Underwriters are liable under this Insurance, Underwriters shall thereafter promptly reimburse the Assured for all payments in excess of the amounts stated in Subparagraphs A and B of the Limits Agreement. All adjusted claims shall be paid or made good to the Assured within thirty days after their presentation to Arthur J. Gallagher & Co., and acceptance by Underwriters of satisfactory proof of interest and loss.

12. **APPEAL:**

In the event the Assured and Underwriters are unable to agree to the advisability of appealing a judgment, a disinterested attorney, mutually agreeable to Underwriters and the Assured, shall be retained and directed to render a written opinion as to his recommendation concerning such appeal. Such written recommendation shall be binding on both the Assured and Underwriters. Fees of such retained attorney shall be borne equally by both parties for the services of rendering his recommendation only. The Assured's portion of such fee shall not accrue in the aggregate loss fund.

13. **LITIGATION PROCEEDINGS:**

No suit to recover on account of loss under this Insurance shall be brought until ninety days after the proof of loss shall have been furnished, nor at all unless commenced within twenty seven months from the date upon which loss occurred, if such loss is within the knowledge of the Assured; if not, the twenty seven months shall begin upon notice to the Assured of such loss or claim.

14. **SUBROGATION:**

The Underwriters shall be subrogated to all rights which the Assured may have against any person or other entity in respect to any claim or payment made under this Insurance, and the Assured shall execute all papers required by the Underwriters and shall cooperate with the Underwriters to secure Underwriter's rights. In case any reimbursement obtained or recovery made by the Assured or the Underwriters on account of any loss covered by this Insurance, the net amount of such reimbursement or recovery, after deducting the actual cost of obtaining or making the same, shall be first applied in the following order:

(a)  Amount of loss which exceeds the applicable limit of liability.

(b)  To reduce the Underwriters' loss until the Underwriters are fully reimbursed.

(c)  To reduce the Assured's loss because of the application of the aggregate loss fund.

15. **WAIVER OF SUBROGATION:**

This Insurance shall not be invalidated if the Assured by written agreement has waived or shall waive its right of recovery from any party for loss or damage covered hereunder; provided, that any such waiver is made prior to the occurrence of said loss or damage. The Underwriters, in any event, expressly waive subrogation against any Parish, School, Cemetery or other Agency.

16. **CONFLICTING STATUTES:**

In the event that any provision of this Insurance is unenforceable by the Assured under the laws of any State or other jurisdiction wherein it is claimed that the Assured is liable for any injury covered hereby because of non-compliance with any statute thereof, then this policy shall be enforceable for the Assured with the same effect as if it complied with such statute.

17. **ASSIGNMENT:**

Assignment of interest under this Insurance shall not bind the Underwriters until the Underwriters' consent is endorsed hereon.

18. **CHANGES:**

By acceptance of this Insurance the Assured agrees that it embodies all agreements existing between the Assured and Underwriters or any of its agents relating to this Insurance. None of the provisions, conditions or other terms of this Insurance shall be waived or altered except by endorsement; nor shall notice to any agent or knowledge possessed by any agent or by any other person be held to effect a waiver or change in any part of this Insurance.

19. **WAR CLAUSE:**

Coverage does not apply under this Insurance for loss or damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, any weapon of war employing atomic fission or radioactive force whether in time of peace or war, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power, confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority unless such acts of destruction by order of civil authority is at the time of and for the purpose of preventing spread of fire; or claims or liability arising directly or indirectly from nuclear fission, nuclear fusion or radioactive contamination.

20. **FRAUDULENT CLAIMS:**

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Insurance shall become void and all claim hereunder shall be forfeited.



# ARTHUR J. GALLAGHER & CO. (U.K.) LIMITED

### INTERNATIONAL INSURANCE & REINSURANCE BROKERS

## 110 FENCHURCH STREET, LONDON, EC3M 5JJ AND AT LLOYD'S

Telephone: 01-481 2222    Telex: 8951506 GALVER G    Facsimile: 01-480 6219

Arthur J Gallagher & Co.,
Warner Center Plaza,
21600 Oxnard Street, Suite 560,
Woodland Hills, CA 91367,
U.S.A.

*Rockville Ctr Dio*

30th October, 1985    Date

ADDENDUM NO 9 TO    Your Ref.
COVER NOTE No. GiV 051/182    Our Ref.

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:    THE DIOCESE OF ROCKVILLE CENTRE, NEW YORK.

PERIOD:    1st October, 1982, to 1st September, 1986.

It is hereby noted and agreed the effective 1st September, 1984 the Sum Insured is amended to read:

SUM INSURED:    $ 400,000 each and every loss and/or occurrence.
$1,000,000 in the aggregate annually in respect of the Assured's retention.

BUT ONLY TO PAY EXCESS OF:

$ 100,000 each and every loss and/or occurrence
$3,200,000 in the aggregate annually in respect of the Assured's retention.

It is further noted and agreed that this Policy is cancelled effective 1st September, 1985.

All other terms and conditions remain unaltered.

R E C E I V E D

NOV 4 1985

I S R S

c.c. ISRS Chicago.

28) SL 4063
I) SLC 6043

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

E.&.O.E.

Dr W. L. M. VEREKER
R. G. ALLDIS
R. O. BEARD
P. J. HAMMOND
O. D. S. JONES
R. B. OWLES
C. J. R. STREET
M. O. TANSWELL

110 FENCHURCH STREET
LONDON, EC3M 5JJ

Telephone: 01-481 2222

Telex:
8931900 GAI VER G

Fax: 01-480 6219

Arthur J. Gallagher & Co.,
Warner Center Plaza,
21600 Oxnard Street,
Suite 560,
Woodlands Hills,
CA 91367,
U.S.A.

6th February, 1985

Date

Your Ref.

Our Ref.

ADDENDUM NO. 8 TO
COVER NOTE No.  GHV 051/182

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:      THE DIOCESE OF ROCKVILLE CENTER, NEW YORK.

PERIOD:       1st October 1982 to 1st September 1986.

It is noted and agreed effective 1st January, 1985 that coverage is extended
to include Volunteer Workers but only in respect of their operations whilst
working on behalf of the Assured.

Information:   No known claims current year.

All other terms and conditions remain unchanged.

c.c. IS&S Chicago.

R E C E I V E D

FEB 14 1985

IS&S

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

E.&O.E.

A division of Gallagher, Hinton & Vereker Limited. Lloyd's brokers. Registered No. 1193013 England.

# GALLAGHER, HINTON & VEREKER

## NORTH AMERICAN DIVISION

D. W. L. M. VEREKER
R. G. ALLDIS
R. Q. BEARD
P. J. HAMMOND
O. D. S. JONES
R. B. OWLES
C. J. R. STREET
M. G. TANSWELL

110 FENCHURCH STREET
LONDON, EC3M 5JJ

Telephone: 01-481 2222

Telex:
8951506 GALVER O

Fax: 01-480 6219

Arthur J. Gallagher & Co.,
Warner Center Plaza,
21600 Oxnard Street, Suite 560,
Woodlands Hills, CA 91367,
U.S.A.

Date   30th October 1984

Your Ref.

Our Ref.

### ADDENDUM NO. 7 TO
### COVER NOTE No.  GHV 051/182

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:   THE DIOCESE OF ROCKVILLE CENTER, NEW YORK.

PERIOD:   1st October 1982 to 1st September 1986.

It is hereby noted and agreed effective 2nd October 1984 that a 1955 "CHRIS CRAFT" 40 ft Fishing Vessel is added hereon.

All other terms and conditions remain unaltered.

c.c. ISRS Chicago.

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

E.&O.E.

A division of Gallagher, Hinton & Vereker Limited. Lloyd's brokers. Registered No. 1193012 England

# GALLAGHER, HINTON & VEREKER

## NORTH AMERICAN DIVISION

D. W. L. M. VEREKER
R. G. ALLDIS
R. Q. BEARD
P. J. HAMMOND
G. D. S. JONES
R. B. OWLES
C. J. R. STREET
M. G. TANSWELL

110 FENCHURCH STREET
LONDON, EC3M 5JJ

Telephone: 01-481 2222

Telex:
8951506 GALVER G

Fax: 01-480 6219

Arthur J Gallagher & Co
Warner Center Plaza
21600 Oxnard Street Suite 560
Woodland Hills, CA 91367
U.S.A.

Date 16th October, 1984

Your Ref.

Our Ref.

## ADDENDUM NO.  6  to
## COVER NOTE No.   GHVO51/182

We confirm that we have effected the following insurance in accordance with your instructions:

**ASSURED:**     THE DIOCESE OF ROCKVILLE CENTER, NEW YORK

**PERIOD:**     1st October, 1982 to 1st September, 1986

It is hereby noted and agreed effective 1st September, 1984 that the sub limit in respect of Errors and Omissions is deleted and therefore is included within all Third Party sub-limit of $200,000 any one occurrence C.S.L.

It is further noted and agreed effective 1st September, 1984 that 'Type' is amended to include Electronic Data Processing/Media/Equipment/ Extra Expense.

It is also understood and agreed that the Electronic Data Processing Exclusion contained within Transit Endorsement is deleted.

It is further noted and agreed effective 1st September, 1984 that the Sub limit in respect of Priests Personal Effects is amended to read as follows:-

**Priests Personal Effects:**       $20,000 any one person, each and
                                                      every loss.

It is further noted and agreed effective 1st September, 1984 the following condition is included 'Errors and Omissions shall be on an occurrence basis including prior acts.

All other terms and conditions remain unchanged.

c.c. ISRS Chicago

RECEIVED
OCT 1 9 1984
ISRS

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

# GALLAGHER, HINTON & VEREKER

## NORTH AMERICAN DIVISION

D. W. L. M. VEREKER
R. O. ALLDIS
R. Q. BEARD
P. J. HAMMOND
O. D. S. JONES
R. B. OWLES
C. J. R. STREET
M. O. TANSWELL

110 FENCHURCH STREET
LONDON, EC3M 5JJ

*Telephone:* 01-480 2222

*Telex:* 8951506 GALVER O

*Fax:* 01-480 0219

Arthur J. Gallagher & Co.,
Warner Center Plaza,
21600 Oxnard Street, Suite 560,
Woodland Hills, CA 91367,     Addendum No. 5 to
U.S.A.

*Date* 27th September 1984

*Your Ref.*

*Our Ref.*

## COVER NOTE No.  GHV051/182

We confirm that we have effected the following insurance in accordance with your instructions:

**ASSURED:**  THE DIOCESE OF ROCKVILLE CENTRE, NEW YORK.

**PERIOD:**  36 months at 1st October, 1982.

It is hereby noted and agreed that effective 1st September, 1984 the Sum Insured is amended to read:-

**SUM INSURED:**  $ 400,000 each and every loss and/or occurrence
$1,000,000 in the aggregate annually in respect of the Assured's retention.

BUT ONLY TO PAY EXCESS OF:

$ 100,000 each and every loss and/or occurrence
$2,900,000 in the aggregate annually in respect of the Assured's retention.

It is further noted and agreed that the premium instalment due 1st September, 1984 is $820,000.00

It is further noted and agreed that effective 1st September, 1984 the Commission ceded is amended to 11%.

It is further noted and agreed that effective 1st September, 1984 the following condition is added:-

**CONDITION:**  Quarterly in depth Loss Prevention activity report to Underwriters.
...../...

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

Page No. 2 of Addendum No. 5 to Covernote No.GHV051/182 dated 27th September, 1984.

It is further noted and agreed that effective 1st September, 1984 the Security is amended to read:-

SECURITY:      95.49% of 80%              Lloyd's Underwriters

| | | | |
|---|---|---|---|
| 18.06% | 210 | 2.08% | 212 |
| 12.19% | 122 | 6.56% | 119 |
| 5.21% | 404 | 2.78% | 510 |
| 3.81% | 56 | 3.48% | 553 |
| 2.08% | 47 | 3.47% | 582 |
| 5.21% | 231 | 3.47% | 918 |
| 1.04% | 471 | 1.74% | 109 |
| 2.78% | 665 | 2.08% | 342 |
| 2.09% | 15 | 1.38% | 546 |
| 2.78% | 602 | 1.39% | 43 |
| 1.04% | 33 | 1.39% | 947 |
| 1.74% | 584 | 1.73% | 640 |
| 0.70% | 464 | 0.69% | 92 |
| 0.35% | 518 | 0.87% | 484 |
| 0.69% | 529 | 0.70% | 598 |
| 0.34% | 362 | 0.35% | 823 |
| 0.52% | 235 | 0.70% | 204 |

All other terms and conditions remain unchanged

c.c. ISRS Chicago.

# GALLAGHER, HINTON & VEREKER

## NORTH AMERICAN DIVISION

D. W. L. M. VEREKER
R. O. ALLDIS
R. Q. BEARD
P. J. HAMMOND
O. D. S. JONES
R. B. OWLES
C. J. R. STREET
M. O. TANSWELL

110 FENCHURCH STREET
LONDON, EC3M 5JJ

*Telephone:* 01-481 3222

*Telex:*
8951906 GALVER O

*Fax:* 01-480 6219

Arthur J. Gallagher & Co.,
Warner Center Plaza,
21600 Oxnard Street, Suite 560,
Woodland Hills, CA 91367,    Addendum No. 5 to
U.S.A.

*Date*       27th September 1984

*Your Ref.*

*Our Ref.*

## COVER NOTE No.   GHY051/182

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:     THE DIOCESE OF ROCKVILLE CENTRE, NEW YORK.

PERIOD:      36 months at 1st October, 1982.

It is hereby noted and agreed that effective 1st September, 1984 the Sum
Insured is amended to read:-

SUM INSURED: $ 400,000 each and every loss and/or occurrence
$1,000,000 in the aggregate annually in respect of the Assured's retention.

BUT ONLY TO PAY EXCESS OF:

$ 100,000 each and every loss and/or occurrence
$2,900,000 in the aggregate annually in respect of the Assured's retention.

It is further noted and agreed that the premium instalment due 1st
September, 1984 is $820,000.00

It is further noted and agreed that effective 1st September, 1984 the
Commission ceded is amended to 11%.

It is further noted and agreed that effective 1st September, 1984 the
following condition is added:-

CONDITION:   Quarterly in depth Loss Prevention activity report to Underwriters.

It is further noted and agreed that effective 1st September, 1984 the
Security is amended to read:-

SECURITY:    3.47% of 80%          Excess Ins. Co. Ltd.
             1.04% of 80%          Yasuda Fire & Marine Ins. Co.(U.K.) Ltd.
             4.51
             All other terms and conditions remain unchanged

c.c. ISRS Chicago.

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

E.&O.E.

# GALLAGHER, HINTON & VEREKER LIMITED

## INTERNATIONAL INSURANCE BROKERS
and at Lloyd's

D. W. L. M. VEREKER, (Managing Director)
D. J. M. ARNOLD
J. P. GALLAGHER, (U.S.A.)
R. E. GALLAGHER, (U.S.A.)
O. D. S. JONES
R. B. OWLES
J. J. SHAW
J. O. STREET

**110 FENCHURCH STREET
LONDON, EC3M 5JJ**

Telephone: 01-481 2222

Cables & Telegrams:
GALVER G. LONDON

Telex: 8951906
Registered No. 1193073 England

Arthur J. Gallagher & Co.,
4635 Lankershim Boulevard,
North Holywood,
Los Angeles,
California 91602,
U.S.A.

Date 13th September 1983
Your Ref.
Our Ref.

Addendum No. 4 to
**COVER NOTE No.** V 771

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED: THE DIOCESE OF ROCKVILLE CENTER, NEW YORK

PERIOD: 1st October 1982 to 1st September 1986

It is hereby noted and agreed that effective 1st September 1983 the SUM INSURED is amended to read:

SUM INSURED: $ 400,000 each and every loss and/or occurrence
$1,000,000 in the aggregate annually, in respect of the Assured's retention

BUT ONLY TO PAY EXCESS OF:

$ 100,000 each and every loss and/or occurrence
$2,600,000 in the aggregate annually in respect of the Assured's retention

The Loss Limits in respect of the Self Insured Fund and within the limits of this insurance shall not exceed:

**R E C E I V E D**

SEP 19 1983

**I S R S**

| | | |
|---|---|---|
| Towing Expenses: | $ 25 | each and every loss |
| Priests Personal Effects: | $ 10,000 | any one person, each and every loss |
| Medical Payments: | $ 5,000 | any one person, $100,000 any one loss |
| Money & Securities: | $ 25,000 | each and every loss |
| Employee Fidelity: | $ 25,000 | each and every loss |
| Extra Expense: | $100,000 | each and every loss |
| Tuition Fees: | $100,000 | each and every loss |
| W.C.A./E.L./O.D.; | $150,000 | any one occurrence |
| All Third Party: | $200,000 | any one occurrence C.S.L. |
| Errors & Omissions and School Board Liability: | $200,000 | any one claim and in the aggregate annually |
| Flood: | $500,000 | in the aggregate annually |

Uniform Product Policy Compendium   Page 62 of 115   Exhibit C

Page 2 of Addendum No. 4 to Covernote no. GHV 051/182
dated 13th September 1983

It is further noted and agreed that the premium instalment
due 1st September 1983 is $650,000.00.

All other terms and conditions remain unchanged.

c.c.  I.S.R.S., Chicago

**RECEIVED**

SEP 1 9 1983

**ISRS**

# GALLAGHER, HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS
#### and at Lloyd's

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
J. P. GALLAGHER, *(U.S.A.)*
R. E. GALLAGHER, *(U.S.A.)*
G. D. S. JONES
R. B. OWLES
J. J. SHAW
J. O. STREET

110 FENCHURCH STREET
LONDON, EC3M 5JJ

*Telephone:* 01-481 2222

*Cables & Telegrams:*
GALVER G), LONDON

*Telex:* 8951906
*Registered No.* 1599013 *England*

Arthur J. Gallagher & Co.,
4605 Lankershim Boulevard,
North Holywood,
Los Angeles,
California 91602,
U.S.A.

Date 13th September 1983

Your Ref.

Our Ref.

COVER NOTE No. 3 to
GHV 521/702

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED: THE DIOCESE OF ROCKVILLE CENTER, NEW YORK

PERIOD: 36 months at 1st October 1982

It is hereby noted and agreed that the Policy Period is amended to read:

1st October 1982 to 1st September 1986

with "Periods of Insurance" as follows:

1st October 1982 to 1st September 1983
1st September 1983 to 1st September 1984
1st September 1984 to 1st September 1985
1st September 1985 to 1st September 1986

RECEIVED

SEP 19 1983

ISRS

It is further noted and agreed that effective 1st October 1982 the SUM INSURED is amended to read:

SUM INSURED:   $ 400,000 each and every loss and/or occurrence
$1,000,000 in the aggregate for the period 1st October 1982 to 1st September 1983 in respect of the Assured's retention

BUT ONLY TO PAY EXCESS OF:

$ 100,000 each and every loss and/or occurrence
$2,500,000 in the aggregate for the period 1st October 1982 to 1st September 1983 in respect of the Assured's retention

✗ 20

../..

Page to to Addendum No. 3 to Covernote No: GHV 051/182
dated 13th September 1983

SUM INSURED:    The Loss Limits in respect of the Self Insured Fund
(Cont)          and within the limits of this insurance shall not
                exceed:

| | | |
|---|---|---|
| Towing Expenses: | $ 25 | each and every loss |
| Priests Personal Effects: | $ 10,000 | any one person, each and every loss |
| Medical Payments: | $ 5,000 | any one person |
| Money & Securities: | $ 25,000 | each and every loss |
| Employee Fidelity: | $ 25,000 | each and every loss |
| Extra Expense: | $100,000 | each and every loss |
| Tuition Fees: | $100,000 | each and every loss |
| W.C.A./E.L./O.D.: | $150,000 | any one occurrence |
| All Third Party: | $200,000 | any one occurrence C.S.L. |
| Errors & Omissions and School Board Liability: | $200,000 | any one claim and in the aggregate for the period 1st October 1982 to 1st September 1983 |
| Flood: | $500,000 | in the aggregate for the period 1st October 1982 to 1st September 1983 |

In consideration of the above there is due a return premium at 1st September
1983 of Pro rata $585,000 for the period 1st September 1983 to 1st October
1983.

R E C E I V E D

SEP 19 1983

I S R S

All other terms and conditions remain unchanged.

c.c.  I.S.R.S. Chicago

Exhibit C.
Entered 10/01/20 08:44:55

# GALLAGHER, HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS
and at Lloyd's

D. W. L. M. VEREKER, (Managing Director)
D. J. M. ARNOLD
J. P. GALLAGHER, (U.S.A.)
R. E. GALLAGHER, (U.S.A.)
O. D. S. JONES
R. B. OWLES
J. J. SHAW
J. O. STREET

**110 FENCHURCH STREET**
**LONDON, EC3M 5JJ**

Telephone: 01-481 2222

Cables & Telegrams:
GALVER O, LONDON

Telex: 8937306
Registered No. 1199013 England

International Special Risks Services Inc.,
10 Gould Center,
Golf Road,
Rolling Meadows,
Illinois 60008,
U.S.A.

Date: 27th April, 1983

Your Ref.

Our Ref.

## ADDENDUM NO. 2 to
## COVER NOTE No. GHV 051/182

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:         THE DIOCESE OF ROCKVILLE CENTRE, NEW YORK.

PERIOD:          36 months at 1st october, 1982.

It is noted and agreed effective inception the following are included in the Policy :-

|  | LOCATION | COVERAGES AND LIMIT |
|---|---|---|
| i) | Mercy Hospital, Rockville Centre, New York | $9,200,000 B.I.<br>$ 500,000 E.E. |
| ii) | St. Francis Hospital, Roslyn New York | $4,700,000 B.I.<br>$ 500,000 E.E. |
| iii) | St. Mary of the Angels Home, Convent Road, Syosset, Nassau County, New York | $ 40,000 Rental Income |
| iv) | Catholic Press Association, 53 North Park Avenue, Rockville Centre, New York | $ 60,000 Extra Expense |

It is further noted and agreed effective inception 'Type' hereon is amended to include Business Interruption.

All other terms and conditions remain unchanged.

# GALLAGHER, HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS
#### and at Lloyd's

D. W. L. M. VEREKER, (Managing Director)
D. J. M. ARNOLD
J. P. GALLAGHER, (U.S.A.)
R. E. GALLAGHER, (U.S.A.)
G. D. S. JONES
R. B. OWLES
J. J. SHAW
J. O. STREET

110 FENCHURCH STREET
LONDON, EC3M 5JJ

Telephone: 01-481 2222

Cables & Telegrams:
OALVER O. LONDON

Telex: 8831506
Registered No. 1185303 England

Arthur J. Gallagher & Co.,
10 Gould Center,
Golf Road,
Rolling Meadows,
Illinois 60008,
U.S.A.

Date 21st October 1982

Your Ref.

Our Ref.

### Addendum No. 1 to
### COVER NOTE No.  GHV 051/182

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:     THE DIOCESE OF ROCKVILLE CENTRE, NEW YORK.

PERIOD:     36 months at 1st October, 1982.

It is noted and agreed effective 1st October, 1982 sub-limits in respect of Extra Expense and Tuition Fees are amended to read as follows:-

Extra Expense/Tuition Fees: $100,000 each and every loss.

All other terms and conditions remain unchanged.



Exhibit C

# GALLAGHER, HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS
### and at Lloyd's

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
J. P. GALLAGHER, *(U.S.A.)*
R. B. GALLAGHER, *(U.S.A.)*
O. D. S. JONES
R. B. OWLES
J. J. SHAW
J. O. STREET

110 FENCHURCH STREET
LONDON, EC3M 5JJ

*Telephone:* 01-481 2222

*Cables & Telegrams:*
GALVER G, LONDON

*Telex:* 8931306
*Registered No.* 1193013 *England*

Arthur J. Gallagher & Co.,
10 Gould Center,
Golf Road,
Rolling Meadows,
Illinois 60008,
U.S.A.

21st September, 1982

*Date*

*Your Ref.*

*Our Ref.*

### COVER NOTE No. GHV051/182

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:   EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE, EXTRA EXPENSE, TUITION FEES, ARCHITECTS FEES, OWNED BUILDERS RISK, TRANSIT, PRIESTS PERSONAL EFFECTS, AUTO PHYSICAL DAMAGE, MONEY & SECURITIES, COMPREHENSIVE GENERAL LIABILITY INCLUDING HOSTS/LIQUOR LAW LIABILITY, AUTO LIABILITY, NON-OWNED AIRCRAFT LIABILITY, CEMETERY MALPRACTICE AUTO AND PREMISES MEDICAL PAYMENTS, WORKERS COMPENSATION AND/OR EMPLOYERS LIABILITY AND/OR OCCUPATIONAL DISEASE, EMPLOYEE FIDELITY, ERRORS AND OMISSIONS AND SCHOOL BOARD LIABILITY.

FORM:   Archbishop Package Wording together with all endorsements as far as applicable as expiry.

ASSURED:   THE DIOCESE OF ROCKVILLE CENTRE, NEW YORK.

PERIOD:   36 months at 1st October, 1982.

INTEREST:   All Real and Personal Property, and other perils as set out above in respect of all operations of the various Assureds and for their Agencies as more fully defined in the policy wording.

SUM INSURED:   $ 400,000 each and every loss and/or occurrence
$1,000,000 in the aggregate annually in respect of the Assured's retention.

BUT ONLY TO PAY EXCESS OF:

$ 100,000 each and every loss and/or occurrence
$2,500,000 in the aggregate annually in respect of the Assured's retention.

.../...



Part 3: London Program Policy Compendium  Pg 68 of 115

Page No.  of Covernote No. GHV 051/182, dated 21st September, 1982.

The Loss Limits in respect of the Self Insured Fund and within the limits of this insurance shall not exceed:

Towing Expenses: $ 25 each and every loss.
Priests Personal Effects: $ 10,000 any one person, each and every loss.
Medical Payments: $ 5,000 any one person.
Money & Securities: $ 25,000 each and every loss.
Employee Fidelity: $ 25,000 each and every loss.
Extra Expense: $100,000 each and every loss.
Tuition Fees: $100,000 each and every loss.
W.C.A./E.L./O.D.: $150,000 any one occurrence.
All Third Party: $200,000 any one occurrence C.S.L.
Errors & Omissions and
School Board Liability: $200,000 any one claim and in the aggregate annually.

Flood: $500,000 in the aggregate annually.

SITUATION: Worldwide.

CONDITIONS: Physical Damage cover on replacement cost basis with $100 deductible to apply to all Physical Damage perils except Auto Comprehensive.

Retroactive Date in respect of Errors & Omissions and Employee Fidelity: 1st October, 1976.

Errors and Omissions to include all Priests, Religious Personnel and Employees.

Servicing by Gallagher Bassett at Assured's expense.

30 Days Cancellation Clause prior to Anniversary Date only.

Ultimate Nett Loss Clause.

Loss figures quarterly to Underwriters and loss fund and risk to be reviewed by Underwriters 60 days before Anniversary Date.

Effective 1st October, 1982 the loss limitations in respect of the Self Insured Fund and within the limits of this insurance are amended as follows:-

Auto Liability: $100,000 any one occurrence C.S.L.
W.C.A./E.L./O.D.: $100,000 any one occurrence.

Return Prmeium: $5,000 annual.

PREMIUM: $1,785,000 payable one third annually.
Adjustable on usual basis.

.../...


RECEIVED
SEP 29 1982
Arthur J. Gallagher
and Company

HEREON:    80%.

= 73,616% = $438,015.20
                82%

SECURITY:  92.02% of order  Lloyd's Underwriters

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 15.63% | 210 | 2.78% | 212 | 8.80% | 122 | 4.74% | 119 | 1.39% | 546 |
| 5.21% | 404 | 2.78% | 510 | 3.82% | 56 | 3.65% | 362 | 0.52% | 823 |
| 2.78% | 47 | 3.47% | 582 | 0.69% | 226 | 4.51% | 231 | 3.47% | 918 |
| 3.47% | 43 | 1.04% | 464 | 2.08% | 342 | 0.69% | 92 | 1.74% | 665 |
| 1.74% | 15 | 1.74% | 553 | 0.69% | 205 | 1.39% | 584 | 1.74% | 109 |
| 1.74% | 640 | 2.08% | 947 | 1.04% | 471 | 0.87% | 484 | 1.39% | 977 |
| 0.56% | 598 | 0.14% | 453 | 0.69% | 518 | 1.04% | 33 | 0.87% | 235 |
| 1.04% | 602 | | | | | | | | |


RECEIVED
SEP 29 1982
Arthur J. Gallagher
and Company

HEREON:     80%.

SECURITY:  - 3.47% of order   Excess Ins. Co. Ltd.,

1.04% of order   Yasuda Fire & Marine Ins. Co. (U.K.) Ltd.

3.47% of order   Terra Nova Ins. Co. Ltd.,

051/182

Rockville Centre

# Lloyd's Policy

182
L 4063
5  -83

**Whereas** the Assured named in the Schedule herein has paid the premium specified in the Schedule to the Underwriting Members of Lloyd's who have hereunto subscribed their Names (hereinafter called 'the Underwriters'),

**Now We the Underwriters** hereby agree to insure against loss, damage or liability to the extent and in the manner hereinafter provided.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**Now know Ye** that We the Underwriters, Members of the Syndicate whose definitive numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators and in respect of his due proportion only, to pay or make good to the Assured or to the Assured's Executors or Administrators or to indemnify him or them against all such loss, damage or liability as herein provided, after such loss, damage or liability is proved and the due proportion for which each of Us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the total sum insured hereunder which is in the Table set opposite the definitive number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Shares therein, is deemed to be incorporated in and to form part of this Policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

*[signature]*

**LLOYD'S POLICY SIGNING OFFICE,**
*General Manager*

FOR EMBOSSMENT BY LLOYD'S POLICY SIGNING OFFICE

**J(A)**   NMA 2002 (11.4.74)
Form approved by Lloyd's Underwriters' Non-Marine Association.
Printed by The Carlton Berry Co. Ltd.

The Assured is requested to read this Policy and, if it is incorrect, return it immediately for alteration.

In all communications the Policy Number appearing in line one of the Schedule should be quoted.

In the event of any occurrence likely to result in a claim under this Policy, immediate notice should be given to:

**U.S.A.**

### NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

**U.S.A.**

### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

**U.S.A.**

### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—PHYSICAL DAMAGE—DIRECT

*(Approved by Lloyd's Underwriters' Non-Marine Association)*

### SERVICE OF SUIT CLAUSE (U.S.A.)
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon

## Lord, Bissell & Brook, 115 South Lasalle Street,

## Chicago, Illinois 60603

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters and, upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

22.8.62
N.M.A. 772

waste.

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations, "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE — As respects policies which afford liability coverage and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17/3/60
N.M.A. 1256

# Schedule

Policy or Certificate No.  GHV **051**    /    **182**        Contract No. (if any)

The name and address of the Assured

Roman Catholic Diocese of Rockville Centre, and all Legal Entities
therein over which the same central authority appoints or controls
the appointment of the board of trustees or similar body and exercises
direct, complete and active control over the finances, properties,
operations and activities,
50 North Park Avenue,
Rockville Centre, New York 11570.

The risk and sum insured hereunder

EXCESS ALL RISKS OF PHYSICAL LOSS OR DAMAGE, EXTRA EXPENSE, TUITION
FEES, ARCHITECTS FEES, OWNED BUILDERS RISK, TRANSIT, PRIESTS PERSONAL
EFFECTS, AUTO PHYSICAL DAMAGE, MONEY & SECURITIES, COMPREHENSIVE
GENERAL LIABILITY INCLUDING HOSTS/LIQUOR LAW LIABILITY, AUTO LIABILITY,
NON-OWNED AIRCRAFT LIABILITY, CEMETERY MALPRACTICE AUTO AND PREMISES
MEDICAL PAYMENTS, WORKERS COMPENSATION AND/OR EMPLOYERS LIABILITY
AND/OR OCCUPATIONAL DISEASE, EMPLOYEE FIDELITY, ERRORS AND OMISSIONS
AND SCHOOL BOARD LIABILITY.

This insurance being for 92.02% part of 100.00% of 80.00% covers
its pro rata proportion of the risks and liability more particularly
described in the attached wording, which is hereby declared to be
incorporated in and to form part of this Policy, and the percentages
signed hereon are percentages of 100.00% of 80.00% and not of 92.02%
of 80.00%

The Premium  US$434,334.40 part of US$472,000.00 being the first annual
instalment with subsequent equal instalments being due and payable
on 1st October 1983 and 1st October, 1984.

The period of Insurance from  1st October 1982        to  1st October 1985
both days inclusive, and for such further period or periods as may be mutually agreed upon
12.01 a.m. Local  Standard Time.

Dated in  LONDON                        the  9th March 1983

**J** or **J(A)** (Schedule) NMA 2003 for attachment to NMA 2001, NMA 2002, NMA 2004 or NMA 2005

ENDORSEMENT

Attaching to and forming part of Policy    No. GHV 051/182

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982     Endorsement No. 17

It is understood and agreed effective October 1, 1982 the Assured is building
an addition to Good Samaritan Hospital:

| | |
|---|---|
| Total Value of Addition | $12,102,800 |
| Business Interruption: | 5,520,000 |
| Extra Expense: | 500,000 |

It is also understood and agreed that the New York State Department of
Health is added as an Additional Insured in respect of the above addition.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 9, 1982     ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By _Donald J Koester_

**ENDORSEMENT** forming part of Policy No.

In the name of:

## DIOCESE OF ROCKVILLE CENTRE

Endorsement No. 16

### TUITION FEES ENDORSEMENT

1. Subject to all the provisions applicable to Section 1 of this policy, this Policy is extended to insure against loss of tuition fees resulting directy from damage to or destruction by the perils insured against of real or personal property, during the term of this policy, on the Assured's premises, subject to the limit of liability for the premises at which the damage or destruction occurs. For the purposes of this insurance, 'perils insured against' shall mean the perils, as defined and limited in this Policy and any endorsements attached hereto for each premise and also subject to the provisions of this Endorsement.

2. Underwriters shall be liable for:
   a. the actual loss of tuition fees sustained by the Assured less charges and expenses which do not necessarily continue during the period of time, not limited by the date of expiration of this Policy commencing with the date of such damage or destruction and ending on the day preceding the beginning of the first school year following the date that the damaged or destroyed real or personal property could, with the exercise of due diligence and dispatch, be rebuilt, repaired or replaced.

   If the period of time as provided above shall end on a date within 30 days immediately preceding the beginning of the first school year specified above, the period of liability for loss is hereby extended to end on the day preceding the beginning of the second school year; and

   b. the actual loss sustained by the Assured, resulting directly from an interruption of business as covered hereunder during the length of time, not exceeding two consecutive weeks, when, as a direct result of damage to or destruction of property adjacent to the premises insured by the perils(s) insured against, access to such insured premises is specifically prohibited by order of civil authority; and

   c. loss resulting from damage to or destruction of media for, or programming records pertaining to electronic data processing or electronically controlled equipment, including data thereon, by the perils insured against. The length of time for which the Underwriters shall be liable hereunder shall not exceed –
   (1) 30 consecutive calendar days; or
   (2) the length of time that would be required to rebuild, repair of replace such other property insured as has been damaged or destroyed; whichever is the greater length of time;

   d. such expenses as are necessarily incurred for the purposes of reducing loss under this Endorsement (except expense incurred to extinguish a fire), but in no event shall the aggregate of such expenses exceed the amount by which the loss under this Endorsement is thereby reduced.

Cont/d...

- 2 -

3. **Resumption of Operations:** It is a condition of this insurance that if
   the Assured could reduce the loss resulting from the interruption of
   business,
   a. by complete or partial resumption of operation of the property insured,
      whether damaged or not, or
   b. by making use of other property, equipment or supplies at the locations
      insured or elsewhere, such reduction shall be taken into account in
      arriving at the amount of loss hereunder.

4. **Definitions:**
   a. For the purposes of this insurance, 'tuition fees' are defined as the
      sum of tuition, fees and other income from students, less the cost of
      merchandise sold and materials and supplies consumed in services sold
      to such students. In determining tuition fees, due consideration shall
      be given to the experience of the Assured before the date of damage or
      destruction and the probable experience thereafter had no loss occurred.

   b. The words 'beginning of school year,' however modified, wherever used
      in this Endorsement shall mean the opening date of school in the Fall
      as prescribed, or as would be prescribed, in the school catalogue.

   c. The term 'directly,' as applied to loss under this Endorsement, means
      loss, as limited and conditioned in this policy, resulting from direct
      loss to the property insured from the perils insured against.

5. **Alterations and New Buildings:** Permission granted to make alterations
   in or to construct additions to any building insured and to
   construct new buildings on the insured premises. This Endorsment is
   extended to cover, subject to all its provisions, loss resulting from
   damage to or destruction of such alterations, additions, or new buildings
   while in course of construction and when completed or occupied, provided
   that, in the event of damage to or destruction of such property (including
   building materials, supplies, machinery or equipment incident to such
   construction or occupancy while on the insured premises or within 100 feet
   thereof) so as to delay commencement of business operations of the Assured,
   the length of time for which the Underwriters shall be liable shall be
   determined as otherwise provided herein but such determined length of time
   shall be applied and the loss hereunder calculated from the date that
   business operations would have begun had no damage or destruction occurred.

6. **Additional Exclusions and Limitations;**

   a. Underwriters shall not be liable for any increase of loss which may be
      occasioned by:

      (1) enforcement of any local or state ordinance or law regulating
          construction, repair or demolition of buildings or stuctures,
      (2) intereference at the insured premises by strikers or other persons
          with rebuilding, repairing or replacing the property or with
          the resumption or continuation of business,
      (3) the suspension, lapse or cancellation of any lease or license,
          contract or order unless such suspension, lapse or cancellation
          results directly from the interruption of business, and then
          the Underwriters shall be liable for only such loss as affects the
          Assured's earnings during, and limited to, the period of
          indemnity covered under this policy.

Cont/d...

b. Underwriters shall not be liable for:

    (1) more than the amount set forth in the limits of liability for each premises insured,

    (2) loss resulting from theft of any property which at the time of loss is not an integral part of a building or structure (except direct loss by pillage and looting occurring during and at the immediate place of a riot or civil commotion), unless loss by a peril not excluded in this policy ensues from theft or attempted theft, and then the Underwriters shall be liable for only such ensuing loss,

    (3) any other consequential or remote loss.

7. Requirements in Case Loss Occurs: The Assured shall give immediate written notice to the Underwriters of any tuition fees loss as covered by this policy and protect the property from further damage that might result in extension of the period of interruption; and within 60 days following the date of damage to or destruction of the real or personal property insured, unless such time is extended in writing by the Underwriters, the Assured shall render to the Underwriters a proof of loss, signed and sworn to by the Assured, stating the knowledge and belief of the Assured as to the following:

a. the time and origin of the property damage or destruction causing the interruption of business,

b. the interest of the Assured and of all others in the business,

c. all other contracts of insurance, whether valid or not, covering in any manner the loss insured against by this policy, and

d. any changes in the title, nature, location, encumbrance or possession of said business since the issuing of this policy, and

e. by whom and for what purpose any building insured and the several parts thereof were occupied at the time of damage or destruction, and shall furnish a copy of all the descriptions and schedules in all policies and the actual amount of tuition fees value and loss claimed, accompanied by detailed exhibits of all values, costs and estimates upon which such amounts are based.

The Assured, as often as may be reasonably required, shall exhibit to any person designated by the Underwriters all that remains of any property insured and submit to examinations under oath by any person named by the Underwriters, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Underwriters or their representatives, and shall permit extracts and copies thereof to be made.

Subject otherwise to all terms, clauses and conditions, not in conflict with the foregoing, remaining unaltered.

ENDORSEMENT

Attaching to and forming part of Policy No. GHV 051/182

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982          Endorsement No. 15

It is hereby noted and agreed that the following is made part of the policy conditions:

### ARCHITECTS' FEES

This Insurance covers the additional assessment involving architects' fees for consultations arising from losses resulting from an insured peril. Fees are limited to seven (7%) percent of replacement cost.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 9, 1982          ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By  *Donald J Krutek*

DIOCESE OF ROCKVILLE CENTRE.

In the name of:

Endorsement No. 14

## EXTRA EXPENSE

### 40/80/100% of Limit

It is agreed that if the property described in Insuring Agreement A of Section I is damaged or destroyed by perils insured against in said Insuring Agreement A during the period of this Insurance so as to necessitate the incurrence of Extra Expense (as defined below) the Underwriters shall be liable for the Extra Expense so incurred, not exceeding the actual loss sustained, for not exceeding such length of time, hereinafter referred to as the 'period of restoration'.

It is further agreed that this extension of coverage shall not operate to increase the Underwriters limits of liability hereunder.

Underwriters shall be liable for no greater percentage of the amount of this Policy than is stated below for the determined period of restoration.

    40% if period of restoration is not in excess of one month;

    80% if period of restoration exceeds one month but does not exceed two months;

    100% if period of restoration exceeds two months.

DEFINITIONS

a) Extra Expense: The term 'Extra Expense' means the excess (if any) of the total cost incurred during the period of restoration chargeable to the operation of the Assured's business, over and above the total cost that would normally have been incurred to conduct the business during the same period had no damage or destruction occurred.

Any salvage value of property obtained for temporary use during the period of restoration which remains after the resumption of normal operations, shall be taken into consideration in the adjustment of any loss hereunder.

b) Normal: The term 'Normal' wherever used herein shall mean; the condition that would have existed had no loss occurred.

c) Month: The word 'month' wherever used herein means 30 consecutive days.

d) Period of Restoration: The term 'period of restoration' means such length of time commencing with the date of damage and not limited by the date of expiration of this policy, as would be required with the exercise of due diligence and dispatch to repair, rebuild or replace such part of the Assured's property as has been damaged or destroyed.

Contd/...

CONDITIONS

a) Resumption of Operations:  It is a condition of this Insurance that
as soon as practicable the Assured shall resume normal operations of the
business and shall dispense with such extra expense.

b) Interruption by Civil Authority:  Liability hereunder is extended to
include actual loss as covered hereunder, sustained during the period of
time, not exceeding two weeks, when as a direct result of a peril insured
against, access to the premises in which the Assured's property is located
is prohibited by order of civil authority.

EXCLUSIONS

In addition to the General Exclusions of this Insurance Underwriters shall
not be liable for Extra Expense resulting from;

a) The suspension, lapse or cancellation of any lease, license, contract
or order beyond the period of restoration.

b) Interference at premises by strikers or other persons with rebuilding,
repairing or replacing the property damaged or destroyed or with the
resumption or continuation of business.

c) Enforcement of any local or state ordinance or law regulating
construction, repair or demolition of buildings or structures.


Further, Underwriters shall not be liable for

1) more than the amount of Underwriters limits of liability as respects
each premises;

2) loss of income;

3) the cost of repairing or replacing any of the real or personal property
of the Assured, or the cost of research or other expense necessary to
replace or restore damaged or destroyed books of account, abstracts,
drawings, card index systems or other records (including film, tape, disc,
drum, cell or other magnetic recording or storage media for electronic data
processing), that have been damaged or destroyed by the perils insured
against, except cost in excess of the normal cost of repair, replacement
or restoration necessarily incurred for the purpose of reducing loss under
this policy.  In no event shall such excess cost exceed the amount by which
the total extra expense loss otherwise payable under this policy is thereby
reduced;

Contd/...

- 3 -

4) loss resulting from theft of any property which at the time of loss is not an integral part of a building or structure (except direct loss by pillage and looting occurring during and at the immediate place of a riot or civil commotion), unless loss by a peril not excluded in this policy ensues from theft or attempted theft, and then the Underwriters shall be liable for only such ensuing loss;

5) any other consequential or remote loss.

Subject otherwise to all terms, clauses and conditions as heretofore.

ENDORSEMENT forming part of Policy No.

in the name of:

## DIOCESE OF ROCKVILLE CENTRE

Endorsement No. 13

## TRANSIT EXTENSION

### INSURING CLAUSE

In consideration of the premium paid and subject to the terms, loss limits and conditions of the policy to which this Extension is attached and to the following conditions and exclusions, this insurance is hereby extended to cover;

Personal property of the Assured or property held by the Assured in trust or on commission or on consignment for which the Assured may be held legally liable while in due course of transit within the limits of the Continental United States of America (excluding Hawaii) and Canada, against All Risks of Direct Physical Loss or Damage to the property insured occurring during the period of this policy (including general average and salvage charges on shipments covered while waterborne).

### PERILS EXCLUDED

This Extension does not insure against:

1) Loss or damage to personal property resulting from;

shrinkage, evaporation, loss of weight, leakage, breakage of glass or other fragile articles, marring, scratching, exposure to light, or change in colour, texture or flavour, unless such loss is caused directly by fire or the combating thereof, lightning, windstorm, hail, explosion, strike, riot or civil commotion, aircraft, vehicles, breakage of pipes or apparatus, spinkler leakage, vandalism and malicious mischief, theft or attempted theft.

2) Loss of use, delay or loss or markets.

3) Loss or damage caused by or resulting from moth, vermin, termites, or other insects, inherent vice, latent defect, wear, tear or gradual deterioration; contamination; rust, wet or dry rot, mould, dampness of atmosphere, smog or extremes of temperature.

4) Loss or damage caused by or resulting from misappropriation, conversion, infidelity or any dishonest act on the part of the Assured or other party of interest, his or their employees or agents or others to whom the property may be delivered or entrusted (carriers for hire excepted).

Contd/...

- 2 -

5)   Loss or damage to the property insured occasioned by war, invasion,
     hostilities, acts of foreign enemies, civil war, rebellion, insurrection,
     military or usurped power or martial law or confiscation by order of any
     Government or public authority.

6)   Loss or damage arising directly or indirectly from nuclear reaction,
     nuclear radiation or radioactive contamination however such nuclear
     reaction, nuclear radiation or radioactive contamination may have been
     caused. Nevertheless if a fire arises directly or indirectly from nuclear
     reaction, nuclear radiation or radioactive contamination any loss or damage
     arising directly from that fire shall (subject to the provisions of this
     Policy) be covered excluding however all loss or damage caused by nuclear
     reaction, nuclear radiation or radioactive contamination arising directly
     or indirectly from that fire.

7)   Loss or damage caused by breakdown or derangement of refrigerating units.


### DEDUCTIBLE(S)

Each loss or series of losses arising out of one event shall be adjusted
separately and from the amount of each such adjusted loss the sum(s) stated
in PART I (AGGREGATE AGREEMENT) A) 2) shall be deducted.


### PROPERTY EXCLUDED

This Extension does not cover:

1)   a.  Aircraft, watercraft, vehicles designed for highway use, animals,
         jewellery, precious stones and furs or garments trimmed with fur.

     b.  Accounts, bills, currency, money, notes, securities, deeds, evidences
         of debt and valuable papers.

     c.  Data processing equipment and media, including but not limited to
         film, tape, disc, drum, cell and other recording or storage media for
         data processing.

2)   Property in due course of ocean marine transit.

3)   Shipments by mail after delivery into the custody of the Post Office
     Department.

4)   Samples whilst in the care, custody or control of salesmen.

Contd/...

- 3 -

## CONDITIONS

1)  The Assured may accept without prejudice to this insurance the ordinary
bills of lading or receipts issued by carriers including those containing
released and/or partially released value provisions, but the Assured shall
not enter into any special agreement with carriers releasing them from
their common law or statutory liability.

2)  Property insured hereunder shall be valued as follows:

A.  Sold Property at the actual net invoice price of the Assured.

B.  Unsold property at the actual cash value of the property at the time
any loss or damage occurs with proper deduction for depreciation and
in no event to exceed what it would cost to repair or replace the
property with material of like kind and quality.

Subject otherwise to all terms, clauses and conditions as heretofore.

ENDORSEMENT forming part of Policy No.    GHV 051/182

## DIOCESE OF ROCKVILLE CENTRE

In the name of:

Endorsement No. 12

### GROSS EARNINGS BUSINESS INTERRUPTION

### INSURING CLAUSE

In consideration of the premium paid and subject to the terms, conditions and exclusions of the policy to which this extension is attached and to the following terms and conditions, this Insurance is extended to cover:-

Against loss resulting directly from necessary INTERRUPTION OF BUSINESS caused by Direct Physical Loss or Damage, as covered by the policy to which this Extension is attached, and/or personal property, occurring during the term of this Policy on premises occupied by the Assured.

In the event of such loss or damage Underwriters shall be liable for the Actual Loss Sustained by the Assured resulting from such interruption of business, but not exceeding the reduction in Gross Earnings less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property as has been lost or damaged, commencing with the date of such loss or damage and not limited by the date of expiration of this Policy.  Due consideration shall be given to the continuation of normal charges and expenses including payroll expenses, to the extent necessary to resume operations of the Assured with the same quality of service which existed immediately preceeding the loss.

### SUM INSURED

The Underwriters hereon shall not be liable for more than the Sum Insured stated in the Declarations in respect of each and every loss, irrespective of the number of locations suffering an interruption of business.

### DEFINITIONS

1. Gross Earnings

    In respect of Non-Manufacturing or Mercantile risks 'Gross Earnings' are defined as the sum of:

    (a) Total net sales, and

    (b) Other earnings derived from the operations of the business less the cost of

    (c) Merchandise sold including packaging materials therefor

    (d) Materials and supplies consumed directly in supplying the service(s) sold by the Assured, and

    (e) Service(s) purchased from outsiders (not employees of the Assured) for resale which do not continue under contract.

    Contd/...

In respect of Manufacturing Risks 'Gross Earnings' are defined as the sum of:-

(a)  The total net sales value of production

(b)  Total net sales of merchandise, and

(c)  Other earnings derived from operations of the business less the cost of

(d)  Raw stock from which such production is derived

(e)  Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock, or in supplying the services sold by the Assured

(f)  Merchandise sold, including packaging materials therefor, and

(g)  Service(s) purchased from outsiders (not employees of the Assured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

In dertermining Gross Earnings due consideration shall be given to the experience of the business before the date of loss or damage and the probable experience thereafter had no loss occurred.

2.  Raw Stock is material in the state in which the Assured received it for conversion into finished stock.

3.  Stock in Process is raw stock which has undergone any ageing, seasoning, mechanical or other process of manufacture at the Assured's premises but which has not become finished stock.

4.  Finished Stock is stock manufactured by the Assured which in the ordinary course of the Assured's business is ready for packing, shipment or sale.

5.  Merchandise is goods kept for sale by the Assured which are not the product of manufacturing operations conducted by the Assured.

6.  Normal is the condition that would have existed had no loss occurred.


## CONDITIONS

1. Direct Damage

No claims shall be sustained against this Extension resulting from the necessary interruption of business unless and until a loss has been paid, or liability admitted, in respect of direct physical damage to property insured under the policy to which this Extension is attached, giving rise to business interruption.

This Condition shall not apply if no such payment shall have been made nor liability admitted solely owing to the operation of a deductible in such policy excluding liability for losses below a specified amount.

2. Resumption of Operations
If the Assured could reduce the loss resulting from the interruption of business:

a.  by complete or partial resumption of operation of the property whether or not such property be lost or damaged, or

b.  by making use of merchandise or other property at the Assured's locations or elsewhere, and

c.  in respect of Manufacturing risks, by making use of stock (raw, in process or finished) at the Assured's locations or elsewhere,

such reduction shall be taken into account in arriving at the amount of loss hereunder.

Contd/...

### 3. Expenses to Reduce Loss

This Extension also covers such expenses as are necessarily incurred for the purpose of reducing loss under this Extension (except expenses incurred to extinguish a fire) and in respect of Manufacturing Risks, such expense, in excess of normal, as would necessarily be incurred in replacing any finished stock used by the Assured to reduce loss under this Extension; but in no event to exceed the amount by which loss under this Extension is thereby reduced.

### 4. Finished Stock

In respect of Manufacturing Risks Underwriters shall not be liable for any loss resulting from loss of or damage to finished stock nor for the time required to reproduce such finished stock.

### 5. Special Exclusion

Underwriters shall not be liable for any increase of loss which may be occasioned by any local or state ordinance or law regulating construction or repair of buildings or structures, nor by the suspension, lapse or cancellation of any lease or license, contract or order, nor for any increase of loss due to intereference at the Assured's premises by strikers or other persons with rebuilding or replacing the property or with the resumption or continuance of the businsss; nor shall Underwriters be liable for any other consequential or remote loss.


Subject otherwise to all terms, clauses and conditions as heretofore.

In the name of:    Roman Catholic Diocese of Rockville Centre, etal

<u>Endorsement No. 11</u>

It is hereby understood **and agreed that effective 1st October, 1982 the**
**loss limitations in respect of the Self-Insured Fund and within the limits**
of this insurance are amended as follows:

Auto Liability:                    $100,000 any one occurrence C.S.L.

W.C.A./E.L./O.D.:                  $100,000 any one occurrence

In consideration of the foregoing there is due and payable by Underwriters
herein a Return Premium of US$5,000.00 (100%) which amount has been taken
into account in ariving at the premium charged herein.

Subject otherwise to all terms, clauses and conditions as heretofore.

ENDORSEMENT

Attaching to and forming part of Policy    No. GHV 051/182

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982      Endorsement No. 10

It is hereby understood and agreed with effect from October 1, 1982, the Errors and Omissions coverage is amended to include all priests, religious personnel and employees.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 9, 1982      ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By _Donald J Krutch_

ENDORSEMENT

Attaching to and forming part of Policy   No. GHV 051/182

in the name of Roman Catholic Diocese of Rockville Centre, et ai

Effective date of this endorsement is October 1, 1982                    Endorsement No. 9

It is agreed and understood the following is added as an additional insured under this policy:

The City of New York Department of Sanitation in respect of:

St. Agnes Academic High School
13-20 124th Street
College Point, Queens, New York

In accordance with the Hold Harmless Agreement entered into between the Assured and the City.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 9, 1982        ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By _Donald J Krutch_

ENDORSEMENT

Attaching to and forming part of Policy    No. GHV 051/182

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982                Endorsement No. 8

It is agreed that the "Named Insured" includes all insureds and additional
interests named in certificate of insurance applying to automobile liability for
the personal automobiles of priests and nuns. These certificates shall be on file
with Gallagher Bassett of New York, Inc.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 9, 1982        ARTHUR J. GALLAGHER & CO. (ILLINOIS)

                                By _Donald J Krutek_

ENDORSEMENT

Attaching to and forming part of Policy No. GHV 051/182

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982          Endorsement No. 7

It is further agreed that with respect to the operations of hospitals this policy does not apply to Liability arising out of professional medical services rendered or failure to be rendered.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 9, 1982          ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By _Donald J Kreitela_

In the name of:  Roman Catholic Diocese of Rockville Centre, etal

Endorsement No. 6

Notwithstanding SECTION IV - GENERAL CONDITION 5 - CANCELLATION contained herein to the contrary it is hereby understood and agreed that the same shall be deemed to be deleted and the following substituted in lieu thereof:-

5. CANCELLATION

This insurance may be cancelled as of any anniversary date by either of the parties upon written notice to the other party, provided said notice is issued at least 30 days prior to the said anniversary.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

Subject otherwise to all terms, clauses and conditions as heretofore.

In the name of:    Roman Catholic Diocese of Rockville Centre, etal

---

Endorsement No. 5

Notwithstanding GENERAL INSURANCE AGREEMENT IV (f) and (g) contained herein to the contrary, it is hereby understood and agreed that the same shall be deemed to be deleted and the following substituted in lieu thereof:

(f) $5,000                    any one person as respects other than
                              Automobile Medical Payments under
                              Section II Agreement C. (Coverages
                              exclude payments to or for Students).

(g) $5,000                    any one person as respects Automobile
                              Medical Payments under Section II
                              Agreement E.

Subject otherwise to all terms, clauses and conditions as heretofore.

**ENDORSEMENT**

Attaching to and forming part of Policy    No. GHV 051/182

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982                    Endorsement No. 4

In consideration of the premium charged, it is agreed the policy is extended to include the following coverage:

## AUTOMOBILE NON OWNERSHIP

Notwithstanding anything contained herein to the contrary, this policy is extended to include Non Ownership Liability but only to provide coverage for owners of automobiles while being used in connection with activities being sponsored by the Named Insured.

It is further agreed this extension shall be excess of any other valid and collectible insurance.

The Loss Limitation hereon in respect of Automobile Bodily Injury/Property Damage remains at $200,000 Combined Single Limit from ground.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 9, 1982            ARTHUR J. GALLAGHER & CO.  (ILLINOIS)

By *Donald J Kreteb*

ENDORSEMENT

Attaching to and forming part of Policy No. GHV 051/182

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982                    Endorsement No. 3

It is hereby understood and agreed that the following are named as
Additional Named Insureds under this policy:

    Bishop John R. McGann

    Bishop Emeritus Walter P. Kellenberg

    Auxiliary Bishop Gerald J. Ryan

    Auxiliary Bishop James J. Daly

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 9, 1982          ARTHUR J. GALLAGHER & CO.  (ILLINOIS)

                        By _Donald J Knuteb_

# ENDORSEMENT

Attached to and forming part of Policy   No. GHV 051/182

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982      Endorsement No. 2

IT IS AGREED that the first annual installment premium is $595,000 based on total values of $1,050,451,297 and future annual installments will be based on anniversary date values calculated as follows:

Going In Values

plus (a)   Additions
less (b)   Deletions
plus (c)   the reconstruction cost variation
as provided by Gallagher Bassett
Insurance Service

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

## THIS IS A CLAIMS MADE ENDORSEMENT

Attached to and forming part of Policy No. GHV 051/182

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982      Endorsement No. 1

## ERRORS AND OMISSIONS

IT IS AGREED that Section II Agreement C is amended to include the following:

The Underwriters agree, subject to the terms and conditions hereof, to idemnify the Assured (as hereinafter defined) against any claims or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER agreed:

(1)   There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to October 1, 1976, (hereinafter referred to as the "Retroactive Date").

(2)   In the event of non-renewal or termination of this Insurance, then this Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemeteries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

## COMBINED PROPERTY, CASUALTY AND CRIME INSURANCE

This Insurance provides the following -

| | | |
|---|---|---|
| SECTION I | - | PROPERTY INSURANCE |
| Agreement A | - | Building and Contents |
| Agreement B | - | Automobile |

| | | |
|---|---|---|
| SECTION II | - | CASUALTY INSURANCE |
| Agreement C | - | General Liability |
| Agreement D | - | Liquor Liability |
| Agreement E | - | Automobile Liability |
| Agreement F | - | Workers' Compensation and/or Employers' Liability and/or Occupational Disease |

| | | |
|---|---|---|
| SECTION III | - | CRIME INSURANCE |
| Agreement G | - | Money and Securities (within premises) |
| Agreement H | - | Money and Securities (outside premises) |
| Agreement I | - | Commercial Blanket Bond |

DECLARATIONS

ASSURED:

Roman Catholic Diocese of Rockville Centre, and All Legal Entities Therein Over Which the Same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Exercises Direct, Complete and Active Control over the Finances, Properties, Operations and Activities.

ADDRESS:

50 North Park Avenue
Rockville Centre, New York  11570

LIMITS OF LIABILITY:    See Part I for Aggregate Agreement;
Part II for Specific Excess Agreement.

PREMIUM:    Annual Premium SEE ENDORSEMENT #2 ATTACHED

TERM OF INSURANCE:    Effective from October 1, 1982 to October 1, 1985
BOTH DAYS at 12:01 A.M. Standard Time
at Assured's Address shown above.

## BPWC (BISHOPS PACKAGE INC. W.C.A.)

### PART I                 (AGGREGATE AGREEMENT)

**LIMITS OF LIABILITY:** The Underwriters' Limits of Liability under this Agreement shall be only for the Excess of Loss over

A)   An annual aggregate Loss Fund of $2,500,000 ultimate net loss (hereinafter referred to as "Assured's Loss Fund"). As respects any one loss the Assured's Loss Fund shall not be charged with

   1)   an amount in excess of the amount stated in B) below or

   2)   any loss arising under Section I (except Automobile Comprehensive Perils) and Section III which is less than $100

                          **OR**

B)   $100,000 Ultimate Net Loss as respects any one loss under Section I, II or III or any combination thereof

and then in excess of the above amounts up to $1,000,000 ultimate net loss in the aggregate in any one period of insurance in respect of the Assured's Loss Fund.

**LOSS FUND ADJUSTMENT:** The amount of the Assured's Loss Fund applies to the first annual period of this policy and is subject to review and change annually thereafter.

### PART II               (SPECIFIC EXCESS AGREEMENT)

**LIMITS OF LIABILITY:** The Underwriters' Limits of Liability under this Agreement shall be only for the excess of loss over $100,000 ultimate net loss each and every loss and/or occurrence up to a further $400,000 ultimate net loss each and every loss and/or occurrence, under Section I, II or III or any combination thereof.

### GENERAL INSURANCE AGREEMENTS

I.   **PERIOD OF INSURANCE**

   The words "period of insurance" shall be understood to mean any one of the following periods:

   | | | |
   |---|---|---|
   | Period I | – | October 1, 1982 to October 1, 1983 |
   | Period II | – | October 1, 1983 to October 1, 1984 |
   | Period III | – | October 1, 1984 to October 1, 1985 |

## II.   NAME OF ASSURED

It is agreed that Roman Catholic Diocese of Rockville Centre, et al owns and/or operates Parishes, Schools, Cemeteries and Other Agencies under specific Names, and it is the intention of this Insurance to cover such Parishes, Schools, Cemeteries and Other Agencies or directly connected organizations as Named Assureds.

It is also agreed that the unqualified word Assured wherever used in this Insurance includes not only the Named Assured but also -

1.   any official, trustee or employee of the Named Assured while acting within the scope of his duties as such, and any person, organization, trustee or estate to whom the Named Assured is obligated by virtue of written contract or agreement to provide insurance such as is offered by this Insurance, but only in respect to operations by or on behalf of the Named Assured;

2.   under Section II Agreement E any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the Named Assured or with his permission, and any official of the Named Assured with respect to the use of non-owned automobile in the business of the Named Assured.  This Insurance with respect to any person or organization other than the Named Assured does not apply;

   (a)   to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any accident arising out of the operation thereof;

   (b)   to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer;

   (c)   with respect to any hired automobile, to the owner or a lessee thereof, other than the Named Assured, nor to any agent or employee of such owner or lessee;

   (d)   with respect to any non-owned automobile, to any official or employee if such automobile is owned by him or a member of the same household.

The inclusion hereunder of more than one Assured shall not operate to increase Underwriters' Limits of Liability.

III.   **TERRITORY**

This Insurance applies World Wide.

IV.   In calculating the amount of Ultimate Net Loss under Part I (Aggregate Agreement) and Part II (Specific Excess Agreement) this Insurance is deemed to have the following maximum limits which will apply for all purposes to the Assured's Loss Fund and to the Specific Excess Agreement:

(a)   $500,000     in the aggregate annually as respects any Flood loss under Section I.

(b)   $200,000     any one occurrence Combined Single Limit Public Liability /Property Damage under Section II Agreements C, D and E, but in the aggregate annually as respects School Board Liability and Errors and Omissions provided by Endorsement No. 1 attached.

(c)   $25,000      each and every loss under Section III Agreements G and H.

(d)   $25,000      each and every loss under Section III Agreement I.

(e)   $150,000     any one occurrence under Section II Agreement F Workers' Compensation and/or Employers' Liability and/or Occupational Disease.

(f)   $5,000       any one person as respects Automobile Medical Payments under Section I Agreement B.

(g)   $5,000       any one person as respects other than Automobile Medical Payments under Section II Agreement C. (Coverage excludes payments to or for students).

(h)   $200,000     any one claim and in the aggregate annually as respects Errors and Omissions provided by Endorsement No. 1 attached and School Board Liability.

(i)   $10,000      any one person, each and every loss as respects Priests Personal Effects.

(j)   $100,000     each and every loss as respects Extra Expense/Tuition Fees.

(k)   $25   each and every loss as respects
towing expenses.

## V.   SERVICE ORGANIZATION

Insurance afforded under this Insurance is issued to the Assured
on the express condition that the Assured undertakes to utilize
at all times the services of Gallagher Bassett Insurance Service,
60 Gould Center, Golf Road, Rolling Meadows, Illinois 60008.
This Service Organization shall perform the following duties:

(a)   Strictly discharge the Assured's obligation to the
employees or members of the public.

(b)   Maintenance of accurate records of all details inci-
dent to payments.

(c)   Furnish inspection and safety engineering services

(d)   Furnish monthly claims records on an approved form.

The acceptance of these services shall be a condition precedent
to any liability which may attach to the Underwriters in accord-
ance with the terms and conditions of this Insurance.

## SECTION I - PROPERTY INSURANCE

## INSURING AGREEMENTS

AGREEMENT A - BUILDING AND CONTENTS: Underwriters agree, subject
to the limitations, terms and conditions of this Insurance, to indemnify the
Assured for all risks of physical loss or damage to All Real or Personal
Property of every kind and description wherever located occurring during
the period of this Insurance.

AGREEMENT B - AUTOMOBILE: Underwriters agree, subject to the limita-
tions, terms and conditions of this Insurance, to indemnify the Assured for
loss or damage to Automobiles owned by the Assured or on which the
Assured has an obligation to provide adequate insurance, wherever located,
against All Risks of Direct Physical Loss, including Collision of the
Automobile with another object.

## SECTION I - DEFINITIONS

1.   PROPERTY OF THE ASSURED:   The term "Assured's
Property" shall mean All Real and Personal Property,
including leasehold improvements or betterments which the
Assured owns, property which the Assured holds on con-
signments, or agrees to insure by any contractual agree-
ment normal to its operations.

2.   AUTOMOBILE:   The term "Automobile" shall mean any
motor vehicle, trailer or semi-trailer, including its equip-
ment and any other equipment permanently attached
thereto. The word "Trailer" shall include semi-trailer.

3.  ULTIMATE NET LOSS:  The words "Ultimate Net Loss" in
respect of this Section shall be understood to mean the loss
sustained by the Assured after making deductions for all
recoveries and salvages.

## SECTION I - EXCLUSIONS

**WITH REGARD TO ALL PROPERTY, THIS INSURANCE DOES NOT INSURE AGAINST:**

1.  Loss by moth, vermin, termites or other insects; wear, tear
or gradual deterioration; rust, wet or dry rot or mould.

2.  Loss or damage caused by

   (a)  Radioactive or fissionable material.
   (b)  Contamination, other than by (a) above, unless
   directly resulting from Fire or Extended Cover-
   age perils.

3.  Loss resulting from loss of use (except such loss of use
coverage as is afforded under a Standard Automobile
Policy in respect of Agreement B above), delay or loss of
markets.

4.  Breakdown of machinery and/or boiler explosion, but not
excluding loss resulting therefrom.

5.  Loss resulting from dampness of atmosphere or variation in
temperature unless caused by the perils of Fire and Ex-
tended Coverage.

6.  Loss of electrical appliances or devices of any kind,
including wiring, arising from electrical injury or distur-
bance to the said electrical appliances or devices or wiring
from artificial causes unless fire or explosion ensues, and
then only for direct loss or damage caused by such ensuing
fire or explosion.

**WITH REGARD TO ALL REAL PROPERTY, THIS INSURANCE DOES NOT INSURE AGAINST:**

Loss by normal settling, normal shrinkage or normal expansion in
foundations, walls, floors or ceilings.

**WITH REGARD TO PERSONAL PROPERTY, THIS INSURANCE DOES NOT INSURE
AGAINST:**

1.  Loss by mechanical derangement, inherent vice or latent
defect.

2.  Loss resulting from processing or faulty workmanship,
unless fire and/or explosion ensues, and then only for direct
loss or damage caused by such ensuing fire or explosion.

3.  Loss resulting from shrinkage, evaporation, loss of weight
or leakage, unless such loss is caused directly by fire or the

combating thereof, lightning, windstorm, hail, explosion, strike, riot or civil commotion, aircraft, vehicles, breakage of pipes or apparatus, sprinkler leakage, vandalism and malicious mischief, theft or attempted theft.

4.    Inventory shortage, mysterious disappearances, or loss resulting from any kind of infidelity or dishonesty on the part of the Assured or any of his employees, except from the perils covered in Section III (Money and Securities - Broad Form) of this Insurance.

## PROPERTY EXCLUDED FROM COVERAGE HEREUNDER:

Animals, aircraft, standing timber and growing crops.

## SECTION I - CONDITIONS

1.    VALUATION:  The Underwriters shall not be liable for loss or damage in excess of:

A.    (Real and Personal Property - other than automobile) - the cost to repair, rebuild or replace the destroyed or damaged property in a condition equal to but not superior to or more extensive than its condition when new.  If the Assured decides to replace destroyed or damaged property on another site, cost of such site is not included hereunder.

It is not a requirement hereunder that the Assured repair, rebuild or replace the destroyed or damaged property in order to collect for loss or damage covered by this Insurance.

B.    (Automobile) - the actual cash value of the automobile at the time of loss.

2.    DEBRIS REMOVAL:  This Insurance covers the expense of removal from the premises containing the property hereunder of debris remaining after any loss hereby insured against, except that there shall be no liability assumed for the expense of removal of any foundations.

3.    REMOVAL CLAUSE:  This Insurance covers the expense and damage occasioned by removal from the premises endangered by the perils insured against wherever such property is located or removed for preservation.

4.    APPRAISAL:  In the event the Assured and Underwriters are unable to agree as to the amount necessary to rebuild, repair or replace the damaged or destroyed property or the actual amount of reimbursement to be paid, each party shall name a competent and disinterested appraiser and the two so chosen shall, before proceeding further, appoint a competent and disinterested umpire.  The appraisers together shall obtain reconstruction estimates, and calculate

the amounts of reimbursement due, and failing to agree, shall submit their differences to the umpire. The award, in writing, duly verified by any two shall determine the points in question. Both parties shall pay the cost of their own appraisers and equally pro rate the cost of the umpire.

5.   **CIVIL AUTHORITY CLAUSE:**   Notwithstanding anything contained in this Insurance to the contrary, property which is insured under this Insurance is also covered against the risk of damage or destruction by civil authority during a conflagration and for the purpose of retarding the same; provided that neither such conflagration nor such damage or destruction is caused or contributed to by war, invasion, revolution, rebellion, insurrection or other hostilities or warlike operations.

6.   **ORDINANCE DEFICIENCY CLAUSE:**   Notwithstanding anything contained herein to the contrary, the Underwriters shall be liable also for the loss occasioned by the enforcement of any state or municipal law, ordinance or code, which necessitates, in repairing or rebuilding, replacement of material to meet such requirements. If demolition is required to comply with such enforcement Underwriters shall also be liable for such additional costs.

7.   **EXPENSE TO REDUCE OR PREVENT LOSS:**   This Insurance also covers such expenses as are necessarily incurred for the purpose of reducing or preventing any loss under this Insurance not exceeding, however, the amount by which the loss under this Insurance is thereby reduced.

## SECTION II – CASUALTY INSURANCE

### INSURING AGREEMENTS

**AGREEMENT C - GENERAL LIABILITY:** Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the Named Assured under contract or agreement, for damages direct or consequential, and expenses, all as more fully defined by the term "ultimate net loss", on account of personal injuries, including death at any time resulting therefrom, suffered or alleged to have been suffered by any person or persons (excepting employees of the Assured injured in the course of their employment); and/or damage to or destruction of property or the loss of use thereof; arising out of any occurrence happening during the period of this Insurance.

**AGREEMENT D - LIQUOR LIABILITY:** In accordance with the provisions of the above Agreement C, the Underwriters agree that indemnity for the Assured extends to liability for the sale or distribution of alcoholic beverages by reason of any local, state or Federal Liquor control laws now in force and all laws amendatory thereto; and that such extension includes indemnity for loss of means of support.

**AGREEMENT E - AUTOMOBILE LIABILITY:** Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the Named Assured under contract or agreement, for damages direct or consequential, and expenses, all as more fully defined by the term "ultimate net loss", on account of personal injuries including death at any time resulting therefrom, suffered or alleged to have been suffered by any person or persons (excepting employees of the Assured injured in the course of their employment); and/or damage to or destruction of property or the loss of use thereof, arising out of any occurrence happening during the period of this Insurance as a result of the ownership, maintenance or use of any automobile.

**AGREEMENT F - WORKERS' COMPENSATION:** The Underwriters hereby agree to indemnify the Assured for financial loss caused by personal injuries to his employees (including occupational disease) when the Assured is legally liable therefor to said employees (including death resulting therefrom) arising out of and in the course of employment by the Assured, provided such injuries are sustained during the period of this Insurance.

## SECTION II - DEFINITIONS

1.  **PERSONAL INJURIES** - The term "personal injuries" wherever used herein, shall mean:

    (a)   Bodily Injury, Mental Injury, Mental Anguish, Shock, Sickness, Disease, Disability, False Arrest, False Imprisonment, Wrongful Eviction, Detention, Malicious Prosecution, Discrimination, Humiliation, Invasion of Right of Privacy, Libel, Slander or Defamation of Character; also Piracy and any Infringement of Copyright or of property.

    (b)   Professional medical services rendered or which should have been rendered to any person or persons (other than employees of the Assured injured during the course of their employment) by any duly qualified medical practitioner, or nurse, or technician employed by or acting on behalf of the Assured, provided such liability is based solely upon error, negligence or mistake committed during the period of this Insurance.

2.  **PROPERTY DAMAGE** - The term "property damage" wherever used herein shall mean damage to or destruction or loss of property including damage to property of others in the care, custody or control of the Named Assured or property which is purchased by the Named Assured under a contract which provides that the title remain with the sellers until payments have been completed, the liability of Underwriters being limited to the amount of payments outstanding.

3.  **OCCURRENCE** - The term "occurrence" wherever used herein shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and

unintentionally results in personal injury, or damage to property during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one location shall be deemed one occurrence.

4.   **ULTIMATE NET LOSS** - The term "ultimate net loss" shall mean the total sum which the Assured becomes obligated to pay by reason of personal injury or property damage claims, either through adjudication or compromise, after making proper deductions for all recoveries and salvages, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest, expenses for doctors, lawyers, nurses and investigators and other persons and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Named Assured's permanent employees. Fees, charges and expenses for Gallagher Bassett Insurance Service are specifically excluded, and are to be paid by the Assured.

## SECTION II - EXCLUSIONS

THIS INSURANCE DOES NOT APPLY -

(a)   to liability of any Assured for assault and battery committed by or at the direction of such Assured except liability for Personal Injury or Death resulting from any act alleged to be assault and battery for the purpose of preventing injury to persons or damage to property;

(b)   except with respect to operations performed by independent contractors, to the ownership, maintenance or use, including loading or unloading of aircraft, and watercraft over 25 feet in length;

(c)   to damage or destruction of property owned by the Assured.

## SECTION II - CONDITIONS

1.   **CROSS LIABILITY:** In the event of claims being made by reason of personal injuries and/or property damage suffered by any employee of one Assured herein for which another Assured herein is or may be liable, then this Insurance shall cover such Assured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Assured herein. Nothing contained herein shall operate to increase the Underwriters' Limit of Liability as set forth herein. The Underwriters agree to waive all rights of subrogation against all or any of the corporations or individuals comprising the Assured.

2.   **NOTICE OF OCCURRENCE:** Whenever the Assured has information from which the Assured may reasonably conclude that an

occurrence covered under Section II of this Insurance involves injuries or damages, notice shall be given to Gallagher Bassett Insurance Service, 60 Gould Center, Golf Road, Rolling Meadows, Illinois 60008 as soon as practicable. Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above firm of any such occurrence.

3. **COMMUTATION - (APPLICABLE TO AGREEMENT F):** Claims hereunder, not finally settled, for weekly or periodical payment for compensation to employees (or their dependents) as a result of death or injury shall be notified with full particulars by the Assured to the Underwriters within two years from the expiration date of this Insurance and the Underwriters may, if they so elect, then or at any time thereafter submit one or more of such claims to an Actuary or Appraiser, to be mutually appointed by the Assured and the Underwriters, and the Underwriters shall at their option pay a lump sum to be fixed by the Actuary or Appraiser, which payment shall constitute a full and final release of the Underwriters' liability for such claim or claims, provided however that such lump sum payment shall not constitute a full and final release of Underwriters' liability if subsequent to such lump sum payment any supplemental award is made increasing the amount of compensation benefits payable to the employee or his/her dependents and that any additional claim may then be recommuted at Underwriters' option and Underwriters may discharge any additional liability by another lump sum payment.

4. **SELF-INSURERS STATUS:** The Assured agrees to duly qualify as a self-insurer by compliance with the provisions of the Workers' Compensation and/or Occupational Disease Law respecting Self-Insurance in the State of New York and shall continue to maintain said status throughout the period of this Insurance, provided, however, Underwriters shall not be relieved of their obligations hereunder because of a breach of this condition until (1) the Assured becomes insured with respect to his Workers' Compensation and/or Occupational Disease liability or (2) the expiration of a period of thirty days after date of the notice served upon the Assured by the Industrial Commission terminating his status as a self-insurer, whichever occurs first.

5. If any employee is injured while engaged in the business operations described in the Declarations, outside the State of New York this Insurance shall apply to the liability of the Assured on account of such injuries irrespective of whether such liability is greater than it would have been had the injuries been sustained within the State of New York.

## SECTION III - CRIME INSURANCE

### INSURING AGREEMENTS

### AGREEMENT G - MONEY AND SECURITIES (COVERAGE WITHIN PREMISES):

Underwriters agree, subject to the limitations, terms and conditions of this Insurance, to indemnify the Assured for all loss caused by reason of theft, burglary, robbery, kidnapping, disappearance or destruction of any money or securities which may at any time be or believed by the Assured to be in or

upon any premises occupied or used by the Assured or by any bank, trust
company or safe deposit company. Such Insurance as is afforded by this
Insurance also applies to deposits within a night depository safe provided by
a bank or trust company on its premises for the use of its customers.

## AGREEMENT H - MONEY AND SECURITIES (COVERAGE OUTSIDE PREMISES):

Underwriters agree, subject to the limitations, terms and conditions of this
Insurance, to indemnify the Assured for all loss caused by reason of the
theft, robbery, kidnapping, disappearance or destruction of any money or
securities (other than by fraud or connivance of the Assured's officers or
employees) while in transit in the custody of the Assured's officers or
employees anywhere, the liability of the Underwriters to commence at the
moment when the person into whose hands the property may be delivered on
behalf of the Assured receives the same and to continue until delivery
thereof at the final destination.

## AGREEMENT I - COMMERCIAL BLANKET BOND:

Underwriters (hereinafter called "the Surety") agree, subject to the terms
and conditions set forth herein, to indemnify the Assured (hereinafter called
"the Employer") against any loss of Money or other property real or personal
(including that part of any inventory shortage which the Employer shall
conclusively prove is caused by the dishonesty of any Employee or
Employees) belonging to the Employer or in which the Employer has a
pecuniary interest or for which the Employer is legally liable or held by the
Employer in any capacity, whether the Employer is legally liable therefor or
not, which the Employer shall during the term of this Insurance sustain or
discover that they have sustained through larceny, theft, embezzlement,
forgery, misappropriation, wrongful abstraction, wilful misapplication or
other fraudulent or dishonest act or acts committed by any one or more of
the Employees as defined, acting directly or in collusion with others.

## SECTION III - DEFINITIONS

## INSURING AGREEMENTS G AND H

1.   MONEY:  The term "money" as used in this Insurance shall
     be deemed to mean currency, coin, bank notes, uncancelled
     and precancelled postage and unused postage in postage
     meters.

2.   SECURITIES:  The term "securities" shall be deemed to
     mean Federal Food Stamps, express, postal and bank money
     orders, postal notes, debentures, scrip, checks, warrants,
     transfers, coupons, demand and time drafts, bills of ex-
     change, acceptances, promissory notes, certificates of
     deposits, certificates of stock, bonds, car trust certifi-
     cates, interim receipts and certificates, warehouse
     receipts, bills of lading and all other instruments of a
     similar nature including mortgages upon real estate or upon
     chattels and upon interests therein, and instruments in the
     nature of mortgages upon real estate or upon chattels and
     upon interests therein, and assignments of such mortgages
     and instruments.



3.   It is understood and agreed that this insurance covers money and securities of the Assured or as respects which the Assured is legally liable or held by it in any capacity, whether or not the Assured is liable for the loss thereof. If legal proceedings are taken against the Assured to enforce a claim for money and securities so held, the Assured shall immediately notify the Underwriters in writing.

4.   EMPLOYEES:  The term "employees" shall mean not only persons compensated by the Assured but also those directed by the Assured, and including those independent contractors and/or services which may be considered as usually performed by employees of the Assured.

5.   THEFT:  The term "theft" shall include "trick and device".

6.   ULTIMATE NET LOSS:  The words "ultimate net loss" in respect of this Section shall be understood to mean the actual loss sustained by the Assured after making deductions for all recoveries and salvages.

## INSURING AGREEMENT I

1.   EMPLOYER:  The term "Employer" as used in this bond shall mean the Assured named in the Declarations and as further defined in General Insurance Agreement II.

2.   EMPLOYEE OR EMPLOYEES:  The terms "Employee" or "Employees" as used in this bond shall be deemed to mean respectively one or more of the natural persons who on the effective date of this Bond or at any other time during the term of this Bond are in the regular service of the Employer in the ordinary course of the Employer's business and who are compensated by salary, wages and/or commission, and whom the Employer has the right to govern and direct at all times in the performance of such service, but not to mean brokers, factors, commission merchants, consignees, contractors or other agents or representatives of the same general character.

## SECTION III - EXCLUSIONS

## THIS INSURANCE DOES NOT APPLY UNDER INSURING AGREEMENTS G AND H

(a)   to any fraudulent, dishonest or criminal act other than robbery or safe burglary or attempt thereat, committed by the Assured or by any officer, employee (except Brinks or Armored Car Employees): trustee or authorized representative of the Assured, whether acting alone or in collusion with others.

(b)   to forgery by whomsoever committed.

## SECTION III – CONDITIONS

1.    **under INSURING AGREEMENTS G, H AND I**

Warranted free of all claims for losses not discovered within the term of this Insurance and for losses sustained and/or acts committed prior to October 1, 1976 (herein-after called the "Retroactive Date") but with the under-standing that in the event of (a) the expiration of this Insurance by reason of non-renewal, or (b) the termination of this Insurance as an entirety, as provided in General Condition 5, the Assured shall have twelve calendar months following the date of such expiration or termination in which to discover losses sustained between the Retroactive Date and the date of such expiration or termination.

Notwithstanding anything to the contrary contained herein it is understood and agreed that in the event of this Insurance being immediately succeeded by a similar Insur-ance with Underwriters at Lloyd's on which the Retroac-tive Date is October 1, 1976 the said succeeding Insurance shall be deemed to be a renewal hereof and in consequence the discovery period provided herein shall not be operative.

2.    **under INSURING AGREEMENT I**

(a)    Upon the discovery of any loss hereunder this Bond shall be treated as reinstated so as at all times to continue in force for the sum set forth herein notwithstanding any previous loss for which the Surety may have paid or be liable to pay hereunder provided however that in no event shall the Surety be liable under this Bond for an amount greater than the limits of liabili-ty stated on account of any one loss or series of losses caused by the fraudulent or dishonest acts of any Employee or in which such Employ-ee is concerned or implicated.

(b)    In case any reimbursement be obtained or re-covery be made by the Employer or by the Surety on account of any loss covered under this Bond, the net amount of such reimburse-ment or recovery, after deducting the actual cost of obtaining or making the same, shall be applied to reimburse the Employer in full for that part if any, of such loss in excess of this Bond, and the balance, if any, or the entire net reimbursement or recovery if there be no such excess loss, shall be applied to that part of such loss covered by this Bond or, if payment shall have been made by the Surety, to its reimburse-ment therefor. The Employer shall execute all necessary papers and render all assistance not pecuniary to secure unto the Surety the rights provided for in this paragraph. The following shall not be reimbursement or recovery within the meaning of this paragraph: suretyship, insurance or reinsurance; also security or in-demnity taken from any source by or for the benefit of the Surety.

(c)    This Bond shall be deemed cancelled as to any
Employee immediately upon discovery by the
Employer, of any fraudulent or dishonest act on
the part of such Employee; or at 12:01 A.M.
Standard Time as aforesaid upon the effective
date specified in a written notice served upon
the Employer or sent by registered mail. Such
date if the notice be served shall be not less
than fifteen days after such service, or if sent
by registered mail, not less than twenty days
after the date borne by the sender's registry
receipt.

## SECTION IV - GENERAL CONDITIONS

1.    **PREMIUM PROVISION:**

See Endorsement #2 Attached.

2.    **SALVAGE AND RECOVERY CLAUSE:**

All salvages, recoveries and payments recovered or re-
ceived subsequent to a loss settlement under this Insurance
shall be applied as if recovered or received prior to the
said settlement and all necessary adjustments shall be
made by the parties hereto.

3.    **INSPECTIONS, AUDIT AND VERIFICATION OF VALUES:**

The Underwriters or their duly authorized representatives
shall be permitted at all reasonable times during continu-
ance of this Insurance to inspect the premises used by the
Assured and to examine the Assured's books or records so
far as they relate to coverage afforded by this Insurance.

4.    **RECORDS:**

It is hereby understood and agreed that the records and
books as kept by the Assured shall be acceptable to
Underwriters in determining the amount of loss or damage
covered hereunder.

5.    **CANCELLATION:**

This Insurance may be cancelled as of any anniversary date
by either of the parties upon written notice to the other
party, provided said notice is issued at least thirty (30)
days prior to the said anniversary.

If the period of limitation relating to the giving of notice is
prohibited or made void by any law controlling the con-
struction thereof, such period shall be deemed to be
amended so as to be equal to the minimum period of
limitation permitted by such law.

The premium and losses under this Insurance are payable in
United States Currency. Payment of premium shall be
made to Arthur J. Gallagher & Co., 10 Gould Center, Golf
Road, Rolling Meadows, Illinois 60008.

7.  **BANKRUPTCY AND INSOLVENCY:**

In the event of the bankruptcy or insolvency of the Assured
or any entity comprising the Assured, the Underwriters
shall not be relieved of the payment of any claims here-
under because of such bankruptcy or insolvency.

8.  **OTHER INSURANCE:**

If the Assured has other Insurance against loss covered by
this Insurance the Underwriters shall be liable, under the
terms of this Insurance, only as excess of coverage provid-
ed by such other Insurance, and no monies payable or
collectible from such other Insurance shall accrue in the
aggregate loss fund of this Insurance.

9.  **MORTGAGE CLAUSE:**

The interest of any mortgagor on property covered here-
under is included as if a separate endorsement were
attached hereto to the extent of the amount of mortgage
as of the date of loss subject to the limits of liability set
forth in this Insurance.

10.  **CLAIMS:**

The Assured shall immediately notify Underwriters through
Arthur J. Gallagher & Co., 10 Gould Center, Golf Road,
Rolling Meadows, Illinois 60008 by registered mail, of any
occurrence, the cost of which is likely to result in payment
by Underwriters under this Insurance.  Underwriters shall
have the opportunity to be associated with the Assured in
defense of any claims, suits, or proceedings relative to an
occurrence wherein the opinion of the Underwriters, their
liability under this Insurance is likely to be involved, in
which case the Assured and Underwriters shall cooperate
to the mutual advantage of both.

11.  **LOSS PAYMENTS:**

When it has been determined that Underwriters are liable
under this Insurance, Underwriters shall thereafter prompt-
ly reimburse the Assured for all payments in excess of the
amounts stated in Subparagraphs A and B of the Limits
Agreement.  All adjusted claims shall be paid or made good
to the Assured within thirty days after their presentation
to Arthur J. Gallagher & Co., and acceptance by Under-
writers of satisfactory proof of interest and loss.

12.  APPEAL:

In the event the Assured and Underwriters are unable to agree to the advisability of appealing a judgment, a disinterested attorney, mutually agreeable to Underwriters and the Assured, shall be retained and directed to render a written opinion as to his recommendation concerning such appeal. Such written recommendation shall be binding on both the Assured and Underwriters. Fees of such retained attorney shall be borne equally by both parties for the services of rendering his recommendation only. The Assured's portion of such fee shall not accrue in the aggregate loss fund.

13.  LITIGATION PROCEEDINGS:

No suit to recover on account of loss under this Insurance shall be brought until ninety days after the proof of loss shall have been furnished, nor at all unless commenced within twenty seven months from the date upon which loss occurred, if such loss is within the knowledge of the Assured; if not, the twenty seven months shall begin upon notice to the Assured of such loss or claim.

14.  SUBROGATION:

The Underwriters shall be subrogated to all rights which the Assured may have against any person or other entity in respect to any claim or payment made under this Insurance, and the Assured shall execute all papers required by the Underwriters and shall cooperate with the Underwriters to secure Underwriter's rights. In case any reimbursement obtained or recovery made by the Assured or the Underwriters on account of any loss covered by this Insurance, the net amount of such reimbursement or recovery, after deducting the actual cost of obtaining or making the same, shall be first applied in the following order:

(a)  Amount of loss which exceeds the applicable limit of liability.

(b)  To reduce the Underwriters' loss until the Underwriters are fully reimbursed.

(c)  To reduce the Assured's loss because of the application of the aggregate loss fund.

15.  WAIVER OF SUBROGATION:

This Insurance shall not be invalidated if the Assured by written agreement has waived or shall waive its right of recovery from any party for loss or damage covered hereunder; provided, that any such waiver is made prior to the occurrence of said loss or damage. The Underwriters, in any event, expressly waive subrogation against any Parish, School, Cemetery or other Agency.