## 16. CONFLICTING STATUTES:

In the event that any provision of this Insurance is unenforceable by the Assured under the laws of any State or other jurisdiction wherein it is claimed that the Assured is liable for any injury covered hereby because of non-compliance with any statute thereof, then this policy shall be enforceable for the Assured with the same effect as if it complied with such statute.

## 17. ASSIGNMENT:

Assignment of interest, under this Insurance shall not bind the Underwriters until the Underwriters' consent is endorsed hereon.

## 18. CHANGES:

By acceptance of this Insurance the Assured agrees that it embodies all agreements existing between the Assured and Underwriters or any of its agents relating to this Insurance. None of the provisions, conditions or other terms of this Insurance shall be waived or altered except by endorsement; nor shall notice to any agent or knowledge possessed by any agent or by any other person be held to effect a waiver or change in any part of this Insurance.

## 19. WAR CLAUSE:

Coverage does not apply under this Insurance for loss or damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, any weapon of war employing atomic fission or radioactive force whether in time of peace or war, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power, confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority unless such acts of destruction by order of civil authority is at the time of and for the purpose of preventing spread of fire; or claims or liability arising directly or indirectly from nuclear fission, nuclear fusion or radioactive contamination.

## 20. FRAUDULENT CLAIMS:

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Insurance shall become void and all claim hereunder shall be forfeited.

# 2 bvol 1

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Sum Insured hereunder shared between the Members of those Syndicates.

The following Underwriters accept liability in respect of business classified by the Committee of Lloyd's as short tail.

| FOR LPSO USE ONLY | BROKER 518 | LPSO NO. & DATE 63517 25 1 83 | |
|---|---|---|---|
| 2113 | | | PAGE 1 |
| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF. | |

| PERCENT | | |
|---|---|---|
| 15.63 | 210 | E0080248 |
| 2.78 | 212 | E0080248 |
| 8.80 | 122 | 740R7012 |
| 4.74 | 119 | 740R7012 |
| 1.39 | 546 | 740R7012 |
| 5.21 | 404 | 317RX71334C |
| 2.78 | 510 | X0920012093F |
| 3.82 | 56 | R0008355X |
| 3.65 | 362 | 50413001 |
| 0.52 | 823 | 50413001 |
| 2.78 | 47 | 049828PXX |
| 3.47 | 582 | 251A1236000N |
| 0.69 | 582 | 251A1236000N |
| 4.51 | 231 | 924X6051P |
| 3.47 | 918 | LSL0105A209l |
| 3.47 | 43 | XUA51230AX |
| 0.14 | 453 | 01001090 |
| 0.56 | 598 | 01001090 |
| 1.39 | 977 | 63AX916 |
| 0.87 | 484 | USA20509 |
| 1.04 | 471 | FLX062 |
| 2.08 | 947 | X261USD663 |
| 1.74 | 640 | M8B3C105 |
| 1.74 | 109 | 17L2152 |
| 1.39 | 584 | N4350 |
| 0.69 | 205 | 4282AAA0689 |
| 1.74 | 553 | HATA800963 |
| 1.74 | 15 | 02806498 |
| 1.74 | 665 | 82X52119 |
| 0.69 | 92 | 016K096USM |
| 2.08 | 342 | L07USXXX9030 |
| 1.04 | 464 | 01220057 |
| 1.04 | 602 | B0AA999AAZ1 |
| 0.87 | 235 | 904121 |
| 1.04 | 33 | 106B6784XXAM |
| 0.69 | 518 | 303A471AXXXX |

THE LIST OF UNDERWRITING MEMBERS OF LLOYDS IS NUMBERED 1983/

| TOTAL LINE | NO. OF SYND. | FOR LPSO USE ONLY |
|---|---|---|
| 92.02 | 36 | 5D 14754 |

The following Underwriters accept liability in respect of business other than short tail.

| FOR LPSO USE ONLY | BROKER 518 | LPSO NO. & DATE 63516 25 1 83 | |
|---|---|---|---|
| 2104 | | | PAGE 1 |
| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF. | |

| PERCENT | | |
|---|---|---|
| 15.63 | 210 | E0080248 |
| 2.78 | 212 | E0080248 |
| 8.80 | 122 | 740R7012 |
| 4.74 | 119 | 740R7012 |
| 1.39 | 546 | 740R7012 |
| 5.21 | 404 | 475RX71106C |
| 2.78 | 510 | X0920012093F |
| 3.82 | 56 | R0008355X |
| 3.65 | 362 | 50413001 |
| 0.52 | 823 | 50413001 |
| 2.78 | 47 | 049828PXX |
| 3.47 | 582 | 264A1236000N |
| 0.69 | 582 | 264A1236000N |
| 4.51 | 231 | 927X6052P |
| 3.47 | 918 | LSL0105A2091 |
| 3.47 | 43 | XUA51231HX |
| 0.14 | 453 | 07001090 |
| 0.56 | 598 | 07001090 |
| 1.39 | 147 | 850H60102282 |
| 0.87 | 484 | 0C220509 |
| 1.04 | 471 | ALX486 |
| 2.08 | 947 | B759USQ234 |
| 1.74 | 640 | M8B3C105 |
| 1.74 | 109 | 06L2152 |
| 1.39 | 584 | N4550 |
| 0.69 | 205 | 4882AAA0690 |
| 1.74 | 553 | CATX800962 |
| 1.74 | 15 | 02806498 |
| 1.74 | 665 | 82X52119 |
| 0.69 | 92 | 056K030PL |
| 2.08 | 342 | L90USXXX9030 |
| 1.04 | 464 | 01220057 |
| 1.04 | 602 | DAAD999AAZJ |
| 0.87 | 235 | 904121 |
| 1.04 | 33 | 106B6784XXAM |
| 0.69 | 518 | 001K471A90XX |

THE LIST OF UNDERWRITING MEMBERS OF LLOYDS IS NUMBERED 1983/

| TOTAL LINE | NO. OF SYND | FOR LPSO USE ONLY |
|---|---|---|
| 92.02 | 36 | 5D 13924 |

In the name of:  DIOCESE OF ROCKVILLE CENTER.

 

In consideration of the payment of the sum of $626,414.40   due hereon at 1st September 1984   it is hereby understood and agreed that in respect of losses and/or occurrences occurring on or after the 1st September 1984 the participation insured by this policy is increased from 92.02% to 95.49% and the Underwriters subscribing to this policy are as signed hereon.

The following Underwriters totalling 95.49% of 80% of whole accept liability classified by the Committee of Lloyd's as Short Tail business.

The following Underwriters totalling 95.49% of 80% of whole accept liability in respect of business other than Short Tail business.

**Now Know Ye that** We the Underwriters, Members of the Syndicates whose definitive numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators, and in respect of his due proportion only, to pay or make good to the Assured or to the Assured's Executors or Administrators or to indemnify him or them against all such loss, damage or liability as herein provided, such payment to be made after such loss, damage or liability as proved and the due proportion for which each of us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the total sum insured hereunder which is in the Table set opposite the definitive number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Shares therein, is deemed to be incorporated in and to form part of this policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has subscribed his name on behalf of each of us.

(NM)

| Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Sum insured hereunder shared between the Members of those Syndicates |
| --- |

LLOYD'S POLICY SIGNING OFFICE.

*General Manager*

C. D. C

All other terms and conditions remain unchanged

FOR EMBOSSMENT

BY LLOYD'S POLICY

SIGN...

### Attaching to and forming part of Lloyd's Policy No. GHV 051/182   #(518)

**Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates**

| Amount, Percentage or Proportion. | Syndicate No. | Underwriters' Reference. | Amount, Percentage or Proportion. | Syndicate No. | Underwriters' Reference. | Amount, Percentage or Proportion. | Syndicate No. | Underwriters' Reference. |
|---|---|---|---|---|---|---|---|---|
| FOR LPSO USE ONLY<br>CPD33R 2112<br>3335 | BROKER<br>518 | LPSO NO. & DATE<br>63623 17 12 84 | FOR LPSO USE ONLY<br>3337 | BROKER<br>518 | LPSO NO. & DATE<br>63623 17 12 84 | | | |
| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF. | PAGE<br>1 | AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF. | PAGE<br>3 | |
| PERCENT | | | | PERCENT | | | | |
| 18.06 | 210 | G0080248  .0 | | 0.52 | 235 | 904121 | | |
| 2.08 | 212 | G0080248  0 | | 0.70 | 204 | 01119996I | | |
| 12.19 | 122 | 420R7617 | | | | | | |
| 6.56 | 119 | 420R7617 | | HE LIST OF UNDERWRITING MEMBERS | | | | |
| 5.21 | 404 | 475RA7110GC | | OF LLOYDS IS NUMBERED 1984/ 18 | | | | |
| 2.78 | 510 | X0920012093F | | | | | | |
| 3.82 | 56 | R008355X | | | | | | |
| 3.47 | 553 | CAT X800962 | | | | 0.5 | | |
| 2.08 | 47 | 589828PXX | | | | | | |
| 3.47 | 582 | 264A1236000N | | | | | | |
| 5.21 | 231 | 927X51205X84 | | | | | | |
| 3.47 | 918 | LSL0106N4061 | | | | | | |
| 1.05 | 471 | CC456SE8 | | | | | | |
| 1.73 | 109 | 06L2152 | | | | | | |
| 2.78 | 665 | 84X55066 | | | | | | |
| 2.08 | 342 | L90USXXX9101 | | | | | | |
| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF. | PAGE<br>2 | TOTAL LINE<br>95.49 | NO. OF SYND<br>34 | FOR LPSO USE ONLY<br>USBL  13270 | | |
| PERCENT | | | | | | | | |
| 2.09 | 15 | 02806498 | | | | | | |
| 1.39 | 546 | FE040V848140 | | | | | | |
| 2.77 | 602 | AAA0999AAZJ | | | | | | |
| 1.39 | 43 | XUA51231HX | | | | | | |
| 1.04 | 33 | 106C6784 | | | | | | |
| 1.39 | 947 | 8759USQ234 | | | | | | |
| 1.74 | 584 | N4550XXD054 | | | | | | |
| 1.73 | 640 | M883C104 | | | | | | |
| 0.70 | 464 | 01220057 | | | | | | |
| 0.69 | 92 | 056N030PL | | | | | | |
| 0.35 | 518 | 001R471A90XX | | | | | | |
| 0.87 | 484 | 0C220509 | | | | | | |
| 0.69 | 529 | LBP200088000 | | | | | | |
| 0.70 | 598 | 07001090 | | | | | | |
| 0.35 | 362 | 50413001 | | | | | | |
| 0.34 | 823 | 50413001 | | | | | | |
| TOTAL LINE | NO. OF SYND | FOR LPSO USE ONLY | | | | | | |

C8 53223

Attaching to and forming part of Lloyd's Policy No. CHV 051/82 (578)

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates.

| Amount, Percentage or Proportion. | Syndicate No. | Underwriters' Reference. | Amount, Percentage or Proportion. | Syndicate No. | Underwriters' Reference. | Amount, Percentage or Proportion. | Syndicate No. | Underwriters' Reference. |
|---|---|---|---|---|---|---|---|---|
| FOR LPSO USE ONLY | BROKER 518 | LPSO NO. & DATE 63624 17 12 84 | FOR LPSO USE ONLY | BROKER 518 | LPSO NO. & DATE 63624 17 12 84 | | | |
| 3344 | | | | | | | | |
| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF. | AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF. | PAGE 3 | | |
| PERCENT | | | PERCENT | | | | | |
| 18.06 | 210 | G0080248 | 0.52 | 235 | 904121 | | | |
| 2.08 | 212 | G0080248 | 0.70 | 204 | 011199961 | | | |
| 12.19 | 122 | 930R7617 | | | | | | |
| 6.56 | 119 | 930R7617 | THE LIST OF UNDERWRITING MEMBERS | | | | | |
| 5.21 | 406 | 475RA71334C | OF LLOYDS IS NUMBERED 1984/ 12 | | | | | |
| 2.78 | 510 | X0920012093F | | | | | | |
| 3.82 | 56 | R0008355X | | | | | | |
| 3.47 | 553 | HATA800963 | | | | | | |
| 2.08 | 47 | 049828PXX | | | | | | |
| 3.47 | 582 | 251A1236000N | | | | | | |
| 5.21 | 231 | 924X51185X84 | | | | | | |
| 3.47 | 918 | LSL0106M4061 | | | | | | |
| 1.05 | 471 | CC456SEA | | | | | | |
| 1.73 | 109 | 17L2152 | | | | | | |
| 2.78 | 665 | 84X52119 | | | | | | |
| 2.08 | 342 | L07USXXX9030 | | | | | | |
| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF. | PAGE 2 | TOTAL LINE 95.49 | NO OF SYND 34 | FOR LPSO USE ONLY USB1 13270 | | |
| PERCENT | | | | | | | | |
| 2.09 | 15 | 02806498 | | | | | | |
| 1.39 | 546 | FE040V84A93R | | | | | | |
| 2.77 | 602 | 80AA999AA21 | | | | | | |
| 1.39 | 43 | XUA51230AX | | | | | | |
| 1.04 | 33 | 106C6784 | | | | | | |
| 1.39 | 947 | X261USD663 | | | | | | |
| 1.74 | 584 | N4350XXD054 | | | | | | |
| 1.73 | 640 | M883C103 | | | | | | |
| 0.70 | 464 | 01220057 | | | | | | |
| 0.69 | 92 | 016N096USM | | | | | | |
| 0.35 | 518 | 303A471AXXXX | | | | | | |
| 0.87 | 484 | 05A20509 | | | | | | |
| 0.69 | 529 | L8P200088000 | | | | | | |
| 0.70 | 598 | 01001090 | | | | | | |
| 0.35 | 362 | 50413001 | | | | | | |
| 0.34 | 823 | 50413001 | | | | | | |

TOTAL LINE    NO OF SYND    FOR LPSO USE ONLY

C6 83229

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**


Policy number(s):    SL 4065
                      SLC 6045

Inception date:    10/1/1982

Term at issuance:    3 years

Page count:    53

Contents:    Slip- 2 pgs
              Excess Broad Form Liability- 8 pgs
              Endorsement- 9 pgs
              Cover Note- 9 pgs
              Lloyd's, PSAC, Companies Policy- 25 pgs

| | |
|---|---|
| DATE ISSUED | ENV D31/1982 198 |
| December 6, 1982 | 51-9387 SC4065 |
| 10-3-83 | |

TH.   ECLARATION PAGE IS ATTACHED   OVISIONS (FORM CN-1)

1065

**1 — Name of Assured**

Roman Catholic Diocese of Rockville Centre, et al
(See Endorsement #2)
50 North Park Avenue
Rockville Centre, New York 11570

Cancelled

**2 —** EFFECTIVE ☒ 12-01 A.M.   BOTH DAYS AT   October 1, 1982   1982   TO   October 1, 1983   1985
FROM ☐ 12.00 NOON   STANDARD TIME

NAME OF INSURERS                                    AMOUNT OR PERCENT

**3 —** Acting upon your instruction, we have
effected the insurance with: ➡   UNDERWRITERS AT LLOYD'S, LONDON   80.29%   82.14%

RENEWED

**4 —**
AMOUNT
Hereon 80.29% Part of 100% of:                    COVERAGE   RATE   PREMIUM

$ 20,000,000 any one occurrence                    Annual:  $20,000.00
                                                   Hereon:  $16,058.00

EXCESS OF:                                          Excess Broad Form
  (A) $ 5,000,000 any one occurrence               Liability including
                                                   Heliport Liability
          or                                       — Worldwide
  (B) $10,000,000 any one occurrence in respect of heliport liability

AUDIT                                               TOTAL CHARGED

**5 —** SPECIAL CONDITIONS
As per attached forms and endorsements
NMA 772
NMA 1477
NMA 1256

**6 —** Service of Suit Clause
Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, IL 60603
or Mendes & Mount, 3 Park Avenue, New York, NY 10016

In witness whereof this covernote has been signed at........Rolling Meadows, IL.........this....17....13....day of...October....

ARTHUR J. GALLAGHER & CO. (RISMORE)

By _____

|  |  |  |
|---|---|---|
| **ADDITIONAL PREMIUM:** |  | (Hereon) |
| **RETURN PREMIUM:** | $1,316.76 | (Hereon) |

ENDORSEMENT attaching to and forming part of Policy/Certificate No.  SL 4065

In the name of     Roman Catholic Diocese of Rockville Centre

Effective Date of this endorsement is  September 1, 1983          Endorsement No.  4

It is hereby noted and agreed that this policy is cancelled effective
September 1, 1983.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:    January 19, 1984                INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                          SUCCESSORS TO
                                          BY:  Chas A. GALLAGHER & CO (INTERNATIONAL)

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. ~~SL 4065~~ $ISL\ 3125$

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is ~~October 1, 1982~~ $9-1-83$    Endorsement No. 3

It is hereby understood and agreed that 45 days prior to each anniversary
date this risk is subject to the Assured advising Underwriters of any change
in the information given to Underwriters at inception, at which time the
coverage afforded and the premium charged shall be subject to review by
Underwriters.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: ~~December 7, 1982~~    ARTHUR J. GALLAGHER & CO. (ILLINOIS)
         $10-12-83$

                                  By _Donald J Koutek_

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. SL 4065   $I \subseteq L 3125$

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982  $9 \cdot 1 \cdot 83$        Endorsement No. 2

It is hereby understood and agreed effective inception that the Named
Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary
Bishop Gerald J.  Ryan and Auxiliary Bishop James J. Daly comprising of
ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal
entities therein over which the same central authority appoints or controls
the appointment of the board of trustees of similar body and exercises
direct, complete and active control over the finances, properties, operations
and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 7, 1982           ARTHUR J. GALLAGHER & CO. (ILLINOIS)     ISRS

                                  By  Donald J. Krutech

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. ~~SL-4065~~ *ISL 3125*

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is ~~October 1, 1982~~ *10-1-83*    Endorsement No. 1

## ERRORS AND OMISSIONS

It is hereby understood and agreed that insofar as Errors and Omissions coverage is afforded to the Assured in the Primary and Underlying Excess Insurers policy/ies this Policy is extended to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER AGREED:

(1)    There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to October 1, 1976 (hereinafter referred to as the "Retroactive Date").

(2)    In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemeteries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: ~~December 7, 1982~~    ARTHUR J. GALLAGHER & CO. (ILLINOIS)
       10-3-83

                                    By _Donald J Kretele_

DATE ISSUED

6 - 13-3 December 7, 1922

GHV 051/1982 1983

SLC60 45

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE (FRONTS/SIG, FORMS SLDOS/CA)

NUMBER **SLC**   6085 - 1 C0 4082

| ITEM | | |
|---|---|---|
| 1 | *Name of Assured* | Roman Catholic Diocese of Rockville Centre, et al (See Endorsement #A) 50 North Park Avenue Rockville Centre, New York 11570 |

| 2 | EFFECTIVE FROM | ☒ 12.01 AM   BOTH DAYS AT ☐ 12.00 NOON   STANDARD TIME | October 1, 1983  9-1-83 TO | October 1, 1983  9-1-84 |
|---|---|---|---|---|

| 3 | Acting upon your instruction, we have effected the insurance with: | NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|---|---|
| | | CNA Reinsurance of London, Ltd. | 8.23% 8.21% |
| | | Dominion Ins. Co. Ltd. | 8.23% 8.21% |
| | | Stronghold Ins. Co. Ltd. | 3.50% 3.29% |
| | | | 19.71% |

| 4 | AMOUNT  19.86% Hereon: 19.71% Part of 100% of: | COVERAGE | RATE | PREMIUM |
|---|---|---|---|---|
| | Subject to the same forms, terms, conditions and endorsements as more particularly set forth in Cover Note No. SL #065 / CL 3125 | | Annual $20,000.00 Hereon: $3,942.00 | |
| | | CNA Reinsurance of London Ltd.  $1,642.00 Dominion Ins. Co. Ltd.  1,642.00 Stronghold Ins. Co. Ltd.  658.00  $3,942.00 | | |
| | | | TOTAL CHARGED .... | |

AUDIT

| 5 | SPECIAL CONDITIONS | |
|---|---|---|

| 6 | | |
|---|---|---|

ARTHUR J. GALLAGHER & CO. (LONDON)

By Donald J Kreth

ADDITIONAL PREMIUM:                    (Hereon)

RETURN PREMIUM:          $323.24       (Hereon)

ENDORSEMENT attaching to and forming part of Policy/Certificate No.   SLC 6645

In the name of Roman Catholic Diocese of Rockville Centre

Effective Date of this endorsement is   September 1, 1983      Endorsement No. 8

It is hereby noted and agreed that this policy is cancelled effective
September 1, 1983.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:   January 19, 1984                    INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                             (SUCCESSORS TO
                                             ARTHUR J GALLAGHER & CO. ILLINOIS)
                                             BY:

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. ~~SLC-6045~~ ICO 4082

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is ~~October 1, 1982~~ 7-1-83          Endorsement No. A

It is hereby understood and agreed effective inception that the Named Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal entities therein over which the same central authority appoints or controls the appointment of the board of trustees of similar body and exercises direct, complete and active control over the finances, properties, operations and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: ~~December 7, 1982~~
10-13-83

ARTHUR J. GALLAGHER & CO. (ILLINOIS) /SRS

By _Donald J Krutch_

## SERVICE OF SUIT CLAUSE (U.S.A.)

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Associations.)*

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Insured (or reinsured) will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon

Lord, Bissell & Brook, 115 S LaSalle St Chicago, IL 60603
or Mendes & Mount, 3 Park Avenue, New York, NY 10016

that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or reinsured) to give a written undertaking to the Insured (or reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

N.M.A. 772

MASON PRINTING COMPANY

**U.S.A.**

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT**
*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association).*

*For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause—Liability—Direct) to liability insurances affording worldwide coverage.*

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
N.M.A. 1477

Bacon Printing Company

U.S.A.

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

*For attachment to insurances of the following classifications in the U. S. A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

*Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),*

*—not being insurances of the classifications to which the Nuclear Incident Exclusion Clause—Liability—Direct (Limited) applies.*

This policy*

does not apply:—

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement: "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*Note:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17-3-60
N.M.A. 1256

[illegible] Printing Company

# EXCESS BROAD FORM LIABILITY

## INSURING AGREEMENTS

### 1.  Coverage

In consideration of the payment of the premium stated herein and subject to the limitations, definitions, terms and conditions hereinafter mentioned, Underwriters hereby agree with the Assured named in the Declarations made a part hereof to indemnify the Assured for all sums which the Assured shall be legally obligated to pay by reason of the liability caused by or arising out of only such hazards covered by and as more fully defined in the policy/ies of the "Primary and Underlying Excess Insurers" and issued by the Primary and Underlying Excess Insurers stated in Item 4 of the Declarations occurring during the period of this policy.

### 2.  Limits of Liability

Provided always that:

(a)  Liability attaches to the Underwriters only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as set forth in Item 5 of the Declarations and designated "Primary and Underlying Excess Limit(s)" and then the limits of the Underwriters' liability shall be those set forth in Item 6 of the Declarations under the designation "Excess Limit(s)" and the Underwriters shall be liable to pay the ultimate net loss the Excess of the Limit(s) under the policy/ies of the Primary and Underlying Excess Insurers as set forth in Item 5 of the Declarations up to the full amount of such Excess Limits(s).

(b)  Liability for any one or any combination of the hazards insured hereunder as provided for in the Primary and Underlying Excess Insurers policy/ies is subject separately to the limit "each occurrence" as stated in the Declarations, but this limit shall not be exceeded in any one policy year with regard to any hazard(s) insured with an aggregate limit under the policy/ies of the Primary and Underlying Excess Insurers.

(c)  For the purpose of determining the limit of the Underwriters' liability, all Personal Injury and Property Damage arising out of either

(i)  an accident or series of accidents arising out of one event, or
(ii)  a continuous or repeated exposure to substantially the same general conditions,

shall be considered as arising out of one occurrence.

(d)  The inclusion of more than one entity as the named Assured, or the inclusion of any additional Assureds under this Policy, shall not in any way operate to increase the Underwriters' limits of liability beyond those provided in Item 6 of the Declarations.

LW(18)RC
SL 4065

Page 1 of 8

12/07/82

## DEFINITIONS

3. (a) **Occurrence**

The word "occurrence" means an accident, including injurious exposure to conditions, which results during the Policy year in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Assured.

(b) **Ultimate Net Loss**

The words "ultimate net loss" shall be understood to mean the amount payable in settlement of the liability of the Assured after making deductions for all recoveries and for other valid and collectible insurances, excepting however the policy/ies of the Primary and Underlying Excess Insurers, and shall include all expenses and costs.

(c) **Policy Year**

The words "policy year" shall be understood to mean a period of one calendar year commencing each year on the day and hour first named in the Declarations.

## CONDITIONS

4. (a) **Application of Recoveries**

All recoveries, salvages or payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters, provided always that nothing in this Insurance shall be construed to mean that losses under this Insurance are not payable until the Assured's ultimate net loss has been finally ascertained.

(b) **Attachment of Liability**

Liability to pay under this Policy shall not attach unless and until the Primary and Underlying Excess Insurers shall have admitted liability for the Primary and Underlying Excess Limit(s) or unless and until the Assured has by final judgment been adjudged to pay an amount which exceeds such Primary and Underlying Excess Limit(s) and then only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of the Primary and Underlying Excess Limit(s).

(c) **Maintenance of Primary Insurance**

It is a condition of this Policy that the policy/ies of the Primary and Underlying Excess Insurers shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of occurrences during the policy year.

LW(18)RC
SL 4065

12/07/82

In respect of the hazards covered by the Primary and Underlying Excess Insurers this Policy is subject to the same warranties, terms, definitions, conditions and exclusions (except as regards the premium, the obligation to investigate and defend, the renewal agreement (if any), the amount and limits of liability other than the deductible or self-insurance provision where applicable, (AND EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy/ies of the Primary Insurers prior to the happening of an occurrence for which claim is made hereunder and should any alteration be made in the premium for the policy/ies of the Primary Insurers during the currency of this Policy, then the premium hereon shall be adjusted accordingly.

(d) **Subrogation**

Inasmuch as this Policy is "excess coverage" the Assured's right of recovery against any person or other entity cannot be exclusively subrogated to the Underwriters. It is, therefore, understood and agreed that in case of any payment hereunder, the Underwriters will act in concert with all other interests (including the Assured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Assured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Underwriters are then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Assured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interest (including the Assured) concerned, in the ratio of their respective recoveries as finally settled.

(e) **Commutation Clause**    - (to apply to Workmen's Compensation and/or Employers Liability or Occupational Disease and then only when these perils are covered by the Primary Insurers)

Not later than twenty-four months from the expiry date of this policy, the Assured shall advise the Underwriters of all claims not finally settled which are likely to result in claims under this Policy. The Underwriters may then or at any time thereafter intimate to the Assured their desire to be released from liability in respect of any one or more of such claims. In such event, the Assured and the Underwriters shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalise such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims shall constitute a complete and final release of Underwriters, provided however that such payment shall not constitute a full and final release of Underwriters' liability if subsequent to such payment any supplemental award is made increasing the claim(s); said additional claim(s) may then be recommuted at Underwriter's option and Underwriters may discharge any additional liability by another payment.

(f) **Cancellation**

This Policy may be cancelled at any time at the written request of the Assured or may be cancelled by or on behalf of the Underwriters provided sixty (60) days notice in writing be given.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the earned premium hereon for the period that this Policy has been in force or the short rate proportion of the Minimum Premium, calculated in accordance with the customary scale, whichever is the greater.

If this Policy shall be cancelled by the Underwriters they shall retain the earned premium hereon for the period that this Policy has been in force or pro-rata of the Minimum Premium, whichever is the greater. Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium.

If the period of limitation relating to the giving of such notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(g) **Notification of Claims**

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Declarations. Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above person(s) or firm of any such occurrence.

(h) **Fraudulent Claims**

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

## DECLARATIONS

Item

1. **Named Assured:** The Diocese of Rockville Center, as more fully set forth in Endorsement No. 2 attached.

2. **Address of Assured:**  50 North Park Avenue
   Rockville Center
   New York, NY 11570

3. **Period:** October 1, 1982 to October 1, 1985
   9-1-83        9-1-84
   (Both days at 12:01 A.M. Local Standard Time)

4. a) **Primary Insurers:**      (i)  Certain Underwriters at Lloyd's London and various Insurance Companies
                                 (ii) Fireman's Fund Insurance Company (See Page 6 for Heliport Liability)

   b) **Underlying Excess Insurers:**  (i)  Interstate Fire & Casualty Company

5. **Primary and Underlying Excess Limit(s):**  U.S. $5,000,000 (See Page 6 for Heliport Liability)

6. **Excess Limit(s):**  U.S. $20,000,000

7. **Notification of Claims To:**        Gallagher Bassett of New York, Inc.
                                        100 Ring Road West
                                        Garden City, New York 11530

8. **Identification Details and Limits Carried Under Item 4 Above:**

   | Policy No(s) | Limit(s) |
   |---|---|
   | 4(a) (i) SL 4063/<br>SLC 6043 | $100,000 any one occurrence Combined Single Limit EXCESS of $100,000 Combined Single Limit any one occurrence Self-Insured Retention. |
   | (ii) XLX-1437075 | $50,000 any one occurrence Workers' Compensation Act Liability EXCESS OF $100,000 any one occurrence Self-Insured Retention. |

**Declarations**
(continued)

4(b) (i) 83-0169764

Difference between (a) (i) & (ii) above and
$5,000,000 any one occurrence Combined
Single Limit.

ATTACHING TO AND FORMING PART OF COVER NOTE NO. SL 4065 JSL 3125

                                                                                    ISRS

DATED: December 7, 1982          ARTHUR J. GALLAGHER & CO. (ILLINOIS)

        10-13-83

                                By _Donald J Kretch_

12/07/82

LW(18)RC
SL 4065

### HELIPORT LIABILITY
### DECLARATIONS

Item

1.  **Named Assured:**   The Diocese of Rockville Center, as more fully set forth
    in Endorsement No. 2 attached.

2.  **Address of Assured:**    50 North Park Avenue
    Rockville Center
    New York, NY 11570

3.  **Period:** October 1, 1982 to October 1, 1983
    9-1-83        9-1-84
    (Both days at 12:01 A.M. Local Standard Time)

4.  a)  **Primary Insurers:** United States Aviation Underwriters, Inc.

    b)  **Underlying Excess Insurers:**    (i) The Insurance Company of the State of
    Pennsylvania (Southeastern Aviation, Inc.)

5.  **Primary and Underlying Excess Limit(s):** U.S. $10,000,000

6.  **Excess Limit(s):** U.S. $20,000,000

7.  **Notification of Claims To:**    Gallagher Bassett of New York, Inc.
    100 Ring Road, West
    Garden City, New York  11530

8.  **Identification Details and Limits**
    **Carried Under Item 4 Above:**

| Policy No(s) | | Limit(s) |
|---|---|---|
| 4(a) | LG 18076 | $1,000,000 any one occurrence and aggregate |
| 4(b) | AX634-9967 Good Samaritan Hospital Heliport | $9,000,000 any one occurrence and aggregate EXCESS of 4(a) |
| 4(b) | AX634-9952 St. Francis Hospital Heliport | $9,000,000 any one occurrence and aggregate EXCESS of 4(a). |

12/07/82

LW(18)RC
SL 4065

**Heliport Liability**
**Declarations**

4(b)   AX634-9953      $9,000,000 any one occurrence
        St. Charles       and aggregate EXCESS of 4(a).
        Hospital Heliport

ATTACHING TO AND FORMING PART OF COVER NOTE NO. ~~SL 4065~~ ISL 3125

DATED: ~~December 7, 1982~~     ~~ARTHUR J. GALLAGHER & CO.~~ (ILLINOIS)  ISRS
      10-13, 83

              By _Donald J Smith_

LW(18)RC               Page 8 of 8            12/07/82
SL 4065

# GALLAGHER, HINTON & VEREKER LIMITED

## INTERNATIONAL INSURANCE BROKERS
and at Lloyd's

D. W. L. M. VEREKER, (Managing Director;
D. J. M. ARNOLD
J. P. GALLAGHER, (U.S.A.)
R. E. GALLAGHER, (U.S.A.)
G. D. S. JONES
R. B. OWLES
J. J. SHAW
J. O. STREET

**110 FENCHURCH STREET**
**LONDON, EC3M 5JJ**

Telephone: 01-481 2222

Cables & Telegrams:
GALVER O, LONDON

Telex: 8953306
Registered No. 1195013 England

Date: 1st December, 1983

Your Ref.

Our Ref.   PJN/BJW

Arthur J. Gallagher & Co.,
4605 Lankershim Boulevard,
North Hollywood,
Los Angeles,
California 91602.

ADDENDUM No. 1 to
COVER NOTE No. GHV-081/1982

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:   DIOCESE OF ROCKVILLE CENTER

PERIOD:   36 months effective 1st October, 1982

It is hereby noted and agreed that this policy is cancelled effective
1st September, 1983.

**R E C E I V E D**

DEC - 5 1983

ISRS

c.c. ISRS Chicago

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

Please
☐ READ
☐ HANDLE
☐ APPROVE
and
☐ FORWARD
☐ RETURN
☐ KEEP OR DISCARD
☐ REVIEW WITH ME

To *Florence Craig H.O.*
*Return of orig SL 3125/*
*ICD 4082 Copies of*
*Endts. issued here*
*to extend existing*
*SL9065/SLC 6045*

Date *10/26*   From *Sue Bedard*
*L.A.*

PREMIUM $3,572.00 (HEREON)

IUM

te No. SLC 6045

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is September 1, 1983  Endorsement No. C

In consideration of the payment of the sum of $20,000.00 due
hereon at $3,572.00, it is hereby noted and agreed that in
respect of losses occurring and/or occurrences occurring on
or after September 1, 1983 the participation insured by this
policy is decreased from 19.71% to 17.86% and the underwriters
subscribing to this policy are:

| | |
|---|---|
| CNA Reinsurance of London, Ltd. | 8.93% |
| Dominion Ins. Co. Ltd. | 8.93% |
| | 17.86% |

All other terms and conditions remain unchanged.

DATED:                          INTERNATIONAL SPECIAL RISK SERVICES, INC.


                                By:_____

ADDITIONAL PREMIUM

ENDORSEMENT

RETURN PREMIUM     $323.24 (HEREON)


Attaching to and forming part of Policy/Certificate No. SLC 6045

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982  Endorsement No. B


It is hereby understood and agreed that the policy period
is amended to read October 1, 1982 to September 1, 1986,
with "Periods of Insurance" as follows:

    October 1, 1982 to September 1, 1983
    September 1, 1983 to September 1, 1984
    September 1, 1984 to September 1, 1985
    September 1, 1985 to September 1, 1986

It is further noted and agreed effective September 1, 1983
that in consideration of the above there is due a Return
Premium of Pro Rata of $20,000.00 for the period September 1,
1983 to October 1, 1983.


All other terms and conditions remain unchanged.

DATED:                          INTERNATIONAL SPECIAL RISK SERVICES, INC.


                          By_____

ADDITIONAL PREMIUM  $16,428.00  (HEREON)

ENDORSEMENT

RETURN PREMIUM

Attaching to and forming part of Policy/Certificate No. SL 4065

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is September 1, 1983  Endorsement No. 5

In consideration of the payment of the sum of $20,000.00 due
hereon at $16,428.00, it is hereby noted and agreed that in
respect of losses occurring and/or occurrences occurring on or
*after September 1, 1983 the participation insured to this policy*
is increased from 80.29% to 82.14% and the underwriters subscrib-
ing to this policy are:

Underwriters at Lloyd's, London    82.14%

All other terms and conditions remain unchanged.

DATED:                          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By: _____

ADDITIONAL PREMIUM

ENDORSEMENT

RETURN PREMIUM      $1,316.76 (HEREON)


Attaching to and forming part of Policy/Certificate No. SL 4065

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982    Endorsement No. 4


It is hereby understoood and agreed that the policy period
is amended to read October 1, 1982 to September 1, 1986,
with "Periods of Insurance" as follows:

October 1, 1982 to September 1, 1983
September 1, 1983 to September 1, 1984
September 1, 1984 to September 1, 1985
September 1, 1985 to September 1, 1986

It is further noted and agreed effective September 1, 1983
that in consideration of the above there is due a Return
Premium of Pro Rata of $20,000.00 for the period
September 1, 1983 to October 1, 1983.


All other terms and conditions remain unchanged.

DATED:                        INTERNATIONAL SPECIAL RISK SERVICES, INC.


By:_____

INTERNATIONAL INSURANCE BROKERS

*and at Lloyd's*

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
J. P. GALLAGHER, *(U.S.A.)*
R. E. GALLAGHER, *(U.S.A.)*
G. D. S. JONES
R. B. OWLES
J. J. SHAW
J. O. STREET

110 FENCHURCH STREET
LONDON, EC3M 5JJ

Telephone: 01-481 2222

Cables & Telegrams:
GALVER O, LONDON

Telex: 8951586
*Registered No. 1193043 England*

7th October, 1982

Arthur J. Gallagher & Co.,
10 Gould Center,
Golf Road,
Rolling Meadows,
Illinois 60008,
U.S.A.

Date

Your Ref.

Our Ref.

**COVER NOTE No.** GHV051/1982

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE: EXCESS BROADFORM LIABILITY INCLUDING HELIPORT LIABILITY.

FORM: Excess 'Bishops' wording as agreed.

ASSURED: Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of Roman Catholic Diocese of Rockville Centre, and all legal entities therein over which the same central authority appoints or controls the appointment of the board of trustees or similar body and exercises direct, complete and active control over the finances, properties, operations and activities
50 North Park Avenue,
Rockville Centre,
New York 11570.

PERIOD: 36 months effective 1st October, 1982.

INTEREST: Legal Liability in respect of the Assured's operations as more fully defined in primary.

SUM INSURED: $20,000,000 any one occurrence.

EXCESS OF:

(A) $ 5,000,000 any one occurrence.

OR

(B) $10,000,000 any one occurrence in respect of heliport liability.

SITUATION: Worldwide.

CONDITIONS: 60 Days Cancellation Clause.

Aggregate Limits as primary.

Retro- date in respect of Errors and Omissions 1st October, 1976.

Annual check of information 45 days prior to anniversary.

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

.../...

Page No. 2 of Covernote No. GHV 051/1982 dated 7th October, 1982.

PREMIUM:    $60,000 payable one third annually.

SECURITY:    80.29% Part of 100.00%    Lloyd's Underwriters

| 4.11% | 219 | 4.10% | 219 | 8.01% | 989 | 0.72% | 279 | 1.54% | 650 |
|-------|-----|-------|-----|-------|-----|-------|-----|-------|-----|
| 4.11% | 799 | 8.88% | 618 | 0.57% | 278 | 2.05% | 494 | 2.09% | 408 |
| 0.37% | 99 | 3.29% | 604 | 2.05% | 346 | 1.24% | 109 | 4.10% | 210 |
| 6.16% | 918 | 4.11% | 553 | 2.46% | 921 | 0.82% | 602 | 1.65% | 92 |
| 0.82% | 661 | 0.41% | 518 | 3.28% | 205 | 0.99% | 235 | 1.23% | 235 |
| 0.25% | 383 | 0.61% | 204 | 0.62% | 204 | 0.41% | 620 | 0.62% | 365 |
| 1.23% | 416 | 1.23% | 506 | 0.82% | 694 | 1.23% | 56 | 1.65% | 665 |
| 1.23% | 263 | 1.23% | 584 | | | | | | |

**GALLAGHER HINTON & JEBB LIMITED**

INTERNATIONAL INSURANCE BROKERS
and at Lloyd's

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
J. P. GALLAGHER, *(U.S.A.)*
R. E. GALLAGHER, *(U.S.A.)*
O. D. S. JONES
R. B. OWLES
J. J. SHAW
J. O. STREET

110 FENCHURCH STREET
LONDON, EC3M 5JJ

*Telephone:* 01-481 2222

*Cables & Telegrams:*
GALVER O, LONDON

*Telex:* 8951506
*Registered No.* 1199011 *England*

Arthur J. Gallagher & Co.,
10 Gould Center,
Golf Road,
Rolling Meadows,
Illinois 60008,
U.S.A.

7th October, 1982

*Date*

*Your Ref.*

*Our Ref.*

## COVER NOTE No.  GHV051/1982

We confirm that we have effected the following insurance in accordance with your instructions:

**TYPE:**  EXCESS BROADFORM LIABILITY INCLUDING HELIPORT LIABILITY.

**FORM:**  Excess 'Bishops' wording as agreed.

**ASSURED:**  Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of Roman Catholic Diocese of Rockville Centre, and all legal entities therein over which the same central authority appoints or controls the appointment of the board of trustees or similar body and exercises direct, complete and active control over the finances, properties, operations and activities
50 North Park Avenue,
Rockville Centre,
New York 11570.

**PERIOD:**  36 months effective 1st October, 1982.

**INTEREST:**  Legal Liability in respect of the Assured's operations as more fully defined in primary.

**SUM INSURED:**  $20,000,000 any one occurrence.

EXCESS OF:

(A)  $ 5,000,000 any one occurrence.

OR

(B)  $10,000,000 any one occurrence in respect of heliport liability.

**SITUATION:**  Worldwide.

**CONDITIONS:**  60 Days Cancellation Clause.

Aggregate Limits as primary.

Retro- date in respect of Errors and Omissions 1st October, 1976.

Annual check of information 45 days prior to anniversary.

20-01226-scc Doc 8-10 Filed 10/01/20 Entered 10/01/20 08:44:55 Exhibit C
Part 4 - London Program Policy Compendium Pg 34 of 110

Page No. of Covernote No. GHV 051/1 ted 7th October, 1982.

PREMIUM:        $60,000 payable one third annually.


SECURITY:       8.21% Part of 100.00%    CNA Reinsurance of London Ltd.,

                8.21% Part of 100.00%    Dominion Ins. Co. Ltd.,

                3.29% Part of 100.00%    Stronghold Ins. Co. Ltd.,

8.3.83
1982

# Lloyd's Policy

**Whereas** the Assured named in the Schedule herein has paid the premium specified in the Schedule to the Underwriting Members of Lloyd's who have hereunto subscribed their Names (hereinafter called 'the Underwriters'),

**Now We the Underwriters** hereby agree to insure against loss, damage or liability to the extent and in the manner hereinafter provided.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**Now know Ye** that We the Underwriters, Members of the Syndicates whose definitive numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators and in respect of his due proportion only, to pay or make good to the Assured or to the Assured's Executors or Administrators or to indemnify him or them against all such loss, damage or liability as herein provided, after such loss, damage or liability is proved and the due proportion for which each of Us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the total sum insured hereunder which is in the Table set opposite the definitive number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Shares therein, is deemed to be incorporated in and to form part of this Policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE,
*General Manager*

**J(A)** NMA 2002 (11.4.74)
Form approved by Lloyd's Underwriters' Non-Marine Association,
Printed by The Carlton Berry Co. Ltd.

The Assured is requested to **read this Policy** and, if it is incorrect, return it immediately for alteration.

In all communications the Policy Number appearing in line one of the Schedule should be quoted.

In the event of any occurrence likely to result in a claim under this Policy, immediate notice should be given to: GALLAGHER HINTON & VEREKER LTD.

**U.S.A.**

### NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

**U.S.A.**

### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

### SERVICE OF SUIT CLAUSE (U.S.A.)
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon

**Lord, Bissell & Brook, 115 South Lasalle Street, Chicago, Illinois 60603** , and

that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such court or of any Appellate Courts in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters hereon and/or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

22.5.52
N.M.A. 1551

material'', and ''byproduct material'' have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; ''spent fuel'' means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor, ''waste'' means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; ''nuclear facility'' means:

  (a) any nuclear reactor,
  (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
  (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
  (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; ''nuclear reactor'' means any apparatus designed or used to sustain nuclear fission in a self supporting chain reaction or to contain a critical mass of fissionable material.

With respect to injury to or destruction of property, the word ''injury'' or ''destruction'' includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE — As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.*

17/3/60
N.M.A. 1256

# PSAC POLICY

IN CONSIDERATION of the Insured named in the Schedule hereto having paid the premium stated in the said Schedule to the Insurers named herein who have hereunto subscribed their Names ("the Insurers")

THE INSURERS HEREBY SEVERALLY AGREE each for the proportion set against its own name to indemnify the Insured or the Insured's Executors and Administrators against loss, damage or liability to the extent and in the manner set forth herein. Provided that the aggregate liability of the Insurers shall not exceed the Sum Insured or other limits as are set forth in the Schedule.

If the Insured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

IN WITNESS WHEREOF the Policy Signing Manager of THE POLICY SIGNING & ACCOUNTING CENTRE LIMITED ("PSAC") has subscribed his name on behalf of each of the PSAC Companies and (where the Companies Collective Signing Agreement ("CCSA") is being implemented) on behalf of the Leading CCSA Company which is a PSAC member and authorised to sign this Policy (either itself or by delegation to PSAC) on behalf of all the other CCSA Companies.

Signed: _____
*Policy Signing Manager*

Policy Department
Seal

Date as in the Schedule.

PSAC POL. I REVISED 9/78

| The Insurers | PSAC Company Number | Whether CCSA or not | Proportion | Reference Numbers |
|---|---|---|---|---|
| CNA Reinsurance of London Limited | C4009 | YES | 8.21% | F351556 |
| Stronghold Insurance Company Limited | 80404 | YES | 3.29% | 229429 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

PSAC
D.U.

U.G

ENDORSEMENT

Attaching to and forming part of Policy    No. GHV 051/1982

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982                    Endorsement No. 1


It is hereby understood and agreed effective inception that the Named
Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary
Bishop Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of
ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal
entities therein over which the same central authority appoints or controls
the appointment of the board of trustees of similar body and exercises
direct, complete and active control over the finances, properties, operations
and activities.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 7, 1982              ARTHUR J. GALLAGHER & CO. (ILLINOIS)


By _Donala J Krutich_

Date  31st December, 1982

Policy No. GHV 051/1982

# THE SCHEDULE

The Insured  Roman Catholic Diocese of Rockville Center, etal
(as more fully described in Endorsement No.1)
50 North Park Avenue,
Rockville Center, New York 11570

Premium  US$2,300.00 part of US$20,000.00 being the first annual instalment
with subsequent equal instalments being due and payable on 1st October
1983 and 1st October, 1984

The Interest Insured  Legal Liability in respect of all operations of the various
Insured's and for their Agencies as more fully set forth
in the Coinsuring Policy detailed below.

This Insurance being for 11.50% part of 100.00% covers
its pro rata proportion of the risks and liability more
particularly described in the Coinsuring Policy detailed
below and the percentages signed hereon are percentages of
100.00% and not of 11.50%

Period of Insurance

From 1st October, 1982                   To    1st October, 1985 both days
at 12.01 a.m. Local Standard Time.
and for such further period or periods as may be mutually agreed.

## COINSURANCE CLAUSE

It is warranted that this Policy shall run concurrently with and be subject to the same terms,
provisions, and limitations as are contained in Policy No. GHV051/1982
issued by Certain Underwriters at Lloyd's London                  covering the identical subject
matter and risk.

*Rockville*
*1982*

**FORM C.P. 2.**

# COMPANIES COLLECTIVE POLICY

**In consideration** of the Insured named in the Schedule hereto having paid premium set forth in the said Schedule to the Insurers who have hereunto subscribed their Names (hereinafter referred to as "the Insurers").

**The Insurers Hereby Severally Agree**   each for the proportion set against its name to indemnify the Insured or the Insured's Executors, Administrators and Assigns against Loss as more fully set forth in the Policy detailed in the said Schedule covering the identical subject matter and risk (hereinafter called the "Co-insuring Policy") during the period of Insurance stated in the said Schedule or during any subsequent period as may be mutually agreed upon between the Insured and the Insurers.

PROVIDED that : —

(1) the liability of the Insurers shall not exceed the limits of liability expressed in the said Schedule or such other limits of liability as may be substituted therefor by memorandum hereon or attached hereto signed by or on behalf of the Insurers.

(2) the liability of each of the Insurers individually in respect of such loss shall be limited to the proportion set against its name.

(3) this Policy shall be subject to the same terms, provisions, conditions, and limitations as are contained in the Co-insuring Policy.

If the Insured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**In Witness Whereof**   I, being a representative of the Leading Company and authorised by the said Company and by all other Companies appearing hereon to sign this Policy on their behalf, have hereunto subscribed my name this      *5TH*      day of *July*      **One Thousand nine hundred and** *EIGHTY THREE*

THE DOMINION INSURANCE CO. LTD.

| THE INSURERS | PROPORTION | REFERENCE NUMBERS |
|---|---|---|
| The Dominion Insurance Company Limited | 8.21% | 126555 / 82A126555 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

ENDORSEMENT

Attaching to and forming part of Policy     No. GHV 051/1982

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982          Endorsement No. 1

It is hereby understood and agreed effective inception that the Named
Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary
Bishop Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of
ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal
entities therein over which the same central authority appoints or controls
the appointment of the board of trustees of similar body and exercises
direct, complete and active control over the finances, properties, operations
and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 7, 1982          ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By *Donald J Koutek*

Date  31st December 1982

Policy No.  GHV 051/1982

# THE SCHEDULE

The Insured   Roman Catholic Diocese of Rockville Center, etal,
(as more fully desribed in Endorsement No. 1)
50 North Park Avenue,
Rockville Center, New York 11570.

/ Xxxxx Xxxxxxxx /

Premium: US$1,642.00 part of US$20,000
being the first annual instalment with
subsequent equal instalments being due and
payable on 1st October 1983 and 1st October 1984.

The Interest Insured:   Legal Liability in respect of all operations of the various
Insured's and for their Agencies as more fully set forth in
the Coinsuring Policy detailed below.

This insurance being for 8.21% part of 100% covers its pro
rata proportion of the risks and liability more particularly
described in the Coinsuring Policy detailed below and the
percentages signed hereon are percentages of 100% and not
of 8.21%

I Xxxxxxxx XXxxxxx /

Period of Insurance

From 1st October 1982      To 1st October 1985 both days
at 12.01 a.m. Local Standard Time

Coinsuring Policy No.  GHV 051/1982          Issued by Certain Underwriters at
Lloyd's, London

# Schedule

Policy or Certificate No. **GHV 051     /    1982**          Contract No. (if any)

The name and address of the Assured
Roman Catholic Diocese of Rockville Center, etal,
(as more fully described in Endorsement No. 2),
50 North Park Avenue,
Rockville Center, New York 11570.

The risk and sum insured hereunder

EXCESS BROADFORM LIABILITY INCLUDING HELIPORT LIABILITY.

This insurance being for 80.29% part of 100.00% covers its pro rata
proportion of the risks and liability more particularly described in the
attached wording, which is hereby declared to be incorporated in and to
form part of this policy, and the percentages signed hereon are percentages
of 100.00% and not of  80.29%

The Premium US$16,058.00 part of US$20,000 being the first annual instalment
with subsequent equal instalments being due and payable on 1st October 1983
and 1st October 1984.

The period of Insurance from  **1st October 1982**          to  **1st October 1985**
both days inclusive, and for such further period or periods as may be mutually agreed upon
12.01 a.m. Local Standard Time.

Dated in     **LONDON**                                the **31st December 1982**

J or J(A) (Schedule) NMA 2003 for attachment to NMA 2001, NMA 2002, NMA 2004 or NMA 2005

ENDORSEMENT

Attaching to and forming part of Policy No: GHV 051/1982

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982                    Endorsement No. 3

It is hereby understood and agreed that 45 days prior to each anniversary
date this risk is subject to the Assured advising Underwriters of any change
in the information given to Underwriters at inception, at which time the
coverage afforded and the premium charged shall be subject to review by
Underwriters.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 7, 1982          ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By _Donald JKrutch_

ENDORSEMENT

Attaching to and forming part of Policy   No: GHV 051/1982

In the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982          Endorsement No. 2


It is hereby understood and agreed effective inception that the Named
Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary
Bishop Gerald J.  Ryan and Auxiliary Bishop James J. Daly comprising of
ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal
entities therein over which the same central authority appoints or controls
the appointment of the board of trustees of similar body and exercises
direct, complete and active control over the finances, properties, operations
and activities.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 7, 1982          ARTHUR J. GALLAGHER & CO.  (ILLINOIS)


By _Donald J Knitch_____

ENDORSEMENT

Attaching to and forming part of Policy  No: GHV 051/`'82

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982

Endorsement No. 1

## ERRORS AND OMISSIONS

It is hereby understood and agreed that insofar as Errors and Omissions coverage is afforded to the Assured in the Primary and Underlying Excess Insurers policy/ies this Policy is extended to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER AGREED:

(1)     There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to October 1, 1976 (hereinafter referred to as the "Retroactive Date").

(2)     In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemeteries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 7, 1982          ARTHUR J. GALLAGHER & CO.  (ILLINOIS)

By _Donald J Kratz_

EXCESS BROAD FORM LIABILITY

## INSURING AGREEMENTS

1. COVERAGE –

   In consideration of the payment of the premium stated herein
   and subject to the limitations, definitions, terms and con-
   ditions hereinafter mentioned, Underwriters hereby agree with
   the Assured named in the Declarations made a part hereof to
   indemnify the Assured for all sums which the Assured shall be
   legally obligated to pay by reason of the liability caused by
   or arising out of only such hazards covered by and as more
   fully defined in the policy/ies of the "Primary and
   Underlying Excess Insurers" and issued by the Primary and
   Underlying Excess Insurers stated in Item 4 of the
   Declarations occurring during the period of this policy.

2. LIMITS OF LIABILITY –

   Provided always that:

   (a) Liability attaches to the Underwriters only after the
       Primary and Underlying Excess Insurers have paid or have
       been held liable to pay the full amount of their respec-
       tive ultimate net loss liability as set forth in Item 5
       of the Declarations and designated "Primary and
       Underlying Excess Limits(s)" and then the limits of the
       Underwriters' liability shall be those set forth in Item
       6 of the Declarations under the designation "Excess
       Limit(s)" and the Underwriters shall be liable to pay
       the ultimate net loss the Excess of the Limit(s) under
       the policy/ies of the Primary and Underlying Excess
       Insurers as set forth in Item 5 of the Declarations up
       to the full amount of such Excess Limit(s).

   (b) Liability for any one or any combination of the hazards
       insured hereunder as provided for in the Primary and
       Underlying Excess Insurers policy/ies is subject separa-
       tely to the limit "each occurrence" as stated in the
       Declarations, but this limit shall not be exceeded in
       any one policy year with regard to any hazard(s) insured
       with an aggregate limit under the policy/ies of the
       Primary and Underlying Excess Insurers.



Page 1 of 6

(c) For the purpose of determining the limit of the Underwriters' liability, all Personal Injury and Property Damage arising out of either

    (i) an accident or series of accidents arising out of one event, or

    (ii) a continuous or repeated exposure to substantially the same general conditions,

shall be considered as arising out of one occurrence.

(d) The inclusion of more than one entity as the named Assured, or the inclusion of any additional Assureds under this Policy, shall not in any way operate to increase the Underwriters' limits of liability beyond those provided in Item 6 of the Declarations.

## DEFINITIONS

3. (a) <u>Occurrence</u> -

The word "occurrence" means an accident, including injurious exposure to conditions, which results during the Policy year in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Assured.

(b) <u>Ultimate Net Loss</u> -

The words "ultimate net loss" shall be understood to mean the amount payable in settlement of the liability of the Assured after making deductions for all recoveries and for other valid and collectible insurances, excepting however the policy/ies of the Primary and Underlying Excess Insurers, and shall include all expenses and costs.

(c) <u>Policy Year</u> -

The words "policy year" shall be understood to mean a period of one calendar year commencing each year on the day and hour first named in the Declarations.

Page 2 of 6

CONDITIONS

4. (a) Application of Recoveries -

All recoveries, salvages or payments recovered or
received subsequent to a loss settlement under this
Insurance shall be applied as if recovered or received
prior to such settlement and all necessary adjustments
shall then be made between the Assured and the
Underwriteres, provided always that nothing in this
Insurance shall be construed to mean that losses under
this Insurance are not payable until the Assured's ulti-
mate net loss has been finally ascertained.

(b) Attachment of Liability -

Liability to pay under this Policy shall not attach
unless and until the Primary and Underlying Excess
Insurers shall have admitted liability for the Primary
and Underlying Excess Limit(s) or unless and until the
Assured has by final judgment been adjudged to pay the
full amount of the Primary and Underlying Excess
Limit(s).

(c) Maintenance of Primary Insurance -

It is a condition of this Policy that the policy/ies of
the Primary and Underlying Excess Insurers shall be
maintained in full effect during the currency of this
Policy except for any reduction of the aggregate limits
contained therein solely by payment of claims in respect
of occurrences during the policy year.

In respect of the hazards covered by the Primary and
Underlying Excess Insurers this Policy is subject to
the same warranties, terms, definitions, conditions and
exclusions (except as regards the premium, the
obligation to investigate and defend, the renewal
agreement (if any), the amount and limits of liability
other than the deductible or self-insurance provision
where applicable, AND EXCEPT AS OTHERWISE PROVIDED
HEREIN) as are contained in or as may be added to the
policy/ies of the Primary Insurers prior to the hap-
pening of an occurrence for which claim is made
hereunder and should any alteration be made in the pre-
mium for the policy/ies of the Primary Insurers during
the currency of this Policy, then the premium hereon
shall be adjusted accordingly.

Page 3 of 6

(d) Subrogation –

Inasmuch as this Policy is "excess coverage" the
Assured's right of recovery against any person or other
entity cannot be exclusively subrogated to the
Underwriters. It is, therefore, understood and agreed
that in case of any payment hereunder, the Underwriters
will act in concert with all other interests (including
the Assured) concerned, in the exercise of such rights
of recovery. The apportioning of any amounts which may
be so recovered shall follow the principle that any
interests (including the Assured) that shall have paid
an amount over and above any payment hereunder, shall
first be reimbursed up to the amount paid by them; the
Underwriters are then to be reimbursed out of any
balance then remaining up to the amount paid hereunder;
lastly, the interests (including the Assured) of whom
this coverage is in excess are entitled to claim the
residue, if any. Expenses necessary to the recovery of
any such amounts shall be apportioned between the
interests (including the Assured) concerned, in the
ratio of their respective recoveries as finally settled.

(e) Commutation Clause – (to apply to Workers' Compensation
and/or Employer's Liability or
Occupational Disease and then
only when these perils are
covered by the Primary Insurers)

Not later than twenty-four months from the expiry date
of this policy, the Assured shall advise the
Underwriters of all claims not finally settled which are
likely to result in claims under this Policy. The
Underwriters may then or at any time thereafter intimate
to the Assured their desire to be released from liabi-
lity in respect of any one or more of such claims. In
such event, the Assured and the Underwriters shall
mutually appoint an Actuary or Appraiser to investigate,
determine and capitalize such claim or claims and the
payment by the Underwriters of their portion of the
amount so ascertained to be the capitalized value of
such claim or claims shall constitute a complete and
final release of Underwriters, provided however that
such payment shall not constitute a full and final
release of Underwriters' liability if subsequent to such
payment any supplemental award is made increasing the
claim(s); said additional claim(s) may then be recom-
muted at Underwriter's option and Underwriters may
discharge any additional liability by another payment.

Page 4 of 6

(f)  Cancellation -

This Policy may be cancelled at any time at the written
request of the Assured or may be cancelled by or on
behalf of the Underwriters provided 30 days notice in
writing be given.

If this Policy shall be cancelled by the Assured, the
Underwriters shall retain the earned premium hereon for
the period that this Policy has been in force or the
short rate proportion of the Minimum Premium, calculated
in accordance with the customary scale, whichever is the
greater.

If this Policy shall be cancelled by the Underwriters
they shall retain the earned premium hereon for the
period that this Policy has been in force or pro-rata of
the Minimum Premium, whichever is the greater.  Notice
of cancellation by the Underwriters shall be effective
even though the Underwriters make no payment or tender
of return premium.

If the period of limitation relating to the giving of
such notice is prohibited or made void by any law
controlling the construction thereof, such period shall
be deemed to be amended so as to be equal to the minimum
period of limitation permitted by such law.

(g)  Notification of Claims -

The Assured upon knowledge of any occurrence likely to
give rise to a claim hereunder shall give immediate
written advice thereof to the person(s) or firm named
for the purpose in the Declarations.  Claims shall not
be prejudiced if the Assured, through clerical oversight
or error, fails to notify the above person(s) or firm of
any such occurrence.

(h)  Fraudulent Claims -

If the Assured shall make any claim knowing the same to
be fake or fraudulent, as regards amount or otherwise,
this Policy shall become void and all claim hereunder
shall be forfeited.

Page 5 of 6

## DECLARATIONS

Item

1. NAMED ASSURED: Roman Catholic Diocese of Rockville Center, etal
(as more fully described in Endorsement No. 2)

2. ADDRESS OF ASSURED: 50 North Park Avenue,
Rockville Center, New York 11570.

3. PERIOD: 1st October 1982 to 1st October 1985 both days at 12.01 a.m.
Local Standard Time.

4. a) PRIMARY INSURERS: (i) Certain Underwriters at Lloyd's, London and various Insurance Companies. (ii) Fireman's Fund Insurance Company.
(iii) United States Aviation Underwriters Inc., (as respects Heliport Liability only).
   b) UNDERLYING EXCESS INSURERS: (i) Interstate Fire & Casualty Company
(ii) The Insurance Company of the state of Pennsylvania (Southeastern Aviation Inc.)

5. PRIMARY AND UNDERLYING EXCESS LIMIT(S): (i) US$5,000,000 any one occurrence
(ii) US$10,000,000 any one occurrence (as respects Heliport Liability only).

6. EXCESS LIMIT(S): US$20,000,000 any one occurrence

7. NOTIFICATION OF CLAIMS TO: Gallagher Bassett of New York, Inc.,
100 Ring Road West,
Garden City, New York 11530.

8. IDENTIFICATION DETAILS AND LIMITS
CARRIED UNDER ITEM 4 ABOVE:

| POLICY NO(S) | LIMIT(S) |
|---|---|
| (a) (i) 051/182 | US$100,000 any one occurrence Combined Single Limit EXCESS of US$100,000 any one occurrence Self-Insured Retention as respects Comprehensive General and Automobile Liability. |
| (ii) XLX-1437075 | US$50,000 any one occurrence Worker's Compensation Act Liability EXCESS of US$100,000 any one occurrence Self-Insured Retention. |
| (iii) LG-18076 | US$1,000,000 any one occurrence and aggregate. |

Cont'd..

(b) (1)  83-0169764

(11) AX634-9967
Good Samaritan
Hospital Heliport.

AX634-9952
St. Francis
Hospital Heliport.

AX634-9953
St. Charles
Hospital Heliport.

Difference between (a) (1) & (11)
above and US$5,000,000 any one
occurrence Combined Single Limit.

US$9,000,000 any one occurrence and
aggregate Excess of 4 (a) (11) above
(as respects Heliport Liability only).

Lloyd's

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Sum Insured hereunder shared between the Members of those Syndicates.

| FOR LPSO USE ONLY | BROKER | LPSO NO. & DATE |
|---|---|---|
| CPD33R 07C7 | 518 | 63508 24 1 83 |
| 935 | | |

| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF. | PAGE |
|---|---|---|---|
| | | | 1 |
| PERCENT | | | |
| 4.11 | 219 | 977P1234 | |
| 4.10 | 219 | 277P1234 | |
| 8.01 | 989 | 213SB301240A | |
| 0.72 | 279 | 213SB301240A | |
| 1.54 | 650 | 213SB301240A | |
| 4.11 | 799 | DF70379647 | |
| 8.88 | 618 | NA6252314D01 | |
| 0.57 | 278 | NA6252314D01 | |
| 2.05 | 494 | NA6252314D01 | |
| 2.09 | 408 | K2141806S205 | |
| 0.37 | 99 | K2141806S205 | |
| 3.29 | 604 | 81300145 | |
| 2.05 | 346 | NA6202006S04 | |
| 1.24 | 109 | 06L6608R1XS | |
| 4.10 | 210 | E2017777 | |
| 6.16 | 918 | LSLO530N217 | |

| FOR LPSO USE ONLY | BROKER | LPSO NO. & DATE |
|---|---|---|
| | 518 | 63508 24 1 83 |
| 936 | | |

| AMOUNT PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF | PAGE |
|---|---|---|---|
| | | | 2 |
| PERCENT | | | |
| 4.11 | 553 | CBTF8000290B | |
| 2.46 | 921 | NA6200118G04 | |
| 0.82 | 602 | DADD924ABBU | |
| 1.65 | 92 | 252K011TP00R | |
| 0.82 | 661 | 003WG22XX731 | |
| 0.41 | 518 | 003W604A4308 | |
| 3.28 | 205 | 4886AAA0018 | |
| 0.99 | 235 | 9398610RI | |
| 1.23 | 235 | 8610820RI | |
| 0.25 | 383 | 93912RDRI | |
| 0.61 | 204 | 3081282E1X | |
| 0.62 | 204 | 0601282E1X | |
| 0.34 | 620 | 9090461G08D2 | |
| 0.07 | 987 | 9090461G08D2 | |
| 0.62 | 365 | 0961948 | |
| 1.23 | 416 | 707X4612P | |

| TOTAL LINE | NO OF SYND | FOR LPSO USE ONLY |
|---|---|---|
| | | |

| FOR LPSO USE ONLY | BROKER | LPSO NO. & DATE |
|---|---|---|
| | 518 | 63508 24 1 83 |
| 937 | | |

| AMOUNT PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF | PAGE |
|---|---|---|---|
| | | | 3 |
| PERCENT | | | |
| 1.23 | 506 | R65211684 | |
| 0.82 | 694 | 4690LRR32094 | |
| 1.23 | 56 | X148A493Q | |
| 1.65 | 665 | 82X58100A | |
| 1.23 | 263 | DXFX114C0359 | |
| 1.23 | 584 | N0450V804RI | |

THE LIST OF UNDERWRITING MEMBERS OF LLOYDS IS NUMBERED 1983/ 1

| TOTAL LINE | NO OF SYND | FOR LPSO USE ONLY |
|---|---|---|
| 80.29 | 38 5D | 17208 |

# PSAC POLICY

**IN CONSIDERATION** of the Insured named in the Schedule hereto having paid the premium stated in the said Schedule to the Insurers named herein who have hereunto subscribed their Names ("the Insurers")

**THE INSURERS HEREBY SEVERALLY AGREE** each for the proportion set against its own name to indemnify the Insured or the Insured's Executors and Administrators against loss, damage or liability to the extent and in the manner set forth herein. Provided that the aggregate liability of the Insurers shall not exceed the Sum Insured or other limits as are set forth in the Schedule.

If the Insured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**IN WITNESS WHEREOF** the Policy Signing Manager of THE POLICY SIGNING & ACCOUNTING CENTRE LIMITED ("PSAC") has subscribed his name on behalf of each of the PSAC Companies and (where the Companies Collective Signing Agreement ("CCSA") is being implemented) on behalf of the Leading CCSA Company which is a PSAC member and authorised to sign this Policy (either itself or by delegation to PSAC) on behalf of all the other CCSA Companies.

Signed: R. E. Sanders
*Policy Signing Manager*

Policy Department
Seal

Date as in the Schedule.

| The Insurers | Company Number | Whether COSA or not | Proportion | Reference Numbers |
|---|---|---|---|---|
| Excess Insurance Company Limited. | E0302 | YES | 3.47% | N820501822 019200008343 N820501831 019200220343 |
| Terra Nova Insurance Company Limited | T3902 | YES | 3.47% | 82WP07749HAD 82WL3090TAD 76P11FA1 9B 76L10FA1 9B |
| Yasuda Fire & Marine Insurance Company (UK) Limited | Y1901 | YES | 1.04% | 82151541 |
| ( Per Leslie & Godwin Agencies Limited). | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Date __ 9th March 1983

Policy No. GHV 051/182

# THE SCHEDULE

The Insured  Roman Catholic Diocese of Rockville Centre, and all Legal Entities
therein over which the same central authority appoints or controls the appointment
of the board of trustees or similar body and exercises direct, complete and
active control over the finances, properties, operations and activities,
50 North Park Avenue, Rockville Centre, New York 11570.

Premium         US$37,665.60 part of US$472,000.00 being the first annual instalment
                with subsequent equal instalments being due and payable on 1st
SXNKXxxxKxxi    October, 1983 and 1st October, 1984.


The Interest Insured  All Real and Personal Property of every description including
                Casualty and Crime Coverages in respect of all operations
                of the various Insured's and for their Agencies as more
                fully set forth in the Coinsuring Policy detailed below.

                This insurance being for 7.98% part of 100.00% of 80.00%
                covers its pro rata proportion of the risks and liability
                more particularly described in the Coinsuring Policy detailed
                below, and the percentages signed hereon are percentages
                of 100.00% of 80.00% and not of 7.98% of 80.00%.


XXXXXXXXXXXXXX
Insured Perils

Period of Insurance

From  1st October 1982                    To  1st October 1985 both days
      at 12.01 a.m. Local Standard Time.
and for such further period or periods as may be mutually agreed.

## COINSURANCE CLAUSE

        It is warranted that this Policy shall run concurrently with and be subject to the same terms,
provisions, and limitations as are contained in Policy No.    GHV 051/182
                                                        covering the identical subject
issued by  certain Underwriters at Lloyd's, London
matter and risk.

RBAd
P B P B

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**


Policy number(s):    SL 4066
                             SLC 6046

Inception date:    10/1/1982

Term at issuance:    1 year

Page count:    51

Contents:    Slip- 2 pgs
                        Excess Broad Form Liability- 8 pgs
                        Endorsement- 12 pgs
                        Cover Note- 8 pgs
                        Lloyd's, PSAC, Companies Policy- 21 pgs

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF PROVISIONS (FORM CN-1)

| | |
|---|---|
| **1** | *Name of Assured*    Roman Catholic Diocese of Rockville Centre, et al<br>(See Endorsement #2)<br>50 North Park Avenue<br>Rockville Centre, New York 11570 |

9 - 1 - 83      9 - 1 - 84

**2**   EFFECTIVE ☒ 12:01 A.M.   BOTH DAYS AT   October 1, 1983    TO   October 1, 1984
FROM ☐ 12:00 NOON   STANDARD TIME

| | NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|---|
| Acting upon your instruction, we have effected the insurance with: ➡ | UNDERWRITERS AT LLOYD'S, LONDON | 24.16%<br>24.94% |

**3**   RENEWED R   Cover Che... RR

| AMOUNT 24.94% | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon 24.16% Part of 100% of: | | Annual: | $22,500.00 |
| $ 25,000,000 any one occurrence | | Hereon: | $~~5,431.50~~<br>5,611.50 |
| **4**   EXCESS OF: | | | |
| (A) $5,000,000 any one occurrence | Excess Broad Form Liability Including Heliport Liability – Worldwide | | |
| or | | | |
| (B) $30,000,000 any one occurrence in respect of heliport liability | | | |
| AUDIT | | TOTAL CHARGED | |

**5**
SPECIAL CONDITIONS
As per attached forms and endorsements
NMA 772
NMA 1477
NMA 1256

**6**
Service of Suit Clause
Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, IL 60603
or Mendes & Mount, 3 Park Avenue, New York, NY 10016

In witness whereof this covernote has been signed at Rolling Meadows, IL .......... this 13 day of December October

ARTHUR J. GALLAGHER & CO. (ILLINOIS)
ISRS

SLC 6046

By ....................

ADDITIONAL PREMIUM:                    (Hereon)

RETURN PREMIUM:      $445.38          (Hereon)

ENDORSEMENT attaching to and forming part of Policy/Certificate No. SL 4066

In the name of    Diocese of Rockville Centre

Effective Date of this endorsement is   September 1, 1983          Endorsement No.   4

It is hereby noted and agreed effective September 1, 1983, this

policy is cancelled in its entirety.

In consequence of the above there is a return premium due of

$1,845.00.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:    January 19, 1984              INTERNATIONAL SPECIAL RISK SERVICES, INC.

                                        AS SUCCESSORS TO

                                        BY:

ENDORSEMENT attaching to and forming part of Policy No. SL 4066

in the name of Diocese of Rockville Centre

Effective date of this endorsement is October 1, 1982

Endorsement No. 3

It is hereby noted and agreed that effective 1st October, 1982, the Security
is amended to read:

SECURITY: 24.14% Part of 100.00% Lloyd's Underwriters

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: July 8, 1983

INTERNATIONAL SPECIAL RISK SERVICES, INC.
AS SUCCESSORS TO
ARTHUR J GALLAGHER & CO (ILLINOIS)

By _Charles C De Breuler_

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. SL 4066 ~~ISL~~ 3114

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is ~~October 1, 1982~~ 9-1-83   Endorsement No. 2

It is hereby understood and agreed effective inception that the Named Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal entities therein over which the same central authority appoints or controls the appointment of the board of trustees of similar body and exercises direct, complete and active control over the finances, properties, operations and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: ~~December 6, 1982~~   ARTHUR J. GALLAGHER & CO. (ILLINOIS)   ISRS

1-13-83

By _Donald J. Kretch_

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. SL A066   TSL 3114

In the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982   9 · 83   Endorsement No. 1

## ERRORS AND OMISSIONS

It is hereby understood and agreed that insofar as Errors and Omissions coverage is afforded to the Assured in the Primary and Underlying Excess Insurers policy/ies this Policy is extended to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER AGREED:

(1)    There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to October 1, 1976 (hereinafter referred to as the "Retroactive Date").

(2)    In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemeteries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 6, 1982
     · 83

ARTHUR J. GALLAGHER & CO. (ILLINOIS)   ISKS

By  Donald J Krutelb

| DATE ISSUED | CONTRACT NO. | PREVIOUS NO. |
|---|---|---|
| December 6, 1982 10-13-83 | GHV 051/2083 2083 | SLC 9899 6046 |

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF RIDER NOTE PROVISIONS (FORM SLC039CN)

| ITEM | NUMBER SLC F816 ICO 4072 |
|---|---|

**1**

**Name of Assured**

Roman Catholic Diocese of Rockville Centre, et al
(See Endorsement #A)
50 North Park Avenue
Rockville Centre, New York 11570

**2**

EFFECTIVE FROM  ☒ 1201 AM  BOTH DAYS AT
☐ 12.00 NOON  STANDARD TIME

October 1, 1982 9-1-83  TO  October 1, 1983 9-1-84

**3**

Acting upon your instruction, we have ✓ effected the insurance with:

NAME OF INSURERS

See Endorsement #A  K

AMOUNT OR PERCENT
506%

**4**

AMOUNT 506%
Hereon: 73.26% Part of 100% of:

Subject to the same forms, terms, conditions and endorsements as more particularly set forth in Cover Note No. SL-A066  1513/14

COVERAGE

See Endorsement #B

RATE

PREMIUM

Annual  $22,900.00
Hereon: $17,069.50
16,888.50

AUDIT

TOTAL CHARGED

**5**

SPECIAL CONDITIONS

**6**

ISRS

ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By Donald J Kreth

ADDITIONAL PREMIUM:                    (Hereon)

RETURN PREMIUM:      $1,399.62     (Hereon)

ENDORSEMENT attaching to and forming part of Policy/Certificate No. SLC 6046

In the name of   Diocese of Rockville Centre

Effective Date of this endorsement is   September 1, 1983          Endorsement No. D

It is hereby noted and agreed effective September 1, 1983, this

policy is cancelled in its entirety.

In consequence of the above there is a return premium due of

$1,845.00.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:     January 19, 1984                  INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                             AS SUCCESSORS TO
                                             BY ARTHUR J GALLAGHER & CO. ILLINOIS

ENDORSEMENT attached to and forming part of Policy ~~SLC cc45~~ IC 04072

in the name of Diocese of Rockville Centre

Effective date of this endorsement is ~~October 1, 1982~~ 9-1 53        Endorsement No. ~~X~~ 13

It is hereby noted and agreed that effective 1st October, 1982, the Security is amended to read:

SECURITY:        19.77% Part of 100.00% (        (12.50% Sovereign Marine & General
                                                    Ins. Co. Ltd.
                                            (        (37.50% The Tokio Marine & Fire
                                                    Ins. Co. (UK) Ltd.
                                            (50% (25.00% Taisho Marine & Fire Ins. Co.
                                                    (UK) Ltd.
                                            (        (15.00% Allianz International Ins. Co.
                                                    Ltd.
                                            (        (10.00% Storebrand Ins. Co. (UK) Ltd.
                                            (50% Sovereign Marine & General Ins. Co.
                                                    Ltd 'C' Account
                                            Per Willis Faber (Underwriting Management)
                                            Ltd.

~~.30~~ .17   3.95% Part of 100.00% Sovereign H.D.N. A/C
                                            Per ~~Willis~~ Faber (Underwriting Management
                                            Ltd.
~~9.39~~   7.91% Part of 100.00% Dominion Ins. Co. Ltd.
~~13.86~~  ~~13.42%~~ Part of 100.00% St. Katherine Insurance Company Ltd.
~~6.73~~   6.71% Part of 100.00% CNA Reinsurance of London Ltd.
~~9.39~~   7.91% Part of 100.00% Stronghold Ins. Co. Ltd.
~~3.53~~   3.95% Part of 100.00% Turegum Ins. Co.
~~2.08~~   2.02% Part of 100.00% Folksam International Ins. Co. (UK) Ltd.
~~6.93~~   4.48% Part of 100.00% British National Insurance Co. Ltd.
~~1.85~~   1.79% Part of 100.00% Yasuda Fire & Marine Ins. Co. (UK) Ltd.
~~3.77~~   3.95% Part of 100.00% Compagnie D'Assurance Maritimes Aeriennes
~~75.86%~~                          et Terrestres
75.06%                          Per Comomile Underwriting Agencies Ltd.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: ~~July 8, 1983~~                   INTERNATIONAL SPECIAL RISK SERVICES, INC.
                                         AS SUCCESSORS TO
                                         ARTHUR J GALLAGHER & CO (ILLINOIS)

                                         By   Charles C DiBruler

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. SLC 6046

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982          Endorsement No. B

It is hereby understood and agreed the underwriters subscribing to this policy are:

| | | | |
|---|---|---|---|
| Sovereign Marine & General Ins. Co. Ltd. | 12.50%) | | $   251.72 |
| The Tokio Marine & Fire Ins. Co. (U.K.) Ltd. | 37.50%) | | 755.16 |
| Taisho Marine & Fire Ins. Co. (U.K.) Ltd. | 25.00%) Part of 50%) | | 503.44 |
| Allianz International Ins. Co. Ltd. | 15.00%) | | 302.06 |
| Storebrand Ins. Co. (U.K.) Ltd. | 10.00%) | 17.90% Part of 100% | 201.37 |
| Sovereign Marine & General Ins. Co. Ltd. 'C' Account. | 50%) | | 2,013.75 |
| Per Willis Faber (Underwriting Management) Ltd. | | | |
| Sovereign H.D.N. A/C | | 3.58% Part of 100% | 805.50 |
| Per Willis Faber (Underwriting Management) Ltd. | | | |
| Dominion Ins. Co. Ltd. | | 7.16% Part of 100% | 1,611.00 |
| St. Katherine Insurance Company Ltd. | | 13.42% Part of 100% | 3,019.50 |
| CNA Reinsurance of London Ltd. | | 6.71% Part of 100% | 1,509.75 |
| Stronghold Ins. Co. Ltd. | | 7.16% Part of 100% | 1,611.00 |
| Ancon Ins. Co. (UK) Ltd. | | 4.48% Part of 100% | 1,003.00 |
| Turegum Ins. Co. | | 3.58% Part of 100% | 805.50 |

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. SLC 6046

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982

Endorsement No. B
Page Two

| | | |
|---|---|---|
| Folksam International Ins. Co. (UK) Ltd. | 2.02% Part of 100% | 454.50 |
| British National Insurance Co. Ltd. | 4.48% Part of 100% | 1,008.00 |
| Yasuda Fire & Marine Ins. Co. (U.K) Ltd. | 1.79% Part of 100% | 402.75 |
| Compagnie D'Assurances Maritimes Aeriennes et Terrestres | 3.58% Part of 100% | 805.50 |
| Per Camomile Underwriting Agencies Ltd. | 75.86% | $ 17,068.50 |

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 7, 1982          ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By _Donald J. Kreutch_

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. SLG 6046 ~~IC04073~~

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is <u>October 1, 1982</u>  ⁀ ⹉ ⹉ 3   Endorsement No. A

It is hereby understood and agreed effective inception that the Named Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal entities therein over which the same central authority appoints or controls the appointment of the board of trustees of similar body and exercises direct, complete and active control over the finances, properties, operations and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 6, 1982        ARTHUR J. GALLAGHER & CO. (ILLINOIS)
         10·13 83

                                          By _Donald J Kreutetz_

## SERVICE OF SUIT CLAUSE (U.S.A.)

*(Approved by Lloyd's, Underwriters' Fire and Non-Marine Associations.)*

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon

Lord, Bissell & Brook, 115 S LaSalle St Chicago, IL 60603
or Mendes & Mount, 3 Park Avenue, New York, NY 10016

that in any suit instituted against any one of them upon this contract, Underwriters will, and by the final decision of such Court or of any Appellate Court in the event of an appeal, abide

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or reinsured) to give a written undertaking to the insured (or reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

N.M.A. 772

EASON PRINTING COMPANY

**U.S.A.**

### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT
*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association).*

*For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause—Liability—Direct) to liability insurances affording worldwide coverage.*

In relation to liability arising outside the U.S.A. Its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
N.M.A. 1477

Bacon Printing Company

**U.S.A.**

NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

For attachment to insurances of the following classifications in the U. S. A., its Territories and Possessions, Puerto Rico and the Canal Zone—

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause —Liability—Direct (Limited) applies

This policy does not apply:—

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction
   (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability, or

   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured, or

   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:
   "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means
   (a) any nuclear reactor,
   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, conditions, conditions and exclusions of the Policy to which it is attached.

*Note:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.*

17-8-60
N.M.A. 1256

## EXCESS BROAD FORM LIABILITY

### INSURING AGREEMENTS

1. **Coverage**

   In consideration of the payment of the premium stated herein and subject to the limitations, definitions, terms and conditions hereinafter mentioned, Underwriters hereby agree with the Assured named in the Declarations made a part hereof to indemnify the Assured for all sums which the Assured shall be legally obligated to pay by reason of the liability caused by or arising out of only such hazards covered by and as more fully defined in the policy/ies of the "Primary and Underlying Excess Insurers" and issued by the Primary and Underlying Excess Insurers stated in Item 4 of the Declarations occurring during the period of this policy.

2. **Limits of Liability**

   Provided always that:

   (a) Liability attaches to the Underwriters only after the Primary and Under-lying Excess Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as set forth in Item 5 of the Declarations and designated "Primary and Underlying Excess Limit(s)" and then the limits of the Underwriters' liability shall be those set forth in Item 6 of the Declarations under the designation "Excess Limit(s)" and the Underwriters shall be liable to pay the ultimate net loss the Excess of the Limit(s) under the policy/ies of the Primary and Underlying Excess Insurers as set forth in Item 5 of the Declarations up to the full amount of such Excess Limits(s).

   (b) Liability for any one or any combination of the hazards insured hereunder as provided for in the Primary and Underlying Excess Insurers policy/ies is subject separately to the limit "each occurrence" as stated in the Declar-ations, but this limit shall not be exceeded in any one policy year with regard to any hazard(s) insured with an aggregate limit under the policy/ies of the Primary and Underlying Excess Insurers.

   (c) For the purpose of determining the limit of the Underwriters' liability, all Personal Injury and Property Damage arising out of either

      (i) an accident or series of accidents arising out of one event, or
      (ii) a continuous or repeated exposure to substantially the same general conditions,

      shall be considered as arising out of one occurrence.

   (d) The inclusion of more than one entity as the named Assured, or the inclusion of any additional Assureds under this Policy, shall not in any way operate to increase the Underwriters' limits of liability beyond those provided in Item 6 of the Declarations.

## DEFINITIONS

3.   (a)   Occurrence

The word "occurrence" means an accident, including injurious exposure to conditions, which results during the Policy year in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Assured.

(b)   Ultimate Net Loss

The words "ultimate net loss" shall be understood to mean the amount payable in settlement of the liability of the Assured after making deductions for all recoveries and for other valid and collectible insurances, excepting however the policy/ies of the Primary and Underlying Excess Insurers, and shall include all expenses and costs.

(c)   Policy Year

The words "policy year" shall be understood to mean a period of one calendar year commencing each year on the day and hour first named in the Declarations.

## CONDITIONS

4.   (a)   Application of Recoveries

All recoveries, salvages or payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters, provided always that nothing in this Insurance shall be construed to mean that losses under this Insurance are not payable until the Assured's ultimate net loss has been finally ascertained.

(b)   Attachment of Liability

Liability to pay under this Policy shall not attach unless and until the Primary and Underlying Excess Insurers shall have admitted liability for the Primary and Underlying Excess Limit(s) or unless and until the Assured has by final judgment been adjudged to pay an amount which exceeds such Primary and Underlying Excess Limit(s) and then only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of the Primary and Underlying Excess Limit(s).

(c)   Maintenance of Primary Insurance

It is a condition of this Policy that the policy/ies of the Primary and Underlying Excess Insurers shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of occurrences during the policy year.

In respect of the hazards covered by the Primary and Underlying Excess Insurers this Policy is subject to the same warranties, terms, definitions, conditions and exclusions (except as regards the premium, the obligation to investigate and defend, the renewal agreement (if any), the amount and limits of liability other than the deductible or self-insurance provision where applicable, (AND EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy/ies of the Primary Insurers prior to the happening of an occurrence for which claim is made hereunder and should any alteration be made in the premium for the policy/ies of the Primary Insurers during the currency of this Policy, then the premium hereon shall be adjusted accordingly.

(d)  **Subrogation**

Inasmuch as this Policy is "excess coverage" the Assured's right of recovery against any person or other entity cannot be exclusively subrogated to the Underwriters. It is, therefore, understood and agreed that in case of any payment hereunder, the Underwriters will act in concert with all other interests (including the Assured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Assured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Underwriters are then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Assured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interest (including the Assured) concerned, in the ratio of their respective recoveries as finally settled.

(e)  **Commutation Clause**  – (to apply to Workmen's Compensation and/or Employers Liability or Occupational Disease and then only when these perils are covered by the Primary Insurers)

Not later than twenty-four months from the expiry date of this policy, the Assured shall advise the Underwriters of all claims not finally settled which are likely to result in claims under this Policy. The Underwriters may then or at any time thereafter intimate to the Assured their desire to be released from liability in respect of any one or more of such claims. In such event, the Assured and the Underwriters shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalise such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims shall constitute a complete and final release of Underwriters, provided however that such payment shall not constitute a full and final release of Underwriters' liability if subsequent to such payment any supplemental award is made increasing the claim(s); said additional claim(s) may then be recommuted at Underwriter's option and Underwriters may discharge any additional liability by another payment.

(f)    **Cancellation**

This Policy may be cancelled at any time at the written request of the Assured or may be cancelled by or on behalf of the Underwriters provided sixty (60) days notice in writing be given.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the earned premium hereon for the period that this Policy has been in force or the short rate proportion of the Minimum Premium, calculated in accordance with the customary scale, whichever is the greater.

If this Policy shall be cancelled by the Underwriters they shall retain the earned premium hereon for the period that this Policy has been in force or pro-rata of the Minimum Premium, whichever is the greater. Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium.

If the period of limitation relating to the giving of such notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(g)    **Notification of Claims**

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Declarations. Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above person(s) or firm of any such occurrence.

(h)    **Fraudulent Claims**

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

## DECLARATIONS

Item

1. **Named Assured:** The Diocese of Rockville Center, as more fully set forth in Endorsement No. 2 attached.

2. **Address of Assured:** 50 North Park Avenue
   Rockville Center
   New York, NY 11570

3. **Period:** October 1, 1982 to October 1, 1983    9-1-83,    9-1-84
   (Both days at 12:01 A.M. Local Standard Time)

4. a) **Primary Insurers:**
   - (i) Certain Underwriters at Lloyd's London and various Insurance Companies
   - (ii) Fireman's Fund Insurance Company

   b) **Underlying Excess Insurers:**
   - (i) Interstate Fire & Casualty Company
   - (ii) Certain Underwriters at Lloyd's London and various Insurance Companies
     See Page 6 for Heliport Liability

5. **Primary and Underlying Excess Limit(s):** U.S. $25,000,000 (See Page 6 for Heliport Liability)

6. **Excess Limit(s):** U.S. $25,000,000

7. **Notification of Claims To:**    Gallagher Bassett of New York, Inc.
   100 Ring Road West
   Garden City, New York 11530

8. **Identification Details and Limits Carried Under Item 4 Above:**

| Policy No(s) | Limit(s) |
| --- | --- |
| 4(a) (i) SL 4063/ SLC 6043 | $100,000 any one occurrence Combined Single Limit EXCESS OF $100,000 Combined Single Limit Self-Insured Retention. |
| (ii) XLX-1437075 | $50,000 any one occurrence Workers' Compensation Act Liability EXCESS OF $100,000 any one occurrence Self-Insured Retention. |

**Declarations**
(continued)

4(b) (i) 83-0169764                    Difference between (a) (i) & (ii) above and
                                       $5,000,000 any one occurrence Combined
                                       Single Limit.

        (ii) SL 4065/ISL 3/25/        $20,000,000 any one occurrence Combined
             SLE 6046] co 4082        Single Limit EXCESS OF 4(a)* and 4(b) (i)
                                       above.

                                             *(i) & (ii)

ATTACHING TO AND FORMING PART OF COVER NOTE NO. SL 4066, 3/1~4

DATED: December 7, 1982          ARTHUR J. GALLAGHER & CO. (ILLINOIS)
                    - 53

                           By _Donald J Kretch_

# HELIPORT LIABILITY
## DECLARATIONS

**Item**

1. **Named Assured:** The Diocese of Rockville Center, as more fully set forth in Endorsement No. 2 attached.

2. **Address of Assured:** 50 North Park Avenue
   Rockville Center
   New York, NY 11570

3. **Period:** October 1, 1982 to October 1, 1983   9-1-83   9-1-84
   (Both days at 12:01 A.M. Local Standard Time)

4. a) **Primary Insurers:** United States Aviation Underwriters, Inc.

   b) **Underlying Excess Insurers:**
      (i) The Insurance Company of the State of Pennsylvania (Southeastern Aviation, Inc.)
      (ii) Certain Underwriters a. Lloyd's London and various Insurance Companies

5. **Primary and Underlying Excess Limit(s):** U.S. $30,000,000

6. **Excess Limit(s):** U.S. $25,000,000

7. **Notification of Claims To:**   Gallagher Bassett of New York, Inc.
   100 Ring Road, West
   Garden City, New York 11530

8. **Identification Details and Limits Carried Under Item 4 Above:**

   | Policy No(s) | | Limit(s) |
   | --- | --- | --- |
   | 4(a) | LG 18076 | $1,000,000 any one occurrence and aggregate |
   | 4(b)(i) | AX634-9967 Good Samaritan Hospital Heliport | $9,000,000 any one occurrence and aggregate EXCESS of 4(a) |
   | 4(b)(i) | AX634-9952 St. Francis Hospital Heliport | $9,000,000 any one occurrence and aggregate EXCESS of 4(a). |

## Heliport Liability
### Declarations

4(b)(i)     AX634-9953                    $9,000,000 any one occurrence
            St. Charles                   and aggregate EXCESS of 4(a).
            Hospital Heliport

4(b)(ii)    SL 4065/SLC 6045~             $20,000,000 any one occurrence
            ISL3125/LC04082               Combined Single Limit EXCESS of
                                          4(a) and 4(b)(i) and (ii).


ATTACHING TO AND FORMING PART OF COVER NOTE NO. SL 4068.  ISL 3114

DATED:  December 7, 1982          ARTHUR J. GALLAGHER & CO. (ILLINOIS)  RPS

                                  By  Donald S Kratels

# GALLAGHER, HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS
and at Lloyd's

*Telephone:* 01-481 2222

D. W. L. M. VEREKER, *(Managing Director)*
~~X.X.X.X.X.X.ANOTHER~~ XX
J. P. GALLAGHER, *(U.S.A.)*
R. E. GALLAGHER, *(U.S.A.)*
G. D. S. JONES
R. B. OWLES
J. J. SHAW
J. O. STREET

110 FENCHURCH STREET
LONDON, EC3M 5JJ

*Cables & Telegrams:*
GALVER G, LONDON

*Telex:* 8951508
*Registered No.* 1193083 *England*

Arthur J. Gallagher & Co.,
4605 Lankershim Boulevard,
North Hollywood,
California 91602,
U.S.A.

*Date* **14th November, 1983**

*Your Ref.*

*Our Ref.* **JKB/sjw**

ADDENDUM NO:    **2    to**
COVER NOTE No.    **GHV 051/2082**

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:    DIOCESE OF ROCKVILLE CENTRE

PERIOD:    12 months effective at 1st October, 1982

It is hereby noted and agreed effective 1st September, 1983 this policy
is cancelled in its entirety.

In consequence of the above there is a return premium due of $1,845.00.

Information: Policy cancelled and rewritten at 1st September, 1983.

R E C E I V E D
NOV 2 8 1983
I S R S

c.c. ISRS Chicago

# GALLAGHER, HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS
*and at Lloyd's*

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
J. P. GALLAGHER, *(U.S.A.)*
R. B. GALLAGHER, *(U.S.A.)*
G. D. S. JONES
R. B. OWLES
J. J. SHAW
J. O. STREET

**110 FENCHURCH STREET**
**LONDON, EC3M 5JJ**

Telephone: 01-481 2222

Cables & Telegrams:
GALVER O, LONDON

Telex: 8951396
Registered No. 1193013 England

International Special Risks Services Inc.,
10 Gould Center,
Rolling Meadows,
Illinois 60008
USA

**Date** 7th June, 1983

**Your Ref.**

**Our Ref.**

Addendum No.1 to
**COVER NOTE No.** GHV 051/2082

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED: Bishop John.McGann, Bishop Emeritus Walter P.Kellenberg, Auxilliary Bishop Gerald J.Ruan and Auxiliary Bishop James J.Daly comprising of roman catholic diocese of Rockville Centre, and all legal entities therein over which the same central authority appoints or controls the appointment of the board of trustees or similar body and exercises direct, complete and active control over the finances, properties, operations and activities.
50 North Park Avenue,
Rockville Centre,
New York 11570.

PERIOD:   12 months effective 1st October, 1982

It is hereby noted and agreed that effective 1st October, 1982 the Security is amended to read:

SECURITY: 24.14% Part of 100.00% Lloyd's Underwriters

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 7.68% | 989 | 0.69% | 279 | 1.47% | 650 | 3.58% | 918 | 3.57% | 210% |
| 2.68% | 553 | 0.44% | 109 | 0.9% | 342 | 0.89% | 921 | 1.43% | 694 |
| 0.36% | 694 | 0.45% | 56 | | | | | | |

Subject otherwise to all terms, clauses and conditions as heretofore.

RECEIVED
JUN 1 3 1983
ISRS

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

# GALLAGHER, HINTON & VEREKER LIMITED

## INTERNATIONAL INSURANCE BROKERS
and at Lloyd's

W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
J. P. GALLAGHER, *(U.S.A.)*
R. B. GALLAGHER, *(U.S.A.)*
O. D. S. JONES
R. B. OWLES
J. J. SHAW
J. O. STREET

**110 FENCHURCH STREET**
**LONDON, EC3M 5JJ**

*Telephone:* 01-481 2212

*Cables & Telegrams:*
GALVER O, LONDON

*Telex:* 8951906
*Registered No.* 1193013 *England*

International Special Risks Services Inc.,
10 Gould Center,
Rolling Meadows,
Illinois 60008
USA

Date **7th June, 1983**

Your Ref.

Our Ref.

## Addendum No.1 to
## COVER NOTE No. GHV 051/2082

We confirm that we have effected the following insurance in accordance with your instructions:

ASSURED:   Bishop John.McGann, Bishop Emeritus Walter P.Kellenberg. Auxiliary Bishop Gerald J.Ruan and Auxiliary Bishop James J.Daly comprising of roman catholic diocese of Rockville Centre. and all legal entities therein over which the same central authority appoints or controls the appointment of the board of trustees or similar body and exercises direct, complete and active control over the finances, properties, operations and activities.
50 North Park Avenue,
Rockville Centre,
New York 11570.

PERIOD:   12 months effective 1st October, 1982

It is hereby noted and agreed that effective 1st October, 1982 the Security is amended to read:

SECURITY:   19.77% Part of 100.00%   (   (12.50% Sovereign Marine & General Ins. Co. Ltd
(   (37.50% The Tokio Marine & Fire Ins Co. (UK) Ltd
(50%(25.00% Taisho Marine & Fire Ins. Co. (UK) Ltd.
(   (15.00% Allianz International Ins. Co. Ltd.
(   (10.00% Storebrand Ins. Co. (UK) Ltd.
(50% Sovereign Marine & General Ins. Co. Ltd. 'C' Account
Per Willis Faber (Underwriting Management) Ltd.

RECEIVED

JUN 1 3 1983

ISRS

Subject to full terms and conditions of policy or by way of ...

Page 2
Cont'd

Addendum No.1 to
Covernote No: GHV 051/2082

7th June, 1983

SECURITY:   3.95% Part of 100.00%  Sovereign H.D.N. A/C
Cont'd                              Per Willis Faber (Underwriting Management)
                                       Ltd.,

     7.91% Part of 100.00%  Dominion Ins. Co. Ltd

   13.42% Part of 100.00%  St. Katherine Insurance Company Ltd.

     6.71% Part of 100.00%  CNA Reinsurance of London Ltd.,

     7.91% Part of 100.00%  Stronghold Ins. Co. Ltd

     3.95% Part of 100.00%  Turegum Ins. Co.

     2.02% Part of 100.00%  Folksam International Ins. Co. (UK) Ltd.,

     4.48% Part of 100.00%  British National Insurance Co. Ltd

     1.79% Part of 100.00%  Yasuda Fire & Marine Ins. Co. (UK) Ltd.

     3.95% Part of 100.00%  Compagnie D'Assurance Maritimes Aerienes
                                       et Terrestres
                                       Per Comomile Underwriting Agencies Ltd.

Subject otherwise to all terms, clauses and conditions as heretofore.

RECEIVED

JUN 1 3 1983

ICRS

**GALLAGHER, HINTON & VEREKER LIMITED**

INTERNATIONAL INSURANCE BROKERS
and at Lloyd's

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
J. P. GALLAGHER, *(U.S.A.)*
R. E. GALLAGHER, *(U.S.A.)*
G. D. S. JONES
R. B. OWLES
J. J. SHAW
J. O. STREET

110 FENCHURCH STREET
LONDON, EC3M 5JJ

*Telephone:* 01-481 2222

*Cables & Telegrams:*
GALVER G, LONDON

*Telex:* 8951905
*Registered No.* 1193013 *England*

Arthur J. Gallagher & Co.,
10 Gould Center,
Golf Road,
Rolling Meadows,
Illinois 60008,
U.S.A.

7th October, 1982

*Date*

*Your Ref.*

*Our Ref.*

**COVER NOTE No.**   GHV051/2082

We confirm that we have effected the following insurance in accordance with your instructions:

TYPE:   EXCESS BROADFORM LIABILITY INCLUDING HELIPORT LIABILITY.

FORM:   Excess 'Bishops' wording as agreed.

ASSURED:   Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary
Bishop Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of
Roman Catholic Diocese of Rockville Centre, and all legal entities therein
over which the same central authority appoints or controls the appointment
of the board of trustees or similar body and exercises direct, complete
and active control over the finances, properties, operations and
activities
50 North Park Avenue,
Rockville Centre,
New York 11570.

PERIOD:   12 months effective 1st October, 1982.

INTEREST:   Legal Liability in respect of the Assured's operations as more fully
defined in primary.

SUM INSURED:   $25,000,000 any one occurrence.

EXCESS OF:

(A)   $25,000,000 any one occurrence.

OR

(B)   $30,000,000 any one occurrence in respect of heliport liability.

SITUATION:   Worldwide.

CONDITIONS:   60 Days Cancellation Clause.

Aggregate Limits as underlying.

Retro- date in respect of Errors and Omissions 1st October, 1976.

..../....

Subject to full terms and conditions of policy or treaty wording to be issued subsequently.

20-01226-scc Doc 6-10 Filed 10/01/20 Entered 10/01/20 08:44:55 Exhibit C
Part 4 - London Program Policy Compendium Pg 88 of 110

Page No. 2 of Covernote No: GHV 051/2082, dated 7th October, 1982.

PREMIUM:        $22,500.

INFORMATION:  Underlying excludes Hospital Malpractice.

SECURITY:      24.14% Part of 100.00%      Lloyd's Underwriters

| 7.68% | 989 | 0.69% | 279 | 1.47% | 650 | 3.58% | 918 | 3.57% | 210 |
| 2.68% | 553 | 0.44% | 109 | 0.9% | 342 | 0.89% | 921 | 1.43% | 694 |
| 0.36% | 694 | 0.45% | 56 | | | | | | |

# GALLAGHER HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS
*and at Lloyd's*

D. W. L. M. VEREKER, *(Managing Director)*
D. J. M. ARNOLD
J. P. GALLAGHER. *(U.S.A.)*
R. E. GALLAGHER. *(U.S.A.)*
O. D. S. JONES
R. B. OWLES
J. J. SHAW
J. O. STREET

**110 FENCHURCH STREET**
**LONDON, EC3M 5JJ**

*Telephone:* 01-481 2222

*Cables & Telegrams:*
GALVER G, LONDON

*Telex:* 8951506
*Registered No.* 1193013 *England*

7th October, 1982

Arthur J. Gallagher & Co.,
10 Gould Center,
Golf Road,
Rolling Meadows,
Illinois 60008,
U.S.A.

Date
Your Ref.
Our Ref.

## COVER NOTE No.   GHV051/2082

We confirm that we have effected the following insurance in accordance with your instructions:

**TYPE:**  EXCESS BROADFORM LIABILITY INCLUDING HELIPORT LIABILITY.

**FORM:**  Excess 'Bishops' wording as agreed.

**ASSURED:**  Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of Roman Catholic Diocese of Rockville Centre, and all legal entities therein over which the same central authority appoints or controls the appointment of the board of trustees or similar body and exercises direct, complete and active control over the finances, properties, operations and activities
50 North Park Avenue,
Rockville Centre,
New York 11570.

**PERIOD:**  12 months effective 1st October, 1982.

**INTEREST:**  Legal Liability in respect of the Assured's operations as more fully defined in primary.

**SUM INSURED:**  $25,000,000 any one occurrence.

EXCESS OF:

(A)  $25,000,000 any one occurrence.

OR

(B)  $30,000,000 any one occurrence in respect of heliport liability.

**SITUATION:**  Worldwide.

**CONDITIONS:**  60 Days Cancellation Clause.

Aggregate Limits as underlying.

Retro- date in respect of Errors and Omissions 1st October, 1976.

Page No.   of Covernote   GHV 051/2082,   ted 7th October, 1982.

PREMIUM:     $22,500.

INFORMATION:  Underlying excludes Hospital Malpractice.

SECURITY:   17.90% Part of 100.00%     (   (12.50% Sovereign Marine & General Ins.
                                                Co. Ltd.
                                        (   (37.50% The Tokio Marine & Fire Ins.
                                                Co. (U.K.) Ltd.
                                        (50% (25.00% Taisho Marine & Fire Ins. Co.
                                                (U.K.) Ltd.
                                        (   (15.00% Allianz International Ins. Co.
                                                Ltd.
                                        (   (10.00% Storebrand Ins. Co. (U.K.) Ltd.
                                        (50%  Sovereign Marine & General Ins. Co.
                                                Ltd. 'C' Account.
                                        Per Willis Faber (Underwriting Management)
                                        Ltd.

            3.58% Part of 100.00%       Sovereign H.D.N. A/C.
                                        Per Willis Faber (Underwriting Management)
                                        Ltd.,

            7.16% Part of 100.00%       Dominion Ins. Co. Ltd.,

            13.42% Part of 100.00%      St. Katherine Insurancce Company Ltd.,

            6.71% Part of 100.00%       CNA Reinsurance of London Ltd.,

            7.16% Part of 100.00%       Stronghold Ins. Co. Ltd.,

            4.48% Part of 100.00%       Ancon Ins. Co. (UK) Ltd.,

            3.58% Part of 100.00%       Turegum Ins. Co.

            2.02% Part of 100.00%       Folksam International Ins. Co. (UK) Ltd.,

            4.48% Part of 100.00%       British National Insurance Co. Ltd.

            1.79% Part of 100.00%       Yasuda Fire & Marine Ins. Co. (U.K.) Ltd.

            3.58% Part of 100.00%       Compagnie D'Assurances Maritimes Aeriennes
                                        et Terrestres
                                        Per Camomile Underwriting Agencies Ltd.

*Rockville Centre*



# Lloyd's Policy 4.28.83

Whereas the Assured named in the Schedule herein has paid the premium specified in the Schedule to the Underwriting Members of Lloyd's who have hereunto subscribed their Names (hereinafter called 'the Underwriters').

Now We the Underwriters hereby agree to insure against loss, damage or liability to the extent and in the manner hereinafter provided.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

Now know Ye that We the Underwriters, Members of the Syndicates whose definitive numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators and in respect of his due proportion only, to pay or make good to the Assured or to the Assured's Executors or Administrators or to indemnify him or them against all such loss, damage or liability as herein provided, after such loss, damage or liability is proved and the due proportion for which each of Us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the total sum insured hereunder which is in the Table set opposite the definitive number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Shares therein, is deemed to be incorporated in and to form part of this Policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

In Witness whereof the General Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

*L.E. Hastings*

**LLOYD'S POLICY SIGNING OFFICE,**
*General Manager*



J(A) NMA 2002 (11.4.74)
Form approved by Lloyd's Underwriters' Non-Marine Association

The Assured is requested to read this Policy and, if it is incorrect, return it immediately for alteration.

In all communications the Policy Number appearing in line one of the Schedule should be quoted.

In the event of any occurrence likely to result in a claim under this Policy, immediate notice should be given to:   GALLAGHER, HINTON & VEREKER LTD.

**U.S.A.**

### NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

**U.S.A.**

### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

### SERVICE OF SUIT CLAUSE (U.S.A.)
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the insured (or reinsured) will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that a … cess[?] process in such suit may be made upon

**Lord, Bissell & Brook, 115 South Lasalle Street,**

**Chicago, Illinois 60603**
, and

that in … suited against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Courts in the event of an appeal

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such action and, upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

22.5.52
N M A 772

source material, special nuclear material or byproduct material", source material", special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof, "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor, "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof,

"nuclear facility" means

   (a) any nuclear reactor,

   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE — As respects policies which afford liability coverage and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17/3/60
N M A. 1256

## Schedule

Policy or Certificate No.    GHV 051    /    2082    Contract No. (if any)

The name and address of the Assured

Roman Catholic Diocese of Rockville Centre, etal
(as more fully described in Endorsement No. 2)
50 North Park Avenue,
Rockville Centre,
New York NY 11570.

The risk and sum insured hereunder

EXCESS BROADFORM LIABILITY INCLUDING HELIPORT LIABILITY.

This insurance being for 24.14% part of 100.00% covers its pro rata
proportion of the risks and liability more particularly described in the
attached wording, which is hereby declared to be incorporated in and to
form part of this policy, and the percentages signed hereon are percentages
of 100.00% and not of 24.14%

The Premium    US$5,431.50 part of US$22,500.00

The period of Insurance from    1st October 1982    to    1st October 1983
both days inclusive, and for such further period or periods as may be mutually agreed upon
12.01 a.m. Local Standard Time.

Dated in    LONDON    the    22nd February 1983

J or J(A) (Schedule) NMA 2003 for attachment to NMA 2001, NMA 2002, NMA 2004 or NMA 2005

In the name of:   Roman Catholic Diocese of Rockville Centre, etal

Endorsement No. 3

8. IDENTIFICATION DETAILS AND LIMITS
   CARRIED UNDER ITEM 4 ABOVE:

| POLICY NO(S) | LIMIT(S) |
|---|---|
| 4 (a) (i) 051/182 | US$100,000 any one occurrence Combined Single Limit EXCESS of US$100,000 any one occurrence Combined Single Limit Self-Insured Retention. |
| (ii) XLX-1437075 | US$50,000 any one occurrence Worker's Compensation Act Liability EXCESS of US$100,000 any one occurrence Self-Insured Retention. |
| (iii) LG 18076 | US$1,000,000 any one occurrence and aggregate. |
| 4 (b) (i) 83-0169764 | Difference between (a) (i) and (ii) above and US$5,000,000 any one occurrence Combined Single Limit. |
| (ii) GHV 051/1982 | US$20,000,000 any one occurrence Combined Single Limit EXCESS of 4 (a) (i) and (ii) and 4 (b) (i) above. |
| (iii) AX634-9967 Good Samaritan Hospital Heliport. | US$9,000,000 any one occurrence and aggregate EXCESS of 4 (a) (iii) and (b) (ii). |
| (iii) AX634-9952 St. Francis Hospital Heliport. | US$9,000,000 any one occurrence and aggregate EXCESS of 4 (a) (iii) and (b) (ii). |
| (iii) AX634-9953 St. Charles Hospital Heliport. | US$9,000,000 any one occurrence and aggregate EXCESS of 4 (a) (iii) and (b) (ii). |

ENDORSEMENT

Attaching to and forming part of Policy   NO GHV 051/2082

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982                    Endorsement No. 2

It is hereby understood and agreed effective inception that the Named
Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary
Bishop Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of
ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal
entities therein over which the same central authority appoints or controls
the appointment of the board of trustees of similar body and exercises
direct, complete and active control over the finances, properties, operations
and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 6, 1982              ARTHUR J. GALLAGHER & CO.  (ILLINOIS)

By _Donald J Krutch_____

ENDORSEMENT

Attaching to and forming part of Policy NO: GHV 051/2082

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982

Endorsement No. 1

## ERRORS AND OMISSIONS

It is hereby understood and agreed that Insofar as Errors and Omissions coverage is afforded to the Assured in the Primary and Underlying Excess Insurers policy/ies this Policy is extended to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER AGREED:

(1)    There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to October 1, 1976 (hereinafter referred to as the "Retroactive Date").

(2)    In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemeteries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 6, 1982        ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By _Donald J Kretch_

EXCESS BROAD FORM LIABILITY

## INSURING AGREEMENTS

1. COVERAGE -

   In consideration of the payment of the premium stated herein
   and subject to the limitations, definitions, terms and con-
   ditions hereinafter mentioned, Underwriters hereby agree with
   the Assured named in the Declarations made a part hereof to
   indemnify the Assured for all sums which the Assured shall be
   legally obligated to pay by reason of the liability caused by
   or arising out of only such hazards covered by and as more
   fully defined in the policy/ies of the "Primary and
   Underlying Excess Insurers" and issued by the Primary and
   Underlying Excess Insurers stated in Item 4 of the
   Declarations occurring during the period of this policy.

2. LIMITS OF LIABILITY -

   Provided always that:

   (a) Liability attaches to the Underwriters only after the
       Primary and Underlying Excess Insurers have paid or have
       been held liable to pay the full amount of their respec-
       tive ultimate net loss liability as set forth in Item 5
       of the Declarations and designated "Primary and
       Underlying Excess Limits(s)" and then the limits of the
       Underwriters' liability shall be those set forth in Item
       6 of the Declarations under the designation "Excess
       Limit(s)" and the Underwriters shall be liable to pay
       the ultimate net loss the Excess of the Limit(s) under
       the policy/ies of the Primary and Underlying Excess
       Insurers as set forth in Item 5 of the Declarations up
       to the full amount of such Excess Limit(s).

   (b) Liability for any one or any combination of the hazards
       insured hereunder as provided for in the Primary and
       Underlying Excess Insurers policy/ies is subject separa-
       tely to the limit "each occurrence" as stated in the
       Declarations, but this limit shall not be exceeded in
       any one policy year with regard to any hazard(s) insured
       with an aggregate limit under the policy/ies of the
       Primary and Underlying Excess Insurers.

Page 1 of 6

(c) For the purpose of determining the limit of the Underwriters' liability, all Personal Injury and Property Damage arising out of either

    (i) an accident or series of accidents arising out of one event, or

    (ii) a continuous or repeated exposure to substantially the same general conditions,

shall be considered as arising out of one occurrence.

(d) The inclusion of more than one entity as the named Assured, or the inclusion of any additional Assureds under this Policy, shall not in any way operate to increase the Underwriters' limits of liability beyond those provided in Item 6 of the Declarations.

## DEFINITIONS

3. (a) Occurrence -

The word "occurrence" means an accident, including injurious exposure to conditions, which results during the Policy year in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Assured.

(b) Ultimate Net Loss -

The words "ultimate net loss" shall be understood to mean the amount payable in settlement of the liability of the Assured after making deductions for all recoveries and for other valid and collectible insurances, excepting however the policy/ies of the Primary and Underlying Excess Insurers, and shall include all expenses and costs.

(c) Policy Year -

The words "policy year" shall be understood to mean a period of one calendar year commencing each year on the day and hour first named in the Declarations.

Page 2 of 6

4.  (a)  <u>Application of Recoveries</u> –

All recoveries, salvages or payments recovered or
received subsequent to a loss settlement under this
Insurance shall be applied as if recovered or received
prior to such settlement and all necessary adjustments
shall then be made between the Assured and the
Underwriteres, provided always that nothing in this
Insurance shall be construed to mean that losses under
this Insurance are not payable until the Assured's ulti-
mate net loss has been finally ascertained.

(b)  <u>Attachment of Liability</u> –

Liability to pay under this Policy shall not attach
unless and until the Primary and Underlying Excess
Insurers shall have admitted liability for the Primary
and Underlying Excess Limit(s) or unless and until the
Assured has by final judgment been adjudged to pay the
full amount of the Primary and Underlying Excess
Limit(s).

(c)  <u>Maintenance of Primary Insurance</u> –

It is a condition of this Policy that the policy/ies of
the Primary and Underlying Excess Insurers shall be
maintained in full effect during the currency of this
Policy except for any reduction of the aggregate limits
contained therein solely by payment of claims in respect
of occurrences during the policy year.

In respect of the hazards covered by the Primary and
Underlying Excess Insurers this Policy is subject to
the same warranties, terms, definitions, conditions and
exclusions (except as regards the premium, the
obligation to investigate and defend, the renewal
agreement (if any), the amount and limits of liability
other than the deductible or self-insurance provision
where applicable, AND EXCEPT AS OTHERWISE PROVIDED
HEREIN) as are contained in or as may be added to the
policy/ies of the Primary Insurers prior to the hap-
pening of an occurrence for which claim is made
hereunder and should any alteration be made in the pre-
mium for the policy/ies of the Primary Insurers during
the currency of this Policy, then the premium hereon
shall be adjusted accordingly.

Page 3 of 6

(d)    Subrogation -

Inasmuch as this Policy is "excess coverage" the Assured's right of recovery against any person or other entity cannot be exclusively subrogated to the Underwriters. It is, therefore, understood and agreed that in case of any payment hereunder, the Underwriters will act in concert with all other interests (including the Assured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Assured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Underwriters are then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Assured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Assured) concerned, in the ratio of their respective recoveries as finally settled.

(e)    Commutation Clause -    (to apply to Workers' Compensation and/or Employer's Liability or Occupational Disease and then only when these perils are covered by the Primary Insurers)

Not later than twenty-four months from the expiry date of this policy, the Assured shall advise the Underwriters of all claims not finally settled which are likely to result in claims under this Policy. The Underwriters may then or at any time thereafter intimate to the Assured their desire to be released from liability in respect of any one or more of such claims. In such event, the Assured and the Underwriters shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalize such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalized value of such claim or claims shall constitute a complete and final release of Underwriters, provided however that such payment shall not constitute a full and final release of Underwriters' liability if subsequent to such payment any supplemental award is made increasing the claim(s); said additional claim(s) may then be recommuted at Underwriter's option and Underwriters may *discharge any additional liability by another payment.*

Page 4 of 6

(f) Cancellation

This Policy may be cancelled at any time at the written request of the Assured or may be cancelled by or on behalf of the Underwriters provided 60 days notice in writing be given.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the earned premium hereon for the period that this Policy has been in force or the short rate proportion of the Minimum Premium, calculated in accordance with the customary scale, whichever is the greater.

If this Policy shall be cancelled by the Underwriters they shall retain the earned premium hereon for the period that this Policy has been in force or pro-rata of the Minimum Premium, whichever is the greater. Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium.

If the period of limitation relating to the giving of such notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(g) Notification of Claims -

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Declarations. Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above person(s) or firm of any such occurrence.

(h) Fraudulent Claims -

If the Assured shall make any claim knowing the same to be fake or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

Page 5 of 6

## DECLARATIONS

Item

1.   NAMED ASSURED: Roman Catholic Diocese of Rockville Centre, etal
     (as more fully set forth in Endorsement No. 2)

2.   ADDRESS OF ASSURED: 50 North Park Avenue, Rockville Centre, New York 11570

3.   PERIOD: 1st October 1982 to 1st October 1983 both days at 12.01 a.m. Local
     Standard Time.

4.   a)   PRIMARY INSURERS: (i) Certain Underwriters at Lloyd's, London and various Insurance
          Companies. (ii) Fireman's Fund Insurance Company (iii) United
          States Aviation Underwriters Inc., in respect of Heliport Liability
     b)   UNDERLYING EXCESS INSURERS: (i) Interstate Fire & Casualty Company (ii) Certain
          Underwriters at Lloyd's, London and various Insurance
          Companies (iii) The Insurance Company of the State of Pennsylvania (Southeastern Aviation Inc)
          in respect of Heliport Liability.

5.   PRIMARY AND UNDERLYING EXCESS LIMIT(S):

     (i) US$25,000,000 any one occurrence  (ii) US$30,000,000 any one occurrence in respect of
                                               Heliport Liability.
6.   EXCESS LIMIT(S):

     US$25,000,000 any one occurrence

7.   NOTIFICATION OF CLAIMS TO: Gallagher Bassett of New York, Inc.,
                                100 Ring Road West, Garden City, New York 11530.

8.   IDENTIFICATION DETAILS AND LIMITS
     CARRIED UNDER ITEM 4 ABOVE:


          POLICY NO(S)              LIMIT(S)


          As more fully described in Endorsement No. 3

## Lloyd's

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Sum Insured
hereunder shared between the Members of those Syndicates.

| FOR LPSO USE ONLY | BROKER | LPSO NO. & DATE | | | | |
|---|---|---|---|---|---|---|
| 4249 | 518 | 62841 | 10 | 1 | 83 | |
| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF. | | | | PAGE 1 |

| PERCENT | | |
|---|---|---|
| 7.68 | 989 | 220S8lL92060D |
| 0.69 | 279 | 220S8lL92060D |
| 1.47 | 650 | 220S8lL92060D |
| 3.58 | 918 | LG2HX23S2121 |
| 3.57 | 210 | E2018888 |
| 2.68 | 553 | ABTGXG |
| 0.44 | 109 | 06 |
| 0.90 | 342 | F90USXXXD306 |
| 0.89 | 921 | NA8203804T02 |
| 1.43 | 694 | 4690LXX32236 |
| 0.36 | 694 | 4690LXXX32221 |
| 0.45 | 56 | X050NER |

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS NUMBERED 1983/  1

| TOTAL LINE | NO. OF SYND. | FOR LPSO USE ONLY | |
|---|---|---|---|
| 24.14 | 12 | 50 | 6415 |

Lloyd's

SLC 6046
Rockville

4.27.83    **FORM C.P. 2.**

# COMPANIES COLLECTIVE POLICY

**In consideration** of the Insured named in the Schedule hereto having paid premium set forth in the said Schedule to the Insurers who have hereunto subscribed their Names (hereinafter referred to as "the Insurers").

**The Insurers Hereby Severally Agree** each for the proportion set against its name to indemnify the Insured or the Insured's Executors, Administrators and Assigns against Loss as more fully set forth in the Policy detailed in the said Schedule covering the identical subject matter and risk (hereinafter called the "Co-insuring Policy") during the period of Insurance stated in the said Schedule or during any subsequent period as may be mutually agreed upon between the Insured and the Insurers.

PROVIDED that : —

(1) the liability of the Insurers shall not exceed the limits of liability expressed in the said Schedule or such other limits of liability as may be substituted therefor by memorandum hereon or attached hereto signed by or on behalf of the Insurers.

(2) the liability of each of the Insurers individually in respect of such loss shall be limited to the proportion set against its name.

(3) this Policy shall be subject to the same terms, provisions, conditions, and limitations as are contained in the Co-insuring Policy.

If the Insured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**In Witness whereof** I, being a representative of the Leading Company and authorised by the said Company and by all other Companies appearing hereon to sign this Policy on their behalf, have hereunto subscribed my name this *14th* day of *MARCH* One Thousand nine hundred and *EIGHTY THREE*.

THE DOMINION INSURANCE CO. LTD.

Accident Manager

| THE INSURERS | PROPORTION | REFERENCE NUMBERS |
|---|---|---|
| The Dominion Insurance Company Limited | 7.16% | 82A 126619 |
| St. Katherine Insurance Company Limited | 13.42% | 82100530 |
| Turegum Insurance Company | 3.58% | 479227387 |
| Folksam International Insurance Company (UK) Limited | 2.02% | C003958213 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

ENDORSEMENT

Attaching to and forming part of Policy   NO: GHV 051/2082

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982                    Endorsement No. 1

It is hereby understood and agreed effective inception that the Named
Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary
Bishop Gerald J.  Ryan and Auxiliary Bishop James J. Daly comprising of
ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal
entities therein over which the same central authority appoints or controls
the appointment of the board of trustees of similar body and exercises
direct, complete and active control over the finances, properties, operations
and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 6, 1982          ARTHUR J. GALLAGHER & CO.  (ILLINOIS)

By _Donald J Kruteb_

Date ...22nd February...1983......

Policy No...GHV..051/2082.........

# THE SCHEDULE

The Insured    Roman Catholic Diocese of Rockville Centre, etal,
(as more fully described in Endorsement No. 1)
50 North Park Avenue,
Rockville Centre, New York NY 11570.

Premium:  US$5,890.50 part of US$22,500.00

The Interest Insured:    Legal Liability in respect of all operations of the various
Insured's and for their Agencies as more fully set forth in
the Coinsuring Policy detailed below.

This insurance being for 26.18% part of 100% covers its
pro rata proportion of the risks and liability more particularly
described in the Coinsuring Policy detailed below, and the
percentages signed hereon are percentages of 100% and not of
26.18%

Period of Insurance

From  1st October 1982    To   1st October 1983 both days
at 12.01 a.m. Local Standard Time.

Coinsuring Policy No.    GHV 051/2082    Issued by  certain Underwriters at
Lloyd's, London

# PSAC POLICY

*Rockville*

17-12-87

IN **CONSIDERATION** of the Insured named in the Schedule hereto having paid the premium stated in the said Schedule to the Insurers named herein who have hereunto subscribed their Names ("the Insurers")

THE **INSURERS HEREBY SEVERALLY AGREE** each for the proportion set against its own name to indemnify the Insured or the Insured's Executors and Administrators against loss, damage or liability to the extent and in the manner set forth herein. Provided that the aggregate liability of the Insurers shall not exceed the Sum Insured or other limits as are set forth in the Schedule.

If the Insured shall make **any claim** knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

IN **WITNESS WHEREOF** the Policy Signing Manager of THE **POLICY SIGNING & ACCOUNTING CENTRE LIMITED** ("PSAC") has subscribed his name on behalf of each of the PSAC Companies and (where the Companies Collective Signing Agreement ("CCSA") is being implemented) on behalf of the Leading CCSA Company which is a PSAC member and authorised to sign this Policy (either itself or by delegation to PSAC) on behalf of all the other CCSA Companies.

Signed: R.E. Sanders
*Policy Signing Manager*

Policy Department
Seal

Date as in the Schedule.

| The Insurers | PSAC Company Number | Whether CCSA or not | Proportion | Reference Numbers |
|---|---|---|---|---|
| Sovereign Marine & General Insurance Company Limited          12½% | ) | ) | | |
| The Tokio Marine & Fire Insurance Company (UK) Limited          37½% | ) | ) | | |
| Taisho Marine & Fire Insurance Company (UK) Limited          25% | ) | ) | | |
| Allianz International Insurance Company Limited          15% | S0065 50% ) | YES | 17.90% | S556682 |
| Storebrand Insurance Company (UK) Limited          10% | ) | ) | | |
| Sovereign Marine & General Insurance Company Limited "C" A/c          50% | ) | ) | | |
| Sovereign Marine & General Insurance Company Limited H.D.N. A/c | H0101 | YES | 3.58% | S556682 |
| CNA Reinsurance of London Limited | C4009 | YES | 6.71% | F351803 |
| Stronghold Insurance Company Limited | S0404 | YES | 7.16% | 229027 |
| Ancon Insurance Company (UK) Limited Per Trinity Square Services Limited | A2005 | YES | 4.48% | S2AL01585B |
| British National Insurance Company Limited | B3002 | YES | 4.48% | 02702808823N |
| Yasuda Fire & Marine Insurance (UK) Limited (Per Leslie & Godwin Agencies Limited) | Y1901 | YES | 1.79% | 82153169 |
| Compagnie D'Assurances Maritimes Aeriennes et Terrestres Per Camomile Underwriting Agencies Ltd. | C8018 | YES | 3.58% | E3774 DCW 3499 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

ENDORSEMENT

Attaching to and forming part of Policy   NO: GHV 051/2082

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is October 1, 1982

Endorsement No. 1

It is hereby understood and agreed effective inception that the Named Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal entities therein over which the same central authority appoints or controls the appointment of the board of trustees of similar body and exercises direct, complete and active control over the finances, properties, operations and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: December 6, 1982         ARTHUR J. GALLAGHER & CO.   (ILLINOIS)

By _Donald J Krutek_

