Date    22nd February 1983

Policy No.    GHV 051/2082

# THE SCHEDULE

**The Insured**   Roman Catholic Diocese of Rockville Centre, etal,
(As more fully described in Endorsement No. 1)
50 North Park Avenue,
Rockville Centre,
**New York NY 11570.**

**Premium**    US$11,178.00 part of US$22,500.00

**The Interest Insured**   Legal Liability in respect of all operations of the various
Insured's and for their Agencies as more fully set forth in
the Coinsuring Policy detailed below.

This insurance being for 49.68% part of 100.00% covers its
pro rata proportion of the risks and liability more particularly
described in the Coinsuring Policy detailed below and the
percentages signed hereon are percentages of 100.00% and not

---

U.S.A.                           4% TAX CLAUSE
(Approved by Lloyd's Underwriters' Non-Marine Association)

Notice is hereby given that the Underwriters have agreed to allow for the purpose of paying the Federal Excise Tax
4% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax

It is understood and agreed that in the event of any return of premium becoming due hereunder the Underwriters
will deduct 4% from the amount of the return and the Assured or his agent should take steps to recover the Tax from
the U.S. Government.

19-3700
N.M.A. 1546

---

**Period of Insurance**

From 1st October 1982                           To 1st October 1983 both days
at 12.01 a.m. Local Standard Time.
and for such further period or periods as may be mutually agreed.

---

## COINSURANCE CLAUSE

It is warranted that this Policy shall run concurrently with and be subject to the same terms,
provisions, and limitations as are contained in Policy No.   GHV 051/2082
issued by   Certain Underwriters at Lloyd's, London                covering the identical subject
matter and risk.

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

|               |                          |
|---------------|--------------------------|
| Insurer(s):   | Allianz Underwriters, Inc |
| Policy number(s): | AXL 5206661          |
| Inception date: | 9/1/1983               |
| Term at issuance: | 11 months + 17 days  |
| Page count:   | 15                       |
| Contents:     | Declarations- 1 pg<br>Policy jacket- 4 pgs<br>Endorsement- 10 pgs |

# Allianz Underwriters, Inc.

(Hereinafter called the Company)

**Allianz** (logo)

## Excess Liability Policy

5900 Wilshire Boulevard
Los Angeles, Calif. 90036

Policy No. **AXL** 5 20 66 61

P.O. Address (No., Street, Town, County, State)

PRODUCER

**Item 1.**
NAMED
INSURED

ROMAN CATHOLIC DIOCESE OF
ROCKVILLE CENTRE, NEW YORK

50 NORTH PARK AVENUE
ROCKVILLE CENTRE, NEW YORK   11570

SWETT & CRAWFORD GROUP
3699 WILSHIRE BOULEVARD,
SUITE #600
LOS ANGELES, CALIFORNIA   90010

**Item 2.   Policy Period:**
From   OCTOBER 15, 1985                to   SEPTEMBER 01, 1986
12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

**Item 3.**   Underlying Insurance:   (a)   $800,000.00 EXCESS UNDERLYING AND/OR SELF-INSURED RETENTION –
INTERSTATE FIRE, POLICY NUMBER TO BE ADVISED; (b)  $4,000,000.00 EXCESS OF (a)
ABOVE – COLONIAL PENN, POLICY NUMBER TO BE ADVISED.

**Item 4.**   Limit(s) of Coverage
Hereunder:

$1,500,000.00 PART OF $5,000,000.00 EXCESS $4,000,000.00 EXCESS $800,000.00 EXCESS
UNDERLYING AND/OR SELF-INSURED RETENTION.

**Item 5.**   Premium:  $32,963.00 (PRO-RATA OF $37,500.00 ANNUAL)

**Item 6.**   Cancellation:   THIRTY (30) DAYS, EXCEPT TEN (10) DAYS FOR NON-PAYMENT OF PREMIUM.

Countersigned by:

_Carol Baker_ (signature)

TK/MY/mh   Authorized Representative

NOVEMBER 22, 1985

Date

IN WITNESS WHEREOF the Company has caused this Policy to be signed by its President and Secretary, but same shall
not be binding upon the Company unless countersigned by an authorized representative of the Company.

FORM ATTACHED:   A.U.I. 0-0037(5/79)

_William J. Sheppard_ (signature)

Secretary

_John S. Gibson_ (signature)

President

A.U.I. 0-0039 B (Rev 4/83)

**ORIGINAL**



# Excess Liability Policy



ARTHUR J. GALLAGHER & CO.
21600 Oxnard Street, Woodland Hills, CA 91367
818/340-3642

THIS POLICY JACKET WITH THE DECLARATIONS PAGE, AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM
A PART THEREOF, COMPLETES THIS POLICY.

A.U.I. 0-0037 (5/79)

In consideration of the payment of the premium and subject to the Declarations, Terms and Conditions hereof, the Company, and the party or parties named in Item 1 of the Declarations (herein called the Insured) do hereby agree as follows:

## TERMS AND CONDITIONS

### INSURING AGREEMENT

1. The Company hereby indemnifies the Insured against ultimate net loss in excess of and arising out of the hazards covered and as defined in and in excess of the underlying insurance as shown in Item 3 of the Declarations (hereinafter referred to as "underlying insurance") but only up to an amount not exceeding the limit(s) shown in Item 4 of the Declarations.

2. Except as may be inconsistent with this Policy, the coverage provided by this Policy shall follow the insuring agreements, conditions and exclusions of the underlying insurance (whether primary or excess) immediately preceding the layer of coverage provided by this Policy, including any change by endorsements. The Company shall be notified of any change in coverage or premium in such underlying insurance and copies thereof shall be furnished to the Company upon request.

3. The limits of the underlying insurance shall be maintained in full effect during the currency of this Policy except for reduction of such limits by exhaustion of aggregate limits (if any) contained therein solely by payment of claims resulting from accidents or occurrences happening during the period thereof. Failure of the Insured to comply with the foregoing shall not invalidate this Policy but in the event of such failure the company shall be liable only to the extent that it would have been liable had the Insured complied therewith.

4. Unless aggregate limits are specifically stated in Items 3 and 4 of the Declarations. the coverage provided by this Policy applies only with respect to each accident or occurrence for limits in excess of the amount provided for same in the underlying insurance and does not apply over any reduced amount of underlying insurance in the event of the exhaustion or reduction of aggregate limits (if any) in the underlying insurance.

5. If aggregate limits are specifically stated in Item 3 and 4 of the Declarations. this Policy will apply in excess of reduced underlying insurance provided such reduction in the underlying insurance is solely the result of accidents or occurrences happening after the inception date of this Policy. The Insured shall give the Company written notice as soon as possible of any reduction or exhaustion of such aggregate limit in the underlying insurance.

6. If more than one insured is named in the Declarations such additional Insured(s) shall not have the effect of increasing the Company's limit of liability for each accident or occurrence stated in Item 4 of the Declarations.

### PREMIUM

7. Premium due the Company for this excess insurance shall be that amount shown in Item 5 of the Declarations and is payable upon delivery of this Policy.

### NOTICE OF LOSS

8. The Insured shall immediately advise the Company of any accident or occurrence which appears likely to result in liability under this Policy and of subsequent developments likely to affect the Company's liability hereunder. At no time shall the Company be called upon to assume charge of the settlement or defense of any claims made or suits brought or proceedings instituted against the Insured, but the Company shall have the right and shall be given the opportunity to associate with the Insured or its underlying insurer or insurers, or both, in the control, defense and/or trial of any claims, suits or proceedings which, in the opinion of the Company, involves or appears reasonably likely to involve the Company. If the company avails itself of such right and opportunity, the Insured, any underlying insurer or insurers and the Company shall cooperate in the control, defense and/or trial of such claims, suits or proceedings, so as to affect a final determination thereof. Failure on the part of the Insured or the underlying insurer or insurers to cooperate shall relieve the Company, at its option, of liability under this Policy.

9. The Insured shall be solely responsible for the investigation, settlement, defense and final disposition of any claim made or suit brought or proceeding instituted against the Insured to which this Policy would apply and which no underlying insurer or insurers is obligated to defend. The Insured shall use due diligence and prudence to settle all such claims and suits which in the exercise of sound judgment should be settled, provided, however, that the Insured shall not make or agree to any settlement for any sum, in excess of the underlying insurance, without the approval of the Company.

10. The Insured shall (a) cooperate with the underlying insurer or insurers, as required by the terms of the underlying insurance, (b) comply with all the terms and conditions thereof and (c) enforce any right of contribution or indemnity against any person or organization who may be liable to the Insured, because of liability with respect to which insurance is afforded under this Policy and the underlying insurance.

### LOSS PAYABLE

11. The Company's obligation to pay any ultimate net loss and costs with respect to any accident or occurrence falling within the terms of this Policy shall not attach until the amount of the applicable underlying limit has been paid by or on behalf of the Insured on account of such accident or occurrence. The Insured shall make claim for any ultimate net loss and costs under this Policy within a period of not exceeding twelve (12) months after, (a) the Insured shall have paid ultimate net loss in excess of the underlying limit, with respect to any accident or occurrence, or (b) the Insured's obligation to pay such amounts shall have been finally determined, either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the company.

12. All losses covered by this Policy shall be due and payable by the Company within thirty (30) days after claim has been presented and proper proof of payment of ultimate net loss and costs has been submitted, all in accordance with the terms above.

## ULTIMATE NET LOSS AND COSTS

13. Ultimate net loss, as used herein, shall be understood to mean the sums paid in settlement of losses for which the Insured is liable after making deductions for all recoveries, salvages and other insurances (other than recoveries under the underlying insurance, policies of co-insurance, or policies specifically in excess hereof), whether recoverable or not, and shall exclude all "Costs".

14. The word "costs", as used herein, shall be understood to mean interest on judgments, investigation, adjustment and legal expenses including taxed court costs and premiums on bonds, for which the Insured is not covered by the underlying insurance (excluding, however, (a) all expenses for salaried employees and counsel on general retainer, (b) all office expenses of the Insured, and (c) regular fees paid to counsel on general retainer.

15. Costs incurred by the insured, with the written consent of the Company, shall be apportioned as follows:

    (a) in the event of claim or suit arising which appears likely to exceed the underlying insurance limit or limits, no Costs shall be incurred by the Insured without the written consent of the Company.

    (b) should such claim or suit be settled previous to going into court for not more than the underlying insurance limit or limits, then no Costs shall be payable by the Company.

    (c) should, however, the sum for which the said claim or suit may be settled exceed the underlying insurance limit or limits, then the Company, if it approves such settlement or consents to the proceedings continuing, shall contribute to the Costs incurred by the Insured in the ratio that is proportion of the ultimate net loss as finally adjusted bears to the whole amount of such ultimate net loss.

    (d) in the event the Insured elects not to appeal a judgment in excess of the underlying insurance limit or limits, the Company may elect to conduct such appeal at its own cost and expense and shall be liable for the taxable court costs and interest incidental thereto, but in no event shall the total liability of the Company exceed its limit or limits of liability as stated above, plus the costs of such appeal.

    (e) in the event a judgment is rendered in excess of the underlying insurance limit or limits and the underlying insurer or insurers elect to appeal such judgment, the duty of obtaining an appeal bond in regard to liability in excess of the underlying insurance limit or limits shall rest with the Insured and its underlying insurer or insurers.

## SUBROGATION AND SALVAGE

16. All salvages, recoveries or payments recovered or received subsequent to a settlement under this Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Company, provided always that nothing in this clause shall be construed to mean that losses under this Policy are not recoverable until the Insured's ultimate net loss has been finally ascertained.

17. Inasmuch as this Policy is Excess Insurance, the Insured's right

of recovery against any person cannot be exclusively subrogated to the company. It is, therefore, understood and agreed that in case of any payment hereunder, the Company will act in concert with all other parties (including the Insured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any parties (including the Insured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them, the company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly the parties (including the Insured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the parties (including the Insured) concerned, in the ratio of their respective recoveries as finally settled.

18. Nothing herein contained shall be construed to mean that the Insured shall be required to enforce by legal action any right of subrogation or indemnity before the Company shall pay any loss covered hereunder.

## TERM

19. This Policy applies only to accidents or occurrences happening between the effective and expiration dates shown in Item 2 of the Declarations, unless otherwise cancelled.

## NUCLEAR INCIDENT EXCLUSION

20. It is agreed that this Policy does not apply:

    I. Under any Liability Coverage, to Personal Injury or Property Damage

        (a) with respect to which an insured under this Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    II. Under any Liability Coverage, to Personal Injury or Property Damage resulting from the hazardous properties of nuclear material, if

        (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

        (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

        (c) the Personal Injury or Property Damage arising out of the furnishing by an insured of services, materials,

parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

III. As used herein:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to Property Damage, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

21. This Policy may be cancelled by either party upon written notice, such notice to be not less than the number of days set forth in Item 6 of the Declarations. If cancellation is at the request of the Insured, adjustment of premium shall be at short rate and if cancelled by the Company, adjustment shall be pro rata. However, in the event of cancellation or non-renewal of the underlying insurance immediately preceding this Policy, this Policy terminates as of the same date without notice to the Insured. The Company may, however, cancel this Policy absolutely on ten (10) days' notice for non-payment of premium due. Notice shall be given by the Insured to the Company at 5900 Wilshire Boulevard, Los Angeles, California 90036 and by the Company to the Insured at the latter's address as shown in the Declarations. Notice by the Company to the first Named Insured, if more than one, shall be deemed notice to any other interests included as an Insured.

# Allianz 

The information below is required to be completed only when this endorsement is issued subsequent to the policy effective date.

**ENDORSEMENT NO.** | 8

| | |
|---|---|
| **THIS ENDORSEMENT FORMS A PART OF** | **NAMED INSURED** |
| **POLICY NUMBER** AXL 5206661 | ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK |
| **ISSUED BY** Allianz Underwriters Insurance Company | |
| **AND IS EFFECTIVE** OCTOBER 15, 1985 | |
| **12:01 A.M. STANDARD TIME.** | |

### EMPLOYEE RETIREMENT INCOME SECURITY ACT

### (E.R.I.S.A.)

### EXCLUSION ENDORSEMENT

IT IS UNDERSTOOD AND AGREED THAT THIS INSURANCE DOES NOT APPLY TO ANY CLAIM OR CLAIMS MADE AGAINST ANY INSURED ARISING OUT OF ANY VIOLATION, ACT, ERROR, OMISSION OR BREACH OF DUTY BROUGHT ABOUT AS A RESULT OF ANY RESPONSIBILITIES, DUTIES OR OBLIGATIONS IMPOSED UPON FIDUCIARIES BY THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (PUBLIC LAW 93-406), COMMONLY REFERRED TO AS THE PENSION REFORM ACT OF 1974, AND AMENDMENTS THERETO, OR SIMILAR PROVISIONS OF ANY FEDERAL, STATE OR LOCAL STATUTORY LAW OR COMMON LAW.

**All other terms and conditions of this Policy remain unchanged.**

CM/BF/mh        10/14/86

AUI 0-0010A  (5/84)

_____
AUTHORIZED REPRESENTATIVE

# Allianz ⊕

The information below is required to be completed only when this
endorsement is issued subsequent to the policy effective date.

ENDORSEMENT NO. | 7

| THIS ENDORSEMENT FORMS A PART OF | NAMED INSURED |
|---|---|
| POLICY NUMBER __AXL 5206661__ | |
| ISSUED BY Allianz Underwriters Insurance Company | |
| AND IS EFFECTIVE __OCTOBER 25, 1985__ | ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK |
| 12:01 A.M. STANDARD TIME. | |

### PROFESSIONAL LIABILITY EXCLUSION

IN CONSIDERATION OF THE PREMIUM PAID, AND NOTWITHSTANDING ANYTHING CONTAINED IN
THIS POLICY TO THE CONTRARY, IT IS AGREED THAT THIS POLICY SHALL NOT APPLY TO
ANY LIABILITY FOR PERSONAL INJURY OR PROPERTY DAMAGE ARISING OUT OF THE
RENDERING OF OR FAILURE TO RENDER, DURING THE POLICY PERIOD, THE FOLLOWING
PROFESSIONAL SERVICES:

A.   MEDICAL, SURGICAL, DENTAL OR NURSING TREATMENT INCLUDING THE FURNISHING
OF FOOD OR BEVERAGES IN CONNECTION THEREWITH,

B.   FURNISHING, PRESCRIBING, APPLYING, INJECTING OR DISPENSING OF DRUGS OR
MEDICAL, DENTAL OR SURGICAL SUPPLIES OR APPLIANCES,

C.   HANDLING OF OR PERFORMING POST MORTEM EXAMINATIONS ON HUMAN BODIES, OR

D.   SERVICE BY ANY PERSON AS A MEMBER OF A FORMAL ACCREDITATION OR SIMILAR
PROFESSIONAL BOARD OR COMMITTEE OF THE NAMED INSURED OR

AS A PERSON CHARGED WITH THE DUTY OF EXECUTIVE DIRECTOR OF ANY SUCH BOARD OR
COMMITTEE.



SIGNED AND ACCEPTED _John A. Powers_   _1/30/86_
DATE

and conditions of this Policy remain unchanged.

1R/Jn/mh   12/6/85

AUI 0-0010A  (5/84)                                        AUTHORIZED REPRESENTATIVE

# Allianz ⊞

The information below is required to be completed only when this endorsement is issued subsequent to the policy effective date.

ENDORSEMENT NO.   7

| THIS ENDORSEMENT FORMS A PART OF | NAMED INSURED |
|---|---|
| POLICY NUMBER ___ AXL 5206661 ___ | |
| ISSUED BY Allianz Underwriters Insurance Company | |
| AND IS EFFECTIVE ___ OCTOBER 25, 1985 ___ | ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK |
| 12:01 A.M. STANDARD TIME. | |

### PROFESSIONAL LIABILITY EXCLUSION

IN CONSIDERATION OF THE PREMIUM PAID, AND NOTWITHSTANDING ANYTHING CONTAINED IN THIS POLICY TO THE CONTRARY, IT IS AGREED THAT THIS POLICY SHALL NOT APPLY TO ANY LIABILITY FOR PERSONAL INJURY OR PROPERTY DAMAGE ARISING OUT OF THE RENDERING OF OR FAILURE TO RENDER, DURING THE POLICY PERIOD, THE FOLLOWING PROFESSIONAL SERVICES:

A.  MEDICAL, SURGICAL, DENTAL OR NURSING TREATMENT INCLUDING THE FURNISHING OF FOOD OR BEVERAGES IN CONNECTION THEREWITH,

B.  FURNISHING, PRESCRIBING, APPLYING, INJECTING OR DISPENSING OF DRUGS OR MEDICAL, DENTAL OR SURGICAL SUPPLIES OR APPLIANCES,

C.  HANDLING OF OR PERFORMING POST MORTEM EXAMINATIONS ON HUMAN BODIES, OR

D.  SERVICE BY ANY PERSON AS A MEMBER OF A FORMAL ACCREDITATION OR SIMILAR PROFESSIONAL BOARD OR COMMITTEE OF THE NAMED INSURED OR

AS A PERSON CHARGED WITH THE DUTY OF EXECUTIVE DIRECTOR OF ANY SUCH BOARD OR COMMITTEE.

SIGNED AND ACCEPTED _____

All other terms and conditions of this Policy remain unchanged.                    DATE

TK/JH/mh      12/6/85

AUI 0-0010A  (5/84)

AUTHORIZED REPRESENTATIVE

# Allianz 

The information below is required to be completed only when this
endorsement is issued subsequent to the policy effective date.

ENDORSEMENT NO. | 6

| THIS ENDORSEMENT FORMS A PART OF | NAMED INSURED |
|---|---|

POLICY NUMBER ___AXL 5206661___

ISSUED BY Allianz Underwriters Insurance Company

AND IS EFFECTIVE___OCTOBER 15, 1985___

12:01 A.M. STANDARD TIME.

ROMAN CATHOLIC DIOCESE OF
ROCKVILLE CENTRE, NEW YORK

## UNIMPAIRED UNDERLYING AGGREGATE LIMITS

THE COVERAGE AFFORDED BY THIS POLICY WILL APPLY ONLY IN EXCESS OF THE
AGGREGATE LIMITS (WHERE APPLICABLE) SET FORTH IN THE DECLARATIONS.
THEREFORE, IT IS UNDERSTOOD AND AGREED THAT THE UNDERLYING AGGREGATE
LIMITS (WHERE APPLICABLE) ARE UNIMPAIRED AT THE ATTACHMENT DATE OF
THIS POLICY, AND FOR THE PURPOSE OF THIS INSURANCE, ONLY OCCURRENCES
TAKING PLACE DURING THE CURRENCY OF THIS POLICY WILL BE CONSIDERED
IN DETERMINING THE EXTENT OF ANY EXHAUSTION OR REDUCTION OF THE
UNDERLYING AGGREGATE LIMITS.

All other terms and conditions of this Policy remain unchanged.

TK/MY/mh      11/22/85

_AUTHORIZED REPRESENTATIVE_

AUI 0-0010A  (5/84)



The information below is required to be completed only when this endorsement is issued subsequent to the policy effective date.

**ENDORSEMENT NO.** | 5

| THIS ENDORSEMENT FORMS A PART OF | NAMED INSURED |
|---|---|
| POLICY NUMBER ___AXL 5206661___ | |
| ISSUED BY Allianz Underwriters Insurance Company | |
| AND IS EFFECTIVE ___OCTOBER 15, 1985___ | ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK |
| 12:01 A.M. STANDARD TIME. | |

### RIOT AND CIVIL COMMOTION EXCLUSION

IT IS AGREED THAT THIS POLICY DOES NOT APPLY TO PERSONAL INJURY OR PROPERTY DAMAGE ARISING OUT OF MOB ACTION, RIOT OR CIVIL COMMOTION (OR BREACH OF THE PEACE BY TWO OR MORE PERSONS) OR OUT OF AN ACT OR CONDITION INCIDENT TO THE PREVENTION OR SUPPRESSION OF ANY OF THE FOREGOING.

**All other terms and conditions of this Policy remain unchanged.**

TK/MY/mh        11/22/85

_Carole Baber_
AUTHORIZED REPRESENTATIVE

AUI 0-0010A  (5/84)



**Allianz**

The information below is required to be completed only when this endorsement is issued subsequent to the policy effective date.

ENDORSEMENT NO.    4

| THIS ENDORSEMENT FORMS A PART OF | NAMED INSURED |
|---|---|
| POLICY NUMBER___AXL 5206661___ | |
| ISSUED BY Allianz Underwriters Insurance Company | |
| AND IS EFFECTIVE___OCTOBER 15, 1985___ | ROMAN CATHOLIC DIOCESE OF |
| 12:01 A.M. STANDARD TIME. | ROCKVILLE CENTRE, NEW YORK |

INVERSE CONDEMNATION

LIABILITY EXCLUSION

IT IS UNDERSTOOD AND AGREED THAT THIS INSURANCE DOES NOT COVER ANY CLAIMS FOR LOSS OR DAMAGE OR ANY LIABILITY OF ANY AND ALL INSUREDS ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE OPERATION OR PRINCIPLES OF EMINENT DOMAIN, CONDEMNATION PROCEEDINGS OR INVERSE CONDEMNATION, BY WHATEVER NAME CALLED, REGARDLESS OF WHETHER SUCH CLAIMS OR LIABILITY ACCRUE DIRECTLY AGAINST THE INSURED OR BY VIRTUE OF ANY AGREEMENT ENTERED INTO BY OR ON BEHALF OF THE INSURED.

**All other terms and conditions of this Policy remain unchanged.**

TK/MY/mh          11/22/85

_____
AUTHORIZED REPRESENTATIVE

AUI 0-0010A (5/84)

# Allianz 

ENDORSEMENT NO. | 3

| THIS ENDORSEMENT FORMS A PART OF | NAMED INSURED |
|---|---|

POLICY NUMBER _____ AXL 5206661 _____

ISSUED BY Allianz Underwriters Insurance Company

AND IS EFFECTIVE _____ OCTOBER 15, 1985 _____

12:01 A.M. STANDARD TIME.

ROMAN CATHOLIC DIOCESE OF
ROCKVILLE CENTRE, NEW YORK

## EXCESS LIABILITY POLICY
## AMENDATORY ENDORSEMENT — NEW YORK

1. It is hereby agreed that, notwithstanding anything in this policy to the contrary, with respect to such insurance as is afforded by this policy, the terms and conditions of this policy as respects coverage for operations in the State of New York shall conform to the coverage requirements of the applicable insurance laws of the State of New York or the applicable regulations of the New York Insurance Department; provided, however, that the Company's limit of liability as stated in this policy shall be in excess of the limits of liability of any underlying insurance or self-insurance as stated in the Declarations or in any endorsement attached hereto.

2. In conformity with the provisions of Article VII, Section 167.1 of the New York Insurance Law this policy specifically includes the following sub-sections of the law:

    (a) The insolvency or bankruptcy of the insured, or the insolvency of his or her estate, shall not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of and within the coverage of this policy.

    (b) In case judgment against the insured or his personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of this policy, shall remain unsatisfied at the expiration of thirty (30) days from the serving of notice of entry of judgment upon the attorney for the insured or upon the insured, and upon the insurer, then an action may, except during a stay or limited stay of execution against the insured on such judgment, be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under this policy.

    (c) Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any licensed agent of the insurer in this state, with particulars sufficient to identify the insured, shall be deemed notice to the insurer.

    (d) Failure to give any notice required to be given by the policy within the time prescribed therein shall not invalidate any claim made by the insured or by any other claimant thereunder if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.

3. The Insuring Agreement, paragraph 1, is amended as follows:
    "1. The Company will pay on behalf of the Insured the loss in excess of and arising out of the hazards covered and as defined and in excess of the underlying insurance as shown in Item 3 of the Declarations (hereinafter referred to as "underlying insurance") but only up to an amount not exceeding the limit(s) shown in Item 4 of the Declarations."

4. **All other terms and conditions of this Policy remain unchanged.**

TK/MY/mh    11/22/85

_____
AUTHORIZED REPRESENTATIVE

A.U.I.C. CA 0-0211-A (Rev. 5/83)



ENDORSEMENT NO.    2

| THIS ENDORSEMENT FORMS A PART OF | NAMED INSURED |
|---|---|
| POLICY NUMBER____AXL 5206661_____ | |
| ISSUED BY Allianz Underwriters Insurance Company | |
| AND IS EFFECTIVE____OCTOBER 15, 1985_____ | ROMAN CATHOLIC DIOCESE OF |
| 12:01 A.M. STANDARD TIME. | ROCKVILLE CENTRE, NEW YORK |

## ADDRESS CHANGE ENDORSEMENT

Henceforth, the company will be located at the following address:

6435 Wilshire Boulevard
Los Angeles, California  90048

**All other terms and conditions of this Policy remain unchanged.**

TK/MY/mh       11/22/85

AUTHORIZED REPRESENTATIVE

A.U.I.C. CA 0-0226-2 (Ed. 2/85)



**Allianz**

| | ENDORSEMENT NO. | 1 |

THIS ENDORSEMENT FORMS A PART OF

POLICY NUMBER        AXL 5206661

ISSUED BY **Allianz Underwriters, Inc.**

AND IS EFFECTIVE        OCTOBER 15, 1985

12:01 A.M. STANDARD TIME.

NAMED INSURED

ROMAN CATHOLIC DIOCESE OF
ROCKVILLE CENTRE, NEW YORK

### NAME CHANGE ENDORSEMENT

Henceforth, the above mentioned company will be known and referred to as Allianz Underwriters
Insurance Company.

TK/MY/mh        11/22/85

Curalo Baba

AUTHORIZED REPRESENTATIVE

A.U.I. CA 0-0226-1 (Ed 9/83).

**ENDORSEMENT**

**Date:** February 23, 1987

**Please attach the enclosed endorsement to:** Endorsement #8 - 10/15/85 to 9/1/86

**Kind of Policy:** Part of the 5MM xs 5MM Excess Liability

**Company and Policy Number:** Allianz Underwriters
AXL 5206661

**Please do not fail to have this done. Thank you.** Barbara De Vito

TO

Rockville Centre
ATTN: Lois

**ARTHUR J. GALLAGHER & CO.**

POST OFFICE BOX 6548
21600 OXNARD STREET    WOODLAND HILLS, CA 91367
Phone: (818) 340-3642

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

|  |  |
|---|---|
| Policy number(s): | ISL 3114 |
|  | ICO 4073 |
| Inception date: | 9/1/1983 |
| Term at issuance: | 1 year |
| Page count: | 43 |
| Contents: | Slip- 2 pgs |
|  | Excess Broad Form Liability- 8 pgs |
|  | Endorsement- 8 pgs |
|  | Cover Note- 3 pgs |
|  | Lloyd's, PSAC, Companies Policy- 22 pgs |

DATE ISSUED Part 9 - London Program Policy Compendium  Pg 19.02   POLICY NO.

October                                    GHV 051/2023

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

| ITEM | | NUMBER **K L 8174** |
|---|---|---|

**1** — *Name of Assured*

Roman Catholic Diocese of Rockville Centre, et al
(See Endorsement #2)
50 North Park Avenue
Rockville Centre, New York 11570

**2** — EFFECTIVE FROM ☒ 12.01 A.M ☐ 12.00 NOON  BOTH DAYS AT STANDARD TIME  September 1, 1983  TO  September 1, 1984

**3** —
Acting upon your instruction, we have effected the insurance with:

NAME OF INSURERS — ➤ UNDERWRITERS AT LLOYD'S, LONDON    AMOUNT OR PERCENT **24.94%**

**4** —
AMOUNT | COVERAGE | RATE | PREMIUM

Herecn 24.94% Part of 100% of:

$ 25,000,000   any one occurrence

EXCESS OF:
(A) $25,000,000   any one occurrence

or

(B) $30,000,000   any one occurrence in respect of heliport liability

Excess Broad Form Liability including Heliport Liability – Worldwide

Annual: $22,500.00
Hereon: $ 5,611.50

AUDIT                              TOTAL CHARGED

**5** — SPECIAL CONDITIONS
As per attached forms and endorsements
NMA 772
NMA 1477
NMA 1256

**6** — Service of Suit Clause
Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, IL  60603
or Mendes & Mount, 3 Park Avenue, New York, NY  10016

In witness whereof this covernote has been signed at....... **Rolling Meadows, IL** ............... this... **13** ......day of.....**October**......

**International Special Risk Services, Inc.**

ICO 4073

By _____

Eason Printing Co. Chicago

| October 13, 1983 | GHV 051/2083 | SLC 6046 |
|---|---|---|

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SL/COB/CN)

| ITEM | | |
|---|---|---|
| | NUMBER | IC O 4073 |

**1**

*Name of Assured*

Roman Catholic Diocese of Rockville Centre, et al
(See Endorsement # A)
50 North Park Avenue
Rockville Centre, New York  11570

**2**

| EFFECTIVE ☒ 12 01 A M  BOTH DAYS AT FROM ☐ 12 00 NOON  STANDARD TIME | September 1, 1983 | TO | September 1, 1984 |
|---|---|---|---|

**3**

| Acting upon your instruction, we have effected the insurance with ➡ | NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|---|
| | See Endorsement # B | 75.06% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon:  75.06% Part of 100% of: | | Annual | $22,500.00 |
| | | Hereon: | $16,888.50 |
| Subject to the same forms, terms, conditions and endorsements as more particularly set forth in Cover Note No. ISL 3114 | | | |

AUDIT                                                                    TOTAL CHARGED

**5**

SPECIAL CONDITIONS

**6**

International Special Risk Services, Inc.

By _____

Eason Printing Co  Chicago



ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. ISL 3114

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is September 1, 1983          Endorsement No. 1

## ERRORS AND OMISSIONS

It is hereby understood and agreed that insofar as Errors and Omissions coverage is afforded to the Assured in the Primary and Underlying Excess Insurers policy/ies this Policy is extended to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER AGREED:

(1)   There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to October 1, 1976 (hereinafter referred to as the "Retroactive Date").

(2)   In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemeteries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: October 13, 1983          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By   *Charles C De Brueler*

 

## ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. ISL 3114

In the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is September 1, 1983          Endorsement No. 2

It is hereby understood and agreed effective inception that the Named Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal entities therein over which the same central authority appoints or controls the appointment of the board of trustees of similar body and exercises direct, complete and active control over the finances, properties, operations and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: October 13, 1983          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Charles C DeBruler_



ENDORSEMENT attaching to and forming part of Policy/Certificate No.  ICO 4072  4073

In the name of        Diocese of Rockville Centre

Effective Date of this endorsement is September 1, 1983        Endorsement No. B Revised


SECURITY:        18.48% Part of 100.00%        (    (12.50% Sovereign Marine & General Ins.
                                                Co. Ltd.
                                                (    (37.50% The Tokio Marine & Fire Ins. Co
                                                (U.K.) Ltd.
                                                (50% (25.00% Taisho Marine & Fire Ins. Co.
                                                (U.K.) Ltd.
                                                (    (15.00% Allianz International Ins. Co.
                                                Ltd.
                                                (    (10.00% Storebrand Ins. Co. (U.K.) Ltd.
                                                (50%  Sovereign Marine & General Ins. Co. Lt
                                                'C' Account.
                                                Per Willis Faber (Underwriting Management)
                                                Ltd.
                3.69% Part of 100.00%           Sovereign H.D.W. A/C.
                                                Per Willis Faber (Underwriting Management)
                                                Ltd.,
                7.39% Part of 100.00%           Dominion Ins. Co. Ltd.,
                13.86% Part of 100.00%          St. Katherine Insurance Company PLC
                6.93% Part of 100.00%           CNA Reinsurance of London Ltd.,
                7.39% Part of 100.00%           Stronghold Ins. Co. Ltd.,
                3.69% Part of 100.00%           *Turegum Ins. Co.
                2.08% Part of 100.00%           Folksam International Ins. Co. (UK) Ltd.,
                6.93% Part of 100.00%           British National Insurance Co. Ltd.
                1.85% Part of 100.00%           Yasuda Fire & Marine Ins. Co. (U.K.) Ltd.
                2.77% Part of 100.00%           Compagnie D'Assurances Maritimes Aerienes
                                                et Terrestres
                                                Per Camomile Underwriting Agencies Ltd.

                                                *Subject To U.S. Excise tax


Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:    November 2, 1983                INTERNATIONAL SPECIAL RISK SERVICES, INC.

                                          BY: Charles C De Breeler

ENDORSEMENT attached to and forming part of Policy ICO 4972 4073

in the name of Diocese of Rockville Centre

Effective date of this endorsement is September 1, 1983          Endorsement No. B

SECURITY:
|  |  |
|---|---|
| 22.17% Part of 100.00% | Sovereign Marine & Gen. Ins. Co. Ltd. |
| 7.39% Part of 100.00% | Dominion Ins. Co. Ltd. |
| 13.86% Part of 100.00% | St. Katherine Insurance Company Ltd. |
| 6.93% Part of 100.00% | CNA Reinsurance of London Ltd. |
| 7.39% Part of 100.00% | Stronghold Ins. Co. Ltd. |
| 3.69% Part of 100.00% | Turegum Ins. Co. |
| 2.08% Part of 100.00% | Folksam International Ins. Co. (UK) Ltd. |
| 6.93% Part of 100.00% | British National Insurance Co. Ltd. |
| 1.85% Part of 100.00% | Yasuda Fire & Marine Ins. Co. (UK) Ltd. |
| 2.77% Part of 100.00% | Compagnie D'Assurance Maritimes Aeriennes et Terrestres |
| 75.06% |  |

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: September 1, 1983          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Charles C De Bauler_

**ENDORSEMENT**

Attaching to and forming part of Policy/Certificate No. ICO 4073

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is September 1, 1983                Endorsement No. A

It is hereby understood and agreed effective inception that the Named Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal entities therein over which the same central authority appoints or controls the appointment of the board of trustees of similar body and exercises direct, complete and active control over the finances, properties, operations and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: October 13, 1983                INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Charles C De Bruler_

**U.S.A.**

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT**
*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association).*

*For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause—Liability—Direct) to liability insurances affording worldwide coverage.*

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
N.M.A. 1477

Bacon Printing Company

**SERVICE OF SUIT CLAUSE (U.S.A.)**

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association.)*

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon

Lord, Bissell & Brook, 115 S LaSalle St Chicago, IL 60603
or Mendes & Mount, 3 Park Avenue, New York, NY 10016

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or reinsured) to give a written undertaking to the Insured (or reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or in behalf of the Insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

N.M.A. 772                                              EASON PRINTING COMPANY

**U.S.A.**

NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)

(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)

*For attachment to insurances of the following classifications in the U. S. A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

*Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),*

*not being insurances of the classifications to which the Nuclear Incident Exclusion Clause—Liability—Direct (Limited) applies.*

**This policy** does not apply:—

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

   (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material, (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

   (a) any nuclear reactor,

   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*"Note:—As respects policies which afford liability coverage and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.*

17-5-60
N.M.A. 1256

Essex Printing Company

## EXCESS BROAD FORM LIABILITY

### INSURING AGREEMENTS

1.    **Coverage**

In consideration of the payment of the premium stated herein and subject to the limitations, definitions, terms and conditions hereinafter mentioned, Underwriters hereby agree with the Assured named in the Declarations made a part hereof to indemnify the Assured for all sums which the Assured shall be legally obligated to pay by reason of the liability caused by or arising out of only such hazards covered by and as more fully defined in the policy/ies of the "Primary and Underlying Excess Insurers" and issued by the Primary and Underlying Excess Insurers stated in Item 4 of the Declarations occurring during the period of this policy.

2.    **Limits of Liability**

Provided always that:

(a)   Liability attaches to the Underwriters only after the Primary and Under-lying Excess Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as set forth in Item 5 of the Declarations and designated "Primary and Underlying Excess Limit(s)" and then the limits of the Underwriters' liability shall be those set forth in Item 6 of the Declarations under the designation "Excess Limit(s)" and the Underwriters shall be liable to pay the ultimate net loss the Excess of the Limit(s) under the policy/ies of the Primary and Underlying Excess Insurers as set forth in Item 5 of the Declarations up to the full amount of such Excess Limits(s).

(b)   Liability for any one or any combination of the hazards insured hereunder as provided for in the Primary and Underlying Excess Insurers policy/ies is subject separately to the limit "each occurrence" as stated in the Declar-ations, but this limit shall not be exceeded in any one policy year with regard to any hazard(s) insured with an aggregate limit under the policy/ies of the Primary and Underlying Excess Insurers.

(c)   For the purpose of determining the limit of the Underwriters' liability, all Personal Injury and Property Damage arising out of either

(i)   an accident or series of accidents arising out of one event, or
(ii)  a continuous or repeated exposure to substantially the same general conditions,

shall be considered as arising out of one occurrence.

(d)   The inclusion of more than one entity as the named Assured, or the inclusion of any additional Assureds under this Policy, shall not in any way operate to increase the Underwriters' limits of liability beyond those provided in Item 6 of the Declarations.

## DEFINITIONS

3.　(a)　**Occurrence**

The word "occurrence" means an accident, including injurious exposure to conditions, which results during the Policy year in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Assured.

(b)　**Ultimate Net Loss**

The words "ultimate net loss" shall be understood to mean the amount payable in settlement of the liability of the Assured after making deductions for all recoveries and for other valid and collectible insurances, excepting however the policy/ies of the Primary and Underlying Excess Insurers, and shall include all expenses and costs.

(c)　**Policy Year**

The words "policy year" shall be understood to mean a period of one calendar year commencing each year on the day and hour first named in the Declarations.

## CONDITIONS

4.　(a)　**Application of Recoveries**

All recoveries, salvages or payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters, provided always that nothing in this Insurance shall be construed to mean that losses under this Insurance are not payable until the Assured's ultimate net loss has been finally ascertained.

(b)　**Attachment of Liability**

Liability to pay under this Policy shall not attach unless and until the Primary and Underlying Excess Insurers shall have admitted liability for the Primary and Underlying Excess Limit(s) or unless and until the Assured has by final judgment been adjudged to pay an amount which exceeds such Primary and Underlying Excess Limit(s) and then only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of the Primary and Underlying Excess Limit(s).

(c)　**Maintenance of Primary Insurance**

It is a condition of this Policy that the policy/ies of the Primary and Underlying Excess Insurers shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of occurrences during the policy year.

In respect of the hazards covered by the Primary and Underlying Excess Insurers this Policy is subject to the same warranties, terms, definitions, conditions and exclusions (except as regards the premium, the obligation to investigate and defend, the renewal agreement (if any), the amount and limits of liability other than the deductible or self-insurance provision where applicable, (AND EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy/ies of the Primary Insurers prior to the happening of an occurrence for which claim is made hereunder and should any alteration be made in the premium for the policy/ies of the Primary Insurers during the currency of this Policy, then the premium hereon shall be adjusted accordingly.

(d)    **Subrogation**

Inasmuch as this Policy is "excess coverage" the Assured's right of recovery against any person or other entity cannot be exclusively subrogated to the Underwriters. It is, therefore, understood and agreed that in case of any payment hereunder, the Underwriters will act in concert with all other interests (including the Assured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Assured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Underwriters are then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Assured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interest (including the Assured) concerned, in the ratio of their respective recoveries as finally settled.

(e)    **Commutation Clause**    - (to apply to Workmen's Compensation and/or Employers Liability or Occupational Disease and then only when these perils are covered by the Primary Insurers)

Not later than twenty-four months from the expiry date of this policy, the Assured shall advise the Underwriters of all claims not finally settled which are likely to result in claims under this Policy. The Underwriters may then or at any time thereafter intimate to the Assured their desire to be released from liability in respect of any one or more of such claims. In such event, the Assured and the Underwriters shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalise such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims shall constitute a complete and final release of Underwriters, provided however that such payment shall not constitute a full and final release of Underwriters' liability if subsequent to such payment any supplemental award is made increasing the claim(s); said additional claim(s) may then be recommuted at Underwriter's option and Underwriters may discharge any additional liability by another payment.

(f) **Cancellation**

This Policy may be cancelled at any time at the written request of the Assured or may be cancelled by or on behalf of the Underwriters provided sixty (60) days notice in writing be given.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the earned premium hereon for the period that this Policy has been in force or the short rate proportion of the Minimum Premium, calculated in accordance with the customary scale, whichever is the greater.

If this Policy shall be cancelled by the Underwriters they shall retain the earned premium hereon for the period that this Policy has been in force or pro-rata of the Minimum Premium, whichever is the greater. Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium.

If the period of limitation relating to the giving of such notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(g) **Notification of Claims**

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Declarations. Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above person(s) or firm of any such occurrence.

(h) **Fraudulent Claims**

If the Assured shall make any claim knowing the same to be fake or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

## DECLARATIONS

Item

1.   **Named Assured:**   The Diocese of Rockville Centre, as more fully set forth
     in Endorsement No. 2 attached.

2.   **Address of Assured:**   50 North Park Avenue
     Rockville Centre
     New York, NY 11570

3.   **Period:**   September 1, 1983 to September 1, 1984
     (Both days at 12:01 A.M. Local Standard Time)

4.   a)   **Primary Insurers:**   (i)   Certain Underwriters at Lloyd's London
                                        and various Insurance Companies
                                  (ii)  Fireman's Fund Insurance Company

     b)   **Underlying Excess Insurers:**   (i)   Interstate Fire & Casualty Company
                                            (ii)  Certain Underwriters at Lloyd's London
                                                  and various Insurance Companies
                                                  See Page 7 & 8 for Heliport Liability

5.   **Primary and Underlying Excess Limit(s):**   U.S. $25,000,000 (See Page 7 & 8 for
                                                    Heliport Liability)

6.   **Excess Limit(s):**   U.S.  $25,000,000

7.   **Notification of Claims To:**   Gallagher Bassett of New York, Inc.
                                      100 Ring Road West
                                      Garden City, New York 11530

8.   **Identification Details and Limits
     Carried Under Item 4 Above:**

     | Policy No(s) | Limit(s) |
     |---|---|
     | 4(a) (i) SL 4063/<br>SLC 6043 | $100,000 any one occurrence Combined Single Limit EXCESS OF $100,000 Combined Single Limit Self-Insured Retention. |
     | (ii) XLX-1437075 | $50,000 any one occurrence Workers' Compensation Act Liability EXCESS OF $100,000 any one occurrence Self-Insured Retention. |

**Declarations**
(continued)

| | |
|---|---|
| 4(b) (i)  83-0169764 | Difference between (a) (i) & (ii) above and $5,000,000 any one occurrence Combined Single Limit. |
| (ii)  ISL 3125/<br>ICO 4082 | $20,000,000 any one occurrence Combined Single Limit EXCESS OF 4(a)* and 4(b) (i) above. |

*(i) & (ii)

ATTACHING TO AND FORMING PART OF COVER NOTE NO. ISL 3110.

DATED: October 13, 1983            ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By  *Charles C De Boeler*

## HELIPORT LIABILITY
## DECLARATIONS

**Item**

1.    **Named Assured:**   The Diocese of Rockville Centre, as more fully set forth
in Endorsement No. 2 attached.

2.    **Address of Assured:**   50 North Park Avenue
Rockville Centre
New York, NY 11570

3.    **Period:**   September 1, 1983 to September 1, 1984
(Both days at 12:01 A.M. Local Standard Time)

4.    a)    **Primary Insurers:** United States Aviation Underwriters, Inc.

    b)    Underlying Excess Insurers:    (i) The Insurance Company of the State of
Pennsylvania (Southeastern Aviation, Inc.)
(ii) Certain Underwriters at Lloyd's London
and various Insurance Companies

5.    **Primary and Underlying Excess Limit(s):** U.S. $30,000,000

6.    **Excess Limit(s):** U.S. $25,000,000

7.    **Notification of Claims To:**    Gallagher Bassett of New York, Inc.
100 Ring Road, West
Garden City, New York 11530

8.    **Identification Details and Limits**
**Carried Under Item 4 Above:**

| Policy No(s) | Limit(s) |
|---|---|
| 4(a)    LG 18076 | $1,000,000 any one occurrence and aggregate |
| 4(b)(i)    AX634-9967 Good Samaritan Hospital Heliport | $9,000,000 any one occurrence and aggregate EXCESS of 4(a) |
| 4(b)(i)    AX634-9952 St. Francis Hospital Heliport | $9,000,000 any one occurrence and aggregate EXCESS of 4(a). |

**Heliport Liability**
**Declarations**

| | | |
|---|---|---|
| 4(b)(i) | AX634-9953<br>St. Charles<br>Hospital Heliport | $9,000,000 any one occurrence<br>and aggregate EXCESS of 4(a). |
| 4(b)(ii) | ISL 3125/ICO 4082 | $20,000,000 any one occurrence<br>Combined Single Limit EXCESS of<br>4(a) and 4(b)(i) and (ii). |

ATTACHING TO AND FORMING PART OF COVER NOTE NO. ISL 3114.

DATED: October 13, 1983      INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Charles C DeBreuler_

# GALLAGHER, HINTON & VEREKER LIMITED

### INTERNATIONAL INSURANCE BROKERS
### and at Lloyd's

D. W. L. M. VEREKER, (Managing Director)
D. J. M. ARNOLD
J. P. GALLAGHER, (U.S.A.)
R. E. GALLAGHER, (U.S.A.)
G. D. S. JONES
R. B. OWLES
J. J. SHAW
J. O. STREET

110 FENCHURCH STREET
LONDON, EC3M 5JJ

Telephone: 01-481 2222

Cables & Telegrams:
GALVER O, LONDON

Telex: 8851906
Registered No. 1795013 England

Arthur J. Gallagher & Co.,
4605 Lankershim Boulevard,
North Hollywood,
California 91602,
U.S.A.

25th October 1983
Date

Your Ref.

Our Ref.

## COVER NOTE No. GHV051/2003

We confirm that we have effected the following insurance in accordance with your instructions:

**TYPE:** EXCESS BROADFORM LIABILITY INCLUDING HELIPORT LIABILITY.

**FORM:** Excess 'Bishops' wording as agreed.

**ASSURED:** Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of Roman Catholic Diocese of Rockville Centre, and all legal entities therein over which the same central authority appoints or controls the appointment of the board of trustees or similar body and exercises direct, complete and active control over the finances, properties, operations and activities 50 North Park Avenue, Rockville Centre, New York 11570.

**PERIOD:** 12 months effective date 1st September, 1983.

**INTEREST:** Legal Liability in respect of the Assured's operations as more fully defined in primary.

**SUM INSURED:** $25,000,000 any one occurrence.

EXCESS OF:

(A)  $25,000,000 any one occurrence.

OR

(B)  $30,000,000 any one occurrence in respect of heliport liability.

**RECEIVED**

NOV 1 1983

ISRS

**SITUATION:** Worldwide.

**CONDITIONS:** 60 Days Cancellation Clause.

Aggregate Limits as underlying.

Retro- date in respect of Errors and Omissions 1st October, 1976.

..../.....

Page No.2. of Covernote dated 25th October , 1983

PREMIUM:        $22,500.

INFORMATION:    Underlying excludes Hospital Malpractice.

SECURITY:       24.94% Part of 100.00%      Lloyd's Underwriters

|        |     |        |     |
|--------|-----|--------|-----|
| 7.88%  | 989 | 0.76%  | 279 |
| 1.52%  | 650 | 3.69%  | 918 |
| 3.70%  | 210 | 2.77%  | 553 |
| 0.46%  | 109 | 0.93%  | 342 |
| 0.92%  | 921 | 1.66%  | 694 |
| 0.19%  | 694 | 0.46%  | 56  |

c.c.ISRS Chicago.

R E C E I V E D

NOV 1  1983

I S R S

Page No.2. of Covernote dated 25th October, 1983

PREMIUM:        $22,500.

INFORMATION:    Underlying excludes Hospital Malpractice.

SECURITY:       18.48% Part of 100.00%        (   (12.50% Sovereign Marine & General Ins.
                                              Co. Ltd.
                                              (   (37.50% The Tokio Marine & Fire Ins. Co
                                              (U.K.) Ltd.
                                              (50% (25.00% Taisho Marine & Fire Ins. Co.
                                              (U.K.) Ltd.
                                              (   (15.00% Allianz International Ins. Co.
                                              Ltd.
                                              (   (10.00% Storebrand Ins. Co. (U.K.) Ltd.
                                              (50% Sovereign Marine & General Ins. Co. Lt
                                              'C' Account.
                                              Per Willis Faber (Underwriting Management)
                                              Ltd.

                3.69% Part of 100.00%         Sovereign H.D.W. A/C.
                                              Per Willis Faber (Underwriting Management)
                                              Ltd.,

                7.39% Part of 100.00%         Dominion Ins. Co. Ltd.,
                13.86% Part of 100.00%        St. Katherine Insurancce Company PLC
                6.93% Part of 100.00%         CNA Reinsurance of London Ltd.,
                7.39% Part of 100.00%         Stronghold Ins. Co. Ltd.,
                3.69% Part of 100.00%        *Turegum Ins. Co.
                2.08% Part of 100.00%         Folksam International Ins. Co. (UK) Ltd.,
                6.93% Part of 100.00%         British National Insurance Co. Ltd.
                1.85% Part of 100.00%         Yasuda Fire & Marine Ins. Co. (U.K.) Ltd.
                2.77% Part of 100.00%         Compagnie D'Assurances Maritimes Aeriennes
                                              et Terrestres
                                              Per Camomile Underwriting Agencies Ltd.

                                             *Subject To U.S. Excise tax


        c.c. ISRS Chicago.



                                      R E C E I V E D

                                        NOV 1  1983

                                           I S R S

**FORM C.P. 2.**

# COMPANIES COLLECTIVE POLICY

**In consideration** of the Insured named in the Schedule hereto having paid premium set forth in the said Schedule to the Insurers who have hereunto subscribed their Names (hereinafter referred to as "the Insurers").

**The Insurers Hereby Severally Agree** each for the proportion set against its name to indemnify the Insured or the Insured's Executors, Administrators and Assigns against Loss as more fully set forth in the Policy detailed in the said Schedule covering the identical subject matter and risk (hereinafter called the "Co-insuring Policy") during the period of Insurance stated in the said Schedule or during any subsequent period as may be mutually agreed upon between the Insured and the Insurers.

PROVIDED that:—

(1) the liability of the Insurers shall not exceed the limits of liability expressed in the said Schedule or such other limits of liability as may be substituted therefor by memorandum hereon or attached hereto signed by or on behalf of the Insurers.

(2) the liability of each of the Insurers individually in respect of such loss shall be limited to the proportion set against its name.

(3) this Policy shall be subject to the same terms, provisions, conditions, and limitations as are contained in the Co-insuring Policy.

If the Insured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**In Witness whereof** I, being a representative of the Leading Company and authorised by the said Company and by all other Companies appearing hereon to sign this Policy on their behalf, have hereunto subscribed my name this *31st* day of *January* One Thousand nine hundred and *Eighty Four*.

THE DOMINION INSURANCE CO. LTD.

| THE INSURERS | PROPORTION % | REFERENCE NUMBERS |
|---|---|---|
| The Dominion Insurance Company Limited | 7.39 | 83A 127505 |
| St. Katherine Insurance Company PLC | 13.86 | 83100530 |
| Turegum Insurance Company | 3.69 | 479227387 |
| Folksam International Insurance Company | 2.08 | C003958313 |
| (U.K.) Limited | | |

**ENDORSEMENT**

Attaching to and forming part of Policy No. GHV 051/2083

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is September 1, 1983                    Endorsement No.    1

It is hereby understood and agreed effective inception that the Named Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal entities therein over which the same central authority appoints or controls the appointment of the board of trustees of similar body and exercises direct, complete and active control over the finances, properties, operations and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: October 13, 1983          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Charles C DeBrueler_

**Date** 25th January, 1984

**Policy No.** GHV 051/2083

# THE SCHEDULE

**The Insured** Roman Catholic Diocese of Rockville Centre, etal
(as more fully set forth in Endorsement No. 1)
50 North Park Avenue, Rockville Centre,
New York 11570.

**Premium:** US $6,079.50 part of US $22,500.00.

**The Interest Insured:** Legal Liability in respect of all operations of the various
Insured's and for their Agencies as more fully set forth in the
Coinsuring Policy detailed below.

This Insurance being for 27.02% part of 100% covers its pro rata
proportion of the risks and liability more particularly described
in the Coinsuring Policy detailed below and the percentages
signed hereon are percentages of 100% and not of 27.02%.

**Period of Insurance**

**From** 1st September, 1983   **To** 1st September, 1984 both days
at 12.01 a.m. Local Standard Time

**Coinsuring Policy No.** GHV 051/2083       **Issued by** Certain Underwriters
at Lloyd's London.



# Lloyd's Policy

**Whereas** the Assured named in the Schedule herein has paid the premium specified in the Schedule to the Underwriting Members of Lloyd's who have hereunto subscribed their Names (hereinafter called 'the Underwriters').

## Now We the Underwriters hereby agree to insure against loss, damage or liability to the extent and in the manner hereinafter provided.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

## Now know Ye that We the Underwriters, Members of the Syndicates whose definitive numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators and in respect of his due proportion only, to pay or make good to the Assured or to the Assured's Executors or Administrators or to indemnify him or them against all such loss, damage or liability as herein provided, after such loss, damage or liability is proved and the due proportion for which each of Us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the total sum insured hereunder which is in the Table set opposite the definitive number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Shares therein, is deemed to be incorporated in and to form part of this Policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

## In Witness whereof the General Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.



**LLOYD'S POLICY SIGNING OFFICE,**
*General Manager*



J(A) NMA 2002 (11.4.74)

The Assured is requested to **read this Policy** and, if it is incorrect, return it immediately for alteration.

**In** all communications the Policy Number appearing in line one of the Schedule should be quoted.

**In the event of any occurrence likely to result in a claim** under this Policy, **immediate notice should be given to:**

'D,



<u>U.S.A.</u>

### NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

<u>U.S.A.</u>

### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

### SERVICE OF SUIT CLAUSE (U.S.A.)

*(Approved by Lloyd's Underwriters' Non-Marine Association)*

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon

**Lord, Bissell & Brook, 115 South Lasalle Street,**

**Chicago, Illinois 60603** , and

that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Courts in the event of an appeal.

The above named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

22.5.52

N.M.A. 772

"source material", "special nuclear material or byproduct material "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof, "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor, "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organizations of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof. "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the **processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the** premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations, "**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material

With respect to injury to or destruction of property, the word "**injury**" or "**destruction**" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE.— As respects policies which afford liability coverages and other forms of coverage in addition the words underlined should be amended to designate the liability coverage to which this clause is to apply*

17/3/60
N.M.A. 1256



# PSAC POLICY

ICO 4073 2083

**IN CONSIDERATION** of the Insured named in the Schedule hereto having paid the premium stated in the said Schedule to the Insurers named herein who have hereunto subscribed their Names ("the Insurers")

**THE INSURERS HEREBY SEVERALLY AGREE** each for the proportion set against its own name to indemnify the Insured or the Insured's Executors and Administrators against loss, damage or liability to the extent and in the manner set forth herein. Provided that the aggregate liability of the Insurers shall not exceed the Sum Insured or other limits as are set forth in the Schedule.

If the Insured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**IN WITNESS WHEREOF** the Policy Signing Manager of THE POLICY SIGNING & ACCOUNTING CENTRE LIMITED ("PSAC") has subscribed his name on behalf of each of the PSAC Companies and (where the Companies Collective Signing Agreement ("CCSA") is being implemented) on behalf of the Leading CCSA Company which is a PSAC member and authorised to sign this Policy (either itself or by delegation to PSAC) on behalf of all the other CCSA Companies.

Signed:...................................................
*Policy Signing Manager*

Policy Department
Seal

Date as in the Schedule.

| The Insurers | ISAD Company Number | Whether CCSA or not | Proportion | Reference Numbers |
|---|---|---|---|---|
| Sovereign Marine & General Insurance Company Limited   12½% | ) ) | | | |
| The Tokio Marine & Fire Insurance Company (UK) Limited   37½% | ) ) | | | |
| Taisho Marine & Fire Insurance Company (UK) Limited   25 % | ) ) | ) ) | | |
| Allianz International Insurance Company Limited   15 % | ) S0065 ) ) 50% ) | YES | 18.48% | S658383 |
| Storebrand Insurance Company (UK) Limited   10% | ) ). | ) ) | | |
| Sovereign Marine & General Insurance Company Ltd "C" A/C   50% | ) ). | ) ) | | |
| Sovereign Marine & General Insurance Company Limited H.D.N. A/C | H0101 | YES | 3.69% | S658383 |
| CNA Reinsurance of London Limited | C4009 | YES | 6.93% | G351803 B08 |
| Stronghold Insurance Company Ltd | S0404 | YES | 7.39% | 231177H |
| British National Insurance Company Limited | B3002 | YES | 6.93% | 02702808833NR |
| Yasuda Fire & Marine Insurance Company Limited | | | | |
| (Per Leslie & Godwin Agencies Ltd) | Y1901 | YES | 1.85% | 83153169 |
| Compagnie d'Assurances Maritimes Aeriennes et Terrestres | | | | |
| (Per Camomile Underwriting Agencies Limited) | C8018 | YES | 2.77% | F 3540 DCW 3499 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**ENDORSEMENT**

Attaching to and forming part of Policy No. GHV 051/2083

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is September 1, 1983          Endorsement No.  1

It is hereby understood and agreed effective inception that the Named
Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary
Bishop Gerald J.  Ryan and Auxiliary Bishop James J. Daly comprising of
ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal
entities therein over which the same central authority appoints or controls
the appointment of the board of trustees of similar body and exercises
direct, complete and active control over the finances, properties, operations
and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: October 13, 1983              INTERNATIONAL SPECIAL RISK SERVICES, INC.

By  *Charles C DeBroeler*

Date: 25th January, 1984

Policy No. GHV 051/2083

# THE SCHEDULE

The Insured Roman Catholic Diocese of Rockville Centre, etal
(as more fully set forth in Endorsement No. 1)
50 North Park Avenue, Rockville Centre,
New York 11570.

Premium    US $10,809.00 part of US $22,500.00

~~Stamp Duty~~

U.S.A.

**4% TAX CLAUSE**

*(Approved by Lloyd's Underwriters' Non-Marine Association)*

Notice is hereby given that the Underwriters have agreed to allow for the purpose of paying the Federal Excise Tax 4% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder the Underwriters will deduct 4% from the amount of the return and the Assured or his agent should take steps to recover the Tax from the U.S. Government.

19/5/66
N.M.A. 1546



...ns of the various Insured's ...orth in the Coinsuring

...00% covers its pro rata proportion of the risks and liability more particularly described in the Coinsuring Policy detailed below and the percentages signed hereon are percentages of 100.00% and not of 48.04%.

~~Period~~

Period of Insurance

From   1st September, 1983                    To   1st September, 1984   both days
at 12.01 a.m. Local Standard Time
and for such further period or periods as may be mutually agreed.

## COINSURANCE CLAUSE

It is warranted that this Policy shall run concurrently with and be subject to the same terms, provisions, and limitations as are contained in Policy No.   GHV 051/2083 issued by Certain Underwriters at Lloyd's, London.           covering the identical subject matter and risk.

## Schedule

Policy or Certificate No.  **GHV 051  / 2083**        Contract No. (if any)

The name and address of the Assured

Roman Catholic Diocese of Rockville Centre, etal
(as more fully set forth in Endorsement No. 2)
50 North Park Avenue,
Rockville Centre,
New York 11570.

The risk and sum insured hereunder

EXCESS BROADFORM LIABILITY INCLUDING HELIPORT LIABILITY.

This insurance being for 24.94% part of 100.00% covers its pro rata proportion of
the risks and liability more particularly described in the attached wording,
which is hereby declared to be incorporated in and to form part of this policy,
and the percentages signed hereon are percentages of 100.00% and not of 24.94%.

The Premium    US $5,611.50    **part of**    US $22,500.00

The period of Insurance from  **1st September, 1983**    to    **1st September, 1984**
both days inclusive and for such further period or periods as may be mutually agreed upon
     12.01 a.m. Local Standard Time

Dated in   **London**                    the  **25th January, 1984**

**J** or **J(A)** (Schedule) NMA 2003 for attachment to NMA 2001, NMA 2002, NMA 2004 or NMA 2005

**ENDORSEMENT** forming part of Policy No.    GHV 051/2083

In the name of:    Roman Catholic Diocese of Rockville Centre, etal



Endorsement No. 4

8.   IDENTIFICATION DETAILS AND LIMITS
     CARRIED UNDER ITEM 4 ABOVE:

POLICY NO(S)                    LIMIT(S)

4 (a) (i) 051/182               US $100,000 any one occurrence Combined
                                Single Limit EXCESS of US $100,000 any
                                one occurrence Combined Single Limit
                                Self-Insured Retention.

   (ii) XLX-1437075             US $50,000 any one occurrence Worker's
                                Compensation Act Liability EXCESS of
                                US $100,000 any one occurrence Self-
                                Insured Retention.

   (iii) LG 18076               US $1,000,000 any one occurrence and
                                aggregate.

4 (b) (i) 83-0169764            Difference between (a) (i) and (ii)
                                above and US $5,000,000 any one occurrence
                                Combined Single Limit.

   (ii) GHV 051/1983            US $20,000,000 any one occurrence Combined
                                Single Limit EXCESS of 4 (a) (i) and (ii)
                                and 4 (b) (i) above.

   (iii) AX634-9967             US $9,000,000 any one occurrence and
         Good Samaritan         aggregate EXCESS of 4 (a) (iii) and (b) (ii).
         Hospital Heliport.

   (iii) AX634-9952             US $9,000,000 any one occurrence and
         St. Francis            aggregate EXCESS of 4 (a) (iii) and (b) (ii).
         Hospital Heliport.

   (iii) AX634-9953             US $9,000,000 any one occurrence and
         St. Charles            aggregate EXCESS of 4 (a) (iii) and (b) (ii).
         Hospital Heliport.

**ENDORSEMENT forming part of Policy No.**    **GHV 051/2083**

In the name of:   Roman Catholic Diocese of Rockville Centre, etal.

Endorsement No. 3

Notwithstanding CONDITION 4 (b) Attachment of Liability contained herein to the contrary it is hereby understood and agreed effective inception the same shall be deemed to be deleted and the following substituted in lieu thereof:-

4 (b)   Attachment of Liability -

Liability to pay under this Policy shall not attach unless and until the Primary and Underlying Excess Insurers shall have admitted liability for the Primary and Underlying Excess Limit(s) or unless and until the Assured has by final judgement been adjudged to pay an amount which exceeds such Primary and Underlying Excess Limit(s) and then only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of the Primary and Underlying Excess Limit(s).

Subject otherwise to all other, terms, clauses and conditions as heretofore.

ENDORSEMENT

Attaching to and forming part of Policy No. GHV 051/2083

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is September 1, 1983          Endorsement No. 2

It is hereby understood and agreed effective inception that the Named
Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary
Bishop Gerald J.  Ryan and Auxiliary Bishop James J. Daly comprising of
ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal
entities therein over which the same central authority appoints or controls
the appointment of the board of trustees of similar body and exercises
direct, complete and active control over the finances, properties, operations
and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: October 13, 1983          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Charles C DeBruler_

ENDORSEMENT

Attaching to and forming part of Policy No. GHV 051/2083

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is September 1, 1983          Endorsement No. 1

## ERRORS AND OMISSIONS

It is hereby understood and agreed that insofar as Errors and Omissions coverage is afforded to the Assured in the Primary and Underlying Excess Insurers policy/ies this Policy is extended to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER AGREED:

(1)     There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to October 1, 1976 (hereinafter referred to as the "Retroactive Date").

(2)     In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemeteries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: October 13, 1983          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By   _Charles C De Brueler_

## EXCESS BROAD FORM LIABILITY

## INSURING AGREEMENTS

1. COVERAGE –

   In consideration of the payment of the premium stated herein
   and subject to the limitations, definitions, terms and con-
   ditions hereinafter mentioned, Underwriters hereby agree with
   the Assured named in the Declarations made a part hereof to
   indemnify the Assured for all sums which the Assured shall be
   legally obligated to pay by reason of the liability caused by
   or arising out of only such hazards covered by and as more
   fully defined in the policy/ies of the "Primary and
   Underlying Excess Insurers" and issued by the Primary and
   Underlying Excess Insurers stated in Item 4 of the
   Declarations occurring during the period of this policy.

2. LIMITS OF LIABILITY –

   Provided always that:

   (a) Liability attaches to the Underwriters only after the
       Primary and Underlying Excess Insurers have paid or have
       been held liable to pay the full amount of their respec-
       tive ultimate net loss liability as set forth in Item 5
       of the Declarations and designated "Primary and
       Underlying Excess Limits(s)" and then the limits of the
       Underwriters' liability shall be those set forth in Item
       6 of the Declarations under the designation "Excess
       Limit(s)" and the Underwriters shall be liable to pay
       the ultimate net loss the Excess of the Limit(s) under
       the policy/ies of the Primary and Underlying Excess
       Insurers as set forth in Item 5 of the Declarations up
       to the full amount of such Excess Limit(s).

   (b) Liability for any one or any combination of the hazards
       insured hereunder as provided for in the Primary and
       Underlying Excess Insurers policy/ies is subject separa-
       tely to the limit "each occurrence" as stated in the
       Declarations, but this limit shall not be exceeded in
       any one policy year with regard to any hazard(s) insured
       with an aggregate limit under the policy/ies of the
       Primary and Underlying Excess Insurers.

Page 1 of 6

(c) For the purpose of determining the limit of the
Underwriters' liability, all Personal Injury and
Property Damage arising out of either

  (i)   an accident or series of accidents arising out of
        one event, or

  (ii)  a continuous or repeated exposure to substantially
        the same general conditions,

  shall be considered as arising out of one occurrence.

(d) The inclusion of more than one entity as the named
Assured, or the inclusion of any additional Assureds
under this Policy, shall not in any way operate to
increase the Underwriters' limits of liability beyond
those provided in Item 6 of the Declarations.

## DEFINITIONS

3. (a) <u>Occurrence</u> –

The word "occurrence" means an accident, including
injurious exposure to conditions, which results during
the Policy year in Personal Injury or Property Damage
neither expected nor intended from the standpoint of the
Assured.

(b) <u>Ultimate Net Loss</u> –

The words "ultimate net loss" shall be understood to
mean the amount payable in settlement of the liability
of the Assured after making deductions for all reco-
veries and for other valid and collectible insurances,
excepting however the policy/ies of the Primary and
Underlying Excess Insurers, and shall include all expen-
ses and costs.

(c) <u>Policy Year</u> –

The words "policy year" shall be understood to mean a
period of one calendar year commencing each year on the
day and hour first named in the Declarations.

                                    **Page 2 of 6**

## CONDITIONS

**4. (a)** <u>Application of Recoveries</u> –

All recoveries, salvages or payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriteres, provided always that nothing in this Insurance shall be construed to mean that losses under this Insurance are not payable until the Assured's ultimate net loss has been finally ascertained.

**(b)** <u>Attachment of Liability</u> –

Liability to pay under this Policy shall not attach unless and until the Primary and Underlying Excess Insurers shall have admitted liability for the Primary and Underlying Excess Limit(s) or unless and until the Assured has by final judgment been adjudged to pay the full amount of the Primary and Underlying Excess Limit(s).

**(c)** <u>Maintenance of Primary Insurance</u> –

It is a condition of this Policy that the policy/ies of the Primary and Underlying Excess Insurers shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of occurrences during the policy year.

In respect of the hazards covered by the Primary and Underlying Excess Insurers this Policy is subject to the same warranties, terms, definitions, conditions and exclusions (except as regards the premium, the obligation to investigate and defend, the renewal agreement (if any), the amount and limits of liability other than the deductible or self-insurance provision where applicable, AND EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy/ies of the Primary Insurers prior to the happening of an occurrence for which claim is made hereunder and should any alteration be made in the premium for the policy/ies of the Primary Insurers during the currency of this Policy, then the premium hereon shall be adjusted accordingly.

Page 3 of 6

(d)  **Subrogation** –

Inasmuch as this Policy is "excess coverage" the
Assured's right of recovery against any person or other
entity cannot be exclusively subrogated to the
Underwriters.  It is, therefore, understood and agreed
that in case of any payment hereunder, the Underwriters
will act in concert with all other interests (including
the Assured) concerned, in the exercise of such rights
of recovery.  The apportioning of any amounts which may
be so recovered shall follow the principle that any
interests (including the Assured) that shall have paid
an amount over and above any payment hereunder, shall
first be reimbursed up to the amount paid by them; the
Underwriters are then to be reimbursed out of any
balance then remaining up to the amount paid hereunder;
lastly, the interests (including the Assured) of whom
this coverage is in excess are entitled to claim the
residue, if any.  Expenses necessary to the recovery of
any such amounts shall be apportioned between the
interests (including the Assured) concerned, in the
ratio of their respective recoveries as finally settled.

(e)  **Commutation Clause** –    (to apply to Workers' Compensation
and/or Employer's Liability or
Occupational Disease and then
only when these perils are
covered by the Primary Insurers)

Not later than twenty-four months from the expiry date
of this policy, the Assured shall advise the
Underwriters of all claims not finally settled which are
likely to result in claims under this Policy.  The
Underwriters may then or at any time thereafter intimate
to the Assured their desire to be released from liabi-
lity in respect of any one or more of such claims.  In
such event, the Assured and the Underwriters shall
mutually appoint an Actuary or Appraiser to investigate,
determine and capitalize such claim or claims and the
payment by the Underwriters of their portion of the
amount so ascertained to be the capitalized value of
such claim or claims shall constitute a complete and
final release of Underwriters, provided however that
such payment shall not constitute a full and final
release of Underwriters' liability if subsequent to such
payment any supplemental award is made increasing the
claim(s); said additional claim(s) may then be recom-
muted at Underwriter's option and Underwriters may
discharge any additional liability by another payment.

                                        Page 4 of 6

(f)   Cancellation -

This Policy may be cancelled at any time at the written
request of the Assured or may be cancelled by or on
behalf of the Underwriters provided 30 days notice in
writing be given.

If this Policy shall be cancelled by the Assured, the
Underwriters shall retain the earned premium hereon for
the period that this Policy has been in force or the
short rate proportion of the Minimum Premium, calculated
in accordance with the customary scale, whichever is the
greater.

If this Policy shall be cancelled by the Underwriters
they shall retain the earned premium hereon for the
period that this Policy has been in force or pro-rata of
the Minimum Premium, whichever is the greater.   Notice
of cancellation by the Underwriters shall be effective
even though the Underwriters make no payment or tender
of return premium.

If the period of limitation relating to the giving of
such notice is prohibited or made void by any law
controlling the construction thereof, such period shall
be deemed to be amended so as to be equal to the minimum
period of limitation permitted by such law.

(g)   Notification of Claims -

The Assured upon knowledge of any occurrence likely to
give rise to a claim hereunder shall give immediate
written advice thereof to the person(s) or firm named
for the purpose in the Declarations.   Claims shall not
be prejudiced if the Assured, through clerical oversight
or error, fails to notify the above person(s) or firm of
any such occurrence.

(h)   Fraudulent Claims   -

If the Assured shall make any claim knowing the same to
be fake or fraudulent, as regards amount or otherwise,
this Policy shall become void and all claim hereunder
shall be forfeited.

Page 5 of 6

## DECLARATIONS

Item

1.  NAMED ASSURED : Roman Catholic Diocese of Rockville Centre, etal
                    (as more fully set forth in Endorsement No. 2)

2.  ADDRESS OF ASSURED :  50 North Park Avenue, Rockville Centre, New York 11570.

3.  PERIOD : 1st September, 1983 to 1st September, 1984 both days at 12.01 a.m. Local
             Standard Time

4.  a)  PRIMARY INSURERS : (i) Certain Underwriters at Lloyd's, London and various Insurance
                           Companies. (ii) Fireman's Fund Insurance Company (iii) United States
                           Aviation Underwriters Inc., in respect of Heliport Liability.
    b)  UNDERLYING EXCESS INSURERS : (i) Interstate Fire & Casualty Company (ii) Certain
                                     Underwriters at Lloyd's London and various Insurance
        Companies (iii) The Insurance Company of the State of Pennsylvania (Southeastern Aviation Inc.)

5.  PRIMARY AND UNDERLYING EXCESS LIMIT(S) :         in respect of Heliport Liability.
    (i)  US$ 25,000,000 any one occurrence (ii) US$ 30,000,000 any one occurrence in respect of
                                              Heliport Liability.

6.  EXCESS LIMIT(S) :
                    US$25,000,000 any one occurrence

7.  NOTIFICATION OF CLAIMS TO :  Gallagher Bassett of New York, Inc.,
                                 100 Ring Road West, Garden City, New York 11530.

8.  IDENTIFICATION DETAILS AND LIMITS
    CARRIED UNDER ITEM 4 ABOVE :

                    POLICY NO(S)                LIMIT(S)

                As more fully described in Endorsement No. 4

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Sum Insured hereunder shared between the Members of the Syndicates.

| FOR LPSO USE ONLY | BROKER | LPSO NO. & DATE | | | | |
|---|---|---|---|---|---|---|
| 2395 | 518 | 62757 | 24 | 12 | 83 | |
| AMOUNT PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF. | | | PAGE 1 | |

| AMOUNT PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF. |
|---|---|---|
| PERCENT | | |
| 7.88 | 989 | 323GA2L9206D |
| 0.76 | 279 | 323GA2L9206D |
| 1.52 | 650 | 323GA2L9206D |
| 3.69 | 918 | LG2HX22G3041 |
| 3.70 | 210 | F2018888 |
| 2.77 | 553 | ABIGXG |
| 0.66 | 109 | 06 |
| 0.93 | 342 | F90USXXXD306 |
| 0.92 | 921 | NA8203830G01 |
| 1.66 | 694 | 4690LXX32236 |
| 0.19 | 694 | 4690KXX32236 |
| 0.46 | 56 | X050NER |

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS NUMBERED 1983/ 12

| TOTAL LINE | NO. OF SYND | FOR LPSO USE ONLY |
|---|---|---|
| 24.94 | 12 | 5D    6415 |

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

Policy number(s):  ISL 3125
        ICO 4082

Inception date:   10/1/1983

Term at issuance:  1 year

Page count:    6

Contents:     Slip- 1 pg
        Endorsement- 5 pgs

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

NUMBER **IS L 3125**

**1**

*Name of Assured*

Roman Catholic Diocese of Rockville Centre, et al
(See Endorsement #2)
50 North Park Avenue
Rockville Centre, New York 11570

**2**

| EFFECTIVE FROM | ☒ 12:01 A.M. BOTH DAYS AT | ☐ 12:00 NOON STANDARD TIME | September 1, 1983 | TO | September 1, 1984 86 |

**3**

Acting upon your instruction, we have effected the insurance with:

| NAME OF INSURERS | AMOUNT OR PERCENT |
| --- | --- |
| ➡ UNDERWRITERS AT LLOYD'S, LONDON | ~~$2.14%~~ 82.30 |

**4**

| AMOUNT 82.30 | COVERAGE | RATE | PREMIUM |
| --- | --- | --- | --- |

Hereon 82.14% Part of 100% of:

$ 20,000,000 any one occurrence

EXCESS OF:
  (A) $ 5,000,000 any one occurrence
        or
  (B) $10,000,000 any one occurrence in respect of heliport liability

Excess Broad Form Liability Including Heliport Liability – Worldwide

Annual: $20,000.00
Hereon: $16,428.00

AUDIT         TOTAL CHARGED

**5**

SPECIAL CONDITIONS
As per attached forms and endorsements
NMA 772
NMA 1477
NMA 1256

**6**

Service of Suit Clause
Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, IL 60603
or Mendes & Mount, 3 Park Avenue, New York, NY 10016

In witness whereof this covernote has been signed at ........ Rolling Meadows, IL ............... this .... 13 ..... day of ...... October ..

International Special Risk Services, Inc.

ICO 4082

By _____

Eason Printing Co. Chicago

ADDITIONAL PREMIUM:   $10,115.00  (HEREON)

RETURN PREMIUM:

ENDORSEMENT attaching to and forming part of Policy No. ISL 3125

in the name of Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is September 1, 1984          Endorsement No. 5

It is hereby understood and agreed effective 1st September, 1984 the Sum Insured is amended to read:

SUM INDURED:          $10,000,000   any one occurrence

EXCESS OF

(A)     $    5,000,000   any one occurrence

OR

(B)     $   10,000,000   any one occurrence in respect
                                     of Heliport Liability

It is further understood and agreed the Premium Installment due 1st September, 1984 is $14,000.

It is further understood and agreed effective 1st September, 1984 the Security is amended to read:

SECURITY:          72.25% Part of 100.00%   Lloyd's Underwriters

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:  April 10, 1985          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By  *Charles C De Breuler*

ADDITIONAL PREMIUM: $32.00          (Hereon)

RETURN PREMIUM:                     (Hereon)

**ENDORSEMENT attaching to and forming part of Policy/Certificate No.**   ISL 3125

**In the name of**          Diocese of Rockville Centre, etal

**Effective Date of this endorsement is**   September 1, 1983          **Endorsement No.**  4


It is hereby noted and agreed that Security is amended to:-

    Underwriters at Lloyd's, London      82.30% part of 100%



It is further noted and agreed that policy period is amended to:-

    September 1, 1983  to September 1, 1986



**Subject otherwise to all terms, clauses and conditions as heretofore.**

**DATED:**      May 14, 1984          **INTERNATIONAL SPECIAL RISK SERVICES, INC.**

                         **BY:** Charles C DeBruler

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. ISL 3125

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is September 1, 1983          Endorsement No. 3

It is hereby understood and agreed that 45 days prior to each anniversary
date this risk is subject to the Assured advising Underwriters of any change
in the information given to Underwriters at inception, at which time the
coverage afforded and the premium charged shall be subject to review by
Underwriters.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: October 13, 1983          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Charles C De Breuler_

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. ISL 3125

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is September 1, 1983                    Endorsement No. 2

It is hereby understood and agreed effective inception that the Named
Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary
Bishop Gerald J.  Ryan and Auxiliary Bishop James J. Daly comprising of
ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal
entities therein over which the same central authority appoints or controls
the appointment of the board of trustees of similar body and exercises
direct, complete and active control over the finances, properties, operations
and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: October 13, 1983                    INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Charles C De Breuler_

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. ISL 3125

in the name of Roman Catholic Diocese of Rockville Centre, et al

Effective date of this endorsement is September 1, 1983          Endorsement No. 1

## ERRORS AND OMISSIONS

It is hereby understood and agreed that insofar as Errors and Omissions coverage is afforded to the Assured in the Primary and Underlying Excess Insurers policy/ies this Policy is extended to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER AGREED:

(1)     There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to October 1, 1976 (hereinafter referred to as the "Retroactive Date").

(2)     In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemeteries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED: October 13, 1983          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Charlie C De Bruler_

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

|  |  |
|---|---|
| Insurer(s): | Underwriters at Lloyd's<br>London Market Companies |
| Policy number(s): | ISL 3289<br>ICO 5133 |
| Inception date: | 9/1/1984 |
| Term at issuance: | 1 year |
| Page count: | 17 |
| Contents: | Slip- 2 pgs<br>Excess Broad Form Liability- 8 pgs<br>Endorsement- 7 pgs |

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

| ITEM | | NUMBER | IS L  3289/ICO 5133 |
|---|---|---|---|

**1** | *Name of Assured*

Roman Catholic Diocese of Rockville Centre, et al.
(See Endorsement #2)
50 North Park Avenue
Rockville Centre, New York  11570

**2** | EFFECTIVE FROM  ☒ 12:01 A.M.  ☐ 12:00 NOON  BOTH DAYS AT  STANDARD TIME

September 1, 1984  TO  September 1, 1985

**3** | Acting upon your instruction, we have effected the insurance with:

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| UNDERWRITERS AT LLOYD'S, LONDON | 17.01% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|

Hereon 17.01% Part of 100% of 85%:

$ 25,000,000   any one occurrence

EXCESS OF:
(A) $25,000,000   any one occurrence
or
(B) $30,000,000   any one occurrence in respect of heliport liability

Excess Broad Form Liability including Heliport Liability – Worldwide

$19,125.00 Part
of:        $22,500.00
Hereon:  $ 3,253.16

AUDIT                                                    TOTAL CHARGED

**5** | SPECIAL CONDITIONS

As per attached forms and endorsements
NMA 772
NMA 1477
NMA 1256

**6** | Service of Suit Clause
Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, IL  60603
or Mendes & Mount, 3 Park Avenue, New York, NY  10016

In witness whereof this covernote has been signed at ....... Rolling Meadows, IL ................ this ..10.......day of ....April .......

International Special Risk Services, Inc

By *Charles C DeBrule*

Eason Printing Co. Chicago

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. ISL 3289

in the name of Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is September 1, 1984          Endorsement No. 2

It is hereby understood and agreed effective inception that the Named Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop Gerald J.  Ryan and Auxiliary Bishop James J. Daly comprising of ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal entities therein over which the same central authority appoints or controls the appointment of the board of trustees or similar body and exercises direct, complete and active control over the finances, properties, operations and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  April 10, 1985          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Charles C DeBruler_

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. ISL 3289

in the name of Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is September 1, 1984               Endorsement No. 1

## ERRORS AND OMISSIONS

It is hereby understood and agreed that insofar as Errors and Omissions coverage is
afforded to the Assured in the Primary and Underlying Excess Insurers policy/ies this
Policy is extended to indemnify the Assured (as hereinafter defined) against any claim or
claims made against them individually or collectively during the period of this Insurance,
by reason of a wrongful act, error or omission, whenever or wherever committed or
alleged to have been committed while acting in their capacity as trustee, director or
council member in a diocesan connected entity.

IT IS FURTHER AGREED:

(1)     There shall be no liability hereunder for any claim made against the Assured for
        wrongful act, error or omission committed or alleged to have been committed
        prior to October 1, 1976 (hereinafter referred to as the "Retroactive Date").

(2)     In the event of non-renewal or termination of this Insurance, then the Insurance
        shall extend to apply to claims made against the Assured during the twelve (12)
        calendar months following immediately upon such expiration or termination, but
        only for wrongful act, error or omission, committed or alleged to have been
        committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were,
now are or shall be appointed or elected trustee, director or council member in any
parishes, schools, cemeteries, and other agencies or directly connected organizations of
the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim
made against the Assured if a judgment or final adjudication in any action brought against
the Assured shall be based on a determination that acts of fraud or dishonesty were
committed by the Assured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  April 10, 1985            INTERNATIONAL SPECIAL RISK SERVICES, INC.


                                 By  _Charles C DeBruler_

April 10, 1935

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SL/COS/CN)

| ITEM | | NUMBER | IC O 5133 |
|---|---|---|---|

**1**

**Name of Assured**

Roman Catholic Diocese of Rockville Centre, et al.
(See Endorsement #A)
50 North Park Avenue
Rockville Centre, New York 11570

**2**  EFFECTIVE  X ☐ 12:01 A.M.  BOTH DAYS AT
FROM  ☐ 12:00 NOON  STANDARD TIME  September 1, 1934  TO  September 1, 1935

**3**

| | NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|---|
| Acting upon your instruction, we have effected the insurance with: ➡ | See Endorsement #B | 82.99% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|

**Hereon:  82.99% Part of 100% of 35%:**

$19,125.00 Part
of:  $22,500.00
Hereon:  $15,371.34

Subject to the same forms, terms, conditions and endorsements as more particularly set forth in Cover Note No. ISL 3239

AUDIT                                              TOTAL CHARGED_____

**5**  SPECIAL CONDITIONS

**6**

International Special Risk Services, Inc.

By Charles C DeBruler

ENDORSEMENT attached to and forming part of Policy  ICO 5133

in the name of Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is September 1, 1984                Endorsement No. B


SECURITY:    22.17%  of 100.00% of 85% (        (12.50%  Sovereign Marine & General
                                        (        (                  Ins. Co. Ltd.
                                        (        (37.50%  The Tokio Marine & Fire Ins.
                                                                      Co. (U.K.) Ltd.
                                        (50%  (25.00%  Taisho Marine & Fire Ins.
                                                                      Co. (U.K.) Ltd.
                                        (        (15.00%  Allianz International Ins.
                                                                      Co. Ltd.
                                        (        (10.00%  Storebrand Ins. Co. (U.K.) Ltd.
                                        (50%  Sovereign Marine & General Ins. Co. Ltd.
                                        'C' Account.
                                        Per Willis Faber (Underwriting Management) Ltd.

             9.38%   of 100% of 85%     Sovereign Marine & General Ins. Co. Ltd. No.
                                        12 A/C
                                        Per Willis Faber (Underwriting Management) Ltd.

             4.70%   of 100% of 85%     Heddington Ins. Co. (U.K.) Ltd.
                                        Per Willis Faber (Underwriting Management) Ltd.

             9.38%   of 100% of 85%     Dominion Ins. Co. Ltd.,
             17.60%  of 100% of 85%     St. Katherine Insurance Company PLC
             8.79%   of 100% of 85%     CNA Reinsurance of London Ltd.,
             3.52%   of 100% of 85%     Stronghold Ins. Co. Ltd.,
             2.64%   of 100% of 85%     Folksam International Ins. Co. (U.K.) Ltd.,
             1.76%   of 100% of 85%     British National Insurance Co. Ltd.
             1.76%   of 100% of 85%     Campagnie D'Assurances Maritimes Aerienes
                                        et Terrestres
            ‾‾‾‾‾‾
             82.99                      Per Camomile Underwriting Agencies Ltd.


Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:  April 10, 1985                  INTERNATIONAL SPECIAL RISK SERVICES, INC.


                                        By  Charles C De Bruler

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. ICO 5133

in the name of Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is September 1, 1984          Endorsement No. A

It is hereby understood and agreed effective inception that the Named Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop Gerald J.  Ryan and Auxiliary Bishop James J. Daly comprising of ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal entities therein over which the same central authority appoints or controls the appointment of the board of trustees or similar body and exercises direct, complete and active control over the finances, properties, operations and activities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATED:  April 10, 1985          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Charles C De Breuler_

**U.S.A.**

### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT
*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association).*

*For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause—Liability—Direct) to liability insurances affording worldwide coverage.*

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
N.M.A. 1477

Bacon Printing Company

### SERVICE OF SUIT CLAUSE (U.S.A.)

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association.)*

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon

## Lord, Bissell & Brook, 115 S LaSalle St, Chicago, IL 60603
## or Mendes & Mount, 3 Park Avenue, New York, N Y 10016

and
that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

N.M.A. 772                                                                          EASON PRINTING COMPANY

**U.S.A.**

**NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)**
*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

*For attachment to insurances of the following classifications in the U. S. A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

*Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),*

*not being insurances of the classifications to which the Nuclear Incident Exclusion Clause—Liability—Direct (Limited) applies.*

**This policy\***

does not apply:—

I.   Under any Liability Coverage, to injury, sickness, disease, death or destruction
   (a)   with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b)   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.   Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.   Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
   (a)   the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
   (b)   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
   (c)   the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.   As used in this endorsement:
   "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material, (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means
   (a)   any nuclear reactor,
   (b)   any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
   (c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
   (d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

\*Note:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17-3-60
N.M.A. 1256

Bacon Printing Company

# EXCESS BROAD FORM LIABILITY

## INSURING AGREEMENTS

1. **Coverage**

    In consideration of the payment of the premium stated herein and subject to the limitations, definitions, terms and conditions hereinafter mentioned, Underwriters hereby agree with the Assured named in the Declarations made a part hereof to indemnify the Assured for all sums which the Assured shall be legally obligated to pay by reason of the liability caused by or arising out of only such hazards covered by and as more fully defined in the policy/ies of the "Primary and Underlying Excess Insurers" and issued by the Primary and Underlying Excess Insurers stated in Item 4 of the Declarations occurring during the period of this policy.

2. **Limits of Liability**

    Provided always that:

    (a)   Liability attaches to the Underwriters only after the Primary and Under-lying Excess Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as set forth in Item 5 of the Declarations and designated "Primary and Underlying Excess Limit(s)" and then the limits of the Underwriters' liability shall be those set forth in Item 6 of the Declarations under the designation "Excess Limit(s)" and the Underwriters shall be liable to pay the ultimate net loss the Excess of the Limit(s) under the policy/ies of the Primary and Underlying Excess Insurers as set forth in Item 5 of the Declarations up to the full amount of such Excess Limits(s).

    (b)   Liability for any one or any combination of the hazards insured hereunder as provided for in the Primary and Underlying Excess Insurers policy/ies is subject separately to the limit "each occurrence" as stated in the Declar-ations, but this limit shall not be exceeded in any one policy year with regard to any hazard(s) insured with an aggregate limit under the policy/ies of the Primary and Underlying Excess Insurers.

    (c)   For the purpose of determining the limit of the Underwriters' liability, all Personal Injury and Property Damage arising out of either

    (i)   an accident or series of accidents arising out of one event, or
    (ii)  a continuous or repeated exposure to substantially the same general conditions,

    shall be considered as arising out of one occurrence.

    (d)   The inclusion of more than one entity as the named Assured, or the inclusion of any additional Assureds under this Policy, shall not in any way operate to increase the Underwriters' limits of liability beyond those provided in Item 6 of the Declarations.

## DEFINITIONS

3.   (a)   **Occurrence**

The word "occurrence" means an accident, including injurious exposure to conditions, which results during the Policy year in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Assured.

(b)   **Ultimate Net Loss**

The words "ultimate net loss" shall be understood to mean the amount payable in settlement of the liability of the Assured after making deductions for all recoveries and for other valid and collectible insurances, excepting however the policy/ies of the Primary and Underlying Excess Insurers, and shall include all expenses and costs.

(c)   **Policy Year**

The words "policy year" shall be understood to mean a period of one calendar year commencing each year on the day and hour first named in the Declarations.

## CONDITIONS

4.   (a)   **Application of Recoveries**

All recoveries, salvages or payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters, provided always that nothing in this Insurance shall be construed to mean that losses under this Insurance are not payable until the Assured's ultimate net loss has been finally ascertained.

(b)   **Attachment of Liability**

Liability to pay under this Policy shall not attach unless and until the Primary and Underlying Excess Insurers shall have admitted liability for the Primary and Underlying Excess Limit(s) or unless and until the Assured has by final judgment been adjudged to pay an amount which exceeds such Primary and Underlying Excess Limit(s) and then only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of the Primary and Underlying Excess Limit(s).

(c)   **Maintenance of Primary Insurance**

It is a condition of this Policy that the policy/ies of the Primary and Underlying Excess Insurers shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of occurrences during the policy year.

In respect of the hazards covered by the Primary and Underlying Excess Insurers this Policy is subject to the same warranties, terms, definitions, conditions and exclusions (except as regards the premium, the obligation to investigate and defend, the renewal agreement (if any), the amount and limits of liability other than the deductible or self-insurance provision where applicable, (AND EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy/ies of the Primary Insurers prior to the happening of an occurrence for which claim is made hereunder and should any alteration be made in the premium for the policy/ies of the Primary Insurers during the currency of this Policy, then the premium hereon shall be adjusted accordingly.

(d)    **Subrogation**

Inasmuch as this Policy is "excess coverage" the Assured's right of recovery against any person or other entity cannot be exclusively subrogated to the Underwriters. It is, therefore, understood and agreed that in case of any payment hereunder, the Underwriters will act in concert with all other interests (including the Assured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Assured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Underwriters are then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Assured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interest (including the Assured) concerned, in the ratio of their respective recoveries as finally settled.

(e)    **Commutation Clause**   – (to apply to Workmen's Compensation and/or Employers Liability or Occupational Disease and then only when these perils are covered by the Primary Insurers)

Not later than twenty-four months from the expiry date of this policy, the Assured shall advise the Underwriters of all claims not finally settled which are likely to result in claims under this Policy. The Underwriters may then or at any time thereafter intimate to the Assured their desire to be released from liability in respect of any one or more of such claims. In such event, the Assured and the Underwriters shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalise such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims shall constitute a complete and final release of Underwriters, provided however that such payment shall not constitute a full and final release of Underwriters' liability if subsequent to such payment any supplemental award is made increasing the claim(s); said additional claim(s) may then be recommuted at Underwriter's option and Underwriters may discharge any additional liability by another payment.

(f)   **Cancellation**

This Policy may be cancelled at any time at the written request of the Assured or may be cancelled by or on behalf of the Underwriters provided sixty (60) days notice in writing be given.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the earned premium hereon for the period that this Policy has been in force or the short rate proportion of the Minimum Premium, calculated in accordance with the customary scale, whichever is the greater.

If this Policy shall be cancelled by the Underwriters they shall retain the earned premium hereon for the period that this Policy has been in force or pro-rata of the Minimum Premium, whichever is the greater. Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium.

If the period of limitation relating to the giving of such notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(g)   **Notification of Claims**

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Declarations. Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above person(s) or firm of any such occurrence.

(h)   **Fraudulent Claims**

If the Assured shall make any claim knowing the same to be fake or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

# DECLARATIONS

**Item**

1. **Named Assured:**   The Diocese of Rockville Centre, as more fully set forth in Endorsement No. 2 attached.

2. **Address of Assured:**   50 North Park Avenue
Rockville Centre
New York, NY  11570

3. **Period:**  September 1, 1984 to September 1, 1985
(Both days at 12:01 A.M. Local Standard Time)

4. a)   **Primary Insurers:**   (i)   Certain Underwriters at Lloyd's London and various Insurance Companies
(ii)   Fireman's Fund Insurance Co.

   b)   **Underlying Excess Insurers:**   (i)   Interstate Fire & Casualty Co.
(ii)   Certain Underwriters at Lloyd's London and various Insurance Companies
(iv)   Century Indemnity Company

5. **Primary and Underlying Excess Limit(s):**  $25,000,000 (See Page #7 & 8 for Heliport Liability)

6. **Excess Limit(s):  U.S.  $25,000,000**

7. **Notification of Claims To:**   Gallagher Bassett of New York, Inc.
591 Stewart Avenue
Garden City, New York  11530-3287

8. **Identification Details and Limits Carried Under Item 4 Above:**

| Policy No(s) | Limit(s) |
|---|---|
| 4(a) (i) SL 4063/ SLC 6043 *(London Package)* | $100,000 any one occurrence Combined Single Limit EXCESS of $100,000 Combined Single Limit any one occurrence Self-Insured Retention. |
| (ii) XLX-1437075 *(Fireman's Fund)* | $50,000 any one occurrence Workers' Compensation Act Liability EXCESS OF $100,000 any one occurrence Self-Insured Retention. |
| (iii) AL-11707 | U.S. $1,000,000 any one occurrence and aggregate. |

**Declarations**
(continued)

| | | |
|---|---|---|
| 4(b) (i) | 83-183-0170072 *Interstate* | Difference between (a) (i) & (ii) above and $5,000,000 any one occurrence Combined Single Limit. |
| (ii) | ISL 3125/ ICO 4082 | $10,000,000 any one occurrence Combined Single Limit EXCESS of 4(a) (i) and (ii) and 4(b) (i) above. |
| (iii) | AX 635-0311 Good Samaritan Hospital Heliport | $9,000,000 any one occurrence and aggregate EXCESS of 4(a) (iii) and (b) (ii). |
| (iii) | AX 635-0299 St. Francis Hospital Heliport | $9,000,000 any one occurrence and aggregate EXCESS of 4(a) (iii) and (b) (ii). |
| (iii) | AX 635-0300 St. Charles Hospital Heliport | $9,000,000 any one occurrence and aggregate EXCESS of 4(a) (iii) and (b) (ii). |
| (iv) | CIS 431702 *Century INDN* | $10,000,000 any one occurrence Combined Single Limit EXCESS of 4(a) (i) and (ii) and 4(b) (i) and (ii) and (iii). |

ATTACHING TO AND FORMING PART OF COVER NOTE NO. ISL 3289

DATED:  April 10, 1985                INTERNATIONAL SPECIAL RISK SERVICES, INC.

By *Charles C De Breuler*

# HELIPORT LIABILITY
# DECLARATIONS

**Item**

1. **Named Assured:** The Diocese of Rockville Centre, as more fully set forth in Endorsement No. 2 attached.

2. **Address of Assured:** 50 North Park Avenue
Rockville Centre
New York, NY 11570

3. **Period:** September 1, 1984 to September 1, 1985
(Both days at 12:01 A.M. Local Standard Time)

4. a) **Primary Insurers:** United States Aviation Underwriters, Inc.

   b) **Underlying Excess Insurers:**   (i) The Insurance Company of the State of Pennsylvania (Southeastern Aviation, Inc.)

   (ii) Certain Underwriters at Lloyd's London and various Insurance Companies

   (iii) Century Indemnity Company

5. **Primary and Underlying Excess Limit(s):** U.S. $30,000,000

6. **Excess Limit(s):** U.S. $25,000,000

7. **Notification of Claims To:**   Gallagher Bassett of New York, Inc.
591 Stewart Avenue
Garden City, New York 11530-3287

8. **Identification Details and Limits Carried Under Item 4 Above:**

| Policy No(s) | | Limit(s) |
|---|---|---|
| 4(a) | AL-11707 | $1,000,000 any one occurrence and aggregate |
| 4(b) (i) | AX 635-0311 Good Samaritan Hospital Heliport | $9,000,000 any one occurrence and aggregate EXCESS of 4(a) |
| 4(b) (I) | AX 635-0299 St. Francis Hospital Heliport | $9,000,000 any one occurrence and aggregate EXCESS of 4(a). |

**Heliport Liability**
**Declarations**

| | | |
|---|---|---|
| 4(b) (i) | AX 635-0300<br>St. Charles<br>Hospital Heliport | $9,000,000 any one occurrence<br>and aggregate EXCESS of 4(a). |
| 4(b) (ii) | ISL 3125/ICO 4082 | $10,000,000 any one occurrence.<br>Combined Single Limit EXCESS of 4(a)<br>and 4(b) (i). |
| 4(b) (iii) | CIS 431702 | $10,000,000 any one occurrence<br>combined Single Limit EXCESS of<br>4(a) and 4(b) (i) and (ii). |

ATTACHING TO AND FORMING PART OF COVER NOTE NO. ISL 3289

DATED: April 10, 1985                INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Charles C De Bruler_

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

|  |  |
|---:|:---|
| Insurer(s): | Underwriters at Lloyd's<br>London Market Companies |
| Policy number(s): | ISL 3322<br>ICO 5162 |
| Inception date: | 2/19/1985 |
| Term at issuance: | 6 months + 12 days |
| Page count: | 16 |
| Contents: | Slip- 2 pgs<br>Excess Broad Form Liability- 8 pgs<br>Endorsement- 6 pgs |

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

| | | NUMBER | **IS L 3322** |
|---|---|---|---|

**1**

*Name of Assured*

Roman Catholic Diocese of Rockville Centre, et al.
(See Endorsement #2)
50 North Park Avenue
Rockville Centre, New York 11570

**2**

EFFECTIVE X ☐ 12:01 A.M. **BOTH DAYS AT**
FROM ☐ 12:00 NOON **STANDARD TIME**    February 19, 1985    TO    September 1, 1985

**3**

Acting upon your instruction, we have effected the insurance with:

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| UNDERWRITERS AT LLOYD'S, LONDON | 57.14% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| Hereon 57.14% Part of 100% of 17.50%: | | | $2,327.50 Part of $13,300.00 |
| $ 10,000,000 any one occurrence | | | Hereon: $ 1,329.94 |

EXCESS OF:
(A) $15,000,000 any one occurrence

or

(B) $20,000,000 any one occurrence in respect of Heliport Liability

Excess Broad Form
Liability including
Heliport Liability
– Worldwide

AUDIT                                                                 TOTAL CHARGED

**5**

SPECIAL CONDITIONS
As per attached forms and endorsements
NMA 772
NMA 1477
NMA 1256

**6**

Service of Suit Clause
Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, IL  60603
or Mendes & Mount, 3 Park Avenue, New York, NY  10016

In witness whereof this covernote has been signed at......Rolling Meadows, IL......this....8th....day of....October....

International Special Risk Services, Inc.

By *Charles C DeBruler*

Eason Printing Co Chicago

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. ISL 3322

in the name of Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is February 19, 1985          Endorsement No. 2

It is hereby understood and agreed effective inception that the Named Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary Bishop Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal entities therein over which the same central authority appoints or controls the appointment of the board of trustees or similar body and exercises direct, complete and active control over the finances, properties, operations and activities.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: October 8, 1985          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Charles C De Breuler_

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. ISL 3322

in the name of Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is February 19, 1985          Endorsement No. 1

## ERRORS AND OMISSIONS

It is hereby understood and agreed that insofar as Errors and Omissions coverage is afforded to the Assured in the Primary and Underlying Excess Insurers policy/ies this Policy is extended to indemnify the Assured (as hereinafter defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

IT IS FURTHER AGREED:

(1)     There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to October 1, 1976 (hereinafter referred to as the "Retroactive Date").

(2)     In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

The term Assured as used herein shall mean the Named Assured and all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemeteries, and other agencies or directly connected organizations of the Diocese.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: October 8, 1985          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Charles C De Bruler_

| ITEM | | |
|---|---|---|
| | | **NUMBER**  **I C O**  **5162** |

**1**

*Name of Assured*   Roman Catholic Diocese of Rockville Centre, et al.
(See Endorsement #A)
50 North Park Avenue
Rockville Centre, New York 11570

**2**

EFFECTIVE  x ☐ 12:01 A.M.  BOTH DAYS AT
FROM    ☐ 12:00 NOON  STANDARD TIME   February 19, 1985   TO   September 1, 1985

**3**

Acting upon your instruction, we have
effected the insurance with:

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| Turegum Insurance Co. | 42.86% |

**4**

AMOUNT           COVERAGE              RATE           PREMIUM

Hereon:  42.86% Part of 100% of 17.50%:              $2,327.50 Part of
                                              $13,300.00
                                        Hereon:  $  997.56

Subject to the same forms, terms,
conditions and endorsements as more
particularly set forth in Cover
Note No. ISL 3322

AUDIT                                          TOTAL CHARGED

**5**

SPECIAL CONDITIONS

**6**

International Special Risk Services, Inc.

By Charles C De Breuller

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. ICO 5162

in the name of Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is February 19, 1985          Endorsement No. A

It is hereby understood and agreed effective inception that the Named
Insured is as follows:

Bishop John R. McGann, Bishop Emeritus Walter P. Kellenberg, Auxiliary
Bishop Gerald J. Ryan and Auxiliary Bishop James J. Daly comprising of
ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, and all legal
entities therein over which the same central authority appoints or controls
the appointment of the board of trustees or similar body and exercises
direct, complete and active control over the finances, properties, operations
and activities.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: October 8, 1985          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Charles C DeBreuler_

### SERVICE OF SUIT CLAUSE (U.S.A.)

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association.)*

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon

Lord, Bissell & Brook, 115 S LaSalle St, Chicago, IL 60603
or Mendes & Mount, 3 Park Avenue, New York, N Y 10016

and
that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

N.M.A. 772

EASON PRINTING COMPANY

**U.S.A.**

### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT
*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association).*

*For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause—Liability—Direct) to liability insurances affording worldwide coverage.*

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
N.M.A. 1477

Mason Printing Company

**U.S.A.**

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)
*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

*For attachment to insurances of the following classifications in the U. S. A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

*Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),*

*not being insurances of the classifications to which the Nuclear Incident Exclusion Clause—Liability—Direct (Limited) applies.*

**This policy\***

does not apply:—

I.  Under any liability Coverage, to injury, sickness, disease, death or destruction
    (a)  with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
    (b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
    (a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
    (b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
    (c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.  As used in this endorsement:
"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material;"source material", special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material, (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

    (a)  any nuclear reactor,
    (b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
    (c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
    (d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

\*Note:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17-8-60
N.M.A. 1256

Barma Printing Company

## EXCESS BROAD FORM LIABILITY

### INSURING AGREEMENTS

1. **Coverage**

   In consideration of the payment of the premium stated herein and subject to the limitations, definitions, terms and conditions hereinafter mentioned, Underwriters hereby agree with the Assured named in the Declarations made a part hereof to indemnify the Assured for all sums which the Assured shall be legally obligated to pay by reason of the liability caused by or arising out of only such hazards covered by and as more fully defined in the policy/ies of the "Primary and Underlying Excess Insurers" and issued by the Primary and Underlying Excess Insurers stated in Item 4 of the Declarations occurring during the period of this policy.

2. **Limits of Liability**

   Provided always that:

   (a)  Liability attaches to the Underwriters only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as set forth in Item 5 of the Declarations and designated "Primary and Underlying Excess Limit(s)" and then the limits of the Underwriters' liability shall be those set forth in Item 6 of the Declarations under the designation "Excess Limit(s)" and the Underwriters shall be liable to pay the ultimate net loss the Excess of the Limit(s) under the policy/ies of the Primary and Underlying Excess Insurers as set forth in Item 5 of the Declarations up to the full amount of such Excess Limits(s).

   (b)  Liability for any one or any combination of the hazards insured hereunder as provided for in the Primary and Underlying Excess Insurers policy/ies is subject separately to the limit "each occurrence" as stated in the Declarations, but this limit shall not be exceeded in any one policy year with regard to any hazard(s) insured with an aggregate limit under the policy/ies of the Primary and Underlying Excess Insurers.

   (c)  For the purpose of determining the limit of the Underwriters' liability, all Personal Injury and Property Damage arising out of either

   (i)   an accident or series of accidents arising out of one event, or
   (ii)  a continuous or repeated exposure to substantially the same general conditions,

   shall be considered as arising out of one occurrence.

   (d)  The inclusion of more than one entity as the named Assured, or the inclusion of any additional Assureds under this Policy, shall not in any way operate to increase the Underwriters' limits of liability beyond those provided in Item 6 of the Declarations.

## DEFINITIONS

3.    (a)    **Occurrence**

The word "occurrence" means an accident, including injurious exposure to conditions, which results during the Policy year in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Assured.

(b)    **Ultimate Net Loss**

The words "ultimate net loss" shall be understood to mean the amount payable in settlement of the liability of the Assured after making deductions for all recoveries and for other valid and collectible insurances, excepting however the policy/ies of the Primary and Underlying Excess Insurers, and shall include all expenses and costs.

(c)    **Policy Year**

The words "policy year" shall be understood to mean a period of one calendar year commencing each year on the day and hour first named in the Declarations.

## CONDITIONS

4.    (a)    **Application of Recoveries**

All recoveries, salvages or payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters, provided always that nothing in this Insurance shall be construed to mean that losses under this Insurance are not payable until the Assured's ultimate net loss has been finally ascertained.

(b)    **Attachment of Liability**

Liability to pay under this Policy shall not attach unless and until the Primary and Underlying Excess Insurers shall have admitted liability for the Primary and Underlying Excess Limit(s) or unless and until the Assured has by final judgment been adjudged to pay an amount which exceeds such Primary and Underlying Excess Limit(s) and then only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of the Primary and Underlying Excess Limit(s).

(c)    **Maintenance of Primary Insurance**

It is a condition of this Policy that the policy/ies of the Primary and Underlying Excess Insurers shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of occurrences during the policy year.

In respect of the hazards covered by the Primary and Underlying Excess Insurers this Policy is subject to the same warranties, terms, definitions, conditions and exclusions (except as regards the premium, the obligation to investigate and defend, the renewal agreement (if any), the amount and limits of liability other than the deductible or self-insurance provision where applicable, (AND EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy/ies of the Primary Insurers prior to the happening of an occurrence for which claim is made hereunder and should any alteration be made in the premium for the policy/ies of the Primary Insurers during the currency of this Policy, then the premium hereon shall be adjusted accordingly.

(d)   **Subrogation**

Inasmuch as this Policy is "excess coverage" the Assured's right of recovery against any person or other entity cannot be exclusively subrogated to the Underwriters. It is, therefore, understood and agreed that in case of any payment hereunder, the Underwriters will act in concert with all other interests (including the Assured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Assured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Underwriters are then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Assured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interest (including the Assured) concerned, in the ratio of their respective recoveries as finally settled.

(e)   **Commutation Clause**   - (to apply to Workmen's Compensation and/or Employers Liability or Occupational Disease and then only when these perils are covered by the Primary Insurers)

Not later than twenty-four months from the expiry date of this policy, the Assured shall advise the Underwriters of all claims not finally settled which are likely to result in claims under this Policy. The Underwriters may then or at any time thereafter intimate to the Assured their desire to be released from liability in respect of any one or more of such claims. In such event, the Assured and the Underwriters shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalise such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims shall constitute a complete and final release of Underwriters, provided however that such payment shall not constitute a full and final release of Underwriters' liability if subsequent to such payment any supplemental award is made increasing the claim(s); said additional claim(s) may then be recommuted at Underwriter's option and Underwriters may discharge any additional liability by another payment.

(f)   **Cancellation**

This Policy may be cancelled at any time at the written request of the Assured or may be cancelled by or on behalf of the Underwriters provided sixty (60) days notice in writing be given.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the earned premium hereon for the period that this Policy has been in force or the short rate proportion of the Minimum Premium, calculated in accordance with the customary scale, whichever is the greater.

If this Policy shall be cancelled by the Underwriters they shall retain the earned premium hereon for the period that this Policy has been in force or pro-rata of the Minimum Premium, whichever is the greater.  Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium.

If the period of limitation relating to the giving of such notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(g)   **Notification of Claims**

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Declarations.  Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above person(s) or firm of any such occurrence.

(h)   **Fraudulent Claims**

If the Assured shall make any claim knowing the same to be fake or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

12/07/82

## DECLARATIONS

**Item**

1. **Named Assured:** The Diocese of Rockville Centre, as more fully set forth in Endorsement No. 2 attached.

2. **Address of Assured:** 50 North Park Avenue
Rockville Centre
New York, NY 11570

3. **Period:** February 19, 1985 to September 1, 1985
(Both days at 12:01 A.M. Local Standard Time)

4. a) **Primary Insurers:**
   (i) Certain Underwriters at Lloyd's London and various Insurance Companies
   (ii) Fireman's Fund Insurance Co.

   b) **Underlying Excess Insurers:**
   (i) Interstate Fire & Casualty Co.
   (ii) Certain Underwriters at Lloyd's London and various Insurance Companies
   (iv) Century Indemnity Company

5. **Primary and Underlying Excess Limit(s):** $15,000,000 (See Page #7 & 8 for Heliport Liability)

6. **Excess Limit(s):** U.S. $10,000,000

7. **Notification of Claims To:** Gallagher Bassett of New York, Inc.
591 Stewart Avenue
Garden City, New York 11530-3287

8. **Identification Details and Limits Carried Under Item 4 Above:**

| Policy No(s) | Limit(s) |
|---|---|
| 4(a) (i) SL 4063/ SLC 6043 | $100,000 any one occurrence Combined Single Limit EXCESS of $100,000 Combined Single Limit any one occurrence Self-Insured Retention. |
| (ii) XLX-1437075 | $50,000 any one occurrence Workers' Compensation Act Liability EXCESS OF $100,000 any one occurrence Self-Insured Retention. |
| (iii) AL-11707 | U.S. $1,000,000 any one occurrence and aggregate. |

12/07/82

**Declarations**
(continued)

| | | |
|---|---|---|
| 4(b) (i) | 83-183-0170072 | Difference between (a) (i) & (ii) above and $5,000,000 any one occurrence Combined Single Limit. |
| (ii) | ISL 3125/ ICO 4082 | $10,000,000 any one occurrence Combined Single Limit EXCESS of 4(a) (i) and (ii) and 4(b) (i) above. |
| (iii) | AX 635-0311 Good Samaritan Hospital Heliport | $9,000,000 any one occurrence and aggregate EXCESS of 4(a) (iii) and (b) (ii). |
| (iii) | AX 635-0299 St. Francis Hospital Heliport | $9,000,000 any one occurrence and aggregate EXCESS of 4(a) (iii) and (b) (ii). |
| (iii) | AX 635-0300 St. Charles Hospital Heliport | $9,000,000 any one occurrence and aggregate EXCESS of 4(a) (iii) and (b) (ii). |

ATTACHING TO AND FORMING PART OF COVER NOTE NO. ISL 3322

DATED: October 8, 1985          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Charles C De Breeler_

## HELIPORT LIABILITY
## DECLARATIONS

**Item**

1. **- Named Assured:**   The Diocese of Rockville Centre, as more fully set forth in Endorsement No. 2 attached.

2. **Address of Assured:**   50 North Park Avenue
Rockville Centre
New York, NY  11570

3. **Period:**  February 19, 1985 to September 1, 1985
(Both days at 12:01 A.M. Local Standard Time)

4. a)   **Primary Insurers:**  United States Aviation Underwriters, Inc.

   b)   **Underlying Excess Insurers:**          (i) The Insurance Company of the State of Pennsylvania (Southeastern Aviation, Inc.)

   (ii)  Certain Underwriters at Lloyd's London and various Insurance Companies

   (iii)  Century Indemnity Company

5. **Primary and Underlying Excess Limit(s):**  U.S.  $20,000,000

6. **Excess Limit(s):**  U.S.  $10,000,000

7. **Notification of Claims To:**          Gallagher Bassett of New York, Inc.
591 Stewart Avenue
Garden City, New York  11530-3287

8. **Identification Details and Limits Carried Under Item 4 Above:**

| Policy No(s) | | Limit(s) |
|---|---|---|
| 4(a) | AL-11707 | $1,000,000 any one occurrence and aggregate |
| 4(b) (i) | AX 635-0311<br>Good Samaritan<br>Hospital Heliport | $9,000,000 any one occurrence and aggregate EXCESS of 4(a) |
| 4(b) (I) | AX 635-0299<br>St. Francis<br>Hospital Heliport | $9,000,000 any one occurrence and aggregate EXCESS of 4(a). |

**Heliport Liability**
**Declarations**

| | | |
|---|---|---|
| 4(b) (i) | AX 635-0300<br>St. Charles<br>Hospital Heliport | $9,000,000 any one occurrence<br>and aggregate EXCESS of 4(a). |
| 4(b) (ii) | ISL 3125/ICO 4082 | $10,000,000 any one occurrence.<br>Combined Single Limit EXCESS of 4(a)<br>and 4(b) (i). |

ATTACHING TO AND FORMING PART OF COVER NOTE NO. ISL 3322

DATED: October 8, 1985      INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Charles C DeBruler_

## Roman Catholic Diocese of Rockville Centre

## <u>Insurance Policy Cover Sheet</u>

|                   |                                                                                                                          |
| ----------------- | ------------------------------------------------------------------------------------------------------------------------ |
| Insurer(s):       | Underwriters at Lloyd's<br>London Market Companies                                                                       |
| Policy number(s): | ISL 3401<br>ICO 5239                                                                                                     |
| Inception date:   | 9/1/1985                                                                                                                 |
| Term at issuance: | 3 years                                                                                                                  |
| Page count:       | 63                                                                                                                       |
| Contents:         | Slip- 2 pgs<br>Combined Property, Casualty and Crime- 20 pgs<br>Endorsement- 41 pgs                                      |

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

| ITEM | | NUMBER **I S L    3401 / ICO 5239** |
|---|---|---|

**1** — *Name of Assured*

Roman Catholic Diocese of Rockville Centre and All Legal Entities Therein Over Which the Same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Exercises Direct, Complete and Active Control Over the Finances, Properties, Operations and Activities
50 North Park Avenue
Rockville Centre, New York  11570

**2**
EFFECTIVE FROM ☑ 12:01 A.M. ☐ 12:00 NOON   BOTH DAYS AT   STANDARD TIME    September 1, 1985    TO    September 1, 1988

**3**
NAME OF INSURERS — AMOUNT OR PERCENT

Acting upon your instruction, we have effected the insurance with: ➡ UNDERWRITERS AT LLOYD'S, LONDON    81.52%

*Cancelled 9/1 86*

**4**
AMOUNT 59.75    COVERAGE    RATE    PREMIUM

Hereon: 81/52% Part of 100% of 80% of:

| | | |
|---|---|---|
| $ 400,000 | each and every loss and/or occurrence | |
| $ 1,000,000 | in the aggregate annually in respect of the Assured's retention | |

BUT ONLY TO PAY EXCESS OF:

| | |
|---|---|
| $ 100,000 | each and every loss and/or occurrence |
| $ 4,500,000 | in the aggregate annually |

September 1, 1985/86:   $792,000.00
Part of:   $990,000.00
Hereon:   $645,633.40

September 1, 1986/87:   To Be Determined
September 1, 1987/88:   To Be Determined

Excess All Risks of Physical Loss or Damage, as per forms attached.

AUDIT    TOTAL CHARGED

**5** — SPECIAL CONDITIONS

As per attached forms and endorsements
NMA 1191
NMA 1256
NMA 772

**6**
Service of Suit Clause
Lord, Bissell & Brook, 115 South LaSalle Street, Chicago, IL  60603
or Mendes & Mount, 3 Park Avenue, New York, NY  10016

In witness whereof this covernote has been signed at.....Rolling Meadows, IL..................this 31.........day of...March........

International Special Risk Services, Inc.

By *Peter J Durbalski*

Eason Printing Co. Chicago

NDORSEMENT attaching to and forming part of Policy No. ISL 3401

in the name of Diocese of Rockville Center, New York

Effective date of this endorsement is September 1, 1985        Endorsement No. 23

It is agreed effective 1st September, 1985 Type is amended to include:-

EMPLOYEE BENEFIT LIABILITY

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: September 24, 1986

INTERNATIONAL SPECIAL RISK SERVICES, INC.

By Peter J Durkalski

1023/Jan. 86

**ENDORSEMENT attaching to and forming part of Policy No. ISL 3401**

in the name of **Diocese of Rockville Center, New York**

Effective date of this endorsement is September 1, 1985     Endorsement No. 22

It is hereby agreed that effective 1st September, 1985 the 'SECURITY' is amended to read:

**HEREON**     80%

**SECURITY:**     82.75% of order Lloyd's Underwriters

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: September 29, 1986

INTERNATIONAL SPECIAL RISK SERVICES, INC.

By *Peter J. Dunbilski*

ENDORSEMENT attaching to and forming part of Policy/Certificate No. ISL 3401

in the name of Diocese of Rockville Centre

Effective date of this endorsement is September 1, 1985          Endorsement No. 21

It is hereby understood and agreed that a 1955 "CHRIS CRAFT" 40 ft.
Fishing Vessel is added hereon.

*personal use only – Camp Alverde – by Gr. Lenard Conway
Never loaned or rented — per Emil 2/4/87*

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:  March 31, 1986          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By  *Peter J Durbalski*

**ENDORSEMENT attaching to and forming part of Policy/Certificate No. ISL 3401**

**in the name of**    Roman Catholic Diocese of Rockville Centre

**Effective date of this endorsement is September 1, 1985**          Endorsement No. 20

**TYPE:**

Excess All Risks of Physical Loss or Damage, Extra Expense, Electronic Data Processing Media/Equipment/Extra Expense, Business Interruption, Tuition Fees, Architect's Fees, Owned Builders' Risk, Transit, Priest's Personal Effects, Auto Physical Damage, Money and Securities, Comprehensive General Liability Including Hosts/Liquor Law Liability, Auto Liability, Nonowned Aircraft Liability, Cemetery Malpractice Auto and Premises Medical Payments, Workers' Compensation and/or Employers' Liability and/or Occupational Disease, Employee Fidelity, Errors and Omissions and School Board Liability.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: March 31, 1986          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Peter J Durbalski_

ENDORSEMENT attaching to and forming part of Policy/Certificate No. ISL 3401

in the name of      Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is September 1, 1985                Endorsement No. 19

It is agreed that the "Named Insured" includes all insureds and additional interests named in certificate of insurance applying to automobile liability for the personal automobiles of priests and nuns.  These certificates shall be on file with Gallagher Bassett of New York, Inc.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:  March 31, 1986            INTERNATIONAL SPECIAL RISK SERVICES, INC.

By  *Peter J Derebalski*

ENDORSEMENT attaching to and forming part of Policy/Certificate No. ISL 3401

in the name of     Roman Catholic Diocese of Rockville Centre

Effective date of this endorsement is September 1, 1985                    Endorsement No. 18

It is understood and agreed that coverage is extended to include Volunteer
Workers but only in respect of their operations whilst working on behalf of
the Assured.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:  March 31, 1986               INTERNATIONAL SPECIAL RISK SERVICES, INC.

By   *Peter J Durbalski*

ENDORSEMENT attaching to and forming part of Policy/Certificate No. ISL 3401

in the name of     Roman Catholic Diocese of Rockville Centre

Effective date of this endorsement is September 1, 1985                    Endorsement No. 17

It is understood and agreed that Errors and Omissions coverage hereunder is
to include all priests, religious personnel and employees.

It is further understood and agreed that the following condition is included:
"Errors and Omissions shall be on an occurrence basis including prior acts."

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:  March 31, 1986            INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Peter J Derrbalski_

ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. ISL 3401

in the name of Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is September 1, 1985          Endorsement No. 16

### NON-OWNED AIRCRAFT ENDORSEMENT

In consideration of an additional premium of <u>Included</u> it is understood and agreed that cover granted under this policy applies to Aircraft used by the Named Assured but not so declared, ALWAYS PROVIDED the Named Assured:

1.   has no interest in the Aircraft as owner in whole or in part
2.   exercises no part in the servicing or maintenance of the Aircraft
3.   exercises no part in the appointment or provision of personnel for the operation of the Aircraft.

THIS ENDORSEMENT does not apply:

(a)   to liability arising out of any product manufactured, sold, handled or distributed by the Named Assured
(b)   to any Aircraft having a seating capacity, including crew, in excess of (to be advised to Underwriters prior to coverag being afforded)
(c)   to liability for loss of or damage to the Aircraft or any consequential loss arising therefrom
(d)   when the Aircraft is used by the Named Assured for hire and reward.

All other terms and conditions remain unchanged.

DATED:  March 31, 1986          ARTHUR J. GALLAGHER & CO. (ILLINOIS)

By  *Peter J Durbalski*

ENDORSEMENT attaching to and forming part of Policy/Certificate No. ISL 3401

in the name of      Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is September 1, 1985                    Endorsement No. 15

It is hereby noted and agreed effective inception the Electronic Data Processing Exclusion contained within Transit Endorsement is deleted.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:  March 31, 1986                    INTERNATIONAL SPECIAL RISK SERVICES, INC.

By  _Peter J Deurbalski_

**ENDORSEMENT** attaching to and forming part of Policy No. IS1 3401

in the name of Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is September 1, 1985          Endorsement No. 14

It is noted and agreed effective inception the following are included in the
Policy in respect of the Assured's retention:-

|  | LOCATION | COVERAGES AND LIMIT | |
|---|---|---|---|
| i) | Mercy Hospital, Rockville Centre, New York | $9,200,000 | Business Interruption |
|  |  | $ 500,000 | Extra Expense |
| ii) | St. Francis Hospital, Roslyn New York | $4,700,000 | Business Interruption |
|  |  | $ 500,000 | Extra Expense |
| iii) | St. Mary of the Angels Home, Convent Road, Syosset, Nassau County, New York | $ 40,000 | Rental Income |
| iv) | Catholic Press Association, 53 North Park Avenue, Rockville Centre, New York | $ 60,000 | Extra Expense |

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: March 31, 1986          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Peter J. Durbalski_

ENDORSEMENT                    ADDITIONAL PREMIUM

                               RETURN PREMIUM      $4,076.00 (Hereon)


Attaching to and forming part of Policy/Certificate No. ISL 3401

in the name of Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is September 1, 1985          Endorsement No. 13


It is hereby understood and agreed that effective September 1, 1985 the loss limitations in respect of the Self Insured Fund and within the limits of this insurance are amended as follows: -

| | | |
|---|---|---|
| Auto Liability | $100,000 | any one occurrence C.S.L. |
| W.C.A./E.L./O.D.: | $100,000 | any one occurrence |
| Return Premium: | $ 5,000 | |


Hereon:

Underwriters at Lloyd's, London      81.52%


*5000 X 80% X 81.52%*
*3260.80*


Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:  March 31, 1986          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By *Peter J Deerbalski*

ENDORSEMENT attaching to and forming part of Policy/Certificate No. ISL 3401

in the name of    Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is September 1, 1985          Endorsement No. 12

It is further agreed that with respect to the operations of hospitals this policy does not apply to Liability arising out of professional medical services rendered or failure to be rendered.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:  March 31, 1986          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Peter J Durkalski_

**ENDORSEMENT**

Attaching to and forming part of Policy/Certificate No. ISL 3401

in the name of Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is September 1, 1985          Endorsement No. 11

      In consideration of the premium charged, it is agreed the policy is extended to include the following coverage:

### AUTOMOBILE NON OWNERSHIP

Notwithstanding anything contained herein to the contrary, this policy is extended to include Non Ownership Liability but only to provide coverage for owners of automobiles while being used in connection with activities being sponsored by the Named Insured.

It is further agreed this extension shall be excess of any other valid and collectible insurance.

The Loss Limitation hereon in respect of Automobile Bodily Injury/Property Damage remains at $200,000 Combined Single Limit from ground.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:  March 31, 1986          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Peter J Durbalski_

**ENDORSEMENT**

Attaching to and forming part of Policy/Certificate No. ISL 3401

in the name of Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is September 1, 1985          Endorsement No. 10

It is hereby understood and agreed that the following are named as Additional Named Insureds under this policy:

Bishop John R. McGann

Auxiliary Bishop Gerald J. Ryan *and a new Insured* [handwritten]

Auxiliary Bishop James J. Daly

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: March 31, 1986          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Peter J Durbalski_ [signature]

ENDORSEMENT

Attached to and forming part of Policy/Certificate No. ISL 3401

in the name of Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is September 1, 1985                    Endorsement No. 9

## EXTRA EXPENSE

### 40/80/100% of Limit

It is agreed that if the property described in Insuring Agreement A of Section I is damaged or destroyed by perils insured against in said Insuring Agreement A during the period of this Insurance so as to necessitate the incurrence of Extra Expense (as defined below) the Underwriters shall be liable for the Extra Expense so incurred, not exceeding the actual loss sustained, for not exceeding such length of time, hereinafter referred to as the "period of restoration".

It is further agreed that this extension in coverage shall not operate to increase the Underwriters limits of liability hereunder.

Underwriters shall be liable for no greater percentage of the amount of this Policy than is stated below for the determined period of restoration.

> 40% if period of restoration is not in excess of one month;
>
> 80% if period of restoration exceeds one month but does not exceed two months;
>
> 100% if period of restoration exceeds two months.

DEFINITIONS

a)  Extra Expense:  The term 'Extra Expense' means the excess (if any) of the total cost incurred during the period of restoration chargeable to the operation of the Assured's business, over and above the total cost that would normally have been incurred to conduct the business during the same period had no damage or destruction occurred.

Any salvage value of property obtained for temporary use during the period of restoration which remains after the resumption of normal operations, shall be taken into consideration in the adjustment of any loss hereunder.

b)  Normal:  The term 'Normal' wherever used herein shall mean; the condition that would have existed had no loss occurred.

c)  Month:  The word 'month' wherever used herein means 30 consecutive days.

d) **Period of Restoration:** The term 'period of restoration' means such length of time commencing with the date of damage and not limited by the date of expiration of this policy, as would be required with the exercise of due diligence and dispatch to repair, rebuild or replace such part of the Assured's property as has been damaged or destroyed.

## CONDITIONS

a) **Resumption of Operations:** It is a condition of this Insurance that as soon as practicable the Assured shall resume normal operations of the business and shall dispense with such extra expense.

b) **Interruption by Civil Authority:** Liability hereunder is extended to include actual loss as covered hereunder, sustained during the period of time, not exceeding two weeks, when as a direct result of a peril insured against, access to the premises in which the Assured's property is located is prohibited by order of civil authority.

## EXCLUSIONS

In addition to the General Exclusions of this Insruance Underwriters shall not be liable for Extra Expense resulting from:

a) **The suspension, lapse or cancellation of any lease, license, contract or order beyond the period of restoration.**

b) **Interference at premises by strikers or other persons with rebuilding, repairing or replacing the property damaged or destroyed or with the resumption or continuation of business.**

c) **Enforcement of any local or state ordinance or law regulating construction, repair or demolition of buildings or structures.**

Further, Underwriters shall not be liable for

1) more than the amount of Underwriters limits of liability as respects each premises;

2) loss of income;

3) the cost of repairing or replacing any of the real or personal property of the Assured, or the cost of research or other expense necessary to replace or restore damaged or destroyed books of account, abstracts, drawings, card index systems or other records (including film, tape, disc, drum, cell or other magnetic recording or storage media for electronic data processing), that have been damaged or destroyed by the perils insured against, except cost in excess of the normal cost of repair, replacement or restoration necessarily incurred for the purpose of reducing loss under this policy. In no event shall such excess cost exceed the amount by which the total extra expense loss otherwise payable under this policy is thereby reduced;

4) loss resulting from theft of any property which at the time of loss is not an integral part of a building or structure (except direct loss by pillage and looting occurring during and at the immediate place of a riot or civil

commotion), unless loss by a peril not excluded in this policy ensues from theft or attempted theft, and then the Underwriters shall be liable for only such ensuing loss;

5) any other consequential or remote loss.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: March 31, 1986          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Peter J Durbalski_

# ENDORSEMENT

Attaching to and forming part of Policy/Certificate No. ISL 3401

in the name of Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is September 1, 1985          Endorsement No. 8

## TRANSIT EXTENSION

### INSURING CLAUSE

In consideration of the premium paid and subject to the terms, loss limits and conditions of the policy to which this Extension is attached and to the following conditions and exclusions, this insurance is hereby extended to cover:

Personal property of the Assured or property held by the Assured in trust or on commission or on consignment for which the Assured may be held legally liable while in due course of transit within the limits of the Continental United States of America (excluding Hawaii) and Canada, against All Risks of Direct Physical Loss or Damage to the property insured occurring during the period of this policy (including general average and salvage charges on shipments covered while waterborne).

### PERILS EXCLUDED

This Extension does not insure against:

1.     Loss or damage to personal property resulting from:

shrinkage, evaporation, loss of weight, leakage, breakage of glass or other fragile articles, marring, scratching, exposure to light, or change in colour, texture or flavour, unless such loss is caused directly by fire or the combating thereof, lightning, windstorm, hail, explosion, strike, riot or civil commotion, aircraft, vehicles, breakage of pipes or apparatus, sprinkler leakage, vandalism and malicious mischief, theft or attempted theft.

2.     Loss of use, delay or loss or markets,

3.     Loss or damage caused by or resulting from moth, vermin, termites, or other insects, inherent vice, latent defect, wear, tear or gradual deterioration; contamination; rust; wet or dry rot, mould, dampness of atmosphere, smog or extremes of temperature,

4. Loss or damage caused by or resulting from misappropriation, conversion, infidelity or any dishonest act on the part of the Assured or other party of interest, his or their employees or agents or others to whom the property may be delivered or entrusted (carriers for hire excepted).

5. Loss or damage to the property insured occasioned by war, invasion hostilities, acts of foreign enemies, civil war, rebellion, insurrection military or usurped power or martial law or confiscation by order of any Government or public authority.

6. Loss or damage arising directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination however such nuclear reaction, nuclear radiation or radioactive containmination may have been caused. Nevertheless if a fire arises directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination any loss or damage arising directly from the fire shall (subject to the provisions of this Policy) be covered excluding however all loss or damage caused by nuclear reaction, nuclear radiation or radioactive contamination arising directly or indirectly from that fire.

7. Loss or damage caused by breakdown or derangement of refrigerating units.

## DEDUCTIBLE(S)

Each loss or series of losses arising out of one event shall be adjusted separately and from the amount of each such adjusted loss the sum(s) stated in PART I (AGGREGATE AGREEMENT) A) 2) shall be deducted.

## PROPERTY EXCLUDED

This Extension does not cover:

1. a. Aircraft, watercraft, vehicles designed for highway use, animals, jewelery, precious stones and furs or garments trimmed with fur,

   b. Accounts, bills, currency, money, notes, securities, deeds, evidences of debt and valuable papers,

   c. Data processing equipment and media including, but not limited to, film, tape, disc, drum, cell and other recording or storage media for data processing,

2. Property in due course of ocean marine transit,

3. Shipments by mail after delivery into the custody of the Post Office Department,

4. Samples whilst in the care, custody or control of salesmen.

## CONDITIONS

1.   The Assured may accept without prejudice to this insurance the ordinary bills of lading or receipts issued by carriers including those containing released and/or partially released value provisions, but the Assured shall not enter into any special agreement with carriers releasing them from their common law or statutory liability.

2.   Property insured hereunder shall be valued as follows:

   A.   Sold property at the actual net invoice price of the Assured.

   B.   Unsold property – at the actual cash value of the property at the time any loss or damage occurs with proper deduction for depreciation and in no event to exceed what it would cost to repair or replace the property with material of like kind and quality.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:  March 31, 1986          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By  _Peter J Durkalski_

ENDORSEMENT attaching to and forming part of No. ISL 3401

in the name of the Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is September 1, 1985          Endorsement No. 7

## GROSS EARNINGS BUSINESS INTERRUPTION

### INSURING CLAUSE

In consideration of the premium paid and subject to the terms, conditions and exclusions of the policy to which this extension is attached and to the following terms and conditions, this Insurance is extended to cover:-

Against loss resulting directly from necessary INTERRUPTION OF BUSINESS caused by Direct Physical Loss or Damage, as covered by the policy to which this Extension is attached, and/or personal property, occurring during the terms of this Policy on premises occupied by the Assured.

In the event of such loss or damage Underwriters shall be liable for the Actual Loss Sustained by the Assured resulting from such interruption of business, but not exceeding the reduction in Gross Earnings less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property as has been lost or damaged, commencing with the date of such loss or damage and not limited by the date of expiration of this Policy.  Due consideration shall be given to the continuation of normal charges and expenses including payroll expenses, to the extent necessary to resume operations of the Assured with the same quality of service which existed immediately preceding the loss.

### SUM INSURED

The Underwriters hereon shall not be liable for more than the Sum Insured stated in the Declarations in respect of each and every loss, irrespective of the number of locations suffering an interruption of business.

### DEFINITIONS

1.   Gross Earnings

    In respect of Non-Manufacturing or Mercantile risks "Gross Earnings" are defined as the sum of:

    (a)   Total net sales, and

    (b)   Other earnings derived from the operations of the business less the cost of

    (c)   Merchandise sold including packaging materials therefor

(d)   Materials and supplies consumed directly in supplying the service(s) sold by the Assured, and

(e)   Service(s) purchased from outsiders (not employees of the Assured) for resale which do not continue under contract.

In respect of Manufacturing Risks "Gross Earnings" are defined as the sum of:-

(a)   The total net sales value of production

(b)   Total net sales of merchandise, and

(c)   Other earnings derived from operations of the business less the cost of

(d)   Raw stock from which such production is derived

(e)   Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock, or in supplying the services sold by the Assured

(f)   Merchandise sold, including packaging materials therefor, and

(g)   Service(s) purchased from outsiders (not employees of the Assured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

In determining Gross Earnings due consideration shall be given to the experience of the business before the date of loss or damage and the probable experience thereafter had no loss occurred.

2.   Raw Stock is material in the state in which the Assured received it for conversion into finished stock.

3.   Stock in Process is raw stock which has undergone any ageing, seasoning, mechanical or other process of manufacture at the Assured's premises but which has not become finished stock.

4.   Finished Stock is stock manufactured by the Assured which in the ordinary course of the Assured's business is ready for packing, shipment or sale.

5.   Merchandise is goods kept for sale by the Assured which are not the product of manufacturing operations conducted by the Assured.

6.   Normal is the condition that would have existed had no loss occurred.

## CONDITIONS

1.   Direct Damage

No claims shall be sustained against this Extension resulting from the necessary interruption of business unless and until a loss has been paid, or liability admitted, in respect of direct physical damage to property insured under the policy to which this Extension is attached, giving rise to business interruption.

This Condition shall not apply if no such payment shall have been made nor liability admitted solely owing to the operation of a deductible in such policy excluding liability for losses below a specified amount.

2.   **Resumption of Operations**

If the Assured could reduce the loss resulting from the interruption of business:

a.   by complete or partial resumption of operation of the property whether or not such property be lost or damaged, or

b.   by making use of merchandise or other property at the Assured's locations or elsewhere, and

c.   in respect of Manufacturing risks, by making use of stock (raw, in process or finished) at the Assured's locations or elsewhere,

such reduction shall be taken into account in arriving at the amount of loss hereunder.

3.   **Expenses to Reduce Loss**

This Extension also covers such expenses as are necessarily incurred for the purpose of reducing loss under this Extension (except expenses incurred to extinguish a fire) and in respect of Manufacturing Risks, such expense, in excess of normal, as would necessarily be incurred in replacing any finished stock used by the Assured to reduce loss under this Extension; but in no event to exceed the amount by which loss under this Extension is thereby reduced.

4.   **Finished Stock**

In respect of Manufacturing Risks Underwriters shall not be liable for any loss resulting from loss of or damage to finished stock nor for the time required to reproduce such finished stock.

5.   **Special Exclusions**

Underwriters shall not be liable for any increase of loss which may be occasioned by any local or state ordinance or law regulating construction or repair of buildings or structures, nor by the suspension, lapse or cancellation of any lease or license, contract or order, nor for any increase of loss due to interference at the Assured's premises by strikers or other persons with rebuilding or replacing the property or with the resumption or continuance of the business; nor shall Underwriters be liable for any other consequential or remote loss.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:   March 31, 1986        INTERNATIONAL SPECIAL RISK SERVICES, INC.

By: *Peter J Durbalski*

## ENDORSEMENT

Attached to and forming part of No. ISL 3401

in the name of Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is September 1, 1985          Endorsement No. 6

### TUITION FEES ENDORSEMENT

1.   Subject to all the provisions applicable to Section 1 of this policy, this Policy is extended to insure against loss of tuition fees resulting directly from damage to or destruction by the perils insured against of real or personal property, during the term of this policy, on the Assured's premises, subject to the limit of liability for the premises at which the damage or destruction occurs. For the purposes of this insurance, 'perils insured against' shall mean the perils, as defined and limited in this Policy and any endorsements attached hereto for each premise and also subject to the provisions of this Endorsement.

2.   Underwriters shall be liable for:

a.   the actual loss of tuition fees sustained by the Assured less charges and expenses which do not necessarily continue during the period of time, not limited by the date of expiration of this Policy commencing with the date of such damage or destruction and ending on the day preceding the beginning of the first school year following the date that the damaged or destroyed real or personal property could, with the exercise of due diligence and dispatch, be rebuilt, repaired or replaced.

If the period of time as provided above shall end on a date within 30 days immediately preceding the beginning of the first school year specified above, the period of liability for loss is hereby extended to end on the day preceding the beginning of the second school year; and

b.   the actual loss sustained by the Assured, resulting directly from an interruption of business as covered hereunder during the length of time, not exceeding two consecutive weeks, when, as a direct result of damage to or destruction of property adjacent to the premises insured by the perils(s) insured against, access to such insured premises is specifically prohibited by order of civil authoirty; and

c.   loss resulting from damage to or destruction of media for, or programming records pertaining to electronic data processing or electronically controlled equipment, including data thereon, by the perils insured against. The length of time for which the Underwriters shall be liable hereunder shall not exceed -

(1)   30 consecutive calendar days; or
(2)   the length of time that would be required to rebuild, repair or replace such other property insured as has been damaged or destroyed; whichever is the greater length of time;

d.   such expenses as are necessarily incurred for the purposes of reducing loss under this Endorsement (except expense incurred to extinguish a fire), but in no event shall the aggregate of such expenses exceed the amount by which the loss under this Endorsement is thereby reduced.

3. Resumption of Operations: paragraph is continued this Pg 130 of 184 if the Assured could reduce the loss resulting from the interruption of business.

    a.  by complete or partial resumption of operation of the property insured, whether damgaed or not, or

    b.  by making use of other property, equipment or supplies at the locations insured or elsewhere, such reduction shall be taken into account in arriving at the amount of loss hereunder.

4. Definitions:

    a.  For the purposes of this insurance, 'tuition fees' are defined as the sum of tuition, fees and other income from students, less the cost of merchandise sold and materials and supplies consumed in services sold to such students. In determining tuition fees, due consideration shall be given to the experience of the Assured before the date of damage or destruction and the probable experience thereafter had no loss occurred.

    b.  The words 'beginning of school year' however modified, wherever used in this Endorsement shall mean the opening date of school in the Fall as prescribed, or as would be prescribed, in the school catalogue.

    c.  The term 'directly,' as applied to loss under this Endorsement, means loss, as limited and conditioned in this policy, resulting from direct loss to the property insured from the perils insured against.

5. Alterations and New Buildings:  Permission granted to amke alterations in or to construct additions to any building insured and to construct new buildings on the insured premises.   This Endorsement is extended to cover, subject to all its provisions, loss resulting from damage to or destruction of such alterations, additions, or new buildings while in course of construction and when completed or occupied, provided that, in the event of damage to or destruction of such property (including building amterials, supplies, machinery or equipment incident to such construction or occupancy while on the insured premises or within 100 feet thereof) so as to delay commencement of business operations of the Assured, the length of time for which the Underwriters shall be liable shall be determined as otherwise provided herein but such determined length of time shall be applied and the loss hereunder calculated from the date that business operations would have begun had no damage or destruction occurred.

6. Additional Exclusions and Limitations;

    a.  Underwriters shall not be liable for any increase of loss which may be occasioned by:

        (1)  enforcement of any local or state ordinance or law regulating construction, repair or demolition of buildings or structures,

        (2)  interference at the insured premises by strikers or other persons with rebuilding, repairing or replacing the property or with the resumption or continuation of business,

        (3)  the suspension, lapse or cancellation of any lease or license, contract or order unless such suspension, laspse or cancellation results directly from the interruption of business, and then the Underwriters shall be liable for any such loss as affects the Assured's earnings during, and limited to, the period of indemnity covered under this policy.

(1)    more than the amount set forth in the limits of liability for each premises insured.

(2)    loss resulting from theft of any property which at the time of loss is not an integral part of a building or structure (except direct loss by pillage and looting occurring during and at the immediate place of a riot or civil commotion), unless loss by a peril not excluded in this policy ensues from theft to attempted theft, and then the Underwriters shall be liable for only such ensuing loss,

(3)    any other consequential or remote loss.

7.    Requirements in Case Loss Occurs:   The Assured shall give immediate written notice to the Underwriters of any tuition fees loss as covered by this policy and protect the property from further damage that might result in extension of the peirod of interruption; and within 60 days following the date of damage to or destruction of the real or personal property insured, unless such time is extended in writing by the Underwriters, the Assured shall render to the Underwriters a proof of loss, signed and sworn to by the Assured, stating the knowledge and belief of the Assured as to the following:

a.    the time and origin of the property damage or destruction causing the interruption of business,

b.    the interest of the Assured and of all others in the business,

c.    all other contracts of insurance, whether valid or not, covering in any manner the loss insured against by this policy, and

d.    any changes in the title, nature, location, encumbrance or possession of said business since the issuing of this policy, and

e.    by whom and for what purpose any building insured and the several parts thereof were occupied at the tie of damage or destruction, and shall furnish a copy of all the descriptions and schedules in all policies and the actual amount of tuition fees value and loss claimed, accompanied by detailed exhibits of all values, costs and estimates upon which such amounts are based.

The Assured, as often as may be reasonably required, shall exhibit to any person designated by the Underwriters all that remains of any property insured and submit to examinations under oath by any person named by the Underwriters, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and palce as may be designated by the Underwriters or their representatives, and shall permit extracts and copies thereof to be made.

Subject otherwise to all terms, clauses and conditions, not in conflict with the foregoing, remaining unaltered.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: March 31, 1986          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Peter J. Durbalski_

ENDORSEMENT attaching to and forming part of Policy No. ISl 340

in the name of Diocese of Rockville Centre

Effective date of this endorsement is September 1, 1985          Endorsement No. 5

## DATA PROCESSING EXTRA EXPENSE EXTENSION

1.   **SUBJECT OF INSURANCE AND PERILS INSURED:** This Extension insures against the necessary Extra Expense, as hereinafter defined, incurred by the Assured in order to continue as nearly as practicable the normal operation of its business, immediately following damage to or destruction of the data processing system including equipment and component parts thereof and data processing media therefor, owned, leased, rented or under the control of the Assured, as a direct result of all risks of physical loss or damage, but in no event to exceed the amount indicated in the "Declarations."

This Extension includes the actual loss as covered hereunder, sustained during the period of time, hereinafter defined, (1) when as a direct result of a peril insured against the premises in which the property is located is so damaged as to prevent access to such property or (2) when as a direct result of a peril insured against, the air conditioning system or electrical system necessary for the operation of the data processing equipment is so damaged as to reduce or suspend the Assured's ability to actually perform the operations normally performed by the data processing system.

2.   **MEASURE OF RECOVERY:** If the above described property is destroyed or so damaged by the perils insured against occurring during the term of this Extension so as to necessitate the incurrence of Extra Expense (as defined in this Extension), Underwriters shall be liable for the Extra Expense so incurred, not exceeding the actual loss sustained, for not exceeding such length of time, hereinafter referred to as the "period of restoration," commencing with the date of damage or destruction and not limited by the date of expiration of this Extension, as shall be required with the exercise of due diligence and dispatch to repair, rebuild, or replace such part of said property as may be destroyed or damaged.

It is further agreed that this extension in coverage shall not operate to increase the Underwriters limits of liability hereunder.

3.   **EXTRA EXPENSE DEFINITION:** The term "Extra Expense" wherever employed in this Extension is defined as the excess (if any) of the total cost during the period of restoration of the operation of the business over and above the total cost of such operation that would normally have been incurred during the same period had no loss occurred; the cost in each case to include expense of using other property or facilities of other concerns or other necessary emergency expenses. In no event, however, shall Underwriters be liable for loss of profits or earnings resulting from diminution of business, nor for any direct or indirect property damage loss insurable under Property Damage policies, or for expenditures incurred in the purchase,

B-5003/June 83                    Page 1 of 3

construction, repair or replacement of any physical property unless incurred for the purpose of reducing any loss under this Extension not exceeding, however, the amount in which the loss is so reduced. Any salvage value of property so acquired which may be sold or utilized by the Assured upon resumption of normal operations, shall be taken into consideration in the adjustment of any loss hereunder.

4.    **EXCLUSIONS:** It is a condition of the insurance that Underwriters shall not be liable for Extra Expense incurred as a result of:

A.    Any local or State ordinance or law regulating construction or repair of buildings,

B.    The suspension, lapse or cancellation of any lease, license, contract or order;

C.    Interference at premises by strikers or other persons with repairing or replacing the property damaged or destroyed or with the resumption or continuation of the Assured's occupancy;

D.    Loss or destruction of accounts, bills, evidence of debt, valuable papers, records, abstracts, deeds, manuscripts or other documents except as they may be converted to data processing media form and then only in that form;

E.    Loss of or damage to property rented or leased to others while away from the premises of the Assured;

F.    Error in machine programming or instructions to machine;

G.    Inherent vice, wear, tear, gradual deterioration or depreciation;

H.    Any dishonest, fraudulent or criminal act by the Assured, a partner therein or an officer, director or trustee thereof, whether acting alone or in collusion with others;

I.    Damage due to mechanical failure, faulty construction, error in design unless fire or explosion ensues, and then only for loss, damage, or expense caused by such ensuing fire or explosion;

J.    Short circuit, blow-out, or other electrical disturbance, other than lightning, within electrical apparatus, unless fire or explosion ensues and then only for loss, damage or expense caused by such ensuing fire or explosion;

K.    Delay or loss of market;

L.    War risks or nuclear risks as excluded in the Policy to which this Extension is attached.

B-5003/June 83                              Page 2 of 3

5. **RESUMPTION OF OPERATIONS:** As soon as practicable after any loss the Assured shall resume complete or partial business operations of the insured property and, in so far as practicable, reduce or dispense with such additional charges and expenses as are being incurred.

6. **INTERRUPTION BY CIVIL AUTHORITY:** This Policy is extended to include necessary Extra Expense incurred by the Assured as covered hereunder, during the length of time, not exceeding two consecutive weeks, when as a direct result of damage to or destruction of property adjacent to the premises herein described by the peril(s) insured against, access to such described premises is specifically prohibited by order of civil authority.

7. **DEFINITIONS:** The term "Normal" wherever used in this Extension shall mean: The condition that would have existed had no loss occurred.

8. **DEDUCTIBLE:** Each and every loss occurring hereunder shall be adjusted separately and from the amount of each such loss when so adjusted the amount indicated in PART I (AGGREGATE AGREEMENT) 2) shall be deducted.

All other terms and conditions of this Policy not in conflict herewith remain unchanged.

Dated: March 31, 1986        INTERNATIONAL SPECIAL RISK SERVICES, INC.

By *Peter J Durbalski*

B-5003/June 83            Page 3 of 3

ENDORSEMENT attaching to and forming part of Policy No. ISL 3401

in the name of Diocese of Rockville Centre

Effective date of this endorsement is September 1, 1985          Endorsement No. 4

### DATA PROCESSING SYSTEM EQUIPMENT EXTENSION

1. **PROPERTY COVERED:** Data processing system including equipment and compo-
   nent parts thereof owned by the Assured or leased, rented or under the control of
   the Assured.

2. **PROPERTY EXCLUDED:**

   A.  Active data processing media which is hereby defined as meaning all
       forms of converted data and/or program and/or instruction vehicles
       employed in the Assureds data processing operation;

   B.  Accounts, bills, evidences of debt, valuable papers, records, abstracts,
       deeds, manuscripts, or other documents;

   C.  Property rented or leased to others while away from the premises of the
       Assured.

3. **PERILS INSURED:** Insures against all risks of direct physical loss or damage to the
   property covered, except as hereinafter provided.

4. **PERILS EXCLUDED:** This Extension does not insure against loss, damage, or
   expense caused directly or indirectly by:

   A.  Inherent vice, wear, tear, gradual deterioration, depreciation or vermin;

   B.  Any dishonest, fraudulent or criminal act by an Assured, a partner
       therein or an officer, director or trustee thereof, whether acting alone
       or in collusion with others;

   C.  Dryness or dampness of atmosphere, extremes of temperature, corrosion,
       rust unless directly resulting from physical damage to the data proces-
       sing system's air conditioning facilities caused by a peril not excluded by
       the provisions of this Extension;

   D.  Any interruption in electric power supply by power surge or brown out
       originating more than one hundred (100) feet away from the building
       containing the property covered;

   E.  Delay or loss of market;

B-5001/Sept 83                     Page 1 of 2

    **F.**    War risk or nuclear risks as excluded in the Policy to which this Extension is attached.

**5.**    **VALUATION:**  Replacement Cost – The Underwriters shall not be liable beyond the actual retail replacement cost of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated on the basis of the actual cash retail replacement cost of property similar in kind to that insured at the place of and immediately preceding the time of such loss or damage, but in no event to exceed the limit of liability stipulated in the "Declarations."

**6.**    **DIFFERENCE IN CONDITIONS:**  It is a condition of this Insurance that the Assured shall file with Arthur J. Gallagher & Co. a copy of any lease or rental agreement pertaining to the property insured hereunder insofar as concerns the lessors' liability for loss or damage to said property, and coverage afforded hereunder shall be only for the difference in conditions between those contained in said lease or rental agreement and the terms of this Extension.  The Assured agrees to give the Underwriters thirty days notice of any alteration, cancellation or termination of the above mentioned lease or rental agreement pertaining to the lessors' liability.

Subject otherwise to all terms, clauses and conditions as heretofore.

Dated: March 31, 1986            INTERNATIONAL SPECIAL RISK SERVICES, INC.

                                By *Peter J Durbalski*

ENDORSEMENT attaching to and forming part of Policy No. ISL 3401

in the name of Diocese of Rockville Centre

Effective date of this endorsement is September 1, 1985              Endorsement No. 3

## DATA PROCESSING MEDIA EXTENSION

1.    **PROPERTY INSURED:** Active data processing media, being property of the Assured or property of others for which the Assured may be liable.

2.    **PROPERTY EXCLUDED:** This Policy does not insure accounts, bills, evidences of debt, valuable papers, records, abstracts, deeds, manuscripts or other documents except as they may be converted to data processing media form, and then only in that form, or any data processing media which cannot be replaced with other of like kind and quality.

3.    **PERILS INSURED:** This Extension insures against all risks of direct physical loss or damage to the property covered, except as hereinafter provided.

4.    **PERILS EXCLUDED:** This Extension does not insure against loss, damage, or expense resulting from or caused directly or indirectly by:

   A.    Any interruption in electric power supply by power surge or brown out originating more than one hundred (100) feet away from the building containing the property insured.

   B.    Dryness or dampness of atmosphere, extremes of temperature, corrosion, rust unless directly resulting from physical damage to the data processing system's air conditioning facilities caused by a peril not excluded by the provisions of this Extension;

   C.    Delay or loss of market;

   D.    Inherent vice, wear, tear, gradual deterioration, depreciation or vermin;

   E.    Any dishonest, fraudulent or criminal act by an Assured, a partner therein or an officer, director or trustee thereof, whether acting alone or in collusion with others;

   F.    War risk or nuclear risks as excluded in the Policy to which this Extension is attached.

B-5002/Sept 83                         Page 1 of 2

5. **VALUATION:** The Underwriters shall not be liable beyond the actual reproduction cost of the property; if not replaced or reproduced, blank value of media; all subject to the applicable limit of liability stated in the "Declarations."

6. **DEFINITIONS:** The term "active data processing media" wherever used in this policy shall mean all forms of converted data and/or program and/or instruction vehicles employed in the Assured's data processing operation, except all such **UNUSED** property.

Subject otherwise to all terms, clauses and conditions as heretofore.

Dated: March 31, 1986       INTERNATIONAL SPECIAL RISK SERVICES, INC.

By *Peter D Durbalski*

B-5002/Sept 83                    Page 2 of 2

**ENDORSEMENT attaching to and forming part of Policy No. ISL 3401**

**in the name of Roman Catholic Diocese of Rockville Centre**

**Effective date of this endorsement is September 1, 1985**          **Endorsement No. 2**

IT IS AGREED that the first period of insurance instalment premium is $$792,000.00 part of $990,000.00, and future premium instalments will be based upon the full updated information given to the Underwriters by the Assured sixty (60) days prior to each anniversary, being September 1 at which time the premium to be charged for the forthcoming period of insurance will be adjusted accordingly by Underwriters.

Subject otherwise to all terms, clauses and conditions as heretofore.

Dated: March 31, 1986          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By *Peter J Durbalski*

7000/June 83

ENDORSEMENT attaching to and forming part of Policy No. ISL 3401

in the name of Roman Catholic Diocese of Rockville Centre

Effective date of this endorsement is September 1, 1985          Endorsement No. 1

## ERRORS & OMISSIONS

It is agreed that Section II Agreement C is amended to include the following:

The Underwriters agree, subject to the terms and conditions hereof, to indemnify the Assured (as herein defined) against any claim or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as trustee, director or council member in a diocesan connected entity.

It is further agreed:

1.   There shall be no liability hereunder for any claim made against the Assured for wrongful act, error or omission committed or alleged to have been committed prior to October 1, 1976, (hereinafter referred to as the "Retroactive Date".)

2.   In the event of non-renewal or termination of this Insurance, then the Insurance shall extend to apply to claims made against the Assured during the twelve (12) calendar months following immediately upon such expiration or termination, but only for wrongful act, error or omission, committed or alleged to have been committed between the Retroactive Date and such expiration or termination.

For the purposes of this endorsement the unqualified word "Assured" shall mean the Assured named in the declarations and as further defined in General Insurance Agreement II including all persons who were, now are or shall be appointed or elected trustee, director or council member in any parishes, schools, cemeteries, and other agencies or directly connected organizations of the diocese, and any heir, executor, administrator, assign or legal representative of said person in the event of their death or incapacity.

Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:  March 31, 1986          INTERNATIONAL SPECIAL RISK SERVICES, INC.

B-4000/August 83          By  *Peter J. Derbalski*

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVER NOTE PROVISIONS (FORM SL/COS/CN)

| ITEM | | NUMBER | **IC O** | **5239** |
|---|---|---|---|---|

**1**

*Name of Assured* Roman Catholic Diocese of Rockville Centre and all Legal
Entities Therein Over Which the Same Central Authority Appoints or Controls
the Appointment of the Board of Trustees or Similar Body and Exercises Direct,
Complete and Active Control Over the Finances, Properties, Operations and Activities
50 North Park Avenue
Rockville Centre, New York 11570

**2**

EFFECTIVE  ☒ 12:01 A.M.   BOTH DAYS AT
FROM        ☐ 12:00 NOON  STANDARD TIME        September 1, 1985    TO    September 1, 1988

**3**

| | NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|---|
| Acting upon your instruction, we have effected the insurance with: | Excess Ins Co Ltd | 6.16% |
| | Sphere Drake Ins PLC | 12.32% |
| | | 18.48% |

**4**

AMOUNT                    COVERAGE                         RATE                PREMIUM

Hereon: 18.48% Part of 100% of 80% of:     September 1, 1985/86:  $792,000.00

Subject to the same forms, terms,              Part of:            $990,000.00
conditions and endorsements as more         Hereon:              $146,361.60
particularly set forth in Cover
Note NO ISL 3401                             September 1, 1986/87:  To Be Determined

                                             September 1, 1987/88:  To Be Determined

AUDIT                                                          TOTAL CHARGED _____

**5**

SPECIAL CONDITIONS

**6**

International Special Risk Services, Inc.

By *Peter J. Durbalski*

Eason Printing Co. Chicago

ENDORSEMENT attaching to and forming part of Policy No. ICO 5239

in the name of Diocese of Rockville Center, New York

Effective date of this endorsement is September 1, 1985          Endorsement No. C

It is agreed effective 1st September, 1985 Type is amended to include:-

EMPLOYEE BENEFIT LIABILITY

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: September 24, 1986

INTERNATIONAL SPECIAL RISK SERVICES, INC.

By *Peter J. Durkalski*

**ENDORSEMENT attaching to and forming part of Policy No. ICO 5239**

.n the name of Diocese of Rockville Center, New York

**Effective date of this endorsement is September 1, 1985        Endorsement No. B**

It is hereby agreed that effective 1st September, 1985 the 'SECURITY' is amended to read:

**HEREON        80%**

**SECURITY:        4.93% of order Excess Ins. Co. Ltd.**

**12.32% of order Sphere Drake Ins. Co. PLC**

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: September 29, 1986

INTERNATIONAL SPECIAL RISK SERVICES, INC.

By   *Peter J. Durholski*

ADDITIONAL PREMIUM:

RETURN PREMIUM:          $     924.00 (Hereon)

ENDORSEMENT attaching to and forming part of Policy No. ICo 5239

in the name of Roman Catholic Diocese of Rockville Centre, et al.

Effective date of this endorsement is September 1, 1985          Endorsement No. A

It is hereby understood and agreed that effective September 1, 1985 the loss
limitations in respect of the Self-Insured Fund and within the limits of this
insurance are amended as follows:-

|  |  |  |
|---|---|---|
| Auto Liability | $ 100,000 | any one occurrence C.S.L. |
| W.C.A./E.L./O.D: | $ 100,000 | any one occurrence |
| Return Premium: | $   5,000 |  |

Hereon:     18.48%

$5000 \times 80\% \times 18.48\% = 739.20$

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED:  March 31, 1986          INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Peter J Durbalski_

**U.S.A.**

### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—
### PHYSICAL DAMAGE—DIRECT

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

This policy does not cover any loss or damage arising directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination however such nuclear reaction, nuclear radiation or radioactive contamination may have been caused *NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that Fire.

*NOTE.—If Fire is not an insured peril under this policy the words from "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

7/5/59
N.M.A. 1191                                                        EASON PRINTING COMPANY

### SERVICE OF SUIT CLAUSE (U.S.A.)

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association.)*

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder. Underwriters hereon, at the request of the insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon

Hancock, Rothert & Bunshoft, 100 Bush, San Francisco, CA 94104

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

N.M.A. 772                                                EASON PRINTING COMPANY

**U.S.A.**

**NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)**

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

*For attachment to insurances of the following classifications in the U. S. A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

*Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),*

*not being insurances of the classifications to which the Nuclear Incident Exclusion Clause —Liability—Direct (Limited) applies.*

**This policy\***

does not apply:—

**I.** Under any liability Coverage, to injury, sickness, disease, death or destruction

    **(a)** with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    **(b)** resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**II.** Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

**III.** Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

    **(a)** the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

    **(b)** the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    **(c)** the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

**IV.** As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", special nuclear material" and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material, (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

    **(a)** any nuclear reactor,

    **(b)** any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    **(c)** any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof or more than 250 grams of uranium 235,

    **(d)** any structure, basin, excavation, premises or place prepar . .r used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

\*Note:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17-3-60
N.M.A. 1256

Bauer Printing Company

## COMBINED PROPERTY, CASUALTY AND CRIME INSURANCE

| | | |
|---|---|---|
| **SECTION I** | – | **PROPERTY INSURANCE** |
| Agreement A | – | Building & Contents |
| Agreement B | – | Automobile |
| | | |
| **SECTION II** | – | **CASUALTY INSURANCE** |
| Agreement C | – | General Liability |
| Agreement D | – | Host and/or Liquor Liability |
| Agreement E | – | Automobile Liability |
| Agreement F | – | Workers' Compensation and/or Employer's Liability and/or Occupational Disease |
| | | |
| **SECTION III** | – | **CRIME COVERAGE** |
| Agreement G | – | Money and Securities (within premises) |
| Agreement H | – | Money and Securities (outside premises) |
| Agreement I | – | Commercial Blanket Bond |

## DECLARATIONS

**ASSURED:**

Roman Catholic Diocese of Rockville Centre and All Legal Entities Therein Over Which the Same Central Authority Appoints or Control the Appointment of the Board of Trustees or Similar Body and Exercises Direct, Complete and Active Control Over the Finances, Properties, Operations and Activities
50 North Park Avenue
Rockville Centre, New York 11570

**ADDRESS:**

50 North Park Avenue
Rockville Centre, New York 11570

**LIMITS OF LIABILITY:**

See Part I for Aggregate Agreement;
Part II for Specific Excess Agreement.

**PREMIUM:**

Annual Premium SEE ENDORSEMENT #2 ATTACHED

**TERM OF INSURANCE**

Effective from September 1, 1985 to September 1, 1988
BOTH DAYS at 12:01 A.M. Standard Time
at Assured's Address shown above.

B-0011/June 83                    Page 1 of 20

## PART I  (AGGREGATE AGREEMENT)

**LIMITS OF LIABILITY:**  The Underwriters' Limits of Liability under this Agreement shall be only for the Excess of Loss over

An aggregate Loss Fund of $4,500,000, ultimate net loss (hereinafter referred to as "Assured's Loss Fund").  As respects any one loss and/or occurrence the Assured's Loss Fund shall not be charged with

1.    any amount in excess of $100,000 Ultimate Net Loss as respects any one loss and/or occurrence under Sections I, II or III or any combination thereof, or

2.    the first $100 of any loss arising under Section I (except Automobile Comprehensive Perils) and Section III

and then in excess of the above amounts up to $1,000,000 ultimate net loss in the aggregate in any one period of insurance in respect of the Assured's Loss Fund.

**LOSS FUND ADJUSTMENT:**  The amount of the Assured's Loss Fund applies to the first period of insurance of this policy and is subject to review and change for each period of insurance thereafter.

## PART II  (SPECIFIC EXCESS AGREEMENT)

**LIMITS OF LIABILITY:**  The Underwriters' Limits of Liability under this Agreement shall be only for the excess of loss over $100,000 ultimate net loss each and every loss and/or occurrence up to a further $400,000 ultimate net loss each and every loss and/or occurrence, under Section I, II or III or any combination thereof.

## GENERAL INSURANCE AGREEMENTS

## I.    PERIOD OF INSURANCE

The words "period of insurance" shall be understood to mean any one of the following periods:

Period I      - September 1, 1985 to September 1, 1986
Period II     - September 1, 1986 to September 1, 1987
Period III    - September 1, 1987 to September 1, 1988

## II.   NAME OF ASSURED

It is agreed that The Roman Catholic Diocese of Rockville Centre, et al. owns and/or operates Parishes, Schools, Cemeteries and Other Agencies under specific Names, and it is the intention of this Insurance to cover such Parishes, Schools, Cemeteries and Other Agencies or directly connected organizations as Named Assureds.

It is agreed that the unqualified word "Assured" wherever used in this Insurance includes not only the Named Assured but also –

1.  any official, trustee or employee of the Named Assured while acting within the scope of his duties as such, and any person, organization, trustee or estate to whom the Named Assured is obligated by virtue of written contract or agreement to provide insurance such as is offered by this Insurance, but only in respect to operations by or on behalf of the Named Assured;

2.  under Section II Agreement E, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the Named Assured or with his permission, and any official of the Named Assured with respect to the use of non-owned automobile in the business of the Named Assured.  This Insurance with respect to any person or organization other than the Named Assured does not apply;

    (a)  to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any accident arising out of the operation thereof;

    (b)  to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer;

    (c)  with respect to any hired automobile, to the owner or a lessee thereof, other than the Named Assured, nor to any agent or employee of such owner or lessee;

    (d)  with respect to any non-owned automobile, to any official or employee if such automobile is owned by him or a member of the same household.

The inclusion hereunder of more than one Assured shall not operate to increase Underwriters' Limits of Liability.

## III.   TERRITORY

This Insurance applies Worldwide.

B-0011/June 83                    Page 3 of 20

IV.  In calculating the amount of Ultimate Net Loss under Part I (Aggregate Agreement) and Part II (Specific Excess Agreement) this Insurance is deemed to have the following maximum limits which will apply for all purposes to the Assured's Loss Fund and to the Specific Excess Agreement:

(a) $  500,000    in the aggregate annually as respects any Flood loss under Section I.

(b) $  200,000    any one occurrence Combined Single Limit Public Liability/Property Damage under Section II Agreements C, D and E.

(c) $   25,000    each and every loss under Section III Agreement G and H..

(d) $   25,000    each and every loss under Section III Agreement I.

(e) $  150,000    any one occurrence under Section II Agreement F Workers' Compensation and/or Employers' Liability and/or Occupational Disease.

(f) $    5,000    any one person/$100,000 any one loss as respects Automobile Medical Payments under Section I Agreement B.

(g) $    5,000    any one person/$100,000 any one loss as respects other than Automobile Medical Payments under Section II Agreement C. (Coverage excludes payments to or for students).

(h) $  200,000    any one claim and in the aggregate annually as respects Errors and Omissions as respects Errors and Omissions provided by Endorsement No. 1 attached and School Board Liability.

(i) $   20,000    any one priest, each and every loss as respects Priests' Personal Effects.

(j) $  100,000    each and every loss as respects Extra Expense/Tuition Fees.

(k) $  100,000    each and every loss as respects Towing Expenses.

V.  SERVICE ORGANIZATION

This Insurance is issued to the Assured on the express condition that the Assured undertakes to utilize at all times the services of Gallagher Bassett of New York, Inc., 591 Stewart Avenue, Garden City, NY 11530-3287. This Service Organization shall perform the following duties:

(a)   Discharge the Assured's obligations under the terms of this Agreement by administering a complete claims handling program.

(b)   Maintain accurate records of all reported claims and details incident to loss and expense payments.

(c)   Furnish loss prevention consulting services.  Recommend loss control programs for implementation by the assured and monitor loss prevention activities.

(d)   Furnish monthly claims records on an approved form.

The acceptance of these services shall be a condition precedent to any liability which may attach to the Underwriters in accordance with the terms and conditions of this Insurance.

## SECTION I – PROPERTY INSURANCE

### INSURING AGREEMENTS

**AGREEMENT A – BUILDING AND CONTENTS:** Underwriters agree, subject to the limitations, terms and conditions of this Insurance, to indemnify the Assured for all risks of physical loss or damage to All Real or Personal Property of every kind and description wherever located occurring during the period of this Insurance.

**AGREEMENT B – AUTOMOBILE:** Underwriters agree, subject to the limitations, terms and conditions of this Insurance, to indemnify the Assured for loss or damage to Automobiles owned by the Assured or on which the Assured has an obligation to provide adequate insurance, wherever located, against All Risks of Direct Physical Loss, including Collision of the Automobile with another object.

## SECTION I – DEFINITIONS

1.   **PROPERTY OF THE ASSURED:** The term "Assured's Property" shall mean All Real and Personal Property, including leasehold improvements or betterments which the Assured owns, property which the Assured holds on consignments or agrees to insure by any contractual agreement normal to its operations.

2.   **AUTOMOBILE:** The term "Automobile" shall mean any motor vehicle, trailer or semi-trailer, including its equipment and any other equipment permanently attached thereto.  The word "Trailer" shall include semi-trailer.

3.   **ULTIMATE NET LOSS:** The words "Ultimate Net Loss" in respect of this Section shall be understood to mean the loss sustained by the Assured after making deductions for all recoveries and salvages.

4.   **EARTHQUAKE:** If more than one earthquake shock shall occur within any period of seventy-two (72) hours during the term of this Insurance, such earthquake shock shall be deemed to be a single earthquake within the meaning hereof.

## SECTION I - EXCLUSIONS

**WITH REGARD TO ALL PROPERTY, THIS INSURANCE DOES NOT INSURE AGAINST:**

1.   Loss by moth, vermin, termites or other insects; wear, tear or gradual deterioration; rust, wet or dry rot or mould.

2.   Loss or damage caused by

   (a)   Radioactive or fissionable material.
   (b)   Contamination, other than by (a) above, unless directly resulting from Fire or Extended Coverage perils.

3.   Loss resulting from loss of use (except such loss of use coverage as is afforded under a Standard Automobile Policy in respect of Agreement B above), delay or loss of markets.

4.   Breakdown of machinery and/or boiler explosion, but not excluding loss resulting therefrom.

5.   Loss resulting from dampness of atmosphere or variation in temperature unless caused by the perils of Fire and Extended Coverage.  This exclusion shall not be deemed to exclude loss resulting from freezing.

6.   Loss of electrical appliances or devices of any kind, including wiring, arising from electrical injury or disturbance to the said electrical appliances or devices or wiring from artificial causes unless fire or explosion ensues, and then only for direct loss or damage caused by such ensuing fire or explosion.

**WITH REGARD TO ALL REAL PROPERTY, THIS INSURANCE DOES NOT INSURE AGAINST:**

   Loss by normal settling, normal shrinkage or normal expansion in foundations, walls, floors or ceilings.

**WITH REGARD TO PERSONAL PROPERTY, THIS INSURANCE DOES NOT INSURE AGAINST:**

1.   Loss by mechanical derangement, inherent vice or latent defect.

2.   Loss resulting from processing or faulty workmanship, unless fire and/or explosion ensues, and then only for direct loss or damage caused by such ensuing fire or explosion.

3.  Loss resulting from shrinkage, evaporation, loss of weight or leakage, unless such loss is caused directly by fire or the combating thereof, lightning, windstorm, hail, explosion, strike, riot or civil commotion, aircraft, vehicles, breakage of pipes or apparatus, sprinkler leakage, vandalism and malicious mischief, theft or attempted theft.

4.  Inventory shortage, mysterious disappearances or loss resulting from any kind of infidelity or dishonesty on the part of the Assured or any of his employees, except from the perils covered in Section III (Money and Securities - Broad Form) of this Insurance.

## PROPERTY EXCLUDED FROM COVERAGE HEREUNDER:

Animals, aircraft, standing timber, growing crops, accounts, bills, currency, money, notes, securities, deeds, evidences of debt, and valuable papers.

### SECTION I - CONDITIONS

1.  **VALUATION:** The Underwriters shall not be liable for loss or damage in excess of:

    A.  (Real and Personal Property - other than automobile) - the cost to repair, rebuild or replace the destroyed or damaged property in a condition equal to but not superior to or more extensive than its condition when new.  If the Assured decides to replace destroyed or damaged property on another site, cost of such site is not included hereunder.

    It is not a requirement hereunder that the Assured repair, rebuild or replace the destroyed or damaged property in order to collect for loss or damage covered by this Insurance.

    B.  (Automobile) - the actual cash value of the automobile at the time of loss.

2.  **DEBRIS REMOVAL:**  This Insurance covers the expense of removal from the premises containing the property insured hereunder of debris remaining after any loss hereby insured against, except that there shall be no liability assumed for the expense of removal of any foundations.

3.  **REMOVAL CLAUSE:**  This Insurance covers the expense and damage occasioned by removal from the premises endangered by the perils insured against wherever such property is located or removed for preservation.

4.  **ARCHITECTS FEES:**  This Insurance covers the additional assessment involving architects' fees for consultations arising from losses resulting from an insured peril.  Fees are limited to seven (7%) percent of replacement cost.

5. **APPRAISAL:** In the event the Assured and Underwriters are unable to agree as to the amount necessary to rebuild, repair or replace the damaged or destroyed property or the actual amount of reimbursement to be paid, each party shall name a competent and disinterested appraiser and the two so chosen shall, before proceeding further, appoint a competent and disinterested umpire. The appraisers together shall obtain reconstruction estimates, and calculate the amounts of reimbursement due, and failing to agree, shall submit their differences to the umpire.

The award, in writing, duly verified by any two shall determine the points in question. Both parties shall pay the cost of their own appraisers and equally pro rate the cost of the umpire.

6. **CIVIL AUTHORITY CLAUSE:**   Notwithstanding anything contained in this Insurance, property which is insured under this Insurance is also covered against the risk of damage or destruction by civil authority during a conflagration and for the purpose of retarding the same; provided that neither such conflagration nor such damage or destruction is caused or contributed to by war, invasion, revolution, rebellion, insurrection or other hostilities or warlike operations.

7. **ORDINANCE DEFICIENCY CLAUSE:**   Notwithstanding anything contained herein to the contrary, the Underwriters shall be liable also for the loss occasioned by the enforcement of any state or municipal law, ordinance or code, which necessitates, in repairing or rebuilding, replacement of material to meet such requirements. If demolition is required to comply with such enforcement Underwriters shall also be liable for such additional costs.

8. **EXPENSE TO REDUCE OR PREVENT LOSS:**  This Insurance also covers such expenses as are necessarily incurred for the purpose of reducing or preventing any loss under this Insurance not exceeding, however, the amount by which the loss under this Insurance is thereby reduced.

## SECTION II – CASUALTY INSURANCE

### INSURING AGREEMENTS

**AGREEMENT C – GENERAL LIABILITY:**   Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the Named Assured under contract or agreement, for damages direct or consequential, and expenses, all as more fully defined by the term "ultimate net loss", on account of personal injuries, including death at any time resulting therefrom, suffered or alleged to have been suffered by any person or persons (excepting employees of the Assured injured in the course of their employment); and/or damage to or destruction of property or the loss of use thereof; arising out of any occurrence happening during the period of Insurance.

B-0011/June 83                    **Page 8 of 20**

**AGREEMENT D - HOST AND/OR LIQUOR LIABILITY:** In accordance with the provisions of the above Agreement C, the Underwriters agree that indemnity for the Assured extends to liability for the sale or distribution of alcoholic beverages by reason of any local, state or Federal Liquor control laws now in force and all laws amendatory thereto; and that such extension includes indemnity for loss of means of support.

**AGREEMENT E - AUTOMOBILE LIABILITY:** Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the Named Assured under contract or agreement, for damages direct or consequential, and expenses, all as more fully defined by the term "ultimate net loss", on account of personal injury including death at any time resulting therefrom, suffered or alleged to have been suffered by any person or persons (excepting employees of the Assured injured in the course of their employment); and/or damage to or destruction of property or the loss of use thereof, arising out of the ownership, maintenance or use of any automobile and occurring during the period of this Insurance.

**AGREEMENT F - WORKERS' COMPENSATION, EMPLOYER'S LIABILITY AND OCCU-PATIONAL DISEASE -**

**Coverage A - Workers' Compensation -** The Underwriters hereby agree to pay promptly when due all compensation and other benefits required of the Assured by the workers' compensation law as a result of injury (1) by accident occurring during the period of this Insurance, or (2) by disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the Assured, to conditions causing the disease occurs during the period of this Insurance.

**Coverage B - Employer's Liability -** The Underwriters hereby agree to pay on behalf of the Assured all sums which the Assured shall become legally obligated to pay as damages because of personal injury by accident or disease, including death at any time resulting therefrom,

(a) sustained in the United States of America, its territories or possessions, or Canada by any employee of the Assured arising out of and in the course of his/her employment by the Assured, or

(b) sustained while temporarily outside the United States of America, its territories or possessions, or Canada by any employee of the Assured who is a citizen or resident of the United States or Canada arising out of and in the course of his/her employment by the Assured; but this insurance does not apply to any suit brought in or any judgment rendered by any court outside the United States of America, its territories or possessions, or Canada or to an action on such judgment wherever brought,

as a result of injury (1) by accident occurring during the period of this Insurance, or (2) by disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the Assured, to conditions causing the disease occurs during the period of this Insurance.

**SELF-INSURERS STATUS** - The Assured agrees to duly qualify as a self-insurer by compliance with the provisions of the Workers' Compensation and/or Occupational Disease Law respecting self-insurance in the State of New York and shall continue to maintain said status throughout the period of this Insurance provided; however, Underwriters shall not be relieved of their obligations hereunder because of a breach of this condition until (1) the Assured becomes insured with respect to his Workers' Compensation and/or Occupational Disease Liability or (2) the expiration of a period of thirty days after date of the notice served upon the Assured by the Industrial Commission terminating his status as a self-insurer which ever occurs first.

If any employee is injured while engaged in the business operations of the Assured outside the State of New York this Insurance shall apply to the Assured on account of such injuries irrespective of whether such liability is greater than it would have been had the injuries been sustained within the State of New York.

## SECTION II - DEFINITIONS

1. **PERSONAL INJURIES** - The term "personal injuries" wherever used herein, shall mean:

(a) Bodily Injury, Mental Injury, Mental Anguish, Shock, Sickness, Disease, Disability, False Arrest, False Imprisonment, Wrongful Eviction, Detention, Malicious Prosecution, Discrimination, Humiliation, Invasion of Right of Privacy, Libel, Slander or Defamation of Character; also Piracy and any Infringement of Copyright or of Property, Erroneous Service of Civil Papers, Violation of Civil Rights, Assault and Battery, and Disparagement of Property.

(b) Injury(ies) arising out of the rendering of or failure to render Professional medical services to any person or persons (other than employees of the Assured injured during the course of their employment) by any duly qualified medical practitioner, or nurse, or technician employed by or acting on behalf of the Assured, provided such liability is based solely upon error, negligence or mistake committed during the period of this Insurance.

2. **PROPERTY DAMAGE** - The term "property damage" wherever used herein shall mean damage to or destruction or loss of property, excluding, however, damage to property owned by the Named Assured, but including damage to property of others in the care, custody or control of the Named Assured or property which is purchased by the Named Assured under a contract which provides that the title remain with the seller until payments have been completed, the liability of Underwriters being limited to the amount of payments outstanding.

3. **OCCURRENCE** - The term "occurrence" wherever used herein shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, or

damage to property during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one location shall be deemed one occurrence.

4.   **ULTIMATE NET LOSS** - The term "ultimate net loss" shall mean the total sum which the Assured becomes obligated to pay by reason of personal injury or property damage claims, either through adjudication or compromise, after making proper deductions for all recoveries and salvages, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest, expenses for doctors, lawyers, nurses and investigators and other persons and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Named Assured's permanent employees.   Fees, charges and expenses for Gallagher Bassett Insurance Service are specifically excluded, and are to be paid by the Assured.

5.   **(a) WORKERS' COMPENSATION LAW** - Applicable to Insuring Agreement F - The unqualified term "workers' compensation law" means the workers' compensation law and any occupational disease law of the state designated in the 'SELF-INSURERS STATUS', but does not include those provisions of any such law which provide non-occupational disability benefits.

**(b)   STATE** - The word "state" means any State or Territory of the United States of America and the District of Columbia.

**(c)   PERSONAL INJURY BY ACCIDENT; PERSONAL INJURY BY DISEASE** - The contraction of disease is not an accident within the meaning of the word "accident" in the term "personal injury by accident" and only such disease as results directly from a personal injury by accident is included within the term "personal injury by accident".   The term "personal injury by disease" includes only such disease as is not included within the term "personal injury by accident".

**(d)   ASSAULT AND BATTERY** - Under Coverage B, assault and battery shall be deemed an accident unless committed by or at the direction of the Assured.

## SECTION II - EXCLUSIONS

**THIS INSURANCE DOES NOT APPLY -**

(a)   to liability of any Assured for assault and battery committed by or at the direction of such Assured except liability for Personal Injury or Death resulting from any act alleged to be assault and battery for the purpose of preventing injury to persons or damage to property;

(b)   except with respect to operations performed by independent contractors, to the ownership, maintenance or use, including loading or unloading of aircraft and watercraft over 25 feet in length;

(c)   to damage or destruction of property owned by the Assured.

(d)   Applicable to Insuring Agreement F -

   (i)   under Coverage B, to liability assumed by the Assured under any contract or agreement, but this exclusion does not apply to a warranty that work performed by or on behalf of the Assured will be done in a workmanlike manner;

   (ii)   under Coverage B, with respect to any employee employed in violation of law with the knowledge or acquiescence of the Assured or any executive officer thereof;

   (iii)   under Coverage B, to personal injury by disease unless prior to thirty-six months after the end of the policy period written claim is made or suit is brought against the Assured for damages because of such injury or death resulting therefrom;

   (iv)   under Coverage B, to any obligation for which the Assured or any carrier as his insurer may be held liable under the workers' compensation or occupational disease law of the state designated in the 'SELF-INSURERS STATUS', any other workers compensation or liability benefits law, or under any similar law.

## SECTION II - CONDITIONS

1.   **CROSS LIABILITY:** In the event of claims being made by reason of personal injuries and/or property damage suffered by any employee of one Assured herein for which another Assured herein is or may be liable, then this Insurance shall cover such Assured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Assured herein.   Nothing contained herein shall operate to increase the Underwriters' Limit of Liability as set forth herein.   The Underwriters agree to waive all rights of subrogation against all or any of the corporations or individuals comprising the Assured.

2.   **NOTICE OF OCCURRENCE:**   Whenever the Assured has information from which the Assured may reasonably conclude that an occurrence covered under Section II of this Insurance involves injuries or damages, notice shall be given to Gallagher Bassett of New York, Inc., 591 Stewart Avenue, Garden City, NY 11530-3287 as soon as practicable.   Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above firm of any occurrence.

3.   **TERMS OF POLICY CONFORMED TO STATUTE:**   Applicable to Insuring Agreement F - Under Coverage A the terms of this Policy which are in conflict with the provisions of the workers' compensation law are hereby amended to conform to such law.

B-0011/June 83                    Page 12 of 20

4. **COMMUTATION:** Applicable to Insuring Agreement F - Coverage A - Claims hereunder, not finally settled, for weekly or periodical payment for compensation to employees (or their dependents) as a result of death or injury shall be notified with full particulars by the Assured to the Underwriters within two years from the expiration date of this Insurance and the Underwriters may, if they so elect, then or at any time thereafter submit one or more of such claims to an Actuary or Appraiser, to be mutually appointed by the Assured and the Underwriters, and the Underwriters shall at their option pay a lump sum to be fixed by the Actuary or Appraiser, which payment shall constitute a full and final release of the Underwriters' liability for such claim or claims, provided however that such lump sum payment shall not constitute a full and final release of Underwriters' liability if subsequent to such lump sum payment any supplemental award is made increasing the amount of compensation benefits payable to the employee or his/her dependents and that any additional claim may then be recommuted at Underwriters' option and Underwriters may discharge any additional liability by another lump sum payment.

## SECTION III - CRIME INSURANCE

## INSURING AGREEMENTS

## AGREEMENT G - MONEY AND SECURITIES (COVERAGE WITHIN PREMISES):

Underwriters agree, subject to the limitations, terms and conditions of this Insurance, to indemnify the Assured for all loss caused by reason of theft, burglary, robbery, kidnapping, disappearance or destruction of any money or securities which may at any time be or believed by the Assured to be in or upon any premises occupied or used by the Assured or by any bank, trust company or safe deposit company. Such Insurance as is afforded by this Insurance also applies to deposits within a night depository safe provided by a bank or trust company on its premises for the use of its customers.

## AGREEMENT H - MONEY AND SECURITIES (COVERAGE OUTSIDE PREMISES):

Underwriters agree, subject to the limitations, terms and conditions of this Insurance, to indemnify the Assured for all loss caused by reason of the theft, robbery, kidnapping, disappearance or destruction of any money or securities (other than by fraud or connivance of the Assured's officers or employees) while in transit in the custody of the Assured's officers or employees anywhere, the liability of the Underwriters to commence at the moment when the person into whose hands the property may be delivered on behalf of the Assured receives the same and to continue until delivery thereof at the final destination.

## AGREEMENT I - COMMERCIAL BLANKET BOND:

Underwriters (hereinafter called "the Surety") agree, subject to the terms and conditions set forth herein, to indemnify the Assured (hereinafter called "the Employer") against any

loss of Money or other property real or personal (including that part of any inventory shortage which the Employer shall conclusively prove is caused by the dishonesty of any Employee or Employees) belonging to the Employer or in which the Employer has a pecuniary interest or for which the Employer is legally liable or held by the Employer in any capacity, whether the Employer is legally liable therefor or not, which the Employer shall during the term of this Insurance sustain or discover that they have sustained through larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, willful misapplication or other fraudulent or dishonest act or acts committed by any one or more of the Employees as defined, acting alone or in collusion with others.

## SECTION III – DEFINITIONS

**INSURING AGREEMENTS G AND H**

1.  **MONEY:** The term "Money" as used in this Insurance shall be deemed to mean currency, coin, bank notes, uncancelled and precancelled postage and unused postage in postage meters.

2.  **SECURITIES:** The term "Securities" shall be deemed to mean Federal Food Stamps, express, postal and bank money orders, postal notes, debentures, scrip, checks, warrants, transfers, coupons, demand and time drafts, bills of exchange, acceptances, promissory notes, certificates of deposits, certificates of stock, bonds, car trust certificates, interim receipts and certificates, warehouse receipts, bills of lading and all other instruments of a similar nature including mortgages upon real estate or upon chattels and upon interests therein, and assignments of such mortgages and instruments.

3.  It is understood and agreed that this Insurance covers money and securities of the Assured or as respects which the Assured is legally liable or held by it in any capacity, whether or not the Assured is liable for the loss thereof. If legal proceedings are taken against the Assured to enforce a claim for money and securities so held, the Assured shall immediately notify the Underwriters in writing.

4.  **EMPLOYEES:** The term "Employees" shall mean not only persons compensated by the Assured but also those directed by the Assured, and including those independent contractors and/or services which may be considered as usually performed by employees of the Assured.

5.  **THEFT:** The term "Theft" shall include "trick and device".

6.  **ULTIMATE NET LOSS:** The words "ultimate net loss" in respect of this Section shall be understood to mean the actual loss sustained by the Assured after making deductions for all recoveries and salvages.

**INSURING AGREEMENT I**

1.  **EMPLOYER:** The term "Employer" as used in this Insuring Agreement shall mean the Assured named in the Declarations and as further defined in General Insurance Agreement II.

2.  **EMPLOYEE OR EMPLOYEES:** The terms "Employee" or "Employees" as used in this Insuring Agreement shall be deemed to mean respectively one or more of the natural persons who on the effective date of this Insurance or at any other time during the term of this Insurance are in the regular service of the Employer in the ordinary course of the Employer's business and who are compensated by salary, wages and/or commission, and whom the Employer has the right to govern and direct at all times in the performance of such service, but not to mean brokers, factors, commission merchants, consignees, contractors or other agents or representatives of the same general character.

### SECTION III – EXCLUSIONS

**THIS INSURANCE DOES NOT APPLY UNDER INSURING AGREEMENTS G AND H**

(a)  to any fraudulent, dishonest or criminal act other than robbery or safe burglary or attempt thereat, committed by the Assured or by any officer, employee (except Brinks or Armored Car Employees): trustee or authorized representative of the Assured, whether acting alone or in collusion with others.

(b)  to forgery by whomsoever committed.

### SECTION III – CONDITIONS

1.  under **INSURING AGREEMENTS  G, H AND I**

Warranted free of all claims for losses not discovered within the term of this Insurance and for losses sustained and/or acts committed prior to October 1, 1976 (hereinafter called the "Retroactive Date") but with the understanding that in the event of (a) the expiration of this Insurance by reason of non-renewal, or (b) the termination of this Insurance as an entirety, as provided in General Condition 5, the Assured shall have twelve calendar months following the date of such expiration or termination in which to discover losses sustained between the Retroactive Date and the date of such expiration or termination.

Notwithstanding anything to the contrary contained herein it is understood and agreed that in the event of this Insurance being immediately succeeded by a similar Insurance with Underwriters at Lloyd's on which the Retroactive Date is October 1, 1976 the said succeeding insurance shall be deemed to be a renewal hereof and in consequence the discovery period provided herein shall not be operative.

2.    **under INSURING AGREEMENT I**

    (a)    Upon the discovery of any loss under this Insuring Agreement shall be treated as reinstated so as at all times to continue in force for the sum set forth herein notwithstanding any previous loss for which the Surety may have paid or be liable to pay hereunder provided however that in no event shall the Surety be liable under this Insurance for an amount greater than the limits of liability stated on account of any one loss or series of losses caused by the fraudulent or dishonest acts of any Employee or in which such Employee is concerned or implicated.

    (b)    In case any reimbursement be obtained or recovery be made by the Employer or by the Surety on account of any loss covered under this Insurance, the net amount of such reimbursement or recovery, after deducting the actual cost of obtaining or making the same, shall be applied to reimburse the Employer in full for that part if any, of such loss in excess of this Insurance, and the balance, if any, or the entire net reimbursement or recovery if there be no such excess loss, shall be applied to that part of such loss covered by this Insurance or, if payment shall have been made by the Surety, to its reimbursement therefor. The Employer shall execute all necessary papers and render all assistance not pecuniary to secure unto the Surety the rights provided for in this paragraph. The following shall not be reimbursement or recovery within the meaning of this paragraph: suretyship, insurance or reinsurance; also security or indemnity taken from any source by or for the benefit of the Surety.

    (c)    This Bond shall be deemed cancelled as to any Employee immediately upon discovery by the Employer, of any fraudulent or dishonest act on the part of such Employee; or at 12:01 A.M. Standard Time as aforesaid upon the effective date specified in a written notice served upon the Employer or sent by registered mail. Such date if the notice be served shall be not less than fifteen days after such service, or if sent by registered mail, not less than twenty days after the date borne by the sender's registry receipt.

**SECTION IV - GENERAL CONDITIONS**

1.    **PREMIUM PROVISION:**

    See Endorsement #2 Attached

2.    **SALVAGE AND RECOVERY CLAUSE:**

    All salvages, recoveries and payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto.

3. **INSPECTIONS, AUDIT AND VERIFICATION OF VALUES:**

The Underwriters or their duly authorized representatives shall be permitted at all reasonable times during continuance of this Insurance to inspect the premises used by the Assured and to examine the Assured's books or records so far as they relate to coverage afforded by this Insurance.

4. **RECORDS:**

It is hereby understood and agreed that the records and books as kept by the Assured shall be acceptable to Underwriters in determining the amount of loss or damage covered hereunder.

5. **DUE DILIGENCE CLAUSE:**

The Assured shall use due diligence and do and concur in doing all things reasonably practicable to avoid or diminish any loss of or damage to the property herein insured.

6. **CANCELLATION:**

This Insurance may be cancelled as of any anniversary date by either of the parties upon written notice to the other party, provided said notice is issued at least thirty (30) days prior to the said anniversary.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

7. **CURRENCY:**

The premium and losses under this Insurance are payable in United States Currency. Payment of premium shall be made to Arthur J. Gallagher & Co., 21600 Oxnard Street, Woodland Hills, CA 91367.

8. **BANKRUPTCY AND INSOLVENCY:**

In the event of the bankruptcy or insolvency of the Assured or any entity comprising the Assured, the Underwriters shall not be relieved of the payment of any claims hereunder because of such bankruptcy or insolvency.

9. **OTHER INSURANCE:**

If the Assured has other Insurance against loss covered by this Insurance the Underwriters shall be liable, under the terms of this Insurance, only as excess of coverage provided by such other Insurance, and no monies payable or collectible from such other Insurance shall accrue in the aggregate loss fund of this Insurance.

10. **MORTGAGE CLAUSE:**

The interest of any mortgagor on property covered hereunder is included as if a separate endorsement were attached hereto to the extent of the amount of mortgage as of the date of loss subject to the limits of liability set forth in this Insurance.

11. **CLAIMS:**

The Assured shall immediately notify Underwriters through Gallagher Bassett Services, Inc. by registered mail, of any occurrence, the cost of which is likely to result in payment by Underwriters under this Insurance. Underwriters shall have the opportunity to be associated with the Assured in defense of any claims, suits, or proceedings relative to an occurrence wherein the opinion of the Underwriters, their liability under this Insurance is likely to be involved, in which case the Assured and Underwriters shall cooperate to the mutual advantage of both.

12. **LOSS PAYMENTS:**

When it has been determined that Underwriters are liable under this Insurance, Underwriters shall thereafter promptly reimburse the Assured for all payments made in excess of the amounts stated in PART I (AGGREGATE AGREEMENT) and PART II (SPECIFIC EXCESS AGREEMENT) of the Limits Agreement. All adjusted claims shall be paid or made good to the Assured within thirty days after their presentation to Arthur J. Gallagher & Co., and acceptance by Underwriters of satisfactory proof of interest and loss.

13. **APPEAL:**

In the event the Assured and Underwriters are unable to agree to the advisability of appealing a judgment, a disinterested attorney, mutually agreeable to the Underwriters and the Assured, shall be retained and directed to render a written opinion as to his recommendation concerning such appeal. Such written recommendation shall be binding on both the Assured and Underwriters. Fees of such retained attorney shall be borne equally by both parties for the services of rendering his recommendation only. The Assured's portion of such fee shall not accrue in the aggregate loss fund.

14. **LITIGATION PROCEEDINGS:**

No suit to recover on account of loss under this Insurance shall be brought until ninety days after the proof of loss shall have been furnished, nor at all unless commenced within twenty seven months from the date upon which loss occurred, if such loss is within the knowledge of the Assured; if not, the twenty seven months shall begin upon notice to the Assured to such loss or claim.

15. **SUBROGATION:**

The Underwriters shall be subrogated to all rights which the Assured may have against any person or other entity in respect to any claim or payment made under this Insurance, and the Assured shall execute all papers required by the Underwriters and shall cooperate with the Underwriters to secure Underwriter's rights. In case any reimbursement obtained or recovery made by the Assured or the Underwriters on account of any loss covered by this Insurance, the net amount of such reimbursement or recovery, after deducting the actual cost of obtaining or making the same, shall be first applied in the following order:

(a)   Amount of loss which exceeds the applicable limit of liability.

(b)   To reduce the Underwriters' loss until the Underwriters are fully reimbursed.

(c)   To reduce the Assured's loss because of the application of the aggregate loss fund.

16. **WAIVER OF SUBROGATION:**

This Insurance shall not be invalidated if the Assured by written agreement has waived or shall waive its right of recovery from any party for loss or damage covered hereunder; provided, that any such waiver is made prior to the occurrence of said loss or damage.

17. **CONFLICTING STATUTES:**

In the event that any provision of this Insurance is unenforceable by the Assured under the laws of any State or other jurisdiction wherein it is claimed that the Assured is liable for any injury covered hereby because of non-compliance with any statute thereof, then this policy shall be enforceable for the Assured with the same effect as if it complied with such statutes.

18. **ASSIGNMENT:**

Assignment of interest under this Insurance shall not bind the Underwriters until the Underwriters' consent is endorsed hereon.

19. **CHANGES:**

By acceptance of this Insurance the Assured agrees that it embodies all agreements existing between the Assured and Underwriters or any of its agents relating to this Insurance. None of the provisions, conditions or other terms of this Insurance shall be waived or altered except by endorsement; nor shall notice to any agent or knowledge possessed by any agent or by any other person be held to effect a waiver or change in any part of this Insurance.

**20.    WAR CLAUSE:**

Coverage does not apply under this Insurance for loss or damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, any weapon of war employing atomic fission or radioactive force whether in time of peace or war, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power, confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority unless such acts of destruction by order of civil authority is at the time of and for the purpose of preventing spread of fire; or claims or liability arising directly or indirectly from nuclear fission, nuclear fusion or radioactive contamination.

**21.    FRAUDULENT CLAIMS:**

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Insurance shall become void and all claim hereunder shall be forfeited.

**HEREON: 80.00% OF 100% OF LIMITS AND PREMIUM**

**ATTACHING TO AND FORMING PART OF COVER NOTE NO. ISL 3401**

DATED: March 31, 1986              INTERNATIONAL SPECIAL RISK SERVICES, INC.

By *Peter J. Derkalske*

B-0011/June 83              **Page 20 of 20**

**Roman Catholic Diocese of Rockville Centre**

**<u>Insurance Policy Cover Sheet</u>**

|  |  |
|---|---|
| Insurer(s): | Underwriters at Lloyd's<br>London Market Companies |
| Policy number(s): | ISL 3482<br>ICO 5326 |
| Inception date: | 9/1/1985 |
| Term at issuance: | 1 year |
| Page count: | 16 |
| Contents: | Slip- 1 pg<br>Excess Broad Form Liability- 6 pgs<br>Endorsement- 9 pgs |

DATE ISSUED
October 31, 1986                                    PREVIOUS NO.
                                CN/031/2285        ISL 3125

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF COVERNOTE PROVISIONS (FORM CN-1)

| ITEM | | NUMBER **I S L    3482** |
|---|---|---|

**1**

*Name of Assured*

Roman Catholic Diocese of Rockville Center and All Legal Entities
Therein Over Which the Same Central Authority Appoints or Control
the Appointment of the Board of Trustees or Similar Body and
Exercises Direct, Complete and Active Control Over the Finances,
Properties, Operations and Activities
50 North Park Avenue
Rockville Centre, New York  11570

**2**

EFFECTIVE     ☒ 12:01 A.M.   BOTH DAYS AT
FROM          ☐ 12:00 NOON   STANDARD TIME     September 1, 1985     TO     September 1, 1986

**3**

Acting upon your instruction, we have
effected the insurance with:   ➤

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| UNDERWRITERS AT LLOYD'S, LONDON | 49.25% |

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| **Hereon: 49.25% Part of 100% of 80% of:** | | | |
| $5,000,000 any one occurrence | Excess Broad | | $76,912.50 |
| EXCESS OF | Form Liability | Part of | $109,875.00 |
| $5,000,000 any one occurrence | | Hereon: | $54,113.44 |

AUDIT                                           TOTAL CHARGED

**5**

SPECIAL CONDITIONS
As per attached forms and endorsements
NMA 772
NMA 1191
NMA 1276

**6**

Service of Suit Clause:-
Lord Bissell & Brooks, 115 South LaSalle St., Chicago, IL  60603 or
Mendes & Mount, 3 Park Avenue, New York, NY  10016

In witness whereof this covernote has been signed at ................................................... this ............ day of ..................
                                    Rolling Meadows, IL                         31              October

**International Special Risk Services, Inc.**

By *Peter J. Durbalski*

Eason Printing Co. Chicago

|                          |                |          |
|--------------------------|----------------|----------|
| ADDITIONAL PREMIUM:      | $8,618.75      | (Hereon) |
| RETURN PREMIUM:          | $_____       | (Hereon) |

**ENDORSEMENT** attaching to and forming part of Policy No. ISL 3482

in the name of Diocese of Rockville Center

Effective date of this endorsement is October 15, 1985          Endorsement No. 6

It is hereby noted and agreed that the Policy Period is amended to read:

PERIOD:                15th October, 1985 to 22nd October, 1986.

Additional Premium calculated at pro rata $125,000 annual.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: February 2, 1987

INTERNATIONAL SPECIAL RISK SERVICES, INC.

By  *Peter J. Durbolski*

**ENDORSEMENT attaching to and forming part of Policy No. ISL 3482**

in the name of Roman Catholic Diocese of Rockville Center, et al.

Effective date of this endorsement is September 1, 1985          Endorsement No. 5

It is hereby understood and agreed that effective September 1, 1985 the following warranty applies to this policy:

Warranted – No impairment of any underlying aggregate limit for any coverage excluded hereon.

All other terms and conditions of this policy remain unaltered.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: November 20, 1986

INTERNATIONAL SPECIAL RISK SERVICES, INC.

By *Peter J. Durbolski*

1023/Jan. 86

ENDORSEMENT attaching to and forming part of Policy No. ISL 3482

in the name of The Roman Catholic Diocese of Rockville Center, et al.

Effective date of this endorsement is Septembaer 1, 1985          Endorsement No. 4

It is hereby understood and agreed that this Policy shall not apply to liability arising out of Hospital/Clinic Malpractice.

Subject otherwise to all terms, clauses and conditions as heretofore.

DATED: October 31, 1986

INTERNATIONAL SPECIAL RISK SERVICES, INC.

By *Peter J. Dunkelski*

1022/Jan. 86

ENDORSEMENT forming part of Policy No.    ISL 3482

In the name of:    The Roman Catholic Diocese of Rockville Center, et al.

Endorsement No.    3

It is hereby understood and agreed that, with effect from September 1, 1985 this Policy shall not apply:-

to Bodily Injury or Personal Injury or loss of, damage to or loss of use of property directly or indirectly caused by seepage into or onto and/or pollution of and/or contamination of air, land, water and/or any other property, however caused and whenever happening;

the words "loss of, damage to or loss of use of property" as used in this exclusion include, but shall not be limited to:-

a)    the cost of evaluating and/or monitoring and/or controlling and/or removing and/or nullifying and/or cleaning-up seeping and polluting and/or contaminating substances;

b)    loss of, damage to or loss of use of property directly or indirectly resulting from sub-surface operations of the Insured;

c)    removal of, loss of or damage to sub-surface oil gas or any other substance.

All other terms and conditions remain unchanged.

DATED: October 31, 1986

INTERNATIONAL SPECIAL RISK SERVICES, INC.

By    *Peter J. Duckalski*

Ex05

ENDORSEMENT forming part of Policy No.    ISL 3482

In the name of:    The Roman Catholic Diocese of Rockville Center, et al.

Endorsement No.    2

It is hereby understood and agreed that with effect from September 1, 1985 this Policy EXCLUDES:-

1.    Liability arising from Discrimination and/or Humiliation.

2.    Police Professional Liability, False Arrest and/or Imprisonment.

All other terms and conditions remain unchanged.

DATED: October 31, 1986

INTERNATIONAL SPECIAL RISK SERVICES, INC.

By    *Peter J. Ducholski*

Ex04

ENDORSEMENT forming part of Policy No.    ISL 3482

In the name of:    The Roman Catholic Diocese of Rockville Center, et al.

Endorsement No.    1

It is hereby understood and agreed that with effect from September 1, 1985 and, notwithstanding anything contained herein to the contrary, this policy excludes liability for Errors and Omissions in connection with Schoolboards.

All other terms and conditions remain unchanged.

DATED: October 31, 1986

INTERNATIONAL SPECIAL RISK SERVICES, INC.

By _Peter J. Dukolski_

Ex03

**U.S.A.**

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—
## PHYSICAL DAMAGE—DIRECT

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

This policy does not cover any loss or damage arising directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination however such nuclear reaction, nuclear radiation or radioactive contamination may have been caused *NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that Fire.

*NOTE.—If Fire is not an insured peril under this policy the words from "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

7/5/59

N.M.A. 1191                                        EASON PRINTING COMPANY

## SERVICE OF SUIT CLAUSE (U.S.A.)

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association.)*

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon

Lord, Bissell & Brook, 115 S. LaSalle St., Chicago, IL 60603
or Mendes & Mount, 3 Park Avenue, New York, N.Y. 10016

, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or reinsured) to give a written undertaking to the Insured (or reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

N.M.A. 772

EASON PRINTING COMPANY

U.S.A.
20-01226-scc Doc C-11 Filed 10/01/20 Entered 10/01/20 08:44:55 Exhibit C
London Program Policy Compendium Pg 178 of 184

**NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)**

*(Approved by Lloyd's Underwriters' Non-Marine Association)*

*For attachment to insurances of the following classifications in the U. S. A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

*Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),*

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause —Liability—Direct (Limited) applies.

This policy* does not apply:—

I. Under any liability Coverage, to injury, sickness, disease, death or destruction
    (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
    (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
    (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
    (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
    (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:
    "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material, (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means
    (a) any nuclear reactor,
    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*Note:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17-8-60
N.M.A. 1256        Essex Printing Company

## EXCESS BROAD FORM LIABILITY

### INSURING AGREEMENTS

1. **Coverage**

   In consideration of the payment of the premium stated herein and subject to the limitations, definitions, terms and conditions hereinafter mentioned, Underwriters hereby agree with the Assured named in the Declarations made a part hereof to indemnify the Assured for all sums which the Assured shall be legally obligated to pay by reason of the liability caused by or arising out of only such hazards covered by and as more fully defined in the policy/ies of the "Primary and Underlying Excess Insurers" and issued by the Primary and Underlying Excess Insurers stated in Item 4 of the Declarations occurring during the period of this policy.

2. **Limits of Liability**

   Provided always that:

   (a)  Liability attaches to the Underwriters only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as set forth in Item 5 of the Declarations and designated "Primary and Underlying Excess Limit(s)" and then the limits of the Underwriters' liability shall be those set forth in Item 6 of the Declarations under the designation "Excess Limit(s)" and the Underwriters shall be liable to pay the ultimate net loss the Excess of the Limit(s) under the policy/ies of the Primary and Underlying Excess Insurers as set forth in Item 5 of the Declarations up to the full amount of such Excess Limits(s).

   (b)  Liability for any one or any combination of the hazards insured hereunder as provided for in the Primary and Underlying Excess Insurers policy/ies is subject separately to the limit "each occurrence" as stated in the Declarations, but this limit shall not be exceeded in any one policy year with regard to any hazard(s) insured with an aggregate limit under the policy/ies of the Primary and Underlying Excess Insurers.

   (c)  For the purpose of determining the limit of the Underwriters' liability, all Personal Injury and Property Damage arising out of either

   (i)   an accident or series of accidents arising out of one event, or
   (ii)  a continuous or repeated exposure to substantially the same general conditions,
         shall be considered as arising out of one occurrence.

   (d)  The inclusion of more than one entity as the named Assured, or the inclusion of any additional Assureds under this Policy, shall not in any way operate to increase the Underwriters' limits of liability beyond those provided in Item 6 of the Declarations.

## DEFINITIONS

**3.**    **(a)**    **Occurrence**

The word "occurrence" means an accident, including injurious exposure to conditions, which results during the Policy year in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Assured.

**(b)**    **Ultimate Net Loss**

The words "ultimate net loss" shall be understood to mean the amount payable in settlement of the liability of the Assured after making deductions for all recoveries and for other valid and collectible insurances, excepting however the policy/ies of the Primary and Underlying Excess Insurers, and shall include all expenses and costs.

**(c)**    **Policy Year**

The words "policy year" shall be understood to mean a period of one calendar year commencing each year on the day and hour first named in the Declarations.

## CONDITIONS

**4.**    **(a)**    **Application of Recoveries**

All recoveries, salvages or payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters, provided always that nothing in this Insurance shall be construed to mean that losses under this Insurance are not payable until the Assured's ultimate net loss has been finally ascertained.

**(b)**    **Attachment of Liability**

Liability to pay under this Policy shall not attach unless and until the Primary and Underlying Excess Insurers shall have admitted liability for the Primary and Underlying Excess Limit(s) or unless and until the Assured has by final judgment been adjudged to pay an amount which exceeds such Primary and Underlying Excess Limit(s) and then only after the Primary and Underlying Excess Insurers have paid or have been held liable to pay the full amount of the Primary and Underlying Excess Limit(s).

**(c)**    **Maintenance of Primary Insurance**

It is a condition of this Policy that the policy/ies of the Primary and Underlying Excess Insurers shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of occurrences during the policy year.

In respect of the hazards covered by the Primary and Underlying Excess Insurers this Policy is subject to the same warranties, terms, definitions, conditions and exclusions (except as regards the premium, the obligation to investigate and defend, the renewal agreement (if any), the amount and limits of liability other than the deductible or self-insurance provision where applicable, AND EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy/ies of the Primary Insurers prior to the happening of an occurrence for which claim is made hereunder and should any alteration be made in the premium for the policy/ies of the Primary Insurers during the currency of this Policy, then the premium hereon shall be adjusted accordingly.

(d)    **Subrogation**

Inasmuch as this Policy is "excess coverage," the Assured's right of recovery against any person or other entity cannot be exclusively subrogated to the Underwriters. It is, therefore, understood and agreed that in case of any payment hereunder, the Underwriters will act in concert with all other interests (including the Assured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Assured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Underwriters are then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Assured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Assured) concerned, in the ratio of their respective recoveries as finally settled.

(e)    **Commutation Clause**    (to apply to Workmen's Compensation and/or Employers' Liability or Occupational Disease and then only when these perils are covered by the Primary Insurers)

Not later than twenty-four months from the expiry date of this policy, the Assured shall advise the Underwriters of all claims not finally settled which are likely to result in claims under this Policy. The Underwriters may then or at any time thereafter intimate to the Assured their desire to be released from liability in respect of any one or more of such claims. In such event, the Assured and the Underwriters shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalise such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims and the payment by the Underwriters of their portion of the amount so ascertained to be the capitalised value of such claim or claims shall constitute a complete and final release of Underwriters, provided however that such payment shall not constitute a full and final release of Underwriters' liability if subsequent to such payment any supplemental award is made increasing the claim(s); said additional claim(s) may then be recommuted at Underwriter's option and Underwriters may discharge any additional liability by another payment.

(f)    **Cancellation**

This Policy may be cancelled at any time at the written request of the Assured or may be cancelled by or on behalf of the Underwriters provided thirty (30) days notice in writing be given.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the earned premium hereon for the period that this Policy has been in force or the short rate proportion of the Minimum Premium, calculated in accordance with the customary scale, whichever is the greater.

If this Policy shall be cancelled by the Underwriters, they shall retain the earned premium hereon for the period that this Policy has been in force or pro-rata of the Minimum Premium, whichever is the greater.   Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium.

If the period of limitation relating to the giving of such notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(g)    **Notification of Claims**

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Declarations.   Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above person(s) or firm of any such occurrence.

(h)    **Fraudulent Claims**

If the Assured shall make any claim knowing the same to be fake or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

## DECLARATIONS

**Item**

1. **Named Assured:**          The Roman Catholic Diocese of Rockville Center, et al.

2. **Address of Assured:**        50 North Park Avenue, Rockville Center, New York 11570

3. **Period:**         September 1, 1985 To September 1, 1986 12:01 A.M. L.S.T.

4.  a)   **Primary Insurers:**          Underwriters at LLoyd's various British Companies and
                                  Centennial.

   b)   **Underlying Excess Insurers:**
        1.   Interstate Fire & Casualty
        2.   Colonnial Penn
        3.   Alliance
        4.   Assicurayioni Generali T.S.
             Turegum Falk Sam International Insurance

5. **Primary and Underlying Excess Limit(s):**      U.S. $5,000,000

6. **Excess Limit(s):**      U.S. $5,000,000

7. **Notification of Claims To:**          Gallagher Bassett Services, Inc.

8. **Identification Details and Limit**
   **Carried Under Item 4 Above:**

a.

| Policy # | Policy Period | Carrier | Limit(s) | Description |
|---|---|---|---|---|
| ISL 3401 | September 1, 1985 to September 1, 1986 | Underwriters at Lloyd's London | 100,000 each and every loss or occurrence excess of 100,000 Self-Insured Retention | All Third Party |
| ICO 5239 | September 1, 1985 to September 1, 1986 | Other British Companies | 100,000 any one claim in the aggregate annually, excess of 100,000 Self-Insured Retention | Errors and Omissions and School Board Liability |
| 287003620 | September 1, 1985 to September 1, 1986 | Centennial | 50,000 any one occurrence excess of 100,000 Self-Insured Retention | W.C.A./E.L./O.D. |

b.

| Policy # | Policy Period | Carrier | Limit(s) | Description |
|---|---|---|---|---|
| 830172315 | September 1, 1985 to September 1, 1986 | Interstate Fire & Casualty | 800,000 Combined Single Limit Excess of 200,000 | All Third Party ,Errors and Omissions and School Board Liability |
| | | | 850,000 Combined Single Limit Excess of150,000 | W.C.A./E.L./O.D. |
| XL150029 | September 1, 1985 to September 1, 1986 | Colonnial Penn | 4,000,000 Combined Single Limit Excess of1,000,000 | All Third Party and Clergy, Errors and Omissions and School Board Liability; W.C.A./E.L./O.D. |
| AXL52066 621 | October 15, 1985 to September 1, 1986 | Alliance | 1.5 part of 5 Excess of 5,000,000 | General Liability and Auto Liability, Errors and Omissions and School Board Liability, W.C.A./E.L./O.D. |
| ISL 3482 | October 15, 1985 to September 1, 1986 | Assicurayioni Generali T.S. Turegum Folk Sam International Insurance | 3.5 part of 5 Excess of 5,000,000 | General Liability and Auto Liability, Errors and Omissions and School Board Liability, W.C.A./E.L./O.D. |

ATTACHING TO AND FORMING PART OF COVER NOTE NO.    ISL 3482

DATED:    10/31/86    INTERNATIONAL SPECIAL RISK SERVICES, INC.

By: _Peter J. Dunbalski_