**EXHIBIT D**

**(COMPENDIUM OF ECCLESIA POLICIES)**

Endorsement Number:    137

Policy Number:    PKG-2018-1          Date Effective:    10/31/2019

## EXTENDED REPORTING PERIOD ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

SEXUAL ABUSE LIABILITY

Extended Reporting Period:  From 10/31/2019 at 12:01 A.M. To 10/31/2020 at 12:01 A.M.

Additional Premium:          $1,233,213

The Extended Reporting Period above applies to this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York
by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          3/20/2020
Authorized Representative's Signature          Date

Endorsement Number:   136

Policy Number:   PKG-2018-1                    Date Effective:   10/31/2019

## MISCELLANEOUS CHANGE ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

SEXUAL ABUSE LIABILITY

At your request, for no return premium, this insurance is cancelled effective 10/31/2019
at 12:01 A.M.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York
by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          3/20/2020
Authorized Representative's Signature          Date

Endorsement Number:    135

Policy Number:    PKG-2018-1                    Date Effective:    10/19/2019

**DIVESTED NAMED INSURED ENDORSEMENT**

This endorsement modifies the insurance provided under the following Coverage Part(s):

PROFESSIONAL LIABILITY

SEXUAL ABUSE LIABILITY

## SCHEDULE

| Person or Organization | Retroactive Date | Divestiture Date |
|---|---|---|
| The Catholic Foundation of Long Island, Inc. DBA Catholic Community Foundation of Long Island | 9/1/1996 | 10/19/2019 |

The meaning of Named Insured is amended to include any person or organization shown in the Schedule above, but only for a "wrongful act" that commences on or after the Retroactive Date and before the Divestiture Date.

In addition, the Named Insured shall include any other organization that such person or organization, either directly or indirectly or through any other organization, has the ability to control by means of:

1.    Membership or ownership of a majority of the issued and outstanding voting stock;

2. The right to elect or appoint the general partner or manager or a majority of the directors or trustees;

3. The right to serve ex officio as general partner or manager or as a director or trustee and represent a majority of the directors or trustees, individually, or collectively with any:

   a. Other ex officio director or trustee; or

   b. Right of such person or persons to elect or appoint any other director or trustee; or

4. The right to direct any financial or managerial decision making, whether by operation of law, pursuant to contract or agreement, or pursuant to such entity's charter, articles of association, or by-law provisions.

All other terms and conditions remain unchanged.


In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.


ECCLESIA ASSURANCE COMPANY

_____    3/20/2020
Authorized Representative's Signature    Date

Copyright ©, Porter & Curtis, LLC, 2019    E NI 04 05 07 18

Endorsement Number:    134

Policy Number:    PKG-2018-1                Date Effective:    10/19/2019

## DESIGNATED NAMED INSURED EXCLUSION ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

CRIME

GENERAL LIABILITY

BUSINESS AUTO

DIRECTORS & OFFICERS LIABILITY

EMPLOYMENT PRACTICES LIABILITY

EMPLOYEE BENEFITS LIABILITY

PROFESSIONAL LIABILITY

MEDICAL PROFESSIONAL LIABILITY

SEXUAL ABUSE LIABILITY

<u>SCHEDULE</u>

The Catholic Foundation of Long Island, Inc. DBA Catholic Community Foundation of Long Island

The meaning of Named Insured is amended to exclude any person or organization shown in the Schedule above and any other organization that such person or organization, either directly or indirectly or through any other organization, has the ability to control by means of:

1.    Membership or ownership of a majority of the issued and outstanding voting stock;

2.    The right to elect or appoint the general partner or manager or a majority of the directors or trustees;

3.    The right to serve ex officio as general partner or manager or as a director or trustee and represent a majority of the directors or trustees, individually, or collectively with any:

   a.    Other ex officio director or trustee; or

   b.    Right of such person or persons to elect or appoint any other director or trustee; or

Copyright ©, Porter & Curtis, LLC, 2007        E XI 02 05 09 07

4.    The right to direct any financial or managerial decision making, whether by
operation of law, pursuant to contract or agreement, or pursuant to such
entity's charter, articles of association, or by-law provisions.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York
by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    3/20/2020
Authorized Representative's Signature    Date

Endorsement Number:   133

Policy Number:   PKG-2018-1          Date Effective:   1/1/2019

## DIVESTED NAMED INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

PROFESSIONAL LIABILITY

SEXUAL ABUSE LIABILITY

## SCHEDULE

| Person or Organization | Retroactive Date | Divestiture Date |
|---|---|---|
| Catholic Cemeteries of the Roman Catholic Diocese of Rockville Centre, Inc. DBA Catholic Cemeteries of Long Island | 9/1/1996 | 1/1/2019 |

The meaning of Named Insured is amended to include any person or organization shown in the Schedule above, but only for a "wrongful act" that commences on or after the Retroactive Date and before the Divestiture Date.

In addition, the Named Insured shall include any other organization that such person or organization, either directly or indirectly or through any other organization, has the ability to control by means of:

1.   Membership or ownership of a majority of the issued and outstanding voting stock;

2.    The right to elect or appoint the general partner or manager or a majority of the directors or trustees;

3.    The right to serve ex officio as general partner or manager or as a director or trustee and represent a majority of the directors or trustees, individually, or collectively with any:

   a.    Other ex officio director or trustee; or

   b.    Right of such person or persons to elect or appoint any other director or trustee; or

4.    The right to direct any financial or managerial decision making, whether by operation of law, pursuant to contract or agreement, or pursuant to such entity's charter, articles of association, or by-law provisions.

All other terms and conditions remain unchanged.


In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.


ECCLESIA ASSURANCE COMPANY

_____          3/20/2020
Authorized Representative's Signature                 Date

Endorsement Number:    132

Policy Number:    PKG-2018-1                    Date Effective:    1/1/2019

### MISCELLANEOUS CHANGE ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

PROFESSIONAL LIABILITY

SEXUAL ABUSE LIABILITY

Endorsement Number 128 is replaced by Endorsement Number 133.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    3/20/2020
Authorized Representative's Signature        Date

REVIEWED
By Beth Bosco at 3:05 pm, Jan 17, 2020

Endorsement Number:   131

Policy Number:   PKG-2018-1          Date Effective:   9/17/2019

**ADDITIONAL INSURED ENDORSEMENT**

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Columbus Citizens Foundation, Inc. and City of New York, 8 East 69th Street, New York, NY 10021

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/17/2019
Authorized Representative's Signature          Date

REVIEWED
By Beth Bosco at 3:57 pm, Aug 07, 2019

Endorsement Number:    130

Policy Number:    PKG-2018-1                Date Effective:    8/5/2019

### ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Mattituck-Cutchogue Union Free School District, 385 Depot Lane, Cutchogue, NY 11935

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        8/5/2019
Authorized Representative's Signature        Date
_____

REVIEWED

By Beth Bosco at 8:29 am, Jun 07, 2019

Endorsement Number:   129

Policy Number:   PKG-2018-1          Date Effective:   6/15/2019

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Mercury International, LLC, 150 Idle Hour Boulevard, Oakdale, NY 11769

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____     6/7/2019
Authorized Representative's Signature          Date

2/25/2019

REVIEWED
By Beth Bosco at 1:03 pm, Feb 25, 2019

ECCLESIA ASSURANCE COMPANY
50 North Park Avenue
Rockville Centre, New York  11570

POLICYHOLDER DISCLOSURE
**NOTICE OF TERRORISM INSURANCE COVERAGE**

Policy Number:   PKG-2018-1              Date Effective:     11/1/2018

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you
have a right to purchase insurance coverage for losses resulting from acts of terrorism.
*As defined in Section 102(1) of the Act:*  The term "act of terrorism" means any act or
acts that are certified by the Secretary of the Treasury - in consultation with the
Secretary of Homeland Security, and the Attorney General of the United States - to be
an act of terrorism; to be a violent act or an act that is dangerous to human life, property,
or infrastructure; to have resulted in damage within the United States, or outside the
United States in the case of certain air carriers or vessels or the premises of a United
States mission; and to have been committed by an individual or individuals as part of an
effort to coerce the civilian population of the United States or to influence the policy or
affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY
FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH
LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES
GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW.
HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT
AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS.
UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY
REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83%
BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81%
BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020, OF
COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED
DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE.
THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND
DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE
COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS
AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT
REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING
FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES
IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION.  IF THE AGGREGATE
INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE
MAY BE REDUCED.

SELECTION OR REJECTION OF TERRORISM INSURANCE COVERAGE

| | |
|---|---|
| ☒ | I hereby elect to purchase terrorism coverage for a prospective premium of $9,358. |
| ☐ | I hereby decline to purchase terrorism coverage for certified acts of terrorism.  I understand that I will have no coverage for losses resulting from certified acts of terrorism. |

_____     2/25/2019
Authorized Policyholder's Signature          Date


William G. Chapin
_____
Authorized Policyholder's Name

ECCLESIA ASSURANCE COMPANY
50 North Park Avenue
Rockville Centre, New York  11570

COMMERCIAL PACKAGE POLICY
**COMMON POLICY DECLARATIONS**

Policy Number:    PKG-2018-1              Date Effective:    11/1/2018

Producer:    Ecclesia Assurance Company
50 North Park Avenue
Rockville Centre, NY  11570

ITEM 1:    Named Insured and Address:

The Roman Catholic Diocese of Rockville Centre, New York
50 North Park Avenue
Rockville Centre, NY  11570-4184

ITEM 2:    Policy Period:   From 11/1/2018 at 12:01 A.M. To 11/1/2019 at 12:01 A.M.

ITEM 3:    Coverage Parts:

| Coverage Part | Deposit Premium |
| --- | --- |
| Crime | $43,750 |
| General Liability | $414,647 |
| Business Auto | $414,647 |
| Directors & Officers Liability | $15,954 |
| Employment Practices Liability | $95,726 |
| Employee Benefits Liability | $7,978 |
| Professional Liability | $39,886 |
| Medical Professional Liability | $43,096 |
| Sexual Abuse Liability | $1,233,213 |

ITEM 4:    4(a)  Total Deposit Premium          $2,308,897

4(b)  Deposit Premium Payment Plan    $577,224.25 due 11/1/2018, 2/1/2019, 5/1/2019, and 8/1/2019

4(c)  Deposit Premium attributable to the Terrorism Risk Insurance Act    $9,358

ITEM 5:       Forms and any Endorsement(s) as of Policy Issuance:

| Form Number | Form Name |
| --- | --- |
| D CP 02 05 09 07 | Common Policy Declarations |
| F GC 00 17 09 07 | Common Policy Conditions |
| D CR 00 02 03 12 | Crime Coverage Part Declarations |
| F CR 00 09 03 12 | Crime Discovery Coverage Form |
| D GL 02 03 09 07 | General Liability Coverage Part Declarations |
| F GL 00 23 09 07 | General Liability Coverage Form |
| D BA 02 05 09 07 | Business Auto Coverage Part Declarations |
| F BA 00 19 09 07 | Business Auto Coverage Form |
| D DO 03 04 09 07 | Directors & Officers Liability Coverage Part Declarations |
| F DO 03 21 09 07 | Directors & Officers Liability Coverage Form |
| D EP 02 04 09 07 | Employment Practices Liability Coverage Part Declarations |
| F EP 00 19 09 07 | Employment Practices Liability Coverage Form |
| D EB 02 04 09 07 | Employee Benefits Liability Coverage Part Declarations |
| F EB 00 17 09 07 | Employee Benefits Liability Coverage Form |
| D PL 02 04 09 07 | Professional Liability Coverage Part Declarations |
| F PL 00 23 09 07 | Professional Liability Coverage Form |
| D MP 02 03 09 07 | Medical Professional Liability Coverage Part Declarations |
| F MP 00 16 09 07 | Medical Professional Liability Coverage Form |
| D SA 02 05 09 07 | Sexual Abuse Liability Coverage Part Declarations |
| F SA 00 19 09 07 | Sexual Abuse Liability Coverage Form |
| E XI 02 04 09 07 | Designated Insured Exclusion Endorsement 1, 127 |
| E CA 02 03 09 07 | Combined General Aggregate and Retention Endorsement 2 |
| E CP 02 01 09 07 | Combined Policies Endorsement 3 |
| E NP 00 04 03 12 | No Duty to Handle or Defend Crime Endorsement 4 |
| E NG 02 09 09 07 | No Duty to Defend General Liability Endorsement 5 |
| E NB 02 08 09 07 | No Duty to Handle or Defend Business Auto Endorsement 6 |
| E NC 02 09 09 07 | No Duty to Defend Claims Made Endorsement 7, 8 |
| E MS 02 02 09 07 | Miscellaneous Change Endorsement 9, 10, 11 |

| Form Number | Form Name |
| --- | --- |
| E AI 00 03 08 17 | Additional Insured Endorsement 12-126 |
| E ER 02 02 02 19 | Extended Reporting Endorsement 128 |

In witness whereof, this Policy has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    2/25/2019
Authorized Representative's Signature    Date

## COMMON POLICY CONDITIONS TABLE OF CONTENTS

A.  Arbitration .................................................................................................. 2
B.  Authorization .............................................................................................. 3
C.  Bankruptcy and Insolvency ........................................................................ 3
D.  Cancellation ............................................................................................... 3
E.  Changes ..................................................................................................... 3
F.  Cooperation ............................................................................................... 3
G.  Currency .................................................................................................... 4
H.  Enforceability ............................................................................................. 4
I.  Examination of Your Books and Records ................................................... 4
J.  Governing Laws ......................................................................................... 4
K.  Headings .................................................................................................... 4
L.  Legal Action Against Us ............................................................................. 4
M.  Merger or Consolidation ............................................................................ 4
N.  No Third Party Beneficiaries ...................................................................... 5
O.  Non-renewal .............................................................................................. 5
P.  Notice of Claim or Circumstance ............................................................... 5
Q.  Notices ....................................................................................................... 5
R.  Other Insurance ......................................................................................... 5
S.  Premium ..................................................................................................... 7
T.  Separation of Insureds ............................................................................... 7
U.  Transfer of Rights of Recovery Against Others to Us ................................ 7
V.  Transfer of Your Rights and Duties Under This Policy ............................... 8

          Copyright ©, Porter & Curtis, LLC, 2007      F GC 00 17 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

COMMON POLICY CONDITIONS


Throughout this Common Policy Conditions, the words "you" and "your" refer to the person or organization first identified in Item 1 of the Declarations (the "first Named Insured") and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us", and "our" refer to the insurance company issuing this policy.  Other words or phrases that appear in quotation marks have special meaning. Refer to the Definitions Section of the applicable Coverage Part.

In consideration of the payment of premium and subject to all the provisions of this policy, you and we agree all Coverage Parts included in this policy are subject to the conditions as follows:

A.    Arbitration

If any dispute shall arise between you and us with reference to the meaning of this policy or rights with respect to any transaction hereunder, whether such dispute arises before or after termination of this policy, such dispute shall be resolved by arbitration in accordance with the procedures as outlined below.

1.    Arbitration Procedures.  Upon the written request of either party, the dispute shall be submitted to three arbitrators:  one to be chosen by each party and the third by the two so chosen.  If either party refuses or neglects to appoint an arbitrator within thirty (30) days after the receipt of written notice from the other party requesting it to do so, the requesting party may appoint two arbitrators.  If the two arbitrators fail to agree in the selection of a third arbitrator within thirty (30) days of their appointment, the third arbitrator shall be selected by the American Arbitration Association.  Each party shall submit its case to its arbitrators within thirty (30) days of the appointment of the third arbitrator.

2.    Qualifications for Arbitrators.  All arbitrators shall be active or retired executive officers of insurance or reinsurance companies, not under the control of either party.

3.    Honorable Engagement; No Judicial Formalities.  The arbitrators shall interpret this policy as an honorable engagement and not as merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law.

4.    Binding Written Decision.  The decision in writing of any two arbitrators, when filed with the parties hereto, and the relevant "insured", shall be final and binding on both parties, and the relevant "insured".

5.    Arbitration Expenses.  Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other party the expense of the third arbitrator and of the arbitration.

6.    Place of Arbitration.  Arbitration shall take place in the jurisdiction of the first Named Insured unless some other place is mutually agreed upon by the parties.

                   Copyright ©, Porter & Curtis, LLC, 2007      F GC 00 17 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

COMMON POLICY CONDITIONS

B.   Authorization

By acceptance of this policy, it is agreed that the first Named Insured shall act on behalf of all other Named Insureds with respect to any rights or duties specifically assigned to the first Named Insured in this policy.

C.   Bankruptcy and Insolvency

The bankruptcy, insolvency, or other financial impairment of any "insured" shall not relieve us or increase any of our obligations or deprive us of any rights, under this policy.  The inability of any "insured" or insurer to pay any applicable retention shall in no way expand our obligations under this policy.

Under no circumstances shall we pay a retention or assume any other obligation of a financially impaired "insured".

D.   Cancellation

This policy may be cancelled by the first Named Insured by providing written notice stating when thereafter such cancellation shall be effective.  The policy may be cancelled by us by mailing to the first Named Insured written notice when, not less than ninety (90) days thereafter (ten (10) days with respect to cancellation for non-payment of premium), such cancellation shall be effective.

Proof of mailing of notice as aforesaid shall be sufficient proof of notice.  The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the "policy period".  Delivery of such written notice either by the first Named Insured or by us shall be equivalent to mailing.

If we cancel, earned premium shall be computed pro rata.  If the first Named Insured cancels, earned premium shall be the greater of the premium computed in accordance with the customary short rate table procedure or the Minimum Earned Premium, if any, as stated in Item 9(c) of the Declarations.

Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.  Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due the first Named Insured.

If this policy insures more than one organization, cancellation may be effected by the first Named Insured for the account of any other "insured".  Notice of cancellation by us to the first Named Insured shall be notice to all other "insureds". Payment of any unearned premium to the first Named Insured shall be for the account of all interests in such payment.

E.   Changes

This policy contains all the agreements between you and us concerning the insurance afforded.  The first Named Insured is authorized to make changes in the terms of this policy with our consent.  This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

F.   Cooperation

You shall provide us with all information, assistance and cooperation that we reasonably request and will take no action that might prejudice our position or

Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001
F GC 00 17 09 07

COMMON POLICY CONDITIONS

potential or actual rights except as we agree in writing or as is expressly authorized in this policy.

G.    Currency

All premiums, Limits of Insurance, retentions, and other amounts under this policy are expressed and payable in the currency of the United States.  If judgment is rendered, settlement is denominated or another element of any amount due under this policy is stated in a currency other than United States dollars, payment under this policy shall be made in United States dollars at the rate of exchange published in the *Wall Street Journal* on the date the amount becomes due.

H.    Enforceability

If any part of this policy is deemed invalid or unenforceable, it shall not affect the validity or enforceability of any other part of this policy, which shall be enforced to the full extent permitted by law.

I.    Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy for an unlimited period as respects any amount paid under this policy and for up to three years after the end of the "policy period" for any other reason.

J.    Governing Laws

This policy shall be governed by and construed in accordance with the laws of the State shown in your mailing address in Item 1 of the Declarations.

K.    Headings

The descriptions in the headings and subheadings of this policy are solely for convenience and form no part of the terms of this policy.

L.    Legal Action Against Us

No person or organization has a right under this policy:

1.    To join us as a party or otherwise bring us into a suit seeking damages from an "insured"; or

2.    To sue us under this policy unless all of its terms have been fully complied with and then only as provided below.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured" obtained after a trial, but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance.  An agreed settlement means a settlement and release of liability signed by us, the "insured", and the claimant or the claimant's legal representative.

M.    Merger or Consolidation

If during the "policy period",

1.    You merge into or consolidate with any other person or organization or group of persons acting in concert; or

Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001
F GC 00 17 09 07

    2.    Any person or organization or group of persons or entities acting in concert shall acquire control by means of:

        a.    The right to elect or appoint a majority of directors or trustees or direct any financial or managerial decision making, whether by operation of law, pursuant to contract or agreement, or pursuant to such entity's charter, articles of association, or by-law provisions; or

        b.    Membership or ownership of a majority of the issued and outstanding voting stock;

Then this policy shall continue in full force and effect for any claim caused prior to the effective date of such transaction, as defined by 1 or 2.a. or 2.b. above, but there shall be no coverage afforded by any provision of this policy for any claim caused on or after the effective date of the transaction.

N.    No Third Party Beneficiaries

This is a policy solely between you and us.  It shall not create any right or legal relationship whatsoever between us and any other person or organization.

O.    Non-renewal

If we do not renew this policy, we shall provide written notice to the first Named Insured at least ninety (90) days prior to the end of the "policy period".

P.    Notice of Claim or Circumstance

Notice of a claim or circumstance under any liability Coverage Part of this policy shall constitute notice under all other liability Coverage Parts of this policy.

Q.    Notices

All notices under any provision of this policy must be made in writing and delivered by prepaid express courier, certified mail, or fax.  Notices to you shall be given to the first Named Insured.  Notices to us shall be sent to the applicable address shown in Item 10 of the applicable Coverage Part Declarations.  Notices given as described shall be deemed to be received upon the actual receipt thereof by the addressee.

R.    Other Insurance

If other valid and collectible insurance is available to the "insured" for a loss we cover under this policy, our obligations are limited as follows:

    1.    Excess Insurance

        a.    This policy is excess over any other applicable insurance, whether or not such insurance is stated to be primary, excess, contingent, or on any other basis, except when Paragraph 2. below applies.

        b.    If this policy is excess, our obligations are not affected unless any of the other insurance is also excess.  Then, we will share with all that other insurance by the method described in Paragraph 3. below.

        c.    When this policy is excess, we shall have no duty to defend the "insured" against a suit, inquiry, investigation, or proceeding if any other

Copyright ©, Porter & Curtis, LLC, 2007    F GC 00 17 09 07
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

COMMON POLICY CONDITIONS

insurer has a duty to defend the "insured" against the suit, inquiry, investigation, or proceeding.  If no other insurer defends, our duties shall be determined by the applicable Coverage Part.  If we defend the "insured", we shall be entitled to the rights of the "insured" against all those other insurers.

d.    When this policy is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:

(1)    The total amount that all such other insurance would pay for the loss in the absence of this policy; and

(2)    The total of all deductible and self-insurance amounts applicable under all of the other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of the applicable Coverage Part.

2.    Primary Insurance

a.    This policy is primary as respects any other applicable insurance available to any person or organization you agree to insure provided:

(1)    You have agreed in a written contract or agreement that this insurance would be primary as respects such other insurance available to the person or organization; or

(2)    In the absence of such agreement, a director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured agrees that this insurance will be primary as respects such other insurance available to the person or organization.

b.    If this policy is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph 3. below.

3.    Method of Sharing

a.    This policy will not seek contribution from any other insurance available to any person or organization you agree to insure under this policy provided:

(1)    You have agreed in a written contract or agreement that this insurance would not seek contribution from such other insurance available to the person or organization; or

(2)    In the absence of such agreement, a director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured agrees that this insurance will not seek contribution from such other insurance available to the person or organization.

Copyright ©, Porter & Curtis, LLC, 2007    F GC 00 17 09 07
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

    b.   Otherwise:

        (1)   If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

        (2)   If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

S.    Premium

The first Named Insured is responsible for the payment of all premiums and will be the payee for any return premiums we pay.

The Total Deposit Premium shown in Item 4(a) of the Declarations shall be paid as set forth in Item 4(b) of the Declarations.

The Deposit Premium shown in Item 9(a) of the Declarations of each coverage part shall be adjusted in accordance with Item 9(b) of the Declarations.

The final earned premium of each coverage part shall be the Deposit Premium if not adjustable.  If adjustable, the final earned premium shall be the greater of the Minimum Earned Premium, if any, shown in Item 9(c) of the Declarations or the Actual Earned Premium.

The amount of the Actual Earned Premium is calculated by applying the rate shown in Item 9(d) of the Declarations to the average of the Deposit Exposure Basis shown in Item 9(e) of the Declarations and the amount of the same type of exposure as the last day of the "policy period".  If the final earned premium is 10% or more of the Deposit Premium, the first Named Insured must pay us the entire balance.  Any smaller amount of increase shall be waived. If the final earned premium is less than the Deposit Premium, we will refund the balance to the first Named Insured.

The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

T.    Separation of Insureds

Except with respect to Limits of Insurance, Retentions, and any rights or duties specifically assigned in this policy to the first Named Insured, this policy applies:

1.    As if each "insured" were the only "insured"; and

2.    Separately to each "insured" that makes a claim or against which a claim is brought.

U.    Transfer of Rights of Recovery Against Others to Us

If any "insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us to the extent of our payment. The "insured" must do nothing before, except as otherwise provided in the

Copyright ©, Porter & Curtis, LLC, 2007     F GC 00 17 09 07
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

COMMON POLICY CONDITIONS

applicable Coverage Part, or after a claim to impair them.  At our request, the "insured" will bring suit or transfer those rights to us or help us enforce them.

Any amounts we recover will be allocated, after deducting recovery expenses, in the following order until exhausted:

1.    Any amount paid by you over this policy's applicable Limit of Insurance;

2.    Any amount paid by you under a retention of the applicable Coverage Part;

3.    Any amount paid by us under this policy; then

4.    Any remaining amount paid by you.

V.    Transfer of Your Rights and Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except if you die.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative.  Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright ©, Porter & Curtis, LLC, 2007        F GC 00 17 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

NOTICE:  THIS IS DEFENSE EXPENSE WITHIN LIMITS INSURANCE.  DEFENSE EXPENSES SHALL REDUCE, AND MAY EXHAUST, THE LIMITS OF INSURANCE.

NOTICE:  THIS IS LOSS DISCOVERED INSURANCE.  SUBJECT TO ITS TERMS, THIS INSURANCE APPLIES ONLY TO AN OCCURRENCE FIRST DISCOVERED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED PERIOD TO DISCOVER LOSS, PROVIDED SUCH OCCURRENCE IS REPORTED NO LATER THAN 60 DAYS FROM THE END OF THE POLICY PERIOD OR FROM THE END OF ANY APPLICABLE EXTENDED PERIOD TO DISCOVER LOSS.

NOTICE:  THIS IS CLAIMS MADE INSURANCE.  SUBJECT TO ITS TERMS, THIS INSURANCE APPLIES ONLY TO A CLAIM FIRST MADE DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD, PROVIDED SUCH CLAIM IS REPORTED NO LATER THAN 60 DAYS FROM THE END OF THE POLICY PERIOD OR FROM THE END OF ANY APPLICABLE EXTENDED REPORTING PERIOD.

ECCLESIA ASSURANCE COMPANY
50 North Park Avenue
Rockville Centre, New York  11570

COMMERCIAL PACKAGE POLICY
**CRIME COVERAGE PART DECLARATIONS**

Policy Number:    PKG-2018-1            Date Effective:    11/1/2018

ITEM 6:    <u>Overall Limits of Insurance</u>:

Each Loss                          None Applicable

General Aggregate                  None Applicable

ITEM 7:    <u>Limits of Insurance</u>:

| Coverage | 7(a) Limit of Insurance | 7(b) Aggregate Limit of Insurance |
| --- | --- | --- |
| Employee Theft | $500,000 Each "Occurrence" | None Applicable |
| Forgery or Alteration | Not Covered Each "Occurrence" | Not Applicable |
| Inside the Premises – Theft of Money and Securities | Not Covered Each "Occurrence" | Not Applicable |
| Inside the Premises – Robbery or Safe Burglary of Other | Not Covered Each "Occurrence" | Not Applicable |

| Coverage | 7(a) Limit of Insurance | 7(b) Aggregate Limit of Insurance |
|---|---|---|
| Property | | |
| Outside the Premises | Not Covered Each "Occurrence" | Not Applicable |
| Computer Fraud | Not Covered Each "Occurrence" | Not Applicable |
| Funds Transfer Fraud | Not Covered Each "Ocurrence" | Not Applicable |
| Money Orders and Counterfeit Paper | Not Covered Each "Occurrence" | Not Applicable |
| Credit Card Forgery | Not Covered Each "Occurrence" | Not Applicable |
| Clients' Property | Not Covered Each "Occurrence" | Not Applicable |
| Extortion | Not Covered Each "Occurrence" | Not Applicable |
| "Investigation expenses" | $500,000 Each "Occurrence" | None Applicable |

ITEM 8:   Retentions                                    $250,000 Each "Occurrence"

ITEM 9:   Premium:

9(a)  Deposit Premium                    $43,750

9(b)  Type                                       Not Adjustable

9(c)  Minimum Earned Premium       $43,750

9(d)  Rate                                       Not Applicable

9(e)  Deposit Exposure Basis          Not Applicable

9(f)  Deposit Premium attributable to    Not Applicable
the Terrorism Risk Insurance Act

          Copyright ©, Porter & Curtis, LLC, 2012          D CR 00 02 03 12

ITEM 10:    <u>Notices</u>:

10(a)  Any "occurrence", "claim", or          Ecclesia Assurance Company
"extortion threat"                                      50 North Park Avenue
                                                               Rockville Centre, NY  11570

10(b)  Any other matter                          Ecclesia Assurance Company
                                                               50 North Park Avenue
                                                               Rockville Centre, NY  11570


In witness whereof, this Coverage Part has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.


ECCLESIA ASSURANCE COMPANY

_____     2/25/2019
Authorized Representative's Signature         Date

CRIME DISCOVERY COVERAGE FORM

CRIME DISCOVERY COVERAGE FORM TABLE OF CONTENTS

**Section I – Coverage** ...................................................................................5
   A.  Employee Theft ...............................................................................5
   B.  Forgery or Alteration.......................................................................5
   C.  Inside the Premises – Theft of Money and Securities ............................6
   D.  Inside the Premises – Robbery or Safe Burglary of Other Property.................6
   E.  Outside the Premises ......................................................................7
   F.  Computer Fraud .............................................................................7
   G.  Funds Transfer Fraud......................................................................8
   H.  Money Orders and Counterfeit Paper ..................................................8
   I.  Credit Card Forgery ........................................................................8
   J.  Clients' Property .............................................................................9
   K.  Extortion ......................................................................................9
**Section II – Limits of Insurance and Retentions** ........................................9
   A.  Limit of Insurance ..........................................................................9
   B.  Aggregate Limit of Insurance ..........................................................10
   C.  Each Loss Limit of Insurance ..........................................................10
   D.  General Aggregate Limit of Insurance...............................................10
   E.  Retentions ..................................................................................10
**Section III – Exclusions** ...........................................................................11
   A.  Employee Theft, Forgery or Alteration, Inside the Premises – Theft of Money and
   Securities, Inside the Premises – Robbery or Safe Burglary of Other Property, Outside
   the Premises, Computer Fraud, Funds Transfer Fraud, Money Orders and Counterfeit
   Money, Credit Card Forgery, Clients' Property, and Extortion ....................................11
     1.  Acts Committed by Owners .......................................................11
     2.  Confidential Information ............................................................11
     3.  Government Action..................................................................11
     4.  Nuclear ...............................................................................12
     5.  War and Military Actions...........................................................12
   B.  Forgery or Alteration, Inside the Premises – Theft of Money and Securities, Inside
   the Premises – Robbery or Safe Burglary of Other Property, Outside the Premises,
   Computer Fraud, Funds Transfer Fraud, Money Orders and Counterfeit Money, Credit
   Card Forgery, and Extortion .............................................................................12
     1.  Acts of Executives, Employees, Religious Persons or Authorized
     Representatives .......................................................................12
   C.  Employee Theft and Client's Property................................................12
     1.  Acts of Executives,  Employees, or Religious Persons Learned of by You.....12
     2.  Inventory Shortages ...............................................................12
   D.  Inside the Premises – Theft of Money and Securities, Inside the Premises –
   Robbery or Safe Burglary of Other Property, and Outside the Premises....................13
     1.  Accounting or Arithmetical Errors or Omissions..............................13
     2.  Exchanges or Purchases .........................................................13
     3.  Fire ....................................................................................13
     4.  Motor Vehicles or Equipment and Accessories..............................13
     5.  Transfer or Surrender of Property ..............................................13
     6.  Vandalism............................................................................14

Copyright ©, Porter & Curtis, LLC, 2012          F CR 00 09 03 12
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

    7.    Voluntary Parting of Title to or Possession of Property ................................... 14
  E.   Computer Fraud ...................................................................................................... 14
    1.    Credit Card Transactions ................................................................................ 14
    2.    Fraudulent Data Input or Errors or Omissions ............................................... 14
    3.    Funds Transfer Fraud ..................................................................................... 14
    4.    Inventory Shortages ....................................................................................... 14

**Section IV – Definitions** .......................................................................................... 15
  "Affiliate" ................................................................................................................ 15
  "Application" ........................................................................................................... 15
  "Authorized insured" .............................................................................................. 15
  "Banking premises" ................................................................................................ 15
  "Benefit plan" ......................................................................................................... 15
  "Benefit program" .................................................................................................. 15
  "Claim" ................................................................................................................... 16
  "Client" ................................................................................................................... 16
  "Computer hardware" ............................................................................................ 16
  "Computer program" .............................................................................................. 16
  "Computer system" ................................................................................................ 16
  "Counterfeit money" ............................................................................................... 16
  "Coverage territory" ............................................................................................... 16
  "Crisis management expenses" ............................................................................. 16
  "Custodian" ............................................................................................................ 16
  "Defense expenses" .............................................................................................. 16
  "Electronic data" .................................................................................................... 17
  "Electronic media" ................................................................................................. 17
  "Employee" ............................................................................................................ 17
  "Employee Welfare Benefit Plan" .......................................................................... 17
  "Executive" ............................................................................................................ 17
  "Extortion expenses" ............................................................................................. 17
  "Extortion loss" ...................................................................................................... 17
  "Extortion payments" ............................................................................................. 17
  "Extortion threat" ................................................................................................... 17
  "Fine arts" .............................................................................................................. 18
  "Finished stock" ..................................................................................................... 18
  "Forgery" ................................................................................................................ 18
  "Fraudulent instruction" ......................................................................................... 18
  "Fraudulent impersonation" ................................................................................... 18
  "Funds" .................................................................................................................. 18
  "Illicit gain" ............................................................................................................. 18
  "Independent contractor" ....................................................................................... 18
  "Insured" ................................................................................................................ 18
  "Investigation expenses" ....................................................................................... 19
  "Leased worker" .................................................................................................... 19
  "Malicious code" .................................................................................................... 19
  "Messenger" .......................................................................................................... 19
  "Money" .................................................................................................................. 19
  "Occurrence" .......................................................................................................... 19
  "Other property" ..................................................................................................... 19

Copyright ©, Porter & Curtis, LLC, 2012   F CR 00 09 03 12
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

"Out-of-band authentication"...........................................................................20
"Pension Benefit Plan"...................................................................................20
"Policy period"................................................................................................20
"Pollutants"....................................................................................................20
"Premises".....................................................................................................20
"Raw stock"....................................................................................................20
"Religious person" .........................................................................................20
"Replacement cost" .......................................................................................20
"Reward expenses" .......................................................................................20
"Robbery".......................................................................................................20
"Safe burglary"...............................................................................................20
"Securities" ....................................................................................................21
"Stock in process"..........................................................................................21
"Subsidiary" ...................................................................................................21
"Terrorism".....................................................................................................21
"Theft"............................................................................................................21
"Transfer account" .........................................................................................21
"Valued personal property items" ..................................................................21
"Vendor".........................................................................................................21
"Volunteer".....................................................................................................21
"Watchperson" ...............................................................................................22
**Section V – General Conditions**..................................................................22
A.   Employee Theft, Forgery or Alteration, Inside the Premises – Theft of Money and
Securities, Inside the Premises – Robbery or Safe Burglary of Other Property, Outside
the Premises, Computer Fraud, Funds Transfer Fraud, Money Orders and Counterfeit
Money, Credit Card Forgery, Clients' Property, and Extortion ...................................22
1.   Settlements ........................................................................................22
B.   Employee Theft, Forgery or Alteration, Inside the Premises – Theft of Money and
Securities, Inside the Premises – Robbery or Safe Burglary of Other Property, Outside
the Premises, Computer Fraud, Funds Transfer Fraud, Money Orders and Counterfeit
Money, Credit Card Forgery, and Clients' Property....................................................22
1.   Benefit Programs ...............................................................................22
2.   Concealment, Misrepresentation, or Fraud ......................................23
3.   Duties in the Event of an Occurrence...............................................23
4.   Extended Period to Discover Loss ....................................................24
5.   Inspections and Surveys ...................................................................24
6.   Loss Payment on Property ...............................................................24
7.   Salvage and Recoveries ...................................................................26
8.   Waiver of Transfer of Rights of Recovery Against Others to Us .....26
C.   Employee Theft, Forgery or Alteration, Inside the Premises – Theft of Money and
Securities, Inside the Premises – Robbery or Safe Burglary of Other Property, Outside
the Premises, Computer Fraud, Funds Transfer Fraud, Money Orders and Counterfeit
Money, and Credit Card Forgery.................................................................................26
1.   Ownership of Property; Interests Covered .......................................26
D.   Employee Theft and Clients' Property................................................................27
1.   Termination as to Any Executive, Employee, or Religious Person..................27
E.   Forgery or Alteration..........................................................................................27
1.   Defense and Settlement ...................................................................27

Copyright ©, Porter & Curtis, LLC, 2012          F CR 00 09 03 12
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

CRIME DISCOVERY COVERAGE FORM

2.    Duties in the Event of a Claim ........................................................................27
3.    Electronic and Mechanical Signatures ...........................................................28
4.    Proof of Loss .................................................................................................28
F.   Outside the Premises ...........................................................................................28
1.    Armored Motor Vehicle Companies ...............................................................28
G.  Funds Transfer Fraud ...........................................................................................29
1.    Out-of-Band Authentication ...........................................................................29
H.  Clients' Property ...................................................................................................29
1.    Ownership of Property; Interests Covered .....................................................29
I.    Extortion ...............................................................................................................29
1.    Duties in the Event of an Extortion Threat.....................................................29

Copyright ©, Porter & Curtis, LLC, 2012      F CR 00 09 03 12
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

CRIME DISCOVERY COVERAGE FORM

Throughout this Coverage Part, the words "you" and "your" refer to the person or organization first identified in Item 1 of the Declarations (the "first Named Insured") and any other person or organization qualifying as a Named Insured under this insurance. The words "we", "us", and "our" refer to the insurance company issuing this insurance. Other words or phrases that appear in quotation marks have special meaning.  Refer to Section IV – Definitions.

In consideration of the payment of premium and subject to all the provisions of this policy, you and we agree as follows:

**Section I – Coverage**

A.   Employee Theft

We will pay you for any direct loss of or damage to any "funds" or "other property" and "investigation expenses" resulting from "theft" or "forgery" committed by an "executive", "employee", "volunteer", or "religious person" during their status as such and for the first ninety (90) days immediately after termination of service, whether identified or not, acting alone, or in collusion with others, first discovered during the "policy period" or Extended Period to Discover Loss condition to which this insurance applies.

This insurance applies only if:

1.   The "theft" or "forgery" is caused by an "occurrence" that takes place in the "coverage territory"; and

2.   We receive notice in accordance with the reporting requirements in Section V. B. 3. of this insurance.

B.   Forgery or Alteration

We will pay you for any:

1.   Direct loss and any "investigation expenses"; or

2.   "Defense expenses" from a "claim" made against any "insured";

Resulting from any "forgery" or alteration, of checks, drafts, promissory notes, or similar written promises, orders, or directions to pay a sum certain in "money" that are:

1.   Made or drawn by or drawn upon you; or

2.   Made or drawn by one acting as your agent;

Or that are purported to have been so made or drawn, first discovered or made during the "policy period" or Extended Period to Discover Loss condition to which this insurance applies.

This insurance applies only if:

1.   The "forgery" or alteration is caused by an "occurrence" that takes place in the "coverage territory"; and

Copyright ©, Porter & Curtis, LLC, 2012
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

F CR 00 09 03 12

2.   We receive notice in accordance with the applicable reporting requirements in Section V. B. 3. and Section V. E. 2. of this insurance.

All "claims" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, an "occurrence" to which this insurance applies will be considered a single "claim" deemed first made at the earlier of the following dates:

1.   The date the earliest of such "claims" was made; or

2.   The date the "occurrence" was first discovered.

C.   Inside the Premises – Theft of Money and Securities

We will pay you for any:

1.   Direct loss of "funds" inside the "premises" or "banking premises" and "investigation expenses":

a.   Resulting from "theft" committed by a person present inside such "premises" or "banking premises"; or

b.   Resulting from disappearance or destruction;

2.   Direct loss from damage to the "premises" or its exterior and "investigation expenses" resulting from an actual or attempted "theft" of "funds", if you are the owner of the "premises" or are liable for damage to it; or

3.   Direct loss of or damage to a locked safe, vault, cash register, cash box, or cash drawer located inside the "premises" and "investigation expenses" resulting from an actual or attempted "theft" or of unlawful entry into those containers;

First discovered during the "policy period" or Extended Period to Discover Loss condition to which this insurance applies.

This insurance applies only if:

1.   The "theft", disappearance, or destruction is caused by an "occurrence" that takes place in the "coverage territory"; and

2.   We receive notice in accordance with the reporting requirements in Section V. B. 3. of this insurance.

D.   Inside the Premises – Robbery or Safe Burglary of Other Property

We will pay you for any:

1.   Direct loss of or damage to "other property":

a.   Inside the "premises" and "investigation expenses" resulting from an actual or attempted "robbery" of a "custodian"; or

b.   Inside the "premises" in a safe or vault and "investigation expenses" resulting from an actual or attempted "safe burglary";

2.   Direct loss from damage to the "premises" or its exterior and "investigation expenses" resulting from an actual or attempted "robbery" or "safe burglary"

   Copyright ©, Porter & Curtis, LLC, 2012   F CR 00 09 03 12
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

of "other property", if you are the owner of the "premises" or are liable for damage to it; or

3.    Direct loss of or damage to a locked safe or vault located inside the "premises" and "investigation expenses" resulting from an actual or attempted "robbery" or "safe burglary";

First discovered during the "policy period" or Extended Period to Discover Loss condition to which this insurance applies.

This insurance applies only if:

1.    The "robbery" or "safe burglary" is caused by an "occurrence" that takes place in the "coverage territory"; and

2.    We receive notice in accordance with the reporting requirements in Section V. B. 3. of this insurance.

E.    Outside the Premises

We will pay you for any:

1.    Direct loss of "funds" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company and "investigation expenses" resulting from "theft", disappearance, or destruction; or

2.    Direct loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company and "investigation expenses" resulting from an actual or attempted "robbery";

First discovered during the "policy period" or Extended Period to Discover Loss condition to which this insurance applies.

This insurance applies only if:

1.    The "theft", disappearance, destruction, or "robbery" is caused by an "occurrence" that takes place in the "coverage territory"; and

2.    We receive notice in accordance with the reporting requirements in Section V. B. 3. of this insurance.

F.    Computer Fraud

We will pay you for direct loss of any "funds" or "other property" and "investigation expenses" resulting from the use of any "computer system" to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":

1.    To a person, other than a "messenger", outside those "premises"; or

2.    To a place outside those "premises";

First discovered during the "policy period" or Extended Period to Discover Loss condition to which this insurance applies.

This insurance applies only if:

1.    The fraudulent transfer is caused by an "occurrence" that takes place in the "coverage territory"; and

Copyright ©, Porter & Curtis, LLC, 2012
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

2. We receive notice in accordance with the reporting requirements in Section V. B. 3. of this insurance.

G. Funds Transfer Fraud

We will pay you for direct loss of "funds" and "investigation expenses" resulting from a "fraudulent instruction" directing a financial institution to transfer, pay, or deliver "funds" from your "transfer account", first discovered during the "policy period" or Extended Period to Discover Loss condition to which this insurance applies.

This insurance applies only if:

1. The "fraudulent instruction" is caused by an "occurrence" that takes place in the "coverage territory"; and

2. We receive notice in accordance with the reporting requirements in Section V. B. 3. of this insurance.

H. Money Orders and Counterfeit Paper

We will pay you for direct loss and "investigation expenses" resulting from your having accepted in good faith, in exchange for merchandise, "money" or services:

1. Money orders issued by any post office, express company or bank that are not paid upon presentation; or

2. "Counterfeit money";

First discovered during the "policy period" or Extended Period to Discover Loss condition to which this insurance applies.

This insurance applies only if:

1. The good faith acceptance is caused by an "occurrence" that takes place in the "coverage territory"; and

2. We receive notice in accordance with the reporting requirements in Section V. B. 3. of this insurance.

I. Credit Card Forgery

We will pay you for direct loss and "investigation expenses" resulting from any:

1. "Forgery" or alteration of written instruments in conjunction with any credit, debit, or charge card issued to you or any "executive", "employee", or "religious person" for business purposes to pay a sum certain in "money" that are:

   a. Made or drawn by or drawn upon you; or

   b. Made or drawn by one acting as your agent;

   Or that are purported to have been so made or drawn; or

2. "Theft" of "funds" by an unauthorized person fraudulently using the credit, debit, or charge card issued to you or any "executive", "employee", or "religious person" for business purposes, or the account numbers, authorized

Copyright ©, Porter & Curtis, LLC, 2012          F CR 00 09 03 12
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

codes, or PINS associated with such card, to purchase goods with such card or to debit or transfer funds from such account while masquerading as an authorized user for the specific purpose of committing such "theft";

First discovered during the "policy period" or Extended Period to Discover Loss condition to which this insurance applies.

This insurance applies only if:

1.    The "forgery", alteration, or "theft" is caused by an "occurrence" that takes place in the "coverage territory";

2.    We receive notice in accordance with the reporting requirements in Section V. B. 3. of this insurance; and

3.    You and your "executive", "employee", or "religious person" complied fully with the provisions, conditions, or other terms under which such card was issued.

J.    Clients' Property

We will pay you for any direct loss of or damage to any "funds" or "other property" and "investigation expenses" resulting from "theft" or "forgery" committed by an "executive", "employee", or "religious person" during their status as such and for the first ninety (90) days immediately after termination of service, whether identified or not, acting alone, or in collusion with others, first discovered during the "policy period" or Extended Period to Discover Loss condition to which this insurance applies.

This insurance applies only if:

1.    The "theft" or "forgery" is caused by an "occurrence" that takes place in the "coverage territory"; and

2.    We receive notice in accordance with the reporting requirements in Section V. B. 3. of this insurance.

K.    Extortion

We will pay for "extortion loss" resulting from an "extortion threat" first communicated to you during the "policy period" to which this insurance applies.

This insurance applies only if:

1.    The "extortion threat" is caused by an "occurrence" that takes place in the "coverage territory"; and

2.    We receive notice in accordance with the reporting requirements in Section V. H. 1. of this insurance.

**Section II – Limits of Insurance and Retentions**

A.    Limit of Insurance

The applicable Limit of Insurance shown in Item 7(a) of the Crime Coverage Part Declarations is the most we will pay for such coverage under this insurance from one (1) "occurrence" regardless of the number of:

Copyright ©, Porter & Curtis, LLC, 2012
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005
F CR 00 09 03 12

1.   "Insureds" under this insurance; or

2.   Persons or organizations making claims or "claims".

These Limits are part of, and not in addition to the Each Loss Limit of Insurance, if any, shown in Item 6 of the Crime Coverage Part Declarations and shall be reduced by the amount of any applicable Retention shown in Item 8 of the Crime Coverage Part Declarations.

B.   Aggregate Limit of Insurance

The applicable Aggregate Limit of Insurance shown in Item 7(b) of the Crime Coverage Part Declarations is the most we will pay for such coverage under this insurance.  These Aggregate limits are part of, and not in addition to the General Aggregate Limit of Insurance, if any, shown in Item 6 of the Crime Coverage Part Declarations.

Our obligation under this insurance for any particular coverage shall cease when the Aggregate Limit for that coverage, if any, has been exhausted by the payment of amounts we owe under such coverage.

C.   Each Loss Limit of Insurance

The Each Loss Limit of Insurance shown in Item 6 of the Crime Coverage Part Declarations is the most we will pay for all coverage under this insurance from one (1) "occurrence" regardless of the number of:

1.   "Insureds" under this insurance;

2.   Persons or organizations making claims or "claims"; or

3.   Coverages under this insurance.

D.   General Aggregate Limit of Insurance

The General Aggregate Limit of Insurance shown in Item 6 of the Crime Coverage Part Declarations is the most we will pay for all coverage under this insurance.

Our obligation under this insurance shall cease when the General Aggregate Limit of Insurance has been exhausted by payment of amounts we owe under this insurance.

E.   Retentions

The highest applicable Retention shown in Item 8 of the Crime Coverage Part Declarations is the most you will pay under this insurance from one (1) "occurrence" regardless of the number of:

1.   "Insureds" under this insurance;

2.   Persons or organizations making claims or "claims"; or

3.   Coverages under this insurance.

Any amount paid by us shall be allocated by Coverage in proportion to the total amount such covered amounts bears to the total amount of all covered amounts. Any such allocated amounts shall erode any applicable Aggregate Limits of Insurance as set forth in Item 7(b) of the Crime Coverage Part Declarations.

   Copyright ©, Porter & Curtis, LLC, 2012
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005   F CR 00 09 03 12

Any Retention shall be payable directly by you.  In the event we advance any such amount on your behalf, you shall pay us within thirty (30) days of our written request for reimbursement.

Your obligation under this insurance for one (1) "occurrence" shall cease when the highest applicable Retention has been exhausted by payment of amounts you owe for such "occurrence" under this insurance.

**Section III – Exclusions**

A.    Employee Theft, Forgery or Alteration, Inside the Premises – Theft of Money and Securities, Inside the Premises – Robbery or Safe Burglary of Other Property, Outside the Premises, Computer Fraud, Funds Transfer Fraud, Money Orders and Counterfeit Money, Credit Card Forgery, Clients' Property, and Extortion

The following exclusions apply to Coverage A. Employee Theft, Coverage B. Forgery or Alteration, Coverage C. Inside the Premises – Theft of Money and Securities, Coverage D. Inside the Premises – Robbery or Safe Burglary of Other Property, Coverage E. Outside the Premises, Coverage F. Computer Fraud, Coverage G. Funds Transfer Fraud, Coverage H. Money Orders and Counterfeit Money, Coverage I. Credit Card Forgery, Coverage J. Clients' Property, and Coverage K. Extortion:

This insurance does not apply to any loss, damage, or "extortion threat":

1.    Acts Committed by Owners

Arising from "theft" committed by:

a.    Stockholder (if you are an organization other than a partnership or limited liability company);

b.    Member (if you are a limited liability company) other than a managing member; or

c.    Partner (if you are a partnership) other than a general partner;

Whether acting alone or in collusion with other persons.

2.    Confidential Information

Resulting from:

a.    The unauthorized disclosure of your confidential information including, but not limited to, patents, trade secrets, processing methods, or customer lists; or

b.    The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information, or similar non-public information.

3.    Government Action

Resulting from seizure or destruction of property by order of government authority.

    Copyright ©, Porter & Curtis, LLC, 2012    F CR 00 09 03 12
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

4.   Nuclear

Resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

5.   War and Military Actions

Resulting from:

a.   War, including undeclared or civil war;

b.   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c.   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

This exclusion does not apply to "terrorism".

B.   Forgery or Alteration, Inside the Premises – Theft of Money and Securities, Inside the Premises – Robbery or Safe Burglary of Other Property, Outside the Premises, Computer Fraud, Funds Transfer Fraud, Money Orders and Counterfeit Money, Credit Card Forgery, and Extortion

The following exclusions apply to Coverage B. Forgery or Alteration, Coverage C. Inside the Premises – Theft of Money and Securities, Coverage D. Inside the Premises – Robbery or Safe Burglary of Other Property, Coverage E. Outside the Premises, Coverage F. Computer Fraud, Coverage G. Funds Transfer Fraud, Coverage H. Money Orders and Counterfeit Money, Coverage I. Credit Card Forgery, and Coverage K. Extortion:

This insurance does not apply to any loss, damage, or "extortion threat":

1.   Acts of Executives, Employees, Religious Persons or Authorized Representatives

Arising from "theft" committed by any of your "executives", "employees", "religious persons", or authorized representatives:

a.   Whether acting alone or in collusion with other persons; or

b.   While performing services for you or otherwise.

C.   Employee Theft and Client's Property

The following exclusions apply to Coverage A. Employee Theft and Coverage J. Clients' Property:

This insurance does not apply to any loss or damage:

1.   Acts of Executives,  Employees, or Religious Persons Learned of by You

Sustained following the termination of coverage of any "executive", "employee", or "religious person" as set forth in the Termination as to Any Executive or Employee condition.

2.   Inventory Shortages

Copyright ©, Porter & Curtis, LLC, 2012        F CR 00 09 03 12
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

CRIME DISCOVERY COVERAGE FORM

Or that part of any loss, the proof of which as to its existence or amount is dependent upon:

    a.    An inventory computation; or

    b.    A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

D.    Inside the Premises – Theft of Money and Securities, Inside the Premises – Robbery or Safe Burglary of Other Property, and Outside the Premises

The following exclusions apply to Coverage C. Inside the Premises – Theft of Money and Securities, Coverage D. Inside the Premises – Robbery or Safe Burglary of Other Property, and Coverage E. Outside the Premises:

This insurance does not apply to any loss or damage:

1.    Accounting or Arithmetical Errors or Omissions

Resulting from accounting or arithmetical errors or omissions.

2.    Exchanges or Purchases

Resulting from the giving or surrendering of property in exchange or purchase.

3.    Fire

Resulting from fire, however caused, except:

    a.    Loss of or damage to "money" and "securities"; and

    b.    Loss from damage to a safe or vault.

4.    Motor Vehicles or Equipment and Accessories

To motor vehicles, trailers, or semi-trailers or equipment and accessories attached to them.

5.    Transfer or Surrender of Property

To property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

    a.    On the basis of unauthorized instructions;

    b.    As a result of a threat to do bodily injury to any person;

    c.    As a result of a threat to do damage to any property;

    d.    As a result of a threat to introduce a denial of service attack into your "computer system";

    e.    As a result of a threat to introduce "malicious code" into your "computer system";

Copyright ©, Porter & Curtis, LLC, 2012
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005
F CR 00 09 03 12

CRIME DISCOVERY COVERAGE FORM

    f.    As a result of a threat to contaminate, pollute, or render substandard your products or goods; or

    g.    As a result of a threat to disseminate, divulge, or utilize:

        1)    Your confidential information; or

        2)    Weaknesses in the source code within your "computer system".

However, this Exclusion does not apply to Coverage E. Outside the Premises to loss of "money", "securities", or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

    a.    Had no knowledge of any threat at the time the conveyance began; or

    b.    Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

6.    Vandalism

To "premises" or its exterior, or to any sale, vault, cash register, cash box, cash drawer, or "other property" by vandalism or malicious mischief.

7.    Voluntary Parting of Title to or Possession of Property

From your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

E.    Computer Fraud

The following additional exclusions apply to F. Computer Fraud:

This insurance does not apply to loss or damage:

1.    Credit Card Transactions

Resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value, or other cards, or the information contained on such cards.

2.    Fraudulent Data Input or Errors or Omissions

Resulting from:

    a.    The fraudulent preparation or input of "electronic data", unless caused directly by the unauthorized access or use of your "computer system"; or

    b.    Errors or omissions in the programming, processing, or design of "computer programs".

3.    Funds Transfer Fraud

Resulting from a "fraudulent instruction" to transfer, pay, or deliver "funds" from your "transfer account".

4.    Inventory Shortages

Or that part of any loss or damage, the proof of which is dependent upon:

Copyright ©, Porter & Curtis, LLC, 2012    F CR 00 09 03 12
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

    a.    An inventory computation; or

    b.    A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

## Section IV – Definitions

These terms, whether in their singular, singular possessive, plural, or plural possessive, have special meaning as follows:

**"Affiliate"** means an organization that a person or organization identified in Item 1 of the Declarations, either directly or indirectly or through any "subsidiary" or other "affiliate", has the ability to control by means of the right to:

1. Elect or appoint the general partner or a majority of the directors or trustees; or

2. Direct any financial or managerial decision making, whether by operation of law, pursuant to contract or agreement, or pursuant to such entity's charter, articles of association, or by-law provisions.

**"Application"** means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein, and any other such documents submitted in connection with the underwriting of this insurance.

**"Authorized insured"** means an "executive", "employee", "volunteer", or "leased worker" who is authorized by you to transfer "funds".

**"Banking premises"** means the interior of that portion of any building occupied by a banking institution or similar safe depository.

**"Benefit plan"** means any:

1. "Employee Welfare Benefit Plan";

2. "Pension Benefit Plan";

3. Government mandated insurance program for workers compensation, unemployment, social security, or disability benefits, including programs governed by the Consolidated Omnibus Reconciliation Act of 1985, as amended, or the Health Insurance Portability and Accountability Act of 1996, as amended;

4. Other employee benefit plan or program not defined in the Employee Retirement Income Security Act of 1974, as amended; or

5. Any other plan or program otherwise described in the paragraphs above while such plan or program is being actively developed, formed or proposed by you prior to the formal creation of such plan or program.

**"Benefit program"** means a "benefit plan" sponsored, operated, maintained, or administered by a person or organization identified in Item 1 of the Declarations, either directly or indirectly or through any "subsidiary" or "affiliate".

Copyright ©, Porter & Curtis, LLC, 2012
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005
F CR 00 09 03 12

CRIME DISCOVERY COVERAGE FORM

**"Claim"** means:

1.    A written demand for monetary relief;

2.    A civil proceeding commenced by the service of a complaint or similar pleading;

3.    An administrative or regulatory inquiry, investigation, or proceeding brought by a governmental entity;

4.    A disciplinary inquiry, investigation, or proceeding brought by an accrediting organization, athletic association, or professional society;

5.    An alternative dispute resolution proceeding commenced by a notice or written demand;

6.    A criminal inquiry, investigation, or proceeding; or

7.    A written request to toll or waive a statute of limitations.

**"Client"** means a person or organization for whom or which you perform services as specified in a written agreement.

**"Computer hardware"** means any physical device or group of devices that uses a "computer program" to perform operations on "electronic data". "Computer hardware" does not include "electronic media".

**"Computer program"** means any organized set of related electronic instructions which direct the operations of "computer hardware".

**"Computer system"** means any "computer hardware", "computer programs", "electronic data", or "electronic media".

**"Counterfeit money"** means an imitation of "money" that is intended to deceive and to be taken as genuine.

**"Coverage territory"** means anywhere in the world.

**"Crisis management expenses"** means, with respect to reestablishing your reputation or public image, any:

1.    Cost of crisis management services and any related printing, mailing, advertising or travel expenses we incur; or

2.    Cost of advisory counsel we incur.

**"Custodian"** means you or any "executive", "employee", or "religious person" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

**"Defense expenses"** means, with respect to any "claim" we defend, including any appeal therefrom, any:

1.    Expenses we incur;

2.    Cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance;

Copyright ©, Porter & Curtis, LLC, 2012      F CR 00 09 03 12
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

3.  Expenses incurred by you at our request to assist us in the investigation or defense of the "claim"; or

4.  Court costs taxed against you in the "claim".

**"Electronic data"** means any machine-readable information.  "Electronic data" does not include "computer programs".

**"Electronic media"** means any physical device that records or stores "electronic data".

**"Employee"** means a person who receives any wages, salary, or commissions by you for any labor provided on a full-time, part-time, temporary, or seasonal basis while in your service.  However, "employee" does not include "executive", "religious person", "independent contractor", or "leased worker".

**"Employee Welfare Benefit Plan"** means any plan so defined in the Employee Retirement Income Security Act of 1974, as amended.

**"Executive"** means a person who serves you as any:

1.  Director or officer (if you are an organization other than a partnership);

2.  Trustee (if you are a trust);

3.  Manager or managing member (if you are a limited liability company);

4.  General partner (if you are a partnership);

5.  Member of a school board (if you are a school organization);

6.  Member of an advisory board (if you are an organization);

7.  Member of a duly constituted committee (if you are an organization); or

8.  Functional equivalent of the above if serving outside the United States.

**"Extortion expenses"** means expenses we incur in negotiating resolution of any "extortion threat".  "Extortion expenses" does not include "extortion payments".

**"Extortion loss"** means, with respect an "extortion threat", any:

1.  "Crisis management expenses";

2.  "Extortion expenses";

3.  "Extortion payments"; or

4.  "Reward expenses".

**"Extortion payments"** means any "funds" or "other property" paid to the person, persons, or organization reasonably believed to be responsible for the "extortion threat" for the purpose of terminating that threat and all residual effects.

**"Extortion threat"** means a threat communicated to you to do any:

1.  Harm to any "executive",  "employee", or "religious person" or to a relative or invitee of any of these persons, who was captured or allegedly captured; or

2.  Damage to a "premises" or tangible property inside the "premises".

Copyright ©, Porter & Curtis, LLC, 2012        F CR 00 09 03 12
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

**"Fine arts"** means any works of rarity, works of historical value, works of artistic merit, photographs (positives or negatives), lithographs, illustrations, gallery proofs, original records, or similar property.

**"Finished stock"** means any product manufactured by you, which in the ordinary course of your business is ready for packing, shipment, or sale.

**"Forgery"** means the signing of the name of another person or organization with the intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**"Fraudulent instruction"** means:

1.   An electronic, telegraphic, cable, teletype, telefacsimile, or telephone instruction which purports to have been transferred by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

2.   A written instruction, other than those described in Coverage B. Forgery or Alteration, issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent;

3.   An electronic, telegraphic, cable, teletype, telefacsimile, telephone, or written instruction initially received by you which purports to have been transferred by an "employee" which was in fact fraudulently transmitted by someone else without your or the "employee's" knowledge or consent; or

4.   An electronic, telegraphic, cable, teletype, telefacsimile, telephone, or written instruction resulting from "fraudulent impersonation" which was in fact fraudulently transmitted without your knowledge or consent or the knowledge or consent of such "authorized insured", "vendor", or "client".

**"Fraudulent impersonation"** means a person purporting to be an "authorized insured", "vendor", or "client".

**"Funds"** means any "money" or "securities".

**"Illicit gain"** means gain or expected gain to which the person receiving or intended to receive it is not lawfully entitled to obtain.  It does not include salary, commissions, fees, bonuses, benefits, options, loans or other emoluments or privileges duly authorized to be paid or granted in the course of business.

**"Independent contractor"** means a person who performs services for you or on your behalf under an express or implied agreement and who is not subject to your control or right to control the manner and means of performing the services.

**"Insured"** means any:

1.   Person or organization identified in Item 1 of the Declarations, or any such organization as a debtor in possession under United States bankruptcy law or equivalent status under the law of any other country, or any such person's

   Copyright ©, Porter & Curtis, LLC, 2012   F CR 00 09 03 12
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

estate, heir, legal representative, or assign of any person identified above but only with respect to a loss involving such person;

2.    "Subsidiary", "affiliate", or "benefit program", existing prior to or created or acquired on or after, the inception date of this insurance, , or any such organization as a debtor in possession under United States bankruptcy law or equivalent status under the law of any other country.

Any organization identified in 2. above also qualifies as a Named Insured under this insurance.

**"Investigation expenses"** means, with respect to loss or damage, any expenses you incur in establishing the existence and amount of any loss or damage covered under this insurance, but only if the amount of such covered loss or damage exceeds the applicable Retention shown in Item 8 of the Crime Coverage Part Declarations.

However, "investigation expenses" does not include any:

1.    Salary, remuneration, benefit expense, fee, or overhead or any similar expense paid by you; or

2.    General retainer fees of counsel normally paid by you.

**"Leased worker"** means a person leased by you or on your behalf from a labor leasing firm under a written contract or agreement.

**"Malicious code"** means unauthorized and corrupting or harmful "computer program", including but not limited to computer viruses, Trojan horses, keystroke loggers, cookies, spyware, adware, worms, and logic bombs.

**"Messenger"** means you, or a relative of yours, or any "executive", "employee", or "religious person" while having care of the property outside of the "premises".

**"Money"** means any:

1.    Currency, coins, or bank notes in current use and having a face value; or

2.    Travelers' checks, registered checks, or money orders held for sale to the public.

**"Occurrence"** means an individual act or series of acts, whether related or not, committed by the same person or which involves that same person, or, as respects Coverage C. Inside the Premises – Theft of Money and Securities, Coverage D. Inside the Premises – Robbery or Safe Burglary of Other Property, Coverage E. Outside the Premises, Coverage F. Computer Fraud, Coverage G. Funds Transfer Fraud, Coverage H. Money Orders and Counterfeit Money, Coverage I. Credit Card Forgery, and Coverage K. Extortion, not committed by any identifiable person.  Any series of acts shall be deemed to commence at the time of the earliest act.

**"Other property"** means any tangible property other than "funds" that has intrinsic value.  Other property does not include "electronic data".

Copyright ©, Porter & Curtis, LLC, 2012
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005
F CR 00 09 03 12

**"Out-of-band authentication"** means a method of challenge and response to the requestor of a transfer using a method other than the original means of request to verify the validity of the request.

**"Pension Benefit Plan"** means any plan so defined in the Employee Retirement Income Security Act of 1974, as amended.

**"Policy period"** means the period of time from the effective date of this insurance to the cancellation date or, if none, then the expiration date, as specified in Item 2 of the Declarations.  The date and time are the Local Standard Time at your mailing address shown in Item 1 of the Declarations.

**"Pollutants"** means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste, or waste materials to be recycled, reconditioned, or reclaimed.

**"Premises"** means the interior of that portion of any building you occupy in conducting your business.

**"Raw stock"** means any material in the state in which you receive it for conversion into "finished stock".

**"Religious person"** means a person (if you are an organization):

1.    Ordained as a Catholic priest or deacon and who works for you or on your behalf or is incardinated with you;

2.    Accepted as a member of a  Catholic religious institute or a society of apostolic life and who works for you or on your behalf; or

3.    Sponsored by the first Named Insured in a program of formation for the priesthood or diaconate;

But only if the person qualifies as such in accordance with the records or intent of the first Named Insured.

**"Replacement cost"** means, without deduction for depreciation and using materials of like kind, quality, and capacity, the lesser of:

1.    The cost to repair; or

2.    The cost to rebuild (at any site) or replace.

**"Reward expenses"** means the cost of a reward to any individual or group, except to your "executive", for the capture of or for information which results in the arrest and criminal conviction of, any person(s) committing or trying to commit a crime.

**"Robbery"** means the unlawful taking of property from the care and custody of a person by one who has:

1.    Caused or threatened to cause that person bodily harm; or

2.    Committed an obviously unlawful act witnessed by that person.

**"Safe burglary"** means the unlawful taking of:

1.    Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

Copyright ©, Porter & Curtis, LLC, 2012          F CR 00 09 03 12
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

2.    A safe or vault from inside the "premises".

**"Securities"** means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

1.    Tokens, tickets, revenue and other stamps, whether represented by actual stamps or unused value in a meter, in current use; and

2.    Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you.

However, "securities" does not include "money".

**"Stock in process"** means any "raw stock" which has undergone ageing, seasoning, or mechanical or other process of manufacture by you but which has not become "finished stock".

**"Subsidiary"** means an organization that a person or organization identified in Item 1 of the Declarations, either directly or indirectly or through any "affiliate" or other "subsidiary", has the ability to control by means of membership or ownership of a majority of the issued and outstanding voting stock.

**"Terrorism"** means act, including the use of force or violence, of any person or group of persons, whether acting alone or on behalf of or in connection with any organization, committed for any political, religious, or ideological purposes including the intention to influence any government or to put the public in fear for such purposes.

**"Theft"** means any act of stealing.

**"Transfer account"** means an account maintained by you at a financial institution from which you can initiate the transfer, payment, or delivery of funds:

1.    By means of electronic, telegraphic, cable, teletype, telefacsimile, or telephone instructions communicated directly through an electronic funds transfer system; or

2.    By means of written instructions, other than those described in Coverage B. Forgery or Alteration, establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

**"Valued personal property items"** means any furs, fur garments, or garments trimmed with fur, jewelry, watches, watch movements, jewels, pearls, precious or semi-precious stones, bullion, gold, silver, platinum, or other precious alloys or metals.  "Valued personal property items" does not include precious metals or stones used for industrial purposes.

**"Vendor"** means a person or organization from whom you purchase goods or services under a written agreement.

**"Volunteer"** means a past, present, or future person who donates his or her work to you and is directed by you or on your behalf.  However, "volunteer" does not include "executive".

          Copyright ©, Porter & Curtis, LLC, 2012        F CR 00 09 03 12
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

CRIME DISCOVERY COVERAGE FORM

"**Watchperson**" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

**Section V – General Conditions**

The following conditions apply in addition to the Common Policy Conditions:

A.  Employee Theft, Forgery or Alteration, Inside the Premises – Theft of Money and Securities, Inside the Premises – Robbery or Safe Burglary of Other Property, Outside the Premises, Computer Fraud, Funds Transfer Fraud, Money Orders and Counterfeit Money, Credit Card Forgery, Clients' Property, and Extortion

The following additional conditions apply to Coverage A. Employee Theft, Coverage B. Forgery or Alteration, Coverage C. Inside the Premises – Theft of Money and Securities, Coverage D. Inside the Premises – Robbery or Safe Burglary of Other Property, Coverage E. Outside the Premises, Coverage F. Computer Fraud, Coverage G. Funds Transfer Fraud, Coverage H. Money Orders and Counterfeit Money, Coverage I. Credit Card Forgery, Coverage J. Clients' Property, and Coverage K. Extortion:

1.  Settlements

We shall have the right and duty to investigate an "occurrence" and handle and settle any loss, damage, or expense that might require an indemnity payment by us.  We shall also have the right and duty to subrogate such amounts if we pay any monies due under this insurance.

B.  Employee Theft, Forgery or Alteration, Inside the Premises – Theft of Money and Securities, Inside the Premises – Robbery or Safe Burglary of Other Property, Outside the Premises, Computer Fraud, Funds Transfer Fraud, Money Orders and Counterfeit Money, Credit Card Forgery, and Clients' Property

The following additional conditions apply to Coverage A. Employee Theft, Coverage B. Forgery or Alteration, Coverage C. Inside the Premises – Theft of Money and Securities, Coverage D. Inside the Premises – Robbery or Safe Burglary of Other Property, Coverage E. Outside the Premises, Coverage F. Computer Fraud, Coverage G. Funds Transfer Fraud, Coverage H. Money Orders and Counterfeit Money, Coverage I. Credit Card Forgery, and Coverage J. Clients' Property:

1.  Benefit Programs

a.  If any "benefit program" is insured jointly with any other "insured", you must select a Limit of Insurance that is sufficient to provide a Limit of Insurance for each "benefit program" that is at least equal to that required if each "benefit program" were separately insured.

b.  Any payment we make for loss sustained by a "benefit program" will be made to the "benefit program" sustaining the loss.

c.  If two or more "benefit programs" sustain loss resulting directly from a single "occurrence", any payment we make will be made in the proportion that the Limit of Insurance required for each "benefit

Copyright ©, Porter & Curtis, LLC, 2012
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

program" bears to the total Limit of Insurance of all "benefit plans" sustaining loss.

d.   Any applicable Retention does not apply to loss sustained by any "benefit program".

2.   Concealment, Misrepresentation, or Fraud

This insurance is void in any case of fraud by you as it relates to this insurance at any time.  It is also void if, prior to the effective date of this insurance as specified in Item 2 of the Declarations, you or someone acting on your behalf intentionally conceal or misrepresent a material fact concerning:

a.   This insurance;

b.   The property covered under this insurance;

c.   Your interest in the property covered under this insurance; or

d.   A claim under this insurance;

However, as respects this condition, no acts or knowledge possessed by any "insured" shall be imputed to any other "insured".  Only facts possessed by an "executive" shall be imputed to an organization.

3.   Duties in the Event of an Occurrence

a.   You shall, upon knowledge by the first Named Insured or by any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, give us written notice of an "occurrence" discovered during the "policy period" to which this insurance may apply.  Such notice must, as a condition precedent to exercising any rights under this insurance, be given as soon as practicable but in no event later than sixty (60) days from the end of the "policy period" or, if applicable, from the end of the Extended Period to Discover Loss.  To the extent applicable and possible, notice shall include:

1)   The Named Insured's name and address;

2)   How, when, and where the "occurrence" took place; and

3)   The names and addresses of any witnesses.

b.   You must:

1)   Cooperate with us;

2)   Authorize us to obtain records and other information;

3)   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of a breach of duty to which this insurance may apply;

4)   Seek our consent to make any payment, assume any obligation, incur any expense, or make any admission of liability;

         Copyright ©, Porter & Curtis, LLC, 2012         F CR 00 09 03 12
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

5) Promptly notify the police;

6) Take all reasonable steps to protect the property from further damage;

7) Permit us to inspect the property and records proving the damage before its repair or disposition;

8) Agree to examination under oath at our request and give us a signed statement of your answers; and

9) Give us a detailed, sworn proof of loss stating the place, time, and cause of loss or damage, your interest and of all others in the property, the sound value thereof and the amount of loss or damage thereto, not later than one hundred eighty (180) days from the date the loss was first discovered.

4. Extended Period to Discover Loss

We will pay for loss that you sustain prior to the effective date of termination or cancellation of this insurance, which is first discovered by you or for which a "claim" first made against you:

a. No later than sixty (60) days from the date of that termination or cancellation; or

b. As respects any "benefit program", no later than one (1) year from the date of that termination or cancellation.

However, this Extended Period to Discover Loss condition terminates immediately upon the effective date of any other insurance obtained by you replacing in whole or in part the insurance afforded by this insurance whether or not such insurance provides coverage for loss sustained prior to its effective date.

5. Inspections and Surveys

We have the right but not the obligation to:

a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and

c. Recommend changes.

Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged.  Further, we do not warrant that conditions comply with laws, regulations, codes, or standards.

This condition applies not only to us, but also to any rating, advisory, or rate service or similar organization which makes insurance inspections, surveys, reports, or recommendations.

6. Loss Payment on Property

The value of any loss for purposes of this insurance shall be determined as follows:

    Copyright ©, Porter & Curtis, LLC, 2012
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005    F CR 00 09 03 12

CRIME DISCOVERY COVERAGE FORM

a.  On "money", at its face value.  We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

   1)  At face value in the "money" issued by that country; or

   2)  In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was first discovered.

b.  On "securities", at their value at the close of business on the day the loss was first discovered.  We may, at our option:

   1)  Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title, and interest in and to those "securities"; or

   2)  Pay the cost of any Loss Securities Bond required in connection with issuing duplicates of the "securities".  However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

      a)  Market value of the "securities" at the close of business on the day the loss was first discovered; or

      b)  The Limits of Insurance applicable to the "securities".

c.  On "other property" or loss from damage to the "premises" or its exterior, at "replacement cost", except as follows:

   1)  On "computer hardware" or other electrical or mechanical equipment, the cost to replace non-repairable equipment with equipment that is most functionally equivalent to that damaged or destroyed equipment, even if such equipment has technological advantages and/or represents an improvement in function and/or forms part of a program of system enhancement;

   2)  On "fine arts" and "valued personal property items", the lesser of:

      a)  The reasonable and necessary cost to repair or restore such property to the physical condition that existed on the date of loss;

      b)  The cost to replace the article; or

      c)  The agreed value, if any, otherwise the market value of the article immediately prior to the loss;

   3)  On "finished stock" manufactured by you, at the regular cash selling price at the "premises" where the loss occurs, less all discounts and charges to which the property would have been subject had no loss occurred;

   4)  On "electronic data", the cost of reproducing from duplicates or originals of the previous generation of "electronic data";

Copyright ©, Porter & Curtis, LLC, 2012
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2005
F CR 00 09 03 12

5) In the case of loss of or damage to any part of a pair or set, the lesser of the:

    a) Cost to repair or replace any part to restore the pair or set to its value before the loss or damage; or

    b) Difference between the value of the pair or set before and after the loss or damage; and

6) On "stock in process", at the value of "raw stock" and labor expended plus the proper proportion of overhead charges;

Regardless of whether such "other property" is actually repaired, rebuilt, replaced, reproduced, or restored.

7. **Salvage and Recoveries**

All salvage, recoveries, and payments recovered or received subsequent to a loss settlement under this insurance shall be applied as if recovered or received prior to the said loss settlement and all necessary adjustments shall be made by the parties hereto.

8. **Waiver of Transfer of Rights of Recovery Against Others to Us**

We waive any right of recovery we may have against any:

a. "Insured" unless the "insured" pleads guilty or nolo contendere or the "wrongful act" is established by final and non-appealable adjudication. Only facts possessed by an "executive" shall be imputed to an organization; or

b. Person or organization if such rights of recovery were waived by you or on your behalf under a written contract or agreement prior to the "occurrence".

C. **Employee Theft, Forgery or Alteration, Inside the Premises – Theft of Money and Securities, Inside the Premises – Robbery or Safe Burglary of Other Property, Outside the Premises, Computer Fraud, Funds Transfer Fraud, Money Orders and Counterfeit Money, and Credit Card Forgery**

The following additional conditions apply to Coverage A. Employee Theft, Coverage B. Forgery or Alteration, Coverage C. Inside the Premises – Theft of Money and Securities, Coverage D. Inside the Premises – Robbery or Safe Burglary of Other Property, Coverage E. Outside the Premises, Coverage F. Computer Fraud, Coverage G. Funds Transfer Fraud, Coverage H. Money Orders and Counterfeit Money, and Coverage I. Credit Card Forgery:

1. **Ownership of Property; Interests Covered**

The property covered under this insurance is limited to property:

a. You own or hold; or

b. For which you are legally liable at the time of the loss.

Copyright ©, Porter & Curtis, LLC, 2012
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005
F CR 00 09 03 12

However, this insurance is for your benefit only. It provides no direct rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

D.  Employee Theft and Clients' Property

The following additional conditions apply to Coverage A. Employee Theft and Coverage J. Clients' Property:

1.  Termination as to Any Executive, Employee, or Religious Person

This insurance terminates as to any "executive", "employee", or "religious person" as soon as the first Named Insured or any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, not in collusion with the "executive", "employee", or "religious person", learn of any "theft" committed by the "executive", "employee", or "religious person" whether before or after becoming employed by you.

E.  Forgery or Alteration

The following additional conditions apply to Coverage B. Forgery or Alteration:

1.  Defense and Settlement

We shall have the right and duty to investigate an "occurrence" and handle and defend any "claim" and settle the "claim", but only with the consent of the first Named Insured. We shall also have the right and duty to subrogate the cost of the "claim" if we pay any monies due under this insurance. If the first Named Insured refuses consent to a settlement in accordance with our recommendation that is acceptable to the claimant and is within this insurance's applicable Limits of Insurance shown in Items 6 or 7(a) of the Crime Coverage Part Declarations;

a.  The first Named Insured will thereafter be solely responsible for investigating, handling, defending, and settling such "claim" at their own expense; and

b.  Subject to any applicable Aggregate Limits of Insurance shown in Items 6 or 7(b) of the Crime Coverage Part Declarations, our liability with respect to such "claim" shall not exceed the amount for which such "claim" could have been settled by us, including "defense expenses" incurred up to and until the time that the first Named Insured refuses consent to the settlement.

We shall pay on your behalf any monies due under this insurance.

Our obligation to defend you ends when we have used up the applicable Limits of Insurance.

2.  Duties in the Event of a Claim

a.  You shall, upon knowledge by the first Named Insured or by any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, give us written

Copyright ©, Porter & Curtis, LLC, 2012
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

notice of a "claim" made during the "policy period" to which this insurance may apply.  Such notice must, as a condition precedent to exercising any rights under this insurance, be given as soon as practicable but in no event later than sixty (60) days from the end of the "policy period".  To the extent applicable and possible, notice shall include:

1) The Named Insured's name and address;

2) How, when, and where the actual or alleged wrongful conduct took place;

3) The names and addresses of any witnesses;

4) The date the "claim" was received; and

5) Copies of any demands, notices, summonses, or legal papers received in connection with the "claim".

b. You must:

1) Cooperate with us;

2) Authorize us to obtain records and other information;

3) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of a breach of duty to which this insurance may apply;

4) Seek our consent to make any payment, assume any obligation, incur any expense, or make any admission of liability;

5) Agree to examination under oath at our request and give us a signed statement of your answers; and

6) Give us a detailed, sworn proof of loss stating the place, time, and cause of loss or damage, your interest and of all others in the property, the sound value thereof and the amount of loss or damage thereto and the amount of any expense.

3. Electronic and Mechanical Signatures

We will treat signatures produced or reproduced electronically, mechanically, or by other means that same as handwritten signatures.

4. Proof of Loss

You must include with your proof of loss any instrument involved in that loss, or, if not possible, an affidavit setting forth the amounts and cause of loss.

F. Outside the Premises

The following additional conditions apply to Coverage E. Outside the Premises:

1. Armored Motor Vehicle Companies

We will only pay for the amount of loss you cannot recover:

Copyright ©, Porter & Curtis, LLC, 2012
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2005
F CR 00 09 03 12

CRIME DISCOVERY COVERAGE FORM

      a.    Under your contract with the armored motor vehicle company; and

      b.    From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

G.    Funds Transfer Fraud

The following additional conditions apply to Coverage G. Funds Transfer Fraud:

    1.    Out-of-Band Authentication

        This insurance shall not apply to "fraudulent impersonation" unless the "insured" confirms the validity of the transfer instruction with an "out-of-band authentication".

H.    Clients' Property

The following additional conditions apply to Coverage J. Clients' Property:

    1.    Ownership of Property; Interests Covered

        The property covered under this insurance is limited to property:

      a.    Your "client" owns or holds; or

      b.    For which your "client" is legally liable at the time of the loss.

        However, this insurance is for your benefit only.  It provides no direct rights or benefits to any other person or organization, including your "client".  Any claim for your "client" for loss that is covered under this insurance must be presented by you.

I.    Extortion

The following additional conditions apply to Coverage K. Extortion:

    1.    Duties in the Event of an Extortion Threat

      a.    You shall, upon knowledge by the first Named Insured or by any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, give us written notice of an "extortion threat" communicated during the "policy period" to which this insurance may apply.  Such notice must, as a condition precedent to exercising any rights under this insurance, be given as soon as practicable but in no event later than sixty (60) days from the end of the "policy period".  To the extent applicable and possible, notice shall include:

          1)    The Named Insured's name and address;

          2)    How, when, and where the "occurrence" took place; and

          3)    The names and addresses of any witnesses.

      b.    You must:

          1)    Cooperate with us;

          2)    Authorize us to obtain records and other information;

        Copyright ©, Porter & Curtis, LLC, 2012     F CR 00 09 03 12
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

CRIME DISCOVERY COVERAGE FORM

3) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of a breach of duty to which this insurance may apply;

4) Seek our consent to make any payment, assume any obligation, incur any expense, or make any admission of liability;

5) Promptly notify the police;

6) Agree to examination under oath at our request and give us a signed statement of your answers; and

7) Give us a detailed, sworn proof of loss stating the place, time, and cause of loss or damage and the amount of any damages or expense.

    Copyright ©, Porter & Curtis, LLC, 2012
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2005    F CR 00 09 03 12

NOTICE:  THIS IS DEFENSE EXPENSE WITHIN LIMITS INSURANCE.  DEFENSE EXPENSES SHALL REDUCE, AND MAY EXHAUST, THE LIMITS OF INSURANCE.

## ECCLESIA ASSURANCE COMPANY
50 North Park Avenue
Rockville Centre, New York 11570

COMMERCIAL PACKAGE POLICY
**GENERAL LIABILITY COVERAGE PART DECLARATIONS**

Policy Number:   PKG-2018-1          Date Effective:   11/1/2018

**ITEM 6:**   Overall Limits of Insurance:

| | |
|---|---|
| Each Loss | $750,000 |
| General Aggregate | None Applicable |

**ITEM 7:**   Limits of Insurance:

| Coverage | 7(a) Limit of Insurance | 7(b) Aggregate Limit of Insurance |
|---|---|---|
| Bodily Injury and Property Damage | $750,000 Each "Occurrence" | None Applicable |
| Personal and Advertising Injury | $750,000 Each "Personal and Advertising Injury Offense" | None Applicable |
| Medical Payments | Not Covered Each Person | Not Applicable |

**ITEM 8:**   Retentions                $250,000 Each "Occurrence" or "Personal and Advertising Injury Offense"

**ITEM 9:**   Premium:

| | |
|---|---|
| 9(a) Deposit Premium | $414,647 |
| 9(b) Type | Not Adjustable |
| 9(c) Minimum Earned Premium | $414,647 |
| 9(d) Rate | Not Applicable |
| 9(e) Deposit Exposure Basis | Not Applicable |

9(f)  Deposit Premium attributable to      $9,358
      the Terrorism Risk Insurance Act

ITEM 10:   <u>Notices</u>:

10(a)  Any "occurrence", "personal      Ecclesia Assurance Company
       and advertising injury offense",   50 North Park Avenue
       "claim", or expense                Rockville Centre, NY  11570

10(b)  Any other matter                   Ecclesia Assurance Company
                                          50 North Park Avenue
                                          Rockville Centre, NY  11570


In witness whereof, this Coverage Part has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____      2/25/2019
Authorized Representative's Signature       _____
                                           Date

Copyright ©, Porter & Curtis, LLC, 2007        D GL 02 03 09 07

GENERAL LIABILITY COVERAGE FORM TABLE OF CONTENTS

**Section I – Coverage** ..............................................................................................4
  A.  Bodily Injury and Property Damage...................................................................4
  B.  Personal and Advertising Injury.......................................................................4
  C.  Medical Payments ...........................................................................................4
**Section II – Limits of Insurance and Retentions** ...................................................5
  A.  Limits of Insurance ..........................................................................................5
  B.  Aggregate Limits of Insurance.........................................................................5
  C.  Each Loss Limit of Insurance ..........................................................................5
  D.  General Aggregate Limit of Insurance.............................................................5
  E.  Retentions .......................................................................................................6
**Section III – Exclusions** ........................................................................................6
  A.  Bodily Injury and Property Damage, Personal and Advertising Injury, and Medical
  Payments .............................................................................................................6
    1.  Asbestos...................................................................................................6
    2.  Contractual Liability ..................................................................................7
    3.  Distribution of Material in Violation of Statutes ..........................................7
    4.  Employee Benefits ....................................................................................7
    5.  Employment Practices...............................................................................7
    6.  Fungi or Bacteria ......................................................................................7
    7.  Lead .........................................................................................................8
    8.  Medical Professional Services ..................................................................8
    9.  Nuclear.....................................................................................................9
    10.  Professional Services .............................................................................11
    11.  Sexual Abuse ........................................................................................11
    12.  Silica and Silica-Related Dust ................................................................11
    13.  War ........................................................................................................11
  B.  Bodily Injury and Property Damage and Medical Payments ...............................12
    1.  Aircraft, Auto, or Watercraft....................................................................12
    2.  Expected or Intended Injury .....................................................................13
    3.  Personal and Advertising Injury................................................................13
    4.  Pollution..................................................................................................13
  C.  Bodily Injury and Medical Payments ..................................................................15
    1.  Employers Liability ..................................................................................15
    2.  Workers' Compensation and Similar Laws................................................15
  D.  Property Damage ..............................................................................................16
    1.  Damage to Property ................................................................................16
    2.  Damage to Your Product..........................................................................16
    3.  Damage to Your Work .............................................................................16
    4.  Damage to Impaired Property or Property Not Physically Injured ...................17
    5.  Recall of Products, Work, or Impaired Property .............................................17
  E.  Personal and Advertising Injury.........................................................................17
    1.  Breach of Contract ..................................................................................17
    2.  Deliberate Criminal Acts ..........................................................................17
    3.  Knowing Violation of Rights of Another .....................................................18
    4.  Material Published with Knowledge of Falsity ............................................18

Copyright ©, Porter & Curtis, LLC, 2007      F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

5.    Material Published Prior to Policy Period ....................................... 18
6.    Pollution.......................................................................................... 18
7.    Quality or Performance of Goods – Failure to Conform to Statements ........... 18
8.    Wrong Description of Prices............................................................ 18
F.    Medical Payments ................................................................................. 18
1.    Any Insured .................................................................................... 19
2.    Athletic Activities ........................................................................... 19
3.    Hired Person .................................................................................. 19
4.    Injury on Normally Occupied Premises ........................................... 19
5.    Students ......................................................................................... 19
6.    Workers Compensation and Similar Laws ...................................... 19
**Section IV – Definitions** ......................................................................... 19
"Accident" ...................................................................................................... 19
"Advertisement" ............................................................................................. 19
"Affiliate" ........................................................................................................ 20
"Auto"............................................................................................................. 20
"Benefit plan" ................................................................................................. 20
"Benefit program".......................................................................................... 20
"Bodily injury"................................................................................................. 21
"Claim"........................................................................................................... 21
"Coverage territory" ....................................................................................... 21
"Damages"...................................................................................................... 21
"Defense expenses" ...................................................................................... 21
"Domestic employee"..................................................................................... 22
"Electronic data" ............................................................................................ 22
"Employee"..................................................................................................... 22
"Employee benefits administrative services" ................................................. 22
"Employee Welfare Benefit Plan" .................................................................. 22
"Employment practices violation".................................................................... 22
"Executive"..................................................................................................... 22
"Fungi" ........................................................................................................... 22
"Harassment".................................................................................................. 22
"Hostile fire" ................................................................................................... 22
"Impaired property"........................................................................................ 23
"Independent contractor" ............................................................................... 23
"Insured" ........................................................................................................ 23
"Insured contract" .......................................................................................... 24
"Leased worker".............................................................................................. 25
"Loss".............................................................................................................. 25
"Medical expenses" ....................................................................................... 25
"Medical professional services" ..................................................................... 25
"Mobile equipment"........................................................................................ 25
"Occurrence"................................................................................................... 26
"Pension Benefit Plan"................................................................................... 26
"Personal and advertising injury offense" ..................................................... 26
"Policy period"................................................................................................ 27
"Pollutants" .................................................................................................... 27
"Post-judgment interest" ................................................................................ 27

        Copyright ©, Porter & Curtis, LLC, 2007        F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

"Pre-judgment interest" ............................................................................. 27
"Professional services" ............................................................................. 27
"Property damage" ..................................................................................... 28
"Religious person" ..................................................................................... 28
"Sexual abuse" .......................................................................................... 28
"Sexual harassment" ................................................................................. 28
"Subsidiary" ............................................................................................... 28
"Terrorism" ................................................................................................. 28
"Volunteer" ................................................................................................. 29
"Workplace tort" ......................................................................................... 29
"Wrongful employment action" ................................................................... 29
"Your product" ............................................................................................ 29
"Your work" ................................................................................................. 30
**Section V – General Conditions** .............................................................. 30
  A.  Defense and Settlement ........................................................................ 30
  B.  Duties in the Event of an Occurrence, Personal and Advertising Injury Offense,
Claim, or Expense ..................................................................................... 31
  C.  Inspections and Surveys ....................................................................... 31
  D.  Waiver of Transfer of Rights of Recovery Against Others to Us ......................... 32

   Copyright ©, Porter & Curtis, LLC, 2007   F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

GENERAL LIABILITY COVERAGE FORM

Throughout this Coverage Part, the words "you" and "your" refer to the person or organization first identified in Item 1 of the Declarations (the "first Named Insured") and any other person or organization qualifying as a Named Insured under this insurance. The words "we", "us", and "our" refer to the insurance company issuing this insurance. Other words or phrases that appear in quotation marks have special meaning. Refer to Section IV – Definitions.

In consideration of the payment of premium and subject to all the provisions of this policy, you and we agree as follows:

**Section I – Coverage**

A.    Bodily Injury and Property Damage

We will pay for "loss" resulting from a "claim" against an "insured" because of any actual or alleged "bodily injury" or "property damage" to which this insurance applies.

This insurance applies to "bodily injury" or "property damage" only if:

1.    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

2.    The "occurrence" commences during the "policy period".

B.    Personal and Advertising Injury

We will pay for "loss" resulting from a "claim" against an "insured" because of an actual or alleged "personal and advertising injury offense" to which this insurance applies.

This insurance applies to a "personal and advertising injury offense" only if:

1.    The "personal and advertising injury offense" arises out of your business; and

2.    The "personal and advertising injury offense" takes place in the "coverage territory" and commences during the "policy period".

C.    Medical Payments

We will pay for "medical expenses" because of an actual "bodily injury" to which this insurance applies.

This insurance applies to "bodily injury" only if:

1.    The "bodily injury" is caused by an "occurrence" that takes place in the "coverage territory";

2.    The "occurrence" commences during the "policy period";

3.    The "bodily injury" takes place on or next to premises you own or rent or because of your operations;

4.    The "medical expenses" are incurred and reported to us within one year of the date of the "occurrence"; and

            Copyright ©, Porter & Curtis, LLC, 2007            F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

5.    The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

We will make these payments regardless of fault.

## Section II – Limits of Insurance and Retentions

A.    Limits of Insurance

The applicable Limit of Insurance shown in Item 7(a) of the General Liability Coverage Part Declarations is the most we will pay for such coverage under this insurance from one (1) "occurrence" or any "personal and advertising injury offense" regardless of the number of:

1.    "Insureds" under this insurance; or

2.    Persons or organizations making "claims".

The Medical Payments Limit of Insurance is the most we will pay for all "medical expenses" because of "bodily injury" sustained by any one person.

These Limits are part of, and not in addition to the Each Loss Limit of Insurance, if any, shown in Item 6 of the General Liability Coverage Part Declarations and shall be reduced by the amount of any applicable Retention shown in Item 8 of the General Liability Coverage Part Declarations.

B.    Aggregate Limits of Insurance

The applicable Aggregate Limit of Insurance shown in Item 7(b) of the General Liability Coverage Part Declarations is the most we will pay under Coverages A and B and for all "medical expenses under Coverage C under this insurance. These Aggregate limits are part of, and not in addition to the General Aggregate Limit of Insurance, if any, shown in Item 6 of the General Liability Coverage Part Declarations.

Our obligation under this insurance for any particular coverage shall cease when the Aggregate Limit for that coverage, if any, has been exhausted by the payment of amounts we owe under such coverage.

C.    Each Loss Limit of Insurance

The Each Loss Limit of Insurance shown in Item 6 of the General Liability Coverage Part Declarations is the most we will pay under this insurance for all coverage from any one (1) "occurrence" or "personal and advertising injury offense" regardless of the number of:

1.    "Insureds" under this insurance;

2.    Persons or organizations making "claims"; or

3.    Coverages under this insurance.

D.    General Aggregate Limit of Insurance

The General Aggregate Limit of Insurance shown in Item 6 of the General Liability Coverage Part Declarations is the most we will pay for all coverage under this insurance.

Copyright ©, Porter & Curtis, LLC, 2007    F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

GENERAL LIABILITY COVERAGE FORM

Our obligation under this insurance shall cease when the General Aggregate Limit of Insurance has been exhausted by payment of amounts we owe under this insurance.

E.   Retentions

The highest applicable Retention shown in Item 8 of the General Liability Coverage Part Declarations is the most you will pay under this insurance from any one (1) "occurrence" or "personal and advertising injury offense" regardless of the number of:

1.   "Insureds" under this insurance;

2.   Persons or organizations making "claims"; or

3.   Coverages under this insurance.

Any amount paid by us shall be allocated by Coverage in proportion to the total amount such covered "loss" bears to the total amount of all covered "loss".  Any such allocated amounts shall erode any applicable Aggregate Limits of Insurance as set forth in Item 7(b) of the General Liability Coverage Part Declarations.

Any Retention shall be payable by us and reimbursed by you within thirty (30) days of our written request for reimbursement.  As a condition precedent to exercising any rights under this insurance, you shall advance claims funds and secure any remaining reimbursement obligation as we may require.

Your obligation under this insurance for any one (1) "occurrence" or "personal and advertising injury offense" shall cease when the highest applicable Retention has been exhausted by payment of amounts you owe for such "occurrence" or "personal and advertising injury offense" under this insurance.

## Section III – Exclusions

A.   Bodily Injury and Property Damage, Personal and Advertising Injury, and Medical Payments

The following exclusions apply to Coverage A. Bodily Injury and Property Damage, Coverage B. Personal and Advertising Injury, and Coverage C. Medical Payments:

This insurance does not apply to any "bodily injury", "property damage", or "personal and advertising injury offense":

1.   Asbestos

a.   Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, out of the actual, alleged, threatened, or suspected inhalation of, ingestion of, contact with, exposure to, or presence of, asbestos, asbestos products, asbestos containing material, asbestos fibers, or asbestos dust; or

b.   For any loss, cost, or expense arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, asbestos, asbestos products, asbestos

Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001
F GL 00 23 09 07

containing material, asbestos fibers, or asbestos dust, by any "insured" or by any other person or entity.

2.  Contractual Liability

For liability of others assumed in a contract or agreement.  This exclusion does not apply to liability:

a.  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury", "property damage", or "personal and advertising injury offense" happens after the execution of the contract or agreement; or

b.  You would have in the absence of the contract or agreement.

3.  Distribution of Material in Violation of Statutes

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, an actual or alleged violation of:

a.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

b.  The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c.  Any statute, ordinance, or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating, or distribution of material or information.

4.  Employee Benefits

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the rendering or failure to render "employee benefits administrative services".

This exclusion applies:

a.  Whether the "insured" may be liable as an employer or in any other capacity; or

b.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

5.  Employment Practices

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any actual or alleged "employment practices violation".

This exclusion applies:

a.  Whether the "insured" may be liable as an employer or in any other capacity; or

b.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

6.  Fungi or Bacteria

          Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001          F GL 00 23 09 07

    a.    Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage; or

    b.    For any loss, cost, or expense arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "fungi" or bacteria, by any "insured" or by any other person or entity.

However, with respect to "bodily injury" or "property damage", this exclusion does not apply to any "fungi" or bacteria that are on or are contained in, a good or product intended for bodily consumption.

7.    Lead

    a.    Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part,  the actual, alleged, threatened, or suspected inhalation of, ingestion of, contact with, exposure to, or presence of, lead; or

    b.    For any loss, cost or expense arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to or assessing the effects of, lead, by any "insured" or by any other person or entity.

8.    Medical Professional Services

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the rendering or failure to render "medical professional services".

This exclusion applies:

    a.    Whether the "insured" may be liable as an employer or in any other capacity; or

    b.    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to any "claim" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the rendering or failure to render emergency medical treatment, without remuneration, at the scene of an accident, medical crisis, or disaster.

Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001
F GL 00 23 09 07

9. Nuclear

a. For any liability:

1) With respect to which an "insured" under this insurance is also an "insured" under a nuclear energy liability policy issued by the Nuclear Energy Liability Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an "insured" under any such policy, but for its termination upon exhaustion of its limit of insurance; or

2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

b) An "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

b. For expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the operation of a "nuclear facility" by any person or organization.

c. Resulting from the "hazardous properties" or "nuclear material", if:

1) The "nuclear material":

a) Is at any "nuclear facility" owned by or operated by or on behalf of, an "insured"; or

b) Has been discharged or dispersed therefrom;

2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported, or disposed of by or on behalf of an "insured"; or

3) Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the furnishing by an "insured" of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereof.

       Copyright ©, Porter & Curtis, LLC, 2007       F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

As used in this exclusion:

**"By-product material"** means the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**"Hazardous properties"** means radioactive, toxic, or explosive properties.

**"Nuclear facility"** means:

1) Any "nuclear reactor";

2) Any equipment or device designed or used for:

    a) Separating the isotopes of uranium or plutonium,

    b) Processing or utilizing "spent fuel", or

    c) Handling, processing, or packaging "waste";

3) Any equipment or device used for the processing, fabricating, or alloying of "special nuclear material" if at any time the total amount of such material in the custody of an "insured" at the premises where such equipment or device is located consists of more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

4) Any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of "waste";

And includes the site on which any of the foregoing is located, all operations conducted on site and all premises used for such operations.

**"Nuclear material"** means "source material", "special nuclear material", or "by-product material".

**"Nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**"Source material"** has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**"Special nuclear material"** has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**"Spent fuel"** means any fuel element of fuel component, solid, or liquid, which has been used or exposed to radiation in a "nuclear reactor".

**"Waste"** means any waste material:

1) Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any one processed primarily for its "source material" content; and

2) Resulting from the operation by any person or organization of any "nuclear facility".

Copyright ©, Porter & Curtis, LLC, 2007    F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

10. Professional Services

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the rendering or failure to render "professional services" where such "professional services" are provided to others for a fee.

This exclusion applies:

a. Whether the "insured" may be liable as an employer or in any other capacity; or

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

11. Sexual Abuse

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any actual or alleged "sexual abuse".

This exclusion applies:

a. Whether the "insured" may be liable as an employer or in any other capacity; or

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

12. Silica and Silica-Related Dust

a. Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust"; or

b. For any loss, cost, or expense arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to, or assessing the effects of, "silica" or "silica-related dust", by any "insured" or by any other person or entity.

As used in a. and b. above:

**"Silica"** means silicon dioxide (occurring in crystalline, amorphous, or impure forms), silica particles, silica dust, or silica compounds; and

**"Silica-related dust"** means a mixture or combination of silica and other dust or particles.

13. War

However caused, arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, from:

a. War, including undeclared or civil war;

          Copyright ©, Porter & Curtis, LLC, 2007          F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

  b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

  c. Insurrection, rebellion, revolution, usurped power, or action taken by a government authority in hindering or defending against any of these.

  This exclusion does not apply to "terrorism".

**B.** Bodily Injury and Property Damage and Medical Payments

The following additional exclusions apply to Coverage A. Bodily Injury and Property Damage and Coverage C. Medical Payments:

This insurance does not apply to any "bodily injury" or "property damage":

1. Aircraft, Auto, or Watercraft

  Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, caused by an "accident" and resulting from the ownership, maintenance, use, or entrustment to others of any aircraft, "auto", or watercraft.

  This exclusion applies even if the claim against the "insured" alleges negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use, or entrustment to others of any aircraft, "auto", or watercraft that is owned or operated by or rented or loaned to any "insured".

  This exclusion does not apply to:

  a. Watercraft:

   1) While ashore; or

   2) Not being used to transport persons or property for a charge;

   However, subsections 1) and 2) above do not apply to "property damage" to any watercraft rented or loaned to you.

  b. Parking an "auto" on, or on the ways next to, premises you own or rent provided the "auto" is not owned by or rented or loaned to you;

  c. Liability assumed under any "insured contract" for the ownership, maintenance, or use of aircraft or watercraft;

  d. "Bodily injury" or "property damage" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the operation of any machinery or equipment attached to an "auto" other than equipment designed primarily for:

   1) Snow removal;

   2) Road maintenance, but not construction or resurfacing; or

   3) Street cleaning;

   Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001  F GL 00 23 09 07

e.  "Bodily injury" or "property damage" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, "your work" after that work has been completed or abandoned; or

f.  "Bodily injury" or "property damage" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, remotely piloted aircraft.

2.  Expected or Intended Injury

Expected or intended from the standpoint of the "insured". This exclusion does not apply to "bodily injury" resulting from:

a.  The use of force to protect persons or property; or

b.  Corporal punishment, unless prohibited by law.

3.  Personal and Advertising Injury

For any actual or alleged "personal and advertising injury offense".

4.  Pollution

a.  Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants":

1)  At or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to any "insured".

However, this subparagraph does not apply to:

a)  "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor, or soot produced by or originating from equipment that is used to heat, cool, or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

b)  "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your insurance as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any "insured", other than that additional insured;

c)  "Bodily injury" or "property damage" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, heat, smoke, or fumes from a "hostile fire"; or

d)  "Bodily injury" or "property damage" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, from the use of force to protect persons or property;

    Copyright ©, Porter & Curtis, LLC, 2007    F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

2)    At or from any premises, site or location which is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing, or treatment of waste;

3)    Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

a)    Any "insured"; or

b)    Any person or organization for whom you may be legally responsible;

4)    At or from any premises, site, or location on which any "insured" or any contactors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site, or location in connection with such operations by such "insured", contractor, or subcontractor.

However, this subparagraph does not apply to:

a)    "Bodily injury" or "property damage" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the escape of fuels, lubricants, or other operating fluids which are needed to perform the normal electrical, hydraulic, or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants, or other operating fluids escape from a vehicle part designed to hold, store, or receive them.  This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal, or release of the fuels, lubricants, or other operating fluids, if such fluids, lubricants, or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed, or released as part of the operations being performed by such "insured", contractor, or subcontractor;

b)    "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes, or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

c)    "Bodily injury" or "property damage" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, heat, smoke, or fumes from a "hostile fire"; or

5)    At or from any premises, site, or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify,

    Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

b. Any loss, cost, or expense arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any:

1) Request, demand, order, or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

2) Claim by or on behalf of a governmental authority for damages from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for "damages" because of "property damage" that the "insured" would have in the absence of such request, demand, order, or statutory or regulatory requirement, or such "claim" by or on behalf of a governmental authority.

C. Bodily Injury and Medical Payments

The following additional exclusions apply to Bodily Injury under Coverage A. Bodily Injury and Property Damage and Coverage C. Medical Payments:

This insurance does not apply to:

1. Employers Liability

a. "Bodily injury" to an "employee" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, and in the course of:

1) Employment by the "insured"; or

2) Performing duties related to the conduct of the "insured's" business; or

b. "Bodily injury" to the spouse, child, parent, legal guardian, brother, or sister of that "employee" as a consequence of a. above.

This exclusion applies:

1) Whether the "insured" may be liable as an employer or in any other capacity; or

2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to "bodily injury" to "domestic employees" not entitled to workers compensation benefits or to liability assumed by the "insured" under an "insured contract".

2. Workers' Compensation and Similar Laws

    Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

Any obligation under a workers' compensation, disability benefits, or unemployment compensation law or any similar law.

D.   Property Damage

The following additional exclusions apply to Property Damage under Coverage A. Bodily Injury and Property Damage:

This insurance does not apply to any:

1.   Damage to Property

"Property damage" to any:

a.   Property you own, rent, or occupy;

b.   Premises you sell, give away, or abandon, if the "property damage" arises out of any part of those premises;

c.   Property loaned to you;

d.   Property in the care, custody, or control of the "insured";

e.   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

f.   That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

Paragraphs (a), (c), and (d) of this exclusion do not apply to liability, including contents of such premises, assumed under an "insured contract".

Paragraph (b) of this exclusion does not apply if the premises are "your work" and were never occupied, rented, or held for rental by you.

Paragraphs (c) and (d) do not apply to "property damage" to premises, including the contents of such premises, rented to you.

Paragraphs (c), (d), (e), or (f) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (d) does not apply to property carried on persons at the time they are apprehended to protect persons or property.

2.   Damage to Your Product

"Property damage" to "your product" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, it or any part of it.

3.   Damage to Your Work

"Property damage" to "your work" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, it or any part of it.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001
F GL 00 23 09 07

4.    Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of, based upon, or attributable to, directly or indirectly, in whole or in part:

a.    A defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work"; or

b.    A delay or failure by you or anyone else acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

5.    Recall of Products, Work, or Impaired Property

"Loss" claimed for loss, cost, or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of:

a.    "Your product";

b.    "Your work" or

c.    "Impaired property";

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

E.   Personal and Advertising Injury

The following additional exclusions apply to Coverage B. Personal and Advertising Injury:

This insurance does not apply to any "personal and advertising injury offense":

1.    Breach of Contract

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

2.    Deliberate Criminal Acts

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, a deliberate criminal act committed by or at the direction of an "insured"; provided, however, this exclusion shall not apply to "defense expenses".  However, this exclusion shall not even apply to "damages" unless the "insured" pleads guilty or nolo contendere or the criminal act is established by final and non-appealable adjudication.  Any act or acts by one or more "insureds" shall not be imputed to any other "insured" for the purposes of determining the applicability of this exclusion.  Only facts possessed by an "executive" shall be imputed to an organization.

          Copyright ©, Porter & Curtis, LLC, 2007      F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

3.  Knowing Violation of Rights of Another

Caused by or at the direction of the "insured" with the knowledge that the act would violate the rights of another; provided, however, this exclusion shall not apply to "defense expenses".  However, this exclusion shall not even apply to "damages" unless the "insured" pleads guilty or nolo contendere or the act is established by final and non-appealable adjudication.  Any act or acts by one or more "insureds" shall not be imputed to any other "insured" for the purposes of determining the applicability of this exclusion.  Only facts possessed by an "executive" shall be imputed to an organization.

4.  Material Published with Knowledge of Falsity

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity; provided, however, this exclusion shall not apply to "defense expenses".  However, this exclusion shall not even apply to "damages" unless the "insured" pleads guilty or nolo contendere or the falsity is established by final and non-appealable adjudication.  Any act or acts by one or more "insureds" shall not be imputed to any other "insured" for the purposes of determining the applicability of this exclusion.  Only facts possessed by an "executive" shall be imputed to an organization.

5.  Material Published Prior to Policy Period

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, oral or written publication of material whose first publication took place before the beginning of the "policy period".

6.  Pollution

a.  Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants" at any time; or

b.  For any loss, cost, or expense arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to, or assessing the effects of, "pollutants", by any "insured" or by any other person or entity.

7.  Quality or Performance of Goods – Failure to Conform to Statements

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the failure of goods, products, or services to conform with any statement of quality or performance made in your "advertisement".

8.  Wrong Description of Prices

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the wrong description of price of goods, products, or services stated in your "advertisement".

F.  Medical Payments

          Copyright ©, Porter & Curtis, LLC, 2007          F GL 00 23 09 07
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

The following additional exclusions apply to Coverage C. Medical Payments:

This insurance does not apply to any "medical expenses" for "bodily injury":

1. Any Insured

   To any "insured", except "volunteers".

2. Athletic Activities

   To any person injured while practicing, instructing, or participating in any physical exercises, games, sports, or athletic contests.

3. Hired Person

   To any person hired to do work for or on behalf of any "insured" or a tenant of any "insured".

4. Injury on Normally Occupied Premises

   To any person injured on that part of premises you own or rent that the person normally occupies.

5. Students

   To any of your students under the age of majority while:

   a. Attending your school during the hours and on the days when school is in regular session; or

   b. Participating in or attending any activity exclusively organized, sponsored, and supervised by the school.

6. Workers Compensation and Similar Laws

   To any person if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**Section IV – Definitions**

These terms, whether in their singular, singular possessive, plural, or plural possessive, have special meaning as follows:

**"Accident"** means an unexpected and undesirable event, including continuous or repeated exposure to substantially the same general harmful conditions. Any such continuous or repeated exposure shall be deemed to occur at the time of the earliest exposure.

**"Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about your goods, products, or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2. Regarding web-sites, only that part of a web-site that is about your goods, products, or services for the purposes of attracting customers or supporters is considered an "advertisement".

          Copyright ©, Porter & Curtis, LLC, 2007       F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

**"Affiliate"** means an organization that a person or organization identified in Item 1 of the Declarations, or any person by virtue of holding an office or position with such organization, either directly or indirectly or through any "subsidiary" or other "affiliate", has the ability to control by means of the right to:

1.    Elect or appoint the general partner or manager or a majority of the directors or trustees;

2.    Serve ex officio as general partner or manager or as a director or trustee and represent a majority of the directors or trustees, individually, or collectively with any:

    a.    Other ex officio director or trustee; or

    b.    Right of such person or persons to elect or appoint any other director or trustee; or

3.    Direct any financial or managerial decision making, whether by operation of law, pursuant to contract or agreement, or pursuant to such entity's charter, articles of association, or by-law provisions.

**"Auto"** means:

1.    A land motor vehicle, trailer, or semitrailer designed for travel on public roads; or

2.    Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**"Benefit plan"** means any:

1.    "Employee Welfare Benefit Plan";

2.    "Pension Benefit Plan";

3.    Government mandated insurance program for workers compensation, unemployment, social security, or disability benefits, including programs governed by the Consolidated Omnibus Reconciliation Act of 1985, as amended, or the Health Insurance Portability and Accountability Act of 1996, as amended;

4.    Other employee benefit plan or program not defined in the Employee Retirement Income Security Act of 1974, as amended; or

5.    Any other plan or program otherwise described in the paragraphs above while such plan or program is being actively developed, formed or proposed by you prior to the formal creation of such plan or program.

**"Benefit program"** means a "benefit plan" sponsored, operated, maintained, or administered by a person or organization identified in Item 1 of the Declarations, either directly or indirectly or through any "subsidiary" or "affiliate".

          Copyright ©, Porter & Curtis, LLC, 2007          F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

**"Bodily injury"** means physical injury, sickness, or disease sustained by a person, including death resulting from any of these at any time and any associated emotional distress, mental anguish, mental injury, shock, or fright.

**"Claim"** means:

1.    A written demand for monetary relief or non-monetary relief;

2.    A civil proceeding commenced by the service of a complaint or similar pleading;

3.    An administrative or regulatory inquiry, investigation, or proceeding brought by a governmental entity or similar authority;

4.    A disciplinary inquiry, investigation, or proceeding brought by an accrediting organization, athletic association, or professional society;

5.    An alternative dispute resolution proceeding commenced by a notice or written demand;

6.    A criminal inquiry, investigation, or proceeding; or

7.    A written request to toll or waive a statute of limitations.

**"Coverage territory"** means anywhere in the world.

**"Damages"** means sums an "insured" becomes legally obligated to pay for any:

1.    Compensatory damages;

2.    Statutory damages;

3.    Nominal damages;

4.    "Pre-judgment interest" or "post-judgment interest";

5.    Plaintiff's attorneys fees or costs;

6.    Punitive or exemplary damages or the multiplied portions of any multiplied damage award to the extent such amounts are insurable under the law of the jurisdiction most favorable to the insurability of such amounts provided such jurisdiction has a substantial relationship to the relevant "insureds", to the insurer, or to the "claim"; or

7.    Fines and penalties to the extent such amounts are insurable under the law of the jurisdiction most favorable to the insurability of such amounts provided such jurisdiction has a substantial relationship to the relevant "insureds", to the insurer, or to the "claim".

**"Defense expenses"** means, with respect to a "claim" we defend, including any appeal therefrom, any:

1.    Expenses we incur;

2.    Cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance;

3.    Expenses incurred by you at our request to assist us in the investigation or defense of the "claim"; or

Copyright ©, Porter & Curtis, LLC, 2007          F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

4.   Court costs taxed against you in the "claim".

**"Domestic employee"** means a person engaged in household or domestic work performed principally in connection with a residential premise.

**"Electronic data"** means any information, facts, or programs stored as or on, created or used on, or transmitted to or from computer software, including systems or applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices, or any other media which are used with electronically controlled equipment.

**"Employee"** means a person who receives any wages, salary, or commissions by you for any labor provided on a full-time, part-time, temporary, or seasonal basis. However, "employee" does not include "executive", "independent contractor", "leased worker", or "religious person".

**"Employee benefits administrative services"** means, with respect to a "benefit program", any:

1.   Counseling of a participant, including any dependent or beneficiary;

2.   Handling of a record; or

3.   Effecting or terminating a person's participation.

**"Employee Welfare Benefit Plan"** means any plan so defined in the Employee Retirement Income Security Act of 1974, as amended.

**"Employment practices violation"** means any employment related discrimination, "harassment", "workplace tort", employment related retaliation, or "wrongful employment action".

**"Executive"** means a person who serves you as any:

1.   Director or officer (if you are an organization other than a partnership);

2.   Trustee (if you are a trust);

3.   Manager or managing member (if you are a limited liability company);

4.   General partner (if you are a partnership);

5.   Member of a school board (if you are a school organization);

6.   Member of an advisory board (if you are an organization);

7.   Member of a duly constituted committee (if you are an organization); or

8.   Functional equivalent of the above if serving outside the United States.

**"Fungi"** means type or form of fungus, including mold or mildew or any mycotoxins, spores, scents, or byproducts produced or released by fungi.

**"Harassment"** means employment related harassment, including "sexual harassment".

**"Hostile fire"** means a fire which becomes uncontrollable or breaks out from where it was intended to be.

        Copyright ©, Porter & Curtis, LLC, 2007        F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

**"Impaired property"** means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

1.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate, or dangerous; or

2.  You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

1.  The repair, replacement, adjustment, or removal of "your product" or "your work"; or

2.  Your fulfilling the terms of the contract or agreement.

**"Independent contractor"** means a person who performs services for you or on your behalf under an express or implied agreement and who is not subject to your control or right to control the manner and means of performing the services.

**"Insured"** means any:

1.  Person or organization identified in Item 1 of the Declarations;

2.  "Subsidiary", "affiliate", or "benefit program", existing prior to or created or acquired on or after the inception date of this insurance.

    Any organization identified in 2. above also qualifies as a Named Insured under this insurance;

3.  Student or parent organization formally recognized by you existing prior to or created or acquired on or after, the inception date of this insurance.

    Any organization identified in 3. above also qualifies as a Named Insured under this insurance;

4.  Person in his or her capacity as any "executive", "employee", "volunteer", or "leased worker" but only if you agreed in writing to indemnify such "leased worker" or the leasing company, or "independent contractor" but only if you agreed in writing to indemnify such "independent contractor";

5.  Your member or representative to an education association in his or her capacity as such;

6.  Your student while serving as a student teacher or teaching assistant, participating in a supervised internship program in satisfaction of course requirements, or performing services for you or on your behalf;

7.  "Religious person" in his or her capacity as such.

    Any person identified in 7. above may also qualify as a Named Insured under this insurance if such status is in accordance with the records or intent of the first Named Insured;

8.  Your stockholder (if you are an organization other than a partnership or limited liability company), member (if you are a limited liability company) other than a managing member, or partner (if you are a partnership) other than a general partner, but only in his or her capacity as such;

Copyright ©, Porter & Curtis, LLC, 2007      F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

9. Person, other than an "employee" or a "volunteer", or organization in their capacity as your real estate manager;

10. Person while operating your "mobile equipment" with your permission.  Any other person or organization responsible for the conduct of such person is also an "insured", but only with respect to liability arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the operation of the "mobile equipment";

11. Person or organization you agree to insure, but only if the "bodily injury", "property damage", or "personal and advertising injury offense" occurs after the date of agreement.  The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance;

12. Any other person or organization not identified in the subsections above who is liable for the conduct of a person accepted as a member of a Catholic religious institute or a society of apostolic life provided such person qualifies as a "religious person" and then only to the extent of that liability;

13. Lawful spouse of any person identified above for any "claim" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, his or her status as the spouse of such person or his or her ownership interest in property which the claimant seeks as damages, where such person is entitled to coverage under this insurance;

14. Debtor-in-possession under United States bankruptcy law or equivalent status under the law of any other country of any organization identified above; or

15. Estate, heir, legal representative, or assign of any person identified above but only with respect to an "occurrence" or "personal and advertising injury offense" involving such person as provided for above.

**"Insured contract"** means:

1. A contract for a lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. An elevator maintenance agreement; or

6. That part of any other contract or agreement pertaining to your business (including indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for any "bodily injury", "property damage", or "personal and advertising injury offense" to a third party or organization.  Tort liability means liability that would be imposed by law in the absence of any contract or agreement.

Copyright ©, Porter & Curtis, LLC, 2007        F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

An "insured contract" does not include any part of any contract or agreement that indemnifies:

a.    A railroad for "bodily injury" or "property damage" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass, or crossing; or

b.    An architect or engineer or a surveyor for "bodily injury" or "property damage" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part:

1)    Preparing, approving, or failing to prepare or approve any map, shop drawing, opinion, report, survey, field order, change order, drawing, or specification; or

2)    Giving any direction or instruction, or failing to give them, if that is the primary cause of the "bodily injury" or "property damage".

**"Leased worker"** means a person leased by you or on your behalf from a labor leasing firm under a written contract or agreement.

**"Loss"** means any "damages" or "defense expenses".

**"Medical expenses"** means any reasonable and necessary expenses for

1.    First aid administered at the time of an "occurrence";

2.    Medical, surgical, x-ray, or dental services, including prosthetic devices, incurred within one year of an "occurrence"; or

3.    Ambulance, hospital, professional nursing, or funeral services incurred within one year of an "occurrence".

**"Medical professional services"** means any:

1.    Medical, surgical, dental, x-ray, or nursing service, treatment, advice or instruction, including the related furnishing of food or beverages;

2.    Furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances; or

3.    Handling of dead bodies or the performance of autopsies.

**"Mobile equipment"** means any of the following types of land vehicles, including any attached machinery or equipment:

1.    Bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads;

2.    Vehicles maintained for use solely on or next to premises you own or rent;

3.    Vehicles that travel on crawler treads;

4.    Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        Copyright ©, Porter & Curtis, LLC, 2007        F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

    a.    Power cranes, shovels, loaders, diggers, or drills; or

    b.    Road construction or resurfacing equipment such as graders, scrapers, or rollers;

5.    Vehicles not described in Paragraph 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a.    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

    b.    Cherry pickers and similar devices used to raise or lower workers; or

6.    Vehicles not described in Paragraph 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types or permanently attached equipment are not "mobile equipment" but will be considered "autos":

    a.    Equipment designed primarily for:

        1)    Snow removal;

        2)    Road maintenance, but not construction or resurfacing; or

        3)    Street cleaning;

    b.    Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c.    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. Any such continuous or repeated exposure shall be deemed to commence at the time of the earliest exposure.

**"Pension Benefit Plan"** means any plan so defined in the Employee Retirement Income Security Act of 1974, as amended.

**"Personal and advertising injury offense"** means, including continuous or repeated exposure to substantially the same general harmful conditions, any:

1.    False arrest, detention, or imprisonment;

2.    Malicious prosecution;

    Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001    F GL 00 23 09 07

3.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;

4.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

5.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

6.  The use of another's advertising idea in your "advertisement";

7.  Infringing upon another's copyright, trade dress, or slogan in your "advertisement"; or

8.  As respects the use of force to protect persons or property:

    a.  Assault or battery;

    b.  Discrimination;

    c.  Erroneous, false, or improper service of process;

    d.  Humiliation;

    e.  Emotional distress, mental anguish, mental injury, shock, or fright, except when resulting from "bodily injury";

    f.  Violation of civil rights under any federal, state, or local law; or

    g.  Wrongful entry, eviction or other invasion of the right of public occupancy.

Any continuous or repeated exposure shall be deemed to commence at the time of the earliest exposure.

**"Policy period"** means the period of time from the effective date of this insurance to the cancellation date or, if none, then the expiration date, as specified in Item 2 of the Declarations.  The date and time are the Local Standard Time at your mailing address shown in Item 1 of the Declarations.

**"Pollutants"** means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste, or waste materials to be recycled, reconditioned, or reclaimed.

**"Post-judgment interest"** means all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

**"Pre-judgment interest"** means that particular amount of interest awarded against an "insured" on that part of the judgment we pay.  If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**"Professional services"** means any:

          Copyright ©, Porter & Curtis, LLC, 2007        F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

1.  Service which requires a license, masters or doctorate degree, or certification; or

2.  Other service requiring any specialized knowledge, skill, or professional judgment.

However, "professional services" does not include "medical professional services" or the use of force to protect persons or property.

"**Property damage**" means any:

1.  Physical injury to tangible property, including all loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

"**Religious person**" means a person (if you are an organization):

1.  Ordained as a Catholic priest or deacon and who works for you or on your behalf or is incardinated with you;

2.  Accepted as a member of a Catholic religious institute or a society of apostolic life and who works for you or on your behalf ; or

3.  Sponsored by the first Named Insured in a program of formation for the priesthood or diaconate;

But only if the person qualifies as such in accordance with the records or intent of the first Named Insured.

"**Sexual abuse**" means criminal sexual conduct by anyone of any person while in your care, custody, or control.  "Sexual abuse" does not include "sexual harassment".

"**Sexual harassment**" means any unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature made a condition of employment, used as a basis for employment decisions, or that creates an intimidating, hostile, or offensive work environment.

"**Subsidiary**" means an organization that a person or organization identified in Item 1 of the Declarations, either directly or indirectly or through any "affiliate" or other "subsidiary", has the ability to control by means of membership or ownership of a majority of the issued and outstanding voting stock.

"**Terrorism**" means act, including the use of force or violence, of any person or group of persons, whether acting alone or on behalf of or in connection with any organization, committed for any political, religious, or ideological purposes including the intention to influence any government or to put the public in fear for such purposes.

         Copyright ©, Porter & Curtis, LLC, 2007         F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

**"Volunteer"** means a person who donates his or her work to you and is directed by you or on your behalf.  However, "volunteer" does not include "executive" or "religious person".

**"Workplace tort"** means any employment related:

1.    False imprisonment;

2.    Libel, slander, or defamation;

3.    Detention;

4.    Invasion of privacy;

5.    Malicious prosecution; or

6.    Misrepresentation.

**"Wrongful employment action"** means any employment related:

1.    Wrongful dismissal, discharge, termination, or constructive termination of employment;

2.    Wrongful failure to employ or promote;

3.    Wrongful deprivation of career opportunity;

4.    Wrongful demotion;

5.    Negligent employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

6.    Wrongful discipline;

7.    Failure to grant tenure or practice privileges;

8.    Failure to provide or enforce adequate or consistent organizational policies or procedures;

9.    Failure to train; or

10.   Violation of an individual's civil rights.

**"Your product"** means any

1.    Goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by:

    a.    You;

    b.    Others trading under your name; or

    c.    A person or organization whose business or assets you have acquired; and,

2.    Containers (other than "autos"), materials, parts, or equipment furnished in connection with such goods or products;

and includes:

    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of "your product"; or

   b.    The providing of or failure to provide warnings or instructions.

However, "your product" does not include any vending machines or other property rented to or located for the use of others but not sold.

**"Your work"** means any

1.    Work or operations performed by you or on your behalf; or

2.    Materials, parts, or equipment furnished in connection with such work or operations;

"Your work" includes warranties or representations made at any time with respect to the fitness, quality, durability, or performance of any of the items included in Paragraph 1. or 2. above.

"Your work" will be deemed completed at the earliest of the following times:

   a.    When all of the work called for in your contract has been completed;

   b.    When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

   c.    When that part of the work done at a job has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise completed, will be treated as completed.

## Section V – General Conditions

The following conditions apply in addition to the Common Policy Conditions:

A.    Defense and Settlement

We shall have the right and duty to investigate an "occurrence" or "personal and advertising injury offense" and handle any "claim" or expense and defend any "claim" and settle the "claim", but only with the consent of the first Named Insured. We shall also have the right and duty to subrogate the cost of the "claim" and expense if we pay any monies due under this insurance.  If the first Named Insured refuses consent to a settlement in accordance with our recommendation that is acceptable to the claimant and is within this insurance's applicable Limit of Insurance shown in Items 6 or 7(a) of the General Liability Coverage Part Declarations;

1.    The first Named Insured will thereafter be solely responsible for investigating, handling, defending, and settling such "claim" at their own expense; and

2.    Subject to any applicable Aggregate Limit of Insurance shown in Items 6 or 7(b) of the General Liability Coverage Part Declarations, our liability with respect to such "claim" shall not exceed the amount for which such "claim" could have been settled by us, including "defense expenses" incurred up to and until the time that the first Named Insured refuses consent to the settlement.

We shall pay on your behalf any monies due under this insurance.

                    Copyright ©, Porter & Curtis, LLC, 2007            F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

GENERAL LIABILITY COVERAGE FORM

Our obligation to defend you ends when we have used up the applicable Limit of Insurance.

B. Duties in the Event of an Occurrence, Personal and Advertising Injury Offense, Claim, or Expense

1. You shall, upon knowledge by the first Named Insured or by any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, give us written notice as soon as practicable of an "occurrence", "personal and advertising injury offense", "claim", or expense to which this insurance may apply.  To the extent applicable and possible, notice shall include:

   a. The Named Insured's name and address;

   b. How, when, and where the "occurrence" or "personal and advertising injury offense" took place;

   c. The names and addresses of any injured persons or witnesses;

   d. The date any "claim" or expense was received; and

   e. Copies of any demands, notices, summonses, or legal papers received in connection with the "claim" or expense.

2. You must:

   a. Cooperate with us;

   b. Authorize us to obtain records and other information;

   c. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of a breach of duty to which this insurance may apply; and

   d. Seek our consent to make any payment, assume any obligation, incur any expense, other than for first aid, or make any admission of liability.

C. Inspections and Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports, or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.  And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes, or standards.

Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001
F GL 00 23 09 07

GENERAL LIABILITY COVERAGE FORM

    3.    Paragraphs 1. and 2. above apply not only to us, but also to any rating, advisory, rate service, or similar organization which makes insurance inspections, surveys, reports, or recommendations.

    4.    Paragraph 2. above does not apply to any inspections, surveys, reports, or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

D.    Waiver of Transfer of Rights of Recovery Against Others to Us

We waive any right of recovery we may have against any person or organization if such rights of recovery were waived by you or on your behalf under an "insured contract" prior to the "occurrence" or "personal and advertising injury offense".

    Copyright ©, Porter & Curtis, LLC, 2007    F GL 00 23 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

NOTICE:  THIS IS DEFENSE EXPENSE WITHIN LIMITS INSURANCE.  DEFENSE EXPENSES SHALL REDUCE, AND MAY EXHAUST, THE LIMITS OF INSURANCE.

ECCLESIA ASSURANCE COMPANY
50 North Park Avenue
Rockville Centre, New York  11570

COMMERCIAL PACKAGE POLICY
**BUSINESS AUTO COVERAGE PART DECLARATIONS**

Policy Number:    PKG-2018-1                Date Effective:    11/1/2018

ITEM 6:    <u>Overall Limits of Insurance</u>:

| | |
|---|---|
| Each Loss | None Applicable |
| General Aggregate | None Applicable |

ITEM 7:    <u>Limits of Insurance</u>:

| Coverage | 7(a) Limit of Insurance | 7(b) Aggregate Limit of Insurance |
|---|---|---|
| Bodily Injury and Property Damage | $750,000 Each "Accident" | None Applicable |
| Uninsured and Underinsured Motorists | $750,000 Each "Accident" for any person qualifying as a Named Insured or Statutory Minimum Each "Accident" for any other "insured" | None Applicable |
| Personal Injury Protection | Statutory Maximum Each "Accident" for any person qualifying as a Named Insured or Statutory Minimum Each "Accident" for any other "insured" | None Applicable |
| Comprehensive | Actual Cash Value Each "Accident" | None Applicable |
| Collision | Actual Cash Value Each "Accident" | None Applicable |
| Towing | $75 Each Disablement | None Applicable |
| Rental Reimbursement | $75 each day up to a maximum of 30 days | None Applicable |

| Coverage | 7(a) Limit of Insurance | 7(b) Aggregate Limit of Insurance |
|---|---|---|
| | Each Disablement | |
| Loss of Use Expenses | $75 each day up to a maximum of 30 days Each Disablement | None Applicable |

ITEM 8:    Retentions                    $250,000 Each "Accident"

ITEM 9:    Premium:

9(a) Deposit Premium                $414,647

9(b) Type                           Not Adjustable

9(c) Minimum Earned Premium          $414,647

9(d) Rate                           Not Applicable

9(e) Deposit Exposure Basis         Not Applicable

9(f) Deposit Premium attributable to the Terrorism Risk Insurance Act        Not Applicable

ITEM 10:    Notices:

10(a) Any "accident" or "claim"       Ecclesia Assurance Company
                                      50 North Park Avenue
                                      Rockville Centre, NY  11570

10(b) Any other matter                Ecclesia Assurance Company
                                      50 North Park Avenue
                                      Rockville Centre, NY  11570

In witness whereof, this Coverage Part has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        2/25/2019
Authorized Representative's Signature        Date

Copyright ©, Porter & Curtis, LLC, 2007        D BA 02 05 09 07

BUSINESS AUTO COVERAGE FORM TABLE OF CONTENTS

**Section I – Coverage** ..................................................................................................4
  A.  Bodily Injury and Property Damage ......................................................................4
  B.  Uninsured and Underinsured Motorists ...............................................................4
  C.  Personal Injury Protection ...................................................................................4
  D.  Comprehensive ...................................................................................................5
  E.  Collision ...............................................................................................................5
  F.  Towing .................................................................................................................5
  G.  Rental Reimbursement ........................................................................................5
  H.  Loss of Use Expenses .........................................................................................6
**Section II – Limits of Insurance and Retentions** ....................................................6
  A.  Limits of Insurance ..............................................................................................6
  B.  Aggregate Limits of Insurance .............................................................................6
  C.  Each Loss Limit of Insurance ...............................................................................6
  D.  General Aggregate Limit of Insurance ..................................................................7
  E.  Retentions ...........................................................................................................7
**Section III – Exclusions** .............................................................................................7
  A.  Bodily Injury and Property Damage, Uninsured and Underinsured Motorists,
  Personal Injury Protection, Comprehensive, Collision, Towing, Rental Reimbursement,
  and Loss of Use Expenses ........................................................................................7
    1.  Nuclear ...........................................................................................................8
    2.  Racing .............................................................................................................8
    3.  War ..................................................................................................................8
  B.  Bodily Injury and Property Damage ......................................................................8
    1.  Completed Operations .....................................................................................8
    2.  Contractual Liability .........................................................................................8
    3.  Expected or Intended Injury .............................................................................9
    4.  Medical Professional Services ..........................................................................9
    5.  Operations ......................................................................................................9
    6.  Pollution .........................................................................................................9
    7.  Professional Services .....................................................................................10
    8.  Sexual Abuse ................................................................................................10
  C.  Bodily Injury ......................................................................................................11
    1.  Employers Liability .........................................................................................11
    2.  Workers' Compensation and Similar Laws ......................................................11
  D.  Property Damage ...............................................................................................11
    1.  Care, Custody, or Control ...............................................................................11
  E.  Uninsured and Underinsured Motorists ..............................................................11
    1.  Unlicensed Driver ..........................................................................................12
  D.  Personal Injury Protection .................................................................................12
    1.  Felonies ........................................................................................................12
    2.  Eluding Police ................................................................................................12
    3.  Drugs or Alcohol ...........................................................................................12
    4.  Expected or Intended Injury ...........................................................................12
    5.  Workers Compensation ..................................................................................12
  E.  Comprehensive and Collision .............................................................................12

Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001
F BA 00 19 09 07

    1.    Diminution in Value ....................................................................... 12
    2.    Wear and Tear ............................................................................ 12
**Section IV – Definitions** ................................................................................ 13
    "Accident" ............................................................................................. 13
    "Actual cash value" .............................................................................. 13
    "Affiliate" .............................................................................................. 13
    "Auto"................................................................................................... 13
    "Benefit plan" ....................................................................................... 13
    "Benefit program" ................................................................................ 13
    "Bodily injury" ...................................................................................... 14
    "Claim" ................................................................................................. 14
    "Coverage territory" ............................................................................. 14
    "Covered auto"..................................................................................... 14
    "Damages"............................................................................................ 15
    "Defense expenses" ............................................................................ 15
    "Domestic employee"........................................................................... 15
    "Employee" .......................................................................................... 15
    "Executive"........................................................................................... 15
    "Independent contractor" ..................................................................... 16
    "Insured" .............................................................................................. 16
    "Insured contract" ................................................................................ 17
    "Leased worker".................................................................................... 17
    "Loss"................................................................................................... 17
    "Medical professional services" ........................................................... 17
    "Outstanding balance" ......................................................................... 18
    "Policy period"...................................................................................... 18
    "Pollutants"........................................................................................... 18
    "Post-judgment interest" ...................................................................... 18
    "Pre-judgment interest"........................................................................ 18
    "Professional services" ........................................................................ 18
    "Property damage"................................................................................ 18
    "Religious person" ................................................................................ 18
    "Sexual abuse" .................................................................................... 19
    "Subsidiary" ......................................................................................... 19
    "Terrorism"........................................................................................... 19
    "Underinsured auto".............................................................................. 19
    "Uninsured auto"................................................................................... 19
    "Volunteer"........................................................................................... 20
    "Your work" .......................................................................................... 20
**Section V – General Conditions**................................................................... 20
    A.    Bodily Injury and Property Damage, Uninsured and Underinsured Motorists,
Personal Injury Protection, Comprehensive, Collision, Towing, Rental Reimbursement,
and Loss of Use Expenses................................................................................ 20
    1.    Duties in the Event of an Accident or Claim ..................................... 21
    2.    Waiver of Transfer of Rights of Recovery Against Others to Us...................... 21
    B.    Uninsured and Underinsured Motorists, Personal Injury Protection,
Comprehensive, Collision, Towing, Rental Reimbursement, and Loss of Use
Expenses........................................................................................................... 21

Copyright ©, Porter & Curtis, LLC, 2007    F BA 00 19 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

BUSINESS AUTO COVERAGE FORM

    1.    Settlement.................................................................................................21
C.   Bodily Injury and Property Damage.......................................................21
    1.   Defense and Settlement ......................................................................22
    2.   Duties in the Event of a Claim ............................................................22
D.   Uninsured and Underinsured Motorists................................................22
    1.   Duties in the Event of an Accident.......................................................22
E.   Personal Injury Protection ......................................................................22
    1.   Duties in the Event of an Accident.......................................................23
F.   Comprehensive and Collision.................................................................23
    1.   Appraisal...............................................................................................23
    2.   Duties in the Event of an Accident.......................................................23
    3.   Loss Payment.......................................................................................23
    4.   No Benefit to Bailee .............................................................................24

Copyright ©, Porter & Curtis, LLC, 2007    F BA 00 19 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

## BUSINESS AUTO COVERAGE FORM

Throughout this Coverage Part, the words "you" and "your" refer to the person or organization first identified in Item 1 of the Declarations (the "first Named Insured") and any other person or organization qualifying as a Named Insured under this insurance. The words "we", "us", and "our" refer to the insurance company issuing this insurance. Other words or phrases that appear in quotation marks have special meaning.  Refer to Section IV – Definitions.

In consideration of the payment of premium and subject to all the provisions of this policy, you and we agree as follows:

### Section I – Coverage

A.    Bodily Injury and Property Damage

We will pay for "loss" resulting from a "claim" against an "insured" because of any actual or alleged "bodily injury" or "property damage" resulting from the ownership, maintenance, use, or entrustment to others of a "covered auto" to which this insurance applies.

This insurance applies to "bodily injury" or "property damage" only if:

1.    The "bodily injury" or "property damage" is caused by an "accident" that takes place in the "coverage territory"; and

2.    The "accident" commences during the "policy period".

B.    Uninsured and Underinsured Motorists

We will pay for sums an "insured" is legally entitled to recover as compensatory damages, in accordance with the broader of the applicable state auto financial responsibility law or this insurance, because of any "bodily injury" or "property damage" resulting from an "uninsured auto" or "underinsured auto" to which this insurance applies.

This insurance applies only if:

1.    The "bodily injury" or "property damage" is caused by an "accident" involving the ownership, maintenance, or use of a "covered auto" that takes place in the "coverage territory"; and

2.    The "accident" commences during the "policy period".

C.    Personal Injury Protection

We will pay for the personal injury protection benefits or equivalent state benefits, in accordance with the broader of such applicable state law or this insurance, to an eligible insured, as defined by the applicable state law, resulting from personal injuries to which this insurance applies.

This insurance applies only if:

Copyright ©, Porter & Curtis, LLC, 2007    F BA 00 19 09 07
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

1. The personal injuries are caused by an "accident" involving the ownership, maintenance, or use of a "covered auto" that takes place in the "coverage territory"; and

2. The "accident" commences during the "policy period".

D. Comprehensive

We will pay for the direct physical loss of or damage to a "covered auto" because of any reason, other than the "covered auto's" collision with another object or the "covered auto's" overturn, to which this insurance applies.

This insurance applies to direct physical loss of or damage to a "covered auto" only if:

1. The direct physical loss of or damage is caused by an "accident" that takes place in the "coverage territory"; and

2. The "accident" commences during the "policy period".

E. Collision

We will pay for the direct physical loss of or damage to a "covered auto" because of the "covered auto's" collision with another object or the "covered auto's" overturn to which this insurance applies.

This insurance applies to direct physical loss of or damage to a "covered auto" only if:

1. The direct physical loss of or damage is caused by an "accident" that takes place in the "coverage territory"; and

2. The "accident" commences during the "policy period".

F. Towing

We will pay for towing and related labor expense resulting from the disablement of a "covered auto" because of direct physical loss of or damage to the "covered auto" to which this insurance applies.

This insurance applies to the disablement of a "covered auto" only if:

1. The direct physical loss of or damage is caused by an "accident" that takes place in the "coverage territory"; and

2. The "accident" commences during the "policy period".

G. Rental Reimbursement

We will pay for temporary transportation expenses resulting from the disablement of a "covered auto" because of direct physical loss of or damage to the "covered auto" to which this insurance applies.  Our obligation is limited to temporary travel expenses incurred during the period beginning immediately after the disablement and ending, regardless of the policy's expiration, when the "covered auto" is returned to use or we pay for the direct physical loss or damage to the "covered auto".

This insurance applies to the disablement of a "covered auto" only if:

Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001
F BA 00 19 09 07

BUSINESS AUTO COVERAGE FORM

1.  The direct physical loss of or damage is caused by an "accident" that takes place in the "coverage territory"; and

2.  The "accident" commences during the "policy period".

H.  Loss of Use Expenses

We will pay for loss of use expenses, which an "insured" becomes legally obligated to pay, resulting from the disablement of a "covered auto" because of direct physical loss of or damage to the "covered auto" to which this insurance applies.

This insurance applies to the disablement of a "covered auto" only if:

1.  The direct physical loss of or damage is caused by an "accident" that takes place in the "coverage territory"; and

2.  The "accident" commences during the "policy period".

**Section II – Limits of Insurance and Retentions**

A.  Limits of Insurance

The applicable Limit of Insurance shown in Item 7(a) of the Business Auto Coverage Part Declarations is the most we will pay for such coverage under this insurance from any one (1) "accident" or cause of direct physical loss of or damage to or disablement of a "covered auto" regardless of the number of:

1.  "Insureds" under this insurance; or

2.  Persons or organizations making claims.

These Limits are part of, and not in addition to the Each Loss Limit of Insurance, if any, shown in Item 6 of the Business Auto Coverage Part Declarations and shall be reduced by the amount of any applicable Retention shown in Item 8 of the Business Auto Coverage Part Declarations.

B.  Aggregate Limits of Insurance

The applicable Aggregate Limit of Insurance shown in Item 7(b) of the Business Auto Coverage Part Declarations is the most we will pay for such coverage under this insurance.  These Aggregate limits are part of, and not in addition to the General Aggregate Limit of Insurance, if any, shown in Item 6 of the Business Auto Coverage Part Declarations.

Our obligation under this insurance for any particular coverage shall cease when the Aggregate Limit for that coverage, if any, has been exhausted by the payment of amounts we owe under such coverage.

C.  Each Loss Limit of Insurance

The Each Loss Limit of Insurance shown in Item 6 of the Business Auto Coverage Part Declarations is the most we will pay for all coverage under this insurance from any one (1) "accident" or cause of direct physical loss of or damage to or disablement of a "covered auto" regardless of the number of:

1.  "Insureds" under this insurance;

2.  Persons or organizations making claims; or

Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001
F BA 00 19 09 07

3.      Coverages under this insurance.

D.    General Aggregate Limit of Insurance

The General Aggregate Limit of Insurance shown in Item 6 of the Business Auto Coverage Part Declarations, is the most we will pay for all coverage under this insurance.

Our obligation under this insurance shall cease when the General Aggregate Limit of Insurance has been exhausted by payment of amounts we owe under this insurance.

E.    Retentions

The highest applicable Retention shown in Item 8 of the Business Auto Coverage Part Declarations is the most you will pay under this insurance from any one (1) "accident" or cause of direct physical loss of or damage to or disablement of a "covered auto" regardless of the number of:

1.      "Insureds" under this insurance;

2.      Persons or organizations making claims; or

3.      Coverages under this insurance.

Any amount paid by us shall be allocated by Coverage in proportion to the total amount such covered loss bears to the total amount of all covered loss.  Any such allocated amounts shall erode any applicable Aggregate Limits of Insurance as set forth in Item 7(b) of the Business Auto Coverage Part Declarations.

Any Retention applicable to Coverage A. Bodily Injury and Property Damage, Coverage B. Uninsured and Underinsured Motorists, or Coverage C. Personal Injury Protection shall be payable by us and reimbursed by you within thirty (30) days of our written request for reimbursement.  As a condition precedent to exercising any rights under this insurance, you shall advance claims funds and secure any remaining reimbursement obligation as we may require.  Any other Retention shall be payable directly by you.  In the event we advance any such amount on your behalf, you shall pay us within thirty (30) days of our written request for reimbursement.

Your obligation under this insurance for any one (1) "accident" or cause of direct physical loss of or damage to or disablement of a "covered auto" shall cease when the highest applicable Retention has been exhausted by payment of amounts you owe for such "accident" or cause of direct physical loss of or damage to or disablement of a "covered auto" under this insurance.

**Section III – Exclusions**

A.    Bodily Injury and Property Damage, Uninsured and Underinsured Motorists, Personal Injury Protection, Comprehensive, Collision, Towing, Rental Reimbursement, and Loss of Use Expenses

The following exclusions apply to Coverage A. Bodily Injury and Property Damage, B. Uninsured and Underinsured Motorists, C. Personal Injury Protection, D.

            Copyright ©, Porter & Curtis, LLC, 2007        F BA 00 19 09 07
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

Comprehensive, E. Collision, F. Towing, G. Rental Reimbursement, and H. Loss of Use Expenses:

This insurance does not apply to any "loss", compensatory damages, loss, damage, or expense:

1.  Nuclear

    a.  Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the explosion of any weapon employing atomic fission or fusion; or

    b.  Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, a nuclear reaction or radiation, or radioactive contamination, however caused.

2.  Racing

    Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part any "auto" while used in any professional or organized racing or demolition contest or stunting activity or while practicing for such contest or activity.  We will also not pay for "loss" to any "auto" while that "auto" is being prepared for such contest or activity.

3.  War

    Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part:

    a.  War, including undeclared or civil war;

    b.  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c.  Insurrection, rebellion, revolution, usurped power, or action taken by a government authority in hindering or defending against any of these.

    This exclusion does not apply to "terrorism".

B.  Bodily Injury and Property Damage

The following additional exclusions apply to Coverage A. Bodily Injury and Property Damage:

This insurance does not apply to "bodily injury" or "property damage":

1.  Completed Operations

    Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, of "your work" after that work has been completed or abandoned.

2.  Contractual Liability

    For liability of others assumed in a contract or agreement.  This exclusion does not apply to liability:

Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

    a.   Assumed in a contract or agreement that is an "insured contract", provided the "accident" happens after the execution of the contract or agreement; or

    b.   You would have in the absence of the contract or agreement.

3.   Expected or Intended Injury

Expected or intended from the standpoint of the "insured".

4.   Medical Professional Services

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the rendering or failure to render "medical professional services".

This exclusion applies:

    a.   Whether the "insured" may be liable as an employer or in any other capacity; or

    b.   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to the rendering or failure to render first aid to an injured person by any "insured" not licensed as a medical professional.

5.   Operations

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the operation of any machinery or equipment attached to an "auto" other than equipment designed primarily for:

    a.   Snow removal;

    b.   Road maintenance, but not construction or resurfacing; or

    c.   Street cleaning.

6.   Pollution

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants":

    a.   That are, or that are contained in any property that is:

        1)   Being transported or towed by, handled, or handled for movement into, onto or from, the "auto";

        2)   Otherwise in the course of transit by or on behalf of the "insured"; or

        3)   Being stored, disposed of, treated, or processed in or upon the "auto";

    b.   Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the "auto"; or

          Copyright ©, Porter & Curtis, LLC, 2007     F BA 00 19 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the "auto" to the place where they are finally delivered, disposed, or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases, or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic, or mechanical functioning of the "auto" or its parts: if:

1) The "pollutants" escape, seep, migrate, or are discharged, dispersed, or released directly from an "auto" part designed by its manufacturer to hold, store, receive, or dispose of such "pollutants"; and

2) The "bodily injury" or "property damage" does not arise out of the operation of any

a) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; or

b) Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, or well servicing equipment.

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon an "auto" if:

1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned, or damaged as a result of the maintenance or use an "auto"; and

2) The discharge, dispersal, seepage, migration, release, or escape of "pollutants" is caused directly by such upset, overturn, or damage.

7. Professional Services

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the rendering or failure to render "professional services" where such "professional services" are provided to others for a fee.

This exclusion applies:

a. Whether the "insured" may be liable as an employer or in any other capacity; or

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

8. Sexual Abuse

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any actual or alleged "sexual abuse".

This exclusion applies:

     Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

BUSINESS AUTO COVERAGE FORM

    a.   Whether the "insured" may be liable as an employer or in any other capacity; or

    b.   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

C.   Bodily Injury

The following additional exclusions apply to Bodily Injury under Coverage A. Bodily Injury and Property Damage:

This insurance does not apply to "bodily injury" to:

1.   Employers Liability

    a.   An "employee" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, and in the course of:

       1)   Employment by the "insured"; or

       2)   Performing duties related to the conduct of the "insured's" business; or

    b.   The spouse, child, parent, legal guardian, brother, or sister of that "employee" as a consequence of Paragraph (a) above.

This exclusion applies:

       1)   Whether the "insured" may be liable as an employer or in any other capacity; or

       2)   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to "bodily injury" to "domestic employees" not entitled to workers compensation benefits or to liability assumed by the "insured" under an "insured contract".

2.   Workers' Compensation and Similar Laws

For any obligation under a workers' compensation, disability benefits, or unemployment compensation law or any similar law.

D.   Property Damage

The following additional exclusions apply to Property Damage under Coverage A. Bodily Injury and Property Damage:

This insurance does not apply to "property damage":

1.   Care, Custody, or Control

Or expense involving property owned or transported by you or on your behalf or in your care, custody or control.  But this exclusion does not apply to liability assumed under a sidetrack agreement.

E.   Uninsured and Underinsured Motorists

Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001
F BA 00 19 09 07

BUSINESS AUTO COVERAGE FORM

The following additional exclusions apply to Coverage B. Uninsured and Underinsured Motorists:

This insurance does not apply to:

1.  Unlicensed Driver

    "Bodily injury" to an "insured" while operating an "auto" in violation of an order of suspension or revocation; or to care or loss of services recoverable by an "insured" because of such "bodily injury" so sustained.

D.  Personal Injury Protection

The following additional exclusions apply to Coverage C. Personal Injury Protection:

This insurance does not apply to "bodily injury":

1.  Felonies

    Sustained by a person while committing a felony.

2.  Eluding Police

    Sustained by any person while seeking to elude lawful apprehension or arrest by a law enforcement official.

3.  Drugs or Alcohol

    Sustained by a person while operating a motor vehicle under the influence of a drug or alcohol.

4.  Expected or Intended Injury

    Sustained by any person injured while intentionally causing or attempting to cause injury to himself or herself or any other person.

5.  Workers Compensation

    Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

E.  Comprehensive and Collision

The following additional exclusions apply to Coverage D. Comprehensive and E. Collision:

This insurance does not apply to:

1.  Diminution in Value

    Any actual or perceived loss in market value or resale value which results from damage.

2.  Wear and Tear

    Any loss of or damage to a "covered auto" caused by or resulting from any of the following unless caused by other cause that is covered by this insurance:

    a.  Wear and tear, freezing, mechanical, or electrical breakdown; or

Copyright ©, Porter & Curtis, LLC, 2007          F BA 00 19 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

  b. Blowouts, punctures, or other road damage to tires.

## Section IV – Definitions

These terms, whether in their singular, singular possessive, plural, or plural possessive, have special meaning as follows:

**"Accident"** means unexpected and undesirable event, including continuous or repeated exposure to substantially the same general harmful conditions.  Any such continuous or repeated exposure shall be deemed to occur at the time of first exposure.

**"Actual cash value"** means the cost to repair, rebuild, or replace damaged property, with a deduction for depreciation, with materials of like kind, quality, and capacity.

**"Affiliate"** means an organization that a person or organization identified in Item 1 of the Declarations, or any person by virtue of holding an office or position with such organization, either directly or indirectly or through any "subsidiary" or other "affiliate", has the ability to control by means of the right to:

1. Elect or appoint the general partner or manager or a majority of the directors or trustees;

2. Serve ex officio as general partner or manager or as a director or trustee and represent a majority of the directors or trustees, individually, or collectively with any:

  a. Other ex officio director or trustee; or

  b. Right of such person or persons to elect or appoint any other director or trustee; or

3. Direct any financial or managerial decision making, whether by operation of law, pursuant to contract or agreement, or pursuant to such entity's charter, articles of association, or by-law provisions.

**"Auto"** means

1. A land motor vehicle, trailer, or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**"Benefit plan"** means group life insurance, group accident or health insurance, investment or savings plan, profit sharing plan, pension plan, stock subscription plan, salary continuation plan, workers compensation, disability benefit plan , social security, unemployment insurance, paid time-off, or other form of compensation by an organization except for any wages, salaries, or commissions.

**"Benefit program"** means a "benefit plan" sponsored, operated, maintained, or administered by a person or organization identified in Item 1 of the Declarations, either directly or indirectly or through any "subsidiary" or "affiliate".

Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001
F BA 00 19 09 07

BUSINESS AUTO COVERAGE FORM

**"Bodily injury"** means physical injury, sickness, or disease sustained by a person, including death resulting from any of these at any time and any associated emotional distress, mental anguish, mental injury, shock, or fright.

**"Claim"** means:

1.  A written demand for monetary or non-monetary relief;

2.  A civil proceeding commenced by the service of a complaint or similar pleading;

3.  An administrative or regulatory inquiry, investigation, or proceeding brought by a governmental entity or similar authority;

4.  A disciplinary inquiry, investigation, or proceeding brought by an accrediting organization, athletic association, or professional society;

5.  An alternative dispute resolution proceeding commenced by a notice or written demand;

6.  A criminal inquiry, investigation, or proceeding; or

7.  A written request to toll or waive a statute of limitations.

**"Coverage territory"** means anywhere in the world.

**"Covered auto"** means:

1.  As respects Coverage A. Bodily Injury and Property Damage, any "auto";

2.  As respects Coverage B. Uninsured or Underinsured Motorists, only those "autos" you own or lease that are subject to a compulsory Uninsured Motorists Law in the state where they are licensed or principally garaged;

3.  As respects Coverage C. Personal Injury Protection, only those "autos" you own or lease that are subject to compulsory No-Fault benefits in the state where they are licensed or principally garaged;

4.  As respects Coverage D. Comprehensive and Coverage E. Collision, any "auto" you

    a.  Own or lease;

    b.  Rent or hire; or

    c.  Borrow;

5.  As respects Coverage F. Towing and Labor, any "auto" you

    a.  Own or lease;

    b.  Rent or hire; or

    c.  Borrow;

6.  As respects Coverage G. Rental Reimbursement, any "auto" you own or lease; and

7.  As respects Coverage H. Loss of Use Expenses, any "auto" you rent or hire.

    Copyright ©, Porter & Curtis, LLC, 2007    F BA 00 19 09 07
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

BUSINESS AUTO COVERAGE FORM

**"Damages"** means sums an "insured" becomes legally obligated to pay for any:

1.  Compensatory damages;

2.  Statutory damages;

3.  Nominal damages;

4.  "Pre-judgment interest" or "post-judgment interest";

5.  Plaintiff's attorneys fees or costs;

6.  Punitive or exemplary damages or the multiplied portions of any multiplied damage award to the extent such amounts are insurable under the law of the jurisdiction most favorable to the insurability of such amounts provided such jurisdiction has a substantial relationship to the relevant "insureds", to the insurer or to the "claim" giving rise to the damages; or

7.  Fines and penalties to the extent such amounts are insurable under the law of the jurisdiction most favorable to the insurability of such amounts provided such jurisdiction has a substantial relationship to the relevant "insureds", to the insurer, or to the "claim".

**"Defense expenses"** means, with respect to a "claim" we defend, including any appeal therefrom, any:

1.  Expenses we incur;

2.  Cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance;

3.  Expenses incurred by you at our request to assist us in the investigation or defense of the "claim"; or

4.  Court costs taxed against you in the "claim".

**"Domestic employee"** means a person engaged in household or domestic work performed principally in connection with a residential premise.

**"Employee"** means a person who receives any wages, salary, or commissions by you for any labor provided on a full-time, part-time, temporary, or seasonal basis. However, "employee" does not include "executive", "independent contractor", "leased worker", or "religious person".

**"Executive"** means a person who serves you as any:

1.  Director or officer (if you are an organization other than a partnership);

2.  Trustee (if you are a trust);

3.  Manager or managing member (if you are a limited liability company);

4.  General partner (if you are a partnership);

5.  Member of a school (if you are a school organization);

6.  Member of an advisory board (if you are an organization);

7.  Member of a duly constituted committee (if you are an organization); or

Copyright ©, Porter & Curtis, LLC, 2007    F BA 00 19 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

8.    Functional equivalent of the above if serving outside the United States.

**"Independent contractor"** means a person who performs services for you or on your behalf under an express or implied agreement and who is not subject to your control or right to control the manner and means of performing the services.

**"Insured"** means any:

1.    Person or organization identified in Item 1 of the Declarations;

2.    "Subsidiary", "affiliate", or "benefit program", existing prior to or created or acquired on or after the inception date of this insurance.

Any organization identified in 2. above also qualifies as a Named Insured under this insurance;

3.    Student or parent organization formally recognized by you existing prior to or created or acquired on or after, the inception date of this insurance.

Any organization identified in 3. above also qualifies as a Named Insured under this insurance;

4.    "Religious person" while using a "covered auto" with your permission or any person or organization liable for the conduct of such person but only to the extent of that liability.

Any person identified in 4. above or trust of such person may also qualify as a Named Insured under this insurance if such status is in accordance with the records or intent of the first Named Insured;

5.    Person, other than a "religious person", while using a "covered auto" with your permission or any person or organization liable for the conduct of such person but only to the extent of that liability;

6.    Person, as respects only Coverage A. Bodily Injury and Property Damage, while using an "auto" you do not own, hire or borrow, but only while such "auto" is being used by you or on your behalf, and any other person or organization liable for the conduct of such person but only to the extent of that liability;

7.    Lessor of leased "autos" leased or rented by you or on your behalf without an operator, for whom you are obligated by the terms of the lease or rental agreement to provide Comprehensive or Collision coverage.  Such lessor shall not be an "insured" as respects any "accident" which takes place before the "insured" takes possession of the leased or rented "auto" or after the lease or rental agreement expires;

8.    Person or organization you agree to insure, but only if the "bodily injury" or "property damage" occurs after the date of agreement.  The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance;

9.    Lawful spouse of any person identified above for any "claim" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, his or her status as the spouse of such person or his or her ownership interest in

Copyright ©, Porter & Curtis, LLC, 2007        F BA 00 19 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

property which the claimant seeks as damages, where such person is entitled to coverage under this insurance;

10. Debtor-in-possession under United States bankruptcy law or equivalent status under the law of any other country of any organization identified above; or

11. Estate, heir, legal representative, or assign of any person identified above but only with respect to an "occurrence" involving such person as provided for above.

**"Insured contract"** means:

1. A contract for a lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

3. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

4. An elevator maintenance agreement;

5. That part of any other contract or agreement pertaining to your business (including indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for any "bodily injury" or "property damage" to a third party or organization.  Tort liability means liability that would be imposed by law in the absence of any contract or agreement; or

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or on your behalf, of any "auto".

An "insured contract" does not include any part of any contract or agreement that:

a. Indemnifies a railroad for "bodily injury" or "property damage" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass, or crossing;

b. Pertains to the loan, lease, or rental of an "auto", if the "auto" is loaned, leased, or rented with a driver; or

c. Holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a "covered auto" over a route or territory that person or organization is authorized to serve by public authority.

**"Leased worker"** means any person leased by you or on your behalf from a labor leasing firm under a written contract or agreement.

**"Loss"** means any "damages" or "defense expenses".

**"Medical professional services"** means any:

Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

BUSINESS AUTO COVERAGE FORM

1.  Medical, surgical, dental, x-ray, or nursing service, treatment, advice, or instruction, including the related furnishing of food or beverages;

2.  Furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances; or

3.  Handling of dead bodies or the performance of autopsies.

**"Outstanding balance"** means the amount you owe on the lease or loan at the time of the loss less any amounts representing taxes; overdue payments; penalties, interest or charges resulting from overdue payments; additional mileage charges; excess wear and tear charges; lease or loan termination fees; charges for extended warranties, credit life insurance, health, accident, or disability insurance with the lease or loan; unrefunded security deposits; carry-over balances from previous loans or leases; and any other administrative or overhead fees.

**"Policy period"** means the period of time from the effective date of this insurance to the cancellation date or, if none, then the expiration date, as specified in Item 2 of the Declarations.  The date and time are the Local Standard Time at your mailing address shown in Item 1 of the Declarations.

**"Pollutants"** means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste, or waste materials to be recycled, reconditioned or reclaimed.

**"Post-judgment interest"** means all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

**"Pre-judgment interest"** means that particular amount of interest awarded against an "insured" on that part of the judgment we pay.  If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**"Professional services"** means any:

1.  Service which requires a license, masters, doctorate degree, or certification; or

2.  Other service requiring any specialized knowledge, skill, or professional judgment.

However, "professional services" does not include "medical professional services" or the use of force to protect persons or property.

**"Property damage"** means any:

1.  Physical injury to tangible property, including all loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "accident" that caused it.

**"Religious person"** means any person (if you are an organization):

BUSINESS AUTO COVERAGE FORM

1.  Ordained as a Catholic priest or deacon and who works for you or on your behalf or is incardinated with you;

2.  Accepted as a member of a Catholic religious institute or a society of apostolic life and who works for you or on your behalf; or

3.  Sponsored by the first Named Insured in a program of formation for the priesthood or diaconate;

But only if the person qualifies as such in accordance with the records or intent of the first Named Insured.

**"Sexual abuse"** means criminal sexual conduct by anyone of any person while in your care, custody, or control.

**"Subsidiary"** means an organization that a person or organization identified in Item 1 of the Declarations, either directly or indirectly or through any "affiliate" or other "subsidiary", has the ability to control by means of membership or ownership of a majority of the issued and outstanding voting stock.

**"Terrorism"** means act, including the use of force or violence, of any person or group of persons, whether acting alone or on behalf of or in connection with any organization, committed for any political, religious, or ideological purposes including the intention to influence any government or to put the public in fear for such purposes.

**"Underinsured auto"** means any "auto" or trailer for which the sum of all liability bonds or policies which apply at the time of an "accident" do not provide at least the amount the "insured" is legally entitled to recover as damages.

However, "underinsured auto" does not include any "auto" or trailer:

1.  Which is an "uninsured auto";

2.  Owned or operated by a self-insurer under any applicable motor vehicle law;

3.  Owned by a governmental unit or agency; or

4.  Designed for use mainly off public roads while not on public roads.

**"Uninsured auto"** means any "auto" or trailer:

1.  For which no liability bond or policy applies at the time of an accident;

2.  For which an insuring or bond company:

    a.  Denies coverage,

    b.  Is or becomes insolvent, or

    c.  Is or becomes involved in insolvency proceedings; or

3.  That is a hit and run vehicle and neither the driver nor owner can be identified.  However, the "auto" or trailer must:

    c.  Hit an "insured", a "covered auto", or an "auto" an "insured" is occupying; or

   Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

    b.    Cause an "accident" resulting in "bodily injury" or "property damage" without hitting an "insured", a "covered auto", or an "auto" or trailer an "insured" is occupying.

If there is no physical contact with the hit and run "auto" or trailer, the facts of the "accident" must be proved.

However, "uninsured auto" does not include any "auto" or trailer:

1.    Which is an "underinsured auto";

2.    Owned or operated by a self-insurer under any applicable motor vehicle law;

3.    Owned by a governmental unit or agency; or

4.    Designed for use mainly off public roads while not on public roads.

**"Volunteer"** means a person who donates his or her work to you and is directed by you or on your behalf.  However, "volunteer" does not include "executive" or "religious person".

**"Your work"** means any:

1.    Work or operations performed by you or on your behalf; or

2.    Materials, parts, or equipment furnished in connection with such work or operations;

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability, or performance of any of the items included in Paragraph 1. or 2. above.

Your work will be deemed completed at the earliest of the following times:

    a.    When all of the work called for in your contract has been completed;

    b.    When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

    c.    When that part of the work done at a job has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise completed, will be treated as completed.

## Section V – General Conditions

The following conditions apply in addition to the Common Policy Conditions:

A.    Bodily Injury and Property Damage, Uninsured and Underinsured Motorists, Personal Injury Protection, Comprehensive, Collision, Towing, Rental Reimbursement, and Loss of Use Expenses

The following conditions apply to Coverage A. Bodily Injury and Property Damage, B. Uninsured and Underinsured Motorists, C. Personal Injury Protection, D. Comprehensive, E. Collision, F. Towing, G. Rental Reimbursement, and H. Loss of Use Expenses:

    Copyright ©, Porter & Curtis, LLC, 2007    F BA 00 19 09 07
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

BUSINESS AUTO COVERAGE FORM

    1.    Duties in the Event of an Accident or Claim

        a.    You shall, upon knowledge by the first Named Insured or by any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, give us written notice as soon as practicable of any "accident" or "claim", to which this insurance may apply.  To the extent applicable and possible, notice shall include:

            1)    The Named Insured's name and address;

            2)    How, when, and where the actual or alleged "accident" took place;

            3)    The names and addresses of any injured persons or witnesses; and

            4)    A description of the "covered auto".

        b.    You must:

            1)    Cooperate with us;

            2)    Authorize us to obtain records and other information;

            3)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of a breach of duty to which this insurance may apply; and

            4)    Seek our consent to make any payment, assume any obligation, incur any expense, or make any admission of liability.

    2.    Waiver of Transfer of Rights of Recovery Against Others to Us

        We waive any right of recovery we may have against any person or organization if such rights of recovery were waived by you or on your behalf under an "insured contract" prior to the "accident" or direct physical loss of or damage to or disablement of the "covered auto".

**B.**    Uninsured and Underinsured Motorists, Personal Injury Protection, Comprehensive, Collision, Towing, Rental Reimbursement, and Loss of Use Expenses

    The following conditions apply to Coverage B. Uninsured and Underinsured Motorists, C. Personal Injury Protection, D. Comprehensive, E. Collision, F. Towing, G. Rental Reimbursement, and H. Loss of Use Expenses:

    1.    Settlement

        We shall have the right and duty to investigate an "accident" and handle and settle any loss, damage, or expense that might require an indemnity payment by us.  We shall also have the right and duty to subrogate such amounts if we pay any monies due under this insurance.

**C.**    Bodily Injury and Property Damage

Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001
F BA 00 19 09 07

BUSINESS AUTO COVERAGE FORM

The following additional conditions apply to Coverage A. Bodily Injury and Property Damage:

1.    Defense and Settlement

We shall have the right and duty to investigate an "accident" and handle and defend any "claim" and settle the "claim", but only with the consent of the first Named Insured.  We shall also have the right and duty to subrogate the cost of the "claim" if we pay any monies due under this insurance.  If the first Named Insured refuses consent to a settlement in accordance with our recommendation that is acceptable to the claimant and is within this insurance's applicable Limit of Insurance shown in Items 6 or 7(a) of the Business Auto Coverage Part Declarations;

a.    The first Named Insured will thereafter be solely responsible for investigating, handling, defending, and settling such "claim" at their own expense; and

b.    Subject to any applicable Aggregate Limit of Insurance shown in Items 6 or 7(b) of the Business Auto Coverage Part Declarations, our liability with respect to such "claim" shall not exceed the amount for which such "claim" could have been settled by us, including "defense expenses" incurred up to and until the time that the first Named Insured refuses consent to the settlement.

We shall pay on your behalf any monies due under this insurance.

Our obligation to defend you ends when we have used up the applicable Limit of Insurance.

2.    Duties in the Event of a Claim

a.    In the event of a "claim", notice shall also include:

1)    The date the "claim" was received; and

2)    Copies of any demands, notices, summonses, or legal papers received in connection with the "claim".

D.    Uninsured and Underinsured Motorists

The following additional conditions apply to Coverage B. Uninsured and Underinsured Motorists:

1.    Duties in the Event of an Accident

a.    You must also:

1)    Submit to examination by physicians of our choice, as often as we reasonably require; and

2)    Provide copies of the summons and complaint or other process served in connection with the lawsuit against any persons or organizations legally responsible for the use of a motor vehicle involved in the "accident".

E.    Personal Injury Protection

    Copyright ©, Porter & Curtis, LLC, 2007    F BA 00 19 09 07
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

BUSINESS AUTO COVERAGE FORM

The following additional conditions apply to Coverage C. Personal Injury Protection:

1.  Duties in the Event of an Accident

    a.  You must also:

        1)  Submit to examination by physicians of our choice, as often as we reasonably require.

F.  Comprehensive and Collision

The following additional conditions apply to Coverage D. Comprehensive and E. Collision:

1.  Appraisal

    If you and we disagree on the amount of covered loss or damage, either may demand an appraisal of the loss or damage.  In this event, each party will select a competent appraiser.  The two appraisers will select a competent and impartial umpire.  The appraisers will submit their differences to the umpire.  A decision agreed to by any two will be binding.  Each party will:

    a.  Pay its chosen appraiser; and

    b.  Bear the other expenses of the appraisal and umpire equally.

2.  Duties in the Event of an Accident

    a.  You must also:

        1)  Promptly notify the police if a law may have been broken;

        2)  Take all reasonable steps to protect the "covered auto" from further damage;

        3)  Permit us to inspect the "covered auto" and records proving the damage before its repair or disposition;

        4)  Agree to examination under oath at our request and give us a signed statement of your answers; and

        5)  Give us a detailed, sworn proof of loss stating the place, time, and cause of loss or damage, your interest and of all others in the property, the sound value thereof and the amount of loss or damage thereto.

3.  Loss Payment

    At our option we may:

    a.  Pay for, repair, or replace damage or stolen property;

    b.  Return the stolen property, at our expense.  We will pay for any damage that results to the "covered auto" from theft; or

    c.  Take all or any part of the damaged or stolen property at an agreed or appraised value.

     Copyright ©, Porter & Curtis, LLC, 2007     F BA 00 19 09 07
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

BUSINESS AUTO COVERAGE FORM

If we pay for the loss or damage, our payment will include the applicable sales tax for the damaged property.

In the event of a total loss of a "covered auto" which is leased for a period of six months or longer, we will also pay, excess of all other collectible insurance, your additional obligation to the loss payee or lessor for any difference between the "actual cash value" of the "covered auto" at the time of the loss and the "outstanding balance" of the lease or loan.

4.    No Benefit to Bailee

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing, or transporting property for a fee regardless of any other provision of this insurance.

    Copyright ©, Porter & Curtis, LLC, 2007
Includes copyrighted material of ISO Properties,
Inc., with its permission.
Copyright, ISO Properties, Inc., 2001    F BA 00 19 09 07

NOTICE:  THIS IS DEFENSE EXPENSE WITHIN LIMITS INSURANCE.  DEFENSE EXPENSES SHALL REDUCE, AND MAY EXHAUST, THE LIMITS OF INSURANCE.

NOTICE:  THIS IS CLAIMS MADE INSURANCE.  SUBJECT TO ITS TERMS, THIS INSURANCE APPLIES ONLY TO A CLAIM FIRST MADE DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD, PROVIDED SUCH CLAIM IS REPORTED NO LATER THAN 60 DAYS FROM THE END OF THE POLICY PERIOD OR FROM THE END OF ANY APPLICABLE EXTENDED REPORTING PERIOD.

**ECCLESIA ASSURANCE COMPANY**
50 North Park Avenue
Rockville Centre, New York  11570

COMMERCIAL PACKAGE POLICY
**DIRECTORS & OFFICERS LIABILITY COVERAGE PART DECLARATIONS**

Policy Number:    PKG-2018-1              Date Effective:    11/1/2018

ITEM 6:     <u>Overall Limits of Insurance</u>:

        Each Loss                          See Endorsement 2

        General Aggregate              See Endorsement 2

ITEM 7:     <u>Limits of Insurance</u>:

| Coverage | 7(a)  Limit of Insurance | 7(b)  Aggregate Limit of Insurance |
|---|---|---|
| Directors & Officers Liability | $750,000 Each "Wrongful Act" | $750,000 |

ITEM 8:     Retentions                          See Endorsement 2

ITEM 9:     <u>Premium</u>:

        9(a) Deposit Premium                    $15,954

        9(b) Type                              Not Adjustable

        9(c) Minimum Earned Premium        $15,954

        9(d) Rate                              Not Applicable

        9(e) Deposit Exposure Basis            Not Applicable

        9(f)  Deposit Premium attributable to   Not Applicable
the Terrorism Risk Insurance Act

ITEM 10:     <u>Notices</u>:

       10(a)  Any "claim" or fact or         Ecclesia Assurance Company
       circumstance                      50 North Park Avenue
                                   Rockville Centre, NY  11570

       10(b)  Any other matter           Ecclesia Assurance Company
                                   50 North Park Avenue
                                   Rockville Centre, NY  11570

ITEM 11:     Retroactive Date           9/1/1996

ITEM 12:     Pending or Prior Date      11/1/2008

ITEM 13:     Continuity Date           9/1/2004

ITEM 14:     <u>Extended Reporting Period Options</u>:

| <u>Period</u> | <u>Additional Premium</u> |
| --- | --- |
| One Calendar Year | 100% of the Annual Part Premium |
| Two Calendar Years | 150% of the Annual Part Premium |
| Three Calendar Years | 200% of the Annual Part Premium |

In witness whereof, this Coverage Part has been executed in Rockville Centre, New
York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____     2/25/2019
Authorized Representative's Signature          Date

DIRECTORS & OFFICERS LIABILITY COVERAGE FORM TABLE OF CONTENTS

**Section I – Coverage** .................................................................................................. 3
**Section II – Limits of Insurance and Retentions** ....................................................... 3
   A.   Limits of Insurance .............................................................................................. 3
   B.   Aggregate Limits of Insurance ............................................................................ 4
   C.   Each Loss Limit of Insurance .............................................................................. 4
   D.   General Aggregate Limit of Insurance ................................................................ 4
   E.   Retentions .......................................................................................................... 4
**Section III – Exclusions** ............................................................................................. 4
   A.   Asbestos ............................................................................................................. 5
   B.   Bodily Injury or Property Damage ....................................................................... 5
   C.   Contractual Liability ............................................................................................. 5
   D.   Cross Suits .......................................................................................................... 5
   E.   Distribution of Material in Violation of Statutes .................................................... 5
   F.   Employee Benefits .............................................................................................. 6
   G.   Employee Retirement Income Security Act (ERISA) ........................................... 6
   H.   Employment Practices ........................................................................................ 6
   I.   Fraud or Dishonesty ........................................................................................... 6
   J.   Fungi or Bacteria ................................................................................................ 6
   K.   Lead .................................................................................................................... 7
   L.   Medical Professional Services ............................................................................ 7
   M.   Nuclear ............................................................................................................... 7
   N.   Pending or Prior Claim ....................................................................................... 9
   O.   Personal and Advertising Injury .......................................................................... 9
   P.   Pollution ............................................................................................................. 9
   Q.   Prior Knowledge ................................................................................................. 9
   R.   Prior Notice of a Claim or Circumstance ............................................................ 9
   S.   Professional Services ....................................................................................... 10
   T.   Sexual Abuse ................................................................................................... 10
   U.   Silica and Silica-Related Dust ........................................................................... 10
   V.   Undue Profit or Advantage ............................................................................... 10
   W.   Workers' Compensation and Similar Laws ....................................................... 11
**Section IV – Definitions** ............................................................................................ 11
"Advertisement" ....................................................................................................... 11
"Affiliate" .................................................................................................................. 11
"Application" ............................................................................................................. 11
"Benefit plan" ........................................................................................................... 11
"Benefit program" .................................................................................................... 12
"Bodily injury" .......................................................................................................... 12
"Claim" ..................................................................................................................... 12
"Coverage territory" ................................................................................................. 12
"Damages" ............................................................................................................... 12
"Defense expenses" ................................................................................................ 13
"Employee" .............................................................................................................. 13
"Employee benefits administrative services" ........................................................... 13
"Employee Welfare Benefit Plan" ............................................................................ 13
"Employment practices violation" ............................................................................ 13
"Executive" .............................................................................................................. 13
"Extradition" ............................................................................................................ 14

DIRECTORS & OFFICERS LIABILITY COVERAGE FORM

"Financial impairment" ........................................................................................ 14
"Fungi" ................................................................................................................ 14
"Harassment" ..................................................................................................... 14
"Independent contractor" .................................................................................... 14
"Insured" ............................................................................................................. 14
"Insured person" ................................................................................................. 15
"Leased worker" .................................................................................................. 15
"Loss" .................................................................................................................. 15
"Medical professional services" ......................................................................... 15
"Non-indemnifiable loss" ..................................................................................... 15
"Pension Benefit Plan" ........................................................................................ 15
"Personal and advertising injury offense" ........................................................... 15
"Policy period" ..................................................................................................... 16
"Pollutants" ......................................................................................................... 16
"Post-judgment interest" ..................................................................................... 16
"Pre-judgment interest" ....................................................................................... 16
"Professional services" ....................................................................................... 16
"Property damage" .............................................................................................. 16
"Religious person" .............................................................................................. 17
"Securityholder derivative demand" .................................................................... 17
"Sexual abuse" .................................................................................................... 17
"Sexual harassment" ........................................................................................... 17
"Special needs hearing" ...................................................................................... 17
"Subsidiary" ........................................................................................................ 17
"Volunteer" .......................................................................................................... 17
"Workplace tort" .................................................................................................. 17
"Wrongful act" ..................................................................................................... 18
"Wrongful employment action" ............................................................................ 18
**Section V – General Conditions** ..................................................................... 18
  A.  Defense and Settlement ........................................................................... 18
  B.  Duties in the Event of a Claim .................................................................. 19
  C.  Notice of a Circumstance ......................................................................... 19
  D.  Extended Reporting Period ...................................................................... 20
  E.  Priority of Payments ................................................................................. 20
  F.  Representations and Severability ............................................................. 20
  G.  Waiver of Transfer of Rights of Recovery Against Others to Us ............. 21

DIRECTORS & OFFICERS LIABILITY COVERAGE FORM

Throughout this Coverage Part, the words "you" and "your" refer to the person or organization first identified in Item 1of the Declarations (the "first Named Insured") and any other person or organization qualifying as a Named Insured under this insurance. The words "we", "us", and "our" refer to the insurance company issuing this insurance. Other words or phrases that appear in quotation marks have special meaning.  Refer to Section IV – Definitions.

In consideration of the payment of premium and in reliance upon the statements made in the "application" for this insurance and subject to all the provisions of this policy, you and we agree as follows:

## Section I – Coverage

We will pay for "loss" resulting from a "claim", against an "insured" under this insurance, first made during the "policy period" or Extended Reporting Period as shown in Item 14 of the Directors & Officers Liability Coverage Part Declarations, if applicable, because of any actual or alleged "wrongful act" to which this insurance applies.

This insurance applies only if:

1.    The "wrongful act" takes place in the "coverage territory";

2.    The "wrongful act" commences on or after the Retroactive Date, if any, shown in Item 11 of the Directors & Officers Liability Coverage Part Declarations and before the end of the "policy period"; and

3.    We receive notice in accordance with the reporting requirements in Section V. B. of this insurance.

All "claims" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, a "wrongful act" to which this insurance applies will be considered a single "claim" deemed first made at the earlier of the following dates:

1.    The date the earliest of such "claims" was made; or

2.    The date such "wrongful act" was reported to us as a fact or circumstance under this insurance or under any other prior policy providing similar coverage.

## Section II – Limits of Insurance and Retentions

A.    Limits of Insurance

The applicable Limit of Insurance shown in Item 7(a) of the Directors & Officers Liability Coverage Part Declarations is the most we will pay for such coverage under this insurance from one (1) "wrongful act" regardless of the number of:

1.    "Insureds" under this insurance; or

2.    Persons or organizations making "claims".

These Limits are part of, and not in addition to the Each Loss Limit of Insurance, if any, shown in Item 6 of the Directors & Officers Liability Coverage Part Declarations and shall be reduced by the amount of any applicable Retention shown in Item 8 of the Directors & Officers Liability Coverage Part Declarations.

B.   Aggregate Limits of Insurance

The applicable Aggregate Limit of Insurance shown in Item 7(b) of the Directors &
Officers Liability Coverage Part Declarations is the most we will pay for such
coverage under this insurance.  These Aggregate limits are part of, and not in
addition to the General Aggregate Limit of Insurance, if any, shown in Item 6 of the
Directors & Officers Liability Coverage Part Declarations.

Our obligation under this insurance for any particular coverage shall cease when
the Aggregate Limit for that coverage, if any, has been exhausted by the payment
of amounts we owe under such coverage.

C.   Each Loss Limit of Insurance

The Each Loss Limit of Insurance shown in Item 6 of the Directors & Officers
Liability Coverage Part Declarations is the most we will pay for all coverage under
this insurance from one (1) "wrongful act" regardless of the number of:

1.   "Insureds" under this insurance;

2.   Persons or organizations making "claims"; or

3.   Coverages under this insurance.

D.   General Aggregate Limit of Insurance

The General Aggregate Limit of Insurance shown in Item 6 of the Directors &
Officers Liability Coverage Part Declarations, is the most we will pay for all
coverage under this insurance.

Our obligation under this insurance shall cease when the General Aggregate Limit
of Insurance has been exhausted by payment of amounts we owe under this
insurance.

E.   Retentions

The highest applicable Retention shown in Item 8 of the Directors & Officers
Liability Coverage Part Declarations is the most you will pay under this insurance
from one (1) "wrongful act" regardless of the number of:

1.   "Insureds" under this insurance;

2.   Persons or organizations making "claims"; or

3.   Coverages under this insurance.

Any amount paid by us shall be allocated by Coverage in proportion to the total
amount such covered loss bears to the total amount of all covered loss.  Any such
allocated amounts shall erode any applicable Aggregate Limits of Insurance as set
forth in Item 7(b) of the Directors & Officers Liability Coverage Part Declarations.

Any Retention shall be payable by us and reimbursed by you within thirty (30) days
of our written request for reimbursement.  As a condition precedent to exercising
any rights under this insurance, you shall advance claims funds and secure any
remaining reimbursement obligation as we may require.

Your obligation under this insurance for one (1) "wrongful act" shall cease when the
highest applicable Retention has been exhausted by payment of amounts you owe
for such "wrongful act" under this insurance.

**Section III – Exclusions**

This insurance does not apply to any "claim":

A.    Asbestos

    1.    Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the actual, alleged, threatened, or suspected inhalation of, ingestion of, contact with, exposure to, or presence of, asbestos, asbestos products, asbestos containing material, asbestos fibers, or asbestos dust.

    2.    For any loss, cost, or expense arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to or assessing the effects of, asbestos, asbestos products, asbestos containing material, asbestos fibers, or asbestos dust, by any "insured" or by any other person or entity.

However, this exclusion shall not apply to "non-indemnifiable loss".

B.    Bodily Injury or Property Damage

For any actual or alleged "bodily injury" or "property damage".

C.    Contractual Liability

For breach of a contract or agreement.  This exclusion does not apply to:

    1.    "Defense expenses"; or

    2.    Liability you would have in the absence of the contract or agreement.

However, this exclusion shall not apply to "non-indemnifiable loss".

D.    Cross Suits

Brought by you or on your behalf against any person qualifying as an "insured" under this insurance, except for any:

    1.    Derivative action made on your behalf by one or more security holders or Attorney Generals or any other such representative party, if such action is brought and maintained independently of, and without solicitation, assistance, or participation by any "insured" except if such solicitation, assistance, or participation is solely pursuant to, or in compliance with, a subpoena or similar legal process or protected pursuant to any whistleblower statute; or

    2.    "Claim" made on your behalf by a bankruptcy or insolvency trustee, examiner, receiver, liquidator, conservator, rehabilitator, bondholder committee, equity committee, noteholder committee, or similar official or creditors committee.

E.    Distribution of Material in Violation of Statutes

For an actual or alleged violation of:

    1.    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

    2.    The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

    3.    Any statute, ordinance, or regulation, other than the TCPA or CAN-SPAM Act of 2003, which prohibits or limits the sending, transmitting, communicating, or distribution of material or information.

F.    Employee Benefits

For the rendering or failure to render "employee benefits administrative services".

This exclusion applies:

1.    Whether the "insured" may be liable as an employer or in any other capacity; or

2.    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

G.    Employee Retirement Income Security Act (ERISA)

For any actual or alleged violation of the responsibilities, obligations, or duties imposed upon fiduciaries of a "benefit program" by the Employee Retirement Income Security Act of 1974 or any amendments thereto or any rules or regulations promulgated thereunder or any similar provisions of any federal, state, or local statutory law or common law.

H.    Employment Practices

For any actual or alleged "employment practices violation".

This exclusion applies:

1.    Whether the "insured" may be liable as an employer or in any other capacity; or

2.    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

I.    Fraud or Dishonesty

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any malicious, fraudulent, or knowingly wrongful or dishonest act or omission by any "insured"; provided, however, this exclusion shall not apply to "defense expenses".  However, this exclusion shall not even apply to "damages" unless the "insured" pleads guilty or nolo contendere or the act or omission is established by final and non-appealable adjudication.  Any act or acts by one or more "insureds" shall not be imputed to any other "insured" for the purposes of determining the applicability of this exclusion.  Only facts possessed by an "executive" shall be imputed to an organization.

J.    Fungi or Bacteria

1.    Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage.

2.    For loss, cost, or expense arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing,

    Copyright ©, Porter & Curtis, LLC, 2007    F DO 03 21 09 07

remediating, or disposing of, or in any way responding to or assessing the effects of, "fungi" or bacteria, by any "insured" or by any other person or entity.

However, this exclusion shall not apply to any:

1.    "Fungi" or bacteria that are on or are contained in, a good or product intended for bodily consumption; or

2.    "Non-indemnifiable loss".

K.    Lead

1.    Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the actual, alleged, threatened, or suspected inhalation of, ingestion of, contact with, exposure to, or presence of, lead.

2.    For loss, cost, or expense arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to or assessing the effects of, lead, by any "insured" or by any other person or entity.

However, this exclusion shall not apply to "non-indemnifiable loss".

L.    Medical Professional Services

For the rendering or failure to render "medical professional services".

This exclusion applies:

1.    Whether the "insured" may be liable as an employer or in any other capacity; or

2.    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

M.    Nuclear

1.    For any liability:

a.    With respect to which an "insured" under this insurance is also an "insured" under a nuclear energy liability policy issued by the Nuclear Energy Liability Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an "insured" under any such policy, but for its termination upon exhaustion of its limit of insurance; or

b.    Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

1)    Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

2)    An "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

Copyright ©, Porter & Curtis, LLC, 2007        F DO 03 21 09 07

2. For expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the operation of a "nuclear facility" by any person or organization.

3. Resulting from the "hazardous properties" or "nuclear material", if:

   a. The "nuclear material":

      1) Is at any "nuclear facility" owned by or operated by or on behalf of, an "insured"; or

      2) Has been discharged or dispersed therefrom;

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported, or disposed of by or on behalf of an "insured"; or

   c. Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the furnishing by an "insured" of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereof.

As used in this exclusion:

**"By-product material"** has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**"Hazardous properties"** means radioactive, toxic, or explosive properties.

**"Nuclear facility"** means:

a. Any "nuclear reactor";

b. Any equipment or device designed or used for:

   1) Separating the isotopes of uranium or plutonium,

   2) Processing or utilizing "spent fuel", or

   3) Handling, processing, or packaging "waste";

c. Any equipment or device used for the processing, fabricating, or alloying of "special nuclear material" if at any time the total amount of such material in the custody of an "insured" at the premises where such equipment or device is located consists of more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

d. Any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of "waste";

And includes the site on which any of the foregoing is located, all operations conducted on site and all premises used for such operations.

**"Nuclear material"** means "source material", "special nuclear material", or "by-product material".

**"Nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**"Source material"** has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**"Special nuclear material"** has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**"Spent fuel"** means any fuel element of fuel component, solid, or liquid, which has been used or exposed to radiation in a "nuclear reactor".

**"Waste"** means any waste material:

a. Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any one processed primarily for its "source material" content; and

b. Resulting from the operation by any person or organization of any "nuclear facility".

N. Pending or Prior Claim

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, a "claim" involving an "insured" that was pending as of or commenced prior to the Pending or Prior Date shown in Item 12 of the Directors & Officers Liability Coverage Part Declarations, including any "claim" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any fact or circumstance underlying or alleged in any such pending or prior proceeding.

O. Personal and Advertising Injury

For any actual or alleged "personal and advertising injury offense".

P. Pollution

1. Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants" at any time.

2. For loss, cost, or expense arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to or assessing the effects of, "pollutants", by any "insured" or by any other person or entity.

However, this exclusion shall not apply to "non-indemnifiable loss".

Q. Prior Knowledge

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any actual or alleged "wrongful act" if known by you (if you are a person) or any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured (if you are an organization) prior to the Continuity Date shown in Item 13 of the Directors & Officers Liability Coverage Part Declarations, but only if such person could have reasonably foreseen that the "wrongful act" would lead to a "claim" under this insurance.

R. Prior Notice of a Claim or Circumstance

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any "wrongful act" alleged in any claim which has been reported or in any fact or circumstance of which notice has been given, prior to the "policy period" under any other similar insurance, regardless of whether coverage is provided under such other insurance.

S.    Professional Services

For the rendering or failure to render "professional services".

This exclusion applies:

1.    Whether the "insured" may be liable as an employer or in any other capacity; or

2.    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

T.    Sexual Abuse

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any actual or alleged "sexual abuse".

This exclusion applies:

1.    Whether the "insured" may be liable as an employer or in any other capacity; or

2.    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

U.    Silica and Silica-Related Dust

1.    Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the actual, alleged, threatened, or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

2.    For loss, cost, or expense arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any "insured" or by any other person or entity.

As used in 1. and 2. above:

**"Silica"** means silicon dioxide (occurring in crystalline, amorphous, or impure forms), silica particles, silica dust, or silica compounds; and

**"Silica-related dust"** means a mixture or combination of silica and other dust or particles.

However, this exclusion shall not apply to "non-indemnifiable loss".

V.    Undue Profit or Advantage

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the gaining by any "insured" of any profit or advantage to which such "insured" was not legally entitled; provided, however, this exclusion shall not apply to "defense expenses".  However, this exclusion shall not even apply to "damages"

unless the "insured" pleads guilty or nolo contendere or the profit or advantage is established by final and non-appealable adjudication.  Any act or acts by one or more "insureds" shall not be imputed to any other "insured" for the purposes of determining the applicability of this exclusion.  Only facts possessed by an "executive" shall be imputed to an organization.

W.   Workers' Compensation and Similar Laws

For any obligation under a workers' compensation, disability benefits, or unemployment compensation law or any similar law.

## Section IV – Definitions

These terms, whether in their singular, singular possessive, plural, or plural possessive, have special meaning as follows:

**"Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about your goods, products, or services for the purpose of attracting customers or supporters.  For the purposes of this definition:

1.   Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2.   Regarding web-sites, only that part of a web-site that is about your goods, products, or services for the purposes of attracting customers or supporters is considered an "advertisement".

**"Affiliate"** means an organization that a person or organization identified in Item 1 of the Declarations, or any person by virtue of holding an office or position with such organization, either directly or indirectly or through any "subsidiary" or other "affiliate", has the ability to control by means of the right to:

1.   Elect or appoint the general partner or manager or a majority of the directors or trustees;

2.   Serve ex officio as general partner or manager or as a director or trustee and represent a majority of the directors or trustees, individually, or collectively with any:

a.   Other ex officio director or trustee; or

b.   Right of such person or persons to elect or appoint any other director or trustee; or

3.   Direct any financial or managerial decision making, whether by operation of law, pursuant to contract or agreement, or pursuant to such entity's charter, articles of association, or by-law provisions.

**"Application"** means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein, and any other such documents submitted in connection with the underwriting of this insurance.

**"Benefit plan"** means any:

1.   "Employee Welfare Benefit Plan";

2.   "Pension Benefit Plan";

3.  Government mandated insurance program for workers compensation, unemployment, social security, or disability benefits, including programs governed by the Consolidated Omnibus Reconciliation Act of 1985, as amended, or the Health Insurance Portability and Accountability Act of 1996, as amended;

4.  Other employee benefit plan or program not defined in the Employee Retirement Income Security Act of 1974, as amended; or

5.  Any other plan or program otherwise described in the paragraphs above while such plan or program is being actively developed, formed or proposed by you prior to the formal creation of such plan or program.

**"Benefit program"** means a "benefit plan" sponsored, operated, maintained, or administered by a person or organization identified in Item 1 of the Declarations, either directly or indirectly or through any "subsidiary" or "affiliate".

**"Bodily injury"** means physical injury, sickness, or disease sustained by a person, including death resulting from any of these at any time and any associated emotional distress, mental anguish, mental injury, shock, or fright.

**"Claim"** means:

1.  A written demand for monetary or non-monetary relief;

2.  A civil proceeding commenced by the service of a complaint or similar pleading;

3.  An administrative or regulatory inquiry, investigation, or proceeding brought by a governmental entity or similar authority;

4.  A disciplinary inquiry, investigation, or proceeding brought by an accrediting organization, athletic association, or professional society;

5.  A "special needs hearing";

6.  An alternative dispute resolution proceeding commenced by a notice or written demand;

7.  A criminal inquiry, investigation, or proceeding;

8.  A written request to toll or waive a statute of limitations;

9.  An "extradition" demand commenced by an official request or by the execution of an arrest warrant; or

10. "Securityholder derivative demand".

**"Coverage territory"** means anywhere in the world.

**"Damages"** means sums an "insured" becomes legally obligated to pay for any:

1.  Compensatory damages;

2.  Statutory damages;

3.  Nominal damages;

4.  "Pre-judgment interest" or "post judgment interest";

5.  Plaintiff's attorneys fees or costs;

6.   Punitive or exemplary damages or the multiplied portions of any multiplied damage award to the extent such amounts are insurable under the law of the jurisdiction most favorable to the insurability of such amounts provided such jurisdiction has a substantial relationship to the relevant "insureds", to the insurer, or to the "claim";

7.   Fines and penalties to the extent such amounts are insurable under the law of the jurisdiction most favorable to the insurability of such amounts provided such jurisdiction has a substantial relationship to the relevant "insureds", to the insurer, or to the "claim"; or

8.   Any Excess Benefit Transaction Excise Tax as defined in Section 4958 of the Internal Revenue Code of 1986, as amended, only if and to the extent that indemnification by the organization qualifying as a Named Insured for such Excess Benefit Transaction Excise Tax is not expressly prohibited in the by-laws, certificate of incorporation, or other organizational documents of such organization.

**"Defense expenses"** means, with respect to a "claim" we defend, including any appeal therefrom, any:

1.   Expenses we incur;

2.   Cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance;

3.   Expenses incurred by you at our request to assist us in the investigation or defense of the "claim"; or

4.   Court costs taxed against you in the "claim".

**"Employee"** means a person who receives any wages, salary, or commissions by you for any labor provided on a full-time, part-time, temporary, or seasonal basis. However, "employee" does not include "executive", "independent contractor", "leased worker", or "religious person".

**"Employee benefits administrative services"** means, with respect to a "benefit program", any:

1.   Counseling of a participant, including any dependent or beneficiary;

2.   Handling of a record; or

3.   Effecting or terminating a person's participation.

**"Employee Welfare Benefit Plan"** means any plan so defined in the Employee Retirement Income Security Act of 1974, as amended.

**"Employment practices violation"** means any employment related discrimination, "harassment", "workplace tort", employment related retaliation, or "wrongful employment action".

**"Executive"** means a person who serves you as any:

1.   Director or officer (if you are an organization other than a partnership);

2.   Trustee (if you are a trust);

3.   Manager or managing member (if you are a limited liability company);

4.   General partner (if you are a partnership);

DIRECTORS & OFFICERS LIABILITY COVERAGE FORM

5.    Member of a school board (if you are a school organization);

6.    Member of an advisory board (if you are an organization);

7.    Member of a duly constituted committee (if you are an organization); or

8.    Functional equivalent of the above if serving outside the United States.

**"Extradition"** means any governmental process by which any person qualifying as an "insured" under this insurance located in any state, country, or other governmental jurisdiction is or is sought to be surrendered to another state, country, or other governmental jurisdiction for trial or imprisonment or to answer any criminal accusation.

**"Financial impairment"** means:

1.    Entering into proceedings in bankruptcy;

2.    Becoming a debtor in possession; or

3.    The taking of control, the supervision of, or the managing or liquidating the financial affairs, by a receiver, conservator, liquidator, trustee, rehabilitator, or similar official.

**"Fungi"** means any type or form of fungus, including mold or mildew or any mycotoxins, spores, scents, or byproducts produced or released by fungi.

**"Harassment"** means any employment related harassment, including "sexual harassment".

**"Independent contractor"** means a person who performs services for you or on your behalf under an express or implied agreement and who is not subject to your control or right to control the manner and means of performing the services.

**"Insured"** means any:

1.    Person or organization identified in Item 1 of the Declarations;

2.    "Subsidiary", "affiliate", or "benefit program", existing prior to or created or acquired on or after the inception date of this insurance.

Any organization identified in 2. above also qualifies as a Named Insured under this insurance;

3.    Student or parent organization formally recognized by you existing prior to or created or acquired on or after the inception date of this insurance.

Any organization identified in 3. above also qualifies as a Named Insured under this insurance;

4.    Past, present, or future person in his or her capacity as any "executive", "employee", "volunteer", or "leased worker" but only if you agreed in writing to indemnify such "leased worker" or the leasing company, or "independent contractor" but only if you agreed in writing to indemnify such "independent contractor";

5.    Your past, present, or future member or representative to an education association in his or her capacity as such;

6.    Your past, present, or future student while serving as a student teacher or teaching assistant, participating in a supervised internship program in

satisfaction of course requirements, or performing services for you or on your behalf;

7.     Past, present, or future "religious person" in his or her capacity as such;

8.     Past, present, or future "executive", "employee", "volunteer", or "religious person" for service at your direction for or on behalf of any not for profit organization that does not qualify as a Named Insured under this insurance, except and to the extent that the not for profit organization is required or permitted to indemnify such person, unless such organization is unable to do so because of its "financial impairment";

9.     Any other person or organization not identified in the subsections above who is liable for the conduct of a person accepted as a member of a Catholic religious institute or a society of apostolic life provided such person qualifies as a "religious person" and then only to the extent of that liability;

10.    Lawful spouse of any person identified above for any "claim" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, his or her status as the spouse of such person or his or her ownership interest in property which the claimant seeks as damages, where such person is entitled to coverage under this insurance;

11.    Debtor-in-possession under United States bankruptcy law or equivalent status under the law of any other country of any organization identified above; or

12.    Estate, heir, legal representative, or assign of any person identified above but only with respect to a "wrongful act" involving such person as provided for above.

**"Insured person"** means a natural person that is an "insured".

**"Leased worker"** means a person leased by you or on your behalf from a labor leasing firm under a written contract or agreement.

**"Loss"** means any "damages" or "defense expenses".

**"Medical professional services"** means any:

1.     Medical, surgical, dental, x-ray, or nursing service, treatment, advice, or instruction, including the related furnishing of food or beverages;

2.     Furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances; or

3.     Handling of dead bodies or the performance of autopsies.

**"Non-indemnifiable loss"** means that part of "loss" incurred by an "insured person" that you are not permitted or required to indemnify or you are required to indemnify but do not because of your "financial impairment".

**"Pension Benefit Plan"** means any plan so defined in the Employee Retirement Income Security Act of 1974, as amended.

**"Personal and advertising injury offense"** means, including continuous or repeated exposure to substantially the same general harmful conditions, any:

1.     False arrest, detention, or imprisonment;

2.   Malicious prosecution;

3.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;

4.   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

5.   Oral or written publication, in any manner, of material that violates a person's right of privacy;

6.   The use of another's advertising idea in your "advertisement"; or

7.   Infringing upon another's copyright, trade dress, or slogan in your "advertisement".

Any continuous or repeated exposure shall be deemed to commence at the time of the earliest exposure.

**"Policy period"** means the period of time from the effective date of this insurance to the cancellation date or, if none, then the expiration date, as specified in Item 2 of the Declarations.  The date and time are the Local Standard Time at your mailing address shown in Item 1 of the Declarations.

**"Pollutants"** means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste, or waste materials to be recycled, reconditioned, or reclaimed.

**"Post-judgment interest"** means all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

**"Pre-judgment interest"** means that particular amount of interest awarded against an "insured" on that part of the judgment we pay.  If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**"Professional services"** means any:

1.   Service which requires a license, masters or doctorate degree, or certification; or

2.   Other service requiring any specialized knowledge, skill, or professional judgment.

However, "professional services" does not include "medical professional services" or the use of force to protect persons or property.

**"Property damage"** means any:

1.   Physical injury to tangible property, including all loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.   Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

**"Religious person"** means a person (if you are an organization):

1.  Ordained as a Catholic priest or deacon and who works for you or on your behalf or is incardinated with you;

2.  Accepted as a member of a Catholic religious institute or a society of apostolic life who works for you or on your behalf; or

3.  Sponsored by the first Named Insured in a program of formation for the priesthood or diaconate;

But only if the person qualifies as such in accordance with the records or intent of the first Named Insured.

**"Securityholder derivative demand"** means any:

1.  Written demand, by one or more of your securityholders, upon your Board of Directors or Board of Managers, to bring a civil proceeding in court against a natural person qualifying as an "insured" under this Coverage Part; or

2.  Any lawsuit, by one or more of your securityholders, brought derivatively on your behalf, against a natural person qualifying as an "insured" under this Coverage Part for a "wrongful act" without first making a demand as described in the paragraph above.

**"Sexual abuse"** means criminal sexual conduct by anyone of any person while in your care, custody, or control.  "Sexual abuse" does not include "sexual harassment".

**"Sexual harassment"** means any unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature made a condition of employment, used as a basis for employment decisions, or that creates an intimidating, hostile, or offensive work environment.

**"Special needs hearing"** means a due process mediation or hearing:

1.  Conducted at your written request or at the written request of a student's parent(s) or legal guardian(s);

2.  Which is presided over by an impartial arbiter; and

3.  Of which the subject is the special education needs and related services of the student.

**"Subsidiary"** means an organization that a person or organization identified in Item 1 of the Declarations, either directly or indirectly or through any "affiliate" or other "subsidiary", has the ability to control by means of membership or ownership of a majority of the issued and outstanding voting stock.

**"Volunteer"** means a person who donates his or her work to you and is directed by you or on your behalf.  However, "volunteer" does not include "executive" or "religious person".

**"Workplace tort"** means any employment related:

1.  False imprisonment;

2.  Libel, slander, or defamation;

3.  Detention;

4.   Invasion of privacy;

5.   Malicious prosecution; or

6.   Misrepresentation.

**"Wrongful act"** means any:

1.   Misstatement, misleading statement, act, error, omission, neglect, or breach of duty; or

2.   Other matter claimed solely by reason of:

   a.   A person serving in his or her position; or

   b.   Your ownership interest or affiliation with another organization.

All "wrongful acts" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any common fact, circumstance, situation, transaction, causality, event, or decision, shall be considered a single "wrongful act" commencing at the time of the earliest of the "wrongful acts".

**"Wrongful employment action"** means any employment related:

1.   Wrongful dismissal, discharge, termination, or constructive termination of employment;

2.   Wrongful failure to employ or promote;

3.   Wrongful deprivation of career opportunity;

4.   Wrongful demotion;

5.   Negligent employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

6.   Wrongful discipline;

7.   Failure to grant tenure or practice privileges;

8.   Failure to provide or enforce adequate or consistent organizational policies or procedures;

9.   Failure to train; or

10.   Violation of an individual's civil rights.

## Section V – General Conditions

The following conditions apply in addition to the Common Policy Conditions:

A.   Defense and Settlement

We shall have the right and duty to investigate a "wrongful act" and handle and defend any "claim" and settle the "claim", but only with the consent of the first Named Insured.  We shall also have the right and duty to subrogate the cost of the "claim" if we pay any monies due under this insurance.  If the first Named Insured refuses consent to a settlement in accordance with our recommendation that is acceptable to the claimant and is within this insurance's applicable Limit of Insurance shown in Items 6 or 7(a) of the Directors & Officers Liability Coverage Part Declarations;

DIRECTORS & OFFICERS LIABILITY COVERAGE FORM

1. The first Named Insured will thereafter be solely responsible for investigating, handling, defending, and settling such "claim" at their own expense; and

2. Subject to any applicable Aggregate Limit of Insurance shown in Items 6 or 7(b) of the Directors & Officers Liability Coverage Part Declarations, our liability with respect to such "claim" shall not exceed the amount for which such "claim" could have been settled by us, including "defense expenses" incurred up to and until the time that the first Named Insured refuses consent to the settlement.

We shall pay on your behalf any monies due under this insurance.

Our obligation to defend you ends when we have used up the applicable Limit of Insurance.

B. Duties in the Event of a Claim

1. You shall, upon knowledge by the first Named Insured or by any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, give us written notice of a "claim" made during the "policy period" to which this insurance may apply.  Such notice must, as a condition precedent to exercising any rights under this insurance, be given as soon as practicable but in no event later than sixty (60) days from the end of the "policy period" or, if applicable, from the end of the Extended Reporting Period.  To the extent possible, notice shall include:

   a. The Named Insured's name and address;

   b. How, when, and where the actual or alleged "wrongful act" took place;

   c. The names and addresses of any injured persons or witnesses;

   d. The date the "claim" was received; and

   e. Copies of any demands, notices, summonses, or legal papers received in connection with the "claim".

2. You must:

   a. Cooperate with us;

   b. Authorize us to obtain records and other information;

   c. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of a breach of duty to which this insurance may apply; and

   d. Seek our consent to make any payment, assume any obligation, incur any expense, or make any admission of liability.

C. Notice of a Circumstance

If, during the "policy period", the first Named Insured or any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, first becomes aware of any fact or circumstance which may reasonably be expected to give rise to a "claim" under this insurance and, as soon as practicable thereafter but in no event later than sixty (60) days from the end of the "policy period" or, if applicable, the Extended Reporting Period, gives us written notice of such fact or circumstance along with the full particulars described below, then any "claim" subsequently made against any "insured" arising out of, based

upon, or attributable to, directly or indirectly, in whole or in part, such fact or circumstance will be deemed made during the "policy period".  The written notice shall include, at a minimum:

1.   The names or identity of the potential claimants and a detailed description of the wrongful conduct; and

2.   The way by which you first became aware of the wrongful conduct.

D.   Extended Reporting Period

If we do not renew or you cancel or non-renew this insurance, you shall have the right, upon payment of the required additional premium, to any of the Extended Reporting Period options stipulated in Item 14 of the Directors & Officers Liability Coverage Part Declarations following the effective date of cancellation or non-renewal, but only with respect to any "wrongful act" first taking place on or after the Retroactive Date shown in the Declarations and prior to the effective date of such cancellation or non-renewal.  The Extended Reporting Period does not extend the "policy period" or change the scope of coverage.

The right to purchase the Extended Reporting Period shall not be available in the event of cancellation or non-renewal of this insurance resulting from the failure to pay any premium due.  The offer of renewal terms different from those in effect prior to renewal shall not constitute a refusal to renew.

This right of extension shall lapse unless written notice of such election, together with payment of any additional premium due, is given to us within sixty (60) days following the effective date of cancellation or non-renewal.  Any "claim" made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding "policy period".

The Limit of Insurance applicable to the Extended Reporting Period shall be part of, and not in addition to, the Limit of Insurance for the immediately preceding "policy period".

E.   Priority of Payments

In the event payment of "loss" is due under this insurance but the amount of such "loss" in the aggregate exceeds the remaining available Limit of Liability, we shall:

1.   First pay "non-indemnifiable loss"; then

2.   To the extent of any remaining amount of the Limit of Liability available after payment under 1. above, pay such "loss" for which coverage is provided under any other coverage of this insurance.

Except as otherwise provided above, we may pay covered "loss" as it becomes due under this insurance without regard to the potential for other future payment obligations under this insurance.

F.   Representations and Severability

The "insureds" represent that the information contained in the "application" for this insurance is true and complete and acknowledge that this insurance is issued in reliance on the truthfulness and completeness of such information.

The "insureds" further agree that any material misrepresentation that affects the insurability of this risk shall nullify this insurance as respects any:

DIRECTORS & OFFICERS LIABILITY COVERAGE FORM

1.  Person who knew the information was untrue or incomplete;

2.  Organization for any indemnification obligation due any person identified in 1. above; or

3.  Organization itself, if any person identified in 1. above is an "executive" of that organization.

This insurance shall otherwise remain in full force and effect.

G.  Waiver of Transfer of Rights of Recovery Against Others to Us

We waive any right of recovery we may have against an "insured" unless the "insured" pleads guilty or nolo contendere or the "wrongful act" is established by final and non-appealable adjudication.

NOTICE:  THIS IS DEFENSE EXPENSE WITHIN LIMITS INSURANCE.  DEFENSE EXPENSES SHALL REDUCE, AND MAY EXHAUST, THE LIMITS OF INSURANCE.

NOTICE:  THIS IS CLAIMS MADE INSURANCE.  SUBJECT TO ITS TERMS, THIS INSURANCE APPLIES ONLY TO A CLAIM FIRST MADE DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD, PROVIDED SUCH CLAIM IS REPORTED NO LATER THAN 60 DAYS FROM THE END OF THE POLICY PERIOD OR FROM THE END OF ANY APPLICABLE EXTENDED REPORTING PERIOD.

ECCLESIA ASSURANCE COMPANY
50 North Park Avenue
Rockville Centre, New York  11570

COMMERCIAL PACKAGE POLICY
**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART DECLARATIONS**

Policy Number:   PKG-2018-1          Date Effective:   11/1/2018


ITEM 6:     Overall Limits of Insurance:

| | |
|---|---|
| Each Loss | See Endorsement 2 |
| General Aggregate | See Endorsement 2 |


ITEM 7:     Limits of Insurance:

| Coverage | 7(a) Limit of Insurance | 7(b) Aggregate Limit of Insurance |
|---|---|---|
| Employment Practices Liability | $750,000 Each "Wrongful Act" | $750,000 |


ITEM 8:     Retentions                              See Endorsement 2


ITEM 9:     Premium:

| | |
|---|---|
| 9(a) Deposit Premium | $95,726 |
| 9(b) Type | Not Adjustable |
| 9(c) Minimum Earned Premium | $95,726 |
| 9(d) Rate | Not Applicable |
| 9(e) Deposit Exposure Basis | Not Applicable |
| 9(f) Deposit Premium attributable to the Terrorism Risk Insurance Act | Not Applicable |

ITEM 10:    <u>Notices</u>:

    10(a)  Any "claim" fact or           Ecclesia Assurance Company
    circumstance                          50 North Park Avenue
                                      Rockville Centre, NY  11570

    10(b)  Any other matters          Ecclesia Assurance Company
                                        50 North Park Avenue
                                      Rockville Centre, NY  11570


ITEM 11:    Retroactive Date            9/1/1996


ITEM 12:    Pending or Prior Date      11/1/2008


ITEM 13:    Continuity Date           9/1/2004


ITEM 14:    <u>Extended Reporting Period Options</u>:

| <u>Period</u> | <u>Additional Premium</u> |
|---|---|
| One Calendar Year | 100% of the Annual Part Premium |
| Two Calendar Years | 150% of the Annual Part Premium |
| Three Calendar Years | 200% of the Annual Part Premium |


In witness whereof, this Coverage Part has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.


ECCLESIA ASSURANCE COMPANY

_____     2/25/2019
Authorized Representative's Signature      Date


    Copyright ©, Porter & Curtis, LLC, 2007    D EP 02 04 09 07

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM TABLE OF CONTENTS

**Section I – Coverage** ................................................................................................... 3
**Section II – Limits of Insurance and Retentions** ...................................................... 3
   A.   Limits of Insurance ............................................................................................ 3
   B.   Aggregate Limits of Insurance .......................................................................... 4
   C.   Each Loss Limit of Insurance ............................................................................ 4
   D.   General Aggregate Limit of Insurance ............................................................... 4
   E.   Retentions ......................................................................................................... 4
**Section III – Exclusions** ............................................................................................. 4
   A.   Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) ................... 5
   B.   Employee Retirement Income Security Act (ERISA) ............................................ 5
   C.   Fair Labor Standards Act (FLSA) ...................................................................... 5
   D.   National Labor Relations Act (NLRA) ................................................................. 5
   E.   Occupational Safety and Health Act (OSHA) ..................................................... 5
   F.   Pending or Prior Claim ...................................................................................... 6
   G.   Prior Knowledge ............................................................................................... 6
   H.   Prior Notice of a Claim or Circumstance ............................................................ 6
   I.   Workers' Adjustment and Retraining Notification Act (WARN) ............................. 6
   J.   Workers' Compensation and Similar Laws .......................................................... 6
**Section IV – Definitions** .............................................................................................. 7
   "Affiliate" ................................................................................................................. 7
   "Application" ............................................................................................................ 7
   "Benefit plan" .......................................................................................................... 7
   "Benefit program" ................................................................................................... 7
   "Claim" ................................................................................................................... 8
   "Coverage territory" ................................................................................................ 8
   "Damages" .............................................................................................................. 8
   "Defense expenses" ............................................................................................... 9
   "Employee" ............................................................................................................. 9
   "Employee Welfare Benefit Plan" ............................................................................ 9
   "Employment practices violation" ............................................................................. 9
   "Executive" ............................................................................................................. 9
   "Harassment" .......................................................................................................... 9
   "Independent contractor" ......................................................................................... 9
   "Insured" ................................................................................................................ 9
   "Leased worker" ................................................................................................... 10
   "Loss" .................................................................................................................. 10
   "Pension Benefit Plan" ......................................................................................... 10
   "Policy period" ...................................................................................................... 10
   "Post-judgment interest" ....................................................................................... 10
   "Pre-judgment interest" ......................................................................................... 10
   "Religious person" ................................................................................................ 10
   "Sexual harassment" ............................................................................................ 11
   "Subsidiary" ......................................................................................................... 11
   "Volunteer" ........................................................................................................... 11
   "Workplace tort" ................................................................................................... 11
   "Wrongful act" ...................................................................................................... 11
   "Wrongful employment action" .............................................................................. 11
**Section V – General Conditions** .............................................................................. 12

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

A.   Defense and Settlement......................................................................... 12
B.   Duties in the Event of a Claim .............................................................. 12
C.   Notice of a Circumstance ...................................................................... 13
D.   Extended Reporting Period ................................................................... 13
E.   Representations and Severability........................................................... 14
F.   Waiver of Transfer of Rights of Recovery Against Others to Us ........................ 14

EMPLOYMENT PRACTICES LIABIILITY COVERAGE FORM

Throughout this Coverage Part, the words "you" and "your" refer to the person or organization first identified in Item 1 of the Declarations (the "first Named Insured") and any other person or organization qualifying as a Named Insured under this insurance. The words "we", "us", and "our" refer to the insurance company issuing this insurance. Other words or phrases that appear in quotation marks have special meaning.  Refer to Section IV – Definitions.

In consideration of the payment of premium and in reliance upon the statements made in the "application" for this insurance and subject to all the provisions of this policy, you and we agree as follows:

## Section I – Coverage

We will pay for "loss" resulting from a "claim" first made against an "insured" during the "policy period" or Extended Reporting Period as shown in Item 14 of the Employment Practices Liability Coverage Part Declarations, if applicable, because of any actual or alleged "wrongful act" resulting from an "employment practices violation" to which this insurance applies.

This insurance applies only if:

1.      The "wrongful act" takes place in the "coverage territory";

2.      The "wrongful act" commences on or after the Retroactive Date, if any, shown in Item 11 of the Employment Practices Liability Coverage Part Declarations and before the end of the "policy period"; and

3.      We receive notice in accordance with the reporting requirements in Section V. B. of this insurance.

All "claims" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, a "wrongful act" to which this insurance applies will be considered a single "claim" deemed first made at the earlier of the following dates:

1.      The date the earliest of such "claims" was made; or

2.      The date such "wrongful act" was reported to us as a fact or circumstance under this insurance or under any other prior policy providing similar coverage.

## Section II – Limits of Insurance and Retentions

A.      Limits of Insurance

The applicable Limit of Insurance shown in Item 7(a) of the Employment Practices Liability Coverage Part Declarations is the most we will pay for such coverage under this insurance from one (1) "wrongful act" regardless of the number of:

1.      "Insureds" under this insurance; or

2.      Persons or organizations making "claims".

These Limits are part of, and not in addition to the Each Loss Limit of Insurance, if any, shown in Item 6 of the Employment Practices Liability Coverage Part Declarations and shall be reduced by the amount of any applicable Retention shown in Item 8 of the Employment Practices Liability Coverage Part Declarations.

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

B.    Aggregate Limits of Insurance

The applicable Aggregate Limit of Insurance shown in Item 7(b) of the Employment Practices Liability Coverage Part Declarations is the most we will pay for such coverage under this insurance.  This Aggregate limit is part of, and not in addition to the General Aggregate Limit of Insurance, if any, shown in Item 6 of the Employment Practices Liability Coverage Part Declarations.

Our obligation under this insurance for any particular coverage shall cease when the Aggregate Limit for that coverage, if any, has been exhausted by the payment of amounts we owe under such coverage.

C.    Each Loss Limit of Insurance

The Each Loss Limit of Insurance shown in Item 6 of the Employment Practices Liability Coverage Part Declarations is the most we will pay for all coverage under this insurance from one (1) "wrongful act" regardless of the number of:

1.    "Insureds" under this insurance;

2.    Persons or organizations making "claims"; or

3.    Coverages under this insurance.

D.    General Aggregate Limit of Insurance

The General Aggregate Limit of Insurance shown in Item 6 of the Employment Practices Liability Coverage Part Declarations, is the most we will pay for all coverage under this insurance.

Our obligation under this insurance shall cease when the General Aggregate Limit of Insurance has been exhausted by payment of amounts we owe under this insurance.

E.    Retentions

The highest applicable Retention shown in Item 8 of the Employment Practices Liability Coverage Part Declarations is the most you will pay under this insurance from one (1) "wrongful act" regardless of the number of:

1.    "Insureds" under this insurance;

2.    Persons or organizations making "claims"; or

3.    Coverages under this insurance.

Any amount paid by us shall be allocated by Coverage in proportion to the total amount such covered loss bears to the total amount of all covered loss.  Any such allocated amounts shall erode any applicable Aggregate Limits of Insurance as set forth in Item 7(b) of the Employment Practices Liability Coverage Part Declarations.

Any Retention shall be payable by us and reimbursed by you within thirty (30) days of our written request for reimbursement.  As a condition precedent to exercising any rights under this insurance, you shall advance claims funds and secure any remaining reimbursement obligation as we may require.

Your obligation under this insurance for one (1) "wrongful act" shall cease when the highest applicable Retention has been exhausted by payment of amounts you owe for such "wrongful act" under this insurance.

**Section III – Exclusions**

This insurance does not apply to any "claim":

A. Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA)

For any actual or alleged violation of the responsibilities, obligations, or duties imposed by the Consolidated Omnibus Budget Reconciliation Act as amended, or any regulations promulgated thereunder, or any similar provisions of any federal, state, or local law or common law; provided, however, this exclusion shall not apply to any "claim" for any actual or alleged employment related retaliatory treatment of the claimant by any "insured" on account of the claimant's exercise of rights pursuant to any such law.

B. Employee Retirement Income Security Act (ERISA)

For any actual or alleged violation of the responsibilities, obligations, or duties imposed by the Employee Retirement Income Security Act of 1974 (except Section 510 thereof) or any amendments thereto or any rules or regulations promulgated thereunder or any similar provisions of any federal, state, or local statutory law or common law; provided, however, this exclusion shall not apply to any "claim" for any actual or alleged employment related retaliatory treatment of the claimant by any "insured" on account of the claimant's exercise of rights pursuant to any such law.

C. Fair Labor Standards Act (FLSA)

For any actual or alleged violation of the responsibilities, obligations or duties imposed by the Fair Labor Standards Act (except the Equal Pay Act of 1963) as amended, or any regulations promulgated thereunder, or any similar provisions of any federal, state, or local law or common law; provided, however, this exclusion shall not apply to:

1. "Defense expenses"; or

2. Any "claim" for any actual or alleged employment related retaliatory treatment of the claimant by any "insured" on account of the claimant's exercise of rights pursuant to any such law.

D. National Labor Relations Act (NLRA)

For any actual or alleged violation of the responsibilities, obligations, or duties imposed by the National Labor Relations Act as amended, or any regulations promulgated thereunder, or any similar provisions of any federal, state, or local law or common law; provided, however, this exclusion shall not apply to:

1. "Defense expenses"; or

2. Any "claim" for any actual or alleged employment related retaliatory treatment of the claimant by any "insured" on account of the claimant's exercise of rights pursuant to any such law.

E. Occupational Safety and Health Act (OSHA)

For any actual or alleged violation of the responsibilities, obligations, or duties imposed by the Occupational Safety and Health Act as amended, or any regulations promulgated thereunder, or any similar provisions of any federal, state, or local law or common law; provided, however, this exclusion shall not apply to:

1. "Defense expenses"; or

Copyright ©, Porter & Curtis, LLC, 2007        F EP 00 19 09 07

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

2. Any "claim" for any actual or alleged employment related retaliatory treatment of the claimant by any "insured" on account of the claimant's exercise of rights pursuant to any such law.

F.   Pending or Prior Claim

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, a "claim" involving an "insured" that was pending as of or commenced prior to the Pending or Prior Date shown in Item 12 of the Employment Practices Liability Coverage Part Declarations, including any "claim" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any fact or circumstance underlying or alleged in any such pending or prior proceeding.

G.   Prior Knowledge

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any actual or alleged "wrongful act" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, an "employment practices violation" if known by you (if you are a person) or any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured (if you are an organization) prior to the Continuity Date shown in Item 13 of the Employment Practices Liability Coverage Part Declarations, but only if such person could have reasonably foreseen that the "wrongful act" would lead to a "claim" under this insurance.

H.   Prior Notice of a Claim or Circumstance

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any "wrongful act" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, an "employment practices violation" alleged in any claim which has been reported, or in any fact or circumstance of which notice has been given, prior to the "policy period" under any other similar insurance, regardless of whether coverage is provided under such other insurance.

I.   Workers' Adjustment and Retraining Notification Act (WARN)

For any actual or alleged violation of the responsibilities, obligations, or duties imposed by the Worker's Adjustment and Retraining Notification Act as amended, or any regulations promulgated thereunder, or any similar provisions of any federal, state, or local law or common law; provided, however, this exclusion shall not apply to:

1. "Defense expenses"; or

2. Any "claim" for any actual or alleged employment related retaliatory treatment of the claimant by any "insured" on account of the claimant's exercise of rights pursuant to any such law.

J.   Workers' Compensation and Similar Laws

For any actual or alleged obligation under any workers' compensation, disability benefits, or unemployment compensation law or any similar law; provided, however, this exclusion shall not apply to:

1. "Defense expenses"; or

Copyright ©, Porter & Curtis, LLC, 2007     F EP 00 19 09 07

2. Any "claim" for any actual or alleged employment related retaliatory treatment of the claimant by any "insured" on account of the claimant's exercise of rights pursuant to any such law.

## Section IV – Definitions

These terms, whether in their singular, singular possessive, plural, or plural possessive, have special meaning as follows:

**"Affiliate"** means an organization that a person or organization identified in Item 1 of the Declarations, or any person by virtue of holding an office or position with such organization, either directly or indirectly or through any "subsidiary" or other "affiliate", has the ability to control by means of the right to:

1. Elect or appoint the general partner or manager or a majority of the directors or trustees;

2. Serve ex officio as general partner or manager or as a director or trustee and represent a majority of the directors or trustees, individually, or collectively with any:

    a. Other ex officio director or trustee; or

    b. Right of such person or persons to elect or appoint any other director or trustee; or

3. Direct any financial or managerial decision making, whether by operation of law, pursuant to contract or agreement, or pursuant to such entity's charter, articles of association, or by-law provisions.

**"Application"** means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein, and any other such documents submitted in connection with the underwriting of this insurance.

**"Benefit plan"** means any:

1. "Employee Welfare Benefit Plan";

2. "Pension Benefit Plan";

3. Government mandated insurance program for workers compensation, unemployment, social security, or disability benefits, including programs governed by the Consolidated Omnibus Reconciliation Act of 1985, as amended, or the Health Insurance Portability and Accountability Act of 1996, as amended;

4. Other employee benefit plan or program not defined in the Employee Retirement Income Security Act of 1974, as amended; or

5. Any other plan or program otherwise described in the paragraphs above while such plan or program is being actively developed, formed or proposed by you prior to the formal creation of such plan or program.

**"Benefit program"** means any "benefit plan" sponsored, operated, maintained, or administered by a person or organization identified in Item 1 of the Declarations, either directly or indirectly or through any "subsidiary" or "affiliate".

        Copyright ©, Porter & Curtis, LLC, 2007        F EP 00 19 09 07

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

**"Claim"** means:

1.   A written demand for monetary or non-monetary relief;

2.   A civil proceeding commenced by the service of a complaint or similar pleading;

3.   An administrative or regulatory inquiry, investigation, or proceeding brought by a governmental entity or similar authority;

4.   An alternative dispute resolution proceeding commenced by a notice or written demand;

5.   A criminal inquiry, investigation, or proceeding; or

6.   A written request to toll or waive a statute of limitations.

**"Coverage territory"** means anywhere in the world.

**"Damages"** means sums an "insured" becomes legally obligated to pay for any:

1.   Compensatory damages; provided, however, compensatory damages shall not include any:

   a.   Payment of insurance benefits claimed by or on behalf of a claimant or that to which a claimant would have been entitled had the insurance remained in-force;

   b.   Commissions, bonuses, or profit sharing;

   c.   Any actual or potential ownership interest in your business or the value of such ownership interest, including but not limited to, stock or stock options;

   d.   Severance payments; or

   e.   Future compensation or benefits resulting from a settlement, order, or other "claim" resolution that requires the rehiring, promotion, or reinstatement of the claimant;

2.   Statutory damages;

3.   Nominal damages;

4.   "Pre-judgment interest" or "post-judgment interest";

5.   Plaintiff's attorneys fees or costs;

6.   Punitive or exemplary damages or the multiplied portions of any multiplied damage award to the extent such amounts are insurable under the law of the jurisdiction most favorable to the insurability of such amounts provided such jurisdiction has a substantial relationship to the relevant "insureds", to the insurer, or to the "claim";

7.   Liquidated damages awarded under the Age Discrimination in Employment Act, the Equal Pay Act, or the Family Medical Leave Act; or

8.   Fines and penalties to the extent such amounts are insurable under the law of the jurisdiction most favorable to the insurability of such amounts provided such jurisdiction has a substantial relationship to the relevant "insureds", to the insurer, or to the "claim".

**"Defense expenses"** means, with respect to a "claim" we defend, including any appeal therefrom, any:

1. Expenses we incur;

2. Cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance;

3. Expenses incurred by you at our request to assist us in the investigation or defense of the "claim"; or

4. Court costs taxed against you in the "claim".

**"Employee"** means a person who receives any wages, salary, or commissions by you for any labor provided on a full-time, part-time, temporary, or seasonal basis. However, "employee" does not include "executive", "independent contractor", "leased worker", or "religious person".

**"Employee Welfare Benefit Plan"** means any plan so defined in the Employee Retirement Income Security Act of 1974, as amended.

**"Employment practices violation"** means any employment related discrimination, "harassment", "workplace tort", employment related retaliation, or "wrongful employment action".

**"Executive"** means any person who serves you as any:

1. Director or officer (if you are an organization other than a partnership);

2. Trustee (if you are a trust);

3. Manager or managing member (if you are a limited liability company);

4. General partner (if you are a partnership);

5. Member of a school board (if you are a school organization);

6. Member of an advisory board (if you are an organization);

7. Member of a duly constituted committee (if you are an organization); or

8. Functional equivalent of the above if serving outside the United States.

**"Harassment"** means any employment related harassment, including "sexual harassment".

**"Independent contractor"** means a person who performs services for you or on your behalf under an express or implied agreement and who is not subject to your control or right to control the manner and means of performing the services.

**"Insured"** means any:

1. Person or organization identified in Item 1 of the Declarations;

2. "Subsidiary", "affiliate", or "benefit program", existing prior to or created or acquired on or after the inception date of this insurance.

   Any organization identified in 2. above also qualifies as a Named Insured under this insurance;

3. Past, present, or future person in his or her capacity as any "executive", "employee", "volunteer", or "leased worker" but only if you agreed in writing to indemnify such "leased worker" or the leasing company, or "independent

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

contractor" but only if you agreed in writing to indemnify such "independent contractor";

4.  Past, present, or future "religious person" in his or her capacity as such;

5.  Your past, present, or future stockholder (if you are an organization other than a partnership or limited liability company), member (if you are a limited liability company) other than a managing member, or partner (if you are a partnership) other than a general partner, but only in his or her capacity as such;

6.  Any other person or organization not identified in the subsections above who is liable for the conduct of a person accepted as a member of a Catholic religious institute or a society of apostolic life provided such person qualifies as a "religious person" and then only to the extent of that liability;

7.  Lawful spouse of any person identified above for any "claim" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, his or her status as the spouse of such person or his or her ownership interest in property which the claimant seeks as damages, where such person is entitled to coverage under this insurance;

8.  Debtor-in-possession under United States bankruptcy law or equivalent status under the law of any other country of any organization identified above; or

9.  Estate, heir, legal representative, or assign of any person identified above but only with respect to a "wrongful act" involving such person as provided for above.

**"Leased worker"** means a person leased by you or on your behalf from a labor leasing firm under a written contract or agreement.

**"Loss"** means any "damages" or "defense expenses".

**"Pension Benefit Plan"** means any plan so defined in the Employee Retirement Income Security Act of 1974, as amended.

**"Policy period"** means the period of time from the effective date of this insurance to the cancellation date or, if none, then the expiration date, as specified in Item 2 of the Declarations.  The date and time are the Local Standard Time at your mailing address shown in Item 1 of the Declarations.

**"Post-judgment interest"** means all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

**"Pre-judgment interest"** means that particular amount of interest awarded against an "insured" on that part of the judgment we pay.  If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**"Religious person"** means a person (if you are an organization):

1.  Ordained as a Catholic priest or deacon and who works for you or on your behalf or is incardinated with you;

2. Accepted as a member of a Catholic religious institute or a society of apostolic life and who works for you or on your behalf; or

3. Sponsored by the first Named Insured in a program of formation for the priesthood or diaconate;

But only if the person qualifies as such in accordance with the records or intent of the first Named Insured.

**"Sexual harassment"** means any unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature made a condition of employment, used as a basis for employment decisions, or that creates an intimidating, hostile, or offensive work environment.

**"Subsidiary"** means an organization that a person or organization identified in Item 1 of the Declarations, either directly or indirectly or through any "affiliate" or other "subsidiary", has the ability to control by means of membership or ownership of a majority of the issued and outstanding voting stock.

**"Volunteer"** means a person who donates his or her work to you and is directed by you or on your behalf. However, "volunteer" does not include "executive" or "religious person".

**"Workplace tort"** means any employment related:

1. False imprisonment;

2. Libel, slander, or defamation;

3. Detention;

4. Invasion of privacy;

5. Malicious prosecution; or

6. Misrepresentation.

**"Wrongful act"** means any:

1. Misstatement, misleading statement, act, error, omission, neglect, or breach of duty; or

2. Other matter claimed solely by reason of:

    a. A person serving in his or her position; or

    b. Your ownership interest or affiliation with another organization.

All "wrongful acts" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any common fact, circumstance, situation, transaction, causality, event, or decision, shall be considered a single "wrongful act" commencing at the time of the earliest of the "wrongful acts".

**"Wrongful employment action"** means any employment related:

1. Wrongful dismissal, discharge, termination, or constructive termination of employment;

2. Wrongful failure to employ or promote;

3. Wrongful deprivation of career opportunity;

4. Wrongful demotion;

5. Negligent employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

6. Wrongful discipline;

7. Failure to grant tenure or practice privileges;

8. Failure to provide or enforce adequate or consistent organizational policies or procedures;

9. Failure to train; or

10. Violation of an individual's civil rights.

### Section V – General Conditions

The following conditions apply in addition to the Common Policy Conditions:

A. Defense and Settlement

We shall have the right and duty to investigate a "wrongful act" and handle and defend any "claim" and settle the "claim", but only with the consent of the first Named Insured. We shall also have the right and duty to subrogate the cost of the "claim" if we pay any monies due under this insurance. If the first Named Insured refuses consent to a settlement in accordance with our recommendation that is acceptable to the claimant and is within this insurance's applicable Limit of Insurance shown in Items 6 or 7(a) of the Employment Practices Liability Coverage Part Declarations;

1. The first Named Insured will thereafter be solely responsible for investigating, handling, defending, and settling such "claim" at their own expense; and

2. Subject to any applicable Aggregate Limit of Insurance shown in Items 6 or 7(b) of the Employment Practices Liability Coverage Part Declarations, our liability with respect to such "claim" shall not exceed the amount for which such "claim" could have been settled by us, including "defense expenses" incurred up to and until the time that the first Named Insured refuses consent to the settlement.

We shall pay on your behalf any monies due under this insurance.

Our obligation to defend you ends when we have used up the applicable Limit of Insurance.

B. Duties in the Event of a Claim

1. You shall, upon knowledge by the first Named Insured or by any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, give us written notice of a "claim" made during the "policy period" to which this insurance may apply. Such notice must, as a condition precedent to exercising any rights under this insurance, be given as soon as practicable but in no event later than sixty (60) days from the end of the "policy period" or, if applicable, from the end of the Extended Reporting Period. To the extent possible, notice shall include:

a. The Named Insured's name and address;

b. How, when, and where the actual or alleged "wrongful act" took place;

c. The names and addresses of any injured persons or witnesses;

      d.    The date the "claim" was received; and

      e.    Copies of any demands, notices, summonses, or legal papers received in connection with the "claim".

2.    You must:

      a.    Cooperate with us;

      b.    Authorize us to obtain records and other information;

      c.    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of a breach of duty to which this insurance may apply; and

      d.    Seek our consent to make any payment, assume any obligation, incur any expense, or make any admission of liability.

C.    Notice of a Circumstance

If, during the "policy period", the first Named Insured or any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, first becomes aware of any fact or circumstance which may reasonably be expected to give rise to a "claim" under this insurance and, as soon as practicable thereafter but in no event later than sixty (60) days from the end of the "policy period" or, if applicable, the Extended Reporting Period, gives us written notice of such fact or circumstance along with the full particulars described below, then any "claim" subsequently made against any "insured" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, such fact or circumstance will be deemed made during the "policy period". The written notice shall include, at a minimum:

1.    The names or identity of the potential claimants and a detailed description of the wrongful conduct; and

2.    The way by which you first became aware of the wrongful conduct.

D.    Extended Reporting Period

If we do not renew or you cancel or non-renew this insurance, you shall have the right, upon payment of the required additional premium, to any of the Extended Reporting Period options stipulated in the Item 14 of the Employment Practices Liability Coverage Part Declarations following the effective date of cancellation or non-renewal, but only with respect to any "wrongful act" arising out of an "employment practices violation" first taking place on or after the Retroactive Date shown in the Declarations and prior to the effective date of such cancellation or non-renewal. The Extended Reporting Period does not extend the "policy period" or change the scope of coverage.

The right to purchase the Extended Reporting Period shall not be available in the event of cancellation or non-renewal of this insurance resulting from the failure to pay any premium due. The offer of renewal terms different from those in effect prior to renewal shall not constitute a refusal to renew.

This right of extension shall lapse unless written notice of such election, together with payment of any additional premium due, is given to us within sixty (60) days following the effective date of cancellation or non-renewal. Any "claim" made

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

during the Extended Reporting Period shall be deemed to have been made during the immediately preceding "policy period".

The Limit of Insurance applicable to the Extended Reporting Period shall be part of, and not in addition to, the Limit of Insurance for the immediately preceding "policy period".

E.    Representations and Severability

The "insureds" represent that the information contained in the "application" for this insurance is true and complete and acknowledge that this insurance is issued in reliance on the truthfulness and completeness of such information.

The "insureds" further agree that if any information contained in the "application" is untrue or incomplete, this insurance shall not apply to any:

1.    Person who knew the information was untrue or incomplete;

2.    Organization for any indemnification obligation due any person identified in 1. above; or

3.    Organization itself, if any person identified in 1. above is an "executive" of that organization.

F.    Waiver of Transfer of Rights of Recovery Against Others to Us

We waive any right of recovery we may have against an "insured" unless the "insured" pleads guilty or nolo contendere or the "wrongful act" is established by final and non-appealable adjudication.

        Copyright ©, Porter & Curtis, LLC, 2007        F EP 00 19 09 07

NOTICE:  THIS IS DEFENSE EXPENSE WITHIN LIMITS INSURANCE.  DEFENSE EXPENSES SHALL REDUCE, AND MAY EXHAUST, THE LIMITS OF INSURANCE.

NOTICE:  THIS IS CLAIMS MADE INSURANCE.  SUBJECT TO ITS TERMS, THIS INSURANCE APPLIES ONLY TO A CLAIM FIRST MADE DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD, PROVIDED SUCH CLAIM IS REPORTED NO LATER THAN 60 DAYS FROM THE END OF THE POLICY PERIOD OR FROM THE END OF ANY APPLICABLE EXTENDED REPORTING PERIOD.

ECCLESIA ASSURANCE COMPANY
50 North Park Avenue
Rockville Centre, New York  11570

COMMERCIAL PACKAGE POLICY
**EMPLOYEE BENEFITS LIABILITY COVERAGE PART DECLARATIONS**

Policy Number:    PKG-2018-1            Date Effective:    11/1/2018


ITEM 6:    <u>Overall Limits of Insurance</u>:

| | |
|---|---|
| Each Loss | See Endorsement 2 |
| General Aggregate | See Endorsement 2 |


ITEM 7:    <u>Limits of Insurance</u>:

| Coverage | 7(a) Limit of Insurance | 7(b) Aggregate Limit of Insurance |
|---|---|---|
| Employee Benefits Liability | $750,000 Each "Wrongful Act" | $750,000 |


ITEM 8:    Retentions                    See Endorsement 2


ITEM 9:    <u>Premium</u>:

| | |
|---|---|
| 9(a) Deposit Premium | $7,978 |
| 9(b) Type | Not Adjustable |
| 9(c) Minimum Earned Premium | $7,978 |
| 9(d) Rate | Not Applicable |
| 9(e) Deposit Exposure Basis | Not Applicable |
| 9(f) Deposit Premium attributable to the Terrorism Risk Insurance Act | Not Applicable |

ITEM 10:    <u>Notices</u>:

        10(a)  Any "claim" or fact or    Ecclesia Assurance Company
        circumstance    50 North Park Avenue
                                      Rockville Centre, NY  11570

        10(b)  Any other matter    Ecclesia Assurance Company
                                        50 North Park Avenue
                                        Rockville Centre, NY  11570

ITEM 11:    Retroactive Date    9/1/1996

ITEM 12:    Pending or Prior Date    11/1/2008

ITEM 13:    Continuity Date    9/1/2004

ITEM 14:    <u>Extended Reporting Period Options</u>:

| <u>Period</u> | <u>Additional Premium</u> |
| --- | --- |
| One Calendar Year | 100% of the Annual Part Premium |
| Two Calendar Years | 150% of the Annual Part Premium |
| Three Calendar Years | 200% of the Annual Part Premium |

In witness whereof, this Coverage Part has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    2/25/2019
Authorized Representative's Signature    Date

EMPLOYEE BENEFITS LIABILITY COVERAGE FORM TABLE OF CONTENTS

**Section I – Coverage** ..................................................................................................3
**Section II – Limits of Insurance and Retentions** .....................................................3
  A. Limits of Insurance ...........................................................................................3
  B. Aggregate Limits of Insurance..........................................................................4
  C. Each Loss Limit of Insurance ...........................................................................4
  D. General Aggregate Limit of Insurance..............................................................4
  E. Retentions ........................................................................................................4
**Section III – Exclusions** .............................................................................................4
  A. Contractual Liability ..........................................................................................5
  B. Employee Retirement Income Security Act (ERISA)..........................................5
  C. Failure of Investments ......................................................................................5
  D. Insufficient Funds .............................................................................................5
  E. Internal Revenue Code .....................................................................................5
  F. Pending or Prior Claim .....................................................................................5
  G. Prior Knowledge ...............................................................................................5
  H. Prior Notice of a Claim or Circumstance ..........................................................6
  I. Workers' Compensation and Similar Laws........................................................6
**Section IV – Definitions** .............................................................................................6
  "Affiliate" .................................................................................................................6
  "Application"............................................................................................................6
  "Benefit plan" ..........................................................................................................6
  "Benefit program".....................................................................................................7
  "Claim" ....................................................................................................................7
  "Coverage territory" ................................................................................................7
  "Damages"...............................................................................................................7
  "Defense expenses" ................................................................................................7
  "Employee" .............................................................................................................8
  "Employee benefits administrative services" ..........................................................8
  "Employee Welfare Benefit Plan" ...........................................................................8
  "Executive"..............................................................................................................8
  "Independent contractor" ........................................................................................8
  "Insured" .................................................................................................................8
  "Leased worker".......................................................................................................9
  "Loss".......................................................................................................................9
  "Pension Benefit Plan" ............................................................................................9
  "Policy period"..........................................................................................................9
  "Post-judgment interest" .........................................................................................9
  "Pre-judgment interest"............................................................................................9
  "Religious person" ..................................................................................................9
  "Subsidiary"...........................................................................................................10
  "Volunteer"............................................................................................................10
  "Wrongful act"........................................................................................................10
**Section V – General Conditions**................................................................................10
  A. Defense and Settlement..................................................................................10
  B. Duties in the Event of a Claim ........................................................................10
  C. Notice of a Circumstance ...............................................................................11
  D. Extended Reporting Period .............................................................................11
  E. Representations and Severability.....................................................................12

EMPLOYEE BENEFITS LIABILITY COVERAGE FORM

F.    Waiver of Transfer of Rights of Recovery Against Others to Us .......................... 12

EMPLOYEE BENEFITS LIABILITY COVERAGE FORM

Throughout this Coverage Part, the words "you" and "your" refer to the person or organization first identified in Item 1 of the Declarations (the "first Named Insured") and any other person or organization qualifying as a Named Insured under this insurance. The words "we", "us", and "our" refer to the insurance company issuing this insurance. Other words or phrases that appear in quotation marks have special meaning. Refer to Section IV – Definitions.

In consideration of the payment of premium and in reliance upon the statements made in the "application" for this insurance and subject to all the provisions of this policy, you and we agree as follows:

## Section I – Coverage

We will pay for "loss" resulting from a "claim" first made against an "insured" during the "policy period" or Extended Reporting Period as shown in Item 14 of the Employee Benefits Liability Coverage Part Declarations, if applicable, because of an actual or alleged "wrongful act" resulting from the rendering or failure to render "employee benefits administrative services" to which this insurance applies.

This insurance applies only if:

1.    The "wrongful act" takes place in the "coverage territory";

2.    The "wrongful act" commences on or after the Retroactive Date, if any, shown in Item 11 of the Employee Benefits Liability Coverage Part Declarations and before the end of the "policy period"; and

3.    We receive notice in accordance with the reporting requirements in Section V. B. of this insurance.

All "claims" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, a "wrongful act" to which this insurance applies will be considered a single "claim" deemed first made at the earlier of the following dates:

1.    The date the earliest of such "claims" was made; or

2.    The date such "wrongful act" was reported to us as a fact or circumstance under this insurance or under any other prior policy providing similar coverage.

## Section II – Limits of Insurance and Retentions

A.    Limits of Insurance

The applicable Limit of Insurance shown in Item 7(a) of the Employee Benefits Liability Coverage Part Declarations is the most we will pay for such coverage under this insurance from one (1) "wrongful act" regardless of the number of:

1.    "Insureds" under this insurance; or

2.    Persons or organizations making "claims".

These Limits are part of, and not in addition to the Each Loss Limit of Insurance, if any, shown in Item 6 of the Employee Benefits Liability Coverage Part Declarations and shall be reduced by the amount of any applicable Retention shown in Item 8 of the Employee Benefits Liability Coverage Part Declarations.

EMPLOYEE BENEFITS LIABILITY COVERAGE FORM

B.    Aggregate Limits of Insurance

The applicable Aggregate Limit of Insurance shown in Item 7(b) of the Employee Benefits Liability Coverage Part Declarations is the most we will pay for such coverage under this insurance.  This Aggregate limit is part of, and not in addition to the General Aggregate Limit of Insurance, if any, shown in Item 6 of the Employee Benefits Liability Coverage Part Declarations.

Our obligation under this insurance for any particular coverage shall cease when the Aggregate Limit for that coverage, if any, has been exhausted by the payment of amounts we owe under such coverage.

C.    Each Loss Limit of Insurance

The Each Loss Limit of Insurance shown in Item 6 of the Employee Benefits Liability Coverage Part Declarations is the most we will pay for all coverage under this insurance from one (1) "wrongful act" regardless of the number of:

1.    "Insureds" under this insurance;

2.    Persons or organizations making "claims"; or

3.    Coverages under this insurance.

D.    General Aggregate Limit of Insurance

The General Aggregate Limit of Insurance shown in Item 6 of the Employee Benefits Liability Coverage Part Declarations, is the most we will pay for all coverage under this insurance.

Our obligation under this insurance shall cease when the General Aggregate Limit of Insurance has been exhausted by payment of amounts we owe under this insurance.

E.    Retentions

The highest applicable Retention shown in Item 8 of the Employee Benefits Liability Coverage Part Declarations is the most you will pay under this insurance from one (1) "wrongful act" regardless of the number of:

1.    "Insureds" under this insurance;

2.    Persons or organizations making "claims"; or

3.    Coverages under this insurance.

Any amount paid by us shall be allocated by Coverage in proportion to the total amount such covered loss bears to the total amount of all covered loss.  Any such allocated amounts shall erode any applicable Aggregate Limits of Insurance as set forth in Item 7(b) of the Employee Benefits Liability Coverage Part Declarations.

Any Retention shall be payable by us and reimbursed by you within thirty (30) days of our written request for reimbursement.  As a condition precedent to exercising any rights under this insurance, you shall advance claims funds and secure any remaining reimbursement obligation as we may require.

Your obligation under this insurance for one (1) "wrongful act" shall cease when the highest applicable Retention has been exhausted by payment of amounts you owe for such "wrongful act" under this insurance.

**Section III – Exclusions**

EMPLOYEE BENEFITS LIABILITY COVERAGE FORM

This insurance does not apply to any "claim":

A.  Contractual Liability

For liability of others assumed in a contract or agreement.  This exclusion does not apply to liability:

a.  Assumed in accordance with or under the agreement or declaration of trust pursuant to which the "benefit plan" was established; or

b.  You would have in the absence of the contract or agreement.

B.  Employee Retirement Income Security Act (ERISA)

For any actual or alleged violation of the responsibilities, obligations, or duties imposed upon fiduciaries of a "benefit program" by the Employee Retirement Income Security Act of 1974 or any amendments thereto or any rules or regulations promulgated thereunder or any similar provisions of any federal, state, or local statutory law or common law.

C.  Failure of Investments

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the failure of any investment of any kind to perform as represented by any "insured".

D.  Insufficient Funds

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the failure of your "benefit plan" to meet obligations because of insufficient funds.

E.  Internal Revenue Code

For any obligation you may be held liable under the Internal Revenue Codes of 1954 and 1986, any rules or regulations of the foregoing promulgated there under, and amendments thereto or any similar provisions of any federal, state, or local statutory law or common law.

F.  Pending or Prior Claim

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, a "claim" involving an "insured" that was pending as of or commenced prior to the Pending or Prior Date shown in Item 12 of the Employee Benefits Liability Coverage Part Declarations, including any "claim" arising out of or based upon, or attributable to, directly or indirectly, in whole or in part, any fact or circumstance underlying or alleged in any such pending or prior proceeding.

G.  Prior Knowledge

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any actual or alleged "wrongful act" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the rendering or failure to render "employee benefits administrative services" if known by you (if you are a person) or any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured (if you are an organization) prior to the Continuity Date shown in Item 13 of the Employee Benefits Liability Coverage Part Declarations, but only if such person could have reasonably foreseen that the "wrongful act" would lead to a "claim" under this insurance.

Copyright ©, Porter & Curtis, LLC, 2007     F EB 00 17 09 07

H.   Prior Notice of a Claim or Circumstance

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any "wrongful act" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the rendering or failure to render "employee benefits administrative services" alleged in any claim which has been reported or in any fact or circumstance of which notice has been given, prior to the "policy period" under any other similar insurance, regardless of whether coverage is provided under such other insurance.

I.   Workers' Compensation and Similar Laws

For any obligation under a workers' compensation, disability benefits, or unemployment compensation law or any similar law.

**Section IV – Definitions**

These terms, whether in their singular, singular possessive, plural, or plural possessive, have special meaning as follows:

**"Affiliate"** means an organization that a person or organization identified in Item 1 of the Declarations, or any person by virtue of holding an office or position with such organization, either directly or indirectly or through any "subsidiary" or other "affiliate", has the ability to control by means of the right to:

1.   Elect or appoint the general partner or manager or a majority of the directors or trustees;

2.   Serve ex officio as general partner or manager or as a director or trustee and represent a majority of the directors or trustees, individually, or collectively with any:

a.   Other ex officio director or trustee; or

b.   Right of such person or persons to elect or appoint any other director or trustee; or

3.   Direct any financial or managerial decision making, whether by operation of law, pursuant to contract or agreement, or pursuant to such entity's charter, articles of association, or by-law provisions.

**"Application"** means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein, and any other such documents submitted in connection with the underwriting of this insurance.

**"Benefit plan"** means any:

1.   "Employee Welfare Benefit Plan";

2.   "Pension Benefit Plan";

3.   Government mandated insurance program for workers compensation, unemployment, social security, or disability benefits, including programs governed by the Consolidated Omnibus Reconciliation Act of 1985, as amended, or the Health Insurance Portability and Accountability Act of 1996, as amended;

4.   Other employee benefit plan or program not defined in the Employee Retirement Income Security Act of 1974, as amended; or

5.    Any other plan or program otherwise described in the paragraphs above while such plan or program is being actively developed, formed or proposed by you prior to the formal creation of such plan or program.

**"Benefit program"** means any "benefit plan" sponsored, operated, maintained, or administered by a person or organization identified in Item 1 of the Declarations, either directly or indirectly or through any "subsidiary" or "affiliate".

**"Claim"** means:

1.    A written demand for monetary relief;

2.    A civil proceeding commenced by the service of a complaint or similar pleading;

3.    An administrative or regulatory inquiry, investigation, or proceeding brought by a governmental entity or similar authority;

4.    An alternative dispute resolution proceeding commenced by a notice or written demand;

5.    A criminal inquiry, investigation, or proceeding; or

6.    A written request to toll or waive a statute of limitations.

**"Coverage territory"** means anywhere in the world.

**"Damages"** means sums an "insured" becomes legally obligated to pay for any:

1.    Compensatory damages;

2.    Statutory damages;

3.    Nominal damages;

4.    "Pre-judgment interest" or "post-judgment interest";

5.    Plaintiff's attorneys fees or costs;

6.    Punitive or exemplary damages or the multiplied portions of any multiplied damage award to the extent such amounts are insurable under the law of the jurisdiction most favorable to the insurability of such amounts provided such jurisdiction has a substantial relationship to the relevant "insureds", to the insurer, or to the "claim"; or

7.    Fines and penalties to the extent such amounts are insurable under the law of the jurisdiction most favorable to the insurability of such amounts provided such jurisdiction has a substantial relationship to the relevant "insureds", to the insurer, or to the "claim".

**"Defense expenses"** means, with respect to a "claim" we defend, including any appeal therefrom, any:

1.    Expenses we incur;

2.    Cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance;

3.    Expenses incurred by you at our request to assist us in the investigation or defense of the "claim"; or

4.    Costs taxed against you in the "claim".

EMPLOYEE BENEFITS LIABILITY COVERAGE FORM

**"Employee"** means a person who receives any wages, salary, or commissions by you for any labor provided on a full-time, part-time, temporary, or seasonal basis. However, "employee" does not include "executive", "independent contractor", "leased worker", or "religious person".

**"Employee benefits administrative services"** means, with respect to a "benefit program", any:

1.    Counseling of a participant, including any dependent or beneficiary;

2.    Providing interpretation;

3.    Handling of a record; or

4.    Effecting or terminating a person's participation.

**"Employee Welfare Benefit Plan"** means any plan so defined in the Employee Retirement Income Security Act of 1974, as amended.

**"Executive"** means any person who serves you as any:

1.    Director or officer (if you are an organization other than a partnership);

2.    Trustee (if you are a trust);

3.    Manager or managing member (if you are a limited liability company);

4.    General partner (if you are a partnership);

5.    Member of a school board (if you are a school organization);

6.    Member of an advisory board (if you are an organization);

7.    Member of a duly constituted committee (if you are an organization); or

8.    Functional equivalent of the above if serving outside the United States.

**"Independent contractor"** means a person who performs services for you or on your behalf under an express or implied agreement and who is not subject to your control or right to control the manner and means of performing the services.

**"Insured"** means any:

1.    Person or organization identified in Item 1 of the Declarations;

2.    "Subsidiary", "affiliate", or "benefit program", existing prior to or created or acquired on or after the inception date of this insurance.

Any organization identified in 2. above also qualifies as a Named Insured under this insurance;

3.    Past, present, or future person in his or her capacity as any "executive", "employee", "volunteer", or "leased worker" but only if you agreed in writing to indemnify such "leased worker" or the leasing company, or "independent contractor" but only if you agreed in writing to indemnify such "independent contractor";

4.    Past, present, or future "religious person" in his or her capacity as such;

5.    Your past, present, or future stockholder (if you are an organization other than a partnership or limited liability company), member (if you are a limited liability company) other than a managing member, or partner (if you are a

partnership) other than a general partner, but only in his or her capacity as such;

6.  Any other person or organization not identified in the subsections above who is liable for the conduct of a person accepted as a member of a Catholic religious institute or a society of apostolic life provided such person qualifies as a "religious person" and then only to the extent of that liability;

7.  Lawful spouse of any person identified above for any "claim" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, his or her status as the spouse of such person or his or her ownership interest in property which the claimant seeks as damages, where such person is entitled to coverage under this insurance;

8.  Debtor-in-possession under United States bankruptcy law or equivalent status under the law of any other country of any organization identified above; or

9.  Estate, heir, legal representative, or assign of any person identified above but only with respect to a "wrongful act" involving such person as provided for above.

**"Leased worker"** means a person leased by you or on your behalf from a labor leasing firm under a written contract or agreement.

**"Loss"** means any "damages" or "defense expenses".

**"Pension Benefit Plan"** means any plan so defined in the Employee Retirement Income Security Act of 1974, as amended.

**"Policy period"** means the period of time from the effective date of this insurance to the cancellation date or, if none, then the expiration date, as specified in Item 2 of the Declarations.  The date and time are the Local Standard Time at your mailing address shown in Item 1 of the Declarations.

**"Post-judgment interest"** means all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

**"Pre-judgment interest"** means that particular amount of interest awarded against an "insured" on that part of the judgment we pay.  If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**"Religious person"** means a person (if you are an organization):

1.  Ordained as a Catholic priest or deacon and who works for you or on your behalf or is incardinated with you;

2.  Accepted as a member of a Catholic religious institute or a society of apostolic life and who works for you or on your behalf; or

3.  Sponsored by the first Named Insured in a program of formation for the priesthood or diaconate;

But only if the person qualifies as such in accordance with the records or intent of the first Named Insured.

**"Subsidiary"** means an organization that a person or organization identified in Item 1 of the Declarations, either directly or indirectly or through any "affiliate" or other "subsidiary", has the ability to control by means of membership or ownership of a majority of the issued and outstanding voting stock.

**"Volunteer"** means a person who donates his or her work to you and is directed by you or on your behalf.  However, "volunteer" does not include "executive" or "religious person".

**"Wrongful act"** means any:

1.    Misstatement, misleading statement, act, error, omission, neglect, or breach of duty; or

2.    Other matter claimed solely by reason of a person serving in his or her position.

All "wrongful acts" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any common fact, circumstance, situation, transaction, causality, event, or decision, shall be considered a single "wrongful act" commencing at the time of the earliest of the "wrongful acts".

## Section V – General Conditions

The following conditions apply in addition to the Common Policy Conditions:

A.    Defense and Settlement

We shall have the right and duty to investigate a "wrongful act" and handle and defend any "claim" and settle the "claim", but only with the consent of the first Named Insured.  We shall also have the right and duty to subrogate the cost of the "claim" if we pay any monies due under this insurance.  If the first Named Insured refuses consent to a settlement in accordance with our recommendation that is acceptable to the claimant and is within this insurance's applicable Limit of Insurance shown in Items 6 or 7(a) of the Employee Benefits Liability Coverage Part Declarations;

1.    The first Named Insured will thereafter be solely responsible for investigating, handling, defending, and settling such "claim" at their own expense; and

2.    Subject to any applicable Aggregate Limit of Insurance shown in Items 6 or 7(b) of the Employee Benefits Liability Coverage Part Declarations, our liability with respect to such "claim" shall not exceed the amount for which such "claim" could have been settled by us, including "defense expenses" incurred up to and until the time that the first Named Insured refuses consent to the settlement.

We shall pay on your behalf any monies due under this insurance.

Our obligation to defend you ends when we have used up the applicable Limit of Insurance.

B.    Duties in the Event of a Claim

1.    You shall, upon knowledge by the first Named Insured or by any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, give us written notice of a "claim" made during the "policy period" to which this insurance may apply.  Such notice must, as a condition precedent to exercising any rights under this insurance,

be given as soon as practicable but in no event later than sixty (60) days from the end of the "policy period" or, if applicable, from the end of the Extended Reporting Period.  To the extent possible, notice shall include:

a.   The Named Insured's name and address;

b.   How, when, and where the actual or alleged "wrongful act" took place;

c.   The names and addresses of any injured persons or witnesses;

d.   The date the "claim" was received; and

e.   Copies of any demands, notices, summonses, or legal papers received in connection with the "claim".

2.   You must:

a.   Cooperate with us;

b.   Authorize us to obtain records and other information;

c.   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of a breach of duty to which this insurance may apply; and

d.   Seek our consent to make any payment, assume any obligation, incur any expense, or make any admission of liability.

C.   Notice of a Circumstance

If, during the "policy period", the first Named Insured or any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, first becomes aware of any fact or circumstance which may reasonably be expected to give rise to a "claim" under this insurance and, as soon as practicable thereafter but in no event later than sixty (60) days from the end of the "policy period" or, if applicable, the Extended Reporting Period, gives us written notice of such fact or circumstance along with the full particulars described below, then any "claim" subsequently made against any "insured" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, such fact or circumstance will be deemed made during the "policy period".  The written notice shall include, at a minimum:

1.   The names or identity of the potential claimants and a detailed description of the wrongful conduct; and

2.   The way by which you first became aware of the wrongful conduct.

D.   Extended Reporting Period

If we do not renew or you cancel or non-renew this insurance, you shall have the right, upon payment of the required additional premium, to any of the Extended Reporting Period options stipulated in Item 14 of the Employee Benefits Liability Coverage Part Declarations following the effective date of cancellation or non-renewal, but only with respect to any "wrongful act" arising out of the rendering or failure to render "employee benefits administrative services" first taking place on or after the Retroactive Date shown in the Declarations and prior to the effective date of such cancellation or non-renewal.  The Extended Reporting Period does not extend the "policy period" or change the scope of coverage.

Copyright ©, Porter & Curtis, LLC, 2007          F EB 00 17 09 07

EMPLOYEE BENEFITS LIABILITY COVERAGE FORM

The right to purchase the Extended Reporting Period shall not be available in the event of cancellation or non-renewal of this insurance resulting from the failure to pay any premium due.  The offer of renewal terms different from those in effect prior to renewal shall not constitute a refusal to renew.

This right of extension shall lapse unless written notice of such election, together with payment of any additional premium due, is given to us within sixty (60) days following the effective date of cancellation or non-renewal.  Any "claim" made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding "policy period".

The Limit of Insurance applicable to the Extended Reporting Period shall be part of, and not in addition to, the Limit of Insurance for the immediately preceding "policy period".

E.    Representations and Severability

The "insureds" represent that the information contained in the "application" for this insurance is true and complete and acknowledge that this insurance is issued in reliance on the truthfulness and completeness of such information.

The "insureds" further agree that if any information contained in the "application" is untrue or incomplete, this insurance shall not apply to any:

1.    Person who knew the information was untrue or incomplete;

2.    Organization for any indemnification obligation due any person identified in 1. above; or

3.    Organization itself, if any person identified in 1. above is an "executive" of that organization.

F.    Waiver of Transfer of Rights of Recovery Against Others to Us

We waive any right of recovery we may have against any person or organization if such rights of recovery were waived in accordance with or under the agreement or declaration of trust pursuant to which the "benefit plan" was established.

Copyright ©, Porter & Curtis, LLC, 2007      F EB 00 17 09 07

NOTICE:  THIS IS DEFENSE EXPENSE WITHIN LIMITS INSURANCE.  DEFENSE EXPENSES SHALL REDUCE, AND MAY EXHAUST, THE LIMITS OF INSURANCE.

NOTICE:  THIS IS CLAIMS MADE INSURANCE.  SUBJECT TO ITS TERMS, THIS INSURANCE APPLIES ONLY TO A CLAIM FIRST MADE DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD, PROVIDED SUCH CLAIM IS REPORTED NO LATER THAN 60 DAYS FROM THE END OF THE POLICY PERIOD OR FROM THE END OF ANY APPLICABLE EXTENDED REPORTING PERIOD.

ECCLESIA ASSURANCE COMPANY
50 North Park Avenue
Rockville Centre, New York  11570

COMMERCIAL PACKAGE POLICY
**PROFESSIONAL LIABILITY COVERAGE PART DECLARATIONS**

Policy Number:    PKG-2018-1              Date Effective:    11/1/2018

ITEM 6:    <u>Overall Limits of Insurance</u>:

| | |
|---|---|
| Each Loss | See Endorsement 2 |
| General Aggregate | See Endorsement 2 |

ITEM 7:    <u>Limits of Insurance</u>:

| Coverage | 7(a) Limit of Insurance | 7(b) Aggregate Limit of Insurance |
|---|---|---|
| Professional Liability | $750,000 Each "Wrongful Act" | $750,000 |

ITEM 8:    Retentions                        See Endorsement 2

ITEM 9:    <u>Premium</u>:

| | |
|---|---|
| 9(a) Deposit Premium | $39,886 |
| 9(b) Type | Not Adjustable |
| 9(c) Minimum Earned Premium | $39,886 |
| 9(d) Rate | Not Applicable |
| 9(e) Deposit Exposure Basis | Not Applicable |
| 9(f)  Deposit Premium attributable to the Terrorism Risk Insurance Act | Not Applicable |

ITEM 10:   <u>Notices</u>:

        10(a)  Any "claim" or fact or        Ecclesia Assurance Company
        circumstance                      50 North Park Avenue
                                    Rockville Centre, NY  11570

        10(b)  Any other matter             Ecclesia Assurance Company
                                    50 North Park Avenue
                                    Rockville Centre, NY  11570

ITEM 11:   Retroactive Date              9/1/1996

ITEM 12:   Pending or Prior Date      11/1/2008

ITEM 13:   Continuity Date              9/1/2004

ITEM 14:   <u>Extended Reporting Period Options</u>:

| <u>Period</u> | <u>Additional Premium</u> |
|---|---|
| One Calendar Year | 100% of the Annual Part Premium |
| Two Calendar Years | 150% of the Annual Part Premium |
| Three Calendar Years | 200% of the Annual Part Premium |

In witness whereof, this Coverage Part has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    2/25/2019
Authorized Representative's Signature      Date

        Copyright ©, Porter & Curtis, LLC, 2007        D PL 02 04 09 07

PROFESSIONAL LIABILITY COVERAGE FORM TABLE OF CONTENTS

**Section I – Coverage** ................................................................................................3
**Section II – Limits of Insurance and Retentions** ....................................................3
   A.   Limits of Insurance ............................................................................................3
   B.   Aggregate Limits of Insurance...........................................................................4
   C.   Each Loss Limit of Insurance .............................................................................4
   D.   General Aggregate Limit of Insurance ...............................................................4
   E.   Retentions ..........................................................................................................4
**Section III – Exclusions** ...........................................................................................5
   A.   Asbestos.............................................................................................................5
   B.   Contractual Liability ...........................................................................................5
   C.   Cross Suits .........................................................................................................5
   D.   Distribution of Material in Violation of Statutes ..................................................5
   E.   Employee Benefits ..............................................................................................5
   F.   Employee Retirement Income Security Act (ERISA)...........................................6
   G.   Employment Practices.........................................................................................6
   H.   Fungi or Bacteria ................................................................................................6
   I.   Lead ...................................................................................................................6
   J.   Nuclear ...............................................................................................................6
   K.   Pending or Prior Claim .......................................................................................8
   L.   Pollution..............................................................................................................8
   M.   Prior Knowledge .................................................................................................9
   N.   Prior Notice of a Claim or Circumstance ...........................................................9
   O.   Sexual Abuse .....................................................................................................9
   P.   Silica and Silica-Related Dust ...........................................................................9
   Q.   Workers' Compensation and Similar Laws .......................................................10
**Section IV – Definitions** .........................................................................................10
   "Affiliate" ..........................................................................................................10
   "Application".......................................................................................................10
   "Benefit plan" ....................................................................................................10
   "Benefit program" .............................................................................................10
   "Claim"..............................................................................................................10
   "Coverage territory" ..........................................................................................11
   "Damages"........................................................................................................11
   "Defense expenses" .........................................................................................11
   "Employee" .......................................................................................................11
   "Employee benefits administrative services" ....................................................12
   "Employee Welfare Benefit Plan" .....................................................................12
   "Employment practices violation"......................................................................12
   "Executive"........................................................................................................12
   "Fungi" ..............................................................................................................12
   "Harassment".....................................................................................................12
   "Independent contractor" ..................................................................................12
   "Insured"............................................................................................................12
   "Insured contract" .............................................................................................13
   "Leased worker".................................................................................................14
   "Loss".................................................................................................................14
   "Medical professional services" ........................................................................14
   "Pension Benefit Plan".......................................................................................14

"Policy period"...................................................................................................14
"Pollutants" .......................................................................................................14
"Post-judgment interest" ...................................................................................14
"Pre-judgment interest"......................................................................................14
"Professional services" ......................................................................................14
"Religious person" ..............................................................................................14
"Sexual abuse" ...................................................................................................15
"Sexual harassment" ..........................................................................................15
"Special needs hearing".....................................................................................15
"Subsidiary" ........................................................................................................15
"Volunteer"..........................................................................................................15
"Workplace tort"..................................................................................................15
"Wrongful act" .....................................................................................................15
"Wrongful employment action"...........................................................................16
**Section V – General Conditions**.......................................................................16
  A.   Defense and Settlement.............................................................................16
  B.   Duties in the Event of a Claim ...................................................................16
  C.   Notice of a Circumstance ...........................................................................17
  D.   Extended Reporting Period ........................................................................17
  E.   Representations and Severability................................................................18
  F.   Waiver of Transfer of Rights of Recovery Against Others to Us ..........................18

PROFESSIONAL LIABILITY COVERAGE FORM

Throughout this Coverage Part, the words "you" and "your" refer to the person or organization first identified in Item 1 of the Declarations (the "first Named Insured") and any other person or organization qualifying as a Named Insured under this insurance. The words "we", "us", and "our" refer to the insurance company issuing this insurance. Other words or phrases that appear in quotation marks have special meaning.  Refer to Section IV – Definitions.

In consideration of the payment of premium and in reliance upon the statements made in the "application" for this insurance and subject to all the provisions of this policy, you and we agree as follows:

**Section I – Coverage**

We will pay for "loss" resulting from a "claim" first made against an "insured" during the "policy period" or Extended Reporting Period as shown in Item 14 of the Professional Liability Coverage Part Declarations, if applicable, because of any actual or alleged "wrongful act" resulting from the rendering or failure to render "professional services" to which this insurance applies.

This insurance applies only if:

1.     The "wrongful act" takes place in the "coverage territory";

2.     The "wrongful act" first commences on or after the Retroactive Date, if any, shown in Item 11 of the Professional Liability Coverage Part Declarations and before the end of the "policy period"; and

3.     We receive notice in accordance with the reporting requirements in Section V. B. of this insurance.

All "claims" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, a "wrongful act" to which this insurance applies will be considered a single "claim" deemed first made at the earlier of the following dates:

1.     The date the earliest of such "claims" was made; or

2.     The date such "wrongful act" was reported to us as a fact or circumstance under this insurance or under any other prior policy providing similar coverage.

**Section II – Limits of Insurance and Retentions**

A.     Limits of Insurance

The applicable Limit of Insurance shown in Item 7(a) of the Professional Liability Coverage Part Declarations is the most we will pay for such coverage under this insurance from one (1) "wrongful act" regardless of the number of:

1.     "Insureds" under this insurance; or

2.     Persons or organizations making "claims".

These Limits are part of, and not in addition to the Each Loss Limit of Insurance, if any, shown in Item 6 of the Professional Liability Coverage Part Declarations and shall be reduced by the amount of any applicable Retention shown in Item 8 of the Professional Liability Coverage Part Declarations.

          Copyright ©, Porter & Curtis, LLC, 2007       F PL 00 23 09 07

B. Aggregate Limits of Insurance

The applicable Aggregate Limit of Insurance shown in Item 7(b) of the Professional Liability Coverage Part Declarations is the most we will pay for such coverage under this insurance. These Aggregate limits are part of, and not in addition to the General Aggregate Limit of Insurance, if any, shown in Item 6 of the Professional Liability Coverage Part Declarations.

Our obligation under this insurance for any particular coverage shall cease when the Aggregate Limit for that coverage, if any, has been exhausted by the payment of amounts we owe under such coverage.

C. Each Loss Limit of Insurance

The Each Loss Limit of Insurance shown in Item 6 of the Professional Liability Coverage Part Declarations is the most we will pay for all coverage under this insurance from one (1) "wrongful act" regardless of the number of:

1. "Insureds" under this insurance;

2. Persons or organizations making "claims"; or

3. Coverages under this insurance.

D. General Aggregate Limit of Insurance

The General Aggregate Limit of Insurance shown in Item 6 of the Professional Liability Coverage Part Declarations, is the most we will pay for all coverage under this insurance.

Our obligation under this insurance shall cease when the General Aggregate Limit of Insurance has been exhausted by payment of amounts we owe under this insurance.

E. Retentions

The highest applicable Retention shown in Item 8 of the Professional Liability Coverage Part Declarations is the most you will pay under this insurance from one (1) "wrongful act" regardless of the number of:

1. "Insureds" under this insurance;

2. Persons or organizations making "claims"; or

3. Coverages under this insurance.

Any amount paid by us shall be allocated by Coverage in proportion to the total amount such covered loss bears to the total amount of all covered loss. Any such allocated amounts shall erode any applicable Aggregate Limits of Insurance as set forth in Item 7(b) of the Professional Liability Coverage Part Declarations.

Any Retention shall be payable by us and reimbursed by you within thirty (30) days of our written request for reimbursement. As a condition precedent to exercising any rights under this insurance, you shall advance claims funds and secure any remaining reimbursement obligation as we may require.

Your obligation under this insurance for one (1) "wrongful act" shall cease when the highest applicable Retention has been exhausted by payment of amounts you owe for such "wrongful act" under this insurance.

         Copyright ©, Porter & Curtis, LLC, 2007         F PL 00 23 09 07

PROFESSIONAL LIABILITY COVERAGE FORM

**Section III – Exclusions**

This insurance does not apply to any "claim":

A.   Asbestos

   1.   Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the actual, alleged, threatened, or suspected inhalation of, ingestion of, contact with, exposure to, or presence of, asbestos, asbestos products, asbestos containing material, asbestos fibers, or asbestos dust.

   2.   For any loss, cost, or expense arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to, or assessing the effects of, asbestos, asbestos products, asbestos containing material, asbestos fibers, or asbestos dust, by any "insured" or by any other person or entity.

B.   Contractual Liability

   For liability of others assumed in a contract or agreement.  This exclusion does not apply to liability:

   1.   Assumed in a contract or agreement that is an "insured contract", provided the "wrongful act" happens after the execution of the contract or agreement; or

   2.   You would have in the absence of the contract or agreement.

C.   Cross Suits

   Brought by you or on your behalf against any person qualifying as an "insured" under this insurance, except for any derivative action made on your behalf by a member, an Attorney General, or any other such representative party, if such action is brought and maintained independently of, and without assistance, participation, or intervention by any "insured".

D.   Distribution of Material in Violation of Statutes

   Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any actual or alleged violation of:

   1.   The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

   2.   The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

   3.   Any statute, ordinance, or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating, or distribution of material or information.

E.   Employee Benefits

   Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the rendering or failure to render "employee benefits administrative services".

   This exclusion applies:

Copyright ©, Porter & Curtis, LLC, 2007         F PL 00 23 09 07

PROFESSIONAL LIABILITY COVERAGE FORM

    1.    Whether the "insured" may be liable as an employer or in any other capacity; or

    2.    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

F.    Employee Retirement Income Security Act (ERISA)

For any actual or alleged violation of the responsibilities, obligations, or duties imposed by the Employee Retirement Income Security Act of 1974 or any amendments thereto or any rules or regulations promulgated thereunder or any similar provisions of any federal, state, or local statutory law or common law.

G.    Employment Practices

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any actual or alleged "employment practices violation".

This exclusion applies:

    1.    Whether the "insured" may be liable as an employer or in any other capacity; or

    2.    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

H.    Fungi or Bacteria

    1.    Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, for the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage.

    2.    For any loss, cost, or expense arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any "insured" or by any other person or entity.

However, this exclusion does not apply to any "fungi" or bacteria that are on or are contained in, a good or product intended for bodily consumption.

I.    Lead

    1.    Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, actual, alleged, threatened, or suspected inhalation of, ingestion of, contact with, or presence of, lead.

    2.    For any loss, cost, or expense arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to, or assessing the effects of, lead, by any "insured" or by any other person or entity.

J.    Nuclear

    1.    For any liability:

    Copyright ©, Porter & Curtis, LLC, 2007    F PL 00 23 09 07

a)    With respect to which an "insured" under this insurance is also an "insured" under a nuclear energy liability policy issued by the Nuclear Energy Liability Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an "insured" under any such policy, but for its termination upon exhaustion of its limit of insurance; or

b)    Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

1)    Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

2)    An "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2.    For expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

3.    Resulting from the "hazardous properties" or "nuclear material", if:

a)    The "nuclear material":

1)    Is at any "nuclear facility" owned by or operated by or on behalf of, an "insured"; or

2)    Has been discharged or dispersed therefrom;

b)    The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported, or disposed of by or on behalf of an "insured"; or

c)    Arising out of the furnishing by an "insured" of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereof.

As used in this exclusion:

**"By-product material"** has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**"Hazardous properties"** means radioactive, toxic, or explosive properties.

**"Nuclear facility"** means:

a)    Any "nuclear reactor";

b)    Any equipment or device designed or used for:

1)    Separating the isotopes of uranium or plutonium,

2)    Processing or utilizing "spent fuel", or

3)   Handling, processing, or packaging "waste";

c)   Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of an "insured" at the premises where such equipment or device is located consists of more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

d)   Any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of "waste";

And includes the site on which any of the foregoing is located, all operations conducted on site and all premises used for such operations.

**"Nuclear material"** means "source material", "special nuclear material", or "by-product material".

**"Nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**"Source material"** has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**"Special nuclear material"** has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**"Spent fuel"** means any fuel element of fuel component, solid, or liquid, which has been used or exposed to radiation in a "nuclear reactor".

**"Waste"** means any waste material:

a)   Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any one processed primarily for its "source material" content; and

b)   Resulting from the operation by any person or organization of any "nuclear facility".

K.   Pending or Prior Claim

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, a "claim" involving an "insured" that was pending as of or commenced prior to the Pending or Prior Date shown in Item 12 of the Professional Liability Coverage Part Declarations, including any "claim" arising out of or based upon, or attributable to, directly or indirectly, in whole or in part, any fact or circumstance underlying or alleged in any such pending or prior proceeding.

L.   Pollution

1.   Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants" at any time.

2.   For any loss, cost, or expense arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing,

remediating, or disposing of, or in any way responding to or assessing the effects of, "pollutants", by any "insured" or by any other person or entity.

M.    Prior Knowledge

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any actual or alleged "wrongful act" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the rendering or failure to render "professional services" if known by you (if you are a person) or any director, officer, manager or managing member, trustee, general partner, or Risk Manager, of the first Named Insured (if you are an organization) prior to the Continuity Date shown in Item 13 the Professional Liability Coverage Part Declarations, but only if such person could have reasonably foreseen that the "wrongful act" would lead to a "claim" under this insurance.

N.    Prior Notice of a Claim or Circumstance

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any "wrongful act" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the rendering or failure to render "professional services" alleged in any claim which has been reported or in any fact or circumstance of which notice has been given, prior to the "policy period" under any other similar insurance, regardless of whether coverage is provided under such other insurance.

O.    Sexual Abuse

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any actual or alleged "sexual abuse".

This exclusion applies:

1.    Whether the "insured" may be liable as an employer or in any other capacity; or

2.    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

P.    Silica and Silica-Related Dust

1.    Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the actual, alleged, threatened, or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

2.    For any loss, cost, or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any "insured" or by any other person or entity.

As used in 1. and 2. above:

"Silica" means silicon dioxide (occurring in crystalline, amorphous, and impure forms), silica particles, silica dust, or silica compounds; and

"Silica-related dust" means a mixture or combination of silica and other dust or particles.

PROFESSIONAL LIABILITY COVERAGE FORM

Q. Workers' Compensation and Similar Laws

For any obligation under a workers' compensation, disability benefits, or unemployment compensation law or any similar law.

**Section IV – Definitions**

These terms, whether in their singular, singular possessive, plural, or plural possessive, have special meaning as follows:

**"Affiliate"** means an organization that a person or organization identified in Item 1 of the Declarations, or any person by virtue of holding an office or position with such organization, either directly or indirectly or through any "subsidiary" or other "affiliate", has the ability to control by means of the right to:

1. Elect or appoint the general partner or manager or a majority of the directors or trustees;

2. Serve ex officio as general partner or manager or as a director or trustee and represent a majority of the directors or trustees, individually, or collectively with any:

   a. Other ex officio director or trustee; or

   b. Right of such person or persons to elect or appoint any other director or trustee; or

3. Direct financial or managerial decision making, whether by operation of law, pursuant to contract or agreement, or pursuant to such entity's charter, articles of association, or by-law provisions.

**"Application"** means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein, and any other such documents submitted in connection with the underwriting of this insurance.

**"Benefit plan"** means any:

1. "Employee Welfare Benefit Plan";

2. "Pension Benefit Plan";

3. Government mandated insurance program for workers compensation, unemployment, social security, or disability benefits, including programs governed by the Consolidated Omnibus Reconciliation Act of 1985, as amended, or the Health Insurance Portability and Accountability Act of 1996, as amended;

4. Other employee benefit plan or program not defined in the Employee Retirement Income Security Act of 1974, as amended; or

5. Any other plan or program otherwise described in the paragraphs above while such plan or program is being actively developed, formed or proposed by you prior to the formal creation of such plan or program.

**"Benefit program"** means any "benefit plan" sponsored, operated, maintained, or administered by you or on your behalf.

**"Claim"** means:

1. A written demand for monetary or non-monetary relief;

2. A civil proceeding commenced by the service of a complaint or similar pleading;

3. An administrative or regulatory inquiry, investigation, or proceeding brought by a governmental entity or similar authority;

4. A disciplinary inquiry, investigation, or proceeding brought by an accrediting organization, athletic association, or professional society;

5. A "special needs hearing";

6. An alternative dispute resolution proceeding commenced by a notice or written demand;

7. A criminal inquiry, investigation, or proceeding; or

8. A written request to toll or waive a statute of limitations.

**"Coverage territory"** means anywhere in the world.

**"Damages"** means sums an "insured" becomes legally obligated to pay for any:

1. Compensatory damages;

2. Statutory damages;

3. Nominal damages;

4. "Pre-judgment interest" or "post-judgment interest";

5. Plaintiff's attorneys fees or costs;

6. Punitive or exemplary damages or the multiplied portions of any multiplied damage award to the extent such amounts are insurable under the law of the jurisdiction most favorable to the insurability of such amounts provided such jurisdiction has a substantial relationship to the relevant "insureds", to the insurer, or to the "claim"; or

7. Fines and penalties to the extent such amounts are insurable under the law of the jurisdiction most favorable to the insurability of such amounts provided such jurisdiction has a substantial relationship to the relevant "insureds", to the insurer, or to the "claim".

**"Defense expenses"** means, with respect to a "claim" we defend, including any appeal therefrom, any:

1. Expenses we incur;

2. Cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance;

3. Expenses incurred by you at our request to assist us in the investigation or defense of the "claim"; or

4. Court costs taxed against you in the "claim".

**"Employee"** means a person who receives any wages, salary, or commissions by you for any labor provided on a full-time, part-time, temporary, or seasonal basis. However, "employee" does not include "executive", "independent contractor", "leased worker", or "religious person".

**"Employee benefits administrative services"** means, with respect to a "benefit program", any:

1.    Counseling of a participant, including any dependent or beneficiary;

2.    Handling of a record; or

3.    Effecting or terminating any person's participation.

**"Employee Welfare Benefit Plan"** means any plan so defined in the Employee Retirement Income Security Act of 1974, as amended.

**"Employment practices violation"** means any employment related discrimination, "harassment", "workplace tort", employment related retaliation, or "wrongful employment action".

**"Executive"** means a person who serves you as any:

1.    Director or officer (if you are an organization other than a partnership);

2.    Trustee (if you are a trust);

3.    Manager or managing member (if you are a limited liability company);

4.    General partner (if you are a partnership);

5.    Member of a school board (if you are a school organization);

6.    Member of an advisory board (if you are an organization);

7.    Member of a duly constituted committee (if you are an organization); or

8.    Functional equivalent of the above if serving outside the United States.

**"Fungi"** means any type or form of fungus, including mold or mildew or any mycotoxins, spores, scents, or byproducts produced or released by fungi.

**"Harassment"** means any employment related harassment, including "sexual harassment".

**"Independent contractor"** means a person who performs services for you or on your behalf under an express or implied agreement and who is not subject to your control or right to control the manner and means of performing the services.

**"Insured"** means any:

1.    Person or organization identified in Item 1 of the Declarations;

2.    "Subsidiary" or "affiliate" existing prior to or created or acquired on or after, the inception date of this insurance.

     Any organization identified in 2. above also qualifies as a Named Insured under this insurance;

3.    Student or parent organization formally recognized by you existing prior to or created or acquired on or after the inception date of this insurance.

     Any organization identified in 3. above also qualifies as a Named Insured under this insurance;

4.    Past, present, or future person in his or her capacity as any "executive", "employee", "volunteer", or "leased worker" but only if you agreed in writing to indemnify such "leased worker" or the leasing company, or "independent

contractor" but only if you agreed in writing to indemnify such "independent contractor";

5.     Your past, present, or future member or representative to an education association in his or her capacity as such;

6.     Your past, present, or future student while serving as a student teacher or teaching assistant, participating in a supervised internship program in satisfaction of course requirements, or performing services for you or on your behalf;

7.     Past, present, or future "religious person" in his or her capacity as such;

8.     Your past, present, or future stockholder (if you are an organization other than a partnership or limited liability company), member (if you are a limited liability company) other than a managing member, or partner (if you are a partnership) other than a general partner, but only in his or her capacity as such;

9.     Past, present, or future person or organization you agree to insure, but only if the "wrongful act" happens after the date of agreement.  The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance;

10.    Any other person or organization not identified in the subsections above who is liable for the conduct of a person accepted as a member of a Catholic religious institute or a society of apostolic life provided such person qualifies as a "religious person" and then only to the extent of that liability;

11.    Lawful spouse of any person identified above for any "claim" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, his or her status as the spouse of such person or his or her ownership interest in property which the claimant seeks as damages, where such person is entitled to coverage under this insurance;

12.    Debtor-in-possession under United States bankruptcy law or equivalent status under the law of any other country of any organization identified above; or

13.    Estate, heir, legal representative, or assign of any person identified above but only with respect to a "wrongful act" involving such person as provided for above.

**"Insured contract"** means any part of a contract or agreement pertaining to your business (including indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for a "wrongful act" to a third party or organization.  Tort liability means liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include any part of any contract or agreement that indemnifies:

a.     A railroad for a "wrongful act" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass, or crossing; or

b. An architect, engineer, or surveyor for a "wrongful act" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part,:

   1) Preparing, approving, or failing to prepare or approve any map, shop drawing, opinion, report, survey, field order, change order, drawing, or specification; or

   2) Giving any direction or instruction, or failing to give them, if that is the primary cause of such "wrongful act".

**"Leased worker"** means a person leased to you or on your behalf from a labor leasing firm under a written contract or agreement.

**"Loss"** means any "damages" or "defense expenses".

**"Medical professional services"** means any:

1. Medical, surgical, dental, x-ray, or nursing service, treatment, advice, or instruction, including the related furnishing of food or beverages;

2. Furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances; or

3. Handling of dead bodies or the performance of autopsies.

**"Pension Benefit Plan"** means any plan so defined in the Employee Retirement Income Security Act of 1974, as amended.

**"Policy period"** means the period of time from the effective date of this insurance to the cancellation date or, if none, then the expiration date, as specified in Item 2 of the Declarations.  The date and time are the Local Standard Time at your mailing address shown in Item 1 of the Declarations.

**"Pollutants"** means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste, or waste materials to be recycled, reconditioned, or reclaimed.

**"Post-judgment interest"** means all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

**"Pre-judgment interest"** means that particular amount of interest awarded against an "insured" on that part of the judgment we pay.  If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**"Professional services"** means any:

1. Service which requires a license, masters or doctorate degree, or certification; or

2. Other service requiring any specialized knowledge, skill, or professional judgment.

However, "professional services" does not include "medical professional services" or the use of force to protect persons or property.

**"Religious person"** means a person (if you are an organization):

PROFESSIONAL LIABILITY COVERAGE FORM

1.  Ordained as a Catholic priest or deacon and who works for you or on your behalf or is incardinated with you;

2.  Accepted as a member of a Catholic religious institute or a society of apostolic life and who works for you or on your behalf; or

3.  Sponsored by the first Named Insured in a program of formation for the priesthood or diaconate;

But only if the person qualifies as such in accordance with the records or intent of the first Named Insured.

**"Sexual abuse"** means criminal sexual conduct by anyone of any person while in your care, custody, or control.  "Sexual abuse" does not include "sexual harassment".

**"Sexual harassment"** means any unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature made a condition of employment, used as a basis for employment decisions, or that creates an intimidating, hostile, or offensive work environment.

**"Special needs hearing"** means a due process mediation or hearing:

1.  Conducted at your written request or at the written request of a student's parent(s) or legal guardian(s);

2.  Which is presided over by an impartial arbiter; and

3.  Of which the subject is the special education needs and related services of the student.

**"Subsidiary"** means an organization that a person or organization identified in Item 1 of the Declarations, either directly or indirectly or through any "affiliate" or other "subsidiary", has the ability to control by means of membership or ownership of a majority of the issued and outstanding voting stock.

**"Volunteer"** means a person who donates his or her work to you and is directed by you or on your behalf.  However, "volunteer" does not include "executive" or "religious person".

**"Workplace tort"** means any employment related:

1.  False imprisonment;

2.  Libel, slander, or defamation;

3.  Detention;

4.  Invasion of privacy;

5.  Malicious prosecution; or

6.  Misrepresentation.

**"Wrongful act"** means any:

1.  Misstatement, misleading statement, act, error, omission, neglect, or breach of duty; or

2.  Other matter claimed solely by reason of a person serving in his or her position.

All "wrongful acts" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any common fact, circumstance, situation, transaction, causality, event, or decision, shall be considered a single "wrongful act" commencing at the time of the earliest of the "wrongful acts".

**"Wrongful employment action"** means any employment related:

1.  Wrongful dismissal, discharge, termination, or constructive termination of employment;

2.  Wrongful failure to employ or promote;

3.  Wrongful deprivation of career opportunity;

4.  Wrongful demotion;

5.  Negligent employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

6.  Wrongful discipline;

7.  Failure to grant tenure or practice privileges;

8.  Failure to provide or enforce adequate or consistent organizational policies or procedures;

9.  Failure to train; or

10. Violation of an individual's civil rights.

## Section V – General Conditions

The following conditions apply in addition to the Common Policy Conditions:

A.  Defense and Settlement

We shall have the right and duty to investigate a "wrongful act" and handle and defend any "claim" and settle the "claim", but only with the consent of the first Named Insured.  We shall also have the right and duty to subrogate the cost of the "claim" if we pay any monies due under this insurance.  If the first Named Insured refuses consent to a settlement in accordance with our recommendation that is acceptable to the claimant and is within this insurance's applicable Limit of Insurance shown in Items 6 or 7(a) of the Professional Liability Coverage Part Declarations;

1.  The first Named Insured will thereafter be solely responsible for investigating, handling, defending, and settling such "claim" at their own expense; and

2.  Subject to any applicable Aggregate Limit of Insurance shown in Items 6 or 7(b) of the Professional Liability Coverage Part Declarations, our liability with respect to such "claim" shall not exceed the amount for which such "claim" could have been settled by us, including "defense expenses" incurred up to and until the time that the first Named Insured refuses consent to the settlement.

We shall pay on your behalf any monies due under this insurance.

Our obligation to defend you ends when we have used up the applicable Limit of Insurance.

B.  Duties in the Event of a Claim

PROFESSIONAL LIABILITY COVERAGE FORM

1.  You shall, upon knowledge by the first Named Insured or by any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured , give us written notice of a "claim" made during the "policy period" to which this insurance may apply.  Such notice must, as a condition precedent to exercising any rights under this insurance, be given as soon as practicable but in no event later than sixty (60) days from the end of the "policy period" or, if applicable, from the end of the Extended Reporting Period.  To the extent possible, notice shall include:

    a.  The Named Insured's name and address;

    b.  How, when, and where the actual or alleged "wrongful act" took place;

    c.  The names and addresses of any injured persons or witnesses;

    d.  The date the "claim" was received; and

    e.  Copies of any demands, notices, summonses, or legal papers received in connection with the "claim".

2.  You must:

    a.  Cooperate with us;

    b.  Authorize us to obtain records and other information;

    c.  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of a breach of duty to which this insurance may also apply; and

    d.  Seek our consent to make any payment, assume any obligation, incur any expense, other than for first aid, or make any admission of liability.

C.  Notice of a Circumstance

If, during the "policy period", the first Named Insured or any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, first becomes aware of any fact or circumstance which may reasonably be expected to give rise to a "claim" under this insurance and, as soon as practicable thereafter but in no event later than sixty (60) days from the end of the "policy period" or, if applicable, the Extended Reporting Period, gives us written notice of such fact or circumstance along with the full particulars described below, then any "claim" subsequently made against any "insured" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, such fact or circumstance will be deemed made during the "policy period".  The written notice shall include, at a minimum:

1.  The names or identity of the potential claimants and a detailed description of the wrongful conduct; and

2.  The way by which you first became aware of the wrongful conduct.

D.  Extended Reporting Period

If we do not renew or you cancel or non-renew this insurance, you shall have the right, upon payment of the required additional premium, to any of the Extended Reporting Period options stipulated in Item 14 of the Professional Liability Coverage Part Declarations following the effective date of cancellation or non-renewal, but only with respect to any "wrongful act" arising out of the rendering or

PROFESSIONAL LIABILITY COVERAGE FORM

failure to render "professional services" first taking place on or after the Retroactive Date shown in the Declarations and prior to the effective date of such cancellation or non-renewal.  The Extended Reporting Period does not extend the "policy period" or change the scope of coverage.

The right to purchase the Extended Reporting Period shall not be available in the event of cancellation or non-renewal of this insurance resulting from the failure to pay any premium due.  The offer of renewal terms different from those in effect prior to renewal shall not constitute a refusal to renew.

This right of extension shall lapse unless written notice of such election, together with payment of any additional premium due, is given to us within sixty (60) days following the effective date of cancellation or non-renewal.  Any "claim" made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding "policy period".

The Limit of Insurance applicable to the Extended Reporting Period shall be part of, and not in addition to, the Limit of Insurance for the immediately preceding "policy period".

E.    Representations and Severability

The "insureds" represent that the information contained in the "application" for this insurance is true and complete and acknowledge that this insurance is issued in reliance on the truthfulness and completeness of such information.

The "insureds" further agree that any material misrepresentation that affects the insurability of this risk shall nullify this insurance as respects any:

1.    Person who knew the information was untrue or incomplete;

2.    Organization for any indemnification obligation due any person identified in 1. above; or

3.    Organization itself, if any person identified in 1. above is an "executive" of that organization.

This insurance shall otherwise remain in full force and effect.

F.    Waiver of Transfer of Rights of Recovery Against Others to Us

We waive any right of recovery we may have against any person or organization if such rights of recovery were waived by you or on your behalf under an "insured contract" prior to the "wrongful act".

NOTICE:  THIS IS DEFENSE EXPENSE WITHIN LIMITS INSURANCE.  DEFENSE EXPENSES SHALL REDUCE, AND MAY EXHAUST, THE LIMITS OF INSURANCE.

NOTICE:  THIS IS CLAIMS MADE INSURANCE.  SUBJECT TO ITS TERMS, THIS INSURANCE APPLIES ONLY TO A CLAIM FIRST MADE DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD, PROVIDED SUCH CLAIM IS REPORTED NO LATER THAN 60 DAYS FROM THE END OF THE POLICY PERIOD OR FROM THE END OF ANY APPLICABLE EXTENDED REPORTING PERIOD.

**ECCLESIA ASSURANCE COMPANY**
50 North Park Avenue
Rockville Centre, New York  11570

COMMERCIAL PACKAGE POLICY
**MEDICAL PROFESSIONAL LIABILITY COVERAGE PART DECLARATIONS**

Policy Number:    PKG-2018-1                Date Effective:    11/1/2018

ITEM 6:     <u>Overall Limits of Insurance</u>:

| | |
|---|---|
| Each Loss | $750,000 |
| General Aggregate | $750,000 |

ITEM 7:     <u>Limits of Insurance</u>:

| Coverage | 7(a) Limit of Insurance | 7(b) Aggregate Limit of Insurance |
|---|---|---|
| Medical Professional | $750,000 Each "Wrongful Act" | $750,000 |

ITEM 8:     Retentions                        $250,000 Each "Wrongful Act"

ITEM 9:     <u>Premium</u>:

| | |
|---|---|
| 9(a) Deposit Premium | $43,096 |
| 9(b) Type | Not Adjustable |
| 9(c) Minimum Earned Premium | $43,096 |
| 9(d) Rate | Not Applicable |
| 9(e) Deposit Exposure Basis | Not Applicable |
| 9(f) Deposit Premium attributable to the Terrorism Risk Insurance Act | Not Applicable |

ITEM 10:     <u>Notices</u>:

10(a)  Any "claim" or fact or          Ecclesia Assurance Company
circumstance                           50 North Park Avenue
                                       Rockville Centre, NY  11570

10(b)  Any other matter                Ecclesia Assurance Company
                                       50 North Park Avenue
                                       Rockville Centre, NY  11570


ITEM 11:     Retroactive Date          9/1/1996


ITEM 12:     Pending or Prior Date     11/1/2008


ITEM 13:     Continuity Date           9/1/2004


ITEM 14:     <u>Extended Reporting Period Options</u>:

<u>Period</u>                          <u>Additional Premium</u>
One Calendar Year                      100% of the Annual Part Premium
Two Calendar Years                     150% of the Annual Part Premium
Three Calendar Years                   200% of the Annual Part Premium


In witness whereof, this Coverage Part has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.


ECCLESIA ASSURANCE COMPANY

_____     2/25/2019
Authorized Representative's Signature     Date

MEDICAL PROFESSIONAL LIABILITY COVERAGE FORM

## MEDICAL PROFESSIONAL LIABILITY COVERAGE FORM TABLE OF CONTENTS

**Section I – Coverage** .................................................................................2
**Section II – Limits of Insurance and Retentions** ......................................2
   A.  Limits of Insurance ...............................................................................2
   B.  Aggregate Limits of Insurance..............................................................3
   C.  Each Loss Limit of Insurance ...............................................................3
   D.  General Aggregate Limit of Insurance ..................................................3
   E.  Retentions ............................................................................................3
**Section III – Exclusions** .............................................................................3
   A.  Contractual Liability .............................................................................4
   B.  Cross Suits ...........................................................................................4
   C.  Good Samaritans ..................................................................................4
   D.  Pending or Prior Claim .........................................................................4
   E.  Prior Knowledge ...................................................................................4
   F.  Prior Notice of a Claim or Circumstance ..............................................4
   G.  Sexual Abuse .......................................................................................4
   H.  Workers' Compensation and Similar Laws............................................5
**Section IV – Definitions** ..............................................................................5
   "Affiliate" ...................................................................................................5
   "Application" ..............................................................................................5
   "Claim" ......................................................................................................5
   "Coverage territory" ..................................................................................6
   "Damages" ................................................................................................6
   "Defense expenses" .................................................................................6
   "Employee" ...............................................................................................6
   "Executive" ...............................................................................................6
   "Independent contractor" ..........................................................................7
   "Insured" ...................................................................................................7
   "Insured contract" .....................................................................................8
   "Leased worker" ........................................................................................8
   "Loss" .......................................................................................................8
   "Medical professional services" ................................................................8
   "Policy period" ..........................................................................................8
   "Post-judgment interest" ...........................................................................8
   "Pre-judgment interest" ............................................................................8
   "Religious person" ....................................................................................8
   "Sexual abuse" .........................................................................................9
   "Special needs hearing"............................................................................9
   "Subsidiary" ..............................................................................................9
   "Volunteer" ................................................................................................9
   "Wrongful act" ...........................................................................................9
**Section V – General Conditions** .................................................................9
   A.  Defense and Settlement .......................................................................9
   B.  Duties in the Event of a Claim ............................................................10
   C.  Notice of a Circumstance ...................................................................10
   D.  Extended Reporting Period .................................................................10
   E.  Representations and Severability........................................................11
   F.  Waiver of Transfer of Rights of Recovery Against Others to Us ..........11

MEDICAL PROFESSIONAL LIABILITY COVERAGE FORM

Throughout this Coverage Part, the words "you" and "your" refer to the person or organization first identified in Item 1 of the Declarations (the "first Named Insured") and any other person or organization qualifying as a Named Insured under this insurance. The words "we", "us", and "our" refer to the insurance company issuing this insurance. Other words or phrases that appear in quotation marks have special meaning.  Refer to Section IV – Definitions.

In consideration of the payment of premium and in reliance upon the statements made in the "application" for this insurance and subject to all the provisions of this policy, you and we agree as follows:

### Section I – Coverage

We will pay for "loss" resulting from a "claim" first made against an "insured" during the "policy period" or Extended Reporting Period as shown in Item 14 of the Medical Professional Liability Coverage Part Declarations, if applicable, because of any actual or alleged "wrongful act" resulting from the rendering or failure to render "medical professional services" to which this insurance applies.

This insurance applies only if:

1.  The "wrongful act" takes place in the "coverage territory";

2.  The "wrongful act" commences on or after the Retroactive Date, if any, shown in Item 11 of the Medical Professional Liability Coverage Part Declarations and before the end of the "policy period"; and

3.  We receive notice in accordance with the reporting requirements in Section V. B. of this insurance.

All "claims" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, a "wrongful act" to which this insurance applies will be considered a single "claim" deemed first made at the earlier of the following dates:

1.  The date the earliest of such "claims" was made; or

2.  The date such "wrongful act" was reported to us as a fact or circumstance under this insurance or under any other prior policy providing similar coverage.

### Section II – Limits of Insurance and Retentions

A.   Limits of Insurance

The applicable Limit of Insurance shown in Item 7(a) of the Medical Professional Liability Coverage Part Declarations is the most we will pay for such coverage under this insurance from one (1) "wrongful act" regardless of the number of:

1.   "Insureds" under this insurance; or

2.   Persons or organizations making "claims".

These Limits are part of, and not in addition to the Each Loss Limit of Insurance, if any, shown in Item 6 of the Medical Professional Liability Coverage Part Declarations and shall be reduced by the amount of any applicable Retention shown in Item 8 of the Medical Professional Liability Coverage Part Declarations.

MEDICAL PROFESSIONAL LIABILITY COVERAGE FORM

B. Aggregate Limits of Insurance

The applicable Aggregate Limit of Insurance shown in Item 7(b) of the Medical Professional Liability Coverage Part Declarations is the most we will pay for such coverage under this insurance.  These Aggregate limits are part of, and not in addition to the General Aggregate Limit of Insurance, if any, shown in Item 6 of the Medical Professional Liability Coverage Part Declarations.

Our obligation under this insurance for any particular coverage shall cease when the Aggregate Limit for that coverage, if any, has been exhausted by the payment of amounts we owe under such coverage.

C. Each Loss Limit of Insurance

The Each Loss Limit of Insurance shown in Item 6 of the Medical Professional Liability Coverage Part Declarations is the most we will pay for all coverage under this insurance from one (1) "wrongful act" regardless of the number of:

1. "Insureds" under this insurance;

2. Persons or organizations making "claims"; or

3. Coverages under this insurance.

D. General Aggregate Limit of Insurance

The General Aggregate Limit of Insurance shown in Item 6 of the Medical Professional Liability Coverage Part Declarations, is the most we will pay for all coverage under this insurance.

Our obligation under this insurance shall cease when the General Aggregate Limit of Insurance has been exhausted by payment of amounts we owe under this insurance.

E. Retentions

The highest applicable Retention shown in Item 8 of the Medical Professional Liability Coverage Part Declarations is the most you will pay under this insurance from one (1) "wrongful act" regardless of the number of:

1. "Insureds" under this insurance;

2. Persons or organizations making "claims"; or

3. Coverages under this insurance.

Any amount paid by us shall be allocated by Coverage in proportion to the total amount such covered loss bears to the total amount of all covered loss.  Any such allocated amounts shall erode any applicable Aggregate Limits of Insurance as set forth in Item 7(b) of the Medical Professional Liability Coverage Part Declarations.

Any Retention shall be payable by us and reimbursed by you within thirty (30) days of our written request for reimbursement.  As a condition precedent to exercising any rights under this insurance, you shall advance claims funds and secure any remaining reimbursement obligation as we may require.

Your obligation under this insurance for one (1) "wrongful act" shall cease when the highest applicable Retention has been exhausted by payment of amounts you owe for such "wrongful act" under this insurance.

**Section III – Exclusions**

MEDICAL PROFESSIONAL LIABILITY COVERAGE FORM

This insurance does not apply to any "claim":

A.   Contractual Liability

For liability of others assumed in a contract or agreement.  This exclusion does not apply to liability:

1.   Assumed in a contract or agreement that is an "insured contract", provided the "wrongful act" happens after the execution of the contract or agreement; or

2.   You would have in the absence of the contract or agreement.

B.   Cross Suits

Brought by you or on your behalf against any person qualifying as an "insured" under this insurance, except for any derivative action made on your behalf by a member, an Attorney General, or any other such representative party, if such action is brought and maintained independently of, and without assistance, participation, or intervention by any "insured".

C.   Good Samaritans

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the rendering or failure to render emergency medical treatment, without remuneration, at the scene of an accident, medical crisis, or disaster.

D.   Pending or Prior Claim

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, a "claim" involving an "insured" that was pending as of or commenced prior to the Pending or Prior Date shown in Item 12 of the Medical Professional Liability Coverage Part Declarations, including any "claim" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any fact or circumstance underlying or alleged in any such pending or prior proceeding.

E.   Prior Knowledge

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any actual or alleged "wrongful act" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the rendering or failure to render "medical professional services" if known by you (if you are a person) or any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured (if you are an organization) prior to the Continuity Date shown in Item 13 of the Medical Professional Liability Coverage Part Declarations, but only if such person could have reasonably foreseen that the "wrongful act" would lead to a "claim" under this insurance.

F.   Prior Notice of a Claim or Circumstance

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any "wrongful act" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, the rendering or failure to render "medical professional services" alleged in any claim which has been reported, or in any fact or circumstance of which notice has been given, prior to the "policy period" under any other similar insurance, regardless of whether coverage is provided under such other insurance.

G.   Sexual Abuse

Copyright ©, Porter & Curtis, LLC, 2007          F MP 00 16 09 07

MEDICAL PROFESSIONAL LIABILITY COVERAGE FORM

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any actual or alleged "sexual abuse".

This exclusion applies:

1. Whether the "insured" may be liable as an employer or in any other capacity; or

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

H. Workers' Compensation and Similar Laws

For any obligation under a workers' compensation, disability benefits, or unemployment compensation law or any similar law.

## Section IV – Definitions

These terms, whether in their singular, singular possessive, plural, or plural possessive, have special meaning as follows:

**"Affiliate"** means an organization that a person or organization identified in Item 1 of the Declarations, or any person by virtue of holding an office or position with such organization, either directly or indirectly or through any "subsidiary" or other "affiliate", has the ability to control by means of the right to:

1. Elect or appoint the general partner or manager or a majority of the directors or trustees;

2. Serve ex officio as general partner or manager or as a director or trustee and represent a majority of the directors or trustees, individually, or collectively with any:

   a. Other ex officio director or trustee; or

   b. Right of such person or persons to elect or appoint any other director or trustee; or

3. Direct any financial or managerial decision making, whether by operation of law, pursuant to contract or agreement, or pursuant to such entity's charter, articles of association, or by-law provisions.

**"Application"** means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein, and any other such documents submitted in connection with the underwriting of this insurance.

**"Claim"** means:

1. A written demand for monetary or non-monetary relief;

2. A civil proceeding commenced by the service of a complaint or similar pleading;

3. An administrative or regulatory inquiry, investigation, or proceeding brought by a governmental entity or similar authority;

4. A disciplinary inquiry, investigation, or proceeding brought by an accrediting organization, athletic association, or professional society;

5. A "special needs hearing";

6.  An alternative dispute resolution proceeding commenced by a notice or written demand;

7.  A criminal inquiry, investigation, or proceeding; or

8.  A written request to toll or waive a statute of limitations.

**"Coverage territory"** means anywhere in the world.

**"Damages"** means sums an "insured" becomes legally obligated to pay for any:

1.  Compensatory damages;

2.  Statutory damages;

3.  Nominal damages;

4.  "Pre-judgment interest" or "post-judgment interest";

5.  Plaintiff's attorneys fees and costs;

6.  Punitive or exemplary damages or the multiplied portions of any multiplied damage award to the extent such amounts are insurable under the law of the jurisdiction most favorable to the insurability of such amounts provided such jurisdiction has a substantial relationship to the relevant "insureds", to the insurer, or to the "claim"; or

7.  Fines and penalties to the extent such amounts are insurable under the law of the jurisdiction most favorable to the insurability of such amounts provided such jurisdiction has a substantial relationship to the relevant "insureds", to the insurer, or to the "claim".

**"Defense expenses"** means, with respect to a "claim" we defend, including any appeal therefrom, any:

1.  Expenses we incur;

2.  Cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance;

3.  Reasonable and necessary expenses incurred by you at our request to assist us in the investigation or defense of the "claim"; or

4.  Court costs taxed against you in the "claim".

**"Employee"** means a person who receives any wages, salary, or commissions by you for labor provided on a full-time, part-time, temporary, or seasonal basis. However, "employee" does not include "executive", "independent contractor", "leased worker", or "religious person".

**"Executive"** means a person who serves you as any:

1.  Director or officer (if you are an organization other than a partnership);

2.  Trustee (if you are a trust);

3.  Manager or managing member (if you are a limited liability company);

4.  General partner (if you are a partnership);

5.  Member of a school board (if you are a school organization);

6.  Member of an advisory board (if you are an organization);

MEDICAL PROFESSIONAL LIABILITY COVERAGE FORM

7. Member of a duly constituted committee (if you are an organization); or

8. Functional equivalent of the above if serving outside the United States.

**"Independent contractor"** means any person who performs services for you or on your behalf under an express or implied agreement and who is not subject to your control or right to control the manner and means of performing the services.

**"Insured"** means any:

1. Person or organization identified in Item 1 of the Declarations;

2. "Subsidiary" or "affiliate" existing prior to or created or acquired on or after, the inception date of this insurance.

   Any organization identified in 2. above also qualifies as a Named Insured under this insurance;

3. Student or parent organization formally recognized by you existing prior to or created or acquired on or after the inception date of this insurance.

   Any organization identified in 3. above also qualifies as a Named Insured under this insurance;

4. Past, present, or future person in his or her capacity as any "executive", "employee", "volunteer", or "leased worker" but only if you agreed in writing to indemnify such "leased worker" or the leasing company, or "independent contractor" but only if you agreed in writing to indemnify such "independent contractor";

5. Your past, present, or future member or representative to an education association in his or her capacity as such;

6. Your past, present, or future student while serving as a student teacher or teaching assistant, participating in a supervised internship program in satisfaction of course requirements, or performing services for you or on your behalf;

7. Past, present, or future "religious person" in his or her capacity as such;

8. Your past, present, or future stockholder (if you are an organization other than a partnership or limited liability company), member (if you are a limited liability company) other than a managing member, or partner (if you are a partnership) other than a general partner, but only in his or her capacity as such;

9. Past, present, or future person or organization you agree to insure, but only if the "wrongful act" occurs after the date of agreement.  The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance;

10. Any other person or organization not identified in the subsections above who is liable for the conduct of a person accepted as a member of a Catholic religious institute or a society of apostolic life provided such person qualifies as a "religious person" and then only to the extent of that liability;

11. Lawful spouse of any person identified above for any "claim" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, his or her status as the spouse of such person or his or her ownership interest in

property which the claimant seeks as damages, where such person is entitled to coverage under this insurance;

12. Debtor-in-possession under United States bankruptcy law or equivalent status under the law of any other country of any organization identified above; or

13. Estate, heir, legal representative, or assign of any person identified above but only with respect to a "wrongful act" involving such person as provided for above.

**"Insured contract"** means any part of a contract or agreement pertaining to your business (including indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for a "wrongful act" to a third party or organization.  Tort liability means liability that would be imposed by law in the absence of any contract or agreement.

**"Leased worker"** means a person leased by you or on your behalf from a labor leasing firm under a written contract or agreement.

**"Loss"** means any "damages" or "defense expenses".

**"Medical professional services"** means any:

1. Medical, surgical, dental, x-ray, or nursing service, treatment, advice, or instruction, including the related furnishing of food or beverages;

2. Furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances; or

3. Handling of dead bodies or the performance of autopsies.

**"Policy period"** means the period of time from the effective date of this insurance to the cancellation date or, if none, then the expiration date, as specified in Item 2 of the Declarations.  The date and time are the Local Standard Time at your mailing address shown in Item 1 of the Declarations.

**"Post-judgment interest"** means all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

**"Pre-judgment interest"** means that particular amount of interest awarded against an "insured" on that part of the judgment we pay.  If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**"Religious person"** means a person (if you are an organization):

1. Ordained as a Catholic priest or deacon and who works for you or on your behalf or is incardinated with you;

2. Accepted as a member of a Catholic religious institute or a society of apostolic life and who works for you or on your behalf; or

3. Sponsored by the first Named Insured in a program of formation for the priesthood or diaconate;

But only if the person qualifies as such in accordance with the records or intent of the first Named Insured.

**"Sexual abuse"** means criminal sexual conduct by anyone of any person while in your care, custody, or control.

**"Special needs hearing"** means a due process mediation or hearing:

1.    Conducted at your written request or at the written request of a student's parent(s) or legal guardian(s);

2.    Which is presided over by an impartial arbiter; and

3.    Of which the subject is the special education needs and related services of the student.

**"Subsidiary"** means an organization that a person or organization identified in Item 1 of the Declarations, either directly or indirectly or through any "affiliate" or other "subsidiary", has the ability to control by means of membership or ownership of a majority of the issued and outstanding voting stock.

**"Volunteer"** means a person who donates his or her work to you and is directed by you or on your behalf.  However, "volunteer" does not include "executive" or "religious person".

**"Wrongful act"** means any:

1.    Misstatement, misleading statement, act, error, omission, neglect, or breach of duty; or

2.    Other matter claimed solely by reason of a person serving in his or her position.

All "wrongful acts" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any common fact, circumstance, situation, transaction, causality, event, or decision, shall be considered a single "wrongful act" commencing at the time of the earliest of the "wrongful acts".

## Section V – General Conditions

The following conditions apply in addition to the Common Policy Conditions:

A.    Defense and Settlement

We shall have the right and duty to investigate a "wrongful act" and handle and defend any "claim" and settle the "claim", but only with the consent of the first Named Insured.  We shall also have the right and duty to subrogate the cost of the "claim" if we pay any monies due under this insurance.  If the first Named Insured refuses consent to a settlement in accordance with our recommendation that is acceptable to the claimant and is within this insurance's applicable Limit of Insurance shown in Items 6 or 7(a) of the Medical Professional Liability Coverage Part Declarations;

1.    The first Named Insured will thereafter be solely responsible for investigating, handling, defending, and settling such "claim" at their own expense; and

2.    Subject to any applicable Aggregate Limit of Insurance shown in Items 6 or 7(b) of the Medical Professional Liability Coverage Part Declarations, our liability with respect to such "claim" shall not exceed the amount for which such "claim" could have been settled by us, including "defense expenses" incurred up to and until the time that the first Named Insured refuses consent to the settlement.

MEDICAL PROFESSIONAL LIABILITY COVERAGE FORM

We shall pay on your behalf any monies due under this insurance.

Our obligation to defend you ends when we have used up the applicable Limit of Insurance.

B.    Duties in the Event of a Claim

1.    You shall, upon knowledge by the first Named Insured or by any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, give us written notice of a "claim" made during the "policy period" to which this insurance may apply.  Such notice must, as a condition precedent to exercising any rights under this insurance, be given as soon as practicable but in no event later than sixty (60) days from the end of the "policy period" or, if applicable, from the end of the Extended Reporting Period.  To the extent possible, notice shall include:

a.    The Named Insured's name and address;

b.    How, when, and where the actual or alleged "wrongful act" took place;

c.    The names and addresses of any injured persons or witnesses;

d.    The date the "claim" was received; and

e.    Copies of any demands, notices, summonses, or legal papers received in connection with the "claim".

2.    You must:

a.    Cooperate with us;

b.    Authorize us to obtain records and other information;

c.    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of a breach of duty to which this insurance may also apply; and

d.    Seek our consent to make any payment, assume any obligation, incur any expense, other than for first aid, or make any admission of liability.

C.    Notice of a Circumstance

If, during the "policy period", the first Named Insured or any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, first becomes aware of any fact or circumstance which may reasonably be expected to give rise to a "claim" under this insurance and, as soon as practicable thereafter but in no event later than sixty (60) days from the end of the "policy period" or, if applicable, the Extended Reporting Period, gives us written notice of such fact or circumstance along with the full particulars described below, then any "claim" subsequently made against any "insured" arising out of such fact or circumstance will be deemed made during the "policy period".  The written notice shall include, at a minimum:

1.    The names or identity of the potential claimants and a detailed description of the wrongful conduct; and

2.    The way by which you first became aware of the wrongful conduct.

D.    Extended Reporting Period

MEDICAL PROFESSIONAL LIABILITY COVERAGE FORM

If we do not renew or you cancel or non-renew this insurance, you shall have the right, upon payment of the required additional premium, to any of the Extended Reporting Period options stipulated in Item 14 of the Medical Professional Liability Coverage Part Declarations following the effective date of cancellation or non-renewal, but only with respect to any "wrongful act" arising out of the rendering or failure to render "medical professional services" first taking place on or after the Retroactive Date shown in the Declarations and prior to the effective date of such cancellation or non-renewal. The Extended Reporting Period does not extend the "policy period" or change the scope of coverage.

The right to purchase the Extended Reporting Period shall not be available in the event of cancellation or non-renewal of this insurance resulting from the failure to pay any premium due. The offer of renewal terms different from those in effect prior to renewal shall not constitute a refusal to renew.

This right of extension shall lapse unless written notice of such election, together with payment of any additional premium due, is given to us within sixty (60) days following the effective date of cancellation or non-renewal. Any "claim" made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding "policy period".

The Limit of Insurance applicable to the Extended Reporting Period shall be part of, and not in addition to, the Limit of Insurance for the immediately preceding "policy period".

E.    Representations and Severability

The "insureds" represent that the information contained in the "application" for this insurance is true and complete and acknowledge that this insurance is issued in reliance on the truthfulness and completeness of such information.

The "insureds" further agree that any material misrepresentation that affects the insurability of this risk shall nullify this insurance as respects any:

1.    Person who knew the information was untrue or incomplete;

2.    Organization for any indemnification obligation due any person identified in 1. above; or

3.    Organization itself, if any person identified in 1. above is an "executive" of that organization.

This insurance shall otherwise remain in full force and effect.

F.    Waiver of Transfer of Rights of Recovery Against Others to Us

We waive any right of recovery we may have against any person or organization if such rights of recovery were waived by you or on your behalf under an "insured contract" prior to the "wrongful act".

NOTICE:  THIS IS DEFENSE EXPENSE WITHIN LIMITS INSURANCE.  DEFENSE
EXPENSES SHALL REDUCE, AND MAY EXHAUST, THE LIMITS OF INSURANCE.

NOTICE:  THIS IS CLAIMS MADE INSURANCE.  SUBJECT TO ITS TERMS, THIS
INSURANCE APPLIES ONLY TO A CLAIM FIRST MADE DURING THE POLICY
PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD, PROVIDED
SUCH CLAIM IS REPORTED NO LATER THAN 60 DAYS FROM THE END OF THE
POLICY PERIOD OR FROM THE END OF ANY APPLICABLE EXTENDED
REPORTING PERIOD.

ECCLESIA ASSURANCE COMPANY
50 North Park Avenue
Rockville Centre, New York  11570

COMMERCIAL PACKAGE POLICY
**SEXUAL ABUSE LIABILITY COVERAGE PART DECLARATIONS**

Policy Number:    PKG-2018-1              Date Effective:    11/1/2018

ITEM 6:    <u>Overall Limits of Insurance</u>:

    Each Loss                                    $750,000

    General Aggregate                     $7,500,000

ITEM 7:    <u>Limits of Insurance</u>:

| <u>Coverage</u> | <u>7(a) Limit of Insurance</u> | <u>7(b) Aggregate Limit of Insurance</u> |
|---|---|---|
| Sexual Abuse Liability | $750,000 Each "Wrongful Act" | $7,500,000 |

ITEM 8:    Retentions                         $250,000 Each "Wrongful Act"

ITEM 9:    <u>Premium</u>:

    9(a) Deposit Premium                              $1,233,213

    9(b) Type                                              Not Adjustable

    9(c) Minimum Earned Premium               $1,233,213

    9(d) Rate                                              Not Applicable

    9(e) Deposit Exposure Basis                    Not Applicable

    9(f)  Deposit Premium attributable to       Not Applicable
the Terrorism Risk Insurance Act

ITEM 10:   <u>Notices</u>:

    10(a)  Any "claim" or fact or        Ecclesia Assurance Company
    circumstance                        50 North Park Avenue
                                    Rockville Centre, NY  11570

    10(b)  Any other matter            Ecclesia Assurance Company
                                    50 North Park Avenue
                                    Rockville Centre, NY  11570

ITEM 11:   Retroactive Date             9/1/1986

ITEM 12:   Pending or Prior Date      11/1/2008

ITEM 13:   Continuity Date           11/1/2008

ITEM 14:   <u>Extended Reporting Period Options</u>:

| <u>Period</u> | <u>Additional Premium</u> |
|---|---|
| One Calendar Year | 100% of the Annual Part Premium |
| Two Calendar Years | 150% of the Annual Part Premium |
| Three Calendar Years | 200% of the Annual Part Premium |

In witness whereof, this Coverage Part has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    2/25/2019
Authorized Representative's Signature    Date

SEXUAL ABUSE LIABILITY COVERAGE FORM

## SEXUAL ABUSE LIABILITY COVERAGE FORM TABLE OF CONTENTS

**Section I – Coverage** .................................................................................................2
**Section II – Limits of Insurance and Retentions** ......................................................2
   A.   Limits of Insurance .............................................................................................2
   B.   Aggregate Limits of Insurance...........................................................................3
   C.   Each Loss Limit of Insurance .............................................................................3
   D.   General Aggregate Limit of Insurance ...............................................................3
   E.   Retentions ..........................................................................................................3
**Section III – Exclusions** .............................................................................................3
   A.   Contractual Liability ...........................................................................................4
   B.   Criminal Acts .....................................................................................................4
   C.   Intentional Acts ..................................................................................................4
   D.   Pending or Prior Claim .......................................................................................4
   E.   Prior Knowledge ................................................................................................4
   F.   Prior Notice of a Claim or Circumstance ...........................................................4
   G.   Prior Perpetrators ..............................................................................................4
**Section IV – Definitions** .............................................................................................5
   "Affiliate" .................................................................................................................5
   "Application"............................................................................................................5
   "Claim".....................................................................................................................5
   "Coverage territory" ................................................................................................5
   "Damages"...............................................................................................................6
   "Defense expenses" ...............................................................................................6
   "Employee" .............................................................................................................6
   "Executive"..............................................................................................................6
   "Independent contractor" ........................................................................................6
   "Insured" .................................................................................................................7
   "Insured contract" ...................................................................................................8
   "Leased worker".....................................................................................................8
   "Loss".....................................................................................................................8
   "Policy period".........................................................................................................8
   "Post-judgment interest" .........................................................................................8
   "Pre-judgment interest" ..........................................................................................8
   "Religious person" ..................................................................................................8
   "Sexual abuse" .......................................................................................................8
   "Sexual harassment" ..............................................................................................8
   "Subsidiary" ............................................................................................................8
   "Volunteer"..............................................................................................................9
   "Wrongful act" ........................................................................................................9
**Section V – General Conditions**...............................................................................9
   A.   Defense and Settlement ....................................................................................9
   B.   Duties in the Event of a Claim ...........................................................................9
   C.   Notice of a Circumstance .................................................................................10
   D.   Extended Reporting Period ..............................................................................10
   E.   Representations and Severability......................................................................11
   F.   Waiver of Transfer of Rights of Recovery Against Others to Us ..........................11

SEXUAL ABUSE LIABILITY COVERAGE FORM

Throughout this Coverage Part, the words "you" and "your" refer to the person or organization identified in Item 1 of the Declarations (the "first Named Insured") and any other person or organization qualifying as a Named Insured under this insurance.  The words "we", "us", and "our" refer to the insurance company issuing this insurance.  Other words or phrases that appear in quotation marks have special meaning.  Refer to Section IV – Definitions.

In consideration of the payment of premium and in reliance upon the statements made in the "application" for this insurance and subject to all the provisions of this policy, you and we agree as follows:

**Section I – Coverage**

We will pay for "loss" resulting from a "claim" first made against an "insured" during the "policy period" or Extended Reporting Period as shown in Item 14 of the Sexual Abuse Liability Coverage Part Declarations, if applicable, because of any actual or alleged "wrongful act" resulting from "sexual abuse" to which this insurance applies.

This insurance applies only if:

1.    The "wrongful act" takes place in the "coverage territory";

2.    The "wrongful act" commences on or after the Retroactive Date, if any, shown in Item 11 of the Sexual Abuse Liability Coverage Part Declarations and before the end of the "policy period"; and

3.    We receive notice in accordance with the reporting requirements in Section V. B. of this insurance.

All "claims" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, a "wrongful act" to which this insurance applies will be considered a single "claim" deemed first made at the earlier of the following dates:

1.    The date the earliest of such "claims" was made; or

2.    The date such "wrongful act" was reported to us as a fact or circumstance under this insurance or under any other prior policy providing similar coverage.

**Section II – Limits of Insurance and Retentions**

A.    Limits of Insurance

The applicable Limit of Insurance shown in Item 7(a) of the Sexual Abuse Liability Coverage Part Declarations is the most we will pay for such coverage under this insurance from one (1) "wrongful act" regardless of the number of:

1.    "Insureds" under this insurance; or

2.    Persons or organizations making "claims".

These Limits are part of, and not in addition to the Each Loss Limit of Insurance, if any, shown in Item 6 of the Sexual Abuse Liability Coverage Part Declarations and shall be reduced by the amount of any applicable Retention shown in Item 8 of the Sexual Abuse Liability Coverage Part Declarations.

SEXUAL ABUSE LIABILITY COVERAGE FORM

B.    Aggregate Limits of Insurance

The applicable Aggregate Limit of Insurance shown in Item 7(b) of the Sexual Abuse Liability Coverage Part Declarations is the most we will pay for such coverage under this insurance.  This Aggregate limit is part of, and not in addition to the General Aggregate Limit of Insurance, if any, shown in Item 6 of the Sexual Abuse Liability Coverage Part Declarations.

Our obligation under this insurance for any particular coverage shall cease when the Aggregate Limit for that coverage, if any, has been exhausted by the payment of amounts we owe under such coverage.

C.    Each Loss Limit of Insurance

The Each Loss Limit of Insurance shown in Item 6 of the Sexual Abuse Liability Coverage Part Declarations is the most we will pay for all coverage under this insurance from any one (1) "wrongful act" regardless of the number of:

1.    "Insureds" under this insurance;

2.    Persons or organizations making "claims"; or

3.    Coverages under this insurance.

D.    General Aggregate Limit of Insurance

The General Aggregate Limit of Insurance shown in Item 6 of the Sexual Abuse Liability Coverage Part Declarations is the most we will pay for all coverage under this insurance.

Our obligation under this insurance shall cease when the General Aggregate Limit of Insurance has been exhausted by payment of amounts we owe under this insurance.

E.    Retentions

The highest applicable Retention shown in Item 8 of the Sexual Abuse Liability Coverage Part Declarations is the most you will pay under this insurance from one (1) "wrongful act" regardless of the number of:

1.    "Insureds" under this insurance;

2.    Persons or organizations making "claims"; or

3.    Coverages under this insurance.

Any amount paid by us shall be allocated by Coverage in proportion to the total amount such covered loss bears to the total amount of all covered loss.  Any such allocated amounts shall erode any applicable Aggregate Limits of Insurance as set forth in Item 7(b) of the Sexual Abuse Liability Coverage Part Declarations.

Any Retention shall be payable by us and reimbursed by you within thirty (30) days of our written request for reimbursement.  As a condition precedent to exercising any rights under this insurance, you shall advance claims funds and secure any remaining reimbursement obligation as we may require.

Your obligation under this insurance for one (1) "wrongful act" shall cease when the highest applicable Retention has been exhausted by payment of amounts you owe for such "wrongful act" under this insurance.

**Section III – Exclusions**

SEXUAL ABUSE LIABILITY COVERAGE FORM

This insurance does not apply to any "claim":

A.   Contractual Liability

For liability of others assumed in a contract or agreement.  This exclusion does not apply to liability:

a.   Assumed in a contract or agreement that is an "insured contract", provided the "wrongful act" happens after the execution of the contract or agreement; or

b.   You would have in the absence of the contract or agreement.

B.   Criminal Acts

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, a criminal act by or at the direction of an "insured".  However, this exclusion shall not apply unless the "insured" pleads guilty or nolo contendere or the criminal act is established by final non-appealable adjudication.  Any act or acts by one or more "insureds" shall not be imputed to any other "insured" for the purposes of determining the applicability of this exclusion.

C.   Intentional Acts

Resulting from "sexual abuse" expected or intended from the standpoint of the "insured".

D.   Pending or Prior Claim

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, a "claim" involving an "insured" that was pending as of or commenced prior to the Pending or Prior Date shown in Item 12 of the Sexual Abuse Liability Coverage Part Declarations, including any "claim" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any fact or circumstance underlying or alleged in any such pending or prior proceeding.

E.   Prior Knowledge

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any actual or alleged wrongful act" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, "sexual abuse" if known by you (if you are a person) or any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured (if you are an organization) prior to the Continuity Date shown in Item 13 of the Sexual Abuse Liability Coverage Part Declarations, but only if such person could have reasonably foreseen that the "wrongful act" would lead to a "claim" under this insurance.

F.   Prior Notice of a Claim or Circumstance

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any "wrongful act" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, "sexual abuse" alleged in any claim which has been reported, or in any fact or circumstance of which notice has been given, prior to the "policy period" under any other similar insurance, regardless of whether coverage is provided under such other insurance.

G.   Prior Perpetrators

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, a person against whom a final adjudication of any "wrongful act" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, "sexual abuse" was made by a court of competent jurisdiction, or who made an admission of the commission of any such act to civil authorities of competent jurisdiction, prior to the Continuity Date shown in Item 13 of the Sexual Abuse Liability Coverage Part Declarations.

## Section IV – Definitions

These terms, whether in their singular, singular possessive, plural, or plural possessive, have special meaning as follows:

**"Affiliate"** means an organization that a person or organization identified in Item 1 of the Declarations, or any person by virtue of holding an office or position with such organization, either directly or indirectly or through any "subsidiary" or other "affiliate", has the ability to control by means of the right to:

1.  Elect or appoint the general partner or manager or a majority of the directors or trustees;

2.  Serve ex officio as general partner or manager or as a director or trustee and represent a majority of the directors or trustees, individually, or collectively with any:

    a.  Other ex officio director or trustee; or

    b.  Right of such person or persons to elect or appoint any other director or trustee; or

3.  Direct any financial or managerial decision making, whether by operation of law, pursuant to contract or agreement, or pursuant to such entity's charter, articles of association, or by-law provisions.

**"Application"** means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein, and any other such documents submitted in connection with the underwriting of this insurance.

**"Claim"** means:

1.  A written demand for monetary or non-monetary relief;

2.  A civil proceeding commenced by the service of a complaint or similar pleading;

3.  An administrative or regulatory inquiry, investigation, or proceeding brought by a governmental entity or similar authority;

4.  A disciplinary inquiry, investigation, or proceeding brought by an accrediting organization, athletic association, or professional society;

5.  An alternative dispute resolution proceeding commenced by a notice or written demand;

6.  A criminal inquiry, investigation, or proceeding; or

7.  A written request to toll or waive a statute of limitations.

**"Coverage territory"** means anywhere in the world.

**"Damages"** means sums an "insured" becomes legally obligated to pay for any:

1. Compensatory damages;

2. Statutory damages;

3. Nominal damages;

4. "Pre-judgment interest" or "post judgment interest";

5. Plaintiff's attorneys fees or costs;

6. Punitive or exemplary damages or the multiplied portions of any multiplied damage award to the extent such amounts are insurable under the law of the jurisdiction most favorable to the insurability of such amounts provided such jurisdiction has a substantial relationship to the relevant "insureds", to the insurer or to the "claim" giving rise to the damages; or

7. Fines and penalties to the extent such amounts are insurable under the law of the jurisdiction most favorable to the insurability of such amounts provided such jurisdiction has a substantial relationship to the relevant "insureds", to the insurer, or to the "claim".

**"Defense expenses"** means, with respect to a "claim" we defend, including any appeal therefrom, any:

1. Expenses we incur;

2. Cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance;

3. Expenses incurred by you at our request to assist us in the investigation or defense of the "claim"; or

4. Court costs taxed against you in the "claim".

**"Employee"** means a person who receives any wages, salary, or commissions from you for any labor provided on a full-time, part-time, temporary, or seasonal basis. However, "employee" does not include "executive", "independent contractor", "leased worker", or "religious person".

**"Executive"** means a person who serves you as any:

1. Director or officer (if you are an organization other than a partnership);

2. Trustee (if you are a trust);

3. Manager or managing member (if you are a limited liability company);

4. General partner (if you are a partnership);

5. Member of a school board (if you are a school organization);

6. Member of an advisory board (if you are an organization),

7. Member of a duly constituted committee (if you are an organization); or

8. Functional equivalent of the above if serving outside the United States.

**"Independent contractor"** means a person who performs services for you or on your behalf under an express or implied agreement and who is not subject to your control or right to control the manner and means of performing the services.

SEXUAL ABUSE LIABILITY COVERAGE FORM

**"Insured"** means any:

1.    Person or organization identified in Item 1 of the Declarations;

2.    "Subsidiary" or "affiliate" existing prior to or created or acquired on or after, the inception date of this insurance.

Any organization identified in 2. above also qualifies as a Named Insured under this insurance;

3.    Student or parent organization formally recognized by you existing prior to or created or acquired on or after the inception date of this insurance.

Any organization identified in 3. above also qualifies as a Named Insured under this insurance;

4.    Your past, present, or future member or representative to an education association in his or her capacity as such;

5.    Your past, present, or future student while serving as a student teacher or teaching assistant, participating in a supervised internship program in satisfaction of course requirements, or performing services for you or on your behalf;

6.    Past, present, or future person in his or her capacity as any "executive", "employee", "volunteer", or "leased worker" but only if you agreed in writing to indemnify such "leased worker" or the leasing company, or "independent contractor" but only if you agreed in writing to indemnify such "independent contractor";

7.    Past, present, or future "religious person" in his or her capacity as such;

8.    Your past, present, or future stockholder (if you are an organization other than a partnership or limited liability company), member (if you are a limited liability company) other than a managing member, or partner (if you are a partnership) other than a general partner, but only in his or her capacity as such;

9.    Past, present, or future person or organization you agree to insure, but only if the "wrongful act" occurs after the date of agreement.  The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance;

10.    Any other person or organization not identified in the subsections above who is liable for the conduct of a person accepted as a member of a Catholic religious institute or a society of apostolic life provided such person qualifies as a "religious person" and then only to the extent of that liability;

11.    Lawful spouse of any person identified above for any "claim" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, his or her status as the spouse of such person or his or her ownership interest in property which the claimant seeks as damages, where such person is entitled to coverage under this insurance;

12.    Debtor-in-possession under United States bankruptcy law or equivalent status under the law of any other country of any organization identified above; or

13. Estate, heir, legal representative, or assign of any person identified above but only with respect to a "wrongful act" involving such person as provided for above.

**"Insured contract"** means any part of a contract or agreement pertaining to your business (including indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for a "wrongful act" to a third party or organization. Tort liability means liability that would be imposed by law in the absence of any contract or agreement.

**"Leased worker"** means a person leased by you or on your behalf from a labor leasing firm under a written contract or agreement.

**"Loss"** means any "damages" or "defense expenses".

**"Policy period"** means the period of time from the effective date of this insurance to the cancellation date or, if none, then the expiration date, as specified in Item 2 of the Declarations. The date and time are the Local Standard Time at your mailing address shown in Item 1 of the Declarations.

**"Post-judgment interest"** means all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

**"Pre-judgment interest"** means that particular amount of interest awarded against an "insured" on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**"Religious person"** means any person (if you are an organization):

1. Ordained as a Catholic priest or deacon and who works for you or on your behalf or is incardinated with you;

2. Accepted as a member of a Catholic religious institute or a society of apostolic life and who works for you or on your behalf; or

3. Sponsored by the first Named Insured in a program of formation for the priesthood or diaconate;

But only if the person qualifies as such in accordance with the records or intent of the first Named Insured.

**"Sexual abuse"** means criminal sexual conduct by anyone of any person while in your care, custody, or control. "Sexual abuse" does not include "sexual harassment".

**"Sexual harassment"** means any unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature made a condition of employment, used as a basis for employment decisions, or that creates an intimidating, hostile, or offensive work environment.

**"Subsidiary"** means an organization that a person or organization identified in Item 1 of the Declarations, either directly or indirectly or through any "affiliate" or other "subsidiary", has  the ability to control by means of membership or ownership of a majority of the issued and outstanding voting stock.

20-01226-scc    Doc 6-12    Filed 10/01/20    Entered 10/01/20 08:44:55    Exhibit D - Compendium of Ecclesia Policies    Pg 217 of 444

SEXUAL ABUSE LIABILITY COVERAGE FORM

**"Volunteer"** means any person who donates his or her work to you and is directed by you or on your behalf. However, "volunteer" does not include "executive" or "religious person".

**"Wrongful act"** means any:

1. Misstatement, misleading statement, act, error, omission, neglect, or breach of duty; or

2. Other matter claimed solely by reason of a person serving in his or her position.

All "wrongful acts" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any common fact, circumstance, situation, transaction, causality, event, or decision, shall be considered a single "wrongful act" commencing at the time of the earliest of the "wrongful acts".

## Section V – General Conditions

The following conditions apply in addition to the Common Policy Conditions:

A. Defense and Settlement

We shall have the right and duty to investigate a "wrongful act" and handle and defend any "claim" and settle the "claim", but only with the consent of the first Named Insured. We shall also have the right and duty to subrogate the cost of the "claim" if we pay any monies due under this insurance. If the first Named Insured refuses consent to a settlement in accordance with our recommendation that is acceptable to the claimant and is within this insurance's applicable Limit of Insurance shown in Items 6 or 7(a) of the Sexual Abuse Liability Coverage Part Declarations;

1. The first Named Insured will thereafter be solely responsible for investigating, handling, defending, and settling such "claim" at their own expense; and

2. Subject to any applicable Aggregate Limit of Insurance shown in Items 6 or 7(b) of the Sexual Abuse Liability Coverage Part Declarations, our liability with respect to such "claim" shall not exceed the amount for which such "claim" could have been settled by us, including "defense expenses" incurred up to and until the time that the first Named Insured refuses consent to the settlement.

We shall pay on your behalf any monies due under this insurance.

Our obligation to defend you ends when we have used up the applicable Limit of Insurance.

B. Duties in the Event of a Claim

1. You shall, upon knowledge by the first Named Insured or by any director, officer, trustee, general partner, manager or managing member, or Risk Manager, of the first Named Insured, give us written notice of a "claim" made during the "policy period" to which this insurance may apply. Such notice must, as a condition precedent to exercising any rights under this insurance, be given as soon as practicable but in no event later than sixty (60) days from the end of the "policy period" or, if applicable, the Extended Reporting Period. To the extent possible, notice shall include:

   a. The Named Insured's name and address;

      b.   How, when, and where the actual or alleged "wrongful act" took place;

      c.   The names and addresses of any injured persons or witnesses;

      d.   The date the "claim" was received; and

      e.   Copies of any demands, notices, summonses, or legal papers received in connection with the "claim".

2. You must:

      a.   Cooperate with us;

      b.   Authorize us to obtain records and other information;

      c.   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of a breach of duty to which this insurance may apply; and

      d.   Seek our consent to make any payment, assume any obligation, incur any expense, or make any admission of liability.

**C.  Notice of a Circumstance**

If, during the "policy period", the first Named Insured or any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, first becomes aware of any fact or circumstance which may reasonably be expected to give rise to a "claim" under this insurance and, as soon as practicable thereafter but in no event later than sixty (60) days from the end of the "policy period" or, if applicable, the Extended Reporting Period, gives us written notice of such fact or circumstance along with the full particulars described below, then any "claim" subsequently made against any "insured" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, such fact or circumstance will be deemed made during the "policy period".  The written notice shall include, at a minimum:

1. The names or identity of the potential claimants and a detailed description of the wrongful conduct; and

2. The way by which you first became aware of the specific wrongful conduct.

**D.  Extended Reporting Period**

If we do not renew or you cancel or non-renew this insurance, you shall have the right, upon payment of the required additional premium, to any of the Extended Reporting Period options stipulated in Item 14 of the Sexual Abuse Liability Coverage Part Declarations following the effective date of cancellation or non-renewal, but only with respect to any "wrongful act" arising out of "sexual abuse" first taking place on or after the Retroactive Date shown in the Declarations and prior to the effective date of such cancellation or non-renewal.  The Extended Reporting Period does not extend the "policy period" or change the scope of coverage.

The right to purchase the Extended Reporting Period shall not be available in the event of cancellation or non-renewal of this insurance resulting from the failure to pay any premium due.  The offer of renewal terms different from those in effect prior to renewal shall not constitute a refusal to renew.

This right of extension shall lapse unless written notice of such election, together with payment of any additional premium due, is given to us within sixty (60) days following the effective date of cancellation or non-renewal.  Any "claim" made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding "policy period".

The Limit of Insurance applicable to the Extended Reporting Period shall be part of, and not in addition to, the Limit of Insurance for the immediately preceding "policy period".

E.    Representations and Severability

The "insureds" represent that the information contained in the "application" for this insurance is true and complete and acknowledge that this insurance is issued in reliance on the truthfulness and completeness of such information.

The "insureds" further agree that any material misrepresentation that affects the insurability of this risk shall nullify this insurance as respects any:

1.    Person who knew the information was untrue or incomplete;

2.    Organization for any indemnification obligation due any person identified in 1. above; or

3.    Organization itself, if any person identified in 1. above is an "executive" of that organization.

This insurance shall otherwise remain in full force and effect.

F.    Waiver of Transfer of Rights of Recovery Against Others to Us

We waive any right of recovery we may have against any person or organization if such rights of recovery were waived by you or on your behalf under an "insured contract" prior to the "wrongful act".

        Copyright ©, Porter & Curtis, LLC, 2007        F SA 00 19 09 07

Endorsement Number:    1

Policy Number:    PKG-2018-1          Date Effective:    11/1/2018

## DESIGNATED INSURED EXCLUSION ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

CRIME

GENERAL LIABILITY

BUSINESS AUTO

DIRECTORS & OFFICERS LIABILITY

EMPLOYMENT PRACTICES LIABILITY

EMPLOYEE BENEFITS LIABILITY

PROFESSIONAL LIABILITY

MEDICAL PROFESSIONAL LIABILITY

SEXUAL ABUSE LIABILITY

<u>SCHEDULE</u>

Catholic Health System of Long Island, Inc.

Diocesan Services, Inc.

Unitas Investment Fund, Inc.

The meaning of Named Insured is amended to exclude any person or organization shown in the Schedule above and any other organization such person or organization, either directly or indirectly or through any other organization, has the ability to control by means of:

1. Membership or ownership of a majority of the issued and outstanding voting stock;

2. The right to elect or appoint the general partner or manager or a majority of the directors or trustees;

3. The right to serve ex officio as general partner or manager or as a director or trustee and represent a majority of the directors or trustees, individually, or collectively with any:

   a. Other ex officio director or trustee; or

  b. Right of such person or persons to elect or appoint any other director or trustee; or

 4. The right to direct any financial or managerial decision making, whether by operation of law, pursuant to contract or agreement, or pursuant to such entity's charter, articles of association, or by-law provisions.

All other terms and conditions remain unchanged.


In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.


ECCLESIA ASSURANCE COMPANY

_____  2/25/2019
Authorized Representative's Signature   Date

Endorsement Number:   2

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

### COMBINED GENERAL AGGREGATE AND RETENTION ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Parts:

DIRECTORS & OFFICERS LIABILITY

EMPLOYMENT PRACTICES LIABILITY

EMPLOYEE BENEFITS LIABILITY

PROFESSIONAL LIABILITY

Item 6 of the Declarations, Overall Limits of Insurance, is deleted and replaced by the following:

ITEM 6:      <u>Overall Limits of Insurance</u>:

     Each Loss                          $750,000

     General Aggregate                  $750,000

Item 8 of the Declarations, Retentions, is deleted and replaced by the following:

ITEM 8:      Retentions                    $250,000 Each "Wrongful Act"

Section II. C., Each Loss Limit of Insurance, is deleted and replaced by the following:

C.    Each Loss Limit of Insurance

The Each Loss Limit of Insurance shown in Item 6 above is the most we will pay, under the Coverage Parts modified by this endorsement, from one (1) causality, regardless of the number of:

1.    "Insureds" under this insurance;

2.    Persons or organizations making "claims"; or

3.    Coverage Parts under this endorsement.

Section II. D., General Aggregate Limit of Insurance, is deleted and replaced by the following:

D.    General Aggregate Limit of Insurance

The Combined General Aggregate Limit of Insurance shown in Item 6 above is the most we will pay under all Coverage Parts modified by this endorsement.

Our obligation under this insurance shall cease when the Combined General Aggregate Limit of Insurance has been exhausted by payment of amounts we owe under any Coverage Part.

Section II. E., Retentions, is deleted and replaced by the following:

E.     Retentions

The highest applicable Retention shown in Item 8 above is the most you will pay, under all Coverage Parts modified by this endorsement, from one (1) causality, regardless of the number of:

1.     "Insureds" under this insurance;

2.     Persons or organizations making "claims"; or

3.     Coverage Parts modified by this endorsement.

Any amount paid by us shall be allocated by Coverage in proportion to the total amount such covered loss bears to the total amount of all covered loss.  Any such allocated amounts shall erode any applicable Aggregate Limits of Insurance as set forth in Item 7(b) of the Declarations.

Any Retention shown in Item 8 of the Declarations shall be payable by us and reimbursed by you within 30 days of our written request for reimbursement.  As a condition precedent to exercising any rights under this insurance, you shall advance claims funds and secure any remaining reimbursement obligation as we may require.

Your obligation under this insurance for one (1) causality shall cease when the highest applicable Retention has been exhausted by payment of amounts you owe for such causality under this insurance.

All other terms and conditions remain unchanged.


In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.


ECCLESIA ASSURANCE COMPANY

_____     2/25/2019
Authorized Representative's Signature                    Date

Endorsement Number:   3

Policy Number:   PKG-2018-1                Date Effective:   11/1/2018

## COMBINED POLICIES ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

CRIME

GENERAL LIABILITY

BUSINESS AUTO

DIRECTORS & OFFICERS LIABILITY

EMPLOYMENT PRACTICES LIABILITY

EMPLOYEE BENEFITS LIABILITY

PROFESSIONAL LIABILITY

Section II - Limits of Insurance and Retentions, C. Each Loss Limit of Insurance, is amended as follows:

The most we shall pay under all policies issued by us for amounts arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any one (1) "occurrence" or "personal and advertising injury offense", "accident", or "wrongful act" shall be the single highest Limit of Insurance applicable among all such policies.

Section II - Limits of Insurance and Retentions, D. General Aggregate Limit of Insurance, is amended as follows:

The amount paid by us under more than one policy for amounts arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any one (1) "occurrence" or "personal and advertising injury offense", "accident", or "wrongful act" shall be allocated by policy by Coverage in proportion to the total amount such covered loss bears to the total amount of all covered loss.

Section II - Limits of Insurance and Retentions, E. Retentions, is amended as follows:

The most you shall pay under all policies issued by us for amounts arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any one (1) "occurrence" or "personal and advertising injury offense", "accident", or "wrongful act" shall be the retention applicable to the single highest Limit of Insurance applicable among all such policies and shall be allocated by policy by Coverage in proportion to the total amount such covered loss bears to the total amount of all covered loss.

However, this amendment does not apply to any excess or umbrella policy issued by us specifically to apply over this insurance.

All other terms and conditions remain unchanged.


In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        2/25/2019
Authorized Representative's Signature         Date

Endorsement Number:   4

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

### NO DUTY TO HANDLE OR DEFEND CRIME ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part:

CRIME

#### SCHEDULE

| | |
|---|---|
| Approved Claims Administrator | Network Adjusters, Inc. |
| Approved Defense Counsel | Not Applicable |
| Approved Crisis Management | Not Applicable |
| Approved Advisory Counsel | Not Applicable |

Section IV – Definitions, **"Crisis management expenses"**, is deleted in its entirety and replaced by the following:

**"Crisis management expenses"** means, with respect to reestablishing your reputation or public image, any:

1.   Cost of crisis management services and any related printing, mailing, advertising or travel expenses you incur; or

2.   Cost of Advisory Counsel you incur.

However, "crisis management expenses" does not include any:

1.   Salary, remuneration, benefit expense, fee, or overhead or any similar expense of yours;

2.   General retainer fees of counsel normally paid by you; or

3.   Service fees of the Approved Claims Administrator.

Section IV – Definitions, **"Defense expenses"**, is deleted in its entirety and replaced by the following:

**"Defense expenses"** means, with respect to any "claim" you defend, including any appeal therefrom, any;

1.   Reasonable and necessary expenses you incur;

2.   Cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance;

3.   Expenses incurred by us solely at our discretion in the investigation or defense of the "claim"; or

4.     Court costs taxed against you in the "claim".

However, "defense expenses" does not include any:

1.     Salary, remuneration, benefit expense, fee, or overhead or any similar expense of yours;

2.     General retainer fees of Defense Counsel normally paid by you; or

3.     Service fees of the Approved Claims Administrator.

Section IV – Definitions, **"Extortion expenses"**, is deleted in its entirety and replaced by the following:

**"Extortion expenses"** means reasonable expenses you incur in negotiating resolution of any "extortion threat".  "Extortion expenses" does not include "extortion payments".

However, "extortion expenses" does not include any:

1.     Salary, remuneration, benefit expense, fee, or overhead or any similar expense of yours;

2.     General retainer fees of counsel normally paid by you; or

3.     Service fees of the Approved Claims Administrator.

Section IV – Definitions, **"Investigation expenses"**, is amended to include the following:

However, "investigation expenses" does not include any:

1.     Service fees of the Approved Claims Administrator.

Section V – General Conditions, A. Employee Theft, Forgery or Alteration, Inside the Premises – Theft of Money and Securities, Inside the Premises – Robbery or Safe Burglary of Other Property, Outside the Premises, Computer Fraud, Funds Transfer Fraud, Money Orders and Counterfeit Money, Credit Card Forgery, Clients' Property, and Extortion, is amended to include the following:

Notice of Potential Amounts Due Under this Insurance

The first Named Insured or the Approved Claims Administrator shall notify us, at the address shown in Item 10(b) of the Crime Coverage Part Declarations, as soon as practicable, once the sum of all loss, damage, and expense arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, from any one (1) "occurrence" exceeds or is projected to exceed 50% of the applicable Retention shown in Item 8 of the Crime Coverage Part Declarations.  To the extent applicable and possible, notice shall include:

a.     The Named Insured's name and address;

b.     How, when, and where the "occurrence" took place;

c.     The names and addresses of any witnesses;

d.     The date the "claim" was received;

          Copyright ©, Porter & Curtis, LLC, 2012          E NP 00 04 03 12

    e.    Copies of any demands, notices, summonses, or legal papers received in connection with the "claim"; and

    f.    The actual and expected payments to which this insurance may apply.

    We shall be provided thereafter with any other related information or reports we request.

Section V – General Conditions, A. Employee Theft, Forgery or Alteration, Inside the Premises – Theft of Money and Securities, Inside the Premises – Robbery or Safe Burglary of Other Property, Outside the Premises, Computer Fraud, Funds Transfer Fraud, Money Orders and Counterfeit Money, Credit Card Forgery, Clients' Property, and Extortion, 1. Settlements, is deleted in its entirety and replaced with the following:

1.    Settlements

    a.    The first Named Insured shall have the duty, with our consent where required, to investigate, handle, settle, and subrogate any loss, damage, or expense under this insurance.  Such duties shall be administered by the Approved Claims Administrator shown in the schedule above.  Such authority is subject to compliance with our prevailing claims handling standards unless we otherwise agree in writing.  We shall be permitted to audit compliance with such standards as frequently as we may require.  In the event of non-compliance, as solely determined by us, we shall be allowed to require the replacement of the Approved Claims Administrator with an organization acceptable to us or, at our expense, assume all or any part of the duties of the Approved Claims Administrator.  We shall have no obligation for the expense of the Approved Claims Administrator.

    b.    We shall have the right to participate with you in the investigation, handling, and settlement of any loss, damage, or expense that might require an indemnity payment by us.  We shall also have the right and duty to associate in the subrogation of the costs of the loss, damage, and expense if we pay any monies due under this insurance.

    c.    The Approved Claims Administrator must obtain our prior written consent before assuming any obligation, making any payment, or incurring any expense, once notice is required under Section V. Notice of Potential Amounts Due Under this Insurance of this endorsement. Such consent shall not be unreasonably withheld.

    d.    We shall pay on your behalf any amounts payable under this insurance in excess of your Retention shown in Item 8 of the Crime Coverage Part Declarations up to the lesser of the applicable Limit of Insurance shown in Items 6, 7(a), or 7(b) of the Crime Coverage Part Declarations.

Section V – General Conditions, B. Employee Theft, Forgery or Alteration, Inside the Premises – Theft of Money and Securities, Inside the Premises – Robbery or Safe Burglary of Other Property, Outside the Premises, Computer Fraud, Funds Transfer Fraud, Money Orders and Counterfeit Money, Credit Card Forgery, and Clients' Property, 3. Duties in the Event of an Occurrence, is deleted in its entirety and replaced with the following:

    Copyright ©, Porter & Curtis, LLC, 2012    E NP 00 04 03 12

3.    Duties in the Event of an Occurrence

a.    You shall, upon knowledge by the first Named Insured or by any
director, officer, trustee, manager or managing member, general
partner, or Risk Manager, of the first Named Insured, give the Approved
Claims Administrator shown in the Schedule above written notice of an
"occurrence" discovered during the "policy period" to which this
insurance may apply.  Such notice must, as a condition precedent to
exercising any rights under this insurance, be given as soon as
practicable but in no event later than sixty (60) days from the end of the
"policy period" or, if applicable, from the end of the Extended Period to
Discover Loss.  To the extent applicable and possible, notice shall
include:

1)    The Named Insured's name and address;

2)    How, when, and where the "occurrence" took place; and

3)    The names and addresses of any witnesses.

b.    You must:

1)    Cooperate with the Approved Claims Administrator;

2)    Authorize the Approved Claims Administrator to obtain records
and other information;

3)    Assist the Approved Claims Administrator, upon their request, in
the enforcement of any right against any person or organization
which may be liable to you because of a breach of duty to which
this insurance may apply;

4)    Seek the Approved Claims Administrator's consent to make any
payment, assume any obligation, incur any expense, or make any
admission of liability;

5)    Promptly notify the police;

6)    Take all reasonable steps to protect the property from further
damage;

7)    Permit the Approved Claims Administrator to inspect the property
and records proving the damage before its repair or disposition;

8)    Agree to examination under oath at the Approved Claims
Administrator's request and give them a signed statement of your
answers; and

9)    Give the Approved Claims Administrator a detailed, sworn proof of
loss stating the place, time, and cause of loss or damage, your
interest and of all others in the property, the sound value thereof
and the amount of loss or damage thereto, not later than one
hundred eighty (180) days from the date the loss was first
discovered.

        Copyright ©, Porter & Curtis, LLC, 2012        E NP 00 04 03 12

Section V – General Conditions, E. Forgery or Alteration, 1. Defense and Settlement, is deleted in its entirety and replaced by the following:

1.    Defense and Settlement

    a.    The first Named Insured shall have the duty, with our consent where required, to investigate, handle, defend, settle, and subrogate a "claim" under this insurance.  Such duties shall be administered by the Approved Claims Administrator shown in the schedule above.  Such authority is subject to compliance with our prevailing claims handling standards unless we otherwise agree in writing.  We shall be permitted to audit compliance with such standards as frequently as we may require.  In the event of non-compliance, as solely determined by us, we shall be allowed to require the replacement of the Approved Claims Administrator with an organization acceptable to us or, at our expense, assume all or any part of the duties of the Approved Claims Administrator.  We shall have no obligation for the expense of the Approved Claims Administrator.

    b.    We shall have the right to participate with you in the investigation, handling, defense, settlement of a "claim" that might require an indemnity payment by us.  We shall also have the right and duty to associate in the subrogation of the costs of the "claim" if we pay any monies due under this insurance.

    c.    The first Named Insured shall, at the direction of the Approved Claims Administrator, use the Approved Defense Counsel shown in the Schedule above to defend any "claim" under this insurance.  Such authority is subject to compliance with our prevailing rate schedule and litigation management practices unless we otherwise agree in writing.

    d.    The Approved Claims Administrator must obtain our prior written consent before assuming any obligation, making any payment, or incurring any expense, once notice is required under Section V. Notice of Potential Amounts Due Under this Insurance of this endorsement.  Such consent shall not be unreasonably withheld.

    e.    We shall pay on your behalf any amounts payable under this insurance in excess of your Retention shown in Item 8 of the Crime Coverage Part Declarations up to the lesser of the applicable Limit of Insurance shown in Items 6, 7(a), or 7(b) of the Crime Coverage Part Declarations.

Section V – General Conditions, E. Forgery or Alteration, 2. Duties in the Event of a Claim, is deleted in its entirety and replaced by the following:

2.    Duties in the Event of a Claim

    a.    You shall, upon knowledge by the first Named Insured or by any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, give the Approved Claims Administrator shown in the Schedule above written notice of a "claim" made during the "policy period" to which this insurance may apply.  Such notice must, as a condition precedent to exercising any

rights under this insurance, be given as soon as practicable but in no event later than sixty (60) days from the end of the "policy period" or, if applicable, the Extended Reporting Period.  To the extent applicable and possible, notice shall include:

1) The Named Insured's name and address;

2) How, when, and where the "occurrence" took place;

3) The names and addresses of any witnesses;

4) The date the "claim" was received; and

5) Copies of any demands, notices, summonses, or legal papers received in connection with the "claim".

b.  You must:

1) Cooperate with the Approved Claims Administrator;

2) Authorize the Approved Claims Administrator to obtain records and other information;

3) Assist the Approved Claims Administrator, upon their request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of a breach of duty to which this insurance may apply;

4) Seek the Approved Claims Administrator's consent to make any payment, assume any obligation, incur any expense, or make any admission of liability;

5) Agree to examination under oath at the Approved Claims Administrator's request and give them a signed statement of your answers; and

6) Give the Approved Claims Administrator a detailed, sworn proof of loss stating the place, time, and cause of loss or damage, your interest and of all others in the property, the sound value thereof and the amount of loss or damage thereto and the amount of any expense.

Section V – General Conditions, H. Extortion, 1. Duties in the Event of an Extortion Threat, is deleted in its entirety and replaced with the following:

1.  Duties in the Event of an Extortion Threat

a.  You shall, upon knowledge by the first Named Insured or by any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, give the Approved Claims Administrator shown in the Schedule above written notice of an "extortion threat" communicated during the "policy period" to which this insurance may apply.  Such notice must, as a condition precedent to exercising any rights under this insurance, be given as soon as practicable but in no event later than sixty (60) days from the end of the

"policy period".  To the extent applicable and possible, notice shall include:

1)   The Named Insured's name and address;

2)   How, when, and where the "occurrence" took place; and

3)   The names and addresses of any witnesses.

b.   You must:

1)   Cooperate with the Approved Claims Administrator;

2)   Authorize the Approved Claims Administrator to obtain records and other information;

3)   Assist the Approved Claims Administrator, upon their request, in the enforcement of any right against any person or organization which may be liable to you because of a breach of duty to which this insurance may apply;

4)   Seek the Approved Claims Administrator's consent to make any payment, assume any obligation, incur any expense, or make any admission of liability;

5)   Promptly notify the police;

6)   Agree to examination under oath at the Approved Claims Administrator's request and give them a signed statement of your answers; and

7)   Give the Approved Claims Administrator a detailed, sworn proof of loss stating the place, time, and cause of loss or damage and the amount of any damages or expense.

All other terms and conditions remain unchanged.


In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.


ECCLESIA ASSURANCE COMPANY

_____     2/25/2019
Authorized Representative's Signature     Date

Endorsement Number:   5

Policy Number:   PKG-2018-1          Date Effective:    11/1/2018

## NO DUTY TO DEFEND GENERAL LIABILITY ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part:

GENERAL LIABILITY

### SCHEDULE

| | |
|---|---|
| Approved Claims Administrator | Network Adjusters, Inc. or Claims Service Bureau of New York, Inc. |
| Approved Defense Counsel | Mulholland Minion & Roe or Patrick F. Adams, P.C. |

Section II – Limits of Insurance and Retentions, A. Limits of Insurance, second paragraph, is deleted in its entirety and replaced by the following:

These Limits are part of, and not in addition to the Each Loss Limit of Insurance shown in Item 6 of the General Liability Coverage Part Declarations of this insurance and, as respects any limits for Coverage A. Bodily Injury and Property Damage or Coverage B. Personal and Advertising Injury, shall not be reduced by the amount of any applicable Retention shown in Item 8 of the General Liability Coverage Part Declarations.  Any other limit shall be reduced by the amount of any applicable Retention shown in Item 8 of the General Liability Coverage Part Declarations.

Section II – Limits of Insurance and Retentions, E. Retentions, third paragraph, is deleted in its entirety and replaced by the following:

We shall have no obligation to advance any Retention shown in Item 8 of the General Liability Coverage Part Declarations.  In the event we advance any such amount on your behalf, you shall pay us within thirty (30) days of our written request for reimbursement.

Section IV – Definitions, **"Defense expenses"**, is deleted in its entirety and replaced by the following:

**"Defense expenses"** means, with respect to any "claim" you defend, including any appeal therefrom, any:

1.     Reasonable and necessary expenses you incur;

2.     Cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance;

3.  Expenses incurred by us solely at our discretion in the investigation or defense of the "claim"; or

4.  Court costs taxed against you in the "claim".

However, "defense expenses" does not include any:

1.  Salary, remuneration, benefit expense, fee, or overhead or any similar expense of yours;

2.  General retainer fees of Defense Counsel normally paid by you; or

3.  Service fees of the Approved Claims Administrator.

Section V – General Conditions, is amended to include the following additional General Conditions:

Allocation

In the event "loss" or expense arising out of any "claim" includes both covered and non-covered matters, then coverage with respect to such "claim" shall apply as follows:

1.  One hundred percent (100%) of "defense expenses" on account of such "claim" will be considered covered "defense expenses"; and

2.  "Damages" and expense on account of such "claim" shall be allocated by us between covered "damages" and expense and non-covered damages and non-covered expense based on the relative legal and financial exposures of the "insureds" to covered and non-covered matters and, in the event of a settlement of such "claim", also based on the relative benefits to the "insureds" from such settlement.

If you and we cannot agree on an allocation of loss after thirty (30) days:

1.  No presumption as to allocation shall exist; and

2.  The dispute shall be submitted to binding arbitration.  The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by you, one arbitrator selected by us and a third independent arbitrator selected by the first two arbitrators.

Section V – General Conditions, A. Defense and Settlement, is deleted in its entirety and replaced by the following:

A.  Defense and Settlement

1.  The first Named Insured shall have the duty, with our consent where required, to investigate, handle, defend, settle, and subrogate any expense or "claim" under this insurance.  Such duties shall be administered by the Approved Claims Administrator shown in the schedule above.  Such authority is subject to compliance with our prevailing claims handling standards unless we otherwise agree in writing.  We shall be permitted to audit compliance with such standards as frequently as we may require.  In the event of non-compliance, as solely determined by us, we shall be allowed to require the

replacement of the Approved Claims Administrator with an organization acceptable to us or, at our expense, assume all or any part of the duties of the Approved Claims Administrator.  We shall have no obligation for the expense of the Approved Claims Administrator.

2.    We shall have the right to participate with you in the investigation, handling, defense, and settlement of any "claim" or expense that might require an indemnity payment by us.  We shall also have the right and duty to associate in the subrogation of the costs of the "claim" and expense if we pay any monies due under this insurance.

3.    The first Named Insured shall, at the direction of the Approved Claims Administrator, use the Approved Defense Counsel shown in the Schedule above to defend any "claim" or handle any expense, under this insurance.  Such authority is subject to compliance with our prevailing rate schedule and litigation management practices unless we otherwise agree in writing.

4.    The Approved Claims Administrator must obtain our prior written consent before settling any "claim" or expense or assuming any obligation, making any payment, or incurring any expense, once notice is required under Section V. Notice of Potential Amounts Due Under this Insurance of this endorsement.  Such consent shall not be unreasonably withheld.

5.    We shall pay on your behalf any amounts payable under this insurance in excess of your Retention shown in Item 8 of the General Liability Coverage Part Declarations up to the lesser of the applicable Limit of Insurance shown in Items 6(a), 6(b), or 7 of the General Liability Coverage Part Declarations.

Section V – General Conditions, B. Duties in the Event of an Occurrence, Personal and Advertising Injury Offense, Claim, or Expense, is deleted in its entirety and replaced with the following:

B.    Duties in the Event an Occurrence, Personal and Advertising Injury Offense, Claim, or Expense

1.    You shall, upon knowledge by the first Named Insured or by any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, give the Approved Claims Administrator shown in the Schedule above written notice as soon as practicable of any "occurrence", "personal injury and advertising injury offense", "claim", or expense, to which this insurance may apply.  To the extent applicable and possible, notice shall include:

a.    The Named Insured's name and address;

b.    How, when, and where the "occurrence" or "personal and advertising injury offense took place;

c.    The names and addresses of any injured persons or witnesses;

d.    The date any "claim" or expense was received; and

e.    Copies of any demands, notices, summonses, or legal papers received in connection with the "claim" or expense.

2.   You must:

    a.   Cooperate with the Approved Claims Administrator;

    b.   Authorize the Approved Claims Administrator to obtain records and other information;

    c.   Assist the Approved Claims Administrator, upon their request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of a breach of duty to which this insurance may apply; and

    d.   Seek the Approved Claims Administrator's consent to make any payment, assume any obligation, incur any expense, other than for first aid, or make any admission of liability.

Section V – General Conditions, is amended to include the following additional General Conditions:

Notice of Potential Amounts Due Under this Insurance

The first Named Insured or the Approved Claims Administrator shall notify us, at the address shown in Item 10(b) of the General Liability Coverage Part Declarations, as soon as practicable once the sum of all "loss" and expense arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any one (1) "occurrence" or "personal and advertising injury offense" exceeds or is projected to exceed 50% of the applicable Retention shown in Item 8 of the General Liability Coverage Part Declarations.  In addition, we shall be notified of any "occurrence" that involves any of the following:

1.   Amputation of all or part of an arm or leg;

2.   Brain or spinal injury resulting in admission to a hospital or clinic for at least one overnight stay;

3.   Death;

4.   Second or third degree burns over 25 percent or more of the body;

5.   Multiple or serious fracture;

6.   Loss of sight or hearing, in whole or in part; or

7.   Massive internal injury.

To the extent applicable and possible, such notice shall include:

1.   The Named Insured's name and address;

2.   How, when, and where the "occurrence" or "personal and advertising injury offense" took place;

3.   The names and addresses of any injured persons or witnesses;

4.   The date any "claim" or expense was received;

5.   Copies of any demands, notices, summonses, or legal papers received in connection with the "claim" or expense; and

6.    The actual and expected payments to which this insurance may apply.

We shall be provided thereafter with any other related information or reports we request.

All other terms and conditions remain unchanged.


In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.


ECCLESIA ASSURANCE COMPANY

_____    2/25/2019
Authorized Representative's Signature          Date

Endorsement Number:   6

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## NO DUTY TO HANDLE OR DEFEND BUSINESS AUTO ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part:

BUSINESS AUTO

### SCHEDULE

| | |
|---|---|
| Approved Claims Administrator | Network Adjusters, Inc. or Claims Service Bureau of New York, Inc. |
| Approved Defense Counsel | Mulholland Minion & Roe or Patrick F. Adams, P.C. |

Section II – Limits of Insurance and Retentions, A., Limits of Insurance, second paragraph, is deleted in its entirety and replaced by the following:

> These Limits are part of, and not in addition to the Each Loss Limit of Insurance shown in Item 6 of the Business Auto Coverage Part Declarations of this insurance and, as respects any limits for Coverage A. Bodily Injury and Property Damage or Coverage B. Uninsured and Underinsured Motorists, shall not be reduced by the amount of any applicable Retention shown in Item 8 of the Business Auto Coverage Part Declarations.  Any other limit shall be reduced by the amount of any applicable Retention shown in Item 8 of the Business Auto Coverage Part Declarations.

Section II – Limits of Insurance and Retentions, E. Retentions, third paragraph, is deleted in its entirety and replaced by the following:

> We shall have no obligation to advance any Retention shown in Item 8 of the Business Auto Coverage Part Declarations.  In the event we advance any such amount on your behalf, you shall pay us within thirty (30) days of our written request for reimbursement.

Section IV – Definitions, **"Defense expenses"**, is deleted in its entirety and replaced by the following:

> **"Defense expenses"** means, with respect to any "claim" you defend, including any appeal therefrom, any;

1.  Reasonable and necessary expenses you incur;

2.  Cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance;

3.  Expenses incurred by us solely at our discretion in the investigation or defense of the "claim"; or

4.    Court costs taxed against you in the "claim".

However, "defense expenses" does not include any:

1.    Salary, remuneration, benefit expense, fee, or overhead or any similar expense of yours;

2.    General retainer fees of Defense Counsel normally paid by you; or

3.    Service fees of the Approved Claims Administrator.

Section V – General Conditions, A. Bodily Injury and Property Damage, Uninsured and Underinsured Motorists, Personal Injury Protection, Comprehensive, Collision, Towing, Rental Reimbursement, and Loss of Use Expenses, 1. Duties in the Event of an Accident or Claim, is deleted in its entirety and replaced by the following:

1.    Duties in the Event of an Accident or Claim

a.    You shall, upon knowledge by the first Named Insured or by any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, give the Approved Claims Administrator shown in the Schedule above written notice as soon as practicable of any "accident" or "claim", to which this insurance may apply.  To the extent applicable and possible, notice shall include:

1)    The Named Insured's name and address;

2)    How, when, and where the actual or alleged "accident" took place;

3)    The names and addresses of any injured persons or witnesses; and

4)    A description of the "covered auto".

b.    You must:

1)    Cooperate with the Approved Claims Administrator;

2)    Authorize the Approved Claims Administrator to obtain records and other information;

3)    Assist the Approved Claims Administrator, upon their request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of a breach of duty to which this insurance may apply;

4)    Seek the Approved Claims Administrator's consent to make any payment, assume any obligation, incur any expense, or make any admission of liability.

Section V – General Conditions, A. Bodily Injury and Property Damage, Uninsured and Underinsured Motorists, Personal Injury Protection, Comprehensive, Collision, Towing, Rental Reimbursement, and Loss of Use Expenses, is amended to include the following:

Notice of Potential Amounts Due Under this Insurance

The first Named Insured or the Approved Claims Administrator shall notify us, at the address shown in Item 10(b) of the Business Auto Coverage Part

Declarations, as soon as practicable, once the sum of all "loss", compensatory damages, loss, damage, and expense arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any one (1) "accident" exceeds or is projected to exceed 50% of the applicable Retention shown in Item 8 of the Business Auto Coverage Part Declarations.  In addition, we shall be notified of any "accident" that results in any of the following:

a.    Amputation of all or part of an arm or leg;

b.    Brain or spinal injury resulting in admission to a hospital or clinic for at least one overnight stay;

c.    Death;

d.    Second or third degree burns over 25 percent or more of the body;

e.    Multiple or serious fracture;

f.    Loss of sight or hearing, in whole or in part; or

g.    Massive internal injury.

To the extent applicable and possible, notice shall include:

a.    The Named Insured's name and address;

b.    How, when, and where the actual or alleged "accident" took place;

c.    The names and addresses of any injured persons or witnesses;

d.    A description of the "covered auto";

e.    The date the "claim" was received;

f.    Copies of any demands, notices, summonses, or legal papers received in connection with the "claim"; and

g.    The actual and expected payments to which this insurance may apply.

We shall be provided thereafter with any other related information or reports we request.

Section V – General Conditions, B. Uninsured and Underinsured Motorists, Personal Injury Protection, Comprehensive, Collision, Towing, Rental Reimbursement, and Loss of Use Expenses, 1. Settlement, is deleted in its entirety and replaced by the following:

1.    Settlement

a.    The first Named Insured shall have the duty, with our consent where required, to investigate, handle, settle, and subrogate a loss, damage, or expense under this insurance.  Such duties shall be administered by the Approved Claims Administrator shown in the schedule above.  Such authority is subject to compliance with our prevailing claims handling standards unless we otherwise agree in writing.  We shall be permitted to audit compliance with such standards as frequently as we may require.  In the event of non-compliance, as solely determined by us, we shall be allowed to require the replacement of the Approved Claims

Copyright ©, Porter & Curtis, LLC, 2007        E NB 02 08 09 07

Administrator with an organization acceptable to us or, at our expense, assume all or any part of the duties of the Approved Claims Administrator.  We shall have no obligation for the expense of the Approved Claims Administrator.

b.   We shall have the right to participate with you in the investigation, handling, and settlement of a loss, damage, or expense that might require an indemnity payment by us.  We shall also have the right and duty to associate in the subrogation of the costs of the loss, damage, and expense if we pay any monies due under this insurance.

c.   The Approved Claims Administrator must obtain our prior written consent before assuming any obligation, making any payment, or incurring any expense, once notice is required under Section V. Notice of Potential Amounts Due Under this Insurance of this endorsement. Such consent shall not be unreasonably withheld.

d.   We shall pay on your behalf any amounts payable under this insurance in excess of your Retention shown in Item 8 of the Business Auto Coverage Part Declarations up to the lesser of the applicable Limit of Insurance shown in Items 6, 7(a), or 7(b) of the Business Auto Coverage Part Declarations.

Section V – General Conditions, C. Bodily Injury and Property Damage, is amended to include the following:

Allocation

In the event "loss" arising out of any "claim" includes both covered and non-covered matters, then coverage with respect to such "claim" shall apply as follows:

a.   One hundred percent (100%) of "defense expenses" on account of such "claim" will be considered covered "defense expenses"; and

b.   "Damages" on account of such "claim" shall be allocated by us between covered "damages" and non-covered damages based on the relative legal and financial exposures of the "insureds" to covered and non-covered matters and, in the event of a settlement of such "claim", also based on the relative benefits to the "insureds" from such settlement.

If you and we cannot agree on an allocation of loss after thirty (30) days:

a.   No presumption as to allocation shall exist; and

b.   The dispute shall be submitted to binding arbitration.  The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by you, one arbitrator selected by us and a third independent arbitrator selected by the first two arbitrators.

Section V – General Conditions, C. Bodily Injury and Property Damage, 1. Defense and Settlement, is deleted in its entirety and replaced by the following:

1.   Defense and Settlement

Copyright ©, Porter & Curtis, LLC, 2007        E NB 02 08 09 07

a.  The first Named Insured shall have the duty, with our consent where required, to investigate, handle, defend, settle, and subrogate a "claim" under this insurance.  Such duties shall be administered by the Approved Claims Administrator shown in the schedule above.  Such authority is subject to compliance with our prevailing claims handling standards unless we otherwise agree in writing.  We shall be permitted to audit compliance with such standards as frequently as we may require.  In the event of non-compliance, as solely determined by us, we shall be allowed to require the replacement of the Approved Claims Administrator with an organization acceptable to us or assume all or any part of the duties of the Approved Claims Administrator.  We shall have no obligation for the expense of the Approved Claims Administrator.

b.  We shall have the right to participate with you in the investigation, handling, defense, and settlement of a "claim" that might require an indemnity payment by us.  We shall also have the right and duty to associate in the subrogation of the costs of the "claim" if we pay any monies due under this insurance.

c.  The first Named Insured shall, at the direction of the Approved Claims Administrator, use the Approved Defense Counsel shown in the Schedule above to defend any "claim" under this insurance.  Such authority is subject to compliance with our prevailing rate schedule and litigation management practices unless we otherwise agree in writing.

d.  The Approved Claims Administrator must obtain our prior written consent before assuming any obligation, making any payment, or incurring any expense, once notice is required under Section V. Notice of Potential Amounts Due Under this Insurance of this endorsement.  Such consent shall not be unreasonably withheld.

e.  We shall pay on your behalf any amounts payable under this insurance in excess of your Retention shown in Item 8 of the Business Auto Coverage Part Declarations up to the lesser of the applicable Limit of Insurance shown in Items 6, 7(a), or 7(b) of the Business Auto Coverage Part Declarations.

Section V – General Conditions, D. Uninsured and Underinsured Motorists, 1. Duties in the Event of an Accident, is amended to include the following:

1.  Duties in the Event of an Accident

a.  You must also:

1)  Submit to examination by physicians of the Approved Claims Administrator's choice, as often as they reasonably require; and

2)  Provide copies of the summons and complaint or other process served in connection with the lawsuit against any persons or organizations legally responsible for the use of a motor vehicle involved in the "accident".

Copyright ©, Porter & Curtis, LLC, 2007        E NB 02 08 09 07

Section V – General Conditions, E. Personal Injury Protection, 1. Duties in the Event of an Accident, is amended to include the following:

1.     Duties in the Event of an Accident

    a.    You must also:

        1)    Submit to examination by physicians of the Approved Claims Administrator's as often as they reasonably require.

Section V – General Conditions, F. Comprehensive and Collision, 2. Duties in the Event of an Accident, is amended to include the following:

2.     Duties in the Event of an Accident

    a.    You must also:

        1)    Promptly notify the police if a law may have been broken;

        2)    Take all reasonable steps to protect the "covered auto" from further damage;

        3)    Permit the Approved Claims Adjuster to inspect the "covered auto" and records proving the damage before its repair or disposition;

        4)    Agree to examination under oath at the Approved Claims Administrator's request and give them a signed statement of your answers; and

        5)    Give the Approved Claims Administrator a detailed, sworn proof of loss stating the place, time, and cause of loss or damage, your interest and of all others in the property, the sound value thereof and the amount of loss or damage thereto.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    2/25/2019
Authorized Representative's Signature    Date

Endorsement Number:   7

Policy Number:   PKG-2018-1          Date Effective:   11/1/2018

## NO DUTY TO DEFEND CLAIMS MADE ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

DIRECTORS & OFFICERS LIABILITY

PROFESSIONAL LIABILITY

MEDICAL PROFESSIONAL LIABILITY

SEXUAL ABUSE LIABILITY

## SCHEDULE

| | |
|---|---|
| Approved Claims Administrator | Network Adjusters, Inc. or Claims Service Bureau of New York, Inc. |
| Approved Defense Counsel | Mulholland Minion & Roe or Patrick F. Adams, P.C. |

Section II – Limits of Insurance and Retentions, A. Limits of Insurance, second paragraph, is deleted in its entirety and replaced by the following:

> These Limits are part of, and not in addition to the Each Loss Limit of Insurance, if any, shown in Item 6 of the applicable Coverage Part Declarations of this insurance and shall not be reduced by the amount of any applicable Retention shown in Item 8 of the applicable Coverage Part Declarations.

Section II – Limits of Insurance and Retentions, E. Retentions, third paragraph, is deleted in its entirety and replaced by the following:

> We shall have no obligation to advance any Retention shown in Item 8 of the applicable Coverage Part Declarations.  In the event we advance any such amount on your behalf, you shall pay us within thirty (30) days of our written request for reimbursement.

Section IV – Definitions, **"Defense expenses"**, is deleted in its entirety and replaced by the following:

> **"Defense expenses"** means, with respect to any "claim" you defend, including any appeal therefrom, any;

1.  Reasonable and necessary expenses you incur;

2.  Cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance;

3.  Expenses incurred by us solely at our discretion in the investigation or defense of the "claim"; or

4.  Court costs taxed against you in the "claim".

However, "defense expenses" does not include any:

1.  Salary, remuneration, benefit expense, fee, or overhead or any similar expense of yours;

2.  General retainer fees of Defense Counsel normally paid by you; or

3.  Service fees of the Approved Claims Administrator.

Section V – General Conditions, is amended to include the following:

Allocation

In the event "loss" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any "claim" includes both covered and non-covered matters, then coverage with respect to such "claim" shall apply as follows:

1.  One hundred percent (100%) of "defense expenses" on account of such "claim" will be considered covered "defense expenses"; and

2.  "Damages" on account of such "claim" shall be allocated by us between covered "damages" and non-covered damages based on the relative legal and financial exposures of the "insureds" to covered and non-covered matters and, in the event of a settlement of such "claim", also based on the relative benefits to the "insureds" from such settlement.

If you and we cannot agree on an allocation of loss after thirty (30) days:

1.  No presumption as to allocation shall exist; and

2.  The dispute shall be submitted to binding arbitration.  The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by you, one arbitrator selected by us and a third independent arbitrator selected by the first two arbitrators.

Section V – General Conditions, A. Defense and Settlement, is deleted in its entirety and replaced by the following:

A    Defense and Settlement

1.  The first Named Insured shall have the duty, with our consent where required, to investigate, handle, defend, settle, and subrogate a "claim" under this insurance.  Such duties shall be administered by the Approved Claims Administrator shown in the schedule above.  Such authority is subject to compliance with our prevailing claims handling standards unless we otherwise agree in writing.  We shall be permitted to audit compliance with

such standards as frequently as we may require.  In the event of non-compliance, as solely determined by us, we shall be allowed to require the replacement of the Approved Claims Administrator with an organization acceptable to us or, at our expense, assume all or any part of the duties of the Approved Claims Administrator.  We shall have no obligation for the expense of the Approved Claims Administrator.

2.  We shall have the right to participate with you in the investigation, handling, defense, and settlement of a "claim" that might require an indemnity payment by us.  We shall also have the right and duty to associate in the subrogation of the costs of the "claim" if we pay any monies due under this insurance.

3.  The first Named Insured shall, at the direction of the Approved Claims Administrator, use the Approved Defense Counsel shown in the Schedule above to defend any "claim" under this insurance.  Such authority is subject to compliance with our prevailing rate schedule and litigation management practices unless we otherwise agree in writing.

4.  The Approved Claims Administrator must obtain our prior written consent before settling any "claim" or assuming any obligation, making any payment, or incurring any expense, once notice is required under Section V. Notice of Potential Amounts Due Under this Insurance of this endorsement.  Such consent shall not be unreasonably withheld.

5.  We shall pay on your behalf any amounts payable under this insurance in excess of your Retention shown in Item 8 of the applicable Coverage Part Declarations up to the lesser of the applicable Limit of Insurance shown in Items 6(a), 6(b), or 7 of the applicable Coverage Part Declarations.

Section V – General Conditions, B. Duties in the Event of a Claim, is deleted in its entirety and replaced with the following:

B.  Duties in the Event of a Claim

1.  You shall, upon knowledge by the first Named Insured or by any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, give the Approved Claims Administrator shown in the Schedule above written notice of any "claim" made against any "insured" during the "policy period" to which this insurance may apply.  Such notice must, as a condition precedent to exercising any rights under this insurance, be given as soon as practicable but in no event later than sixty (60) days from the end of the "policy period" or, if applicable, the Extended Reporting Period.  To the extent applicable and possible, notice shall include:

a.  The Named Insured's name and address;

b.  How, when, and where the actual or alleged "wrongful act" took place;

c.  The names and addresses of any injured persons or witnesses;

d.  The date the "claim" was received; and

e.  Copies of any demands, notices, summonses, or legal papers received in connection with the "claim".

    Copyright ©, Porter & Curtis, LLC, 2007    E NC 02 09 09 07

2. You must:

    a. Cooperate with the Approved Claims Administrator;

    b. Authorize the Approved Claims Administrator to obtain records and other information;

    c. Assist the Approved Claims Administrator, upon their request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of a breach of duty to which this insurance may apply; and

    d. Seek consent from the Approved Claims Administrator to make any payment, assume any obligation, or incur any expense, other than for first aid.

Section V – General Conditions, C. Notice of Circumstance, is deleted in its entirety and replaced with the following:

C. Notice of a Circumstance

If, during the "policy period", an officer, trustee, general partner, or Risk Manager of the first Named Insured first becomes aware of any fact or circumstance which may reasonably be expected to give rise to a "claim" against any "insured" under this insurance and, as soon as practicable thereafter but in no event later than sixty (60) days from the end of the "policy period" or, if applicable, the Extended Reporting Period, gives the Approved Claims Administrator shown in the Schedule above written notice of such fact or circumstance along with the full particulars described below, then any "claim" subsequently made against any "insured" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, such fact or circumstance will be deemed made during the "policy period". The written notice shall include, at a minimum:

1. The names or identity of the potential claimants and a detailed description of the wrongful conduct; and

2. The way by which you first became aware of the wrongful conduct.

Section V – General Conditions, is amended to include the following:

Notice of Potential Amounts Due Under this Insurance

The first Named Insured or the Approved Claims Administrator shall notify us, at the address shown in Item 10(b) of the applicable Coverage Part Declarations, as soon as practicable once the sum of all "loss" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, from any one (1) wrongful act exceeds or is projected to exceed 50% of the applicable Retention shown in Item 8 of the applicable Coverage Part Declarations.

To the extent possible and applicable, notice shall include:

1. The Named Insured's name and address;

2. How, when, and where the actual or alleged "wrongful act" took place;

3. The names and addresses of any injured persons or witnesses;

4.   The date the "claim" was received;

5.   Copies of any demands, notices, summonses, or legal papers received in connection with the "claim"; and

6.   The actual and expected payments to which this insurance may apply.

We shall be provided thereafter with any other related information or reports we request.

All other terms and conditions remain unchanged.


In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.


ECCLESIA ASSURANCE COMPANY

_____     2/25/2019
Authorized Representative's Signature        Date

Endorsement Number:   8

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## NO DUTY TO DEFEND CLAIMS MADE ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

EMPLOYMENT PRACTICES LIABILITY

EMPLOYEE BENEFITS LIABILITY

SCHEDULE

| | |
|---|---|
| Approved Claims Administrator | Network Adjusters, Inc. or Claims Service Bureau of New York, Inc. |
| Approved Defense Counsel | Jackson Lewis |

Section II – Limits of Insurance and Retentions, A. Limits of Insurance, second paragraph, is deleted in its entirety and replaced by the following:

> These Limits are part of, and not in addition to the Each Loss Limit of Insurance, if any, shown in Item 6 of the applicable Coverage Part Declarations of this insurance and shall not be reduced by the amount of any applicable Retention shown in Item 8 of the applicable Coverage Part Declarations.

Section II – Limits of Insurance and Retentions, E. Retentions, third paragraph, is deleted in its entirety and replaced by the following:

> We shall have no obligation to advance any Retention shown in Item 8 of the applicable Coverage Part Declarations.  In the event we advance any such amount on your behalf, you shall pay us within thirty (30) days of our written request for reimbursement.

Section IV – Definitions, **"Defense expenses"**, is deleted in its entirety and replaced by the following:

> **"Defense expenses"** means, with respect to any "claim" you defend, including any appeal therefrom, any;
>
> 1.    Reasonable and necessary expenses you incur;

2.    Cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance;

3.    Expenses incurred by us solely at our discretion in the investigation or defense of the "claim"; or

4.    Court costs taxed against you in the "claim".

However, "defense expenses" does not include any:

1.    Salary, remuneration, benefit expense, fee, or overhead or any similar expense of yours;

2.    General retainer fees of Defense Counsel normally paid by you; or

3.    Service fees of the Approved Claims Administrator.

Section V – General Conditions, is amended to include the following:

Allocation

In the event "loss" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any "claim" includes both covered and non-covered matters, then coverage with respect to such "claim" shall apply as follows:

1.    One hundred percent (100%) of "defense expenses" on account of such "claim" will be considered covered "defense expenses"; and

2.    "Damages" on account of such "claim" shall be allocated by us between covered "damages" and non-covered damages based on the relative legal and financial exposures of the "insureds" to covered and non-covered matters and, in the event of a settlement of such "claim", also based on the relative benefits to the "insureds" from such settlement.

If you and we cannot agree on an allocation of loss after thirty (30) days:

1.    No presumption as to allocation shall exist; and

2.    The dispute shall be submitted to binding arbitration.  The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by you, one arbitrator selected by us and a third independent arbitrator selected by the first two arbitrators.

Section V – General Conditions, A. Defense and Settlement, is deleted in its entirety and replaced by the following:

A    Defense and Settlement

1.    The first Named Insured shall have the duty, with our consent where required, to investigate, handle, defend, settle, and subrogate a "claim" under this insurance.  Such duties shall be administered by the Approved Claims Administrator shown in the schedule above.  Such authority is subject to compliance with our prevailing claims handling standards unless we otherwise agree in writing.  We shall be permitted to audit compliance with such standards as frequently as we may require.  In the event of non-compliance, as solely determined by us, we shall be allowed to require the

replacement of the Approved Claims Administrator with an organization acceptable to us or, at our expense, assume all or any part of the duties of the Approved Claims Administrator. We shall have no obligation for the expense of the Approved Claims Administrator.

2.  We shall have the right to participate with you in the investigation, handling, defense, and settlement of a "claim" that might require an indemnity payment by us. We shall also have the right and duty to associate in the subrogation of the costs of the "claim" if we pay any monies due under this insurance.

3.  The first Named Insured shall, at the direction of the Approved Claims Administrator, use the Approved Defense Counsel shown in the Schedule above to defend any "claim" under this insurance. Such authority is subject to compliance with our prevailing rate schedule and litigation management practices unless we otherwise agree in writing.

4.  The Approved Claims Administrator must obtain our prior written consent before settling any "claim" or assuming any obligation, making any payment, or incurring any expense, once notice is required under Section V. Notice of Potential Amounts Due Under this Insurance of this endorsement. Such consent shall not be unreasonably withheld.

5.  We shall pay on your behalf any amounts payable under this insurance in excess of your Retention shown in Item 8 of the applicable Coverage Part Declarations up to the lesser of the applicable Limit of Insurance shown in Items 6(a), 6(b), or 7 of the applicable Coverage Part Declarations.

Section V – General Conditions, B. Duties in the Event of a Claim, is deleted in its entirety and replaced with the following:

B.  Duties in the Event of a Claim

1.  You shall, upon knowledge by the first Named Insured or by any director, officer, trustee, manager or managing member, general partner, or Risk Manager, of the first Named Insured, give the Approved Claims Administrator shown in the Schedule above written notice of any "claim" made against an "insured" during the "policy period" to which this insurance may apply. Such notice must, as a condition precedent to exercising any rights under this insurance, be given as soon as practicable but in no event later than sixty (60) days from the end of the "policy period" or, if applicable, the Extended Reporting Period. To the extent applicable and possible, notice shall include:

    a.  The Named Insured's name and address;

    b.  How, when, and where the actual or alleged "wrongful act" took place;

    c.  The names and addresses of any injured persons or witnesses;

    d.  The date the "claim" was received; and

    e.  Copies of any demands, notices, summonses, or legal papers received in connection with the "claim".

2.  You must:

a.    Cooperate with the Approved Claims Administrator;

b.    Authorize the Approved Claims Administrator to obtain records and other information;

c.    Assist the Approved Claims Administrator, upon their request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of a breach of duty to which this insurance may apply; and

d.    Seek consent from the Approved Claims Administrator to make any payment, assume any obligation, or incur any expense, other than for first aid.

Section V – General Conditions, C. Notice of Circumstance, is deleted in its entirety and replaced with the following:

C.    Notice of a Circumstance

If, during the "policy period", an officer, trustee, general partner, or Risk Manager of the first Named Insured first becomes aware of any fact or circumstance which may reasonably be expected to give rise to a "claim" against any "insured" under this insurance and, as soon as practicable thereafter but in no event later than sixty (60) days from the end of the "policy period" or, if applicable, the Extended Reporting Period, gives the Approved Claims Administrator shown in the Schedule above written notice of such fact or circumstance along with the full particulars described below, then any "claim" subsequently made against any "insured" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, such fact or circumstance will be deemed made during the "policy period". The written notice shall include, at a minimum:

1.    The names or identity of the potential claimants and a detailed description of the wrongful conduct; and

2.    The way by which you first became aware of the wrongful conduct.

Section V – General Conditions, is amended to include the following:

Notice of Potential Amounts Due Under this Insurance

The first Named Insured or the Approved Claims Administrator shall notify us, at the address shown in Item 10(b) of the applicable Coverage Part Declarations, as soon as practicable once the sum of all "loss" arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, from any one (1) wrongful act exceeds or is projected to exceed 50% of the applicable Retention shown in Item 8 of the applicable Coverage Part Declarations.

To the extent possible and applicable, notice shall include:

1.    The Named Insured's name and address;

2.    How, when, and where the actual or alleged "wrongful act" took place;

3.    The names and addresses of any injured persons or witnesses;

4.    The date the "claim" was received;

5.    Copies of any demands, notices, summonses, or legal papers received in connection with the "claim"; and

6.    The actual and expected payments to which this insurance may apply.

We shall be provided thereafter with any other related information or reports we request.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    2/25/2019
Authorized Representative's Signature    Date

Copyright ©, Porter & Curtis, LLC, 2007      E NC 02 09 09 07

Endorsement Number:   9

Policy Number:   PKG-2018-1                 Date Effective:   11/1/2018

## MISCELLANEOUS CHANGE ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

MEDICAL PROFESSIONAL LIABILITY

Section IV – Definitions, **"Medical professional services"**, is amended to include the following:

However, "medical professional services" shall not include services provided by any:

1.    Hospital or emergency facility; or

2.    Hands on patient care by any:

    a.    Allopathic, osteopathic, naturopathic, or chiropractic physician, resident, intern, or extern;

    b.    Psychiatrist;

    c.    Pharmacist;

    d.    Dentist, orthodontist, endodontist, periodontist; or maxillofacial surgeon; or

    e.    Individual performing obstetrical delivery services.

All other terms and conditions remain unchanged.

        Copyright ©, Porter & Curtis, LLC, 2007     E MS 02 02 09 07

In witness whereof, this Endorsement has been executed in Rockville Centre, New York
by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          2/25/2019
Authorized Representative's Signature             Date

Endorsement Number:   10

Policy Number:   PKG-2018-1          Date Effective:   11/1/2018

## MISCELLANEOUS CHANGE ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

DIRECTORS & OFFICERS LIABILITY

Section III – Exclusions, is amended to include the following:

Cyber Liability

Arising out of, based upon, or attributable to, directly or indirectly, in whole or in part, any actual or alleged "security breach" or "privacy breach".

Section IV – Definitions, is amended to include the following:

**"Computer hardware"** means any physical device or group of devices that uses a "computer program" to perform operations on "electronic data". "Computer hardware" does not include "electronic media".

**"Computer program"** means any organized set of related electronic instructions.

**"Computer system"** means any "computer hardware", "computer program", "electronic data", or "electronic media".

**"Controlled computer system"** means any "computer system":

1.    You own, lease, or operate; or

2.    Operated by any third party solely for your benefit.

**"Electronic data"** means any machine-readable information. "Electronic data" does not include "computer programs".

**"Electronic media"** means any physical device that records or stores "electronic data".

**"Malicious code"** means unauthorized and corrupting or harmful "computer program", including but not limited to computer viruses, Trojan horses, keystroke loggers, cookies, spyware, adware, worms, and logic bombs.

**"Personally identifiable information"** means any information subject to protection under any "privacy regulation".

**"Privacy breach"** means any disclosure or loss of any "personally identifiable information" or confidential or proprietary information because of any unauthorized access or use of a "controlled computer system".

**"Privacy regulation"** means any common law, statute, or regulation that governs the collection, storage, or release of information pertaining to a person.

**"Security breach"** means any:

1.    Malicious and willful misuse of a "controlled computer system" to steal, modify, delete, corrupt, or destroy "electronic data";

2.    Unauthorized interference or malicious attack by any person or organization that degrades, restricts, or prevents access to any:

    a.    "Controlled computer system" by any authorized user; or

    b.    Third party's "computer system" by any authorized user if such unauthorized interference or malicious attack was transmitted through a "controlled computer system";

3.    Infection of a "controlled computer system" by "malicious code" or infection of a third party's "computer system" because of transmission of "malicious code" from a "controlled computer system"; or

4.    Any other unauthorized access or use of a "controlled computer system" by any person or organization not resulting in a "privacy breach";

Regardless of whether the attack is specifically targeted or generally distributed.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        2/25/2019
Authorized Representative's Signature            Date

Endorsement Number:    11

Policy Number:    PKG-2018-1                    Date Effective:    11/1/2018

### MISCELLANEOUS CHANGE ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

SEXUAL ABUSE LIABILITY

Section IV – Definitions, **"Insured"**, item 10, is deleted in its entirety.

Section IV – Definitions, **"Religious person"**, is deleted in its entirety and replaced by the following:

**"Religious person"** means any person (if you are an organization):

1.    Ordained as a Catholic priest or deacon and who works for you or on your behalf and is incardinated with you; or

2.    Sponsored by the first Named Insured in a program of formation for the priesthood or diaconate;

But only if the person qualifies as such in accordance with the records or intent of the first Named Insured.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    2/25/2019
Authorized Representative's Signature        Date

Copyright ©, Porter & Curtis, LLC, 2007        E MS 02 02 09 07

Endorsement Number:   12

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Comsewogue School District, 290 Norwood Avenue, Port Jefferson Station, NY 11776

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          __11/26/2018_____
Authorized Representative's Signature          Date

Endorsement Number:    13

Policy Number:    PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Deer Park Union Free School District, 1881 Deer Park Avenue, Deer Park, NY 11729

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   14

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

North Bellmore School District, 2616 Martin Avenue, Bellmore, NY 11710

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____      9/26/2018
Authorized Representative's Signature              Date

Endorsement Number:    15

Policy Number:    PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Elwood Union Free School District, 100 Kenneth Avenue, Greenlawn, NY 11740

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature        Date
_____

Endorsement Number:    16

Policy Number:    PKG-2018-1          Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Locust Valley Central School District, Horse Hollow Road, Locust Valley, NY 11560

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature                        Date

Endorsement Number:   17

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Town of Oyster Bay, 54 Audrey Avenue, Oyster Bay, NY 11771

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____     9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:    18

Policy Number:    PKG-2018-1            Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

## SCHEDULE

Town of Huntington, 100 Main Street, Huntington, NY 11743

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature            Date

Endorsement Number:   19

Policy Number:   PKG-2018-1                  Date Effective:   11/1/2018

### ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Suffolk County, Department of Health Services, 225 Rabro Drive East, Hauppauge, NY 11788

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature        Date
_____

Endorsement Number:   20

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Hofstra, Hofstra University, Sports Facility, 245 Hofstra University, Hempstead, NY 11549

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   21

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

## SCHEDULE

City of Long Beach, 1 West Chester Street, Long Beach, NY 11561

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature    Date

Endorsement Number:   22

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Sachem Central School District, 51 School Street, Lake Ronkonkoma, NY 11779

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____     9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   23

Policy Number:   PKG-2018-1                     Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Manhasset Public School, 200 Memorial Place, Manhasset, NY 11030

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature              Date

Endorsement Number:   24

Policy Number:   PKG-2018-1                Date Effective:    11/1/2018

### ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

North Shore School District, Franklin Avenue, Sea Cliff, NY 11579

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature      Date

Endorsement Number:   25

Policy Number:   PKG-2018-1                  Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

## SCHEDULE

Levittown Union Free School District, 150 Abbey Lane, Levittown, NY 11756

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature                      Date
_____        _____

Endorsement Number:   26

Policy Number:   PKG-2018-1                     Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

## SCHEDULE

Oyster Bay East Norwich Central School District, 1 McCouns Lane, Oyster Bay, NY 11771

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   27

Policy Number:   PKG-2018-1              Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Suffolk County, Suffolk County Department of Human Services, PO Box 18100,
Hauppauge, NY 11738

The person or organization shown in the Schedule above is an "insured", but only as
respects your agreement to insure such person or organization and only if the wrongful
act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to
provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York
by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:    28

Policy Number:    PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Chaminade High School, 340 Jackson Avenue, Mineola, NY 11501

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   29

Policy Number:   PKG-2018-1                Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Town of Hempstead, 200 North Franklin Street, Hempstead, NY 11550

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   30

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Nassau County, Parks and Recreation, Eisenhower Park, East Meadow, NY 11554

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____      9/26/2018
Authorized Representative's Signature              Date

Endorsement Number:   31

Policy Number:   PKG-2018-1                 Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Incorporated Village of Rockville Centre, Parks and Recreation, PO Box 950,
Rockville Centre, NY 11571

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____     9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   32

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

## SCHEDULE

William Floyd Union Free School District, 240 Mastic Beach Road, Mastic Beach, NY
11951

The person or organization shown in the Schedule above is an "insured", but only as
respects your agreement to insure such person or organization and only if the wrongful
act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to
provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York
by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature              Date

Endorsement Number:   33

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Sayville Public School, 99 Greeley Avenue, Sayville, NY 11782

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:    34

Policy Number:    PKG-2018-1                Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Incorporated Village of Freeport, 46 North Ocean Avenue, Freeport, NY 11520

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature    Date

Endorsement Number:   35

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

## SCHEDULE

Western Suffolk BOCES, 507 Deer Park Road, Huntington Station, NY 11746

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   36

Policy Number:   PKG-2018-1               Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

BUSINESS AUTO

PROFESSIONAL LIABILITY

<u>SCHEDULE</u>

Suffolk County, Suffolk County Department of Human Services, PO Box 18100, Hauppauge, NY 11738

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____         9/26/2018
Authorized Representative's Signature    Date
                                         _____

Endorsement Number:   37

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

## SCHEDULE

Huntington Union Free School District, PO Box 1500, Huntington, NY 11743

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____       9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   38

Policy Number:   PKG-2018-1            Date Effective:    11/1/2018

### ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### <u>SCHEDULE</u>

New Hyde Park/Garden City Park School District, 1950 Hillside Avenue, New Hyde
Park, NY 11040

The person or organization shown in the Schedule above is an "insured", but only as
respects your agreement to insure such person or organization and only if the wrongful
act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to
provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York
by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   39

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Incorporated Village of Lynbrook, One Columbus Drive, P.O. Box 7021, Lynbrook, NY 11563

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:    40

Policy Number:    PKG-2018-1                Date Effective:    11/1/2018

### ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Plainview-Old Bethpage Central School District, 117 Central Park Road, Plainview, NY
11803

The person or organization shown in the Schedule above is an "insured", but only as
respects your agreement to insure such person or organization and only if the wrongful
act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to
provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York
by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature            Date

Endorsement Number:   41

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Half Hollow Central School District, 525 Half Hollow Road, Dix Hills, NY 11748

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   42

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Lynbrook Public School District, 111 Atlantic Avenue, Lynbrook, NY 11563

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   43

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

## SCHEDULE

Malverne School District, 301 Wicks Lane, Malverne, NY 11565

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature            Date

Endorsement Number:   44

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Seaford School District, 1600 Washington Avenue, Seaford, NY 11783

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____                    9/26/2018
Authorized Representative's Signature              Date

Endorsement Number:   45

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Elmont Union Free School District, 135 Elmont Road, Elmont, NY 11003

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   46

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Mineola Union Free School District, 200 Emory Road, Mineola, NY 11501

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature                    Date

Endorsement Number:   47

Policy Number:   PKG-2018-1                  Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Hicksville Union Free School District, Administration Building, 200 Division Avenue,
Hicksville, NY 11801

The person or organization shown in the Schedule above is an "insured", but only as
respects your agreement to insure such person or organization and only if the wrongful
act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to
provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York
by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature         Date

Endorsement Number:    48

Policy Number:    PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

West Islip Union Free School District, 100 Sherman Avenue, West Islip, NY 11795

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature            Date

Endorsement Number:   49

Policy Number:   PKG-2018-1          Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Incorporated Village of Massapequa Park, 151 Front Street, Massapequa Park, NY 11762

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   50

Policy Number:   PKG-2018-1                      Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Baldwin Union Free School District, 960 Hastings Street, Baldwin, NY 11510

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature              Date

Endorsement Number:   51

Policy Number:   PKG-2018-1            Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

BUSINESS AUTO

### SCHEDULE

Suffolk County, New York

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   52

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):
BUSINESS AUTO

<u>SCHEDULE</u>

Suffolk County, Department of Human Services, PO Box 18100, Hauppauge, NY 11738

The person or organization shown in the Schedule above is an "insured", but only as
respects your agreement to insure such person or organization and only if the wrongful
act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to
provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York
by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   53

Policy Number:   PKG-2018-1                     Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Port Washington Union Free School District, 100 Campus Drive, Port Washington, NY 11050

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____       9/26/2018
Authorized Representative's Signature              Date

          Copyright ©, Porter & Curtis, LLC, 2017          E AI 00 03 08 17

Endorsement Number:   54

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

South Huntington Union Free School District, 60 Weston Street, Huntington, NY 11746

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   55

Policy Number:   PKG-2018-1               Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Floral Park-Bellerose Union Free School district, One Poppy Place, Floral Park, NY 11001

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____     9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   56

Policy Number:   PKG-2018-1            Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

East Islip School District, Craig. B. Gariepy Avenue, Islip Terrace, NY 11752

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature            Date

Endorsement Number:   57

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Oysterponds Union Free School District, 23405 Main Road, Orient, NY 11957

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature              Date

Endorsement Number:   58

Policy Number:   PKG-2018-1              Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

BUSINESS AUTO

### SCHEDULE

Adelphi University, 1 South Avenue, PO Box 701, Garden City, NY 11530

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:    59

Policy Number:    PKG-2018-1                Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

BUSINESS AUTO

### SCHEDULE

St John's University, 8000 Utopia Parkway, Jamaica, NY 11439

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature                Date

Endorsement Number:   60

Policy Number:   PKG-2018-1          Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Nassau Boces, 71 Clinton Road, Garden City, NY 11530

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   61

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

BUSINESS AUTO

PROFESSIONAL LIABILITY

## SCHEDULE

William Floyd Union Free School District, 240 Mastic Beach Road, Mastic Beach, NY 11951

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature        Date
_____

Endorsement Number:   62

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Long Island University, 700 Northern Boulevard, Brookville, NY 11548

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____     9/26/2018
Authorized Representative's Signature                Date

Endorsement Number:   63

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

YMCA at Glen Cove, 125 Dosoris Lane, Glen Cove, NY 11542

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature         Date

Endorsement Number:    64

Policy Number:    PKG-2018-1          Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Herricks Union Free School District, 999-B Herricks Road, New Hyde Park, NY 11040

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature              Date

Endorsement Number:   65

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Incorporated Village of Freeport, Gro- Grove Realty Corp as Owner and Frank Rizzo of
"Smokin Hot Wheels" as tenant

The person or organization shown in the Schedule above is an "insured", but only as
respects your agreement to insure such person or organization and only if the wrongful
act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to
provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York
by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   66

Policy Number:   PKG-2018-1          Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Incorporated Village of Hempstead, 335 Greenwich Street, Hempstead, NY 11550

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   67

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

### ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Incorporated Village of Valley Stream, 123 South Central Avenue, Valley Stream, NY 11580

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   68

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Middle Country Central School District, 8 43rd Street, Centereach, NY 11720

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature                Date

Endorsement Number:   69

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

### ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

PROFESSIONAL LIABILITY

<u>SCHEDULE</u>

Harborfields Central School District, 2 Oldfield Road, Greenlawn, NY 11740

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature              Date

Endorsement Number:   70

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Commack Union Free School District, Hubbs Administration Center, Clay Pitts Road,
PO Box 150, Commack, NY 11725

The person or organization shown in the Schedule above is an "insured", but only as
respects your agreement to insure such person or organization and only if the wrongful
act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to
provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York
by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature        _____
                                             Date

Endorsement Number:   71

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

North Babylon Union Free School District, 5 Jardine Place, North Babylon, NY 11703

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:    72

Policy Number:    PKG-2018-1                 Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Merrick Union Free School District, 21 Babylon Road, Merrick, NY 11566

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature        Date

        Copyright ©, Porter & Curtis, LLC, 2017        E AI 00 03 08 17

Endorsement Number:   73

Policy Number:   PKG-2018-1                 Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Longwood Central School District, 35 Yaphank-Middle Island Road, Middle Island, NY 11953

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature        Date                    _____

Endorsement Number:   74

Policy Number:   PKG-2018-1          Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Riverhead Central School District, 700 Osborne Avenue, Riverhead, NY 11901

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   75

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

### ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

North Merrick Union Free School District, 1057 Merrick Avenue, North Merrick, NY 11566

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   76

Policy Number:   PKG-2018-1                 Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Smithtown Central School District, 26 New York Avenue Unit 1, Smithtown, NY 11787

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   77

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Northport-East Northport Union Free School District, 158 Laurel Avenue, Northport, NY 11768

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature        Date        _____

Endorsement Number:   78

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

### ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Brentwood Union Free School District, 52 Third Avenue, Brentwood, NY 11717

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   79

Policy Number:   PKG-2018-1            Date Effective:   11/1/2018

### ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Oceanside Christopher Federal Credit Union, 45 Atlantic Avenue, Oceanside, NY 11572

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____      9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   80

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Kings Park Central School District, 180 Lawrence Road, Kings Park, NY 11754

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature                   Date
_____

Endorsement Number:   81

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Port Jefferson Central School District, 550 Scraggy Hill Road, Port Jefferson, NY 11777

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date
                                               _____
                                               Date

          Copyright ©, Porter & Curtis, LLC, 2017          E AI 00 03 08 17

Endorsement Number:   82

Policy Number:   PKG-2018-1                     Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Rocky Point School District, 90 Rocky Point Yaphank Road, Rocky Point, NY 11778

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____         9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   83

Policy Number:   PKG-2018-1                    Date Effective:     11/1/2018

### ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):
GENERAL LIABILITY

### SCHEDULE

Bay Shore Union Free School District, 75 West Perkal Street, Bay Shore, NY 11706

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   84

Policy Number:   PKG-2018-1          Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

## SCHEDULE

South Country Central School District, 189 Dunton Avenue, East Patchogue, NY 11772

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date
_____
                                              Date

Endorsement Number:   85

Policy Number:   PKG-2018-1             Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

West Babylon Union Free School District, 10 Farmingdale Road, West Babylon, NY 11704

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:    86

Policy Number:    PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Connetquot School District, 780 Ocean Avenue, Bohemia, NY 11716

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:  87

Policy Number:  PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Shoreham-Wading River CSD, 250B Route 25A, Shoreham, NY 11786

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature             Date

Endorsement Number:    88

Policy Number:    PKG-2018-1                Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Camp DeWolfe, PO Box 487, Wading River, NY 11792

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   89

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Bellmore Merrick Central High School District, 1260 Meadowbrook Road, North Merrick, NY 11566

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   90

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

### ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Bethpage Union Free School District, 10 Cherry Avenue, Bethpage, NY 11714

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   91

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Bellmore Union Free School District, 580 Winthrop Avenue, Bellmore, NY 11710

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   92

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Copiague Union Free School District, 2650 Great Neck Road, Copiague, NY 11726

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   93

Policy Number:   PKG-2018-1            Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Sewanhaka Central High School District, 77 Landau Avenue, Floral Park, NY 11101

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:    94

Policy Number:    PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Incorporated Village of Patchogue, 380 Bay Avenue, Patchogue, NY 11772

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   95

Policy Number:   PKG-2018-1                  Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Hauppauge Union Free School District, 495 Hoffman Lane, Hauppauge, NY 11788

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   96

Policy Number:   PKG-2018-1              Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Islip Union Free School District, 215 Main Street, Islip, NY 11751

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date                  _____

Endorsement Number:   97

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

### ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Mt. Sinai Union Free School District, North Country Road, Mount Sinai, NY 11766

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   98

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Oceanside Union Free School District, 145 Merle Avenue, Oceanside, NY 11572

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature              Date

Endorsement Number:   99

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Incorporated Village of Malverne, 99 Church Street, Malverne, NY 11565

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature              Date

Endorsement Number:    100

Policy Number:    PKG-2018-1                Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

## SCHEDULE

NYSDOT Region 10, Highway Work Permits, 250 Veteran's Memorial Highway, Hauppauge, NY 11788

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:    101

Policy Number:    PKG-2018-1              Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

## SCHEDULE

Wyandanch Union Free School District, 1445 Dr. Martin Luther King Jr. Boulevard, Wyandanch, NY 11798

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____              9/26/2018
Authorized Representative's Signature              Date

Endorsement Number:    102

Policy Number:    PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

## SCHEDULE

Time Warner Cable Enterprises LLC, 60 Columbus Circle, New York, NY 10023

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:    103

Policy Number:    PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Incorporated Village of Port Jefferson, 121 West Broadway, Port Jefferson, NY 11777

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature              Date

Endorsement Number:    104

Policy Number:    PKG-2018-1          Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Jericho Public School District, 99 Cedar Swamp Road, Jericho, NY 11753

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   105

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Farmingdale Union Free School District, 50 Van Cott Avenue, Farmingdale, NY 11735

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature            Date

Endorsement Number:   106

Policy Number:   PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Piping Rock Club and Piping Rock Holding Corp., 150 Piping Rock Road, Locust Valley, NY 11560

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   107

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

BUSINESS AUTO

<u>SCHEDULE</u>

County of Suffolk, Youth Bureau, H. Lee Dennison Building- 3rd Floor, 100 Veterans
Memorial Highway, Hauppauge, NY 11788

The person or organization shown in the Schedule above is an "insured", but only as
respects your agreement to insure such person or organization and only if the wrongful
act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to
provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York
by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:    108

Policy Number:    PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Incorporated Village of Williston Park, 494 Willis Avenue, Williston Park, NY 11596

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   109

Policy Number:   PKG-2018-1            Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Syosset Central School District, 99 Pell Lane, Syosset, NY 11791

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   110

Policy Number:   PKG-2018-1          Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Wantagh Union Free School District, 3301 Beltagh Avenue, Wantagh, NY 11793

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____     9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:    111

Policy Number:    PKG-2018-1                    Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Incorporated Village of Babylon, 153 West Main Street, Babylon, NY 11702

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:    112

Policy Number:    PKG-2018-1                    Date Effective:    11/1/2018

### ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Incorporated Village of Island Park, 127 Long Beach Road, Island Park, NY 11558

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature                    Date

Endorsement Number:   113

Policy Number:   PKG-2018-1                Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Carle Place Union Free School District, 168 Cherry Lane, Carle Place, NY 11514

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   114

Policy Number:   PKG-2018-1                Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Sisters of Mercy of the Americas, Mid-Atlantic Community, Inc., 815 Convent Road, Syosset, NY 11791

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   115

Policy Number:   PKG-2018-1          Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Patchogue-Medford School District, 241 South Ocean Avenue, Patchogue, NY 11772

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature      Date

Endorsement Number:   116

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Incorporated Village of Bayville, 34 School Street, Bayville, NY 11709

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   117

Policy Number:   PKG-2018-1          Date Effective:   11/1/2018

### ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Plainedge Union Free School District, 241 Wyngate Drive, North Massapequa, NY 11758

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature          Date

Endorsement Number:   118

Policy Number:   PKG-2018-1                     Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

BUSINESS AUTO

## SCHEDULE

Royal Realty Corp., One Bryant Park, 49th Floor, New York, NY 10036

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____      9/26/2018
Authorized Representative's Signature      Date
_____
                                                Date

Endorsement Number:    119

Policy Number:    PKG-2018-1          Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Amityville Union Free School District, 150 Park Avenue, Amityville, NY 11701

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:    120

Policy Number:    PKG-2018-1              Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):
BUSINESS AUTO

### SCHEDULE

Long Island University, 700 Northern Boulevard, Brookville, NY 11548

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____     9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   121

Policy Number:   PKG-2018-1                Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

BUSINESS AUTO

<u>SCHEDULE</u>

Central Islip Public Schools, 50 Wheeler Road, Central Islip, NY 11722

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    9/26/2018
Authorized Representative's Signature        Date

Endorsement Number:   122

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Town of Huntington & Town of Huntington Board of Trustees, 100 Main Street,
Huntington, NY 11743

The person or organization shown in the Schedule above is an "insured", but only as
respects your agreement to insure such person or organization and only if the wrongful
act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to
provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York
by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          9/26/2018
Authorized Representative's Signature      Date

Endorsement Number:   123

Policy Number:   PKG-2018-1                     Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

<u>SCHEDULE</u>

Riverhead Charter School, 3685 Middle Country Road, Calverton, NY 11933

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____     10/11/2018
Authorized Representative's Signature                Date

Endorsement Number:    124

Policy Number:    PKG-2018-1                     Date Effective:    11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Eastport-South Manor Central School District, 149 Dayon Avenue, Manorville, NY 11949

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____    10/30/2018
Authorized Representative's Signature         Date

          Copyright ©, Porter & Curtis, LLC, 2017          E AI 00 03 08 17

Endorsement Number:    125

Policy Number:    PKG-2018-1                Date Effective:    12/15/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Center Moriches Union Free School District, 529 Main Street, Center Moriches, NY 11934

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        11/9/2018
Authorized Representative's Signature        Date

Endorsement Number:   126

Policy Number:   PKG-2018-1                    Date Effective:   11/1/2018

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

GENERAL LIABILITY

### SCHEDULE

Dominican Village, 565 Albany Avenue, Amityville, NY 11701

The person or organization shown in the Schedule above is an "insured", but only as respects your agreement to insure such person or organization and only if the wrongful act occurs after the date of agreement.

The amount of insurance shall not exceed the lesser of the amount of limits you agree to provide or the available limits of this insurance.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____          1/10/2019
Authorized Representative's Signature          Date
                                               _____

Endorsement Number:    127

Policy Number:    PKG-2018-1                Date Effective:    1/1/2019

**DESIGNATED INSURED EXCLUSION ENDORSEMENT**

This endorsement modifies the insurance provided under the following Coverage Part(s):

CRIME

GENERAL LIABILITY

BUSINESS AUTO

DIRECTORS & OFFICERS LIABILITY

EMPLOYMENT PRACTICES LIABILITY

EMPLOYEE BENEFITS LIABILITY

PROFESSIONAL LIABILITY

MEDICAL PROFESSIONAL LIABILITY

SEXUAL ABUSE LIABILITY

<u>SCHEDULE</u>

Catholic Cemeteries of the Roman Catholic Diocese of Rockville Centre, Inc.

The meaning of Named Insured is amended to exclude any person or organization shown in the Schedule above and any other organization such person or organization, either directly or indirectly or through any other organization, has the ability to control by means of:

1.  Membership or ownership of a majority of the issued and outstanding voting stock;

2.  The right to elect or appoint the general partner or manager or a majority of the directors or trustees;

3.  The right to serve ex officio as general partner or manager or as a director or trustee and represent a majority of the directors or trustees, individually, or collectively with any:

    a.  Other ex officio director or trustee; or

    b.  Right of such person or persons to elect or appoint any other director or trustee; or

4.  The right to direct any financial or managerial decision making, whether by operation of law, pursuant to contract or agreement, or pursuant to such entity's charter, articles of association, or by-law provisions.

All other terms and conditions remain unchanged.


In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.


ECCLESIA ASSURANCE COMPANY

_____    2/25/2019
Authorized Representative's Signature    Date

Endorsement Number:    128

Policy Number:    PKG-2018-1                Date Effective:    1/1/2019

## EXTENDED REPORTING ENDORSEMENT

This endorsement modifies the insurance provided under the following Coverage Part(s):

PROFESSIONAL LIABILITY

SEXUAL ABUSE LIABILITY

## SCHEDULE

| Person or Organization | Retroactive Date | Expiration Date |
|---|---|---|
| Catholic Cemeteries of the Roman Catholic Diocese of Rockville Centre, Inc. | 9/1/1996 | 1/1/2019 |

The meaning of Named Insured is amended to include any person or organization shown in the Schedule above, but only for a wrongful act that first happens on or after the Retroactive Date and before the Expiration Date.

All other terms and conditions remain unchanged.

In witness whereof, this Endorsement has been executed in Rockville Centre, New York by the Company's authorized officer as set forth below.

ECCLESIA ASSURANCE COMPANY

_____        2/25/2019
Authorized Representative's Signature        Date

EAC

PORTER & CURTIS, LLC

2018 Primary Package 1

## General Information

| | |
|---|---|
| Insurer | Ecclesia Assurance Company |
| Insured | The Roman Catholic Diocese of Rockville Centre, New York |
| Policy Type | Primary Package |
| Policy Number | PKG-2018-1 |
| Policy Period | From:      11/1/2018    To:      11/1/2019 |
| Reinsurance | |
|    Company | See 2018 Primary Package RE Exhibit |
|    Type | See 2018 Primary Package RE Exhibit |
| Premium Pro Rata Factor | |
|    Days Covered | 365 |
|    Days in Year | 365 |
|    Pro Rata Factor | 1.00 |
| Premium | |

| NAIC | Coverage | Annual | Pro Rata Factor | Term | TRIA Percent of Total | TRIA Charge | Minimum Percentage | Minimum Term Premium |
|---|---|---|---|---|---|---|---|---|
| 5.1 | Crime | 43,750 | 1.00 | 43,750 | 0.00% | 0 | | |
| 5.2 | General Liability | 414,647 | 1.00 | 414,647 | 2.26% | 9,358 | | |
| 5.2 | Business Auto | 414,647 | 1.00 | 414,647 | 0.00% | 0 | | |
| 5.2 | Errors & Omissions | 159,544 | 1.00 | 159,544 | 0.00% | 0 | | |
| 5.2 | Medical Professional | 43,096 | 1.00 | 43,096 | 0.00% | 0 | | |
| 5.2 | Sexual Abuse | 1,233,213 | 1.00 | 1,233,213 | 0.00% | 0 | | |
| | Total Premium | 2,308,897 | | 2,308,897 | | 9,358 | 100% | $2,308,897 |

## Limits of Liability

Limits of Liability

| Coverage | Per Loss Limit | Retention | Aggregate Limit | Pro Rata Factor | Pro Rated Aggregate Limit |
|---|---|---|---|---|---|
| Crime | | | | | |
|    Employee Theft | 250,000 | 250,000 | n/a | 1.00 | n/a |
|    Investigation Expense | 250,000 | 250,000 | n/a | 1.00 | n/a |
| General Liability | | | | | |
|    Bodily Injury, Property Damage, P | 750,000 | 250,000 | n/a | 1.00 | n/a |
|    Medical Expense | Not Covered | n/a | n/a | 1.00 | n/a |
| Business Auto | | | | | |
|    Liability | 750,000 | 250,000 | n/a | 1.00 | n/a |
|      DRVC | incl | incl | n/a | | |
|      CHS | Not Covered | n/a | n/a | | |
|    UM/UIM | 750,000 | 250,000 | n/a | 1.00 | n/a |
|      DRVC | incl | incl | incl | | |
|      CHS | Not Covered | n/a | n/a | | |
|    First Party | Stat. Min. | 250,000 | n/a | | |
|      DRVC | incl | incl | n/a | | |
|      CHS | Not Covered | n/a | n/a | | |
|    Physical Damage | 750,000 | 250,000 | n/a | 1.00 | n/a |
|      DRVC | incl | incl | incl | | |
|      CHS | Not Covered | n/a | n/a | | |
|    Each Accident (Clash) | n/a | Highest | n/a | | |
| Errors & Omissions; retro 9/1/1996 | 750,000 | 250,000 | 750,000 | 1.00 | 750,000 |
| Medical Professional, retro 9/1/1996 | 750,000 | 250,000 | 750,000 | 1.00 | 750,000 |
| Sexual Abuse, retro 9/1/1986 | 750,000 | 250,000 | 7,500,000 | 1.00 | 7,500,000 |
|    Total Aggregate Limits | | | 9,000,000 | | 9,000,000 |
| Downside Ratio (Total Aggregate Limits / Total Premium) | | | | | 3.90 |

## Profit & Loss

| | Annual | Pro Rata Factor | Term |
|---|---|---|---|
| Revenue (Premium) | | | |
|    Loss Funding | | | |

EAC

PORTER & CURTIS, LLC

2018 Primary Package 1

| | Total | Selected | Net | | | | |
|---|---|---|---|---|---|---|---|
| Losses (Higher of 66% & 95% c) | | | | | | | |
| Crime | | | | | | | |
| 250,000 x 250,000 | 0 | 0 | 0 | | | | |
| General Liability (incl. E&O and Medical) | | | | | | | |
| 400,000 x 100,000 | 462,812 | 289,258 | 0 | | | | |
| 500,000 x 500,000 | 70,369 | 70,369 | 0 | | | | |
| Auto (DRVC) | | | | | | | |
| 400,000 x 100,000 | 102,127 | 63,829 | 0 | | | | |
| 500,000 x 500,000 | 16,214 | 16,214 | 0 | | | | |
| Auto (CHS) | | | | | | | |
| 500,000 x 500,000 | 5,689 | 0 | 0 | | | | |
| Sexual Abuse | | | | | | | |
| 900,000 x 100,000 | 996,587 | 1,233,213 | 1,233,213 | | | | |
| Total Losses | 1,653,798 | 1,672,883 | 1,233,213 | 53.41% | 1,233,213 | 1.00 | 1,233,213 |
| Reinsurance | Factor | Amount | | | | | |
| Gross | | 613,904 | | | | | |
| Ceding Commission | 0.00% | 0 | | | | | |
| Net | | 613,904 | | | | | |
| Selected | | 613,904 | | 26.59% | 613,904 | 1.00 | 613,904 |
| Total Loss Funding | | | | 80.00% | 1,847,117 | | 1,847,117 |
| Sales, General & Administrative | | | | 10.00% | 230,890 | 1.00 | 230,890 |
| Surplus Charge | | | | 10.00% | 230,890 | 1.00 | 230,890 |
| Total Revenue (Premium) | | | | 100.00% | 2,308,897 | | 2,308,897 |
| Expenses | | | | | | | |
| Total Loss Funding | | | | | | | |
| Losses (Lower of 66% & 95% c) | Total | Selected | Net | | | | |
| Crime | | | | | | | |
| 250,000 x 250,000 | 0 | 0 | 0 | | | | |
| General Liability (incl. E&O and Medical) | | | | | | | |
| 400,000 x 100,000 | 411,653 | 257,283 | 0 | | | | |
| 500,000 x 500,000 | 62,590 | 62,590 | 0 | | | | |
| Auto (DRVC) | | | | | | | |
| 400,000 x 100,000 | 84,250 | 52,656 | 0 | | | | |
| 500,000 x 500,000 | 13,376 | 13,376 | 0 | | | | |
| Auto (CHS) | | | | | | | |
| 500,000 x 500,000 | 427 | 0 | 0 | | | | |
| Sexual Abuse | | | | | | | |
| 900,000 x 100,000 | 707,267 | 557,267 | 750,000 | | | | |
| Total Losses | 1,279,563 | 943,172 | 750,000 | 32.48% | 750,000 | 1.00 | 750,000 |
| Reinsurance (Net Ceded) | Factor | Basis | Amount | | | | |
| Net Premium | 100.00% | 613,904 | 613,904 | 26.59% | 613,904 | 1.00 | 613,904 |
| Total Loss Funding | | | | 59.07% | 1,363,904 | | 1,363,904 |
| Sales, General & Administrative | | | | | | | |
| Taxes | Factor | Basis | Amount | | | | |
| Premium Tax | 0.400% | 2,308,897 | 9,236 | | | | |
| New York Assessments | 0.800% | 2,308,897 | 18,471 | | | | |
| Total Taxes | | | 27,707 | 1.20% | 27,707 | 1.00 | 27,707 |
| Other | | | 203,183 | 8.80% | 203,183 | 1.00 | 203,183 |
| Total S, G & A | | | 230,890 | 10.00% | 230,890 | | 230,890 |
| Total Expenses | | | | 69.07% | 1,594,794 | | 1,594,794 |
| Net Change in Surplus | | | | 30.93% | 714,103 | | 714,103 |
| Total Expenses and Surplus | | | | 100.00% | 2,308,897 | | 2,308,897 |

**Capital Requirements**

| | Basis | Factor | Amount | Highest | Selected |
|---|---|---|---|---|---|
| Statutory Minimum (Highest) | | | | | |
| Premium to Surplus Ratio | | | | | |
| 5:1 | 2,308,897 | 5 | 461,779 | | |
| Single Net Loss | | | 750,000 | 750,000 | |
| Best Practice | | | | | |

EAC

Porter & Curtis, LLC

2018 Primary Package 1

| Premium to Surplus Ratio | | | | | |
|---|---|---|---|---|---|
| 3:1 | 2,308,897 | 3 | 769,632 | 769,632 | 769,632 |

**Return on Capital**

| Present Value of Net Change in Surplus | | |
|---|---|---|
| Net Change in Surplus | 714,103 | |
| Holding Period (Years) | 10 | |
| Discount Rate | 4.00% | |
| Present Value | 482,422 | 482,422 |
| Required Capital | | 769,632 |
| Return on Capital | | 62.68% |

EAC

PORTER & CURTIS, LLC

2018 Primary Package RE

| Insurer | LOB | Type | Premium | Percent of Total |
|---------|-----|------|---------|------------------|
| The National Catholic Risk Retention Group, Lisle, IL | All except Crime, Auto Physical Damage, and Sexual Abuse | 100% $750,000 x $250,000 (non-concurrent) | 578,904.00 | 94.30% |
| Lloyds of London (Brit Syndicate 2987 -100%), Chicago, IL, USA | Crime | 100% $250,000 x $250,000 (concurrent) | 35,000.00 | 5.70% |
| Grand Total | | | 613,904.00 | 100.00% |

# THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.
## INSURANCE BINDER
### This Binder is a temporary contract

| NAME AND ADDRESS OF AGENCY | COMPANY |
|---|---|
| Porter & Curtis, LLC<br>Media, PA<br>225 State Road<br>Media, PA  19063-1537 | T.N.C.R.R.G., INC.<br>Effective:    12:01am        11/01/2018<br>Expires:    12:01am        11/01/2019<br>This binder is issued to extend coverage in the above-named company per existing policy # (except as noted below). |

| NAME AND MAILING ADDRESS OF INSURED | Description of Operation/Vehicles/Property |
|---|---|
| Diocese of Rockville Centre dba Ecclesia Assurance<br>50 North Park Avenue<br>Rockville Centre, NY  11570-9023 | Roman Catholic Arch/Diocesan Activities/Entities<br>Including Catholic Charities excluding Hospitals |

### P U B L I C   L I A B I L I T Y

| Type of Insurance | Limits of Liability | Each Loss | Aggregate |
|---|---|---|---|
| Section I General Liability | | | |
| [√] Comprehensive Form | | | |
| [√] Premises/Operations | | | |
| [√] Products/Completed Operations | | | |
| [√] Contractual | Bodily Injury, | | |
| [√] Personal Injury | Property Damage and | $750,000 | N/A |
| Section I Automobile Liability | Personal Injury Combined | | |
| [√] Owned | | | |
| [√] Nonowned    [√] Hired | | | |
| [√] Uninsured/Underinsured Motorist | | | |
| Other (Specify) | | | |

### E & O   L I A B I L I T Y

| | | Each Loss | Aggregate |
|---|---|---|---|
| Section II Errors & Omissions | D&O, | | |
| [√] Directors' & Officers' | Legal and Counseling | | |
| [√] Counseling E&O | E&O Combined, | $750,000 | $750,000 |
| [√] School Board Legal | School Board | | |
| Section III | | | |
| Sexual Misconduct Limited Coverage | | N/A | N/A |

**SPECIAL CONDITIONS/OTHER COVERAGES**    **Renewal Policy #: RRG 1065-14**

Ecclesia Assurance Company is solely owned and operated exclusively for and on behalf of the Diocese of Rockville Centre, N.Y.  All coverage for Catholic Health Systems of Long Island including hospital and nursing homes are EXCLUDED.
This policy will be issued on the Reinsurance Form that was presented earlier in the year.

| Name and Address of Additional Insured | | |
|---|---|---|
| | *Dennis H. O'Hara* | 11/5/2018 |
| Binder#2 8-1-95 | Signature of Authorized Representative | Date |

If any questions, please call Joy Botensten (630) 725-0986

## The National Catholic Risk Retention Group, Inc

801 Warrenville Road - Suite 175
Lisle, IL   60532-4334
Phone: 630/725-0986    Fax: 630/725-1374

## QUOTATION

| DATE: 10/12/2018 | FROM:  Joy Botensten |
|---|---|
| TO:    Ken Porter | FOR:    Diocese of Rockville Centre dba Ecclesia Assurance |

Quote Description:  CASPAC s/a expiring

### PUBLIC LIABILITY (including General & Automobile)

| Company Limits | Underlying Retention | Coverage |
|---|---|---|
| $750,000   Each Loss | $250,000 Each Loss | General Liability, Auto Liability, Personal Injury, Limited Healthcare Professional Liability and **Retirement Home\*** Professionals are included if provided in the underlying  or specifically requested if there is no underlying. |

### ERRORS & OMISSIONS LIABILITY

| Company Limits | Underlying Retention | Coverage |
|---|---|---|
| $750,000 Each Loss and Aggregate | $250,000  Each Loss | Aggregate Limit for all Losses asserted under the Directors' & Officers', School Board Legal Liability, Employee Benefits Liability and Errors and Omissions Coverage and **Employment Practices Liability** |

### SEXUAL MISCONDUCT LIMITED COVERAGE

| Company Limits | Underlying Retention | Coverage |
|---|---|---|
| -NA- | -NA- | Sexual Misconduct Limited Coverage |

### COVERAGE BASIS

| Public Liability | Errors and Omissions | Sexual Misconduct Limit |
|---|---|---|
| Occurrence | Claims-Made | Claims-Made |

### EXCLUSIONS (including but not limited to)

| Absolute Pollution\* <br> \* However Hostile Fire Coverage and upset, overturn, and collision are covered <br> Workers' Compensation <br> Employers' Liability & Occupational Disease | Doctors, Dentists, Pharamacists, Chiropractors, Hospitals Professional Liability <br> Architects, Engineers, Actuaries, Accountants, Attorneys, and Real Estate, and Investment Counselors | Nuclear Energy Liability <br><br> Aircraft Liability | Absolute Asbestos <br><br> ERISA | Trampolines <br><br> **Other:** <br> **MOLD** |

**Terms and Conditions:**     1.  Subject to underlying insurance or a Self-insured Retention of $250,000.

2.  Billable directly by TNCRRG to the participant and payable within 30 days of invoice date.

**PRODUCER COPY**                                                Quote ID: 7793

**National Catholic Quotation**

Page Two

PREMIUMS for:    **Diocese of Rockville Centre dba Ecclesia Assurance**

| Premium for $750,000 XS $250,000 Policy:<br><br>Sexual Misconduct is Excluded | **$577,568** | (plus taxes & fees) |
|---|---|---|

**OPTIONS:**

1. Excess Directors' and Officers'          Premium:  **N/A**
2. Excess Sexual Misconduct              Premium:  **N/A**

Please note that the primary layer ($750,000 excess $250,000) must be purchased for the excess layer/options to be available.

All terms/conditions/definitions/exclusions for the primary layer apply to the $4,000,000/$9,000,000/$14,000,000 excess $1,000,000 layer except the following:  Computer Related Liability, Fungal Pathogen Coverage, Innocent Person Defense Cost Coverage, Volunteer Attorney E&O, Drone Related Liability Coverage and UM/UIM are excluded in the $4,000,000/$9,000,000/$14,000,000 excess $1,000,000 policy. Sexual Misconduct is excluded in the $4,000,000/$9,000,000/$14,000,000 excess $1,000,000 policy unless specifically purchased in this policy.

**Inspections needed At:**

**PLEASE NOTE:**
    **1) QUOTE IS VALID FOR 30 DAYS FROM DATE ISSUED.**
    **2) This quote is not valid unless signed by a member of the Underwriting Management Team.**

$750,000 XS $250,000 Policy Commission: N/A

*Joy C. Botenstein*

The National Catholic Risk Retention Group, Inc.  801 Warrenville Road - Suite 175  Lisle, IL  60532-4334
Phone: 630-725-0986   Fax: 630-725-1374

**PRODUCER COPY**                                        Quote ID: 7793

**"3-New Agreement"**
**THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.**

REINSURANCE AGREEMENT NO.

between

ECCLESIA ASSURANCE COMPANY

and

THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.

**"3-New Agreement"**

**THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.**

TABLE OF CONTENTS

**[Showing Deleted Articles]**

| ARTICLE | CONTENTS | PAGE |
|---------|----------|------|
| I | BUSINESS COVERED | 1 |
| II | LIMITS OF COVER | 1 |
| III | EXCLUSIONS | 4 |
| IV | SPECIAL ACCEPTANCE | 8 |
| V | TERRITORY | 8 |
| VI | ULTIMATE NET LOSS | 9 |
| ~~VII~~ | ~~EXTRA CONTRACTUAL OBLIGATIONS~~ | 10 |
| ~~VIII~~ | ~~EXCESS JUDGMENTS~~ | 11 |
| IX | DEFINITIONS | 11 |
| ~~X~~ | ~~DATE OF LOSS~~ | 13 |
| ~~XI~~ | ~~REINSURANCE PREMIUM~~ | 14 |
| ~~XII~~ | ~~CLAIMS~~ | 15 |
| ~~XIII~~ | ~~REPORTS AND REMITTANCES~~ | 16 |
| ~~XIV~~ | ~~NON ASSIGNMENT CLAUSE~~ | 16 |
| XV | ACCESS TO RECORDS | 17 |
| XVI | RESERVES AND TAXES | 17 |
| XVII | INSOLVENCY CLAUSE | 17 |
| XVIII | SUBROGATION AND SALVAGE | 18 |
| ~~XIX~~ | ~~OFFSET~~ | 18 |
| ~~XX~~ | ~~ERRORS AND OMISSIONS~~ | 18 |
| ~~XXI~~ | ~~ARBITRATION~~ | 19 |
| ~~XXII~~ | ~~FEDERAL TERRORISM EXCESS RECOVERY~~ | 20 |
| XXIII | TERM | 20 |
| XXIV | SPECIAL TERMINATION | 21 |
| ~~XXV~~ | ~~PRIVACY~~ | 22 |
| ~~XXVI~~ | ~~INTERNATIONAL TRADE CONTROLS~~ | 22 |
| ~~XXVII~~ | ~~ENTIRE AGREEMENT~~ | 23 |
| ~~XXVIII~~ | ~~MODE OF EXECUTION~~ | 23 |

<u>"3-New Agreement"</u>

<u>THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.</u>

<u>CASUALTY EXCESS OF LOSS REINSURANCE AGREEMENT</u>

THIS AGREEMENT made and entered into by and between <u>Ecclesia Assurance Company,</u> a _____ domiciled insurer with Administrative Offices in _____ (hereinafter referred to as the "Company") and <u>THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC., Ecclesia Assurance Company, a Vermont domiciled Risk Retention Group with Administrative Offices in Lisle, Illinois </u>(hereinafter referred to as the "Reinsurer").

WITNESSETH:

The Reinsurer hereby reinsures the Company to the extent and on the terms and conditions and subject to the exceptions, exclusions and limitations hereinafter set forth. Nothing hereinafter shall in any manner create any obligations or establish any rights against the Reinsurer in favor of any third parties or any persons not parties to this Agreement.

<u>ARTICLE I</u>

<u>BUSINESS COVERED</u>

A.      The Reinsurer agrees to indemnify the Company, for the Company's **loss** resulting from any **claim** for any of the following (subject to the exclusions below and elsewhere in this policy):

1.      General Liability,

2.      Automobile Liability,

3.      Uninsured and Underinsured Motorist Coverage

4.      Diocesan Review Board Liability,

5.      Directors' and Officers' Liability,

6.      School Board Legal Liability,

7.      Employment Practices Liability,

8.      Employment Benefits Liability,

9.      Errors and Omissions Liability,

10.      Volunteer Attorney Errors and Omissions Liability,

11.      Cyber Liability,

"3-New Agreement"

THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.

12.     Limited Professional Health Care Services Liability,

13.     Fungal Pathogen Liability,

14.     Agricultural and Chemical Drift Liability,

15.     Drone-Related Liability.

B.     The coverage provided by this Agreement does not apply to any **loss** resulting from a claim arising out of actual or alleged **sexual misconduct**.

ARTICLE II

LIMITS OF COVER

With Respect to the Business Covered, the coverage for each **loss** is as follows:

1.     General Liability: $750,000 subject to a **retained limit** of $250,000,

2.     Automobile Liability: $750,000 subject to a **retained limit** of $250,000,

3.     Uninsured and Underinsured Motorist Coverage: $750,000 subject to a **retained limit** of $250,000,

4.     Diocesan Review Board Liability: $750,000 subject to a **retained limit** of $250,000,

5.     Directors' and Officers' Liability: $750,000 subject to a **retained limit** of $250,000,

6.     School Board Legal Liability: $750,000 subject to a **retained limit** of $250,000,

7.     Employment Practices Liability: $750,000 subject to a **retained limit** of $250,000,

8.     Employment Benefits Liability: $750,000 subject to a **retained limit** of $250,000,

9.     Errors and Omissions Liability: $750,000 subject to a **retained limit** of $250,000,

10.    Volunteer Attorney Errors and Omissions Liability: $750,000 subject to a

"3-New Agreement"

### THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.

**retained limit** of $250,000,

11. Cyber Liability: $750,000 subject to a **retained limit** of $250,000,

12. Limited Professional Health Care Services Liability: $750,000 subject to a **retained limit** of $250,000,

13. Fungal Pathogen Liability: $750,000 subject to a **retained limit** of $250,000,

14. Agricultural and Chemical Drift Liability: $750,000 subject to a **retained limit** of $250,000.

15. Drone-Related Liability: $500,000 subject to a **retained limit** of $250,000.

### ARTICLE III

<u>EXCLUSIONS</u>

A. The reinsurance provided under this Agreement is subject to the exclusions set forth herein and shall not cover excluded risks, hazards and coverages unless individually submitted by the Company for inclusion hereunder, and, if specially accepted by the Reinsurer, such business shall then be covered under the terms of this Agreement, except as such terms shall be modified by such special acceptance.

B. The reinsurance provided under this Agreement does not apply to:

1. All reinsurance assumed by the Company.

2. Financial guaranties.

3. Business ceded from any pool, association, including joint underwriting association, syndicate, exchange, plan, fund or other facility directly as a member, subscriber or participant, or indirectly by way of reinsurance or assessments.

4. Liability of the Company arising from its participation or membership, whether voluntary or involuntary, in any insolvency fund, including any guaranty fund, association, pool, plan or other facility which provides for the assessment of, payment by, or assumption by the Company of a part or the whole of any claim, debt, charge, fee or other obligations of an insurer, or its successors or assigns, which has been declared insolvent by any authority having jurisdiction.

5. The Company's liability, including all loss, cost or expense, beyond Policy provisions, including but not limited to, punitive, exemplary, consequential or compensatory damages, resulting from a claim of an Insured or an Insured's assignee against the Company, its agents or employees.

"3-New Agreement"

## THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.

6. Policies issued by the Company to insurance or reinsurance companies (each hereinafter referred to as "insurer") which provide insurance against liability of the insurer for any damages resulting from alleged or actual tortious conduct by the insurer in the handling of claims made against any of its policyholders or in the handling of any other business matters with any of its policyholders.

7. Liability based upon, directly or indirectly arising out of, or in any way involving nuclear fission, nuclear fusion, or the possession, storage, use, release or discharge of radioactive materials, resulting in contamination of the property of the **insured** or any other person, or the exposure of any person to radioactivity or radioactive materials.

8. **Claims** for **property damage**, **bodily injury**, sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury, at any time arising out of the manufacture, mining, use, sale, installation, removal, distribution, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust, or

9. **Claims** arising out of any obligation of the **insured** to indemnify any party because of damages arising out of such **property damage**, **bodily injury**, sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury at any time as a result of the manufacture, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

10. **Claims** arising out of the manufacture, mining, use, sale, installation, removal, distribution of asbestos, asbestos products, fibers or dust, or from exposure to asbestos, asbestos products, fibers or dust including, but not by way of limitation, any **loss**, cost or expense arising out of any governmental direction or request that the **insured** test for, monitor, cleanup, remove, contain, treat, or neutralize asbestos, asbestos products, fibers or dust.

11. **Claims** arising out of the professional activities of any **insured,** unless coverage is provided by an endorsement to this agreement, and then only to the extent specifically provided in that endorsement.

12. **Employer liability,** unless coverage is provided by an endorsement to this agreement, and then only to the extent specifically provided in that endorsement.

13. Fiduciary liability arising from the Employee Retirement Income Security Act of 1974, or amendments thereto, except for Employee Benefits Liability.

14. All loss, cost or expense directly or indirectly arising out of, resulting from or in any manner related to trampolines.

15. Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**, whether or not the discharge,

<u>"3-New Agreement"</u>

<u>THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.</u>

dispersal, seepage, migration, release or escape of a **pollutant** is sudden, gradual, accidental, intended, foreseeable, expected, fortuitous or inevitable:

1.  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **insured**. However, this subparagraph does not apply to:

    a.  **Bodily injury** if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

    b.  **Bodily injury** or **property damage** arising out of heat, smoke or fumes from a **hostile fire**.

2.  At or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations if the **pollutants** are brought on or to the premises, site or location in connection with such operations by such **insured**, contractor or subcontractor.  However, this subparagraph does not apply to:

    a.  **Bodily injury** or **property damage** arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of **mobile equipment** or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the **bodily injury** or **property damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such **insured**, contractor or subcontractor.

    b.  **Bodily injury** or **property damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by or on behalf of any **insured**; or

    c.  **Bodily injury** or **property damage** arising out of heat, smoke or fumes from a **hostile fire**.

As used in this exclusion:

<u>"3-New Agreement"</u>

<u>THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.</u>

**Pollutant** means any toxic substance, including **fungal pathogens**, smoke, vapors, soot, fumes, acids, alkalis, chemicals (including solids, liquids or gases), toxic chemical elements or compounds (including silica, silica dust, lead and any other toxic solids, liquids or gases), any substance listed as "toxic" or a "pollutant" by the Environmental Protection Agency, industrial, animal or human waste materials and any other irritants or contaminants.

**Fungal pathogen** means any fungus and any mold, mildew, mycotoxins, spores, or pathogenic aerosol that is a byproduct of any fungus.

**Claim** means any oral or written demand for money or services by or on behalf of a person or organization, whether made by service of summons, demand for arbitration or other alternative dispute resolution proceedings, in connection with actual or alleged **bodily injury, property damage,** or cleaning up or remediating any **pollutants**.

**Bodily injury** includes **personal injury**.

**Property damage** means damage to or destruction of or loss of use of the **insured's** real or personal property as well as the real or personal property of others in the care, custody or control of the **insured** and also includes any cost or expense arising out of any governmental direction or request that the **insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **pollutant**.

**Hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be.

The following exceptions apply to this exclusion:

**Automobile** or **Mobile Equipment** Exception.  This exclusion does not apply to any **claim** of **property damage** or **bodily injury** arising out of the ownership, maintenance, or use of any **automobile** or **mobile equipment**, when such **bodily injury** or **property damage** is a direct result of the actual discharge, dispersal, release, or escape of **pollutants**, provided that:

1.    the **pollutants** are fuel, lubricants, fluids, exhaust gases, or similar substances that are needed for, or result from, the normal electrical, hydraulic, or mechanical functioning and operation of the **automobile** or **mobile equipment** and its parts; and

2.    the **pollutants** escape or are discharged, dispersed, or released directly from the **automobile** or **mobile equipment** part designed by its manufacturer to hold, store, receive, or dispose of such **pollutants**; and

<u>"3-New Agreement"</u>

<u>THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.</u>

3.    the escape, dispersal, discharge, or release is directly caused by upset or overturn of, or damage to, the **automobile** or **mobile equipment** as a result of its maintenance or use.

This exception does not apply if the fuels, lubricants, fluids, exhaust gases or similar substances are intentionally discharged, dispersed or released, or if such fuels, lubricants, fluids, exhaust gases or similar substances are brought on or to the premises, site, or location with the intent to be discharged, dispersed, or released as part of the operations being performed by the **insured**, or by any contractor or subcontractor working directly or indirectly on any **insured's** behalf.

Teaching or Research Laboratory Exception.  This exclusion does not apply to **bodily injury** or **property damage** for which the **insured** is legally obligated to pay that is caused by, contributed to or arising out of the actual or threatened discharge, dispersal, release or escape of **pollutants**, when such discharge, dispersal, release or escape of **pollutants** is related directly to the normal and customary activities of a teaching or research laboratory owned by, operated by, or affiliated with an educational institution covered as an **insured** of this Company, provided that:

1.    the discharge, dispersal, release or escape of **pollutants** took place during the **policy period**;

2.    the **bodily injury** or **property damage** manifested itself no later than three (3) years after the expiration of the **policy period**; and

3.    the **bodily injury** or **property damage** was reported in writing to the Company no later than one (1) year after the manifestation of the **bodily injury** or **property damage**.

This exception does not apply to:

1.    damage to the environment (land, atmosphere or any body or course of water, whether on, above or below ground) caused by, contributed to or arising out of the actual or threatened discharge, dispersal, release or escape of any **pollutant**,

2.    any **claim** other than arising out of **bodily injury** or **property damage**, or

3.    any **claim** for the costs of cleaning up to remediating any **pollutants**.

16.    Any **claim** arising out of actual, attempted or alleged **sexual misconduct**, or any **claim** or **loss** that originated in, arose out of, is in any way (directly or

"3-New Agreement"

THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.

indirectly) related to, or would not have occurred but for an antecedent incident of actual, attempted or alleged **sexual misconduct**, regardless of the theory of liability asserted or the cause of action asserted or the language used to articulate a basis for alleged liability or culpability on the part of the **insured**, unless the Reinsurer has issued the Sexual Misconduct Limited Coverage Endorsement, and then only on a claims-made basis and on the same terms and to the extent specifically provided in that endorsement for **sexual misconduct claims**.

17. Coverage underwritten by the Company for any policyholder other than The Roman Catholic Diocese of Rockville Centre, New York.

18. Multi-Year coverages that do not allow for annual cancellation.

19. [Option1]

Any **claim** arising out of an occurrence or event which initially occurred on or before the applicable **retroactive date.**

[Option 2]

Any **claim** arising out of an occurrence or event which initially occurred on or before September 1, 2004.

20. Liability, including all loss, cost or expense, arising out of, resulting as a consequence of or related to securities laws or regulations.

21. Any **claim** arising out of the ownership, maintenance, operation, loading or unloading of any aircraft, including any aircraft, whether kept aloft by the dynamic action of air on its surfaces or by buoyancy, which is designed to be capable of being operated by remote control, unless the Company has issued the Drone-Related Liability Coverage Endorsement and then only to the extent specifically provided in that endorsement.

22. All loss, cost or expense arising from Workers Compensation or Employers Liability coverages regardless of the policy form or policy type, including but not limited to Stop Gap Coverage.

23. All claims arising out of any obligation for which the **insured** or any company as its insurer may be held liable under any workers' compensation, unemployment compensation or disability benefits law, or under any similar law.

24. Any **claim** arising out of a **cyber incident**, unless the Reinsurer has issued the Cyber Liability Coverage Endorsement, and then only to the extent specifically provided in that endorsement.

[*See notes: this is where we add the TNCRRG exclusions that were not incorporated above*]

27. Any **claim** of liability of any **insured** for assault and battery committed by or at

<u>"3-New Agreement"</u>

<u>THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.</u>

the direction of such **insured** except liability for **personal injury** or death resulting from any act alleged to be assault and battery for the purpose of preventing injury to persons or damage to property, or resulting from corporal punishment, unless coverage of **claims** arising out of corporal punishment prohibited by law.

28.   Any **claim** arising out of an agreement by the **insured** to indemnify an architect, engineer or surveyor or his or her agents or employees, for liability for **personal injury**, **bodily injury**, or **property damage** arising out of

29.   the preparation or approval of or the failure to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications, or

30.   the giving of or failure to give directions or instructions by the indemnitee or his or her agents or employees, provided such giving or failure to give is the primary cause of the **personal injury**, **bodily injury** or **property damage**.

31.   Any **claim** arising out of or resulting from any actual or alleged **employment related practices violation**, unless the Reinsurer has issued the Employment Practices Liability Coverage Endorsement, and then only to the extent specifically provided in that endorsement.

32.   Any **claim** arising out of or resulting from the actual or alleged rendering or failure to render any **professional health care services**, unless the Reinsurer has issued the Limited Professional Health Care Services Endorsement, and then only to the extent specifically provided in that endorsement.

33.   Any **claim** arising out of or resulting from actual or alleged acts, errors or omissions in the provision of the following professional services: legal, architectural, engineering, actuarial, accounting and the provision of real estate advice, financial counseling, or investment counseling, unless the services were provided by a professional who is an employee of the **insured** and working at the direction or request of the **insured**.

34.   Any **claim** for damage or destruction of property owned by the **insured**.

35.   Any **claim** for damages the **insured** is legally entitled to recover as a result of **bodily injury** suffered by the **insured** or damage to the property of the **insured** arising from an automobile accident which is not the fault of the **insured** and for which the other driver is at fault and has no insurance, has lower limits than the **insured** has, or cannot be identified.

36.   Arising out of the actions of an attorney providing legal advice or services on a volunteer basis, unless the Reinsurer has issued the Volunteer Attorney Errors and Omissions Liability Coverage Endorsement and then only to the extent specifically provided in that endorsement.

<u>"3-New Agreement"</u>

<u>THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.</u>

<u>ARTICLE IV</u>

<u>SPECIAL ACCEPTANCES</u>

**[Here, we can use the existing Swiss re text]**

The Company may request a special acceptance of reinsurance falling outside the scope of the provisions of this Agreement. Within five business days of receipt of such a request, the Reinsurer shall accept such request, ask for additional information, or reject the request. Any reinsurance that is specially accepted by the Reinsurer, shall be covered under this Agreement and shall be subject to the terms hereof, except as such terms shall be modified by the special acceptance.  If the Reinsurer fails to respond to a special acceptance request within five business days, the Reinsurer will be deemed to have agreed to the special acceptance.

<u>ARTICLE V</u>

<u>TERRITORY</u>

[NEW]

This Agreement applies only to claims arising in the United States of America, its territories and possessions, the Commonwealth of Puerto Rico, and Canada.

<u>ARTICLE VI</u>

[New: Our text, with changes]

LOSS

A.    **Loss** means the reasonable and necessary amount paid or payable by the Company to settle a **claim** or to satisfy a judgment or award based upon the **claim** (including pre- and post-judgment interest on that portion of a judgment that is covered by this policy) after deducting all recoveries by the Company, payments by the **underlying insurance** and payments by the Company within the **retained limit**.  **Loss** includes **defense costs**.  **Loss** does not include reimbursements which the Company is required to make to any payor which has paid for services provided by the Company's insured to the payor or to third persons.

[From Swiss re    E]

B.    The Company shall pay, or credit, the Reinsurer with its proportion of any salvage, subrogation and other amounts recovered by the Company less such proportion of the expenses necessary to obtain such amounts. However, such expenses shall  exclude the office, administrative and overhead expenses of the Company and salaries and expenses of its officials and employees.

"3-New Agreement"

THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.

ARTICLE VII

[Deleted]

ARTICLE VIII

[Deleted]

ARTICLE IX

DEFINITIONS

[The following are from our policy, with changes indicated]

The definitions contained in any underlying policies apply to this Agreement policy to the extent they are not inconsistent with the definitions or provisions contained in this policy and in any endorsements attached to this policy. All definitions apply in the singular, plural and the possessive as required by the context.

A.      **Additional insureds** are those persons for whom an **insured** has agreed to provide insurance protection. For all **additional insureds**, the reinsurance provided by this Agreement ~~policy~~ shall not exceed the amount agreed between the **insured** and the **additional insured**, or the applicable **reinsurance company** limit of this Agreement ~~policy~~, whichever is less, and shall apply only after the **participant's retained limit** is exceeded by **loss** covered under this Agreement ~~policy~~.

B.      **Automobile** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto for the purposes of snow removal, road maintenance, street cleaning, raising or lowering workers, air compression, generating electricity, pumping, spraying, welding, cleaning buildings, lighting, and servicing wells), but does not include **mobile equipment**.

C.      **Bodily injury** means physical injury to any person, and any mental injury, mental anguish, shock, sickness, disability or death, associated with or arising from such physical injury, where the physical injury occurred during the **policy period**.

D.      **Claim** means any oral or written demand for money and services or any other form of compensation made by or on behalf of a person or organization, whether made by service of summons, demand for arbitration or other alternative dispute resolution proceedings. All demands for money and services made by or on behalf of a person or organization arising out of an incident or series of related incidents shall be considered as a single **claim**, irrespective of the number of legal or factual theories asserted as bases of recovery. A **claim** will be

<u>"3-New Agreement"</u>

<u>THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.</u>

considered to have been first made when a notice of **claim** is received by the Diocesan Bishop (or his Canonical Equivalent), Chancellor, Vicar General, or Diocesan or Trust Insurance Manager or by the Company, whichever comes first.

E.    **<u>Reinsurance</u> ~~Company~~ limit** means the limit of coverage stated for each coverage in Section I, <u>Reinsurance</u> ~~Company~~ Limits, of the Declarations Supplement.

F.    **Cyber incident** means

1.    any intentional act, or any accident, negligent act, error or omission, or a series of causally related intentional acts, accidents, negligent acts, or errors or omissions, which results in

2.    Unauthorized disclosure of or damage to, loss of, copying, or theft of, loss of use of, corruption of, inability to access, or inability to properly manipulate,

3.    data, information, facts or programs that are

4.    stored as or on, created or used on, or transmitted to or from computer software (including systems or applications software), hard or floppy disks, CD-ROMs, DVDs, solid state devices, tapes, drives, cells, data processing devices, the cloud, or any other media which are used with electronically controlled equipment.

G.    **Defense costs** means reasonable and necessary legal fees paid to counsel retained to defend a **claim** and expenses incurred by or on behalf of the **insured** in defense of a **claim**, but does not include (1) any **defense costs** that are covered by the <u>Company's</u> ~~underlying~~ **insurance** and which are in addition to the <u>Company's</u> ~~underlying~~ **insurance** policy's liability limits, (2) any office expenses and employee salaries of the **insured**, (3) general retainer fees for counsel normally paid by the **insured**, or (4) fees paid to any claims administrators, qualified self-insurance services providers, or coordinating, consulting or oversight counsel.

H.    **Employment related practices violation** means:

1.    wrongful failure to employ or promote;

2.    wrongful dismissal, discharge or termination of employment, either actual or constructive, whether tortious or breach of express or implied contract;

3.    harassment;

4.    sexual harassment;

5.    discrimination, including but not limited to discrimination based upon age,

"3-New Agreement"

THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.

gender, race, color, national origin, religion, sexual orientation or preference, marital status, pregnancy, or any disability as defined by applicable law;

6.    retaliation for any lawful act committed by the employee;

7.    employment-related misrepresentation to a potential employer with respect to a present or former employee of the insured who is an applicant for employment with the potential employer.

8.    employment-related humiliation, defamation, libel, slander, false light or public disclosure of private facts;

9.    wrongful deprivation of career opportunity, wrongful demotion or negligent employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

10.    wrongful discipline;

11.    wrongful failure to grant tenure;

12.    failure to provide or enforce consistent corporate policies and procedures relating to any of the above.

I.    **Insureds** are those persons entitled to indemnity under ~~this~~ the Company's policy: the named insured and its ~~participant; the participant's~~ successors or assigns; agencies, subsidiaries, affiliates, institutions, and societies owned by or operated by the named insured ~~participant~~; employees and volunteers of the named insured ~~participant~~; employees and volunteers of **insureds**; persons serving on a committee or board of any agencies, subsidiaries, affiliates, institutions, and societies owned by or operated by the named insured ~~participant~~; and **additional insureds**.

J.    **Limited professional health care services** means (a) the services of a person serving in the capacity of a medical director of a covered facility or location but not including any hands-on patient care by such medical director and (b) the rendering or failure to render **professional health care services** by an **insured** at the **insured's** school, infirmary, clinic, nursing home, residential care facility, retirement home, or social service program (or at other facilities or locations agreed to in writing by the Company), but does not include any **professional health care services** provided by:

1.    a hospital or emergency facility;

2.    an allopathic, osteopathic, naturopathic, or chiropractic physician, resident, intern, or extern;

3.    a psychiatrist;

<u>"3-New Agreement"</u>

<u>THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.</u>

4.      a pharmacist;

5.      a dentist, orthodontist, endodontist, periodontist; or maxillofacial surgeon; or

6.      any individual performing obstetrical delivery services.

K.      **Loss** means the reasonable and necessary amount paid or payable by the **insured** to settle a **claim** or to satisfy a judgment or award based upon the **claim** (including pre- and post-judgment interest on that portion of a judgment that is covered by this policy) after deducting all recoveries by the **insured**, payments by the Company ~~underlying insurance~~ and payments by the Company ~~insured~~ within the **retained limit**.  **Loss** includes **defense costs**.  **Loss** does not include reimbursements which the **insured** is required to make to any payor which has paid for services provided by the **insured** to the payor or to third persons.

L.      **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1.      Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads.

2.      Vehicles maintained for use solely on or next to premises the **insured** owns or rents.

3.      Vehicles that travel on crawler treads.

4.      Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted

a.      Power cranes, shovels, loaders, diggers or drills; or

b.      Road construction or resurfacing equipment such as graders, scrapers or rollers.

5.      Vehicles not described in 1, 2, 3, 4a or 4b above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

a.      Air compressors, pumps and generators, including spraying, welding, building, cleaning, geophysical exploration, lighting and well servicing equipment; or

b.      Cherry pickers and similar devices used to raise or lower workers.

6.      Vehicles not described in 1, 2, 3, 4a or 4b above that are maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently

## THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.

attached equipment are not **mobile equipment** but will be considered **automobiles**:

a.      Equipment designed primarily for:

        1.      Snow removal;

        2.      Road maintenance, but not construction or resurfacing; or

        3.      Street cleaning;

b.      Cherry pickers or similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c.      Air compressors, pumps and generators, including spraying, welding, building cleaning, lighting or well servicing equipment.

M.    **Occurrence** means:

1.      A sudden accidental event identifiable to a particular time and place causing **bodily injury** or **property damage** during the **policy period** which **bodily injury** or **property damage** is neither intended nor reasonably expected from the standpoint of the **insured**.

2.      **Bodily injury** or **property damage** arising out of the continuous or repeated exposure to substantially the same general conditions shall be considered a single **occurrence** having taken place at the beginning of the conditions.

N.    ~~**Participant** means the person or organization named in Item 1 of the Declarations.~~

O.    **Personal injury** means;

1.      mental injury, mental anguish, shock, sickness, disease, disability, and death, except when these arise from or are associated with **bodily injury**;

2.      false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution, erroneous service of civil papers;

3.      wrongful cemetery practices;

4.      piracy, infringement or misappropriation of any intellectual property rights (including copyrights; patents; trademarks; trade dress; service marks; slogans; and advertising, broadcasting and publishing ideas);

5.      invasion of right of privacy, disparagement of a person's or organization's goods, products or services or property; assault and battery;

6.      libel, slander, defamation of character, humiliation, discrimination, or

"3-New Agreement"

## THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.

violation of civil rights (except for any of the foregoing alleged in connection with a **claim** for which this policy or any endorsements provide coverage on a claims-made basis).

P.    Coverage ~~Policy~~ **period** means the period commencing on the inception date shown in the Declarations and ending on the earlier of the expiration date or the effective date of cancellation of this Agreement ~~policy~~.

Q.    **Professional health care services** means:

1.    medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith;

2.    any service or treatment of a professional nature that is conducive to health;

3.    any cosmetic or tonsorial service or treatment;

4.    the furnishing or dispensing of prescription or non-prescription drugs or medicines, or the furnishing or dispensing of medical, dental or surgical supplies or appliances; or

5.    the handling of dead bodies or the performance of autopsies.

R.    **Property damage** means physical injury to or destruction of or loss of use of real or tangible personal property other than property owned by the **insured**, but including property of others in the care, custody or control of the **insured**. Any loss of use of property shall be deemed to have occurred at the time of the **occurrence** that caused it.

S.    **Retained limit**, also referred to as **self-insured retention** in this policy, means the amount that the **insured** must pay for each **loss** before the coverage provided by this policy will apply.  The amount of the **retained limit** for each coverage is the amount stated in Section II of item 5 in the Declarations Supplement, less the amount of the **underlying insurance** identified in item 4 of the Declarations, and is subject to adjustment pursuant to the Reduction of the Underlying Limit clause within Section II of this policy form.

T.    **Retroactive date** means the date shown on the Retroactive Date Endorsement.

U.    **Sexual harassment** means:  unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment; (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment.

"3-New Agreement"

THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.

V.    **Sexual misconduct** (including sexual molestation and sexual abuse) means

any activity, motivated by a desire or compulsion for sexual gratification, with or without physical contact, that involves another person

A.    without that person's consent, or

B.    when that person is under the lawful age of consent, or

C.    when that person is under a legal disability or under a physical, medical or psychological disability which is causally related to the alleged conduct.

**Sexual misconduct** does not include (1) sexual activity between consenting adults, or (2) **sexual harassment**.

W.    Policy ~~Underlying insurance~~ means the insurance policy or policies set forth in Item 4 of the Declarations.

X.    For purposes of automobile coverage,

1.    **Underinsured**, as applied to an at-fault driver, means that the at-fault driver's automobile liability policy has a limit of coverage that is less than the limit provided by this policy.

2.    **Uninsured**, as applied to an at-fault driver, means that the at-fault driver has no automobile liability insurance, or cannot be identified.

ARTICLE X

DATE OF LOSS

[Deleted]

ARTICLE XI

REINSURANCE PREMIUM

[Deleted]

ARTICLE XII

<u>"3-New Agreement"</u>

<u>THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.</u>

<u>CLAIMS</u>

[Deleted]

## <u>ARTICLE XIII</u>

<u>REPORTS AND REMITTANCES</u>

[Deleted]

## <u>ARTICLE XIV</u>

<u>NON-ASSIGNMENT CLAUSE</u>

[Deleted]

## <u>ARTICLE XV</u>

<u>ACCESS TO RECORDS</u>

[Deleted]

## <u>ARTICLE XVI</u>

<u>RESERVES AND TAXES</u>

A.    The Reinsurer shall maintain legal reserves with respect to unearned premiums and claims hereunder.

B.    The Company will be liable for all taxes on premiums reported to the Reinsurer hereunder and will reimburse the Reinsurer for such taxes where the Reinsurer is required to pay the same, except for income tax.

## <u>ARTICLE XVII</u>

<u>INSOLVENCY CLAUSE</u>

In the event of the insolvency of the Company and the appointment of a conservator, liquidator or statutory successor, the reinsurance provided by this Agreement shall be payable by the Reinsurer directly to the Company or to its liquidator, receiver or statutory successor on the basis of the liability of the Company under the contract or contracts reinsured. Subject to the right of offset and the verification of coverage, the

<u>"3-New Agreement"</u>

<u>THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.</u>

Reinsurer shall pay its share of the loss without diminution because of the insolvency of the Company. The liquidator, receiver or statutory successor of the Company shall give written notice of the pendency of each claim against the Company on a Policy or bond reinsured within a reasonable time after such claim is filed in the insolvency proceeding. During the pendency of such claim, the Reinsurer may, at its own expense, investigate such claim and interpose in the proceeding where such claim is to be adjudicated any defense or defenses, which it may deem available to the Company, its liquidator or receiver or statutory successor. Subject to court approval, any expense thus incurred by the Reinsurer shall be chargeable against the Company as part of the expense of liquidation to the  extent of such proportionate share of the benefit as shall accrue to the Company solely as a result of the defense undertaken by the Reinsurer. The reinsurance shall be payable as set forth above except where this Agreement specifically provides for the payment of reinsurance proceeds to another party in the event of the insolvency of the Company.

<u>ARTICLE XVIII</u>

<u>SUBROGATION AND SALVAGE</u>

A.     The Reinsurer shall be subrogated, as respects any loss for which the Reinsurer shall actually pay or become liable, but only to the extent of the amount of payment by or the amount of liability to the Reinsurer, to all the rights of the Company against any person or other entity who may be legally responsible in damages for said loss. The Company hereby agrees to enforce such rights, but in case the Company shall refuse or neglect to do so the Reinsurer is hereby authorized and empowered to bring any appropriate action in the name of the Company or its policyholders, or otherwise to enforce such rights.  <u>The Company shall do nothing after an occurrence or after receiving a **claim** to impair such rights.</u>

B.     In the event there are any recoveries, salvages or reimbursements recovered subsequent to a loss settlement, it is agreed that if the expenses incurred in obtaining salvage or other recoveries are less than the amount recovered, such expenses shall be borne by each party in the proportion that each party benefits from the recoveries; otherwise, the amount recovered shall first be applied to the reimbursement of the expense of recovery and the remaining expense shall be borne by the Company and the Reinsurer in proportion to the liability of each party for the loss before such recovery had been obtained. <u>If the attempted recovery is unsuccessful, the expenses will be borne in the ratio of the respective amounts sought to be recovered.</u>  Expenses hereunder shall exclude all office expenses of the Company and all salaries and expenses of its officials and employees.

<u>ARTICLE XIX</u>

<u>OFFSET</u>

[Deleted]

"3-New Agreement"

## THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.

## ARTICLE XX

ERRORS AND OMISSIONS

[Deleted]

## ARTICLE XXI

ARBITRATION

[Deleted]

## ARTICLE XXII

FEDERAL TERRORISM EXCESS RECOVERY

[Deleted]

## ARTICLE XXIII

TERM

A.    At expiration or cancellation the Reinsurer shall remain liable for losses occurring or claims made under the Company's Policies on Policies in force at the expiration or cancellation date of the Agreement until the Policies' scheduled anniversary, expiration, cancellation or non-renewal, whichever shall occur first, provided, however, that in no event shall the Reinsurer be liable for more than 12 months plus odd time not to exceed 18 months in all from the date of expiration or cancellation of this Agreement. However, as respects Claims Made Coverage, this Agreement will apply to claims reported under any Extended Reporting Period as provided under the Policies reinsured hereunder if the date of loss occurs on or after the retroactive date and prior to the expiration date of this Agreement.

B.    Alternatively, the Company has the option to discharge and release the Reinsurer of all liability as of the date of expiration or cancellation for any losses occurring or claims made under the Company's Policies subsequent to the expiration or cancellation date of this Agreement (except as respects claims made under any Extended Reporting Period incepting prior to the effective date of expiration or cancellation) and the Reinsurer shall pay to the Company the unearned premiums on the business in force hereunder as of the date of expiration or cancellation, less any commission allowed herein. In order to exercise such option, the Company must notify the Reinsurer in writing of such intent prior to

<u>"3-New Agreement"</u>

<u>THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.</u>

the expiration or cancellation date of this Agreement.

C.     Notwithstanding the expiration or cancellation of this Agreement as hereinabove provided, the provisions of this Agreement shall continue to apply to all unfinished business hereunder to the end that all the obligations and liabilities incurred by each party hereunder prior to such expiration shall be fully performed and discharged.

**[From TNCRRG, showing changes]**

D.     Termination of Policy

1.     By the Company **~~participant~~**

As provided in Section 4.1.1 of the Participation Agreement, t The Company **~~participant~~** may elect to terminate its insurance coverage to be effective at any time after the end of the Company's **~~participant's~~** third policy year, provided the Company **~~participant~~** gives written notice to the Reinsurer ~~Company~~ specifying the effective date of termination, which effective date cannot be less than 90 days subsequent to the date on which the Company's **~~participant's~~** notice is given.

2.     By the Reinsurer ~~Company~~

~~This policy may not be terminated, or otherwise canceled, by the Company except as provided in Sections 4.5 and 5.1 of the Participation Agreement.  Section 4.5 of the Participation Agreement provides that~~ The Reinsurer ~~Company~~ has the right to refuse to renew this agreement ~~policy~~ at any annual anniversary date of the agreement ~~Policy~~.  If the Reinsurer ~~Company~~ declines to renew the agreement ~~policy~~, it shall mail to the Company **~~participant~~** at the address shown in the Declarations written notice stating when, not less than 60 days thereafter, such nonrenewal will be effective.

~~Section 5.1 of the Participation Agreement provides that the Company may terminate this policy if an Event of Default, as defined in Section 5.6 of the Participation Agreement, occurs with respect to the~~ **participant**~~.  If the Company elects to terminate the policy because of an Event of Default, the Company shall mail to the~~ **participant** ~~written notice stating when the termination will be effective.   The effective date of the termination shall be (1) not less than 10 days after mailing of the notice in the case of nonpayment of a premium then due under this policy and (2) not less than 60 days after mailing of the notice in the case of any other Event of Default.~~

[Replace above    with the following, and delete ARTICLE XXIV:]

"3-New Agreement"

THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.

ARTICLE XXIV

SPECIAL TERMINATION

A.  Notwithstanding the termination provisions set forth in Article XXIII - Term,

E.    This Agreement shall be:

1.    Terminated automatically and immediately ~~simultaneously~~ upon the happening of any of the following events:

a.    Entry of an order of liquidation, rehabilitation, receivership or conservatorship with respect to the Company or the Reinsurer by any court or regulatory authority;

b.    Assignment of this Agreement by either party;

c.    General reinsurance of any portion of the Company's business it retains. ~~net for its own account, as determined under the provisions of this Agreement without prior consent of the Reinsurer.~~

2.    Terminated by either party giving not less than 30 days prior written notice to the other party upon the happening of ~~the following event:~~ Any transfer of control of either party by change in ownership or otherwise.

[From TNCRRG Conditions H]

F.    Mailing of Notices

The mailing of such notices by the Company **participant** or the Reinsurer ~~Company~~ shall be sufficient proof of notice.  Delivery of such written notices either by the Company **participant** or by the Participant ~~Company~~ shall be equivalent to mailing.

G.    Premiums

If the Company **participant** terminates, the earned premium or minimum premium, whichever is greater, shall be computed in accordance with the customary short rate table and procedure.  If the Reinsurer ~~Company~~ terminates, the earned premium or minimum premium, whichever is greater, shall be computed pro rata.  Premium adjustment may be made either at the time termination is effective, or as soon as practicable after termination becomes effective, but payment or tender of unearned premium is not a condition of termination.

However, this provision does not apply to the Supplementary Extended

<u>"3-New Agreement"</u>

<u>THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.</u>

Reporting Period Endorsement if purchased.

[For Supplementary Reporting Periods, I used the TNCRRG language with changes.]

H.    Extended Reporting Period (Claims-Made Coverages only)

If this agreement ~~policy~~ is not renewed or is terminated, and if the Company **~~insured~~** has not purchased the Supplementary Extended Reporting Period, then this agreement ~~policy~~ will provide an Extended Reporting Period for **claims** made against the <u>Company's</u> **insured** which arise out of incidents that initially occurred on or after the **retroactive date** and before the nonrenewal or termination. The coverage provided by this policy shall extend to claims made against the Company's **insured** during the 12 calendar months immediately following the nonrenewal or termination, ~~except that the length of the Extended Reporting Period will be the same as specified in any **underlying insurance**~~, unless the **claim** is covered by an endorsement to this agreement ~~policy~~, in which case the length of the Extended Reporting Period will be as stated in the endorsement.

~~L~~I.    Supplementary Extended Reporting Period (Claims-Made Coverages only)

1.    The Reinsurer ~~Company~~ will provide the Company **~~participant~~** the option to purchase a Supplementary Extended Reporting Period for claims-made coverages if this agreement ~~the policy~~ is either canceled or not renewed by the Company **~~participant~~** or by the Reinsurer ~~Company~~ for any reason except nonpayment of premium.

2.    A **claim** first made during the Supplementary Extended Reporting Period will be deemed to have been made on the last day of the <u>period of this agreement</u> **~~policy period~~**, provided that the **claim** is for injury or damages that occurred on or after the **retroactive date** and during the <u>period of this agreement</u> **~~policy period~~**.

3.    The Supplementary Extended Reporting Period will reinstate the aggregate limit for the coverage provided in Coverage B, except for **sexual misconduct**.

4.    The Supplementary Extended Reporting Period will be as set forth below:

If the Company **~~participant~~** makes a written request for and pays the additional premium for a Supplementary Extended Reporting Period within 60 days after the expiration of the ~~period of this agreement~~ **policy period**, the Reinsurer ~~Company~~ will issue a Supplementary Extended Reporting Period Endorsement for a period of sixty (60) months from the end of <u>this agreement</u> ~~the policy~~.

The Supplementary Extended Reporting Period Endorsement will not take effect unless the additional premium is paid when due. If that premium is paid when due, the endorsement may not be canceled.

"3-New Agreement"

THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.

~~The Supplementary Extended Reporting Period Endorsement will also amend this policy so that the insurance provided will be excess over any other valid and collectible insurance available to an **insured** whether primary, excess, contingent or on any other basis, whose policy period begins or continues after the endorsement takes effect.~~

5.    The premium for the Supplementary Extended Reporting Period Endorsement will not exceed 100 percent of the total annual premium for this policy as stated in the Declarations.   The premium for the Supplementary Extended Reporting Period Endorsement will be fully earned when the endorsement takes effect.

## ARTICLE XXV

PRIVACY

[Deleted]

## ARTICLE XXVI

INTERNATIONAL TRADE CONTROLS

[Deleted]

## ARTICLE XXVII

ENTIRE AGREEMENT

[Deleted]

## ARTICLE XXVIII

MODE OF EXECUTION

[Deleted]

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be executed as of the following dates.

"3-New Agreement"

## THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.

ECCLESIA ASSURANCE COMPANY

_____          _____
Signature                                Signature

_____          _____
Print Name                               Print Name

Title:_____            Title:_____

Date:_____             Date:_____

"3-New Agreement"

## THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.

THE NATIONAL CATHOLIC RISK RETENTION GROUP, INC.

_____        _____



# Lloyd's Certificate

**This Insurance** is effected with certain Underwriters at Lloyd's, London (not incorporated)

**This Certificate** is issued in accordance with the limited authorization granted to the Correspondent by certain Underwriters at Lloyd's, London whose names and the proportions underwritten by them can be ascertained from the office of said Correspondent (such Underwriters being hereinafter called "Underwriters") and in consideration of the premium specified herein, Underwriters do hereby bind themselves severally each for his own part, and not one for another, their heirs, executors and administrators.

**The ASSURED** is requested to read this Certificate, and if it is not correct, return it immediately to the Correspondent for appropriate alteration.

The Correspondent issuing this Certificate is:

**Brit Global Specialty USA**
**161  North Clark Street**
**Suite 3200**
**Chicago, IL  60601**

## CERTIFICATE PROVISIONS

1. **Signature Required.** This Certificate shall not be valid unless signed by the Correspondent on the attached Declaration Page.

2. **Correspondent Not Insurer.** The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those individual Underwriters at Lloyd's, London whose names can be ascertained as hereinbefore set forth.

3. **Cancellation.** If this certificate provides for cancellation and this certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

4. **Service of Suit.** It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon the firm or person named in item 6 of the attached Declaration Page, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

   The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Insured to give a written undertaking to the Insured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

   Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-mentioned as the person to whom the said officer is authorized to mail such process or a true copy thereof.

5. **Assignment.** This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

6. **Attached Conditions Incorporated.** This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

7. **Short Rate Cancellation.** If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation.

**Short Rate Cancellation Table For Term of One Year.**

| Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 5% | 66 - 69 | 29% | 154 - 156 | 53% | 256 - 260 | 77% |
| 2 | 6 | 70 - 73 | 30 | 157 - 160 | 54 | 261 - 264 | 78 |
| 3 - 4 | 7 | 74 - 76 | 31 | 161 - 164 | 55 | 265 - 269 | 79 |
| 5 - 6 | 8 | 77 - 80 | 32 | 165 - 167 | 56 | 270 - 273 ( 9 mos ) | 80 |
| 7 - 8 | 9 | 81 - 83 | 33 | 168 - 171 | 57 | 274 - 278 | 81 |
| 9 - 10 | 10 | 84 - 87 | 34 | 172 - 175 | 58 | 279 - 282 | 82 |
| 11 - 12 | 11 | 88 - 91 ( 3 mos ) | 35 | 176 - 178 | 59 | 283 - 287 | 83 |
| 13 - 14 | 12 | 92 - 94 | 36 | 179 - 182 ( 6 mos ) | 60 | 288 - 291 | 84 |
| 15 - 16 | 13 | 95 - 98 | 37 | 183 - 187 | 61 | 292 - 296 | 85 |
| 17 - 18 | 14 | 99 - 102 | 38 | 188 - 191 | 62 | 297 - 301 | 86 |
| 19 - 20 | 15 | 103 - 105 | 39 | 192 - 196 | 63 | 302 - 305 ( 10 mos ) | 87 |
| 21 - 22 | 16 | 106 - 109 | 40 | 197 - 200 | 64 | 306 - 310 | 88 |
| 23 - 25 | 17 | 110 - 113 | 41 | 201 - 205 | 65 | 311 - 314 | 89 |
| 26 - 29 | 18 | 114 - 116 | 42 | 206 - 209 | 66 | 315 - 319 | 90 |
| 30 - 32 ( 1 mos ) | 19 | 117 - 120 | 43 | 210 - 214 ( 7 mos ) | 67 | 320 - 323 | 91 |
| 33 - 36 | 20 | 121 - 124 ( 4 mos ) | 44 | 215 - 218 | 68 | 324 - 328 | 92 |
| 37 - 40 | 21 | 125 - 127 | 45 | 219 - 223 | 69 | 329 - 332 | 93 |
| 41 - 43 | 22 | 128 - 131 | 46 | 224 - 228 | 70 | 333 - 337 ( 11 mos ) | 94 |
| 44 - 47 | 23 | 132 - 135 | 47 | 229 - 232 | 71 | 338 - 342 | 95 |
| 48 - 51 | 24 | 136 - 138 | 48 | 233 - 237 | 72 | 343 - 346 | 96 |
| 52 - 54 | 25 | 139 - 142 | 49 | 238 - 241 | 73 | 347 - 351 | 97 |
| 55 - 58 | 26 | 143 - 146 | 50 | 242 - 246 ( 8 mos ) | 74 | 352 - 355 | 98 |
| 59 - 62 ( 2 mos ) | 27 | 147 - 149 | 51 | 247 - 250 | 75 | 356 - 360 | 99 |
| 63 - 65 | 28 | 150 - 153 ( 5 mos ) | 52 | 251 - 255 | 76 | 361 - 365 ( 12 mos ) | 100 |

Rules applicable to insurance with terms less than or more than one year:

A.    If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for insurance written for a term of one year.

B.    If insurance has been in force for more than one year:

1.    Determine full annual premium as for insurance written for a term of one year.

2.    Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the policy was originally written.

3.    Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force.

**This Declaration Page is attached to and forms part of Certificate provisions**

Previous No:          PK1013817
Authority Ref. No:    B0356JA281N18
Certificate No:        PK1013818

1.    **Assured's Address:**

Ecclesia Assurance Company
50 North Park Avenue
Rockville Centre,  NY 11570-4184

2.    **Effective date:**    November 1, 2018

**Expiration date:**  November 1, 2019

both days at 12:01 a.m. local standard time.

3.    **Underwriters/Reinsurers:**

Insurance is effective with certain UNDERWRITERS AT LLOYD'S, LONDON.

100% Brit Syndicates Ltd, Syndicate 2987 at Lloyd's

4.    **Coverage:**

ALL RISK OF GENERAL LIABILITY, BUSINESS AUTO, DIRECTORS & OFFICERS LIABILITY, EMPLOYMENT PRACTICES LIABILITY, EMPLOYEE BENEFITS LIABILITY, PROFESSIONAL LIABILITY, MEDICAL PROFESSIONAL LIABILITY and CRIME COVERAGE  and as more fully defined in Ecclesia Assurance Company Policy EX-LIAB-2017-1.

5.    **Forms and special conditions following:**

Ecclesia Assurance Company Porter & Curtis Policy/Coverage Memorandum EX-LIAB-2018-1 / Policy Period: 11/1/2018 – 11/1/2019. Coverage Forms -

D CP 02 05 09 07 Common Policy Declarations
F GC 00 15 09 07 Common Policy Conditions
F GL 00 21 09 07 General Liability Coverage Form
F BA 00 16 09 07 Business Auto Coverage Form
F DO 03 20 09 07 Directors & Officers Liability Coverage Form
F EP 00 17 09 07 Employment Practices Liability Coverage Form
F EB 00 17 09 07 Employee Benefits Liability Coverage Form
F PL 00 22 09 07 Professional Liability Coverage Form
F MP 00 16 09 07 Medical Professional Liability Coverage Form
E XI 02 04 09 07 Designated Insured Exclusion Endorsement 1
E NG 02 08 09 07 No Duty to Defend General Liability Endorsement 5
E NB 02 07 09 07 No Duty to Defend Business Auto Endorsement 6
E NC 02 07 09 07 No Duty to Defend Claims Made Endorsement 7, 8
E MS 02 02 09 07 Miscellaneous Change Endorsements 10, 11, 12
E CA 02 03 09 07 Combined General Aggregate and Retention Endorsement 2
E CP 02 01 09 07 Combined Policies Endorsement 3
F CR 00 08 03 12 Crime Coverage Form
E NP 00 03 03 12 No Duty to Handle or Defend Crime Endorsement 4
E AI 00 02 08 17 Additional Insured Endorsements

Territorial Limits: Worldwide

Law: State of New York

Jurisdiction: United States of America - State of New York

Limits of Liability: Underwriters' Limits of Liability shall not exceed the limits as indicated for each
coverage on the attached wording and apply only to those coverages for which a limit is shown.
Underwriters' Limits of Liability are excess over a self-insured retention loss fund (if applicable) as
specified in the attached wording.

6.    **Service of Suit may be made upon:**

Illinois Corporation Service Company. 801 Adlai Stevenson Drive, Springfield, IL 62703

7.    **In the event of a claim, please notify the following:**

By email (*Preferred method*):
    USA.Claims@britinsurance.com

By mail:
    **Brit Global Specialty USA**
    161 N. Clark St., Suite 3200, Chicago IL 60601
    Telephone:  312-577-9457

8.    **Premium:**

$515,500 (Terrorism Premium is included)

## SEVERAL LIABILITY NOTICE

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and
not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are
not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or
part of its obligations.

08/94
LSW1001 (Insurance)

## LINES CLAUSE

This Insurance, being signed for 100% of 100% insures only that proportion of any loss, whether total or
partial, including but not limited to that proportion of associated expenses, if any, to the extent and in the
manner provided in this Insurance.

The percentages signed in the Table are percentages of 100% of the amount(s) of Insurance stated
herein.

NMA2419

Contract Number: PK1013818
Authority Ref. No:  B0356JA281N18
Ecclesia Assurance Company            - 5 -

**MULTI-LINE EXCESS OF LOSS AGREEMENT OF REINSURANCE**

**NO. PK1013818**

THIS AGREEMENT is made and entered into by and between -

**ECCLESIA ASSURANCE COMPANY**
(herein referred to as the "Reinsured")

and

**BRIT GLOBAL SPECIALTY USA**
161  North Clark Street
Suite 3200
Chicago, IL  60601
(herein referred to as the "Reinsurer")

## ARTICLE I - COVERAGE

The Reinsured will cede to the Reinsurer, and the Reinsurer will accept, liability as set forth in ARTICLE II below in respect of all policies, coverage memorandum or contracts of insurance or reinsurance (hereinafter referred to as "Policies"), issued or entered into by or on behalf of the Reinsured during the term of this Contract and classified by the  Reinsured as General Liability, Business Auto, Directors & Officers Liability, Employment Practices Liability, Employee Benefits Liability, Professional Liability, Medical Professional Liability, and Crime "Policies" issued or entered into by or on behalf of the Reinsured and attaching to this Contract may not be in effect for greater than 12 months.

## ARTICLE II –SCHEDULE OF REINSURANCE LIMITS

The combined limits of liability and section sublimits to the Reinsurer will be as follows:

| | Schedule of Reinsurance Limits | Schedule of Underlying Limits for each Occurrence/ Claim | Schedule of Annual Aggregates | Retroactive Dates for Claims Made Coverages |
|---|---|---|---|---|
| **Directors & Officers Liability:** | **$14,000,000** | **$1,000,000** | **$14,000,000** | **September 1, 1996** |
| **Employment Practices Liability:** | **Included in Above** | **Included in Above** | **Included in Above** | **Included in Above** |
| **Employee Benefits Liability:** | **Included in Above** | **Included in Above** | **Included in Above** | **Included in Above** |
| **Professional Liability:** | **Included in Above** | **Included in Above** | **Included in Above** | **Included in Above** |
| **General Liability:** | **$14,000,000** | **$1,000,000** | **NOT APPLICABLE** | **NOT APPLICABLE** |
| **Business Auto:** | **$14,000,000** | **$1,000,000** | **NOT APPLICABLE** | **NOT APPLICABLE** |
| **Medical Professional Liability:** | **$14,000,000** | **$1,000,000** | **$14,000,000** | **September 1, 1996** |
| **Sexual Abuse Liability:** | **NOT COVERED** | **NOT COVERED** | **NOT APPLICABLE** | **NOT APPLICABLE** |
| **Crime – Employee Theft:** | **$250,000** | **$250,000** | **NOT APPLICABLE** | **NOT APPLICABLE** |
| **Crime – Investigation Expenses** | **$250,000** | **$250,000** | **NOT APPLICABLE** | **NOT APPLICABLE** |

Directors & Officers Liability; Employment Practices Liability; Employee Benefits Liability; Professional Liability is subject to a Combined Single Annual Aggregate limit of $14,000,000.

The date of loss hereunder shall be:

1.    The date of an "occurrence", accident, event, circumstance, or continuous, intermittent, or repeated exposure to conditions which gave rise to a "claim" under a losses occurring  coverage section within this policy; or

2.    The date of when a "claim" was first made under a claims made coverage section within this policy against the Reinsured's member; or

3.    Except as otherwise defined herein, the Reinsurer's liability, hereunder shall follow the definitions contained within the Reinsured's original Coverage Memorandum as regards any reference made herein to "occurrence", "claims made" and "loss discovered".

The Reinsured's shall be the sole judge of what constitutes any one Policy.

## ARTICLE III  REINSURANCE LIMITS

A.    This policy contains various Underlying Limits as listed under ARTICLE II in the Schedule of Underlying Limits.  The Reinsured  is responsible for payment of each applicable Underlying Limit.

B.    This policy contains various Reinsurance Limits of Insurance above the Underlying Limits as listed under ARTICLE II in the Schedule of Reinsurance Limits.

C.    This policy contains various Annual Aggregates as listed under ARTICLE II in the Schedule of Annual Aggregates.  Reinsurer's liability ends when the applicable Annual Aggregate has been exhausted by payments to the Reinsured.

D.    This policy may contain various sublimits as listed under ARTICLE II in the Schedule of Reinsurance Limits which are less than the applicable Reinsurance Limit. Where indicated, these sublimits are ground up, which means they are inclusive of the Underlying Limits as listed under ARTICLE II in the Schedule of Underlying Limits.

E.    This policy provides coverage in accordance with all of the terms of each section of the Reinsured's coverage attached  to and forming part of this policy. For Directors & Officers Liability, Employment Practices Liability, Employee Benefits Liability, Professional Liability, Medical Professional Liability, and Crime (per ARTICLE I) coverage is provided on a Claims Made Basis.  Claims Made coverage applies only to Claims Made against the Reinsured during the period of insurance or extended reporting periods and after the retroactive date, if applicable. All other coverage are on a Loss Occurring During basis.

F.    The Reinsured's applicable retroactive dates for Claim Made based coverage are disclosed in ARTICLE II - Retroactive Dates for Claims Made Coverages.

## ARTICLE IV - DEFINITIONS

The definition set forth below are in addition to the  definitions within the Reinsured's Coverage Memorandum. The following terms, whenever used in this Agreement have the meanings set forth herein, and are deemed to refer to the singular, plural, or otherwise inflected forms of such terms as the text requires:

A.    "Loss expenses"  means expenditures by the Reinsured within the terms of its coverage documents in the direct defense of claims and as allocated to an individual claim or loss (other than for office expenses and for the salaries and expenses of employees of the Reinsured and Reinsured's Third Party Administrator) made in connection with the disposition of a claim, loss, or legal proceeding including investigation, negotiation, and legal expenses; court costs; prejudgment interest, post judgment interest, declaratory action and other actions necessary to engage recovery from other parties.

B.    "Loss" means obligations to make payments to claimants under the Policies reinsured hereunder, including, without limitation, the amount of any settlement award or judgment the Reinsured has paid or has become liable to pay in connection with the Policies, including interest accrued prior to final judgment if included as part of the loss under the Policies. Loss does not include Loss Expenses, except to the extent so included under the Policies. All salvages, recoveries (other than inuring reinsurance recoveries) and subrogations actually received by the Reinsured (whenever received), and inuring reinsurance whether recovered or not, will be deducted from the amount of Loss. Nothing herein will be construed to mean that amounts due from the Reinsurer are not recoverable hereunder until the final amount of Loss has been ascertained. The date of Loss as defined in the Reinsured's Coverage Memorandum will apply with respect to any Loss reported under this Agreement.

For purposes of this definition, the Reinsured "becomes liable to pay" when (1) the Reinsured is subject to a judgment which it does not intend to appeal, or (2) the Reinsured obtains a release, or (3) the Reinsured has accepted a proof of loss.

Loss Expenses are considered solely _within_ the Reinsurers limits.

C.    "Policy" means any binder, slip, policy, or contract of insurance or reinsurance and amendments and endorsements thereto, issued, accepted or held covered provisionally or otherwise, by or on behalf of the Reinsured.

D.    "Loss Occurrence" is the same as the definition of occurrence or accident contained in the Policy or Policies reinsured hereunder.

E.    "Underlying Limits" means the proportion of  the  gross liability which remains after deducting from such gross liability, the amount, if any, of other reinsurance. The amount of the Reinsurers' liability hereunder with respect to any Loss or Losses will not be increased by the inability of the Reinsured to collect from any other reinsurers any amounts that may have become due from them, whether such inability arises from the insolvency of such reinsurers or otherwise.

F.    "Coverage Memorandum" means any binder, slip, policy, or contract of insurance or reinsurance and amendments and endorsements thereto, issued, accepted or held covered provisionally or otherwise, by or on behalf of the Reinsured.

G.    "Total Insured Values" means total insured values for the business reinsured hereunder in accordance with the Schedule on file with the Reinsurer.  As new members are added during the term of this Agreement the Schedule shall be updated and forwarded to the Reinsurer.

H.     "Reinsurance Limits of Insurance" means that amount specified in the schedule of Reinsurance Limits of Insurance under ARTICLE II which the Reinsurer is obligated to pay because loss or damage covered under any original Coverage Memorandum, after the Reinsured has paid, exceeds the scheduled Underlying Limits. This will not exceed the Reinsurer's Reinsurance Limits of Insurance as stated in the schedule of Reinsurance Limits of Insurance under ARTICLE II.  If an annual aggregate applies to any coverage hereunder, the total aggregate Reinsurance Limits of insurance for such coverage shall not exceed the limit as stated in the applicable schedule of Reinsurance Limits of Insurance under ARTICLE II.

I.    "Recovery" means all claims, suits or other causes of action that the Reinsured has against any person or entity resulting from a covered loss; any right of subrogation, whether the Reinsured's  or Reinsurers' resulting from a covered loss; and any rights that the Reinsured has to the monetary value of any damaged property, whether tangible or intangible, for which a claim for total loss or damage is made under the policy.

## <u>ARTICLE V - SPECIAL TERMINATION</u>

A.    The Reinsured may terminate this Contract upon the happening of any one of the following circumstances at any time by the giving of  fifteen (15) days prior written notice to the Reinsurer:

1.    The Reinsurer ceases active underwriting operations or a State Insurance Department or other legal authority orders the Reinsurer to cease writing business in all jurisdictions; or

2.    The Reinsurer has: a) become insolvent, b) been placed under supervision (voluntarily or involuntarily), c) been placed into liquidation or receivership, or d) had instituted against it proceedings for the appointment of a supervisor, receiver, liquidator, rehabilitator, conservator

or trustee in bankruptcy, or other agent known by whatever name, to take possession of its assets or control of its operations; or

3.   The Reinsurer's (a) policyholders' surplus ("PHS") has been reduced by whichever is greater, (i) fifty percent (50%) of the amount of PHS at the inception of this Contract or (ii) fifty percent (50%) of the amount of PHS stated in its last filed quarterly or annual statutory statement with its state of domicile; or (b) total adjusted capital is less than 200% of its authorized control level risk-based capital; or (c) AM Best's rating of Lloyd's of London becomes less than A-;

B.    In the event the Reinsured terminates this Agreement in accordance with the terms of this Article, the Reinsured shall with the notice of termination specify that termination will be on a run-off basis or a cut-off basis.  In the event that the Reinsured elects to cut-off and thus relieve the Reinsurer for losses occurring subsequent to the Reinsurer's specified termination date, the Reinsurer shall within fifteen (15) days of the termination date return the liability for the unearned portion of any ceded premium paid hereunder, calculated as of the termination date, and cash in that amount (less any applicable ceding commission allowed thereon) and the minimum premium provisions, if any, shall be waived.  If the Reinsured elects "run-off", the Reinsurer shall remain liable to the Reinsured under this Contract with respect to losses arising from policies placed into effect and ceded hereunder with effective dates (new or renewal policy period) prior to the termination date until those policies naturally expire, are cancelled or non-renewed or their next annual anniversary.

## ARTICLE VI - TERM AND CANCELLATION

A.    This Contract is effective from 12:01 a.m., Prevailing Local Time, November 1, 2017  to 12:01 a.m., Prevailing  Local Time, November 1, 2018, subject to the following:

1.    Except as set forth in Article V, this contract is not cancelable or terminable for any reason except upon no less than 90 days written notice sent by registered or certified mail to the Reinsured and the Commission; and

2.    This contract is automatically renewable at the expiration of the policy period specified in the Underlying Coverage Document except upon 90 days written notice by registered or certified mail to the Reinsured and the Commission.

B.    Should this Contract be cancelled, the Reinsurer shall remain liable as respects Policies in force at the date of cancellation until the next anniversary, expiration or renewal of each covered Policy.

C.    Reinsured shall have the option to waive the run-off provisions hereunder by notifying the Reinsurer on or before the date of cancellation. In such event, the Reinsurer shall not be liable for losses occurring subsequent to the date of cancellation and the Reinsurer shall return to the Reinsured premiums unearned hereunder less the ceding commission allowance provided for hereunder.

## ARTICLE VII - TERRITORY

The territorial scope of this Agreement will follow that of the Reinsured's Policies.

## ARTICLE VIII – ULTIMATE NET LOSS

Ultimate Net Loss means the total sum which the Reinsured is obligated to pay because of loss or damage covered under any Section of the Reinsured's policy, either through adjudication or compromise, after first making proper deductions for all subrogation, recovery(ies) and salvages.

Contract Number: PK1013818
Authority Ref. No:  B0356JA281N18
Ecclesia Assurance Company              - 10 -

Ultimate Net Loss also includes: premium on attachment, appeal or similar bonds (but without any obligation on the part of the Reinsurers to apply for or furnish such bonds); expenses of lawyers and private investigators and other persons for litigation, settlement, adjustment and investigation of suits which are paid as a consequence of any loss or damage covered hereunder.

Ultimate Net Loss does not include: fees paid to the Reinsured's third party claim administrator and any expenses incurred by the Reinsured or the Reinsured's  third party claim administrator in the administration, investigation or settlement of any claim for loss or damage; costs, fees and other expenses incurred by the Reinsured or the Reinsured's third party claim administrator to investigate, handle, evaluate, settle or defend any claim, occurrence, proceeding or suit by or against any Reinsured or against any person or organization for whom the Reinsured is or may be found to be legally liable unless specifically provided for in the policy or agreed to in advance by Reinsurers; payments, including salaries and expenses, to any employee or official of the Reinsured for services rendered in administering any claim; payment for any judgments or acts deemed uninsurable by law; or any sum which the Reinsured is obligated to pay because of loss or damage not covered under any Section of this policy.

The Reinsurers are liable only for the Ultimate Net Loss in excess of the applicable Underlying Limits, and not more than the Reinsurance Limit of Insurance. The Reinsurers duty to indemnify ends when the applicable Reinsurance Limit of Insurance is exhausted by the payment of the Ultimate Net Loss.

## ARTICLE IX – THIRD PARTY CLAIM ADMINISTRATOR & ATTORNEYS

It is a condition precedent of this policy that this policy of reinsurance is issued by the Reinsurers on the express condition that:

1. The Reinsured  undertakes, through a written third party claim administrator's agreement, to utilize the services of a duly qualified and competent third party claim administrator at all times in the adjustment of claims under this policy; and

2. All claims, suits or occurrences for which coverage is sought under this policy must be handled by the contracted third party claim administrator, unless otherwise specifically authorized by the Reinsurers; and

3. All claims, suits or occurrences for which coverage is sought under this policy are handled by the third party claims administrator in accordance with all statutory and regulatory standards; and in accordance with all accepted industry standards and practices.

In the event of cancellation, expiration or revision of the agreement between the Reinsured and the designated third party claim administrator, the Reinsured must notify Reinsurers 90 days prior to the effective date of such cancellation, expiration or revision, and the Reinsured and the Reinsurers must agree upon the specifications for the new third party claim administrator.

Further, It is a condition precedent of this policy that this policy of insurance is issued by the Reinsurers on the express condition that all claims, suits or occurrences, for which coverage is sought under this policy and which are being handled by an attorney or lawyer hired or employed by the Reinsured, are handled by the attorney or lawyer in accordance with all statutory and regulatory standards; and in accordance with all accepted professional standards and practices.

These conditions shall survive the termination of this policy without regard to whether said termination is due to cancellation or natural expiration of this policy.

## ARTICLE X - REINSURANCE PREMIUM AND CEDING COMMISSION

The Reinsurance Premium for policies covered under this agreement is $515,500 including premium for Terrorism.

This Policy is subject to a minimum earned premium. If this Policy is cancelled at your request, you agree with us:

1.    That the minimum earned premium for this Policy is the greater of $257,750 or 50% of the Total Annual Premium shown on the Declarations Page;
2.    That such minimum earned premium is not subject to short rate or pro-rata adjustments; and
3.    That cancellation for non-payment of premium, after the effective date of this Policy, will be deemed a request by your for cancellation of the Policy and will activate this minimum earned premium provision.

## ARTICLE XI - FOLLOW THE FORTUNES

The liability of the Reinsurer shall follow that of the Reinsured, and shall be subject in all respects to all the terms, conditions and limitations of the Reinsured's Policies / Coverage Memorandum, except for the limitations and exclusions of this Agreement.

## ARTICLE XII –ACCOUNTS, REPORTS AND REMITTANCES

A.    The accounts and balances in connection with Policies subject to this Contract shall be rendered and paid within 30 days of the effective date of this contract.

B.    The Reinsured shall provide the following on an underwriting year of account basis:

Quarterly:  An account current of new members within thirty (30) days after the end of each quarter with balances payable within thirty (30) days thereafter.

Quarterly: A claims report, within thirty (30) days after the end of each quarter, of open and closed claims in respect of losses covered hereunder from inception of this Agreement which shall contain the following information:

> Treaty Year of Loss
> Date of Loss
> Original Insured
> Claimant
> Incurred Amount – Ground Up
> Paid Amount – Ground Up
> Outstanding
> Reinsured's Share (Gross)
> Description of Loss

Annually:   Such data as the Reinsurer requires for its annual statement purposes.

## ARTICLE XIII - GOVERNING LAW

This Contract shall be governed by and construed according to the laws of the State of New York, exclusive of its rules with respect to conflicts of law.

## ARTICLE XIV - LOSS NOTICES AND SETTLEMENTS

A.    The Reinsured shall promptly advise the Reinsurer of any loss which results in the establishment of a reserve, or would reasonably require the establishment of a reserve, for damages which equals or exceeds 75% of the Reinsured's Underlying Limit.

B.    Involves a notice of Claim for a Wrongful Act which is reasonably likely to equal or exceeds 75% of the Reinsured's Underlying Limit.

C.    In addition to the foregoing, the following categories of claims shall be promptly reported in writing to the Reinsurer, including an assessment of the liability of the insured and coverage under the policy:

1.    Fatalities;
2.    Any injury to the spinal cord or vertebrate, including paraplegia, quadriplegia and partial paralysis;
3.    Any burn to 25% or more of the body;
4.    A brain or brain stem injury;
5.    Any amputation or loss of use of a major extremity or multiple minor extremities;
6.    Any serious head injury including skull fracture;
7.    Sexual harassment claims;
8.    Sensory Loss (such as sight, hearing, smell, touch or taste);
9.    Serious disfigurement or scarring;
10.    Extra Contractual Obligation or Excess Judgment Claims, if covered hereunder;
11.    Major organ injuries;
12.    Any Suit filed as a class action, whether any such class action or class is certified
13.    Multiple Fractures or serious disfigurement or scarring.

D.    Reinsurers shall have the right to be associated with the Reinsured in the investigation, handling, defense or settlement of any claims, suits or proceedings relative to an occurrence or claim where in the opinion of the Reinsurers, their liability under this Policy is likely to be involved; in which case the Reinsured and the Reinsurers shall co-operate to the mutual advantage of both.

E.    The Reinsured shall make no commitment to pay or settle any claims, occurrences or suits where Reinsurers' liability under this policy is involved without the prior consultation of Reinsurers; nor shall the Reinsured refuse any reasonable opportunity to pay or settle a claim that will result in Reinsurers having liability under this policy without the prior agreement of Reinsurers. Reinsurers shall not withhold agreement without just cause.

This clause does not limit the Reinsured's ability to settle any claims within their limit nor should it impede their defense strategy within their limit.

F.    It is understood and agreed that the Reinsurers have no duty to investigate, handle, adjust, settle or defend any claim, occurrence, proceeding or suit against the Reinsured, any member, or against any other person or organization for whom the Reinsured  is or may be found to be legally liable; or whom asserts or claims a right of coverage under the policy. these duties shall be the responsibility of the Reinsured.

G.    Reinsurers' duty under the policy shall be to indemnify the Reinsured  for Ultimate Net Loss in excess of the applicable Underlying Limits, any other applicable deductible or deduction; and not more than the Reinsurance Limit of Insurance.  The Reinsurers' duty to indemnify ends when the applicable Reinsurance Limit is exhausted by the payment, in whole or in part, of the Ultimate Net Loss.

Reinsurers may, at their sole discretion, tender periodic advance payments of amounts in excess of the Underlying Limits, before Ultimate Net Loss as defined in the policy is reached; provided that:

1.      Only amounts where coverage is not in dispute will be used to compute the partial Ultimate Net Loss; and

2.      Only payments made by the Reinsured and not disputed by Reinsurers will be used to compute the partial Ultimate Net Loss; and

3.      Any potential subrogation or recovery source has been identified; has been put on notice if appropriate; and recovery is being aggressively pursued; and

4.      Delaying payment until the final Ultimate Net Loss is determined will result in financial hardship to the Assured; and

5.      All payments are without prejudice.

6.      Further, and in regard to advance payments under property section; advance payments will be based upon Actual Cash Value for property that is not being actively repaired or replaced.

This condition shall survive the termination of this policy without regard to whether said termination is due to cancellation or natural expiration of this policy.

H.    The Reinsured has the obligation to investigate and, to the extent that may be required by the policies reinsured hereunder, defend any claim affecting this reinsurance and to pursue such claim to conclusion.

I.    It is understood that when so requested, the Reinsured will afford the Reinsurer an opportunity to be associated with the Reinsured, at the expense of the Reinsurer, in the adjustment, settlement or defense of any claim, suit or proceeding involving this reinsurance; and the Reinsured and the Reinsurer shall cooperate in every respect in the adjustment, settlement or defense of such claim, suit or proceeding.

J.    Nothing in this Article shall be construed as meaning that loss and loss adjustment expense are not recoverable hereunder until the final loss to the Reinsured has been ascertained.

## ARTICLE XV - OFFSET

The Reinsured and the Reinsurer shall have the right to offset any balance or amounts due from one party to the other under the terms of this Contract. The party asserting the right of offset may exercise such right any time whether the balances due are on account of premiums or losses or otherwise and immediately inform the Intermediary accordingly. In the event of the insolvency of any party, offset shall be as permitted by applicable law.

## ARTICLE XVI – RECOVERY & SUBROGATION

The Reinsurer will be credited with its share of subrogation in respect of Claims and settlements under this Agreement, less its share of recovery expense. Unless the Reinsured and Reinsurer agree to the contrary, the Reinsured will enforce its right to subrogation and will prosecute all claims arising out of such right. Should the Reinsured refuse or neglect to enforce this right, the Reinsurer is hereby empowered and authorized to institute appropriate action in the name of the Reinsured.

Amounts recovered from subrogation will always be used to reimburse the excess reinsurers (and the Reinsured, should it carry a portion of excess coverage net) before being used in any way to reimburse the Reinsured and the Reinsurer hereon, who will share pro rata in any remainder. If the amount recovered exceeds the recovery expense, such expense will be borne by each party in proportion to its

benefit from the recovery.  If the recovery expense exceeds the amount recovered, the amount recovered (if any) will be applied to the reimbursement of recovery expense and the remaining expense will be borne by each party in proportion to its liability for the loss before recovery was attempted.

## ARTICLE XVII - ERRORS AND OMISSIONS

Inadvertent delays, errors or omissions made in connection with this Contract shall not relieve either party from any liability which would have attached had such delay, error or omission not occurred, provided always that such delay, error or omission shall be rectified as soon as possible after discovery by the Reinsured's Home Office.

## ARTICLE XVIII -ENTIRE AGREEMENT/AMENDMENTS

This Agreement constitutes the entire agreement between the parties with respect to the Policies being reinsured hereunder and the obligations of the parties are determined solely by the terms of this Agreement.  This Agreement supersedes all prior agreements and understandings between the parties with respect to such subject matter.  Any change or modification to this Agreement will be made by written amendment to this Agreement and signed by the parties hereto.

## ARTICLE XIX -ACCESS TO RECORDS

The Reinsured shall place at the disposal of the Reinsurer at all reasonable times, and the Reinsurer shall have the right to inspect through its designated representatives, during the term of this Contract and thereafter, all books, records and papers of the Reinsured in connection with any reinsurance hereunder, or the subject matter hereof.

## ARTICLE XX - NOTICE

Whenever notice is required within this Agreement, such notice may be given by any of: certified mail, registered mail, electronic mail, fax, overnight express mail or any other means by which the issuing party shall be able to give such notice and depend upon reliable receipt. Notice shall be deemed to be given on the date any notice is sent by electronic mail; in all other instances, the date received by the receiving party.

## ARTICLE XXI - INSOLVENCY

A.    In the event of the insolvency and the appointment of a conservator, liquidator, or statutory successor of the Reinsured, the portion of any risk or obligation assumed by the Reinsurer shall be payable to the conservator, liquidator, or statutory successor on the basis of claims allowed against the insolvent Reinsured by any court of competent jurisdiction or any conservator, liquidator or statutory successor of the Reinsured having authority to allow such claims, without diminution because of that insolvency, or because such conservator, liquidator or statutory successor has failed to pay all or a portion of any claims.

B.    Payments by the Reinsurer as above set forth shall be made directly to the Reinsured or to its conservator, liquidator or statutory successor, except where the contract of insurance or reinsurance specifically provides another payee of such reinsurance or except as provided by applicable law or regulation in the event of the insolvency of the Reinsured. In the event of the insolvency of the Reinsured, the liquidator, receiver, conservator or statutory successor of the Reinsured shall give written notice to the Reinsurer of the pendency of a claim against the insolvent Reinsured on the policy or policies reinsured within a reasonable time after such claim is filed in the insolvency proceeding and during the pendency of such claim any Reinsurer may investigate such

claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated any defense or defenses which it may deem available to the Reinsured or its liquidator, receiver, conservator or statutory successor.  The expense thus incurred by the Reinsurer shall be chargeable subject to court approval against the insolvent Reinsured as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Reinsured solely as a result of the defense undertaken by the Reinsurer.

D.    Where two or more Reinsurers are involved in the same claim and a majority in interest elect to interpose defense to such claim, the expense shall be apportioned in accordance with the terms of this Contract as though such expense had been incurred by the Reinsured.

E.    The original insured or policyholder shall not have any rights against the Reinsurer which are not specifically set forth in this Contract, or in a specific agreement between the Reinsurer and the original insured or policyholder.

## ARTICLE XXII -ARBITRATION

A.    Any dispute arising out of or relating to the interpretation, performance or breach of this Agreement, as well as the formation and/or validity thereof, will be submitted for decision to a panel of three arbitrators.  Either party may request arbitration in writing sent to the other party (the respondent) by first class mail.

B.    One arbitrator shall be chosen by each party, and the two arbitrators shall, before instituting the hearing, choose an impartial third arbitrator who shall preside at the hearing.  If Reinsurer fails to appoint its arbitrator within thirty (30) days after being requested to do so by the Reinsured, the Reinsured may appoint the second arbitrator.

C.    If the two arbitrators are unable to agree upon the appointment of the third arbitrator within 30 days of their appointment, each arbitrator will nominate three candidates and notify the other arbitrator of those nominations. The arbitrator receiving such notice will reject two of the candidates so nominated. The third arbitrator will then be chosen from the remaining two candidates by a lot drawing procedure acceptable to the two arbitrators, and the chosen candidate will be appointed.

D.    All arbitrators will be disinterested active or former Officers or directors of insurance or reinsurance companies or Syndicates at Lloyd's having at least ten (10) years of insurance or reinsurance experience.

E.    Within 30 days after notice of appointment of all arbitrators the panel will meet and determine timely periods for briefs, discovery procedures and schedules for hearings.

F.    The panel will be relieved of all judicial formality and will not be bound by rules of procedure and evidence. Unless the panel agrees otherwise, arbitration will take place in the State of  New York but the venue may be changed when the panel deems such change to be in the best interest of the arbitration proceeding. In so far as the panel looks to substantive law, it will consider the law of the State of New York.

The decision of any two arbitrators when rendered in writing will be final and binding.  The panel is empowered to grant interim relief as it may deem appropriate.

G.    The panel will interpret this Agreement as an honorable engagement rather than merely as a legal obligation and will make its decision based upon the custom and practice of the insurance and reinsurance business within 45 days following the termination of the hearings. Judgment upon the award may be entered in any court having jurisdiction thereof.

H.    Each party will bear the costs of its own arbitrator and will bear, jointly and equally with the other party, the costs of the third arbitrator. The panel will allocate the remaining costs of the arbitration.

The panel may, at its discretion, award such further costs, interest and expenses as it considers appropriate, including without limitation, attorneys' fees.

I.      The provisions of this Article shall survive the termination of this Agreement.

## ARTICLE XXIII - CURRENCY

A.      Whenever the word "Dollars" or the "$" sign appears in this Contract, it shall be construed to mean United States Dollars and all transactions under this Contract shall be in United States Dollars.

B.      Amounts paid or received by the Reinsured in any other currency shall be converted to United States Dollars at the rate of exchange at the date such transaction is entered on the books of the Reinsured.

## ARTICLE XXIV - SEVERABILITY

The invalidity or unenforceability of any terms or provision in this Agreement shall not affect the validity or enforceability of any other term or provision of the Agreement.

## ARTICLE XXV - NO THIRD PARTY

This Contract is solely between the Reinsured and the Reinsurer, and in no instance shall any insured, claimant or other third party have any rights under this Contract.

**IN WITNESS WHEREOF**, the parties hereto have caused this Excess of Loss Reinsurance Agreement to be executed by their duly authorized representatives.

<u>**ECCLESIA ASSURANCE COMPANY**</u>

Signature: _____        Title: _____

Attest: _____        Date: _____

<u>**BRIT GLOBAL SPECIALTY USA**</u>

Signature: _____        Title:  Assistant Vice President

Attest:  Andy Vuong_____        Date:  December 06, 2018_____

Contract Number: PK1013818
Authority Ref. No:  B0356JA281N18
Ecclesia Assurance Company        - 17 -

## EXHIBIT A:

**CLASH AND EXCESS AGGREGATE PROTECTION REINSURANCE COVERAGE**

A.    **CLASH COVERAGE**: in the event of a covered loss involving more than one section of coverage under ARTICLE II, Reinsurers will indemnify the Reinsured for the sum of all the reinsurance limits applicable to each coverage section involved in the loss plus the sum of all the Reinsured's Underlying Limits applicable to each section of coverage involved in the loss, but less largest Underlying Limits applicable to any section of coverage involved in the loss.

**MAXIMUM TOTAL OF CLASH COVERAGE AVAILABLE**: Maximum total of all reinsurance limits under ARTICLE II combined <u>plus</u> the difference between the sum of all the Underlying Limits applicable to each coverage and the largest Underlying Limits applicable to any section of coverage:

**MAXIMUM TOTAL:**                                    <u>NOT COVERED</u>

It is understood and agreed that clash coverage is excluded under this agreement.

## EXHIBIT B:

## DROP DOWN COVERAGE PROVISIONS

If the applicable 'Annual Aggregate' for the **UNDERLYING INSURANCE** is reduced or exhausted by claim payments of amounts covered by this policy, the applicable Reinsurance Limits of Insurance of this policy will apply in excess of the Self Insured Retention of such reduced or exhausted **UNDERLYING INSURANCE**. Reinsurers' liability ends when the applicable 'Annual Aggregate' of Reinsurance Limits of Insurance has been reduced or exhausted by payments to the Reinsured.

Reinsurers shall not pay amounts in excess of any **SUBLIMIT** applicable to the **UNDERLYING INSURANCE**, but will recognize the depletion of any 'Annual Aggregate' of the **UNDERLYING INSURANCE** by payments under any such **SUBLIMIT** to which this insurance applies.

Coverage under this provision will be determined using this policy coverage, terms and conditions. Retroactive dates shall be concurrent to what is provided by this policy.

**SCHEDULE OF UNDERLYING INSURANCE**:

| | |
|---|---|
| Underlying Insurer: | Ecclesia Assurance Company |
| Policy Numbers: | PKG-2018-1 / PKG-2018-2 / PKG-2017-3 |
| Policy Period Coverage: | 11/1/2018-11/1/2019 |

**Limit of Insurance / Annual Aggregate Limit:**

General Liability  -
Bodily Injury, Property Damage
And Personal and Advertising
Injury                            **$750,000 (un-aggregated)  excess of $250,000 Self Insured Retention**

Business Auto - Bodily Injury
and Property Damage -             **$750,000 (un-aggregated) excess of $250,000 Self Insured Retention**

Directors & Officers Liability,
Employment Practices Liability,
Employee Benefits Liability,
and Professional Liability -      **$750,000 / $750,000 in the aggregate excess of $250,000 Self Insured Retention**

Medical Professional Liability -   **$750,000 / $750,000 in the aggregate excess of $250,000 Self Insured Retention**

Crime – Employee Theft            **$250,000 (un-aggregated) excess of $250,000 Self Insured Retention**

Crime – Investigation Expenses    **$250,000 (un-aggregated) excess of $250,000 Self Insured Retention**

Claims Made Retroactive dates:    **September 1, 1996**

Annual Aggregates are based on a 12 month policy period.

Contract Number: PK1013818
Authority Ref. No:  B0356JA281N18
Ecclesia Assurance Company              - 19 -

Notice: This provision shall not respond, if the "underlying insurance" is cancelled or is not available due to the bankruptcy or solvency issues of the underlying insurer.

## DEFINITIONS

1.  **SUBLIMIT** means any 'Limit of Insurance' of the **UNDERLYING INSURANCE** which:

    a.  Applies only to a particular grant of coverage under such **UNDERLYING INSURANCE**; and
    b.  Reduces and is part of and less than the otherwise applicable limits of insurance of such **UNDERLYING INSURANCE** set forth in the Declarations.

2.  **UNDERLYING INSURANCE** means the policy or policies of insurance described or listed on the **SCHEDULE OF UNDERLYING INSURANCE** (above) in Exhibit B Drop Down Coverage Provisions of this policy.

## EXHIBIT C:

## REINSURANCE EXCLUSIONS

A.    **War Exclusion:** Any loss or damage, either directly or indirectly occasioned by, happening through, or in consequence of:  war (including undeclared or civil war), warlike action by a military force (including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents), insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority, This Exclusion shall not apply to the Reinsured's Original Coverage Memorandum which contains a standard war exclusion.

B.    **Lead and Asbestos Exclusion:** loss of, damage to, or loss of use of property of the Reinsured, bodily injury, personal injury or property damage, directly or indirectly caused by the presence of asbestos or lead in any form.

C.    **Financial Guarantee Exclusion:** Any claim based upon or attributable to any Member or the Reinsured gaining in fact any personal profit or advantage to which they were not legally entitled including remuneration paid in violation of law as determined by the Courts; except as covered in Crime and or Fiduciary Liability coverage sections.

D.    **Coverage Memorandum Exclusions:** Coverage excluded per the exclusions in the Reinsured's original Coverage Memorandum.

E.    **Uninsured/Underinsured Motorists Exclusions:** Uninsured/Underinsured Motorists coverage as provided under Business Auto Section is excluded by this Reinsurance Agreement.

F.    **Sexual Abuse Liability Exclusion:** Any claim, including defense of the same, arising directly or indirectly from any actual or alleged Sexual Abuse Liability (as defined under F SA 00 18 09 07 and E MS 02 02 09 07, Endorsement 12) Sexual Abuse Liability Coverage Form of the Reinsured's policy) of any person by any person, or anyone to whom the Reinsured is obligated by virtue of a written contract or agreement is excluded by this Reinsurance Agreement.

**EXHIBIT D:**

**U.S. TERRORISM LIABILITY**

This Reinsurance agreement coverage is extended to include U.S. Terrorism Liability coverage -

**THIS IS A CLAIMS MADE AND REPORTED POLICY. THIS MEANS THAT, SUBJECT TO THE TERMS AND CONDITIONS OF THIS POLICY, THE COVERAGE PROVIDED BY THIS POLICY ONLY COVERS CLAIMS FIRST MADE AGAINST THE REINSURED OR A CIRCUMSTANCE WHICH COULD REASONABLY BE EXPECTED TO GIVE RISE TO A CLAIM DURING THE PERIOD OF INSURANCE AND REPORTED TO REINSURERS IN WRITING AS SOON AS REASONABLY POSSIBLE AND IN NO EVENT LONGER THAN 90 DAYS AFTER THE EXPIRY OF THIS POLICY. CLAIMS EXPENSES THAT ARE INCURRED IN DEFENDING ANY CLAIM AGAINST THE ASSURED WILL REDUCE, AND MAY COMPLETELY EXHAUST, THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES.    PLEASE REVIEW THE COVERAGE PROVIDED BY THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

A.   **COVERAGE:**  Reinsurers agree, subject to the policy limitations, terms and conditions to indemnify the Reinsured for any damages and **CLAIMS EXPENSES** which the Reinsured shall become legally liable to pay because of any **CLAIM** or **CLAIMS** for **BODILY INJURY** and/or **PROPERTY DAMAGE**, first made against the Reinsured during the **PERIOD OF INSURANCE** and reported to Reinsurers in writing no later than 90 days after the expiry of this policy, caused by an **ACT OF TERRORISM** and/or **SABOTAGE** occurring during the **PERIOD OF INSURANCE.** This cover is subject to the terms, conditions and exclusions stated in this policy.

Multiple **ACTS OF TERRORISM** and/or **SABOTAGE** which occur within a period of 72 consecutive hours and which have or appear to have a related purpose or common leadership will be deemed to be one **ACT OF TERRORISM** and/or **SABOTAGE**.

All **CLAIMS** arising out of the same or a continuing **ACT OF TERRORISM** and/or **SABOTAGE**, including **ACTS OF TERRORISM** and/or **SABOTAGE** which have or appear to have a related purpose or common leadership, within a period of 72 hours shall be considered a single **CLAIM** and deemed to have been made at the time the first of such **CLAIMS** is reported to Reinsurers and shall be subject to a single Reinsurance Limit.

B.   **REINSURANCE LIMIT:** Coverage herein is limited to $14,000,000 per **CLAIM** excess of a $1,000,000  Underlying Limit.

C.   **CONDITIONS:**

1.   **DUE DILIGENCE:** The Reinsured (or any of the Reinsured's agents, sub or co-contractors) must use due diligence and do (and concur in doing and permit to be done) everything reasonably practicable to avoid or diminish further injury or damage and to secure compensation for any such loss including action against other parties to enforce any rights and remedies or to obtain relief or indemnity.

2.   **CHANGE IN CIRCUMSTANCE:** The Reinsured must notify the Reinsurers immediately of any change in circumstance during the **PERIOD OF INSURANCE** which will materially affect this insurance. This includes but is not limited to any significant change in operating conditions, the management, ownership or control of the Reinsured s business. The Reinsurers may then vary the terms and conditions of this insurance.  If the Reinsured is in any doubt whether a change is material he should consult his broker or agent.

3.   **CONFIDENTIALITY:** This insurance shall become void and all **CLAIMS** hereunder shall be forfeited if at any time, whether before or after expiry, the existence of this insurance is

disclosed to a third party, other than to the Reinsured 's own professional, financial and legal advisers (on a confidential basis), without the Reinsurers' prior written agreement.

4. **NOTIFICATION OF CLAIMS:** The Reinsured**,** upon knowledge of any occurrence likely to give rise to a claim hereunder, shall give written advice thereof to the Reinsurers via the Broker, named for that purpose in the Schedule, who is to advise Reinsurers as soon as practicable of such knowledge of any occurrence.

5. **PROOF OF LOSS:** The Reinsured shall render a signed and sworn proof of loss within sixty (60) days after the occurrence of a loss (unless such period be extended by the written agreement of Reinsurers) stating the time, place and cause of loss, the interest of the **ASSURED** and all others in the property, the sound value thereof and the amount of loss or damage thereto.

   If Reinsurers have not received such proof of loss within two years of the expiry date of this policy, they shall be discharged from all liability hereunder unless an extension has been specifically filed with Reinsurers.

6. **SUBROGATION:** If the Reinsurers become liable for any payment under this Policy in respect of loss or damage the Reinsurers shall be subrogated, to the extent of such payment, to all the rights and remedies of the Reinsured against any party in respect of such loss or damage and shall be entitled at their own expense to sue in the name of the Reinsured.  The Reinsured shall give to the Reinsurers all such assistance in his power as the Reinsurers may require to secure their rights and remedies and, at Reinsurers' request shall execute all documents necessary to enable Reinsurers effectively to bring suit in the name of the Reinsured including the execution and delivery of the customary form
   of loan receipt.

7. **FALSE OR FRAUDULENT CLAIMS:** If the Reinsured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

8. **INSPECTION AND AUDIT:** The Reinsurers shall be permitted but not obligated to inspect the Reinsured Property at any time. Neither the Reinsurers' right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Reinsured or others, to determine or warrant that such property is safe.

   The Reinsurers may examine and audit the Reinsured's books and records at any time during the Policy period and extensions thereof and within two years after the final termination of this Policy, as far as they relate to the subject matter of this Insurance.

9. **ASSIGNMENT:** Assignment or transfer of this Policy shall not be valid except with the written consent of Reinsurers.

10. **JOINT VENTURES:** With regard to any liability of the Reinsured which is Reinsured under this policy and arises in any manner out of the operations or existence of any **JOINT VENTURE** the limit of liability under this policy shall be limited to the percentage interest of the Reinsured in the **JOINT VENTURE**. Where the percentage interest of the Reinsured in a **JOINT VENTURE** is not evidenced in writing, the percentage to be applied shall be that which would be imposed by law at the inception of the **JOINT VENTURE**. Such percentage shall not be increased by the insolvency of any members of such **JOINT VENTURE** or any other parties. This **JOINT VENTURE** clause shall not apply to any liability of the Reinsured where, as a result of a **CLAIM**, the terms of the **JOINT VENTURE** agreement place the whole liability of the **JOINT VENTURE** on the Reinsured.

11. **ARBITRATION:** If the Reinsured and Reinsurers fail to agree in whole or in part regarding any aspect of this Policy, each party shall, within ten (10) days after the demand in writing by either party, appoint a competent and disinterested arbitrator and the two chosen shall before commencing the arbitration select a competent and disinterested umpire. The arbitrators together shall determine such matters in which the Reinsured and Reinsurers shall so fail to agree and shall make an award thereon, and if they fail to agree, they will submit their differences to the umpire and the award in writing of any two, duly verified, shall determine the same. The parties to such arbitration shall pay the arbitrators respectively appointed by them and bear equally the expenses of the arbitration and the charges of the umpire.

12. **SEVERAL LIABILITY:** The subscribing Insurers' obligations under policies to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing Insurers are not responsible for the subscription of any co-subscribing Insurer who for any reason does not satisfy all or part of its obligations.

13. **JOINT ASSUREDS:** The Reinsurers' total liability for any loss or losses sustained by any one or more of the Reinsured under this insurance will not exceed the limit of liability shown in the schedule. The Reinsurers shall have no liability in excess of the limit of liability whether such amounts consist of Reinsured losses sustained by all of the Reinsureds or any one or more of the Reinsureds.

14. **INTERPRETATION OF TERMS:** To the extent that any court of competent jurisdiction should determine that any term or provision of this policy would be in conflict with the public policy the said term or provision is to be interpreted and/or amended so as to conform to the said jurisdiction's public policy.

## D. EXCLUSIONS:

This policy does not apply to any actual or alleged loss, liability, injury, **CLAIM EXPENSES**, cost and expense arising directly or indirectly:-

1. from or as a result of nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination, however such nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination may have been caused;

2. from or as a result of war, invasion or warlike operations (whether war be declared or not), hostile acts of sovereign or government entities, civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power or martial law or confiscation by order of any Government or public authority;

3. from or as a result of seizure or illegal occupation unless caused directly by an insured **ACT OF TERRORISM** and/or **SABOTAGE**;

4. from or as a result of confiscation, requisition, detention, legal occupation, embargo, quarantine, or any result of any order of public or government authority which deprives the **ASSURED** of the use or value of its property, nor for loss or damage arising from acts of contraband or illegal transportation or illegal trade;

5. from or as a result of the discharge of pollutants or contaminants, which pollutants and contaminants shall include but not be limited to any solid, liquid, gaseous or thermal irritant, contaminant of toxic or hazardous substance or any substance the presence, existence or release of which endangers or threatens to endanger the health, safety or welfare of persons or the environment or loss, injury or damage directly or indirectly arising from chemical or biological release or exposure of any kind;

6. from or as a result of attacks using electronic means including computer hacking or the introduction of any form of computer virus;

Contract Number: PK1013818
Authority Ref. No:  B0356JA281N18

7. from or as a result of vandals or other persons acting maliciously or by way of protest or strikes, riots or civil commotion unless caused directly by an insured **ACT OF TERRORISM** and/or **SABOTAGE**;

8. from or as a result of consequential loss, delay or loss of markets, failure to supply goods or services, or failure to perform however caused or arising, and despite any preceding loss insured hereunder;

9. from or as a result of cessation, fluctuation or variation in, or insufficiency of, water, gas or electricity supplies, telecommunications or service of any type;

10. from or as a result of threat or hoax;

11. from or as a result of **BODILY INJURY** to employees or contract workers of the **ASSURED** or arising under any workers' compensation, unemployment compensation or disability laws, statutes, or regulation;

12. from or as a result of **BODILY INJURY** or **PROPERTY DAMAGE** arising out of discrimination or humiliation;

13. from or as a result of property:

    (a) owned, leased, rented or occupied by the Reinsured; or

    (b) in the care, custody or control of the Reinsured;

14. from or as a result of fines, penalties, punitive damages, exemplary damages, or any additional damages resulting from the multiplication of compensatory damages;

15. from or as a result of mental injury, anguish or shock where no **BODILY INJURY** has occurred to the claimant;

16. from or as a result of **BODILY INJURY** and/or **PROPERTY DAMAGE** directly or indirectly relating to the actual, alleged or threatened presence of asbestos in any form;

17. from or as a result of any claims or circumstances disclosed on the Application for this insurance;

18. from or as a result of any design, manufacture, assembly, sale trade, distribution or promotion of any product; and

19. from or as a result of the rendering of or failure to render professional services.

Nothing contained in the above exclusions shall extend this policy to cover any liability which would not have been covered had these exclusions not been incorporated herein.

## E. DEFINITIONS:

1. **ACT OF TERRORISM** means an act, including the use of force or violence, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public in fear for such purposes.

2. **ACT OF SABOTAGE** means an act or series of acts of deliberate damage or destruction of property by secret means committed for subversive, political, religious or ideological purposes

including the intention to influence any government and/or to put the public in fear for such purposes.

3. **BODILY INJURY** means physical injury (including death) to any person, and any mental anguish or shock, sickness, disease, disability or death associated with or arising from such physical injury.

4. **CLAIM EXPENSES** means investigation, adjustment, appraisal, defense and appeal costs and expenses and pre and post judgment interest, paid or incurred by or on behalf of the Reinsured. The salaries, expenses or administrative costs of the Reinsured or its employees or any insurer shall not be included within the meaning of **CLAIM EXPENSES**.

5. **JOINT VENTURE** means a joint venture, co-venture, joint lease, joint operating agreement or partnership in which the Reinsured has a financial interest.

6. **OCCURRENCE** means any one loss and/or series of losses arising out of and directly occasioned by one **ACT** or series of related **ACTS OF TERRORISM** and/or **SABOTAGE** for the same purpose or cause. The duration and extent of any one **OCCURRENCE** shall be limited to all losses directly occasioned by one **ACT** or series of **ACTS OF TERRORISM** and/or **SABOTAGE** arising out of the same purpose or cause during any period of 72 consecutive hours commencing at the time of the first such act and within a radius of ten (10) miles of the location of the first such **ACT OF TERRORISM** and/or **SABOTAGE**.

   However for the purposes of this policy no period of 72 consecutive hours shall commence prior to the attachment of this policy.

7. **PERIOD OF INSURANCE** means the length of time that the policy is in force as stated in the Declaration Page as the Effective Date and Expiration Date.

8. **PROPERTY DAMAGE** means direct damage to or destruction or loss of property, including all resulting loss of use of property, excluding, however, damage to the property of the Reinsured.



**SUMMARY:**

| | |
|---|---|
| **Binder** | **[X]** : PK1013818 |

**Insured name and address:**
Ecclesia Assurance Company
50 North Park Avenue
Rockville Centre, New York 11570-4184

**Policy Period:** November 1, 2018 to November 1, 2019 both days at 12:01 a.m. local standard time.

**Capacity:** Certain Underwriters at Lloyd's (Brit Syndicate 2987 - 100%)

**Coverage:**
ALL RISKS OF GENERAL LIABILITY, BUSINESS AUTO, DIRECTORS & OFFICERS LIABILITY, EMPLOYMENT PRACTICES LIABILITY, PROFESSIONAL LIABILITY, EMPLOYEE BENEFITS LIABILITY, MEDICAL PROFESSIONAL LIABILITY, CRIME and as more fully defined below and in the Reinsurance Agreement of the "**Porter & Curtis, LLC Wording**" (hereinafter referred to as "Wording" or "Policy") which is understood to be incorporated in and form part of this Quotation or Binder.

**Form and special conditions:**
The coverage is subject to all terms and conditions set forth in the Policy which includes, but is not limited to, all Forms and Endorsements (hereinafter "Endorsements") identified on the Schedule of Forms and Endorsements listed below.

Territorial Limits: Worldwide as more fully defined in the Wording and applicable Forms and Endorsements.
Law: State of New York
Jurisdiction: United States of America – New York
Limits of Liability: Underwriters' Limits of Liability shall not exceed the limits as indicated for each coverage in the Wording and applicable Endorsements and shall apply only to those coverages for which a limit is shown. Underwriters' Limits of Liability are excess over a self-insured retention loss fund (if applicable) as specified in the Policy and applicable Endorsements.

**Service of Suit:**
Corporation Service Company 80 State Street, Albany, NY 12207-2543

**Currency Clause:**
All premiums, limits, deductibles, **CLAIMS**, and other amounts under this Policy are expressed and payable in United States Dollars (USD). The dollar symbol ($) used within this policy represents United States Dollars (USD).

**Premium:**
| | |
|---|---|
| Premium | $510,000 |
| Terrorism: | $5,500 |
| Total Premium: | $515,500 |

**Stop Loss:**
| | |
|---|---|
| Stop Loss Retention: | NOT APPLICABLE |
| Stop Loss Limit: | NOT COVERED  (Annual Aggregate) |

**Broker:**
| | |
|---|---|
| Please direct all Enquiries / Correspondence to: | Porter & Curtis, LLC |
| Account Handler: | Kenneth F. Porter |
| Contact Details: | 610.891.9856   KPorter@PorterCurtis.com |



**SCHEDULE OF RETENTIONS**

This policy has the following **underlying RETENTIONS** which apply to a covered loss for each **OCCURRENCE** or **CLAIM** under:

| COVERAGE SECTION | RETENTIONS |
|---|---|
| I. **GENERAL LIABILITY**: | **$1,000,000** |
| II. **BUSINESS AUTO:** | **$1,000,000** |

**COVERAGE SECTIONS III, IV, V, VI:**

> **SECTION III DIRECTORS & OFFICERS LIABILITY**
>
> **SECTION IV EMPLOYMENT PRACTICES LIABILITY**
>
> **SECTION V EMPLOYEE BENEFITS LIABILITY**
>
> **SECTION VI PROFESSIONAL LIABILITY**          **$1,000,000**

| | | |
|---|---|---|
| VI. | **MEDICAL PROFESSIONAL LIABILITY:** | **$1,000,000** |
| VIII. | **CRIME:** | |
| | **Crime - Employee Theft:** | **$250,000** |
| | **Crime – Investigation Expenses:** | **$250,000** |

The **SCHEDULE OF RETENTIONS** is made up of following underlying policies:

Underlying Insurer:      Ecclesia Assurance Company
Policy Numbers:          PKG-2018-1, PKG-2018-2, PKG-2018-3
Policy Period Coverage:  11/1/2018 – 11/1/2019

**Limit of Insurance / Annual Aggregate Limit:**

General Liability -
Bodily Injury, Property
Damage and Personal
and Advertising Injury          $750,000 (un-aggregated) excess of $250,000 Self Insured Retention

Business Auto - Bodily Injury
and Property Damage -          $750,000 (un-aggregated) excess of $250,000 Self Insured Retention

Directors & Officers Liability,
Employment Practices Liability,
Employee Benefits Liability,
and Professional Liability -          $750,000 / $750,000 in the aggregate excess of $250,000 Self Insured Retention

Medical Professional Liability -          $750,000 / $750,000 in the aggregate excess of $250,000 Self Insured Retention

Crime –
Employee Theft          $250,000 (un-aggregated) excess of $250,000 Self Insured Retention

Crime –
Investigation Expenses          $250,000 (un-aggregated) excess of $250,000 Self Insured Retention



**Claims Made Retroactive dates: September 1, 1996.**


**PART I A.  SPECIFIC EXCESS INSURANCE**

1.   This policy contains various **RETENTIONS** as listed in the **SCHEDULE OF RETENTIONS** of this policy.  The **INSURED** is responsible for payment of each applicable **RETENTION**.

2.   This policy contains various **LIMITS OF INSURANCE** above the **RETENTIONS** as listed in **PART I A. SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

3.   This policy contains various Annual Aggregate **LIMITS OF INSURANCE** as listed in **PART I A. SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.   Underwriters' liability ends when the applicable Annual Aggregate **LIMIT OF INSURANCE** has been exhausted by payments to the **INSURED**.

4.   This policy may contain various sublimits as listed in **PART I A. SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** which are less than the applicable **LIMIT OF INSURANCE**. Where indicated, these sublimits are ground up, which means they are inclusive of the **RETENTIONS** as listed in **PART I A. SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

5.   This policy provides coverage in accordance with all of the terms of each Section of Coverage attached to and forming part of this policy.  For **SECTION III DIRECTORS & OFFICERS LIABILITY,** SECTION **IV EMPLOYMENT PRACTICES LIABILITY, SECTION V EMPLOYEE BENEFITS LIABILITY, SECTION VI PROFESSIONAL LIABILITY** and **SECTION VII MEDICAL PROFESSIONAL LIABILITY** coverage is provided on a Claims Made basis.  Claims Made coverage applies only to claims made against the **INSURED** during the **PERIOD OF INSURANCE** or Extended Reporting Periods, if applicable.  Please read carefully.


**PART I A.  SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**

This policy provides coverage in accordance with all of the terms of each section of the Reinsured's policy (Policy Number EX-LIAB-2018-1).

**THE FOLLOWING APPLIES WHEN ONLY ONE COVERAGE SECTION APPLIES TO A COVERED LOSS:**

**COVERAGE SECTION I GENERAL LIABILITY – LIMIT OF INSURANCE FOR EACH OCCURRENCE:**

| | | |
|---|---|---|
| All Coverages under Section I combined: | <u>$14,000,000</u> | <u>$N/A</u>  Annual Aggregate |
| Subject to the following sublimit: | | |
| Premises Medical Payments: | <u>NOT COVERED</u> | ground up any one person |
| | <u>NOT COVERED</u> | ground up any one **OCCURRENCE** |

**COVERAGE SECTION II BUSINESS AUTO – LIMIT OF INSURANCE FOR EACH OCCURRENCE:**

| | | |
|---|---|---|
| All Coverages under Section II combined: | <u>$14,000,000</u> | <u>NOT APPLICABLE</u>  Annual Aggregate |
| Subject to the following sublimits: | | |
| Automobile Medical Payments: | <u>NOT COVERED</u> | ground up any one person |
| | <u>NOT COVERED</u> | ground up any one **OCCURRENCE** |
| Uninsured Motorists / Underinsured Motorists: | <u>NOT COVERED</u> | ground up any one **OCCURRENCE** |
| No Fault Insurance: | <u>NOT COVERED</u> | ground up any one **OCCURRENCE** |

**BRIT**
GLOBAL SPECIALTY
USA

**COVERAGE SECTIONS III, IV, V, VI:**

      **SECTION III DIRECTORS & OFFICERS LIABILITY**

      **SECTION IV EMPLOYMENT PRACTICES LIABILITY**

      **SECTION V EMPLOYEE BENEFITS LIABILITY**

      **SECTION VI PROFESSIONAL LIABILITY**

**LIMIT OF INSURANCE FOR EACH CLAIM:**

| | | | |
|---|---|---|---|
| All Coverages under Sections III, IV, V, VI combined: | $14,000,000 | $14,000,000 | Annual Aggregate |
| Retroactive Date: **September 1, 1996** | | | |

**COVERAGE SECTION VII MEDICAL PROFESSIONAL LIABILITY – EXCESS LIMIT OF INSURANCE FOR EACH CLAIM:**

| | | | |
|---|---|---|---|
| All Coverages under Section VII combined: | $14,000,000 | $14,000,000 | Annual Aggregate |
| Retroactive Date: **September 1, 1996** | | | |

**COVERAGE SECTION VIII CRIME COVERAGE – EXCESS LIMIT OF INSURANCE FOR EACH OCCURRENCE:**

| | | | |
|---|---|---|---|
| Crime – Employee Theft: | $250,000 | $N/A | Annual Aggregate |
| Crime – Investigation Expenses: | $250,000 | $N/A | Annual Aggregate |

**PART I B.  SCHEDULE OF CLASH PROTECTION**

**THE FOLLOWING APPLIES WHEN TWO (2) OR MORE SECTIONS OF COVERAGE APPLY TO A COVERED LOSS:**

Sections of Coverage applicable to a covered loss combined:

| | | |
|---|---|---|
| I. | **GENERAL LIABILITY:** | **NOT COVERED** |
| II. | **BUSINESS AUTO:** | **NOT COVERED** |
| III. | **DIRECTORS & OFFICERS LIABILITY:** | **NOT COVERED** |
| IV. | **EMPLOYMENT PRACTICES LIABILITY:** | **NOT COVERED** |
| V. | **EMPLOYEE BENEFITS LIABILITY:** | **NOT COVERED** |
| VI. | **PROFESSIONAL LIABILITY:** | **NOT COVERED** |
| VII. | **MEDICAL PROFESSIONAL LIABILITY:** | **NOT COVERED** |
| VIII. | **CRIME:** | **NOT COVERED** |
| | **EXCESS LIMIT OF INSURANCE:** | **NOT APPLICABLE** |

Maximum total of all **EXCESS LIMITS OF INSURANCE** Coverages combined plus the difference between the sum of all the **RETENTIONS** applicable to each Section of Coverage and the largest **RETENTION** applicable to any Section of Coverage:

      **MAXIMUM TOTAL:**                **NOT APPLICABLE**

**BRIT**
GLOBAL SPECIALTY
USA

**SCHEDULE OF FORMS AND ENDORSEMENTS** attaching to Policy No: **PK1013818**

The following Forms and Endorsements form part of the terms and conditions of the Policy:

"Porter & Curtis, LLC Wording"
Exhibit A – CLASH AND EXCESS AGGREGATE PROTECTION REINSURANCE COVERAGE
Exhibit B – DROP DOWN COVERAGE PROVISIONS
Exhibit C – REINSURANCE EXCLUSIONS
Exhibit D – TERRORISM LIABILITY

Underwriter:

Brit Global Specialty USA

October 31, 2018.This Binder is valid until Policy issuance.

**TERMS & CONDITIONS**

Binder based on the Follow Form Reinsurance Agreement of the "Porter & Curtis, LLC Wording".

Network Adjusters the appointed Third Party Administrator.

Notice: This is Defense Expense within Limits Insurance. Defense Expenses shall reduce, and may exhaust, the limits of insurance.

Clash Protection is excluded.

Claims Made Retroactive Dates: September 1, 1996

Mold will be excluded.

**Directors & Officers, Employment Practices, Employee Benefits, Professional liability will be subject to a combined annual aggregate of $14m. A separate annual aggregate for Medical Professional Liability of $14m will apply.**

Stop Loss Retention Insurance is not provided by this policy.

An absolute Sexual Abuse/Sexual Misconduct exclusion is to apply.

Uninsured/Underinsured Motorist is excluded.

**TRIA is not applicable. Terrorism coverage is offered per Exhibit D Terrorism Liability Form at $14m xs $1m limits with no annual aggregate.**

**All producers and brokers placing business for an entity that is self-insuring for limits that meet or exceed a state's financial responsibility requirements shall not issue Automobile ID cards showing any policy information from this policy. That entity should contact their Department of Motor Vehicles for guidance on handling the proof of insurance requirements.**

If this document is a quotation, and Underwriters receive any new information after this document is issued that reflects any material change in the underwriting exposure, we may at our option withdraw or modify the quotation at any time prior to Underwriters' acceptance of the binder.  In the event of a material change, Underwriters may at their sole discretion, modify and/or withdraw this quotation even if the quotation has already been accepted by the Assured.

This document does not amend, extend or alter the coverage afforded by the Wording and Endorsements.   For further information or a complete copy of the Wording and Endorsements please contact the broker (contact details on page 1).

Cancellation – At binding, the Assured commits to a Minimum Earned Premium of 50% of the gross premium.  There are no flat cancellations allowed.

**Brit Global Specialty USA**
A member of Brit Global Specialty

**B R I T**
GLOBAL SPECIALTY
USA

**Endorsement No. 13 – Drop Down Provision**

*If the applicable Limit of Insurance of the "underlying insurance" is reduced or exhausted by claim payments of amounts covered by this policy, the applicable Limits of Insurance of this policy will apply in excess of such reduced or exhausted limits. We shall not pay amounts in excess of any "sublimit" applicable to the "underlying insurance", but will recognize the depletion of any Limit of Insurance of the "underlying insurance" by payments under any such "sublimit" to which this insurance applies.*

*"Sublimit" means any Limit of Insurance of the "underlying insurance" which:*

*1. Applies only to a particular grant of coverage under such "underlying insurance"; and*
*2. Reduces and is part of and less than the otherwise applicable limits of insurance of such "underlying insurance" set forth in the Declarations.*

*"Underlying insurance" means the policy or policies of insurance described or listed on the Schedule of Underlying Insurance (below) in Exhibit B: Drop Down Coverage Provisions of this policy, including any self-insured retentions or deductibles that are part of such policies.*

**Binder is subject to the schedule of Underlying Insurance (below):**

*Underlying Insurer:*       *Ecclesia Assurance Company*
*Policy Numbers:*       *PKG-2018-1, PKG-2018-2, PKG-2018-3*
*Policy Period Coverage:*       *11/1/2018 – 11/1/2019*

*Limit of Insurance / Annual Aggregate Limit:*

*General Liability (Coverage A) - Bodily Injury, Property Damage and Personal and Advertising Injury $750,000 (un-aggregated) excess of $250,000 Self Insured Retention.*

*Business Auto - Bodily Injury and Property Damage - $750,000 (un-aggregated) excess of $250,000 Self Insured Retention*

*Directors & Officers Liability, Employment Practices Liability, Employee Benefits Liability, and Professional Liability - $750,000 / $750,000 in the aggregate excess of $250,000 Self Insured Retention*

*Medical Professional Liability - $750,000 / $750,000 in the aggregate excess of $250,000 Self Insured Retention.*

*Crime – Employee Theft - $250,000 un-aggregated excess of $250,000 Self Insured Retention.*

*Crime – Investigation Expenses - $250,000 un-aggregated excess of $250,000 Self Insured Retention.*

**Claims Made Retroactive dates: September 1, 1996.**

**Annual Aggregates are based on a 12 month policy period.**

*Notice: This provision shall not respond, if the "underlying insurance" is canceled or is not available due to the bankruptcy or solvency issues of the underlying insurer.*