

Cullen and Dykman LLP
Garden City Center
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
T: 516.357.3700
F: 516.357.3792

**THOMAS R. SLOME**
*PARTNER*
*DIRECT: 516-296-9165*
*E-MAIL TSLOME@CULLENLLP.COM*

May 24, 2021

**BY CM/ECF**
The Honorable Shelley C. Chapman
U.S. Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re: *In re The Roman Catholic Diocese of Rockville Centre, New York*
Case No. 20-12345; Adv. Proc. No. 20-01226

Dear Judge Chapman:

We represent 98 of the parishes within the Roman Catholic Diocese of Rockville Centre (the "Debtor" or "Diocese") and two of the Debtor's affiliated corporations, as noted in our amended notice of appearance [Dkt. No. 446] and the statement we filed pursuant to Bankruptcy Rule 2019 [Dkt. No. 471]. This letter is, however, being filed on behalf of all 136 parishes in the Diocese (the "Parishes").[1]

We write in response to the letter submitted by counsel for the Official Committee of Unsecured Creditors (the "Committee") [Dkt. No. 73], requesting a conference with the Court regarding the existing preliminary injunction (the "Stay") issued in *The Roman Catholic Diocese of Rockville Centre, New York v. ARL320 DOE, et al.*, Adversary Proceeding No. 20-01220-scc (the "Stay Adversary Proceeding"). The Stay enjoins the prosecution of lawsuits brought by the members of the Committee and other plaintiffs pursuing claims under the New York Child

---

[1] The other 38 Parishes are represented by the following firms and lead attorneys: Westerman Ball Ederer Miller Zucker & Sharfstein, LLP (John Westerman & William C. Heuer); Morrit Hock & Hamroff LLP (Theresa A. Driscoll); Archer & Greiner, P.C. (Gerard DiConza); and Kelly & Hulme, PC (James N. Hulme). A list of the Parishes categorized by the law firm representing them is attached as Schedule A to the *Objection of Parishes to Motion of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Bankruptcy Rule 2004 Directing Debtor to Produce Electronically Stored Accounting Information* (the "Parish Rule 2004 Objection") [Dkt. No. 462].

**Cullen | Dykman**

Honorable Shelley C. Chapman
May 24, 2021
Page 2

Victims Act ("CVA") against the Debtor, certain of the Parishes and/or others (the "CVA Actions").

The Stay was issued by this Court on consent of the Committee pursuant to an *Order Granting Debtor's Motion for a Preliminary Injunction* entered on November 4, 2020 [Adv. Proc. Dkt. No. 36]. The Stay was extended by consent of the Committee several times [Adv. Proc. Dkt. Nos. 44, 46, 53 and 69].

The last stipulation extended the Stay to June 14, 2021. The Committee initially conditioned its consent to that extension on the Parishes informally providing discovery described in eleven wide-reaching categories (the "Parish Discovery Requests").[2] Among many other things, the Committee sought all Parish bank and investment balances for ten years, inventories of all personal and real property for six years and digital copies of each Parish's native accounting systems.

Due in part to logistical issues with providing advice to and obtaining feedback from 136 Parishes,[3] the extension was conditioned on the agreement of Parish counsel to "meet and confer" regarding the Parish Discovery Requests and, by May 15th, provide the Committee with the bases for any objections the Parishes might have to providing the requested information.

The Parishes object to all the Parish Discovery Requests for the reasons set forth in the Parish Rule 2004 Objection, including that: (i) such information is not legally relevant to a channeling injunction under the Second Circuit's *Metromedia* decision and its progeny (paragraphs 28 through 38) and, even if it were, the Committee cannot show good cause for such involuntary discovery of non-debtors (paragraphs 23 through 27); (b) such requests violate the pending proceeding rule (paragraphs 39 through 43); and (c) such requests constitute impermissible pre-judgment discovery (paragraphs 44 through 50). On that last point, if no channeling injunction ever issues and the CVA Actions proceed, the plaintiffs will have obtained something they never could have received in those actions, namely complete and private information on the assets of the defendants, and thereby obtain a manifestly unfair advantage in settlement negotiations.

---

[2] See *Declaration of Thomas R. Slome in Support of Objection of Parishes to Motion of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Bankruptcy Rule 2004 Directing Debtor to Produce Electronically Stored Accounting Information*, Exhibit "A" [Dkt. No. 463].

[3] Parishes are governed by a pastor, a board of five trustees, which in practice consists of the pastor and two parishioners (or "lay trustees"), and a finance committee usually consisting of the pastor and a significant number of parishioners. While pastors are the "point person" for each Parish, depending on the pastor's preferences, counsel may have to deal with several or more trustees/finance committee members to provide advice and obtain direction.

22120.1 2015884v3

**Cullen | Dykman**

Honorable Shelley C. Chapman
May 24, 2021
Page 3

Counsel for the Committee, the Debtor and the Parishes held three meet and confers--on April 9, 2021, April 23, 2021 and April 30, 2021--to discuss the Parish Discovery Requests. The meetings were followed by email proposals and counterproposals. Attached to this letter is the email exchange reflecting such proposals, which includes a May 4th ultimatum from the Committee and the Parishes' May 14th objection to the Parish Discovery Requests reiterating its offer to compromise to avoid litigation (each discussed below).

While the broad non-debtor discovery sought by the Committee is impermissible under Rule 2004 and viewed by the Parishes as a major invasion of their privacy, Parish counsel had hoped that by voluntarily providing some less intrusive information they could address the Committee's request for information, avoid expensive litigation and seek the help of a plan mediator in addressing any further requested discovery of the Parishes. To that end, as a compromise, the Parishes offered to provide to the Committee (a) copies of the most recent summary financials that the Parishes provide their parishioners annually, (b) a list of Parish current-owned real estate and (c) information regarding any non-ordinary course transfers by Parishes to other Parishes. In exchange, the Parishes asked that no further discovery be sought of the Parishes until the first mediation session at which Parishes could participate.

The Committee rejected the Parishes compromise offer, and as reflected in the Committee's May 4th email (*see* attached exchange), the Committee put to the Parishes an ultimatum. The Committee would consent to an extension of the Stay, presumably for only another month or two, but only for those Parishes that provided all of the information sought by the Committee (including bank and investment account balances going back ten years and an inventory of all their personal and real property going back six years).

No Parish was willing to provide such private financial information in response to the Committee's ultimatum. Further, the Parishes, through their pastors, other trustees and parishioners (mainly lay trustees and finance committee members), expressed to us the following sentiments:

- They and their Parishes have done nothing wrong and, if the allegations against the Diocese are true, past leaders of the Diocese have brought harm upon many people, including them.

- Had the Diocese assigned an abuser to another Parish instead of theirs, their Parish would not have been sued.

- They would like very much to see the good names of their Parishes cleared.

- Their Parishes spent millions of dollars over the years in insurance to protect them against these and other types of lawsuits, covering defense costs and any liability.

22120.1 2015884v3

Cullen | Dykman

Honorable Shelley C. Chapman
May 24, 2021
Page 4

. Thus, it is unsurprising that the Parishes did not respond positively to the threat of an involuntary and unprecedented invasion of privacy (bank and investment accounts, every item of personal or real property owned for up to a decade, and Parishes' native accounting systems). If, on the other hand, there could be a direct dialog, supervised by a skilled mediator, among the CVA plaintiffs and Parish leadership (some of whom could be parishioners), the issue of parish financial information could become less important to both sides and can be dealt with appropriately and in a confidential and non-confrontational context.

The Parishes would like to respond to the following two statements made by the Committee in the Committee's *Reply in Support of Motion for Entry of an Order Pursuant to Bankruptcy Rule 2004 Directing Debtor to Produce Electronically Stored Accounting Information* ("Committee Reply") [Dkt. No. 476] relating to the Stay and the possibility of a future channeling injunction, because they show that the Committee's views are premised on at least two important Committee beliefs relating to the Stay that the Parishes do not share:

1. Committee Reply at Paragraph 33 (emphasis added): The "Parishes financials are highly relevant because the Parishes are currently enjoying a stay of all CVA-litigation."

No one is enjoying any stay of litigation, and in particular the Parishes. The Parishes never asked for a stay, never joined in the Diocese's Stay Adversary Proceeding, and frankly do not have enough information to know if they are better off with or without a Stay. In most if not virtually all the CVA Actions, there are no allegations that the Parishes had notice of an abuser's past abuse. Without such notice there may be little to no likelihood of liability, and even if there is, such liability may be covered by insurance. If there are risks in these regards that the sued Parishes and their defense counsel are unaware of, perhaps when all the claims are in and merits discovery has been completed and analyzed by all parties, the Parishes can assess the risks in the context of a mediation over a global resolution of the bankruptcy case.

2. Committee Reply at Paragraph 33: "[A]ny successful reorganization of the Diocese will include an injunction permanently relieving the Parishes of CVA liability."

In all likelihood, the best outcome for CVA Plaintiffs will be a consensual global resolution of all the CVA Actions, one in which insurance can go to victim compensation rather than litigation. Such an outcome can only occur in a reorganization plan. On the other hand, whether that outcome is the best one for any Parishes will depend on at least two presently unknowns. One is the risk of liability to a particular Parish after the claims bar date passes and merits discovery is complete. The other is what it will cost a Parish to obtain the protection of a channeling injunction weighed against any benefits. In other diocesan cases, parishes have been required to release their insurance against unasserted claims and thereafter rely on the enforceability of a channeling injunction against unknown claims.

The Parishes are willing to discuss these and other issues in the context of voluntary


Honorable Shelley C. Chapman
May 24, 2021
Page 5

mediation, and sincerely want to hear from the victims regarding their suffering and how the Parishes can help them. Likewise, Parish counsel are committed to working constructively toward a voluntary resolution of the Debtor's bankruptcy case, but it must be in the context of a respect for the claims and rights of all parties, including the claims of victims of child sex abuse at the hands of clergy and the rights of Parishes and their parishioners to carry out their charitable, educational, and religious mission.

Respectfully submitted,

/s/ Thomas R. Slome

Thomas R. Slome

22120.1 2015884v3

# Gomez, Laurie

| | |
|---|---|
| **From:** | Karen B. Dine <kdine@pszjlaw.com> |
| **Sent:** | Monday, May 17, 2021 10:22 AM |
| **To:** | Slome, Thomas; James Stang; Ilan D. Scharf; Brittany M. Michael |
| **Cc:** | William C. Heuer; Theresa A. Driscoll; Gerard DiConza (gdiconza@archerlaw.com); Stephens, Eric P.; DiPompeo, Christopher J.; Butler, Andrew M. |
| **Subject:** | [EXTERNAL] RE: DRVC committee/parish discovery meet and confer discussions |

Tom, thank you for your response. We cannot agree to your suggestion for a compromise. The documents that we requested in our below proposal (email from 5/4) are the minimum that we require as an initial matter, though, with respect to item 3, to the extent such lists do not exist, we would accept a certification that such does not exist (including upon a review by the particular Parish of any personal property insurance and whether such insurance contains a list of such property). While we reviewed your positions and limited our immediate requests in an effort to move forward, as we have discussed, we disagree and consider all of the information requested relevant to a process where the Diocese, on behalf of the Parishes, or the Parishes themselves will be seeking a channeling injunction with respect to abuse claims.

If the Parishes are not wiling voluntarily to provide the requested information in my May 4 email, the Committee will not be in a position to consent to an extension of the existing preliminary injunction protecting the Parishes from continued litigation of the CVA claims. We will be letting the Court know at the status conference on Tuesday that the Committee intends to pursue its objection to the preliminary injunction request. The Committee reserves all rights with respect to the preliminary injunction and any discovery matters relating to the Parishes. Regards, Karen


**Karen B. Dine**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7731
Tel: 212.561.7700 | Cell: 917.279.7047 | Fax: 212.561.7777
KDine@pszjlaw.com
vCard | Bio



Los Angeles | San Francisco | Wilmington, DE | New York | Houston


**From:** Slome, Thomas [mailto:tslome@cullenllp.com]
**Sent:** Friday, May 14, 2021 5:39 PM
**To:** Karen B. Dine <kdine@pszjlaw.com>; James Stang <jstang@pszjlaw.com>; Ilan D. Scharf <ischarf@pszjlaw.com>; Brittany M. Michael <bmichael@pszjlaw.com>
**Cc:** William C. Heuer <wheuer@westermanllp.com>; Theresa A. Driscoll <tdriscoll@moritthock.com>; Gerard DiConza (gdiconza@archerlaw.com) <gdiconza@archerlaw.com>
**Subject:** RE: DRVC committee/parish discovery meet and confer discussions

1

Karen,

This email constitutes the parishes' objection to the Committee's informal request for eleven categories of information about the parishes' finances, assets, etc. (the "Parish Requests").

The Parishes object to the Parish Requests for all of the reasons set forth in the parishes' objection (the "Objection") [Dkt. Nos. 462 and 463] to the Committee's motion for a Rule 2004 exam of the Diocese (the "Rule 2004 Motion") [Dkt. No.437]. None of the information sought in the Parish Requests is appropriate for discovery under Rule 2004 or otherwise. The parishes believe that the information about parish assets is not within the scope of a Rule 2004 examination, the Committee cannot show good cause for the disclosure, and the disclosure is not relevant to any legal issues in the case and would violate the pending proceeding rule and constitute pre-judgment asset discovery for which there are no compelling grounds. Further, forcing the parishes to disclose such information would be viewed as an invasion of privacy by the parishes and parishioners and would therefore be counterproductive to any potential discussions to try to achieve a global resolution of the case for the benefit of the CVA victims and the parishes and their charitable, educational and religious mission.

The parishes do not object to the Diocese providing information about transfers to parishes by the Diocese and from parishes to the Diocese, or any contractual relationships between parishes and the Diocese. All such information could be relevant to the Diocese's finances and the administration of the Diocese's estate.

If the parishes are required to formally object to disclosure not relevant to the Diocese's finances or the administration of its estate, depending on the what the Committee might request in any formal discovery, the parishes reserve the right to formally object to any such requests on additional grounds including, without limitation, that the requests are overly broad, unduly expensive and/or burdensome.

With that said, to avoid expensive and counter-productive litigation over discovery of parish assets and finances and in response to the pared down request in your May 4th email below, the parishes would be willing to try to reach a compromise as follows.

If the Committee agrees not to seek any further information about the parishes from any source until after the first day of any formal mediation in the case to which parishes are invited (at which point all parties rights would be reserved and voluntary discovery of parish finances could, if the Committee wanted, be the subject of such mediation), the parishes would agree to provide certain information as set forth below:

1. <u>Annual Financial Reports from Parishes to the Diocese from 2010 to Present.</u> The annual financial reports the parishes provide the Diocese contain information about the assets of the parishes, including their bank accounts and investment accounts. The parishes object to the Committee getting such information for the reasons set forth in the parishes' objection to the Committee's Rule 2004 motion seeking a copy the Diocese's native accounting system. Those objections include that the Committee cannot show good cause for the information, the information is not relevant to the debtor's finances and administration of its estate, obtaining such information involuntarily would violate the pending proceeding rule, constitute improper prejudgment asset discovery and alienate the parishioners to the detriment of a consensual reorganization of the Diocese. We refer you to the parishes' objection for more detail on these points. What the parishes would be willing to provide are the last summary financials they provided to their parishioners, which will provide a great deal of income and expense type information for the previous fiscal year. We don't think that information is any of the Committee's business, but again, as a compromise to avoid litigation over parish discovery, the parishes would provide this information.
2. <u>All Inventories of Parish Real Property from 2014 to Present</u>. The parishes object to this request for the same reasons as set forth above and in the parishes' Rule 2004 objection. Again, in the spirit of compromise, the parishes would be willing to provide a spreadsheet of current parish owned real estate.
3. <u>All Inventories of Parish Personal Property from 2014 to Present</u>. The parishes do not believe that any such inventories exist, either with them or with the Diocese, but in any event, would object to this request for the

2

reasons set forth above and in the parishes' Rule 2004 objection. It is unclear to us what exactly the Committee is looking for and why, but what personal property, including religious property, a parish had or has is completely irrelevant to the bankruptcy case and is perceived by the parishes as a pointless invasion of privacy. Further, to the extent that the Committee is asking parishes to create such inventories, it would be very burdensome to many of the parishes who are short-staffed and would needlessly cause parishes to incur expenses and devote precious resources to creating them. Certainly, doing them for past periods would likely be impossible.

Also, although you did not respond to our offer to ask the parishes if they would be willing to provide information on transfers to other parishes, again in the spirit of compromise, we would see if we could get confirmation that parishes have not transferred assets between them other than in the ordinary course for equivalent value (e.g., sharing an employee and reimbursing another parish for part of the comp, paying for upkeep of a regional school, etc.) and try to come up with a disclosure protocol for any out of the ordinary course transfers over a certain threshold and during a certain period of time.

We look forward to your response and would welcome the opportunity to continue a dialog concerning discovery or any other issues in the chapter 11 case.

Tom
**Thomas R. Slome**
Partner
**Cullen and Dykman LLP**
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
T: 516.296.9165 | F: 516.357.3792
E: tslome@cullenllp.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

**From:** Karen B. Dine <kdine@pszjlaw.com>
**Sent:** Tuesday, May 4, 2021 11:57 AM
**To:** Slome, Thomas <tslome@cullenllp.com>; James Stang <jstang@pszjlaw.com>; Ilan D. Scharf <ischarf@pszjlaw.com>; Brittany M. Michael <bmichael@pszjlaw.com>
**Cc:** William C. Heuer <wheuer@westermanllp.com>; Theresa A. Driscoll <tdriscoll@moritthock.com>; Gerard DiConza (gdiconza@archerlaw.com) <gdiconza@archerlaw.com>
**Subject:** [EXTERNAL] RE: DRVC committee/parish discovery meet and confer discussions

Tom,

Thank you for your offer but it is not sufficient from the Committee's perspective. In order for the Committee to agree to continue to stay litigation against the Parishes, the Committee requests the below information for each parish. Therefore, the Committee will only agree to an extension of the preliminary injunction for any parish that has given the Diocese permission to share the below information with us. Our understanding is that this information is or should be in the Diocese's possession, so there should be minimal burden or expense for your clients related to this production. We would appreciate hearing from you by May 14, and if the Parishes are agreeable, we would expect that production could begin immediately and be completed within 30 days.

   1. Annual financial reports to the Diocese for the past 10 years

3

2. All inventories of Parish real property from 2014 to present.
3. All inventories of Parish personal property from 2014 to present.

On a related note, please be advised that the Committee has decided to move forward with the hearing on the 2004 Motion on Thursday (May 6).

Regards, Karen


**Karen B. Dine**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7731
Tel: 212.561.7700 | Cell: 917.279.7047 | Fax: 212.561.7777
KDine@pszjlaw.com
vCard | Bio




Los Angeles | San Francisco | Wilmington, DE | New York | Houston



**From:** Slome, Thomas [mailto:tslome@cullenllp.com]
**Sent:** Friday, April 30, 2021 3:47 PM
**To:** James Stang <jstang@pszjlaw.com>; Ilan D. Scharf <ischarf@pszjlaw.com>; Karen B. Dine <kdine@pszjlaw.com>; Brittany M. Michael <bmichael@pszjlaw.com>
**Cc:** William C. Heuer <wheuer@westermanllp.com>; Theresa A. Driscoll <tdriscoll@moritthock.com>; Gerard DiConza (gdiconza@archerlaw.com) <gdiconza@archerlaw.com>
**Subject:** DRVC committee/parish discovery meet and confer discussions

Jim, Karen, Ilan and Brittany,

Thank you for taking the time today to discuss the Committee's informal discovery requests of the parishes. Just to be clear on what we as counsel are proposing and on what we think we might be able to obtain our clients' approval, here is the proposal:

If the Committee agrees to cease any further discovery from parishes or of parish financial information from any source until such time as formal mediation commences (i.e., first session occurs) among the Diocese, the Committee and the parishes (at which point all rights would be reserved), the parishes would deliver to the Committee the following information:

1. The last annual financial report provided by the parishes to their parishioners, which is generally a several page statement of revenues and expenses for the previous fiscal year (see attached sample as you requested). We believe that most if not all parishes provide their parishioners with such a report and do so generally in the beginning of a calendar year for the prior fiscal year (ending August 31). They generally if not always compare the reporting year to one or two previous year's numbers. From the handful we have, I would say this one is middle of the road for the amount of information provided.
2. A list of all currently owned parish real property.

4

3. Confirmation that there were no transfers from the parishes to other parishes during the last six years falling into the following categories: (a) transfers of any real property, (b) in any given year transfers of personal property worth more than $25,000, and (c) in any given year, transfers of cash in an amount greater than $25,000. The $25,000 threshold amount in the case of property or cash would be the aggregate threshold for all transfers in a year. For example, if a parish transferred personal property in the aggregate worth more than $25,000 to any one or more parishes in a given year, the parish would have to provide a list of all such individual transfers made that year with name of transfer and description of the property transferred.

The understanding would not preclude the Committee from seeking information from the Diocese regarding transfers from parishes to the Diocese or transfers from the Diocese to parishes or to ascertain any debts owed by parishes to the Diocese.

The parishes do not believe that the Committee is entitled to any of this information, but in the spirit of trying to move the case along constructively, keeping litigation concerning discovery on hold, and keeping the burden, expense and intrusion on parishes down, we would recommend that our clients agree to this proposal.

Let us know if the Committee is agreeable. If so, we would need approximately two weeks from then to find out if the parishes will agree. If so, we'd want at least 45 more days to provide the information given that most parishes are short-staffed, but we would commit to do it on a rolling basis, with the easier information, like the real property holdings, to be provided almost immediately.

Tom
**Thomas R. Slome**
Partner
**Cullen and Dykman LLP**
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
T: 516.296.9165 | F: 516.357.3792
E: tslome@cullenllp.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

CONFIDENTIALITY
This e-mail message and any attachments thereto is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail message, you are hereby notified that any dissemination, distribution or copying of this e-mail message, and any attachments thereto is strictly prohibited. If you have received this e-mail message in error, please immediately notify me by telephone and permanently delete the original and any copies of this email and any prints thereof.

NOT INTENDED AS A SUBSTITUTE FOR A WRITING
Notwithstanding the Uniform Electronic Transactions Act or the applicability of any other law of similar substance and effect, absent an express statement to the contrary hereinabove, this e-mail message, its contents, and any attachments hereto are not intended to represent an offer or acceptance to enter into a contract and are not otherwise intended to bind the sender, Pachulski Stang Ziehl & Jones LLP, any of its clients, or any other person or entity.