**Objection Deadline:  July 28, 2022 at 5:00 p.m. (Eastern Time)**
**Hearing Date:  August 4, 2022 at 10:00 a.m. (Eastern Time)**

JONES DAY
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Andrew Butler
250 Vesey Street
New York, New York  10281
Telephone:    (212) 326-3939
Facsimile:    (212) 755-7306

*Counsel for the Debtor
and Debtor in Possession*

JONES DAY
Christopher DiPompeo (*pro hac vice*)
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone:  (202) 879-7686
Facsimile:  (202) 626-1700

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| *In re:* | : | |
| | : | |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,[1] | : | Case No. 20-12345 (MG) |
| | : | |
| Debtor. | : | |
| | : | |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Pro. No. 20-01226 |
| | : | |
| ARK320 DOE, *et al.*,[2] | : | |
| | : | |
| Defendants. | : | |

# MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION
### UNDER 11 U.S.C. §§ 362 AND 105(a)

---

[1] The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is P.O. Box 9023, Rockville Centre, NY 11571-9023.

[2] A full list of the Defendants in this adversary proceeding is included in Exhibit A to the Verified Complaint for Declaratory and Injunctive Relief [Adv. Pro. Docket No. 1].

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................... 1

STATEMENT OF FACTS ................................................... 4

    A.    The Mission and History of the Diocese of Rockville Centre .................. 4

    B.    History and Structure of the DRVC's Shared Insurance Program ............ 5

        1.    The Royal Policies (1957 to 1976) ................................. 6

        2.    The London Program Policies (1976 to 1986) ............................ 7

        3.    The Ecclesia Policies (1986 to Present) ........................... 8

    C.    History and Current Status of the State Court Actions ............................ 9

    D.    The Initial PI Motion and the Diocese's Discovery Efforts ................... 10

ARGUMENT ......................................................... 12

    I.    Sections 362 and 105(a) of the Bankruptcy Code Empower this Court to Preliminarily Enjoin The State Court Actions ...................................... 12

    II.    The Court Should Preliminarily Enjoin the State Court Actions pursuant to section 105(a) ......................................................... 14

    A.    The Protections of the Automatic Stay Extend to the DRVC Related Parties Named in the State Court Actions ................................. 14

    B.    The Relevant Factors Weigh in Favor of a Preliminary Injunction ......... 17

        1.    Continued Prosecution of the State Court Actions Will Dissipate the Proceeds of Shared Insurance Policies .................. 18

        2.    Continued Prosecution of the State Court Actions Could Increase the Debtor's Indemnification Liability ......................... 19

        3.    Continued Prosecution of the State Court Actions Will Likely Result In Piecemeal Litigation And Inconsistent Judgments ................................................. 19

        4.    Continued Prosecution of the State Court Actions Will Expose the DRVC to Risks of Collateral Estoppel and Res Judicata ................................................. 20

        5.    Continued Prosecution Will Burden And Distract the DRVC's Principals From the Reorganization ........................... 22

    C.    There Is No Reason To Abandon the Preliminary Injunction Now ........ 23

CONCLUSION ....................................................... 25

# TABLE OF AUTHORITIES

**Page**

CASES

*McHale v. Alvarez (In re The 1031 Tax Group, LLC)*, 397 B.R. 670 (Bankr.
S.D.N.Y. 2008) ....................................................................................................... passim

*A.H. Robins Co., v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) ................................................................14, 16, 17, 18

*Bayview Loan Servicing LLC v. Fogarty (In re Fogarty)*,
___ F.4th ___, 2022 WL 2443388 (2d Cir. 2022) ...................................................15

*Boy Scouts of Am. v. A.A., et al. (In re Boy Scouts of Am.)*,
No. 20-10343, Adv. Pro. No. 20-50527, Docket No. 55 (Bankr. D. Del. Mar.
31, 2020) ....................................................................................................................14

*Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*,
354 B.R. 45 (Bankr. S.D.N.Y. 2006) .......................................................................21

*Circle K Corp.*, 121 B.R. 257 (Bankr. D. Ariz. 1990) ............................................16, 18

*Diocese of Buffalo, N.Y. v. JMH 100 Doe, et al. (In re Diocese of Buffalo, N.Y.)*,
No. 20-10322, Adv. Pro. No. 20-01016, Docket No. 70 (Bankr. W.D.N.Y.
July 2, 2020) ..........................................................................................................14, 24

*Drennen v. Certain Underwriters at Lloyd's of London (In re Residential Capital,
LLC)*,
563 B.R. 756 (Bankr. S.D.N.Y. 2016) ......................................................................19

*E. Refractories Co. Inc. v. Forty Eight Insulations Inc.*,
157 F.3d 169 (2d Cir. 1998) ......................................................................................12

*First Cent. Fin. Corp.*, 238 B.R. 9 (Bankr. E.D.N.Y. 1999) ...................................15, 18

*Goldin v. Primavera Familienstiftung, Tag Assocs., Ltd. (In re Granite Partners,
L.P.)*,
194 B.R. 318 (Bankr. S.D.N.Y. 1996) ......................................................................19

*Haw. Structural Ironworkers Pension Tr. Fund v. Calpine Corp.*,
No. 06 Civ. 5358, 2006 WL 3755175 (S.D.N.Y. 2006) ......................................12, 22

*Ionosphere Clubs, Inc.*, 111 B.R. 423 (Bankr. S.D.N.Y. 1990) ..............................................13, 19

*Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.)*,
86 F.3d 482 (6th Cir. 1996) ...................................................................................17

*Livingstone v. Tough Mudder Incorporated, Inc.*,
No. 19-cv-893, 2020 WL 1905203 (E.D.N.Y. 2020) .............................................19

*Lomas Fin. Corp. v. Northern Tr. Co. (In re Lomas Fin. Corp.)*,
117 B.R. 64 (S.D.N.Y. 1990)..................................................................................21

*LTL Management, LLC*, 638 B.R. 291 (Bankr. D.N.J. 2022)......................................................21

*Lyondell Chem. Co. v. CenterPoint Energy Gas Servs. Inc. (In re Lyondell Chem. Co)*,
402 B.R. 571 (Bankr. S.D.N.Y. 2009)...................................................................14

*MacArthur Co. v. Johns-Manville Corp.*,
837 F.2d 89 (2d Cir. 1988)...............................................................................15, 18

*McCartney v. Integra Nat'l Bank N.*,
106 F.3d 506 (3d Cir. 1997)...................................................................................15

*Minoco Grp. of Cos. Ltd. v. First State Underwriters Agency of New Eng. Reins. Corp. (In re Minoco Grp. of Cos., Ltd.)*,
799 F.2d 517 (9th Cir. 1986) ...........................................................................16, 18

*Nev. Power Co. v. Calpine Corp. (In re Calpine Corp.)*,
365 B.R. 401 (S.D.N.Y. 2007)...............................................................................22

*Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.)*,
928 F.2d 565 (2d Cir. 1991)...................................................................................15

*Purdue Pharma L.P.*, No. 19-23649, Adv. Pro. No. 19-08289, Docket No. 108 (Bankr. S.D.N.Y. Oct. 11, 2019), *aff'd,* No. 19 Civ 10941, 2020 WL 4596869 (S.D.N.Y. Aug. 11, 2020) ....................................................................................13

*Queenie, Ltd. v. Nygard Intern.*,
321 F.3d 282 (2d Cir. 2003)...................................................................................16

*Roman Catholic Diocese of Syracuse, N.Y.*, 628 B.R. 571 (Bankr. N.D.N.Y. 2021)....................24

*Rosetta Res. Operating LP v. Pogo Producing Co.* (*In re Calpine Corp.*),
  No. 05-60200, Adv. Pro. No. 06-1757, 2007 WL 1302604 (Bankr. S.D.N.Y.
  2007) ....................................................................................................................13, 21, 22

*Sudbury, Inc. v. Escott* (*In re Sudbury*),
  140 B.R. 461 (Bankr. N.D. Ohio 1992) ...............................................................................21

*TK Holdings Inc.*, No. 17-11375, Adv. Pro. No. 17-50880, Docket No. 64-3
  (Bankr. D. Del. Aug. 16, 2017).............................................................................................13

*W.R. Grace & Co. v. Chakarian* (*In re W.R. Grace & Co.*),
  386 B.R. 17 (Bankr. D. Del. 2008) .......................................................................................17

STATUTES

11 U.S.C.
  § 105(a) ........................................................................................................... passim
  § 362(a)(1) ...............................................................................................12, 15, 16
  § 362(a)(3) ...............................................................................................12, 15, 16

OTHER AUTHORITIES

FED. R. CIV. P. 65.....................................................................................................................17

FED. R. BANKR. P. 2004 ..............................................................................................3, 10, 19, 25

## **PRELIMINARY STATEMENT**

As widely reported, the Roman Catholic Diocese of Rockville Centre, New York (the "DRVC" or "Diocese") is a defendant in numerous lawsuits alleging acts of sexual abuse and related misconduct occurring decades ago.  These lawsuits were filed in the wake of the New York State Legislature's enactment of the Child Victim Act (the "CVA"), which created a window for alleged victims of childhood sexual abuse to bring civil actions that were previously barred by the statute of limitations.  Many of these lawsuits also name parishes within the DRVC (the "Parishes") and/or affiliates of the DRVC (together with the Parishes, the "DRVC Related Parties") as defendants.  By the closing of the CVA's two-year window on August 14, 2021, the DRVC and/or the DRVC Related Parties had been named as defendants in more than 500 CVA lawsuits.

The DRVC cares deeply about all victims of abuse and has sought to reconcile with anyone who has been harmed.  The DRVC is steadfast in its commitment to provide equitable compensation to victims of abuse and to continually improve all of its policies to ensure abuse never again happens within the DRVC.  Because the DRVC could not continue to address abuse litigation in the tort system on a case-by-case basis, it filed this chapter 11 case on October 1, 2020, to achieve the dual objectives of (1) timely and equitably compensating victims of abuse and (2) ensuring the DRVC emerges from bankruptcy able to continue its vital charitable mission.

The DRVC's largest and most important assets available to compensate victims are the substantial, but limited, proceeds from its insurance policies.  Because the DRVC Related Parties are all co-insureds under these insurance policies, with full rights to access the limited proceeds on a first-come basis, defense costs or damages incurred by the DRVC Related Parties in the State Court Actions would deplete the funds available to compensate victims in this chapter 11 case.  As a result, on the same day it filed for chapter 11 relief, the DRVC also filed a motion to preliminarily enjoin the State Court Actions as against the DRVC's co-insureds.  That motion sought to protect

the DRVC's limited insurance assets from dissipation, maximize the funds available to compensate victims, ensure that the DRVC's limited funds are distributed to victims in an equitable and orderly way, and focus all parties on reaching a coordinated resolution of claims in the chapter 11 case.

The Official Committee of Unsecured Creditors (the "Committee") initially opposed the DRVC's motion for an interim stay of the State Court Actions, arguing that the State Court Actions were the only vehicle for CVA claimants to obtain discovery about the merits of their claims. The DRVC and the Committee, however, ultimately agreed to a consensual preliminary injunction of the State Court Actions (the "PI"). The DRVC agreed to produce to the Committee documents that the CVA claimants would have been entitled to receive in the State Court Actions, had those actions gone forward, and the Committee agreed to a consensual stay, subject to further extension based upon the DRVC's continued attention to the Committee's CVA-related discovery requests. The State Court Actions have been continuously stayed on these terms since October 28, 2020.

As set out in more detail in the accompanying *Declaration of Eric P. Stephens in Support of the Debtor's Motion for a Preliminary Injunction Under Sections 362 and 105(a) of the Bankruptcy Code* (the "Stephens Declaration"), the DRVC has voluntarily produced an enormous volume of information to the Committee, including all personnel files in its possession for each alleged abuser and comprehensive disclosures concerning the DRVC's financial condition and other matters impacting the estate. All told, the DRVC has produced to the Committee a total of more than 2.3 million pages of documents and responded to hundreds of requests for information. The Committee now has every piece of information that could have been produced to CVA plaintiffs in the State Court Actions, and much more.

On May 31, 2022, the DRVC communicated to the Committee that, in accordance with a stipulated schedule, it had substantially completed its production in response to *all* of the Committee's discovery requests. Two weeks later, however, the Committee sent a letter to the

DRVC issuing an ultimatum:  The Committee would not agree to extend the PI unless the non-debtor Parishes disclosed information about *Parish* finances the Committee believes will be helpful in negotiating a chapter 11 plan.  The DRVC responded by reiterating its view that the DRVC has no objection to the Parishes providing discovery on their finances; that any such requests should be directed to the Parishes' restructuring counsel; that the DRVC understands from the Parishes' statements to this Court that the Parishes will be willing to discuss such disclosures in the context of plan-related mediation; that the Committee has had the power at any time to involve the Parishes in mediation, but had not yet exercised it; and that it is inappropriate for the Committee to use an extension of the PI as leverage to obtain discovery that has nothing to do with the merits of the State Court Actions.  The DRVC then proposed a brief, 30-day extension of the PI to allow time for the Committee and the Parishes to discuss the Committee's demands in mediation.  The Committee flatly refused this proposal.  Consequently, absent an order from this Court, the current PI will expire on August 10, 2022.

The Committee's ultimatum is not new.  Over a year ago, the Committee threatened not to extend the PI unless the Parishes disclosed this *same* information.  At that time, Judge Chapman expressly rejected the Committee's effort to condition an extension of the PI on plan-related discovery from third parties that had nothing to do with the CVA cases.  Calling the Committee's approach "unfair" and an "enormous use and waste of resources," Judge Chapman made clear that she would not deny the PI motion simply because the Parishes had not provided financial disclosures and that, to the extent the Committee wanted plan-related information, it should pursue that discovery through a Rule 2004 process or in mediation.  *See infra* at 10-11.

The Committee has now waited until after Judge Chapman's retirement—and just before the first joint mediation session that will involve the Parishes—to raise this issue again in the hopes of getting a different result.  The Debtor respectfully submits, however, that the Court should

maintain the status quo by granting another short (120-day) extension of the PI.

Indeed, the reasons justifying a preliminary injunction of the State Court Actions at the start of the case counsel even more strongly in favor of it now. Sections 362(a) and 105(a) empower this Court to enjoin litigation where, as here, it threatens to undermine the Debtor's ability to achieve a successful restructuring, and courts facing similar circumstances have routinely granted such relief. Moreover, a 120-day preliminary injunction, subject to renewal at the Court's discretion, is a modest protective measure because nearly all of the State Court Actions are already subject to the automatic stay. And to the extent any part of the State Court Actions are not subject to the automatic stay, the various factors considered by this Court when evaluating whether to issue a section 105(a) injunction support such relief.

Finally, the current posture of the case weighs strongly in favor of preserving the status quo so the parties can pursue mediation without the distraction that will result from an explosion of hundreds of cases in state court. The chapter 11 case is at a critical juncture. Mediation is just beginning. The parties have had *only one* all-hands mediation session so far, largely because of Committee counsel's schedule and commitments in other cases. The next joint mediation session—which will be the first with the Parishes as mediation parties—will take place just two days before the current PI expires in August. The Committee should not be permitted to short-circuit the plan mediation process before the parties can determine whether a consensual chapter 11 plan is possible. Put simply, the parties should have breathing space to pursue plan-mediation.

## STATEMENT OF FACTS

### A.    The Mission and History of the Diocese of Rockville Centre

The DRVC is the seat of the Catholic Church on Long Island. The DRVC was established by the Vatican in 1957 from territory that was formerly part of the Diocese of Brooklyn and was established by the State of New York as a religious corporation in 1958. The DRVC is the eighth

largest diocese in the United States when measured by the number of baptized Catholics.

There are 135 Parishes within the DRVC's geographic boundary. Each Parish is a separate religious corporation, formed under Article 5 of New York's Religious Corporations Law, N.Y. RELIG. CORP. § 90. Parishes are the epicenter of the Catholic Church's mission, and play a central role in the lives of Catholics: Parishes administer baptism, education, communion, mass, confirmation, marriage, and bereavement, including last rites, funeral services and grief support. All Parishes have retained restructuring counsel and were recently made mediation parties.[3]

In addition, certain affiliated entities of the DRVC are also defendants in the State Court Actions, such as Catholic Charities of the Diocese of Rockville Centre and the Department of Education, Diocese of Rockville Centre. Generally, these affiliates are separate, not-for-profit charitable member corporations with their own board and governance. Each is separately represented by restructuring counsel, and none have sought relief under chapter 11.

**B.    History and Structure of the DRVC's Shared Insurance Program**

To insure the DRVC's many activities, the DRVC maintains a broad insurance program. Specifically, the DRVC purchased and continues to purchase commercial liability insurance ("CLI") primary, umbrella, and excess liability insurance policies to protect itself and various other entities from a myriad of risks. A description of the terms of these policies and a compendium of policy documentation is included in the *Declaration of Kenneth F. Porter in Support of the Debtor's Motion for a Preliminary Injunction Under Sections 362 and 105(a) of the Bankruptcy Code* (the "Porter Declaration") at ¶ 3. These CLI policies provide substantial insurance coverage for claims arising out of sexual abuse or sexual misconduct, *id.*, and are the DRVC's largest and most important source of funding for claims of sexual abuse.

---

[3] *See Notice of Additional Mediation Parties (Certain Parishes)* [Docket No. 1170]; *see also Notices of Appearance* [Docket Nos. 27, 32, 384, 446].

At all times since 1957, the DRVC's insurance policies have provided coverage both to the DRVC and the DRVC Related Parties.[4] *Id.* ¶ 4. As "Named Insureds," the DRVC Related Parties have the same rights as the DRVC to the limits of liability under those insurance policies. *Id.* Thus, the limits of liability are "shared" between the DRVC and the DRVC Related Parties. *Id.* Importantly, these shared insurance policy proceeds are paid on a first-come-first-served basis, meaning that once the insurance company has satisfied its obligation on a per-claim or aggregate basis for one insured, the insurance policy proceeds will not be available to other insureds. *Id.* Over the years, the DRVC has purchased insurance policies from different insurance companies. *Id.* ¶ 5. These polices fall into three groups: the Royal years (1957 to 1976); the London Program years (1976 to 1986); and the Ecclesia years (1986 to the present).[5] Exhibit A to the Porter Declaration includes a graphical representation of the DRVC's historical insurance coverage.

### 1. The Royal Policies (1957 to 1976)

From 1957 until 1976, the DRVC purchased both primary and excess or umbrella insurance coverage (the "<u>Royal Primary Policies</u>" and the "<u>Royal Umbrella Policies</u>") from Royal Indemnity Insurance and Royal Globe Insurance Company (collectively now known as Arrowood Indemnity Company). *Id.* ¶ 6. The Royal Policies cover both the DRVC and the DRVC Related Parties. *Id.*

*Royal Primary Policies*: The Royal Primary Policies provide the first layer of insurance coverage for the DRVC and the DRVC Related Parties. *Id.* ¶ 7. These insurance policies do not have aggregate limits of liability, but they do have per-occurrence limits of liability ranging from $150,000 to $300,000, depending on the policy period. *Id.* Until 1964, the Royal Primary Policies

---

[4] Certain insurance companies have not agreed to defend certain DRVC Related Parties based on missing insurance policy documentation. The DRVC believes there is adequate secondary evidence to establish insurance coverage for the DRVC Related Parties, and has reserved all rights with respect to such coverage disputes.

[5] While this brief and the Porter Declaration provide an overview of the DRVC's insurance programs, the language in the insurance policies controls. The DRVC reserves any and all rights with respect to its insurance policies. The DRVC and its advisors have also not yet been able to locate copies of all relevant insurance policies and thus the descriptions provided herein may need to be amended to incorporate any newly-discovered evidence.

were the DRVC's only insurance coverage.  *Id.* ¶ 8.

*Royal Umbrella Policies*:  From 1964 to 1976, Royal also provided the DRVC with excess

or umbrella insurance coverage.  *Id.* ¶ 9.  The Royal Umbrella Policies cover liability that exceeds

the limits of liability for the Royal Primary Policies.  *Id.*  The Royal Umbrella Policies contained

per occurrence limits of liability that ranged from $2 million to $12 million.  *Id.* ¶ 10.  In addition,

while the Royal Umbrella Policies apparently did not contain any aggregate limits during the first

several years of the program, aggregate limits ranging from $4 million to $12 million likely were

included in the policies covering 1970 to 1976.  *Id.*

### 2.    The London Program Policies (1976 to 1986)

From 1976 until 1986, the DRVC purchased insurance coverage (the "London Policies")

from a syndicate of insurance companies known as the London Market Insurers (the "London

Insurers"), with additional excess insurance coverage provided by various other insurers, including

Interstate Fire & Casualty Company (collectively with the London Insurers, the "London

Program").  *Id.* ¶ 11.  Like the Royal Policies, all of the London Policies also cover both the DRVC

and the DRVC Related Parties, and the insurance proceeds are shared between all co-insureds.  *Id.*

Under the London Policies, the insureds are required to cover the first $100,000 of liability

per occurrence, an amount referred to as the "Self-Insured Retention" ("SIR").[6]  *Id.* ¶ 12.  The

London Policies then provide an initial layer of coverage through two insuring agreements—an

"Aggregate Agreement" and a "Specific Excess Agreement."  *Id.*  As detailed in the Porter

Declaration, these agreements provide some coverage for the first $200,000 of liability on a claim.

The London Policies also provide a layer of umbrella insurance policies—the "Interstate

---

[6] Generally, a "self-insured retention," or SIR, is a dollar amount specified in a liability insurance policy that must be paid by the insured before the insurer will respond to a loss.  Insurance policies include "self-insured retentions" when the insured decides to retain some risk.

Policies"—and upper layer excess insurance policies—the "London Excess Policies."[7]  *Id.* at 17.

The umbrella layer of coverage generally covered the difference between $200,000 and $5 million

for each occurrence, with no aggregate limit of liability, and was provided by Interstate and other

insurance companies.  *Id.*  The excess insurance policies covered per-occurrence liability above

$5 million, up to a per-occurrence limit of liability of $5 million to $45 million, depending on the

policy period.  *Id.*  Typically, neither layer of insurance coverage included an aggregate limit,

meaning that those insurance companies still retain liability for new claims alleging injury during

a London Program policy period, up to their share of the per-occurrence limits of liability.  *Id.*

Under the London Policies, defense costs are generally considered part of the ultimate net

loss.[8]  *Id.* ¶ 16.  Thus, incurring defense costs depletes the available policy proceeds.  *Id.*

### 3.    The Ecclesia Policies (1986 to Present)

Finally, Ecclesia Assurance Company ("Ecclesia") is the sole provider of insurance for the

DRVC and the DRVC Related Parties for alleged sexual abuse after August 31, 1986.[9]  *Id.* ¶ 19.

Ecclesia is a captive insurance company that provides insurance to the DRVC.  *Id.*  It is a separate

corporation that is wholly owned by the DRVC.  *Id.*  The company is a licensed insurer and

reinsurer, and it is subject to the New York State Department of Financial Services.  *Id.*

The sexual abuse liability insurance coverage provided by Ecclesia is subject to per claim

limits of $750,000 in excess of self-insured retentions (or deductibles) of $250,000 per claim and

an aggregate limit of liability for sexual abuse claims of (i) $15 million for claims made before

October 31, 2020 based on alleged incidents that occurred on or after September 1, 1986 and prior

to October 31, 2019 and (ii) $7.5 million for claims made, and for claims based on alleged incidents

---

[7] Some of the London Market Insurers may currently be insolvent and unable to fulfill their obligations.

[8] DRVC reserves the right to argue the London Insurers have a duty to defend per the London Policies.

[9] Ecclesia began providing insurance coverage in 2003 for sexual abuse claims made during the Ecclesia
policy periods that allege wrongful acts after August 31, 1986.

that occurred, on or after October 31, 2019. *Id.* ¶ 20. As with the Royal Policies and the London Program Policies, the DRVC Related Parties are co-insureds with the DRVC and the insurance policy proceeds are shared among all the insureds. *Id.* ¶ 21. Under the Ecclesia Policies, defense costs are generally part of the ultimate net loss and deplete available policy proceeds. *Id.* ¶ 20.

### C.    History and Current Status of the State Court Actions

The pending State Court Actions allege that the DRVC and the DRVC Related Parties are liable for certain personal injury tort claims or, in some instances, statutory claims stemming from sexual abuse or misconduct arising out of the victim's involvement or connection with the DRVC. *See Declaration of Charles Moore in Support of the Debtor's Motion for a Preliminary Injunction Under Sections 362 and 105(a) of the Bankruptcy Code* (the "Moore Declaration") at ¶ 4. There are approximately 500 State Court Actions pending against the DRVC and/or the DRVC Related Parties. *Id.* Although the State Court Actions vary in their procedural posture, none are close to trial. *Id.* All are in either the motion practice or early discovery phase. *Id.*

Historically, claims against the DRVC and the DRVC Related Parties have, with very limited exception, been litigated and administered by the DRVC in close coordination with the DRVC Related Parties. *Id.* at ¶ 3. This approach is due to the relationship between the DRVC and the DRVC Related Parties, and the fact that many of the key allegations made by plaintiffs in such cases are substantially directed at the DRVC. *Id.* Consistent with past practice, the DRVC must coordinate many aspects of the litigation with the DRVC Related Parties, including responses to discovery requests. *Id.* Indeed, the majority of such requests are ultimately directed at the DRVC because the DRVC maintains most of the responsive documents. *Id.*

As explained in the Moore Declaration, before the chapter 11 case, key DRVC personnel, including those from the legal, financial, and risk management departments, devoted substantial time and attention to matters related to the State Court Actions. *Id.* ¶ 6. Specifically, the DRVC's

General Counsel and Chief Operating Officer was required to review and analyze potential settlements, strategies, and expenses with respect to the State Court Actions.  In addition, key DRVC personnel had to monitor the status of the State Court Actions and coordinate with the DRVC Related Parties.  *Id.*  These same key personnel are responsible for overseeing and managing the DRVC's chapter 11 case and participating in the ongoing mediation.  *Id.* ¶ 7.  Due to their critical role in the DRVC's reorganization and mediation efforts, the success of the DRVC's reorganization will be contingent, in large part, on their time and efforts.  *Id.* ¶ 8.

### D.     The Initial PI Motion and the Diocese's Discovery Efforts

The full history of the PI and the Diocese's discovery efforts is set out in the Stephens Declaration.  As explained therein, the Diocese has provided an enormous amount of information to the Committee on a voluntary basis while limiting the need for the Court to resolve disputes to only a handful of discrete issues, each of which was resolved in the Diocese's favor.

In one such dispute that is particularly relevant here, the Committee in May 2021 informed the Diocese that it would not agree to extend the PI unless the Diocese produced comprehensive financial information about the Parishes, which the Committee believed would be useful in negotiating a chapter 11 plan.  The Diocese responded that while the Diocese had no objection to providing this information, the Committee would need to obtain authorization from the Parishes, who were separately represented by restructuring counsel.  The Diocese further explained that it was inappropriate for the Committee to condition an extension of the PI on plan-related disclosures from third parties that would not be a subject of discovery in the underlying State Court Actions.  Rather, to the extent the Committee wanted this information for plan purposes, the appropriate mechanism would be a Rule 2004 motion, plan-related discovery, or mediation.  The Diocese then facilitated a discussion between Parish counsel and counsel for the Committee.  When those discussions failed to produce a resolution, Judge Chapman convened a status conference.

During the status conference, Judge Chapman expressly rejected the Committee's effort to

link disclosure of Parish financial information to extending the PI:

> I don't think that the connection of these two issues is appropriate. I mean,
> I understand the Committee is free to take whatever position that it wants
> with respect to discovery and with respect to the continuation of the
> injunction. But somehow, consent to one is now conditioned on the other,
> and there seems to be a sense from the Committee that I ought to follow
> that lead and somehow link those two. I don't think that that's correct. To
> state the obvious, I would like to avoid a contested hearing on the extension
> of the stay. I think it's an enormous use and waste of resources, and that it
> is something that is in everyone's interest to continue for short periods of
> time on a go-forward basis.
>
> *        *        *
>
> It just seems to me that it is unfair, frankly, to shoehorn the discovery
> dispute into the preliminary injunction process. And you know, kind of
> holding it over frankly my head as well as a threat, that unless they, you
> know, turn over these documents, or by implication I force them to turn
> over the documents, you know, you're going to oppose the stay.

May 21, 2021 Tr. at 6:20–7:8; 12:18–24.  Following the status conference, the parties agreed to

another consensual extension of the PI, which has since been renewed several more times.

Throughout the discovery process, the Diocese has been concerned that the Committee was

taking advantage of the Diocese's good faith by making never-ending information requests to

distract from the fact that the Committee lacked the bandwidth to make any real progress in the

case.  So, in an effort to close out the discovery process, on April 11, 2022, the Court so-ordered

a stipulation between the Diocese and the Committee setting a deadline of May 31, 2022, for

completion of final information requests and responses.  Pursuant to this stipulation, the Diocese

sent the Committee a letter on May 31, explaining it had substantially completed its production.

Unfortunately, just over two weeks later, the Committee sent the Diocese a letter with an

ultimatum that it would not extend the PI beyond the current August 10, 2022, expiration date

unless the Parishes disclosed their financial information before then.  *See* Stephens Decl. Ex. A.

Apparently, the Committee believed it was free to abandon the PI now that discovery from the Diocese was coming to a close, and saw Judge Chapman's retirement as an opportunity to get a different ruling with respect to parish discovery. The Diocese responded as it had before, explaining the Diocese has no objection to parish discovery, offering to facilitate a meeting on this topic with the Parishes, and questioning why the Committee had not yet made the Parishes mediation parties, as it had the right to do at any time. *See id.*, Ex. B. The Diocese proposed a brief 30-day bridge extension of the PI in order to allow the Parishes and the Committee to discuss the Committee's demands. Unfortunately, however, the Committee flatly rejected this proposal, forcing the Diocese to seek to extend the PI on a contested basis. This motion followed.

## <u>ARGUMENT</u>

### I.    SECTIONS 362 AND 105(a) OF THE BANKRUPTCY CODE EMPOWER THIS COURT TO PRELIMINARILY ENJOIN THE STATE COURT ACTIONS

Pursuant to section 362(a) of the Bankruptcy Code, a chapter 11 petition automatically stays virtually all litigation against a debtor and efforts by creditors to obtain the debtor's property. *See* 11 U.S.C. § 362(a). This "automatic stay" is one of the most fundamental protections for a debtor and permits the debtor to focus on its reorganization. *See E. Refractories Co. Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998). The automatic stay prohibits (i) the continuation of any judicial, administrative, or other action or proceeding against the debtor, 11 U.S.C. § 362(a)(1); and (ii) any act, whether against the debtor or third parties, to obtain possession of, or exercise control over, property of the estate, 11 U.S.C. § 362(a)(3).

Section 362(a), by its terms, protects only the debtor and the debtor's property. Courts have long recognized, however, that even though litigation involving non-debtors may not be *automatically* stayed by section 362(a), bankruptcy courts have the authority pursuant to 11 U.S.C. § 105(a) to enjoin such litigation in certain circumstances. *Haw. Structural Ironworkers Pension*

*Tr. Fund v. Calpine Corp.*, No. 06 Civ. 5358, 2006 WL 3755175, at *4 (S.D.N.Y. 2006).

Specifically, under section 105(a), "the bankruptcy court may enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case before it." *McHale v. Alvarez* (*In re The 1031 Tax Grp., LLC*), 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008) (quoting *In re Johns-Manville Corp.*, 91 B.R. 225, 228 (Bankr. S.D.N.Y. 1988)). "To enjoin claims against non-debtors under § 105(a), a bankruptcy court must find that the claims 'threaten to thwart or frustrate the debtor's reorganization efforts,' . . . and that the injunction is 'important' for effective reorganization." *Id.* at 684 (quoting *Goldin v. Primavera Familienstiftung, Tag Assocs., Ltd.* (*In re Granite Partners, L.P.*), 194 B.R. 318, 337 (Bankr. S.D.N.Y. 1996)). Moreover, "the courts have recognized that a stay should be provided to codefendants when the claims against them and the claims against the debtor are 'inextricably interwoven, presenting common questions of law and fact, which can be resolved in one proceeding.'" *In re Ionosphere Clubs, Inc.*, 111 B.R. 423, 434 (Bankr. S.D.N.Y. 1990) (quoting *Fed. Life Ins. Co. v. First Fin. Group, Inc.*, 3 B.R. 375, 376 (S.D. Tex. 1980)). In such cases, an injunction is appropriate because, absent such relief, "[c]ongressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code." *Rosetta Res. Operating LP v. Pogo Producing Co.* (*In re Calpine Corp.*), No. 05-60200, Adv. Pro. No. 06-1757, 2007 WL 1302604, at *2 (Bankr. S.D.N.Y. 2007) (quotations omitted).

Applying these precedents, courts have routinely enjoined mass-tort litigation against affiliates of debtors, to allow the debtor to centralize claims in one forum and seek a consensual restructuring of its liabilities.[10] Simply put, "safe harbors for non-debtors" are frequently granted

---

[10] *See, e.g., Hr'g Tr.*, *In re TK Holdings Inc.*, No. 17-11375, Adv. Pro. No. 17-50880, Docket No. 64-3 at 26, 30–31 (Bankr. D. Del. Aug. 16, 2017) (employing section 105 to enjoin actions against non-debtors to avoid multi-front litigation and allow debtors to focus on consensual plan of reorganization); *Hr'g Tr.*, *In re Purdue Pharma L.P.*, No. 19-23649, Adv. Pro. No. 19-08289, Docket No. 108 at 253–54 (Bankr. S.D.N.Y. Oct. 11, 2019), *aff'd*, No. 19 Civ. 10941, 2020 WL 4596869 (S.D.N.Y. Aug. 11, 2020) (enjoining continued prosecution of litigation by

in mass tort chapter 11 cases because they help avoid a "battle . . . over a dwindling *res*" and give

the parties "a clear shot at negotiating an overall settlement." *Purdue Pharma.*, 2020 WL 4596869,

at *16, *18.  As explained below, such relief is particularly appropriate here.[11]

## II.    THE COURT SHOULD PRELIMINARILY ENJOIN THE STATE COURT ACTIONS PURSUANT TO SECTION 105(a)

A section 105(a) injunction is appropriate here for three reasons.  First, because the

automatic stay itself already applies to most, if not all, of the State Court Actions, a short-term

preliminary injunction of any State Court Actions not already covered is modest relief and is

necessary to ensure consistent outcomes and equitable results.  Second, each of the factors

considered by this Court when evaluating whether to issue a section 105(a) injunction weighs

strongly in favor of that relief here.  And third, the current posture of the case and the fact that the

parties have only recently begun plan mediation makes clear that now is not the time to upset the

status quo in favor of an explosion of individualized litigation in state court.

### A.    The Protections of the Automatic Stay Extend to the DRVC Related Parties Named in the State Court Actions

As an initial matter, the relief sought by this motion—a 120-day preliminary injunction

subject to review and renewal by this Court—is modest in light of the fact that the automatic stay

---

governmental entities against debtors and related parties, including former owners of debtors); *Diocese of Buffalo, N.Y. v. JMH 100 Doe, et al.* (*In re Diocese of Buffalo, N.Y.*), No. 20-10322, Adv. Pro. No. 20-01016, Docket No. 70 at 13 (Bankr. W.D.N.Y. July 2, 2020) (granting preliminary injunction to stay state court actions under the CVA); *Boy Scouts of Am. v. A.A., et al.* (*In re Boy Scouts of Am.*), No. 20-10343, Adv. Pro. No. 20-50527, Docket No. 55 at 7 (Bankr. D. Del. Mar. 31, 2020) (granting preliminary injunction and consent order to stay litigation against co-defendants, including Boy Scouts' separately incorporated Local Councils).

[11] This Court has jurisdiction to enjoin claims in state court against the DRVC and the DRVC Related Parties. Because the Debtor is seeking relief under sections 362(a) and 105(a) of the Bankruptcy Code, this Court has "arising in" and "arising under" jurisdiction to render orders with respect to claims against the Debtor.  *See Lyondell Chem. Co. v. CenterPoint Energy Gas Servs. Inc. (In re Lyondell Chem. Co)*, 402 B.R. 571, 586 (Bankr. S.D.N.Y. 2009). And although the actions to be enjoined involve tort claims arising under state law, the Bankruptcy Court may assert "related to" jurisdiction over those claims because the outcome of those cases "might have [a] 'conceivable effect' on the bankruptcy estate," by threatening the Debtor's recovery on its insurance policies, creating *res judicata* with respect to issues involving the Debtor, and distracting the parties involved from their efforts to achieve a consensual resolution to the DRVC's chapter 11 case.  *Id.* at 587–88 (quoting *Publicker Indus., Inc. v. United States* (*In re Cuyahoga Equip. Corp.*), 980 F.2d 110, 114 (2d Cir. 1992)).  The Bankruptcy Court therefore is empowered with "comprehensive jurisdiction" to "enjoin other actions whether against the debtor or third-parties and in whatsoever court."  *See A.H. Robins Co., v. Piccinin*, 788 F.2d 994, 1003 (4th Cir. 1986).

itself already extends to bar continued prosecution of nearly all of the State Court Actions.

*First*, the Diocese is a defendant in 234 of the 503 cases subject to the current preliminary injunction. The Diocese, moreover, would likely be a necessary party in the vast majority of the remainder, nearly all of which were filed after the start of the chapter 11 case without naming the Diocese to avoid the automatic stay. As the Second Circuit recently held, there is "a bright-line rule: if the debtor is a named party in a proceeding or action, then the automatic stay imposed by [11 U.S.C. 362(a)(1)] applies to the continuation of such a proceeding or action." *Bayview Loan Servicing LLC v. Fogarty (In re Fogarty)*, ___ F.4th ___, 2022 WL 2443388, at *8 (2d Cir. 2022). Consequently, nearly all of the State Court Actions are already automatically stayed by section 362(a)(1) or would become automatically stayed upon the DRVC's addition as a necessary party. *See McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 511 (3d Cir. 1997) (concluding automatic stay applied to action against non-debtor where debtor would be a necessary party to such action).

*Second*, because the DRVC Related Parties are co-insureds under the DRVC's insurance policies, the provisions of the automatic stay protecting estate property, *see* § 362(a)(3), bar continued prosecution of claims against the DRVC Related Parties that would dissipate the proceeds of these shared insurance policies.

Section 362(a)(3) of the Bankruptcy Code enjoins "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Courts have thus recognized that "[o]ne of the principal purposes of the automatic stay is to preserve the property of the debtor's estate for the benefit of all the creditors." *Official Comm. of Unsecured Creditors v. PSS S.S. Co.* (*In re Prudential Lines Inc.*), 928 F.2d 565, 573 (2d Cir. 1991) (citation omitted). And the Second Circuit has held that insurance policies held by the debtor are property of the debtor's estate. *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 92 (2d Cir. 1988); *In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999).

Because of this, courts routinely either extend the automatic stay, or hold that the automatic stay applies, to actions against co-insureds under the same insurance policies. *See, e.g.*, *A.H. Robins*, 788 F.2d at 1001-02 (staying actions "against officers or employees of the debtor who may be entitled to indemnification under [an insurance] policy or who qualify as additional insureds under the policy"); *The 1031 Tax Grp.*, 397 B.R. at 685 (same); *In re Circle K Corp.*, 121 B.R. 257, 261 (Bankr. D. Ariz. 1990) (same); *Minoco Grp. of Cos. Ltd. v. First State Underwriters Agency of New Eng. Reins. Corp.* (*In re Minoco Grp. of Cos., Ltd.*), 799 F.2d 517, 519 (9th Cir. 1986) (same).

Here, because the DRVC Related Parties are co-insureds with the DRVC, allowing litigation to continue against the DRVC Related Parties will have an "immediate adverse economic consequence for the debtor's estate" by diminishing the estate's insurance assets. *Queenie, Ltd. v. Nygard Intern.*, 321 F.3d 282, 287 (2d Cir. 2003). As insureds under the DRVC's various insurance policies, the DRVC Related Parties have the same rights to the limited amount of insurance proceeds as the DRVC. Porter Decl. ¶¶ 4, 6–21. All of the DRVC's insurance policies have per-claim limits, under which every dollar of insurance indemnification received by the DRVC Related Parties is one less dollar available to the DRVC's estate for payment of that claim. *Id.* Moreover, for policies that also have aggregate limits, every dollar of insurance recovery by the DRVC Related Parties is one less dollar available to the DRVC's estate to resolve any covered claims. *Id.* Consequently, any defense costs or judgments incurred by the DRVC Related Parties will directly reduce estate assets. Thus, the provisions of the automatic stay protecting estate property, *see* § 362(a)(3), bar continued prosecution of claims against the DRVC Related Parties.

*Third*, the State Court Actions against the DRVC Related Parties are covered by the traditional debtor protections of the automatic stay, *see* § 362(a)(1), because they involve "such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant." *Queenie*, 321 F.3d at 287–88 (quoting *A.H. Robins*, 788 F.2d at 999). Indeed,

a substantial body of case law recognizes that separate, non-debtor legal entities may share an identity of interest with the debtor when they are co-defendants in actions arising out of a single product or service supplied, manufactured, or provided by the debtor.[12] So too here. The DRVC shares an identity of interest with the DRVC Related Parties with respect to the State Court Actions because the policies and practices the plaintiffs allege gave rise to their claims are the DRVC's policies and practices, not distinct policies and practices of the DRVC Related Parties. Indeed, many of the claims asserted against the DRVC Related Parties cannot be adjudicated without impacting the DRVC's interests, and the testimonial and documentary evidence the plaintiffs in the State Court Actions will rely on at trial will, in large part, be from the DRVC. Finally, the DRVC and the DRVC Related Parties pursue a common charitable mission. This close working relationship between the DRVC and the DRVC Related Parties further demonstrates their identical interests in resolving the State Court Actions.

### B.    The Relevant Factors Weigh in Favor of a Preliminary Injunction

In light of the fact that the automatic stay itself already precludes continued prosecution of nearly all of the State Court Actions, extending the current preliminary injunction to maintain the status quo for 120-days is modest relief. In any event, to the extent any aspects of the State Court Actions are outside of section 362(a), a preliminary injunction under section 105(a) is appropriate.

This Court has held that "[b]ecause § 105(a) injunctions are authorized by statute, they do not need to comply with the traditional requirements of Fed. R. Civ. P. 65." *The 1031 Tax Grp.*, 397 B.R. at 684. When considering whether a section 105(a) injunction should be granted, courts

---

[12] *See, e.g.*, *A.H. Robins*, 788 F.2d at 996, 1014 (finding identity of interest between debtor and non-debtor with respect to claims arising out of use of single contraceptive device manufactured by the debtor); *W.R. Grace & Co. v. Chakarian* (*In re W.R. Grace & Co.*), 386 B.R. 17, 30–32 (Bankr. D. Del. 2008) (noting debtors and non-debtors shared an identity of interest because debtor's conduct and mining operations were "at the core" of non-debtor claims, and including non-debtors in scope of preliminary injunction staying actions against non-debtors); *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482, 492–94 (6th Cir. 1996) (noting identity of interest between debtor and non-debtors in litigation centered around the debtor's role as manufacturer and/or supplier of silicone gel breast implants).

give special attention to "among other relevant factors, whether the suits would (i) threaten the debtor's insurance coverage, (ii) increase the debtor's indemnification liability, (iii) result in inconsistent judgments, (iv) expose the debtor to risks of collateral estoppel or *res judicata*, and (v) burden and distract the debtor's management by diverting its manpower from reorganization to defending litigation*." Id.* (citing *Granite Partners*, 194 B.R. at 337). Here, these factors weigh heavily in favor of a preliminary injunction.[13]

### 1.   Continued Prosecution of the State Court Actions Will Dissipate the Proceeds of Shared Insurance Policies

*First*, as discussed above, the Second Circuit has recognized that insurance policies held by the debtor are property of the debtor's estate. *See MacArthur Co.*, 837 F.2d at 92; *First Cent. Fin. Corp.*, 238 B.R. at 16. Because of this, courts routinely extend the automatic stay—or hold that the stay applies—to actions against co-insureds. *See, e.g.*, *A.H. Robins*, 788 F.2d at 1001 (staying actions against officers "of the debtor who may be entitled to indemnification under [an insurance] policy or who qualify as additional insureds under the policy"); *The 1031 Tax Grp.*, 397 B.R. at 685 (same); *Circle K*, 121 B.R. at 261 (same); *Minoco Grp.*, 799 F.2d at 519 (same).

Here, the DRVC's insurance policies are the single most important estate asset available to compensate creditors. Because those policy proceeds are shared among the DRVC and the DRVC Related Parties, "the Debtor[ ] faces a very real possibility that insurance proceeds would be at risk if the [CVA Actions] are permitted to continue," and the existence of shared insurance policies weighs in favor of enjoining continued prosecution of the State Court Actions. *The 1031 Tax Group*, 397 B.R. at 684–85. Indeed, even more than in *The 1031 Tax Grp.*, because the insurance assets here are so critical to the DRVC's ability to fund survivors' claims, it is safe to say that nothing would endanger a successful reorganization more than if those insurance assets

---

[13] To the extent the Court also considers the traditional equitable factors, those factors likewise support a preliminary injunction for the reasons explained in the DRVC's initial motion for the PI. [Adv. Dkt. No. 3].

are dissipated in litigation of the State Court Actions against the DRVC Related Parties.

### 2. Continued Prosecution of the State Court Actions Could Increase the Debtor's Indemnification Liability

*Second*, there is "a substantial risk that [the DRVC will] face liability for indemnification if the [State Court Actions] are permitted to continue." *Id.* Indeed, the Parishes have repeatedly taken the position in this Court that they believe they have no responsibility for the actions of priests assigned to their parishes by the DRVC.[14] Should any of the State Court Actions result in a judgment against a DRVC Related Party, it is likely the DRVC Related Party will pursue indemnification claims against the DRVC. The possibility of such claims also weighs in favor of a preliminary injunction, as courts have repeatedly recognized. *See Granite Partners*, 194 B.R. at 337 (finding "issuance of the injunction" proper where suits "threaten the debtor's insurance coverage or increase the debtor's indemnification liability"); *Ionosphere Clubs*, 111 B.R. at 435 (granting stay where claims against non-debtor would have "direct impact on the estate" because "if successful . . . [p]laintiffs may undoubtedly claim [the debtor] is liable"); *Livingstone v. Tough Mudder Incorporated, Inc.*, No. 19-cv-893, 2020 WL 1905203, at *2 (E.D.N.Y. 2020) (similar).

### 3. Continued Prosecution of the State Court Actions Will Likely Result In Piecemeal Litigation And Inconsistent Judgments

*Third*, courts have stayed actions under section 105(a) where they all involve common questions of fact and law that are more effectively resolved in one bankruptcy proceeding. *See, e.g.*, *Drennen v. Certain Underwriters at Lloyd's of London* (*In re Residential Capital, LLC*), 563 B.R. 756, 775 (Bankr. S.D.N.Y. 2016) (granting stay of arbitration against non-debtors where there was no mechanism to prevent inconsistent judgments); *The 1031 Tax Grp.*, 397 B.R. at 684 ("The

---

[14] *See Declaration of Thomas R. Slome in Support of an Objection of Parishes to Motion of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Bankruptcy Rule 2004 Directing Debtor to Produce Electronically Stored Accounting Information* [Dkt. No. 463], at ¶¶ 11, 12; *Letter to the Honorable Shelley C. Chapman* [Adv Pro. Dkt. No. 75].

courts have recognized that a stay should be provided to codefendants when the claims . . . are 'inextricably interwoven, presenting common questions of law and fact, which can be resolved in one proceeding.'") (quoting *Ionosphere Clubs*, 111 B.R. at 434).

Here, common questions of law and fact predominate in the State Court Actions because the allegedly unlawful policies and practices giving rise to claims against the DRVC Related Parties are similar or identical to the alleged policies and practices giving rise to claims against the DRVC. The claims asserted against the non-DRVC defendants are therefore not capable of being adjudicated without impacting the DRVC's interests. *See* Moore Decl. ¶¶ 6, 9.

Indeed, if the State Court Actions are permitted to proceed against the DRVC Related Parties, such an outcome would likely "have cascading effects" on the larger reorganization. *Purdue Pharma.*, 2020 WL 4596869, at *17. Without a preliminary injunction of all the State Court Actions, CVA plaintiffs who did not name the Diocese as a defendant may be permitted to pursue their claims in state court, seeking a judgment against DRVC Related Parties covered by the same insurance policies covering claims against the DRVC. Plaintiffs in cases where the DRVC is a named defendant may try to bifurcate their cases as between the Diocese and the DRVC Related Parties, so they will not be left out as limited insurance assets are dissipated to pay claims for the DRVC Related Parties. Stephens Decl. ¶ 36. This would not only shift all parties' focus away from the reorganization, it would also likely lead to inequitable recoveries based on which plaintiffs are able to advance their cases quickest through the state court system.

### 4. Continued Prosecution of the State Court Actions Will Expose the DRVC to Risks of Collateral Estoppel and *Res Judicata*

*Fourth*, if the State Court Actions are allowed to proceed without the DRVC, the DRVC faces substantial risks of collateral estoppel, record taint, and evidentiary prejudice. *See* Moore Decl. ¶ 10. Courts have recognized that these risks justify the issuance of a preliminary injunction,

reasoning that such risks will cause the debtor to pay close attention to and participate in litigation, thus undermining the effect of the automatic stay. *See Lomas Fin. Corp. v. Northern Tr. Co.* (*In re Lomas Fin. Corp.*), 117 B.R. 64, 67 (S.D.N.Y. 1990) (finding "irreparable harm" where debtor's key personnel would be forced to participate in such litigation to avoid the "threat of collateral estoppel" because "it is not possible for the debtor to be a bystander to a suit which may have a $20 million issue preclusion effect against it in favor of a pre-petition creditor"); *Calpine Corp. v. Nev. Power Co.* (*In re Calpine Corp.*), 354 B.R. 45, 50 (Bankr. S.D.N.Y. 2006) (granting stay of state court action against surety of debtor when such action created the risk of collateral estoppel); *Calpine Corp.*, 2007 WL 1302604, at *4 (same); *In re LTL Management, LLC*, 638 B.R. 291, 317 (Bankr. D.N.J. 2022) (staying claims against non-debtors arising from the same factual circumstances as claims against the debtor because "the evidentiary record developed in continued litigation against the [non-debtors] could prejudice [the debtor]").

Here, given the overlap in the claims that have been asserted against the DRVC Related Parties and the DRVC, as well as the relationship between the DRVC and the DRVC Related Parties, the risk of preclusion through collateral estoppel or *res judicata* is high. Indeed, many theories of liability against both the DRVC and the DRVC Related Parties are similar, resting on theories of negligent failure to supervise the wrongdoers. *See* Moore Decl. Because of these preclusion risks, the DRVC will have to participate in the litigation, thus undermining the automatic stay. Without an injunction, the DRVC would be left in a bind: participate in the State Court Actions and thereby destroy value that would otherwise be available for creditors, or allow the State Court Actions to proceed without the DRVC's participation, and face the potential of judgments substantially increasing the number and size of claims against the estate. Such a result would "violate the spirit . . . of section 362 of the Bankruptcy Code." *Sudbury, Inc. v. Escott* (*In re Sudbury*), 140 B.R. 461, 464 (Bankr. N.D. Ohio 1992). Thus, the interest in avoiding collateral

estoppel and *res judicata* thus also weighs in favor of enjoining the State Court Actions.

> **5.    Continued Prosecution Will Burden And Distract the DRVC's Principals From the Reorganization**

*Fifth*, continuation of the State Court Actions would divert critical resources away and distract key personnel from the Debtor's reorganization and mediation efforts. *See* Moore Decl. ¶¶ 5-11. Courts have enjoined third party actions where the continued litigation will burden and distract the debtor's principals from the reorganization effort. *Nev. Power Co. v. Calpine Corp.* (*In re Calpine Corp.*), 365 B.R. 401, 410 (S.D.N.Y. 2007) (affirming the grant of a stay where stayed action would burden and distract key employees from the restructuring effort); *Haw. Structural*, 2006 WL 3755175, at *5 (same); *Calpine Corp.*, 2007 WL 1302604, at *4 (same). But this purpose is defeated when key personnel of the debtor are forced to devote substantial attention to overseeing or otherwise participating in numerous state court actions.

Here, opening the floodgates to state court litigation will likely distract from the chapter 11 case in two ways. For one, the DRVC will necessarily be dragged into discovery because, although the DRVC has voluntarily provided substantial amounts of discovery to the Committee on the merits of the abuse claims, *see* Stephens Decl. ¶¶ 9-13, 17-19, that discovery was provided *en masse* with very few redactions pursuant to the Committee's statutory role as fiduciary for all unsecured creditors and with respect to the mediation. *Id.* at n.5. If litigation of the State Court Actions were to resume, the Diocese would be required to expend substantial resources segregating this discovery into case-by-case productions and applying redactions for personal health and personally identifying information. And even then, DRVC personnel will likely be key witnesses, providing depositions and testimony in potentially hundreds of cases.

Moreover, allowing the state court plaintiffs' lawyers who are directing the Committee to pursue their individual actions will necessarily distract them from the goal of a negotiated

resolution to the chapter 11 case through mediation. Indeed, those lawyers recently told the state court that, if the PI expires on August 10, they will immediately begin actively litigating their individual cases. Stephens Decl. ¶ 36. Because the estate's insurance assets are limited, a race-to-the-courthouse dynamic will incentivize the plaintiffs' lawyers to vigorously pursue their own clients' cases to the detriment of plaintiffs represented by other lawyers. This will stop mediation in its tracks, greatly reducing any possibility of a negotiated global resolution in the near term.

### C.    There Is No Reason To Abandon the Preliminary Injunction Now

Finally, the current posture of the case counsels in favor of maintaining the preliminary injunction. The preliminary injunction has been an important part of this case from the outset. It has allowed the Debtor to focus on the reorganization, rationalized the Debtor's litigation defense, centralized the focus of all parties on the reorganization rather than on individual cases, avoided inconsistent judgments and inequitable recoveries, served as the vehicle through which the Committee received an extraordinary amount of voluntary discovery, and protected the DRVC's most important asset for compensating victims—its insurance policies—from depletion. There is no reason to abandon the preliminary injunction at this stage of the case.

To the contrary, the current posture of the case strongly weighs in favor of maintaining the status quo by another limited extension of the preliminary injunction for 120 days. Plan mediation has only just begun, and the parties have had only one all-hands mediation session. Although mediation confidentiality protections do not allow the DRVC to describe the details of the mediation, mediation remains at a <u>very</u> early stage. Indeed, the Parishes will join their first joint mediation session in August. And, for its part, the Committee appears to be just beginning its own analysis of the proofs of claim, having not taken steps to allow its valuation expert to examine proofs of claim until just before the first joint mediation sessions at the end of April 2022. Courts have routinely granted preliminary injunctions of mass-tort litigation in order to allow mediation

to have a chance to produce a consensual chapter 11 plan.  *See, e.g., Diocese of Buffalo, N.Y.*, 626 B.R. at 870 (Bankr. W.D.N.Y. 2021) (extending stay of CVA cases where "[w]ithout a stay, the debtor must divert its attention and resources to the defense of state court litigation, rather than to focus on the negotiation of acceptable plan provisions"); *In re Roman Catholic Diocese of Syracuse, N.Y.*, 628 B.R. 571, 580 (Bankr. N.D.N.Y. 2021) (granting stay of CVA litigation due to "consensual ongoing discovery and proposed mediations").[15]

The Committee, moreover, has no good faith basis for opposing a renewed PI at this time. The Committee cannot in good faith argue that mediation has run its course or that the parties are at an impasse.  And although the Committee argues that their opposition to the PI is due to a lack of financial disclosures from the Parishes, that argument is contrived.  The Committee did not seek to make the Parishes mediation parties until *after* issuing its ultimatum that it will not extend the PI unless the Parishes give in to their demands, despite the fact that the Parishes repeatedly stated to this Court and the Committee that they would be open to discussing such disclosures in mediation.  And when the Diocese proposed a brief 30-day standstill to allow the Committee and the Parishes to mediate about these financial disclosures, the Committee flatly rejected such an approach.  The Committee should at least have to *try* to negotiate with the Parishes about the conditions under which the Parishes will make disclosures before they threaten to open the floodgates to state court litigation that will harm the estate.

Moreover, Judge Chapman has already *rejected* the Committee's position that a stay of the State Court Actions should be conditioned on non-debtor third-party Parishes providing plan-related financial disclosures.  As Judge Chapman acknowledged, this arguably plan-related

---

[15] Although the Court in the Diocese of Rochester case recently denied a preliminary injunction, that case is nothing like this one.  There, after the parties had fully pursued mediation and reached an impasse, the debtor sought what was essentially a permanent injunction.  The Court did not believe such relief was warranted based on the status of the case and the evidence presented.  Here, in contrast, mediation is just beginning, and the short-term relief sought by the DRVC provides the Court with ample opportunity to monitor case progress and alter the approach as necessary.

discovery would not be available in the underlying State Court Actions, and thus the stay of the State Court Actions does not limit the Committee's or others' ability to pursue this discovery through normal channels.  To the extent the Committee believes information regarding the Parishes would be helpful in negotiating a plan, it is free to pursue that discovery through mediation, through a Rule 2004 motion, or through a discovery process at the plan-confirmation stage.

The reality is that the Committee is seeking to use the threat of state court litigation as leverage to extract concessions from the DRVC and the Parishes that have nothing to do with the State Court Actions.  But while the Committee may regard the PI as nothing more than a leverage point, and may be willing to abandon it now that it has obtained all the discovery that would be available in the CVA actions, the Diocese still regards the PI as critical at this time to preserve the estate from dissipation and to ensure that the parties have a sufficient runway to pursue mediation without the distraction of piecemeal litigation.  The Committee should not be permitted to play games with the estate's insurance assets or back out on its commitment to mediate in good faith.

The DRVC's requested 120-day extension of the preliminary injunction is modest and will permit the Court to retain control over the progress of the case, while allowing the parties to make further progress in mediation.  At the conclusion of that 120-day period, the parties, the Court, and the mediator will be able to reassess whether it still makes sense to enjoin the State Court Actions, or whether the chapter 11 case should move forward in a different way.  Now is not the time to start piecemeal litigation in hundreds of state court cases.  The parties should follow through on their commitment to investigate through mediation whether a consensual plan is possible.

## **CONCLUSION**

For the reasons above, the Court should grant the DRVC's Motion and enter a preliminary injunction enjoining further prosecution of the State Court Actions until December 8, 2022, subject to renewal as circumstances warrant.

Dated: July 21, 2022
     New York, New York

Respectfully submitted,

Christopher DiPompeo (*pro hac vice*)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone:  (202) 879-7686
Facsimile:  (202) 626-1700

*/s/ Corinne Ball*      
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Andrew Butler
JONES DAY
250 Vesey Street
New York, New York  10281
Telephone:      (212) 326-3939
Facsimile:      (212) 755-7306

*Counsel for the Debtor
and Debtor in Possession*

## <u>EXHIBIT A</u>

State Court Actions

|  | Plaintiff(s) | Index No. |
|---|---|---|
| 1. | NAME ON FILE | 506103/2020 |
| 2. | NAME ON FILE | 506559/2020 |
| 3. | NAME ON FILE | 512125/2020 |
| 4. | NAME ON FILE | 512319/2020 |
| 5. | NAME ON FILE | 512833/2020 |
| 6. | NAME ON FILE | 513632/2020 |
| 7. | NAME ON FILE | 513885/2020 |
| 8. | NAME ON FILE | 515746/2020 |
| 9. | NAME ON FILE | 452564/2020 |
| 10. | NAME ON FILE | 517533/2020 |
| 11. | NAME ON FILE | 518025/2020 |
| 12. | NAME ON FILE | 518289/2020 |
| 13. | NAME ON FILE | 518726/2019 |
| 14. | NAME ON FILE | 519191/2019 |
| 15. | NAME ON FILE | 519862/2019 |
| 16. | NAME ON FILE | 522308/2019 |
| 17. | NAME ON FILE | 524748/2019 |
| 18. | NAME ON FILE | 526614/2019 |
| 19. | NAME ON FILE | 527922/2019 |
| 20. | NAME ON FILE | 600873/2020 |
| 21. | NAME ON FILE | 605941/2020 |
| 22. | NAME ON FILE | 606396/2020 |
| 23. | NAME ON FILE | 606672/2020 |
| 24. | NAME ON FILE | 606674/2020 |
| 25. | NAME ON FILE | 607467/2020 |
| 26. | NAME ON FILE | 607768/2020 |
| 27. | NAME ON FILE | 608381/2020 |
| 28. | NAME ON FILE | 609115/2020 |
| 29. | NAME ON FILE | 610600/2020 |
| 30. | NAME ON FILE | 611155/2019 |
| 31. | NAME ON FILE | 615903/2019 |
| 32. | NAME ON FILE | 617355/2019 |
| 33. | NAME ON FILE | 618528/2019 |
| 34. | NAME ON FILE | 618542/2019 |
| 35. | NAME ON FILE | 619881/2019 |
| 36. | NAME ON FILE | 620497/2019 |
| 37. | NAME ON FILE | 621553/2019 |
| 38. | NAME ON FILE | 624824/2019 |
| 39. | NAME ON FILE | 900001/2019 |
| 40. | NAME ON FILE | 900002/2019 |
| 41. | NAME ON FILE | 900002/2020 |
| 42. | NAME ON FILE | 900003/2019 |
| 43. | NAME ON FILE | 900003/2020 |

| | Plaintiff(s) | Index No. |
|---|---|---|
| 44. | NAME ON FILE | 900004/2019 |
| 45. | NAME ON FILE | 900004/2020 |
| 46. | NAME ON FILE | 900043/2020 |
| 47. | NAME ON FILE | 900005/2019 |
| 48. | NAME ON FILE | 900006/2019 |
| 49. | NAME ON FILE | 900006/2020 |
| 50. | NAME ON FILE | 900007/2019 |
| 51. | NAME ON FILE | 900008/2019 |
| 52. | NAME ON FILE | 900008/2020 |
| 53. | NAME ON FILE | 900010/2019 |
| 54. | NAME ON FILE | 900010/2020 |
| 55. | NAME ON FILE | 900011/2019 |
| 56. | NAME ON FILE | 900011/2020 |
| 57. | NAME ON FILE | 900012/2019 |
| 58. | NAME ON FILE | 900012/2020 |
| 59. | NAME ON FILE | 900013/2019 |
| 60. | NAME ON FILE | 900013/2020 |
| 61. | NAME ON FILE | 900014/2019 |
| 62. | NAME ON FILE | 900014/2020 |
| 63. | NAME ON FILE | 900015/2019 |
| 64. | NAME ON FILE | 900015/2020 |
| 65. | NAME ON FILE | 900016/2019 |
| 66. | NAME ON FILE | 900017/2019 |
| 67. | NAME ON FILE | 900017/2020 |
| 68. | NAME ON FILE | 900018/2020 |
| 69. | NAME ON FILE | 900019/2019 |
| 70. | NAME ON FILE | 900020/2019 |
| 71. | NAME ON FILE | 900021/2019 |
| 72. | NAME ON FILE | 900022/2019 |
| 73. | NAME ON FILE | 900022/2020 |
| 74. | NAME ON FILE | 900024/2019 |
| 75. | NAME ON FILE | 900025/2019 |
| 76. | NAME ON FILE | 900027/2019 |
| 77. | NAME ON FILE | 900028/2019 |
| 78. | NAME ON FILE | 900029/2019 |
| 79. | NAME ON FILE | 900029/2020 |
| 80. | NAME ON FILE | 900030/2020 |
| 81. | NAME ON FILE | 900031/2019 |
| 82. | NAME ON FILE | 900031/2020 |
| 83. | NAME ON FILE | 900032/2019 |
| 84. | NAME ON FILE | 900032/2020 |
| 85. | NAME ON FILE | 900033/2020 |
| 86. | NAME ON FILE | 900035/2019 |
| 87. | NAME ON FILE | 900036/2019 |
| 88. | NAME ON FILE | 900036/2020 |
| 89. | NAME ON FILE | 900037/2019 |
| 90. | NAME ON FILE | 900039/2019 |

|  | Plaintiff(s) | Index No. |
|---|---|---|
| 91. | NAME ON FILE | 900040/2019 |
| 92. | NAME ON FILE | 900041/2019 |
| 93. | NAME ON FILE | 900041/2020 |
| 94. | NAME ON FILE | 900042/2019 |
| 95. | NAME ON FILE | 900044/2020 |
| 96. | NAME ON FILE | 900045/2019 |
| 97. | NAME ON FILE | 900045/2020 |
| 98. | NAME ON FILE | 900046/2019 |
| 99. | NAME ON FILE | 900046/2020 |
| 100. | NAME ON FILE | 900047/2020 |
| 101. | NAME ON FILE | 900048/2019 |
| 102. | NAME ON FILE | 900048/2020 |
| 103. | NAME ON FILE | 900050/2019 |
| 104. | NAME ON FILE | 900050/2020 |
| 105. | NAME ON FILE | 900051/2019 |
| 106. | NAME ON FILE | 900051/2020 |
| 107. | NAME ON FILE | 900052/2019 |
| 108. | NAME ON FILE | 900052/2020 |
| 109. | NAME ON FILE | 900053/2019 |
| 110. | NAME ON FILE | 900053/2020 |
| 111. | NAME ON FILE | 900054/2019 |
| 112. | NAME ON FILE | 900054/2020 |
| 113. | NAME ON FILE | 900055/2020 |
| 114. | NAME ON FILE | 900056/2020 |
| 115. | NAME ON FILE | 900057/2019 |
| 116. | NAME ON FILE | 900057/2020 |
| 117. | NAME ON FILE | 900058/2020 |
| 118. | NAME ON FILE | 900059/2020 |
| 119. | NAME ON FILE | 900060/2020 |
| 120. | NAME ON FILE | 900061/2020 |
| 121. | NAME ON FILE | 900062/2020 |
| 122. | NAME ON FILE | 900063/2020 |
| 123. | NAME ON FILE | 900064/2019 |
| 124. | NAME ON FILE | 900064/2020 |
| 125. | NAME ON FILE | 900065/2020 |
| 126. | NAME ON FILE | 900066/2020 |
| 127. | NAME ON FILE | 900067/2020 |
| 128. | NAME ON FILE | 900068/2019 |
| 129. | NAME ON FILE | 900068/2020 |
| 130. | NAME ON FILE | 900069/2019 |
| 131. | NAME ON FILE | 900069/2020 |
| 132. | NAME ON FILE | 900070/2019 |
| 133. | NAME ON FILE | 900070/2020 |
| 134. | NAME ON FILE | 900071/2019 |
| 135. | NAME ON FILE | 900071/2020 |
| 136. | NAME ON FILE | 900072/2019 |
| 137. | NAME ON FILE | 900072/2020 |

|  | Plaintiff(s) | Index No. |
|---|---|---|
| 138. | NAME ON FILE | 900073/2019 |
| 139. | NAME ON FILE | 900073/2020 |
| 140. | NAME ON FILE | 900074/2020 |
| 141. | NAME ON FILE | 900075/2020 |
| 142. | NAME ON FILE | 900076/2020 |
| 143. | NAME ON FILE | 900077/2020 |
| 144. | NAME ON FILE | 900078/2020 |
| 145. | NAME ON FILE | 900079/2020 |
| 146. | NAME ON FILE | 900080/2020 |
| 147. | NAME ON FILE | 900081/2020 |
| 148. | NAME ON FILE | 900084/2020 |
| 149. | NAME ON FILE | 900085/2020 |
| 150. | NAME ON FILE | 900086/2020 |
| 151. | NAME ON FILE | 900087/2020 |
| 152. | NAME ON FILE | 900094/2020 |
| 153. | NAME ON FILE | 900095/2020 |
| 154. | NAME ON FILE | 900099/2020 |
| 155. | NAME ON FILE | 900101/2020 |
| 156. | NAME ON FILE | 900102/2020 |
| 157. | NAME ON FILE | 900103/2020 |
| 158. | NAME ON FILE | 900105/2020 |
| 159. | NAME ON FILE | 900107/2020 |
| 160. | NAME ON FILE | 900109/2020 |
| 161. | NAME ON FILE | 900110/2020 |
| 162. | NAME ON FILE | 900111/2020 |
| 163. | NAME ON FILE | 900112/2020 |
| 164. | NAME ON FILE | 900113/2020 |
| 165. | NAME ON FILE | 900114/2020 |
| 166. | NAME ON FILE | 900115/2020 |
| 167. | NAME ON FILE | 900117/2020 |
| 168. | NAME ON FILE | 900118/2020 |
| 169. | NAME ON FILE | 900119/2020 |
| 170. | NAME ON FILE | 900120/2020 |
| 171. | NAME ON FILE | 900121/2020 |
| 172. | NAME ON FILE | 900122/2020 |
| 173. | NAME ON FILE | 900124/2020 |
| 174. | NAME ON FILE | 900125/2020 |
| 175. | NAME ON FILE | 900126/2020 |
| 176. | NAME ON FILE | 900127/2020 |
| 177. | NAME ON FILE | 900128/2020 |
| 178. | NAME ON FILE | 900129/2020 |
| 179. | NAME ON FILE | 900130/2020 |
| 180. | NAME ON FILE | 900131/2020 |
| 181. | NAME ON FILE | 900132/2020 |
| 182. | NAME ON FILE | 900133/2020 |
| 183. | NAME ON FILE | 900134/2020 |
| 184. | NAME ON FILE | 900135/2020 |

| | Plaintiff(s) | Index No. |
|---|---|---|
| 185. | NAME ON FILE | 900136/2020 |
| 186. | NAME ON FILE | 900137/2020 |
| 187. | NAME ON FILE | 900138/2020 |
| 188. | NAME ON FILE | 900139/2020 |
| 189. | NAME ON FILE | 900143/2020 |
| 190. | NAME ON FILE | 900145/2020 |
| 191. | NAME ON FILE | 900149/2020 |
| 192. | NAME ON FILE | 900150/2020 |
| 193. | NAME ON FILE | 900152/2020 |
| 194. | NAME ON FILE | 900153/2020 |
| 195. | NAME ON FILE | 900165/2020 |
| 196. | NAME ON FILE | 900168/2020 |
| 197. | NAME ON FILE | 900170/2020 |
| 198. | NAME ON FILE | 900171/2020 |
| 199. | NAME ON FILE | 900172/2020 |
| 200. | NAME ON FILE | 900173/2020 |
| 201. | NAME ON FILE | 900174/2020 |
| 202. | NAME ON FILE | 950002/2019 |
| 203. | NAME ON FILE | 950167/2019 |
| 204. | NAME ON FILE | 950169/2019 |
| 205. | NAME ON FILE | 950229/2020 |
| 206. | NAME ON FILE | 950245/2020 |
| 207. | NAME ON FILE | 950535/2020 |
| 208. | NAME ON FILE | 950642/2020 |
| 209. | NAME ON FILE | 950685/2020 |
| 210. | NAME ON FILE | 614160/2020 |
| 211. | NAME ON FILE | 900001/2021 |
| 212. | NAME ON FILE | RESERVED |
| 213. | NAME ON FILE | 900006/2021 |
| 214. | NAME ON FILE | 900007/2021 |
| 215. | NAME ON FILE | 900008/2021 |
| 216. | NAME ON FILE | 900030/2019 |
| 217. | NAME ON FILE | 618005/2020 |
| 218. | NAME ON FILE | 603159/2021 |
| 219. | NAME ON FILE | 600406/2015 |
| 220. | NAME ON FILE | 613879/2018 |
| 221. | NAME ON FILE | 613853/2017 |
| 222. | NAME ON FILE | 515579/2020 |
| 223. | NAME ON FILE | 513592/2020 |
| 224. | NAME ON FILE | 513586/2020 |
| 225. | NAME ON FILE | 609397/2019 |
| 226. | NAME ON FILE | 900016/2021 |
| 227. | NAME ON FILE | 900015/2021 |
| 228. | NAME ON FILE | 900010/2021 |
| 229. | NAME ON FILE | 900011/2021 |
| 230. | NAME ON FILE | 900017/2021 |
| 231. | NAME ON FILE | 900029/2021 |

| | Plaintiff(s) | Index No. |
|---|---|---|
| 232. | NAME ON FILE | 510647/2021 |
| 233. | NAME ON FILE | 900037/2021 |
| 234. | NAME ON FILE | 900036/2021 |
| 235. | NAME ON FILE | 900042/2021 |
| 236. | NAME ON FILE | 900041/2021 |
| 237. | NAME ON FILE | 900040/2021 |
| 238. | NAME ON FILE | 70043/2021E |
| 239. | NAME ON FILE | 606441/2021 |
| 240. | NAME ON FILE | 610846/2021 |
| 241. | NAME ON FILE | RESERVED |
| 242. | NAME ON FILE | 900055/2021 |
| 243. | NAME ON FILE | 900057/2021 |
| 244. | NAME ON FILE | 508122/2021 |
| 245. | NAME ON FILE | RESERVED |
| 246. | NAME ON FILE | 900061/2021 |
| 247. | NAME ON FILE | 900050/2021 |
| 248. | NAME ON FILE | 900048/2021 |
| 249. | NAME ON FILE | 900044/2021 |
| 250. | NAME ON FILE | 900047/2021 |
| 251. | NAME ON FILE | 900060/2021 |
| 252. | NAME ON FILE | 900034/2021 |
| 253. | NAME ON FILE | 900064/2021 |
| 254. | NAME ON FILE | 900069/2021 |
| 255. | NAME ON FILE | 514079/2021 |
| 256. | NAME ON FILE | 514064/2021 |
| 257. | NAME ON FILE | 900035/2021 |
| 258. | NAME ON FILE | 611047/2021 |
| 259. | NAME ON FILE | 610249/2021 |
| 260. | NAME ON FILE | 610244/2021 |
| 261. | NAME ON FILE | 610938/2021 |
| 262. | NAME ON FILE | 610245/2021 |
| 263. | NAME ON FILE | 610849/2021 |
| 264. | NAME ON FILE | 610237/2021 |
| 265. | NAME ON FILE | 610228/2021 |
| 266. | NAME ON FILE | 610406/2021 |
| 267. | NAME ON FILE | 900024/2021 |
| 268. | NAME ON FILE | 610036/2021 |
| 269. | NAME ON FILE | RESERVED |
| 270. | NAME ON FILE | 900058/2021 |
| 271. | NAME ON FILE | 611337/2021 |
| 272. | NAME ON FILE | 900073/2021 |
| 273. | NAME ON FILE | 900075/2021 |
| 274. | NAME ON FILE | 900078/2021 |
| 275. | NAME ON FILE | 900079/2021 |
| 276. | NAME ON FILE | 900080/2021 |
| 277. | NAME ON FILE | 900096/2021 |
| 278. | NAME ON FILE | 900088/2021 |

| | Plaintiff(s) | Index No. |
|---|---|---|
| 279. | NAME ON FILE | 900095/2021 |
| 280. | NAME ON FILE | 900090/2021 |
| 281. | NAME ON FILE | 900092/2021 |
| 282. | NAME ON FILE | 900097/2021 |
| 283. | NAME ON FILE | 900093/2021 |
| 284. | NAME ON FILE | 900089/2021 |
| 285. | NAME ON FILE | 900086/2021 |
| 286. | NAME ON FILE | 900087/2021 |
| 287. | NAME ON FILE | 900091/2021 |
| 288. | NAME ON FILE | 900099/2021 |
| 289. | NAME ON FILE | 612686/2021 |
| 290. | NAME ON FILE | 513591/2020 |
| 291. | NAME ON FILE | 400094/2021 |
| 292. | NAME ON FILE | 900102/2021 |
| 293. | NAME ON FILE | 900105/2021 |
| 294. | NAME ON FILE | 612520/2021 |
| 295. | NAME ON FILE | 613012/2021 |
| 296. | NAME ON FILE | 613013/2021 |
| 297. | NAME ON FILE | 900094/2021 |
| 298. | NAME ON FILE | 613014/2021 |
| 299. | NAME ON FILE | 900110/2021 |
| 300. | NAME ON FILE | 613020/2021 |
| 301. | NAME ON FILE | 900113/2021 |
| 302. | NAME ON FILE | 613213/2021 |
| 303. | NAME ON FILE | 900121/2021 |
| 304. | NAME ON FILE | 613430/2021 |
| 305. | NAME ON FILE | 900104/2021 |
| 306. | NAME ON FILE | 900125/2021 |
| 307. | NAME ON FILE | 900126/2021 |
| 308. | NAME ON FILE | 900127/2021 |
| 309. | NAME ON FILE | 900128/2021 |
| 310. | NAME ON FILE | 613335/2021 |
| 311. | NAME ON FILE | 900123/2021 |
| 312. | NAME ON FILE | 900122/2021 |
| 313. | NAME ON FILE | 900130/2021 |
| 314. | NAME ON FILE | 900133/2021 |
| 315. | NAME ON FILE | 900132/2021 |
| 316. | NAME ON FILE | 900134/2021 |
| 317. | NAME ON FILE | 900135/2021 |
| 318. | NAME ON FILE | 900137/2021 |
| 319. | NAME ON FILE | 900138/2021 |
| 320. | NAME ON FILE | 900139/2021 |
| 321. | NAME ON FILE | 613730/2021 |
| 322. | NAME ON FILE | 613731/2021 |
| 323. | NAME ON FILE | 900141/2021 |
| 324. | NAME ON FILE | 900142/2021 |
| 325. | NAME ON FILE | 900146/2021 |

| | Plaintiff(s) | Index No. |
|---|---|---|
| 326. | NAME ON FILE | 900144/2021 |
| 327. | NAME ON FILE | 900145/2021 |
| 328. | NAME ON FILE | 900147/2021 |
| 329. | NAME ON FILE | 900148/2021 |
| 330. | NAME ON FILE | 900149/2021 |
| 331. | NAME ON FILE | 900150/2021 |
| 332. | NAME ON FILE | 900103/2021 |
| 333. | NAME ON FILE | 900136/2021 |
| 334. | NAME ON FILE | 900159/2021 |
| 335. | NAME ON FILE | 613015/2021 |
| 336. | NAME ON FILE | 900160/2021 |
| 337. | NAME ON FILE | 614399/2021 |
| 338. | NAME ON FILE | 614400/2021 |
| 339. | NAME ON FILE | 614401/2021 |
| 340. | NAME ON FILE | 614402/2021 |
| 341. | NAME ON FILE | 900166/2021 |
| 342. | NAME ON FILE | 900168/2021 |
| 343. | NAME ON FILE | 613957/2021 |
| 344. | NAME ON FILE | 518563/2021 |
| 345. | NAME ON FILE | 614403/2021 |
| 346. | NAME ON FILE | 614404/2021 |
| 347. | NAME ON FILE | 614405/2021 |
| 348. | NAME ON FILE | 614406/2021 |
| 349. | NAME ON FILE | 900169/2021 |
| 350. | NAME ON FILE | 900170/2021 |
| 351. | NAME ON FILE | 900175/2021 |
| 352. | NAME ON FILE | 900180/2021 |
| 353. | NAME ON FILE | 900171/2021 |
| 354. | NAME ON FILE | 900172/2021 |
| 355. | NAME ON FILE | 900174/2021 |
| 356. | NAME ON FILE | 900176/2021 |
| 357. | NAME ON FILE | 900177/2021 |
| 358. | NAME ON FILE | 900178/2021 |
| 359. | NAME ON FILE | 900227/2021 |
| 360. | NAME ON FILE | 900196/2021 |
| 361. | NAME ON FILE | 400195/2021 |
| 362. | NAME ON FILE | 900181/2021 |
| 363. | NAME ON FILE | 900179/2021 |
| 364. | NAME ON FILE | 900182/2021 |
| 365. | NAME ON FILE | 518595/2021 |
| 366. | NAME ON FILE | 519459/2021 |
| 367. | NAME ON FILE | 614442/2021 |
| 368. | NAME ON FILE | 614654/2021 |
| 369. | NAME ON FILE | 614747/2021 |
| 370. | NAME ON FILE | 614751/2021 |
| 371. | NAME ON FILE | 614918/2021 |
| 372. | NAME ON FILE | 614919/2021 |

|  | Plaintiff(s) | Index No. |
|---|---|---|
| 373. | NAME ON FILE | 614922/2021 |
| 374. | NAME ON FILE | 900187/2021 |
| 375. | NAME ON FILE | 900202/2021 |
| 376. | NAME ON FILE | 900204/2021 |
| 377. | NAME ON FILE | 900208/2021 |
| 378. | NAME ON FILE | 900209/2021 |
| 379. | NAME ON FILE | 900213/2021 |
| 380. | NAME ON FILE | 900217/2021 |
| 381. | NAME ON FILE | 900222/2021 |
| 382. | NAME ON FILE | 900192/2021 |
| 383. | NAME ON FILE | 614526/2021 |
| 384. | NAME ON FILE | 900183/2021 |
| 385. | NAME ON FILE | 900184/2021 |
| 386. | NAME ON FILE | 900185/2021 |
| 387. | NAME ON FILE | 900190/2021 |
| 388. | NAME ON FILE | 900193/2021 |
| 389. | NAME ON FILE | 900195/2021 |
| 390. | NAME ON FILE | 900198/2021 |
| 391. | NAME ON FILE | 614752/2021 |
| 392. | NAME ON FILE | 900212/2021 |
| 393. | NAME ON FILE | 900211/2021 |
| 394. | NAME ON FILE | 900210/2021 |
| 395. | NAME ON FILE | 614911/2021 |
| 396. | NAME ON FILE | 518736/2021 |
| 397. | NAME ON FILE | 900225/2021 |
| 398. | NAME ON FILE | 900229/2021 |
| 399. | NAME ON FILE | 900230/2021 |
| 400. | NAME ON FILE | 900232/2021 |
| 401. | NAME ON FILE | 615146/2021 |
| 402. | NAME ON FILE | 614921/2021 |
| 403. | NAME ON FILE | 900242/2021 |
| 404. | NAME ON FILE | 900112/2021 |
| 405. | NAME ON FILE | 900129/2021 |
| 406. | NAME ON FILE | 900221/2021 |
| 407. | NAME ON FILE | 615121/2021 |
| 408. | NAME ON FILE | 615122/2021 |
| 409. | NAME ON FILE | 615134/2021 |
| 410. | NAME ON FILE | 615135/2021 |
| 411. | NAME ON FILE | 900235/2021 |
| 412. | NAME ON FILE | 900245/2021 |
| 413. | NAME ON FILE | 900246/2021 |
| 414. | NAME ON FILE | 951014/2021 |
| 415. | NAME ON FILE | 615133/2021 |
| 416. | NAME ON FILE | 900262/2021 |
| 417. | NAME ON FILE | 900269/2021 |
| 418. | NAME ON FILE | 900271/2021 |
| 419. | NAME ON FILE | 900275/2021 |

| | Plaintiff(s) | Index No. |
|---|---|---|
| 420. | NAME ON FILE | 900277/2021 |
| 421. | NAME ON FILE | 900265/2021 |
| 422. | NAME ON FILE | 615333/2021 |
| 423. | NAME ON FILE | 900286/2021 |
| 424. | NAME ON FILE | 900289/2021 |
| 425. | NAME ON FILE | 900303/2021 |
| 426. | NAME ON FILE | 900298/2021 |
| 427. | NAME ON FILE | RESERVED |
| 428. | NAME ON FILE | 900301/2021 |
| 429. | NAME ON FILE | 900305/2021 |
| 430. | NAME ON FILE | 900351/2021 |
| 431. | NAME ON FILE | 615422/2021 |
| 432. | NAME ON FILE | 900307/2021 |
| 433. | NAME ON FILE | 900366/2021 |
| 434. | NAME ON FILE | 520225/2021 |
| 435. | NAME ON FILE | 951198/2021 |
| 436. | NAME ON FILE | 614848/2021 |
| 437. | NAME ON FILE | 900313/2021 |
| 438. | NAME ON FILE | 900312/2021 |
| 439. | NAME ON FILE | 900314/2021 |
| 440. | NAME ON FILE | 615522/2021 |
| 441. | NAME ON FILE | 615525/2021 |
| 442. | NAME ON FILE | 615528/2021 |
| 443. | NAME ON FILE | 615542/2021 |
| 444. | NAME ON FILE | 900344/2021 |
| 445. | NAME ON FILE | 900345/2021 |
| 446. | NAME ON FILE | 900348/2021 |
| 447. | NAME ON FILE | 900353/2021 |
| 448. | NAME ON FILE | 900308/2021 |
| 449. | NAME ON FILE | 900309/2021 |
| 450. | NAME ON FILE | 900362/2021 |
| 451. | NAME ON FILE | 900363/2021 |
| 452. | NAME ON FILE | 900369/2021 |
| 453. | NAME ON FILE | 900380/2021 |
| 454. | NAME ON FILE | 900389/2021 |
| 455. | NAME ON FILE | 900378/2021 |
| 456. | NAME ON FILE | 900377/2021 |
| 457. | NAME ON FILE | 900393/2021 |
| 458. | NAME ON FILE | 900391/2021 |
| 459. | NAME ON FILE | 900189/2021 |
| 460. | NAME ON FILE | 900390/2021 |
| 461. | NAME ON FILE | 900386/2021 |
| 462. | NAME ON FILE | 900387/2021 |
| 463. | NAME ON FILE | 900388/2021 |
| 464. | NAME ON FILE | 900385/2021 |
| 465. | NAME ON FILE | 900384/2021 |
| 466. | NAME ON FILE | 900383/2021 |

|  | Plaintiff(s) | Index No. |
|---|---|---|
| 467. | NAME ON FILE | 900381/2021 |
| 468. | NAME ON FILE | 900374/2021 |
| 469. | NAME ON FILE | 900357/2021 |
| 470. | NAME ON FILE | 900358/2021 |
| 471. | NAME ON FILE | 900394/2021 |
| 472. | NAME ON FILE | 900395/2021 |
| 473. | NAME ON FILE | 900396/2021 |
| 474. | NAME ON FILE | 900398/2021 |
| 475. | NAME ON FILE | 900397/2021 |
| 476. | NAME ON FILE | 900402/2021 |
| 477. | NAME ON FILE | 900401/2021 |
| 478. | NAME ON FILE | 900163/2021 |
| 479. | NAME ON FILE | 900294/2021 |
| 480. | NAME ON FILE | 900131/2021 |
| 481. | NAME ON FILE | 900364/2021 |
| 482. | NAME ON FILE | 519751/2021 |
| 483. | NAME ON FILE | 900220/2021 |
| 484. | NAME ON FILE | 900116/2021 |
| 485. | NAME ON FILE | 900403/2021 |
| 486. | NAME ON FILE | 900116/2020 |
| 487. | NAME ON FILE | 900081/2021 |
| 488. | NAME ON FILE | RESERVED |
| 489. | NAME ON FILE | 514631/2021 |
| 490. | NAME ON FILE | 951159/2021 |
| 491. | NAME ON FILE | 951160/2021 |
| 492. | NAME ON FILE | 520085/2021 |
| 493. | NAME ON FILE | 520003/2021 |
| 494. | NAME ON FILE | 520779/2021 |
| 495. | NAME ON FILE | 951389/2021 |
| 496. | NAME ON FILE | 900191/2021 |
| 497. | NAME ON FILE | 602850/2016 |
| 498. | NAME ON FILE | 900259/2021 |
| 499. | NAME ON FILE | 900260/2021 |
| 500. | NAME ON FILE | 900261/2021 |
| 501. | NAME ON FILE | 900264/2021 |
| 502. | NAME ON FILE | 616239/2021 |
| 503. | NAME ON FILE | 951246/2021 |
| 504. | NAME ON FILE | 970001/2021 |
| 505. | NAME ON FILE | 950946/2021 |
| 506. | NAME ON FILE | 400091/2021 |